BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

Electronically Filed February 7, 2023

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. BK-23-10423-mkn

Chapter 11

**EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO PAY PREPETITION EMPLOYEE WAGES AND BENEFITS; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Hearing Date: OST PENDING
Hearing Time: OST PENDING
Estimated Time for Hearing: 20 minutes

Cash Cloud, Inc., dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), hereby submits this motion (the "Motion") for entry of an interim and final order, substantially in the forms attached hereto as **Exhibit 1** and **Exhibit 2** (the "Interim Order" and the "Final Order," respectively): (i) authorizing, but not directing, the

Debtor (a) to pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; (ii) scheduling a final hearing to consider entry of the Final Order; and (iii) granting related relief. The Motion is made and based on sections 105(a), 363(b) and 507(a) of the Bankruptcy Code,[1] Rules 6003 and 6004 of the Bankruptcy Rules, and Rule 4001 of the Local Rules, the following memorandum of points and authorities, the *Declaration of Christopher Andrew McAlary* (the "Omnibus Declaration") filed in support hereof, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

Dated this 7th day of February 2023.

**FOX ROTHSCHILD LLP**

By: *\/s/Brett Axelrod*

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

[1] All references to "chapter" and "section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" shall refer to the Local Rules of Bankruptcy Practice of the U.S. District Court for the District of Nevada.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M) & (O).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b) and 507(a) and Bankruptcy Rules 6003 and 6004.

4. Pursuant to Local Rule 9014.2, Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## II.

## FACTUAL BACKGROUND

### A. General Background[2]

5. On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing the Chapter 11 Case in this Court. Debtor is continuing in possession of its property and is operating and managing its business as a debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108. No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed. See id.

### B. The Debtor's Workforce

6. The Debtor currently employs 85 individuals on a full-time basis and three individuals on a part-time basis (collectively, the "Employees"). All Employees are eligible to receive certain Employee Compensation and Benefits (as those terms are defined herein). No Employee is represented by a collective bargaining unit. See Omnibus Declaration.

[2] A detailed description of the Debtors' businesses and the reasons for the filing of this Chapter 11 Case and for the relief sought in this Motion are set forth in the *Omnibus Declaration of Chris McAlary in Support of First Day Motions* (the "Omnibus Declaration") being filed contemporaneously with this Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

7. To supplement its workforce, the Debtor currently utilizes five independent contractors (collectively, the "Independent Contractors"), who provide critical services to the Debtor, including cash logistics, product development, and operations . To further supplement its workforce, the Debtor also currently utilizes two temporary employees (the "Temporary Employees") in its accounting department. See Omnibus Declaration.

8. The Employees, Independent Contractors, and Temporary Employees perform a wide variety of functions crucial to the administration of this Chapter 11 Case and the Debtor's operations. Their skills, knowledge, and understanding of the Debtor's operations and infrastructure are essential to preserving operational stability and efficiency. The Employees, Independent Contractors, and Temporary Employees include highly trained personnel who cannot easily be replaced. Accordingly, without the continued, uninterrupted services of the Employees, Independent Contractors, and Temporary Employees, the Debtors' reorganization will be materially impaired. See Omnibus Declaration.

9. Additionally, the vast majority of the Employees, Independent Contractors, and Temporary Employees rely exclusively on their compensation and benefits to pay their daily living expenses and to support their families. Thus, the Employees, Independent Contractors, and Temporary Employees will be exposed to significant financial constraints if the Debtor is not authorized to continue paying wages and salaries, providing benefits, and maintaining certain programs benefiting those individuals in the ordinary course of business. The Debtor, therefore, respectfully submits that the relief requested herein is necessary and appropriate under the facts and circumstances of this Chapter 11 Case. See Omnibus Declaration.

## C. **Workforce Compensation and Benefits**

10. The Debtor seeks to minimize the personal hardship Employees, Independent Contractors, and Temporary Employees would suffer if prepetition employment-related or contractor-related obligations are not paid or remitted when due or as expected (and also minimize the resultant disruption such hardships would have on the Debtor's operations and the administration of this Chapter 11 Case). Accordingly, as set forth in more detail below, the Debtor hereby requests authority to pay and honor certain prepetition claims or continue to honor obligations on a postpetition basis,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

as applicable, relating to, among other things, wages, contractor fees, payroll processing, reimbursable expenses, federal and state withholding taxes and other amounts withheld (including garnishments, transit and parking costs, and Employees' share of insurance premiums and taxes), health insurance benefits, health savings accounts, standard life and accidental death and dismemberment ("AD&D") insurance, short and long-term disability benefits, the workers' compensation program, paid time off benefits, and miscellaneous other benefits the Debtor has historically provided to Employees, Independent Contractors, and Temporary Employees (collectively, the "Employee Compensation and Benefits"). See Omnibus Declaration.

11. By this Motion, the Debtor seeks authority to honor prepetition ordinary course obligations on account of the Employee Compensation and Benefits on an interim and final basis, as summarized in the chart below (amounts are approximate based on the Debtor's monthly average expenses).

| Relief Sought | Interim Amount | Final Amount |
|---|---|---|
| Unpaid Wages[3] | $148,500.00 | $148,724.50 |
| Unpaid Contractor Fees | $16,327.27 | $16,327.27 |
| Unpaid Temporary Employee Fees | $11,132.80 | $11,132.80 |
| Payroll Processing Fees (NetSuite & Ceridian) | $0 | $0 |
| Reimbursable Expenses | $0 | $0 |
| HMO Health Insurance Plan (Health Plan of Nevada)[4] | $14,676.24 | $14,676.24 |
| PPO Health Insurance Plan (Sierra Health & Life) | $28,831.93 | $28,831.93 |
| Supplemental Insurance Benefits (Guardian) | | |
| AD&D | $340.09 | $340.09 |
| Dental | $3,870.02 | $3,870.02 |
| Short Term Disability | $1,033.40 | $1,033.40 |
| Vision | $938.61 | $938.61 |
| Voluntary Hospital Indemnity | $202.89 | $202.89 |

[3] This amount only identifies prepetition wages, contractor fees, and temporary employee fees that the Debtor anticipates will be outstanding and unpaid on the Petition Date and does not include postpetition wages and fees the Debtor anticipates will accrue during the relevant postpetition portion of the current pay period.

