BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

Electronically Filed February 7, 2023

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. BK-23-10423-mkn

Chapter 11

**VERIFIED STATEMENT OF BRETT A. AXELROD IN SUPPORT OF EMERGENCY FIRST DAY APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF FOX ROTHSCHILD LLP AS DEBTOR'S COUNSEL, EFFECTIVE AS OF THE PETITION DATE**

Hearing Date: OST PENDING
Hearing Time: OST PENDING

Brett A. Axelrod, a partner at Fox Rothschild LLP, engaged in the practice of law, submits the following statement (the "Verified Statement") in accordance with sections 327(a), 329, 1107 and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1108 of the Bankruptcy Code,[1] Bankruptcy Rules 2014(a), 2016 and 5002 and Local Rule 2014, and being duly sworn, deposes and declares under the penalty of perjury:

1. I am over the age of 18, am mentally competent, have personal knowledge of the facts in this matter, except where stated as based upon information and belief, and if called upon to testify, could and would do so.

2. I am a partner of Fox Rothschild, which maintains offices at, among other locations: 1980 Festival Plaza Drive, Suite 700, Las Vegas, Nevada 89135.

3. I make this statement in support of the *Application for Order Authorizing Retention and Employment of Fox Rothschild LLP as Debtor's Counsel, Effective as of the Petition Date* (the "Application"), filed by Cash Cloud, Inc. ("Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case").

4. Pursuant to Bankruptcy Rules 2014 and 9034, a copy of this Verified Statement will be contemporaneously transmitted to the Office of the United States Trustee (the "UST") with this filing. Fed. R. Bankr. P. 2014, 9034; Guidelines, § 2.1.

5. Fox Rothschild has a national practice and has experience in all aspects of the law that may arise in this Chapter 11 Case including, among others, bankruptcy, financial restructuring, corporate, labor and employment, tax and litigation matters. Fox Rothschild is particularly well-suited for the representation required by Debtor.

6. Before the Petition Date, Fox Rothschild assisted the Debtor in negotiations with creditors, evaluation of assets and restructuring alternatives, and corporate services. Due to the myriad of pressing matters that necessitated the filing of the Chapter 11 Case and that arose as a result thereof, Fox Rothschild's work since the commencement of the Chapter 11 Case has been performed on an emergency basis. The complexity, intense activity and speed that have characterized this case has necessitated that Fox Rothschild focus immediate attention on time-sensitive matters and promptly devote substantial resources to the representation of Debtor pending

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

approval of this Application. Fox Rothschild has benefitted the estate by its diligence in prosecuting the Chapter 11 Case.

7. The terms of Fox Rothschild's retention are set forth in the Engagement Agreement entered into on January 23, 2023, a true and correct copy of which is attached hereto as **Exhibit 1**.

8. In this Chapter 11 Case, Debtor anticipates that Fox Rothschild will render general legal services as needed, including with respect to bankruptcy, financial restructuring, corporate, labor and employment, tax and litigation matters. The professional services that Fox Rothschild will render to Debtor may include, but shall not be limited to, the following:

a. Advising Debtor of its rights and obligations and performance of its duties during administration of this Chapter 11 Case;

b. Attending meetings and negotiations with other parties in interest on Debtor's behalf in this Chapter 11 Case;

c. Taking all necessary actions to protect and preserve Debtor's estate including: the prosecution of actions, the defense of any actions taken against Debtor, negotiations concerning all litigation in which Debtor is involved, and objecting to claims filed against the estate which are believed to be inaccurate;

d. Seeking this Court's approval and confirmation of a plan of reorganization, the accompanying disclosure statement, and all papers and pleadings related thereto and in support thereof and attending court hearings related thereto;

e. Representing Debtor in all proceedings before this Court or other courts of jurisdiction in connection with this Chapter 11 Case, including preparing and/or reviewing all motions, answers and orders necessary to protect Debtor's interests;

f. Assisting Debtor in developing legal positions and strategies with respect to all facets of this proceeding;

g. Preparing on Debtor's behalf necessary applications, motions, answers, orders and other documents; and

h. Performing all other legal services for Debtor in connection with this Chapter 11 Case and other general corporate and litigation matters, as may be necessary.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

9. Subject to this Court's approval of this Application, Fox Rothschild is willing to serve as Debtor's counsel and to perform the services described above.

10. Fox Rothschild is also well suited for the type of representation required by Debtor. Fox Rothschild has a national practice and has experience in all aspects of the law that may arise in this Chapter 11 Case including, among others, bankruptcy, financial restructuring, corporate, labor and employment, tax and litigation matters.

11. A summary of the qualifications and experience of those attorneys who are expected to render services to Debtor is attached hereto as **Exhibit 2**. As set forth therein, Fox Rothschild is well qualified to represent Debtor.

12. Fox Rothschild has informed Debtor that to the best of my knowledge, information and belief, other than as may be set forth herein and exhibits attached hereto, Fox Rothschild does not hold or represent any interest adverse to Debtor or Debtor's estate, and Fox Rothschild is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section 1107(b), and used in Bankruptcy Code section 327(a), in that:

a. Fox Rothschild, its partners, of counsel and associates:

i. are not creditors or insiders of Debtor;

ii. are not and were not, within two years before the date of this application, a director, officer, or employee of Debtor, as specified in subparagraph (c) of 11 U.S.C. § 101(14); and

iii. do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders except as stated herein or in the Axelrod Verified Statement.

b. As required by Bankruptcy Rules 2014(a) and 5002, Fox Rothschild confirms that it does not have any connections with the Bankruptcy Judge overseeing the Chapter 11 Case, the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the District of Nevada, or any person employed in the office of the United States Trustee for the District of Nevada, other than as disclosed in **Exhibit 3** attached hereto. Fox Rothschild will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

13. Prior to Fox Rothschild's engagement by Cash Cloud, Fox was employed by Chris McAlary to provide advice with respect to Cash Cloud's and its board of directors' liability for a vendor's failure to pay sale and use taxes. Fox reviewed secured loan documents, perfection issues, insider loans to and from Cash Cloud, executive employment agreements, and WARN Act issues. When it became clear that the issues presented and advice given concerned Cash Cloud, not Mr. Alary personally, Cash Cloud engaged Fox and the prior engagement dropped away. Prior to the Petition Date, Fox received $5,265.50 from Cash Cloud as payment for services rendered in connection with this prior engagement.

14. Debtor has been advised that Fox Rothschild currently or formerly represents or has a litigation or transactional adversity to the creditors of Debtor identified on **Exhibit 3** attached hereto in matters unrelated to Debtor or Debtor's Chapter 11 Case.

15. Debtor has been advised that Fox Rothschild has conducted a thorough search using its computerized conflicts check system, based on the information received to date from Debtor, and that Fox Rothschild attorneys have made diligent efforts to search the Firm's records and assemble pertinent information for purposes of this Verified Statement with respect to Fox Rothschild's connections with Debtor's creditors, parties in interest and their respective attorneys and accountants. If Debtor obtains additional information regarding its creditors and/or parties in interest, Debtor will forward such additional information to Fox Rothschild to run an updated conflict search and file a supplement to this Verified Statement.

16. Debtor has been advised that, from time to time, because of the nature of Fox Rothschild's practice, Fox Rothschild may be engaged by one or more of Debtor's creditors in matters entirely unrelated this Chapter 11 Case, or may represent parties adverse to certain creditors in this Chapter 11 Case on matters entirely unrelated to this Chapter 11 Case. Fox Rothschild may represent clients in litigation, transactions, insolvency and other matters throughout the United States, *provided, however*, that any such matter will not relate directly or indirectly to the representation of Debtor in this Chapter 11 Case.

17. Since December, 2022, Fox Rothschild has provided Debtor with a variety of legal services relating to Debtor's restructuring efforts and preparation for the chapter 11 filing, including

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

but not limited to negotiations with creditors, evaluation of assets and restructuring alternatives, and corporate services (the "Restructuring Services"). Fox Rothschild was paid for these Restructuring Services in the ordinary course of business.

