BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
    nkoffroth@foxrothschild.com
    zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

Electronically Filed February 7, 2023

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

                                    Debtor.

Case No.  BK-23-10423-mkn

Chapter 11

**VERIFIED STATEMENT OF PAUL HUYGENS IN SUPPORT OF EMERGENCY FIRST DAY APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF PROVINCE LLC AS DEBTOR'S FINANCIAL ADVISOR, EFFECTIVE AS OF THE PETITION DATE**

Hearing Date:   OST PENDING
Hearing Time:  OST PENDING

Paul Huygens, a principal at Province, LLC, submits the following statement (the "Verified Statement") in accordance with sections 327(a), 329, 1107 and 1108 of the Bankruptcy Code,[1]

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Bankruptcy Rules 2014(a), 2016 and 5002 and Local Rule 2014, and being duly sworn, deposes and declares under the penalty of perjury:

1.    I am over the age of 18, am mentally competent, have personal knowledge of the facts in this matter, except where stated as based upon information and belief, and if called upon to testify, could and would do so.

2.    I am a principal of Province, which maintains offices at, among other locations: 2360 Corporate Circle, Ste. 340, Henderson, Nevada, 89074.

3.    I make this statement in support of the *Application for Order Authorizing Retention and Employment of Province LLC as Debtor's Financial Advisor, Effective as of the Petition Date* (the "Application"), filed by Cash Cloud, Inc. ("Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case").

4.    Pursuant to Bankruptcy Rules 2014 and 9034, a copy of this Verified Statement will be contemporaneously transmitted to the Office of the United States Trustee (the "UST") with this filing.  Fed. R. Bankr. P. 2014, 9034; Guidelines, § 2.1.

5.    Province's corporate structure, including its parent entities, affiliates, and subsidiaries, is as follows:  Province, LLC is a Delaware limited liability company, and Province's only subsidiary, which is wholly owned, is Province Fiduciary Services, LLC, a Nevada limited liability company, formerly known as Province Partners, LLC.  All of the membership interests in Province, LLC are held by Province Holdings, Inc., a Delaware corporation ("Holdco"), and Province Management, LLC, a Delaware limited liability company ("Management Holdco").  All of Province's conflicts checks and related disclosures include any connections of each of Province's subsidiaries, Holdco, and Management Holdco.

6.    Province's professionals have extensive experience and a national reputation in providing the type of services required by Debtor in this Chapter 11 Case.  With a breadth of experience in complex restructuring matters and finance, its professionals advise debtors, shareholders, equity committees, lenders, and creditors in Chapter 11 proceedings, compiling an impressive track record of debtor and creditor advisory assignments.  Province has professionals with the ability to act as expert witnesses in litigation matters on such issues as economic damages and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    valuation, and has professionals with substantial experience in recovery of assets for creditors in

2    cases similar to this Chapter 11 Case.

3         7.    Specifically, Province has extensive experience representing debtors, official

4    creditors' committees, creditors, trustees, and others in a wide variety of bankruptcy cases, including:

5    Purdue Pharma, Honx, Mallinckrodt, Insys Therapeutics, Teligent,  Revlon, Armstrong Flooring,

6    Cherry Man Industries, Better 4 You Breakfast, Endo International, Aearo Technologies, BH

7    Cosmetics, Automotive Parts Distribution International, Path Medical, Paper Source, NITROcrete,

8    A.B.C. Carpet, Avadim Health, Alex and Ani, EHT US1 (Eagle Hospitality), Griddy Energy,

9    Carbonlite Holdings, TECT Aerospace Group Holdings, L'Occitane, Neopharma, PBS Brand Co.

10   (Punch Bowl), Francesca's Holding Corporation, Furniture Factory Ultimate Holding, White Stallion

11   Energy, Smartours, Pier 1, One Web, J Crew, Lucky's Market, Papyrus, Stage Stores, American

12   Blue Ribbon Holdings, BL Restaurants Holding, Destination Maternity, Brookstone, J&M Stores

13   (Fallas), Heritage Home Group, Ascena Group, Nine West Holdings, The Rockport Company,

14   Claire's Stores, The Walking Company, Patriot National, Shiekh Shoes, Velocity Holding Company

15   (MAG), Aerogroup International, Inc. (Aerosoles), Mac Acquisition (Romano's Macaroni Grill),

16   Cornerstone Apparel (Papaya), True Religion Apparel, Payless ShoeSource, Gordmans Stores,

17   hhgregg, Eastern Outfitters, Prestige Industries, Gulf Chemical & Metallurgical Corporation,

