BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        jmcpherson@foxrothschild.com
        nkoffroth@foxrothschild.com
        zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

> Electronically Filed February 10, 2023

## UNITED STATES BANKRUPTCY COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>                    Debtor. | Case No. 23-10423-MKN<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACT WITH B. RILEY SECURITIES, INC. PURSUANT TO 11 U.S.C. § 365(a)**<br><br>Hearing Date:   March 15, 2023<br>Hearing Time:   9:30 a.m.<br>Estimated Time for Hearing: 10 Minutes |

Cash Cloud, Inc. ("Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its proposed undersigned counsel, Fox Rothschild LLP, respectfully submits this motion (the "Motion"), for entry of an order, substantially in the form attached hereto as **Exhibit 1**, approving the rejection of an executory contract with B. Riley Securities, Inc. attached hereto as **Exhibit 2** pursuant to Bankruptcy Code[1] section 365(a).

---

[1] All references to "chapter" and "section" herein shall be to the "Bankruptcy Code" appearing in Title 11 of the U.S. Code; all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure.

1

142376796.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

This Motion is made and based on the *Declaration of Christopher Andrew McAlary* (the "McAlary Declaration") filed in support hereof, the following points and authorities, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral argument the Court may entertain at the hearing on the Motion.

Dated this 10th day of February, 2023.

**FOX ROTHSCHILD LLP**

By: /s/ Jeanette E. McPherson
JEANETTE E. MCPHERSON, ESQ.
Nevada  Bar No. 5423
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

## POINTS AND AUTHORITIES

## I.    JURISDICTION AND VENUE

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) & (O).

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory basis for the relief requested herein is 11 U.S.C. § 365(a) and Bankruptcy Rules 6006 and 9014.

4.    Pursuant to Local Rule 9014.2, the Debtor consents to entry of final order(s) or judgment(s) by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

/ / /

/ / /

/ / /

142376796.1

## II.    BACKGROUND

**A.    Debtor's Filing**

1.    On February 7, 2023 (the "<u>Petition Date</u>"),[2] the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

2.    The Debtor is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  See generally Chapter 11 Case Docket.

3.    No request has been made for the appointment of a trustee or examiner, and no statutory committee has been appointed.

**B.    Debtor's Business**

4.    Prepetition, on or about September 21, 2022, the Debtor entered into an agreement with B. Riley Securities, Inc. ("<u>B.Riley</u>").  A copy of the B. Riley Agreement is attached hereto as **Exhibit 2**. Under this agreement (the "<u>B.Riley Agreement</u>"), B. Riley was engaged to provide financial advisory services to the Debtor relating to a financing transaction, sale transaction, and/or a restructuring transaction. As part of this engagement, B.Riley agreed to provide ongoing strategic advice.  In exchange, the Debtor was to provide financial information to B.Riley as requested, and was also obligated to compensate B.Riley under the terms of the B.Riley Agreement. In addition, under the B.Riley Agreement, the Debtor agreed to indemnify B.Riley and its officers, directors, members, etc. from liability.

5.    The Debtor has determined that the B.Riley Agreement is no longer financially beneficial to the Debtor or necessary for Debtor's operations and is burdensome.  <u>See</u> McAlary Declaration ¶ 7.

**C.    Requested Relief**

6.    Bankruptcy Code section 365(a) authorizes the Debtor, subject to this Court's approval, to reject any executory contract or unexpired lease.  The Debtor, through its CEO, Mr. McAlary, has determined, in his business judgment, that the B.Riley Agreement is financially

---

[2] All capitalized terms not otherwise defined herein shall have those meanings ascribed to them in the McAlary Declaration.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142376796.1

burdensome to the estate.  See McAlary Declaration ¶ 7. Thus, the Debtor seeks authority to reject the B.Riley Agreement, attached hereto as **Exhibit 2,** as of the date of the filing of this Motion.

### III.    MEMORANDUM OF LAW

**A.    The Debtor's Decision To Reject The B.Riley Agreement Should Be Approved**

Section 365 of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  "Under the Code, most courts have applied a 'business judgment' test to trustees' decisions to assume or reject contracts or leases."  3 Collier on Bankruptcy ¶ 365.03[2] (16th Ed. 2016).  "In making its determination, a bankruptcy court need engage in only a cursory review of a debtor-in-possession's decision to reject the contract."  Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.), 476 F.3d 665, 670 (9th Cir. 2007) (internal punctuation omitted).

"[I]n evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate."  Id., at 670.  In the Ninth Circuit, a bankruptcy court "should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  Id. (internal punctuation omitted).

Further, this Court has authority to approve the rejection of executory contracts as of the date of the filing of the motion for rejection. Section 365 of the Bankruptcy Code does not expressly provide whether courts may order rejection to be effective retroactively.  However, courts have held that bankruptcy courts may exercise their equitable powers in granting such a retroactive order when they conclude that doing so promotes the purposes of Section 365, and that after balancing the equities of a case, equities weigh in favor the debtor.  See, e.g., Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.), 392 F.3d 1064, 1065 (9th Cir. 2004) (affirming order authorizing rejection as of date of filing of motion), cert. denied, 564 U.S. 814 (2005); Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028-29 (1st Cir.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1995) (bankruptcy court has power to approve rejection as of date of filing motion); <u>In re Amber's Stores, Inc.</u>, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996)(holding that the lease should be deemed rejected as of the petition date due to the equities of case).   Although this caselaw pertains to the rejection of nonresidential real property leases, the rationale contained therein is applicable to executory contracts. The Ninth Circuit in <u>In re At Home Corp.</u>, explained that "the equitable authority recognized in <u>Thinking Machines</u> has been imported to contexts other than unexpired nonresidential leases," citing to <u>Malden Mills Indus., Inc. v. Maroun (In re Malden Mills Indus., Inc.)</u>, 303 B.R. 688, 701 (B.A.P. 1st Cir. 2004) and its application of this principle to abandonment of personal property.  392 F.3d at 1070.  The Debtor further notes that the Ninth Circuit's holding in <u>In re At Home Corp.</u>, 392 F.3d 1064 (9th Cir. 2004) allowing rejection as of the date of the motion has been found to be undisturbed by the Court's holding in <u>Roman Catholic Archdiocese of San Juan v. Acevedo Feliciano</u>, ___ U.S. ___, 140 S.Ct. 696 (2020). <u>See</u> <u>In re Player's Poker Club, Inc.</u>, 636 B.R. 811 (Bankr. C.D.Cal. 2022).

