Terri H. Didion, Assistant United States Trustee
State Bar No. CA 133491
Jared A. Day, Trial Attorney
State Bar No. CA 275687
Edward M. McDonald Jr., Trial Attorney
State Bar No. NY 4126009
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
300 Las Vegas Boulevard, So., Ste. 4300
Las Vegas, NV 89101
Telephone: (775) 784-5335
Fax: (775) 784-5531
E-mail: jared.a.day@usdoj.gov

Attorneys for the U.S. Trustee for Region 17
    TRACY HOPE DAVIS

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC. dba COIN CLOUD,<br><br>Debtor. | Case No: 23-10423-mkn<br><br>Chapter 11<br><br>Date: February 15, 2023<br>Time: 10:30 a.m.<br>Location: Foley Courtroom 2, Telephonic |

**UNITED STATES TRUSTEE'S OPPOSITION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SENIOR, SECURED, SUPERPRIORITY FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFIYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING OTHER RELIEF**

Tracy Hope Davis, United States Trustee for Region 17 (the "U.S. Trustee"), by and through her undersigned counsel, hereby files her *Opposition and Reservation of Rights* ("Opposition") to the *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior, Secured, Superpriority Financing; (II) Granting Liens and Superpriority*

1

*Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Other Relief* [ECF No. 35] ("Motion") filed by Cash Cloud, Inc. dba Coin Cloud (the "Debtor").[1]

## INTRODUCTION

Debtor's requests for relief in the Motion should either be (a) denied outright; or (b) limited to only emergency relief to permit Debtor to sustain business operations.

Notably, the Motion fails to include a budget. Thus, Debtor has failed to demonstrate that approval of a $3 million borrowing on an interim basis is necessary to avoid immediate and irreparable harm. Further, the Motion fails to disclose the connections of the proposed Lender and its affiliates (if any) to parties in interest, even though Debtor seeks a good faith finding under 11 U.S.C. § 364(e) as part of the interim order. Moreover, as set forth below, the proposed financing contains oppressive terms.

The 11 U.S.C. § 341(a) meeting of creditors has not been held, and Debtor's required schedules and statements have not yet been filed in this case. As the relief sought may also impact parties in interest, including, but not limited to, any official committee of unsecured creditors, the U.S. Trustee reiterates that any relief granted should be limited to emergency relief to permit Debtor to sustain business operations. For these reasons and for the reasons set forth

---

[1] Unless otherwise noted: "Section" refers to a section of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"); "ECF No." refers to the bankruptcy docket for the above-captioned case; "Fed. R. Bankr. P." refers to the Federal Rules of Bankruptcy Procedure; "Fed. R. Evid." refers to the Federal Rules of Evidence. The U.S. Trustee requests that the Court take judicial notice of the pleadings and documents filed in this case, pursuant to Fed. R. Bankr. P. 9017 and Fed. R. Evid. 201. To the extent that the Opposition contains factual assertions predicated upon statements made by Debtor, its agents, attorneys, professionals, or employees, the U.S. Trustee submits that such factual assertions are supported by admissible evidence in the form of admissions of a party opponent under Fed. R. Bankr. P. 9017 and Fed. R. Evid. 801(d)(2).

below, the Court should either sustain the U.S. Trustee's Opposition or adjourn the hearing on the Motion to a later date.

The U.S. Trustee reserves all rights with respect to the Motion, which is scheduled for hearing on the above-captioned date and time, including, but not limited to her right to take any appropriate action under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the U.S. Bankruptcy Court for the District of Nevada.

The U.S. Trustee's Opposition is supported by the following memorandum of points and authorities and any argument the Court may permit during the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    BACKGROUND**

1. On February 7, 2023, Debtor filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code commencing the above-captioned case. [*See* ECF No. 1].

2. The Section 341 meeting of creditors is scheduled for March 16, 2023. [*See* ECF No. 2].

3. Neither an Official Committee of Unsecured Creditors nor a trustee has been appointed in this case. [*See* ECF Docket *generally*].

4. Debtor has not filed its summary of schedules, Schedules A/B through H, statement of financial affairs, list of equity security holders, or the disclosure of compensation required by Fed. R. Bankr. P. 2016. [*See* ECF No. 22].

