Ogonna Brown, Bar No. 7589
obrown@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel:     702.949.8200
Fax:    702.949.8398

Paul R. Hage (pro hac vice forthcoming)
Richard Kruger (pro hac vice forthcoming)
phage@taftlaw.com
rkruger@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel:     248.727.1543

*Attorneys for Cole Kepro International, LLC*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>CASH CLOUD INC., dba Coin Cloud<br><br>Debtor | Case No.: BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SENIOR SECURED, SUPERPRIORITY FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**<br><br>Docket Nos. 35, 74<br>Hearing Date: February 15, 2023<br>Hearing Time: 10:30 a.m. |

Cole Kepro International, LLC ("Cole Kepro"), by and through its undersigned counsel, states as follows for its objection ("Objection") to *Debtor's Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured Superpriority Financing;*

120214129.1

*(II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (iv) Scheduling Final Hearing; and (V) Granting Related Relief* (the "Motion")[1].

This Objection is supported by the Memorandum of Points and Authorities set forth below, by the papers and pleadings on file in this case and any oral argument the Court entertain at the hearing for the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. BACKGROUND

1. Cole Kepro is a Nevada-based sheet metal design and fabrication company. Prior to the petition date in this bankruptcy case, it manufactured and sold digital currency kiosks (the "Kiosks") that Cash Cloud, Inc. dba Coin Cloud (the "Debtor") uses in the operation of its business.

2. Recently, Cole Kepro and Debtor were engaged in litigation in Clark County, Nevada (the "Clark County Litigation") that arose out of: (i) the Debtor's failure to pay amounts owed to Cole Kepro for a portion of the Kiosks delivered to the Debtor pursuant to a purchase order in an amount in excess of $34 million (the "Fourth Generation PO"), and (ii) the Debtor's anticipatory repudiation of a separate purchase order for the production of Kiosks in the amount of $100 million (the "Spanner PO"). In the Clark County Litigation, Cole Kepro asserted: (a) a secured claim in the approximate amount of $10 million[2] and (b) an unsecured claim, in an amount to be determined, related to the Debtor's anticipatory breach of the Spanner PO.

### II. THE OBJECTIONS

3. This bankruptcy case was filed less than a week ago. The Debtor has not filed its bankruptcy schedules or statement of financial affairs. The section 341 meeting of creditors has not been held. The creditors' committee has not yet been formed. Nevertheless, by the Motion,

---

[1] Capitalized terms not defined in this Objection have the meanings ascribed in the Motion or Interim Order.

[2] The Debtor has disputed Cole Kepro's secured status, and such dispute will be adjudicated in Adversary Proceeding No. 23-01010, which is currently pending before this Court.

- 2 -

120214129.1

the Debtor requests immediate interim relief and seeks to schedule a final hearing on the Motion within fourteen days.[3]  Any relief granted with respect to the Motion should be limited to the extent necessary to avoid immediate, irreparable harm.  All remaining relief should be deferred until such time that an official committee of unsecured creditors can review and respond.

4.  The Debtor is seeking to add the burden of $5,000,000 in debtor in possession financing ($3,000,000 on an immediate basis) without demonstrating the need for doing so. Specifically, the *Declaration of Paul Huygens* (ECF No. 37)[4] reflects that the Debtor has significant equity over and above its disputed and undisputed secured claims.  The Debtor just filed its proposed budget (the "Budget") hours ago, making it difficult to determine if the Debtor can operate using cash collateral or if the Debtor is simply planning to operate at a loss in this chapter 11 case.[5] The Motion is premised upon sections 364(c) and (d), which require that the Debtor prove it needs financing that may not obtained on an unsecured basis.  The Motion must be denied unless and until the Debtor meets the appropriately rigorous requirements of section 364(c) and (d).

---

[3] The Debtor's recently filed Budget reflects that an additional draw under the DIP will not occur until the week of March 28, 2023, which is subsequent to the scheduled final hearing on the Debtor's first day motions.  Any final hearing on the DIP should be scheduled for the March 17, 2023 hearing, by which point a creditors' committee will presumably be in place.

[4] All references to "ECF No." are to the number assigned to the documents filed in Case No. S-23-10423-MKN as it relates to Debtor as they appear on the docket maintained by the clerk of court. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "LR" are to the Local Rules of Bankruptcy Practice of the United States Bankruptcy Court for the District of Nevada. All references to the "FRBP" are to the Federal Rules of Bankruptcy Procedure.

[5] The Budget suggests that the Debtor intends to use its cash collateral in addition to the DIP Financing but no motion for authorization to use cash collateral has yet been filed.  Moreover, it appears that the Debtor plans to borrow $3,000,000 on an interim basis, subject to a requirement to maintain a Minimum Total Cash Liquidity of $6,500,000.  The Debtor's filings suggest that it has opted, in its business judgment, to incur fees, expenses and interest for a loan that results in negative cash flow of $3,500,000 on an interim basis and negative $1,500,000 cash flow on a final basis.

120214129.1

5. The Motion fails to disclose any information about the proposed DIP lender. It is unclear if the DIP lender has any connections to the Debtor[6] or its existing secured creditors. Such a lack of information is inappropriate particularly where, as here, the Debtor is seeking a good faith finding under section 364(e) as part of the interim order.

6. The Interim Order provides necessary and appropriate protections for Cole Kepro's claims with respect to the Cole Kepro Collateral as to the DIP Lender. But, such protections are not extended to the adequate protection replacement liens granted to Genesis and Enigma. More specifically, paragraph 6(c) of the Interim Order indicates that the DIP Priming Lien excepts the Cole Kepro Collateral. The Replacement Liens to be granted to Genesis and Enigma do not have the same necessary limitations.

