James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
            blarsen@shea.law
            kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone:  212.468.8000
Facsimile:  212.468.7900
Email:  glee@mofo.com
            akissner@mofo.com

*Attorneys for Enigma Securities Limited*

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | Case No.: BK-S-23-10423-MKN |
| CASH CLOUD INC., dba Coin Cloud | Chapter 11 |
| | ECF Nos. 35, 74, 80 |
| Debtor. | Hearing Date: February 15, 2023<br>Hearing Time: 10:30 a.m. (PT) |

**ENIGMA SECURITIES LIMITED'S RESPONSE TO COLE KEPRO INTERNATIONAL, LLC'S OBJECTION TO MOTION TO APPROVE POST-PETITION FINANCING ON AN INTERIM BASIS**

Page 1 of 8

Enigma Securities Limited ("Enigma"), by and through its undersigned counsel, files this response (the "Response") in opposition to Cole Kepro International, LLC's ("Cole Kepro") *Objection to Debtor's Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [ECF. No. 80] (the "Objection").[1] In support of its Response, Enigma respectfully states as follows.

## MEMORANDUM OF POINTS AND AUTHORITIES

1.  Enigma is an industry leading provider of cryptocurrency trading, liquidity, custody, and lending solutions for institutional and corporate clients. In addition to providing the Debtor with a facility pursuant to which it may trade cryptocurrency (an activity that is vital to the Debtor's business), Enigma also lent the Debtor $8 million pursuant to a Secured Loan Facility Agreement dated as of April 22, 2022 (the "Enigma Secured Loan"). In order to secure its obligations under the Enigma Secured Loan, the Debtor granted Enigma a first priority lien in certain of its digital currency machines ("DCMs"), as well as the cash proceeds contained therein and generated therefrom (along with the DCMs, the "Enigma Collateral").

2.  Pursuant to the Motion, the Debtor seeks the Court's permission, on an interim and final basis, to enter into a $5,000,000 senior secured post-petition financing facility (the "DIP Facility"), to be provided by CKDL Credit, LLC (the "DIP Lender"). The Debtor proposes to secure its obligations under the DIP Facility with, among other things, a priming lien on the Enigma Collateral in favor of the DIP Lender that would be senior to the lien securing the Enigma Loan. In exchange for Enigma's consent to be primed, the Debtor and the DIP Lender have agreed to provide Enigma with adequate protection on the terms described in the Motion.

3.  Cole Kepro—a vendor that the Debtor alleges to have delivered thousands of faulty DCMs to the Debtor, and that claims an expansive (albeit disputed) security interest in the Debtor's

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

Page 2 of 8

property that is subject to a pending adversary proceeding—objects to the Motion, including the adequate protection provided to Enigma thereunder. In addition to questioning the Debtor's need for post-petition financing generally, Cole Kepro objects specifically to the Debtor's provision of (a) replacement liens, (b) superpriority administrative expense claims, (c) cash payments, and (d) stipulations in favor of Enigma (collectively, the "<u>Enigma Adequate Protection</u>"), as well as to (e) the establishment of a deadline by which a party in interest with requisite standing must initiate a challenge to the validity, enforceability, or perfection of Enigma's claims and liens.

4. Enigma takes no position with respect to the Debtor's need for post-petition financing or the merits of this particular DIP Facility at this time. However, to the extent the Debtor seeks to prime Enigma's interest in the Enigma Collateral, it must obtain Enigma's consent. Otherwise, it will be the Debtor's burden to demonstrate that it has provided Enigma with adequate protection from any diminution in the value of its liens. 11 U.S.C. §§ 364(d)(1), (2). Such adequate protection must place Enigma in the same position as "if there had not been post-petition [priming] financing" in the first place. *In re Hollister*, Case No. 2:18-bk-12429-NB (Bankr. C.D. Cal. Mar. 8, 2021), [ECF. No. 1382] (alteration in original), *aff'd* 2021 WL 6124757 (9th Cir. Dec. 28, 2021).

