BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com

*[Proposed] Counsel for Debtor*

Electronically Filed February 14, 2023

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**OMNIBUS REPLY IN SUPPORT OF MOTION FOR INTERIM AND FINAL ORDERS: (I) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION SENIOR SECURED, SUPERPRIORITY FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY CLAIMS; (III) MODIFYING THE AUTOMATIC STAY; (IV) SCHEDULING FINAL HEARING; AND (V) GRANTING RELATED RELIEF**<br><br>Hearing Date:  February 15, 2023<br>Hearing Time:  10:30 a.m. |

Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), by and through its proposed counsel, Fox Rothschild LLP, hereby submits this omnibus reply (the "Reply") to the objections filed by the United States Trustee (the "US Trustee") [ECF No. 77] and Cole Kepro International, LLC [ECF No. 80](the "Cole Kepro")

1

142758735.2

(collectively, the "Objections") to the *Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [ECF No. 35], as modified by the *Notice of Filing Revised: (1) Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief; and (2) Interim Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 (I) Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection and (II) Scheduling Final Hearing* [ECF No. 74] (collectively, the "DIP Motion").[1]

This Reply is made and based upon the following memorandum of points and authorities, the *Declaration of Daniel Moses* (the "Moses Declaration"), the *Declaration of Paul Huygens* (the "Huygens Declaration") filed in support hereof, and any argument that this Court may entertain at the hearing on the DIP Motion.

## I.

## ARGUMENT

1. Due to the extensive overlap between the Objections, the Debtor will address the issues by category, rather than sequentially.

**A.  Debtor Must Receive The Interim DIP Financing To Avoid Immediate, Irreparable Harm.**

2. If the Debtor does not receive a minimum of $2,500,000 in DIP Financing, the Debtor will be unable, among other things, to make payments under its host and other operating agreements (for placement of the DCMs in stores, malls, etc.), to pay for collection of cash from the DCMs via its armored carriers, to make payroll and to set aside professional and other costs associated with the bankruptcy as they're incurred. In short, in the absence of the DIP Financing, the Debtor will be

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Motion.

2

142758735.2

required to close its operations in the immediate future. See Huygens Declaration, ¶4.

**B.    If Debtor Receives The DIP Financing, It Projects It Will Not Operate At A Loss.**

3.    As set forth in the revised budget attached to the Huygens Declaration as **Exhibit A**,[2] after receipt of the full amount of the DIP Financing, which will be used to right-size the Debtor's business and fund the costs of bankruptcy (allowing the Debtor to reject non-profitable host agreements and restructure prepetition debt and other liabilities, while seeking exit financing), the Debtor projects it will produce positive cash flow from operations. See Huygens Declaration, ¶5 & Exhibit A, line 17.

**C.    The Provisions Of The DIP Facility Agreement Were Heavily Negotiated, Are Market Standard, And Are Required By DIP Lender.**

4.    The Objections take issue with the following provisions of the DIP Facility Agreement: **(a)** the grant of a lien on Avoidance Actions; **(b)** the waiver of the right to charge collateral with the expenses of administration under section 506(c); **(c)** the DIP Lender's right to credit bid the amount of the DIP Loan under section 363(k); **(d)** the finding that the DIP Lender extended credit in good faith pursuant to section 364(e); **(e)** the events of default include appointment of chapter 11 trustee/examiner, conversion, actions against DIP lender, failure to meet milestones; and **(f)** the exculpation of the DIP Lender.

5.    To begin, **(a)** the grant of the lien on Avoidance Actions and **(b)** the section 506(c) waiver will only be granted upon entry of the Final DIP Order (see Interim DIP Order, ¶¶ 8(a), 8(c) & 15), and are not an issue before the Court at this hearing.

6.    With respect to **(c)** the DIP Lender's right to credit bid the amount of the DIP Loan under section 363(k), this is simply a confirmation of the right that every secured creditor has to credit bid its debt. See Interim DIP Order, ¶ 26.

7.    With respect to **(d)** the finding that the DIP Lender acted in good faith pursuant to section 364(e), this is a prerequisite by every DIP lender before advancing funds. See Interim DIP Order, ¶¶ 5(e), 18(c).

---

[2] The budget does not reflect the use of any cash collateral (other than the DIP Lender's) because no entity has a perfected prepetition lien on the Debtor's cash.

