BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

Electronically Filed February 16, 2023

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No.  BK-23-10423-mkn

Chapter 11

**VERIFIED STATEMENT OF JAMES M. JIMMERSON IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF THE JIMMERSON LAW FIRM, P.C. AS SPECIAL LITIGATION COUNSEL TO DEBTOR**

Hearing Date:    March 17, 2023
Hearing Time:    9:30 a.m.

I, James M. Jimmerson, being duly sworn, deposes and declares under the penalty of perjury:

1.     I am over 18 years of age, and am competent to testify as to the matters set forth in this Verified Statement based upon my own personal knowledge and if called upon to testify, could and would do so.

2.     I make this Verified Statement in support of the *Application for Order Authorizing Retention and Employment of the Jimmerson Law Firm, P.C. as Special Litigation Counsel to Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(the "JL Application"),[1] filed by Cash Cloud, Inc., dba Coin Cloud ("Debtor").  The chapter 11 case of Debtor is referred to herein as the "Chapter 11 Case."

3.      I am an attorney and partner at the Jimmerson Law Firm P.C. ("JL"), and duly qualified to practice in and before all courts in the State of Nevada.

4.      The Cole Kepro Action concerns Cole Kepro International, LLC's production and delivery of faulty digital currency kiosks to Debtor. A true and correct copy of the Cole Kepro Complaint is attached hereto as **Exhibit 1** to the Jimmerson Verified Statement and is incorporated herein by this reference.

5.      Debtor desires to retain JL to assist representing Debtor in the Cole Kepro Action.  A true and correct copy of the retainer agreement (the "Cole Kepro Engagement Agreement"), between Debtor and JL, concerning the Cole Kepro International, LLC dispute is attached hereto as **Exhibit 2**.

6.      The Flores Action concerns Luis Flores's improper claim of ownership of Debtor, as well as Luis Flores's improper and unauthorized access of Debtor's computer system, and specifically its trade secret information.  A true and correct copy of the Complaint is attached hereto as **Exhibit 3** and a true and correct copy of the First Amended Complaint is attached hereto as **Exhibit 4** and incorporated herein by this reference.

7.      Debtor desires to retain JL to assist representing Debtor in the Flores Action.  A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Luis Flores dispute is attached hereto as **Exhibit 5** ("Flores Engagement Agreement").

8.      The Flores action has been brought to trial and is now awaiting a decision by the Court.

9.      The Franco Action concerns Franco's claim for additional compensation from Debtor as well as Debtor's Counterclaim based on Franco's participation and assistance in providing Luis Flores unauthorized access to Debtor's computer system. A true and correct copy of the Franco Complaint is attached hereto as **Exhibit 6** and is incorporated herein by this reference and a true and

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the JL Application.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

2

correct copy of the Answer and Counterclaim is attached hereto as **Exhibit 7** is incorporated herein by this reference.

3

4

5

10.     Debtor desires to retain JL to assist representing Debtor in the Franco Action.  A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Javier Franco dispute is attached hereto as **Exhibit 8**.

6

7

8

9

10

11.     The Redmond Action concerns Amondo Redmond's (1) fraudulent representations made to Debtor, (2) post-termination interference with Debtor's contractual relationships, and (3) unauthorized divergence of Debtor's funds to Redmond and/or his affiliates.  A true and correct copy of the Redmond Complaint is attached hereto as **Exhibit 9** and is incorporated herein by this reference.

11

12

13

12.     Debtor desires to retain JL to assist representing Debtor in the Redmond Action.  A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Amondo Redmond dispute is attached hereto as **Exhibit 10** ("Redmond Engagement Agreement").

14

15

16

17

13.     The Bitaccess Action concerns Bitaccess's improper termination of its software services to Debtor—software services that Debtor used to operate its digital currency kiosks.  A true and correct copy of the Complaint is attached hereto as **Exhibit 11** and is incorporated herein by this reference.

18

19

20

21

14.     Debtor desires to retain JL to assist representing Debtor in initiating and prosecuting an action against Bitcoin Depot directly.  A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Bitaccess/Bitcoin Depot dispute is attached hereto as **Exhibit 12** and is incorporated herein by this reference ("Bitaccess/Bitcoin Depot Engagement Agreement").[2]

22

23

24

15.     JL is well qualified to serve as Special Counsel to Debtor. JL is a Las Vegas Nevada law firm.  Attorneys at JL are experienced in representing companies in all manner of complex commercial litigation.  JL is an experienced local law firm with experienced colleagues licensed to

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

[2] Collectively, the Cole Kepro Engagement Agreement, the Flores Engagement Agreement, the Franco Engagement Agreement, the Redmond Engagement Agreement, and the Bitaccess Engagement Agreement are referred to herein as the "Engagement Agreements."

142867071.1

practice in the State of Nevada. I have in excess of eleven years of complex commercial litigation experience, and such experience makes JL well suited to participate in the Chapter 11 Case.

16.    Accordingly, JL is well qualified and positioned to provide the legal services being sought by Debtor in connection with the Actions, and has developed significant relevant experience and knowledge that will assist in dealing with potential issues that may arise in the context of the Chapter 11 Case.

17.    Debtor proposes to employ JL as special litigation counsel to Debtor for the Actions. Specifically, Debtor anticipates JL will provide counsel on the various statutory and common law issues raised in the Actions, as well as in the areas mentioned above, i.e., business law matters.  This includes all aspects of discovery, pre-trial motion practice, trial/hearings, and post-trial services, if necessary (the "Services").

18.    JL has stated its willingness to act as Debtor's special litigation counsel during the pendency of the Chapter 11 Case.

19.    Based on the foregoing, JL is well-qualified and experienced in commercial claims. Accordingly, JL is well-qualified to perform the Services and legally represent Debtor, specifically with respect to JL's extensive experience of complex matters before federal and state courts involving commercial matters.

20.    The scope of JL's Services has been set forth in the Engagement Agreements executed by both JL and Debtor.  See Exhibits 2, 5, 8, 10, and 12.

21.    Debtor has not paid JL for some its prepetition work on the Actions, and still owes JL a balance of $221,741.99, which shall be a general unsecured claim against Debtor's Estate (the "JL Claim").

22.    JL has reviewed its databases and has provided disclosures regarding engagements it may have had with potential parties in interest, which engagements are unrelated to Debtor and the Chapter 11 Case. To the extent that JL discovers any adverse, material relationships during the period of JL's retention, JL will use reasonable efforts to supplement the information.

23.    Moreover, although such disclosure is not required by section 327(e), JL verifies that:

        a.    its partners, of counsel, and associates:

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

i.   are not equity security holders or insiders of Debtor;

ii.  are not and were not, within two years before the date of this application, a director, officer, or employee of Debtor, as specified in subparagraph (c) of 11 U.S.C. § 101(14); and

iii. do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders except as stated herein or in the Jimmerson Verified Statement.

b.  JL does not represent or otherwise have other material connections with the Debtor, its creditors, any other party in interest in the Chapter 11 Case, or their respective attorneys and accountants, the judge of this Court, the United States Trustee for Region 17 or any person employed in the Office of the United States Trustee for the District of Nevada, in accordance with Bankruptcy Rule 2014. JL will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

24.   Pursuant to the Engagement Agreement, JL will be paid an hourly rate. The amount of compensation to be paid to JL by Debtor for the Services rendered will fluctuate depending on the attorney working on the matter. Generally, JL's rate range from $350 to $595 per hour. My rate for this matter is $350.00 per hour and I will be the primary attorney working on this matter from JL.

25.   JL shall also seek reimbursement for one hundred percent (100%) of expenses and costs incurred on Debtor's behalf in connection with the Action.

26.   JL requires an initial retainer of $25,000 (the "Retainer"). JL will deposit the retainer in its trust account and will hold it for the duration of its representation of Debtor. JL will apply the retainer funds to any outstanding and overdue balances owing pursuant to the Monthly Fee Application procedure described below. At the end of JL's representation, it will apply the remaining Retainer (if any) to any outstanding fees and/or expenses owing that are approved by the Court pursuant to JL's Final Fee Application and return any unearned funds to Debtor at that time.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

27.     There is no agreement of any nature, other than with respect to the attorneys at JL and payment of any contract attorneys utilized by JL, as to the sharing of compensation to be paid to JL.

28.     Subject to the specific terms below, on or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar  month), JL may file an application (a "Monthly Fee Application") with the Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on:  Debtor, the United States Trustee, the Committee, and parties requesting special notice (the "Notice Parties"). If JL fails to file a Monthly Fee Application for a particular month or months, it may subsequently submit a consolidated Monthly Fee Application for a particular month or months.  All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

29.     Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below.  If no objections are raised on or before the expiration of the Objection Deadline, JL shall file a certificate of no objection with the Court, after which Debtor shall be authorized to pay JL an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment").  If an objection is properly filed, Debtor shall pay JL 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

30.     If any Notice Party objects to JL's Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Court and serve such Objection on JL and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting party and JL may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection, JL may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

until the next interim or final fee application hearing, at which time the Court will consider and dispose of the objection if requested by the parties.

31.     Beginning with the approximately 120-day period commencing on the Petition Date, and at each 120-day period thereafter (the "Interim Fee Period"), JL shall file with the Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by JL in its Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Parties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon JL and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

32.     Debtor requests that the Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Court deems appropriate.  If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

33.     Debtor shall pay JL in the amount of the Maximum Monthly Payments, the Actual Monthly Payments, the Incremental Amounts approved by the Court, and/or any other compensation and expenses approved by the Court pursuant to Interim Fee Applications or the final fee application, as applicable (the "Fee Payments").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed this 16th day of February 2023 in Las Vegas, Nevada.


_____*/s/James M. Jimmerson*_____
James M. Jimmerson

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

1

# EXHIBIT 1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
6/17/2022 8:23 AM
Steven D. Grierson
CLERK OF THE COURT

**COMPL**
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135
Telephone:    (702) 388-8171
Facsimile:    (702) 367-1167

*Attorneys for Plaintiff*
*Cash Cloud Inc.*

CASE NO: A-22-854226-C
Department 8

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| CASH CLOUD INC., a Nevada corporation, | Case No.: |
| Plaintiffs, | Dept. No.: |
| vs. | **COMPLAINT** |
| COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company, | **Exempt from Arbitration: Equitable/Declaratory Relief Requested** |
| Defendant. | |

COMES NOW, Plaintiff Cash Cloud Inc. ("Plaintiff" or "Cash Cloud"), by and through its attorneys, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C. and hereby submits its Complaint against Defendant Cole Kepro International, LLC ("Defendant" or "Cole Kepro") alleging as follows:

**NATURE OF THE ACTION**

1.    This action arises out of Defendant's sale of faulty equipment to Plaintiff Cash Cloud Inc.

2.    In 2021, Cash Cloud purchased over 4,000 digital currency kiosks from Defendant. Unbeknownst to Cash Cloud, the kiosks sold by Defendant to Cash Cloud were defective and they did not function or operate as intended and promised. As a

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1

result of the defects in the kiosks, Cash Cloud has suffered substantial harm. Cash Cloud brings this action to seek redress for the harm caused by Defendant.

**PARTIES**

3.      Plaintiff Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada. At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada. Cash Cloud operates under the trade name Coin Cloud. This trade name is registered with Clark County. The trademark Coin Cloud is owned by Cash Cloud.

4.      Upon information and belief, Defendant Cole Kepro International, LLC is a limited liability company organized under the laws of the State of Delaware. At all times relevant herein, Cole Kepro's principal place of business is and has been in Clark County, Nevada.

**JURISDICTION AND VENUE**

5.      The Court has personal jurisdiction over Defendant since Plaintiff's causes of action arise directly from Defendant's conduct within/toward the State of Nevada. *See* NRS 14.065.

6.      Venue is proper in the Eighth Judicial District Court. *See* NRS 13.040.

**GENERAL ALLEGATIONS**

7.      Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency trading industry.

8.      Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style kiosks. Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's kiosk with digital currency then being sent to the customer's digital currency wallet. Likewise, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud with the kiosk then releasing the corresponding amount of cash to the customer.

9.      Defendant has had a multi-year business relationship with Cash Cloud.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

10.     Defendant has sold products to Cash Cloud for years.

11.     Each purchase made by Cash Cloud with Defendant is independent of every other purchase Cash Cloud has made with Defendant and the terms of each purchase are independent of the terms of any other purchase between Cash Cloud and Defendant.

12.     Defendant has knowledge and understanding of Cash Cloud's business in providing its customers the means to purchase and sell digital currency using kiosks.

13.     Defendant produces and sells, among other items, the ATM-style kiosks that allow for the purchase and sale of digital currency to Cash Cloud's customers. Cash Cloud has purchased thousands of such kiosks from Defendant.

14.     The digital currency kiosks purchased by Cash Cloud from Defendant are meant to function similar to an automated teller machine (ATM). The kiosk is kept on at all times and must respond to a customer's commands as directed on the touch screen of the kiosk.

15.     In February 2021, Cash Cloud agreed to purchase from Defendant 4,080 kiosks (C-2960-01-000-GEN04 Coin Cloud Bitcoin Kiosk With BNR) for over $34,000,000.00.

16.     As part of the agreement for the sale of 4,080 digital currency kiosks to Cash Cloud, Defendant promised to deliver fully functional and defect-free digital currency kiosks to Cash Cloud.

17.     Production, delivery, and payment terms of the purchase of 4,080 digital currency kiosks were enunciated in the one-page sales quote from February 2021.

18.     Specifically, as part of Cash Cloud's purchase of the 4,080 digital currency kiosks, Defendant would produce and deliver approximately 255 kiosks per week. Upon delivery each week, Cash Cloud would then have 45 days to make payment to Defendant for the delivered kiosks. If no delivery of kiosks was made, there would be no obligation to make payment.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

19. Lead time for the purchase of the digital currency kiosks was set at 12 weeks.

20. Cash Cloud sent a purchase order for the 4,080 digital currency kiosks to Defendant in February 2021.

21. In April 2021, Defendant agreed to lower the price of the 4,080 kiosks purchased by Cash Cloud.

22. The rights and remedies available to the purchaser of the 4,080 digital currency kiosks belong to Cash Cloud.

23. Aside from the production, delivery, and payment terms agreed to by Cash Cloud and Defendant, no other written terms or conditions were agreed to by Cash Cloud as part of the purchase of the 4,080 digital currency kiosks.

24. Defendant has admitted that the "quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order… was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions."

25. After Cash Cloud agreed to purchase 4,080 digital currency kiosks from Defendant, Defendant commenced its periodic delivery of kiosks to Cash Cloud.

26. Cash Cloud has paid millions dollars to Defendant for the purchased kiosks.

27. No other party has made payment to Defendant for the 4,080 digital currency kiosks purchased by Cash Cloud.

28. Unfortunately, the 4,080 digital currency kiosks purchased by Cash Cloud were defective.

29. The 4,080 digital currency kiosks purchased suffer from a screen defect which interferes with the normal operation of the kiosk, including the use of the kiosk to purchase and/or sell digital currency.

30. As a result of the defects, Cash Cloud has suffered substantial harm and damages, including, but not limited to, repair costs, lost profits, and loss of goodwill.

31. Upon information and belief, in June 2021, Defendant learned of the defect to the 4,080 digital currency kiosks purchased by Cash Cloud.

32.     Despite learning of the defect in the 4,080 digital currency kiosks purchased by Cash Cloud in June 2021, Defendant did not disclose to Cash Cloud the problem with the kiosks for months.

33.     Instead of disclosing the defect in the 4,080 digital currency kiosks when Defendant learned of the same or halting production and/or delivery of the digital currency kiosks to Cash Cloud, Defendant continued to produce and deliver digital currency kiosks to Cash Cloud.

34.     Cash Cloud made payments to Defendant for the delivered kiosks.

35.     Had Defendant disclosed the defect in the purchased kiosks to Cash Cloud when Defendant learned of the defect (as Defendant had a duty to do), Cash Cloud would not have continued to make substantial payments to Defendant without correction of the defect.

36.     Eventually, Cash Cloud learned that the kiosks purchased from Defendant were defective and alerted Defendant that the kiosks were defective.

37.     Cash Cloud attempted to resolve the problem with Defendant without resorting to litigation.  As of yet, no resolution has been reached.

38.     Rather than work with Cash Cloud to remedy the problems caused by its defective kiosks, recently, Defendant unilaterally attempted to initiate arbitration with AAA regarding the sale of 4,080 kiosks to Cash Cloud.

39.     No arbitration had or has been agreed to by Cash Cloud in connection with the sale of 4,080 digital currency kiosks.  Cash Cloud objects to any arbitration of its dispute with Defendant in connection with the sale of 4,080 digital currency kiosks to Cash Cloud.

40.     In an improper effort to support its demand for arbitration, Defendant has submitted to AAA a false set of terms and conditions of the sale of digital currency kiosks.

41.     Notwithstanding that Cash Cloud has informed Defendant that the purported terms and conditions upon which Defendant relies upon to justify arbitration

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada  89101
(702) 388-7171 – fax (702) 387-1167

were not part of the sale of 4,080 digital currency kiosks, Defendant has improperly attempted to move forward with arbitration.

42.     There is no substitute for Cash Cloud's right to litigate in court its dispute with Defendant.    As such, equitable/injunctive relief may be necessary to prevent Defendant from circumventing that right, including attempting to move forward with arbitration.

43.     In addition to using a false set of terms and conditions to justify arbitration, Defendant is also using such false terms and conditions to limit the type and manner of relief available in connection with the sale of the 4,080 digital currency kiosks.    Such purported limitations were never agreed upon and are in violation of Nevada public policy.

44.     As a direct and proximate result of Defendant's misconduct, Cash Cloud has suffered substantial damages, for which it now seeks relief from this Court.

### FIRST CAUSE OF ACTION
### (Breach of Contract)

45.     Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

46.     The agreement between Cash Cloud and Defendant for the purchase of 4,080 digital currency kiosks was a valid and enforceable contract.

47.     Defendant has a duty to honor its contractual obligations.    Defendant has failed and refused to perform its obligations, including, but not limited to, delivering to Cash Cloud fully functional, defect-free digital currency kiosks.

48.     Defendant's breach of contract was material.

49.     Cash Cloud's further performance of its contractual obligations was excused by Defendant's breach.

50.     As a direct and proximate result of Defendant's breach of contract, Cash Cloud has suffered damages in the amount according to proof, in excess of $15,000.00.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loos of goodwill.

**SECOND CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

51.     Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

52.     Defendant's agreement to sell 4,080 digital currency kiosks to Cash Cloud constitutes a valid and enforceable contract.

53.     Every contract imposes upon the contracting parties a duty of good faith and fair dealing.

54.     Cash Cloud performed its payment obligations to Cole Kepro, including paying millions of dollars for the kiosks purchased from Cole Kepro.  To the extent that Cash Cloud failed to perform any of its obligations, such non-performance is excused.

55.     Defendant owed Cash Cloud a duty to perform as promised in a manner which was faithful to the purpose of the contract.  Defendant breached that duty.

56.     In dealing with the acts alleged herein, Defendant failed to act in good faith and to the best of its ability, thereby breaching its duty to so conduct itself and denying Cash Cloud its justified expectations.

57.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Cash Cloud has been damaged in a sum in excess of $15,000.00.  Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

**THIRD CAUSE OF ACTION**
**(Breach of Implied Warranties)**

58.     Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

59.     Defendant is a merchant of the digital currency kiosks sold to Cash Cloud.

60.     Cash Cloud purchased digital currency kiosks from Defendant.

7

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

61.     Cash Cloud's purchase of the digital currency kiosks from Defendant are subject to the implied warranties of merchantability and fitness for use/particular purpose.

62.     Cash Cloud used the digital currency kiosks in a foreseeable way, namely, to allow Cash Cloud's customers to buy and sell digital currency using the kiosk.

63.     The digital currency kiosks sold by Defendant were defective and were unable to function and operate normally and as intended.

64.     Cash Cloud relied on Defendant to select parts and components for the kiosks to ensure that the kiosks would perform and function as a digital currency kiosk.

65.     Defendant's selected parts and components for the kiosks did not allow for the digital currency kiosks to function and operate normally.

66.     As a direct and proximate result of Defendant's breach of implied warranties, Cash Cloud has been damaged in a sum in excess of $15,000.00.  Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

### FOURTH CAUSE OF ACTION
### (Violation of Nevada's Deceptive Trade Practices Act)

67.     Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

68.     Cash Cloud and Defendant agreed that the digital currency kiosks would be produced and delivered on a weekly basis.  Cash Cloud and Defendant also agreed that Cash Cloud's obligation to pay for the digital currency kiosks would be based on the date of delivery of the digital currency kiosks—namely that Cash Cloud was obligated to pay after the delivery of the digital currency kiosks.

69.     In or about June, 2021, before the time that Defendant had fully completed its delivery the 4,080 digital currency kiosks, Defendant learned that the digital currency kiosks being delivered to Cash Cloud were defective.  Despite learning of the defective nature of the product, Defendant continued to produce and deliver digital currency kiosks

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada  89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

to Cash Cloud and concealed the defect from Cash Cloud until months after Defendant discovered the defect.

70.    In concealing this information from Cash Cloud, Defendant failed to disclose material facts from Cash Cloud in connection with the sale of the digital currency kiosks—a violation of Nevada's Deceptive Trade Practices Act.

71.    Because Defendant was silent as to the defects in the delivered machines, Cash Cloud continued to make payments to Defendant for the defective digital currency kiosks.

72.    Defendant sold the 4,080 digital currency kiosks to Cash Cloud subject only to production, delivery, and payment terms. Cash Cloud purchased the 4,080 digital currency kiosks from Defendant subject only to the same production, delivery, and payment terms.

73.    Cash Cloud did not purchase and Defendant did not sell the 4,080 digital currency kiosks subject to any other terms other than the terms for production, delivery, and payment.

74.    Notwithstanding that this purchase was made without being subject to any other terms, Defendant has insisted that the purchase is subject to various other terms, including, but not limited to, terms governing the rights and remedies Cash Cloud has for Defendant's failure to provide functional and defect-free digital currency kiosks. This insistence constitutes a misrepresentation of Cash Cloud's legal rights, obligations, and/or remedies—a violation of Nevada's Deceptive Trade Practices Act.

75.    As a direct and proximate result of Defendant's violation of Nevada's Deceptive Trade Practices Act, Plaintiff has been damaged in a sum in excess of $15,000.00. Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

76.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

77.    Cash Cloud has been required to obtain the services of an attorney; therefore, Cash Cloud is also entitled to recover its reasonable attorneys' fees and costs against Defendant as allowed by NRS 41.600 and other Nevada law.

78.    Due to Defendant's violation of Nevada's Deceptive Trade Practices Act, Cash Cloud seeks all remedies and relief available to it under Nevada's Deceptive Trade Practices Act.

## FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

79.    Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

80.    A justiciable controversy has arisen between the parties hereto regarding the rights and obligations of the parties.

81.    Genuine disputes exist concerning multiple matters including, but not limited to, the following: (1) whether Cash Cloud agreed to arbitrate a dispute over the sale of 4,080 digital currency kiosks with Defendant; (2) whether Defendant breached its contract for the sale of 4,080 digital currency kiosks with Cash Cloud; and (3) whether Defendant breached implied warranties for the 4,080 digital currency kiosks sold to Cash Cloud.

82.    Based upon the foregoing dispute and controversy, Plaintiff respectfully requests a declaration from this Court that Cash Cloud did not agree to arbitrate disputes concerning the purchase of 4,080 digital currency kiosks with Defendant, that Defendant breached its contract for the sale of 4,080 digital currency kiosks with Cash Cloud, and that Defendant breached implied warranties for the 4,080 digital currency kiosks sold to Cash Cloud.

WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

1.    For general, special, and punitive damages in excess of $15,000.00.

2.    For declaratory relief as requested;

3.    For injunctive relief as appropriate;

4.      For interest at the maximum amount available under Nevada law;

5.      For reasonable attorney's fees and costs; and

6.      For any other relief this Court finds just and proper.

DATED this 17th day of June, 2022.

