BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

Electronically Filed February 16, 2023

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**DECLARATION OF CHRISTOPHER ANDREW MCALARY IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF THE JIMMERSON LAW FIRM, P.C. AS SPECIAL LITIGATION COUNSEL TO DEBTOR**<br><br>Hearing Date: March 17, 2023<br>Hearing Time: 9:30 a.m. |

I, Christopher Andrew McAlary, declare as follows:

1.  I am the Chief Executive Officer of Cash Cloud, Inc. dba Coin Cloud (the "Debtor" or "Cash Cloud"), debtor and debtor in possession in the above captioned chapter 11 case (the "Chapter 11 Case").

142865948.1

2. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. I make this Declaration in support of Debtor's *Application for Order Authorizing Retention and Employment of the Jimmerson Law Firm, P.C. as Special Litigation Counsel to Debtor* (the "JL Employment Application").[1]

4. Debtor desires to retain JL to assist representing Debtor in the COLE KEPRO Action. A true and correct copy of the retainer agreement (the "Cole Kepro Engagement Agreement"), between Debtor and JL, concerning the Cole Kepro International, LLC dispute is attached as **Exhibit 2** to the Jimmerson Verified Statement.

5. Because the Cole Kepro Action involves complex issues and impending deadlines, and the outcome will have a significant impact on Debtor's estate, Debtor believes that its representation with JL as its special litigation counsel in the Cole Kepro Action is in the best interest of Debtor and the estate.

6. Debtor desires to retain JL to assist representing Debtor in the Flores Action. A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Luis Flores dispute is attached as **Exhibit 5** to the Jimmerson Verified Statement ("Flores Engagement Agreement").

7. Because the Flores Action involves complex issues and impending deadlines, and the outcome of the Flores Action will have a significant impact on Debtor's estate, Debtor believes that its representation with JL as its special litigation counsel in the Flores Action is in the best interest of Debtor and the estate.

8. Debtor desires to retain JL to assist representing Debtor in the Franco Action. A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Javier Franco dispute is attached as **Exhibit 8** to the Jimmerson Verified Statement ("Franco Engagement Agreement").

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the JL Employment Application.

142865948.1

9. Because the Franco Action involves complex issues and impending deadlines, and the outcome of the Franco Action will have a significant impact on Debtor's estate, Debtor believes that its representation with JL as its special litigation counsel in the Franco Action is in the best interest of Debtor and the estate.

10. Debtor desires to retain JL to assist representing Debtor in the Redmond Action. A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Amondo Redmond dispute is attached as **Exhibit 10** to the Jimmerson Verified Statement ("Redmond Engagement Agreement").

11. Because the Redmond Action involves complex issues and impending deadlines, and the outcome of the Redmond Action will have a significant impact on Debtor's estate, Debtor believes that its representation with JL as its special litigation counsel in the Redmond Action is in the best interest of Debtor and the estate.

12. Debtor desires to retain JL to assist representing Debtor in initiating and prosecuting an action against Bitcoin Depot directly. A true and correct copy of the Retainer Agreement between Debtor and JL concerning the Bitaccess/Bitcoin Depot dispute is attached as **Exhibit 12** to the Jimmerson Verified Statement ("Bitaccess/Bitcoin Depot Engagement Agreement").[2]

13. Because the proposed action against Bitcoin Depot involves complex issues and impending deadlines, and the outcome of the Action will have a significant impact on Debtor's estate, Debtor believes that its representation with JL as its special litigation counsel in the Bitaccess Action is in the best interest of Debtor and the estate.

14. In addition to the described Actions, Debtor seeks permission to execute further Engagement Agreements with JL, to the extent required, to pursue any further prepetition Actions, or defend against any prepetition Actions, that will be in the best interest of Debtor, its creditors, and its estate.

15. Debtor selected JL because of its excellent qualifications, its reasonable fee structure, and its prior relationship with Debtor in dealing with the Actions.

