

Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
February 17, 2023

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com
*[Proposed] Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. BK-23-10423-mkn

Chapter 11

**INTERIM ORDER UNDER BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND BANKRUPTCY RULES 2002, 4001, 6004 and 9014 (I) AUTHORIZING DEBTOR TO (A) OBTAIN POSTPETITION FINANCING AND (B) GRANT ADEQUATE PROTECTION AND (II) SCHEDULING FINAL HEARING**

Hearing Date: February 15, 2023
Hearing Time: 10:30 a.m.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**THIS CAUSE** came before the Court on February 15, 2023 (the "Interim Hearing") upon the motion, dated February 8, 2023 [ECF No 35] (the "Motion"), of Cash Cloud, Inc., a Nevada corporation (the "Borrower" or the "Debtor"), as debtor and debtor-in-possession in the above-captioned case (the "Chapter 11 Case") for interim and final orders under sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the local bankruptcy rules for the United States Bankruptcy Court for the District of Nevada (the "Local Bankruptcy Rules"), seeking:

(a) authorization for the Borrower to obtain up to $5,000,000 in principal amount of postpetition financing (plus any interest capitalized and added to such principal amount), (collectively, the "DIP Financing"), all on the terms and conditions set forth in: (i) this Interim Order and as evidenced by the Senior Secured Super-Priority Debtor-in-Possession Promissory Note among the Borrower and CKDL Credit, LLC or its designee or assignee (the "DIP Lender") (substantially in the form attached to this Interim Order as Exhibit A, and as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "DIP Note"), issued in favor of the Lender pursuant to and based on the form attached to the Senior Secured Super-Priority Debtor-in-Possession (DIP) Loan Agreement by and among, on the one hand, the Borrower and its subsidiaries as guarantors as listed in Schedule 1 annexed hereto (the "Guarantors", and together with the Borrower, the "Borrower Parties"), substantially in the form attached to the Declaration of Christopher Andrew McAlary as Exhibit A (the "DIP Credit Agreement"), together with its attachments and all agreements, documents, instruments and/or amendments delivered in connection therewith, including the Security Agreement by the Borrower Parties in favor of the DIP Lender in the form attached to the DIP Credit Agreement (the "Security Agreement"), the Trademark Pledge and Security Agreement by the Borrower in favor of the DIP Lender in the form attached to the DIP Credit Agreement (the "Trademark Agreement"), the Deposit Account Control Agreement(s) dated February [___], 2023 by the Borrower in favor of the DIP Lender in the form attached to the DIP Credit Agreement (the "DACA(s)") and the Guaranty by the Guarantors, jointly and severally, in favor of the DIP Lender in the form attached to the DIP Credit Agreement (the "Guaranty"); and (ii)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

the budget annexed hereto as Exhibit A (the "Budget", and together with DIP Note and the DIP Credit Agreement, and including the Security Agreement, the Trademark Agreement, the DACA(s) and the Guaranty, all as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, and all other agreements, documents, instruments, and/or amendments delivered in connection therewith, the "DIP Documents");

(b) authorization for the Debtor to execute and deliver the DIP Note and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(c) authorization for the Debtor to use the proceeds from the DIP Financing as permitted in the DIP Documents and in accordance with this Interim Order (as defined below), the Final Order (as defined below) and the Budget;

(d) authorization for the Debtor to grant adequate protection to Genesis Global Holdco, LLC ("Genesis") and Enigma (as defined below) to the extent of any diminution in value of their respective interests in the Genesis Collateral (as defined below) and Enigma Collateral (as defined below), as applicable, and in each case subject and subordinate to the Carve-Out;

(e) to schedule, pursuant to Bankruptcy Rule 4001, an interim hearing on the Motion to be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") authorizing the Borrower, on an interim basis, to borrow under this Interim Order and the DIP Note up to $2,500,000, plus interest and fees as described in paragraph 6(a) below; and

(f) to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "Final Hearing") on the Motion to be held before this Court to consider entry of a final order (the "Final Order") authorizing and approving, on a final basis, the transactions described in the foregoing clauses (a) through (c) pursuant to the Final Order;

The Interim Hearing having been held by the Court to consider the relief sought in the Motion, and upon the record of the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, that:

1. *Disposition*. The Motion is granted on an interim basis in accordance with the terms of this Interim Order. Any objections to the interim relief sought in the Motion with respect to the entry of this Interim Order that have not been previously withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled.

2. *Jurisdiction and Venue.* This Court has core jurisdiction over the Chapter 11 Case commenced on February 7, 2023 (the "Petition Date"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, 364, and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, and 6004 and the Local Bankruptcy Rules.

3. *Notice*. Notice of the Motion, the relief requested therein and the relief sought at the Interim Hearing was served by the Debtor by either electronic mail and/or overnight mail to: (a) the Office of the United States Trustee, 300 Las Vegas Boulevard S., Suite 4300, Las Vegas, NV 89101, Attn: Jared A. Day & Edward M. McDonald, Jr.; (b) the creditors holding the twenty largest unsecured claims against the Debtor's estate; (c) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso, and Sylvester & Polednak Ltd., 1731 Village Center Circle, Las Vegas, NV 89134, Attn: Jeffrey R. Sylvester, attorneys to the DIP Lender; (d) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal and Jane VanLare; (e) Morrison & Foerster LLP, 250 West 55th Street, New York, NY 10019, Attn: Gary S. Lee and Andrew Kissner, and Shea Larsen, 1731 Village Center Circle, Suite 150, Las Vegas, NV 89134, Attn: James Patrick Shea, Bart Larsen and Kyle Wyant, attorneys to Enigma Securities Limited ("Enigma"), prepetition secured lender to the Debtor; (f) all other creditors asserting secured claims against Debtor's estate, including AVT Nevada L.P. and Cole Kepro International, LLC; (g) governmental agencies required to receive notice under Bankruptcy Rule 5003(e); and (h) those parties requesting special notice pursuant to Bankruptcy Rule 2002. Under the circumstances, the notice given by the Debtor of the Motion, the relief requested therein and the Interim Hearing constitutes appropriate, due and sufficient notice thereof, complies with Bankruptcy Rules 4001(b)

and (c) and the Local Bankruptcy Rules, and no further notice of the relief sought at the Interim Hearing and the relief granted herein is necessary or required.

4. *Acknowledgments and Stipulations*. The Debtor and the DIP Lender (solely with respect to paragraphs 2(a)(iii) and 2(b)(iii)) acknowledge, represent, stipulate and agree, subject to the terms of paragraph 17 below, that:

(a) Genesis

(i) Secured Promissory Note Claims. On November 1, 2022, the Debtor entered into that certain Secured Demand Promissory Note (as amended by that certain Amended and Restated Secured Demand Promissory Note, dated as of November 23, 2022, the "Secured Promissory Note") between the Debtor, as borrower, and Genesis, pursuant to which, among other things, Genesis advanced to the Debtor $6 million on November 2, 2022 and $1.5 million on November 23, 2022. As of the Petition Date, the Debtor was indebted to Genesis in the aggregate principal amount of $7,601,524 under the Secured Promissory Note (together with accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors' and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing, that would constitute obligations owing under or in connection with the Secured Promissory Note, the "Genesis Secured Claims").

(ii) Prepetition Liens and Collateral. As more fully set forth in the Secured Promissory Note, the Genesis Secured Claims are secured by first priority liens on and security interests in the "Collateral" under and as defined in the Secured Promissory Note (such liens and security interests, collectively, the "Genesis Liens", and the collateral securing the Genesis Liens, the "Genesis Collateral").

