```
                    UNITED STATES BANKRUPTCY COURT
                    DISTRICT OF NEVADA (LAS VEGAS)

                                        .
IN RE:                                  .  Case No. 23-10423-mkn
                                        .  Chapter 11
CASH CLOUD, INC.,                       .
                                        .  300 Las Vegas Blvd. South
                                        .  Las Vegas, NV 89101
               Debtor.                  .
                                        .  Wed., February 15, 2023
. . . . . . . . . . . . . . . .  .  10:31 A.M.
```

   TRANSCRIPT OF OST RE: EMERGENCY MOTION REGARDING CHAPTER 11
  FIRST DAY MOTIONS APPLICATION FOR ORDER AUTHORIZING RETENTION
   AND EMPLOYMENT OF FOX ROTHSCHILD LLP AS DEBTORS COUNSEL,
EFFECTIVE AS OF THE PETITION DATE WITH PROPOSED ORDER FILED BY
     BRETT A. AXELROD ON BEHALF OF CASH CLOUD, INC. [13];
OST RE: EMERGENCY MOTION REGARDING CHAPTER 11 FIRST DAY MOTIONS
 APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF
PROVINCE LLC AS DEBTORS FINANCIAL ADVISOR, EFFECTIVE AS OF THE
PETITION DATE WITH PROPOSED ORDER FILED BY BRETT A. AXELROD ON
                BEHALF OF CASH CLOUD, INC. [15]
             BEFORE THE HONORABLE MIKE K. NAKAGAWA
             UNITED STATES BANKRUPTCY COURT JUDGE


TELEPHONIC APPEARANCES:


For the Debtor:          Fox Rothschild LLP
                         By:  BRETT A. AXELROD, ESQ.
                         1980 Festival Plaza Drive, Suite 700
                         Las Vegas, NV 89135
                         (702) 262-6899

APPEARANCES CONTINUED.

Audio Operator:          Maribel Rowa, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
TELEPHONIC APPEARANCES (Continued):


For Genesis Global            Snell & Wilmer LLP
Holdco, LLC:                  By:  ROBERT R. KINAS, ESQ.
                              3883 Howard Hughes Parkway #1100
                              Las Vegas, NV 89169
                              (702) 784-5200

                              Cleary Gottlieb
                              By:  SEAN A. O'NEAL, ESQ.
                              One Liberty Plaza
                              New York, NY 10006
                              (212) 225-2416


For CKDL Credit, LLC:         Berger Singerman LLP
                              By:  JORDI GUSO, ESQ.
                              1450 Brickell Avenue, Suite 1900
                              Miami, FL 33131
                              (305) 755-9500

                              Sylvester & Polednak, Ltd.
                              By:  JEFFREY SYLVESTER, ESQ.
                              1731 Village Center Circle
                              Las Vegas, NV 89134
                              (702) 952-5200

For Enigma Securities
Limited:                      Morrison Foerster LLP
                              By:  ANDREW KISSNER, ESQ.
                              250 West 55th Street
                              New York, NY 10019-3601
                              (212) 336-4117

                              Shea Larsen PC
                              By:  JAMES PATRICK SHEA, ESQ.
                              1731 Village Center Cir., Suite 150
                              Las Vegas, NV 89134
                              (702) 471-7423

For the United States
Trustee:                      Office of the U.S. Trustee
                              By:  JARED A. DAY, ESQ.
                              300 Booth Street, #3009
                              Reno, NV 89509
                              (775) 784-5335


For Cennox Reactive
Field Services:               The Goggans Law Firm
                              By:  MICHAEL GOGGANS, ESQ.
                              1706 24th Avenue
                              Meridian, MS 39301
                              (601) 282-8886
```

```
For Cole Kepro           Lewis Roca Rothgerber Christie
International, LLC:       By:  OGONNA M. BROWN, ESQ.
                         3993 Howard Hughes Parkway
                         Suite 600
                         Las Vegas, NV 89169-5996
                         (702) 474-2622

                         Taft Stettinius and Hollister LLP
                         BY:  RICHARD KRUGER, ESQ.
                         27777 Franklin Road, Suite 2500
                         Southfield, MI 48034

For Province, LLC:
                         Province, LLC
                         By:  DAVID DACHELET, ESQ.
                         2360 Corporate Circle, Suite 330
                         Henderson, NV 89074
                         (702) 525-6938

