BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       jmcpherson@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed March 9, 2023

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re | Case No. BK-23-10423-MKN |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD | Chapter 11 |
| Debtor. | **DECLARATION OF CHRISTOPHER ANDREW MCALARY IN SUPPORT OF DEBTOR'S MOTION FOR ENTRY OF ORDER APPROVING PROCEDURES FOR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND DISPOSAL OF CERTAIN PERSONAL PROPERTY INCLUDING STAY RELIEF AND/OR ABANDONMENT** |
| | Hearing Date:  April 20, 2023
Hearing Time:  10:30 a.m. |

I, Christopher Andrew McAlary, declare as follows:

1.      I am the Chief Executive Officer of Cash Cloud, Inc. dba Coin Cloud (the "<u>Debtor</u>" or "<u>Cash Cloud</u>"), debtor and debtor in possession in the above captioned chapter 11 case (the "<u>Chapter 11 Case</u>").

2.      Except as otherwise indicated herein, this Declaration is based upon my personal

1

142610514.1

1  knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would
2  testify competently to the facts set forth in this Declaration.[1] I make this Declaration in in support of
3  the Debtor's Motion For Entry Of Order Approving Procedures For Rejection Of Executory
4  Contracts And Unexpired Leases And Disposal Of Certain Personal Property Including Stay Relief
5  And/Or Abandonment ("Motion").

6      3.    On February 7, 2023 (the "Petition Date"), the Debtor initiated its Chapter 11 Case
7  by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the
8  "Bankruptcy Code").

9      4.    The Debtor is authorized and intends to operate its business and manage its properties
10  as debtor-in-possession under section 1107(a) and 1108 of the Bankruptcy Code.

11      5.    I am advised by counsel that this Court has jurisdiction over this Chapter 11 Case
12  pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in this United States Bankruptcy Court
13  for the District of Nevada pursuant to 28 U.S.C. §§ 1408 and 1409.

14      6.    As described in greater detail in the Omnibus Declaration of Christopher Andrew
15  McAlary in Support of Emergency First Day Motions (the "Omnibus Declaration") [ECF 19], the
16  Debtor was formed as a Nevada corporation for the purpose of providing a platform for customers
17  to buy and sell digital currencies through Digital Currency Machines ("DCMs") distributed across
18  the United States. DCMs are an advanced version of the kiosks commonly referred to as Bitcoin
19  ATMs or BTMs, that enable a consumer to both (a) buy bitcoin as well as 30+ other digital
20  currencies with cash, and (b) sell digital currency for cash. As of December 31, 2022, the Debtor
21  operated approximately 4,800 DCMs, or kiosks ("Kiosk(s)"), throughout the United States and
22  Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious
23  malls.

24      7.    To facilitate the installation of the Kiosks, Cash Cloud entered into numerous
25  contracts (the "Contracts") or leases ("Leases") with various parties ("Counterparty" or
26  Counterparties") having retail locations, including convenience stores, malls, and enterprise grocery

---

[1] Unless otherwise defined herein, all terms have the meanings ascribed them in the Motion.

142610514.1

stores. The terms in the Contracts and/or Leases vary. A few Contracts pertain to a Counterparty providing marketing services to the Debtor for the placement of the Kiosks. However, most of the Contracts and/or Leases contain terms permitting Cash Cloud to install a Kiosk at a certain location ("Location") in exchange for compensation being given to the Counterparty. There are thousands of Contracts or Leases, and the nature and amount of compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit of the Kiosk. The Contracts and/or Leases typically have a 3 to a 7-year term, with automatic renewals, unless terminated by either party. And, under certain "master" Contracts and/or Leases, wherein the Contract or Lease governs the installation of Kiosks at multiple, different Locations (as set forth within the exhibits attached thereto), the Contract or Lease contains terms that provide not only for the termination of the master agreement, as a whole, but also for either the Debtor or the Counterparty to terminate certain identified Locations.

