BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
          jmcpherson@foxrothschild.com
          nkoffroth@foxrothschild.com
          zwilliams@foxrothschild.com

*Counsel for Debtor*

Electronically Filed March 23, 2023

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD<br><br>                    Debtor. | Case No. BK-23-10423-MKN<br><br>Chapter 11<br><br>**DECLARATION OF CHRISTOPHER ANDREW MCALARY IN SUPPORT OF FOURTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(a) AND DISPOSAL OF CERTAIN PERSONAL PROPERTY INCLUDING SURRENDER AND TERMINATION OF THE AUTOMATIC STAY AND/OR ABANDONMENT**<br><br>Hearing Date:  April 20, 2023<br>Hearing Time:  10:30 a.m. |

I, Christopher Andrew McAlary, declare as follows:

1. I am the Chief Executive Officer ("CEO") of Cash Cloud, Inc. dba Coin Cloud (the "Debtor" or "Cash Cloud"), debtor and debtor in possession in the above captioned chapter 11 case (the "Chapter 11 Case").

1

143539620.1

2. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.[1]  I make this Declaration in support of the motion captioned above.

3. On February 7, 2023 (the "Petition Date"), the Debtor initiated its Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. The Debtor intends to operate its business and manage its properties as a debtor-in-possession under section 1107(a) and 1108 of the Bankruptcy Code.

5. I am advised by counsel that this Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334 and venue is proper in this United States Bankruptcy Court for the District of Nevada pursuant to 28 U.S.C. §§ 1408 and 1409.

6.  As described in greater detail in my Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions [ECF 19], the Debtor was formed as a Nevada corporation for the purpose of providing a platform for customers to buy and sell digital currencies through Digital Currency Machines ("DCMs") distributed across the United States. DCMs are an advanced version of the kiosks commonly referred to as Bitcoin ATMs or BTMs, that enable a consumer to both (a) buy bitcoin as well as 30+ other digital currencies with cash, and (b) sell digital currency for cash.  All of the Debtor's machines are DCMs offering two-way functionality, over 30 digital currency options, an advanced user interface and a custom non-custodial companion wallet app (available on the Apple App Store and the Google Play Store).

7. As of December 31, 2022, the Debtor operated approximately 4,800 DCMs, or kiosks ("Kiosk(s)") throughout the United States and Brazil, installed in some of the largest convenience, grocery and liquor store chains and prestigious malls.

8. To facilitate the installation of the Kiosks, Cash Cloud entered into numerous contracts (the "Contracts") or leases ("Leases") with various parties ("Counterparty" or

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed them in the Motion.

143539620.1

Counterparties") having retail locations, including convenience stores, malls, and enterprise grocery stores. The terms in the Contracts and/or Leases vary. However, in general, the terms provide that Cash Cloud is permitted to install a Kiosk at a certain location ("Location") in exchange for compensation being paid to the Counterparty. There are thousands of Contracts or Leases, and the nature and amount of compensation varies and is sometimes in the form of a fixed monthly rental payment or a variable portion of the profit of the Kiosk. The Contracts and/or Leases typically have a 3 to a 7-year term, with automatic renewals, unless terminated by either party. And, under certain "master" Contracts and/or Leases, wherein the Contract or Lease governs the installation of Kiosks at multiple, different Locations (as set forth within the exhibits attached thereto), the Contract or Lease contains terms that provide not only for the termination of the master agreement, as a whole, but also for either the Debtor or the Counterparty to terminate certain identified Locations.

9. Based on its business judgment, Debtor has determined that the Contracts and/or Leases are financially burdensome to the estate and do not provide benefit to the estate. Accordingly, the Debtor seeks authority to reject the Contracts and/or Leases set forth on **Exhibit 2** of the Motion as of the date of the filing of this Motion to prevent the incurrence of ongoing administrative expenses with respect to the Contracts and/or Leases.

10. In the event the Debtor, in its business judgment, determines that it will surrender the Remaining Property to a party that has a secured or lease interest and that it does not have equity in the Remaining Property and the Remaining Property is not necessary for an effective reorganization, the Debtor requests that an order be entered terminating the automatic stay. Further, in the event the Debtor, in its business judgment, determines that the Remaining Property, if any, is burdensome or of inconsequential value or benefit to the estate, the Debtor requests that such abandonment be approved.

11. The Debtor, in its business judgment, submits that **if** it determines that the Remaining Property (if any) should be surrendered to a party that has a secured or lease interest in the Remaining Property and the automatic stay terminated, it will make this determination because the Remaining Property is not necessary for an effective reorganization and the Debtor has little to no equity in the Remaining Property. Thus, the Debtor's determination to surrender the Remaining

143539620.1

Property to a party who has a secured or lease interest will reflect the Debtor's exercise of sound business judgment, taking into account the best interests of the Debtor, its estate, its creditors and other parties in interest.

12. Further, the Debtor, in its business judgment, submits that **if** it determines that the Remaining Property (if any) should be abandoned, it will make this determination because the Remaining Property is either burdensome to the estate, as removal and storage of the Remaining Property is likely to exceed any net proceeds from this property, or is of inconsequential value and benefit to the estate. Thus, the Debtor's determination to abandon will reflect the Debtor's exercise of sound business judgment, taking into account the best interests of the Debtor, its estate, its creditors and other parties in interest.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of information, knowledge and belief.

Executed this 23rd day of March, 2023 in Las Vegas, Nevada.

/s/*Christopher Andrew McAlary*
Christopher Andrew McAlary

143539620.1