Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
Laura E. Miller, Esq.
(*pro hac vice* applications granted)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC.,<br>d/b/a COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-mkn<br>Chapter 11<br><br>**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO LUIS FLORES'S MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)** |

The official committee of unsecured creditors (the "Committee") appointed in the above-referenced case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby submits this joint objection (the "Objection") to *Luis Flores's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d)* [ECF No. 287] (the "Motion") filed by Luis Flores (the "Movant"), and respectfully states as follows:

## I.      JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (G). The Committee consents to entry of final orders and/or judgments pursuant to Local Bankruptcy Rule 9014.2.

## II.      PRELIMINARY STATEMENT

By his Motion, the Movant oversteps both the language and purpose of the limited avenues for relief under the Bankruptcy Code's automatic stay provision. The Motion concerns the pending issuance of a decision following a 21-day bench trial conducted before the Eighth Judicial District Court in Clark County, Nevada (the "State Court") in late 2022 in case no. A-19-807370-B (the "State Court Action"). Cash Cloud, Inc. (DBA Coin Cloud) (the "Debtor") initiated this Chapter 11 Case just a few weeks after that trial concluded, when a judgment was purportedly imminent. The Movant accordingly seeks relief from the stay for two purposes: (1) to allow the State Court to issue its final, post-trial decision, and (2) to "permit the parties to exhaust all appellate proceedings of any such written decision and judgment." *See* Mot. at 8.

To be clear, the Committee does not object to a limited relief from the automatic stay for the sole purpose of allowing the State Court to issue its decision. But the Movant's request for relief to allow him to pursue appellate proceedings goes several steps too far. Indeed, with respect to this aspect of his requested relief, the Movant does not even attempt to meet his burden to establish "cause" under section 362(d) of the Bankruptcy Code (and the factors considered by courts in connection therewith). Instead, the Movant *expressly concedes* that any appellate proceedings would necessarily divert significant time and resources away from the estate. *See* Mot. at 5-6.

Such a diversion would be particularly detrimental at this stage of the Chapter 11 Case, where the Debtor and the Committee are presently marketing the Debtor's assets and diligently working towards a reorganization or sale that maximizes value for all creditors, including potentially the Movant. Forcing the Debtor and the Committee to devote their attention to a protracted and costly appeal of a state court decision—not to mention a potential remand for further factfinding—would unjustifiably deplete estate resources and threaten a carefully crafted bidding process to the

detriment of all parties in interest.

Accordingly, the Committee respectfully requests that the Motion be denied insofar as it seeks to lift the automatic stay in order to allow the Movant to pursue any appellate proceedings in the State Court Action.

### III. BACKGROUND

On February 7, 2023, the Debtor filed a voluntary petition for relief under of chapter 11 of Title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"). The factual background relating to Debtor's commencement of the Chapter 11 Case is set forth in detail in the *Omnibus Declaration* [ECF No. 19]. The Debtor is continuing in possession of its properties and operating and managing its business, as debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108.

On February 17, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [ECF No. 131, as amended on February 28, 2023, ECF No. 177].

The Motion was filed on March 15, 2023, and relates to an action pending before the Eighth Judicial District Court in Clark County, Nevada, as case no. A-19-807370-B. In the State Court Action, Movant asserted 19 counterclaims directly against the Debtor, including two breach of contract claims, a breach of the implied covenant of good faith and fair dealing, unjust enrichment, tortious constructive discharge, several violations of the Fair Labor Standards Act, fraudulent inducement, negligent misrepresentation, and others. Four of Movant's claims against the Debtor were dismissed at summary judgment, and 15 are pending adjudication. A bench trial in the State Court Action was completed in December 2022. Before the State Court issued a decision, however, the Debtor commenced this Chapter 11 Case.

### IV. LEGAL STANDARD

It is well established that the automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 503 (1986) (internal quotations omitted). Accordingly, relief from the stay is granted under section 362(d) of the Bankruptcy Code only "where no good

3

reason for continuing the stay exists." *In re Castle Ranch of Ramona, Inc.*, 3 B.R. 45, 49 (Bankr. S.D. Cal. 1980). By contrast, a request for relief from the stay should be denied where the need for the stay exists, thus preventing the moving creditor from obtaining a windfall as against the creditor body as a whole. *See In re Herrin*, 325 B.R. 774, 776 (Bankr. N.D. Ind. 2005) ("What the court is asked to do in any stay relief request is to single out a specific creditor by granting that creditor an advantage that no other creditor controlled by the automatic stay has – 'please, oh please let me pursue my remedies against this defaulting debtor while all of his/her/their/its other creditors remain captive to the automatic stay.").

