BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
    nkoffroth@foxrothschild.com
    zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed April 13, 2023

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

                    Debtor.

Case No. BK-23-10423-mkn

**REPLY IN SUPPORT OF MOTION FOR FINAL ORDER (I) AUTHORIZING CONTINUED USE OF PREPETITION BANK ACCOUNTS; AND (II) GRANTING RELATED RELIEF**

Hearing Date:  April 20, 2023
Hearing Time:  10:30 a.m.
Location:      Telephone or Video Conference

Cash Cloud, Inc., dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), by and through its undersigned counsel, the law firm of Fox Rothschild LLP, hereby submits this reply (the "Reply"): (i) in support of the Debtor's motion [Docket No. 5] (the "Motion")[1] for the entry of a final order, authorizing, among other things, the continued use of Debtor's prepetition Cash Management System, Bank Accounts, and business forms;

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Motion.

1

144653236.1

and (ii) in response to the opposition [Docket No. 382] (the "Opposition") filed by the United States Trustee for Region 17 (the "U.S. Trustee"). In support of the Reply, the Debtor refers to the *Omnibus Declaration of Christopher Andrew McAlary* [Docket No. 19] ("Omnibus Declaration"), the following points and authorities, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion, and respectfully states as follows:

## I.

## INTRODUCTION

The U.S. Trustee's position with respect to the prepetition Bank Accounts—one it blindly applies regardless the industry in which the Debtor operates—is clearly impractical considering that the Debtor is a leading cryptocurrency business. The U.S. Trustee demands that the Debtor open postpetition bank accounts with depositories listed on the Authorized Depository list for the District of Nevada. However, recent and widely reported turmoil in the banking sector has highlighted and exacerbated depositories' unwillingness to work with depositors in the cryptocurrency space.

As of the Petition Date, the Debtor confirmed that it had "limited opportunity and access to banks contained on the Authorized Depository List of Region 17 due to Debtor's operations in the cryptocurrency industry." *See* Omnibus Decl., at ¶ 118. Since the Petition Date, the number of banks willing to partner with a depositor heavily involved in cryptocurrencies has only decreased. By way of example, Signature Bank collapsed as a result of widespread fear over its exposure to the cryptocurrency market.[2] The U.S. Trustee provides no evidence that the Debtor will find success opening postpetition bank accounts at an Authorized Depository in this increasingly challenging market.

---

[2] *See New York Community Bank Agrees to Buy a Large Portion of Signature Bank*, NPR (Mar. 20, 2023 at 1:59 a.m. ET), https://www.npr.org/2023/03/20/1164638154/new-york-community-bank-agrees-to-buy-a-large-portion-of-signature-bank ("After Silicon Valley Bank failed, depositors became nervous about Signature Bank's health due to its high amount of uninsured deposits as well as its exposure to crypto and other tech-focused lending.").

2

144653236.1

Moreover, there is little evidence that the U.S. Trustee's Authorized Depository list will provide meaningful comfort as compared to the FDIC insured depositories the Debtor already utilizes. As of the date of this Reply, the Authorized Depository list for the District of Nevada still includes the failed Signature Bank among its authorized depositories. Additionally, the Region 17 Authorized Depository list for the District of Northern California still includes **both** the failed Signature Bank and Silicon Valley Bank among its authorized depositories. It strains credulity that the U.S. Trustee's Authorized Depository list offers materially enhanced protections than are already provided by the FDIC insured institutions that hold the Debtor's Prepetition Accounts.

Rote application of the U.S. Trustee Guidelines in a complex bankruptcy case as this Chapter 11 Case will work a significant burden on the Debtor's ability to manage postpetition operations. The U.S. Trustee provides **no evidence** that the estate is at risk of loss by maintaining the Prepetition Accounts or Cash Management System. Accordingly, the Opposition should be overruled.

