BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed April 19, 2023

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF AN ORDER APPROVING KEY EMPLOYEE RETENTION PROGRAM AND GRANTING RELATED RELIEF**<br><br>Hearing Date:   OST PENDING<br>Hearing Time:   OST PENDING |

Cash Cloud, Inc., dba Coin Cloud (the "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Fox Rothschild LLP, respectfully submits this motion (the "Motion") to the Court for entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "Proposed Order"), approving the Debtor's proposed key employee retention program (the "KERP") and granting the Debtor such other relief as the Court deems just and proper.

1

The Motion is made and based upon the following memorandum of points and authorities, the *Declaration of Chris McAlary* (the "McAlary Declaration") filed in support of this Motion, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Motion.

DATED this 19th day of April 2023.

**FOX ROTHSCHILD LLP**

By:      */s/Brett Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtor*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of the Debtor's Chapter 11 Case in this district is proper pursuant to 11 U.S.C. § 1408 and 1409.

2. The statutory bases for the relief herein are sections 105(a), 363(b), and 503(c) of title 11 of the Unites States Code (the "Bankruptcy Code").

3. The Debtor consents to the entry of a final order on this matter by this Court.

## II.

## FACTUAL BACKGROUND

4. On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5. Debtor is continuing in possession of its property and is operating and managing its business as debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108. See generally Chapter 11 Case Docket.

6. On February 17, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [ECF No. 131], as amended on February 28, 2023 [ECF No. 177].

7. No request has been made for the appointment of a trustee or examiner.

8. The factual background relating to the Debtor's commencement of the Chapter 11 Case is set forth in detail in the *Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions* [ECF No. 19] (the "Omnibus Declaration") and is incorporated for all purposes herein by this reference.

**B.      General Employee Overview and Need for the KERP.**

9.      As of the Petition Date, the Debtor employed 85 employees on a full-time basis and three individuals on a part-time basis. None of the Debtor's employees are subject to collective bargaining agreements. Of the Debtor's employees, and as described in more detail herein, the Debtor has identified twenty-eight (28) key, non-insider employees (the "Participants") for targeted and reasonable retention incentives. See McAlary Declaration ¶ 4.

10.     On the Petition Date, the Debtor filed its *Emergency First Day Motion for an Order: (i) Authorizing the Debtor to Pay Prepetition Wages and Policies; and (ii) Authorizing and Directing Financial Institutions to Honor Checks and Transfers Related to Such Obligations* [ECF No. 6] (the "Wage Motion"). Among other things, the Wage Motion sets forth the various programs and compensation that the Debtor has offered its employees on a prepetition basis in the ordinary course of business.

11.     The Wage Motion does not discuss the need for postpetition compensation plans that that will incentivize retention of key employees who are vital to the Debtor's business and reorganization efforts. Through the KERP, as further described herein, the Debtor proposes to incentivize the Participants to remain with the Debtor so as to ensure continuity and stability during the Chapter 11 Case.

12.     As set forth in the Wage Motion and Omnibus Declaration, the employee count has already been reduced prior to the Petition Date. In attempting to restructure the business, the Debtor, during the second half of 2022, reduced its staff from about 190 employees to a current total of about 85 employees, resulting in an approximately 52% reduction in the cost of labor. Additionally, since the Petition Date, Debtor has lost approximately six employees critical to its operations and restructuring efforts, and is at a critical point where employee retention is key to the reorganization efforts of the Debtor. While reducing the workforce in exchange for cost savings was a necessary step in restructuring its business, this means that the bare minimum amount of employees remains as of the Petition Date, and losing any more key personnel because of voluntary resignation will negatively impact the Debtor's operations, and, therefore, the estate and chances for a successful reorganization. See McAlary Declaration ¶ 5.

