BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed April 24, 2023

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No.  BK-23-10423-mkn

Chapter 11

**VERIFIED STATEMENT OF ROBERT A. MUSIALA, JR. IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF BAKER & HOSTETLER LLP AS REGULATORY COUNSEL TO DEBTOR**

Hearing Date:  OST PENDING
Hearing Time:  OST PENDING

I, Robert A. Musiala, Jr., being duly sworn, deposes and declares under the penalty of perjury:

1.    I am over 18 years of age, and am competent to testify as to the matters set forth in this Verified Statement based upon my own personal knowledge and if called upon to testify, could and would do so.

2.    I make this Verified Statement in support of the *Application for Order Authorizing Retention and Employment of Baker & Hostetler LLP as Regulatory Counsel to Debtor* (the "B&H

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   Application"),[1] filed by Cash Cloud, Inc., dba Coin Cloud ("Debtor").  The chapter 11 case of Debtor

2   is referred to herein as the "Chapter 11 Case."

3         3.      I am an attorney and partner at Baker & Hostetler LLP ("B&H").

4         4.      Debtor's business requires ongoing work to address various regulatory compliance

5   matters before state and federal agencies in relation to Debtor's money transmitter licensing status

6   and related regulatory obligations at both the state and federal level, and any other financial

7   regulatory compliance and outside general counsel services as needed in connection with same (the

8   "Regulatory Matters").

9         5.      Debtor desires to retain B&H to assist representing Debtor in the Regulatory Matters.

10  A true and correct copy of the retainer agreement (the "Engagement Agreement"), between Debtor

11  and B&H, concerning the Regulatory Matters is attached hereto as **Exhibit 1**.

12        6.      B&H is well qualified to serve as regulatory counsel to Debtor. B&H is a full-service

13  firm with over 900 attorneys in offices in Atlanta, Chicago, Cincinnati, Cleveland, Columbus, Costa

14  Mesa, Dallas, Denver, Houston, Los Angeles, New York, Orlando, Philadelphia, San Francisco,

15  Seattle, Washington, D.C., and Wilmington. B&H's Blockchain Technologies and Digital Assets

16  practice is nationally recognized, and it has substantial experience representing clients in navigating

17  the broad array of legal issues presented by blockchain technology and the rise of digital assets,

18  including cryptocurrencies. I have over ten years of experience working in the blockchain and

19  cryptocurrency market, with related regulatory experience, and such experience makes B&H well

20  suited to assist the Debtor.  A summary of the qualifications and experience of B&H's Blockchain

21  Team and the attorneys who may provide services to the Debtor is attached hereto as **Exhibit 2**.

22        7.      Accordingly, B&H is well qualified and positioned to provide the legal services being

23  sought by Debtor in connection with the Regulatory Matters, and has developed significant relevant

24  experience and knowledge that will assist in dealing with potential issues that may arise in connection

25  with same.

26

27        [1] Capitalized terms not defined herein shall have the meanings ascribed to them in the B&H

28  Application.

144833612.2

8.      Debtor proposes to employ B&H as regulatory counsel to Debtor for the Regulatory Matters on the terms set forth in the Engagement Agreement.  Specifically, Debtor anticipates B&H will provide counsel on the various issues raised in the Regulatory Matters, as well as in the areas mentioned above.  This includes all aspects of representing Debtor regarding the issues relating to the Regulatory Matters, if necessary (the "Services").  See Exhibit 1.

9.      B&H has stated its willingness to act as Debtor's regulatory counsel during the pendency of the Chapter 11 Case.

10.      B&H is well-qualified and experienced in regulatory matters relating to blockchain technology and the rise of digital assets, including cryptocurrencies.  Accordingly, B&H is well-qualified to perform the Services and legally represent Debtor, specifically with respect to B&H's extensive experience of representing clients before federal and state regulatory agencies involving cryptocurrencies.

11.      The scope of B&H's Services has been set forth in the Engagement Agreement executed by both B&H and Debtor.  See Exhibit 1.

12.      Debtor has been advised that B&H has conducted a thorough search using its computerized conflicts check system, based on the information received to date from Debtor, and that B&H's attorneys have made diligent efforts to search the Firm's records and assemble pertinent information for purposes of this Verified Statement with respect to B&H's connections with Debtor's creditors and parties in interest.  If Debtor obtains additional information regarding its creditors and/or parties in interest, Debtor has represented to B&H that Debtor will forward such additional information to B&H to run an updated conflict search.

13.      Debtor has been advised that B&H currently or formerly represents or has a litigation or transactional adversity to the creditors of Debtor identified on **Exhibit 3** attached hereto in matters unrelated to Debtor or Debtor's Chapter 11 Case.  To the extent that B&H discovers any adverse, material relationships during the period of B&H's retention, B&H will supplement this Verified Statement.

