BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed April 25, 2023

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>    CASH CLOUD, INC.,<br>    dba COIN CLOUD,<br><br>                        Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**NOTICE OF DESIGNATED STALKING HORSE BIDDER** |

Cash Cloud, Inc., dba Coin Cloud ("Debtor") hereby files this *Notice of Designated Stalking Horse Bidder*, identifying the designated Stalking-Horse Bidder as RockitCoin, LLC. A copy of the Stalking Horse Bid Term Sheet – Asset Purchase is attached hereto as Exhibit 1.

DATED this 25th day of April 2023.

                                                  **FOX ROTHSCHILD LLP**

                                                  By:     */s/Brett Axelrod*
                                                        BRETT A. AXELROD, ESQ.
                                                        Nevada Bar No. 5859
                                                        NICHOLAS A. KOFFROTH, ESQ.
                                                        Nevada Bar No. 16264
                                                        ZACHARY T. WILLIAMS, ESQ.
                                                        Nevada Bar No. 16023
                                                        1980 Festival Plaza Drive, Suite 700
                                                        Las Vegas, Nevada 89135
                                   *Counsel for Debtor*

1

145049546.1

**EXHIBIT 1**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145049546.1

*Fox Swibel 4/25/23*

# STALKING HORSE BID TERM SHEET – ASSET PURCHASE

This term sheet (the "Term Sheet") is dated April 25, 2023 and sets forth the terms of the proposed stalking horse bid for purchase of assets of Cash Cloud, Inc. (d/b/a Coin Cloud), a Nevada Corporation ("Seller" or "Debtor"), by RockitCoin, LLC, a Delaware limited liability company, or its assignee(s) or designee(s) ("Buyer").  This Term Sheet is entered into in anticipation of the Debtor initiating a sale process under Section 363 of the Bankruptcy Code and is: **(a) non binding except as set forth herein; (b) subject to additional Buyer due diligence; and (c) subject to a definitive Asset Purchase Agreement (defined below) and Bankruptcy Court approval of the APA as the Stalking Horse Bid and sale order which are all subject to the review and approval of the Buyer**.

| Goal of Transaction: | Buyer generally seeks to acquire:  (i) all non-rejected Digital Currency Machine ("DCM")[1] locations; (ii) all of Debtor's assets and contracts needed to operate those locations and service those customers (i.e. turnkey), including the assumption by the Buyer of associated cure costs and payment of certain critical vendor liabilities; and (iii) Debtor's Brazil operation. |
|---|---|
| **Form of Transaction:** | Asset Purchase |
| **Purchase Price:** | The purchase price shall be comprised of (collectively, the "Purchase Price"): (i) a cash amount equal to $16.75 million, of which $250,000.00 will be used to fund a litigation trust (the "Cash Purchase Price"); plus (ii) the payment of Cure Costs; plus (iii) the assumption of certain other liabilitites associated with the Assumed Liabilities (e.g. the critical vendor payments). |
| **Payment of Purchase Price:** | Within three (3) business days of the Purchase Agreement (defined below) being approved as the Stalking Horse Bid and fully executed, Buyer shall pay to Seller 10% of the Purchase Price as approximated at the time of the Purchase Agreement as a Deposit (the "Deposit").  The Deposit will only be refundable to the Buyer as specifically set forth in the Purchase Agreement (e.g. Buyer is not the Winning Bidder, Seller material breach, etc.). |
| | The remaining Purchase Price will be paid in immediately available funds at Closing; provided, however, that 10% of the Purchase Price (the "Escrow") will be funded into an escrow |

---

[1] Reference is hereby made to the following categories of DCMs: (1) "Rejected DCMs" shall mean the DCM locations that have already been rejected by the Debtor and the order approving rejection has been entered (we believe the proposed order with respect to the first and second lease rejection motions has been submitted to the Court but not entered); (2) "Rejected DCMs/Motion Pending" shall mean the DCM locations that have already been rejected by the Debtor but the order approving rejection has not been entered; (3) "Buyer Assumed DCMs" shall mean the DCM locations that Buyer assumes pursuant to this proposed transaction; (4) "Buyer Rejected DCMs" shall mean the DCM locations that have not been rejected by the Debtor that the Buyer does not seek to assume.

