James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
           blarsen@shea.law
           kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone:  212.468.8000
Facsimile:  212.468.7900
Email:  glee@mofo.com
           akissner@mofo.com

*Attorneys for Enigma Securities Limited*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>CASH CLOUD INC.,<br>  dba COIN CLOUD,<br><br>                          Debtor. | Case No.: BK-23-10423-MKN<br><br>Chapter 11<br><br>ECF Nos. 311, 355, 358, 361, 364<br><br>Hearing Date: May 18, 2023<br>Hearing Time: 10:30 a.m. (PT) |

**ENIGMA SECURITIES LIMITED'S OMNIBUS OBJECTION TO DEBTORS' MOTIONS TO APPROVE REJECTION OF EXECUTORY CONTRACTS AND <u>UNEXPIRED LEASES</u>**

Page 1

ny-2542199

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Enigma Securities Limited ("Enigma"), by and through its undersigned counsel, files this objection (the "Objection") to the (i) *Debtor's Fourth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 355] (the "Fourth Rejection Motion"), (ii) *Debtor's Fifth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 358] (the "Fifth Rejection Motion"), (iii) *Debtor's Sixth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 361] (the "Sixth Rejection Motion"), and (iv) *Debtor's Seventh Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 364] (the "Seventh Rejection Motion" and, collectively with the Fourth Rejection Motion, the Fifth Rejection Motion, and the Sixth Rejection Motion, the "Motions")[1] filed by Cash Cloud Inc. (hereinafter, the "Debtor" or "Coin Cloud"). In support of this Objection, Enigma respectfully states as follows:

**MEMORANDUM OF POINTS AND AUTHORITIES**

1. In less than three weeks, the Debtor will conduct an auction for the sale of its assets or recapitalization of its business. Shortly thereafter, the winner at auction will take charge of the Debtor's operations, which consist principally of the purchase and sale of cryptocurrency via kiosks (also known as digital currency machines, or "DCMs") located in malls, retail shops, and other public spaces. Presumably, they also will (as most new owners do) have their own thoughts as to how to

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motions.

Page 2

ny-2542199

run the business, and in particular, which DCMs (and associated leases) they wish to retain within the go-forward footprint, and those in which they have no interest.

2.     Unfortunately, by the time of the auction, that decision may have already been made for them. That is because the Debtor seeks to reject various leases (the "Leases") associated with its DCMs that it claims to have determined to be of no value and abandon any associated DCMs (the "Abandoned DCMs"). And rather than wait a few short weeks for a winning bidder to be selected, the Debtor insists on doing so now. Both requests should be denied as premature. Instead, these important decisions—ones that will have a potentially irreversible impact on the go-forward business—should be deferred until after the auction and be left to the Debtor's new owners (as is the case in virtually all asset sale bankruptcy cases).

3.     The Motions should also be denied for the separate and independent reason that abandonment of the Abandoned DCMs prior to the auction will substantially prejudice Enigma. Enigma is a prepetition secured lender to the Debtor, and has a perfected security interest in, among other things, approximately 420 of the Abandoned DCMs subject to the Motions.[2] Although Enigma is under no obligation to accept the Abandoned DCMs in satisfaction of its claims, over the past months since the Motions were filed, Enigma has expended substantial time and effort in attempting to locate a buyer for the Abandoned DCMs. And while Enigma has obtained some indications of interest, to date no buyer has been willing to commit to a purchase without assurances that it will be able to license the Debtor's DCM software to operate the machines going forward. The Debtor, however, has been unable (or unwilling) to provide such assurances prior to the auction; instead, it has (somewhat ironically) left all licensing decisions up to its yet-to-be-determined future owners.

4.     This leaves Enigma facing an intractable dilemma: either incur the substantial costs of retrieving, transporting, and warehousing hundreds of DCMs today in the hope that it may find a

---

[2] In addition to other sources of financing, the Debtor entered into that certain Secured Loan Financing Agreement, dated as of April 22, 2022 (hereinafter, the "Financing Agreement"), under which Enigma agreed to provide the Debtor with approximately $8,000,000 in financing for its operations. To secure the Financing Agreement, the Debtor and Enigma entered into that certain Security Agreement, dated as of April 22, 2022 (hereinafter, the "Security Agreement"), pursuant to which Enigma took a perfected security interest in certain "cryptocurrency automated teller machines and the cash proceeds contained therein and generated therefrom[.]" See Security Agreement, § 4 (collectively, the "Enigma Collateral").

Page 3

ny-2542199

1  purchaser for them tomorrow, or forever relinquish all rights in the Abandoned DCMs upon
2  abandonment. This is a lose-lose situation into which Enigma should not be forced, particularly
3  where the Debtor has demonstrated no urgency demanding immediate relief.