[4] The Debtor offers two plans through the Health Plan of Nevada

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| | | |
|---|---|---|
| Voluntary AD&D | $130.20 | $130.20 |
| Voluntary Critical Illness | $293.55 | $293.55 |
| Voluntary Limited Percentage Benefit | $1,622.67 | $1,622.67 |
| Voluntary Term Life | $793.66 | $793.66 |
| Health Savings Accounts | | |
| HSA Contributions | $5,850.00 | $5,850.00 |
| HSA Fees | $68.25 | $68.25 |
| Workers' Compensation Premium[5] | $0 | $0 |
| Paid Time Off Benefits | $0 | $0 |
| Insurance Benefits Provider Fee (Shea) | $0 | $0 |
| Cell Phone Stipend | $8,500.00 | $8,500.00 |
| **TOTAL** | **$243,111.58** | **$243,346.08** |

See Omnibus Declaration.

12. The Debtor hereby seeks to continue to honor the Employee Compensation Benefits provided to Employees, Contractors, and Temporary Employees on a postpetition basis in the ordinary course of business and pay all necessary costs incident to these arrangements. See Omnibus Declaration.

**1. Compensation and Withholding Obligations**

**a. Wages**

13. In the ordinary course of business, the Debtor incurs payroll obligations for base wages, salaries, and other compensation owed to Employees (the "Wages"). Employees are generally paid bi-weekly on Fridays, for the two-week period ending on the preceding Sunday (i.e., payments distributed on Friday, February 3, 2023, were for wages earned between Monday, January 16, 2023, through Sunday, January 29, 2023). Based on the Debtor's Employee base as of the Petition Date, Wages (including compensation to employee-executives) are expected to average approximately $288,00.22 per bi-weekly pay period. See Omnibus Declaration.

14. Certain Employees are owed accrued but unpaid Wages as of the Petition Date because the majority of Employees are paid in arrears as set forth above. Wages also may be due and owing

[5] The Debtor maintains its workers' compensation insurance policy with The Hartford. The Debtor pays its worker's compensation insurance premium in full annually. The Debtor's current worker's compensation policy is effective through October 18, 2023, and the related premium is paid current.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees. See Omnibus Declaration.

15. As of the Petition Date, the Debtor is in the middle of the bi-weekly period beginning January 30, 2023 and ending February 12, 2023 that is payable on the February 17, 2023 pay date. As such, the Debtor estimates it will owe Employees approximately $144,000.11 in accrued and unpaid prepetition Wages (excluding Payroll Taxes, Deductions, and Reimbursable Expenses (each as defined herein), collectively, the "Unpaid Wages"), all of which will become due and owing within the first 21 days of this Chapter 11 Case. Accordingly, by this Motion, the Debtor seeks authority to pay any accrued Unpaid Wages and continue to pay the Wages on a postpetition basis in the ordinary course of business and consistent with past practices. The Debtor only seeks to pay any Unpaid Wages up to the $15,150 priority cap set forth in § 507(a)(4) of the Bankruptcy Code pursuant to the Interim Order. The Debtor anticipates that only one Employee will have prepetition Unpaid Wages in excess the priority cap. The Debtor seeks authority to pay Unpaid Wages to the extent they exceed the priority cap only to the extent necessary and only upon entry of the Final Order granting the relief requested herein. See Omnibus Declaration.

**b. Contractor Fees**

16. As stated above, the Debtor utilizes the services of five Independent Contractors, who provide critical services to the Debtor. The Debtor hires the Independent Contractors directly and pays fees for services provided by the Independent Contractors (the "Contractor Fees") directly to such Independent Contractor, pursuant to the Debtor's operative agreement with such Independent Contractor. The Independent Contractor submits periodic invoices to the Debtor. The Contractor Fees are then processed through the Debtor's accounts payable system and the Independent Contractor is issued a live check, or money is wire transferred into their account, on the Friday following the submission of their invoice. As of the Petition Date, the Debtors pay an average of approximately $71,840 in Contractor Fees per month for the five Independent Contractors. The Contractors are not eligible to receive any of the benefits provided by the Debtors and further described in this Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17. As of the Petition Date, the Debtor estimates it will owe approximately $16,327.27 on account of accrued and unpaid Contractor Fees with respect to any of the Independent Contractors ("Unpaid Contractor Fees"), all of which will become due and owing within the first 21 days of this Chapter 11 Case. Accordingly, by this Motion, the Debtor seeks authority to pay any accrued Unpaid Contractor Fees and continue to pay the Contractor Fees on a postpetition basis in the ordinary course of business and consistent with past practices. The Debtor only seeks to pay any Unpaid Contractor Fees up to the $15,150 priority cap set forth in § 507(a)(4) of the Bankruptcy Code pursuant to the Interim Order. The Debtor seeks authority to pay Unpaid Contractor Fees in excess of the $15,150 priority cap, only to the extent necessary, and only upon entry of the Final Order granting the relief requested herein.

**c. Temporary Employee Fees**

18. As stated above, the Debtor utilizes the services of two Temporary Employees. The Debtor hires the Temporary Employees through staffing agencies (the "Temporary Employee Staffing Agencies") and pay fees for services provided by the Temporary Employees (the "Temporary Employee Fees") through the respective Temporary Employee Staffing Agency. The Temporary Employee Staffing Agency submits periodic invoices to the Debtor. The Temporary Employee Fees are then processed through the Debtor's accounts payable system and the Temporary Employee Staffing Agency is issued a live check or money is wire transferred into their account. As of the Petition Date, the Debtor pays an average of approximately $11,132.80 in Temporary Employee Fees per week for the two Temporary Employees. The Temporary Employees are not eligible to receive any of the benefits provided by the Debtors and further described in this Motion.