18. Before the Petition Date, Debtor provided Fox Rothschild with payments aggregating $55,265.50 for legal services rendered or to be rendered in connection with the Restructuring Services.[2]

19. Accordingly, all fees and expenses for Restructuring Services rendered to Debtor prior to the Petition Date were paid prior to the Petition Date or written off. Fox Rothschild has no claims against Debtor for any unpaid fees and expenses incurred prior to the Petition Date.

20. Fox Rothschild has agreed to accept a $450,000.00 cap on its compensation for services rendered in connection with the Debtor's first day pleadings, attendance at the section 341 meeting of creditors, any asset sale process, lease rejection and financing motions. Excluded from the cap are services rendered in connection with valuation of the company and its assets, and any plan of reorganization and disclosure statement, prior approval of which by either the independent director or the CEO is required. Debtor has agreed to pay Fox Rothschild's professional fees on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by the Firm.

21. Answers to the UST Guidelines for Larger Cases, Section D.2:

a. *Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?*

No.

b. *Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?*

No.

c. *If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have*

[2] Fox took a voluntary reduction in fees of $225,283.27.

*changed postpetition, explain the difference and the reasons for the difference.*

Fox Rothschild commenced work for the Debtors in December, 2022 on an hourly basis, utilizing the professionals with the rates set forth below:

| Professional | Hourly Rate |
|---|---|
| Brett A. Axelrod – Partner | $915.00 |
| Keith C. Owens – Partner | $770.00 |
| Audrey Noll – Counsel | $780.00 |
| Nicholas A. Koffroth – Associate | $580.00 |
| Zachary Williams – Associate | $355.00 |
| Patricia M. Chlum – Paralegal | $345.00 |

Fox Rothschild's billing rates and material financial terms have not changed postpetition.

d. *Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?*

Debtor has been provided with an estimated aggregate monthly budget of $110,000.00. The initial staffing of this Chapter 11 Case was provided in the Engagement Agreement and Debtor's CEO is the one who approves additional staffing as different needs develop in this Chapter 11 Case.

22. As is the case with respect to rates charged in non-bankruptcy matters, Fox Rothschild's rates are subject to periodic adjustment to reflect economic and other conditions. Fox Rothschild's current hourly rates applicable to the principal attorneys and paraprofessionals proposed to represent Debtor are as reflected in paragraph 21(c) above.

23. As this Chapter 11 Case proceeds, additional Fox Rothschild partners, "counsel," associates and paraprofessionals may be assigned to work on this case. It is also possible that Fox Rothschild's representation of Debtor will require the active participation of attorneys from other departments in the Firm, in addition to the bankruptcy and restructuring lawyers assigned to this Chapter 11 Case, as listed above. To the fullest extent possible, lawyers having the requisite expertise who already have knowledge with respect to the areas and/or the matters involved will be assigned. Consistent with the ranges of hourly rates described above, the hourly rates of the other partners,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

"counsel," associates and paraprofessionals in the Firm that hereafter may act for Debtor may be higher or lower than those of the persons listed above.

24. Generally, Fox Rothschild's hourly rates are in the following ranges:

| Professional | Hourly Rate |
|---|---|
| Partners | $310 to $1450 |
| Counsel | $245 to $850 |
| Associates | $240 to $585 |
| Legal Assistants/Paralegals | $60 to $425 |

25. There is no agreement of any nature, other than with respect to the attorneys at Fox Rothschild, as to the sharing of compensation to be paid to Fox Rothschild.

26. Fox Rothschild will seek compensation for its fees and expenses incurred on behalf of Debtor, consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the United States Trustee Guidelines, and any applicable rules or orders of this Court, from Debtor's estate.

27. Fox Rothschild's hourly rates are set at a level designed to fairly compensate the Firm for the work of its attorneys and paraprofessionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by the Firm from time to time. It is Fox Rothschild's policy to charge, in all areas of practice, for all expenses incurred in connection with a particular representation, including, among other things, photocopying, witness fees, travel expenses, certain secretarial and other overtime expenses, filing and recording fees, long distance telephone calls, postage, express mail and messenger charges, computerized legal research charges and other computer services, expenses for "working meals," and telecopier charges. The Firm will charge Debtor's estate for these expenses in a manner and at rates consistent with charges made generally to its other clients. Fox Rothschild believes that it is more accurate and efficient to charge these expenses to the particular matter involved rather than increasing the hourly rates and spreading the expenses among all clients.

28. Fox Rothschild is unwilling to provide services during any period for which its employment is not authorized.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my information, knowledge and belief.

DATED this 7th day of February 2023.

*/s/Brett Axelrod*
BRETT AXELROD

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# EXHIBIT 1



DocuSign Envelope ID: 5BB19E26-24DC-4A4F-8969-53536C9FEE4E Case 23-10423-mkn Doc 14 Entered 02/07/23 17:17:24 Page 11 of 35

Fox Rothschild LLP
ATTORNEYS AT LAW

One Summerlin
1980 Festival Plaza Dr.
Suite 700
Las Vegas, NV 89135
Tel (702) 262-6899 Fax (702) 597-5503
www.foxrothschild.com

BRETT A. AXELROD
Direct No: 702.699.5901
Email: BAxelrod@FoxRothschild.com

January 23, 2023

Cash Cloud Inc. dba Coin Cloud
c/o Chris McAlary
10725 Beringer Dr.
Las Vegas, NV 89144

**Re: Fox Rothschild LLP Engagement Letter (revised)**

Dear Mr. McAlary:

This letter will confirm that Cash Cloud Inc. dba Coin Cloud ("Client") has retained Fox Rothschild LLP ("Firm") to represent Client in connection with the matter described below. The Engagement Letter ("Letter"), along with the attached Standard Terms of Engagement ("Standard Terms"), comprise the Engagement Agreement ("Agreement") between Client and the Firm and explain the terms under which the Firm will provide legal services to Client in this matter.

**Scope of Work.** Client has engaged the Firm to provide the following services: Client and Firm have agreed to a post-petition flat fee of $450,000 through a 363 sale process. Client agrees that any work on the confirmation process, including the plan and disclosure statement, will be billed at the Firm's standard hourly rates, however, such work will need to be approved by either the independent director or CEO ("Engagement"). Client has not engaged the Firm, nor has the Firm agreed, to represent Client regarding any other matter. If Client requires the Firm's services in connection with any other matter, please let me know.

**Identity of Client.** The Firm's only client in the Engagement is the party identified as Client in the first paragraph of this Letter. The Engagement is not an agreement to represent any of Client's affiliates, subsidiaries, parents or related individuals, officers, directors, partners, members, shareholders, employees, independent contractors or agents (collectively, "Affiliates") unless the Firm has specifically agreed to do so in writing. Client agrees that the Firm's representation of Client in the Engagement does not give rise to an attorney-client relationship between the Firm

A Pennsylvania Limited Liability Partnership

California Colorado Connecticut Delaware District of Columbia Florida Illinois
Minnesota Nevada New Jersey New York Pennsylvania Texas Washington

142067698.1



and any of Client's Affiliates. Further, the Firm's representation of Client in the Engagement will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of Client's Affiliates.

Client has agreed that Chris McAlary will be the contact person ("Contact") for Client throughout the duration of the Engagement and that all Invoices should be sent to Contact for processing and payment.

**Fees and Billing.** The Firm has agreed to represent Client in the Engagement for a Flat Fee ("Flat Fee") of $450,000 for the post-petition chapter 11 filing of Client. Client agrees that any work on the confirmation process, including the plan and disclosure statement, will be billed at the Firm's standard hourly rates, however, such work will need to be approved by either the independent director or CEO.