18   Performance Sports Group, Fresh-G Restaurant Intermediate Holding (Garden Fresh Restaurants),

19   Golfsmith International Holdings, Aéropostale, Pacific Sunwear, Fresh & Easy, The Wet Seal,

20   National Air Cargo, Magnetation, and KSL Media matters, (ii) financial advisor to the debtors in 4E

21   Brands, Vesta Holdings, Frontsight Management, Basic Energy Services, Cinemex Holdings USA,

22   True Religion Apparel, Woodbridge Group of Companies, Penthouse Global Media, Focus Property

23   Group, Superior Linen, Argosy Casino (Penn National) and American West Homes, and (iii) the

24   trustee in Maxus Energy, Samson Resources, Avaya, La Paloma Generating Company, Borden

25   Dairy, Fieldwood, RadioShack Corporation, Coldwater Creek, Loehmann's, Eddie Bauer, Promise

26   Healthcare Group, and Limetree Bay Services, among others.

27        8.    Before the Petition Date, Province provided certain financial advisory services to

28   Debtor with creditors, evaluation of assets and restructuring alternatives, and corporate services.  Due

to the myriad of pressing matters that necessitated the filing of the Chapter 11 Case and that arose as a result thereof, Province's work since the commencement of the Chapter 11 Case has been performed on an emergency basis. The complexity, intense activity and speed that have characterized this case has necessitated that Province focus immediate attention on time-sensitive matters and promptly devote substantial resources to the financial advisory of Debtor pending approval of this Application. Province has benefitted the estate by its diligence in prosecuting the Chapter 11 Case.

9. The terms of Province's retention are set forth in the Engagement Agreement entered into on January 12, 2023, a true and correct copy of which is attached hereto as **Exhibit 1**.

10. In this Chapter 11 Case, Debtor anticipates that Province will render financial advisory services as needed, including with respect to bankruptcy, financial restructuring, corporate, labor and employment, tax and litigation matters. The professional services that Province will render to Debtor may include, but shall not be limited to, the following:

    a. Assist the Company in evaluating its liquidity and in the preparation of 13-week cash flow forecasts;

    b. Assist in the formulation, evaluation and implementation of various options for restructuring;

    c. Assist in any financing or DIP financing process, including obtaining, evaluating and negotiating term sheets, if necessary;

    d. Assist the Company with its negotiations with lenders, landlords, other creditors, shareholders and other appropriate Parties;

    e. Meet with and prepare presentations for lenders, other creditors, and other Parties in interest;

    f. Provide financial advisory services to the Company in connection with developing and seeking approval for, a restructuring plan, which may be a plan under the Bankruptcy Code;

    g. Provide contingency planning and ongoing advice and assistance to the Company's management through the restructuring process;

    h. Assist the Company in meeting reporting requirements of lenders, other creditors, the United States Bankruptcy Court having jurisdiction over any cases commenced under chapter 11 of the Bankruptcy Code with respect to the Company (the "Bankruptcy Court"), and the United States Trustee, if applicable;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

i.  Assist in a going concern sale process, including obtaining and evaluating indications of interest, and negotiating and advising the Company as to the financial terms and structure of the transaction;

j.  Attend and participate in hearings before the Bankruptcy Court with respect to matters upon which Province has provided advice, as may be necessary; and

k.  Other activities as are approved by the Company, the Company's counsel, and as agreed to by Province.

11.    Subject to this Court's approval of this Application, Province is willing to serve as Debtor's financial advisor and to perform the services described above.

12.    As a result of the business acumen, broad advisory experience, and financial expertise of Province's professionals, it is well-suited to serve as Debtor's financial advisors.

13.    Pursuant to the Engagement Agreement, Province shall perform activities and services to assist the Debtor throughout this Chapter 11 Case as set forth in the Engagement Agreement.

14.    Since January 2023, Province has provided Debtor with a variety of financial advisory services relating to Debtor's restructuring efforts and preparation for the chapter 11 filing, including but not limited to negotiations with creditors, evaluation of assets and restructuring alternatives, and corporate services (the "Restructuring Services").  Province was paid for these Restructuring Services in the ordinary course of business.

15.    Except as to any Arranger Fee or Restructuring Fee that may become due, Debtor has agreed to pay Province's professional fees on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Province.  See Exhibit 1.