In this case, the Debtor has determined that the B.Riley Agreement is financially burdensome to the estate and is not necessary for the Debtor's operations or beneficial to the Debtor.  <u>See</u> McAlary Declaration ¶ 7.  Accordingly, the Debtor submits that its decision to reject the B.Riley Agreement is a sound exercise of its business judgment and should be approved. Balancing the equities in this case, approving rejection of the B.Riley Agreement as of the date of this Motion is likewise appropriate.  Here, the Debtor has promptly filed this Motion and set it for hearing giving B.Riley notice of this Motion. Without rejection as of the date of the Motion, the estate may incur unnecessary and significant expenses under the provisions of the B. Riley Agreement to the detriment of creditors and other stakeholders.  Accordingly, the rejection of the B.Riley Agreement is in the best interests of the estate and should be approved as of the date of the Motion.

**IV.    NOTICE**

Notice of this Motion has been given by electronic mail, facsimile or overnight delivery to the following parties or their counsel: (a) the Office of the United States Trustee for the District of Nevada; (b) counsel for the Official Committee of Unsecured Creditors, if any; (c) counsel to

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Debtor's secured creditors; (d) the counterparty to the B.Riley Agreement; and (e) all parties that have filed a Rule 2002 Notice Request in the Chapter 11 Case.  In light of the nature of the relief requested, Debtor respectfully submits that such notice is appropriate and sufficient under the circumstances and that no further notice is necessary.

## V.    CONCLUSION

WHEREFORE, for all the foregoing reasons, Debtor respectfully requests that this Court enter an Order granting this Motion, substantially in the form attached hereto as **Exhibit 1,** and (a) approving the rejection of the B.Riley Agreement, attached hereto as **Exhibit 2**, as of the date of the filing of this Motion; and (b) granting such other and further relief as this Court deems appropriate.

Dated this 10th day of February, 2023.

**FOX ROTHSCHILD LLP**

/s/ Jeanette E. McPherson

By:  JEANETTE E. MCPHERSON, ESQ.
     Nevada  Bar No. 5423
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     NICHOLAS A. KOFFROTH, ESQ.
     Nevada Bar No. 16264
     ZACHARY T. WILLIAMS, ESQ.
     Nevada Bar No. 16023
     1980 Festival Plaza Drive, Suite 700
     Las Vegas, Nevada 89135
     *[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6

142376796.1

**EXHIBIT 1**

**PROPOSED ORDER**

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
　　　　jmcpherson@foxrothschild.com
　　　　nkoffroth@foxrothschild.com
　　　　zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No. BK-S-23-10423-MKN |
| CASH CLOUD, INC.,<br>dba COIN CLOUD | Chapter 11 |
| Debtor. | **ORDER GRANTING DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACT WITH B. RILEY SECURITIES, INC. PURSUANT TO 11 U.S.C. § 365(a)**<br><br>Hearing Date:　March 15, 2023<br>Hearing Time:　9:30 a.m. |

/ / /

/ / /

142376796.1

The Court, having reviewed and considered Debtor's motion (the "Motion")[1] for an order approving the rejection of agreement with B.Riley Securities, Inc. pursuant to 11 U.S.C. § 365(a); and upon consideration of the McAlary Declaration and arguments of counsel; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it appearing that no other or further notice need be provided; and the Court having determined that the rejection of the agreement with B.Riley Securities, Inc. is a sound exercise of the Debtor's business judgment, that the rejection of the agreement with B.Riley Securities, Inc. is in the best interests of Debtor, its creditors and all other parties in interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is hereby,

**ORDERED** that the Motion is **GRANTED** in its entirety; and it is further

**ORDERED** that the Debtor's rejection of the agreement with B. Riley Securities, Inc. (attached as Exhibit 2 to the Motion), pursuant to 11 U.S.C. § 365(a) is approved, effective as of the date of the filing of the Motion; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from the implementation or interpretation of this Order; and it is further

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

---

[1] All capitalized, undefined terms shall have the meanings ascribed to them in the Motion.

142376796.1

1      **ORDERED** that notice of the Motion as provided therein shall be deemed good and

2   sufficient notice of the Motion.

3   Prepared And Respectfully Submitted By:          APPROVED/DISAPPROVED

4   **FOX ROTHSCHILD LLP**                           **OFFICE OF THE UNITED STATES TRUSTEE**

5

6   By: /s/ Jeanette E. McPherson _____      By: _____

7       JEANETTE E. MCPHERSON, ESQ.
        Nevada  Bar No. 5423
8       BRETT A. AXELROD, ESQ.
        Nevada Bar No. 5859
9       NICHOLAS A. KOFFROTH, ESQ.
        Nevada Bar No. 16264
10      ZACHARY T. WILLIAMS, ESQ.
        Nevada Bar No. 16023
11      1980 Festival Plaza Drive, Suite 700
        Las Vegas, Nevada 89135
12  *[Proposed] Counsel for Debtor*

13

14                **CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

15      In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

16      ☐     The Court has waived the requirement of approval in LR 9021(b)(1).