5. Debtor requested an extension of time to file its schedules and statements to March 9, 2023, which was granted during the associated first day hearing, the order for which is pending entry by the Court. [*See* ECF No. 3].

6. The hearing on the Motion was set on shortened time for the above-captioned date and time with oppositions due by February 13, 2023. [*See* ECF No. 30].

7. Debtor's list of Top 20 unsecured creditors includes Cole Kepro, which is listed with a disputed claim of $8,544,979.94 for professional services.[2] [*See* ECF No.1, p. 10 of 71, #2].

**Debtor's DIP Financing Motion**

8. The Motion was filed the evening of February 8, 2023 and is supported by the omnibus declaration and declaration of Christopher Andrew McAlary [ECF Nos. 19 *and* 36] ("McAlary Declaration") along with the declarations of Paul Huygens [ECF No. 37] and Daniel Moses [ECF No. 38]. Together the Motion and supporting declarations comprise 187 pages. [*See* ECF Nos. 35-38].

9. The proposed lender is CKDL Credit, LLC, a Delaware limited liability company (the "Lender"). [*See* ECF No. 35, p. 2 of 69; lines 5-6]. The Motion does not appear to contain any other information about the proposed Lender. [*See* ECF No. 35 *generally*].

10. The proposed loan is for $5 million, with $3 million available on an interim basis and an interest rate of 15 percent compounded quarterly, with a default rate of 20 percent. [*See* ECF No. 35, pp. 3-4 of 69]. The associated DIP facility agreement indicates that the proposed DIP financing loan is guaranteed by Debtor's three named subsidiaries, Evive Trading, LLC, a cayman Islands company, Sec Vend, a Nevada limited liability company, and Coin Cloud Brasil Ativos Digitais Ltda, a Brazilian limited company. [*See* ECF No. 36, Exhibit A.]

---

[2] The McAlary Declaration discloses that Debtor is suing Cole Kepro in Nevada state court and could recover up to $10,000,000 from it. [*See* ECF No. 19, p. 10 of 58; ¶ 39].

11. The loan matures if a final order approving it has not been entered within 14 days after entry of the interim order. [*See* ECF No. 35, p. 3 of 69]. Given that the interim hearing is February 15, 2023, it appears that a final order must be entered by approximately March 2, 2023, to avoid default—which is a week before Debtor is even required to file its schedules and statements and is approximately two weeks before the date set for the Section 341 meeting in this case. (The proposed date for final approval in the Motion is February 24, 2023, based on a February 10, 2023, interim hearing date. [*See* ECF No. 35, p. 5 of 69; ¶ c].)

12. The proposed loan contains numerous default provisions, including actions to challenge the liens granted by the loan, the appointment of a Chapter 11 trustee or an examiner with expanded powers, the failure to meet milestones, or to comply with a budget.[3] [*See* ECF No. 35, pp. 3-4 of 69; ECF No. 36, pp. 41-44; § 7.1].

13. The proposed loan is secured by a superpriority, priming lien and a superpriority administrative claim, except that the lien is subordinated to Cole Kepro liens, and subject to a carve out of U.S. Trustee fees, Court fees, and professional fees awarded pursuant to Section 330 but limited to the amount in a budget that is not attached to the Motion. [*See* ECF No. 35 *generally*]. Moreover, there does not appear to be a carve-out for the fees of a Chapter 7 trustee if the case is converted. [*See* ECF No. 35, p. 4 & 6 of 69; *see also* ECF No. 35, p. 68 of 69].

14. There are numerous adequate protection provisions for various alleged secured creditors. [*See* ECF No. 35, pp. 7-11 of 69].

---

[3] The milestones generally appear to follow two tracks: (i) filing of a proposed plan of reorganization by April 28, 2023 with confirmation by June 28, 2023; or (ii) filing of a bid procedures motion by April 28, 2023, proposing a sale of the Debtor's assets by credit bid to the Lender, with a sale closing by August 15, 2023. *See* ECF No. 36, at pp. 12, 14, 37, 44 of 51 (DIP financing agreement, at pp. 2, 4, 27, 34).

15. Upon a default, the proposed loan appears to provide for automatic termination of the automatic stay, subject only to a four-day cure period. [*See* ECF No. 35, p. 11 of 69].