7. The Debtor proposes an inappropriately generous adequate protection package to the Debtor's existing, alleged, secured creditors, Genesis and Enigma. The Debtor asserts that such creditors enjoy a sizable equity cushion. Nevertheless, by the Motion, the Debtor proposes to provide such parties with:

- Replacement Liens, Adequate Protection Superpriority Claims, and related claims and liens. As noted, while the liens granted to the proposed DIP Lender are expressly subject to the secured claim of Cole Kepro with respect to the Cole Kepro Collateral, similar language is improperly not included with respect to the replacement liens granted to Genesis and Enigma;

- Immediate cash payments (including payment of professional fees) as adequate protection to Genesis and Enigma notwithstanding their significant equity cushions;

---

[6] The Motion suggests that the DIP facility is guaranteed by certain non-debtor affiliates of the Debtor.

- An unnecessary challenge period, binding on a to be appointed creditors' committee, with respect to the validity, extent and priority of the purported secured claims of Genesis and Enigma.

Such adequate protection package is unnecessary and inappropriate given the facts of this case.

8. As noted, the provisions of the Interim Order act to unnecessarily and improvidently allow and approve the alleged pre-petition secured claims of Genesis and Enigma. The entirety of paragraph 2 of the Interim Order is not necessary and is improper. There is absolutely no need to validate the claims of Genesis or Enigma on an emergency basis. Each should be required to file a proof of claim, with all supporting documents and information to be reviewed and handled as part of a normal claims process. With reported equity cushions of 49% and 195% [Doc. No. 37], neither Genesis nor Enigma are entitled to expedited approvals of liens and claims or the benefit of an arbitrary 60-day challenge period.

9. As for the DIP Financing, the provisions of paragraphs 11 and 17 of the Interim Order are particularly improper. As the party providing the funding for post-petition operations, the DIP Lender should not be insulated from the requirement to fund all administrative expense claims through a waiver of section 506(c). *See, e.g.*, *Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)*, 150 F.3d 868, 872 (8th Cir. 1998), *vacated on other grounds*, 177 F.3d 719 (1999) (section 506(c) waiver "unenforceable"); *In re Ridgeline Structure, Inc.*, 154 B.R. 831, 832 (Bankr. D.N.H. 1993) (section 506(c) waiver "against public policy and unenforceable per se").

10. No liens should be granted on Avoidance Actions in any financing order. The purpose of the avoidance powers is to allow the debtor-in-possession to seek recoveries for the benefit of all unsecured creditors. *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000). Accordingly, bankruptcy courts

customarily do not allow debtors-in-possession to pledge avoidance actions and their proceeds as security. *See, e.g., Official Comm. Of Unsecured Creditors v. Goold Electronics Corp. (In re Goold Electronics Corp.)*, 1993 WL 408366 at *3-4 (N.D. Ill. Sept. 22, 1993) (vacating DIP Financing order to the extent that the order granted the lender a security interest in the debtor's preference actions); *In re Tribune Co.*, 464 B.R. 126, 171 (Bankr. D. Del. 2011) (noting that "case law permits all unsecured creditors to benefit from avoidance action recoveries"); *In re Sapolin Paints, Inc.*, 11 B.R. 930, 937 (Bankr. E.D.N.Y. 1981) (reciting "the well-settled principle that neither a trustee . . . nor a debtor-in-possession, can assign, sell or otherwise transfer the right to maintain a suit to avoid a preference"). The Avoidance Actions and the net proceeds thereof should remain unencumbered for the benefit of the unsecured creditors.

11.   Finally, the Motion inappropriately seeks to waive fundamental creditor protections, such as sections 363(k), section 506(c) and section 552(b).

**WHEREFORE**, Cole Kepro requests that this Court deny the Motion and grant any additional related relief the Court deems appropriate.

Dated this 13th day of February, 2023.

        LEWIS ROCA ROTHGERBER CHRISTIE LLP

        By: *Ogonna Brown*
            Ogonna Brown, (Nevada NBN: 7589)
            obrown@lewisroca.com
            3993 Howard Hughes Parkway, Suite 600
            Las Vegas, NV  89169
            Tel: 702.949.8200

        TAFT STETTINIUS & HOLLISTER LLP

            Paul R. Hage (pro hac vice forthcoming)
            Richard Kruger (pro hac vice forthcoming)
            phage@taftlaw.com
            rkruger@taftlaw.com
            27777 Franklin Road Suite 2500
            Southfield, MI 48034
            Tel: 248.727.1563

        *Attorneys for Cole Kepro International, LLC*

120214129.1

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Lewis Roca Rothgerber Christie LLP, and that on February 13, 2023, I caused to be served a true and correct copy of the foregoing **OBJECTION TO DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SENIOR SECURED, SUPERPRIORITY FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF** in the following manner:

☒ (ELECTRONIC SERVICE) Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities. A copy of the document was also sent via electronic mail to the parties listed on the CM/ECF Bankruptcy Court portal, at their last known email addresses.

☐ (ELECTRONIC MAIL) By transmitting electronically to the following recipient and last known email address:

☐ (UNITED STATES MAIL) By depositing a copy of the above-referenced document for mailing in the United States Mail, first class postage prepaid, at Las Vegas, Nevada, to the parties listed below, at their last known mailing addresses:

/s/ Renee L. Creswell
An employee of
Lewis Roca Rothgerber Christie LLP

120214129.1