5. Contrary to Cole Kepro's assertions, and as discussed in the Motion and the declarations in support thereof, the Enigma Adequate Protection is fair, reasonable, and necessary to obtain Enigma's consent to be primed by the DIP Lender. Further, Enigma's consent to be primed on the terms set forth in the Interim Order avoids the significant time and expense attendant to a protracted priming fight, which burden would ultimately be borne by the estate. Accordingly, and for the reasons set forth below, the Objection should be overruled.

6. *First*, the Objection proceeds from the faulty premise that a supposedly "sizable equity cushion" obviates the need to provide Enigma with adequate protection. That could not be further from the truth. To the contrary, the testimony submitted by the Debtor in support of the Motion suggests that, upon the Debtor's entry into the DIP Facility, Enigma may lack any equity cushion in the Enigma Collateral.

7. Specifically, the Huygens Declaration[2] states that the Enigma Collateral is worth approximately $11.3 million, while Enigma's secured claim as of the Petition Date was approximately $7.6 million.[3] Although this implies an excess collateral value of approximately $3.7 million, any such "cushion" that may exist will be completely consumed by the $5 million of senior claims securing the DIP Facility. *See, e.g., In re Mellor*, 734 F.2d 1396, 1401 (9th Cir. 1984) (equity cushion determined by deducting the value of senior liens); *Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assocs.)*, 61 F.3d 197, 207 (3d Cir. 1995) (equity cushion determined by "the value of the property after deducting . . . all senior claims"); *see also* COLLIER ON BANKR. ¶ 361.03[1] (16th ed. 2022) (collecting cases standing for same).

8. **Second**, Cole Kepro's assertion that the replacement liens, superpriority administrative expense claims, and cash payments provided to Enigma are "unnecessary and inappropriate" is devoid of merit.

9. The Bankruptcy Code itself recognizes that replacement liens are a standard method of providing adequate protection. *See* 11 U.S.C. § 361(2) (a trustee may provide "an additional or replacement lien"). Accordingly, courts in this jurisdiction, as well as others, routinely approve of orders providing replacement liens where a prepetition secured lender is primed by a post-petition financing facility or otherwise consents to the use of its collateral by the debtor. *See, e.g., In re Musclepharm Corp.*, Case No. 22-14422-NMC (Bankr. D. Nev. Jan. 23, 2023), [ECF. No. 139], Exh. 1, at 20 (order approving DIP on interim basis and granting replacement liens to prepetition lender); *In re Tru Grit Fitness LLC*, Case No. 22-14320-ABL (Bankr. D. Nev. Dec. 29, 2022), [ECF. No. 55], at ¶ 13 (interim order approving use of cash collateral and granting replacement liens to prepetition lender); *In re Metal Partners Rebar, LLC*, Case No. BK-20-12878-ABL (Bankr. D. Nev.

---

[2] *See Declaration of Paul Huygens in Support of Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [ECF. No. 37], Ex. 1.

[3] Enigma reserves all rights with respect to the valuation of the Enigma Collateral and the amount of its claim in this case.

Aug. 11, 2020), [ECF No. 315], at ¶ 4(b) (approving DIP facility and granting replacement liens to prepetition lender).[4] Importantly, the Debtor is only providing replacement liens to Enigma on the Enigma Collateral. *See* Interim DIP Order, at ¶ 10(a). Practically speaking, then, the Interim Order only operates to subordinate Enigma's liens on its preexisting collateral base; it does **not** grant Enigma a new lien on anything it did not already have.

10. The proposed cash payments to Enigma (consisting of professional fees and post-petition interest) are a similarly canonical form of adequate protection, and indeed are expressly referenced in Bankruptcy Code section 361 as an example thereof. 11 U.S.C. § 361(1) (adequate protection may include "periodic cash payments" to a secured lender). Further, to the extent Enigma is in fact oversecured, then the Bankruptcy Code separately and independently authorizes Enigma to receive the post-petition interest and reimbursement of professional fees to which it is contractually entitled. *See* 11 U.S.C. § 506(b).[5]

11. And with respect to the superpriority claims in Enigma's favor, while an administrative expense claim on its own does not constitute adequate protection of a secured lender, *see* 11 U.S.C. § 361(3) (authorizing the court to grant adequate protection "other than . . . compensation allowable under section 503(b)(1) of this title as an administrative expense"), courts have long recognized that it is appropriately used as a "backstop" to supplement other forms of adequate protection. *See* COLLIER ON BANKR. ¶ 361.03[4][a] (16th ed. 2022) (collecting cases).