3

8. With respect to **(e)** the events of default include appointment of chapter 11 trustee/examiner, conversion, actions against DIP Lender, and failure to meet milestones (see Interim DIP Order, ¶ 11), and **(f)** the exculpation of the DIP Lender (see Interim DIP Order, ¶ 21), these provisions were heavily negotiated and the most favorable that the Debtor was able to achieve. The DIP Lender has insisted in all of the above-described provisions as a condition to making the DIP Loan. See Moses Declaration, ¶4.

9. As set forth in the Motion, the Debtor's financial advisor reached out to sixteen prospective lenders and/or investors. In the end the Debtor only received two offers. The DIP Lender's offer was demonstrably more favorable than the other offer for a number of reasons, including that it had a better rate, more flexible milestones, and a collateral package and covenants that aligned with the Debtor's business. See Moses Declaration, ¶5.

**D.    The Remedies Notice Period Extends The Automatic Stay.**

10. The Remedies Notice Period (see Interim DIP Order, ¶ 12) extends the automatic stay for a period of four business days after the DIP Lender declares an Event of Default in a Termination Declaration in order to give the Debtor, the Committee or affected secured creditors the opportunity to have this Court resolve whether an Event of Default has actually occurred. The Remedies Notice Period does not supplant the cure periods in the DIP Facility Agreement.[3] The DIP Lender will only be entitled to make a Termination Declaration after a default remains uncured for any applicable cure period.

**E.    The Adequate Protection Packages Were Heavily Negotiated, Are Market Standard, And Are Required By Genesis And Enigma.**

11. Cole Kepro objects to the adequate protection provisions that were negotiated with Genesis and Enigma (collectively, the "Adequate Protection Provisions") that include: **(a)** replacement liens; **(b)** superpriority administrative claims; **(c)** payment of postpetition interest; **(d)** payment of legal fees/expenses; and **(e)** stipulation to the validity of the prepetition claims.

12. To begin, **(a)** the replacement liens and **(b)** the superpriority administrative claims are

---

[3] See, e.g., DIP Facility Agreement, § 7.1 (a) (5 day cure period); § 7.1(b) (20 day cure period); § 7.1(c) (20 day cure period).

4

142758735.2

being granted *solely to the extent of diminution* in the Secured Creditors' collateral. See Interim DIP Order, ¶¶ 9 & 10.

13. With respect to **(c)** the payment of postpetition interest and **(d)** the payment of legal fees/expenses, these are standard components of adequate protection packages. Moreover, fees/expenses are capped at $100,000 per Secured Creditor. See Interim DIP Order, ¶¶ 9(c) & 10(c).

14. Finally, **(e)** the stipulation to the validity of the Secured Creditors' prepetition claims is not an uncommon component of adequate protection provided to creditors whose liens are being primed. The stipulation is subject to a 60-day Challenge Period to allow interested parties to commence litigation seeking to dispute the validity, amount, security or priority of the Secured Creditors' claims. See Interim DIP Order, ¶¶ 4(a), 4(b), & 17.

15. All of the above-described Adequate Protection Provisions were heavily negotiated and insisted on by the Secured Creditors as a condition to consenting to the priming of their liens under the DIP Loan. See Moses Declaration, ¶6.

16. Moreover, the bankruptcy court overseeing Genesis's chapter 11 case has granted relief from stay to prime Genesis's liens on the terms of the Adequate Protection Provisions included in the Interim DIP Order. Any alteration to those terms would require the Debtor to seek further relief from stay.

17. With respect to Cole Kepro's argument that substantial equity cushions negate the need for adequate protection, the Debtor notes that it used the book value of its assets to calculate the current value of the Secured Creditors' collateral for purposes of the DIP Motion. See Huygens Declaration, ¶6. The Secured Creditors dispute that book value is the correct methodology and are prepared to engage in protracted and expensive valuation litigation in the absence of the Debtor's and DIP Lender's agreement to the Adequate Protection Provisions. See Moses Declaration, ¶7.

142758735.2

## II.

## CONCLUSION

WHEREFORE, based upon all the foregoing, Debtor respectfully requests that the Court overrule the Objections in their entirety.

DATED this 14th day of February 2023.

**FOX ROTHSCHILD LLP**

By: ___/s/Brett Axelrod___
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

142758735.2