THE JIMMERSON LAW FIRM, P.C.


*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    (702) 388-7171
Facsimile:    (702) 367-1167

*Attorneys for Plaintiff Cash Cloud Inc.*

1

# EXHIBIT 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

## ATTORNEY'S RETAINER AGREEMENT

THIS ATTORNEY'S RETAINER AGREEMENT (the "Agreement") made this ___ day of _1/31/2023_, 2023, at Las Vegas, Nevada, by and between the undersigned, CASH CLOUD, INC., hereinafter designated as "CLIENT" and THE JIMMERSON LAW FIRM, P.C., hereinafter designated as "ATTORNEY."

1.      CLIENT has retained ATTORNEY and seeks to continue to retain ATTORNEY to represent CLIENT in various matters concerning CLIENT, including, but not limited to, a litigation matter against Cole Kepro International, LLC, Case No. A-22-854226-B, currently pending in the Eighth Judicial District Court in Clark County, Nevada. CLIENT empowers ATTORNEY to take all steps deemed by ATTORNEY to be advisable, including to effect a compromise, to institute legal proceedings, and to take all other appropriate steps as authorized by CLIENT. CLIENT and ATTORNEY acknowledge and agree that ATTORNEY has represented affiliates of the CLIENT in the past and that all such representation of affiliates has concluded. Should an affiliate of CLIENT seek to retain ATTORNEY in the future, such representation will only commence under a separate written agreement, which would include, inter alia, a provision that would allow ATTORNEY to withdraw from representation of the affiliate and continue the representation of the CLIENT in the event of any conflict from both representations.

2.      CLIENT agrees to pay ATTORNEY an amount of money for its attorney's fees totaling the aggregate amount of several categories of specific fees, and possible fees, for ATTORNEY, detailed as follows:

a.      CLIENT shall pay all monthly bills within twenty (20) days of the billing statement. However, while CLIENT is in bankruptcy, CLIENT shall pay a maximum of $25,000.00 / week, to be applied to the CLIENT's current monthly bills and CLIENT's past-due bills;

Hourly rates for services rendered on your behalf by the attorneys in the office are as follows:

JAMES J. JIMMERSON, ESQ.                   $595 .00/HOUR

JAMES M. JIMMERSON, ESQ.                   $350.00/HOUR

Other associates shall be billed out at $175.00 per hour.

An hourly rate of $175.00 per hour for work done on Client's behalf by Law Clerk Andrew Pastor.

Other Law Clerks and Paralegals shall be billed out at $125.00 per hour.

An hourly rate of $75.00 - $125.00 per hour for work done on your behalf, including but not limited to, assembly of binders and exhibits for hearings and/or trial, by documentation specialists and/or secretarial staff.

CLIENT agrees that these fees are reasonable on the basis of ATTORNEY's (and staffs) ability, training, education, experience,

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

professional standing and skill, and the difficulty, intricacy, importance and time and skill required to perform the work to be done.

CLIENT shall advance and pay to ATTORNEY all costs, including but not limited to court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance phone calls, filing fees, mailing costs, parking fees and other disbursements made in connection with this matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. When an item of costs is known to exceed $250.00, CLIENT shall provide prior written approval for the same before such cost is incurred. Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1-1/2%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection.

3.     Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1.5%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection. In the event ATTORNEY receives payment in full within ten (10) days of the date of the statement, CLIENT shall be entitled to a 10% discount of that month's attorney's fees, which will be held in the CLIENT'S trust account.[1]

4.     CLIENT has indicated that it may file for Chapter 11 bankruptcy. In such case, ATTORNEY'S continued representation is contingent upon CLIENT filing a motion for access to, and approval of, Debtor in Possession ("DIP") Financing. CLIENT acknowledges and agrees that ATTORNEY shall, due to CLIENT's sizable past-due billings as of the date of this Agreement and the risk that of ATTORNEY not being paid, withdraw from representing CLIENT should the bankruptcy court not grant CLIENT's DIP Motion, authorizing payment of ATTORNEY's billings, in accordance with this Agreement, as administrative fees of CLIENT.

---

[1] For example, if CLIENT'S billing statement contains $5,000.00 in attorney's fees and ATTORNEY receives payment in full for fees and costs reflected in that billing statement within ten (10) days of the date of the statement, ATTORNEY shall discount the attorney's fees owed by $500.00 (or 10% of the attorney's fees incurred), and retain the $500.00 in trust for the CLIENT, which may be, amongst other things, applied toward CLIENT'S next bill.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

5.    On or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), we may file an application (a "Monthly Fee Application") with the Bankruptcy Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: CLIENT, the United States Trustee, and parties requesting special notice (the "Notice Parties"). If we fail to file a Monthly Fee Application for a particular month or months, we may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, we shall file a certificate of no objection with the Court, after which CLIENT shall be authorized to pay us an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, CLIENT shall be authorized to pay us 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

If any Notice Party objects to our Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Bankruptcy Court and serve such Objection on us and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting patty and we may attempt to resolve the Objection on a consensual basis. If the patties are unable to reach a resolution of the Objection, we may either (i) file a request with the Bankruptcy Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Bankruptcy Court will consider and dispose of the objection if requested by the parties.

Beginning with the approximately 120-day period commencing on the date of this letter, and at each 120-day period thereafter (the "Interim Fee Period"), we shall file with the Bankruptcy Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by us in our Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Patties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Firm and the Notice Parties so as to be received on or before

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

CLIENT will request that the Bankruptcy Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Bankruptcy Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Bankruptcy Court may grant an Interim Fee Application without a hearing.

At the conclusion of our representation, we will file a final fee application (the "Final Fee Application) with the Bankruptcy Court, seeking final approval of all fees and expenses incurred during our representation.

6.    **IN THE EVENT OF A LOSS, THE CLIENT MAY BE LIABLE FOR THE OPPOSING PARTY'S ATTORNEY'S FEES, AND WILL BE LIABLE FOR THE OPPOSING PARTY'S COSTS AS REQUIRED BY LAW.  A suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

7.    _____ **(Initial)** CLIENT hereby grants ATTORNEY (1) a charging lien on any and all claims or causes of action that are related to the subject of ATTORNEY'S representation under this Agreement and (2) a retaining lien on any file or other property left in the possession of the ATTORNEY by CLIENT.  ATTORNEY'S lien will be used for any sums owing to ATTORNEY at the conclusion of ATTORNEY'S services, whether or not the case has been concluded.  The charging lien will attach to any recovery CLIENT may obtain, whether by arbitration award, judgment, settlement or otherwise.  In enforcing ATTORNEY'S lien, any amounts received by ATTORNEY'S office on CLIENT'S behalf may be used to pay any outstanding sums owed to ATTORNEY. In accordance with the Uniform Commercial Code, no payments made to ATTORNEY for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless ATTORNEY and CLIENT both sign a separate written agreement specifically permitting such payment to constitute a payment in full of CLIENT'S account. The CLIENT agrees that ATTORNEY shall be permitted to seek to enforce its liens and obtain a money judgment for unpaid attorney's fees and costs by motion practice under this Agreement, and irrevocably grants jurisdiction for the adjudication of said lien to the Court before which ATTORNEY is representing CLIENT. As such, CLIENT expressly waives any requirement or reliance on legal authority that would otherwise require ATTORNEY to bring an independent lawsuit to collect its fees and costs. In short, the CLIENT expressly agrees and consents to an attorneys' lien and that ATTORNEY shall be permitted to collect its unpaid attorney's fees and costs and enforce its lien by motion practice, and irrevocably grants jurisdiction to the Court before which ATTORNEY is representing CLIENT to adjudicate an attorney's lien.  CLIENT agrees that they have had the opportunity to review the holdings of Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish,125 Nev. 527, 216 P.3d 779 (2009); Fredianelli v. Fine Carman Price, 402 P.3d 1254, 133 Nev. Adv. Op. 74 (2017); and Grisham v. Grisham and Webster, 128 Nev. 679, 289 P.3d 230 (2012), and agree that this Retainer Agreement provides express consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien and that the same, by CLIENT's express

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

consent, may be adjudicated to judgment by motion practice. See NRS 18.015 (as amended by SB 140, 2013) see, also Petersen v. Jimmerson Hansen, P.C., Case No. 68888, 2016 WL 757110 (Nev. App. Ct. 2016). Any such judgment shall be final and shall be collectible by any lawful means.

8.      ATTORNEY shall have the right to assign office personnel, including associate attorneys, amazing and frankly over-talented law clerks, and paralegals, to the case in ATTORNEY's sole discretion. CLIENT shall so designate in writing if CLIENT desires to have certain attorneys or personnel handle the case exclusively or if CLIENT desires to have certain ATTORNEYS or personnel excluded from handling the case.

9.      CLIENT acknowledges that ATTORNEY has made no guarantee regarding the successful termination of said cause of action, and all expressions relative thereto are matters of ATTORNEY's opinion only. Based upon meetings between CLIENT and ATTORNEY, CLIENT acknowledges that this case will be a difficult one. If the case is not successful, CLIENT will owe ATTORNEY the advanced costs. ATTORNEY shall not settle or compromise this matter without the approval of CLIENT.

10.      CLIENT agrees to do all that is necessary to provide ATTORNEY with information requested by ATTORNEY concerning the case.

11.      Any fees billed on an hourly basis shall include, but shall not be limited to, time spent on the telephone, in negotiations, drafting, dictating, conducting legal research, conferences with other attorneys, experts, consultants or witnesses, traveling, conducting discovery, time spent in court (including waiting time), time in depositions, and all other efforts on CLIENT's behalf in this matter.

12.      This is the entire Agreement between the parties and any modifications or additions to this Agreement must be made in writing and signed by both parties.

13.      The efforts by ATTORNEY on CLIENT'S behalf shall be performed in Nevada and elsewhere as needed. This Agreement shall be governed by the laws of the State of Nevada and all legal action arising out of this Agreement shall be conducted in Nevada. If any legal action is brought as a result of this Agreement, the prevailing party shall be entitled to costs incurred plus a reasonable attorney's fee.

14.      ATTORNEY, at ATTORNEY'S sole discretion, may withdraw from the representation of CLIENT at any time, but that withdrawal shall not affect ATTORNEY'S right to be compensated for fees and costs already incurred. We may withdraw if you do not make the payments required by this Agreement, if you have misrepresented or failed to disclose material facts to us or if a breakdown in communication occurs. Upon our withdrawal, we will be entitled to an attorneys' lien for earned and unpaid fees and costs. Additionally, we shall have a lien on all of your documents, property and money in our possession for the payment of all sums due to us from you under the terms of this Agreement.

15.      CLIENT understands and agrees that should a Court award attorneys' fees to CLIENT (or to ATTORNEY on CLIENT's behalf), such sums shall be applied against any outstanding charges on CLIENT's bill only after such sums are actually collected. However, CLIENT understands and agrees that collection of any awarded fees is not the responsibility of ATTORNEY and that pursuant to this Retainer Agreement, CLIENT

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

remains solely responsible for the payment of the legal fees, expenses and costs incurred in CLIENT's case. A Court Order awarding attorneys' fees from the opposing party does **not** relieve CLIENT of the primary responsibility for paying ATTORNEY's bill. CLIENT acknowledges that the Court could likewise Order CLIENT to pay attorney's fees or costs to the opposing party, and such Order does not relieve CLIENT of the obligation to pay CLIENT's own attorney's fees and costs to ATTORNEY.

**16.**    Because of the numerous e-mails or electronic communications received by ATTORNEY on a daily basis, client is placed on notice, that client may not assume that ATTORNEY has an e-mail transmission from client to ATTORNEY at any given time. As such, client agrees and is oblige to affirmatively contact the ATTORNEY or a staff representative of the ATTORNEY personally to ensure that communication of needed information is transmitted to ATTORNEY. The email addresses that must be used are:

jmj@jimmersonlawfirm.com        and aap@jimmersonlawfirm.com

**17.    CLIENT acknowledges that he has had ample opportunity to seek his own counsel regarding this Attorney Retainer Agreement before signing this Agreement, and CLIENT has acted independently from ATTORNEY in deciding to voluntarily and knowingly sign this Agreement.**

**18.**    Should any term, provision clause, subparagraph or paragraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

Agreed to and executed by:

THE JIMMERSON LAW FIRM, P.C.

JAMES M. JIMMERSON, ESQ.,
**ATTORNEY**

CASH CLOUD INC.

1/31/2023

Chris McAlary, CEO
**CLIENT**                        **Date**

CORRECT CLIENT ADDRESS FOR ALL BILLING STATEMENTS:

EMPLOYER IDENTIFICATION NUMBER:

46-5527468

# EXHIBIT 3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
12/20/2019 3:14 PM
Steven D. Grierson
CLERK OF THE COURT

COMP
THE JIMMERSON LAW FIRM, P.C.
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
ks@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    702-388-7171
Facsimile:    702-367-1167
*Attorneys for Plaintiff Cash Cloud Inc.*

CASE NO: A-19-807370-B
Department 11

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC., A Nevada Corporation, | Case No.: |
| Plaintiff, | Dept. No.: |
| vs. | **COMPLAINT** |
| LUIS FLORES, a.k.a. LUIS FLORES-MONROY, | **BUSINESS COURT REQUESTED –** Matter Based on NRS Chapter 78 |
| Defendant. | **Exempt from Arbitration – Equitable** Relief Requested |

COMES NOW Plaintiff, Cash Cloud Inc. a Nevada corporation ("Plaintiff" or "Cash Cloud"), by and through its counsel of record, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C., and hereby submits its Complaint, alleging as follows:

## NATURE OF COMPLAINT

1.     Plaintiff Cash Cloud Inc. brings this action against Defendant Luis Flores, a.k.a. Luis Flores-Monroy ("Flores" or "Defendant") seeking declaratory judgment from this Court that Defendant is not a shareholder of Cash Cloud and is not otherwise entitled to the books and records of Cash Cloud.

2.     Despite Defendant never owning any shares in Cash Cloud, Defendant, through counsel, has recently demanded, *inter alia*, [1] that Cash Cloud issue him share certificates for 24% of Cash Cloud, and [2] that Cash Cloud produce copies of its books

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1

and records to him.  Within the same demand letter, Defendant repeatedly threatened the initiation of litigation should Cash Cloud refuse to accede to Defendant's improper demands.  As such, Court intervention is necessary to resolve this dispute.

<strong><u>PARTIES</u></strong>

3.     Plaintiff Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada.  At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada.

4.     Upon information and belief, Defendant Luis Flores, a.k.a. Luis Flores-Monroy is a resident of Clark County, Nevada.

<strong><u>VENUE AND JURISDICTION</u></strong>

5.     The Court has personal jurisdiction over Defendant since Plaintiff's cause of action arise directly from Defendant's conduct within/toward the State of Nevada.  *See* NRS 14.065.

6.     Venue is proper in the Eighth Judicial District Court.  *See* NRS 13.040.

<strong><u>GENERAL ALLEGATIONS</u></strong>

7.     Cash Cloud was formed on April 1, 2014 as a Nevada corporation.  At that time, its only shareholder was Christopher McAlary ("McAlary").  A few months later, Joshua Schlachter ("Schlachter") became a shareholder.  Its two sole shareholders continue to be McAlary and Schlachter.

8.     Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail cryptocurrency trading industry.  Using specialized kiosks akin to ATMs, Cash Cloud provides its customers with the ability to buy and sell cryptocurrency conveniently and efficiently.

9.     In or around July 2017, Defendant decided to work with Messrs. McAlary and Schlachter.  The three of them agreed to create a new entity, Min Raise Resources LLC ("Min Raise"), a Nevada limited liability company, with each of them to be members of the same.  At that time, the plan Defendant, McAlary, and Schlachter agreed upon was to for Min Raise to conduct substantial retail cryptocurrency trading business.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

10. In July 2017, with the assistance of the law firm of Smith and Shapiro, PLLC, Min Raise was organized and a Min Raise operating agreement, subscription agreement, and employment agreement were drafted.

11. Defendant executed (1) the operating agreement for Min Raise, (2) a subscription agreement concerning Min Raise, and (3) an employment agreement with Min Raise on July 17, 2017. In connection with the foregoing, Defendant contributed $240,000.00 to Min Raise in the weeks following July 17, 2017.

12. Despite Defendant, McAlary, and Schlachter's plans, Min Raise was unable to conduct substantial retail cryptocurrency trading business and had not actively conducted regular business operations in 2018 or 2019.

13. After it was clear that Min Raise would be unable to conduct substantial retail cryptocurrency trading business, Defendant, McAlary, and Schlachter continued Cash Cloud's retail cryptocurrency trading business.

14. Defendant was named Chief Operating Officer of Cash Cloud and eventually became Cash Cloud's Secretary and Treasurer.

15. However, at no point in time did Defendant become a shareholder of Cash Cloud.

16. In 2019, McAlary and Defendant entered into negotiations with one another in contemplation of a transaction that would result in the issuance of shares of Cash Cloud to Defendant. Defendant retained his own counsel to represent him in the negotiations. Papers were drafted to complete the transaction, provided to Defendant, but they were never executed.

17. On November 22, 2019, Defendant resigned from his positions, employment, and role in the cryptocurrency trading enterprise. Defendant did not return to Cash Cloud's offices for the rest of the month. Indeed, from November 23, 2019 to the present date, Defendant appeared at Cash Cloud's offices only once for less than an hour on December 2, 2019.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

3

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

18.    Upon information and belief, Defendant resigned as a direct result of Cash Cloud's discovery that he had repeatedly made material misrepresentations to, among other people, Cash Cloud's human resources vice president.

19.    On December 4, 2019 a meeting of the shareholders of Cash Cloud took place. McAlary and Schlachter, the only shareholders of Cash Cloud, were in attendance and participated in the meeting.

20.    At no point during the December 4, 2019 shareholders meeting did Schlachter or his counsel state that Defendant was a shareholder of Cash Cloud.

21.    At no point during the December 4, 2019 shareholders meeting did Schlachter or his counsel protest that Defendant was improperly being denied access to the shareholders meeting.

22.    During the December 4, 2019 shareholders meeting, both McAlary and Schlachter affirmatively approved and assented to Defendants' resignation.

23.    Specifically, when asked directly whether Cash Cloud should accept Defendants' resignation, Schlachter replied, "I accept."

24.    A recording of Schlachter's statement is embedded herein.

25.    On December 6, 2019, Defendant, through counsel, sent a letter to Cash Cloud which contained several false and inflammatory statements about Cash Cloud and McAlary.  Also included in the letter were false assertions that Defendant is a shareholder of Cash Cloud and is entitled to access and review of Cash Cloud's books and record.

26.    For example, the letter stated, "Mr. Flores is entitled to access to all books and records of Cash Cloud," and "[Mr. Flores] certainly did not give up any of his rights as a shareholder."  Such claims are utterly and completely false.

27.    Defendant is not and has never been a shareholder of Cash Cloud.  The corporate list of Cash Cloud's shareholders has always included two names and two names only—McAlary and Schlachter.

4

28.     Knowing this, Defendant retained an attorney to assist him in negotiating and completing a contemplated transaction that would make him a shareholder of Cash Cloud.    However, Defendant never signed the requisite papers to effectuate the transaction and it was never consummated.

29.     Defendant has threatened to initiate litigation against Cash Cloud based upon the foregoing, among other spurious claims.    As such, Cash Cloud respectfully requests that this Court issue declaratory judgment in Cash Cloud's favor to fully and finally resolve this dispute.

## FIRST CAUSE OF ACTION
### Declaratory Judgment Pursuant to NRS Chapter 30

30.     Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

31.     A justiciable controversy has arisen between the parties hereto regarding the ownership of Cash Cloud.

32.     Genuine disputes exist concerning multiple matters including, but not limited to, the following: (1) whether Defendant owns any shares of Cash Cloud; and (2) whether Defendant has any legal right to inspect Cash Cloud's books and records.

33.     NRS 78.257 provides that only shareholders with 15 percent of issued and outstanding shares of stock in a corporation shall have access to its books and records.

34.     Defendant is not a shareholder, much less a shareholder with at least 15 percent interest in Cash Cloud.    Despite the same, Defendant has demanded access to Cash Cloud's books and records.

35.     Defendant has also represented that he is an officer of Cash Cloud despite his resignation.    Cash Cloud's shareholders unanimously approved of and were accepting of the resignation.

36.     Based upon the foregoing dispute and controversy, Cash Cloud respectfully requests a declaration from this Court regarding the ownership of Cash Cloud and specifically a declaration that Defendant is **not** a shareholder of Cash Cloud.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1   Additionally, Cash Cloud respectfully requests a declaration that Defendant has no

2   right to access and/or to inspect Cash Cloud's books and records.

3       WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

4       1.      For declaratory relief as requested;

5       2.      For reasonable attorney's fees and costs; and

6       3.      For any other relief this Court finds just and proper.

7   DATED this 20th day of December, 2019.

8

9                                   THE JIMMERSON LAW FIRM, P.C.

10                                  /s/ James M. Jimmerson, Esq.
                                    JAMES J. JIMMERSON, ESQ.
11                                  Nevada Bar No. 000264
                                    ks@jimmersonlawfirm.com
12                                  JAMES M. JIMMERSON, ESQ.
                                    Nevada Bar. No. 12599
13                                  jmj@jimmersonlawfirm.com
                                    415 S. Sixth Street, Suite 100
14                                  Las Vegas, Nevada 89101
                                    (702) 388-7171
15                                  Attorneys for Plaintiff Cash Cloud Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

6

# EXHIBIT 4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
9/8/2020 4:47 PM
Steven D. Grierson
CLERK OF THE COURT

**ACOM**
THE JIMMERSON LAW FIRM, P.C.
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    702-388-7171
Facsimile:    702-367-1167
*Attorneys for Plaintiff Cash Cloud Inc.*

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC., A Nevada Corporation, | Case No.: A-19-807370-B |
| Plaintiff, | Dept. No.: XI |
| vs. | **FIRST AMENDED COMPLAINT** |
| LUIS FLORES, a.k.a. LUIS FLORES-MONROY; DOES 1-10; ROE BUSINESS ENTITIES 11-20, | |
| Defendants. | |
| AND RELATED MATTERS | |

COMES NOW Plaintiff, Cash Cloud Inc. a Nevada corporation ("Plaintiff" or "Cash Cloud"), by and through their counsel of record, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C., and hereby submits its First Amended Complaint, alleging as follows:

### NATURE OF COMPLAINT

1.    Plaintiff Cash Cloud Inc. brings this action against Defendant Luis Flores, a.k.a. Luis Flores-Monroy ("Flores" or "Defendant") seeking declaratory judgment from this Court that Defendant is not a shareholder of Cash Cloud and is not otherwise entitled to the books and records of Cash Cloud.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

2.      Despite Defendant never owning any shares in Cash Cloud, Defendant, through counsel, has recently demanded, *inter alia*, [1] that Cash Cloud issue him share certificates for 24% of Cash Cloud, and [2] that Cash Cloud produce copies of its books and records to him.  Within the same demand letter, Defendant repeatedly threatened the initiation of litigation should Cash Cloud refuse to accede to Defendant's improper demands.

3.      Subsequent to the commencement of this action, Cash Cloud recently discovered that, weeks after he resigned and left the company, Flores surreptitiously attempted to access and copy Cash Cloud's confidential and trade secret data.

4.      Cash Cloud respectfully requests relief from this Court—declaratory judgment concerning ownership of Cash Cloud and injunctive relief against Flores to protect Cash Cloud from Flores's wrongful misappropriation and use of Cash Cloud's confidential information and trade secrets.

## PARTIES

5.      Plaintiff Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada.  At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada.

6.      Upon information and belief, Defendant Luis Flores, a.k.a. Luis Flores-Monroy is a resident of Clark County, Nevada.