16. JL's services will not be duplicative of any other professionals providing services to Debtor.

142865948.1

17. JL is well qualified to serve as Special Counsel to Debtor. JL is a Las Vegas Nevada law firm. Attorneys at JL are experienced in representing companies in all manner of complex commercial litigation. JL is an experienced local law firm with experienced colleagues licensed to practice in the State of Nevada. James Jimmerson has in excess of fifteen years of complex commercial litigation experience, and such experience makes JL well suited to participate in the Chapter 11 Case.

18. An experienced law firm such as JL fills a critical need that complements the services offered by Debtor's other restructuring professionals. Debtor believes it requires the services of a capable and experienced law firm such as JL because JL's professionals are familiar with the Actions. JL's skillset is not commonly possessed by Debtor's financial professionals, general management, or operational employees. Debtor requires a law firm that can assist it with the Actions so that it may emerge from Chapter 11 successfully.

19. Debtor respectfully submits that the employment and retention of JL is in the best interests of Debtor and its estate.

20. Debtor proposes to employ JL as special litigation counsel to Debtor for the Actions. Specifically, Debtor anticipates JL will provide counsel on the various statutory and common law issues raised in the Actions, as well as in the areas mentioned above, i.e., business law matters. This includes all aspects of discovery, pre-trial motion practice, trial/hearings, and post-trial services, if necessary (the "<u>Services</u>").

21. Based on the foregoing, JL is well-qualified and experienced in commercial claims. Accordingly, JL is well-qualified to perform the Services and legally represent Debtor, specifically with respect to JL's extensive experience of complex matters before federal and state courts involving commercial matters.

22. The scope of JL's Services has been set forth in the Engagement Agreements executed by both JL and Debtor. <u>See</u> Jimmerson Verified Statement, ¶ ; Exhibits 2, 5, 8, 10, and 12.

---

[2] Collectively, the Cole Kepro Engagement Agreement, the Flores Engagement Agreement, the Franco Engagement Agreement, the Redmond Engagement Agreement, and the Bitaccess Engagement Agreement are referred to herein as the "<u>Engagement Agreements</u>."

142865948.1

23. JL has reviewed its databases and has provided disclosures regarding engagements it may have had with potential parties in interest, which engagements are unrelated to Debtor and the Chapter 11 Case. To the extent that JL discovers any adverse, material relationships during the period of JL's retention, JL will use reasonable efforts to supplement the information.

24. JL does not represent or otherwise have other material connections with the Debtor, its creditors, any other party in interest in the Chapter 11 Case, or their respective attorneys and accountants, the judge of this Court, the United States Trustee for Region 17 or any person employed in the Office of the United States Trustee for the District of Nevada, in accordance with Bankruptcy Rule 2014. JL will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

25. Debtor shall compensate JL for the Services rendered to Debtor.

26. Pursuant to the Engagement Agreement, JL will be paid an hourly rate. The amount of compensation to be paid to JL by Debtor for the Services rendered will fluctuate depending on the attorney working on the matter. Generally, JL's rate range from $350 to $595 per hour. Mr. Jimmerson's rate for this matter is $350.00 per hour and he will be the primary attorney working on this matter from JL.

27. JL shall also seek reimbursement for one hundred percent (100%) of expenses and costs incurred on Debtor's behalf in connection with the Action.

28. JL requires an initial retainer of $25,000 (the "Retainer"). JL will deposit the retainer in its trust account and will hold it for the duration of its representation of Debtor. JL will apply the retainer funds to any outstanding and overdue balances owing pursuant to the Monthly Fee Application procedure described below. At the end of JL's representation, it will apply the remaining Retainer (if any) to any outstanding fees and/or expenses owing that are approved by the Court pursuant to JL's Final Fee Application and return any unearned funds to Debtor at that time.