(iii) Validity, Perfection and Priority of Genesis Liens and Genesis Secured Claims. As of the Petition Date, (A) the Genesis Liens constitute valid, binding, enforceable and perfected liens in the Genesis Collateral other than cash, cryptocurrency and other cash equivalents (collectively "Cash"),with priority over any and all other liens in the Genesis

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Collateral excluding Cash (other than the Permitted Priority Liens)[1] and the Debtor or the DIP Lender shall not raise or join any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupments, objections, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; (B) the Genesis Liens were senior in priority over any and all other liens on the Genesis Collateral other than Cash, subject only to liens senior by operation of law or permitted by the Secured Promissory Note, and solely to the extent any such liens constitute Permitted Priority Liens; (C) the Genesis Secured Claims are unconditionally owing by the Debtor and constitute legal, valid, binding and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the Secured Promissory Note; (D) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Genesis Secured Claims exist, and no portion of the Genesis Secured Claims is subject to any challenge or defense including, without limitation, avoidance, disallowance, reductions, set-off, offset, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges pursuant to the Bankruptcy Code or any applicable law or regulation; (E) the Debtor or the DIP Lender shall not raise or join in any assertion of any claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against Genesis, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Secured Promissory Note except to the extent that Genesis seeks to assert a perfected security interest in Cash; and (F) the Debtor and the DIP Lender

[1] "Permitted Priority Liens" means valid non-avoidable and perfected liens in existence on the Petition Date (including valid liens in existence on the Petition Date that are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code) to the extent such liens are senior to (a) with respect to the Genesis Collateral, the Genesis Liens, and (b) with respect to the Enigma Collateral, the Enigma Liens.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

have waived, discharged and released any right to challenge any of the Genesis Secured Claims, the priority of any of the Genesis Secured Claims and the validity, extent and priority of the Genesis Liens except to the extent that Genesis seeks to assert a perfected security interest in Cash; *provided* that, for the avoidance of doubt, nothing herein shall be deemed a waiver by Genesis of any rights, arguments, or defenses it may have with respect to the Genesis Liens, including but not limited to the scope, perfection, and enforceability thereof.

(iv) Payments in Respect of Genesis Secured Claims. Any payments made on account of the Genesis Secured Claims prior to the Petition Date were (A) payments out of the Genesis Collateral and/or (B) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors.

(v) Adequate Protection. The Debtor has requested that Genesis consent to, among other things, (a) the incurrence of the DIP Obligations by the Debtor under the DIP Documents and (b) the Debtor's granting of the priming DIP Liens (as defined below) in connection therewith. Genesis is entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interests in the Genesis Collateral for any diminution resulting from the sale, lease or use by the Debtor (or other decline in value) of any Genesis Collateral, the priming of the Genesis Liens by the DIP Lender pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise.

(b) Enigma.

(i) Secured Claims. On or about April 22, 2022, the Debtor entered into that certain Secured Loan Facility Agreement (as amended, superseded, or otherwise modified from time to time, the "Enigma Loan") pursuant to which Enigma loaned the Debtor $8 million. As of the Petition Date, the Debtor was indebted to Enigma in the aggregate principal amount of not less than $7,593,699 (together with accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors' and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

contingent, whenever arising, due or owing, that would constitute obligations owing under or in connection with the Enigma Loan, the "Enigma Secured Claims").

(ii) Prepetition Liens and Collateral. The Enigma Secured Claims are secured by first priority liens on and security interests in the "Collateral" under and as defined in the Enigma Loan (such liens and security interests, collectively, the "Enigma Liens", and the collateral securing the Enigma Liens, the "Enigma Collateral").

(iii) Validity, Perfection and Priority of Enigma Liens and Enigma Secured Claims. As of the Petition Date, (A) the Enigma Liens constitute valid, binding, enforceable and perfected liens in, and with priority over any and all other liens in, the Enigma Collateral excluding Cash (other than the Permitted Priority Liens) and the Debtor or the DIP Lender shall not raise or join any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, recoupments, objections, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity; (B) the Enigma Liens were senior in priority over any and all other liens on the Enigma Collateral other than Cash, subject only to liens senior by operation of law or permitted by the Enigma Loan, and solely to the extent any such liens constitute Permitted Priority Liens; (C) the Enigma Secured Claims are unconditionally owing by the Debtor and constitute legal, valid, binding and non-avoidable obligations of the Debtor enforceable in accordance with the terms of the Enigma Loan; (D) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Enigma Secured Claims exist, and no portion of the Enigma Secured Claims is subject to any challenge or defense including, without limitation, avoidance, disallowance, reductions, set-off, offset, disgorgement, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges pursuant to the Bankruptcy Code or any applicable law or regulation; (E) the Debtor or the DIP Lender shall not raise or join in any assertion of any claims, objections, challenges, causes of action and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Code or applicable state law equivalents or actions for recovery or disgorgement, against Enigma, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees arising out of, based upon or related to the Enigma Loan except to the extent that Enigma seeks to assert a perfected security interest in Cash; and (F) the Debtor and the DIP Lender have waived, discharged and released any right to challenge any of the Enigma Secured Claims, the priority of any of the Enigma Secured Claims and the validity, extent and priority of the Enigma Liens except to the extent that Enigma seeks to assert a perfected security interest in Cash; *provided,* that for the avoidance of doubt, nothing herein shall be deemed a waiver by Enigma of any rights, arguments, or defenses it may have with respect to the Enigma Liens, including but not limited to the scope, perfection, and enforceability thereof.

(iv) Payments in Respect of Enigma Secured Claims. Any payments made on account of the Enigma Secured Claims prior to the Petition Date were (A) payments out of the Enigma Collateral and/or (B) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors.

(v) Adequate Protection. The Debtor has requested that Enigma consent to, among other things, (a) the incurrence of the DIP Obligations by the Debtor under the DIP Documents and (b) the Debtor's granting of the priming DIP Liens (as defined below) in connection therewith. Enigma is entitled, pursuant to sections 361, 363(e) and 364(d)(l) of the Bankruptcy Code, to adequate protection of its interests in the Enigma Collateral for any diminution resulting from the sale, lease or use by the Debtor (or other decline in value) of any Enigma Collateral, the priming of the Enigma Liens by the DIP Lender pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise.

5. *Findings Regarding the DIP Financing.*

(a) Good and sufficient cause has been shown for the entry of this Interim Order.

(b) The Debtor has an immediate need to obtain the DIP Financing to preserve its assets, including to pay insurance, taxes and payroll. The Debtor's access to and use of the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

proceeds of the DIP Financing is necessary and vital to ensure that the Debtor has sufficient working capital and liquidity to preserve and maintain the value of its estate, to make adequate protection payments to Genesis and Enigma as provided in this Interim Order, and to facilitate a reorganization of the Debtor or a sale of the Debtor's assets.

(c) The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lender pursuant to, and for the purposes set forth in, the DIP Documents and is unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code for the purposes set forth in the DIP Documents without the Debtor granting the DIP Liens (as defined in paragraph 8 below) and the DIP Superpriority Claims (as defined in paragraph 7 below) under the terms and conditions set forth in this Interim Order and the DIP Documents.

(d) The terms of the DIP Documents pursuant to this Interim Order are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e) The DIP Documents and the DIP Financing have been the subject of extensive negotiations conducted in good faith and at arms'-length among the Debtor, the DIP Lender, and the Guarantors, and all of the Debtor's obligations and indebtedness arising under or in connection with the DIP Financing, including, without limitation, (i) all loans made to the Debtor pursuant to the DIP Documents and (ii) all other obligations of the Debtor under the DIP Documents or this Interim Order owing to the DIP Lender (collectively, the "<u>DIP Obligations</u>"), shall be deemed to have been extended by the DIP Lender and its affiliates in "good faith", as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f) The Debtor has requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

the relief sought by this Interim Order, the Debtor's estate will be immediately and irreparably harmed. Consummation of the DIP Financing in accordance with the terms of this Interim Order and the DIP Documents is therefore in the best interest of the Debtor's estate and is consistent with the Debtor's exercise of its fiduciary duties.

6. *Authorization of the DIP Financing and the DIP Documents.*

(a) The Debtor is hereby authorized to execute, enter into and perform under the DIP Documents and to borrow thereunder up to an aggregate principal amount of $2,500,000 (plus interest, including any interest capitalized and added to such principal amount, fees and other expenses provided for in the DIP Documents), pending entry of the Final Order, all of the foregoing in accordance with the terms of this Interim Order, the DIP Note and the other DIP Documents. All of the amounts borrowed shall be used solely for the purposes permitted under this Interim Order, the DIP Note and the other DIP Documents and in accordance with the Budget.

(b) In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements) and to pay all reasonable fees and expenses that the DIP Lender incurs in connection with the preparation, execution and delivery of the DIP Documents, or the Debtor's performance of its obligations under the DIP Documents and the DIP Financing, including without limitation:

(i) the execution, delivery and performance of the DIP Documents;

(ii) the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in this case in such form as the Debtor and the DIP Lender may agree, and no further approval of this Court shall be required for amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) unless such amendments, waivers, consents or other modifications are material; and

(iii) the performance of all other acts required under or in connection with the DIP Documents.