Also Present:
                         PAUL HUYGENS
                         DANIEL MOSES
                         Province, LLC
```

1

1          (Proceedings commence at 10:31 a.m.)

2          MR. KINAS:  Good morning, Your Honor.  Robert Kinas

3    of Snell & Wilmer, Nevada counsel for Genesis Global Holdco.

4    Also on the phone is Sean O'Neal of Cleary Gottlieb, lead

5    counsel for Genesis Global Holdco.

6          THE COURT:  Okay.  Thank you.

7          MR. SHEA:  Good morning, Your Honor.  James Patrick

8    Shea of Shea Larsen, appearing as Nevada counsel for Enigma

9    Securities Limited.  And with me on the phone today, Your

10   Honor, is Andrew Kissner of Morrison & Foerster as lead

11   counsel.

12         THE COURT:  Okay.  Thank you.

13         MR. SYLVESTER:  Good morning, Your Honor.  Jeffrey

14   Sylvester as Nevada counsel for CKDL Credit, LLC.  Also on the

15   phone is Jordi Guso of Berger Singerman as lead counsel.

16         THE COURT:  Okay.  Thank you.

17         Other appearances in the Cash --

18         MR. DAY:  Good morning.

19         THE COURT:  Go ahead.

20         MR. DAY:  Oh, good morning, Your Honor.  This is

21   Jared Day, Department of Justice, appearing for the

22   U.S. Trustee.

23         THE COURT:  Okay.  Thank you.

24         MS. BROWN:  Good morning, Your Honor.  Ogonna Brown

25   from the law firm of Lewis Roca, Bar Number 7589, on behalf of

1    Cole Kepro.  I'm local counsel and I believe Paul Hage from

2    Taft Jaffe, and his pro hac vice application was submitted,

3    it's Docket Number 98 and 99, thank you.

4              THE COURT:  Okay.  Thank you.

5              MR. KRUGER:  Your Honor, sorry to interrupt.  This is

6    Richard Kruger, I'm Paul's partner at Taft.  He is stuck in a

7    mediation, so he asked me to cover this hearing.  I have not

8    yet filed a pro hac, but I'm working with Ms. Brown for getting

9    a pro hac in place this week.  This is on behalf of Cole Kepro.

10             THE COURT:  Okay.  Any other appearances?

11             MR. HUYGENS:  Yes, Your Honor.  This is Paul Huygens.

12   I should have Dave Dachelet and possibly Dan Moses on, as well.

13   I can't see everybody.  We're with Province, and we're the

14   proposed financial advisor to the debtor.

15             THE COURT:  Okay.

16             MR. DACHELET:  Yes, good morning, Your Honor.  Dave

17   Dachelet appearing on behalf of Province, Bar Number 6615.

18             THE COURT:  Okay.

19             MR. MOSES:  Dan -- Dan Moses is also attending from

20   Province.

21             THE COURT:  Okay.  Thank you.

22             Any other appearances?  All right.  There are no

23   other appearances --

24             MR. GOGGANS:  Your Honor, Michael Goggans -- sorry,

25   Your Honor, Michael Goggans, Cennox Reactive Field Services

1  (indiscernible) case.

2         THE COURT:  Okay.  Any other appearances?  All right.

3  Apparently, there are no other appearances.

4         Ms. Axelrod, there was an agenda for the matters

5  scheduled for a hearing on this date and time.  That agenda was

6  filed as Docket Number 96, so it was filed yesterday afternoon.

7  Did you send a copy of the agenda to all the appearing parties

8  today?

9         MS. AXELROD:  Brett Axelrod.  Yes, we did, Your

10 Honor.

11         THE COURT:  Okay.  All right.  The Court will simply

12 proceed in the order listed on the agenda.  There is one thing

13 that is not on the agenda, which I believe was continued.  I

14 think that was the cash management -- or the case management

15 procedures motion, which was Docket Number 10.  Ms. Axelrod,

16 that was continued.  Is that right?

17         MS. AXELROD:  Brett Axelrod.  Yes, that was

18 continued.  We are working with the Office of the United States

19 Trustee to resolve their objection.

20         THE COURT:  Okay.  And that matter was continued.

21 Was that continued to the March 17th date?

22         MS. AXELROD:  Brett Axelrod.  Yes, Your Honor.

23         THE COURT:  Okay.  All right.  So we have the three

24 items on calendar.  The first of which is the application to

25 employ the Fox Rothschild firm.  The second is the application

1    to employ Province LLC as the financial advisor.  The motions

2    are supported by various declarations, including, with respect

3    to item one, your declaration is Docket Number 14.  The

4    declaration of Mr. McAlary is Docket Number 19.  There was an

5    errata to that declaration as Docket Number 34.  And I did read

6    the opposition filed by the U.S. Trustee's Office as Docket

7    Number 76, which also pertained to the Province LLC employment

8    application, as well.  In connection with the latter, the

9    Province employment application, there was the declaration of

10   Mr. Huygens filed as Docket Number 16, reference again to

11   Mr. McAlary's declaration and errata.  There was a separate

12   supplemental verified statement of Mr. Huygens as Docket Number

13   86.  And then, you have the omnibus objection by the U.S.

14   Trustee's Office.  Then I believe, Ms. Axelrod, you filed a

15   reply as Docket Number 93 with respect to both of the

16   employment applications.  Is that correct?

17          MS. AXELROD:  Brett Axelrod.  That is correct, Your

18   Honor.

19          THE COURT:  Okay.  Did I miss any documents that were

20   filed in connection with either of the applications?

21          MS. AXELROD:  Brett Axelrod.  No, Your Honor.

22          THE COURT:  Okay.  All right.  I've reviewed the

23   objections that were made by the U.S. Trustee's Office.  It

24   appears that you've resolved them to a large degree, and that's

25   reflected in the proposed orders attached to the reply

1  document.  And so at that point, assuming that the revised

2  orders reflect your response to the objections, is there

3  anything else you want to add?

4          MS. AXELROD:  Brett Axelrod.  Only when it comes to

5  the Province application.  The only issue that is unresolved is

6  the 328 issue, Your Honor.

7          THE COURT:  Okay.  All right.  All right.  We'll get

8  to that issue in a moment.

9          Mr. Day, on behalf of the U.S. Trustee's Office with

10 respect to the Fox Rothschild employment application, does that

11 proposed order resolve the objections raised by the

12 U.S. Trustee's Office?

13         MR. DAY:  Thank you, Your Honor.  Jared Day for the

14 U.S. Trustee.  If I could just quickly go through the change in

15 terms that do resolve the U.S. Trustee's opposition.  First, we

16 had concerns with any order being entered within the first 21

17 days of the case.  Absent a showing of immediate irreparable

18 harm, the applicant has agreed to create what is in the

19 proposed order as a negative notice period that will give any

20 other party an opportunity to object up through day 21 of the

21 case.  Fox Rothschild has agreed to remove any request for

22 preapproval of any terms and conditions of their employment

23 with exception to their described cap on fees.

24         And I did discuss late last night with counsel for

25 the applicant, there is one provision in the proposed order

1  that's attached to their reply that we have agreed to remove,

2  and that provision is -- that's at Paragraph 1 of the revised

3  proposed order.  It indicates "the application is granted on an

4  interim basis as set forth herein."  We agreed to just remove

5  that provision to avoid running afoul of Bankruptcy Rule

6  6003(a).

7          THE COURT:  All right.

8          MR. DAY:  But with that -- with that change, Your

9  Honor, the proposed order at, I believe, Docket 93 does resolve

10 the U.S. Trustee's opposition.

11         THE COURT:  Okay.  And you were concerned under

12 6003(a) with respect to any relief being provided, essentially,

13 before February 28th.  Is that right?

14         MR. DAY:  Yes, that is correct, Your Honor.

15         THE COURT:  Okay.  All right.  Then, Ms. Axelrod, did

16 you discuss that additional revision with Mr. Day?

17         MS. AXELROD:  Brett Axelrod.  Yes, that was discussed

18 with my firm and Mr. Day, and we're in agreement.

19         THE COURT:  Okay.  And then finally, Mr. Day, the --

20 has any progress been made in forming a creditors' committee at

21 this point?

22         MR. DAY:  Yes, Your Honor.  Thank you for asking.

23 The response deadline to the U.S. Trustee's committee

24 solicitation expired yesterday at midnight.  And so we will be

25 quickly going through all of the responses that we received of

1    creditors expressing interest in serving on the committee and

2    hope to have a committee appointed -- I don't want to lock my

3    client into any specific time period, but tomorrow or Friday at

4    the latest is our hope.

5            THE COURT:  Okay.  So we might actually have a

6    creditors' committee actually formed, perhaps by -- before the

7    end of the week or by the end of the week?  And then, perhaps

8    you would see a -- an application of some sort to appoint

9    counsel for -- or to employ counsel by the committee the

10   following week.  Is that fair to say?

11           MR. DAY:  Yes, Your Honor.  I think that is fair to

12   say.

13           THE COURT:  Okay.  And then as I recall, again, I

14   think I asked you this question.  When is the IDI set for this

15   case?

16           MR. DAY:  Let me see, Your Honor.  It is -- I believe

17   it's March 11.  The specific date is set forth in our

18   opposition.  If it's not March 11th, it's a day before or after

19   that.

20           THE COURT:  Okay.  And then the 341 meeting, it was

21   initially set at least for March 16th.  Is that still the date?

22           MR. DAY:  Jared Day for the U.S. Trustee.  Yes, our

23   plan is to proceed with the 341 meeting on March 16th.  We

24   should have the schedules and statements filed by March 9th.

25           THE COURT:  Okay.  All right.  Okay.  So I have your

1  input, and the U.S. Trustee's office was the only objecting

2  party.  I heard comment from Ms. Axelrod on behalf of the

3  debtor at this point.  Is there anyone else that wishes to be

4  heard in connection with item one on the agenda, dealing with

5  the application to employ the law firm for the

6  debtor-in-possession?  Okay.  Hearing none, I will grant the

7  application on the basis recited.  I'll direct Ms. Axelrod to

8  prepare the appropriate order.

9            And I assume, Mr. Day, you want to sign off on the

10 final version.  Is that correct?

11            MR. DAY:  Yes, Your Honor, thank you.

12            THE COURT:  Okay.  Ms. Axelrod, go ahead and prepare

13 the order with respect to that matter.

14            Then, you get to the item two on the calendar, with

15 respect to the employment of Province.  It appears from the

16 reply that there was a resolution of at least portions of the