8. As the Debtor works on restructuring its finances and operations and negotiates with its creditors, and in connection with its efforts to preserve and maximize the value of its bankruptcy estate through the prosecution of this Chapter 11 Case, the Debtor may no longer need to have Kiosks at certain Locations. As such, and to the extent it is not beneficial to the estate for the Debtor to assume and assign Contracts or Leases to a third party, it is likely the Debtor will determine, in the exercise of its business judgment, that certain burdensome Contracts or Leases should be rejected to avoid the Debtor's estate accruing administrative expenses associated with such Contracts or Leases. In addition, the Debtor may determine, in its business judgment, that it no longer needs certain Contracts or Leases (or certain Locations that are part of a Contract or Lease) for its business as a whole. The Debtor believes that the Rejection Procedures as set forth in the Motion will streamline its ability to reject burdensome Contracts and Leases that no longer provide a benefit to the estate, while also providing parties in interest with adequate notice of the rejection of a Contract or a Lease and an opportunity to object to such relief within a reasonable time period. Absent the relief requested, filing a motion and scheduling a hearing for the rejection of each Contract and Lease and addressing related issues of stay relief and/or abandonment would result in substantial costs to, and impose administrative burdens on, the Debtor's estate, in addition to the

3

142610514.1

burden such approach would place on the Court's docket and calendar. As such, the proposed Rejection Procedures are appropriate and necessary to limit the costs and administrative burdens that otherwise would be borne by the Debtor's estate.

9. The Debtor submits that any Contract or Lease, or any certain Location contained therein, that it seeks to reject pursuant to the Rejection Procedures will be one that is financially burdensome and unnecessary to the Debtor's operations. Moreover, before rejecting any of the Contracts or Leases, the Debtor will have ensured that they are of inconsequential value and benefit to the Debtor's estate and the Debtor's future operations, creditors, or interest holders, are believed to not be marketable given their terms, and constitute an unnecessary drain on the Debtor's limited resources. Accordingly, rejection of the Contracts or Leases reflects the Debtor's exercise of sound business judgment.

10. Further, if there is property remaining at a Location subject to a rejected Contract or Lease, such as Kiosks or related property (the "Remaining Property"), the Debtor will determine how the Remaining Property should be disposed of, including whether it should be removed, abandoned, sold, or surrendered to a party that has a secured or lease interest in the Remaining Property with the automatic stay terminated.

11. The Debtor submits that **if** it determines that the Remaining Property (if any) should be surrendered to a party that has a secured or lease interest in the Remaining Property and the automatic stay terminated, it will make this determination because it is not necessary for an effective reorganization and there is little or no equity in the Remaining Property. Thus, the Debtor's determination to surrender the Remaining Property to a party who has a secured or lease interest will reflect the Debtor's exercise of sound business judgment, taking into account the best interests of the Debtor, its estate, its creditors and other parties in interest. Accordingly, it is requested that **if** the Debtor determines that the Remaining Property should be surrendered, that the automatic stay be terminated as of the Rejection Effective Date pursuant to 11 U.S.C. § 362(d)(2).

12. Further, the Debtor submits that **if** it determines that the Remaining Property (if any) should be abandoned, it will make this determination because the Remaining Property is either burdensome to the estate, as removal and storage of the Remaining Property is likely to exceed any

4

142610514.1

net proceeds from this property, or is of inconsequential value and benefit to the estate. Thus, the Debtor's determination to abandon will reflect the Debtor's exercise of sound business judgment, taking into account the best interests of the Debtor, its estate, its creditors and other parties in interest. Accordingly, it is requested that if the Debtor determines any Remaining Property should be abandoned, that the Remaining Property shall be deemed abandoned as of the Rejection Effective Date pursuant to 11 U.S.C. § 554.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of information, knowledge and belief.

Executed this 9th day of March, 2023 in Las Vegas, Nevada.

_____
Christopher Andrew McAlary

142610514.1