To obtain relief from the automatic stay, a movant carries the burden of establishing a *prima facie* case that "cause" exists for relief under Section 362(d)(1). *See In re Smith*, 389 B.R. 902, 918 (Bankr. D. Nev. 2008) (denying motion) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 142 (2d Cir. 1999); *Duvar Apt., Inc. v. Fed. Deposit Ins. Corp. (In re Duvar Apt., Inc.)*, 205 B.R. 196, 200 (9th Cir. BAP 1996)); *see also Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1285 (2d Cir. 1990). "If a *prima facie* case has been established, the burden shifts to the debtor to show that relief from the stay is unwarranted." *See In re Smith*, 389 B.R. at 918 (internal quotation marks and citations omitted). "If the movant fails to meet its initial burden to demonstrate cause, relief from the automatic stay should be denied." *Id*. (citing *Spencer v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002)).

In assessing a request for relief from the automatic stay, courts analyze the following factors, as set forth in *In re Sonnax Indus., Inc.* (the "Sonnax/Curtis Factors"):

(1) whether relief would result in a partial or complete resolution of the issues,
(2) the lack of any connection with or interference with the bankruptcy case,
(3) whether the other proceeding involves the debtor as a fiduciary,
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action,
(5) whether the debtor's insurer has assumed full responsibility for defending the action,
(6) whether the action primarily involves third parties,
(7) whether litigation in another forum would prejudice the interests of other creditors,
(8) whether the judgment claim arising from the other action is subject to equitable subordination,
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor,

4

(10) the interests of judicial economy and the expeditious and economical resolution of litigation,
(11) whether the parties are ready for trial in the other proceeding, and
(12) the impact of the stay on the parties and the balance of harms.

*See* 907 F.2d at 1286 (adopting factors originating in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)).  Not all of the Sonnax/Curtis Factors will necessarily be relevant to a court's analysis, and a court need not accord equal weight to the relevant factors.  *See In re SquareTwo Fin. Servs. Corp.*, Case No. 17-10659, 2017 Bankr. LEXIS 2570, at *12-13 (Bankr. S.D.N.Y. Sep. 11, 2017).

### V. ARGUMENT

#### 1. Movant Fails to Meet His Burden Under Sonnax/Curtis

The Movant fails to establish that *any* of the Sonnax/Curtis Factors weigh in favor of his request to lift the stay to allow the pursuit and exhaustion of appellate relief.  Instead, the Movant's analysis solely concerns the issuance of a written decision in the State Court Action.  The portion of the relief requested relating to a potential appeal of that decision appears to be an afterthought.[1]  Accordingly, the Movant has failed to satisfy his initial burden, and the Court's inquiry should end there.

#### 2. The Sonnax/Curtis Factors Favor Continuing the Stay

Even were the Court to find that the Movant had satisfied his burden (he has not), the Sonnax/Curtis Factors relevant to this inquiry weigh decidedly in favor of maintaining the stay as it relates to Movant's appellate rights.

***Factor 1: Relief Would Result in Only a Partial Resolution***.  The very nature of the relief the Movant seeks is premised on the written decision not being final, and the Movant being permitted to exhaust all appellate rights (including, without limitation, appellate briefing and oral argument, as well as a potential remand and further factfinding).  Thus, this factor weighs in favor of maintaining the stay.

---

[1] Indeed, both declarations submitted in support of the Motion note only that "[t]hrough the Stay Relief Motion, Mr. Flores seeks entry of an order lifting or modifying the automatic stay *to permit issuance of a written decision*," but says nothing about a potential appeal of an unfavorable decision. *See* Declaration of Ryan A. Andersen in Support of the Motion [ECF No. 288] ¶ 5; Declaration Kimberly Stein in Support of the Motion [ECF No. 289] ¶ 6 (emphasis added).

5

***Factor 2: Interference with the Chapter 11 Case***.  Here, there is a clear connection to and interference with the Chapter 11 Case should the stay be lifted to allow the Movant to fully exhaust his appellate rights.  In such a scenario, the Debtor would need to divert time and resources from the Chapter 11 Case to engage in a wholly new appellate proceeding in another forum—and possibly a subsequent remand to the State Court for further factfinding.  Responding to Movant's appeal (and any further proceedings) would thus be value-destructive and to the detriment of the estate and all other creditors.