## II.

## ARGUMENT

Section 345(b) provides that the estate must obligate a depository to post a bond or securities if it holds estate funds that are not otherwise "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." 11 U.S.C. § 345(b)(2). Section 345(b)(2) permits the Court to waive the bonding requirements for "cause." *See* 11 U.S.C. § 345(b)(2). "The legislative history is clear that in including that language, the draftsmen intended to afford courts with flexibility in addressing the challenges of strict compliance with the deposit and investment requirements of section 345." *In re Ditech Hldg. Corp.*, 605 B.R. 10, 17 (Bankr. S.D.N.Y. 2019) (citing H.R. Rep. 103-835, 103rd Cong., 2d Sess. 210 (Oct. 4, 1994)). As such courts consider whether "cause" exists to waive compliance with § 345(b) by analyzing the following factors under the "totality of the circumstances":

> (1) The sophistication of the debtor's business; (2) The size of the debtor's business operations; (3) The amount of investments involved; (4) The bank ratings (Moody's and Standard and Poor) of the financial institutions where debtor-in-possession funds are held; (5) The complexity of the case; (6) The safeguards in place within the debtor's own business of insuring the safety of the funds; (7) The debtor's

3

144653236.1

ability to reorganize in the face of a failure of one or more of the financial institutions; (8) The benefit to the debtor; (9) The harm, if any, to the estate; and (10) The reasonableness of the debtor's request for relief from § 345(b) requirements in light of the overall circumstances of the case.

*Id.* at 17-18 (citing *In re Service Merchandise Co., Inc.*, 240 B.R. 896 (Bankr. M.D. Tenn. 1999)). Ultimately, the question is whether, under a totality of the circumstances, the debtor's request for relief is "reasonable and well founded," and that "the benefit to the debtor in waiving the § 345(b) requirements far outweighs any harm to the estate." *Id.*

**Factor 1: The Sophistication of the Debtor's Business.** As set forth more fully in the Omnibus Declaration, the Debtor operated approximately 4,800 DCMs throughout the United States as of the Petition Date. *See* Omnibus Decl., at ¶ 9. Since its inception, the Debtor processed over 1.2 million transactions that brought in close to $1 billion in revenue. *Id.*, at ¶ 11. Cash from customer purchases of cryptocurrencies is collected from the DCMs by the Debtor's armored truck carrier vendors "and deposited into certain specified accounts, depending on geographic area, business relationships with armored carriers, and armored carrier availability." *Id.*, at ¶ 112. The wide-ranging geography of the Debtor's business operations, the armored carriers' essential role on conveying cash to the Debtor's accounts, and the limitations posed by armored carriers' relationships with banking institutions throughout the United States all complicate and impact the flow of funds in the Debtor's ordinary course operations and materially limit the Debtor's choice of banking institutions.

**Factor 2: The Size of the Debtor's Business Operations.** As set forth above, the Debtor's business operations are geographically wide-ranging.

**Factor 3: The Amount of Investments Involved.** The U.S. Trustee observes that the Debtor's Bank Accounts held approximately $1,375,148 as of the Petition Date and that none of these funds were held by Authorized Depositories. However, the U.S. Trustee does not refute the Debtor's observation that all of the Bank Accounts are held at FDIC insured depositories. *See* Omnibus Decl., at ¶ 118. Indeed, the majority of the Debtor's prepetition Bank Accounts held funds below the FDIC insured limit. *See, e.g.*, Opp'n at 3. Just two accounts held a total of approximately $356,942 (or 25% of the Debtor's total deposits) above the FDIC insured limit. *See id.* Moreover, the Debtor's operations are such that millions of dollars regularly flow through the Debtor's cash management

system as the armored carriers deposit funds from the Debtor's DCMs. The amount of investments held in the Debtor's Bank Accounts at any given time are small when compared to the FDIC insured limits and the scope of the Debtor's regular cash flow through the accounts is substantial.

**Factor 4: The Banks' Ratings.** The depositories holding the Debtor's prepetition Bank Accounts are not rated by Moody's or Standard and Poor's.

**Factor 5: The Complexity of the Case.** As set forth above, the scope of the Debtor's business operations throughout the United States and the banking relationships of its armored carrier vendors render the Debtor's cash flow and operations complex.