13. The Debtor believes that the KERP is necessary because the Participants may be motivated to leave the Debtor's employ during the pendency of this Chapter 11 Case due to, among other things, the uncertainty created by the Debtor's ongoing reorganization efforts and the recent, and significant, reduction in force efforts initiated prior to the commencement of this Chapter 11 Case. Accordingly, the Debtor submits that the KERP will increase the likelihood that the key employees are not disadvantaged by recent events, and are properly incentivized to remain with the Debtor during this Chapter 11 Case, thereby preserving value for the Debtor, its estate, and its stakeholders. Indeed, without the KERP, the Debtor does not believe it can retain the employees who are vital to the Debtor's operations, which would put reorganization and this Chapter 11 Case at risk. See McAlary Declaration ¶ 6.

**C.     Description of the KERP**

   **i.     The KERP Participants**

     ***a.     The Participants Have Increased Responsibilities During the Chapter 11 Case***

14. Of the Debtor's approximately 85 current employees, the Debtor has designated 28 key employees as Participants who perform a variety of important business functions that are vital to the Debtor's business and preserving value for the future. Many of the Participants have developed valuable institutional knowledge regarding the Debtor's operations that would be difficult and expensive to replace, particularly on an expedited basis. See McAlary Declaration ¶ 7. In connection with the Chapter 11 case, employees have, in addition to their primary responsibilities, assumed the burden of significant chapter 11-related tasks. Id. ¶ 8. In particular, the employees have expended extraordinary effort performing tasks related to the preparation of background information for the Debtor's first-day filings, schedules and statement of financial affairs, trustee and creditor's committee due diligence requests, preparation of monthly operating reports, and management of the Debtor's available documents in its data room. Id. ¶ 9. The Debtor's employees continue to perform the above-mentioned tasks in light of significant attrition, including significant turnover in senior leadership, including, among others, certain members of the board of directors, the chief operating officer, chief financial officer, vice president of compliance, and vice president of product and engineering. Id. ¶ 10. Furthermore, the headcount reductions by department place further burdens on

the remaining employees, including the Participants. Id. ¶ 11. As such, the Participants are essential to the successful administration of the Debtor's Chapter 11 Case. Id. ¶ 12. The cost of the KERP on a Participant-by-Participant basis is significantly less than the cost of replacing each Participant. Moreover, the Participants provide important support to the Debtor's advisors in meeting the additional demands imposed by the Chapter 11 Case. Id. ¶ 13.

15. The Participants may be motivated to leave the Debtor during the pendency of this Chapter 11 Case due to, among other things, the uncertainty created by the Debtor's ongoing reorganization. See McAlary Declaration ¶ 14.

### b. *None of the Participants are "Insiders"*

16. Although certain Participants have titles incorporating the word "head," "director," "vice president," or "chief," no Participant is an "insider" of the Debtor. First, no Participant in the proposed KERP is an employee who was appointed or hired directly by the Debtor's board of directors. See McAlary Declaration ¶ 15. Second, none of the Participants have discretionary control over substantial budgetary amounts. Id. ¶ 16. Third, no Participant exercises managerial control over, or has responsibility for, the Debtor's operations as a whole. Id. ¶ 17. Finally, none of the Participants directs the Debtor's overall corporate policy or governance. For example, Participants are in discrete departments with discrete tasks such as financial planning and analysis, human resources, information systems technology, cash logistics, sales and marketing, warehousing, security, and client and administrative support. Id. ¶ 18.

### ii. The KERP Provisions

17. Under the proposed KERP, nine (9) of the Participants will receive 10% of his or her annual base salary, and nineteen (19) of the Participants will receive a fixed bonus of $1,500.00 (collectively, the "Retention Bonus"). The proposed Retention Bonus will be paid according to the following payment schedule: (i) the 19 Participants receiving the fixed $1,500.00 Retention Bonus will be entitled to to be paid upon the date of a final order granting this Motion, (ii) the additional 9 Participants will be entitled to be paid 50% of his or her Retention Bonus upon the date of a final order granting this Motion (the "First Installment"), and will be entitled to be paid the remaining 50% of his or her Retention Bonus (the "Second Installment") as follows: (a) the date of closing of a

6

transaction for a sale of substantially all of the Debtor's assets, (b) the confirmation of a plan of reorganization, (c) the conversion of this Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, or (d) the date of the dismissal of the Chapter 11 Case (collectively, the "Exit Events"). However, if a Participant who received a Retention Bonus voluntarily ceases his or her employment prior to an Exit Event (or is terminated "for cause"), such Retention Bonus shall be subject to recapture by the Debtor's estate. See McAlary Declaration ¶ 19.