14.      Moreover, B&H verifies that:

a.   its partners, of counsel, and associates:

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

i.   are not equity security holders or insiders of Debtor;

ii.  are not and were not, within two years before the date of this application, a director, officer, or employee of Debtor, as specified in subparagraph (c) of 11 U.S.C. § 101(14); and

iii. do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders except as stated herein.

b.  B&H does not represent or otherwise have other material connections with the Debtor, its creditors, any other party in interest in the Chapter 11 Case, or their respective attorneys and accountants, the judge of this Court, the United States Trustee for Region 17 or any person employed in the Office of the United States Trustee for the District of Nevada, in accordance with Bankruptcy Rule 2014.

B&H will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

15.   Pursuant to the Engagement Agreement, B&H will be paid an hourly rate. The amount of compensation to be paid to B&H by Debtor for the Services rendered will fluctuate depending on the attorney working on the matter.  Generally, B&H's rates range from $500 to $1,150 per hour. My rate for this matter is $900.00 per hour and I will be the primary attorney working on this matter from B&H.

16.   B&H shall also seek reimbursement for one hundred percent (100%) of expenses and costs incurred on Debtor's behalf in connection with the Regulatory Matters.

17.   B&H requires an initial retainer of $50,000 (the "Retainer").  B&H will deposit the Retainer in its trust account and will hold it for the duration of its representation of Debtor.  B&H will apply the Retainer funds to any outstanding and overdue balances owing pursuant to the interim compensation procedures set forth in this Court's *Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 331, And Fed. R. Bankr. P. 2016, Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 321] (the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

"Compensation Procedures").[2]  At the end of B&H's representation, it will apply the remaining Retainer (if any) to any outstanding fees and/or expenses owing that are approved by the Court pursuant to B&H's Final Fee Application and return any unearned funds to Debtor at that time.

18.    There is no agreement of any nature, other than with respect to the attorneys at B&H and payment of any contract attorneys utilized by B&H, as to the sharing of compensation to be paid to B&H.

19.    Answers to the UST Guidelines for Larger Cases, Section D.2:

a. *Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?*

No.

b. *Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?*

No.

c. *If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.*

N/A

d. *Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?*

Debtor has approved B&H's provision of Services on the terms set forth in the Engagement Agreement, which includes staffing and hourly rates, for the duration of the Chapter 11 case.

---

[2] To the extent there is any inconsistency between the terms of the Engagement Agreement and the Compensation Procedures, the Compensation Procedures will control.

144833612.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
      I declare, under penalty of perjury of the laws of the United States of America, that the

2
foregoing statements are true and correct to the best of my knowledge, information and belief.

3
      Executed this 24th day of April 2023 in Chicago, Illinois.

4

5

6
               */s/Robert A. Musiala, Jr.*
               Robert A. Musiala, Jr.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

# EXHIBIT 1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

# BakerHostetler

Baker&Hostetler LLP

One North Wacker Drive
Suite 4500
Chicago, IL 60606-2841

T  312.416.6200
F  312.416.6201
www.bakerlaw.com

Robert A. Musiala
direct dial: 312.416.8192
rmusiala@bakerlaw.com

April 19, 2023

**VIA E-MAIL (CHRIS@COINCLOUD)**

Chris McAlary
CEO
Cash Cloud Inc. (dba Coin Cloud)
10190 Covington Cross Drive
Las Vegas, NV 89144

Re:      *Engagement of Counsel*

Dear Chris:

Thank you for selecting Baker & Hostetler LLP to represent Cash Cloud Inc. (dba Coin Cloud). We look forward to serving your needs and to establishing a mutually satisfactory relationship.

The purpose of this letter is to confirm our engagement as counsel and to provide you certain information about our fees, billing and collection policies, and other terms that will govern our relationship. We believe it is helpful to explain to our clients the nature and terms of our representation at the beginning of our relationship. Accordingly, we have attached to this letter our firm's Standard Terms of Engagement.

You have asked us to represent you in connection with financial regulatory compliance and outside general counsel services, including but not limited to representing Coin Cloud before state and federal agencies in relation to Coin Cloud's money transmitter licensing status and related regulatory obligations at both the state and federal level, and any other financial regulatory compliance and outside general counsel services as directed by you. Because Coin Cloud is currently involved in restructuring proceedings, you have also asked us to work with your bankruptcy counsel to perform any work and complete any actions required by the bankruptcy court regarding our representation of you, including but not limited to drafting and filing fee applications, and performing certain administrative work in connection with our retention in the bankruptcy proceedings.

Chris McAlary
April 19, 2023
Page 2

Please note that because Coin Cloud is currently involved in restructuring proceedings, our ability to work on this matter is subject to our review and approval of the pending motion regarding retention of our firm as counsel and a court order approving such application.  Additionally, our ability to continue our representation of you is subject to the ongoing bankruptcy court proceedings.

For the purpose of checking whether there exists any conflict of interest with respect to this engagement, we have searched our conflict of interest database under:

Cash Cloud Inc. (dba Coin Cloud)

We will assume that the above listing is accurate and complete unless you otherwise advise us.  We also request that you notify us promptly if any additional searches are required because of any change in your circumstances.  Additionally, we have searched our conflict of interest database for the names of the twenty largest creditors as identified by the debtors in the matter of *In re Cash Cloud, Inc., dba Coin Cloud*, No. BK-23-10423-mkn (U.S. Bankruptcy Court, District of Nevada).