|  | account at a mutually agreed upon escrow agent to secure Debtor's indemnification obligations arising from the breach of Debtor's representations, warranties and covenants contained in the definitive transaction documents. |
|---|---|
| **Purchased Assets:** | The Purchased Assets shall be comprised of:<br><br>- Buyer will deliver cash, cash equivalents and liquid digital assets (collectively, "Cash Assets") whether held in accounts, in DCMs, cash-in-transit, deposits with vendors, etc. that shall equal $9 million. Buyer may reduce the amount of the Cash Assets at Buyer's sole option. The Cash Purchase Price shall be adjusted down on a dollar-for-dollar basis to the extent Cash Assets delivered to Buyer at closing are less than $9 million.<br>- DCMs at the Buyer Assumed DCM locations.[2]<br>- DCM parts<br>- Software: CCOS Coin Cloud Operating software, all internally developed (proprietary), software and tools for management of operations, App related software (IOS, Android), etc (collectively, the "Transferred Software").; provided, however, Buyer agrees to license the Transferred Software to any buyer(s) of the Buyer Rejected DCMs to the exent needed to operate such DCMs on the following terms: (a) term of at minimum six (6) months; (b) for a fee of 2% of gross revenue of the DCM and (c) standard market terms for all other terms.<br>- All other IP of the Debtor (Trademarks, website, etc.)<br>- Personal Property and office assets (desks, computers, etc.)<br>- Debtor's other Entities and Businesses:<br>  - Brazil Company (Coin Cloud Brasil Ativos Digitais Ltda) (Buyer to have the option to acquire the equity of the Brazil entity as opposed to its assets)<br>  - Evive Trading, LLC<br>  - Sec Vend LLC<br>- Customer list<br>- All other assets of Debtor other than Excluded Assets |

---

[2] Buyer seeks to assume all leases that are doing $5,000/month or more and, to the extent, such locations are part of a master lease, the related locations. Buyer estimates that the Buyer Assumed DCMs will number between 1,800 and 2,500. Buyer has identified 186 locations that are currently Rejected DCMs and/or Rejected DCMs/Motion Pending that Buyer would potentially be amendable to assuming.

4553287 v3 - 07728 / 007

| **Excluded Assets:** | All assets specified on an exhibit to the definitive purchase agreement, which will include: (a) any Debtor lawsuits; (b) all of the warehoused DCMs; and (c) all assets (other than the Purchased Assets set forth above) that are not related to Buyer Assumed DCMs hereunder. |
|---|---|
| **Assumed Liabilities:** | Buyer shall assume those liabilities specified on an exhibit to the definitive purchase agreement (collectively, the "Assumed Liabilities"). Subject to Buyer's due diligence, it is assumed that the Assumed Liabilities will include the following:<br><br>• Contracts needed by Buyer to operate the business including, but not limited to:<br>  o Leases for Buyer Assumed DCMs<br>  o WeWork space<br>  o Brinks<br>• To the extent assumable and subject to Buyer's due diligence, Buyer seeks to maintain the following relationships (if applicable): banking, payment processing (credit, debit and ACH online sales such as simplex, moonpay, stripe and like entities), CIT providers, machine connectiveity providers, exchanges and liquidity providers, subscriptions and agreements related to compliance (KYC, AML and transaction monitoring, blockchain analysis), key tech and maintenance vendors, accounting and ERP software, CRM and customer data, key marketing subscriptions and vendors<br>• Buyer shall pay unpaid pre-petition critical vendor liabilities (exclding any storage cost for the DCMs) in an amount not to exceed $1.325 million. Seller shall provide a schedule of the foregoing.<br>• Buyer shall not be permitted to negotiate with DCM Host and critical vendor representatives unless: (i) Buyer's bid is selected as the Winning Bid, pursuant to the bidding procedures set forth below; and (ii) a representative of the Seller participates in the negotiation.<br><br>Buyer shall not assume any liabilities of Seller other than the Assumed Liabilities.<br><br>Buyer shall be responsible for payment of all "cure costs" required to assume and assign any executory contracts associated with the Assumed Liabilities, including the cure costs related to DCMs that constitute Purchased Assets (the "Cure Costs"). |
| **Key Employees:** | Subject to obtaining specific employee-related information (e.g. employee names, titles, roles & responsibilities, and current |