4    5.    Accordingly, the Motions should be denied or, in the alternative, adjourned until after
5  a winning bidder has been selected in accordance with the bid procedures approved by this Court.[3]

6    **A.**    **The Decision to Reject the DCM Leases is Premature**

7    6.    Although the decision to reject a contract is generally "left to the business judgment
8  of the trustee or debtor in possession," *In re X10 Wireless Tech., Inc.*, BAP No. WW-04-1328-PST,
9  2005 WL 6960205, at *3 (9th Cir. B.A.P. Apr. 5, 2005) (citation omitted), the debtor must still
10 demonstrate that such rejection will benefit the estate. *In re Kirkpatrick,* 34 B.R. 767, 769 (9th Cir.
11 B.A.P. 1983). In determining the benefit to the estate, the interests of creditors are "of paramount
12 importance," and a "balancing of interests" may be necessary. *In re X10 Wireless Tech.*, BAP No.
13 WW-04-1328-PST , 2005 WL 6960205, at *3 (quoting *In re ChiFeng Huang,* 23 B.R. 798, 801 (9th
14 Cir. B.A.P. 1982)). Where the debtor's determination to reject a contract is "erroneous, too
15 speculative, or contrary to the provisions of the Bankruptcy Code," rejection should be denied. *In
16 re X10 Wireless Tech.*, BAP No. WW-04-1328-PST, 2005 WL 6960205, at *3 (quoting *Richmond
17 Leasing Co. v. Capital Bank, N.A.,* 762 F.2d 1303, 1309 (5th Cir.1985) (citation omitted)).

18    7.    Here, the Debtor has failed to demonstrate that the determination to reject the Leases
19 was a reasonable exercise of its business judgment, or that rejection would provide a benefit to the
20 estate. To the contrary, the Motions appear to proceed from the faulty premise that because <u>this</u>
21 Debtor under <u>this</u> management has determined that it has no interest in the Leases and Abandoned
22 DCMs subject to the Motions, then it must necessarily follow that <u>no</u> purchaser or plan sponsor could
23 <u>ever</u> ascribe value to the Leases and Abandoned DCMs. That is precisely the sort of "speculative"
24 decision-making that courts in this jurisdiction and others have found to warrant denial of a rejection
25 motion. *See In re X10 Wireless Tech.*, BAP No. WW-04-1328-PST , 2005 WL 6960205, at *3; *see*

---

[3] *See Order Establishing Bidding Procedures and Related Deadlines* [ECF No. 483] (the "<u>Bid Procedures</u>").

Page 4

ny-2542199

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

*also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d at 1309; *In re Hertz*, 536 B.R. 434, 443 (Bankr. C.D. Cal. 2015); *cf. In re Simetco, Inc.*, Case No. 93-61772-JHW, 1993 WL 541459, at *4 (N.D. Ohio Dec. 2, 1993) (appropriate to extend time for assumption or rejection of contracts "[u]ntil the outcome of [sale, financing, and marketing] process is known" as until then, "the form that [the debtor's] plan will take is uncertain"); *contrast In re Caribbean Petrol Corp.*, 444 B.R. 263, 267 (Bankr. D. Del. 2010) (permitting rejection of contracts prior to sale where uncertainty surrounding counterparty contract rights was found to have chilled bidding).

8. To the extent a potential purchaser does in fact ascribe value to some of the Leases, then the Debtor's premature rejection thereof may depress the sale price for the Debtor's assets—or enterprise valuation in a recapitalization transaction—to the detriment of the estate. *See In re Kirkpatrick,* 34 B.R. at 769 (debtor must show benefit to the estate from assumption or rejection). In addition to lowering the potential sale price, the premature rejection of Leases that a purchaser otherwise would have assumed will also lead to additional claims against the Debtor's estate, thereby diluting recoveries to unsecured creditors. *In re Hertz*, 536 B.R. at 444 (denying rejection where increased rejection damages claims would outweigh any increase in sales price obtained due to rejection of contract). These potential harms outweigh any incremental benefit that might be obtained by the estate by early rejection of the Leases. *In re X10 Wireless Tech.*, BAP No. WW-04-1328-PST, 2005 WL 6960205, at *3 (endorsing a "balancing of interests"). That is particularly true where, as here, the Debtor has sought relief *nunc pro tunc* to the filing date of the Motions, such that no additional administrative expense claims would accrue in the event of a further adjournment of the Motions.