19. As of the Petition Date, the Debtor estimates it owes accrued and unpaid Temporary Employee Fees ("Unpaid Temporary Employee Fees") to the Temporary Employee Staffing Agencies in the total amount of approximately $11,132.80, all of which will become due and owing within the first 21 days of this Chapter 11 Case. Accordingly, by this Motion, the Debtor seeks authority to pay any accrued Unpaid Temporary Employee Fees and continue to pay the Temporary Employee Fees on a postpetition basis in the ordinary course of business and consistent with past practices. The Debtor only seeks to pay any Unpaid Temporary Employee Fees up to the $15,150

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

priority cap set forth in § 507(a)(4) of the Bankruptcy Code pursuant to the Interim Order. The Debtor seeks authority to pay Unpaid Temporary Employee Fees in excess of the $15,150 priority cap, only to the extent necessary, and only upon entry of the Final Order granting the relief requested herein.

**d. Withholding Obligations**

20. The Debtor is required by federal and state laws to withhold from Employees' Wages amounts related to federal, state, and local income taxes, Medicare taxes, Social Security, and state-issued employment insurance (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, or local taxing authority. Moreover, the Debtor is required by applicable statutory authority to match from its own funds Social Security, Medicare taxes, and certain additional amounts for federal and state unemployment insurance and short-term disability insurance (the "Employer Payroll Taxes" and, together with the Employee Payroll Taxes, the "Payroll Taxes"). Based on the Debtors' Employee-base as of the Petition Date, Payroll Taxes are expected to average approximately $96,417.71 per bi-weekly pay period.

21. The Debtor (through its provider) also routinely deducts certain amounts from Employees' Wages, including, without limitation, (a) garnishments, child support and service charges, and other similar deductions, and (b) other pre- and post-tax deductions (i) for transit and parking costs and (ii) on account of certain of the Employee Health and Welfare Benefits (as defined below), including health insurance premiums and health savings account contributions (collectively, the "Deductions," and together with the Payroll Taxes, the "Withholding Obligations").

22. The Debtor does not believe that it will have prepetition liabilities for accrued but unpaid Withholding Obligations that have been deducted but not remitted to the appropriate third-party payees (together, the "Unpaid Withholding Obligations"). The Debtor believes that the Unpaid Withholding Obligations generally are held in trust by the Debtor and are not property of its estate. As such, the Debtor does not believe it needs authority to remit such payments to the appropriate third parties. However, out of an abundance of caution, the Debtor seeks authority to remit the Unpaid Withholding Obligations to the respective third-party payees and to continue to honor and process the Withholding Obligations on a postpetition basis in the ordinary course of business and consistent with past practices.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**e. Payroll Processing**

23. The Debtor utilizes two outside service providers to manage its payroll. The Debtor utilizes an enterprise resource management tool ("ERM") provided by NetSuite, Inc. ("NetSuite") to hold and manage payroll information. The Debtor utilizes the services of Ceridian HCM, Inc. ("Ceridian") to provide payroll processing, payroll tax calculations and filings, garnishment support and filings, check preparation, and W-2 form processing (together with the ERM, the "Payroll Services"). Each bi-weekly payroll period, Ceridian calculates the amounts owed for certain Withholding Obligations. The Debtor processes payroll with the assistance of the Payroll Services on the Tuesday before a pay date. On the Wednesday before a pay date, the Debtor transfers to a payroll funding account the amounts necessary to satisfy their Wages and Withholding Obligations and other obligations. Ceridian then withdraws the funds from the payroll funding account and processes direct deposit transfers for the Wages to each Employee into the respective Employee's bank account or issues an actual paycheck (a "Paycheck") if an Employee has not elected for direct deposit.[6] Ceridian also remits the Payroll Taxes and garnishments to the applicable taxing authority or third-party payee, respectively. The Debtor calculates and remits those amounts owed on account of certain Employee Health and Welfare Benefits[7] directly to the applicable third party payees.

24. The Debtor utilizes the NetSuite ERM for a series of its internal processes that include payroll information management. The NetSuite ERM includes integrations with Ceridian that permit the Debtor to forward information to Ceridian for processing. As an integrated resource, the NetSuite ERM is billed to the Debtor and due in full upon invoicing. However, to manage cash flow, the Debtor takes advantage of a financing option for the NetSuite ERM fee provided by Wells Fargo, which permits the Debtor to finance the NetSuite fee over 36 months. The NetSuite ERM payroll

---

[6] Ceridian will also process payments and issue Paychecks: (a) to newly hired Employees who have opted for direct deposit but whose accounts have not yet been verified; (b) when state law requires the Debtor to pay outstanding owed amounts, including the Employee's wages or salary, immediately upon termination; and (c) if there was an error calculating or entering the Employee's time and the Employee cannot wait for that error to be remedied during the next pay cycle. Accordingly, the Debtor seeks authority to continue to issue Paychecks, as necessary, on a postpetition basis in the ordinary course of business and consistent with past practices.

[7] Benefits deductions occur 24 times per year, whereas bi-weekly pay dates occur 26 times per year.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

module (which includes Ceridian's fees) is $42,200, and the financed amount is payable quarterly in the amount of $3,516.67 (the "Payroll Processing Fees"). As of the Petition Date, the Debtor does not believe that there are outstanding Payroll Processing Fees.

25. The services provided by NetSuite and Ceridian are crucial to the smooth functioning of the Debtor's payroll system because they ensure that Employees are paid on time and Withholding Obligations are appropriately determined and amounts are remitted to taxing authorities and other third-party payees. As such, out of an abundance of caution, the Debtor seeks authority to satisfy any accrued but unpaid prepetition Payroll Processing Fees and continue to pay the Payroll Processing Fees on a postpetition basis in the ordinary course of business and consistent with past practices.

**f. Reimbursable Expenses**

26. The Debtors reimburse Employees and Independent Contractors for business expenses and other qualifying expenses incurred in carrying out their employment responsibilities, including, but not limited to, expenses for meals, hotels, flights, car rentals, parking, and fuel costs, and other qualifying expenses (collectively, the "Reimbursable Expenses"). Specifically, the Debtors rely on certain non-executive Employees and Independent Contractors working in the field to travel between multiple sites within a specific geographic region, sometimes weekly or even daily. Employees and Independent Contractors pay for incurred Reimbursable Expenses by using either a personal credit card or cash and then submit reimbursement requests. If the request is approved in accordance with internal policies and procedures, the Reimbursable Expenses are typically processed through the Debtor's payroll and included in the Employee's bi-weekly Wages. As of the Petition Date, the Debtor estimates that it will not have any outstanding prepetition Reimbursable Expenses.