The Firm typically incurs costs in connection with the Engagement. These costs include postage, delivery charges, facsimile and photocopy charges, computerized legal research and related expenses, travel expenses including parking, mileage, meals and hotel costs, and use of outside service providers including printers or experts. In litigation matters, such expenses may also include filing fees, deposition costs, process servers, e-discovery costs and technician time, court reporters and witness fees. The Flat Fee will not cover any costs incurred by the Firm in connection with the Engagement. All costs will be paid by Client. Client agrees to reimburse the Firm for any costs and expenses incurred in the course of the Engagement. If the Firm anticipates that substantial expenses will be incurred on Client's behalf, the Firm will advise Client and the Firm may request that Client pay these expenses directly.

No individual except the Firmwide Managing Partner, or his/her designee, has the authority to modify the Invoices submitted to Client.

**Retainer.** Before the Firm begins work on the Engagement, Client will provide the Firm with an initial, refundable fee-and-cost retainer of $50,000 (the "Retainer") as an advance for amounts incurred for the Firm's services and costs in the Engagement. Client authorizes the Firm to use the Retainer to satisfy the Firm's Invoices which will be sent to Client. At the conclusion of the Engagement, any remaining balance in the Retainer, after payment of the Firm's Invoices, will be returned to Client. If the Firm's final Invoice exceeds the Retainer, Client agrees to pay the balance of that Invoice. Client acknowledges that the Retainer is not an estimate of total fees and costs, but is merely an advance for security.

If requested by the Firm, Client agrees to replenish the Retainer within 10 days of the Firm's request. If and when the Firm anticipates the need for a substantial investment of time or expense, such as for the retention of an outside professional, extensive discovery proceedings or an



Fox Rothschild LLP
ATTORNEYS AT LAW

impending trial, the Firm may require that Client pay all outstanding Invoices to the Firm and pay an additional Retainer or cost deposit, as applicable, but in no event shall the Firm be obligated to advance such funds.

**Prospective Waiver.** The Firm is a large law firm with many offices and represents many companies and individuals in numerous jurisdictions. It is possible that during the course of the Engagement another client will have a transaction with or a matter adverse to the Client unrelated to the Engagement or any subsequent engagement for the Client. Such matters may include, for example, a real estate transaction or land use matter, a bankruptcy matter, a financing matter, business counseling, corporate matter, a patent or intellectual property matter, or a labor and employment matter. This will confirm that the Client agrees that the Firm may continue to represent or may undertake in the future to represent existing or new clients in such matters not substantially related to the Engagement, even if the interests of such clients in those other matters are directly adverse to the Client. We agree, however, that the Client's prospective consent to conflicting representations contained in this paragraph will not apply to any litigation matters. Furthermore, the Firm agrees not to use any proprietary or other confidential information of a non-public nature concerning the Client acquired by the Firm as a result of the Engagement, to the Client's material disadvantage in connection with any matter in which the Firm is adverse to the Client. Client may wish to consult with independent counsel regarding this advance waiver.

Similarly, new lawyers frequently join the Firm. These lawyers may have represented parties adverse to Client while employed by other law firms or organizations. The Firm assumes that, consistent with ethical standards, Client has no objection to the Firm's continuing representation of Client notwithstanding our lawyers' prior professional relationships.

**Future Representation.** If Client asks the Firm to take on an additional assignment in the future, Client and the Firm will reach a separate understanding covering that additional assignment, which understanding will be reflected in a separate writing, which may include e-mails.

**Encryption of Electronic Email.** We take data privacy very seriously. The Firm will first attempt to transmit all email to Client by means of the Transport Layer Security (TLS) protocol, which encrypts communications between Client's email server and the Firm's email server. Most major email providers support the TLS protocol, and it is considered a best practice in the security industry. If Client's email provider or server is not configured to receive communications sent with the TLS protocol, the Firm automatically will re-send those communications without using the TLS protocol and without any encryption during transmission. The Firm strongly recommends that Client send and receive email containing attorney-client privileged information, Personally Identifiable Information or Protected Health Information only by means of the TLS protocol. If Client is unable to receive email by means of the TLS protocol, please notify the



Fox Rothschild LLP
ATTORNEYS AT LAW

undersigned and the Firm will use a third party service that will allow Client to retrieve its emails in a secure manner.

**Conclusion.** If Client has any questions about the Agreement, please contact me as soon as possible. Client may consult with separate counsel regarding this Agreement.

Please acknowledge Client's acceptance to the terms in the Agreement and receipt of the Standard Terms by signing one copy of the Letter and returning the signed copy to me at your earliest convenience. This Agreement will take effect on the date of Client's signature or when the Firm first performs legal services for Client, whichever is earlier.

We appreciate the opportunity and privilege to represent Client in the Engagement.

Sincerely,

*/s/ Brett Axelrod*

Brett Axelrod
For Fox Rothschild LLP

Enclosure

The undersigned hereby accept(s) and agree(s) to the terms of Engagement set forth in the Agreement.

*Date:* 1/25/2023

CASH CLOUD INC. dba Coin Cloud

*By* DocuSigned by: D8CB448ED76C498...
*Chris McAlary*

*Fed. Employer ID No.*



DocuSign Envelope ID: 5BB19E26-24DC-4A4F-8969-53536C9FEE4F Case 23-10423-mkn Doc 14 Entered 02/07/23 17:17:24 Page 15 of 35

Fox Rothschild LLP
ATTORNEYS AT LAW

# Standard Terms of Engagement for Legal Services

### Overview

These Standard Terms of Engagement ("Standard Terms") along with the Engagement Letter ("Letter") comprise the Engagement Agreement ("Agreement") between Client and Fox Rothschild LLP ("Firm") and explain the terms under which the Firm will provide legal services to Client in the Engagement. Any defined term in the Letter shall have the same definition in the Standard Terms. In the event of a conflict between the provisions in the Standard Terms and the Letter, the provisions in the Letter shall control.

### Communications

Client agrees to be candid and cooperative with the Firm and to provide the Firm with full, complete, and truthful information. Client will communicate with the Firm before communicating with any parties, witnesses, or their counsel, or with any experts or consultants, about the Engagement.

Client agrees to inform the Firm, in writing, of any changes in Client's name, address, telephone number, contact person, or email address. The Firm will endeavor to keep Client informed of the status of the Engagement to the extent necessary to enable Client to make informed decisions.

Client acknowledges that any opinion or belief that the Firm expresses from time to time about the Engagement, including various courses of action and the results that might be anticipated, is intended merely to be an expression of opinion based upon information available to the Firm at the time and not a promise or guarantee.

In order to increase the Firm's efficiency and responsiveness, the Firm will use state of the art communication devices (i.e., email, document transfer by computer, wireless telephones, facsimile transfer and other devices which may be developed in the future). The use of such devices may place Client's confidences and privileges at risk. However, the Firm believes that the efficiencies involved in the use of these devices outweigh the risk of accidental disclosure. Client authorizes the Firm to use these electronic communication devices.

### Affiliations by Client

Client agrees and acknowledges that, unless specifically stated otherwise in the Letter, the Engagement is not an agreement by the Firm to represent any of Client's affiliates, subsidiaries, constituents, parents or related individuals, officers, directors, partners, members, shareholders, employees, independent contractors or agents (collectively, "Affiliates"). Client agrees that the Firm's representation of Client in the Engagement does not give rise to an attorney-client relationship between the Firm and any of Client's Affiliates. Further, the Firm's representation of Client in the Engagement will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of Client's Affiliates.

### Estimates

The fees and costs relating to the Engagement are not predictable. Accordingly, the Firm has made no commitment to Client concerning the maximum amount of fees and costs that will be necessary to complete the Engagement. Any estimate of fees and costs that the Firm and Client may have discussed orally or in writing represents only an estimate of such fees and costs. Client also understands that payment of the Firm's fees and costs is not contingent on the ultimate outcome of the Engagement.

### Fees and Billing

The Firm's minimum fee will be determined by the amount of time spent on the Engagement multiplied by the applicable hourly billing rates. Each of the Firm's billing professionals and other personnel is assigned an hourly rate that reflects that person's experience, skills, reputation, and ability, as well as prevailing market demand. The Firm's time will be recorded in increments of rounded tenths of an hour, with one-tenth (0.1) being the minimum for any activity. All dollar amounts reflected in the Agreement are in United States Dollars.