16.    As set forth in the Province Engagement Agreement, staff and professionals at Province will be billed at hourly rates subject to approval by this court.  In accordance with the terms of the Engagement Letter, Province's current standard hourly rates (the "Hourly Fees"), subject to periodic adjustment, are as follows:

| Professional Level | Per Hour (USD) |
|---|---|
| Managing Directors and Principals | $860-$1,350 |
| Vice Presidents, Directors, and Senior Directors | $580-$950 |
| Analysts, Associates, and Senior Associates | $300-$650 |
| Other / Para-Professional | $220-$300 |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17.    In addition to the Hourly Fees provided above, the Engagement Agreement calls for the Debtor to pay Province a fee (the "Arranger Fee") in the amount of three percent (3%) of the amount of the funds agreed to be loaned by any "Province Lender" (defined as a lender procured by Province in support of a DIP financing) to the Debtor as DIP financing, as approved pursuant to the Bankruptcy Court's final order granting any such financing, upon the issuance of a final order approving same by the Bankruptcy Court.  See Exhibit 1.

18.    In addition to the Hourly Fees and the Arranger Fee, the Engagement Agreement calls for the Debtor to pay a fee (the "Restructuring Fee") of three percent (3%) of the value of all debt and equity financing of the Debtor as of the effective date of a confirmed plan of reorganization (excluding any amounts loaned by a "Company Lender" (as defined in the Engagement Letter)) (the "Exit Financing"); provided, however, should all or any portion of such Exit Financing be provided by a Province Lender ("Province Lender Exit Financing"), then for such Province Lender Exit Financing, whether through exit equity or debt financing, the Company shall pay Province a fee in the amount of one and one half percent (1.5%) of such Province Lender Exit Financing, with any other Exit Financing generating a three percent (3%) fee as otherwise indicated above.  See Exhibit 1.

19.    More simply put, should Province become entitled to a Restructuring Fee pursuant to the Engagement Agreement, such shall be calculated as follows:  (a) Province will receive no Restructuring Fee on any Company Lender Exit Financing, (b) Province will receive a 1.5% Restructuring Fee on any Exit Financing provided by any Province Lender for DIP financing, and (c) Province will receive a 3% Restructuring Fee on any Exit Financing that is not (1) provided through a Company Lender; or (2) provided by a Province Lender who previously provided DIP financing to the Company.

20.    Province did not agree to any variations from, or alternatives to, its standard or customary billing arrangements for this engagement.

21.    None of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case.

22.    Province commenced work for the Debtor in January, 2023 and has charged the Debtor Hourly Fees in exchange for its services at the rates set forth above.  There were no adjustments in the billing rates prepetition.

23.    In the normal course of business and as otherwise provided in the Engagement Agreement, Province may adjust its billing rates based on market conditions.  Changes in applicable hourly rates will be noted on the invoices for the first-time period in which the revised rates became effective; provided, however, no increase to the hourly billing rates provided herein shall be made for six (6) months following the Petition Date.

24.    In addition to its hourly rate, Debtor will reimburse Province for all reasonable, out-of-expenses incurred in connection with this Chapter 11 Case, including but not limited to telephone, overnight mail, messenger, research, travel, meals, accommodations, and other expenses specifically related to the engagement, including, without limitation, reasonable legal fees, and expenses of external counsel.

25.    To the extent Province uses the services of independent contractors (the "Contractors") in this Chapter 11 Case, Province shall: (a) pass through the cost of such Contractors to the Debtor at the same rate that Province pays the Contractors; (b) seek reimbursement for actual costs only; (c) ensure that the Contractors are subject to the same conflict checks as required for Province; and (d) file with the Court such disclosures required by Bankruptcy Rule 2014.

26.    Additionally, under the terms of the Engagement Agreement and as further set forth therein, Debtor has agreed to indemnify, defend, and hold harmless Province and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Province's bad faith, gross negligence, fraud or willful misconduct or as otherwise provided in the Engagement Agreement or the order approving the Application.

27.    Province's rates are consistent with the rates charged by other professionals serving in a similar capacity.

28.    Prior to the Petition Date, Debtor paid Province a total of $255,850.00, inclusive of a $50,000 initial retainer as provided for in the Engagement Letter, for services rendered in sourcing

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

and structuring DIP financing and assisting the company in the preparation for these proceedings. See Omnibus Declaration.  During the pre-Petition period, Province invoiced a total of approximately $280,000 in fees and expenses; however, all outstanding amounts due as of the Petition date have been written off and waived such that no amounts were due or owing by Debtor to Province as of the Petition Date.