17      ☐     No party appeared at the hearing or filed an objection to the motion

18      ☐     I have delivered a copy of this proposed order to all counsel who appeared at the
19            hearing, any unrepresented parties who appeared at the hearing, and each has
              approved or disapproved the order, or failed to respond, as indicated below:
20

21              Office of the United States Trustee

22      ☐     I certify that this is a case under Chapter 7 or 13, that I have served a copy of this
23            order with the motion pursuant to LR 9014(g), and that no party has objected to the
              form or content of the order.

24                                        # # #

25

26

27

28

142376796.1

3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

2

**EXHIBIT 2**

3

**B.RILEY AGREEMENT**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

142376796.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)



11100 Santa Monica Blvd., Suite 800
Los Angeles, CA 90025
Tel: (310) 966-1444
www.brileyfin.com

September 21, 2022

*CONFIDENTIAL*

Coin Cloud
401 Ryland St., Suite 200-A
Reno, NV 89502
Attention: Christopher McAlary, Chief Executive Officer

Re: Engagement of B. Riley

Dear Mr. McAlary:

This letter (this "Agreement") shall confirm the understanding and agreement between B. Riley Securities, Inc. and Cash Cloud Inc. (d/b/a Coin Cloud), a Nevada corporation (the "Company"), as follows:

1. The Company hereby engages B. Riley on an exclusive basis to provide financial advisory services to the Company relating to any one or more of the following (i) a Financing Transaction (as hereinafter defined), which may include the private placement of debt or equity securities (the "Securities") to a limited number of institutional/family office and/or strategic investors; (ii) a Sale Transaction (as hereinafter defined); and/or (iii) a Restructuring Transaction (as hereinafter defined).

2. B. Riley accepts the engagement and, in that connection, agrees to provide ongoing strategic advice with regard to further restructuring and capital markets activities. In furtherance of the foregoing, B. Riley agrees that during the term of the engagement it will, to the extent requested by the Company and appropriate:

   a. review and analyze, from a financial perspective, the general business, operations, financial condition and prospects of the Company, and formulate and review with the Company a strategic plan involving a Financing Transaction, a Sale Transaction, or a Restructuring Transaction or a combination thereof, including timelines and milestones;

   b. assist the Company in its preparation of a Confidential Descriptive Memorandum (the "Memorandum") describing the Company, the Securities and/or Transactions (as hereinafter defined); the Company will also represent to B. Riley that the Memorandum and any other documents related to the Securities do not contain, and that the Company has not otherwise made in connection with the offering of the Securities, any untrue statement or alleged untrue statement of a material fact or omit to state a material fact required to be stated or necessary to make any statement not misleading;

   c. develop and review with the Company a schedule of the investors to whom the Memorandum will be provided (the "Schedule");

   d. assist in negotiations with the Company's current lenders and other stakeholders;

   e. assist the Company, as requested, with other schedules, analyses and communications relating to a Transaction; and

   f. participate, under the Company's direction and guidance, in negotiations regarding a Transaction with prospective investors and interested parties.

3. In connection with B. Riley's engagement, the Company will furnish B. Riley with any information concerning the Company, which B. Riley reasonably deems appropriate, and will provide B. Riley with access to the Company's officers, directors, accountants, counsel and other advisors. The Company represents and

warrants to B. Riley that all such information concerning the Company will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company acknowledges and agrees that B. Riley will be using and relying upon such information supplied by the Company and its officers, agents and others and any other available information concerning the Company without any independent investigation or verification thereof or independent appraisal by B. Riley of the Company or its business or assets. B. Riley does not assume responsibility for the accuracy, completeness or reasonableness of any such information. B. Riley shall have the benefit of, and shall be an intended third party beneficiary of, the representations and warranties provided by the Company to a purchaser(s) in a securities purchase agreement or other definitive agreement entered into in connection with a Transaction (as hereinafter defined).

4.  The Company agrees that, subject to B. Riley's compliance with Section 5 below, the offer and sale of the Securities (the "Offering") will be entitled to the exemption from registration afforded by Section 4(a)(2) of the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder (the "Act"), and complies, and will continue to comply, in all material respects with the requirements of Rule 506 under the Act and any other state and foreign securities laws. Without limitation, the Company will: (i) not offer or sell the Securities by means of any form of general solicitation or general advertising; (ii) not offer or sell the Securities to any person who it does not have a reasonable basis to believe is an "accredited investor" (as defined in Rule 501 under the Act); and (iii) exercise reasonable care to assure that the purchasers of the Securities are not underwriters within the meaning of Section 2(a)(11) of the Act and, without limiting the foregoing, that such purchases will comply with Rule 502(d) under the Act. The Company will, to the extent required, file a Form D with the Securities and Exchange Commission as contemplated by Rule 503 under the Act and make any filings or take other actions required under applicable state securities laws to permit the sale of the Securities. The Company will provide copies of all securities filings to B. Riley and will promptly notify B. Riley if there is an issuance by the Securities and Exchange Commission or any state securities administrator of any proceeding, injunction or order with respect to the sale of Securities or qualification of the Securities, and will use its reasonable efforts to prevent or lift any such injunction or order. If any material adverse event occurs after the date of the Memorandum or any other event the occurrence of which should be set forth in a supplement or amendment to the Memorandum the Company will inform B. Riley and prepare an amendment or supplement to the Memorandum. The Company agrees to give B. Riley a representation letter with respect to the Offering, including, without limitation, any representations and warranties given to investors. The Company and its affiliates have not within the six calendar months preceding the date of this Agreement offered or sold any Securities or other securities of the Company. The Company will not during the term of this Agreement and for a period of six months after the Offering offer or sell any Securities or any securities of the Company that may be integrated with the Offering under applicable rules promulgated under the Act.