16. The proposed loan includes a waiver of 11 U.S.C. § 506(c). [*See* ECF No. 35, p. 12 of 69].

17. The proposed loan also includes a lien on avoidance actions. [*See* ECF No. 35, p. 13 of 69].[4]

18. Moreover, the proposed loan includes releases by Debtor and its affiliates of the proposed Lender and its affiliates. [*See* ECF No. 35, p. 6 of 69; ¶ (i)].

19. In addition, the Motion seeks a good faith finding under Section 364(e). [*See* ECF No. 35, p. 20 of 69; ¶ 31].

## II.  AUTHORITIES & DISCUSSION

20. Four principles for Courts to consider with regard to first day motions are:

> First, the requested relief should be limited to that which is minimally necessary to maintain the existence of the debtor, until such time as the debtor can affect appropriate notice to creditors and parties in interest. In particular, a first day order should avoid substantive rulings that irrevocably determine the rights of parties.
>
> Second, first day orders must maintain a level of clarity and simplicity sufficient to allow reasonable confidence that an order will effect no unanticipated or untoward consequences.
>
> Third, first day orders are not a device to change the procedural and substantive rights that the Bankruptcy Code and Rules have established. In particular, first day orders should provide no substitute for the procedural and substantive protections of the plan confirmation process.

---

[4] It appears that Debtor seeks to grant the proposed Lender a lien on avoidance actions *only* upon entry of a Final Order. *See* proposed Interim Order (ECF No. 35, at p. 43 of 69), at ¶ 6a. There appears to be a similar exclusion from the DIP superpriority claims at the interim stage. *Id.*, at ¶ 5.

> Fourth, no first day order should violate or disregard the substantive rights of parties, in ways not expressly authorized by the Bankruptcy Code.

*In re The Colad Group, Inc.*, 324 B.R. 208, 213-14 (Bankr. W.D.N.Y. 2005).

21. Accordingly, the relief sought in this first day Motion, if granted at all, should only be granted on an interim basis, with a final hearing set so that an Official Committee of Unsecured Creditors, if one is appointed, can review and respond to the final relief sought, preferably after the schedules and statements are filed and the 341 meeting of creditors is conducted.

### A. **Debtor's Dip Financing Motion Should Be Denied, Adjourned, or Limited to Permit Debtor to Sustain Business Operations on an Interim Basis Only.**

22. Before approving debtor in possession financing, a court must consider whether the terms of the proposed financing are fair, reasonable and adequate. *See In re Los Angeles Dodgers LLC*, 457 B.R. 308, 312-13 (Bankr. D. Del. 2011).

23. In this respect, courts routinely consider the following factors:

> (1) That the proposed financing is an exercise of sound and reasonable business judgment;
>
> (2) That the financing is in the best interests of the estate and its creditors;
>
> (3) That the credit transaction is necessary to preserve the assets of the estate, and is necessary, essential, and appropriate for the continued operation of the debtor's business;
>
> (4) That the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender; and
>
> (5) That the financing agreement was negotiated in good faith and at arm's length between the debtors, on the one hand, and … the lenders, on the other hand.

*See In re Sterling Mining Co.*, No. 09-20178-TLM, 2009 Bankr. LEXIS 2341, at *8 (Bankr. D. Idaho Aug. 14, 2009), citing *In re Farmland Indus., Inc.*, 294 B.R. 855, 881 (Bankr. W.D. Mo. 2003).

24. The Motion and the supporting declarations contain inadequate information regarding the proposed Lender, including whether it is a special purpose DIP lender affiliate of a party in interest in the case. [*See* ECF Nos. 35-38 *generally*].

25. The Motion and the supporting declarations contain inadequate information regarding the need for financing during the interim period. [*See* ECF Nos. 35-38 *generally*]. The budget, which should be "Exhibit A" to the interim DIP order, is blank. [*See* ECF No. 35, p. 68 of 69]; *see also* Fed. R. Bankr. P. 4001(c)(2) (at an interim hearing, the Court may authorize credit "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing"); *In re Atrium Dev. Co.*, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993) ("[i]n a typical cash collateral hearing the debtor presents a budget of what it believes are reasonable operating expenses and seeks court approval of that budget").