12. ***Third***, the stipulations made in favor of Enigma in the Interim Order and the establishment of a challenge period are far from "unnecessary" and "improvident," and are rather a near-universal feature of DIP and cash collateral orders approved by bankruptcy courts in chapter 11 cases of this magnitude, both in this jurisdiction and others. *See, e.g., In re Musclepharm Corp.*,

---

[4] *See also In re Nielsen & Bainbridge, LLC*, Case No. 23-90071-DRJ (Bankr. S.D. Tex. Feb. 10, 2023), [ECF. No. 67], at ¶ 12 (interim DIP order providing replacement liens); *In re FB Debt Financing Guarantor, LLC*, Case No. 23-10025-KBO (Bankr. D. Del. Jan. 13, 2023), [ECF No. 100], at ¶ 14 (same); *In re Clovis Oncology, Inc.*, Case No. 22-11292-JKS (Bankr. D. Del. Dec. 16, 2022), [ECF No. 113] at ¶ 6(a) (same); *In re Revlon, Inc.*, Case No. 22-10760-DSJ (Bankr. S.D.N.Y. Jun. 17, 2022), [ECF. No. 70], at ¶ 14(a) (same).

[5] By contrast, if Enigma is instead undersecured, then pursuant to the Interim Order the Debtor has reserved all rights and defenses it may have. *See* Interim Order, at ¶ 10(g).

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Case No. 22-14422-NMC (Bankr. D. Nev. Jan. 23, 2023), [ECF. No. 139], Ex. 1, at 21 (order approving DIP on interim basis, including 60-day committee challenge period); *In re Metal Partners Rebar, LLC*, Case No. BK-20-12878-ABL (Bankr. D. Nev. Aug. 11, 2020), [ECF No. 315], at ¶¶ D, 8 (stipulations in favor of prepetition lender, subject to 75-day challenge period).[6]

13. **Finally**, the Objection states that it is "unclear if the DIP Lender has any connections to the Debtor['s] . . . existing secured creditors." Objection, at ¶ 5. To the extent relevant to the Court's consideration of the Motion, Enigma hereby confirms that it is not an affiliate of, and to the best of its knowledge has no prior relationship with, the DIP Lender.

*[Remainder of page intentionally left blank]*

---

[6] *See also In re Nielsen & Bainbridge, LLC*, Case No. 23-90071-DRJ (Bankr. S.D. Tex. Feb. 10, 2023), [ECF No. 67], at ¶¶ G, J, 17 (stipulations subject to challenge period); *In re FB Debt Financing Guarantor, LLC*, Case No. 23-10025-KBO (Bankr. D. Del. Jan. 13, 2023),[ECF No. 100], at ¶¶ F, 44 (same); *In re Clovis Oncology, Inc.*, Case No. 22-11292-JKS (Bankr. D. Del. Dec. 16, 2022),[ECF No. 113], at ¶¶ G, 19 (same); *In re Revlon, Inc.*, Case No. 22-10760-DSJ (Bankr. S.D.N.Y. Jun. 17, 2022),[ECF. No. 70], at ¶¶ G, 29 (same);

**WHEREFORE**, Enigma requests that the Court overrule the Objection and grant any additional relief the Court deems appropriate.

Dated this 14th Day of February, 2023.

By: /s/ *James Patrick Shea, Esq.*

James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
　　　　blarsen@shea.law
　　　　kwyant@shea.law

-and-

Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019-3601
Telephone:  212.468.8000
Facsimile:  212.468.7900
Email:  glee@mofo.com
　　　　akissner@mofo.com

*Attorneys for Creditor
Enigma Securities Limited*

# CERTIFICATE OF SERVICE

1. On February 14, 2023, I served **ENIGMA SECURITIES LIMITED'S RESPONSE TO COLE KEPRO INTERNATIONAL, LLC'S OBJECTION TO MOTION TO APPROVE POST-PETITION FINANCING ON AN INTERIM BASIS** in the following manner:

☒ a. ECF System: Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System):
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 14, 2023

By: /s/ *James Patrick Shea, Esq.*

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432