7.      Does 1 through 10, inclusive, and Rose Business Entities 11-20, inclusive are individuals, officers, directors, employees, agents, associates, representatives, partners, or related persons of the above-captioned Defendant, and/or other persons or business entities, whose true names and identities and capacities are unknown to Plaintiff at this time.  Each fictionally named Defendant participated in some manner and is in some way responsible on the facts hereinafter alleged.  At such time as the DOE/ROE Defendants' true names, capacities, and relevant information becomes known to Plaintiff, Plaintiff will ask leave of this Court to amend this Complaint to substitute said true names and capacities.

2

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## VENUE AND JURISDICTION

8.    The Court has personal jurisdiction over Defendant since Plaintiff's cause of action arise directly from Defendant's conduct within/toward the State of Nevada. *See* NRS 14.065.

9.    Venue is proper in the Eighth Judicial District Court. *See* NRS 13.040.

## GENERAL ALLEGATIONS

10.    Cash Cloud was formed on April 1, 2014 as a Nevada corporation. Its two shareholders were, and continue to be, Christopher McAlary ("McAlary") and Joshua Schlachter ("Schlachter").

11.    Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency (commonly known as cryptocurrency) trading industry. Using specialized kiosks akin to ATMs, Cash Cloud provides its customers with the ability to buy and sell digital currency conveniently and efficiently.

12.    In or around July 2017, Defendant decided to work with Messrs. McAlary and Schlachter. The three of them agreed to create a new entity, Min Raise Resources LLC ("Min Raise"), a Nevada limited liability company, with each of them to be members of the same.

13.    In July 2017, with the assistance of the law firm of Smith and Shapiro, PLLC, Min Raise was organized and a Min Raise operating agreement, subscription agreement, and employment agreement were drafted.

14.    Defendant executed (1) the operating agreement for Min Raise, (2) a subscription agreement concerning Min Raise, and (3) an employment agreement with Min Raise on July 17, 2017. In connection with the foregoing, Defendant contributed $240,000.00 to Min Raise in the weeks following July 17, 2017.

15.    Despite Defendant, McAlary, and Schlachter's plans, Min Raise was unable to conduct similar business operations as Cash Cloud and has not actively conducted regular business operations in the second half of 2018 or 2019.

16.    When it was clear that Min Raise would be unable to conduct similar business operations as Cash Cloud, Defendant, McAlary, and Schlachter decided to continue to build Cash Cloud.

17.    During this time, Defendant was named Chief Operating Officer of Cash Cloud and eventually became Cash Cloud's Secretary and Treasurer.

18.    However, at no point in time did Defendant become a shareholder of Cash Cloud.

19.    In 2019, McAlary and Defendant entered into negotiations with one another in contemplation of a transaction that would result in the issuance of shares of Cash Cloud to Defendant.  Defendant retained his own counsel to represent him in the negotiations.  Papers were drafted to complete the transaction.  They were never executed.

20.    On November 22, 2019, Defendant resigned from his positions, employment, and role in the cryptocurrency trading enterprise.  Defendant did not return to Cash Cloud's offices after November 22, 2019.

21.    Upon information and belief, Defendant resigned as a direct result of the discovery that he had repeatedly made material misrepresentations to, among other people, Cash Cloud's human resources manager.

22.    On December 4, 2019 a meeting of the shareholders of Cash Cloud took place.  McAlary and Schlachter were in attendance and participated in the meeting.

23.    At no point during the December 4, 2019 shareholders meeting did Schlachter or his counsel state that Defendant was a shareholder of Cash Cloud.

24.    At no point during the December 4, 2019 shareholders meeting did Schlachter or his counsel protest that Defendant was being improperly denied access to the shareholders meeting.

25.    During the December 4, 2019 shareholders meeting, both McAlary and Schlachter affirmatively assented to Defendants' resignation.

26.    Specifically, when asked directly, Schlachter stated, "I accept."

THE JIMMERSON LAW FIRM, P.C.

415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101

(702) 388-7171 – fax (702) 387-1167

4

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

27. A recording of Schlachter's statement is embedded herein.

28. On December 6, 2019, Defendant, through counsel, sent a letter to Cash Cloud which contained several false and inflammatory statements about Cash Cloud and McAlary. Also included in the letter were false assertions that Defendant is a shareholder of Cash Cloud and is entitled to access and review of Cash Cloud's books and record.

29. For example, the letter stated, "Mr. Flores is entitled to access to all books and records of Cash Cloud," and "[Mr. Flores] certainly did not give up any of his rights as a shareholder." Such claims are utterly and completely false.

30. Defendant is not and has never been a shareholder of Cash Cloud. The list of Cash Cloud's shareholders has always included two names and two names only—McAlary and Schlachter.

31. Knowing this, Defendant retained an attorney to assist him in negotiating and completing a contemplated transaction that would make him a shareholder of Cash Cloud. However, Defendant never signed the requisite papers to effectuate the transaction and it was never consummated.

32. Defendant has threatened to initiate litigation against Cash Cloud based upon the foregoing, among other spurious claims. As such, Cash Cloud respectfully requests that this Court issue declaratory judgment in Cash Cloud's favor to fully and finally resolve this dispute.

33. After Flores's resignation from Cash Cloud in November 2019, in January 2020, Flores communicated with a then-employee of Cash Cloud, Javier Franco ("Franco"), requesting that he copy Cash Cloud's confidential and proprietary information, including, information concerning the number of digital currency kiosks per capita in geographic areas across the United States (the "City Data Document").

34. The City Data Document is property of Cash Cloud and is a confidential document containing a compilation of Cash Cloud's trade secrets. Cash Cloud has taken

5

reasonable steps to protect this data from disclosure to the public and to former employees such as Flores. The information contained therein is inherently valuable to Cash Cloud and its competitors because: (1) it shows the markets that could most benefit from additional digital currency kiosks; and (2) it is not publicly available and is not readily ascertainable by proper means or any other person who can obtain commercial or economic value from its disclosure or use.

35. Like Cash Cloud's other confidential information and trade secrets, Cash Cloud took action to maintain the City Data Document as a trade secret. The City Data Document's secrecy was guarded and may only be accessed by authorized personnel. The drive which stores this information Document (along with other of Cash Cloud's trade secrets) is password protected and supported by two-factor authentication security.

36. Soon after Flores made the request to Franco, Flores received Franco's user ID and password to login and access Cash Cloud's confidential information and trade secrets.

37. Upon receiving Franco's login credentials, Flores attempted to login to access Cash Cloud's information on Cash Cloud's Google Drive. Upon using such credentials, Flores was met with the two-factor authentication security protocol. Flores then communicated to Franco, "just sent you a 2fa."

38. Upon information and belief, shortly after Flores said this to Franco, Flores reviewed the information contained on the City Data Document.

39. Flores knew that his efforts to access, retain, and use Cash Cloud's confidential information was wrong.

40. Flores knew that Cash Cloud's employee handbook stated, "employees may not disclose any confidential or nonpublic proprietary information about the Company to any unauthorized individual. If you receive a request for Confidential Information, you should immediately refer the request to your supervisor."

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

41.     Flores knew that Franco was obligated to follow such requirements in the employee handbook.

42.     Flores's knowledge of the wrongfulness of his efforts caused him to tell Franco, "don't want to get you in trouble if it [two-factor authentication] goes somewhere else."

43.     Upon information and belief, Flores's efforts to access Cash Cloud's confidential and proprietary information continued after January 7, 2020.  In reference to Cash Cloud's internal records of which salesperson assisted with the acquisition of each of Cash Cloud's locations, Flores stated to Franco, "I might have a file somewhere but most of them I can't currently access but will hopefully have access later."

44.     Flores not only seeking to acquire Cash Cloud's confidential information, he was also disseminating certain remaining confidential information he had that belonged to Cash Cloud.  On February 6, 2020, Flores stated to Franco (who was no longer a Cash Cloud employee at the time), "I'll send her over the documents you guys were supposed to receive."  On February 8, 2020, Flores stated to Franco, "who knows if you end up getting the backend since so few contracts are actually getting installed."

45.     Flores's wrongful conduct in improperly attempting to access Cash Cloud's confidential and proprietary information in Cash Cloud's computers/network/system has caused substantial and harm to Cash Cloud.

46.     Equitable/injunctive relief is the only adequate remedy for Flores's misconduct.  Cash Cloud respectfully requests that the Court issue a temporary restraining order, preliminary injunction, and/or permanent injunction enjoining Flores: (1) from attempting to gain unauthorized access to Cash Cloud's computers, computer system, and/or network; (2) from misappropriating Cash Cloud's trade secrets and/or confidential information; and (3) from using and/or disseminating Cash Cloud's trade secrets and/or confidential information.

/ / /

/ / /

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.

415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101

(702) 388-7171 – fax (702) 387-1167

### FIRST CAUSE OF ACTION
### Declaratory Judgment Pursuant to NRS Chapter 30

47.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

48.    A justiciable controversy has arisen between the parties hereto regarding the ownership of Cash Cloud.

49.    Genuine disputes exist concerning multiple matters including, but not limited to, the following: (1) whether Defendant owns any shares of Cash Cloud; and (2) whether Defendant has any legal right to inspect Cash Cloud's books and records.

50.    Based upon the foregoing dispute and controversy, Cash Cloud respectfully requests a declaration from this Court regarding the ownership of Cash Cloud and specifically a declaration that Defendant is **not** a shareholder of Cash Cloud. Additionally, Cash Cloud respectfully requests a declaration that Defendant has no right to inspect Cash Cloud's books and records.

### SECOND CAUSE OF ACTION
### Unlawful Access of Computer Information Pursuant to NRS 205.4765 *et seq.*

51.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

52.    Flores knowingly, willfully, and without authorization used, copied, took, retained possession of, obtained access to, and/or attempted to obtain access to Cash Cloud's data and/or supporting documents which exist inside a computer, system or network.

53.    Flores knowingly, willfully, and without authorization used, obtained access to, and/or attempted to obtain access to Cash Cloud's computer, system, and/or network.

54.    Flores knowingly, willfully, and without authorization used a device used to access Cash Cloud's computer, network, and/or data.

55.    As a direct and proximate result of Flores's wrongful misappropriate of Cash Cloud's trade secrets, Cash Cloud has been and will continue to suffer irreparable

harm.

56.     Equitable/injunctive relief is the only adequate remedy for Flores's unlawful accessing of Cash Cloud's computer information.

<u>THIRD CAUSE OF ACTION</u>
Misappropriation of Trade Secrets Pursuant to NRS 600A.010 *et seq.*

57.     Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

58.     Cash Cloud's trade secrets include, but are not limited to, the confidential compilation information of data contained within the City Data Document.   The compilation data within the City Data Document is confidential and Cash Cloud derives independent economic value from the City Data Document being not generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain commercial or economic value from their disclosure or use.

59.     Cash Cloud took adequate and reasonable steps to maintain the City Data Document and its other confidential data as trade secrets, which secrecy was guarded and not readily available to others.

60.     Flores willfully and maliciously misappropriated at least the City Data Document from Cash Cloud through improper means by, *inter alia*, inducing Franco, a former subordinate and co-worker at Cash Cloud, to wrongfully breach that individual's duty to maintain the secrecy of the contents of the City Data Document and share with Flores the contents of the City Data Document.

61.     Flores took those actions with reason to believe that his actions would cause injury to Cash Cloud.

62.     Flores used and/or disseminated Cash Cloud's trade secrets.

63.     Flores's misappropriation of Cash Cloud's trade secrets was wrongful because it was made in breach of implied and express contracts, including the Cash Cloud employee handbook and because it was made by Franco, a then-current Cash Cloud employee who had a duty not to disclose the trade secrets.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

9

64.     As a direct and proximate result of Flores's wrongful misappropriate of Cash Cloud's trade secrets, Cash Cloud has been and will continue to suffer irreparable harm.

65.     Equitable/injunctive relief is the only adequate remedy for Flores's misappropriation of Cash Cloud's trade secrets.

WHEREFORE, Cash Cloud prays for judgment against Flores as follows:

1.     For declaratory relief as requested;

2.     For injunctive relief as requested;

3.     For reasonable attorney's fees and costs; and

4.     For any other relief this Court finds just and proper.

DATED this _8th_ day of _September_, 2020.

THE JIMMERSON LAW FIRM, P.C.

JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
ks@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
jmj@jimmersonlawfirm.com
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Cash Cloud Inc.*

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

10

**CERTIFICATE OF SERVICE**

Pursuant to NRCP 5(b), I certify that I am an employee of the JIMMERSON LAW FIRM, P.C., and that on this 8th day of September, 2020, I caused a document entitled **PLAINTIFF CASH CLOUD, INC.'S SECOND AMENDED REPLY TO COUNTERCLAIMS** to be served as follows:

[X]    pursuant to EDCR 8.05(a), EDCR 8.05(f), NRCP 5(b)(2)(D) and Administrative Order 14-2 captioned In the Administrative Matter of Mandatory Electronic Service in the Eighth Judicial District Court, by mandatory electronic service through the Eighth Judicial District Court's electronic filing system;

[ ]    by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada;

[ ]    pursuant to EDCR 7.26, to be sent via **facsimile,** by duly executed consent for service by electronic means.

[ ]    Hand Delivery

To the person(s) listed below at the address, email address, and/or facsimile number indicated below:

Kimberly Stein, Esq.
FLANGAS DALACAS LAW GROUP
3275 South Jones Blvd., Suite 105
Las Vegas, Nevada 89146
*Counsel for Luis Flores*

Jennifer L. Braster, Esq.
NAYLOR & BRASTER
1050 Indigo Dr., Suite 200
Las Vegas, Nevada 89145
*Counsel for Christopher McAlary*

Kory L. Kaplan, Esq.
LARSON ZIRZOW KAPLAN COTTNER
850 E Bonneville Ave.
Las Vegas, NV 89101
*Counsel for Coin Cloud LLC
and Min Raise Resources LLC*

/s/

An employee of JIMMERSON LAW FIRM, P.C.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1

# EXHIBIT 5

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

## ATTORNEY'S RETAINER AGREEMENT

THIS ATTORNEY'S RETAINER AGREEMENT (the "Agreement") made this ___ day of <u>1/31/2023</u>, 2023, at Las Vegas, Nevada, by and between the undersigned, CASH CLOUD, INC., hereinafter designated as "CLIENT" and THE JIMMERSON LAW FIRM, P.C., hereinafter designated as "ATTORNEY."

1.      CLIENT has retained ATTORNEY and seeks to continue to retain ATTORNEY to represent CLIENT in various matters concerning CLIENT, including, but not limited to, a litigation matter against Luis Flores Monroy, Case No. A-19-807370-B, currently pending in the Eighth Judicial District Court in Clark County, Nevada. CLIENT empowers ATTORNEY to take all steps deemed by ATTORNEY to be advisable, including to effect a compromise, to institute legal proceedings, and to take all other appropriate steps as authorized by CLIENT. CLIENT and ATTORNEY acknowledge and agree that ATTORNEY has represented affiliates of the CLIENT in the past and that all such representation of affiliates has concluded. Should an affiliate of CLIENT seek to retain ATTORNEY in the future, such representation will only commence under a separate written agreement, which would include, inter alia, a provision that would allow ATTORNEY to withdraw from representation of the affiliate and continue the representation of the CLIENT in the event of any conflict from both representations.

2.      CLIENT agrees to pay ATTORNEY an amount of money for its attorney's fees totaling the aggregate amount of several categories of specific fees, and possible fees, for ATTORNEY, detailed as follows:

a.      CLIENT shall pay all monthly bills within twenty (20) days of the billing statement.  However, while CLIENT is in bankruptcy, CLIENT shall pay a maximum of $25,000.00 / week, to be applied to the CLIENT's current monthly bills and CLIENT's past-due bills;

Hourly rates for services rendered on your behalf by the attorneys in the office are as follows:

| | |
|---|---|
| JAMES J. JIMMERSON, ESQ. | $595 .00/HOUR |
| JAMES M. JIMMERSON, ESQ. | $350.00/HOUR |

Other associates shall be billed out at $175.00 per hour.

An hourly rate of $175.00 per hour for work done on Client's behalf by Law Clerk Andrew Pastor.

Other Law Clerks and Paralegals shall be billed out at $125.00 per hour.

An hourly rate of $75.00 - $125.00 per hour for work done on your behalf, including but not limited to, assembly of binders and exhibits for hearings and/or trial, by documentation specialists and/or secretarial staff.

CLIENT agrees that these fees are reasonable on the basis of ATTORNEY's (and staffs) ability, training, education, experience,

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

professional standing and skill, and the difficulty, intricacy, importance and time and skill required to perform the work to be done.

CLIENT shall advance and pay to ATTORNEY all costs, including but not limited to court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance phone calls, filing fees, mailing costs, parking fees and other disbursements made in connection with this matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. When an item of costs is known to exceed $250.00, CLIENT shall provide prior written approval for the same before such cost is incurred. Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1-1/2%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection.

3.      Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1.5%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection. In the event ATTORNEY receives payment in full within ten (10) days of the date of the statement, CLIENT shall be entitled to a 10% discount of that month's attorney's fees, which will be held in the CLIENT'S trust account.[1]

4.      CLIENT has indicated that it may file for Chapter 11 bankruptcy. In such case, ATTORNEY'S continued representation is contingent upon CLIENT filing a motion for access to, and approval of, Debtor in Possession ("DIP") Financing. CLIENT acknowledges and agrees that ATTORNEY shall, due to CLIENT's sizable past-due billings as of the date of this Agreement and the risk that of ATTORNEY not being paid, withdraw from representing CLIENT should the bankruptcy court not grant CLIENT's DIP Motion, authorizing payment of ATTORNEY's billings, in accordance with this Agreement, as administrative fees of CLIENT.

---

[1] For example, if CLIENT'S billing statement contains $5,000.00 in attorney's fees and ATTORNEY receives payment in full for fees and costs reflected in that billing statement within ten (10) days of the date of the statement, ATTORNEY shall discount the attorney's fees owed by $500.00 (or 10% of the attorney's fees incurred), and retain the $500.00 in trust for the CLIENT, which may be, amongst other things, applied toward CLIENT'S next bill.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

5.      On or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), we may file an application (a "Monthly Fee Application") with the Bankruptcy Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: CLIENT, the United States Trustee, and parties requesting special notice (the "Notice Parties"). If we fail to file a Monthly Fee Application for a particular month or months, we may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, we shall file a certificate of no objection with the Court, after which CLIENT shall be authorized to pay us an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, CLIENT shall be authorized to pay us 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

If any Notice Party objects to our Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Bankruptcy Court and serve such Objection on us and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting patty and we may attempt to resolve the Objection on a consensual basis. If the patties are unable to reach a resolution of the Objection, we may either (i) file a request with the Bankruptcy Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Bankruptcy Court will consider and dispose of the objection if requested by the parties.

Beginning with the approximately 120-day period commencing on the date of this letter, and at each 120-day period thereafter (the "Interim Fee Period"), we shall file with the Bankruptcy Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by us in our Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Patties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Firm and the Notice Parties so as to be received on or before

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

CLIENT will request that the Bankruptcy Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Bankruptcy Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Bankruptcy Court may grant an Interim Fee Application without a hearing.

At the conclusion of our representation, we will file a final fee application (the "Final Fee Application) with the Bankruptcy Court, seeking final approval of all fees and expenses incurred during our representation.

6.     **IN THE EVENT OF A LOSS, THE CLIENT MAY BE LIABLE FOR THE OPPOSING PARTY'S ATTORNEY'S FEES, AND WILL BE LIABLE FOR THE OPPOSING PARTY'S COSTS AS REQUIRED BY LAW.  A suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

7.     _____ (Initial) CLIENT hereby grants ATTORNEY (1) a charging lien on any and all claims or causes of action that are related to the subject of ATTORNEY'S representation under this Agreement and (2) a retaining lien on any file or other property left in the possession of the ATTORNEY by CLIENT.  ATTORNEY'S lien will be used for any sums owing to ATTORNEY at the conclusion of ATTORNEY'S services, whether or not the case has been concluded.  The charging lien will attach to any recovery CLIENT may obtain, whether by arbitration award, judgment, settlement or otherwise.  In enforcing ATTORNEY'S lien, any amounts received by ATTORNEY'S office on CLIENT'S behalf may be used to pay any outstanding sums owed to ATTORNEY.  In accordance with the Uniform Commercial Code, no payments made to ATTORNEY for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless ATTORNEY and CLIENT both sign a separate written agreement specifically permitting such payment to constitute a payment in full of CLIENT'S account.  The CLIENT agrees that ATTORNEY shall be permitted to seek to enforce its liens and obtain a money judgment for unpaid attorney's fees and costs by motion practice under this Agreement, and irrevocably grants jurisdiction for the adjudication of said lien to the Court before which ATTORNEY is representing CLIENT.  As such, CLIENT expressly waives any requirement or reliance on legal authority that would otherwise require ATTORNEY to bring an independent lawsuit to collect its fees and costs.  In short, the CLIENT expressly agrees and consents to an attorneys' lien and that ATTORNEY shall be permitted to collect its unpaid attorney's fees and costs and enforce its lien by motion practice, and irrevocably grants jurisdiction to the Court before which ATTORNEY is representing CLIENT to adjudicate an attorney's lien.  CLIENT agrees that they have had the opportunity to review the holdings of <u>Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish,</u> 125 Nev. 527, 216 P.3d 779 (2009); <u>Fredianelli v. Fine Carman Price</u>, 402 P.3d 1254, 133 Nev. Adv. Op. 74 (2017); and <u>Grisham v. Grisham and Webster</u>, 128 Nev. 679, 289 P.3d 230 (2012), and agree that this Retainer Agreement provides express consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien and that the same, by CLIENT's express

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

consent, may be adjudicated to judgment by motion practice. See NRS 18.015 (as amended by SB 140, 2013) see. also Petersen v. Jimmerson Hansen, P.C., Case No. 68888, 2016 WL 757110 (Nev. App. Ct. 2016). Any such judgment shall be final and shall be collectible by any lawful means.

8.    ATTORNEY shall have the right to assign office personnel, including associate attorneys, amazing and frankly over-talented law clerks, and paralegals, to the case in ATTORNEY's sole discretion. CLIENT shall so designate in writing if CLIENT desires to have certain attorneys or personnel handle the case exclusively or if CLIENT desires to have certain ATTORNEYS or personnel excluded from handling the case.

9.    CLIENT acknowledges that ATTORNEY has made no guarantee regarding the successful termination of said cause of action, and all expressions relative thereto are matters of ATTORNEY's opinion only.  Based upon meetings between CLIENT and ATTORNEY, CLIENT acknowledges that this case will be a difficult one.  If the case is not successful, CLIENT will owe ATTORNEY the advanced costs.  ATTORNEY shall not settle or compromise this matter without the approval of CLIENT.

10.    CLIENT agrees to do all that is necessary to provide ATTORNEY with information requested by ATTORNEY concerning the case.

11.    Any fees billed on an hourly basis shall include, but shall not be limited to, time spent on the telephone, in negotiations, drafting, dictating, conducting legal research, conferences with other attorneys, experts, consultants or witnesses, traveling, conducting discovery, time spent in court (including waiting time), time in depositions, and all other efforts on CLIENT's behalf in this matter.

12.    This is the entire Agreement between the parties and any modifications or additions to this Agreement must be made in writing and signed by both parties.

13.    The efforts by ATTORNEY on CLIENT'S behalf shall be performed in Nevada and elsewhere as needed.  This Agreement shall be governed by the laws of the State of Nevada and all legal action arising out of this Agreement shall be conducted in Nevada.  If any legal action is brought as a result of this Agreement, the prevailing party shall be entitled to costs incurred plus a reasonable attorney's fee.