29. Subject to the specific terms below, on or before the last day of each calendar month, or as soon as practicable thereafter (but not earlier than the 15th day of each calendar month), JL may file an application (a "Monthly Fee Application") with the Court for interim approval and

142865948.1

allowance of compensation for services rendered and reimbursement of expenses incurred during any preceding month or months and serve a copy of such Monthly Fee Application on: Debtor, the United States Trustee, the Committee, and parties requesting special notice (the "Notice Parties"). If JL fails to file a Monthly Fee Application for a particular month or months, it may subsequently submit a consolidated Monthly Fee Application for a particular month or months. All Monthly Fee Applications will comply with the Bankruptcy Code, the Bankruptcy Rules, applicable Ninth Circuit law, and the Local Rules of Bankruptcy Procedure for the District of Nevada.

30. Each Notice Party will have twenty (20) days after service (or the next business day if the 20th day is not a business day) of a Monthly Fee Application (the "Objection Deadline") to object to the requested fees and expenses in accordance with the procedures described below. If no objections are raised on or before the expiration of the Objection Deadline, JL shall file a certificate of no objection with the Court, after which Debtor shall be authorized to pay JL an amount equal to 100 percent of the fees and expenses requested in its Monthly Fee Application (the "Maximum Monthly Payment"). If an objection is properly filed, Debtor shall pay JL 100 percent of the fees and expenses not subject to an objection (the "Actual Monthly Payment").

31. If any Notice Party objects to JL's Monthly Fee Application, it must, on or before the Objection Deadline, (i) file a written objection (an "Objection") with the Court and serve such Objection on JL and each other Notice Party so as to be received on or before the Objection Deadline. Thereafter, the objecting party and JL may attempt to resolve the Objection on a consensual basis. If the parties are unable to reach a resolution of the Objection, JL may either (i) file a request with the Court for payment of the difference between the Maximum Monthly Payment and the Actual Monthly Payment (the "Incremental Amount") or (ii) forego payment of the Incremental Amount until the next interim or final fee application hearing, at which time the Court will consider and dispose of the objection if requested by the parties.

32. Beginning with the approximately 120-day period commencing on the Petition Date, and at each 120-day period thereafter (the "Interim Fee Period"), JL shall file with the Court and serve on the Notice parties an application (an "Interim Fee Application") for interim Court approval and allowance of the compensation and reimbursement of expenses sought by JL in its Monthly Fee

142865948.1

Applications filed during the Interim Fee Period, pursuant to section 331 of the Bankruptcy Code. The Interim Fee Application must include a brief description identifying: (i) the Monthly Fee Applications that are the subject of the request; (ii) the amount of fees and expenses requested; (iii) the amount of fees and expenses paid to date or subject to an Objection; (iv) the deadline for parties other than the Notice Parties to file objections (the "Additional Objections") to the Interim Fee Application; and (v) any other information requested by the Court or required by the Local Rules. Objections, if any, to the Interim Fee Applications shall be filed and served upon JL and the Notice Parties so as to be received on or before the 20th day (or the next business day if such day is not a business day) following service of the applicable Interim Fee Application.

33. Debtor requests that the Court schedule a hearing on the Interim Fee Applications at least once every four months or at such other intervals as the Court deems appropriate. If no Objections are pending and no Additional Objections are timely filed, the Court may grant an Interim Fee Application without a hearing.

34. Debtor shall pay JL in the amount of the Maximum Monthly Payments, the Actual Monthly Payments, the Incremental Amounts approved by the Court, and/or any other compensation and expenses approved by the Court pursuant to Interim Fee Applications or the final fee application, as applicable (the "Fee Payments").

35. Debtor respectfully submits that the proposed fee arrangement with JL in accordance with rendering of its Services, and as set forth above and in the Engagement Agreement, is both fair and reasonable in light of: (i) industry practice; (ii) the similarity to market rates both in and out of Chapter 11 proceedings; (iii) JL's general experience, and in particular with government, regulatory, land use, and constitutional matters, and Nevada law in general; and (iv) the type of work to be performed pursuant to its retention.

36. No prior application for the relief requested herein has been made to this Court or any other court.

142865948.1

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed this 16th day of February, 2023 in Las Vegas, Nevada.

        */s/Christopher Andrew McAlary*
        Christopher Andrew McAlary

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

142865948.1