(c) Upon execution and delivery of the DIP Documents, the DIP Documents (other than the Guaranties) shall constitute valid, binding and non-avoidable obligations of the Debtor, enforceable against the Debtor in accordance with the terms of this Interim Order and the DIP Documents (other than the Guaranties). The Guaranties shall constitute valid, binding and non-avoidable obligations of the Guarantors, enforceable against the Guarantors in accordance with the terms of this Interim Order and the Guaranties. No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

7. *DIP Superpriority Claims*. Subject to the Carve-Out (as defined in paragraph 14 below), pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "DIP Superpriority Claims") against the Debtor with priority over any and all administrative expenses and all other claims against each the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor and all proceeds thereof including, subject to the entry of the Final Order, causes of action under chapter 5 of the Bankruptcy Code and the proceeds

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

thereof (collectively, "Avoidance Actions").

8. *DIP Liens*. As security for the DIP Obligations, and subject to the Carve-Out (as defined in paragraph 14 below), effective and perfected upon the date of this Interim Order and without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Lender of any Collateral (as defined in this paragraph 8), the following security interests and liens are hereby granted by the Debtor to DIP Lender (all property identified in clauses (a), (b), and (c) below being collectively referred to as the "Collateral", and all such liens and security interests granted to the DIP Lender, pursuant to this Interim Order and the DIP Documents, the "DIP Liens"):

(a) First Lien On Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, fully-perfected first priority senior lien on, and security interest in, all tangible and intangible prepetition and postpetition property of the Debtor other than Avoidance Actions (which lien upon Avoidance Actions may be granted upon entry of the Final Order), whether existing on or as of the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to valid, perfected, enforceable and unavoidable liens or are not subject to valid, enforceable and unavoidable liens perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (collectively, the "Unencumbered Property"), including without limitation, any and all unencumbered cash, cryptocurrency, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, of all of the foregoing; and

(b) Junior Liens on Cole Kepro Collateral. Pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

fully-perfected second priority senior lien on, and security interest in the equipment that is subject to Purchase Orders Nos. 1102022-1, 152022-1, 1132021-1, 11220221, 12152021-2, 1312022-2, 212022-1, 2142022-1, 1152022-1, 1252022-1 and 1272022-1 issued by the Debtor to Cole Kepro International, LLC (the "Cole Kepro Collateral"), that shall be junior and subordinate only to the lien (if any) of Cole Kepro International, LLC; and

(c) First Priority Priming Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Lender is hereby granted a valid, binding, continuing, enforceable, automatically perfected, non-avoidable, security interest in all tangible and intangible prepetition and postpetition property of the Debtor other than Avoidance Actions (which lien upon Avoidance Actions may be granted upon entry of the Final Order), including without limitation, any and all encumbered cash, cryptocurrency, accounts receivable, other rights to payment, inventory, general intangibles, contracts, documents, instruments, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, wherever located, and the proceeds, products, rents and profits thereof, whether now existing or hereafter acquired, excepting only the Cole Kepro Collateral (the "DIP Priming Lien"). The DIP Priming Lien is senior in priority and superior to any security, mortgage, collateral interest, lien, claim or interest to or on, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all valid, enforceable and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

9. *Adequate Protection for Genesis*. As adequate protection for and to the extent of any diminution in the value of the Genesis Collateral resulting from, among other things, the incurrence of the DIP Obligations, the granting of the DIP Liens and the agreement of the Genesis to subordinate their right to receive payment from the proceeds of Genesis Collateral to the Carve-Out (collectively, the "Genesis Diminution Claim"), Genesis is hereby granted (in each case subject and subordinate to the DIP Liens, the DIP Superpriority Claims and the Carve-Out) the following adequate protection (collectively, the "Genesis Adequate Protection Obligations"):

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(a) Adequate Protection Liens. Subject to paragraph 17 hereof, to secure the Genesis Diminution Claim, Genesis is, solely to the extent of the Genesis Diminution Claim, hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Genesis Replacement Liens") in and on all of the Genesis Collateral, *provided*, *however*, that the Genesis Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof and (ii) the Carve-Out.

(b) Adequate Protection Superpriority Claims. Subject to paragraph 17 hereof, as further adequate protection for and solely to the extent of the Genesis Diminution Claim, Genesis is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Genesis Adequate Protection Superpriority Claim"), which allowed Genesis Adequate Protection Superpriority Claim shall be payable from and have recourse to all of the Genesis Collateral and all proceeds thereof. The Genesis Adequate Protection Superpriority Claim shall be subject and subordinate only to the DIP Superpriority Claims and the Carve-Out.

(c) Legal Fees and Expenses. As additional adequate protection, the Debtor shall pay all reasonable and documented outstanding fees and out-of-pocket expenses (the "Genesis Adequate Protection Fee Payments"), including, but not limited to, reasonable and documented fees and out-of-pocket expenses of legal counsel, incurred by Genesis, whether incurred prior to or after the Petition Date; *provided* that the aggregate amount of Genesis Adequate Protection Fee Payments paid by the Debtor will not exceed $100,000; provided, further, that to the extent the Debtor agrees to increase any cap on the DIP Lender's fees and expenses set forth in this Order or the Budget, the cap on Genesis's fees and expenses set forth in this paragraph shall

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

increase proportionately. The prior or simultaneous payment of all invoiced and outstanding Genesis Adequate Protection Fee Payments as of the Petition Date shall be a condition to funding of any portion of the DIP Note. The Genesis Adequate Protection Fee Payments are hereby approved and shall not be subject to disgorgement by any party for any reason; *provided, however*, that the payment of any postpetition Genesis Adequate Protection Fee Payments shall be subject to the review procedures set forth in paragraph 20 of this Interim Order.

(d) Information Rights and Financial Reporting. With respect to any Budget or any other financial reporting that is delivered by the Debtor to the DIP Lender under the DIP Documents, the Debtor shall, on the same date as any such delivery, deliver a copy of any such Budget or financial reporting to Genesis.

(e) Case Milestones. Any milestone related to the Debtor or the Chapter 11 Case in any of the DIP Documents (and any amendment or other modification of any such milestone) shall be subject to the prior written consent of Genesis, which consent shall not be unreasonably withheld or delayed.

(a) As additional adequate protection, (i) Genesis shall be entitled to cash payments on the last day of each month, which payments shall each be in the amount calculated as (A) the amount of the Genesis Secured Claims as of the Petition Date *multiplied by* (B) a rate of 6.25% per annum (computed on the basis of a 360-day year of twelve 30-day months); (ii) an allowed administrative expense claim accruing at a rate of 6.25% of the outstanding amount of Genesis Secured Claims; (iii) the Debtor shall maintain any insurance policies that were applicable to the Genesis Collateral as of the Petition Date and shall maintain the Genesis Collateral in good working order in the ordinary course of business; (iv) following the occurrence of an Event of Default (as defined below), prior to seeking payment of any DIP Obligations from the Genesis Collateral, the DIP Lender shall first satisfy the DIP Obligations from Collateral other than the Genesis Collateral; and (v) Genesis shall be entitled to the additional benefits set forth in this Interim Order, including paragraphs 17 (Challenge Period), 18 (Preservation of Rights Granted Under the Order) and 19 (Limitation on Use of DIP Financing Proceeds and Collateral) hereof.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(b) Consent to Priming and Adequate Protection. Genesis consents to the priming provided for herein; *provided*, *however*, that such consent to the priming and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order relating to the DIP Documents and DIP Note set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor-in-possession financing other than the DIP Note provided under the DIP Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Documents and DIP Note as set forth herein are not approved.

10. *Adequate Protection for Enigma*. As adequate protection for and to the extent of any diminution in the value of the Enigma Collateral resulting from, among other things, the incurrence of the DIP Obligations, the granting of the DIP Liens and the agreement of Enigma to subordinate their right to receive payment from the proceeds of Enigma Collateral to the Carve-Out (collectively, the "Enigma Diminution Claim"), Enigma is hereby granted (in each case subject and subordinate to the DIP Liens, the DIP Superpriority Claims and the Carve-Out) the following adequate protection (collectively, the "Enigma Adequate Protection Obligations," and together with the Genesis Adequate Protection Obligations, the "Adequate Protection Obligations"):

(a) Adequate Protection Liens. Subject to paragraph 17 hereof, to secure the Enigma Diminution Claim, Enigma is, solely to the extent of the Enigma Diminution Claim, hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements and/or other agreements or instruments) valid, perfected, postpetition security interests and liens (the "Enigma Replacement Liens, and together with the Genesis Replacement Liens, the "Replacement Liens") in and on all of the Enigma Collateral, *provided*, *however*, that the Enigma Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof and (ii) the Carve-Out.