17 objection filed by the U.S. Trustee's Office.  And I believe

18 the U.S. Trustee's Office was the only objecting party in the

19 case.  There was a remaining issue that apparently you did not

20 reach agreement.  The other agreements are reflected in the

21 revised order that's attached to the submission by the debtor

22 in the omnibus reply that was filed I believe yesterday.

23            Ms. Axelrod, again, there was the remaining matter

24 for which you requested it be resolved at today's hearing.  So

25 did you want to go ahead and address that?

1          MS. AXELROD:  Brett Axelrod.  Yes, Your Honor, and

2    thank you.

3          Your Honor, the United States Trustee remaining

4    objection is on two fees that we are seeking approval under

5    Section 328(a) of the Bankruptcy Code.  The debtor has

6    demonstrated that the terms contained within the Province

7    employment application is reasonable under the circumstances of

8    this case.  The evidence that we have submitted to support the

9    arranger fee and restructuring fee are that they are lower than

10   comparable fees offered by other financial advisors that were

11   engaged by the debtor prepetition and then subsequently

12   terminated, which had a range of 3 to 6 percent of similar

13   fees.  It's also comparable or lower to other financial

14   advisors employed in bankruptcy cases within this district,

15   which we cite on Page 4 of our reply.

16          And the Court also always has, if the 328(a) relief

17   is granted, the ability to look back to see if it was

18   improvident after the fact.  This is, you know, a debtor that

19   is in need of both the debtor-in-possession financing, which is

20   coming up on the Court's agenda, but also in the need of exit

21   financing.  Province reached out as part of taking on this

22   obligation to help the debtor raise capital, spoke with over 16

23   different parties, and has maintained, you know, budgets, data

24   rooms, connections to try and obtain exit financing.  And in

25   the debtor's business judgment, this is appropriate, it is

1  better than what the debtor had pre-petition, and we would seek

2  an order approving the 328(a) fees.

3          THE COURT:  Okay.  All right.  And then I take it

4  that in addition to the declaration and statements filed by

5  Mr. Huygens in the matters, I believe that was Docket Number

6  16.  You still had the omnibus declaration of Mr. McAlary in

7  which the relief is requested.  And then the position taken in

8  the reply is that the arrangement fee and the restructuring fee

9  is not that out of the ordinary from what the Court -- at least

10  the courts in this jurisdiction have approved in connection

11  with other matters.  So it is not like there is a lack of

12  precedent in this district.  But moreover, there would be the

13  opportunity to object to further approval of the arranger fee

14  or restructuring fee on the basis of -- in Providence.  Is that

15  right?

16          MS. AXELROD:  Brett Axelrod.  Yes, that is accurate,

17  Your Honor.

18          THE COURT:  Okay.  All right.  Mr. Day, I've read the

19  opposition that was filed as Docket Number 76.  Is there

20  anything you have in response to the -- to I guess the reply

21  provided by Ms. Axelrod in connection with the arranger fee,

22  and the other fee in this matter?

23          MR. DAY:  Thank you, Your Honor.  Jared Day for the

24  U.S. Trustee.  The only thing that I would add after having had

25  a chance to read the reply is that the U.S. Trustee's position

1  is clearly that -- not that the success fees should be approved

2  at all, they may very well be appropriate.  We are just asking

3  that the Court preserve the issue for at least the compensation

4  stage and not approve it at this interim retention stage.

5          THE COURT:  Okay.

6          MR. DAY:  That would allow the hopefully to be soon

7  appointed unsecured creditors committee to look at the issue

8  and express an opinion if they so desire, and any other

9  creditors or parties-in-interest in the case.  We, the

10  U.S. Trustee, will typically take this position.  We fully

11  acknowledge that the Court's hands -- if the Court approves the

12  success fee today, the Court's hands are not completely bound,

13  but it does create a more restrictive standard for the Court's

14  review if approval is made at the interim stage.  So, really,

15  our opposition is just requesting the Court to preserve the

16  issue until compensation or towards the end of the case.

17          THE COURT:  Okay.  Well, that seems appropriate in

18  the case, as -- particularly since we do not have a creditors'

19  committee at this particular point in time, and these fees are

20  going to be going forward in the future.

21          Ms. Axelrod, I assume you can accommodate the concern

22  of the trustee's office in the final version of an order.  Is

23  that correct?

24          MS. AXELROD:  Brett Axelrod.  We have agreed with the

25  same language that was put on the record for the Fox Rothschild

1  application, that this too will be subject to the objection

2  deadline on the February 28th, which will give the committee

3  time to weigh in.  And it has the same negative notice

4  provisions, you know, as we set forth in the proposed order,

5  Your Honor.  So I think that is a nice meeting ground with the

6  U.S. Trustee's opposition.

7         THE COURT:  Okay.  Is there anyone else that wishes

8  to be heard in connection with the item -- the second item on

9  the calendar, or the agenda, which addresses the employment of

10  Province LLC as the financial advisor?  All right.  Hearing

11  none, I'll grant the motion as indicated on the record.  I'll

12  direct Ms. Axelrod to prepare the appropriate order.

13         Mr. Day, I assume that you want to sign off.  Is that

14  fair to say?

15         MR. DAY:  Yes, Your Honor.  The U.S. Trustee would

16  like to sign off.  And can I just add we had agreed to the same

17  provision in the financial advisor revised proposed order that

18  we did with regard to the revised Fox Rothschild proposed

19  order, and that is to remove the sentence at Paragraph 1 that

20  indicates the application is granted on an interim basis as set

21  forth herein.  That provision really doesn't make sense with

22  the built-in negative notice procedure that will get us out to

23  day 22 of the case.

24         THE COURT:  Okay.  All right.  Ms. Axelrod, I assume

25  that's your understanding, as well.  Is that correct?

1          MS. AXELROD:  Brett Axelrod.  That is correct.

2          THE COURT:  All right.  Go ahead and correct the

3    order as indicated and circulate it with Mr. Day.  Okay.  That

4    gets us to --

5          MS. AXELROD:  Will do, Your Honor.

6          THE COURT:  All right.  Thank you.

7          That gets us to the final matter that is on the

8    agenda.  That is what has been referred to as the DIP financing

9    motion, if you will.  It is the matter filed, or docketed, as

10   Item 37.  It is supported by the declaration of Mr. McAlary as

11   Docket Number 36.  There is a declaration of Mr. Huygens, it's

12   Docket Number 37.  The declaration of Mr. Moses is Docket

13   Number 38.  There was a notice of filing a revised version as

14   Docket Number 74.  There was a stipulation between Cash Cloud

15   and CKDL Credit and OptConnect with respect to extending

16   various deadlines.  There was an objection that was filed by

17   the Office of the United States Trustee as Docket Number 77.

18   There was an objection filed by Kepro International as Docket

19   Number 80.

20         There was a reply filed by the appropriate parties, I

21   guess an omnibus reply as Docket Number 90.  Another

22   declaration of Mr. Huygens is Docket Number 91.  Another

23   declaration of Mr. Moses is Docket Number 92.  There was the

24   joinder in the response, if you will, by CKDL Credit as Docket

25   Number 88.  There was a joinder, or a limited response to the

1  objection filed by Cole Kepro as Docket Number 89.  There was a

2  reply in support of the motion filed by Genesis Global as

3  Docket Number 94.  There was the declaration of Jamal Zul as

4  Docket Number 95.  I did not see any response that was filed by

5  OptConnect as permitted by the stipulation referenced as Docket

6  Number 78.

7          So I believe, Ms. Axelrod, that's the universe of

8  written matters before the Court.  Is that correct?

9          MS. AXELROD:  Brett Axelrod.  That is correct, Your

10  Honor.

11          THE COURT:  Okay.  And you have had the chance to

12  review, I assume, the opposition.  I've read the reply

13  documents.  At this point you're asking for an interim order in

14  this matter, but you do want at least some type of finding,

15  perhaps not a final finding, but you do want us to find a

16  finding of good faith, I guess, within the meaning of 364(h) --

17  or 364(e).  Is that correct?

18          MS. AXELROD:  Brett Axelrod.  That is correct, Your

19  Honor.

20          THE COURT:  Okay.  All right.  So I think I have the

21  universe of what's being asked for.  I assume you're asking --

22  I believe you're asking for this on immediate basis, on a

23  grounds that it's necessary to avoid irreparable injury in the

24  matter.  So is there anything you want to present in support,

25  or argument you want to present in support of the motion?

1          MS. AXELROD:  Yes, Your Honor.  Brett Axelrod, thank

2   you.  Your Honor, I want to take a step back just to orient

3   creditors and the Court that when the debtor was negotiating

4   for the bankruptcy filing we, you know, went through a whole

5   marketing (indiscernible) --

6          THE COURT:  Hold on, Ms. Axelrod, I apologize for

7   interrupting.  Am I -- do I understand correctly that the

8   Genesis party in this case is the same Genesis that filed, I

9   believe, a separate Chapter 11 in the Southern District of New

10  York back on January 19th.

11         MS. AXELROD:  Brett Axelrod.  That is accurate.  And

12  Genesis also sought relief from its bankruptcy court to agree

13  to this post-petition priming DIP motion.

14         THE COURT:  Okay.  All right.  Sorry to interrupt.

15  Why don't you go ahead and continue.

16         MS. AXELROD:  Thank you, Your Honor.  And so when we

17  were going out to market we had 16 people find NDAs, visit the

18  data room.  And this is supported by the declaration of Daniel

19  Moses from Province.  The debtor received two

20  debtor-in-possession financing offers.  The one that we're

21  seeking approval of is the better offer because it allowed the

22  debtor to have flexibility, rather than immediately having to

23  move to a 363 sale.  We thought it was very important, given