***Factor 6: Involvement of Third Parties***.  It is well settled that a bankruptcy court "should not grant relief from the stay under the sixth Sonnax[/Curtis] Factor if the debtor is the main party to the litigation." *In re Residential Cap., LLC*, No. 12-12020, 2012 Bankr. LEXIS 3777, at *10-11 (Bankr. S.D.N.Y. Aug. 16, 2012) (citing *In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983)).  By contrast, "where the action essentially involves third parties, the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate." *See In re Mego Int'l*, 28 B.R. at 326.  Here, however, the State Court Action was initially brought by the Debtor against the Movant, and the Movant subsequently asserted 19 counterclaims directly against the Debtor.  Thus, far from being a mere "conduit," the Debtor is a primary party to the State Court Action.

***Factor 7: Prejudice to Other Creditors***.  Lifting the stay and allowing the Movant to pursue an appeal in another forum would diminish resources that would otherwise go to other creditors.  *See In re Residential Cap.*, 501 B.R. at 644 (holding that allowing litigation to proceed in a different forum would prejudice the interest of other creditors because, among other things, "[a]ny litigation costs would diminish the bankruptcy estate"); *In re WorldCom, Inc.*, No. 02-13533, 2007 WL 841948, at *7 (Bankr. S.D.N.Y. Mar. 12, 2007) (finding seventh Sonnax/Curtis Factor weighed against movant because the "increased costs associated with litigation in a separate forum would prejudice the Reorganized Debtors").  Further, and as explained above, an appellate proceeding will prevent the Debtor's personnel from fully focusing on matters relating to the reorganization or sale of the Debtor's business at a critical juncture in the case.  *See In re SunEdison, Inc.*, 557 B.R. 303, 307-08 (Bankr. S.D.N.Y. 2016) (denying lift stay motion in part because holding otherwise would

6

"divert the Debtors' resources and personnel at a critical time in the case").

***Factor 10: Judicial Economy***.  Judicial economy is also not served here, where the Debtor and Movant face a circuitous procedural path to fully and finally resolve the numerous legal issues asserted in the State Court Action (including 19 separate claims asserted directly against the Debtor), which may be the subject of the Movant's lengthy appeal and, potentially, a remand.  This is the opposite of economical and would significantly tax judicial resources.  *See In re Lehman Bros. Holdings Inc.*, 594 B.R. 33, 53 (Bankr. S.D.N.Y. 2018) (holding that judicial economy is not served by litigation across multiple forums).

***Factor 11: Readiness for Trial.***  Similarly, this factor weighs against lifting the stay with respect to a potential appeal of the State Court's written decision because the appeal will need to be fully briefed and submitted to the appellate court.  Given that the bench trial lasted 21 days and involves numerous legal issues and claims, that briefing process is likely to be costly.  Should the Movant succeed on any appeal and the matter be remanded back to the State Court, the Debtor would be forced to engage in further factfinding at significant cost to the estate.[2]

***Factor 12: Balance of the Harms***.  Finally, there would be substantial harm to the Debtor's estate and creditors in the form of considerable legal fees and procedural delay if the scope of the stay relief allows the Movant to appeal an unfavorable decision in the State Court Action.  Indeed, the Movant *expressly concedes* that allowing him to pursue appellate rights after an unfavorable decision in the State Court Action will divert estate resources.  *See* Mot. at 4-5 ("lifting the automatic stay will not cause Debtor to divert any additional resources to the fully adjudicated State Court Action, *unless an appeal therefrom is necessary*") (emphasis added); *see also Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 2010 U.S. Dist. LEXIS 125182, at *11 (S.D.N.Y. Nov. 8, 2010) (affirming denial of lift-stay motion and noting that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that action" and "increased costs associated with litigation in a separate forum would prejudice the Reorganized

---

[2] By contrast, if the appellate court affirms the State Court's decision, Movant could seek further appeal of that ruling to the Nevada Supreme Court, which will further extend the time for final adjudication of this matter.

7

Debtors"); *In re General Oil Distributors, Inc.*, 33 B.R. 717 (Bankr. E.D.N.Y. 1983) (denying motion to lift stay where, among other things, "the potential harm to the debtor of greater legal fees and other expenses defending [the action] is a strong countervailing factor"). Conversely, the Movant will suffer no harm if the Motion is denied insofar as it relates to his appellate rights, as the need for any such appeal is entirely speculative at this stage and, even if the State Court issues a decision unfavorable to the Movant, his rights will not be abridged by maintaining the stay.

## VI. CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court deny the Motion insofar as it seeks relief from the stay to pursue an appeal of any decision issued in the State Court Action, and grant such other and further relief as is just and proper.

DATED this 11th day of April, 2023.

McDONALD CARANO LLP

By: /s/ Ryan J. Works
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*[Proposed] Counsel for Official Committee of Unsecured Creditors*

8