**Factor 6: The Safeguards in Place.** The principal safeguard in place is the fact that the Debtor's do not regularly hold significant sums in the Bank Accounts relative to ongoing revenue and the Debtor's exposure to any given bank is limited. Specifically, the Debtor holds Bank Accounts at two separate institutions and across a series of separately FDIC insured accounts. The Debtor's cash management system also provides a dual failsafe—it maintains two sets of operating, accounts payable, and payroll accounts. Although the dual nature of these accounts is largely a function of its armored carriers and geographic banking needs, the Debtor's current cash management system is already well-equipped to continue operations uninterrupted in the event one of its dual accounting systems is affected by banking instability. Accordingly, the Debtor has limited exposure at any given time and the Debtor's exposure is spread across institutions.

**Factor 7: The Debtor's Ability to Reorganize in the Event of a Failure.** As set for above, the Debtor's accounts have limited exposure above the FDIC insured limits and the Debtor has diversified its exposure across any given bank. Moreover, the Debtor's consistent cash flow means that the limited exposed funds are a small fraction of the Debtor's average annual revenue. In the event of a failure, funds would simply be forwarded to another account as collections continue in the ordinary course by the Debtor's armored carrier vendors. Accordingly, a failure of one banking institution will not affect the Debtor's reorganization prospects.

**Factors 8 and 9: The Benefit to the Debtor and the Harm to the Debtor.** As set forth more fully in the Motion, maintaining the Debtor's Bank Accounts and Cash Management System will materially benefit the Debtor by permitting the Debtor to focus on postpetition operations rather than

cash flow disruptions that would result in attempting to find an Authorized Depository willing to work with the Debtor's cryptocurrency business, compatible with the geographic scope of the Debtor's business, and with the Debtor's armored carriers are willing to work.  Moreover, the Debtor's Chapter 11 Case has now moved into a critical inflection point as the Debtor attempts to negotiate either a sale or a plan support agreement with potential bidders that would fund a plan. Adding the additional challenges of restructuring the Debtor's Cash Management System at this time would hamper the Debtor's critical efforts to bring the Chapter 11 Case to an expeditious conclusion.

**Factor 10: The Reasonableness of the Debtor's Request.**  Collectively, the failsafes in the Debtor's Cash Management System, the extent to which the Debtor's deposits are already FDIC insured, the complexity and scope of the Debtor's national operations, and the practical challenges of the Debtor's status as a cryptocurrency company render the Debtor's request to maintain the prepetition Bank Accounts entirely reasonable.  Accordingly, the totality of the circumstances demonstrate that "cause" exists to waive the § 345(b) requirements because the benefit to the Debtor far outweighs any harm to the estate.

By contrast, while faulting the Debtor for not thoroughly addressing each factor, the U.S. Trustee's analysis offers little substance.  Indeed, the U.S. Trustee's analysis is confined to a single sentence of argument that merely offers the unsupported supposition that "[g]iven the size of the deposits and/or investments at Prepetition Bank Accounts, which totaled over $1,375,148 on the Petition Date, there appears to be significant risk to the estate."  As set forth above, this conclusory allegation ignores that only *two* of the Debtor's prepetition Bank Accounts held funds that exceeded the $250,000 FDIC insured limit.  Moreover, the prepetition Bank Account balances exceeded the FDIC insured limit by just $356,942 in the aggregate.  The vast majority of the Debtor's prepetition deposit balances fell within FDIC insured limits.

///

///

///

///

///

144653236.1

## III.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court: (i) grant the Motion in its entirety on a final basis; (ii) overrule the Opposition; (iii) authorize the maintenance of Debtor's prepetition Cash Management System as described in detail in the Motion, including Debtor's prepetition Bank Accounts; and (iv) grant the Debtor such other and further relief as is just and proper.

DATED this 13th day of April 2023.

**FOX ROTHSCHILD LLP**

By:     */s/Brett Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtor*

144653236.1