18. The aggregate maximum cost of the KERP is $170,979.04. See McAlary Declaration ¶ 20.

19. Additional details regarding the Participants are set forth below:

| Salary Range | Number of Participants |
|---|---|
| $75,000–$124,999 | 22 |
| $125,000–$174,999 | 3 |
| $175,000–$224,999 | 3 |
| Award Range | Number of Participants |
| $1,500 | 19 |
| $7,500–$12,499 | 3 |
| $12,500–$17,499 | 3 |
| $17,500–$22,499 | 3 |

See McAlary Declaration ¶ 21.

### iii. Reasonableness of the KERP

20. The Debtor submits that there is a sound business justification for implementing the KERP. The Retention Bonuses will help to ensure that the Debtor maintains its business operations, preserves its financial condition, and executes its obligations as debtor in possession through the Chapter 11 Case. Without the ability to offer the Retention Bonuses to the KERP Participants, the Debtor risks losing employees who serve critical roles within the Debtor's business operations. If the uncertainty resulting from the Chapter 11 Case causes such employees to accept other employment, the Debtor risks losing considerable value that could otherwise be used to pay the claims of creditors and reorganize its business. The cost of the KERP is reasonable in comparison to the losses that the Debtor and parties-in-interest would suffer without implementing measures to retain these key employees. See McAlary Declaration ¶ 22.

21.     The Debtor submits that the approval of the KERP is in the best interest of the Debtor's estate and all parties-in-interest.  See McAlary Declaration ¶ 23.

### III.

### RELIEF REQUESTED

22.     By this Motion, the Debtor seeks the entry of an order, pursuant to sections 105(a), 363(b), and 503(c) of the Bankruptcy Code, authorizing and approving the KERP, authorizing (but not directing) the Debtor to make any payments that may become due thereunder, and granting the Debtor such other relief as the Court deems just and proper.

23.     The Debtor also requests that all amounts earned and payable under the KERP be afforded administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code for all purposes in the Chapter 11 Case and in any other case under the Bankruptcy Code to which such case may be converted.

### IV.

### LEGAL AUTHORITY

**A.    Implementation of the KERP is Warranted Under Section 363(b)(1) as an Appropriate Exercise of the Debtor's Business Judgment**

24.     The Debtor's implementation of the KERP is a sound exercise of its business judgment.  Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The use, sale, or lease of property of the estate other than in the ordinary course of business is authorized when a "sound business justification" supports such action.  See, e.g., Walter v. Sunwest Bank (In re Walter), 83 B.R. 14, 17 (9th Cir. B.A.P. 1988) (quoting with approval the requirement, set forth in Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070-71 (2d Cir. 1983), that a debtor articulate a "sound business justification" to sell property outside the ordinary course of business); In re Associated of L.A., No. 10-22784, 2010 WL 472303, at *2 (Bankr. C.D. Cal. July 15, 2010) (holding that a debtor had provided "good and sufficient business justification" to support a sale of assets pursuant to section 363(b)); In re Galleria USA, Inc., No. 09-20651, 2010 WL 4519724, at *2 (Bankr. C.D. Cal. Jan. 13, 2010).

25. Once a debtor articulates a valid business justification, the law vests the debtor's decision to use property outside of the ordinary course of business with a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was taken in the best interests of the company." In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (citations and internal quotations omitted), appeal dismissed, 3 F.3d 49 (2d Cir. 1993); see also In re Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (a "presumption of reasonableness attaches to a debtor's management decisions" and courts will generally not entertain objections to the debtor's conduct after a reasonable basis is set forth). Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

26. Courts have found that a debtor's use of reasonable bonuses and other incentives to motivate employees is a valid exercise of a debtor's business judgment. See, e.g., In re Am. W. Airlines, Inc., 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (finding that it is the proper use of a debtor's business judgment to propose bonuses for employees who helped propel the debtor successfully through the bankruptcy process).