Our professional fees for legal services will be determined primarily by the amount of time our attorneys and other personnel spend performing services on your behalf and their applicable hourly rates.  My rate for this engagement is $900.00.  The following attorneys have been assigned to work on the matter, with hourly rates as follow:

| | | |
|---|---|---|
| Jonno Forman | Partner | $1,150.00 |
| Joanna Wasick | Partner | $1,150.00 |
| Terry Brennan | Partner | $950.00 |
| Michael Sabella | Counsel | $975.00 |
| Veronica Reynolds | Associate | $725.00 |
| Lauren Bass | Associate | $725.00 |
| Chris Lamb | Associate | $500.00 |

Other attorneys and professionals will provide assistance as needed.  In addition to fees for our professional services, there may be charges for other costs and expenses which we incur in performing services on your behalf.

If the terms described above and in the attached Standard Terms of Engagement are acceptable to you, please sign and return this engagement letter and remit the required retainer of $50,000.  We look forward to working with you.

Sincerely,

DocuSigned by:

*Robert Musiala*

A8E25CF5F23B413...

Robert A. Musiala, Jr.

Chris McAlary
April 19, 2023
Page 3

ACCEPTED AND AGREED TO:

CASH CLOUD INC. (dba COIN CLOUD)

DocuSigned by:

*Chris McAlary*

29784CA0C93441E...

(Signature)

CEO

(Title)

4/19/2023 | 4:12 PM EDT

(Date)

**FOR WIRE REMITTANCES**:

Baker & Hostetler LLP
KeyBank, N.A., Cleveland, OH
Account No:
SWIFT Code: KEYBUS33
4910 Tiedeman Road
Brooklyn, OH  44114

Chris McAlary
April 19, 2023
Page 4

STANDARD TERMS OF ENGAGEMENT

**Introduction**

The purpose of this document is to explain our relationship with you, our billing practices, our obligations to you, and your obligations to us in the belief that our relationship will benefit from a mutual understanding of these matters at the beginning of our relationship. We urge you to call us anytime you have a question relating to any of these matters. We strive to have satisfied clients and your satisfaction is very important to us.

Your agreement to this engagement constitutes your acceptance of the following terms and conditions. If you find any of these terms and conditions unacceptable, please tell us now so that we can try to resolve any differences and proceed on a mutually satisfactory basis.

**Our Relationship**

Our engagement and the legal services we will provide are limited to the matter described in the accompanying letter. Any change in our engagement or the legal services we are to provide to you must be mutually approved in writing. The services we provide are strictly legal services; we do not provide business, personal, financial, investment, accounting or other services. You will provide us with the factual information and materials we need to perform the legal services identified in the accompanying letter, and we will perform the necessary legal services and give you the necessary legal advice. You will make all business, personal, financial, investment, or accounting decisions that are required, including in the case of litigation, the decision whether or not to settle the case. You will not rely on us for business, personal, financial, investment, or accounting advice and will not expect us to investigate the character or credit of persons or entities with whom you are dealing, unless we have expressly agreed to do so in the accompanying letter.

**Confidentiality and Other Matters**

As your attorneys, we owe you duties of confidentiality, loyalty, and competent and zealous representation. We are required to preserve your confidences and secrets. This obligation and the attorney-client communication privilege exist in order to facilitate and encourage candid communication between a client and his or her attorney. We can adequately represent you and give you sound legal advice only if you make us aware of all information and documents that might be relevant to the matter, we are undertaking for you. Accordingly, we urge you to communicate with us fully and without reservation so that we can properly perform legal services for you and give you legal advice with respect to the matter on which you have engaged us.

Chris McAlary
April 19, 2023
Page 5

You should understand, however, that in those matters where we are representing a corporation or other legal entity, our attorney-client relationship is with that specific corporation or legal entity and not with its individual officers, directors, executives, employees, shareholders, partners, or other persons in similar positions, or with its parent, subsidiary, or affiliated corporations or persons. In such cases, our professional duties are owed only to the corporation or legal entity that we have agreed to represent, and you will not assert a conflict of interest because we represent other persons, corporations, or entities that are adverse to any of such related persons, corporations, or other legal entities. In some situations where there is no conflict of interest, we may represent individual officers, directors, executives, or employees, or parent, subsidiary, or affiliated corporations of a corporation or other legal entity as well as the corporation or other legal entity but such multiple representations will be clearly stated in the accompanying letter.

## Professional Fees

In determining the professional fee for our legal services we are generally guided primarily by the amount of time devoted to your matter and the hourly rates of the attorneys performing the services, although we offer other fee arrangements in appropriate situations. If another fee arrangement has been mutually agreed to for your work, it will be set forth in the accompanying letter.

We may also consider other factors, as appropriate, including: the novelty and difficulty of the legal issues involved; the legal skill required to do the work; the fee customarily charged by comparable law firms for similar legal services; the importance of the work to you or the amount of money involved or at risk and the results obtained; any time constraints imposed by you or the circumstances; and the nature and length of our professional relationship with you.