3

| | |
|---|---|
| | compensation packages) and completion of employee interviews, Buyer may seek to retain employees in the following areas: technology/software team, hardware and operations, compliance, finance, host relations, customer service, marketing and administrative. |
| **Definitive Agreement:** | As soon as practicable after the execution of this Term Sheet and completion of remaining due diligence, the parties will enter into a purchase agreement (the "Purchase Agreement") and the ancillary documents contemplated thereby (collectively, the "Transaction Documents") incorporating the terms set forth herein and such other representations, warranties, covenants and conditions customary for a transaction contemplating the purchase of the assets of a business similar to the business of the Seller, and mutually acceptable to Buyer and Seller. <br><br> Upon full execution and delivery of the Purchase Agreement, Buyer will no longer have a "due diligence out", however, as will be set forth in the Purchase Agreement, Seller shall have ongoing obligations to provide additional/updated due diligence information as reasonably requested by Buyer. <br><br> Purchase Agreement to obligate Seller to continue operating in the ordinary course of its business as it has been doing post-petition including, but not limited to, maintaining and/or applying for renewal of all licenses required for the Seller to operate its business. |
| **Conditions to Closing:** | Buyer's obligation to close the transaction contemplated hereby is subject to the following conditions (any of which may be waived by Buyer in its sole discretion): <br><br> • Debtor is not in uncured material breach of the Purchase Agreement; and <br><br> • Entry of the Sale Order (defined below) that is final and - non-appealable. |
| **Closing:** | Closing shall occur at a time and place mutually agreeable between the parties (the "Closing" and the date of the closing, the "Closing Date") and consistent with the Bankruptcy Court-approved bid procedures, provided that the conditions to Closing set forth above have satisfied or waived by Buyer. <br><br> Buyer's failure to close, expect as specivically provided in the Purchase Agreement, shall result in Buyer's forfeit of the Deposit and shall be the sole remedy Seller has against Buyer for such |

4

| | |
|---|---|
| | failure to close. |
| **Due Diligence:** | Following acceptance of this letter, Seller will afford Buyer and its representatives and professional advisors full access to all of the assets, properties, books, records, pricing and cost information, agreements, commitments, and government permits, licenses and approvals of Seller and to the officers, directors, managers, employees, professional advisors and agents of Seller, for the purpose of evaluating Seller, its business (the "Business") and the transaction contemplated hereby.  During Buyer's investigation, Seller will furnish Buyer and its representatives with all such information concerning Seller and the Business as Buyer or its representatives may request.  Buyer and its representatives will maintain the confidentiality of all confidential information furnished by Seller or its representatives on the terms set forth in the parties' executed Confidentiality Agreement/NDA.<br><br>Buyer will afford Seller and its representatives and professional advisors full access to information reasonably requested about the Buyer related to the Buyer's financial ability to close transaction contemplated herein. |
| **Bid Protection/Sale Order Related Terms:** | Seller has sought Bankruptcy Court approval of sales process, bid procedures, and authority to approve a Stalking Horse Bid. (Docket Entry 392, the "Bid Procedures Motion").  Seller agrees to approve and/or seek Bankruptcy Court approval of Buyer as Stalking Horse Bidder and the Purchase Agreement as the Stalking Horse Bid.<br><br>Consistent with the Bid Procedures Motion, the Purchase Agreement shall contain a Break-Up fee of 3% of the Purchase Price as approximated at the time of the Purchase Agreement *plus* $150,000.00.  Buyer shall not be entitled to any Break-Up Fee unless and unless the Purchase Agreement is fully executed (i.e. no Break-Up Fee if Buyer exercises its "due diligence out" prior to executing the Purchase Agreement). |
| **Miscellaneous:** | This Term Sheet will be governed by the internal laws of the State of Delaware, without regard to conflict of law principles.  Except as set forth herein, each of the parties hereto will bear its own expenses separately incurred with respect to the transaction contemplated hereby. Except for the section entitled "Due Diligence" (which section shall be binding in accordance with its terms; the "Binding Provision"), this Term Sheet is a non-binding expression of interest only that does not reflect the full terms and conditions of the proposed transaction, and, except as provided in the Binding Provision, no party hereto will be legally bound |

5

|  | hereby unless and until the parties enter into a binding Purchase Agreement.  This Term Sheet is not an obligation or commitment of the parties to enter into any purchase agreement or other document of any kind or any negotiations with respect thereto. The final terms of the proposed transaction will be set forth in the Purchase Agreement and the other Transaction Documents to be entered into by the parties. |
|---|---|

*Confidential*

Please acknowledge your acceptance of the terms of this Term Sheet by executing a copy hereof and returning it to the undersigned by PDF.

Very Truly Yours,

ROCKITCOIN, LLC

By:_____
Name:_____
Title:_____

AGREED, ACCEPTED & ACKNOWLEDGED:

CASH CLOUD, INC.

By:_____
Name:_____
Title:_____

DATE: _____, 2023