9. It is for precisely the foregoing reasons that the decision to assume or reject contracts material to a debtor's business is generally made by a purchaser or plan sponsor in conjunction with approval of a sale or confirmation of a plan—and not before. *See, e.g., In re Stimwave Technologies Inc.*, Case No. 22-10541-KBO (Bankr. D. Del. Mar. 17, 2023), [ECF No. 768], at 43 (proposed plan providing for rejection of contracts not designated by purchaser at auction); *In re Front Sight Management LLC*, Case No. 22-11824-ABL (Bankr. D. Nev., Oct. 3, 2022), [ECF No. 407]

(firearms club sought rejection of contracts with its members in conjunction with plan confirmation); *In re GVS Texas Holdings I, LLC*, Case No. 21-31121-MVL (Bankr. S.D. Tex. Feb. 1, 2022), [ECF No. 618] at 28 (plan providing for automatic rejection of contracts not designated by purchaser at auction); *In re Gypsum Resources Materials, LLC*, Case No. 19-14796-MKN (Bankr. D. Nev. Oct. 8, 2021), [ECF No. 1662], at 32 (plan providing for rejection upon confirmation of all contracts not designated in schedule to disclosure statement); *In re Islet Sciences, Inc.*. Case No. 19-13366-MKN (Bankr. D. Nev. May 7, 2021), [ECF No. 477], at 19 (same).  The Debtor has offered no compelling reason to depart from this standard practice here, and therefore the Motions should be denied as premature.

      **B.**    **Abandonment of the DCMs at this Juncture Will Prejudice Enigma**

10.    The Motions should also be denied because abandonment of the DCMs at this time will cause substantial prejudice to Enigma.  As noted, over the last several months Enigma has been searching diligently for a buyer for the Abandoned DCMs.  And though several parties have indicated some interest in the Abandoned DCMs, to date no buyer has been willing to commit to a purchase without assurances that it will be able to use the Debtor's DCM software to operate the machines going forward.

11.    When Enigma reached out to the Debtor to inquire as to whether a purchaser of the Abandoned DCMs would be permitted to continue using the Debtor's software, the Debtor's financial advisor could provide no such commitment. Instead, he responded that "the answer ultimately depends on who wins the auction," but that the Debtor would "encourage" bidders to allow continued use of the Debtor's software.[4] This lack of assurances was insufficient for potentially interested parties and, as a result, no buyer has agreed to move forward with a purchase of the Abandoned DCMs from Enigma.

12.    As a practical matter, the absence of a purchaser under contract at the time of abandonment will likely be fatal to Enigma's efforts to dispose of the Abandoned DCMs.  That is

---

[4] *See* E-mail from Tanner James to Zach Marcus (Apr. 28, 2023, 01:30 EST), attached as **Exhibit 1** to the *Declaration of Andrew Kissner* filed contemporaneously herewith.

Page 6

ny-2542199

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

because the proposed orders attached to the Motions would provide Enigma with only seven days after approval of the Motions to dispose of the Abandoned DCMs, after which the applicable Lease counterparty becomes entitled to take possession of the corresponding machines. Thus, by the time a winning bidder is identified, it will likely be too late for Enigma to dispose of the collateral, as the 400+ Abandoned DCMs already will have been deemed abandoned to the various Lease counterparties.

13. This leaves Enigma with two equally unappealing choices. It must either (a) incur additional time, expense, and effort to repossess, transport, and store the Abandoned DCMs pending the auction, in the hopes that the winning bidder will be amenable to licensing the Debtor's software going forward, or (b) acquiesce to the abandonment and potential disposal of more than four hundred machines to which it might otherwise have had recourse, in each case for no reason but to accommodate the Debtor's (unjustified) desire to charge ahead with rejection and abandonment prior to the auction.

14. The Court should not countenance such an extraordinarily unfair result. Enigma respectfully requests that it deny the Motions instead.

**RESERVATION OF RIGHTS**

15. To the extent the Court grants the Rejection Motions and the Debtor determines to abandon or surrender any portion of the Enigma Collateral to Enigma, then Enigma reserves all rights with respect thereto, including but not limited to all rights it may have with respect to (a) the valuation of the Enigma Collateral, (b) cash contained within any abandoned DCMs (which, for the avoidance of doubt, also constitutes Enigma Collateral), and (c) the impact of abandonment on the amount of the Enigma Secured Loan claim.

///
///
///
///
///

**WHEREFORE**, Enigma requests that the Court sustain this Objection and deny the Motions, or in the alternative, adjourn consideration thereof until a winning bidder is selected in accordance with the Bid Procedures, and grant any additional relief the Court deems appropriate.

Dated this 4th Day of May, 2023.

By: /s/ *James Patrick Shea*
James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Fax: (702) 926-9683
Email:  jshea@shea.law
           blarsen@shea.law
           kwyant@shea.law

-and-

Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
**MORRISON & FOERSTER LLP**
250 West 55th Street
New York, New York 10019-3601
Telephone:   212.468.8000
Facsimile:   212.468.7900
Email:  glee@mofo.com
           akissner@mofo.com

*Attorneys for Creditor
Enigma Securities Limited*

ny-2542199

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

# CERTIFICATE OF SERVICE

1. On May 4, 2023, I served **ENIGMA SECURITIES LIMITED'S OMNIBUS OBJECTION TO DEBTORS' MOTIONS TO APPROVE REJECTION OF EXECUTORY CONTRACTS** in the following manner:

☒ a. ECF System: Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System):
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 4, 2023

By: /s/ *Bart K. Larsen, Esq.*

Page 9

ny-2542199