27. Although the Debtor asks that reimbursement requests be submitted promptly, sometimes submission delays occur. Accordingly, Employees and Independent Contractors may submit reimbursement requests for prepetition expenses after the Petition Date. Reimbursable Expenses are incurred with the understanding that they will be reimbursed. Without continued reimbursement of the Reimbursable Expenses, Employees and Independent Contractors relying on these benefits would be saddled with additional costs, causing personal financial hardship. To avoid harming Employees and Independent Contractors who incurred Reimbursable Expenses, the Debtor

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

seeks authority to satisfy any accrued but unpaid prepetition Reimbursable Expenses, not including expenses for luxury items,[8] and to continue to pay the Reimbursable Expenses on a postpetition basis in the ordinary course of business and consistent with past practices.

**2. Employee Health and Welfare Benefits**

28. The Debtor offers health and welfare benefits to eligible Employees for medical and dental care coverage and certain other welfare benefits, including Life and AD&D Insurance Benefits, Disability Benefits, and the Workers' Compensation Policy (each as defined herein, and collectively, the "Employee Health and Welfare Benefits").

**a. Health Insurance Benefits**

29. The Debtors offer Employees the opportunity to participate in certain health benefit plans, including the Medical Plan and the Dental Plan (each as defined below, and collectively, the "Health Insurance Benefits"). The Health Insurance Benefits are customary for similarly-sized companies and the participants and their dependents have come to rely on the Health Insurance Benefits. Without the Health Insurance Benefits, participants would be forced to either forego health benefit coverage completely or obtain potentially expensive out-of-pocket insurance coverage, which would adversely affect Employee morale. As such, the Debtor seeks authority to pay or remit all prepetition amounts due on account of the Health Insurance Benefits and continue offering the Health Insurance Benefits and pay amounts owed thereunder on a postpetition basis in the ordinary course of business and consistent with past practices.

30. The Debtor offers medical, vision and prescription drug coverage to current Employees (the "Medical Plan"). Under the Medical Plan, participants have two benefit options—a health maintenance organization plan option with the Health Plan of Nevada (the "HMO Plan") and preferred provider organization plan option with Sierra Health & Life (the "PPO Plan"). The Medical Plan provides coverage for, among other medical costs, outpatient and inpatient services, preventative care, and prescription drugs. Approximately 36 Employees participate in the HMO Plan and

[8] The Debtor does not believe that any outstanding prepetition Reimbursable Expenses would be on account of luxury goods or services. For the avoidance of doubt, however, to the extent prepetition Reimbursable Expenses do include luxury items, the Debtor does not hereby request authority to pay such amounts.

approximately 57 Employees participate in the PPO Plan. Participants pay bi-weekly premiums that vary depending on the level of coverage selected under their chosen Medical Plan option. As of the Petition Date, the Debtor pays on average approximately $43,508.17 per month to provide the Medical Plan.

31. Shea Insurance, LLC ("Shea") serves as the Debtor's insurance broker and benefits provider. In this capacity, Shea assists the Debtor in developing a competitive employee benefits package for the Debtor's employees and act as an outside benefits department. For its services, Shea receives a monthly 5% fee (the "Benefits Management Fee") on amounts paid by the Debtor under the Medical Plan.

32. The Debtor also offer current Employees a dental plan (the "Dental Plan"). Approximately 79 Employees participate in the Dental Plan. Participants pay bi-weekly premiums that vary depending level of coverage selected under the Dental Plan. As of the Petition Date, the Debtor pays on average approximately $3,870.02 per month to provide the Dental Plan.

33. As of the Petition Date, the Debtor believes that it may owe standard monthly amounts on account of accrued and unpaid premiums in connection with the Health Insurance Benefits ("Unpaid Health Insurance Premiums") during the first 21 days of the Chapter 11 Case. As of the Petition Date, the Debtor does not believe that it owes amounts on account of accrued and unpaid Benefits Management Fees to Shea (the "Unpaid Benefits Management Fees"). The Debtor believes it is authorized to pay any postpetition Health Insurance Premiums or Benefits Management Fees in the ordinary course. For the avoidance of doubt, the Debtor respectfully requests authority to continue to pay the Health Insurance Premiums and Benefits Management Fees on a postpetition basis in the ordinary course of business and consistent with past practices.

**b. Health Savings Account**

34. Employees may contribute a portion of their Wages into a health savings account (the "HSA"), administered by HSA Bank. Employees may make pre-tax contributions to their HSA through payroll deductions to cover reimbursements of amounts paid for qualified medical expenses under the Medical Plan and the Dental Plan, up to the maximum amount permitted by the Internal Revenue Service. Currently, approximately 39 Employees utilize the HSA. The Debtor makes

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

contributions of approximately $150 per month to the participating Employees' HSA Accounts (the "HSA Contributions"). As of the Petition Date, the Debtor estimates that it owes approximately $5,850 in outstanding prepetition HSA Contributions, all of which will become due and owing within the first 21 days of this Chapter 11 Case. The Debtor does not believe that any Employee is owed amounts on account of HSA Contributions above the $15,150 priority cap set forth in § 507(a)(4) of the Bankruptcy Code. If any amounts are owed to an Employee above the $15,150 priority cap, the Debtor seeks to pay such amounts only upon entry of the Final Order granting the relief requested herein.

35. The Debtor also pays a monthly administration fee of approximately $54.25 to HSA Bank for administration of the Employee HSAs (the "HSA Fee"). The Debtor believes that it may owe the foregoing amounts on account of the HAS Fee within the first 21 days of the Chapter 11 Case and believes that it is authorized to pay any postpetition HSA Fee in the ordinary course. Nonetheless, for the avoidance of doubt, the Debtor respectfully requests authority to continue honoring its obligations under the HSA on a postpetition basis in the ordinary course of business and consistent with past practices.

36. As of the Petition Date, the Debtors have not deducted any amounts from Employees' Wages on account of Employee contributions to their HSA (the "Employee HSA Deductions") because the Debtor has yet to process payroll for the current period. Accordingly, as of the Petition Date, the Debtor does not believe it owes any amounts on account of Employee HSA Deductions and believes that it is authorized to collect and remit any postpetition Employee HSA Deductions in the ordinary course. Nonetheless, for the avoidance of doubt, the Debtor respectfully requests authority to continue honoring its obligations under the HSA on a postpetition basis in the ordinary course of business and consistent with past practices.