The Firm reserves the right to revise the staffing of the Engagement as it deems efficient. The Firm's billing rates are adjusted from time to time, generally once a year, usually in June, to reflect then current levels of legal experience, changes in overhead costs, market conditions or other appropriate considerations.

The Firm typically incurs costs in connection with the Engagement. These costs include postage, delivery charges, facsimile and photocopy charges, computerized legal research and related expenses, travel expenses including parking, mileage, meals and hotel costs, and use of outside service providers including printers or experts. In litigation matters, such expenses may also include filing fees, deposition costs, process servers, court reporters and witness fees. Client agrees to reimburse the Firm for any costs and expenses incurred in the course of the Engagement. If the Firm anticipates that substantial expenses will be incurred on Client's behalf, the Firm will advise Client and the Firm may request that Client pay these expenses directly.

The Firm will issue regular Invoices that detail the fees and costs incurred in the Engagement, usually on a monthly basis. The time charged will include all time the Firm devotes to the Engagement.

Payment is due within thirty (30) days from the date of Invoices. Unpaid Invoices will accrue interest at the maximum rate permitted by applicable laws. If an Invoice is not timely paid, the Firm may withdraw from the Engagement. If necessary, the Firm shall file a motion with the court to withdraw as counsel in the Engagement and Client shall not oppose said motion.

Although the Firm attempts to capture all fees charged and disbursements made on Client's behalf through the closing date set forth in each Invoice, there may be fees or charges for a particular time period that will not appear on certain Invoices. Any such fees or charges will appear on subsequent Invoices.

No individual except the Firmwide Managing Partner, or his/her designee, has the authority to modify the Invoices submitted to Client.

### Third-Party Payor

Unless agreed to in writing between Client and the Firm, even though a third party ("Third Party Payor") may have agreed to pay the Invoices incurred in the Engagement, Client agrees to be ultimately responsible for payment of all Invoices incurred in the Engagement. If Client has advised the Firm that a Third Party Payor will be paying some or all of the Invoices, Client acknowledges that, should Client instruct the Firm to share confidential information with that Third Party Payor, including Invoices, Client may lose any privileges or protections that may apply to that information.

March 2020

www.foxrothschild.com

California Colorado Delaware District of Columbia Florida Georgia Illinois Minnesota Nevada New Jersey New York North Carolina Pennsylvania South Carolina Texas Washington

*Exhibit 1*

DocuSign Envelope ID: 5BB19E26-24DC-4A4F-8969-53536C9FEE4F

**Conflicts of Interest**

In the Firm's representation of Client in the Engagement, it may be necessary for the Firm lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's General Counsel, or other lawyers, in doing so. To the extent the Firm is addressing its duties, obligations or responsibilities to Client in those consultations, it is possible that a conflict of interest might be deemed to exist as between Client and the Firm. As a condition of the Engagement, Client waives any conflict of interest that might be deemed to arise out of any such consultations. Client further agrees that these consultations are protected from disclosure by the Firm's attorney-client privilege.

**Patent and Intellectual Property Matters**

If the Engagement concerns patent prosecution, Client agrees and acknowledges that the Firm will not be responsible for the payment of maintenance fees and/or patent annuities (collectively, "Patent Annuities"). Client further agrees that Client will handle the payment of Patent Annuities either directly or through firms that specialize solely in the payment of annuities for patent portfolios around the world. If Client needs assistance in identifying firms that provide such services, the Firm will provide Client with information upon request.

To the extent that the Engagement relates to the defense of Client's intellectual property rights, Client's comprehensive general liability or other liability insurance carrier may provide some reimbursement for the Invoices.

**Protected Health Information**

Federal and state laws impose duties on both clients and law firms to ensure the privacy and security of "protected health information" (PHI), which broadly includes identifiable health and personal information of individuals. Client should not send or transmit to the Firm any PHI in any format, whether by hard copy, email, facsimile or other medium, unless and until: (i) Client and the Firm have a current, signed Business Associate Agreement in place; (ii) the attorney with whom Client is working at the Firm has determined that the PHI is needed in connection with the Engagement; (iii) Client has notified the attorney in advance of the transmission of the PHI; and (iv) the attorney has approved the manner by which such PHI will be received by the Firm. Client must let the Firm know if Client anticipates that the Engagement will involve PHI, so that the Firm can take the necessary steps to allow its transmission to the Firm.

**Use of Personal Information**

The Firm gathers and processes personal data pursuant to all applicable law. The Firm will use personal information that we receive in connection with providing legal services to Client, marketing our services to Client, and to comply with applicable law. During and after the Engagement, the Firm may disclose personal information to parties involved in the work the Firm is performing, opposing parties, arbitration panels and courts, and any other reasonably foreseeable entity. Additionally, the Firm may use third parties, wherever located, to store and process personal data received from Client or its agents or other sources.

**No Tax Advice**

Unless specifically stated in the Letter, or in a subsequent written communication between the Firm and Client, the Engagement will not include providing Client with legal advice pertaining to any federal, state, foreign, or local tax matter or issue, whether or not directly related to or affected by the legal matters that are part of the Engagement.

**Client's Obligation to Place Insurance Carrier on Notice**

If Client has not already done so, Client should put any insurer on notice of any claims that have been or could be made in connection with the Engagement, so that the insurer cannot take the position that notice was given late or that insurer was prejudiced by delay in providing such notice.

**Conclusion of Engagement and Client Files**

Unless previously terminated, the attorney-client relationship between Client and the Firm, related to the Engagement, will terminate when the Firm sends to Client the Firm's final Invoice for services rendered in the Engagement or when the Firm advises Client that it will no longer represent Client in the Engagement.

Client may terminate the Engagement at any time. The Firm may terminate the Engagement subject to applicable ethical and legal requirements. If permission for withdrawal is required by a court or arbitration panel, the Firm will promptly request such permission and Client agrees not to oppose such request. Client will remain obligated for any Invoices through the effective date of the termination.

Once Client's matter is concluded, the Firm will notify Client, offer to return any original material Client provided to the Firm, and close the matter. Client can request that the entire file be sent to Client at this time. If Client does not request the return of the entire file, it may be sent to storage off-site, and thereafter an administrative cost may be charged to Client for retrieving it from storage. Client is responsible for complying with any records retention obligations that may be applicable to any record.

Under the Firm's Records Retention Policy, as may be modified from time-to-time, the Firm may dispose of files as early as seven (7) years after a matter is closed. The Firm will send written notice to Client at the last address in the Firm's records before disposing of any of Client's files. It is Client's responsibility to notify the Firm of any changes in Client's mailing address so that the Firm can properly notify Client. If Client's mailing address is out of date in the Firm's records at the time of the foregoing notice, Client agrees that the Firm may destroy files that Client has not previously requested be returned to Client.

The Firm and Client agree that all original Client-supplied materials and all lawyer end-product (referred to generally as "client material") are the property of the Client. Lawyer end-product includes, for example, final contracts, pleadings, and trust documents. The Firm and Client agree that lawyer work product, and copies of any electronic discovery documents or data, are the property of the Firm. Lawyer work product includes, for example, drafts, notes, internal memoranda, and electronic files, and lawyer representation and administration materials, including related lawyer-client correspondence and conflicts materials. The Firm will assume that Client has a copy of all electronic documents provided to the Firm by Client or on Client's behalf, and that Client retains in Client's records all electronic and physical materials provided to Client in the course of the Engagement. All nonpublic information that Client has supplied to the Firm and that the Firm retains will be kept confidential in accordance with applicable rules of professional responsibility.

**Future Changes in the Law**

Client acknowledges that, after the Engagement has terminated, the Firm has no continuing obligation to advise Client of future legal developments, unless Client subsequently engages the Firm to do so.