29.     Province has no claims against Debtor for any unpaid fees and expenses incurred prior to the Petition Date.  As of the Petition Date, Province does not maintain any retainer funds of the Debtor, and given Debtor's Chapter 11 Case, Province shall no longer require any Retainer (as defined in the Engagement Letter) in association with Province's approval hereunder.

30.     None of the fees payable to Province pursuant to the Province Engagement Agreement shall constitute a "bonus" or "fee enhancement" under applicable law.

31.     Following Court approval of Province's retention in Debtor's Chapter 11 Case, Province intends to apply to the Court for allowances of compensation for its fees and reimbursement of its expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines for Professional Compensation established by the Office of the United States Trustee, and further orders of this Court, for all services performed and expenses incurred after the Petition Date.

32.     Province has conducted a thorough search using its computerized conflicts check system, based on the information received to date from Debtor, and Province has made diligent efforts to search the Firm's records and assemble pertinent information for purposes of this Verified Statement with respect to Province's connections with Debtor's creditors, parties in interest and their respective attorneys and accountants.  If Debtor obtains additional information regarding its creditors and/or parties in interest, Debtor will forward such additional information to Province to run an updated conflict search and file a supplement to this Verified Statement.

33.     Province has informed Debtor that to the best of my knowledge, information and belief, other than as may be set forth herein and exhibits attached hereto, Province does not hold or represent any interest adverse to Debtor or Debtor's estate, and Province is a "disinterested person," as that term is defined in Bankruptcy Code section 101(14), as modified by Bankruptcy Code section

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1107(b), and used in Bankruptcy Code section 327(a), in that:

    a.  Province its principals, and associates:

        i.  are not creditors or insiders of Debtor;

        ii.  are not and were not, within two years before the date of this application, a director, officer, or employee of Debtor, as specified in subparagraph (c) of 11 U.S.C. § 101(14); and

        iii.  do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders except as stated herein.

    b.  As required by Bankruptcy Rules 2014(a) and 5002, Province confirms that it does not have any connections with the Bankruptcy Judge overseeing the Chapter 11 Case, the Debtor, its creditors, any other party in interest, their respective attorneys and accountants, the United States Trustee for the District of Nevada, or any person employed in the office of the United States Trustee for the District of Nevada, other than as disclosed in Exhibit 2 attached hereto. Province will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

34.    As a part of Province's financial advisory practice, Province's clientele includes: debtors, creditors and other statutory committees, institutional creditors, asset purchasers, venture capitalists, secured parties, lessors, contract parties, equity holders, directors and officers, court-appointed fiduciaries, plan sponsors, indenture trustees, and bond insurers. The Debtor has numerous creditors and other parties-in-interest. Province may have in the past represented, and may presently or in the future represent or be deemed adverse to, creditors or parties-in-interest in addition to those specifically disclosed in Exhibit 2 in matters unrelated to this Chapter 11 Case. Province believes that its representation of such other parties in such other matters has not affected and will not affect its representation of the Debtor in this proceeding.

35.    Province has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtor, other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtor or interests in this Chapter 11 Case.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

36.     Province is unwilling to provide services during any period for which its employment is not authorized.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct to the best of my information, knowledge and belief.

DATED this 7th day of February 2023.


_____/s/Paul Huygens_____
Paul Huygens

**EXHIBIT 1**

**ENGAGEMENT AGREEMENT**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# PROVINCE

<u>**PRIVATE AND CONFIDENTIAL**</u>

January 12, 2023

Cash Cloud Inc. d/b/a Coin Cloud
c/o Brett Axelrod, Esq.
Fox Rothchild
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135

### *In re:  Engagement of Province*

Dear Brett:

This engagement letter (the "Agreement") is intended to memorialize the engagement of Province LLC, a Delaware limited liability company ("Province") to provide certain financial advisory services to Cash Cloud Inc. d/b/a Coin Cloud, and each of its controlled or wholly-owned subsidiaries (jointly and severally, the "Company" or the "Client" and collectively with Province as the "Parties", with each individually, a "Party").

We are pleased you have retained Province to provide certain financial advisory services requested by you from time to time for matters relating to the Company. By executing below, you agree to Province's Terms of Engagement attached hereto on behalf of the Company, which is incorporated herein as a part of this Agreement.

We look forward to serving you.