5.  B. Riley will not offer, on behalf of the Company, the Securities by means of any form of general solicitation or general advertising and will not offer the Securities to any person who it does not have a reasonable basis to believe is an "accredited investor" (as defined in Rule 501 under the Act). The Company acknowledges that B. Riley will be acting on a reasonable efforts basis, and that the Company will have the right to refuse any proposal or prospective investor presented to it by B. Riley in the Company's sole and absolute discretion.

6.  <u>Fees and Expenses.</u>

    a.  As compensation for the financial advisory services to be rendered by B. Riley hereunder, the Company shall pay B. Riley in cash (all quoted in U.S. Dollars):

        i.  <u>Initial Fee</u>. In addition to the other fees provided for herein, an initial nonrefundable fee of $50,000 (the "Initial Fee") due immediately upon the signing of this Agreement, which shall be earned upon B. Riley's receipt thereof in consideration of B. Riley accepting this engagement.;

        ii. <u>Monthly Fees</u>. In addition to the other fees provided for herein, upon the first monthly anniversary of the date hereof (the "Effective Date"), and on every monthly anniversary of the Effective Date during the term of this Agreement, the Company shall pay B. Riley upon invoice, a nonrefundable fee of $50,000 (the "Monthly Fee"). Each Monthly Fee shall be earned upon B. Riley's receipt thereof in consideration of B. Riley performing services as

described herein. Monthly Fees paid and the Initial Fee paid shall be credited against any aggregate Transaction Fees;

iii.   Transaction Fee(s)[1]: In addition to the other fees provided for herein, the Company shall pay B. Riley the following transaction fee(s):

1.   Sale or Restructuring Transaction Fee. Upon the earlier to occur of: (I) in the case of an out-of-court Restructuring Transaction (as defined below), the effectiveness of all necessary waivers, consents, amendments or restructuring agreements between any entity comprising the Company and the Company's creditors or the closing of such Restructuring Transaction; (II) in the case of an in-court Restructuring Transaction, the date that the requisite consents to a plan of reorganization under Chapter 11 of the United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") are obtained or the effective date of a plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code pursuant to an order of the applicable bankruptcy court or the effective date of a confirmed plan of reorganization or liquidation under Chapter 11 or Chapter 7 of the Bankruptcy Code, or (III) a Sale Transaction (as defined below), B. Riley shall earn, and the Company shall promptly pay to B. Riley, a cash fee ("Sale or Restructuring Transaction Fee") equal to the greater of (i) $2,000,000 and (ii) 1.0% of the Aggregate Transaction Value of any such Sale Transaction or Restructuring Transaction; and/or

2.   Financing Transaction Fee. Upon the closing of a Financing Transaction (as defined below), B. Riley shall earn and the Company shall thereupon pay immediately and directly from the gross proceeds of such Financing Transaction, as a cost of such Financing Transaction, a cash fee ("Financing Transaction Fee") equal to, without any duplication with respect to fees received in connection with a Restructuring Transaction:

a.   6% of the gross proceeds received from or to be received by the Company (including Company securityholders) from the sale of any equity securities (other than equity-linked securities, which is covered in clause b. below);
b.   5% of the gross proceeds received from or to be received by the Company (including Company securityholders) from the sale of any equity-linked securities (including any securities that are convertible or exchangeable into equity securities); and
c.   3% of the gross proceeds received from or to be received from the sale of any subordinated debt, secured debt, or debt-like Securities (other than debt securities that are convertible or exchangeable into equity securities, which is covered clause b. above) by the Company (including Company securityholders).

Any warrants issued in connection with the raising of debt or equity capital shall, upon the exercise thereof, be considered equity for the purpose of calculating the Financing Transaction Fee, and such portion of the Financing Transaction Fee shall be paid upon such exercise and from the gross proceeds thereof, regardless of any prior termination or expiration of this Agreement. Any non-cash consideration provided to or received in connection with the Financing Transaction (including but not limited to intellectual or intangible property) shall be valued for

---

[1] All fees are without duplication. For example, if, as part of a Restructuring, an existing lender rolls over existing financing or provides additional financing, B. Riley shall be paid 1% of Aggregate Transaction Value with respect to the entire Restructuring Transaction, inclusive of such financing, without any additional Financing Transaction Fee payable thereon.

purposes of calculating the Financing Transaction Fee as equaling the number of Securities issued in exchange for such consideration multiplied by (in the case of debt securities) the face value of each such Security or (in the case of equity securities) the price per Security paid in the then current round of financing. If any portion of the funds with respect to such Financing Transaction is contingent and payable, or becomes available, after the closing date of a Financing Transaction (such as funds held in escrow or funds for which availability is subject to the meeting of certain conditions), the Financing Transaction Fee with respect to such funds shall be payable to B. Riley if and when such funds are received by the Company or, if sooner, become available to the Company without contingencies, and shall remain payable upon receipt or, if sooner, availability to the Company without contingencies, regardless of whether they are received or become available to the Company without contingencies after the expiration or termination of the Term or the Tail Period.

b.  If a Transaction is (i) consummated prior to the termination of B. Riley's engagement hereunder or (ii) within 12 months following the termination of B. Riley's engagement hereunder, consummated, or the Company receives a proposal or enters into an agreement with respect to a potential Transaction and such Transaction is subsequently consummated (the "Tail Period"), then the Company shall pay to B. Riley the fees at the closing of the Transaction in an amount equal to the fees that would otherwise have been paid to B. Riley with respect to such Transaction, irrespective of whether B. Riley closes such Transaction.