26. None of the other declarations contain a budget. [*See* ECF Nos. 19, 36, 37, *and* 38]. No money, especially at the interim period, should be approved unless Debtor shows in detail, why it needs millions of dollars in the first two weeks of this case. Professional fees should not be included in the interim amount because professionals cannot be paid, absent a Court order, except after 120 days into the case. *See* 11 U.S.C. § 331.

27. Courts recognize that debtors in possession "generally enjoy little negotiating power with a proposed lender…. As a result, lenders often exact favorable terms that harm the estate and creditors." *See In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (B.A.P. 9th Cir. 1992). "[B]ankruptcy courts do not allow terms in financing arrangements that convert the

bankruptcy process from one designed to benefit all creditors to one designed for the unwarranted benefit of the postpetition lender…. Thus, courts look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest." *Id*. (internal citations omitted).

28. Bankruptcy courts have not approved financing arrangements that convert the bankruptcy process from one designed to benefit all creditors to one designed for the sole (or primary) benefit of a post-petition lender. *See, e.g., Ames Dep't Stores, Inc.*, 115 B.R. 34, 38-39 (Bankr. S.D.N.Y. 1990) (citing *In re Tenney Village Co.*, 104 B.R. 562, 568 (Bankr. D.N.H. 1989) (holding that the terms of a post-petition financing facility must not "pervert the reorganizational process from one designed to accommodate all classes of creditors … to one specially crafted for the benefit" of one creditor); *see also In re Berry Good, LLC*, 400 B.R. 741, 747 (Bankr. Arizona 2008).

29. Events of default under Debtor's proposed DIP financing terms include the appointment of a Chapter 11 trustee or an examiner with expanded powers, conversion to Chapter 7, any action brought against the proposed Lender that would impact Debtor's obligation under the DIP financing, or Debtor's failure to meet benchmarks set by the proposed Lender. [*See* ECF No. 35, pp. 3-4 of 69; ECF No. 36, pp. 41-44; § 7.1].

30. These provisions may improperly skew the bankruptcy process for the benefit of the proposed Lender and Debtor's existing management. *See, e.g., Ames Dep't Stores, Inc.*, 115 B.R. at 38 ("[i]t is similarly the practice of this court not to approve financing arrangements containing clauses triggering default on the appointment of a trustee or examiner under Section

1104. Such entrenchment of management may not be in the best interests of the estate and only precludes parties-in-interest from seeking to redress fraud or gross mismanagement through such an appointment").

31. In addition, the default provision regarding actions against the proposed Lender may improperly undercut the adversarial system contemplated by the bankruptcy process. *See In re Tenney Village Co., Inc.*, 104 B.R. at 569 ("[i]t is said that a Chapter 11 lender should not be required to finance the prosecution of claims against it. That is true. If the lender believes that this will occur, it can elect not to make the loan. It cannot expect, however, to change the rules of a Chapter 11 case") (discussing limitations on the ability of an unsecured creditors committee to challenge a DIP loan).

32. The releases of the proposed Lender that are to be inserted in the loan provisions should be denied to the extent that they constitute non-consensual third-party non-debtor releases that violate Ninth Circuit law. [*See* ECF No. 35, p. 6 of 69; ¶ (i)]; *see also Resorts Int'l v. Lowenschuss (In Re Lowenschuss)*, 67 F.3d 1394 (9th Cir. 1995); *American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods Inc.)*, 885 F.2d 621 (9th Cir. 1989). Because the identity of the proposed Lender and its affiliates is unclear, such releases, even if consensual, could release valuable claims in Nevada state court litigation, or in other venues.

33. The relief requested in the Motion includes an alteration of the automatic stay so that the proposed Lender can take action against Debtor upon the occurrence of a default, with what appears to be a four-day cure period. [*See* ECF No. 35, p. 11 of 69].

34. Debtor has not demonstrated the necessity for sidestepping the usual process for obtaining relief from stay. *See In re Tenney Village Co., Inc.*, 104 B.R. at 568 (denying final approval of DIP financing agreement that would have, among other things, granted lender relief

from the automatic stay unless the debtor obtained an order prohibiting foreclosure within a 7-day notice period).