14.    ATTORNEY, at ATTORNEY'S sole discretion, may withdraw from the representation of CLIENT at any time, but that withdrawal shall not affect ATTORNEY'S right to be compensated for fees and costs already incurred.  We may withdraw if you do not make the payments required by this Agreement, if you have misrepresented or failed to disclose material facts to us or if a breakdown in communication occurs.  Upon our withdrawal, we will be entitled to an attorneys' lien for earned and unpaid fees and costs.  Additionally, we shall have a lien on all of your documents, property and money in our possession for the payment of all sums due to us from you under the terms of this Agreement.

15.    CLIENT understands and agrees that should a Court award attorneys' fees to CLIENT (or to ATTORNEY on CLIENT's behalf), such sums shall be applied against any outstanding charges on CLIENT's bill only after such sums are actually collected. However, CLIENT understands and agrees that collection of any awarded fees is not the responsibility of ATTORNEY and that pursuant to this Retainer Agreement, CLIENT

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

remains solely responsible for the payment of the legal fees, expenses and costs incurred in CLIENT's case. A Court Order awarding attorneys' fees from the opposing party does **not** relieve CLIENT of the primary responsibility for paying ATTORNEY's bill. CLIENT acknowledges that the Court could likewise Order CLIENT to pay attorney's fees or costs to the opposing party, and such Order does not relieve CLIENT of the obligation to pay CLIENT's own attorney's fees and costs to ATTORNEY.

      **16.**    Because of the numerous e-mails or electronic communications received by ATTORNEY on a daily basis, client is placed on notice, that client may not assume that ATTORNEY has an e-mail transmission from client to ATTORNEY at any given time. As such, client agrees and is oblige to affirmatively contact the ATTORNEY or a staff representative of the ATTORNEY personally to ensure that communication of needed information is transmitted to ATTORNEY. The email addresses that must be used are:

      jmj@jimmersonlawfirm.com      and aap@jimmersonlawfirm.com

      **17.**    **CLIENT acknowledges that he has had ample opportunity to seek his own counsel regarding this Attorney Retainer Agreement before signing this Agreement, and CLIENT has acted independently from ATTORNEY in deciding to voluntarily and knowingly sign this Agreement.**

      18.    Should any term, provision clause, subparagraph or paragraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

Agreed to and executed by:

THE JIMMERSON LAW FIRM, P.C.

JAMES M. JIMMERSON, ESQ.,
**ATTORNEY**

CASH CLOUD INC.

      1/31/2023

Chris McAlary, CEO
**CLIENT**        **Date**

CORRECT CLIENT ADDRESS FOR ALL BILLING STATEMENTS:

EMPLOYER IDENTIFICATION NUMBER:

46-5527468

1

# EXHIBIT 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
11/30/2021 4:53 PM
Steven D. Grierson
CLERK OF THE COURT

AVALON LEGAL GROUP LLC
Bryan Naddafi (State Bar No. 13004)
  bryan@avalonlg.com
Elena Nutenko (State Bar No. 14934)
  elena@avalonlg.com
6030 S. Rainbow Blvd., Suite D1
Las Vegas, Nevada 89118
Telephone: (702) 522-6450
Facsimile: (702) 848-5420
*Attorneys for Plaintiff Javier Franco*

CASE NO: A-21-844753-C
Department 2

DISTRICT COURT

CLARK COUNTY, NEVADA

| | |
|---|---|
| JAVIER FRANCO, an individual;<br><br>        Plaintiff,<br><br>    vs.<br><br>CASH CLOUD INC., a Nevada corporation, DOES I through X; and ROE ENTITIES I through X,<br><br>        Defendants. | Case No.<br>Dept No.<br><br>**COMPLAINT**<br><br>**Arbitration Exemption:**<br><br>**Amount in controversy exceeds $50,000** |

1

Plaintiff JAVIER FRANCO ("Plaintiff") for his claims against defendant CASH CLOUD INC. ("Defendant") states and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is an individual who at all times relevant to this action has resided in Clark County, Nevada.

2. Defendant is, and at all times relevant to this action has been, a corporation organized and existing pursuant to Chapter 78 of Nevada Revised Statutes ("NRS") with its principal place of business in Clark County, Nevada.

3. This Court has subject-matter jurisdiction over this action because Plaintiff seeks damages in excess of $15,000.00.

4. Venue is proper in this Court because Plaintiff is a resident of Clark County, Nevada, Defendant's principal place of business is Clark County, Nevada, and the events or omissions giving rise to the Complaint occurred in Clark County, Nevada.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

5. Incorporated in 2014, Defendant supplies and operates bitcoin ATM machines used to buy and sell digital currency.

6. In or about January 2018, Plaintiff began working with Defendant as an independent contractor. He was responsible for signing up new locations at which Defendant's bitcoin ATM machines would be hosted.

7. In or about December 2018, Plaintiff became an employee of Defendant and was given the title of Territory Sales Manager.

8. Plaintiff was still responsible for signing up new locations for Defendant's bitcoin ATM machines to be hosted, however he entered into a new compensation agreement with Defendant.

///
///
///
///

9. Specifically, on or about December 1, 2018, Plaintiff and Defendant entered into a written agreement wherein Plaintiff was to receive a commission of two percent of net proceeds from every bitcoin ATM machines that he placed ("2018 Compensation Agreement"). These commissions were based on the monthly profits of each of the individual bitcoin ATM machines signed and placed by Plaintiff.

10. Thereafter, Plaintiff sourced and delivered hundreds of additional bitcoin ATM machines.

11. On or about March 2, 2020, Defendant presented Plaintiff with a new written agreement wherein Plaintiff would now be paid two percent of *gross* proceeds from every bitcoin ATM machines that he placed ("2020 Compensation Agreement").  These commissions were based on the monthly profits of each of the individual bitcoin ATM machines signed by Plaintiff.

12. This was a big difference as some of the bitcoin ATM machines Plaintiff had placed were generating $100,000.00 per week.

13. Plaintiff executed the 2020 Compensation Agreement.  It was Plaintiff's understanding that Defendant intended to and in fact had executed the 2020 Compensation Agreement as well.

14. Plaintiff continued to sign and deliver many additional bitcoin ATM machines.

15. Plaintiff ended his employment with Defendant on or about August 24, 2020.

16. Defendant has failed to tender commission payments due to Plaintiff under both the 2018 Compensation Agreement and the 2020 Compensation Agreement.

17. Defendant has also refused to complete an accounting of all the profits owed by Defendant to Plaintiff from the bitcoin ATM machines signed and delivered by Plaintiff.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract – 2018 Compensation Agreement)**

18. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

19. The 2018 Compensation Agreement between Plaintiff and Defendant is a valid and enforceable contract.

20. Plaintiff performed in accordance with the terms and conditions of the 2018 Compensation Agreement.

21. Without lawful justification or excuse, Defendant has materially breached the 2018 Compensation Agreement by failing to tender to Plaintiff commission payments due to Plaintiff under the 2018 Compensation Agreement.

22. As a direct and proximate cause of Defendant's breach of the contract, Plaintiff has experienced special and general damages in an amount in excess of $15,000.00.

23. As a direct and proximate result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney to bring this action and is entitled to attorneys' fees and costs of suit incurred herein.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract – 2020 Compensation Agreement)

24. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

25. The 2020 Compensation Agreement between Plaintiff and Defendant is a valid and enforceable contract.

26. Plaintiff performed in accordance with the terms and conditions of the 2020 Compensation Agreement.

27. Without lawful justification or excuse, Defendant has materially breached the 2020 Compensation Agreement by failing to tender to Plaintiff commission payments due to Plaintiff under the 2020 Compensation Agreement.

28. As a direct and proximate cause of Defendant's breach of the contract, Plaintiff has experienced special and general damages in an amount in excess of $15,000.00.

29. As a direct and proximate result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney to bring this action and is entitled to attorneys' fees and costs of suit incurred herein.

///
///

**THIRD CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

30. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

31. Plaintiff and Defendant were parties to valid and enforceable contracts in the form of the 2018 Compensation Agreement and the 2020 Compensation Agreement.

32. As a result of the valid and existing contracts between them, Defendant owes Plaintiff a duty of good faith that prohibited arbitrary or unfair acts that worked to Plaintiff's disadvantage.

33. Defendant's actions contravened the spirit and purpose of the 2018 Compensation Agreement and the 2020 Compensation Agreement.

34. By its above actions, Defendant has destroyed and/or injured the right of Plaintiff to receive the benefits of the 2018 Compensation Agreement and the 2020 Compensation Agreement, and in so doing, has breached the implied covenant of good faith and fair dealing.

35. By reason of the foregoing actions, Plaintiff has been damaged in an amount in excess of $15,000.00.

36. As a direct and proximate result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney to bring this action and is entitled to attorneys' fees and costs of suit incurred herein.

**FOURTH CLAIM FOR RELIEF**
**(In the Alternative, Unjust Enrichment)**

37. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

38. Defendant unjustly retained the financial benefit of Plaintiff's services, such as the income generated by each bitcoin ATM machines signed and placed by Plaintiff, without just payment of compensation to Plaintiff.

///

///

39. Defendant's unjust retention of this aforementioned benefit is against the fundamental principles of justice, as the parties bargained for the agreement, and then Defendant breached its obligations thereto.

40. Defendant has accepted and retained the benefit conferred upon it by Plaintiff.

41. As a direct and proximate result of Defendant's aforementioned conduct, Plaintiff has been damaged in excess of $15,000.00.

42. As a direct and proximate result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney to bring this action and is entitled to attorneys' fees and costs of suit incurred herein.

## FIFTH CLAIM FOR RELIEF
### (Violation of NRS 608.020 through NRS 608.050 – Payment on Resignation)

43. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

44. NRS 608.020 provides that "[w]henever an employer discharges an employee, the wages and compensation earned and unpaid at the time of such discharge shall become due and payable immediately."

45. NRS 608.030 states:

   Whenever an employee resigns or quits his or her employment, the wages and compensation earned and unpaid at the time of the employee's resignation or quitting must be paid no later than: 1. The day on which the employee would have regularly been paid the wages or compensation; or 2. Seven days after the employee resigns or quits, whichever is earlier.

46. Under NRS 608.040(1)(b): "If an employer fails to pay . . . [o]n the day the wages or compensation is due to an employee who resigns or quits, the wages or compensation of the employee continues at the same rate from the day the employee resigned, quit or was discharged until paid or for 30 days, whichever is less."

///

///

///

///

47. NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full, without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default."

48. At all times relevant hereto, Defendant was an employer of Plaintiff within the meaning of NRS 608.011.

49. By failing to pay Plaintiff for all hours worked in violation of state and federal law, at the correct legal rate, Defendant failed to timely remit all wages due and owing to Plaintiff.

50. Despite demand, Defendant willfully refuses and continues to refuse to pay Plaintiff.

51. Wherefore, Plaintiff demands thirty (30) days wages under NRS 608.140 and 608.040, and an additional thirty (30) days wages under NRS 608.140 and 608.050, together with attorneys' fees, costs of suit, and interest as provided by law.

## SIXTH CLAIM FOR RELIEF
### (In the Alternative, Fraudulent Inducement)

52. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

53. In or about March 2020, Defendant falsely represented to Plaintiff that Defendant would pay him two percent of *gross* proceeds from every bitcoin ATM machines that he placed.

54. Defendant falsely represented to Plaintiff that Defendant intended to execute and did execute the 2020 Compensation Agreement in order to memorialize this agreement.

55. Defendant knew or believed that its representations were false or had an insufficient basis of information to make the representations.

56. Defendant made the misrepresentations with the intent to induce Plaintiff to act or refrain from acting.

57. Plaintiff reasonably relied on Defendant's misrepresentations.

58. As a result of this reliance, Plaintiff executed the 2020 Compensation Agreement and continued to work for Defendant signing additional bitcoin ATM machine locations.

59. Defendant refuses to pay Plaintiff the two percent gross commissions owed to Plaintiff as per the 2020 Compensation Agreement, citing its alleged failure to counter-sign the 2020 Compensation Agreement.

60. As a result of Defendant's misrepresentations, Plaintiff has been damaged in an amount in excess of $15,000.00.

61. Defendant is guilty of oppression, fraud, or malice, express or implied; therefore, Plaintiff is entitled to recover damages for the sake of example and by way of punishing Defendant.

62. As a direct and proximate result of Defendant's conduct, Plaintiff has been required to retain the services of an attorney to bring this action and is entitled to attorneys' fees and costs of suit incurred herein.

**SEVENTH CLAIM FOR RELIEF**
**(Accounting)**

63. Plaintiff realleges and incorporates by reference all the preceding paragraphs of this Complaint as though fully set forth in this paragraph.

64. Plaintiff is entitled to a full and complete accounting of all the profits to Defendant from bitcoin ATM machines signed and delivered by Plaintiff.

///

///

///

WHEREFORE, Plaintiff Javier Franco prays for judgment against Defendant Cash Cloud Inc. as follows:

A.  For compensatory damages, including general, consequential, incidental, and special damages, as requested herein, in excess of $15,000.00;

B.  For punitive damages in excess of $15,000.00;

C.  For declaratory relief as requested;

D.  For all costs and expenses incurred by Plaintiff in enforcing his rights, including, but not limited to, reasonable attorneys' fees and costs of suit incurred in defending and prosecuting this action;

E.   For pre-judgment and post-judgment interest; and

F.  For such other and further relief as the Court deems just and proper.

Dated: November 30, 2021                    **AVALON LEGAL GROUP LLC**

_____
 Bryan Naddafi (State Bar No. 13004)
  bryan@avalonlg.com
Elena Nutenko (State Bar No. 14934)
  elena@avalonlg.com
6030 S. Rainbow Blvd., Suite D1
Las Vegas, Nevada 89118
Telephone: (702) 522-6450
Facsimile: (702) 848-5420
*Attorneys for Plaintiff Javier Franco*

9

# EXHIBIT 7

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
4/25/2022 4:11 PM
Steven D. Grierson
CLERK OF THE COURT

**AACC**
THE JIMMERSON LAW FIRM, P.C.
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
ks@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:  702-388-7171
Facsimile:   702-367-1167
*Attorneys for Defendant/Counterclaimant*
*Cash Cloud Inc.*

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| JAVIER FRANCO, an individual, | Case No.:   A-21-844753-C |
| Plaintiff, | Dept. No.:  II |
| vs. | **ANSWER AND COUNTERCLAIM** |
| CASH CLOUD INC., A Nevada Corporation; DOES I through X; and ROE ENTITIES I through X, | |
| Defendants. | |
| CASH CLOUD INC., A Nevada Corporation, | |
| Counterclaimant, | |
| vs. | |
| JAVIER FRANCO, an individual, | |
| Counterdefendant. | |

COMES NOW, Defendant/Counterclaimaint, CASH CLOUD INC. ("Defendant" or "Cash Cloud"), by and through its attorneys of record, JAMES J. JIMMERSON, ESQ. and JAMES M. JIMMERSON, ESQ. of THE JIMMERSON LAW FIRM, P.C., and hereby submits its Answer and Counterclaim to Plaintiff Javier Franco's ("Plaintiff" or "Franco") Complaint (the "Complaint"), stating as follows:

1

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1.     Answering Paragraph 1 of the Complaint, Defendant admits the allegations contained therein.

2.     Answering Paragraph 2 of the Complaint, Defendant admits the allegations contained therein.

3.     Answering Paragraph 3 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required.  To the extent the allegations are construed as factual, Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

4.     Answering Paragraph 4 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required.

5.     Answering Paragraph 5 of the Complaint, Defendant admits the allegations contained therein.

6.     Answering Paragraph 6 of the Complaint, Defendant admits that Plaintiff was an independent contractor.  As to the remaining allegations in Paragraph 6 of the Complaint, Defendant denies the same as phrased.

7.     Answering Paragraph 7 of the Complaint, Defendant admits the allegations contained therein.

8.     Answering Paragraph 8 of the Complaint, Defendant denies the allegations contained therein as phrased.

9.     Answering Paragraph 9 of the Complaint, Defendant denies the allegations therein concerning any written agreement between Plaintiff and Defendant. Concerning the terms of any compensation, Defendant denies such allegations to the extent that they are inconsistent with the terms of the December 1, 2018 letter addressed to Plaintiff.

10.     Answering Paragraph 10 of the Complaint, Defendant denies the allegations contained therein.

11. Answering Paragraph 11 of the Complaint, Defendant denies the allegations contained therein.

12. Answering Paragraph 12 of the Complaint, Defendant denies the allegations contained therein.

13. Answering Paragraph 13 of the Complaint, Defendant denies the existence of any agreement presented to Plaintiff on March 2, 2022 according to the terms described in Paragraph 11 of the Complaint. As to all other allegations contained in Paragraph 13 of the Complaint, Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

14. Answering Paragraph 14 of the Complaint, Defendant denies the allegations contained therein.

15. Answering Paragraph 15 of the Complaint, Defendant admits the allegations contained therein.

16. Answering Paragraph 16 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant denies the allegations contained therein.

17. Answering Paragraph 17 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant denies the allegations contained therein.

18. Answering Paragraph 18 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

19. Answering Paragraph 19 of the Counterclaim, Defendant denies the allegations contained therein.

20. Answering Paragraph 20 of the Complaint, Defendant denies the allegations contained therein.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

21.     Answering Paragraph 21 of the Complaint, Defendant denies the allegations contained therein.

22.     Answering Paragraph 22 of the Complaint, Defendant denies the allegations contained therein.

23.     Answering Paragraph 23 of the Complaint, Defendant denies the allegations contained therein.

24.     Answering Paragraph 24 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

25.     Answering Paragraph 25 of the Complaint, Defendant denies the allegations contained therein.

26.     Answering Paragraph 26 of the Complaint, Defendant denies the allegations contained therein.  To the extent that there exists a 2020 Compensation Agreement as defined in the Complaint, Plaintiff failed to abide by Defendant's rules and regulations in accordance with Defendant's employee handbook.

27.     Answering Paragraph 27 of the Complaint, Defendant denies the allegations contained therein.

28.     Answering Paragraph 28 of the Complaint, Defendant denies the allegations contained therein.

29.     Answering Paragraph 29 of the Complaint, Defendant denies the allegations contained therein.

30.     Answering Paragraph 30 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

31.     Answering Paragraph 31 of the Complaint, Defendant denies the allegations contained therein.

32. Answering Paragraph 32 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant denies the allegations contained therein.

33. Answering Paragraph 33 of the Complaint, Defendant denies the allegations contained therein.

34. Answering Paragraph 34 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant denies the allegations contained therein.

35. Answering Paragraph 35 of the Complaint, Defendant denies the allegations contained therein.

36. Answering Paragraph 36 of the Complaint, Defendant denies the allegations contained therein.

37. Answering Paragraph 37 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

38. Answering Paragraph 38 of the Complaint, Defendant denies the allegations contained therein.

39. Answering Paragraph 39 of the Complaint, Defendant denies the allegations contained therein.

40. Answering Paragraph 40 of the Complaint, Defendant denies the allegations contained therein.

41. Answering Paragraph 41 of the Complaint, Defendant denies the allegations contained therein.

42. Answering Paragraph 42 of the Complaint, Defendant denies the allegations contained therein.

43. Answering Paragraph 43 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.

415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101

(702) 388-7171 – fax (702) 387-1167

44. Answering Paragraph 44 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, they purportedly refer to a certain statute. To the extent the allegations in Paragraph 44 are inconsistent with such statute, Defendant denies the same.

45. Answering Paragraph 45 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, they purportedly refer to a certain statute. To the extent the allegations in Paragraph 45 are inconsistent with such statute, Defendant denies the same.

46. Answering Paragraph 46 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, they purportedly refer to a certain statute. To the extent the allegations in Paragraph 46 are inconsistent with such statute, Defendant denies the same.

47. Answering Paragraph 47 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, they purportedly refer to a certain statute. To the extent the allegations in Paragraph 47 are inconsistent with such statute, Defendant denies the same.

48. Answering Paragraph 48 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant denies the same concerning the time period that Plaintiff served as an independent contractor.

49. Answering Paragraph 49 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. Defendant denies the allegations contained therein.

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

50. Answering Paragraph 50 of the Complaint, Defendant denies the allegations contained therein.

51. Answering Paragraph 51 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

52. Answering Paragraph 52 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

53. Answering Paragraph 53 of the Complaint, Defendant denies the allegations contained therein.

54. Answering Paragraph 54 of the Complaint, Defendant denies the allegations contained therein.

55. Answering Paragraph 55 of the Complaint, Defendant denies the allegations contained therein.

56. Answering Paragraph 56 of the Complaint, Defendant denies the allegations contained therein.

57. Answering Paragraph 57 of the Complaint, Defendant denies the allegations contained therein.

58. Answering Paragraph 58 of the Complaint, Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations contained therein and, therefore, denies the same.

59. Answering Paragraph 59 of the Complaint, the allegations contained therein call for a legal conclusion to which no response is required. To the extent the allegations are construed as factual, the allegations contained therein purportedly refer to certain documents and records. To the extent the allegations in Paragraph 59 are inconsistent with such documents and records, Defendant denies the same.

60.    Answering Paragraph 60 of the Complaint, Defendant denies the allegations contained therein.

61.    Answering Paragraph 61 of the Complaint, Defendant denies the allegations contained therein.

62.    Answering Paragraph 62 of the Complaint, Defendant denies the allegations contained therein.

63.    Answering Paragraph 63 of the Complaint, Defendant realleges and incorporates by reference all the preceding Paragraphs of this Answer as though fully set forth in this Paragraph.

64.    Answering Paragraph 64 of the Complaint, Defendant denies the allegations contained therein.

**AFFIRMATIVE DEFENSES**

1.    The Complaint fail to state a claim upon which relief can be granted.

2.    Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, by the doctrine of equitable estoppel.

3.    Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, by the doctrine of waiver.

4.    Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, by the doctrine of laches.

5.    Franco's claims and/or entitlement(s) to relief, if any, is cut off by his failure to act in good faith.

6.    Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, due to Franco's "unclean hands."

7.    Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, due to Franco's failure to satisfy a condition precedent.

8.    Franco's claims and/or entitlement(s) to relief are barred as he has not suffered any damages.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

8

9.      Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, under the statute of limitations.

10.     Damages and/or injuries, if any, suffered by Franco are not attributable to any act, conduct, or omission on the part of Defendant.

11.     At all times material hereto, Defendant acted reasonably and in good faith.

12.     Franco's claims are barred in whole or in part by the doctrine of in pari delicto.

13.     Franco's claims are barred in whole or in part due to Franco's failure to perform and/or breach of contract.

14.     Franco's claims are barred in whole or in part under the doctrine of pre-emption.

15.     Franco's claims are barred in whole or in part as legal relief, if Franco is entitled to any, would be adequate and sufficient.

16.     Franco's claims and/or entitlement(s) to relief, if any, are barred or reduced under the doctrines of recoupment and/or setoff.

17.     Franco's claims and/or entitlement(s) to relief are barred, in whole or in part, due to Franco's misconduct, including fraud.

18.     Damages and/or injuries, if any, suffered by Franco are speculative in nature.

19.     Damages and/or injuries, if any, suffered by Franco are the result of the acts, conduct or omission of a third party, and not Defendant.

20.     Defendant denies each and every allegation of the Complaint not specifically admitted or otherwise pled to herein.

21.     Franco is barred from recovery, in whole or in part, by reason of his failure to mitigate his damages, if any.

22.     Franco is not entitled to punitive damages as Franco has not pled facts sufficient to support such an award.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

23.     Franco is not entitled to recover any punitive or exemplary damages as prayed for in the Complaint: any such award as applied to the facts in this case would violate Defendant's constitutional rights under provisions of the United States and Nevada State Constitutions, including, but not limited to, the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and the excessive fines and cruel and unusual punishment clauses of the Eighth Amendment to the United States Constitution.

24.     Franco is not entitled to recover any punitive or exemplary damages as Defendant acted in good faith at all times relevant herein.

25.     Franco is barred from recovery in whole or in part, in proportion to the fault attributed to Franco.

26.     Franco is barred from recovery, in whole or in part, by reason that any contract between Franco and Defendant is barred by the statute of frauds.