(b) Adequate Protection Superpriority Claims. Subject to paragraph 17 hereof, and as further adequate protection for and solely to the extent of the Enigma Diminution

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Claim, Enigma is hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtor or its estate, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Enigma Adequate Protection Superpriority Claim," and together with the Genesis Adequate Protection Superpriority Claim, the "Adequate Protection Superpriority Claims"), which allowed Enigma Adequate Protection Superpriority Claim shall be payable from and have recourse to all of the Enigma Collateral and all proceeds thereof. The Enigma Adequate Protection Superpriority Claim shall be subject and subordinate only to the DIP Superpriority Claims and the Carve-Out.

(c) Legal Fees and Expenses. As additional adequate protection, the Debtor shall pay all reasonable and documented outstanding fees and out-of-pocket expenses (the "Enigma Adequate Protection Fee Payments"), including, but not limited to, reasonable and documented fees and out-of-pocket expenses of legal counsel, incurred by Enigma, whether incurred prior to or after the Petition Date; *provided*, that the aggregate amount of Enigma Adequate Protection Fee Payments paid by the Debtor will not exceed $100,000; *provided, further*, that to the extent the Debtor agrees to increase any cap on the DIP Lender's fees and expenses set forth in this Order or the Budget, the cap on Enigma's fees and expenses set forth in this subparagraph (c) shall increase proportionately. The Enigma Adequate Protection Fee Payments are hereby approved and shall not be subject to disgorgement by any party for any reason; *provided, however*, that the payment of any postpetition Enigma Adequate Protection Fee Payments shall be subject to the review procedures set forth in paragraph 20 of this Interim Order.

(d) Outstanding Forbearance Payments. To the extent that any amounts owed to Enigma pursuant to that certain (i) Second conditional forbearance letter in relation to $8,000,000 Secured Loan Facility Agreement, dated as of December 22, 2022, and as set forth on Schedule 1 thereto, or (ii) Third conditional forbearance letter in relation to $8,000,000

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Secured Loan Facility Agreement, dated as of February 3, 2023, and as set forth on Schedule 1 thereto, remained due and owing as of the Petition Date, the Debtor shall remit payment of such amounts to Enigma promptly after the entry of this Order.

(e) Information Rights and Financial Reporting. With respect to any Budget or any other financial reporting that is delivered by the Debtor to the DIP Lender under the DIP Documents, the Debtor shall, on the same date as any such delivery, deliver a copy of any such Budget or financial reporting to Enigma.

(f) Case Milestones. Any milestone related to the Debtor or the Chapter 11 Case in any of the DIP Documents (and any amendment or other modification of any such milestone) shall be subject to the prior written consent of Enigma, which consent shall not be unreasonably withheld or delayed.

(g) As additional adequate protection, (i) Enigma shall be entitled to postpetition interest calculated at 12.5% of the outstanding amount of the Enigma Secured Claims, consisting of (i) monthly cash payments on the last day of each month equivalent to interest calculated at 6.25% and (ii) an allowed administrative expense claim accruing at 6.25%; *provided*, that nothing herein shall be deemed to be an admission by the Debtor that Enigma is oversecured, and the Debtor and Enigma reserve all rights and defenses with respect thereto; (ii) the Debtor shall maintain any insurance policies that were applicable to the Enigma Collateral as of the Petition Date and shall maintain the Enigma Collateral in good working order in the ordinary course of business; (iii) following the occurrence of an Event of Default (as defined below), prior to seeking payment of any DIP Obligations from the Enigma Collateral, the DIP Lender shall first satisfy the DIP Obligations from Collateral other than the Enigma Collateral; (iv) the Debtor covenants that no person other than the DIP Lender shall be granted a senior or pari passu lien on the Enigma Collateral; (v) the Debtor shall transact with Engima (or its designee) as its sole business liquidity provider with respect to cryptocurrency trading; *provided*, that Enigma shall provide the Debtor with such liquidity at reasonable market rates; and (vi) Enigma shall be entitled to the additional benefits set forth in this Interim Order, including paragraphs 17 (Challenge Period), 18 (Preservation of Rights Granted Under the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Order) and 19 (Limitation on Use of DIP Financing Proceeds and Collateral) hereof.

(h) Consent to Priming and Adequate Protection. Enigma consents to the priming provided for herein; *provided*, *however*, that such consent to the priming and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order relating to the DIP Documents and DIP Note set forth herein, and such consent shall not be deemed to extend to any replacement or other debtor-in-possession financing other than the DIP Note provided under the DIP Documents; *provided*, *further*, that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Documents and DIP Note as set forth herein are not approved.

11. *Events of Default.* The occurrence of any of the following events, unless waived in writing in accordance with the DIP Documents, shall constitute an "Event of Default": (a) the failure of the Debtor to perform, in any respect, any of the terms, provisions, conditions, covenants, or obligations under this Interim Order; (b) the Debtor seeks any modification or extension of this Interim Order or the Final Order without the consent of the DIP Lender; (c) any application is filed by the Debtor for the approval of (or an order is entered by the Court approving) any claim arising under section 507(b) of the Bankruptcy Code or otherwise, or any lien in the Chapter 11 Case, which is *pari passu* with or senior to the DIP Obligations or the DIP Liens; (d) the (i) commencement of any action by the Debtor or (ii) support by the Debtor of the commencement of any action by any other party-in-interest with standing against any of the DIP Lender to subordinate or avoid any liens made in connection with the DIP Documents or to avoid any obligations incurred in connection with the DIP Documents; (e) any order shall be entered granting relief from the stay arising under section 362 of the Bankruptcy Code to the holder or holders of any security interest, lien or right of setoff to permit foreclosure (or the granting of a deed in lieu of foreclosure or similar instrument), possession, set-off or any similar remedy with respect to any Collateral; (f) the Debtor shall assert in any pleading filed in any court that any material provision of this Interim Order or the Final Order is not valid and binding for any reason; or (g) the occurrence of an "Event of Default" under the DIP Credit Agreement.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

12. *Remedies after Event of Default*. Upon the occurrence and during the continuation of an Event of Default and notwithstanding the provisions of section 362 of the Bankruptcy Code, but subject to the expiration of the Remedies Notice Period (as defined herein), the DIP Lender, in its discretion, may declare (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable, (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtor to the extent any such commitment remains, (c) the termination of the DIP Financing and the DIP Documents as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations, (d) that the Carve-Out has been triggered through the delivery of written notice, (e) the termination, reduction or restriction on the ability of the Debtor to use Cash Collateral, and (f) the imposition of the default rate of interest set forth in the DIP Credit Agreement (any of the foregoing shall be referred to as a "Termination Declaration"). The Termination Declaration shall be given by electronic mail or facsimile (or other electronic means) to counsel to the Debtor, counsel for the official committee of unsecured creditors (if appointed) (the "Committee"), counsel to Enigma, counsel to Genesis, and the U.S. Trustee and filed on docket of the Chapter 11 Case (and the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). Any automatic stay otherwise applicable to the DIP Lender is hereby modified so that four (4) business days after the Termination Declaration Date (such four (4) business day period, the "Remedies Notice Period") the DIP Lender shall be entitled to immediately exercise its rights and remedies in accordance with the DIP Documents and/or this Interim Order, as the case may be, and shall be permitted to satisfy the DIP Obligations, the DIP Superpriority Claim and the DIP Liens in each case subject to the Carve-Out (as defined in paragraph 14 below). During the Remedies Notice Period (A) the Debtor may use Cash Collateral solely to pay payroll and other expenses critical to keep the business of the Debtor operating in accordance with the Budget, and (B) the Debtor shall be entitled to seek an emergency hearing before the Court, within the Remedies Notice Period, for the purpose of contesting whether a Termination Event has occurred and/or is not continuing. Unless the Court determines otherwise during the Remedies Notice Period, the automatic stay, as to the DIP Lender, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order. Upon expiration

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

of the Remedies Notice Period, the DIP Lender shall be permitted to exercise all remedies set forth herein and in the DIP Documents, and as otherwise available at law without further order of or application or motion to the Court.

13. *Limitation on Charging Expenses Against Collateral*. Subject only to and effective upon entry of the Final Order, notwithstanding anything to the contrary contained herein, no costs or expenses of administration of the Chapter 11 Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Lender to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

14. *Carve-Out.* The DIP Superpriority Claims and DIP Liens granted to the DIP Lender pursuant to this Interim Order shall be junior and subordinate to (a) all fees required to paid by the Debtor to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a), (b) all fees due the Clerk of the Court, (c) the allowed fees and disbursements as may be awarded to the professionals of the Debtor and the Committee (the "Estate Professionals") from time to time pursuant to Bankruptcy Code § 330, in the aggregate amount set forth in the Budget and only to the extent such fees were incurred prior to an Event of Default but not yet paid, and (d) up to $100,000 in aggregate fees and expenses incurred by the Estate Professionals following an Event of Default (collectively, the "Carve-Out").