24  this company and the extent of the creditors, to have an

25  opportunity to right-size the company.  Have an opportunity to

1  negotiate with our secured creditors, and to see if we can

2  proceed down the traditional path of a plan of reorganization.

3  With that backdrop in mind, the DIP lender is insisting, and

4  the debtor has agreed to a priming DIP.

5          So we needed to negotiate because it was priming with

6  our creditors.  With Cole Kepro we negotiated a carve out from

7  the priming.  And the Court is aware we have filed adversary

8  proceeding that's pending to determine if Cole Kepro is or is

9  not a secured creditor.  And there has been pre-petition

10 extensive litigation regarding defective machines that the

11 debtor received from Cole Kepro.  We also had to navigate the

12 Genesis bankruptcy filing and negotiate with them so they

13 could, you know, seek relief from their own court prior to us

14 coming before you on this DIP motion.  And we needed to

15 negotiate with Enigma.  So the debtors provided, which is set

16 forth in the declaration, and attached to Paul Huygens's

17 declaration, an adequate protection analysis.

18         We started, in light of all of the other

19 cryptocurrency related cases, with the book value of the

20 various collateral packages that these creditors have.  Not to

21 my surprise, the secured creditors of Genesis and Enigma

22 disagreed with my use of book value and depreciation.  And so

23 we look at this as a holistic package that we had to, you know,

24 offer to the creditors.  An acknowledgement from the debtor,

25 not from a committee, not from other parties of interest, as to

1    the validity of their liens, and that the debtor is not going

2    to challenge.  But we still left it open for all other parties

3    of interest.  The adequate protection relief that we're, you

4    know, affording these secured creditors.  Again, standard.  A

5    cap on attorney's fees, which is a huge benefit to the estate

6    because there has not been a valuation here.  But if these

7    creditors, like the debtor believes, are fully secured at this

8    juncture, they're entitled to all of their attorneys' fees.

9              We've negotiated for payments of interest, we have

10   some in PIC, we have foreign asset claims to help the debtors

11   managed their cash.  We filed, Your Honor, as well, and I would

12   proffer the budget that we negotiated with the United States

13   Trustee's Office to reduce our initial interim relief ask,

14   which was $3 million, to really strip it down to the bare

15   necessity.

16             THE COURT:  All right.  Ms. Axelrod --

17             MS. AXELROD:  This budget --

18             THE COURT:  Ms. Axelrod, was that the budget that was

19   attached I believe as the Exhibit A to the proposed interim DIP

20   financing order?  And that notice was provided as Docket Number

21   74 on February 13th.  Is that the budget you're referring to?

22             MS. AXELROD:  I am actually now referring to the

23   revised budget that was attached to Paul Huygens' declaration

24   at Docket 91, Your Honor.

25             THE COURT:  All right.

1            MS. AXELROD:  And this debtor has, you know, two --

2    you know, well, actually three real buckets of cash assets.

3    One is the cash balances we must maintain in the different

4    Kiosks.  Then we have what's known as cash in transit, and this

5    is the cash that is being picked up by various armored cars.

6    Then we have to keep amount of crypto assets to be able to

7    provide the cryptocurrency to our customers.  And then lastly,

8    we have operating cash.  Excluding the operating cash, the

9    kiosk balance, the cash in transit, and the crypto assets, we

10   refer to as our inventory that can't be used for the day-to-day

11   operations.  So in this budget, you will see the need and

12   necessity to make our critical vendor payments, to pay our

13   hosts, to pay our operations, you know, is all what is needed

14   during this period.  We did put in an assumption, Your Honor,

15   that the final hearing is going to take a little bit of time to

16   close on the final DIP.  And so that's why you have this budget

17   extended, you know, out if the Court grants the final debtor-

18   in-possession financing.  I am happy to -- if the Court would

19   like, to swear in Mr. Huygens.  Or if the Court comfortable

20   with my proffer and his declaration, we can move on from that

21   portion.

22            THE COURT:  Okay.  All right.  And then what you're

23   asking at this point is an interim order from the Court,

24   pursuant to, I believe, 364(c) and (d) authorizing the

25   financing that is at issue at this point in time, including

1  the, I guess the super priority claims and priming liens and

2  others as appropriate.  And then you want the order today, or

3  shortly.  And then you have the provision for with respect to I

4  believe the party named in the adversary complaint.  I think

5  that was Cole Kepro International, that there would be any

6  liens I guess would be junior to any asserted lien by Cole

7  Kepro.  And correct me if I'm wrong, the lien, if any, by Cole

8  Kepro, was the lien in connection with various equipment.  Is

9  that right?

10        MS. AXELROD:  Brett Axelrod.  That is accurate, Your

11  Honor.

12        THE COURT:  Okay.  And then any lien -- priming lien

13  granted in this particular motion would not prime any lien

14  asserted by Cole Kepro because that is in dispute.  Is that

15  right?

16        MS. AXELROD:  Brett Axelrod.  That is accurate.

17        THE COURT:  Okay.  All right.  Anything else you want

18  to add?

19        MS. AXELROD:  Just that, Your Honor, we're also

20  seeking the 363(k) credit bid rights for the DIP lender as

21  well.

22        THE COURT:  I see.  Okay.  All right.  There was, in

23  addition to the motion itself, the declarations of Mr. Huygens,

24  Mr. McAlary, and Mr. Moses, there was the additional

25  declarations filed more recently by Mr. Huygens as Docket

1  Number 91, the declaration of Mr. Moses is Docket Number 92.

2  And then there were the joinders if you will in the motion with

3  additional declarations.  There was, I believe at this point,

4  there were two actual oppositions that were filed.  One was

5  filed by the U.S. Trustee's Office as Docket Number 77.

6  There's the opposition filed by Cole Kepro is Docket Number 80.

7  I will simply hear the oppositions first before hearing from

8  the joining parties.  Mr. Day, your opposition filed as Docket

9  Number 77.  I think one of the grounds for the opposition was a

10  failure to include a budget.  Was that sufficiently addressed

11  by the budget that's attached to Mr. Huygens' declaration as

12  Docket Number 91?

13          MR. DAY:  Thank you, Your Honor.  Jared Day for the

14  U.S. Trustee.  Yes, and we did review the -- we point out, and

15  the Court is well aware that the budget was not filed until the

16  afternoon of the same day that oppositions were due.

17          THE COURT:  Correct.

18          MR. DAY:  So we were not thrilled about it being

19  filed so late, but we have reviewed that budget, along with

20  the, I guess it's a revised budget attached to the most recent

21  declaration.

22          THE COURT:  Okay.  And having reviewed both the

23  original budget and the revised budget, does the U.S. Trustee's

24  Office at this point, subject to a final hearing to finally

25  approve, do you have any reservations by which you would think

1  that at least an interim order should not be granted?

2          MR. DAY:  Your Honor, we met and conferred with

3  proposed general counsel and the proposed financial advisor.

4  And we went through the budget closely.  There are several

5  issues that we think are probably better left to review and

6  opinion by the unsecured creditors committee.

7          THE COURT:  Okay.

8          MR. DAY:  We think that a couple of the budgetary

9  items for the committee look a bit low, but we will defer to

10  the committee's comments on those budgetary items.  As proposed

11  general counsel mentioned, they have agreed to reduce the

12  interim request from 3 million down to 2.5 million.

13          THE COURT:  Okay.

14          MR. DAY:  I don't know that I would describe that as

15  being negotiated with the U.S. Trustee, but we do understand

16  that they've -- they have made a reduction in the request.  But

17  in terms of specific budgetary items, Your Honor, I don't -- I

18  don't have a lot to knit pick here today for this hearing.  But

19  I do have comments with regard to the remainder of the motion

20  and some other issues.

21          THE COURT:  Okay.  So beyond whatever reservations,

22  or if any with respect to the revised budget, you had the other

23  bases to object, I believe.  Do you want to go ahead and

24  articulate those, or do you want to simply rely on what's in

25  the opposition that you filed.

1          MR. DAY:  Jared Day for the U.S. Trustee.  Your

2    Honor, if I could just confirm a few of the relevant points

3    made in our opposition.

4          THE COURT:  Okay.

5          MR. DAY:  The first one, I just wanted to confirm

6    first, liens -- the proposed liens on avoidance actions, it's

7    our understanding that those are not being sought at the

8    interim stage, and those are being held over for the final

9    hearing.  That will give the committee and any other parties in

10   interest that haven't already filed an opposition to weigh in.

11   And that goes -- that goes as to any liens on avoidance

12   actions, as well as the request for 506(c) waiver.  If I could

13   just confirm that both of those are not being requested as part

14   of the interim order.

15          THE COURT:  I see.  All right.  Ms. Axelrod, can you

16   clarify?

17          MS. AXELROD:  Brett Axelrod.  Those are all held over

18   for a final hearing, and that's in the interim DIP order's

19   Paragraph 8A, 8C, and Paragraph 15.

20          THE COURT:  Okay.  And then just to clarify, when you

21   refer to a possible final hearing if an interim order is

22   granted, are you thinking about that same March 17th date?

23          MS. AXELROD:  Brett Axelrod.  Yes, if that is

24   acceptable to the DIP lender, whose counsel is on the phone.

25          THE COURT:  I see.  Okay.  All right.  We'll get

1   there in a moment.  All right.  Anything else, Mr. Day?

2              MR. DAY:  Yes, Your Honor.  Jared Day for the U.S.

3   Trustee.  If I could also confirm on an interim basis that the

4   debtor is not moving to validate any of the secured claims of

5   Genesis or Enigma as part of the interim order?  That was one

6   other thing we wanted to confirm.

7              THE COURT:  Okay.  All right.  Ms. Axelrod.