27. The Debtor submits that the KERP is a sound exercise of the Debtor's business judgment. See McAlary Declaration ¶ 24.

**B.      The KERP is Warranted Under Section 503(b)(1) as Actual, Necessary Costs of Preserving the Debtor's Estate**

28. Section 503(b) of the Bankruptcy Code states in pertinent part that "[a]fter notice and a hearing, there shall be allowed administrative expenses . . . including – (1)(A) the actual necessary costs and expenses of preserving the estate including – (i) wages, salaries, and commissions for services rendered after commencement of the case. . . ." 11 U.S.C. § 503(b); see also In re APF Co., 270 B.R. 567, 570-71 (Bankr. D. Del. 2001) (postpetition employee bonus is an administrative expense claim under section 503(b)(1)(A)). As discussed above, the KERP is appropriately designed to maximize the value of the Debtor's estate and is appropriately categorized as wages earned after the Petition Date.

9

### C. The KERP Is Justified by the Facts and Circumstances of the Chapter 11 Case

29. Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case." 11 U.S.C. § 503(c)(3). Importantly, courts have found that section 503(c)(3)'s "facts and circumstances" justification test is predicated on a test similar to the business judgment rule. In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of the debtors' KERP on basis that debtors showed a "sound business purpose" justified such approval); In re Borders Grp. Inc., 453 B.R. 459, 473–74 (Bankr. S.D.N.Y. 2011) (evaluating debtors' KERP under business judgment rule); In re Glob. Home Prod., LLC, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code (citing In re Dana Corp., 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006))). Accordingly, whether a retention plan is justified by the facts and circumstances of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment are the same.

30. Courts assessing a debtor's business judgment relating to an incentive program under section 503(c)(3) look at six factors (the "Dana Factors"): (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan. Dana Corp., 358 B.R. at 576-77.

31. In this Chapter 11 Case, the Debtor meets all of the Dana Factors: the Debtor's overall goal with respect to the KERP is to maximize the value of the Debtor's assets and provide stability for reorganization. While all of the Debtor's employees play a role in the Debtor's overall financial success, the Debtor has limited participation under the KERP to critical employees, i.e., those employees who are most influential in the Debtor's ability to preserve the value of the estate.

Moreover, the Debtor submits that the cost and scope of the KERP is reasonable in light of the overall facts and circumstances of this Chapter 11 Case and consistent with industry standards. The Debtor has worked with its financial advisor in the design of the KERP.

32. For the foregoing reasons, the KERP should be authorized because it satisfies the "sound business judgment standard" identified in In re Dana Corp.

**C.    Authorization of the KERP is Appropriate Under Section 105(a) of the Bankruptcy Code**

33. Section 105(a) of the Bankruptcy Code allows the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a); see also U.S. v. Energy Res. Co., 495 U.S. 545, 549 (1990); Adelphia Comm'cns Corp. v. Am. Channel (In re Adelphia Comm'cns Corp.), 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("Section 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process."); Gillman v. Cont'l Airlines (In re Cont'l Airlines), 203 F.3d 203, 211 (3d Cir. 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the Bankruptcy Code.").

34. As previously stated, the Debtor strongly and reasonably believes that the KERP is critical to the success of the Debtor's Chapter 11 Case. Payment of the Retention Bonuses seeks to avoid the drastic negative impact that would result from losing any of the Participants during the Chapter 11 Case. The Debtor submits that such payments are necessary to maximize value of its estate for the benefit of its creditors, and approval of the KERP would be a proper application of the Court's authority under Section 105(a) of the Bankruptcy Code.