The hourly rate assigned to each attorney reflects his or her ability, experience, reputation, market rates in each location for his or her area of practice, the firm's costs, and other factors deemed appropriate by the firm. Our hourly rates are subject to review and adjustment from time to time, at least annually, based on the foregoing factors. Any changes in hourly rates are usually applied prospectively, although they may also be applied to time that has been recorded but not yet billed. We will provide you with notice of any changes to our rates or expense charges, either through correspondence or invoices indicating the rates then in effect. Our attorneys and other personnel will record time spent on your behalf in quarter-hour increments unless otherwise agreed between you and us.

We will seek to perform your work cost efficiently. This does not mean, however, that we will necessarily assign an attorney with the lowest hourly rate. When selecting attorneys to perform legal services required by your engagement, we generally consider the skill, ability, and experience levels required for the work, prior commitments of our attorneys, and the time demands of your matter and other matters, as well as the hourly rates of our attorneys, unless you request otherwise. Under some circumstances, attorneys

Chris McAlary
April 19, 2023
Page 6

with higher hourly rates may be assigned in order to provide specialized legal skills, to complete the matter more quickly, to meet time constraints imposed by you or the circumstances, to seek to perform the work at a lower overall professional fee, or because of attorney workloads.

At times we may use temporary personnel with appropriate credentials to complete certain work under our supervision. We will charge you for the time of these individuals at rates established by us based on their experience and expertise the same as we do for our direct employees.

We generally charge for travel time during normal business hours at our applicable hourly rates. Outside normal business hours we charge one-half our applicable hourly rates unless the attorney or other person is able to work while traveling. If the attorney or other person works on your behalf while traveling, you will be charged our applicable hourly rates regardless of the time of travel. If the attorney or other person works on other clients' matters while traveling, you will not be charged for time during which the attorney or other person worked for other clients.

## Taxes

The fees for services do not include any excise, sales, use, value added or other taxes, tariffs or duties that may be applicable to our services. When we have the legal obligation to collect such taxes, tariffs or duties, the amount of such taxes, tariffs and duties will be included on our statements with other expenses and charges unless you provide us with a valid tax exemption certificate authorized by the appropriate taxing authority. Any payments by you to us will be made free and clear of, and without reduction for, any withholding taxes. Any such taxes that are otherwise imposed on payments to us will be your sole responsibility. You may be asked to provide us with official receipts issued by the appropriate taxing authority or such other evidence to establish that such taxes have been paid.

## Expenses and Other Charges

In addition to fees for our professional services, our statements will include out-of-pocket expenses we incur (e.g., filing fees, court reporter fees, expert witness fees, overnight courier fees, travel, and postage) and internal charges we make for other services we provide (e.g., bulk copying and computerized legal research) in connection with performing legal services on your behalf. Out-of-pocket expenses incurred will be billed at our cost, which in some cases may be estimated. Internal charges (which may exceed direct costs and allocated overhead expense) will be billed at amounts that reflect the value of the service or industry practice. Further detail regarding any expenses or other charges will be furnished upon request. We may request an advance expense deposit from you in matters where we expect that we will be required to incur substantial out-of-pocket costs on your behalf.

Chris McAlary
April 19, 2023
Page 7

**Travel Expenses.** For automobile travel, we customarily reimburse our attorneys and other personnel and charge you the Internal Revenue Service approved mileage rate, plus parking and tolls outside the cities in which our offices are located.

Actual cost is always charged for airfare, auto rental, cab fare, meals, and lodging. Our attorneys and other personnel are required to travel coach class, lowest logical airfare, unless you request or approve other arrangements in advance, the air travel time exceeds four hours, or circumstances warrant otherwise. In the latter two cases, travel will be by business class if available or first class if it is not.

**Delivery Expenses.** Postage on mail in excess of two ounces per item is billed at cost.

Air express, outside local messenger services and courier services are billed at cost. Use of our own messengers for local deliveries is charged at rates generally competitive with local messenger services.

**Computerized Research and Database Charges.** We utilize Lexis-Nexis and Westlaw to provide primary automated research services that assist in reducing your professional fees. In addition, we have access to other internal and external databases, which help to save money and assist in improving the quality of legal research. Our charges for use of these automated research tools are at vendor invoice, which is net of all discounts provided by the vendors.

**Photocopying.** Copying is charged at $.10 per page for black & white and $.50 for color.

## Invoices and Payments

Unless otherwise mutually agreed, we generally render monthly invoices for legal services, expenses and other charges. Our invoices are due and payable upon receipt. Payment is considered overdue if not received within 30 days from the invoice date. If our invoices are not timely paid, we may withdraw from your representation and terminate our services. We may also assess an interest charge on any overdue invoices, whether or not we terminate services. Payments made on overdue invoices are applied first to the oldest outstanding invoice.

If you have any question about any invoice or any fee, expense, or other charge, we urge you to discuss it with us. We want you to be satisfied with the quality of our services and the reasonableness of our fees.