**c. Other Insurance Benefits**

37. In the ordinary course of business, the Debtor provides Employees with certain additional insurance benefits (the "Additional Insurance Benefits") through The Guardian Life Insurance Company of America ("Guardian"). The Additional Insurance Benefits, average number of covered employees, and average monthly premiums associated with each Additional Insurance

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Benefit are as follows:

| Benefit | Covered Employees | Average Monthly Premium |
|---|---|---|
| AD&D | 22 | $340.09 |
| Short Term Disability | 32 | $1,033.40 |
| Vision | 67 | $938.61 |
| Voluntary Hospital Indemnity | 19 | $202.89 |
| Voluntary AD&D | 51 | $130.20 |
| Voluntary Critical Illness | 26 | $293.55 |
| Voluntary Limited Percentage Benefit | 31 | $1,622.67 |
| Voluntary Term Life | 51 | $793.66 |

38. As of the Petition Date, the Debtor believes that it may owe the foregoing amounts on account of accrued and unpaid premiums in connection with the Additional Insurance Benefits ("Unpaid Additional Insurance Premiums") within the first 21 days of the Chapter 11 Case and believes that it is authorized to pay any postpetition Additional Insurance Premiums in the ordinary course. However, Employees have come to rely on the Additional Insurance Benefits as their sole form of wage-loss relief should they suffer a covered casualty. As such, the Debtors seek authority to (i) honor any accrued but unpaid prepetition amounts on account of the Additional Insurance Premiums; (ii) remit any prepetition deductions related to the Additional Insurance Benefits to the insurer; and (iii) to continue to provide the Additional Insurance Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

**d. Workers' Compensation Benefits**

39. In the ordinary course of business, the Debtor maintains workers' compensation insurance at the level required by statute for each state in which the Debtor conducts business (the "Workers' Compensation Policy"). The Workers' Compensation Policy are written by The Hartford Insurance Company. The Debtor is fully insured with respect to workers' compensation claims, so the Debtor does not incur any additional costs as a result of claims brought against such insurance.

40. For the October 18, 2022 through October 18, 2023 policy term, the total annual insurance premium is approximately $14,535 for the Workers' Compensation Policy (the "Workers' Compensation Premium"). The Workers' Compensation Premium is calculated in advance on an

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

annual basis, the amount of which is based on the Debtor's estimated gross payroll for the applicable policy year. The Workers' Compensation Premium is then subject to adjustment following an audit of the Debtor's actual earnings for the applicable policy year. The Workers' Compensation Premium is paid in full for the current policy year as of the Petition Date. The Debtor requests authority to continue to maintain the Workers' Compensation Policy and continue to pay any Workers' Compensation Premiums on a postpetition basis in the ordinary course of business and consistent with past practices.

**3. Paid Time Off**

41. In the ordinary course of business, the Debtor maintains two separate paid time off ("PTO") policies (collectively, the "PTO Policies")—one for nonexempt/hourly Employees (the "Nonexempt Policy") and another for salaried/exempt employees (the "Exempt Policy")—that both cover leisure/vacation, doctor's appointments, sick time, family time, personal time, or any other reason an Employee needs time off of work. Under the Nonexempt Policy, nonexempt/hourly Employees accrue between approximately 3.5 and 5.5 hours of PTO per week up to certain caps. The amount of a nonexempt/hourly Employee's available PTO time and the rate at which such time accrues is determined based on the nonexempt/hourly Employee's years of service with the Debtor. Under the Exempt Policy, salaried/exempt Employees are entitled to unlimited vacation subject to receiving certain internal authorizations. The Nonexempt Policy provides for payment of 40 hours of accrued PTO at termination whereas the Exempt Policy provides for no payment at termination.

42. The Debtor believes that the continuation of the PTO Policies in accordance with prior practice is essential to maintaining Employee morale during this Chapter 11 Case. Accordingly, the Debtor seeks authority to allow Employees to use accrued but unused PTO and to continue to honor the PTO Policies on a postpetition basis in the ordinary course of business and consistent with past practices.

**4. Cell Phone Stipend**

43. The Debtor does not provide company-issued cell phones to Employees but, instead, provides for a monthly $100 stipend to Employees to compensate Employees for work-related voice and data charges charged to their personal cell phone accounts (the "Cell Phone Stipend"). The

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Debtor pays the $100 monthly stipend to Employees bi-weekly through payroll. As of the Petition Date, the Debtor pays approximately $8,500 per month on account of the Cell Phone Stipend to Employees. As of the Petition Date, the Debtors estimate there is an outstanding balance of approximately $8,500 outstanding on account of prepetition amounts related to the Cell Phone Stipend, all of which will become due and owing within the first 21 days of this Chapter 11 Case. By this Motion, the Debtor requests authority to pay the Cell Phone Stipend and, in their discretion, continue the Cell Phone Stipend on a postpetition basis in the ordinary course of business and consistent with past practices.

## III.

## LEGAL ARGUMENT

### A. Certain Employee Compensation and Benefits Are Entitled to Priority.

Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle the majority of the Employee Compensation and Benefits to priority treatment. As priority claims, the Debtor is required to pay these claims in full to confirm a chapter 11 plan. See 11 U.S.C. § 1129(a)(9)(B). To the extent that an Employee, Independent Contractor, or Temporary Employee receives no more than $15,150 on account of claims entitled to priority, the relief sought with respect to compensation only affects the timing of payments to Employees and does not have any material negative impact on recoveries for general unsecured creditors. Indeed, the Debtor submits that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties. Finding, attracting, and training new qualified talent would be extremely difficult and would most likely require higher salaries, guaranteed bonuses, and more comprehensive compensation packages than are currently provided to Employees.

### B. Payment of Certain Employee Compensation and Benefits Is Required by Law.

The Debtor seeks authority to pay the Withholding Obligations to the appropriate third-party payees. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from Employees' Wages. Indeed, certain Withholding Obligations are not property of the Debtor's estate because the Debtor has withheld such amounts from Employees' Wages on another party's behalf. See 11 U.S.C. § 541(b)(1), (d).