**Severability in Event of Partial Invalidity**

If any provision of the Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and will remain in effect. If the Agreement has been provided to Client in a language other than English, the provisions contained in the English version shall control.

March 2020

www.foxrothschild.com

California Colorado Delaware District of Columbia Florida Georgia Illinois Minnesota Nevada New Jersey New York North Carolina Pennsylvania South Carolina Texas Washington

Exhibit 1

# EXHIBIT 2





# Brett A. Axelrod

**Partner**

baxelrod@foxrothschild.com

Las Vegas, NV
Tel: 702.699.5901
Fax: 702.597.5503

Los Angeles, CA
Tel: 310.598.4151

For more than 25 years, Brett has focused her practice on the representation of Chapter 11 debtors and unsecured creditors' committees and has worked on some of the largest bankruptcy cases in the state of Nevada.

Managing Partner of the firm's Las Vegas office and a past Co-Chair of the firm's nationwide Financial Restructuring & Bankruptcy Department, Brett has a broad range of experience in insolvency and corporate restructuring matters and concentrates in the areas of business reorganization and bankruptcy, asset sales and acquisitions and gaming.

She represents clients in the gaming, real estate and mining industries across the country, and has built a strong reputation for her strategic handling of complex, high-profile bankruptcy cases. Brett has represented a variety of businesses as well as secured creditors in Chapter 11 bankruptcy filings and purchasers in 363 sales.

Her most significant representations include:

- Counsel to P.K. Lenders Group in Chapter 11 involuntary
- Debtors' counsel to Bishop Gorman Development Corporation
- Debtors' counsel to Nevada Gaming Partners LLC
- Debtors' counsel to Avery Land Group LLC
- Debtors' counsel to Mohave Agrarian Group LLC
- Debtors' counsel to Martifer Solar USA, Inc. and Martifer Aurora, LLC
- Representation of Official Unsecured Creditors' Committee for Station Casinos et al
- Successful defense and dismissal of involuntary Chapter 11 bankruptcy filed against Timothy Blixseth.
- Counsel to Ernst & Young Inc. as Foreign Representative of Veris Gold Corp. et al
- Debtor's counsel to U.S. Aggregates et al
- Counsel to Senior Secured Creditors, Riviera Hotel and Casino
- Counsel to Four Queens Hotel and Casino and Binion's Hotel and Casino in out of court restructuring
- Counsel to Cedco Inc. and related parties in out of court restructuring
- Representation of IGT, Golden Gaming in Terrible Herbst bankruptcy
- Representation of FX Las Vegas I, LLC as Chapter 11 debtor counsel
- Representation of James Rhodes in the Rhodes Homes et al bankruptcy cases
- Counsel to Unsecured Creditors Committee in Stateline Casino and related cases
- Debtor's counsel Stratosphere Gaming Casino
- Debtor's counsel Elsinore Gaming
- Counsel to American Wagering /Leroy's Sports Book
- Debtor's counsel to Fitzgerald Gaming

- Represented prospective purchasers in Aladdin 2 and 3 bankruptcy cases
- Debtor's counsel Village Hotel Investors, Village Hotel Holdings, owner of Ritz Carlton Hotel
- Counsel to equity holders Resort in Summerlin
- Secured nonexclusive product licensing agreements for software development company
- Counsel to City Stop gaming tavern route operator in partnership dispute

## Services

- Financial Restructuring & Bankruptcy
- Cannabis Law
- Gaming

## Bar Admissions

- California
- Nevada

## Court Admissions

- U.S. Court of Appeals, Ninth Circuit
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- U.S. District Court, District of Nevada
- U.S. District Court, District of North Dakota

## Education

- Duke University School of Law (J.D., 1993)
- California State University, Northridge (B.S., *with honors*, 1990)

## Memberships

- Litigation Counsel of America
- Turnaround Management Association, Nevada Chapter (Director)
- American Bankruptcy Institute

## Honors & Awards

- Named to the "Top Lawyers" list for Bankruptcy Law by *Vegas Inc.* (2013, 2022)
- Selected to the "Best Lawyers in America" list for Litigation - Bankruptcy (2011-2023), Creditor-Debtor Rights/ Insolvency and Reorganization Law (2010-2023) in Las Vegas, NV by *Best Lawyers*
- Named to the "Lawyer of the Year" list in Nevada for Bankruptcy Law by *Best Lawyers* (2021)
- Named to the *Super Lawyers*' Mountain States Top 100 (2012-2017, 2019-2021 )
- Named as one of the Top 50 Women Mountain States Super Lawyers by *Super Lawyers* magazine (2012-2021)
- Named to the "Mountain States Super Lawyers" list for Bankruptcy: Business in Las Vegas (2007-2022)
- Named one of the Top 100 attorneys in Nevada in the Legal Elite edition by *Nevada Business Magazine* (2017, 2018)
- Named among the "Legal Elite" attorneys in Nevada, highlighting the top 3% of attorneys in the state (2013-2014, 2016)
- M&A Advisor Real Estate Deal of the Year for the Purchase of Veris Gold USA, Inc. assets by Whitebox Advisors, LLC (2015)
- Named among the "Women Leaders in the Law" by ALM (2015)
- Named among the Top 150 attorneys in Southern Nevada in the Legal Elite edition of *Nevada Business Magazine*
- Named "2008 Bankruptcy Practitioner of the Year" by Turnaround Management Association of Nevada (2009)
- Due to her involvement in the firm's Financial Restructuring & Bankruptcy Department, Brett helped Fox earn the 2016 Nevada – Bankruptcy & Restructuring Law Firm of the Year Award from Global Law Experts
- Named in "Super Lawyers Business Edition" in the area of Business and Transactions (2013)

- Selected as a "Who's Who" in *Nevada Business Magazine*
- Ranked AV® Preeminent™ 5.0 out of 5 (AV® Preeminent™ and BV® Distinguished™ are certification marks of Reed Elsevier Properties Inc., used in accordance with the Martindale-Hubbell certification procedures, standards and policies)
- Editor for revisions of chapters 1,2,4,5 and 7 of "Collier Bankruptcy Practice Guide"

* Honors & Awards page for Awards Methodology





# Keith C. Owens

**Partner**

kowens@foxrothschild.com



Los Angeles, CA
Tel: 424.285.7056
Fax: 310.556.9828

Keith is a strategic ally for clients involved in bankruptcy proceedings, workouts and other insolvency matters, including receiverships and assignments for the benefit of creditors and creditors' rights litigation.

A former bankruptcy appellate law clerk who has argued before the Ninth Circuit Court of Appeals and appeared before the U.S. Supreme Court, he is experienced in all facets of bankruptcy, insolvency, distressed acquisitions and dispositions. He concentrates his practice on:

- Chapter 11 plan restructuring and related litigation
- Subchapter V bankruptcy
- Section 363 sales and sales pursuant to a Chapter 11 Plan
- Out-of-court workouts
- Valuation disputes
- Single-asset real estate cases
- Structured and closed debtor-in-possession (DIP) financing
- Cash collateral transactions on behalf of lenders and debtors
- Adversary proceedings including fraudulent conveyance, preference and D&O litigation
- Bankruptcy appeals

Keith represents commercial debtors, creditors' committees, secured and unsecured secured creditors, officers, directors and equity holders before bankruptcy and federal district courts throughout the United States, as well as landlords and tenants, licensors and licensees, counterparties to contracts and other major constituencies. His clients include businesses and individuals in a wide range of industries, including entertainment and sports, health care, cannabis, alcohol and beverage, technology, credit card processing, construction, commercial real estate and hospitality.

In addition to his federal work, Keith has led creditors' rights litigation in California state courts.

## Lenders and Loan Servicers

Keith also works extensively with lenders and commercial mortgage-backed securities (CMBS) servicers regarding real property secured loan litigation and real estate owned (REO) disposition matters, including:

- Judicial and non-judicial foreclosures
- Guarantor litigation
- Lender liability litigation

- Enforcement of pre- and post-judgment remedies, including:
    - Receivership appointments
    - Injunctions
    - Workouts
    - Loan restructurings
    - Forbearances
    - Discounted payoffs
    - Note sales

Keith is an editor of and a frequent contributor to the firm's "In Solvency" blog, which covers bankruptcy and financial restructuring issues.