Sincerely,

*Paul Huygens*

Paul Huygens
Principal

**Client:**

READ, ACCEPTED, AND AGREED effective as of the date stated above

**Cash Cloud Inc., d/b/a Coin Cloud**

*Chris McAlary*

By: Chris McAlary

Its: CEO

FA Engagement Letter (DWD 01.17.2023).doc

## TERMS OF ENGAGEMENT

1.     TERM.  This Agreement may be terminated immediately by either party, in that party's sole discretion.  Upon the termination of this Agreement, Province shall be entitled to all unpaid expenses incurred pursuant to this Agreement and the remaining unpaid balance of any fees that are due and payable pursuant hereto.

2.     COMPENSATION.   Province will receive fees from the Company based on the following compensation structure:

   a.  **Hourly Fees**.     For this engagement, the Company shall compensate Province for its services on an hourly basis ("Hourly Fees") for all services provided hereunder as follows:

| Professional Level | Per Hour (USD) |
|---|---|
| Managing Directors and Principals | $860-$1,350 |
| Vice Presidents, Directors, and Senior Directors | $580-$950 |
| Analysts, Associates, and Senior Associates | $300-$650 |
| Other / Para-Professional | $220-$300 |

   b.  **Arranger Fee**.  In addition to any Hourly Fees provided for above, the Company shall pay Province a fee (an "Arranger Fee") in the amount of three percent (3%) of the amount of the funds agreed to be loaned by any Province Lender to the Company, as approved pursuant to the Bankruptcy Court's final order granting any such financing, upon the issuance of a final order approving same by the Bankruptcy Court.

   c.  **Restructuring Fee.**  Upon the effective date (the "Effective Date") of any Plan as finally confirmed through a final order of the Bankruptcy Court, in addition to any Hourly Fees or Arranger Fee that may become due hereunder, the Company shall pay Province a fee, in United States Dollars (a "Restructuring Fee"), in the amount of three percent (3%) of the value of all debt and equity financing of the Company as of the Effective Date (excluding any amounts loaned by a Company Lender (defined below), the "Exit Financing"); provided, however, should all or any portion of such Exit Financing be provided by a Province Lender ("Province Lender Exit Financing"), then for such Province Lender Exit Financing, whether through exit equity or debt financing, the Company shall pay Province a fee, in United States Dollars, in the amount of one and one half percent (1.5%) of such Province Lender Exit Financing, with any other Exit Financing generating a three percent (3%) fee as otherwise indicated above.

3.     RETAINER; BILLING.

Province requires an initial payment of a retainer in the total amount of $50,000.00 ("Initial Retainer") before providing services to the Company.  The Company shall provide payment of an additional retainer of $200,000 (an "Additional Retainer" and, with the Initial Retainer, the "Retainer") upon execution of any debtor-in-possession loan documents between the Company and any lender.  For the purposes of this Agreement, any lender procured by the Company shall be deemed a "Company Lender", while any lender procured by Province shall be deemed a "Province Lender".  For the avoidance of doubt, the entities listed on **Exhibit 1** hereto shall be Company Lenders.

The Retainer funds will be held for the purpose of providing a retainer for the fees and expenses to be charged hereunder by Province to the Company. The Company will receive a billing statement from Province on a monthly or more frequent basis, as determined by Province, which will be due and payable upon issuance or approval of the Bankruptcy Court in the event the Company is in Bankruptcy. Following Province's issuance of any billing invoice, and approval of such fees by the Bankruptcy Court, Province will deduct the billed amount for Services rendered and expenses incurred from the Retainer as outlined herein and charge the Company with any balance remaining.

Province may, on a periodic basis (but not before July 1, 2023), adjust its current rates to reflect the market for such services, and any such rate adjustments shall be effective upon Province providing not less than ten (10) days written notice of such rate adjustment to Company. Any invoices from Province shall indicate the billable time spent in no more than six (6) minute increments (including a description of the services provided) on any given calendar day by each Province person whose time is being charged to the Company on such invoice.

In addition to the fees described above, Province will bill for all its out-of-pocket expenses reasonably incurred by Province in connection with the matters contemplated by this Agreement, including, without limitation, reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement. Upon the Company's request, Province shall promptly deliver to the Company copies of any receipts or other documentation related to any item of out-of-pocket expenses billed to the Company.

In the event that, at any time whether before or after termination of the Agreement, as a result of or in connection with the Agreement or Province's and its personnel's role under the Agreement, Province is required to produce any of its personnel (including former employees or consultants) or is required to produce, review or organize any material within its possession or control pursuant to a subpoena or other legal process, the Company will, upon Bankruptcy Court approval, reimburse Province for its reasonable and properly documented out-of-pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate Province for the time expended by its personnel based on such personnel's then-current hourly rate.