c.  The Company shall reimburse B. Riley for its reasonable and documented out-of-pocket and incidental expenses incurred during the term of its engagement hereunder, including without limitation fees of outside legal counsel, regardless of whether a Transaction is consummated.  All fees and retainers due or payable are not refundable. The provisions of this Section shall not in any way limit the Company's obligations pursuant to Section 9 or Schedule 1 hereto

d.  All payments received by B. Riley pursuant to this Agreement at any time shall become the property of B. Riley without restriction. No payments received by B. Riley pursuant to this Agreement will be put into a trust or other segregated account.

e.  The parties acknowledge that this engagement will require a substantial professional commitment of time and effort by B. Riley. Moreover, the amount of time and effort may vary substantially during different periods of the engagement. As a result, in order to ensure the availability of all necessary professional resources, whenever required, B. Riley may be foreclosed from pursuing other alternative engagement opportunities. In light of the foregoing, and given: (i) the numerous issues which can currently be anticipated in engagements such as this, (ii) B. Riley's commitment to the variable level of time and effort necessary to address such issues, (iii) the expertise and capabilities of B. Riley that will be required in this engagement, and (iv) the market rate for B. Riley's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates B. Riley, and provides the requisite certainty to the Company. The parties further agree and acknowledge that: (a) additional issues and developments, not currently anticipated, may arise and have an impact upon the services to be rendered by B. Riley hereunder, and may result in substantially more work and/or services being performed by B. Riley than is anticipated at this time; and (b) as a result of such unanticipated issues and/or developments, the results of B. Riley's services under this Agreement may also be substantially more beneficial than anticipated at this time. Accordingly, in the event of the occurrence of (a) and/or (b), in the prior sentence, each of the parties to this Agreement may, at the conclusion of the services rendered by B. Riley pursuant hereto, agree to a modification of the Transaction Fees described herein to more appropriately reflect the actual work performed, services rendered and/or any extraordinary results achieved by B. Riley pursuant to its engagement hereunder.

f.  If B. Riley is required to render services not described herein, but which relate directly or indirectly to the subject matter of this Agreement (including, but not limited to, producing documents, answering interrogatories, attending depositions, giving expert or other testimony, whether by subpoena, court process or order, or otherwise), B. Riley must provide the Company with prior written notice of the need for such required services and the Company shall pay B. Riley additional fees to be mutually

agreed upon in writing for such services, plus reasonable documented related out-of-pocket costs and expenses, including, among other things, the reasonable legal fees and expenses of B. Riley's counsel in connection therewith.

g.  The following definitions shall apply:

"Aggregate Transaction Value" shall mean the total amount of cash and the fair market value (determined as set forth below) of any securities or other property paid or payable directly or indirectly to the Company, its affiliates or its security holders in connection with, or in anticipation of, a Sale Transaction or Restructuring Transaction, as the case may be, including, without limitation, (i) any amounts paid into escrow or otherwise held back to support indemnification or similar obligations in connection with such Sale Transaction or Restructuring Transaction, (ii) the present value (if agreed to in good faith by B. Riley and the Company) of any contingent consideration to be paid in the future (if not agreed in good faith by B. Riley and the Company, the portion of the Sale or Restructuring Transaction Fee related to such contingent consideration shall be determined and paid as and when such payments are received by the Company or its security holders), (iii) any amounts paid or payable in respect of convertible securities, warrants, stock appreciation rights, options or similar rights, whether or not vested, (iv) any amounts paid by the Company to repurchase any securities of the Company that are outstanding on the date hereof, and (v) the aggregate principal amount of indebtedness for borrowed money and other liabilities (a) in the case of a sale of the Company's securities, as set forth in the most recent consolidated balance sheet of the Company prior to consummation of the Sale Transaction or (b) in the case of a sale or disposition of the Company's assets, that is directly or indirectly assumed by the Purchaser Entity. In the event of a sale of less than all of the outstanding capital stock of the Company, Aggregate Transaction Value shall mean the value of all of the outstanding capital stock of the Company, whether or not acquired by the Purchaser Entity, valued based on the per security price paid by the Purchaser Entity.  In the event of a sale of less than all of the assets of the Company, Aggregate Transaction Value shall also include the value of any assets and/or property retained by the Company. The fair market value of any securities (whether debt or equity) or other property shall be determined as follows: (i) the value of securities that are freely tradable in an established public market will be determined on the basis of the volume weighted average price for the fifteen trading days up to and including the trading day preceding the closing of the Sale Transaction; and (ii) the value of securities that are not freely tradable or have no established public market, and the value of Aggregate Transaction Value that consists of other property, shall be the fair market value as determined in good faith by B. Riley and the Company; provided that promissory notes or other debt obligations will be valued at the face amount thereof.

"Financing Transaction" shall mean (i) any transaction or series of related transactions that constitutes any refinancing of all or any portion of the existing obligations of any entity comprising the Company and/or (ii) the placement, raising or issuance of any form of equity, equity-linked or debt securities (including, without limitation, any convertible securities, preferred stock, unsecured, non-senior or subordinated debt securities, and/or senior notes or bank debt) or any loan or other financing, including any "debtor in possession financing" or "exit financing" in connection with a case under the Bankruptcy Code by any entity comprising the Company (any or all of which being "Securities"), from any source including, without limitation, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company (whether or not such transaction is effectuated in-court, out-of-court, through the confirmation of a plan of reorganization or otherwise under the Bankruptcy Code, or whether the requisite consents to such transaction(s) are obtained in-court or out-of-court) (each a "Financing Transaction"); provided however that debtor-in-possession financing provided solely by the Company's current lenders shall not constitute a Financing Transaction and, when calculating the fee associated with any debtor-in-possession financing, the gross proceeds advanced by the Company's current lenders shall not be included. For the avoidance of doubt, a Restructuring Transaction shall not constitute a Financing Transaction.