35. The proposed DIP financing terms provide for liens covering the proceeds of any avoidance actions. [*See* ECF No. 35, p. 13 of 69]. However, avoidance actions should be maintained for the benefit of unsecured creditors. *Cf. Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("[w]hen recovery is sought under Section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors"); *see also McFarland v. Leyh (in Re Tex. Gen. Petroleum Corp.)*, 52 F.3d 1330, 1336 (5th Cir. 1995) ("[t]he proceeds recovered in avoidance actions should not benefit the reorganized debtor; rather, the proceeds should benefit the unsecured creditors"). In addition, Debtor has not provided adequate information as to what the universe of avoidance actions are, what their value is, or who they target. [*See* ECF No. 35 *generally*].

36. The proposed interim order provides for a Section 364(e) finding at the interim stage. [*See* ECF No. 35, p. 20 of 69; ¶ 31; p. 39 of 69; ¶ 3(e)].

37. Such a finding would all but immunize the DIP financing from appellate review. *See* 11 U.S.C. § 364(e); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1488-89, 1491 & n.6 (9th Cir. 1987) (dismissing appeal of approval of cross-collateralization clause as moot pursuant to Section 364(e), even though the cross-collateralization clause may have been illegal per se).

38. This sweeping relief should not be granted on such extremely short notice. Through the DIP Loan terms, including the numerous default provisions, the proposed financing appears to transfer control portions of the case to the proposed DIP Lender.

/ / /

11

**CONCLUSION**

39. In view of the shortened notice provided to creditors, to the extent that it is granted at all, the relief sought in the Motion should be limited to only what Debtor requires to sustain operations. Alternatively, the Motion should be adjourned until a later date. The adjournment would permit parties that were not provided sufficient notice and any official committee of unsecured creditors the opportunity to be heard on the Motion.

40. The U.S. Trustee expressly reserves her rights to object to any amendments or supplements to the Motion and/or any other additional relief requested in any subsequently filed pleadings.

**WHEREFORE**, the U.S. Trustee respectfully requests that the Court sustain her Opposition to the Motion and grant such other relief as is just and equitable under the circumstances.

Dated: February 13, 2023

TRACY HOPE DAVIS
UNITED STATES TRUSTEE

/s/ *Jared A. Day*
Jared A. Day
Trial Attorney for United States Trustee

# CERTIFICATE OF SERVICE

I, ANABEL ABAD SANTOS, under penalty of perjury declare: That declarant is, and was when the herein described service took place, a citizen of the United States, over 18 years of age, and not a party to nor interested in, the within action; that on February 13, 2023, I caused a copy of the foregoing

**UNITED STATES TRUSTEE'S OPPOSITION AND RESERVATION OF RIGHTS TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SENIOR, SECURED, SUPERPRIORITY FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFIYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING OTHER RELIEF**

to be served on the following parties:

☑  a. ECF System (attach Notice of Electronic Filing or list of persons & addresses):

- **BRETT A. AXELROD**   baxelrod@foxrothschild.com, pchlum@foxrothschild.com;mwilson@foxrothschild.com;arcdocketing@foxrothschild.com
- **CHAPTER 11 - LV**   USTPRegion17.lv.ecf@usdoj.gov
- **DAWN M. CICA**   dcica@carlyoncica.com, nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyoncica.com;tosteen@carlyoncica.com;3342887420@filings.docketbird.com
- **BART K. LARSEN**   BLARSEN@SHEA.LAW, 3542839420@filings.docketbird.com
- **JEANETTE E. MCPHERSON**   JMcPherson@FoxRothschild.com, ahosey@foxrothschild.com,ARCDocketing@foxrothschild.com
- **JAMES PATRICK SHEA**   jshea@shea.law, blarsen@shea.law;support@shea.law
- **STRETTO**   ecf@cases-cr.stretto-services.com, aw01@ecfcbis.com,pacerpleadings@stretto.com
- **Jeffrey R. Sylvester**   jeff@sylvesterpolednak.com, kellye@sylvesterpolednak.com
- **U.S. TRUSTEE - LV - 11**   USTPRegion17.lv.ecf@usdoj.gov
- **ZACHARY WILLIAMS**   zwilliams@foxrothschild.com, ARCDocketing@foxrothschild.com;ahosey@foxrothschild.com

I declare under penalty of perjury that the foregoing is true and correct.

Signed: February 13, 2023

/s/ *Anabel Abad Santos*
ANABEL ABAD SANTOS