27.     Actions complained of by Franco were approved or ratified by Franco.

28.     Defendant is not a signatory to the contract at issue.

29.     Franco has failed to allege sufficient facts and cannot carry the burden of proof imposed on him by law to recover attorneys' fees incurred to bring his Complaint.

30.     Franco is not entitled to attorney's fees as special damages.

31.     It has been necessary for Defendant to employ the services of an attorney to defend the Complaint, and reasonable sums should be allowed as and for attorney's fees, together with the costs expended in this action.

32.     Defendant reserves its right to amend this Answer to Franco's Complaint and to assert additional defenses and/or supplement, alter or change the Answer upon completion of further discovery and investigation.

## COUNTERCLAIM

## NATURE OF THE COUNTERCLAIM

1.     On January 7, 2020, Franco improperly and without authorization disclosed to a former Cash Cloud employee, Luis Flores ("Flores"), Franco's login

credentials which would facilitate Flores's effort to access to Cash Cloud's confidential and trade secret material located on Cash Cloud's Google Drive.

2.     Franco concealed from Cash Cloud that on January 7, 2020, he provided Flores with his login credentials to the Cash Cloud Google Drive.

3.     As a result of Franco's concealment of this information, Franco was able to secure continued employment with Cash Cloud, reaping financial benefits of the same.

4.     Cash Cloud brings this counterclaim to seek relief from Franco's misconduct.

### PARTIES

5.     Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada.  At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada.

6.     Upon information and belief, Plaintiff Javier Franco is a resident of Clark County, Nevada.

### VENUE AND JURISDICTION

7.     The Court has personal jurisdiction over Franco since Cash Cloud's causes of action arise directly from Francos's conduct within/toward the State of Nevada.  *See* NRS 14.065.

8.     Venue is proper in the Eighth Judicial District Court.  *See* NRS 13.040.

### GENERAL ALLEGATIONS

9.     Franco was an employee of Cash Cloud.

10.     As part of his employment with Cash Cloud, Franco was obligated to comply with Cash Cloud's policies and procedures detailed in Cash Cloud's employee handbook.

11.     During his employment with Cash Cloud, on or about January 2, 2020, Franco executed a written acknowledgment of his commitment to comply with Cash Cloud's policies and procedures in its employee handbook.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

12.     Cash Cloud's employee handbook states in part, "employees may not disclose any confidential or nonpublic proprietary information about the Company to any unauthorized individual. If you receive a request for Confidential Information, you should immediately refer the request to your supervisor."

13.     On January 7, 2020, Flores communicated with Franco, requesting that he copy and send to Flores Cash Cloud's confidential and proprietary information, including information concerning the number of digital currency kiosks per capita in geographic areas across the United States (the "City Data Document").

14.     The City Data Document is the property of Cash Cloud and is a confidential document containing a compilation of Cash Cloud's trade secrets.  Cash Cloud has taken reasonable steps to protect this data from disclosure to the public and to former employees such as Flores.  The information contained therein is inherently valuable to Cash Cloud and its competitors because: (1) it shows the markets that could most benefit from additional digital currency kiosks; and (2) it is not publicly available and is not readily ascertainable by proper means or any other person who can obtain commercial or economic value from its disclosure or use.

15.     Like Cash Cloud's other confidential information and trade secrets, Cash Cloud took action to maintain the City Data Document as a trade secret.  The City Data Document's secrecy was guarded and may only be accessed by authorized personnel. The drive which stores this information (along with other of Cash Cloud's trade secrets) is password protected.

16.     Soon after Flores made the request to Franco on January 7, 2020, Franco sent his user ID and password to Flores which would allow Flores to login and access Cash Cloud's confidential information and trade secrets.

17.     Upon receiving Franco's login credentials, Flores attempted to log in to access Cash Cloud's information on Cash Cloud's Google Drive.

18.     Upon information and belief, shortly after Flores used Franco's login credentials, Flores reviewed the information contained on the City Data Document.

19.    Franco knew that his disclosure of his login credentials to Flores was wrong.

20.    Cash Cloud's employee handbook stated, "employees may not disclose any confidential or nonpublic proprietary information about the Company to any unauthorized individual. If you receive a request for Confidential Information, you should immediately refer the request to your supervisor."

21.    Franco was obligated to follow such requirements as a condition of his employment with Cash Cloud.

22.    Franco's login credentials to Cash Cloud's Google Drive constituted confidential information that was not available to the public.

23.    Franco concealed from Cash Cloud Flores's request to copy and send to him Cash Cloud's confidential and proprietary information, including, information concerning the number of digital currency kiosks per capita in geographic areas across the United States.

24.    Franco concealed from Cash Cloud that on January 7, 2020, he provided Flores with his login credentials to the Cash Cloud Google Drive.

25.    Had Cash Cloud been aware of Franco's wrongful concealment of the foregoing information or had it been aware of Franco's transmission of his login credentials to Flores, Cash Cloud would have immediately terminated Franco's employment with Cash Cloud, with no opportunity for rehire.

26.    On or about February 5, 2020, Franco's employment with Cash Cloud terminated.

27.    On or about March 2, 2020, Franco was rehired and his employment with Cash Cloud recommenced.

28.    Franco claims that his employment with Cash Cloud after March 2, 2020 is governed by a written agreement. Any such agreement was procured by Franco's fraudulent concealment of information relevant to the affairs entrusted to Franco and thus should be rescinded.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

29.    Subsequent to March 2, 2020, without authorization, Franco disclosed to at least one individual outside of Cash Cloud confidential and/or nonpublic proprietary information concerning Cash Cloud.  Such information concerned the location of Franco's efforts to secure host contracts, Cash Cloud's instructions concerning Franco's employment, and representations related to Cash Cloud's then financial condition.

30.    The disclosure of this information constituted a material breach of Franco's conditions of employment.

31.    Franco's misconduct as described herein was committed in bad faith.

32.    Franco's misconduct was discovered in or around August 2020 during the discovery period of an action captioned, *Cash Cloud Inc. v. Flores*, Case No. A-19-807370-B, pending in the Eighth Judicial District Court, Clark County, Nevada.

33.    In response to this discovery, Cash Cloud requested and received a temporary restraining order and a preliminary injunction.  The temporary restraining order specifically restrained Franco (and Flores, among others) from: (1) accessing or attempting to access any of Cash Cloud's servers, e-mail systems, company intranet, or any Cash Cloud computer, Cash Cloud computer system, or Cash Cloud network; and (2) using and/or disseminating the City Data Document.

34.    As a direct and proximate result of Franco's misconduct, Cash Cloud has suffered substantial harm, including, but not limited to, money damages.  Notwithstanding its entitlement to money damages, Cash Cloud is also entitled to equitable relief, including, but not limited to, rescission of any and all agreements between Cash Cloud and Franco entered into after January 7, 2020 as any such agreements were procured by fraud and equity should not allow Franco to profit from his deceit.

### FIRST CAUSE OF ACTION
**Fraud/Fraudulent Concealment**

35.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

36.     Franco had a duty to: (1) report to Cash Cloud Flores's January 7, 2020 request for Cash Cloud's confidential and trade secret information; and (2) report to Cash Cloud Franco's actions on January 7, 2020, including that he provided Flores his login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive.

37.     Franco failed to properly discharge this duty.

38.     From January 7, 2020 , Franco failed to truthfully and accurately disclose his knowledge of: (1) Flores's request for Cash Cloud's confidential and trade secret information; and (2) Franco's actions on January 7, 2020, including that he provided Flores his login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive.

39.     If Cash Cloud had been informed of the foregoing, it would have acted differently, including, by way of example only, immediately terminating Franco and providing him no opportunity for rehire.

40.     As a direct and proximate result of Franco's misconduct, Cash Cloud has been damaged in a sum in excess of Fifteen Thousand Dollars ($15,000.00).   Such damages include, but are not limited to, special damages resulting from Cash Cloud's need to incur attorney's fees to seek injunctive relief as a result of Franco's bad faith conduct.

41.     Franco's actions were oppressive, fraudulent, and/or malicious and thus Counterclaimants are entitled to punitive damages.

**SECOND CAUSE OF ACTION**
**Breach of Fiduciary Duty**

42.     Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

43.     As an employee of Cash Cloud, Franco had a fiduciary duty to Cash Cloud.

44.     Franco had a duty to: (1) report to Cash Cloud Flores's January 7, 2020 request for Cash Cloud's confidential and trade secret information; (2) refrain from

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

providing Flores Franco's login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive; and (3) report to Cash Cloud Franco's actions on January 7, 2020, including that he provided Flores his login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive.

45.    Franco breached his fiduciary duty to Cash Cloud.

46.    Franco failed to disclose to Cash Cloud Flores's request for Cash Cloud's confidential and trade secret information.  Franco provided Flores his login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive.  Franco failed to disclose to Cash Cloud that he had provided Flores his login credentials which would provide Flores access to confidential and trade secret information on Cash Cloud's Google Drive.

47.    As a direct and proximate result of Franco's misconduct, Cash Cloud has been damaged in a sum in excess of Fifteen Thousand Dollars ($15,000.00).   Such damages include, but are not limited to, special damages resulting from Cash Cloud's need to incur attorney's fees to seek injunctive relief as a result of Franco's bad faith conduct.

48.    Franco's actions were oppressive, fraudulent, and/or malicious and thus Counterclaimants are entitled to punitive damages.

### THIRD CAUSE OF ACTION
**Unlawful Access of Computer Information Pursuant to NRS 205.4765 *et seq.***

49.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

50.    As detailed herein, in acting on January 7, 2020, including, but not limited to, disclosing his login credentials to Flores, Franco knowingly, willfully, and without authorization disclosed, used, transferred, copied, and/or permitted access to or caused to be accessed, data which existed inside or outside a computer, system or network.

51.    As detailed herein, in acting on January 7, 2020, including, but not limited

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

to, disclosing his login credentials to Flores, Franco knowingly, willfully, and without authorization permitted access to or caused to be accessed a computer, system or network.

52.     As a direct and proximate result of Franco's misconduct, Cash Cloud has been damaged in a sum in excess of Fifteen Thousand Dollars ($15,000.00).  Such damages include, but are not limited to, special damages resulting from Cash Cloud's need to incur attorney's fees to seek injunctive relief as a result of Franco's bad faith conduct.

53.     Franco's actions were oppressive, fraudulent, and/or malicious and thus Counterclaimants are entitled to punitive damages.

### FOURTH CAUSE OF ACTION
### Conspiracy to Misappropriate Trade Secrets

54.     Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

55.     Franco and Flores worked in concert and conspired with one another to misappropriate Cash Cloud's trade secret information.

56.     Cash Cloud's trade secrets include, but are not limited to, the confidential compilation information of data contained within the City Data Document.  The compilation data within the City Data Document is confidential and Cash Cloud derives independent economic value from the City Data Document being not generally known to, and not being readily ascertainable by proper means by the public or any other person who can obtain commercial or economic value from their disclosure or use.

57.     Cash Cloud took adequate and reasonable steps to maintain the City Data Document and its other confidential information as trade secrets, which secrecy was guarded and not readily available to others.

58.     Flores willfully and maliciously misappropriated at least the City Data Document from Cash Cloud through improper means by, *inter alia*, inducing Franco, a former subordinate and co-worker at Cash Cloud, to wrongfully breach that individual's

17

duty to maintain the secrecy of the contents of the City Data Document and share with Flores the contents of the City Data Document, including by way of inducing Franco to wrongfully provide Flores his login credentials.

59.    In engaging in the foregoing misconduct, Franco and Flores acted with the intent to injure Cash Cloud, or with reason to believe that their actions would injure Cash Cloud, an owner of a trade secret.

60.    Flores used and/or disseminated Cash Cloud's trade secrets.

61.    As a direct and proximate result of Franco's misconduct, Cash Cloud has been damaged in a sum in excess of Fifteen Thousand Dollars ($15,000.00).  Such damages include, but are not limited to, special damages resulting from Cash Cloud's need to incur attorney's fees to seek injunctive relief as a result of Franco's bad faith conduct.

62.    Franco's actions were oppressive, fraudulent, and/or malicious and thus Counterclaimants are entitled to punitive damages.

/ / /

/ / /

/ / /

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

WHEREFORE, Cash Cloud prays for judgment against Flores as follows:

1.      For general and special damages in excess of $15,000.00;

2.      For rescission of any agreement between Franco and Cash Cloud Inc. on or after January 7, 2020;

3.      For interest at the maximum amount available under Nevada law;

4.      For reasonable attorney's fees and costs; and

5.      For any other relief this Court finds just and proper.

DATED this 25th day of April, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Defendant/Counterclaimant*
*Cash Cloud Inc.*

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of THE JIMMERSON LAW FIRM, P.C., and that on this 25th day of April, 2022, I caused a document entitled **ANSWER AND COUNTERCLAIM** to be served as follows:

[ **X** ]    pursuant to EDCR 8.05(a), EDCR 8.05(f), NRCP 5(b)(2)(D) and Administrative Order 14-2 captioned In the Administrative Matter of Mandatory Electronic Service in the Eighth Judicial District Court, by mandatory electronic service through the Eighth Judicial District Court's electronic filing system;

[ ]    by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada;

[ ]    pursuant to EDCR 7.26, to be sent via **facsimile,** by duly executed consent for service by electronic means.

[ ]    Hand Delivery

To the person(s) listed below at the address, email address, and/or facsimile number indicated below:

Bryan Naddafi, Esq.
AVALON LEGAL GROUP LLC
6030 S. Rainbow Blvd., Suite 1D1
Las Vegas, Nevada 891118
*Counsel for Javier Franco*


                              */s/ James Jimmerson*
                              An employee of THE JIMMERSON LAW FIRM, P.C.

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

20

# EXHIBIT 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

## ATTORNEY'S RETAINER AGREEMENT

THIS ATTORNEY'S RETAINER AGREEMENT (the "Agreement") made this ___ day of <u>1/31/2023</u>, 2023, at Las Vegas, Nevada, by and between the undersigned, CASH CLOUD, INC., hereinafter designated as "CLIENT" and THE JIMMERSON LAW FIRM, P.C., hereinafter designated as "ATTORNEY."

1.  CLIENT has retained ATTORNEY and seeks to continue to retain ATTORNEY to represent CLIENT in various matters concerning CLIENT, including, but not limited to, a litigation matter against Javier Franco, Case No. A-21-844753-C, pending in the Eighth Judicial District Court in Clark County, Nevada. CLIENT empowers ATTORNEY to take all steps deemed by ATTORNEY to be advisable, including to effect a compromise, to institute legal proceedings, and to take all other appropriate steps as authorized by CLIENT. CLIENT and ATTORNEY acknowledge and agree that ATTORNEY has represented affiliates of the CLIENT in the past and that all such representation of affiliates has concluded. Should an affiliate of CLIENT seek to retain ATTORNEY in the future, such representation will only commence under a separate written agreement, which would include, inter alia, a provision that would allow ATTORNEY to withdraw from representation of the affiliate and continue the representation of the CLIENT in the event of any conflict from both representations.

2.  CLIENT agrees to pay ATTORNEY an amount of money for its attorney's fees totaling the aggregate amount of several categories of specific fees, and possible fees, for ATTORNEY, detailed as follows:

a.  CLIENT shall pay all monthly bills within twenty (20) days of the billing statement. However, while CLIENT is in bankruptcy, CLIENT shall pay a maximum of $25,000.00 / week, to be applied to the CLIENT's current monthly bills and CLIENT's past-due bills;

Hourly rates for services rendered on your behalf by the attorneys in the office are as follows:

| | |
|---|---|
| JAMES J. JIMMERSON, ESQ. | $595 .00/HOUR |
| JAMES M. JIMMERSON, ESQ. | $350.00/HOUR |

Other associates shall be billed out at $175.00 per hour.

An hourly rate of $175.00 per hour for work done on Client's behalf by Law Clerk Andrew Pastor.

Other Law Clerks and Paralegals shall be billed out at $125.00 per hour.

An hourly rate of $75.00 - $125.00 per hour for work done on your behalf, including but not limited to, assembly of binders and exhibits for hearings and/or trial, by documentation specialists and/or secretarial staff.

CLIENT agrees that these fees are reasonable on the basis of ATTORNEY's (and staffs) ability, training, education, experience,

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

professional standing and skill, and the difficulty, intricacy, importance and time and skill required to perform the work to be done.

CLIENT shall advance and pay to ATTORNEY all costs, including but not limited to court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance phone calls, filing fees, mailing costs, parking fees and other disbursements made in connection with this matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. When an item of costs is known to exceed $250.00, CLIENT shall provide prior written approval for the same before such cost is incurred. Billing statements shall be sent out to CLIENT monthly.    To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement.  If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1-1/2%) per month.    All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection.

3.    Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1.5%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection. In the event ATTORNEY receives payment in full within ten (10) days of the date of the statement, CLIENT shall be entitled to a 10% discount of that month's attorney's fees, which will be held in the CLIENT'S trust account.[1]

4.    CLIENT has indicated that it may file for Chapter 11 bankruptcy.  In such case, ATTORNEY'S continued representation is contingent upon CLIENT filing a motion for access to, and approval of, Debtor in Possession ("DIP") Financing.    CLIENT acknowledges and agrees that ATTORNEY shall, due to CLIENT's sizable past-due billings as of the date of this Agreement and the risk that of ATTORNEY not being paid, withdraw from representing CLIENT should the bankruptcy court not grant CLIENT's DIP Motion, authorizing payment of ATTORNEY's billings, in accordance with this Agreement, as administrative fees of CLIENT.

---

[1] For example, if CLIENT'S billing statement contains $5,000.00 in attorney's fees and ATTORNEY receives payment in full for fees and costs reflected in that billing statement within ten (10) days of the date of the statement, ATTORNEY shall discount the attorney's fees owed by $500.00 (or 10% of the attorney's fees incurred), and retain the $500.00 in trust for the CLIENT, which may be, amongst other things, applied toward CLIENT'S next bill.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

5.      On or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), we may file an application (a "Monthly Fee Application") with the Bankruptcy Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: CLIENT, the United States Trustee, and parties requesting special notice (the "Notice Parties"). If we fail to file a Monthly Fee Application for a particular month or months, we may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, we shall file a certificate of no objection with the Court, after which CLIENT shall be authorized to pay us an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, CLIENT shall be authorized to pay us 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

If any Notice Party objects to our Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Bankruptcy Court and serve such Objection on us and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting patty and we may attempt to resolve the Objection on a consensual basis. If the patties are unable to reach a resolution of the Objection, we may either (i) file a request with the Bankruptcy Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Bankruptcy Court will consider and dispose of the objection if requested by the parties.

Beginning with the approximately 120-day period commencing on the date of this letter, and at each 120-day period thereafter (the "Interim Fee Period"), we shall file with the Bankruptcy Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by us in our Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Patties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Firm and the Notice Parties so as to be received on or before

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

CLIENT will request that the Bankruptcy Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Bankruptcy Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Bankruptcy Court may grant an Interim Fee Application without a hearing.

At the conclusion of our representation, we will file a final fee application (the "Final Fee Application) with the Bankruptcy Court, seeking final approval of all fees and expenses incurred during our representation.

6. **IN THE EVENT OF A LOSS, THE CLIENT MAY BE LIABLE FOR THE OPPOSING PARTY'S ATTORNEY'S FEES, AND WILL BE LIABLE FOR THE OPPOSING PARTY'S COSTS AS REQUIRED BY LAW. A suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

7. _____ (Initial) CLIENT hereby grants ATTORNEY (1) a charging lien on any and all claims or causes of action that are related to the subject of ATTORNEY'S representation under this Agreement and (2) a retaining lien on any file or other property left in the possession of the ATTORNEY by CLIENT. ATTORNEY'S lien will be used for any sums owing to ATTORNEY at the conclusion of ATTORNEY'S services, whether or not the case has been concluded. The charging lien will attach to any recovery CLIENT may obtain, whether by arbitration award, judgment, settlement or otherwise. In enforcing ATTORNEY'S lien, any amounts received by ATTORNEY'S office on CLIENT'S behalf may be used to pay any outstanding sums owed to ATTORNEY. In accordance with the Uniform Commercial Code, no payments made to ATTORNEY for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless ATTORNEY and CLIENT both sign a separate written agreement specifically permitting such payment to constitute a payment in full of CLIENT'S account. The CLIENT agrees that ATTORNEY shall be permitted to seek to enforce its liens and obtain a money judgment for unpaid attorney's fees and costs by motion practice under this Agreement, and irrevocably grants jurisdiction for the adjudication of said lien to the Court before which ATTORNEY is representing CLIENT. As such, CLIENT expressly waives any requirement or reliance on legal authority that would otherwise require ATTORNEY to bring an independent lawsuit to collect its fees and costs. In short, the CLIENT expressly agrees and consents to an attorneys' lien and that ATTORNEY shall be permitted to collect its unpaid attorney's fees and costs and enforce its lien by motion practice, and irrevocably grants jurisdiction to the Court before which ATTORNEY is representing CLIENT to adjudicate an attorney's lien. CLIENT agrees that they have had the opportunity to review the holdings of <u>Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish.</u> 125 Nev. 527, 216 P.3d 779 (2009); <u>Fredianelli v. Fine Carman Price</u>, 402 P.3d 1254, 133 Nev. Adv. Op. 74 (2017); and <u>Grisham v. Grisham and Webster</u>, 128 Nev. 679, 289 P.3d 230 (2012), and agree that this Retainer Agreement provides express consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien and that the same, by CLIENT's express

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

consent, may be adjudicated to judgment by motion practice. <u>See</u> NRS 18.015 (as amended by SB 140, 2013) <u>see, also</u> <u>Petersen v. Jimmerson Hansen, P.C.</u>, Case No. 68888, 2016 WL 757110 (Nev. App. Ct. 2016). Any such judgment shall be final and shall be collectible by any lawful means.

8.    ATTORNEY shall have the right to assign office personnel, including associate attorneys, amazing and frankly over-talented law clerks, and paralegals, to the case in ATTORNEY's sole discretion. CLIENT shall so designate in writing if CLIENT desires to have certain attorneys or personnel handle the case exclusively or if CLIENT desires to have certain ATTORNEYS or personnel excluded from handling the case.

9.    CLIENT acknowledges that ATTORNEY has made no guarantee regarding the successful termination of said cause of action, and all expressions relative thereto are matters of ATTORNEY's opinion only. Based upon meetings between CLIENT and ATTORNEY, CLIENT acknowledges that this case will be a difficult one. If the case is not successful, CLIENT will owe ATTORNEY the advanced costs. ATTORNEY shall not settle or compromise this matter without the approval of CLIENT.

10.    CLIENT agrees to do all that is necessary to provide ATTORNEY with information requested by ATTORNEY concerning the case.

11.    Any fees billed on an hourly basis shall include, but shall not be limited to, time spent on the telephone, in negotiations, drafting, dictating, conducting legal research, conferences with other attorneys, experts, consultants or witnesses, traveling, conducting discovery, time spent in court (including waiting time), time in depositions, and all other efforts on CLIENT's behalf in this matter.

12.    This is the entire Agreement between the parties and any modifications or additions to this Agreement must be made in writing and signed by both parties.

13.    The efforts by ATTORNEY on CLIENT'S behalf shall be performed in Nevada and elsewhere as needed. This Agreement shall be governed by the laws of the State of Nevada and all legal action arising out of this Agreement shall be conducted in Nevada. If any legal action is brought as a result of this Agreement, the prevailing party shall be entitled to costs incurred plus a reasonable attorney's fee.

14.    ATTORNEY, at ATTORNEY'S sole discretion, may withdraw from the representation of CLIENT at any time, but that withdrawal shall not affect ATTORNEY'S right to be compensated for fees and costs already incurred. We may withdraw if you do not make the payments required by this Agreement, if you have misrepresented or failed to disclose material facts to us or if a breakdown in communication occurs. Upon our withdrawal, we will be entitled to an attorneys' lien for earned and unpaid fees and costs. Additionally, we shall have a lien on all of your documents, property and money in our possession for the payment of all sums due to us from you under the terms of this Agreement.