15. *Payments Free and Clear*. Any and all payments or proceeds remitted to the DIP Lender, Enigma, or Genesis pursuant to the provisions of this Interim Order or any subsequent order of this Court shall be received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or 552(b) of the Bankruptcy Code.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

16. *Perfection of DIP Liens*.

(a) The DIP Lender is hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the DIP Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, unavoidable and not subject to challenge, dispute or subordination at the time and on the date of entry of this Interim Order. The Debtor shall execute and deliver to the DIP Lender, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Lender may reasonably request to more fully evidence, confirm, validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b) A certified copy of this Interim Order may, in the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

(c) Any provision of any lease or other license, contract or other agreement that requires the consent or approval of one or more landlords or other parties, or requires the payment of any fees or obligations to any governmental entity, in order for the Debtor to pledge, grant, sell, assign or otherwise transfer any such interest or the proceeds thereof or other Collateral, is hereby and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting the DIP Lender a security interest in and lien on such interest or the proceeds of any assignment and/or sale thereof by the Borrower or any Guarantor in favor of the DIP Lender in accordance with the terms of the DIP Documents and this Interim Order.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17. *Reservation of Certain Third Party Rights and Bar of Challenges and Claims.*

(a) Upon entry of this Interim Order, the Debtor's and the DIP Lender's acknowledgements, agreements and stipulations set forth in paragraph 4 above (the "Stipulations") shall be binding upon the DIP Lender, the Debtor and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee or examiner appointed or elected for the Debtor) in all circumstances and for all purposes.

(b) The Stipulations shall be binding upon each other party in interest, including the Committee, if any, unless such Committee or any other party in interest having standing other than the Debtor (or if the Chapter 11 Case is converted to a case under chapter 7 (the "Successor Case") prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case), first commences, by the later of (x) the date that is sixty (60) calendar days from the entry of this Interim Order and (y) any later date as has been agreed to, in writing, by Genesis or Enigma, as applicable (such time period established by the later of clauses (x) and (y), the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period with respect to Genesis or Enigma, as applicable, in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period with respect to Genesis or Enigma, as applicable, or (ii) such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings or releases included in the Stipulations or (B) a contested matter, adversary proceeding or other action against Genesis or Enigma, as applicable, in connection with or related to the Genesis Secured Claims or Enigma Secured Claims, as applicable, or the actions or inactions of Genesis or Enigma, as applicable, arising out of or related to the Genesis Secured Claims or Enigma Secured Claims, as applicable, or otherwise, including, without limitation, any claim against Genesis or Enigma, as applicable, in the nature of a "lender liability" cause of action, setoff, counterclaim or defense to the Genesis Secured Claims or Enigma Secured Claims, as applicable, (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

and/or 552 of the Bankruptcy Code (in each case including a contested matter, adversary proceeding or other action or "claim" brought derivatively on behalf of the Debtor's estate but excluding those under section 506(c) of the Bankruptcy Code) ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding or other action.

(c) Upon the applicable Challenge Period Termination Date with respect to Genesis or Enigma, and for all purposes in the Chapter 11 Case and any Successor Case, (i) all payments made to or for the benefit of Genesis or Enigma, as applicable, pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived and barred, (iii) the Genesis Secured Claims or Enigma Secured Claims, as applicable, shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code and (iv) the Stipulations in paragraph 4 hereof shall be binding on all parties in interest, including any Committee, as if such parties had made such Stipulations.

18. *Preservation of Rights Granted Under the Order*.

(a) Subject to the Carve-Out (as defined in paragraph 14 above), no claim or lien having a priority senior to or *pari passu* with those granted by this Interim Order or the DIP Documents to the DIP Lender shall be granted or allowed while any portion of the DIP Obligations (or any refinancing thereof) remain outstanding and the Commitment (as defined in the DIP Note) has not been terminated, and the DIP Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b) Unless all DIP Obligations shall have been indefeasibly paid in full in cash and the Commitment shall have been terminated (i) the Debtor shall not seek, and it shall

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

constitute an immediate Event of Default under the DIP Note if the Debtor seeks, or if there is entered, any modification of this Interim Order without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Lender, or (ii) it shall constitute an immediate Event of Default under the DIP Note if any order is entered converting or dismissing the Chapter 11 Case. If an order dismissing the Chapter 11 Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (w) the DIP Superpriority Claims, the DIP Liens, the Adequate Protection Superpriority Claims and the Replacement Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash, and the Commitment shall have been terminated, (x) such DIP Superpriority Claims, DIP Liens, Adequate Protection Superpriority Claims and Replacement Liens shall, notwithstanding such dismissal, remain binding on all parties in interest, (y) the other rights granted by this Interim Order shall not be affected, and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(c) If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Lender, Enigma, or Genesis of the effective date of such reversal, stay, modification or vacation, as applicable, or (ii) the validity, priority or enforceability of the DIP Liens or the Replacement Liens. Notwithstanding any such reversal, stay, modification or vacation, any DIP Obligations or Adequate Protection Obligations incurred by the Debtor to the DIP Lender prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Lender, Enigma or Genesis, as applicable, shall be entitled to all of

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and pursuant to the DIP Documents with respect to all DIP Obligations and Adequate Protection Obligations.

(d) Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Superpriority Claims, the Replacement Liens and all other rights and remedies of the DIP Lender, Enigma, or Genesis, as applicable, granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, dismissing the Chapter 11 Case, or (ii) the entry of an order confirming a plan of reorganization for the Debtor and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of this Interim Order and the DIP Documents shall continue in the Chapter 11 Case, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the DIP Obligations, the DIP Superpriority Claims, the Replacement Liens, the Adequate Protection Obligations, the Adequate Protection Superpriority Claims and all other rights and remedies of the DIP Lender, Enigma, or Genesis, as applicable, granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, and the Commitment has been terminated.

19. *Limitation on Use of DIP Financing Proceeds and Collateral*. The Debtor shall use the proceeds of the DIP Financing solely as provided in this Interim Order and in the DIP Documents (including, but not limited to, the Budget). Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans under the DIP Note may be used (a) for professional fees and expenses incurred for any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise) against the DIP Lender or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by the DIP Lender or asserting any defense, claim, cause of action, counterclaim, or offset

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

with respect to the DIP Obligations or the security interests in or liens on the Collateral or against the DIP Lender or its agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (b) to prevent, hinder or otherwise delay the DIP Lender's assertion, enforcement or realization on the Collateral in accordance with the DIP Documents or this Interim Order, (c) to seek to modify any of the rights granted to the DIP Lender under this Interim Order or under the DIP Documents, in this case without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, or (d) pay any amount on account of any claims arising prior to the Petition Date without the DIP Lender's prior written consent, which may be given or withheld by the DIP Lender in the exercise of its respective sole discretion, unless such payments are (i) approved by an order of this Court and (ii) permitted under the DIP Documents (including, but not limited to, the Budget).

20. *Lender's Fees and Expenses.* Provided that the Closing occurs, the Debtor is authorized and directed to pay all reasonable and documented out-of-pocket expenses of the DIP Lender incurred in connection with the DIP Financing and the preparation and negotiation of the DIP Documents, as provided in the DIP Documents, including without limitation, legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses (collectively, the "DIP Negotiation Expenses"). Payment of all such DIP Negotiation Expenses shall not be subject to allowance by the Court. Professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines; provided, however, that on or before receiving payment or reimbursement after the Petition Date for any professional fees incurred by the DIP Lender pursuant to the DIP Documents, the DIP Lender shall provide a summary fee statement along with a summary of tasks performed by all professionals during such period (such statement, a "Fee Statement") to the U.S. Trustee and counsel for the official committee of unsecured creditors (if appointed) contemporaneously with the delivery thereof to the Debtor. To the extent that the Debtor, the U.S. Trustee, or the committee has an objection to the reasonableness of the fees and expenses of any such professional, and cannot resolve the objection within ten (10) days of receipt of the Fee Statement, then the Debtor, the U.S. Trustee, or committee shall file with this Court and serve on such