8              MS. AXELROD:  Brett Axelrod.  The debtor has

9   confirmed both Genesis and Enigma, but that right to challenge

10  is being preserved for a longer period than is standard in most

11  debtor-in-possession financings.  We have actually a 60-day

12  look back for the committee and all other parties.

13             THE COURT:  All right.  60-day look back from what

14  date?

15             MS. AXELROD:  Brett Axelrod.  It is from the petition

16  date.

17             THE COURT:  Okay.  So taking the February -- I

18  believe February 7th petition date, you're thinking about a

19  look back period that goes to approximately April 7th.  Is that

20  right?

21             MS. AXELROD:  That is correct, Your Honor.

22             THE COURT:  Okay.  So during that period of time if

23  there were some objections with respect to the claims of

24  Genesis for Enigma, then that's the period for which those are

25  preserved.  Is that right?

1           MS. AXELROD:  Brett Axelrod.  That is correct.

2           THE COURT:  Okay.  All right.  Mr. Day, does that

3    answer your question?

4           MR. DAY:  Your Honor, Jared Day for the U.S. Trustee.

5    Yes, thank you.  And in that regard, I believe -- and I don't

6    know if it's the period that relates to another provision in

7    the DIP financing proposal.  But we would request that the 60

8    days run not from the petition date, but from the entry of the

9    interim order to provide just a bit more time for the committee

10   and the others to review.

11          THE COURT:  I see.  So that for example, if the

12   request is granted, the interim order is entered, perhaps this

13   Friday or the following -- I guess Monday is a holiday, that

14   would be February -- the following day would be the 21st, you

15   would want that date to run out on or about -- would that be

16   April 28th, thereabouts?  Is that what we're looking at?  Or

17   April 21st?

18          MR. DAY:  Yes, Your Honor.  Yeah, that does sound

19   reasonable, assuming the order is entered in the next few

20   business days.  The interim order.

21          THE COURT:  Yeah, so essentially, you're asking for

22   another 14 days, thereabouts?

23          MR. O'NEAL:  Your Honor?  It's Sean O'Neal from

24   Cleary Gottlieb on behalf of Genesis, if I may?

25          THE COURT:  Certainly, well, let me just get back to

1   Mr. Day first.  Mr. Day, what you're really talking about,

2   instead of looking a look back period out to April 7th, you're

3   looking for a lookback period that runs out to about April

4   21st.  Is that fair to say?

5            MR. DAY:  Yes.  Thank you, Your Honor.

6            THE COURT:  Okay.  I just wanted to make sure about

7   that.  All right.  Now, it was counsel for Genesis that wanted

8   to add something?

9            MR. O'NEAL:  Yes, certainly, Your Honor.  Thank you

10  very much.  I just wanted to note that I believe 17(b)

11  already --

12           THE COURT:  I'm sorry, counsel.  Since we're remote,

13  you have to state your name.

14           MR. O'NEAL:  It's Sean O'Neal.

15           THE COURT:  Okay.

16           MR. O'NEAL:  Clearly Gottlieb on behalf of Genesis.

17           THE COURT:  All right.

18           MR. O'NEAL:  I just wanted to note, Your Honor, if I

19  may, that I believe 17(b) of the interim order already provides

20  that it is 60 days from entry of the interim order.

21           THE COURT:  Okay.

22           MR. O'NEAL:  So I just wanted to let you know that

23  that's in fact what I think the order already says.

24           THE COURT:  Okay.  And that -- and that essentially

25  meets what Mr. Day was requesting.  All right.  Mr. Day,

1  anything else?

2          MR. DAY:  No, Your Honor.  And I think that is the

3  provision that I had read.  So I was just making sure that I

4  didn't hear incorrectly when general counsel was describing the

5  60-day deadline.

6          THE COURT:  All right.  Fair enough.  All right.

7  There were --

8          MR. DAY:  And then --

9          THE COURT:  No, go ahead.

10         MR. DAY:  Oh, I'm sorry, Your Honor.  And then if I

11 could just confirm one other -- we just wanted to make sure

12 that the interim order will not limit the use of any of the DIP

13 financing proceeds from being used to compensate the committee

14 for negotiating any changes to the DIP facility, and or the

15 final order.  We saw a couple of provisions in there that

16 possibly might impair the committee's ability to be compensated

17 for review and negotiation of the final order.

18         THE COURT:  All right.  Ms. Axelrod?

19         MS. AXELROD:  Brett Axelrod.  When it comes to the

20 challenge period, the intention is to give the committee a seat

21 at the table.  Any changes that -- to the debtor's, you know,

22 budget, has to be approved by the DIP lender.

23         THE COURT:  All right.  So how does that address the

24 concern raised by Mr. Day?

25         MS. AXELROD:  Brett Axelrod.  I think that that

1    concern is that we have currently, you know, set forth a budget

2    that has caps.  But like in every other case, once a committee

3    is appointed, the committee is going to negotiate with the

4    parties in interest, and that is anticipated, you know, in

5    every DIP lending situation, Your Honor.

6              THE COURT:  All right.  So you're basically saying

7    that there's the opportunity for the committee to negotiate

8    with the debtor and the DIP lender.  Is that right?

9              MS. AXELROD:  That's correct, Your Honor.

10             THE COURT:  Okay.  Mr. Day, does that answer your

11   question?

12             MR. DAY:  Yes, it does, Your Honor.  And I think I

13   can just hit my final two points, and make those fairly quick

14   so that we --

15             THE COURT:  Okay.

16             MR. DAY:  -- you can move on to the other opposition.

17             THE COURT:  All right.

18             MR. DAY:  We strenuously argued against any Section

19   364(e) finding at the interim stage.  It may very well be

20   appropriate at the final stage, but we would request the Court

21   not enter any 364(e) good faith finding at the interim stage.

22   And then lastly, also at the interim stage, we would request

23   that the default provisions related to the lifting of the

24   automatic stay on what appears to be a -- it's like a four-day

25   cure period, that those not be effective for purposes of the

1  interim order.

2           THE COURT:  Okay.

3           MR. DAY:  And again, those may -- those may get

4  approved at the final order stage, but we would request that

5  the Court not approve the default provisions related to lifting

6  the automatic stay at the interim stage today.

7           THE COURT:  Okay.  But if that's included at the --

8  in a final order, then do you have an objection if that's in a

9  final order?

10          MR. DAY:  We have filed an opposition, Your Honor,

11 and I think I would -- I will wait until the hearing on the

12 final order to address the Court's question, if that's okay?

13          THE COURT:  Okay.

14          MR. DAY:  We may very well still object to that

15 provision being included in the final order.  But we definitely

16 would prefer that the Court not approve it at the interim

17 stage.

18          THE COURT:  I see.  Okay.  All right.  Is that it,

19 Mr. Day?

20          MR. DAY:  Yes, that would cover the U.S. Trustee's

21 opposition to the proposed DIP financing motion.  Thank you,

22 Your Honor.

23          THE COURT:  Okay.  You're welcome.  Then that gets us

24 to the objection that was filed by Cole Kepro.  Is Mr. Kruger

25 or Mr. Hage available to offer that, or Ms. Brown?  Who is

1    going to take the lead on that?

2            MR. KRUGER:  Good morning -- sorry, I'm on the East

3    Coast, good afternoon.  This is Richard Kruger, counsel for

4    Cole Kepro, handling the objection, with the Court's

5    permission.  Again, pro hac vice will be pending soon.

6            THE COURT:  Okay.  You may.

7            MR. KRUGER:  Not going -- not going to revisit the

8    items with Mr. Day that he did a wonderful job, as I'm sure he

9    always does negotiating.  So I'm just going to kind of focus on

10   some of the other specific items.  The first one though is kind

11   of still a gating issue, and this could just be because we're

12   new to the case, new to the process, and everything else.  But

13   there's still a concern on our client's part that the debtor is

14   planning to borrow 2.5 million with attendant fees and interest

15   and everything else.  But as part of that, there is a

16   requirement that they hold 6.5 million of basically what I read

17   to be cash collateral as an excluded item.  Meaning that

18   they'll be holding 6.5 million while borrowing 2.5 million.

19   I'm sure there is plenty of specific nuance to that, but again,

20   we only have what we have, which is the debtor's provisions,

21   the provisions of the DIP -- proposed DIP order, the DIP

22   agreements, and related items.  And even the budget shows that

23   there does not appear to be any hold back pre-petition, and

24   then that seems to -- and when I say hold back, it's the

25   minimum liquidity threshold of 6.5 million.  So that's kind of

1  issue number one, is why are they borrowing money when they

2  have to hold back in excess of that?

3          Number two relates to also the status of Genesis and

4  Enigma.  I know that there is pushback from them as to what the

5  true value of their collateral is.  But the only evidence

6  before this Court today is that they are severely over secured.

7  The debtor's declarations by Mr. -- I'm not going to say his

8  name right, but Mr. Huygens, I believe.  He indicates that they

9  have significant equity cushion.  The papers, responses do say

10  well, we dispute that, but there's no actual evidence before

11  the Court other than the proffers and declarations by the

12  debtor.  So those are kind of two gating issues, if you will.

13          Moving into some of the terms of the order and

14  related things.  Genesis and Enigma are getting replacement

15  liens, while the DIP lender's lien is subject to the priority,

16  if any, of Cole Kepro's secured claim.  Again, if any.  We're

17  not asking for any determination on that.  But the replacement

18  liens granted to Genesis and Enigma are not afforded the same

19  exception for that.  So arguably, Cole Kepro could have a

20  secured claim.  The DIP lied did not prime it, but if there is

21  in fact a failure of adequate protection, then all of a sudden

22  Cole Kepro's lien is subordinated by these replacement liens.

23  So that was our point on that.  Basically the same treatment

24  that the DIP lender is giving on that as well.

25          THE COURT:  I see.