**D.    The KERP Does Not Include Insiders, so it is not Subject to Section 503(c)(1)**

35. Because none of the Participants are "insiders" as that term is defined by the Bankruptcy Code, section 503(c)(1) is inapplicable. Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of the debtor for the purpose of inducing such person to remain with the debtor's business"—i.e., those insider plans that are essentially "pay to stay" plans. 11 U.S.C. 503(c)(1). By its terms, section 503(c)(1) of the Bankruptcy Code does not apply where—as is the case here—participants in a retention-based program are not insiders.

11

36. Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or (iv) relative of a . . . director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B). Courts have also concluded that an employee may be an "insider" if such employee "is taking part in the management of the debtor." In re Foothills Texas, Inc., 408 B.R. 573, 579 (Bankr. D. Del. 2009). An employee's job title alone does not make such employee an "insider" as defined by the Bankruptcy Code. See Glob. Aviation Holdings, Inc., 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("The fact that some of the KERP Employees have the word "director" in their titles does not make them insiders. The label an employer chooses to attach to a position is not dispositive for purposes of insider analysis because '[c]ompanies often give employees the title 'director' or 'director-level' but do not give them decision-making authority akin to an executive.'").

37. Although certain Participants hold titles including the term "head," "director," "vice president," or "chief," none of the Participants are "insiders," as such term is defined by section 101(31) of the Bankruptcy Code. None of the Participants have discretionary control over substantial budgetary amounts or significant control with respect to the Debtor's corporate policies or governance. Therefore, the Debtor respectfully submits that none of the Participants constitute "insiders" of the Debtor, and the restrictions of section 503(c)(1) of the Bankruptcy Code are inapplicable to the KERP.

## V.

### REQUEST FOR RELIEF PURSUANT TO BANKRUPTCY RULE 6004

38. Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). Debtor respectfully submits that, in light of the exigent circumstances described above, waiver of the stay under Bankruptcy Rule 6004(h), if applicable to the Proposed Order, is appropriate and justified. See McAlary Declaration ¶ 25.

# VI.

# NO PRIOR REQUEST

39. Debtor has not previously sought the relief requested herein from this or any other Court. See McAlary Declaration ¶ 26.

# VII.

# CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter the Proposed Order attached hereto as Exhibit 1 (i) authorizing and approving the KERP and (ii) granting Debtor such other relief as the Court deems just and proper

Dated this 19th day of April 2023.

FOX ROTHSCHILD LLP

By: /s/Brett Axelrod
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*Counsel for Debtor*

**EXHIBIT B**
***PROPOSED FORM OF ORDER***

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | **ORDER APPROVING KEY EMPLOYEE RETENTION PROGRAM AND GRANTING RELATED RELIEF** |
| | Hearing Date: Hearing Time: |

14

Upon the motion (the "Motion") [1] of the Debtor in the above-captioned chapter 11 case for the entry of an order approving the Debtor's key employee retention plan (the "KERP"); and upon consideration of the *Declaration of Chris McAlary* in support of the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that notice of the Motion as provided therein was good and sufficient; and this Court having determined that the relief sought in the Motion is in the best interest of the Debtor, its creditors, and all parties-in-interest; and after due deliberation, it is hereby

**ORDERED** that the Motion is granted as set forth herein; and it is further ORDERED that the KERP is approved on the terms described in the Motion; and it is further

**ORDERED** that the Debtor is authorized and empowered, but not directed, to take all actions necessary to implement the KERP, to make all payments pursuant thereto, and to implement any relief granted in this Order; and it is further

**ORDERED** that all amounts earned and payable under the KERP shall have administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code for all purposes in the Chapter 11 Case and in any other case under the Bankruptcy Code to which such case may be converted; and it is further

**ORDERED** that the Debtor may add a replacement participant(s) to the KERP upon the resignation or the termination for cause of any Participant, subject to the approval of the unsecured creditors' committee; and it is further

**ORDERED** that notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry; and it is further

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By:   /s/Brett Axelrod
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtor*

**CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

    The Court has waived the requirement of approval in LR 9021(b)(1).

    No party appeared at the hearing or filed an objection to the motion.

    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### #