## Termination

Unless we have mutually agreed to continue our attorney-client relationship with respect to other matters, our attorney-client relationship with you will end upon the completion of services for the matter to which the accompanying letter applies or upon

Chris McAlary
April 19, 2023
Page 8

the earlier termination of our engagement by you or by us.  In this regard, you have the right to terminate our attorney-client relationship at any time you wish with or without cause.  An early termination of our relationship without cause will not, and an early termination of our relationship with cause may not, relieve you of your obligation to pay our reasonable fees, expenses, and other charges incurred before the termination.  We also have the right, and sometimes the obligation, to terminate the engagement subject to the ethical standards in the Rules of Professional Conduct.  We also reserve the right to suspend or terminate our representation, subject to such ethical standards, if you breach your obligations with respect to the engagement or do not pay the firm's invoices as specified.

## Ownership of Files and Records

Except as to records which belong to the firm, records or files which we receive from you and documents that are produced or created in connection with your representation, shall be your property, subject to any lien granted by law, rules of professional conduct and our right to make and retain copies.  Upon the closing of our files after termination of the engagement, we will return records belonging to you unless you request otherwise, or unless special circumstances require us to retain such records. If you request that we retain your files we may ask that you bear the costs of storage.  We shall require from you written authorization to transfer any property belonging to you to a third party.  Under our record retention policy, we normally destroy files ten years after a matter is closed.  It is understood and agreed that we shall have the right, at our discretion, to dispose of files which have not been returned to you at such time that we determine that such files need no longer be retained.

# EXHIBIT 2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

144833612.2

# BakerHostetler

# Blockchain Team Qualifications

*Provided to Coin Cloud*

4/19/2023

*Submitted by:*

Robert A. Musiala Jr.

Partner
rmusiala@bakerlaw.com
T +1.312.416.8192
F +1.312.416.6201
Chicago

bakerlaw.com



# BakerHostetler

# Blockchain Technologies and Digital Assets



We help clients navigate the broad array of legal issues presented by blockchain technology and the rise of digital assets, including cryptocurrencies and non-fungible tokens (NFTs), decentralized autonomous organizations (DAOs) and peer-to-peer economies in interoperable environments (e.g., the metaverse). The only law firm with a practice group dedicated to Digital Assets and Data Management, BakerHostetler remains at the forefront of this burgeoning space.



CLICK HERE TO ACCESS THE SERIES
Introduction to Non-Fungible Tokens

"They dived into the details of blockchains, tokens, and securities when the world barely knew what these were. BakerHostetler is truly on the cutting edge." — *Chambers* 2023

Our clients include businesses and not-for-profit organizations, from startups to Fortune 100 companies in local, national and international arenas. Our attorneys collaborate across practice groups to provide practical advice on how to maximize the opportunities presented by new and emerging technologies while steering clear of pitfalls in a rapidly evolving legal landscape. We help clients understand how current laws and regulations apply to these technologies, plan or advocate for changes in the regulatory environment, and provide thoughtful insight to companies integrating these technologies into existing and prospective product and service offerings.

Our team understands how and when a cryptocurrency, NFT or other digital asset may be property, a currency, a security or a commodity, and the legal and regulatory implications of such designations. We help clients design and work through the myriad of legal issues that arise in developing and launching smart contracts, blockchain network applications, and new technology and business models involving digital assets. Our services include assisting clients in technology design and cryptocurrency fund formation, raising capital and related corporate structuring (both U.S. and offshore), and advising on regulatory compliance for financial technology (fintech) and decentralized finance technology (DeFi) solutions.

Our full-service blockchain practice provides our clients with the deep expertise needed to navigate blockchain, cryptocurrency and digital asset legal issues involving tax, data privacy, securities, anti-money laundering, digital advertising, investigations, technology transactions, intellectual property (IP), policy advocacy and litigation/arbitration. We are also active members of the Chamber of Digital Commerce, the Enterprise Ethereum Alliance Legal Working Group and the Accord Project, all of which exist to develop standards and protocols to facilitate the legally defensible adoption of blockchain-related technologies.

## CONTACTS

**Robert A. Musiala Jr.**
T +1.312.416.8192
rmusiala@bakerlaw.com

**James A. Sherer**
T +1.212.589.4279
jsherer@bakerlaw.com

## REPRESENTATIVE EXPERIENCE





**TOP RANKED**

**BakerHostetler LLP**

FinTech Legal: Data Protection & Cybersecurity in USA (2018-2022)

Our attorneys provide blockchain- and digital currency-related guidance in the following areas:

- Anti-money laundering and "Know Your Customer" compliance
- Bankruptcy and Restructuring
- Corporate structures
- Cryptocurrencies and tokens, including NFTs
- Cybersecurity
- DAOs
- Digital identity
- Fund formation, including hedge funds

- Government relations
- IP
- Litigation, including class action defense
- Mergers and acquisitions
- Not-for-profits/ foundations/charitable organizations
- Privacy issues
- Securities regulation and enforcement
- Smart contracts
- Startup companies

- State money transmitter licensing
- Supply chain and "provenance"
- Tax strategies – U.S. and international
- Technology transactions
- Token generation events
- Venture capital
- White-collar defense and investigations



CLICK HERE TO ACCESS
The Digital Assets Executive Order Resource Center

### ■ Cryptocurrency Fund Receivership

On Jan. 21, 2021, Robert A. Musiala Jr. was appointed as the court-ordered receiver ("Receiver") by the U.S. Southern District of New York in the matter captioned *SEC v. Qin*, et al., 20 CV 10849 (LGS) (S.D.N.Y.), with BakerHostetler as counsel to the Receiver. The Receiver and his team are currently investigating a $90 million cryptocurrency fraud scheme, with a goal of identifying and securing assets for return to investors. The Receiver team has been coordinating with the Securities and Exchange Commission (SEC), the Department of Justice (DOJ), and dozens of cryptocurrency-based and traditional financial institutions around the globe to recover assets related to the Qin fraud scheme.