Additionally, federal and state laws require the Debtor to withhold certain tax payments from Employees' Wages and to pay such amounts to the appropriate taxing authority. See, e.g., 26 U.S.C. §§ 6672, 7501(a); City of Farrell v. Sharon Steel Corp., 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); In re DuCharmes & Co., 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations are likely not property of the Debtor's estate, the Debtor requests authority to transmit the Withholding Obligations to the proper parties in the ordinary course of business.

Similarly, state laws require the Debtor to maintain the Workers' Compensation Policy. If the Debtor fails to maintain the Workers' Compensation Policy, state laws may prohibit the Debtors from operating in those jurisdictions. Payment of all obligations related to the Workers' Compensation Policies is therefore crucial to the Debtor's continued operations and the success of this Chapter 11 Case.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**C. Payment of the Employee Compensation and Benefits Is Warranted Under § 363(b)(1) of the Bankruptcy Code and the Doctrine of Necessity.**

Courts generally acknowledge that it is appropriate to authorize the payment (or other special treatment) of prepetition obligations in appropriate circumstances. See In re Adams Apple, Inc., 829 F.2d 1484, 1490 (9th Cir. 1987) (The Bankruptcy Code policy supporting "rehabilitation of debtors . . . may supersede the policy of equal treatment. Cases have permitted unequal treatment of pre-petition debts when necessary for rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and (iv) peripheral benefits under labor contracts."); see also In re Ionosphere Clubs, Inc., 98 B.R. 175 (Bankr. S.D.N.Y. 1989) (granting authority to pay prepetition wages); Armstrong World Indus., Inc. v. James A. Phillips, Inc. (In re James A. Phillips, Inc.), 29 B.R. 391, 398 (S.D.N.Y. 1983) (granting authority to pay prepetition claims of suppliers who were potential lien claimants). In authorizing payments of certain prepetition obligations, courts have relied on several legal theories, rooted in §§ 1107(a), 1108, 363(b), 507, and 105(a) of the Bankruptcy

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Code.

Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, a debtor in possession "is a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value." Id. Some courts have noted that there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that the preplan satisfaction of prepetition claims would be a valid exercise of the debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id.

Consistent with a debtor's fiduciary duties, courts have also authorized payment of prepetition obligations under § 363(b) of the Bankruptcy Code where a sound business purpose exists for doing so. See, e.g., Ionosphere Clubs, 98 B.R. at 175 (discussing prior order authorizing payment of prepetition wage claims pursuant to § 363(b) and noting that relief is appropriate where payment is needed to "preserve and protect its business and ultimately reorganize, retain its currently working employees and maintain positive employee morale."); Armstrong, 29 B.R. at 397 (relying on § 363 to allow contractor to pay prepetition claims of suppliers who were potential lien claimants because the payments were necessary for general contractors to release funds owed to debtors). The business judgment standard requires that a debtor "articulate some business justification, other than mere appeasement of major creditors." Ionosphere Clubs, 98 B.R. at 175.

This Court may also authorize payment of prepetition claims in appropriate circumstances based on § 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court and empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a); see also Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 506 (9th Cir. 2002). Under § 105(a), courts may permit payments on account of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, this Court may use its power under § 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

of necessity"). In re NVR L.P., 147 B.R. 126, 127-28 (Bankr. E.D. Va. 1992).

The "doctrine of necessity" has been recognized within the Ninth Circuit. See Adams Apple, Inc., 829 F.2d at 1490 supra; In re Berry Good, LLC, 400 B.R. 741, 747 (Bankr. D. Ariz. 2008) ("A clean line must be drawn between pre- and post-petition debt, and it is unlawful to blur those lines, ***except in rare and exceptional circumstances, such as with the wage claimants***.") (emphasis added); In re Pettit Oil Co., No. 13-47285, 2015 WL 6684225, at *8 (Bankr. W.D. Wash. Oct. 22, 2015) (denying motion for reconsideration of order granting motion to pay prepetition supplier charges where "the Ninth Circuit held that it is permissible to treat prepetition debts unequally when necessary for rehabilitation") (citing Adams Apple, 829 F.2d at 1490). The rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." Ionosphere Clubs, 98 B.R. at 175-76; see also In re Just For Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("A general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process."); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetitionworker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately."); 2 Collier On Bankruptcy, 105.02[4][a] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2015) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

Courts also have permitted postpetition payment of prepetition claims pursuant to § 105(a) in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. See, e.g., In re UNR Indus.,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Inc., 143 B.R. 506, 520 (Bankr. N.D. Ill. 1992); Ionosphere Clubs, 98 B.R. at 177.

This flexible approach is especially important where prepetition creditors, here Employees and related third parties, provide vital goods or services to a debtor that would be unavailable if the debtor did not satisfy its prepetition obligations. For example, in In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), the bankruptcy court stated that "a bankruptcy court may exercise its equity powers under §105(a) [of the Bankruptcy Code] to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" Id. (citation omitted). The court explained that "a *per se* rule proscribing the payment of pre-petition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932.

The Debtor submits that the relief requested in this Motion represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is therefore justified under §§ 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6003. Paying prepetition wages, employee benefits, and similar items will benefit the Debtor's estate and its creditors by allowing the Debtor's business operations to continue without interruption. The Debtor believes that without the relief requested herein, Employees may seek alternative employment opportunities, perhaps with the Debtor's competitors. Such a development would deplete the Debtor's workforce, thereby hindering the Debtor's ability to operate its business. The loss of valued Employees and resulting need to recruit new personnel (and the costs attendant thereto) would be distracting at this crucial time when the Debtor needs to focus on stabilizing its business operations. Accordingly, there can be no doubt that the Debtor must do its utmost to retain its workforce by, among other things, continuing to honor all wage, benefits, and related obligations, including the prepetition Employee Compensation and Benefits.