## Services

- Financial Restructuring & Bankruptcy
- Entertainment & Sports Law
- Cannabis Law
- Residential Health Care Facilities

## Before Fox Rothschild

Prior to joining Fox Rothschild, Keith was a Partner in the Bankruptcy and Creditors' Rights Practice at two *AmLaw* 100 law firms.

Keith began his legal career as a trial law clerk for the Honorable Christopher M. Klein of the United States Bankruptcy Court for the Eastern District of California, and as an appellate law clerk to the Honorable John E. Ryan, who served on the United States Bankruptcy Appellate Panel for the Ninth Circuit. Prior to attending law school, Keith worked as a writer for Tig Productions and various Los Angeles–based entertainment magazines.

## Bar Admissions

- California

## Court Admissions

- U.S. Supreme Court
- U.S. Court of Appeals, Ninth Circuit
- U.S. District Court, Central District of California
- U.S. District Court, Eastern District of California
- U.S. District Court, Northern District of California
- U.S. District Court, Southern District of California
- U.S. Bankruptcy Court, Central District of California
- U.S. Bankruptcy Court, Eastern District of California
- U.S. Bankruptcy Court, Northern District of California
- U.S. Bankruptcy Court, Southern District of California

## Education

- Southwestern Law School (J.D., *cum laude*)
- University of California, Los Angeles (B.A.)

## Memberships

- American Bankruptcy Institute
- Financial Lawyers Conference
- Beverly Hills Bar Association (2011)

- Executive Committee of the Bankruptcy Section and former Section Chair
- Los Angeles County Bar Association
  - Executive Committee of the Commercial Law and Bankruptcy Section
- Los Angeles Bankruptcy Forum
- Orange County Bankruptcy Forum
- Turnaround Management Association

### Board of Directors

- Musica Angelica (2014-2015)

### Honors & Awards

- Recognized in *Chambers USA*, Bankruptcy/Restructuring, California (2015-2016, 2018)
- Among *Southern California Super Lawyers*, Bankruptcy and Creditors' Rights (since 2009)
- Recognized in *Super Lawyers Business Edition*, Bankruptcy, Los Angeles (2013)
- Recognized among *Super Lawyers'* Rising Stars, Bankruptcy and Creditors' Rights (2006, 2008)

## Representative Matters

- Argued Ninth Circuit appeal in *U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC*, 814 F.3d 993, 1001 (9th Cir. 2016) on the issues of whether an assignee of an insider claim was a non-statutory insider disqualified on voting to confirm a plan of reorganization under 11 U.S.C. § 1129(a)(10) and whether the acquisition and solicitation of the insider claim was made in bad faith for purposes of 11 U.S.C. § 1129(a)(6)
- Drafted Petition for *Certiorari*, granted in part by the United States Supreme Court in *U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 2018 WL 1143822 (Mar. 5, 2018)
- Represented the official committee of unsecured creditors in the bankruptcy of Katerra, a vertically integrated group of construction technology firms that raised close to $3 billion in equity investments but was never able to generate a profit.
- Represented the Official Committee of Bondholders in the Farmland Industries Chapter 11 case filed in the United States Bankruptcy Court for the Eastern District of Missouri.
- Represented the Official Committee of Unsecured Creditors of RCR Plumbing in the United States Bankruptcy Court for the Central District of California.
- Represented the Organization of Parishes (consisting of over 98 parishes) of the San Diego Catholic Diocese in the Chapter 11 case of the San Diego Catholic Diocese.
- Represented various automotive suppliers in General Motors and Chrysler bankruptcies cases filed in the United States Bankruptcy Court for the Southern District of New York.
- Represented various broker-dealers in the Lehman Brothers Chapter 11 bankruptcy and SIPA proceedings.
- Represented trade creditors in various retail bankruptcies and out-of-court workouts.
- Represented landlords in various retail bankruptcies.
- Represented roofing, solar, and battery company as debtors in possession in Chapter 11 bankruptcy case in the U.S. Bankruptcy Court for the District of Nevada
- Represented music producer and consultant in a Subchapter V bankruptcy case, and successfully confirmed the Subchapter V Plan.
- Represent land developer as Chapter 11 debtor in U.S. Bankruptcy Court for the Central District of California.
- Represented auto parts manufacturer Fluid Routing Solutions and its affiliated debtor entities in their Chapter 11 bankruptcy cases filed in United States Bankruptcy Court for the District of Delaware.
- Represented auto parts manufacturer Diamond Glass, Inc. and its affiliated debtor entities in their Chapter 11 bankruptcy cases.
- Represented Vista Hospital System (comprising French Hospital, Arroyo Grande Hospital and Corona Regional Medical Center) in its Chapter 11 bankruptcy cases filed in the United States Bankruptcy Court for the Central District of California.
- Represented a rehabilitation center in an out-of-court workout.
- Represented former officers of a major hospital system in multimillion-dollar avoidance litigation commenced by a liquidating trustee in the U.S. Bankruptcy Court for the Central District of California.
- Represented Care1st Health Plan in its acquisition of WattsHealth d/b/a UHP Healthcare HMO for $30 million in the WattsHealth Chapter 11 bankruptcy case filed in the United States Bankruptcy Court for the Central District of California.

- Represented the County of Contra Costa in connection with its funding of West Contra Costa Healthcare District, d/b/a Doctors Medical Center, in its Chapter 9 bankruptcy case filed in the United States Bankruptcy Court for the Northern District of California.
- Represented purchasers and/or stalking horse bidders in various nursing home, senior living, and assisted living bankruptcies.
- Represented the shareholders of Metabolife International, Inc. in Metabolife's Chapter 11 case filed in the United States Bankruptcy Court for the Southern District of California.
- Represented a former officer in the Rhythm & Hues Studios Inc. Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Central District of California.
- Represented a former officer in the Nutracea Chapter 11 bankruptcy case in the United States Bankruptcy Court for the District of Arizona.
- Represented mezzanine lender in the Cupertino Square Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Northern District of California.
- Represented some of the nation's largest special servicers of CMBS assets on all aspects of commercial real estate loan workouts, bankruptcies, foreclosure and receivership litigation.
- Represented prints and advertising lenders Endgame Releasing Company, LLC and Endgame Releasing Funding, LLC in the Chapter 11 bankruptcy cases filed by Los Angeles-based film production and distribution company Open Road. Films, LLC, and certain debtor affiliates, in the United States Bankruptcy Court for the District of Delaware.
- Represented numerous actors, producers, directors and writers as counter-parties to contracts in The Weinstein Company Chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Delaware.
- Represented talent clients in the Relativity Media Chapter 11 bankruptcy cases filed in the United States Bankruptcy Court for the Southern District of New York.
- Represents intellectual property licensors and licensees in bankruptcy cases and Assignment for the Benefit of Creditors proceedings throughout the United States.
- Represents asset purchasers, lenders and assignees in Assignment for the Benefit of Creditors proceedings.