4.    CONFLICTS. Because Province and its subsidiaries comprise a consulting firm (the "Firm") that serves clients on an international basis in numerous cases, both in and out of court, it is possible that the Firm may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company. The Firm will not be prevented or restricted by virtue of providing the Services under this Agreement from providing services to other entities or individuals, including entities or individuals whose interests may be in competition or conflict with the Company, provided such services are with respect to matters entirely unrelated to the Services and, if applicable, the Bankruptcy. .

5.    RELATIONSHIP OF THE PARTIES. The Parties intend that an independent contractor relationship will be created by this Agreement in order to provide the services described above to the Company. Province will act at the direction of the Company in performing financial advisory services for the Company and may rely on any resolution, certificate, statement, notice, request, consent, order, or other instruction of the Company. Neither Province nor any of its personnel or subcontractors is acting as a fiduciary of the Company, the Company or any other persons in connection with this engagement. The Company acknowledges that Province's engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state, national or international professional or regulatory body.

For greater certainty, during the course of this engagement, Province shall be acting as a consultant to the Company in this matter and Province shall not be assuming any decision making or other management responsibilities in connection with the affairs of the Company or the Company and Province shall have no responsibility for the affairs of the Company or the Company during this engagement. In addition, Province shall not do anything or perform any act pursuant to which Province assumes any possession or control of the property, assets, undertakings, premises or operations of any of the Company for any purpose whatsoever.

6.     OTHER SERVICES.  In the event that Province is requested by the Company to perform any financial advisory or investment banking services outside the scope of this Agreement, fees for such services shall be mutually agreed upon by Province and the Company, in writing, in advance, and shall be approved by the Bankruptcy Court in addition to the fees and expenses described above.  The Agreement does not include litigation support or expert witness services, and if those services were requested, they would be subject to another engagement agreement.

7.     NO THIRD-PARTY BENEFICIARY.  The Company acknowledges that all advice given by Province to the Company in connection with this engagement is intended solely for the benefit and use of the Company in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any other purpose without Province's prior approval.

8.     CONFIDENTIALITY.  Province shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this engagement. All obligations as to the non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

9.     LIMITATION ON LIABILITY.  Other than for willful misconduct or gross negligence, the liability of any Indemnified Party (defined below) for any act or omission in any way related to the services to be provided hereunder by Province shall be capped in an amount equal to Province's fees received from the Company for the six (6) calendar months prior to the accrual of any such cause of action. Additionally, no party or Indemnified Party hereunder shall be liable to any party hereto for any consequential, special, or punitive damages regardless of whether such claim sounds in tort or contract.

10.     INDEMNIFICATION.

a.     The Company agree to indemnify and hold harmless each of Province, its affiliates and their respective shareholders, principals, managers, members and employees (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all out-of-pocket losses, claims, damages, liabilities, penalties, obligations, disbursements, and expenses, including the cost (reasonable and properly documented out-of-pocket fees and expenses) for counsel or others (including employees or consultants of Province, based on their then current hourly billing rates) in investigating, preparing, or defending any third party action or claim, whether or not in connection with litigation in which any Indemnified Party is a Party, or enforcing this Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon, or arising out of (directly or indirectly) the Indemnified Parties' actions or inactions under the Agreement.  Notwithstanding the foregoing, such indemnity shall not apply to any such loss, claim, damage, liability, penalty, obligation, disbursement, or

DocuSign Envelope ID: E573B355-C571-4043-8AE5-AC0442AA53FB

expense to the extent it is found by a court of competent jurisdiction to have resulted from such Indemnified Party's bad faith, gross negligence, fraud, or willful misconduct ("Excluded Losses").

     b.    The Company also agree that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of Province, except for Excluded Losses. The Company further agree that they will not, without the prior consent of an Indemnified Party (which shall not be unreasonably withheld, conditioned or delayed), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit, or proceeding in respect of which such Indemnified Party seeks indemnification under this Agreement (whether or not such Indemnified Party is an actual Party to such claim, action, suit, or proceeding) unless such settlement, compromise, or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit, or proceeding.