"Restructuring Transaction" shall mean any transaction or series of transactions that involve, at least in part, the Company's debt facility with Genesis and constitute a recapitalization or restructuring of the equity and/or debt securities and/or other indebtedness, obligations or liabilities (including, without limitation, preferred stock, partnership interests, lease obligations, trade credit facilities and other contract or tort obligations) of any entity comprising the Company, including accrued and/or accreted interest thereon, which are outstanding as of the date hereof, which recapitalization or

restructuring is effected pursuant to an exchange transaction, tender offer, a plan of reorganization or liquidation under the Bankruptcy Code, a solicitation of consents, waivers, acceptances or authorizations, any change of control transaction, any refinancing, sale, acquisition, merger, repurchase, exchange, conversion to equity, cancellation, forgiveness, retirement, and/or modification or amendment to the terms, conditions, or covenants (including, without limitation, the principal balance, accrued or accreted interest, payment term, other debt service requirement and/or financial or operating covenant) of any agreements or instruments governing any of the equity and/or debt securities and/or other indebtedness of any entity comprising the Company (such modification or amendment shall include, without limitation, any forbearance for at least 12 months with respect to any payment obligation) or any combination of the foregoing transactions.

"Sale Transaction" shall mean any transaction or series of transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company and/or the affiliates of each) in one or a series of related transactions of (i) all or a material portion of the equity securities of any entity comprising the Company or any interest held by any entity comprising the Company and/or (ii) any significant portion of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of the Bankruptcy Code.

"Transaction" shall mean a Sale Transaction, a Restructuring Transaction or a Financing Transaction.

"Transaction Fee(s)" shall mean any Sale or Restructuring Transaction Fee or Financing Transaction Fee.

7.  B. Riley is acting as an independent contractor under this Agreement, and not in any other capacity including, without limitation, as a fiduciary, and any duties arising out of its engagement shall be owed solely to the Company. Except as set forth in Schedule 1, nothing in this Agreement is intended to confer on any other person (including, without limitation, stockholders, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof. The Company agrees that any information or documentation provided to Company by B. Riley, and any analyses based upon such information and documentation, is owned exclusively by B. Riley, subject to a perpetual royalty-free license to the Company to use such information and documentation however it chooses. Except for such license, this Agreement shall not be deemed to transfer any ownership rights in such information and/or documentation to the Company, including but not limited to intellectual property rights, nor shall any implied license be granted to the Company under this Agreement.

8.  In the event that the Company is or becomes a debtor under Chapter 11 of the Bankruptcy Code, whether voluntarily or involuntarily, the Company shall seek an order authorizing the engagement of B. Riley pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Section 328(a) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders and not subject to any other standard of review under Section 330 of the Bankruptcy Code. In so agreeing to seek B. Riley's retention under Section 328(a) of the Bankruptcy Code, the Company acknowledges that it believes that B. Riley's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any Transaction, that the value to the Company of B. Riley's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Transaction Fee(s) is reasonable regardless of the number of hours to be expended by B. Riley's professionals in the performance of the services to be provided hereunder. The Company shall submit B. Riley's employment application as soon as practicable following the Company's filing of a voluntary Chapter 11 case, or the entry of an order for relief in any involuntary case filed against the Company, and use its best efforts to cause such application to be considered on the most expedited basis. The employment application and the proposed order authorizing engagement of B. Riley shall be provided to B. Riley as much in advance of any Chapter 11 filing as is practicable (without limiting the foregoing, the Company shall use best efforts to give B. Riley at least 5 days' prior notice of such filing) and must be acceptable to B. Riley in its sole discretion.

Following entry of the order authorizing the engagement of B. Riley, the Company shall pay all fees and expenses due pursuant to this Agreement, as approved by the court having jurisdiction of the bankruptcy case involving the Company (the "Bankruptcy Court"), as promptly as possible in accordance with the terms of this Agreement and the order of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and will work with B. Riley to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. B. Riley shall have no obligation to provide services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless B. Riley's retention under this Agreement is approved under Section 328(a) of the Bankruptcy Code by final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which is acceptable to B. Riley in all respects. If the order authorizing the engagement of B. Riley is not obtained, or is later reversed or set aside for any reason, B. Riley may terminate this Agreement, and the Company shall reimburse B. Riley for all fees and expenses reasonably incurred prior to the date of expiration or termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. Prior to commencing a Chapter 11 case, the Company shall pay all amounts due and payable to B. Riley in cash. The terms of this Section are solely for the benefit of B. Riley, and may be waived, in whole or in part, only by B. Riley.

9. The Company agrees to the indemnification and other agreements set forth on Schedule 1 hereto, which is hereby incorporated by reference.

10. The Company agrees that during the term of B. Riley's engagement hereunder, it will not contact or solicit acquirors, investors, institutions or other entities with respect to a potential Transaction without B. Riley's knowledge. The Company will also promptly inform B. Riley of any discussions it has or of any inquiry it may receive concerning a potential Transaction.

11. During the Term and the Tail Period, neither the Company nor any of its affiliates shall circumvent B. Riley to avoid paying any of the fees due hereunder.

12. The term of B. Riley's engagement hereunder (the "Term") shall be for 12 months commencing on the date of execution of this Agreement; provided, however, that either party may terminate the Term at any time solely upon 10 days written notice to the other party. This Agreement and Schedule I shall survive any termination of the Term. With respect to the expenses payable by the Company pursuant to Section 6, upon termination of the Term, B. Riley shall be entitled to collect all such actual expenses accrued through the date of termination in accordance with the terms of Section 6.