15.    CLIENT understands and agrees that should a Court award attorneys' fees to CLIENT (or to ATTORNEY on CLIENT's behalf), such sums shall be applied against any outstanding charges on CLIENT's bill only after such sums are actually collected. However, CLIENT understands and agrees that collection of any awarded fees is not the responsibility of ATTORNEY and that pursuant to this Retainer Agreement, CLIENT

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

remains solely responsible for the payment of the legal fees, expenses and costs incurred in CLIENT's case. A Court Order awarding attorneys' fees from the opposing party does **not** relieve CLIENT of the primary responsibility for paying ATTORNEY's bill. CLIENT acknowledges that the Court could likewise Order CLIENT to pay attorney's fees or costs to the opposing party, and such Order does not relieve CLIENT of the obligation to pay CLIENT's own attorney's fees and costs to ATTORNEY.

16.     Because of the numerous e-mails or electronic communications received by ATTORNEY on a daily basis, client is placed on notice, that client may not assume that ATTORNEY has an e-mail transmission from client to ATTORNEY at any given time. As such, client agrees and is oblige to affirmatively contact the ATTORNEY or a staff representative of the ATTORNEY personally to ensure that communication of needed information is transmitted to ATTORNEY. The email addresses that must be used are:

jmj@jimmersonlawfirm.com            and aap@jimmersonlawfirm.com

17.     **CLIENT acknowledges that he has had ample opportunity to seek his own counsel regarding this Attorney Retainer Agreement before signing this Agreement, and CLIENT has acted independently from ATTORNEY in deciding to voluntarily and knowingly sign this Agreement.**

18.     Should any term, provision clause, subparagraph or paragraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

Agreed to and executed by:

THE JIMMERSON LAW FIRM, P.C.

JAMES M. JIMMERSON, ESQ.,
**ATTORNEY**

CASH CLOUD INC.

1/31/2023

Chris McAlary, CEO
**CLIENT**                           **Date**

CORRECT CLIENT ADDRESS FOR ALL BILLING STATEMENTS:


EMPLOYER IDENTIFICATION NUMBER:

46-5527468

# EXHIBIT 9

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

Electronically Filed
8/5/2021 10:56 AM
Steven D. Grierson
CLERK OF THE COURT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMP**
THE JIMMERSON LAW FIRM, P.C.
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89101
Telephone:    702-388-7171
Facsimile:    702-367-1167

*Attorneys for Plaintiff Cash Cloud Inc.*

CASE NO: A-21-839023-B
Department 16

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC. dba COIN CLOUD, a Nevada Corporation, | Case No.: |
| Plaintiff, | Dept. No.: |
| vs. | **COMPLAINT** |
| AMONDO REDMOND, | **BUSINESS COURT REQUESTED – Business Torts** |
| Defendant. | **Exempt from Arbitration – Declaratory Relief Requested** |

COMES NOW Plaintiff, Cash Cloud Inc. dba Coin Cloud, a Nevada corporation ("Plaintiff" or "Cash Cloud"), by and through its counsel of record, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C., and hereby submits its Complaint, alleging as follows:

### NATURE OF COMPLAINT

1.      Plaintiff Cash Cloud brings this action against Defendant Amondo Redmond ("Redmond" or "Defendant"), Cash Cloud's former chief marketing officer. Defendant recently negotiated several potential agreements that, after execution, would be expected to result in millions of dollars in additional revenue to Cash Cloud.  Within hours after the end of his employment with Cash Cloud, Defendant contacted representatives of the counterparties to these potential agreements and intentionally

1

and maliciously scuttled the potential agreements, going so far as to cancel previously scheduled events in connection with the most lucrative of these potential agreements.

2. Cash Cloud brings this action against Defendant for his tortious interference with Cash Cloud's prospective business relationships, for his breach of the terms of his employment agreement with Cash Cloud, and for his unjust enrichment by charging his personal expenses on Cash Cloud's credit card. Cash Cloud also seeks declaratory judgment from this Court that Defendant has no valid claims against Cash Cloud for, *inter alia*, intentional and/or negligent misrepresentation.

3. Defendant read, acknowledged and agreed to abide by the policies enunciated in Cash Cloud's Employee Handbook. The handbook requires that Defendant maintain the secrecy and confidentiality of Cash Cloud's proprietary and/or confidential information and that he refrain from using the same after his employment with Cash Cloud had ceased.

4. Cash Cloud recently terminated Defendant's employment with Cash Cloud. In the days prior to the date that Defendant's employment with Cash Cloud was terminated, Defendant refused to address certain challenges within his department that Cash Cloud was experiencing and brazenly asserted that he (rather than the founder, President, and Chief Executive Officer of Cash Cloud) was the public face of the company.

5. Despite Defendant's acknowledgement and agreement to maintain the secrecy and confidentiality of Cash Cloud's confidential information, Defendant breached this agreement within hours of his termination by using Cash Cloud's confidential information to tortiously interfere with Cash Cloud's business relations with third parties.

6. Finally, Defendant, while he was employed by Cash Cloud, improperly charged his personal expenses on Cash Cloud's American Express credit card and has failed to reimburse Cash Cloud for such personal expenses.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**PARTIES**

7.     Plaintiff Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada.  At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada.

8.     Upon information and belief, Defendant Amondo Redmond is a resident of Los Angeles County, California.

**VENUE AND JURISDICTION**

9.     The Court has personal jurisdiction over Defendant since Plaintiff's cause of action arise directly from Defendant's conduct within/toward the State of Nevada.  *See* NRS 14.065.

10.     Venue is proper in the Eighth Judicial District Court.  *See* NRS 13.040.

**GENERAL ALLEGATIONS**

11.     Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency trading industry.  Using specialized kiosks, Cash Cloud provides its customers with the ability to buy and sell digital currency conveniently and efficiently.

12.     Cash Cloud does business under the trade name "Coin Cloud."

13.     In March 2021, Cash Cloud offered the Defendant employment as Cash Cloud's Chief Marketing Officer.  Cash Cloud's offer letter stated that it was "an 'At-Will' employer."  The offer letter is incorporated by reference as if its contents were fully stated herein.

14.     The Defendant accepted Cash Cloud's offer, and at that time signed an "Offer Letter Acknowledgement" stating that he had read and understood the contents of his offer letter."

15.     A true and accurate copy of the Offer Letter Acknowledgement executed by Defendant is attached hereto as Exhibit 1.

16. Despite living in Los Angeles at the time of the offer, the offer letter specifically stated, "this position is located in Las Vegas and you will be required to be in the office full-time with exception to agreed upon remote work."

17. Defendant performed his work for Cash Cloud in Nevada and elsewhere.

18. As part of the commencement of Defendant's work with Cash Cloud, Defendant received a copy of Cash Cloud's Employee Handbook, which contained the rules, policies and practices that the Defendant agreed to abide by and uphold. Cash Cloud's Employee Handbook is incorporated by reference as if its contents were fully stated herein.

19. Defendant executed various acknowledgments of the handbook and specific policies contained therein, including specifically stating, "I have read and understood the contents of this handbook and will act in accord with these policies and procedures as a condition of my employment with Coin Cloud."

20. A true and accurate copy of handbook acknowledgments executed by Defendant is attached hereto as Exhibit 2.

21. One policy that Defendant agreed to abide by concerned the proper security of Cash Cloud's confidential information. The handbook provides as follows:

> All employees, both during their employment with Coin Cloud and after leaving Coin Cloud must keep in confidence all proprietary or confidential Coin Cloud information and trade secrets, and not disclose, use or induce or assist in the use or disclosure of any proprietary and confidential information or trade secrets without Coin Cloud's express written consent.
>
> ***
>
> [E]mployees shall not use or disclose any such proprietary or confidential information that they produce or obtain during employment with Coin Cloud, except to the extent such use or disclosure is required by their jobs at Coin Cloud or as permitted by law. This obligation remains even after an employee's employment relationship with Coin Cloud ends. Disclosure of proprietary or confidential information as defined above without Coin Cloud's express written consent may result in disciplinary action, up to and including

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

4

termination, and also may result in legal action where appropriate.

22.    The Defendant agreed to keep such confidential information secret during and after his employment with Cash Cloud. Defendant also agreed to refrain from using Cash Cloud's confidential information after his employment with Cash Cloud ended.

23.    Another policy that Defendant agreed to abide by concerned Cash Cloud's reimbursement of necessary and reasonable expenditures and reasonable costs incurred by the Defendant in the course of doing his job. Specifically, Defendant agreed that [e]xpenses incurred by a [Cash Cloud] employee must be pre-approved in advance by management."

24.    The Defendant was given a Cash Cloud corporate credit card to use for necessary and reasonable expenses only.

25.    In the Spring and Summer of 2021, Cash Cloud negotiated proposed contracts in order to secure the promotion of Cash Cloud's services and products by several prominent athletes (the "Proposed Endorsement Contracts"). These athletes include, but are not limited to, Karl-Anthony Towns, Dwyane Wade, Paul George, Josh Hart, A'Ja Wilson, Jalen Green, and a yet-unnamed WNBA athlete (each an "Athlete," and, collectively, the "Athletes").

26.    Each Athlete is a superstar and thus the promotion of Cash Cloud's services by any Athlete would be a unique service provided by that particular Athlete.

27.    The counterparties for the Proposed Endorsement Contracts included, but were not limited to, Big Kat's Enterprise, Inc. f/s/o Karl-Anthony Towns, Wade Enterprises, Inc. f/s/o Dwyane Wade, Packgang, LLC f/s/o Paul George, and Hart Enterprises, LLC f/s/o Josh Hart.

28.    The Athletes were represented by their respective agents (hereinafter, the "Agency").

29.    As part of his work with Cash Cloud, the Defendant participated significantly in the negotiation of the terms of these Proposed Endorsement Contracts.

THE JIMMERSON LAW FIRM, P.C.

415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101

(702) 388-7171 – fax (702) 387-1167

5

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Defendant's work concerning the Athletes and/or the Proposed Endorsement Contracts was performed in Nevada and elsewhere.

30.     Each of the Proposed Endorsement Contracts, if executed, would have required the expenditure of substantial sums (hundreds of thousands, and in some cases, millions of dollars) by Cash Cloud.

31.     While the cost of each Proposed Endorsement Contract would be significant, the expected return on each investment would materially exceed its cost.

32.     While he was employed at Cash Cloud, Defendant believed that entering into the Proposed Endorsement Contracts would benefit Cash Cloud.

33.     While he was employed at Cash Cloud, Defendant believed that the expense of each Proposed Endorsement Contract would be outweighed by the benefits gained by Cash Cloud by entering into any such Proposed Endorsement Contract.

34.     On August 2, 2021, multiple Proposed Endorsement Contracts in final draft form were sent to multiple Cash Cloud employees, including, but not limited to, Cash Cloud's COO/CFO Jeffrey L. Garon and Defendant.

35.     The terms of the Proposed Endorsement Contracts were to be treated as confidential – a fact of which the Defendant was well aware.

36.     Multiple Proposed Endorsement Contracts presented to Cash Cloud in final draft form included the following language, "Company [Cash Cloud] and Lender, shall hold all confidential information received pursuant to this Agreement, including the terms and conditions of this Agreement, confidential…"

37.     Multiple Proposed Endorsement Contracts in final draft form required a representation that the execution, delivery, and performance of the agreement has been authorized and approved by Cash Cloud's Board of Directors and contained the following language:

> Authorization.  The execution, delivery and performance of this Agreement by Company and by Lender has been duly authorized and approved by the Board of Directors of Company and by Lender and constitutes a valid and binding

6

obligation of Company and of Lender enforceable in accordance with its terms.

38. Under the terms of various Proposed Endorsement Contracts in final draft form, no agreement would be reached until the contract was fully signed and delivered, specifically stating as follows:

> Execution and Delivery. This instrument will not be considered to be an agreement or contract, nor will it create any obligation on Company's part or Lender's part, unless and until it has been signed by Lender and Company's authorized representatives, and delivery has been made of a fully signed original or facsimile copy.

39. As of August 4, 2021, the Proposed Endorsement Contracts had not been fully signed.

40. Defendant was never a director of Cash Cloud.

41. Notwithstanding the lack of an executed agreement, there were expectations that one or more of the Proposed Endorsement Contracts would be executed in short order and talent shoots were scheduled with Athletes.

42. Shortly after Cash Cloud's hiring of Defendant, Cash Cloud had allocated to the marketing department a mid-seven figure content creation and media budget.

43. In the weeks and months after such allocation, at Defendant's urging, Cash Cloud progressively adjusted its content creation and media budget, increasing it substantially.

44. Prior to August 2, 2021, Cash Cloud had allocated to the marketing department an eight-figure content creation and media budget to be used to secure, *inter alia*, promotional services by outside individuals and vendors such as the Athletes.

45. During the second half of July, 2021, challenges relating to customer retention/customer loyalty, search engine marketing (SEM), search engine optimization (SEO), and customer conversion became particularly pronounced, requiring immediate attention.

46. In response to these challenges, Cash Cloud's CEO Christopher McAlary asked Defendant to put together a proposal to redirect some of the funds allocated for

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

content creation and media to address the above-mentioned challenges and provide a more balanced marketing budget. Defendant refused to do so.

47.    On August 2, 2021 2021, Mr. McAlary, Cash Cloud's CFO/COO Jeffrey L. Garon, Cash Cloud marketing executive AJ Lewis, and Cash Cloud's Chief Revenue Officer (CRO) Michael Tomlinson spoke with the Defendant for over five and a half hours over video conference (Zoom) between Cash Cloud in Nevada and Defendant (presumably in California) concerning several matters, including, but not limited to, the above-mentioned challenges.

48.    During these communications on August 2, 2021, Defendant did not appear to be willing to address these performance issues within the marketing department. Indeed, he refused to take steps to resolve them (such as putting together a proposal for reallocating funds earmarked for the marketing department).

49.    Instead of working with Cash Cloud in its efforts to respond to the above-mentioned challenges, Defendant insisted that Cash Cloud could not redirect funds from the content creation and media budget to bolster efforts at customer retention and SEO. Defendant even threatened to go to the Agency and/or representatives of Cash Cloud's potential counterparties in the Proposed Endorsement Contracts and kill the deals. In response to this threat, Mr. Garon and Mr. McAlary directly instructed Defendant not to take such action and advised Defendant that he had no authority to do so.

50.    Without any assistance from Defendant in putting together a proposal to best deploy the marketing department's resources, as a cash-management measure, Cash Cloud decided to restructure the content creation and media budget and divert certain funds to resolving customer retention and SEO challenges as the anticipated cost for such solutions is substantial.

51.    Even with the budget restructuring, Cash Cloud's content creation and media budget was still robust. Indeed, after the restructuring, the marketing department still had an eight-figure content creation and media budget to be used to secure, *inter alia*, promotional services by outside individuals and vendors such as the

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Athletes. Millions of dollars were available to be used to satisfy obligations under Proposed Endorsement Contracts, were any to be executed, including, but not limited to, the most expensive of the Proposed Endorsement Contracts.

52. The following morning, on August 3, 2021, Cash Cloud alerted Defendant that the content creation and media budget was being restructured. Thereafter, Defendant informed Cash Cloud that he was considering an "exit" – meaning resignation – from Cash Cloud. Speaking to Bobbi Wilson, Cash Cloud's Chief People Officer (human resources chief), Defendant inquired as to what an "exit" would look like. Ms. Wilson responded by asking what had happened to cause him to make this inquiry to which Defendant answered that the budget cut would ruin him professionally because he had already made verbal promises earmarking the money to be spent.

53. Defendant apparently made these verbal promises despite the requirement in the Proposed Endorsement Contracts that an agreement could only be reached as a result of Cash Cloud Board approval and upon a written signature from all parties.

54. Defendant told Ms. Wilson that he had reached out to one of Cash Cloud's vendors (a vendor retained to assist with the Proposed Endorsement Contracts) and was waiting on a call back from the vendor before making a decision on resignation.

55. At no time did Defendant tell Cash Cloud's human resources department that he was leaving due to any misrepresentation of Cash Cloud's, or any violation of public policy by Cash Cloud.

56. During an 11:17 a.m. call on August 3, 2021, Defendant stated he was cancelling all marketing staff and agency meetings for the day.

57. During a call with Mr. McAlary, Mr. Garon and Ms. Wilson at approximately 4:00 p.m. on August 3, 2021, Defendant walked back any decision to resign. When Mr. McAlary explained that he thought Defendant had expressed the decision to resign on a call earlier in the day, Defendant clarified that he had not.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

9

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

58.  During this call Mr. McAlary expressed concern over Defendant's communication with the vendor.  Defendant was asked to stop communicating with the vendor because Defendant had been asking the vendor to address Defendant's private concerns, separate and apart from the interests of Cash Cloud.  It was reiterated to Defendant that Cash Cloud was the vendor's client and that the Defendant was not the vendor's client.  The Defendant responded by telling the founder, president, and Chief Executive Officer of Cash Cloud that the Defendant was "the public face of Cash Cloud." Cash Cloud then terminated the Defendant's employment with Cash Cloud.

59.  Cash Cloud's termination of the Defendant was not wrongful or in violation of any public policy.

60.  Cash Cloud never intentionally or negligently misled the Defendant concerning the terms of his employment, his obligations as Cash Cloud's Chief Marketing Officer, or about the fact that he was an "At-Will" employee.

61.  Within hours after he was terminated, Defendant called one or more Athletes' and/or their representatives / affiliates concerning the Proposed Endorsement Contracts — information he learned only as a result of his employment with Cash Cloud. During these communications, Defendant, without any authority to do so, cancelled the talent shoot with one of the Athletes.  Upon information and belief, during these communications on the evening of August 3, 2021, Defendant divulged Cash Cloud's confidential information concerning the content creation and media budget.

62.  In so doing, Defendant tortiously interfered with Cash Cloud's business dealings and potential contracts.

63.  Defendant's actions also violated the terms of the Employee Handbook concerning the prohibition on disclosing and/or using Cash Cloud's confidential information.

64.  On August 4, 2021, PMK's representatives explained that Defendant's communications had imperiled the Proposed Endorsement Contracts.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

65.    Defendant's breach of his obligations under the Employee Handbook and his tortious interference with Cash Cloud's prospective business relationships with the Athletes, their agents/representatives, and the potential counterparties have caused substantial harm to Cash Cloud.

66.    Later, on August 4, 2021, Cash Cloud received a letter from the Defendant's counsel, stating that he had claims against Cash Cloud, including, but not limited to, claims for intentional and/or negligent misrepresentation and wrongful termination in violation of public policy.

67.    In so doing, the Defendant has threatened to initiate litigation against Cash Cloud based upon the foregoing, among other spurious claims.  As such, Cash Cloud respectfully requests that this Court issue declaratory judgment in Cash Cloud's favor that:  (1) Defendant does not have a valid claim for intentional misrepresentation against Cash Cloud; (2) Defendant does not have a valid claim for negligent misrepresentation against Cash Cloud; and (3) Defendant does not have a valid claim for wrongful termination in violation of any public policy which does not have a comprehensive statutory remedy, including but not limited to Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA) or the Age Discrimination in Employment Act (ADEA).[1]

68.    During his employment with Cash Cloud, Defendant made multiple charges for personal expenses that were never authorized by Cash Cloud management (the "Unauthorized Charges").  Certain Unauthorized Charges were made in Nevada.

---

[1] "Nevada's public policy against impermissible discrimination cannot be vindicated through a tortious discharge public policy tort, but rather, must be pursued through statutory remedies." *Herman v. United Broth. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1385 (9th Cir. 1995), citing *Sands Regent v. Valgardson*, 105 Nev. 436, 777 P.2d 898, 900 (1989) (age discrimination); *see also D'Angelo v. Gardner*, 107 Nev. 704, 722, 819 P.2d 206, 218 (1991) ("It is in precisely such cases, *i.e.*, where no comprehensive statutory remedy exists, that courts have been willing to create public policy tort liability.").

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

69.    These Unauthorized Charges included products and services that for the Defendant's personal benefit and that were not reasonable expenditures and reasonable costs incurred by the Defendant in the course of doing his job.

70.    By making these Unauthorized Charges, the Defendant violated the terms of his Employee Handbook.

71.    As of this filing, Defendant has not reimbursed Cash Cloud for any of the Unauthorized Charges.

72.    Should Defendant fail to cease and desist from disclosing and/or using Cash Cloud's confidential information, Cash Cloud would be entitled to injunctive relief. Ongoing use by Defendant of Cash Cloud's confidential information would cause irreparable harm to Cash Cloud.  The Proposed Endorsement Contracts presented Cash Cloud with unique opportunities that cannot be adequately replaced or compensated for with money damages or legal relief.

## FIRST CAUSE OF ACTION
### Intentional Interference of Prospective Economic Advantage

73.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

74.    The Proposed Endorsement Contracts constitute prospective contractual relationships with the counterparties thereto and security of the Athletes' services.

75.    Defendant knew of the Proposed Endorsement Contracts and the relationship with the Agency.

76.    It was very likely that, prior to the Defendant's interference, Cash Cloud was going to execute one or more of the Proposed Endorsement Contracts.  It was also very likely that, prior to the Defendant's interference, Cash Cloud was going to have a continuing relationship with the Agency and/or with other sports agencies and their clients.

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

77.    Defendant knew that his actions would disrupt Cash Cloud's Proposed Endorsement Contracts and disrupt Cash Cloud's relationship with the Agency and/or other sports agencies and their clients.

78.    Defendant made the aforementioned calls the evening of August 3, 2021 with the intent to cause harm to Cash Cloud by preventing the Proposed Endorsement Contracts from going forward and by disrupting and / or ending Cash Cloud's business relationships with the Athletes, the Agency, and/or other sports agencies.

79.    The Defendant's actions caused an actual disruption of these Proposed Endorsement Contracts, with Cash Cloud's business relationships with the Athletes, the Agency, and/or other sports agencies.

80.    Defendant had no legal justification to become further involved with these Proposed Endorsement Contracts, with Cash Cloud's business relationships with the Athletes, the Agency, and/or other sports agencies.

81.    As a direct and proximate result of the Defendant's intentional and malicious acts, Cash Cloud has been damaged in a sum in excess of Fifteen Thousand Dollars ($15,000.00).

82.    Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

## SECOND CAUSE OF ACTION
### Breach of Contract

83.    Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said paragraphs are fully stated herein.

84.    Defendant has a duty to honor his contractual obligations contained within his Employee Handbook, which constitutes a valid contract under which Cash Cloud may rightfully expect performance.  Defendant has failed and refused to perform his obligations pursuant to the terms and conditions of his Employee Handbook, including, but not limited to, the following breaches.

13

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

85.     Defendant had an obligation to preserve and not use any Cash Cloud confidential information.

86.     Defendant's breaches were material.

87.     Defendant had an obligation not to use Cash Cloud's corporate credit card for unauthorized, personal charges.

88.     As a direct, natural, and proximate result of Defendant's breaches of contract, Cash Cloud has suffered damages in the amount according to proof, in excess of Fifteen Thousand Dollars ($15,000.00).

<u>**THIRD CAUSE OF ACTTION**</u>
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

89.     Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said paragraphs are fully stated herein.

90.     Defendant's agreement to abide by the terms and conditions of the Employee Handbook constitutes a valid contract under which Cash Cloud may rightfully expect performance.

91.     Every contract imposes upon the contracting parties a duty of good faith and fair dealing.

92.     Cash Cloud fully performed its obligations under the Employee Handbook. To the extent that Cash Cloud failed to perform any of its obligations, such non-performances is excused.

93.     Defendant owed Cash Cloud a duty to perform as promised in a manner which was faithful to the purpose of the Employee Handbooks.  Defendant breached that duty.