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

professionals an objection (the "Fee Objection") limited to the issue of the reasonableness of such professionals' fees and expenses, and any failure by the Debtor, the U.S. Trustee, or committee to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable Fee Statement. The Fee Statement shall not be required to comply with any particular format, may be in summary form only, but must at a minimum include a general, brief description of the nature of the matters worked on, a list of the professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, shall include the year of law school graduation for each attorney; *provided*, that the Debtor, the U.S. Trustee, and the Committee reserve the right to seek that copies of such invoices containing the detailed time entries of the applicable professional be provided to such party (and each applicable professional reserves all rights to object to such request and to redact privileged, confidential or sensitive information from any information provided to such parties). Any objection to, and any hearing on an objection to, payment of any fees, costs, and expenses set forth in a Fee Statement shall be limited to the reasonableness of the particular items or categories of the fees, costs, and expenses that are the subject of such objection. The Debtor shall promptly pay (a) the undisputed fees, costs, and expenses reflected on any Fee Statement to which a Fee Objection has been timely filed, (b) all fees, costs and expenses on any invoice to which no Fee Objection has been timely filed and (c) all fees, costs and expenses subject to a Fee Objection that are ultimately allowed by a final, non-appealable order resolving such Fee Objection, or pursuant to a consensual resolution of the Fee Objection reached by the DIP Lender and the party timely submitting such Fee Objection. All unpaid fees, costs, expenses, and charges of the DIP Lender that have not been disallowed by this Court on the basis of a timely filed Fee Objection shall constitute DIP Obligations and shall be secured by the Collateral.

21. *Exculpation.* Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business or maintenance of assets, or in connection with its restructuring and sale efforts. So long as the DIP Lender complies with its

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

obligations under the DIP Documents and its obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Lender shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Debtor.

22. *Order Governs*. In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

23. *Retention of Jurisdiction.* The Bankruptcy Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for the Debtor notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

24. *Binding Effect; Successors and Assigns*. The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Case, including without limitation, the DIP Lender, the Debtor and the Guarantors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of the Debtor, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of the Debtor or with respect to the property of the estate of the Debtor) and shall inure to the benefit of the DIP Lender and the Debtor and their respective successors and assigns, *provided* that the DIP Lender shall have no obligation to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estate of the Debtor.

25. *Limitation of Liability*. The Debtor shall seek in the Final Order, in addition to the protections offered to the DIP Lender in this Interim Order, the following provision: "In determining to make any loan or other extension of credit under the DIP Note, or in exercising any rights or remedies as and when permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the DIP Lender shall not (i) be deemed to be in "control" of the operations of the Debtor, (ii) owe any fiduciary duty to the Debtor, its respective creditors, shareholders or estate, and (iii) be deemed to be

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtor (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute)."

26. *Credit Bid.* Subject to and effective upon entry of the Final Order, the DIP Lender shall have the unqualified right to credit bid all or any portion of the outstanding DIP Obligations in any sale of the Collateral under or pursuant to (i) section 363 of the Bankruptcy Code, (ii) a plan of reorganization or plan of liquidation under section 1129 of the Bankruptcy Code, or (iii) a sale or disposition by a chapter 7 trustee for the Debtor under section 725 of the Bankruptcy Code.

27. *Effectiveness*. This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28. *Headings.* Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

29. *Final Hearing*. The Final Hearing will be held by this Court on **March 17, 2023** at **9:30 a.m.** (prevailing Pacific time). The Debtor shall promptly transmit copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Committee. Any party in interest objecting to the relief sought at the Final Hearing shall file a written objection, which shall be served upon: (a) ) Fox Rothschild LLP, 1980 Festival Plaza Drive, Suite 700, Las Vegas, Nevada 89135, Attn: Brett Axelrod, attorneys for the Debtor; (b) Berger Singerman LLP, 1450 Brickell Avenue, Suite 1900, Miami, FL 33131, Attn: Jordi Guso and Sylvester & Polednak Ltd., 1731 Village Center Circle, Las Vegas, NV 89134, Attn: Jeffrey R. Sylvester, attorneys to the DIP Lender; (c) Cleary Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, NY 10006, Attn: Sean A. O'Neal and Jane VanLare, attorneys for Genesis; (d) Morrison &

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Foerster LLP, 250 West 55th Street, New York, NY 10019, Attn: Gary S. Lee and Andrew Kissner, and Shea Larsen, 1731 Village Center Circle, Suite 150, Las Vegas, NV 89134, Attn: James Patrick Shea, attorneys to Enigma; and (e) the Office of the United States Trustee, 300 Las Vegas Boulevard S., Suite 4300, Las Vegas, NV 89101 (the "Notice Parties"), and shall be filed with the Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later than **March 3, 2023** at **5:00 p.m.** (prevailing Pacific time). All replies to objections shall be served on the objecting party and the Notice Parties, and shall be filed with the Clerk of the United States Bankruptcy Court, District of Nevada, in the Chapter 11 Case to allow actual receipt by the foregoing no later **March 10, 2023** at **5:00 p.m.** (prevailing Pacific Time).

**IT IS SO ORDERED.**

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By *___/s/Brett A. Axelrod___*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*[Proposed] Counsel for Debtor*

**APPROVED**:

**OFFICE OF THE UNITED STATES TRUSTEE**

By *___/s/Jared A. Day___*
Jared A. Day,
Trial Attorney for Tracy Hope Davis,
United States Trustee
Foley Federal Building
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, Nevada 89101

**APPROVED**:

**SNELL & WILMER L.L.P.**

By *____/s/Robert R. Kinas___________*

ROBERT R. KINAS, ESQ. (NV Bar No. 6019)
BLAKELEY E. GRIFFITH, ESQ. (NV Bar No. 12386)
CHARLES E. GIANELLONI, ESQ. (NV Bar No. 12747)
3883 Howard Hughes Parkway, Suite 1100
Las Vegas, NV 89169

and

SEAN A. O'NEAL, ESQ. (pro hac vice forthcoming)
JANE VANLARE, ESQ. (pro hac vice forthcoming)
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
*Attorneys for Genesis Global Holdco, LLC*

**APPROVED:**

**MORRISON & FOERSTER LLP**

By *____/s/Andrew Kissner___________*

GARY LEE, ESQ. (Admitted Pro Hac Vice)
New York Bar No. 2397669
ANDREW KISSNER, ESQ. (Admitted Pro Hac Vice)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601

and

**SHEA LARSEN**
JAMES PATRICK SHEA, ESQ.
Nevada Bar No. 405
BART K. LARSEN, ESQ.
Nevada Bar No. 8538
KYLE M. WYANT, ESQ.
Nevada Bar No. 14652
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
*Attorneys for Enigma Securities Limited*

**APPROVED:**

**BERGER SINGERMAN LLP**

By ___/s/Jordi Guso___
JORDI GUSO, ESQ. *(admitted pro hac vice)*
1450 Brickell Avenue, Suite 1900
Miami, FL 33131

and

**SYLVESTER & POLEDNAK, LTD.**
JEFFREY R. SYLVESTER, ESQ.
Nevada Bar No. 4396
1731 Village Center Circle
Las Vegas, NV 89134
*Attorneys for Interested Party CKDL Credit, LLC*

**APPROVED:**

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By ___/s/Ogonna M. Brown___
OGONNA M. BROWN, ESQ. Bar No. 7589
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

and

PAUL HAGE, ESQ. *(admitted pro hac vice)*
RICHARD KRUGER, ESQ. *(admitted pro hac vice)*
Taft Stettinius & Hollister LLP
27777 Franklin Road, Suite 2500
Southfield, MI 48034
*Attorneys for Creditor Cole Kepro International, LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☒ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

| | |
|---|---|
| Jared A. Day, Trial Attorney<br>Office of the United States Trustee | APPROVED |
| Robert R. Kinas, Esq.<br>Snell & Wilmer L.L.P.<br>*Attorneys for Genesis Global Holdco, LLC* | APPROVED |
| Andrew Kissner, Esq.<br>Morrison Foerster LLP<br>*Attorneys for Enigma Securities Limited* | APPROVED |
| Jordi Guso, Esq.<br>Berger Singerman LLP<br>*Attorneys for Interested Party CKDL Credit, LLC* | APPROVED |
| Ogonna M. Brown, Esq.<br>Lewis Rothgerber Christie<br>*Attorneys for Creditor Cole Kepro International, LLC* | APPROVED |

☐ I certify that this is a case under Chapter 7 or 13, that I has served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Schedule 1 - Guarantors

1. Evive Trading LLC, a Cayman Islands company
2. Sec Vend LLC, a Nevada limited liability company
3. Coin Cloud Brasil Ativos Digitais Ltda., a Brazilian limited company
4. Coin Cloud LLC, a Nevada limited liability company