```
 1              MR. KRUGER:  Beyond that, we did talk about, or the
 2   U.S. Trustee and Mr. Day, and Ms. Axelrod did talk about 506(c)
 3   and the avoidance actions.  I hate to see them even in an
 4   interim order.  I get it, they're, you know, telling the
 5   committee that they're going to ask for them.  But I think as
 6   kind of a matter of course, I don't like to see those in there
 7   because it seems to suggest that the Court is okay with them
 8   being in there subject to final order, as opposed to kind of
 9   the opposite, which is like no, I'm not going to grant these
10   until there's a final order.  And with 506(c) in particular --
11   pardon me, Your Honor.  There's also a provision in the interim
12   order, and there's a revision, so I don't have the exact
13   paragraph number.  I did cite it in our response.  But it does
14   suggest that the DIP funding is not to be used for any
15   administrative expense claim unless approved by the Court or
16   set forth in the budget.  And of course the budget is line
17   items, you know, very generic, and raises some concerns about
18   the DIP lender's control over some of these things.  So I can
19   find that for you in a minute, but I wanted to raise that as
20   well.
21              The adequate protection itself, you know, ties back
22   to the position of Enigma and Genesis.  Genesis, as Your Honor
23   did point out at the beginning of the hearing, is subject to
24   its own bankruptcy case.  And they're -- they being Genesis, is
25   taking issue that well, we went and got special authority from
```

1   our courts for this package, we think that this Court should

2   adopt it.  But of course, Cole Kepro was not part of that at

3   all.  They weren't given notice, they weren't provided

4   anything.  And to suggest that they can go and get approval in

5   one court, and use it another court is really just

6   inappropriate.  So I wanted to bring that issue to the

7   forefront as well.

8          And beyond the 506(c) and the avoidance action issues

9   that have already been raised, and in line with the 364(e)

10  finding, we do have concern over the 363(k) provision of --

11  excuse me -- of approving the bidding -- credit bidding rights.

12  Now, 363(k) -- the response was -- I'm sorry about that.  The

13  response was that basically 363(k), all we're doing is

14  preserving rights.  Well, but 363(k) itself preserves rights.

15  It does say that any party may credit bid unless the Court

16  orders otherwise.  And so what they're asking for on an

17  interim, you know, immediate basis, emergency basis, is that

18  your Court -- this Court say that nobody can challenge that in

19  the future.  So if all they want are the protections of 363(k)

20  as written, then it doesn't need to be in the order at all,

21  because they already have that.  So those are mainly the items

22  that we object to.  And again, they go from gatekeeping issues

23  to some of the specific provisions of the order.

24          THE COURT:  Okay.  All right.  Anything else,

25  Mr. Kruger?

 1              MR. KRUGER:  Nothing else, Your Honor.

 2              THE COURT:  Okay.  And then, Mr. Kruger, to the

 3    extent that this is an interim order, and you have a variety of

 4    concerns as raised on behalf of Cole Kepro, and these concerns,

 5    if any, may arise to the creditors' committee as well.  If the

 6    creditors' committee does object to entry of a final order, do

 7    you think it's likely that you would join in the objections on

 8    behalf of your client as well?

 9              MR. KRUGER:  It depends, Your Honor.

10              THE COURT:  Okay.

11              MR. KRUGER:  You know, we all like to see a robust

12    creditors committee be involved.  And if the creditors

13    committee is, you know, carrying the banner, then we don't

14    necessarily need to see that the same duplicate things.

15    Although, I don't know.

16              THE COURT:  Okay.

17              MR. KRUGER:  You know, we haven't forced that issue

18    yet.

19              THE COURT:  Okay.  And then finally to the extent

20    that there objections that need to be resolved going forward,

21    and as much as this is obviously a contested matter at this

22    point, was there some suggestion that your client wants to do

23    discovery as to any of these issues?  I'm trying to get --

24              MR. KRUGER:  Well, Your Honor --

25              THE COURT:  I'm trying to -- Mr. Kruger --

1              MR. KRUGER:  Yeah.

2              THE COURT:  -- all I'm doing, I'm trying to get a

3    sense of if I grant interim relief, and we have a final hearing

4    on March 17th, is it going to be a highly contested proceeding.

5    So I just don't know that.  And I apologize, but I'm putting

6    that suggestion to you, but do you have any idea at this point?

7              MR. KRUGER:  At this point, Your Honor, I'm not sure.

8              THE COURT:  Okay.

9              MR. KRUGER:  There is -- you know, there are certain

10   protections in there.  Not all items are subject to a final

11   order, so we want to make sure, and the 360 -- like I said,

12   similar to the 364(e) reservation, the 362(k), you know, is

13   something.  So some things are effective, which may have to be,

14   and other things can be brought later.  But I don't have clear

15   direction from the client at this point.  And of course we do

16   have a separate adversary proceeding --

17             THE COURT:  Right.

18             MR. KRUGER:  -- which deals with the secured portion

19   of the claim, but that's different anyway.

20             THE COURT:  Okay.  All right.  Okay.  Anything else,

21   Mr. Kruger?

22             MR. KRUGER:  Nothing more, Your Honor, thank you.

23             THE COURT:  Okay.  Thank you very much.  There were

24   various responses that were filed to the oppositions, as well

25   as a joinder in the primary motion as well.  There was a

1  joinder that was filed by the -- I think it was the CKDL

2  credit.  And so if Mr. -- or if Mr. Sylvester wants to go

3  forward, or I think there was lead counsel, Mr. Guso, you may

4  proceed.

5          MR. GUSO:  Yes, sir.  May it please the Court.  This

6  is Jordi Guso.  My surname, Your Honor, is spelled G-U-S-O.

7          THE COURT:  Okay.

8          MR. GUSO:  And we are counsel to the proposed DIP

9  lender.  With the Court's permission, Your Honor, I will

10  address the comments of the United States Trustee and counsel

11  for Cole Kepro in the order in which they raised them.

12          THE COURT:  Okay.

13          MR. GUSO:  First, Your Honor, the DIP lender has no

14  objection to the Court scheduling a final hearing on March 17th

15  when the Court has other matters scheduled for hearing in the

16  cases.  It appears from our review of the budge that with two

17  and a half million dollars of initial interim financing, the

18  debtor will have adequate liquidity to operate its business in

19  the ordinary course through that date.  And so we have no

20  objection that arrangement, Your Honor.  Secondly, Your Honor,

21  as Ms. Axelrod confirmed on the record, and I will, too, the

22  interim DIP order does not grant our client at this juncture

23  liens on avoidance actions, nor does it provide for the

24  estate's waiver of 506(c) rights.  Those are, Your Honor, as

25  disclosed in the papers that are before the Court, elements

1   that the Court will consider when it takes up final approval of

2   the debtor-in-possession financing.  And the interim order that

3   is before the Court expressly states that those provisions are

4   subject to and will only be effective upon entry of the final

5   order.

6           Your Honor, with respect to the limitation on the use

7   of DIP proceeds, that is found at Paragraph 19 of the order.

8   That limitation, Your Honor, is in my experience customary.  It

9   bars the use of proceeds of the loan to bring claims against

10  the DIP lender.  It does not bar the use of proceeds by any

11  estate professionals to engage in negotiations or discussions

12  with the DIP lender regarding the DIP financing, or any other

13  matter that affects the administration of the case that is

14  before the Court.  Your Honor, with respect to the 364(e)

15  objection raised by the United States Trustee, Your Honor,

16  candidly, I don't see this one as particularly controversial.

17  It is customary for a -- the -- a DIP lender to request a

18  finding in the Court's order that the financing has been

19  provided in good faith.  That the negotiations that led to the

20  execution of the definitive agreements were conducted at arm's

21  length and good faith.  And the record before the Court

22  establishes that the debtor has met that burden, Your Honor.

23          First, Your Honor, the debtors -- one of the

24  declarations in support of the relief the debtor seeks today,

25  the declaration of Mr. Moses.  It's Docket Entry 92,

1  establishes that Mr. Moses is a principal of Province LLC, the

2  debtor's proposed financial advisor, and head of Province's

3  institutional credit advisory business.  Mr. Moses testifies,

4  Your Honor, that Province contacted 16 parties to inquire of

5  their interest in providing a secured debtor-in-possession

6  financing facility to the debtor.  Only two parties responded,

7  our client being one of them, and after evaluating the two

8  proposals --

9          THE COURT:  I'm sorry, counsel.  Didn't the

10 declaration say that seven parties responded, but only two

11 offered agreements?

12         MR. GUSO:  Your Honor, province -- I'm reading at

13 Paragraph 5.

14         THE COURT:  Okay.

15         MR. GUSO:  Province reached out to 16 prospective

16 lenders and or investors.  In the end, the debtor received only

17 two offers.

18         THE COURT:  Okay.  About of the 16, seven responded,

19 is that right?  Or did I read that wrong?

20         MR. GUSO:  Your Honor, I'm not -- if that's contained

21 in a separate declaration, I don't have that cite before me.

22         THE COURT:  All right.

23         MR. GUSO:  I am looking at Paragraph 5 of Mr. Moses's

24 declaration, Your Honor, which again, is docket entry 92.

25         THE COURT:  Okay.  All right.

1              MR. GUSO:  Your Honor, then in addition the record

2    before the Court also includes the declaration of Mr. Crane, C-

3    A -- excuse me, C-R-A-N-E, that declaration is docket entry 88,

4    and Mr. Crane is the president of CKDL Credit, LLC, the

5    proposed DIP lender.  Mr. Crane tells us, Your Honor, that in

6    December of 2022, our client was approached regarding its

7    interest in providing secured post-petition financing to the

8    debtor.  It executed a non-disclosure agreement on December

9    23rd, 2022, and commenced doing diligence regarding the debtor

10   and the -- its need for financing.  That diligence included,

11   Your Honor, access to the virtual data room maintained by the

12   debtor and its financial advisors.

13              Approximately 30 days later, on January 23rd, 2023,

14   the debtor and our client signed a term sheet memorializing the

15   material terms of a $5 million senior secured loan to be

16   provided by our client to the debtor.  And following the