## REPRESENTATIVE EXPERIENCE





VISIT THE BLOCKCHAIN MONITOR BLOG

### Securities Law and Financial Services Regulation

- Assist dozens of clients in creating and launching blockchain protocols and platforms and integrating digital assets.
- Counsel multiple companies regarding the evolving regulatory landscape for token-generating events.
- Advise multiple cryptocurrency industry clients on Gramm-Leach-Bliley Act compliance; federal and state money services business registration; Bank Secrecy Act compliance; fair lending regulations; and consumer protection, privacy and cybersecurity matters.
- Serve as outside general counsel to a next-phase blockchain company, providing advice on IP, employment, corporate and other matters.
- Represent a blockchain startup in responding to an SEC subpoena related to a prior initial coin offering (ICO).
- Represent a startup seeking to build a blockchain-based securities exchange regulated under Regulation ATS.

### NFT Retail and Peer-to-Peer Marketplace Launches

- Assess data collection requirements under applicable financial laws and the privacy risks of such collection related to indexing of Ethereum blockchain nodes via relational databases.
- Provide counsel regarding regulatory risks of various types of NFT sales and campaigns to assist clients in developing legally compliant NFT sales.
- Provide counsel regarding NFT media management best practices and risks, including data storage and IP issues.
- Draft and negotiate tech vendor contracts and terms of use.
- Represent an iconic brand in litigation involving NFT IP issues.

Clients include a major social media and communications company building out a global, interoperable, peer-to-peer marketplace to support NFTs and other digital assets; multiple national university sports teams launching NFTs associated with athletes' IP; an environment-focused foundation building an NFT strategy; a major game and collectible company launching an NFT initiative; a digital media and event firm integrating NFTs into its business model; and multiple startups building NFT applications and designing niche NFT brands.

## REPRESENTATIVE EXPERIENCE



### Protocol and Network Applications

- Provide protocol and network architecture design and regulatory compliance counsel to clients, including an Ethereum-based network consisting of a collective body of open-source codebases; internet protocols and implementation of software that promotes personal data ownership on a secure communications network; an Ethereum-based network for advanced P2P proxy re-encryption services underpinned by open-source software; an Ethereum-based protocol focused on reducing the environmental impact of proof-of-work networks; layer one Kusama and Polkadot parachain networks providing blockchain as a service technology; and a layer one Polkadot network providing a biometric-based consensus mechanism.
- Draft various contracts on behalf of clients and review/negotiate various contracts drafted by third parties as part of clients' new and ongoing relationship with various technology vendors, as related to clients' business models and technical platform.
- Advise on various data privacy law implications of technical platforms, including analyses related to the European Union's General Data Protection Regulation (GDPR), the California Consumer Privacy Act (CCPA), the Communications Decency Act, the Digital Millennium Copyright Act, the Clarifying Lawful Overseas Use of Data Act and applicable provisions of Title 18 of the U.S. Code.
- Advise on various aspects of potential tax implications related to issues of first impression involving revenue recognition events and smart contracts.

### Investigations (ICOs, DeFi and Cryptocurrency Exchanges)

- Assist numerous clients subject to investigation, requests for information or subpoenas from/by the SEC and the DOJ, including clients that issued ERC20 tokens in an ICO and are subject to investigation by the SEC, witness to the DOJ's investigation into BitMEX, witness to the SEC's investigation into Uniswap, and cooperative witness assisting an investigation into a cryptocurrency fraud scheme.
- Respond to SEC inquiries and manage defense to SEC investigations, including response to document requests, SEC inquiries and settlement negotiations.
- Respond to DOJ inquiries, negotiate scope of response and compile tens of thousands of potentially responsive documents from 16 different sources, including email and hard drives; assess responsiveness of documents and produce under urgent timeline.
- Negotiate scope of response and deadline, and compile and review responsive documents and associated production.

### Government Relations

- Provide government relations guidance to a prominent blockchain-enabled global payments company regarding federal and state legislative, regulatory and policy issues.

## REPRESENTATIVE EXPERIENCE





**9**

BakerHostetler partners were named among the **"BTI Client Service All-Stars for 2022."**

### Digital Identity, Privacy and Data Protection

- Advise prominent blockchain digital identity companies on strategies for achieving compliance with the GDPR.
- Guide a digital currency platform services provider's response to a multimillion-dollar cyber-theft of bitcoin, including:
  » Incident Response
  » Crisis communications
  » Interactions with compromised exchange
  » Client cybersecurity practices and personnel
  » Pre-litigation counseling and preparation
- Advise a digital currency industry client on response to cyber-theft of data and attempted extortion.