Further, the majority of Employees rely exclusively on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtor is not permitted to honor its obligations related thereto. Failure to satisfy such obligations will jeopardize Employee morale and loyalty at a time when Employee support is critical to the Debtor's business. Likewise, if this Court does not authorize the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Debtor to honor its various obligations under the insurance programs described herein, Employees will not receive health coverage and, thus, may be obligated to pay certain health care claims that the Debtor has not satisfied. The loss of health care coverage will result in considerable anxiety and potential financial burden for Employees (and likely attrition) at a time when the Debtor needs such Employees to perform their jobs at peak efficiency. Additionally, as set forth above, Employee attrition would cause the Debtor to incur additional expenses to find appropriate and experienced replacements, disrupting the Debtor's operations at this critical juncture.

The importance of a debtor's employees to its operations, and the availability of emergency relief under the doctrine of necessity generally, has been repeatedly recognized by courts in this district, and such courts have granted relief similar to the relief requested herein. See, e.g., In re Front Sight Mgmt., LLC, No. 22-11824-abl, Docket Nos. 50, 81, 141 (Bankr. D. Nev. 2022) (granting relief related to first day motions to authorize continued use of prepetition cash management system and accounts, payment of prepetition wages, and honor prepetition customer programs and obligations); In re Basic Water Co., No. 22-13252-mkn, Docket Nos. 51, 52, 97, 98 (Bankr. D. Nev. 2022) (granting authorization for adequate protection procedures for utilities and continued use of prepetition cash management); In re Musclepharm Corp., No. 22-14422-nmc, Docket Nos. 75, 76 (Bankr. D. Nev. 2023) (granting motions to maintain prepetition bank accounts and pay prepetition wages); In re Splash News & Picture Agency, LLC, No. 21-11377-abl, Docket Nos. 58, 60 (Bankr. D. Nev. 2021) (authorizing payment of prepetition wage claims and use of prepetition bank accounts and cash management system); In re Alpha Guardian, a Nev. Corp., No. 20-11016-mkn, Docket Nos. 62, 63, 70 (Bankr. D. Nev. 2020) (granting motions to approve payment of prepetition wages, adequate protection of prepetition utilities providers, honor prepetition customer programs and obligations); In re Red Rose, Inc. d/b/a Petersen-Dean, No. 20-12814-mkn, Docket Nos. 88, 92, 93, 144, 155, 156, 313, 917 (Bankr. D. Nev. 2020) (authorizing payment of prepetition critical vendor claims, adequate protection to utilities on prepetition claims, payment of prepetition trust fund taxes, continued use of prepetition bank accounts and cash management system, and pay prepetition vendor

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

liabilities and customer reimbursements).[9] Accordingly, the Debtor respectfully requests that the Court authorize the Debtor to pay any prepetition amounts accrued and unpaid on account of the Employee Compensation and Benefits and to continue the Employee Compensation and Benefits on a postpetition basis in the ordinary course of business and consistent with past practices.

**D. The Requirements of Bankruptcy Rule 6003 Are Satisfied.**

Pursuant to Bankruptcy Rule 6003, this Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm. Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. See, e.g., In re Ames Dep't Stores, Inc., 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001(c)(2)); see also FED. R. BANKR. P. 6003, Committee Notes (noting that cases applying Bankruptcy Rule 4001(b)(2) and (c)(2) may "provide guidance" for relief under Bankruptcy Rule 6003).

As described above, the Debtor's Employees, Independent Contractors, and Temporary Employees are vital to the Debtor's operations. Failure to satisfy obligations with respect to these persons in the ordinary course of business during the first 21 days of the Debtor's Chapter 11 Case will jeopardize their loyalty and trust, causing Employees, Independent Contractors, and Temporary Employees to leave the Debtor's employ, severely disrupting the Debtor's operations at a critical juncture.

Moreover, the Debtor's Employees, Independent Contractors, and Temporary Employees rely on the Employee Compensation and Benefits to pay their living expenses and the Debtor's inability to satisfy such obligations in the ordinary course of business could be financially ruinous to the Debtor's Employees, Independent Contractors, and Temporary Employees. Accordingly, the Debtor submits it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate payment of the Employee Compensation and Benefits.

///

[9] Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**E. Waiver of Bankruptcy Rules 6004(a) and 6004(h) Are Appropriate.**

To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## IV.

## RESERVATION OF RIGHTS

Nothing contained in this Motion is intended or should be construed as an admission as to the validity of any claim against the Debtor, a waiver of the Debtor's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under § 365 of the Bankruptcy Code. The Debtor expressly reserves its right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or waive of the Debtor's rights to subsequently dispute such claim.

## V.

## NOTICE

The Debtor has provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Nevada (United States Trustee's Office Region 17, 300 Las Vegas Boulevard South Suite 4300 Las Vegas, NV 89101); (b) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims, filed pursuant to Bankruptcy Rule 1007(d); and (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Debtor respectfully submits that no other or further notice is necessary.

## VI.

## NO PRIOR REQUEST

No prior request for the relief sought in this Motion has been made to this or any other court.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## VII.

## CONCLUSION

The Debtor respectfully requests that this Court enter an interim order and final order, substantially in the forms attached hereto as **Exhibit 1** and **Exhibit 2**, respectively, and grant the Debtor such other and further relief as is just and proper under the circumstances.

Dated this 7th day of February 2023.

**FOX ROTHSCHILD LLP**

By: *\/s/Brett Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

**EXHIBIT 1**

**PROPOSED ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. BK-23-10423-mkn

Chapter 11

**INTERIM ORDER GRANTING DEBTOR'S MOTION TO (I) PAY PREPETITION EMPLOYEE WAGES AND POLICIES; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Hearing Date: OST PENDING
Hearing Time: OST PENDING
Estimated Time for Hearing: 20 minutes

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of an interim order (the "Interim Order") (i) authorizing, but not directing, the Debtor (a) to pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; (ii) scheduling a final hearing to consider entry of the Final Order, and (iii) granting related relief as more fully set forth in the Motion; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that the Debtor provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion and the supporting Omnibus Declaration, having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing") and having considered the entire record before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. The Motion is GRANTED on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held on February ___, 2023, at __:__ _.m., prevailing Pacific Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before February ___, 2023, and shall be served on: (a) proposed counsel to the Debtor (Brett A. Axelrod, Fox Rothschild LLP, 1980 Festival Plaza Drive, Suite 700, Las