## Events

October 27, 2021
**Chapter 11 Basics for Secured Lenders**
*Webinar*

October 8, 2021
**Off the Clock During the NCBJ**
*Tavern on South*

June 30, 2021
**Strategies to Avoid Lender Liability**
*Webinar*

December 3, 2020
**Putting the Puzzle Together: Bankruptcy Issues Facing Franchisors**
*Webinar*

October 22, 2020
**COVID-Induced Stress: Bankruptcy and Other Solutions for Health Care Providers**
*Webinar*

July 21, 2016
**You May Be Healthy, But What About Your Provider? Dealing With Troubled Healthcare Providers**
*Lawry's the Prime Rib*

March 4, 2016
**Restructuring, Insolvency & Troubled Companies 2016 Opportunity Amidst Crisis - Buying Distressed Assets, Claims and Securities for Fun & Profit**
*Webinar*

November 3, 2015
**Appellate Practice 101**
*Webinar*

March 24, 2015
**The World of SARE Cases**
*Hyatt Regency Century Plaza*

November 14, 2012
**Bankruptcy Nuts and Bolts**

April 1, 2010
**Strategic Considerations for Suppliers When Dealers and Franchisees Go 'Belly Up**
*Milwaukee, WI*

April 28, 2009
**Healthcare Business Bankruptcies**

April 16, 2009
**Safely Structuring Acquisitions of Assets and Protecting Property Rights From Distressed US Companies**
*Tokyo, Japan*

April 1, 2009
**Strategies and Solutions in a Troubled Economy**
*Milwaukee, WI*

March 1, 2005
**INSOL 2005 Turnaround & Reorganization Meeting**
*Sydney, Australia*

# Publications

June 22, 2022
**9th Circuit Ruling Offers Guidance on Automatic Stay Violations**
*Law360*

Spring 2021
**Subchapter V Bankruptcy Is Available for Franchise Companies**
*American Bar Association: The Franchise Lawyer*

December 10, 2020
**Bankruptcy Issues in Franchising: An Overview**

December 4, 2020
**The Uncertain Future of Distressed Cannabis Bankruptcies and the 2020 Elections**
*New Cannabis Ventures*

June 9, 2020
**Checklist: COVID-19 Crisis Management for Entertainment Industry Businesses**

May 22, 2020
**The E-Z Pass Bankruptcy Solution for Franchise Companies**
*The Legal Intelligencer*

April 1, 2020
**CARES Act Enhances Viability of Chapter 11 Reorganizations for Small Businesses**

May 22, 2019
**Distressed Cannabis Companies See Hope in 9th Circ. Ruling**
*Law360*

September 2016
**Supreme Court Expands the Definition of "Actual Fraud" by Making Fraudulent Conveyances Non-Dischargeable Under 11 U.S.C. Section 523(a)(2)(A)**
*Pratt's Journal of Bankruptcy Law*

March 7, 2016
**When the Party's Over: How to Minimize Risk in Distress**
*Law360*

June 20, 2014
**Retailer Bankruptcies: What Suppliers Need to Know**
*Chain Store Age*

March 2013
**A Hail Mary or Bad Faith Filing? Why Assignment of Insider Claims to Non-Insider Parties Cannot Be Used to Confirm a Cramdown Plan**
*The Banking Law Journal*

June 2012
**When Worlds Collide – The Impact of a Chapter 11 Bankruptcy on the Receivership Estate**
*Financier Worldwide*

May 26, 2011
**Arbitration, Bankruptcy and Commercial Agreements: The ABC's of Enforceability of Arbitration Clauses in Bankruptcy**
*DailyDAC*

April 7, 2011
**Giving Teeth to a Repeat-Filing Statute**
*Law360*

February 9, 2010
**The Future of SPEs in Light of General Growth**
*Law360*

November 1, 2006
**Health Care Providers and the Automatic Stay: Is Medicare Termination Different Than Exclusion?**
*ABI Journal*

September 14, 2005
**Are You in the Zone? Additional Duties Imposed on Directors of a Corporation in the "Zone of Insolvency"**
*Mondaq*

October 2004
**The Perils of Plan Confirmation: Speak Now or Forever Hold Your Peace**
*ABI Journal*

January 2004
**Bankruptcy Sales: A Banker's Guide**
*The Banking Law Journal*

## News

November 24, 2022
**Bankruptcy in America: Tracking Commercial and Personal Filings by State**

July 12, 2021
**Katerra Approved For Ch. 11 Loan Deadline Extension**

March 12, 2020
**Fox Welcomes Bankruptcy Partner Keith Owens in Los Angeles**



Fox Rothschild LLP
ATTORNEYS AT LAW

# Audrey Noll

**Counsel**

anoll@foxrothschild.com

Las Vegas, NV
Tel: 702.699.5160
Fax: 702.597.5503

Audrey devotes her practice to bankruptcy, corporate reorganization and debtor/creditor matters. Her clients include chapter 11 debtors, secured and unsecured creditors, shareholders, committees and licensors.

She handles cases involving a broad range of businesses and industries, including hospitality, manufacturing, energy and entertainment.

Audrey has extensive experience advising hedge funds with substantial positions in mega-cases as well as representing major entertainment companies as creditors in their artists', distributors' and joint-ventures' actual and threatened bankruptcies.

## Services

- Financial Restructuring & Bankruptcy
- Litigation
- Israel
- Private Equity & Investment Management

## Before Fox Rothschild

Before joining Fox Rothschild, Audrey was a member of Stutman Treister & Glatt. After a decade-long tenure at Stutman, she moved to Israel, resigned her Shareholder status, and telecommuted as Senior of Counsel.

## Beyond Fox Rothschild

Audrey has co-authored materials for education panels on a variety of bankruptcy-related topics.

## Bar Admissions

- California
- New York

## Education

- University of California, Berkeley School of Law (J.D., 1984)
- Stanford University (A.B., 1981)
  - with distinction



Fox Rothschild LLP
ATTORNEYS AT LAW

# Nicholas A. Koffroth

**Associate**

NKoffroth@foxrothschild.com

Los Angeles, CA
Tel: 424.285.7070
Fax: 310.556.9828

Las Vegas, NV
Tel: 702.699.5930
Fax: 702.597.5503

Nick focuses his practice on complex bankruptcy cases and financial restructuring matters. His bankruptcy experience includes work in the commercial real estate, health care, commercial lending and entertainment sectors.

## Bankruptcy

Nick has broad-based experience in nearly all facets of bankruptcy and insolvency matters. His bankruptcy practice includes:

- Chapter 11 plan restructuring and related litigation
- Section 363 sales
- Valuation disputes
- Single-asset real estate cases
- Debtor-In-Possession (DIP) financing
- Adversary proceedings
- Bankruptcy appeals
- Claim disputes

Nick represents a broad range of bankruptcy stakeholders. He has represented debtors in matters ranging from the second largest hospital bankruptcy case in U.S. history to Subchapter V cases. Nick has represented official committees of creditors in health care bankruptcy cases, official committees of equity security holders in post-confirmation litigation and an ad hoc committee in negotiations related to confirmation of a real estate Ponzi-scheme case. He also represents a wide range of other bankruptcy stakeholders, including secured and unsecured creditors, landlords, tenants, franchisors, franchisees, directors and officers.

Nick has represented businesses and individuals in a wide range of industries, including commercial real estate, health care, entertainment, apparel, hospitality, sports and technology.

## Litigation & Appellate Matters

Nick aggressively litigates high-stakes matters in bankruptcy, federal and state courts, including post-confirmation equity holder disputes, state and federal agency challenges to bankruptcy sales, and breach of contract matters with potential damages in excess of $100 million. He handles pre-trial practice, motions practice, fact and expert discovery, witness preparation, appellate practice, and counsels clients regarding litigation strategy, settlement and future liability.

Nick has drafted briefs in appeals before various U.S. District Courts and Bankruptcy Appellate Panels, the 9th Circuit Court of Appeals, and the U.S. Supreme Court.

## Lenders & Loan Servicers

Nick also works extensively with lenders and commercial mortgage-backed securities (CMBS) servicers regarding real property-secured loan litigation. His CMBS experience spans state, federal and appellate courts in matters including guarantor litigation, lender liability litigation, borrower liability litigation (including state law fraud and breach of contract claims), intercreditor disputes and foreclosure actions. Nick also represents lenders in the entertainment space and has obtained favorable rulings for prints and advertising lenders in connection with bankruptcy sales.

## Thought Leadership

Nick is actively involved in local and national bankruptcy organizations. In addition to writing nationally published articles, Nick is a regular contributor to the firm's "In Solvency" blog which covers current bankruptcy and financial restructuring issues.

## Services

- Financial Restructuring & Bankruptcy

## Representative Matters

- Represented Verity Health System of California, Inc., and 16 related entities, including six acute care operating hospitals, in their chapter 11 cases — the second largest hospital bankruptcy case in American history with more than $1.4 billion of debt. During the cases, the court approved the sale of Verity's hospitals and senior living facility, and confirmed the joint plan of liquidation, which resolved complex litigation and created a liquidating trust for the benefit of creditors. The sale of Verity's nonprofit assets raised unique issues related to the transfer of health care assets in bankruptcy, including the scope of the powers of the Attorney General and the transfer of medical provider agreements, which led to groundbreaking decisions. During the cases, Verity also collaborated with the attorneys for the California Governor's Office of Emergency Services to reopen St. Vincent Medical Center in Los Angeles, and to set aside beds at Seton Medical Center in the Bay Area to treat COVID-19 patients.
- Represented the trustee and the trustee board in the post-confirmation, jointly administered cases of ICPW Liquidation Corp. (formerly *In re Ironclad Performance Wear Corp, et al.*) in post-confirmation litigation and related distribution matters.
- Drafted petition for *certiorari*, granted in part by the U.S. Supreme Court in *U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 2018 WL 1143822 (Mar. 5, 2018) and related merits briefing.
- Represented prints and advertising lenders Endgame Releasing Company, LLC and Endgame Releasing Funding, LLC in the Chapter 11 bankruptcy cases filed by Los Angeles-based film production and distribution company Open Road Films, LLC, and certain debtor affiliates, in the U.S. Bankruptcy Court for the District of Delaware.
- Represented a global watch company as a Chapter 11 debtor, completing a 363 sale of the company's assets in less than two months after the commencement of bankruptcy, and obtaining court approval of the company's Chapter 11 plan in under four months.
- Represented numerous actors, producers, directors and writers as counterparties to contracts in The Weinstein Company Chapter 11 bankruptcy cases in the U.S. Bankruptcy Court for the District of Delaware.
- Represented talent clients in the Relativity Media Chapter 11 bankruptcy cases filed in the U.S. Bankruptcy Court for the Southern District of New York.
- Represented asset purchasers and potential purchasers in conducting diligence and submitting bids in connection with bankruptcy asset sales.
- Represented some of the nation's largest special servicers of CMBS assets on all aspects of commercial real estate loan workouts, bankruptcies, foreclosure and receivership litigation.

## Publications

Samuel R. Maizel, Tania M. Moyron & Nicholas Koffroth, "Medicare, Medicaid Provider Agreements May Transfer Free and Clear in Bankruptcy," *Journal of Corporate Renewal*, Sept. 2020.

Samuel R. Maizel, Tania M. Moyron, Nicholas Koffroth & Sarah M. Schrag, "The Effect of the Global Pandemic on Hospitals in America: The Rich Get Richer, But for the Rest …, " *Journal of Bankruptcy Law & Practice*, Aug. 2020.

Andrew J. Currie & Nicholas A. Koffroth, "Sino Clean Energy, Inc. v. Seiden (In re Sino Clean Energy, Inc.): Authority to File and the Tension Between Bankruptcy and Receivers," *Norton Bankruptcy Legal Adviser,* April 2019.

## Before Fox Rothschild

Prior to joining Fox, Nicholas was a senior managing associate in the Restructuring, Insolvency and Bankruptcy Group of an international law firm, based in its Los Angeles office. Before that, he was an associate in the Los Angeles office of a national law firm.

Nick began his legal career as a law clerk in the U.S. Bankruptcy Court for the Central District of California. During his time with the Bankruptcy Court, Nick clerked for the Honorable Sandra R. Klein, the Honorable Thomas B. Donovan, the Honorable Neil W. Bason, the Honorable Victoria Kaufman and the Honorable Sheri A. Bluebond.

## Bar Admissions

- California
- District of Columbia
- Nevada
- New York

## Education

- Loyola Law School (J.D., 2012)
- University of California, Los Angeles (B.A., 2008)

## Memberships

- Los Angeles Bankruptcy Forum
- Beverly Hills Bar Association, Bankruptcy Section
  - Chair, Executive Committee (2018-2019)
- American Bar Association
  - Business Bankruptcy Committee, Vice Chair of the Content and Publications Subcommittee
- California Bankruptcy Forum Conference
  - Young Insolvency Professionals Co-Chair

## Board of Directors

- Los Angeles Bankruptcy Forum (2019 - 2021)

## Honors & Awards

- Selected to the "Ones to Watch" list for Bankruptcy & Creditor Debtor Rights/Insolvency & Reorganization Law, Real Estate Law (2021-2023) Entertainment & Sports Law (2023) and Health Care Law (2023) by *Best Lawyers*
- Selected to the "Rising Stars" list for Bankruptcy and Creditor Debtor Rights (2019-2021) and Bankruptcy: Business (2022) in Southern California by *Super Lawyers*

# Publications

October 12, 2021
**Critical Vendor Order Insufficient to Protect Critical Vendors Against Preference Claims**
*Harvard Law School Bankruptcy Roundtable*

September 15, 2021
**Bankruptcy Eligibility Is Expanding For Small Biz Debtors**
*Law360*





# Zach Williams

**Associate**

zwilliams@foxrothschild.com

Las Vegas, NV
Tel: 702.699.5917
Fax: 702.597.5503

A member of the firm's Financial Restructuring & Bankruptcy Department, Zach assists clients — including debtors, creditors and trustees — with a full range of insolvency-related matters.

## Services

- Financial Restructuring & Bankruptcy

## Before Fox Rothschild

Prior to joining the firm, Zach worked a summer associate at Fox Rothschild, and before that, with a Nevada-based law firm. Previously, he worked as an Associate Consultant, Major Projects Advisory and Contract Compliance, for international consulting firm KPMG .

## Bar Admissions

- Nevada

## Education

- William S. Boyd School of Law, UNLV (J.D., *cum laude*, 2021)
- Brigham Young University (B.S., *magna cum laude*, 2017)

# Publications

June 22, 2022
**9th Circuit Ruling Offers Guidance on Automatic Stay Violations**
*Law360*

**EXHIBIT 3**

**Disclosure of Relationships**

Fox Rothschild currently represents the following creditors or has a current adversity in matters unrelated to Debtor or the Chapter 11 Case:

- Victor Garcia – Current litigation adversity to individual of the same name out of San Antonio, TX; current transactional adversity to individual of the same name out of Miami, FL in matters unrelated to Debtor or Debtor's Chapter 11 Case;
- Jeffrey Garon – Current client of the same name out of San Rafael, CA in matters unrelated to Debtor or Debtor's Chapter 11 Case; and
- Genesis – Current client (Genesis, Inc. – part of the CHUBB family); current litigation adversity to Genesis Healthcare System in matters unrelated to Debtor or Debtor's Chapter 11 Case; current transactional adversity to Genesis Capital and Genesis Group in matters unrelated to Debtor or Debtor's Chapter 11 Case.

Fox Rothschild previously represented or had a previous adversity to the following creditors in matters unrelated to Debtor or the Chapter 11 Case:

- American Express – Former client; current litigation and transactional adversity in matters unrelated to Debtor or Debtor's Chapter 11 Case;
- Avtech – Former transactional adversity in matters unrelated to Debtor or Debtor's Chapter 11 Case;
- Luis Flores – Former client of the same name in matters unrelated to Debtor or Debtor's Chapter 11 Case;
- Surety Bank – Former client in matters unrelated to Debtor or Debtor's Chapter 11 Case;
- Michael Tomlinson – Former client of the same name out of Lambertville, NJ in matters unrelated to Debtor or Debtor's Chapter 11 Case; and

- Adam Goldstein – Former client of the same name out of New Rochelle, NY in matters unrelated to Debtor or Debtor's Chapter 11 Case; former litigation adversity to individual of the same name out of Sparta, NJ in matters unrelated to Debtor or Debtor's Chapter 11 Case.