     c.    In the event that, at any time whether before or after termination of the Agreement, as a result of or in connection with the Agreement or Province's and its personnel's role under the Agreement, Province or any Indemnified Party is required to produce any of its personnel (including former employees or consultants) or is required to produce, review, or organize any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal process, the Company will reimburse the Indemnified Party for its reasonable and properly documented out-of-pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

     d.    The Indemnified Parties will promptly provide notice to the Company of the commencement of any action, claim, suit or proceeding ("Action") that it becomes aware of. Notwithstanding the foregoing, any failure by such Indemnified Party to notify the Company will not relieve the Company from its obligations under this Agreement, except to the extent that a Company is materially prejudiced by such failure. The Company shall be entitled to assume the defense of any such Action exercisable by giving written notice to such Indemnified Party within fifteen business days after receipt of written notice from the Indemnified Party of such assertion or commencement, including the employment of counsel reasonably satisfactory to the Indemnified Party. If the Company do not assume the defense of such claim, action, suit or proceeding, the Company shall be entitled to reasonably participate (at its own cost) in such defense. The Indemnified Party shall have the right to employ separate counsel of its own choice to represent it in any such claim, action, suit or proceeding and to participate in the defense of such Action, but the fees and expenses of any such separate counsel (other than reasonable costs of investigation incurred prior to the Company' assumption of the defense of such Action) shall be at the expense of the Indemnified Party, unless: (x) the Company have failed to promptly assume the defense and employ counsel reasonably satisfactory to the Indemnified Party in accordance with the preceding sentence; (y) the use of counsel chosen by the Company to represent the Indemnified Party would present such counsel with an actual conflict of interest; or (z) the Company authorize the Indemnified Party to employ separate counsel at the Company' expense (in each such case the Company will pay the fees and disbursements of such counsel). In connection with any one such claim, action, suit or proceeding, or series of separate but substantially similar claim, action, suit or proceeding arising out of the same general allegations, the Company shall not be liable for fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties (other than one local counsel for each applicable jurisdiction), and such counsels shall, to the extent consistent with its professional responsibilities, cooperate with the Company and any counsel designated by the Company.

e.    After Bankruptcy Court approval, the Company shall promptly pay documented expenses reasonably incurred by any Indemnified Party pursuant to and in accordance with this Paragraph 9 after the submission of invoices of such expenses, except that the Company, at its discretion, may, upon Bankruptcy Court approval, select and pay attorneys defending the action.

f.    The Company will be liable to any settlement of any claim against an Indemnified Party made with the written consent, which consent shall not be unreasonably withheld, of the Company.

g.    If a claim for indemnification is made but it is found in a final judgment by a court of competent jurisdiction that such indemnification may not be enforced in such case, in no event will the Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities, penalties, obligations, disbursements, and expenses exceed the amount of fees received by the Indemnified Parties pursuant to the Agreement.

h.    The rights provided in this Agreement shall be in addition to any other rights to which the Indemnified Parties may be entitled under any policy of insurance, any other agreements, any applicable law or otherwise.

i.    It is understood and acknowledged that the Company shall not be liable or otherwise responsible for, and no such person or entity shall be deemed to provide any guarantee, assurance, commitment or undertaking that the Company will perform, any of the reimbursement, indemnification or contribution obligations expressly set forth in this Agreement as an express obligation of the Company, all of such obligations being the sole and exclusive obligations of the Company.

11.    MISCELLANEOUS PROVISIONS.

JURY WAIVER.  Each of the parties hereto agrees to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the engagement or the performance or non-performance of Province hereunder.

MODIFICATION.  This Agreement shall not be varied, altered, modified, cancelled, changed or in any way amended except by mutual agreement of the parties in a written instrument executed by the Parties or their legal representatives and approved by the Bankruptcy Court, if required.

GOVERNING LAW; VENUE.  Unless and until a Bankruptcy (defined below) is filed, it is agreed and understood that in any action or proceeding related to this engagement agreement shall be exclusively brought before the courts of competent jurisdiction located within the State of Nevada and that in any action or proceeding between the parties, Nevada law shall govern without further application of its internal choice of law doctrines. During the pendency of any Bankruptcy, Bankruptcy Court shall have exclusive jurisdiction of any proceedings relating to this Agreement by and between the parties.

NOTICE.  Any notices, requests, demands or other communications required by or provided for in this Agreement shall be sufficient if in writing and sent by registered or certified mail to Province, c/o General Counsel, at 2360 Corporate Circle, Suite 340, Henderson, Nevada 89074 or, in the case of the Company, at the address stated above.

DocuSign Envelope ID: E573B355-C571-4043-8AE5-AC0442AA53FB

SEVERABILITY AND BLUE PENCILING. The invalidity or unenforceability of any provision of this Agreement or subpart thereof shall in no way affect the validity or enforceability of any other provisions or subparts hereof. If any provisions of this Agreement are found to be invalid or unenforceable, in lieu of such illegal, invalid or unenforceable paragraph, provision or part thereof, there shall be automatically added a provision as similar in terms to the illegal, invalid or unenforceable paragraph, provision or part thereof, as may be possible, legal, valid, and enforceable.

BANKRUPTCY COURT APPROVALS. Should the Company elect to file for Bankruptcy or otherwise be placed into Bankruptcy (a "Bankruptcy"), the Company shall apply to the bankruptcy court presiding thereover (the "Bankruptcy Court"), as promptly as reasonably practicable, for approval pursuant to Sections 327(a) and/or 328(a) of the Bankruptcy Code, as applicable, of (i) this Agreement, including the compensation, and expense provisions hereof), and, to the extent any flat or contingent fee may become due hereunder, (ii) Province's retention by the Company under the terms of this Agreement pursuant to, and subject to the standards of review set forth in Section 328(a) of the Bankruptcy Code and not subject to the standards of review set forth in Section 330 of the Bankruptcy Code or any other standards of review to the extent applicable and at Province's option, *nunc pro tunc,* to the date of this Agreement and/or the filing the Bankruptcy petition and will use commercially reasonable efforts to obtain a final order of the Bankruptcy Court for authorization thereof.

The Company shall supply Province with a draft of such retention application and any proposed order authorizing Province's retention sufficiently in advance of the filing of such application and proposed order to enable Province and its counsel to review and comment thereon. The retention application and the proposed final order authorizing Province's retention must be acceptable to Province in its sole discretion. Province shall have no obligation to provide any services under this Agreement unless the Company's retention of Province under the terms set forth in this Agreement is approved under the bankruptcy code by a final order of the bankruptcy court no longer subject to appeal, rehearing or reconsideration, and which order is acceptable to Province in all respects.

The Company will work with Province to file any and all necessary applications regarding the approval and the payment of Province's fees and expenses with the Bankruptcy Court as promptly as reasonably practicable. In the event that this Agreement is terminated following the Bankruptcy Court's approval of the Company's retention of Province, the Company shall reimburse Province for all fees and expenses earned and reasonably incurred by Province prior to the date of termination, subject to the terms of this Agreement, the order approving the Company's retention of Province, and all other requirements of the Bankruptcy Code, Bankruptcy Rules, and applicable local rules and orders (including, for the avoidance of doubt, the requirement to obtain the Bankruptcy Court's approval of the payment of such fees and expenses).

The Company agrees that Province's fees as set forth herein and any payments made pursuant to the expense reimbursement pursuant to the provisions of this Agreement following the filing of a Bankruptcy will be entitled to priority as expenses of administration under Sections 503(b)(1)(A), 503(b)(2) and 507(a)(2) of the Bankruptcy Code and will be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect pursuant to one or more financing orders entered by the Bankruptcy Court. The Company will endeavor to ensure that any cash collateral order, debtor-in-possession financing order and/or similar order entered in the Bankruptcy Court permits the use of cash collateral and financing proceeds for the payment of all of Province's fees and expenses contained in this Agreement.

The Company will use commercially reasonable efforts to ensure that, to the fullest extent permitted by law, any confirmed plan of reorganization in any Bankruptcy contains typical and customary release provisions (both from the Company and from third parties) and exculpation provisions releasing, waiving and forever discharging Province and any of its affiliates and related entities, along with any of their past or current directors, managers, officers, partners, members, shareholders, agents and employees from any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities related to the Company or the engagement described in this Agreement.

SURVIVAL. The provisions of "COMPENSATION", "CONFIDENTIALITY", "INDEMNIFICATION", and "MISCELLANEOUS PROVISIONS" shall survive termination of this Agreement and remain enforceable according to their terms.

## EXHIBIT 1

Company Lenders

Komodo Bay

Tim Draper

Heller
Capital/BitStop
Genesis Global
Capital
DCG

Pathway Capital

AvTech

Enigma
Secuirties
Makor Securities

PointsKash

507 Capital

FTV

Cohanzick

Galaxy Digital

Uqualify

**EXHIBIT 2**
**DISCLOSURE OF CONNECTIONS**

| Party | Connection Role |
|---|---|
| B. Riley Securities, Inc. | Professional |
| Chevron | Current UCC - Member |
| Comp U Link | Current UCC Member |
| Cox Business | Affiliate - JV Partner |
| Fox Rothchild | Various Counsel |
| Securitas Security Services USA Inc | Former UCC - Member |
| Sheppard Mullin Richter & Hampton LLP | Various Counsel |
| Uline | Former UCC Member |