13. The Company acknowledges that B. Riley is a full service securities firm engaged, either directly or through its affiliates, in various activities, including securities trading, corporate finance, investment management and brokerage activities. In the ordinary course of these activities, B. Riley and its affiliates may actively trade in the debt and equity securities (or related derivative securities) of other companies which may be the subject of the engagement contemplated by this Agreement for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities, subject to any restrictions under applicable securities laws when B. Riley or any of its affiliates are in possession of material nonpublic information involving the Company. B. Riley and its affiliates may have and may continue to have investment banking, broker-dealer and other relationships with parties outside of this engagement pursuant to which B. Riley may acquire information of interest to the Company. B. Riley shall have no obligation to disclose such information to the Company or to use such information in connection with its efforts hereunder.

14. The Company agrees that B. Riley will have the right to use the Company's name, trademark and logo for the purposes of announcements, press releases and advertisements related to the completion of the transactions contemplated herein after such transactions have been publicly disclosed.

15. The Company represents and warrants to B. Riley that there are no brokers, representatives or other persons which have an interest in compensation due to B. Riley from any transaction contemplated herein or that any other agreements of like nature are in force or conflict with this Agreement. Each party to this Agreement acknowledges that no representations, inducements, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that this Agreement (including the schedules and attachments hereto) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. This Agreement may not be amended or modified except in writing. If any provision of this Agreement

is determined to be invalid or unenforceable in any respect, that provision will be deemed modified or, if necessary, rescinded in order to be valid and enforceable. All other provisions of this Agreement will continue and remain in full force and effect.

16. The benefits of this Agreement shall, together with Schedule 1 hereto, inure to the benefit of respective successors and assigns of the parties hereto and of the Indemnified Parties (as defined in Schedule 1) hereunder and their successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns; provided that the Company may not assign or delegate any of its rights or obligations hereunder without B. Riley's prior written consent and any such purported assignment or delegation without B. Riley's prior written consent shall be void.

17. The Company represents to B. Riley that it has not taken, and agrees that it will not take, any action, directly or indirectly, so as to cause any Transaction to fail to be entitled to any applicable exemption from registration afforded by the Act. In effecting any Transaction, the Company agrees to comply in all material respects with applicable provisions of the Act, any regulations thereunder and any applicable state laws and requirements, as well as any federal, state or foreign judicial decisions or opinions related thereto.

18. IN NO EVENT SHALL B. RILEY, OR ANY OTHER AGENT, AFFILIATE, OR CONTRACTOR OF B. RILEY, BE LIABLE TO THE COMPANY FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES (I.E., LOST PROFITS) ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, WHETHER OR NOT SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. THE COMPANY FURTHER AGREES THAT THE LIABILITY LIMIT OF B. RILEY AND ITS AFFILIATES, AGENTS, OR CONTRACTORS SHALL IN NO EVENT BE GREATER THAN THE AGGREGATE DOLLAR AMOUNT WHICH THE COMPANY PAID DURING THE TERM OF THIS AGREEMENT, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND COURT COSTS.

19. This Agreement and all aspects of the relationship created by this engagement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York sitting in New York County and agrees to venue in such courts provided that such consent and agreement shall not be deemed to require any bankruptcy case involving the company to be filed in such courts, and if the company becomes a debtor under Chapter 11 of the Bankruptcy Code, during any such case, any claims may also be heard and determined before the Bankruptcy Court. Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations under Schedule I, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of this engagement is brought by or against any Indemnified Party. B. RILEY AND THE COMPANY EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTER CLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS ENGAGEMENT.

20. All notices, demand or other communications given hereunder shall be in writing and shall be deemed to have been duly given when delivered in person, upon oral or written acknowledgment of receipt thereof when transmitted by facsimile transmission, on the business day after being sent by nationally recognized overnight courier service, or on the third calendar day after being mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the addresses herein above first mentioned or to such other addresses as any party hereto shall designate to the other for such purpose. For the avoidance of doubt, e-mail shall not be an accepted means of providing any notice to the other party required hereunder.

21. B. Riley is not, in any manner, providing legal services or legal advice to the Company. Furthermore, the Company agrees and acknowledges that B. Riley is not an advisor as to tax, accounting or regulatory matters in any jurisdiction.

22. The Company represents that it is a sophisticated business enterprise that has retained B. Riley for the limited purposes set forth in this Agreement, and the parties acknowledge and agree that their respective rights and obligations are contractual in nature. Each party disclaims any intention to impose fiduciary obligations on the other by virtue of the engagement contemplated by this Agreement.

**Coin Cloud**

23. The prevailing party in any dispute relating to or arising from this Agreement shall have the right to collect from the other party its reasonable costs and attorneys' fees.

[Remainder of page intentionally left blank; signature page follows]

**Coin Cloud**

B. Riley is delighted to accept this engagement and looks forward to working with you. Please confirm that the foregoing correctly sets forth our agreement by signing this letter in the space provided, whereupon this letter shall be a binding agreement as of the date first above written.

**B. RILEY SECURITIES, INC.**

By: _____
Name: Perry Mandarino
Title: Senior Managing Director

**CASH CLOUD INC. (D/B/A COIN CLOUD)**

By: _____
Name: Chris MC ALARY
Title: CEO

**Schedule 1**

The Company agrees to indemnify and hold harmless B. Riley and its affiliates (as defined in Rule 405 under the Securities Act of 1933, as amended) and their respective directors, officers, members, managers, employees, agents and controlling persons (B. Riley and each such person being an "Indemnified Party") from and against all losses, claims, damages and liabilities (or actions, including shareholder actions, in respect thereof), joint or several, to which such Indemnified Party may become subject under any applicable federal or state law, or otherwise, which are related to or result from the performance by B. Riley of the services contemplated by or the engagement of B. Riley pursuant to, this Agreement and will promptly reimburse any Indemnified Party for all reasonable expenses (including reasonable counsel fees and expenses) as they are incurred in connection with the investigation of, preparation for or defense arising from any threatened or pending claim, whether or not such Indemnified Party is a party and whether or not such claim, action or proceeding is initiated or brought by the Company.  The Company will not be liable to any Indemnified Party under the foregoing indemnification and reimbursement provisions, (i) for any settlement by an Indemnified Party effected without its prior written consent (not to be unreasonably withheld); or (ii) to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from B. Riley's willful misconduct or gross negligence.  The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company or its security holders or creditors related to or arising out of the engagement of B. Riley pursuant to, or the performance by B. Riley of the services contemplated by, this Agreement except to the extent that any loss, claim, damage or liability is found in a final, non-appealable judgment by a court of competent jurisdiction to have resulted primarily from B. Riley's willful misconduct or gross negligence.

Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit or proceeding or notice of the commencement of any action, suit or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, promptly notify the Company in writing of the same.  In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Company of the commencement thereof, the Company  may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action provided, that the employment of such counsel shall be at the Indemnified Party's own expense, unless (i) the employment of such counsel has been authorized in writing by the Company, (ii) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or that a conflict or potential conflict exists (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Indemnifying Party to conduct the defense of both the Company and the Indemnified Party (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (iii) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit or proceeding, in each of which cases the reasonable fees, disbursements and other charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be required to pay fees and expenses for more than one firm of attorneys (in addition to local counsel) representing Indemnified Parties unless the defense of one Indemnified Party is unique or separate from that of another Indemnified Party subject to the same claim or action.  Any failure or delay by an Indemnified Party to give the notice referred to in this paragraph shall not affect such Indemnified Party's right to be indemnified hereunder, except to the extent that such failure or delay causes actual harm to the Company, or prejudices its ability to defend such action, suit or proceeding on behalf of such Indemnified Party.

If the indemnification provided for in this Agreement is for any reason held unenforceable by or unavailable to an Indemnified Party, the Company  agrees to contribute to the losses, claims, damages and liabilities for which such indemnification is held unenforceable or unavailable (i) in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and B. Riley, on the other hand, of any Transaction as contemplated whether or not such Transaction is consummated or, (ii) if (but only if) the allocation provided for in clause (i) is for any reason unenforceable or unavailable, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (i) but also the relative fault of the Company, on the one hand, and B. Riley, on the other hand, as well as any other relevant equitable considerations.  The Company agrees that for the purposes of this paragraph the relative benefits to the Company and B. Riley of any Transaction as contemplated shall be deemed to be in the same proportion that the total value received or contemplated to be received by the Company  or its shareholders, as the case may be, as a result of or in connection with such Transaction bear to the fees paid or to be paid to B. Riley under this Agreement.  Notwithstanding the foregoing, the Company expressly agrees that B. Riley shall not be required to contribute any amount in excess of the amount by which fees paid B. Riley hereunder (excluding reimbursable expenses), exceeds the amount of any damages which B. Riley has otherwise been required to pay.  The Company's recourse with respect to any liability or obligation of B. Riley hereunder shall be limited to the assets of B. Riley, and the Company shall have no recourse against, and expressly waives its right to bring any claim against, any other Indemnified Party or any of their assets.

The Company will not settle, compromise or consent to the entry of any judgment in any pending or threatened claim, action or proceeding in respect of which indemnification or contribution could be sought under the provisions of this Agreement,

whether or not any Indemnified Party is an actual or potential party to such claim, action or proceeding, without B. Riley's prior written consent, which consent shall not be unreasonably withheld in the case of any claim, action or proceeding involving only the payment of money damages), unless such settlement, compromise or consent (i) includes an unconditional release of each Indemnified Party from all liability in any way related to or arising out of such claim, action or proceeding and (ii) does not impose any actual or potential liability upon any Indemnified Party and does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, due care, loyalty, expertise or reputation of any Indemnified Party or any action or inaction by any Indemnified Party.

In the event that an Indemnified Party is requested, authorized by the Company, or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Party is not named as a defendant, the Company agrees to promptly reimburse B. Riley on a monthly basis for all expenses incurred by it in connection with such Indemnified Party's appearing and preparing to appear as such a witness, including, without limitation, the reasonable fees and disbursements of its legal counsel. In addition to any reimbursed fees, expenses or costs outlined hereunder, B. Riley shall also receive from the Company cash compensation of $2,000.00 per person, per day, plus reasonable out-of-pocket expenses and costs should B. Riley be required to provide testimony in any formal or informal proceeding regarding the Company.

If multiple claims are brought, at least one for which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or arbitration award expressly states that it, or any portion thereof, is based solely on a claim as to which indemnification is not available.

Prior to entering into any agreement or arrangement with respect to, or effecting, any merger, statutory exchange or other business combination or proposed sale or exchange, dividend or other distribution or liquidation of all or a significant portion of its assets in one or a series of transactions or any significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Company set forth herein, the Company will promptly notify B. Riley in writing thereof and, if requested by B. Riley, shall arrange in connection therewith alternative means of providing for the obligations of the Company set forth herein on terms and conditions satisfactory to B. Riley.

The foregoing provisions of this Schedule 1 are in addition to rights B. Riley may have at common law or otherwise, shall inure to the benefit of the Indemnified Parties and their respective successors and assigns and shall be binding on any successor or assign of the Company and successors or assigns to the Company's business or assets. The provisions of this Schedule 1 shall apply to any amendments, modifications or future additions to the engagement described in this Agreement and related activities prior to the date of this Agreement and shall remain in full force and effect notwithstanding any termination or expiration of this Agreement.