94.     In dealing with the acts alleged herein, Defendant failed to act in good faith and to the best of his ability, thereby breaching his duty to so conduct himself and denying Cash Cloud their justified expectations.

95.     As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in a sum in excess

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

of $15,000.00.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

96.    Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said paragraphs are fully stated herein.

97.    Pled in the alternative pursuant to Nevada Rule of Civil Procedure 8, Defendant has been unjustly enriched by failing to discharge his obligations to Plaintiffs.

98.    Defendant has unjustly retained the benefit of his Unauthorized Charges.

99.    Defendant's failure to reimburse Cash Cloud for the Unauthorized Charges is unjust, and represents a harm for which there is no adequate remedy at law.

100.    Such unjust enrichment goes against fundamental principles of equity and good conscience.

101.    As a result of Defendant's unjust enrichment, Cash Cloud has suffered damages.

## FIFTH CAUSE OF ACTION
### Declaratory Judgment Pursuant to NRS Chapter 30

102.    Cash Cloud incorporates the foregoing allegations as though fully set forth herein.

103.    A justiciable controversy has arisen between the parties hereto regarding the Defendant's employment with Cash Cloud.

104.    Genuine disputes exist concerning multiple matters related to Defendant's employment with Cash Cloud. As such, Cash Cloud respectfully requests that this Court issue declaratory judgment in Cash Cloud's favor that: (1) Defendant does not have a valid claim for intentional misrepresentation against Cash Cloud; (2) Defendant does not have a valid claim for negligent misrepresentation against Cash Cloud; and (3) Defendant does not have a valid claim for wrongful termination in violation of any public policy which does not have a comprehensive statutory remedy, including but not limited to Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA) or the Age Discrimination in Employment Act (ADEA).

WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

1.    For compensatory damages in excess of $15,000.00;

2.    For punitive damages;

3.    For declaratory relief as requested;

4.    For injunctive relief as appropriate;

5.    For reasonable attorney's fees, costs, and legal interest; and

6.    For any other relief this Court finds just and proper.

DATED this 5th day of August, 2021.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
jmj@jimmersonlawfirm.com
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
  *Attorneys for Plaintiff Cash Cloud Inc.*

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

# EXHIBIT 1

# EXHIBIT 1



**Offer Letter Acknowledgement:**

Date Received: _3/16/2021_

I, _Amondo Redmond_, an employee of Coin Cloud, acknowledge receipt and understanding of the offer letter received.

I have read and understood the contents of this offer letter and expectations of my employment with Coin Cloud. _AR_ Initials

I do not have additional questions or concerns regarding my offer letter. _AR_ Initials

Please read your offer letter very carefully to understand the conditions of your offer before you sign this document.

_Amondo Redmond_            _3/16/21_

Employee Name (Please Print)            Date

_Amondo Redmond_            _3/16/21_

Employee Signature            Date

_(signature)_            _3/16/21_

HR Signature            Date

# EXHIBIT 2

# EXHIBIT 2



## Cash Cloud Inc dba Coin Cloud

### Employee Handbook Acknowledgement for 04/24/20 update:

Date Received: *3/16/2021*

I, *Amanda Redmond*, an employee of Coin Cloud, acknowledge receipt of its Employee Handbook.

I understand that this employee handbook replaces any and all prior verbal and written communications regarding Coin Cloud working conditions, policies, procedures, appeal processes, and benefits. _____Initials

I understand that the working conditions, policies, procedures, appeal processes, and benefits described in this handbook are confidential and may not be distributed in any way nor discussed with anyone who is not an employee of Coin Cloud. _____Initials

I have read and understood the contents of this handbook and will act in accord with these policies and procedures as a condition of my employment with Coin Cloud. _____Initials

I have read and understood the Employee Code of Conduct and Business Ethics, section 6 on pages 49-63, expected by Coin Cloud and I agree to act in accord with it as a condition of my employment by Coin Cloud. _____Initials

I understand that if I have questions or concerns at any time about the handbook or the Standards of Conduct, I will consult my immediate supervisor. I also acknowledge that the handbook contains an employment-at-will provision that states:

1. Either Coin Cloud or I can terminate my employment relationship at any time, with or without cause, and with or without notice;
2. That this employment-at-will relationship is in effect regardless of any other written statements or policies contained in this handbook, in any other Coin Cloud documents, or in any verbal statements to the contrary
3. No one except the President can enter into any differing employment relationship, contract, or agreement. To be enforceable, any such out-of-the-ordinary relationship. contract or agreement must be in writing, signed by the President, notarized, and in the employee file.



Finally, I understand that the contents of this employee handbook are simply policies and guidelines, not a contract or implied contract with employees. The contents of the employee handbook may change at any time.

Please read this Handbook and these employee standards of conduct very carefully to understand these conditions of employment before you sign this document.

_Amondo Redmond_

Employee Signature

_3/21/2021_

Date

_Amondo Redmond_

Employee Name (Please Print)

DocuSign Envelope ID: A0A1C2CB-35D5-481D-987E-938139779DE4



## Cash Cloud Inc dba Coin Cloud

**Appendix A Acknowledgement 04/24/20 update:**

**I have read through COIN CLOUDS Travel and Expense Policies.**

The travel and expense policies describe important information about COIN CLOUD, and I understand that I should consult Human Resources regarding any questions not answered regarding the travel and expense policies. I understand and agree that, not following these travel and expense policies can result in a delay of reimbursement or possibly no reimbursement at all.

I understand that, any and all policies and practices may be changed at any time by COIN CLOUD. I have received, read, and fully understand this policy. I understand that a travel request form must be filled out prior to my trip and approved by my manager and forward to the CFO. I understand that I am expected to exercise good judgment with respect to expenses and spend COIN CLOUDS money as carefully and as judiciously as my own.

*Amondo Redmond*

(Signature)

*Amondo Redmond*

(Print name)

3/16/2021

(Date)

DocuSign Envelope ID: A0A1C2CB-35D5-481D-987E-938139779D54



## Cash Cloud Inc dba Coin Cloud

**Appendix B Acknowledgement 04/24/20 update:**

**I have read through COIN CLOUDS computer, email, and internet usage guidelines and policies.**

The computer, email, and internet usage guidelines and policies describe important information about COIN CLOUD, and I understand that I should consult Human Resources regarding any questions not answered regarding the computer, email, and internet usage guidelines and policies.

I understand and agree that, not following these computer, email, and internet usage guidelines and policies can lead to disciplinary action and/or termination.

I understand that, any and all policies and practices may be changed at any time by COIN CLOUD.

I have received, read, and fully understand this policy. I understand that my use of Coin Cloud's information and communication technology constitutes full acceptance of the terms of this policy and consent to monitoring.

*Amanda Redmond*

(Signature)

*Amanda Redmond*

(Print name)

3/16/2021

(Date)



## Cash Cloud Inc dba Coin Cloud

### Appendix C Acknowledgement 04/24/20 update:

Date Received: _2/16/21_

I, _Amando Redmond_ an employee of Coin Cloud, acknowledge receipt of its safety policies and guidelines.

I have read and understood the contents of these safety policies and guidelines and will act in accord with these policies and procedures as a condition of my employment with Coin Cloud. _AR_ Initials

I understand that if I have questions or concerns at any time about the safety policies and guidelines, I will consult Human Resources. _AR_ Initials

Finally, I understand that the contents of the safety policies and guidelines. I also understand that at any time the contents of the safety policies and guidelines may change. _AR_ Initials

Please read the safety policies and guidelines and our standards very carefully to understand these conditions of employment safety before you sign this document.

Employee Name (Please Print)

_Amando Redmond_

Employee Signature

_3/6/2021_

Date

# EXHIBIT 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

142867071.1

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

## ATTORNEY'S RETAINER AGREEMENT

THIS ATTORNEY'S RETAINER AGREEMENT (the "Agreement") made this ___ day of 1/31/2023 , 2023, at Las Vegas, Nevada, by and between the undersigned, CASH CLOUD, INC., hereinafter designated as "CLIENT" and THE JIMMERSON LAW FIRM, P.C., hereinafter designated as "ATTORNEY."

1.    CLIENT has retained ATTORNEY and seeks to continue to retain ATTORNEY to represent CLIENT in various matters concerning CLIENT, including, but not limited to, litigation matters against Amondo Redmond, Case No. A-21-839023-B, pending in the Eighth Judicial District Court in Clark County, Nevada. CLIENT empowers ATTORNEY to take all steps deemed by ATTORNEY to be advisable, including to effect a compromise, to institute legal proceedings, and to take all other appropriate steps as authorized by CLIENT. CLIENT and ATTORNEY acknowledge and agree that ATTORNEY has represented affiliates of the CLIENT in the past and that all such representation of affiliates has concluded. Should an affiliate of CLIENT seek to retain ATTORNEY in the future, such representation will only commence under a separate written agreement, which would include, inter alia, a provision that would allow ATTORNEY to withdraw from representation of the affiliate and continue the representation of the CLIENT in the event of any conflict from both representations.

2.    CLIENT agrees to pay ATTORNEY an amount of money for its attorney's fees totaling the aggregate amount of several categories of specific fees, and possible fees, for ATTORNEY, detailed as follows:

a.    CLIENT shall pay all monthly bills within twenty (20) days of the billing statement.  However, while CLIENT is in bankruptcy, CLIENT shall pay a maximum of $25,000.00 / week, to be applied to the CLIENT's current monthly bills and CLIENT's past-due bills;

Hourly rates for services rendered on your behalf by the attorneys in the office are as follows:

JAMES J. JIMMERSON, ESQ.              $595 .00/HOUR

JAMES M. JIMMERSON, ESQ.              $350.00/HOUR

Other associates shall be billed out at $175.00 per hour.

An hourly rate of $175.00 per hour for work done on Client's behalf by Law Clerk Andrew Pastor.

Other Law Clerks and Paralegals shall be billed out at $125.00 per hour.

An hourly rate of $75.00 - $125.00 per hour for work done on your behalf, including but not limited to, assembly of binders and exhibits for hearings and/or trial, by documentation specialists and/or secretarial staff.

CLIENT agrees that these fees are reasonable on the basis of ATTORNEY's (and staffs) ability, training, education, experience,

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

professional standing and skill, and the difficulty, intricacy, importance and time and skill required to perform the work to be done.

CLIENT shall advance and pay to ATTORNEY all costs, including but not limited to court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance phone calls, filing fees, mailing costs, parking fees and other disbursements made in connection with this matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. When an item of costs is known to exceed $250.00, CLIENT shall provide prior written approval for the same before such cost is incurred. Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1-1/2%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection.

3.      Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1.5%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection. In the event ATTORNEY receives payment in full within ten (10) days of the date of the statement, CLIENT shall be entitled to a 10% discount of that month's attorney's fees, which will be held in the CLIENT'S trust account.[1]

4.      CLIENT has indicated that it may file for Chapter 11 bankruptcy. In such case, ATTORNEY'S continued representation is contingent upon CLIENT filing a motion for access to, and approval of, Debtor in Possession ("DIP") Financing. CLIENT acknowledges and agrees that ATTORNEY shall, due to CLIENT's sizable past-due billings as of the date of this Agreement and the risk that of ATTORNEY not being paid, withdraw from representing CLIENT should the bankruptcy court not grant CLIENT's DIP Motion, authorizing payment of ATTORNEY's billings, in accordance with this Agreement, as administrative fees of CLIENT.

---

[1] For example, if CLIENT'S billing statement contains $5,000.00 in attorney's fees and ATTORNEY receives payment in full for fees and costs reflected in that billing statement within ten (10) days of the date of the statement, ATTORNEY shall discount the attorney's fees owed by $500.00 (or 10% of the attorney's fees incurred), and retain the $500.00 in trust for the CLIENT, which may be, amongst other things, applied toward CLIENT'S next bill.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

5.     On or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), we may file an application (a "Monthly Fee Application") with the Bankruptcy Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: CLIENT, the United States Trustee, and parties requesting special notice (the "Notice Parties"). If we fail to file a Monthly Fee Application for a particular month or months, we may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, we shall file a certificate of no objection with the Court, after which CLIENT shall be authorized to pay us an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, CLIENT shall be authorized to pay us 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

If any Notice Party objects to our Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Bankruptcy Court and serve such Objection on us and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting patty and we may attempt to resolve the Objection on a consensual basis. If the patties are unable to reach a resolution of the Objection, we may either (i) file a request with the Bankruptcy Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Bankruptcy Court will consider and dispose of the objection if requested by the parties.

Beginning with the approximately 120-day period commencing on the date of this letter, and at each 120-day period thereafter (the "Interim Fee Period"), we shall file with the Bankruptcy Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by us in our Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Patties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Firm and the Notice Parties so as to be received on or before

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

CLIENT will request that the Bankruptcy Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Bankruptcy Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Bankruptcy Court may grant an Interim Fee Application without a hearing.

At the conclusion of our representation, we will file a final fee application (the "Final Fee Application) with the Bankruptcy Court, seeking final approval of all fees and expenses incurred during our representation.

6.  **IN THE EVENT OF A LOSS, THE CLIENT MAY BE LIABLE FOR THE OPPOSING PARTY'S ATTORNEY'S FEES, AND WILL BE LIABLE FOR THE OPPOSING PARTY'S COSTS AS REQUIRED BY LAW. A suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

7.  _____ **(Initial)** CLIENT hereby grants ATTORNEY (1) a charging lien on any and all claims or causes of action that are related to the subject of ATTORNEY'S representation under this Agreement and (2) a retaining lien on any file or other property left in the possession of the ATTORNEY by CLIENT. ATTORNEY'S lien will be used for any sums owing to ATTORNEY at the conclusion of ATTORNEY'S services, whether or not the case has been concluded. The charging lien will attach to any recovery CLIENT may obtain, whether by arbitration award, judgment, settlement or otherwise. In enforcing ATTORNEY'S lien, any amounts received by ATTORNEY'S office on CLIENT'S behalf may be used to pay any outstanding sums owed to ATTORNEY. In accordance with the Uniform Commercial Code, no payments made to ATTORNEY for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless ATTORNEY and CLIENT both sign a separate written agreement specifically permitting such payment to constitute a payment in full of CLIENT'S account. The CLIENT agrees that ATTORNEY shall be permitted to seek to enforce its liens and obtain a money judgment for unpaid attorney's fees and costs by motion practice under this Agreement, and irrevocably grants jurisdiction for the adjudication of said lien to the Court before which ATTORNEY is representing CLIENT. As such, CLIENT expressly waives any requirement or reliance on legal authority that would otherwise require ATTORNEY to bring an independent lawsuit to collect its fees and costs. In short, the CLIENT expressly agrees and consents to an attorneys' lien and that ATTORNEY shall be permitted to collect its unpaid attorney's fees and costs and enforce its lien by motion practice, and irrevocably grants jurisdiction to the Court before which ATTORNEY is representing CLIENT to adjudicate an attorney's lien. CLIENT agrees that they have had the opportunity to review the holdings of Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish, 125 Nev. 527, 216 P.3d 779 (2009); Fredianelli v. Fine Carman Price, 402 P.3d 1254, 133 Nev. Adv. Op. 74 (2017); and Grisham v. Grisham and Webster, 128 Nev. 679, 289 P.3d 230 (2012), and agree that this Retainer Agreement provides express consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien and that the same, by CLIENT's express

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

consent, may be adjudicated to judgment by motion practice. See NRS 18.015 (as amended by SB 140, 2013) see. also Petersen v. Jimmerson Hansen, P.C., Case No. 68888, 2016 WL 757110 (Nev. App. Ct. 2016). Any such judgment shall be final and shall be collectible by any lawful means.

8.     ATTORNEY shall have the right to assign office personnel, including associate attorneys, amazing and frankly over-talented law clerks, and paralegals, to the case in ATTORNEY's sole discretion.  CLIENT shall so designate in writing if CLIENT desires to have certain attorneys or personnel handle the case exclusively or if CLIENT desires to have certain ATTORNEYS or personnel excluded from handling the case.

9.     CLIENT acknowledges that ATTORNEY has made no guarantee regarding the successful termination of said cause of action, and all expressions relative thereto are matters of ATTORNEY's opinion only.  Based upon meetings between CLIENT and ATTORNEY, CLIENT acknowledges that this case will be a difficult one.  If the case is not successful, CLIENT will owe ATTORNEY the advanced costs.  ATTORNEY shall not settle or compromise this matter without the approval of CLIENT.

10.     CLIENT agrees to do all that is necessary to provide ATTORNEY with information requested by ATTORNEY concerning the case.

11.     Any fees billed on an hourly basis shall include, but shall not be limited to, time spent on the telephone, in negotiations, drafting, dictating, conducting legal research, conferences with other attorneys, experts, consultants or witnesses, traveling, conducting discovery, time spent in court (including waiting time), time in depositions, and all other efforts on CLIENT's behalf in this matter.

12.     This is the entire Agreement between the parties and any modifications or additions to this Agreement must be made in writing and signed by both parties.

13.     The efforts by ATTORNEY on CLIENT'S behalf shall be performed in Nevada and elsewhere as needed.  This Agreement shall be governed by the laws of the State of Nevada and all legal action arising out of this Agreement shall be conducted in Nevada.  If any legal action is brought as a result of this Agreement, the prevailing party shall be entitled to costs incurred plus a reasonable attorney's fee.

14.     ATTORNEY, at ATTORNEY'S sole discretion, may withdraw from the representation of CLIENT at any time, but that withdrawal shall not affect ATTORNEY'S right to be compensated for fees and costs already incurred.  We may withdraw if you do not make the payments required by this Agreement, if you have misrepresented or failed to disclose material facts to us or if a breakdown in communication occurs. Upon our withdrawal, we will be entitled to an attorneys' lien for earned and unpaid fees and costs.  Additionally, we shall have a lien on all of your documents, property and money in our possession for the payment of all sums due to us from you under the terms of this Agreement.

15.     CLIENT understands and agrees that should a Court award attorneys' fees to CLIENT (or to ATTORNEY on CLIENT's behalf), such sums shall be applied against any outstanding charges on CLIENT's bill only after such sums are actually collected. However, CLIENT understands and agrees that collection of any awarded fees is not the responsibility of ATTORNEY and that pursuant to this Retainer Agreement, CLIENT

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

remains solely responsible for the payment of the legal fees, expenses and costs incurred in CLIENT's case. A Court Order awarding attorneys' fees from the opposing party does **not** relieve CLIENT of the primary responsibility for paying ATTORNEY's bill.  CLIENT acknowledges that the Court could likewise Order CLIENT to pay attorney's fees or costs to the opposing party, and such Order does not relieve CLIENT of the obligation to pay CLIENT's own attorney's fees and costs to ATTORNEY.

  **16.** Because of the numerous e-mails or electronic communications received by ATTORNEY on a daily basis, client is placed on notice, that client may not assume that ATTORNEY has an e-mail transmission from client to ATTORNEY at any given time. As such, client agrees and is oblige to affirmatively contact the ATTORNEY or a staff representative of the ATTORNEY personally to ensure that communication of needed information is transmitted to ATTORNEY. The email addresses that must be used are:

    jmj@jimmersonlawfirm.com  and aap@jimmersonlawfirm.com

  **17.** **CLIENT acknowledges that he has had ample opportunity to seek his own counsel regarding this Attorney Retainer Agreement before signing this Agreement, and CLIENT has acted independently from ATTORNEY in deciding to voluntarily and knowingly sign this Agreement.**

  18. Should any term, provision clause, subparagraph or paragraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

Agreed to and executed by:

THE JIMMERSON LAW FIRM, P.C.

JAMES M. JIMMERSON, ESQ.,
**ATTORNEY**

CASH CLOUD INC.

        1/31/2023

Chris McAlary, CEO
**CLIENT**      **Date**

CORRECT CLIENT ADDRESS FOR ALL BILLING STATEMENTS:


EMPLOYER IDENTIFICATION NUMBER:

46-5527468

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

# EXHIBIT 11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

142867071.1

Court File No.  CV-22-89887

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**



Electronically issued:
Délivré par voie électronique
Ottawa

CASH CLOUD INC.

Applicant

and

BITACCESS INC.

Respondent

**APPLICATION UNDER** Rule 14.05(2), (3)(d) and (g) of the *Rules of Civil Procedure*, RRO 1990, Reg 194

## NOTICE OF APPLICATION

**TO THE RESPONDENT**

**A LEGAL PROCEEDING HAS BEEN COMMENCED** by the applicant. The claim made by the applicant appears on the following page.

**THIS APPLICATION** will come on for a hearing

☐ In person
☐ By telephone conference
☒ By video conference

at the following location:

The Court House, 161 Elgin Street, Ottawa, Ontario, on a day to be set by the Court.

**IF YOU WISH TO OPPOSE THIS APPLICATION**, to receive notice of any step in the application or to be served with any documents in the application, you or an Ontario lawyer acting for you must forthwith prepare a notice of appearance in Form 38A prescribed by the *Rules of Civil Procedure*,

-2-

serve it on the applicant's lawyer or, where the applicant does not have a lawyer, serve it on the applicant, and file it, with proof of service, in this court office, and you or your lawyer must appear at the hearing.

**IF YOU WISH TO PRESENT AFFIDAVIT OR OTHER DOCUMENTARY EVIDENCE TO THE COURT OR TO EXAMINE OR CROSS-EXAMINE WITNESSES ON THE APPLICATION**, you or your lawyer must, in addition to serving your notice of appearance, serve a copy of the evidence on the applicant's lawyer or, where the applicant does not have a lawyer, serve it on the applicant, and file it, with proof of service, in the court office where the application is to be heard as soon as possible, but at least four days before the hearing.

**IF YOU FAIL TO APPEAR AT THE HEARING, JUDGMENT MAY BE GIVEN IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU.  IF YOU WISH TO OPPOSE THIS APPLICATION BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.**

Date ___August 11, 2022___        Issued by _____*J Ballantyne*_____
                                                              Local Registrar

                    Address of      161 Elgin Street
                    court office:   Ottawa ON  K2P 2K1


TO:         BitAccess Inc.
            267 Richmond Road
            Ottawa ON  K1Z 6X3

-3-

## APPLICATION

1.      The applicant, Cash Cloud Inc. ("Cash Cloud"), makes application for:

(a)      an injunction restraining the respondent, BitAccess Inc. ("BitAccess"), from interfering with Cash Cloud's ability to use the software that it has licensed from BitAccess until such time as the validity of BitAccess' purported termination of the Master Purchase Agreement dated January 23, 2020 ("the 2020 Purchase Agreement") is finally determined through the mandatory dispute resolution process prescribed therein;

(b)      an order maintaining the *status quo* between Cash Cloud and BitAccess concerning the 2020 Purchase Agreement until such time as the validity of BitAccess' notice of termination of that agreement is finally determined through the mandatory dispute resolution process prescribed by the 2020 Purchase Agreement;

(c)      an injunction restraining BitAccess from deleting any data that it collected from Cash Cloud until the validity BitAccess' notice of termination of the 2020 Purchase Agreement is finally determined through the mandatory dispute resolution process prescribed therein;

(d)      an order requiring BitAccess to preserve any data that it collected from Cash Cloud until the disputes between the parties arising out of the 2020 Purchase Agreement

-4-

are finally determined through the mandatory dispute resolution process prescribed therein; and

(e)    costs on a substantial indemnity basis.

2.    The grounds for the application are:

## The Parties

(a)    Cash Cloud is a corporation incorporated pursuant to the laws of Nevada with its head offices in Las Vegas, Nevada.

(b)    Cash Cloud owns and operates a network of digital currency kiosk machines across the United States, and in Brazil through a Brazilian subsidiary.

(c)    BitAccess is a corporation incorporated pursuant to the laws of Canada with its principal offices in Ottawa, Ontario.

(d)    BitAccess sells software that facilitates the purchase and exchange of digital currency.

## The Purchase Agreements

(e)    For approximately eight years, Cash Cloud has purchased software licenses from BitAccess ("the Licensed Software"), deployed this software in its network of kiosks in the United States, and has purchased technical support services from BitAccess in respect of that software ("the Support Services"). The contractual

-5-

terms for the use of the Licensed Software and the deployment of the Support Services are the subject of two written agreements between the parties.

(f)     The first executed agreement is a Master Purchase Agreement, dated September 4, 2015 ("the 2015 Purchase Agreement").

(g)     Pursuant to the 2015 Purchase Agreement, Cash Cloud purchased several kiosks from BitAccess. Along with those kiosks, Cash Cloud also purchased instances of the Licensed Software, along with the rights to use that software on a perpetual basis.

(h)     The Licensed Software is how the kiosks operate. It functions to process customer transactions. Without the software, the kiosks are inoperable.

(i)     The 2015 Purchase Agreement set out, *inter alia*, the terms and conditions upon which Cash Cloud could acquire and use the Licensed Software. The 2015 Purchase Agreement did not give BitAccess the right to terminate the agreement for convenience. Rather, the 2015 Purchase Agreement stipulated that BitAccess could only terminate the agreement if:

(i)     Cash Cloud was non-compliant with applicable laws;

(ii)    Cash Cloud was in breach of the agreement; or

(iii)   a regulator or government entity rendered the subject matter of the agreement illegal or subject to unreasonable operational charges and fees.

-6-

(j)    In 2017, BitAccess indicated to Cash Cloud that it wished to cease manufacturing and selling digital currency kiosks because it wanted to focus its efforts on the development and sale of its software.

(k)    From that point forward, Cash Cloud began purchasing kiosks from other manufacturers. However, it continued to acquire instances of the Licensed Software from BitAccess under the terms of the 2015 Agreement, which it ran on its kiosks.

(l)    On January 23, 2020, the parties entered into the 2020 Purchase Agreement.

(m)    The 2020 Purchase Agreement was effectively an amendment to the 2015 Purchase Agreement. For the purposes of this dispute, the terms of the 2020 Purchase Agreement were substantively similar to the terms of the 2015 Purchase Agreement.

(n)    The 2020 Purchase Agreement provides, *inter alia*, that:

   (ii)    BitAccess would provide Cash Cloud with a perpetual, royalty-free license, to use the Licensed Software on its kiosks (9.2);

   (iii)    BitAccess would earn a service fee based on the percentage of the total volume of monthly transactions that took place on Cash Cloud's kiosks (4.2);

   (iv)    BitAccess would provide Support Services (Schedule C);

-7-

(v)     the agreement would remain in full force unless, or until, it is terminated pursuant to section 7.2 (7.1);

(vi)    BitAccess could only terminate the agreement if:

(1)     Cash Cloud did not comply with applicable laws or failed to adhere to the terms of the 2020 Purchase Agreement; or

(2)     any requirement of a regulator or government body rendered Bitcoin, crypto-currencies, or the provision of services contemplated under the 2020 Purchase Agreement illegal or subject to unreasonable operational charges/fees; (7.2)

(vii)   the Agreement constitutes the entire agreement between the Parties and supersedes all previous communications, agreements, and understandings (13.9);

(viii)  the parties agreed to submit to the non-exclusive jurisdiction of the Courts of the Province of Ontario (13.4).

(o)   The 2020 Purchase Agreement also contains dispute resolution provisions. Those provisions provide that any dispute arising out of, or relating to, the 2020 Purchase Agreement, or the breach thereof, shall be resolved by arbitration administered by the Canadian Arbitration Association under its Commercial Arbitration Rules.

-8-

The dispute resolution provisions further provide that the arbitration shall be conducted in Ottawa.

(p)     The Commercial Arbitration Rules of the Canadian Arbitration Association provide that a request for interim measures, such as injunctive relief, can be addressed to a court and shall not be deemed to be incompatible with an arbitration agreement or a waiver of the right to arbitrate.

### BitAccess Purports to Terminate the 2020 Purchase Agreement

(q)     By letter dated August 4, 2022, BitAccess' Chief Operating Office, Andrew McDonald, purported to terminate the 2020 Purchase Agreement for convenience within 14 days (i.e. on August 18, 2022). In his letter, Mr. McDonald indicated that, as a result of the termination, all of Cash Cloud's kiosks that use the Licensed Software would cease to function and that BitAccess would start permanently deleting all data related to Cash Cloud shortly thereafter.

(r)     Cash Cloud is not in breach of the 2020 Purchase Agreement and Mr. McDonald did not claim, or otherwise suggest that it was, in his letter of August 4, 2022.

(s)     The terms of the 2020 Purchase Agreement do not permit BitAccess to terminate the agreement for convenience.

-9-

(t)     By e-mail dated August 4, 2022, Cash Cloud's Chief Executive Officer, Chris McAlary, advised BitAccess that this communication was abrupt and he requested an opportunity to discuss the matter with Mr. McDonald.

(u)     By e-mail dated August 5, 2022, Mr. McDonald indicated that he refused to discuss the matter with Mr. McAlary.

(v)     By letter dated August 5, 2022, Cash Cloud's Nevada counsel, James Jimmerson of The Jimmerson Law Firm, notified BitAccess that its purported termination of the 2020 Purchase Agreement without reasonable notice constituted a breach of that agreement. Mr. Jimmerson requested that BitAccess rescind its notice of termination.

(w)     BitAccess did not respond to Mr. Jimmerson's letter.

(x)     By letter dated August 8, 2022, Cash Cloud's Ontario counsel, Thomas Conway of Conway Baxter Wilson LLP, further requested that Bit Access rescind its notice of termination and advised that Cash Cloud would seek an urgent injunction in the event that the notice was not rescinded by August 9, 2022 at 5:00 p.m.

(y)     No response to either Messrs. Jimmerson or Conway's letters was received on or before August 9, 2022, at 5:00pm. To date, BitAccess has not substantively responded to the communications delivered by Cash Cloud's lawyers, nor has it

-10-

indicated that it intends to rescind its purported termination of the 2020 Agreement.

## Injunctive Relief is Necessary

(z)    There is a serious issue to be tried. There are no provisions in the 2020 Purchase Agreement that permit BitAccess to terminate that agreement for convenience, or in the circumstances of this case. BitAccess' purported termination of the 2020 Agreement without reasonable notice, and seemingly without justification, constitutes a breach of contract.

(aa)    Cash Cloud will suffer irreparable harm if injunctive relief is not granted.

(bb)    Cash Cloud manages a network of approximately 5,700 kiosks in the United States and Brazil, which process millions of dollars of transactions every month.

(cc)    Approximately 75% of those kiosks depend on the Licensed Software to operate. Those kiosks process approximately 93% of the transactions on Cash Cloud's network.

(dd)    If Cash Cloud's ability to use the Licensed Software is terminated, those kiosks will immediately cease to function and will become inoperable. This is an existential threat to Cash Cloud and its business.

(ee)    In addition, BitAccess has threatened to permanently delete all of Cash Cloud's data. Pursuant to the *Bank Secrecy Act* and other financial regulations in the

-11-

United States, certain customer data must be safeguarded and stored for five years, and in some cases for up to seven years.

(ff)    As such, and in addition to the above, if Cash Cloud's ability to use the Licensed Software is terminated without reasonable notice it will:

(i)    lose a significant number of customers, likely permanently;

(ii)    lose a sizable portion of its market share, likely permanently;

(iii)    suffer permanent harm to its reputation;

(iv)    lose goodwill;

(v)    run the risk of exposure to liability for regulatory violations; and

(vi)    run the risk of exposure to liability to third parties.

(gg)    The balance of convenience favours the granting of the injunctive relief requested.

(hh)    Cash Cloud seeks to maintain the *status quo* pending a determination by an arbitrator appointed under the dispute resolution provisions of the 2020 Purchase Agreement in respect of BitAccess' purported termination of the agreement.

(ii)    BitAccess will not suffer any prejudice from the requested injunction. BitAccess will simply be required to continue to provide its software and services to Cash Cloud, as it has been doing for the past 8 years. It will continue to earn the service

-12-

fees contemplated by the 2020 Purchase Agreement, which are based on the percentage of the total volume of monthly transactions that take place on Cash Cloud's kiosks.

(jj)     Rules 1.04, 14.02, 14.05(2), (3)(d) and (g), 38.03(3.1), and 45.01 of the *Rules of Civil Procedure,* R.R.O 1990, Reg. 194.

(kk)     Sections 96, 97 and 101 of the *Courts of Justice Act*, RSO 1990, c C.43.

(ll)     Article 5 and Schedule 2 of the *International Commercial Arbitration Act*, 2017, SO 2017, c 2, Sch 5, and section 9 of the Model Law on International Arbitration referenced therein.

(mm)    Such further and other grounds as counsel may advise and this Honourable Court permits.

3.     The following documentary evidence will be used at the hearing of the application:

(a)     the affidavit of Christopher McAlary, to be sworn; and

(b)     such further and other evidence as counsel may advise and this Honourable Court permits.

-13-

August 11, 2022

Conway Baxter Wilson LLP/s.r.l.
400-411 Roosevelt Avenue
Ottawa ON  K2A 3X9

Thomas G. Conway LSO#: 29214C
tconway@conwaylitigation.ca
Kevin Caron LSO#: 71894C
kcaron@conwaylitigation.ca
Joseph Rucci LSO#: 846T28
jrucci@conwaylitigation.ca
Tel:     (613) 288-0149
Fax:     (613) 688-0271

Lawyers for the Applicant

Court File No.

CASH CLOUD, INC.   and   BITACCESS INC.
        Applicant                Respondent

*ONTARIO*
SUPERIOR COURT OF JUSTICE

Proceeding commenced at OTTAWA

NOTICE OF APPLICATION

Conway Baxter Wilson LLP/s.r.l.
400-411 Roosevelt Avenue
Ottawa ON K2A 3X9

Thomas G. Conway LSO#: 29214C
tconway@conwaylitigation.ca
Kevin Caron LSO#: 71894C
kcaron@conwaylitigation.ca
Joseph Rucci LSO#: 84628
jrucci@conwaylitigation.ca
Tel:    (613) 288-0149

Lawyers for the Applicant

Box 97

Email for party served:
Andrew McDonald:  andrew@bitaccess.com

# **EXHIBIT 12**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142867071.1

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

## ATTORNEY'S RETAINER AGREEMENT

THIS ATTORNEY'S RETAINER AGREEMENT (the "Agreement") made this ___ day of 1/31/2023 , 2023, at Las Vegas, Nevada, by and between the undersigned, CASH CLOUD, INC., hereinafter designated as "CLIENT" and THE JIMMERSON LAW FIRM, P.C., hereinafter designated as "ATTORNEY."

1.     CLIENT has retained ATTORNEY and seeks to continue to retain ATTORNEY to represent CLIENT in various matters concerning CLIENT, including, but not limited to, litigation matters against Bitaccess Inc., Case No. CV-22-00089887-0000, currently pending in the Superior Court of Justice in Ottawa, Ontario, Canada and before the Canadian Arbitration Association. CLIENT empowers ATTORNEY to take all steps deemed by ATTORNEY to be advisable, including to effect a compromise, to institute legal proceedings, and to take all other appropriate steps as authorized by CLIENT. CLIENT and ATTORNEY acknowledge and agree that ATTORNEY has represented affiliates of the CLIENT in the past and that all such representation of affiliates has concluded. Should an affiliate of CLIENT seek to retain ATTORNEY in the future, such representation will only commence under a separate written agreement, which would include, inter alia, a provision that would allow ATTORNEY to withdraw from representation of the affiliate and continue the representation of the CLIENT in the event of any conflict from both representations.

2.     CLIENT agrees to pay ATTORNEY an amount of money for its attorney's fees totaling the aggregate amount of several categories of specific fees, and possible fees, for ATTORNEY, detailed as follows:

a.     CLIENT shall pay all monthly bills within twenty (20) days of the billing statement.  However, while CLIENT is in bankruptcy, CLIENT shall pay a maximum of $25,000.00 / week, to be applied to the CLIENT's current monthly bills and CLIENT's past-due bills;

Hourly rates for services rendered on your behalf by the attorneys in the office are as follows:

JAMES J. JIMMERSON, ESQ.                    $595 .00/HOUR

JAMES M. JIMMERSON, ESQ.                    $350.00/HOUR

Other associates shall be billed out at $175.00 per hour.

An hourly rate of $175.00 per hour for work done on Client's behalf by Law Clerk Andrew Pastor.

Other Law Clerks and Paralegals shall be billed out at $125.00 per hour.

An hourly rate of $75.00 - $125.00 per hour for work done on your behalf, including but not limited to, assembly of binders and exhibits for hearings and/or trial, by documentation specialists and/or secretarial staff.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

CLIENT agrees that these fees are reasonable on the basis of ATTORNEY's (and staffs) ability, training, education, experience, professional standing and skill, and the difficulty, intricacy, importance and time and skill required to perform the work to be done.

CLIENT shall advance and pay to ATTORNEY all costs, including but not limited to court reporter fees, expert consultant and witness fees, computer research fees, private investigator fees, process server fees, courier fees, copy charges, long distance phone calls, filing fees, mailing costs, parking fees and other disbursements made in connection with this matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. All expenses incident to travel by firm members on this matter shall be reimbursed by CLIENT, including air and ground transport, lodging and meals. Any unpaid expenses may be deducted from the CLIENT's share of any recovery in the matter. When an item of costs is known to exceed $250.00, CLIENT shall provide prior written approval for the same before such cost is incurred. Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1-1/2%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection.

3.      Billing statements shall be sent out to CLIENT monthly. To the extent payments are required under this Agreement, payments on all statements are due twenty (20) days after the date of the statement. If not paid when due, the balance shall accrue interest at the rate of one and one-half percent (1.5%) per month. All questions or objections regarding any billing must be made by CLIENT in writing within thirty (30) days of the billing or CLIENT will be deemed to have waived such objection. In the event ATTORNEY receives payment in full within ten (10) days of the date of the statement, CLIENT shall be entitled to a 10% discount of that month's attorney's fees, which will be held in the CLIENT'S trust account.[1]

4.      CLIENT has indicated that it may file for Chapter 11 bankruptcy. In such case, ATTORNEY'S continued representation is contingent upon CLIENT filing a motion for access to, and approval of, Debtor in Possession ("DIP") Financing. CLIENT acknowledges and agrees that ATTORNEY shall, due to CLIENT's sizable past-due billings as of the date of this Agreement and the risk that of ATTORNEY not being paid, withdraw from representing CLIENT should the bankruptcy court not grant CLIENT's

---

[1] For example, if CLIENT'S billing statement contains $5,000.00 in attorney's fees and ATTORNEY receives payment in full for fees and costs reflected in that billing statement within ten (10) days of the date of the statement, ATTORNEY shall discount the attorney's fees owed by $500.00 (or 10% of the attorney's fees incurred), and retain the $500.00 in trust for the CLIENT, which may be, amongst other things, applied toward CLIENT'S next bill.

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

DIP Motion, authorizing payment of ATTORNEY's billings, in accordance with this Agreement, as administrative fees of CLIENT.

5.      On or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), we may file an application (a "Monthly Fee Application") with the Bankruptcy Court for interim approval and allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: CLIENT, the United States Trustee, and parties requesting special notice (the "Notice Parties"). If we fail to file a Monthly Fee Application for a particular month or months, we may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, we shall file a certificate of no objection with the Court, after which CLIENT shall be authorized to pay us an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, CLIENT shall be authorized to pay us 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

If any Notice Party objects to our Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Bankruptcy Court and serve such Objection on us and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting patty and we may attempt to resolve the Objection on a consensual basis. If the patties are unable to reach a resolution of the Objection, we may either (i) file a request with the Bankruptcy Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Bankruptcy Court will consider and dispose of the objection if requested by the parties.

Beginning with the approximately 120-day period commencing on the date of this letter, and at each 120-day period thereafter (the "Interim Fee Period"), we shall file with the Bankruptcy Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by us in our Monthly Fee Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Patties to file objections (the "Additional Objections") to

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon the Firm and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

CLIENT will request that the Bankruptcy Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Bankruptcy Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Bankruptcy Court may grant an Interim Fee Application without a hearing.

At the conclusion of our representation, we will file a final fee application (the "Final Fee Application) with the Bankruptcy Court, seeking final approval of all fees and expenses incurred during our representation.

6.    **IN THE EVENT OF A LOSS, THE CLIENT MAY BE LIABLE FOR THE OPPOSING PARTY'S ATTORNEY'S FEES, AND WILL BE LIABLE FOR THE OPPOSING PARTY'S COSTS AS REQUIRED BY LAW.  A suit brought solely to harass or to coerce a settlement may result in liability for malicious prosecution or abuse of process.**

7.    _____ (Initial) CLIENT hereby grants ATTORNEY (1) a charging lien on any and all claims or causes of action that are related to the subject of ATTORNEY'S representation under this Agreement and (2) a retaining lien on any file or other property left in the possession of the ATTORNEY by CLIENT.  ATTORNEY'S lien will be used for any sums owing to ATTORNEY at the conclusion of ATTORNEY'S services, whether or not the case has been concluded.  The charging lien will attach to any recovery CLIENT may obtain, whether by arbitration award, judgment, settlement or otherwise.  In enforcing ATTORNEY'S lien, any amounts received by ATTORNEY'S office on CLIENT'S behalf may be used to pay any outstanding sums owed to ATTORNEY. In accordance with the Uniform Commercial Code, no payments made to ATTORNEY for less than the full sum owed shall constitute payment in full, even if that notation is placed on the payment instrument, unless ATTORNEY and CLIENT both sign a separate written agreement specifically permitting such payment to constitute a payment in full of CLIENT'S account. The CLIENT agrees that ATTORNEY shall be permitted to seek to enforce its liens and obtain a money judgment for unpaid attorney's fees and costs by motion practice under this Agreement, and irrevocably grants jurisdiction for the adjudication of said lien to the Court before which ATTORNEY is representing CLIENT. As such, CLIENT expressly waives any requirement or reliance on legal authority that would otherwise require ATTORNEY to bring an independent lawsuit to collect its fees and costs. In short, the CLIENT expressly agrees and consents to an attorneys' lien and that ATTORNEY shall be permitted to collect its unpaid attorney's fees and costs and enforce its lien by motion practice, and irrevocably grants jurisdiction to the Court before which ATTORNEY is representing CLIENT to adjudicate an attorney's lien. CLIENT agrees that they have had the opportunity to review the holdings of Argentena Consol. Min. Co. v. Jolley Urga Wirth Woodbury & Standish,125 Nev. 527, 216 P.3d 779 (2009); Fredianelli v. Fine Carman Price, 402 P.3d 1254, 133 Nev. Adv. Op. 74 (2017); and

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

Grisham v. Grisham and Webster, 128 Nev. 679, 289 P.3d 230 (2012), and agree that this Retainer Agreement provides express consent as a basis for the district court's exercise of ancillary jurisdiction over an attorney's lien and that the same, by CLIENT's express consent, may be adjudicated to judgment by motion practice. See NRS 18.015 (as amended by SB 140, 2013) see. also Petersen v. Jimmerson Hansen, P.C., Case No. 68888, 2016 WL 757110 (Nev. App. Ct. 2016). Any such judgment shall be final and shall be collectible by any lawful means.

8.    ATTORNEY shall have the right to assign office personnel, including associate attorneys, amazing and frankly over-talented law clerks, and paralegals, to the case in ATTORNEY's sole discretion.  CLIENT shall so designate in writing if CLIENT desires to have certain attorneys or personnel handle the case exclusively or if CLIENT desires to have certain ATTORNEYS or personnel excluded from handling the case.

9.    CLIENT acknowledges that ATTORNEY has made no guarantee regarding the successful termination of said cause of action, and all expressions relative thereto are matters of ATTORNEY's opinion only.  Based upon meetings between CLIENT and ATTORNEY, CLIENT acknowledges that this case will be a difficult one.  If the case is not successful, CLIENT will owe ATTORNEY the advanced costs.  ATTORNEY shall not settle or compromise this matter without the approval of CLIENT.

10.    CLIENT agrees to do all that is necessary to provide ATTORNEY with information requested by ATTORNEY concerning the case.

11.    Any fees billed on an hourly basis shall include, but shall not be limited to, time spent on the telephone, in negotiations, drafting, dictating, conducting legal research, conferences with other attorneys, experts, consultants or witnesses, traveling, conducting discovery, time spent in court (including waiting time), time in depositions, and all other efforts on CLIENT's behalf in this matter.

12.    This is the entire Agreement between the parties and any modifications or additions to this Agreement must be made in writing and signed by both parties.

13.    The efforts by ATTORNEY on CLIENT'S behalf shall be performed in Nevada and elsewhere as needed.  This Agreement shall be governed by the laws of the State of Nevada and all legal action arising out of this Agreement shall be conducted in Nevada.  If any legal action is brought as a result of this Agreement, the prevailing party shall be entitled to costs incurred plus a reasonable attorney's fee.

14.    ATTORNEY, at ATTORNEY'S sole discretion, may withdraw from the representation of CLIENT at any time, but that withdrawal shall not affect ATTORNEY'S right to be compensated for fees and costs already incurred.  We may withdraw if you do not make the payments required by this Agreement, if you have misrepresented or failed to disclose material facts to us or if a breakdown in communication occurs.  Upon our withdrawal, we will be entitled to an attorneys' lien for earned and unpaid fees and costs.  Additionally, we shall have a lien on all of your documents, property and money in our possession for the payment of all sums due to us from you under the terms of this Agreement.

15.    CLIENT understands and agrees that should a Court award attorneys' fees to CLIENT (or to ATTORNEY on CLIENT's behalf), such sums shall be applied against

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

any outstanding charges on CLIENT's bill only after such sums are actually collected. However, CLIENT understands and agrees that collection of any awarded fees is not the responsibility of ATTORNEY and that pursuant to this Retainer Agreement, CLIENT remains solely responsible for the payment of the legal fees, expenses and costs incurred in CLIENT's case. A Court Order awarding attorneys' fees from the opposing party does **not** relieve CLIENT of the primary responsibility for paying ATTORNEY's bill. CLIENT acknowledges that the Court could likewise Order CLIENT to pay attorney's fees or costs to the opposing party, and such Order does not relieve CLIENT of the obligation to pay CLIENT's own attorney's fees and costs to ATTORNEY.

16.    Because of the numerous e-mails or electronic communications received by ATTORNEY on a daily basis, client is placed on notice, that client may not assume that ATTORNEY has an e-mail transmission from client to ATTORNEY at any given time. As such, client agrees and is oblige to affirmatively contact the ATTORNEY or a staff representative of the ATTORNEY personally to ensure that communication of needed information is transmitted to ATTORNEY. The email addresses that must be used are:

jmj@jimmersonlawfirm.com          and aap@jimmersonlawfirm.com

17.    **CLIENT acknowledges that he has had ample opportunity to seek his own counsel regarding this Attorney Retainer Agreement before signing this Agreement, and CLIENT has acted independently from ATTORNEY in deciding to voluntarily and knowingly sign this Agreement.**

/ / /

/ / /

/ / /

Page **6** of **7**

DocuSign Envelope ID: 603D8FFC-331C-4280-A7EA-840C4B4C3934

18.    Should any term, provision clause, subparagraph or paragraph of this Agreement be declared void or voidable for any reason whatsoever, then and in spite of such event, the remaining terms and provisions of this Agreement shall not be affected, and shall continue in full force and effect as if such event had not occurred.

Agreed to and executed by:

THE JIMMERSON LAW FIRM, P.C.

JAMES M. JIMMERSON, ESQ.,
**ATTORNEY**

CASH CLOUD INC.

1/31/2023

Chris McAlary, CEO
**CLIENT**                          **Date**

<u>CORRECT CLIENT ADDRESS FOR ALL BILLING STATEMENTS:</u>

<u>EMPLOYER IDENTIFICATION NUMBER:</u>

46-5527468

Page **7** of **7**