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**EXHIBIT A TO INTERIM DIP ORDER**

**BUDGET**

**Coin Cloud**
**13-Week Cash Flow**
*HIGHLY PRELIMINARY DRAFT & SUBJECT TO MATERIAL CHANGE*
*PREPARED AT THE REQUEST OF COUNSEL*

*February 14, 2023*
**SUBJECT TO DIP LENDER APPROVAL**

*Effective Date:* Week 19
*Admin Cure Funding:* $ 3,000,000

| # | Week Number / Week Beginning / Week Ending | Week 0 24-Jan 30-Jan | Week 1 31-Jan 6-Feb | Week 2 (CV Cures) 7-Feb 13-Feb | Week 3 14-Feb 20-Feb | Week 4 21-Feb 27-Feb | Week 5 28-Feb 6-Mar | Week 6 7-Mar 13-Mar | Week 7 14-Mar 20-Mar | Week 8 21-Mar 27-Mar | Week 9 28-Mar 3-Apr | Week 10 4-Apr 10-Apr | Week 11 11-Apr 17-Apr | Week 12 18-Apr 24-Apr | Week 13 25-Apr 1-May | Total Week 13 31-Jan 1-May | Total Week 19 31-Jan 12-Jun | Total Week 24 31-Jan 17-Jul |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | **Revenue** | 3,825,219 | 3,755,400 | 3,755,400 | 3,755,400 | 3,830,400 | 3,905,400 | 3,960,900 | 3,960,900 | 3,960,900 | 3,801,300 | 3,801,300 | 3,801,300 | 3,801,300 | 3,801,300 | 49,891,200 | 72,699,000 | 72,699,000 |
| | *Kiosk Cash* | | | | | | | | | | | | | | | | | |
| 2 | Beginning Balance | 5,328,167 | 5,380,061 | 5,310,242 | 5,310,242 | 5,310,242 | 5,385,242 | 5,460,242 | 5,515,742 | 5,515,742 | 5,515,742 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,380,061 | 5,380,061 | 5,380,061 |
| 3 | (+) Customer Deposits | 3,825,219 | 3,755,400 | 3,755,400 | 3,755,400 | 3,830,400 | 3,905,400 | 3,960,900 | 3,960,900 | 3,960,900 | 3,801,300 | 3,801,300 | 3,801,300 | 3,801,300 | 3,801,300 | 49,891,200 | 72,699,000 | 72,699,000 |
| 4 | (-) Armored Collections | (3,773,325) | (3,825,219) | (3,755,400) | (3,755,400) | (3,755,400) | (3,830,400) | (3,905,400) | (3,960,900) | (3,960,900) | (3,960,900) | (3,801,300) | (3,801,300) | (3,801,300) | (3,801,300) | (49,915,119) | (72,722,919) | (72,722,919) |
| 5 | **Ending Balance** | 5,380,061 | 5,310,242 | 5,310,242 | 5,310,242 | 5,385,242 | 5,460,242 | 5,515,742 | 5,515,742 | 5,515,742 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 |
| | *Receipts* | | | | | | | | | | | | | | | | | |
| 6 | Armored Deposits | 2,662,263 | 3,773,325 | 3,825,219 | 3,755,400 | 3,755,400 | 3,755,400 | 3,830,400 | 3,905,400 | 3,960,900 | 3,960,900 | 3,960,900 | 3,801,300 | 3,801,300 | 3,801,300 | 49,887,144 | 72,694,944 | 72,699,000 |
| 7 | **Total Receipts** | 2,662,263 | 3,773,325 | 3,825,219 | 3,755,400 | 3,755,400 | 3,755,400 | 3,830,400 | 3,905,400 | 3,960,900 | 3,960,900 | 3,960,900 | 3,801,300 | 3,801,300 | 3,801,300 | 49,887,144 | 72,694,944 | 72,699,000 |
| | *Disbursements* | | | | | | | | | | | | | | | | | |
| 8 | Crypto Currency Purchases | (3,130,000) | (3,004,320) | (3,004,320) | (3,004,320) | (3,064,320) | (3,124,320) | (3,168,720) | (3,168,720) | (3,168,720) | (3,041,040) | (3,041,040) | (3,041,040) | (3,041,040) | (3,041,040) | (39,912,960) | (58,159,200) | (58,159,200) |
| 9 | Exchange Fees | | (1,803) | (1,803) | (1,803) | (1,839) | (1,875) | (1,901) | (1,901) | (1,901) | (1,825) | (1,825) | (1,825) | (1,825) | (1,825) | (23,948) | (34,896) | (34,896) |
| 10 | Host Expense[1] | | (761,650) | (75,000) | (75,000) | (75,000) | (761,650) | (75,000) | (75,000) | (75,000) | (809,918) | (75,000) | (75,000) | (75,000) | (809,918) | (3,818,136) | (5,003,054) | (5,003,054) |
| 11 | Location Expenses[2] | | - | - | - | (675,430) | - | - | - | (675,170) | - | - | - | (659,440) | - | (2,010,040) | (2,653,480) | (2,653,480) |
| 12 | Payroll & Benefits | | (22,600) | (332,600) | (22,600) | (332,600) | (22,600) | (332,600) | (22,600) | (332,600) | (22,600) | (332,600) | (22,600) | (332,600) | (22,600) | (2,153,800) | (3,219,400) | (3,219,400) |
| 13 | Building Expenses | | - | - | - | (72,500) | - | - | - | (72,500) | - | - | - | (72,500) | - | (217,500) | (290,000) | (290,000) |
| 14 | In-Transit Slippage Contingency | | (13,388) | (13,144) | (13,144) | (13,144) | (13,406) | (13,669) | (13,863) | (13,863) | (13,863) | (13,305) | (13,305) | (13,305) | (13,305) | (174,703) | (254,530) | (254,530) |
| 15 | Other G&A | | (36,425) | (36,425) | (111,882) | (36,425) | (36,425) | (36,425) | (114,713) | (36,425) | (36,425) | (36,425) | (113,249) | (36,425) | (36,425) | (704,094) | (1,074,696) | (1,074,696) |
| 16 | **Total Operating Disbursements** | (3,675,534) | (3,840,186) | (3,463,291) | (3,228,749) | (4,271,257) | (3,960,276) | (3,628,315) | (3,396,797) | (4,376,179) | (3,925,671) | (3,500,194) | (3,267,018) | (4,232,134) | (3,925,112) | (49,015,181) | (70,689,256) | (70,689,256) |
| 17 | **Cashflow From Operations** | (1,013,271) | (66,861) | 361,928 | 526,651 | (515,857) | (204,876) | 202,085 | 508,603 | (415,279) | 35,229 | 460,706 | 534,282 | (430,834) | (123,812) | 871,963 | 2,005,688 | 2,009,744 |
| | *Restructuring Related* | | | | | | | | | | | | | | | | | |
| 18 | DIP Fees / Expansion Fee[3] | | - | - | - | - | - | - | - | - | (150,000) | - | - | - | - | (150,000) | (150,000) | (150,000) |
| 19 | Lease Cures[4] | | - | - | - | - | - | - | - | - | - | - | - | - | - | - | - | (3,200,000) |
| 20 | Critical Vendor Payments[5] | | - | (700,000) | - | - | - | - | - | - | - | - | - | - | - | (700,000) | (700,000) | (2,067,517) |
| 21 | Retention Bonuses (TBD) | | - | - | - | - | - | - | - | - | - | - | (150,000) | - | - | (150,000) | (150,000) | (150,000) |
| 22 | Post-Petition Cash Interest (Genesis / Enigma) | | - | (63,615) | - | - | - | (63,615) | - | - | - | (63,615) | - | - | - | (190,844) | (318,073) | (318,073) |
| 23 | Bitaccess Machine Reactivation[6] | | - | - | - | - | (120,000) | - | - | - | - | - | - | - | - | (120,000) | (120,000) | (120,000) |
| 24 | UST Fees | | - | - | - | - | - | - | - | - | - | - | - | - | (97,628) | (97,628) | (97,628) | (228,272) |
| 25 | US Litigation Counsel | | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (25,000) | (325,000) | (475,000) | (500,000) |
| 26 | Misc Reserve | | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (195,000) | (285,000) | (385,000) |
| 27 | **Total Restructuring Related Disbursements** | - | (40,000) | (803,615) | (40,000) | (40,000) | (160,000) | (103,615) | (40,000) | (40,000) | (190,000) | (103,615) | (190,000) | (40,000) | (137,628) | (1,928,472) | (2,295,701) | (7,118,862) |
| | *Bankruptcy Professional Accruals[7]* | | | | | | | | | | | | | | | | | |
| 28 | Debtor Counsel (Fox Rothschild) | | (120,000) | (60,000) | (60,000) | (60,000) | (60,000) | (50,000) | (50,000) | (50,000) | (40,000) | (40,000) | (40,000) | (40,000) | (40,000) | (710,000) | (900,000) | (900,000) |
| 29 | Debtor Financial Advisor (Province) | | (120,000) | (60,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (50,000) | (40,000) | (30,000) | (30,000) | (680,000) | (800,000) | (800,000) |
| 30 | DIP Lender Counsel | | (40,000) | (20,000) | (20,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (15,000) | (230,000) | (300,000) | (300,000) |
| 31 | Other Lender Counsel | | - | - | - | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (100,000) | (150,000) | (150,000) |
| 32 | Claims & Noticing Reserves (Stretto) | | (25,000) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (12,500) | (175,000) | (250,000) | (250,000) |
| 33 | Independent Director | | - | - | - | - | (5,000) | - | - | - | (5,000) | - | - | - | (5,000) | (15,000) | (20,000) | (20,000) |
| 34 | UCC Financial Advisor (TBD) | | - | - | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (8,824) | (97,059) | (150,000) | (150,000) |
| 35 | UCC Counsel (TBD) | | - | - | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (14,706) | (161,765) | (250,000) | (250,000) |
| 36 | **Total Non-Operating / Professional Fee Reserve** | - | (305,000) | (152,500) | (166,029) | (171,029) | (176,029) | (161,029) | (161,029) | (161,029) | (156,029) | (151,029) | (141,029) | (131,029) | (136,029) | (2,168,824) | (2,820,000) | (2,820,000) |
| 37 | **Net Cash Flow before Financing Activities** | (1,013,271) | (411,861) | (594,187) | 320,622 | (726,887) | (540,905) | (62,559) | 307,573 | (616,309) | (310,800) | 206,062 | 203,252 | (601,864) | (397,470) | (3,225,332) | (3,110,013) | (7,929,118) |
| 38 | Beginning DIP Balance (& Admin Cure Funding) | - | - | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | - | - | - |
| 39 | Draw / (Repayment) | - | 2,500,000 | - | - | - | - | - | - | - | 2,500,000 | - | - | - | - | 5,000,000 | 5,000,000 | 8,000,000 |
| 40 | **Ending DIP Balance (& Admin Cure Funding)** | - | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 2,500,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 5,000,000 | 8,000,000 |
| 41 | **Net Cash Flow After Financing Activities** | (1,013,271) | 2,088,139 | (594,187) | 320,622 | (726,887) | (540,905) | (62,559) | 307,573 | (616,309) | 2,189,200 | 206,062 | 203,252 | (601,864) | (397,470) | 1,774,668 | 1,889,987 | 70,882 |
| | *Operating Cash Account* | | | | | | | | | | | | | | | | | |
| 42 | Beginning Balance | 1,239,301 | 226,030 | 2,314,169 | 1,719,982 | 2,040,604 | 1,313,717 | 772,812 | 710,253 | 1,017,826 | 401,517 | 2,590,717 | 2,796,779 | 3,000,031 | 2,398,168 | 226,030 | 226,030 | 226,030 |
| 43 | Chg. In Cash Balance (Including Professional Accruals) | (1,013,271) | 2,088,139 | (594,187) | 320,622 | (726,887) | (540,905) | (62,559) | 307,573 | (616,309) | 2,189,200 | 206,062 | 203,252 | (601,864) | (397,470) | 1,774,668 | 1,889,987 | 70,882 |
| 44 | **Ending Balance** | 226,030 | 2,314,169 | 1,719,982 | 2,040,604 | 1,313,717 | 772,812 | 710,253 | 1,017,826 | 401,517 | 2,590,717 | 2,796,779 | 3,000,031 | 2,398,168 | 2,000,698 | 2,000,698 | 2,116,017 | 296,913 |
| 45 | (+) Professional Fee Reserves | - | 305,000 | 457,500 | 623,529 | 794,559 | 970,588 | 1,131,618 | 1,292,647 | 1,453,676 | 1,609,706 | 1,760,735 | 1,901,765 | 2,032,794 | 2,168,824 | 2,168,824 | 2,820,000 | 2,820,000 |
| 46 | (-) Disbursements From Professional Fee Reserves | - | - | - | - | (65,000) | (65,000) | (65,000) | (205,000) | (205,000) | (205,000) | (205,000) | (205,000) | (392,500) | (392,500) | (392,500) | (1,873,559) | (2,820,000) |
| 47 | **Ending Balance (Including Professional Fees Set Aside)** | 226,030 | 2,619,169 | 2,177,482 | 2,599,134 | 2,043,276 | 1,678,400 | 1,776,870 | 2,105,473 | 1,650,194 | 3,995,423 | 4,352,514 | 4,696,796 | 4,038,462 | 3,777,021 | 3,777,021 | 3,062,458 | 296,913 |
| | ***Memo: Estimated Enterprise Cash*** | | | | | | | | | | | | | | | | | |
| | Total Kiosk Balance[8] | 5,380,061 | 5,310,242 | 5,310,242 | 5,310,242 | 5,385,242 | 5,460,242 | 5,515,742 | 5,515,742 | 5,515,742 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | 5,356,142 | - |
| | Cash In-Transit Estimate[9] | 3,036,790 | 1,691,357 | 1,691,357 | 1,691,357 | 1,725,136 | 1,758,914 | 1,783,910 | 1,783,910 | 1,783,910 | 1,712,030 | 1,712,030 | 1,712,030 | 1,712,030 | 1,712,030 | 1,712,030 | 1,712,030 | - |
| | Estimated Crypto Assets Balance[10] | 550,000 | 895,438 | 895,438 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | 934,048 | - |
| | Operating Cash Account | 226,030 | 2,619,169 | 2,177,482 | 2,599,134 | 2,043,276 | 1,678,400 | 1,776,870 | 2,105,473 | 1,650,194 | 3,995,423 | 4,352,514 | 4,696,796 | 4,038,462 | 3,777,021 | 3,777,021 | 3,062,458 | 296,913 |
| | **Total Cash & Equivalents (Including Inventory Cash)** | 9,192,881 | 10,516,206 | 10,074,519 | 10,534,780 | 10,087,701 | 9,831,604 | 10,010,570 | 10,339,173 | 9,883,894 | 11,997,642 | 12,354,733 | 12,699,015 | 12,040,681 | 11,779,241 | 11,779,241 | 11,064,677 | 296,913 |
| | Minimum Liquidity Threshold | - | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | (6,500,000) | - |
| | Crypto Balance Exclusion | - | (895,438) | (895,438) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | (934,048) | - |
| | **Excess Liquidity Availability** | 9,192,881 | 3,120,769 | 2,679,081 | 3,100,733 | 2,653,654 | 2,397,556 | 2,576,523 | 2,905,125 | 2,449,846 | 4,563,595 | 4,920,686 | 5,264,968 | 4,606,633 | 4,345,193 | 4,345,193 | 3,630,630 | 296,913 |

*Footnotes:*

*(1) Primarily includes payments on certain post petition leases and host-related contracts.*
*(2) Includes payments on certain post petition services for armored trucks and DCM service providers.*
*(3) 3% of total loan commitment per DIP term sheet.*
*(4) Estimated amount due in lease cures for go-forward leases; to be refined.*
*(5) Preliminary estimate to cure certain critical vendors at a discount.*
*(6) Cost of reactivating certain go-forward machines paid in advance.*
*(7) Professionals reflected on an accrual basis; Includes a $100k carve-out for Debtor and UCC.*
*(8) Inventory cash reported as physically inside of the kiosk / machine; cannot be used for operations unless collected.*
*(9) Cash being transported to company bank accounts by contracted armored truck servicers; cannot be used for operations until received.*
*(10) Cryptocurrency working capital cushion being utilized for customer transactions; account is continiously depleted and then recapitalized throughout each period.*
*Note : Does not include adjustments for seasonal ramp-up associated with physical cash economies.*
*Note : Assumes the reorganized Debtor is the beneficiary of cash flow from operations after the effective date if Admin Cure Funding is active.*
*Note : Assumes there is a cash sweep of working capital cash and equivalents after the effective date for administrative claim funding.*