17   execution of the term sheet, the parties began negotiating the

18   definitive documents, and those were concluded, Your Honor,

19   shortly before the debtor commenced this case.  Once those

20   documents were negotiated as between the DIP lender and the

21   debtor, Your Honor, the debtor reached out to its existing

22   secured creditors, Genesis Global Holding -- Holdco, LLC, and

23   Enigma Securities Limited.

24              And thereafter, Your Honor, the debtor and the DIP

25   lender, and each of those parties undertook extensive

1  negotiations regarding the form of the financing.  Principally,

2  Your Honor, the form of adequate protection that the debtor

3  would be required to provide to those creditors in exchange for

4  their consent to priming -- the granting of priming liens in

5  favor of our client.  Those negotiations, as Mr. Crane

6  testifies, Your Honor, were conducted at arm's length in good

7  faith.  They involved not only the parties but their legal and

8  financial advisors.  And those negotiations, Your Honor,

9  culminated in the parties' agreement to seek approval of the

10  interim order that is before the Court today.

11          Lastly, Your Honor, Mr. Crane also testifies that

12  aside from the DIP documents as that term is defined in the

13  papers that are before the Court, there are no other agreements

14  between the debtor on the one hand, and the DIP lender, it's

15  officers, directors, or managers on the other.  Mr. Crane also

16  confirms, Your Honor, that the -- neither the DIP lender, nor

17  its officers, directors, or managers are equity security

18  holders, or creditors of the debtor.  And so, Your Honor, on

19  the record before the Court, which is uncontroverted at this

20  point, there is ample evidence in our view for the Court to

21  make a finding that the financing has been negotiated at arm's

22  length and in good faith, and that our client is entitled to

23  the protections of 364(e) of the bankruptcy code.

24          With respect to the default provisions, Your Honor,

25  those are also contained in the order.  And what they say, Your

1   Honor, is that if there is an event of default under the DIP

2   credit facility, our client will provide notice to the debtor,

3   to the committee, to the other secured creditors who assert an

4   interest in the collateral.  And following the receipt of that

5   notice, the debtor has four business days to seek relief before

6   this Court, and challenge whether an event of default has

7   occurred.  And until the Court makes that determination, our

8   client cannot exercise rights or remedies.  But if the debtor

9   does not seek that relief, or if the Court determines that

10  there hasn't been an event of default, as is customary in

11  circumstances like this, Your Honor, our client would then be

12  entitled to proceed, and enforce rights and remedies following

13  an occurrence of an event of default.

14          THE COURT:  All right.  Then, Mr. Guso, correct me if

15  I'm wrong.  If there is any notice of default issued by

16  essentially the lender of this case, the notice would go not

17  only to counsel for the debtor-in-possession, but also counsel

18  for the creditors' committee, if so -- if there is one?

19          MR. GUSO:  It is, Your Honor, and that's found at

20  Paragraph 12 of the order.

21          THE COURT:  Okay.  All right.  Anything else?

22          MR. GUSO:  Lastly, Your Honor, if I may, the -- I

23  think everything I've addressed also responds to the objections

24  articulated by Cole Kepro's counsel, other than, Your Honor,

25  than the credit bidding rights that are set forth in the order.

1    And again, Your Honor, in my experience, this is not

2    controversial.  Our client would like the certainty that if the

3    case transitions to a sale process, having advanced -- at least

4    on a interim basis, two and a half million dollars, it's right

5    to credit bid that secured claim, which would be acknowledged

6    in the order, is expressly preserved.  That's not to say, Your

7    Honor, that our client will absolutely and unconditionally

8    exercise its right to credit bid.  But it does wish to preserve

9    that it's right to do so.  And again, Your Honor, in my

10   experience, I -- this is typical of a financing arrangement as

11   part of a Chapter 11 case.  And I'd be happy to answer any

12   questions the Court may have regarding my presentation, Your

13   Honor.

14          THE COURT:  I don't think so, Mr. Guso, thank you.

15   Then that gets us to --

16          MR. GUSO:  Thank you, Your Honor.

17          THE COURT:  You're welcome.  There was a reply that

18   was filed by Ms. Axelrod's office.  But there was also a reply

19   that was filed by Genesis Global.  I guess, Mr. O'Neal, do you

20   want to address the contents of your reply?

21          MR. O'NEAL: Certainly.  Yes, Your Honor, Sean O'Neal,

22   Clearly Gottlieb on behalf of Genesis Global.  First, thank

23   you, Your Honor, for hearing us today and this morning.  As you

24   are aware, we do -- we are debtors in a pending proceeding in

25   the Southern District of New York before the Honorable Judge

1    Sean Lane.  We have a seven and a half million dollar secured

2    loan, as well as a $110 million unsecured loan.  Our

3    overwhelming interest in this Chapter 11 case is our position

4    as an unsecured creditor, but we do have a fiduciary duty to

5    our estate to protect the secured position that we have on

6    behalf of all of the creditors of the Genesis estate, of which

7    there are approximately, you know 500 -- 5 billion in claims.

8    We filed a short reply last night at Docket Number 94, and with

9    Your Honor's permission, I would just like to highlight a few

10   points, if I may?

11              THE COURT:  You may.

12              MR. O'NEAL:  Thank you, Your Honor.  First, the

13   debtors, in their business judgment, negotiated an adequate

14   protection package in order to avoid an expensive and

15   distracting litigation.  That litigation would have cost

16   valuable resources, would have distracted management, and the

17   professionals, and would have delayed the process here.  The

18   debtors are advised by capable counsel and financial advisors,

19   and they determined that approval of the adequate protection

20   package is better than that costly litigation.  And that's what

21   we're talking about here today, is the exercise of their

22   business judgment, is it appropriate for the debtors to

23   determine to grant the adequate protection in order to avoid a

24   costly litigation.

25              Notably, the objector here, Cole Kepro, as I

1   understand it, is not a secured party.  But I think if you read

2   the pleading, I think what they're effectively seeking is

3   adequate protection, even though they are not a secured

4   creditor.  I think their objections can really be dealt with at

5   a final hearing stage.  This is just an interim.  I would note

6   that the adequate protection package that was negotiated with

7   the debtors and the DIP lender is customary.  It includes the

8   kinds of examples of adequate protection that are enumerated in

9   the bankruptcy code.  Periodic adequate protection payments,

10  attorney fees subject to a cap of $100,000, replacement liens,

11  and then customary stipulations, and information and

12  consultation rights.

13         These were negotiated at arm's length, and each

14  package -- or each element of that package was necessary to

15  obtain our consent.  Without our consent, there will be a

16  litigation.  But because the debtors have consented, and the

17  DIP lenders have consented -- I'm sorry, it -- because the

18  debtors have negotiated the same package that the DIP lenders

19  have consented to, we have consented.  But we don't have to

20  consent to a priming lien.  Moreover, I think it bears noting

21  that Judge Lane, who is overseeing our Chapter 11 case, relied

22  on the adequate protection package that we described in our

23  motion when he approved the adequate protection package or

24  should I say, when he approved our consent to a priming lien,

25  and our consent to a modification of the automatic stay.

1          Likewise, the creditors who are involved in our

2    Chapter 11 case, which includes, you know, two ad hac

3    committees representing more than $2 billion in claims have

4    relied on this adequate protection package in determining not

5    to object to the motion in our case.  What Judge Lane did is he

6    modified the automatic stay to permit Genesis to consent to the

7    priming lien on the basis of that adequate protection package.

8    That was done at an emergency hearing on Thursday, February

9    9th.  Cole Kepro hasn't sought relief from the automatic stay

10   in order to obtain the relief it's seeking here.  Clearly it

11   would need relief from our bankruptcy court in order to revisit

12   and to effectively prime our lien in a non-consensual manner.

13          Lastly, as a matter of law, book value is not the

14   relevant value for determining the value of collateral on the

15   petition date.  There's actually a case on this point, and we

16   cite it in our pleading.  It's the Sears case, that's Second

17   Circuit.

18          THE COURT:  And that was that -- that was the second

19   circuit case last year.  Isn't that right?

20          MR. O'NEAL:  That is correct.  And I know it all too

21   well, Your Honor.  And I know that is not -- it is not, you

22   know, it is persuasive authority for you here, but it was

23   rooted in the Rash case, the Supreme Court case.  And I don't

24   think, given all of the other arguments here, and the fact that

25   these points can be made at a final hearing, I don't think we

1  | need to get into all of those arguments here today.  But
2  | suffice it to say that there is case law saying that book value
3  | is not the correct value.  And that's exactly why we negotiated
4  | an adequate protection package.  We informed the debtors and
5  | the DIP lender that book value would never compensate us, would
6  | never give us the adequate protection, and we would have to
7  | fight.  We would be duty bound as fiduciaries to fight that
8  | priming lien on that basis.  And that's why we then negotiated
9  | a consensual priming, and we obtained court approval for that
10 | consensual priming, and the relevant modification to the
11 | automatic stay.  With those points in mind, Your Honor, we
12 | respectfully request that Your Honor deny the objection and
13 | grant the adequate protection that we have requested and
14 | obtained approval for in our Chapter 11 case on an interim
15 | basis.
16 |            THE COURT:  I see.  And so --
17 |            MR. O'NEAL:  Thank you.
18 |            THE COURT:  And so, Mr. O'Neal, you're joining in the
19 | request that at least an interim order be entered at this
20 | point.  And then whatever objections are -- there may be to a
21 | final order, those will play out as appropriate.  And then I
22 | take it that Genesis Global would probably chime in in response
23 | to any objections on a final basis as well.  Is that correct?
24 |            MR. O'NEAL:  Your Honor, Sean O'Neal on behalf of
25 | Genesis, Clearly Gottlieb.  Yes, Your Honor, you have stated it

1    exactly as we see it.

2            THE COURT:  Okay.  All right.  Anything else?

3            MR. O'NEAL:  No, Your Honor, Thank you.

4            THE COURT:  Okay.  All right.  Then finally there was

5    a -- I believe there was a reply that was filed by Ms. Axelrod

6    as Docket Number 90.  And was there anything that you wanted to

7    emphasize, Ms. Axelrod?

8            MR. KISSNER:  Excuse me, Your Honor, this -- oh,

9    sorry, I didn't mean to interrupt.  This is Andrew Kissner of

10   Morrison & Foerster on behalf of Enigma Securities Limited.  We

11   had also filed a reply in support of the interim DIP motion at

12   Docket Number 89.  I don't know if you just wanted to hear our

13   thoughts.  We'd be happy to give them.

14           THE COURT:  No, counsel, the Court is always happy to

15   hear everyone's thoughts in connection with these matters.  And

16   if I overlooked calling you, I apologize for that.  You may

17   proceed.

18           MR. KISSNER:  Not at all.  And again, for the record,

19   Andrew Kissner of Morrison & Foerster on behalf of Enigma

20   Securities Limited.  Similar to Genesis, where Enigma was also

21   a pre-petition secured lender to the debtor.  And without

22   repeating what was in our papers, and many of the points that

23   Mr. O'Neal I think ably addressed, I would simply reiterate for

24   the Court that to the extent that the debtor is seeking to

25   prime the liens of Enigma in connection with the post-petition

1    financing facility, then, you know, the plain text of the

2    bankruptcy code would say that we need adequate protection of

3    our liens unless we consent.  This was the adequate protection

4    package that was negotiated at arm's length among the debtor's

5    professionals, the proposed DIP lender, and enigma.  And it was

6    on those terms that Enigma provided its consent to be primed.

7    But otherwise, without this adequate protection package, then

8    it would be the debtor's burden to demonstrate that Enigma is

9    receiving the indubitable equivalent of its interest as they

10   existed on the petition date.  And without adequate protection

11   in this form, we don't think that the debtor would be able to

12   make that showing.  And so, you know, again, we address most of

13   the arguments raised by Cole Kepro's counsel at oral argument

14   in our papers that were filed last night.  So I won't repeat

15   them there, other than to say that we think this package is

16   reasonable, it's fair, and it's also frankly the standard

17   approved in cases across the country.  So unless Your Honor had

18   any questions, I think that would be all from Enigma.

19            THE COURT:  Okay.  All right.  Thank you, counsel.

20   All right.

21            MR. KISSNER:  Thank you again.

22            THE COURT:  Again, I -- again, I apologize for

23   overlooking your response as well.  Let's get back to the reply

24   that was filed by Ms. Axelrod on behalf of the debtor-in-

25   possession.  Ms. Axelrod, was there anything that you wanted to

1    emphasize?

2            MS. AXELROD:  No, Your Honor, I believe it has all

3    been addressed already in oral arguments.

4            THE COURT:  Okay.  All right.  The Court has reviewed

5    the motion itself, the supporting declarations filed by the

6    debtor, in addition to the additional supporting declarations

7    filed by those who join in the application itself.  The Court

8    obviously has considered the objections and opposition filed by

9    the Office of the United States Trustee, as well as Cole Kepro

10   International, Inc.  Those motions, or those objections are

11   subject to consideration.  The Court will grant interim relief

12   at this time, of course without prejudice to the various

13   objections raised by the parties.  The Court can understand the

14   concerns with respect to whether or not replacement liens, or

15   any other type of adequate protection is appropriate under the

16   circumstances.

17           The Court does believe, however, that a requirement

18   of providing some nature of adequate protection that meets the

19   definition under 362 of the bankruptcy code as a form of

20   adequate protection is required in this proceeding.  The Court

21   concludes the revised budget that is attached to the -- that

22   was recently submitted by the debtors is appropriate in the

23   case as necessary, despite any concerns as to whether there is

24   a holdback of a substantial amount of cash collateral.  The

25   additional financing appears to be appropriate under the

1    business judgment of the debtor-in-possession in the case.

2    That business judgment of course may be subject to review and

3    criticism by any creditors' committee that may be employed in

4    the case.  And if those objections are raised before the final

5    hearing, the Court will always -- will of consider them.

6          Then with respect to the other aspects of the

7    objections, the Court does conclude that some of the terms and

8    language in the proposed order, especially with respect to the

9    use of -- possible use of funds to essentially object to the

10   loan that is being provided.  I take that that's essentially a

11   bite the hand that feeds you type of concern, and I believe

12   it's appropriate for the lender to provide the -- that

13   provision under the circumstances.  There is evidence that

14   there was an effort by the debtor to obtain financing on a --

15   on other terms.  It appears that there was a solicitation

16   appropriately of those who might be able to provide similar

17   financing in the case.  But it appears that this particular

18   lender stepped forward and insisted on various protections as a

19   condition of agreeing to going to forward with the loan.  The

20   Court doesn't necessarily agree or disagree, but it appears to

21   be something that has been done in prior cases.  It appears to

22   be appropriate in this case.  There are remedies provided for

23   what may happen in the event of a default on the particular

24   loan at issue.  But because the notice of fault will go out to

25   both the counsel for the debtor-in-possession as well as any

1  counsel for the creditors committee if it is in fact formed,

2  there is a basis in which to appropriately respond before any

3  action is taken upon the declaration of default.

4          The Court is aware, of course, that the -- Judge Lane

5  in the Southern District of New York has concerns before him

6  that are expressed in the Genesis Global Holdco Chapter 11

7  proceeding.  Those concerns are being addressed by Judge Lane.

8  The fact that he is providing orders and relief as appropriate

9  are of course considered by the Court.  But the Court is not

10  bound by that either.  The Court independently concludes that

11  under the circumstances, the debtor has provided sufficient

12  evidence to conclude that approval of the proposed transaction

13  is in the best interest of the estate, and therefore good cause

14  exists to approve this particular financing, at least on an

15  interim basis.  And this is all subject to any objections that

16  may be raised on a timely basis prior to the continued hearing

17  on final approval of the matter.

18          Ms. Axelrod, that final hearing is, I believe, still

19  being requested for April 17th, along with the other interim

20  matters.  Is that correct?

21          MS. AXELROD:  Actually, Your Honor, it's being

22  requested for March 17th.

23          THE COURT:  March 17th?  Okay.  So if we set the

24  final hearing on approval of this matter for March 17th, given

25  the perhaps more complexity of this motion, is there a thought

1  given as to when any objections would be due to a final

2  approval, and when there would be an appropriate time for a

3  reply?

4          MS. AXELROD:  Your Honor, just looking backwards, I

5  would believe that a reply would be due on March 10th, and any

6  opposition, March 1st.

7          THE COURT:  All right.  March 1st for any objection

8  to final approval.  And then March -- I'm sorry, what did you

9  say?  March 10th for --

10          MS. AXELROD:  10th, Your Honor.

11          THE COURT:  March 10th for a reply.  And then have

12  the final hearing --

13          MS. AXELROD:  Yes, Your Honor.

14          THE COURT:  -- on March 17th?

15          MS. AXELROD:  Yes, Your Honor.

16          THE COURT:  Okay.  Do any --

17          MR. DAY:  Your Honor?

18          THE COURT:  -- any counsel have any objection to that

19  scheduling of either the final hearing, the reply date, or any

20  of the -- or the March 1 opposition date?  Counsel?

21          MR.  DAY:  Your Honor, Jared Day for the U.S.

22  Trustee.  I think because we're over 28 days out from March

23  17th, we would propose that the Court just use its regular

24  briefing schedule.  March 10th for the reply would be fine, I

25  think that's one week before the final hearing.  But the March

1   1st, we would suggest that be moved to March 3rd, that would be

2   14 days prior to the finial hearing.  And that would align with

3   the Court's regular 28-day briefing schedule.

4            THE COURT:  All right.  Fair enough.  Do you agree,

5   Ms. Axelrod?

6            MS. AXELROD:  Brett Axelrod.  I agree, Your Honor.

7            THE COURT:  Okay.  Does the -- any other counsel

8   appearing at this hearing have any objection to that particular

9   briefing and final hearing schedule?  All right.  Hearing no

10  objection, the Court will grant the interim order for the

11  reasons stated on the record.  Ms. Axelrod, I'll direct you to

12  prepare the appropriate order.  I'll also direct you to

13  circulate the order as required under local rule 9021.  Include

14  in the order the various deadlines Court just recited, as well

15  as the hearing date of March 17th.

16            Cathy, what time is that?

17            THE COURTROOM DEPUTY:  At 9:30 a.m.

18            THE COURT:  At 9:30 a.m.  All right.  Include that in

19  the proposed order as well.  Ms. Axelrod, is there anything

20  else you need?

21            MS. AXELROD:  No, Your Honor, and thank you so much

22  for the Court's time.

23            THE COURT:  Okay.  All right.  And Counsel who are --

24  have appeared who haven't received their pro hac vice orders

25  yet, typically those are relatively easily granted.  The final

1  hearing in the matter will be by telephonic, unless there's

2  some reason to have live testimony, and or appearance by zoom.

3  If that is a request, then you need to make that request to the

4  Court as soon as possible.  Other than that, Ms. Axelrod, go

5  ahead and submit the appropriate orders.  And that concludes

6  the -- this particular counsel.  All right.  Thank you,

7  counsel, Court is adjourned.

8          UNIDENTIFIED:  Thanks, Your Honor.

9          UNIDENTIFIED:  Thank you, Your Honor.

10          THE CLERK:  Off record.

11      (Proceedings concluded at 11:57 a.m.)

12                    *  *  *  *  *

13

14          **C E R T I F I C A T I O N**

15

16      I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428     DATE: February 23, 2023

25  ACCESS TRANSCRIPTS, LLC

26