### Intellectual Property

- Provide patent prosecution and IP advice to a distributed ledger platform client.
- Prepare and file patent applications covering foundational blockchain technologies and application-level technologies layered on blockchain platforms.
- Collaborate with technologists to develop an IP strategy to protect emerging blockchain-based technologies, including trademark, patent, copyright and trade secret strategies.

### Industry-Specific Blockchain Advice

- Represent a major U.S. cryptocurrency exchange in a tax controversy matter.
- Provide fund formation and ongoing outside general counsel services for a global blockchain consulting firm.
- Advise a high-net-worth individual on cryptocurrency asset recovery and tax compliance.
- Engage in discussions on blockchain solutions for the real estate industry with various stakeholders, including government entities, blockchain technology startups and industry representatives.
- Advise a major financial services company on developing and offering blockchain-enabled products and services, including on issues related to IP, technology transactions, cybersecurity and data protection.
- Counsel several advertising industry clients on the use of blockchain technology in adtech, including issues related to patents, incentive and reward programs, and use of cryptocurrencies.
- Participate in ongoing meetings hosted by a major global technology firm as related to blockchain supply chain solutions and other enterprise use cases.
- Participate on a panel of academic, technology and privacy/cybersecurity leaders advising tech and government sectors on the use of blockchain technologies to secure and streamline elections.

**bakerlaw.com**

BakerHostetler helps clients around the world address their most complex and critical business and regulatory issues. Our highly ranked attorneys deliver sophisticated counsel and outstanding client service. We have six core practice groups – Business, Digital Assets and Data Management, Intellectual Property, Labor and Employment, Litigation and Tax – and more than 1,000 lawyers coast to coast. For more information, visit bakerlaw.com.

Baker & Hostetler LLP publications inform our clients and friends of the firm about recent legal developments. This publication is for informational purposes only and does not constitute an opinion of Baker & Hostetler LLP. Do not rely on this publication without seeking legal counsel.

© 2023 BakerHostetler®

28.02.23.15.04_pc1

# Your Dedicated Team



Robert A. Musiala Jr.

Partner
Chicago
+1.312.416.8192
rmusiala@bakerlaw.com

Robert Musiala has been working in the blockchain and cryptocurrency market since 2012, including working with a U.S. national security community client, advising on compliance with various regulatory regimes and serving as the court appointed receiver to investigate and secure assets related to a cryptocurrency fraud scheme. The inventor of a granted blockchain patent and another pending patent, he works directly with tech teams to build solutions that are compliant by design. Robert is co-leader of the Blockchain Practice at BakerHostetler.



Jonathan A. Forman

Partner
New York
+1.212.847.2855
jforman@bakerlaw.com

Jonno Forman is an experienced litigator and compliance attorney who guides financial services and emerging technology clients through ever-changing federal and state regulations relating to securities, payment and money transmission, data privacy, cybersecurity and information security. As co-leader of the firm's Financial Services Regulatory and Compliance team, Jonno advises clients at the intersection of technology and financial services, focusing on new investment, payment and blockchain products and services, including cryptocurrencies, digital assets, non-fungible tokens (NFTs), utility tokens, decentralized autonomous organizations (DAOs) and Web 3.0 decentralized applications (DApps and DeFi).



Joanna F. Wasick

Partner
New York
+1.212.589.4635
jwasick@bakerlaw.com

Joanna Wasick is a litigation partner in the New York office of BakerHostetler. She handles a broad range of complex commercial litigations, with a focus on financial fraud cases and disputes involving cryptocurrencies and other digital assets. Joanna is also a member of the firm's Blockchain Technologies and Digital Assets team and regularly counsels clients on regulatory obligations, compliance and funding issues in the digital space. She has appeared as a speaker on legal podcasts, CLE programs and panels on cryptocurrency and blockchain topics. Joanna also has written articles and treatises on web3 and other crypto subjects, and is a regular contributor to the firm's Blockchain Monitor blog.

# Your Dedicated Team



**Terry M. Brennan**

Partner
Cleveland
+1.216.861.7485
tbrennan@bakerlaw.com

Terry Brennan is the Litigation Leader for BakerHostetler's Cleveland office, with practice management responsibility for more than 40 litigation attorneys. He focuses his practice on complex business litigation and corporate criminal matters, representing banks, manufacturers and other public and private corporations and individuals in a wide range of complex commercial disputes.

In his white collar practice, Terry represents individuals and businesses in connection with investigations and prosecutions conducted by the DOJ, SEC, FDA, FTC and other federal and state law enforcement agencies and regulatory bodies. He conducts internal investigations on behalf of corporate clients, educates clients on compliance matters, speaks on topics ranging from effective depositions to recent developments in white collar law and has served as a state-appointed special prosecutor.



**Michael A. Sabella**

Counsel
New York
+1.212.589.4625
msabella@bakerlaw.com

Michael Sabella focuses his practice on the areas of restructuring, bankruptcy, corporate governance litigation and complex commercial litigation. He assists debtors, committees, secured and unsecured creditors, examiners and trustees in corporate and individual debtor cases ranging across all industries and in all aspects of litigation and transactions.

Drawing upon his federal clerkship, his LL.M. in Bankruptcy degree and prior legal experience, Michael combines his understanding of all aspects of restructuring and bankruptcy for a thorough and proactive approach to all client situations. Michael has presented on, and written about, a wide range of bankruptcy issues, including involuntary bankruptcy cases, bankruptcy case updates, fraudulent conveyance and preference litigation and issues, and interpretations of sections of the Bankruptcy Code.



**Veronica Reynolds**

Associate
Los Angeles
+1.310.442.8895
vreynolds@bakerlaw.com

Veronica Reynolds' practice focuses on emerging issues related to the metaverse, Web3 and blockchain, specifically as they relate to digital or cryptographic assets (cryptocurrencies and non-fungible tokens (NFTs)) and decentralized autonomous organizations (DAOs). As such, Veronica regularly provides counsel regarding companies' state and federal regulatory obligations including as related to finance, data privacy, information security and intellectual property. Additionally, Veronica serves as counsel to the court-appointed SEC receiver of a former cryptocurrency fund, has provided counsel to a global iconic retail brand in association with claims against an IP infringer in the NFT space, advises on general transactional and corporate matters related to the launch or distribution of digital assets, including NFTs, and has provided counsel to a global social media and communications company regarding Web3 privacy compliance obligations.

# Your Dedicated Team

Lauren Bass brings a background in entertainment and media to BakerHostetler. She has worked with studios and producers on talent and production deals and counseled clients on how to protect their intellectual property. Lauren currently works with the Emerging Technology, Intellectual Property, and Advertising, Marketing and Digital Media teams counseling clients on NFTs and digital assets, social media campaigns, merchandising and branding and other digital media matters.

## Lauren Bass

Associate
New York
+1.212.847.7042
lbass@bakerlaw.com



## Christopher W. Lamb

Associate
Orlando
+1.407.649.8706
cwlamb@bakerlaw.com

Christopher Lamb focuses his practice on commercial bankruptcy, financial restructuring and commercial litigation, working with a variety of industries on corporate restructurings, debtor reorganizations and insolvency. He draws from his experience as a law clerk at the U.S. Bankruptcy Court for the Eastern District of Louisiana to bring a thorough understanding of complex case procedure and strategy to guide clients.

As he develops his practice, Chris also leverages his externships with the U.S. Bankruptcy Court, Northern District of Georgia, the Securities and Exchange Commission Reorganization Unit and the U.S. Department of Justice, Trustee Program, all of which provided him with in-depth knowledge of bankruptcy law and judicial procedures in corporate restructurings and litigation.

# BakerHostetler

Atlanta

Chicago

Cincinnati

Cleveland

Columbus

Costa Mesa

Dallas

Denver

Houston

Los Angeles

New York

Orlando

Philadelphia

San Francisco

Seattle

Washington, DC

Wilmington

bakerlaw.com

# EXHIBIT 3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144833612.2

**EXHIBIT 3**

**Disclosure of Relationships**

Baker & Hosteler LLP ("B&H") currently represents the following creditors or has a current adversity in matters unrelated to Debtor or the Chapter 11 Case:

| Client/Party | Relationship to Debtor | Matter |
|---|---|---|
| **Chevron** | Creditor | B&H represents Chevron in matters unrelated to this Chapter 11 Case and does not represent Chevron in connection with this Case. |
| **Avtech Corp.** | Creditor | B&H represents Avtech in matters unrelated to this Chapter 11 Case and does not represent Avtech Corp. in connection with this Case. |
| **Securitas Security Services USA Inc** | Creditor | B&H represents Securitas Security Services USA Inc in matters unrelated to this Chapter 11 Case and does not represent Securitas Security Services USA Inc in connection with this Case. |
| **iHeartMedia, Inc.** | Creditor | B&H represents iHeartMedia, Inc. in matters unrelated to this Chapter 11 Case and does not represent iHeartMedia, Inc. in connection with this Case. |
| **Cox Business** | Creditor | B&H represents Cox Business in matters unrelated to this Chapter 11 Case and does not represent Cox Business in connection with this Case. |
| **EG America LLC** | Creditor | B&H represented EG America LLC in matters unrelated to this Chapter 11 Case and does not represent EG America LLC in connection with this Case. |

| | | |
|---|---|---|
| **Simon Property Group, Inc.** | Creditor | B&H represents Simon Property Group, Inc. in matters unrelated to this Chapter 11 Case and does not represent Simon Property Group, Inc. in connection with this Case. |
| **U.S. Securities and Exchange Commission – Fair Fund Program** | Creditor | B&H represents the U.S. Securities and Exchange Commission, Fair Fund Program in matters unrelated to this Chapter 11 Case and does not represent the U.S. Securities and Exchange Commission in connection with this Case. |

**(THE B&H CONFLICT RESOLUTION PROCEDURE IS ONGOING, AND B&H WILL UNDERTAKE TO SUPPLEMENT THIS DECLARATION AS NECESSARY)**