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Vegas, Nevada 89135, baxelrod@foxrothschild.com, nkoffroth@foxrothschild.com, zwilliams@foxrothschild.com); (b) the Office of the United States Trustee for the District of Nevada (United States Trustee's Office Region 17, 300 Las Vegas Boulevard South Suite 4300 Las Vegas, NV 89101); (c) the entities listed on the List of Creditors Holding the 20 Largest Unsecured Claims, filed pursuant to Bankruptcy Rule 1007(d); and (d) all parties who have requested notice pursuant to Bankruptcy Rule 2002. In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

3. The Debtor is authorized, but not directed, to continue and/or modify the Employee Compensation and Benefits in the ordinary course of business, in accordance with the Debtor's prepetition policies and practices, and, in the Debtors' discretion, to pay and honor prepetition amounts related thereto in an aggregate interim amount not to exceed $________; provided that, pending entry of the Final Order, the Debtors shall not honor any Employee Compensation and Benefits obligations that exceed the priority amounts set forth in § 507(a)(4) and (a)(5) of the Bankruptcy Code and shall not pay any prepetition amounts on account of Reimbursable Expenses that exceed the priority amounts set forth in § 507(a)(4) and (a)(5) of the Bankruptcy Code; provided further that nothing in this Interim Order shall be deemed to authorize the payment of any amounts which are subject to § 503(c) of the Bankruptcy Code.

4. Nothing in this Interim Order shall be deemed to authorize the Debtor to pay any amounts to an insider that constitute an incentive compensation program, and the Debtor shall seek authority to make any such payments to insiders by separate motion filed with this Court.

5. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Interim Order or any payment made pursuant to this Interim Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtor, a waiver of the Debtor's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.

6. Nothing in the Motion or this Interim Order shall impair the ability of the Debtor to contest the validity or amount of any payment made pursuant to this Interim Order.

7. Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Interim Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, Independent Contractor, Temporary Employee, or other person or entity.

8. The Debtor is authorized to issue postpetition checks, or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits or other payment authorized by this Order.

9. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

10. Notice of the Motion, as stated therein, constitutes good and sufficient notice of such Motion, and the requirements of the local rules of this Court are satisfied by such notice.

11. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12. The notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

13. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

14. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By: *<u>/s/Brett A. Axelrod</u>*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY: ______________________________

Trial Attorney for United States Trustee,
Tracy Hope Davis

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Trial Attorney
Office of the United States Trustee

_Approved / Disapproved___

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

**EXHIBIT 2**

**PROPOSED ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. BK-23-10423-mkn

Chapter 11

**FINAL ORDER AUTHORIZING DEBTOR'S MOTION TO (I) PAY PREPETITION EMPLOYEE WAGES AND POLICIES; AND (II) AUTHORIZING AND DIRECTING FINANCIAL INSTITUTIONS TO HONOR CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Hearing Date: OST PENDING
Hearing Time: OST PENDING
Estimated Time for Hearing: 20 minutes

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Upon the motion (the "Motion")[1] of the above-captioned debtor and debtor in possession (the "Debtor") for entry of a final order (the "Final Order") (i) authorizing, but not directing, the Debtor (a) to pay prepetition wages, salaries, other compensation, and reimbursable expenses, and (b) continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; (ii) scheduling a final hearing to consider entry of the Final Order, and (iii) granting related relief as more fully set forth in the Motion; and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this Chapter 11 Case and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and the Court having found that the Debtor provided appropriate notice of the Motion and the opportunity for a hearing on the Motion under the circumstances; and the Court having found that no other or further notice need be provided; and the Court having reviewed the Motion and the supporting Omnibus Declaration, having heard the statements in support of the relief requested therein at a hearing before the Court (the "Hearing") and having considered the entire record before the Court; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

1. The Motion is GRANTED on a final basis as set forth herein.

2. The Debtor is authorized, but not directed, to continue and/or modify the Employee Compensation and Benefits in the ordinary course of business, in accordance with the Debtor's prepetition policies and practices, and, in the Debtors' discretion, to pay and honor prepetition amounts related thereto; provided that, prior to making any payments on account of the Employee

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Compensation and Benefits that exceed the priority amounts set forth in §§ 507(a)(4) and 507(a)(5), the Debtor will provide notice to (a) the Office of the United States Trustee for the District of Nevada (United States Trustee's Office Region 17, 300 Las Vegas Boulevard South Suite 4300 Las Vegas, NV 89101); (b) the official committee of unsecured creditors (if any) appointed in these chapter 11 cases (the "Committee") and its counsel; and (c) all parties who have requested notice pursuant to Bankruptcy Rule 2002; and provided further that nothing in this Final Order shall be deemed to authorize the payment of any amounts which are subject to § 503(c) of the Bankruptcy Code.

3. Nothing in this Final Order shall be deemed to authorize the Debtor to pay any amounts to an insider that constitute an incentive compensation program, and the Debtor shall seek authority to make any such payments to insiders by separate motion filed with this Court.

4. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained in the Motion or this Final Order or any payment made pursuant to this Final Order shall constitute, nor is it intended to constitute, an admission as to the validity or priority of any claim or lien against the Debtor, a waiver of the Debtor's rights to subsequently dispute such claim or lien, or the assumption or adoption of any agreement, contract, or lease under § 365 of the Bankruptcy Code.

5. Nothing in the Motion or this Final Order shall impair the ability of the Debtor to contest the validity or amount of any payment made pursuant to this Final Order.

6. Notwithstanding the relief granted herein or any action taken hereunder, nothing contained in this Final Order shall create any rights in favor of, or enhance the status of any claim held by, any Employee, Independent Contractor, Temporary Employee, or other person or entity.

7. The Debtor is authorized to issue postpetition checks, or to affect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of this Chapter 11 Case with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits or other payment authorized by this Final Order.

8. The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

9. Notice of the Motion, as stated therein, constitutes good and sufficient notice of such Motion, and the requirements of the local rules of this Court are satisfied by such notice.

10. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

11. The notice of the Motion satisfies the requirements of Bankruptcy Rule 6004(a).

12. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

13. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By: *_/s/Brett A. Axelrod_*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

BY: ____________________________

Trial Attorney for United States Trustee,
Tracy Hope Davis

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Trial Attorney
Office of the United States Trustee

Approved / Disapproved

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #