BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
        zwilliams@foxrothschild.com
*Counsel for Debtor*

Electronically Filed May 8, 2023

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>    CASH CLOUD, INC.,<br>    dba COIN CLOUD,<br><br>               Debtor. | Case No. BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION DATED May 8, 2023** |

1

144813245.10

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................6

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION ...................................6

    1.1    Definitions.................................................................................................6

    1.2    Rules of Interpretation and Computation of Time.................................17

ARTICLE II CLASSIFICATION OF CLAIMS ......................................................................18

    2.1    Unclassified Claims ...............................................................................18

    2.2    Classification of Claims .........................................................................18

ARTICLE III TREATMENT OF CLAIMS ............................................................................19

    3.1    Unclassified Claims ...............................................................................19

    3.2    Classes of Claims ..................................................................................21

    3.3    Retention of Defenses and Rights of Setoff Regarding Claims.............26

ARTICLE IV ACCEPTANCE OR REJECTION OF THE PLAN ..........................................26

    4.1    Acceptance by Impaired Classes ...........................................................26

    4.2    Acceptance by Unimpaired Classes.......................................................26

    4.3    Deemed Rejection ..................................................................................26

    4.4    Summary of Classes Voting on the Plan.................................................27

    4.5    Cramdown...............................................................................................27

ARTICLE V EXECUTORY CONTRACTS AND UNEXPIRED LEASES.............................27

    5.1    Assumption of Assumed Contracts.........................................................27

    5.2    Rejection of Rejected Contracts Leases..................................................27

    5.3    Filing of Rejection Claims .....................................................................27

    5.4    Reservation of Rights.............................................................................28

ARTICLE VI IMPLEMENTATION OF THE PLAN ............................................................28

    6.1    Means for Implementation if a Sale Occurs ..........................................28

    6.2    Means for Implementation if a Sale Does Not Occur.............................28

    6.3    Continued Corporate Existence ..............................................................29

6.4     Vesting of Assets ................................................................................29

6.5     Directors and Officers of the Reorganized Debtor .................................30

6.6     Creditor Trust .....................................................................................31

6.7     Creditor Trustee ..................................................................................32

6.8     Post-Confirmation Management ............................................................32

6.9     Preservation of Causes of Action ..........................................................32

6.10    Exemption from Certain Transfer Taxes .................................................32

ARTICLE VII PROVISIONS GOVERNING DISTRIBUTIONS....................................33

7.1     Date of Distributions............................................................................33

7.2     Record Date for Distributions ...............................................................33

7.3     Disbursing Agent .................................................................................33

7.4     Delivery of Distributions and Undeliverable or Unclaimed Distributions ............34

7.5     Manner of Payment...............................................................................34

7.6     Fractional Dollars; De Minimis Distributions .........................................35

7.7     Surrender of Cancelled Instruments or Securities ...................................35

7.8     Post-petition Interest ............................................................................35

7.9     Setoffs and Recoupments .....................................................................35

ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS ...................................36

8.1     Allowed/Disputed Claims .....................................................................36

8.2     Claims Administration Responsibilities .................................................36

8.3     Estimation of Claims............................................................................37

8.4     Disallowance of Claims ........................................................................38

ARTICLE IX CONDITIONS PRECEDENT TO THE EFFECTIVE DATE .............................38

9.1     Conditions Precedent to the Effective Date ............................................38

9.2     Waiver of Conditions ...........................................................................39

9.3     Reservation of Rights...........................................................................39

9.4     No Admission or Waiver ......................................................................39

9.5     Substantial Consummation of the Plan ...................................................40

144813245.10

9.6    Effect of Appeals ......................................................................................40

ARTICLE X EFFECT OF CONFIRMATION OF PLAN .................................................40

10.1    Discharge .................................................................................................40

10.2    Binding Effect of Plan/Injunction .........................................................41

10.3    Exculpation of Exculpees .......................................................................42

10.4    Exculpation and Indemnification of the Creditor Trust and Creditor Trustee.......43

10.5    Cancellation of Instruments and Securities.............................................44

10.6    Release of Liens ......................................................................................44

10.7    Judgments Void .......................................................................................45

10.8    No Limitation on Effect of Confirmation ...............................................45

ARTICLE XI RETENTION OF JURISDICTION .........................................................45

11.1    Jurisdiction. ............................................................................................45

ARTICLE XII MISCELLANEOUS PROVISIONS .......................................................48

12.1    Modification of Plan ...............................................................................48

12.2    Notices ....................................................................................................49

12.3    Limitation of Notice ...............................................................................49

12.4    Headings .................................................................................................50

12.5    Exhibits ...................................................................................................50

12.6    Nonseverability of Plan Provisions.........................................................50

12.7    Compromise of Controversies ................................................................51

12.8    Waiver or Estoppel .................................................................................51

12.9    Conflicts .................................................................................................51

12.10   Computation of Time ..............................................................................51

12.11   Governing Law .......................................................................................51

12.12   Successors and Assigns...........................................................................52

12.13   Good Faith ..............................................................................................52

12.14   Post Confirmation Conversion or Dismissal ..........................................52

12.15   Entire Agreement ....................................................................................52

4

12.16   Final Decree Closing the Chapter 11 Case .............................................................52

12.17   Dissolution of Committee .........................................................................................53

144813245.10

## INTRODUCTION

Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), hereby proposes *Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023* (the "Plan"), pursuant to section 1121(a) of title 11 of the United States Code (the "Bankruptcy Code").  Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business and operations, risk factors and other related matters.  The Disclosure Statement also provides a summary of the Plan.  In the event that inconsistencies exist between the Plan and the Disclosure Statement, the Plan shall govern.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

As used herein, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 1.1    Definitions

**"Administrative Expense Claim"** means a Claim for a cost or expense of administration of the Chapter 11 Case allowable under Bankruptcy Code sections 503(b) or 1114(e)(2) and entitled to priority pursuant to Bankruptcy Code section 507(a), including: (i) any actual and necessary cost and expense, incurred by the Debtor after the Petition Date, of preserving the Estate and operating the Debtor's business, including wages, salaries or commissions for services rendered after the commencement of the Case; (ii) Professional Fee Claims; (iii) claims for the value of goods received by the Debtor within 20 days of the Petition Date under Bankruptcy Code section 503(b)(9); and (iv) all fees and charges properly assessed against the Estate pursuant to 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means the date that is forty five (45) days after the Effective Date, the date by which all unpaid Administrative Expense Claims arising prior to the Effective Date shall be filed with the Bankruptcy Court or be forever barred.  The Administrative Expense Claim Bar Date does not apply to: (a) Professional Fees, which shall be subject to the provisions of Section 3.1(c) of the Plan; or (b) the fees and charges assessed against the Estate pursuant to Section 123 of the Judicial Code and 28 U.S.C. § 1930, which are not subject to an allowance

procedure under Bankruptcy Code section 503(b).

**"Administrative Expense and Priority Escrow Account"** means the depository account established or designated by the Debtor to be funded as of the Effective Date with Cash for Payment of Administrative Expense Claims, Priority Tax Claims and Other Priority Claims in accordance with the terms of the Plan.

**"Allowed Claim"** means a Claim: (a) scheduled by the Debtor as undisputed, not contingent and liquidated; (b) that is evidenced by a Proof of Claim Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); or (c) that is Allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim and the Debtor or Creditor Trustee, as applicable, or (iii) pursuant to the Plan; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that (i) no challenge, objection or request for estimation has been Filed on or before the Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; or (ii) any challenge, objection has been settled, waived, withdrawn or denied by a Final Order.  For the purpose of computing distributions under the Plan, Allowed Claims shall not include penalties, punitive damages or interest with respect to such Claim accruing from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code, or as otherwise expressly set forth in the Plan.

**"Assets"** means all of the assets, property, interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of Debtor and its Estate, as they existed on the Effective Date or thereafter.

**"Assumed Contracts"** means all of the Debtor's contracts and leases listed in **Schedule 1** to the Plan Supplement, as may be amended, modified, or supplemented from time to time by the Debtor until the Effective Date.

**"Avoidance Actions"** means all claims, rights, and causes of action of Debtor's Estate under the Bankruptcy Code, including but not limited to those set forth in sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or their state law analogs, regardless of whether or not such actions have been commenced prior to the Effective Date; *provided, for the avoidance of doubt,*

such Avoidance Actions shall subject to the provisions in paragraph 17 of each of the DIP Financing Orders, to the extent applicable.

**"AVT"** means AVT Nevada, L.P.

**"AVT Claim"** means all Allowed Claims of AVT.

**"Bankruptcy Code"** means title 11, United States Code, as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the District of Nevada, which has jurisdiction over the Chapter 11 Case pursuant to section 1334 of title 28 of the United States Code and the reference from the United States District Court for the District of Nevada pursuant to its General Order No. 24, as amended February 22, 2016.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

**"Bar Date"** means, as applicable, any date or dates established by an order of the Bankruptcy Court or the Plan by which Proofs of Claim must be Filed, including (i) the Administrative Expense Claims Bar Date, (ii) the general bar date of June 14, 2023, which is the date established by the Bankruptcy Court by which non-governmental Creditors are required to File Proofs of Claim with respect to pre-petition Claims, including Claims asserted pursuant to Bankruptcy Code section 503(b)(9), except with respect to Administrative Expense Claims, Claims arising from the rejection of any executory contracts and unexpired leases, and Claims that were scheduled by the Debtor as undisputed, non-contingent, and unliquidated; and (iii) the governmental bar date of August 7, 2023, by which governmental Creditors are required to File Proofs of Claim with respect to pre-petition Claims, including but not limited to Priority Tax Claims.

**"Bidding Procedures"** means the procedures governing the marketing process for the sale of the Debtor's Assets, as approved in the Bidding Procedures Order.

**"Bidding Procedures Order"** means the *Order Establishing Bidding Procedures and Related Deadlines* (see Stretto website, at Docket No. 483).

**"Business Day"** means any day, other than a Saturday, Sunday or a "legal holiday" (as such term is defined in Bankruptcy Rule 9006(a)).

144813245.10

**"Cash"** means legal tender of the United States of America.

**"Causes of Action"** means all Avoidance Actions and all other claims and causes of action that constitute property of Debtor's Estate under Section 541 of the Bankruptcy Code and/or any other applicable federal or state law; *provided, for the avoidance of doubt*, such Causes of Actions shall subject to the provisions in paragraph 17 of each of the DIP Financing Orders, to the extent applicable.

**"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court under Case No. 23-10423-mkn.

**"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

**"Claims Objection Deadline"** means the later of (1) 180 days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtor, Reorganized Debtor, or Creditor Trustee on behalf of the Creditor Trust, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such Claims.

**"Class"** means a category of Holders of Claims as described in Article II of the Plan.

**"Collateral"** means one or more Assets upon which a Creditor asserts a Lien securing an Allowed Claim.

**"Committee"** means the Official Committee of Unsecured Creditors, appointed by the Office of the United States Trustee in the Chapter 11 Case, as its membership may be revised from time to time under applicable bankruptcy procedures.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**"Confirmation Funds"** means all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date: (a) to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the DIP Claims (to the extent not previously satisfied upon the closing of a Sale), the Engima Secured Claim, the Genesis Secured Claim, Other Secured Claims and all Cure Claims; (b) to the U.S. Trustee for US Trustee Fees due as of the Effective Date; (c) to the Creditor Trust in the amount of the Creditor Trust Funding Amount; and (d) for any other Distributions and payment of costs and expenses in connection with consummating the Plan, including the Professional Fee Escrow Account

9

and the Administrative and Priority Claims Escrow Account.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Consultation Parties"** means the Committee, the DIP Lender, Enigma and Genesis.

**"Creditor Trust"** means a trust that will be established on the Effective Date for the benefit of Holders of Allowed General Unsecured Claims pursuant to the Plan and in accordance with the terms of the Creditor Trust Agreement.

**"Creditor Trust Agreement"** means the Creditor Trust Agreement that will establish the Creditor Trust, a copy of which will be included in the Plan Supplement.

**"Creditor Trust Assets"** means the Causes of Action and (i) *if a Sale occurs*, all Assets not purchased in the Sale, or (ii) *if a Sale does not occur*, all other Assets (if any) identified as Creditor Trust Assets in the Plan Supplement.

**"Creditor Trust Beneficiaries"** means, collectively, all Holders of the Allowed AVT Claim and Allowed General Unsecured Claims who are entitled to distributions from the Creditor Trust in accordance with the Plan and Creditor Trust Agreement.

**"Creditor Trust Funding Amount"** means Cash in the amount to be disclosed in the Plan Supplement that will be transferred to the Creditor Trust on the Effective Date.

**"Creditor Trust Proceeds"** means the proceeds from the liquidation of the Creditor Trust Assets, Net of Creditor Trustee Expenses.

**"Creditor Trustee"** means the person or entity selected by the Committee as trustee of the Creditor Trust pursuant to the Plan and the Creditor Trust Agreement, and identified in the Plan Supplement.

**"Creditor Trustee Expenses"** means all costs and expenses incurred by the Creditor Trustee in administering and/or liquidating the Creditor Trust.

144813245.10

**"Cure Claim"** means a Claim based upon any and all amounts payable to a counterparty of an executory contract or unexpired lease at the time such contract or lease is assumed by Debtor pursuant to Bankruptcy Code section 365(b).

**"Debtor"** has the meaning assigned to it in the Introduction.

**"DIP Claims"** means all Claims pursuant to the DIP Facility as approved under the DIP Financing Orders (on the terms and subject to the conditions thereof, including paragraph 14 thereof).

**"DIP Facility"** means the *Senior Secured Super-Priority Debtor-in-Possession (DIP) Loan Agreement* as approved by the Bankruptcy Court pursuant to the DIP Financing Orders, including any amendments, supplements, and modifications thereto, in form and substance acceptable to the DIP Lender.

**"DIP Financing Orders"** means, individually and collectively, (a) the *Interim Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection and (II) Scheduling Final Hearing* (see Stretto Website, at Docket No. 132), and (b) the *Final Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection* (see Stretto Website, at Docket No. 315).

**"DIP Lender"** means CKDL Credit, LLC.

**"Disbursing Agent"** means the Person or Entity that may be designated in the Confirmation Order and/or Creditor Trust Agreement, as applicable, to make distributions under the Plan.

**"Disclosure Statement"** means that certain document as defined in section 1125(b) of the Bankruptcy Code relating to the Plan, including all exhibits and schedules thereto, as will be filed separately and as thereafter amended or supplemented from time to time, and as approved by order of the Bankruptcy Court.

**"Disputed Claim"** means any Claim (a) as to which the Debtor or Creditor Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, (b) scheduled as disputed, unliquidated or contingent, or not scheduled,

(c) subject to setoff, recoupment or any avoidance action arising under sections 544-550 of the Bankruptcy Code, or (d) otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

"**Dissolution Transaction**" means the transaction that the Debtor determines to be necessary or appropriate to implement the terms of the Plan, and ultimately result in the dissolution or other termination of the corporate entity that comprises the Debtor.

"**Distribution**" means any distribution made by the Disbursing Agent pursuant to the terms of the Plan.

"**Distribution Date**" means any date, after the Effective Date, upon which the initial and all subsequent distributions will be made to or on account of the Holders of Allowed Claims pursuant to the provisions of the Plan.

"**Effective Date**" means the first date on which all of the conditions precedent described in Section 9.1 of the Plan have occurred or have been waived in accordance with Section 9.1 of the Plan. The Debtor shall give notice of the Effective Date pursuant to Bankruptcy Rule 3020(c)(2).

"**Enigma**" means Enigma Securities Limited.

"**Enigma Secured Claim**" means all Allowed Secured Claims of Enigma, including those provided under the DIP Financing Orders, including but not limited to those provided under the DIP Financing Orders (on the terms and subject to the conditions thereof, including paragraph 14 thereof).

"**Estate**" means the Debtor's estate created under section 541 of the Bankruptcy Code.

"**Estimated**" means estimated by the Bankruptcy Court at the Confirmation Hearing pursuant to Bankruptcy Code section 502(c).

"**Exculpees**" means Debtor, the Reorganized Debtor, the Committee, any of the Debtor's Representatives during the Chapter 11 Case, the DIP Lender, and the Retained Professionals.

"**File, Filed or Filing**" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any

right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Debtor or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such appeal, writ of certiorari or reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or motion for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

"**General Unsecured Claim**" means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, or a Secured Claim.  General Unsecured Claims include Claims arising from the rejection of an executory contract or unexpired lease, Claims allowed pursuant to sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, and deficiency Claims allowed pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012.

"**Genesis**" means Genesis Global Holdco, LLC.

"**Genesis Secured Claim**" means all Allowed Secured Claims of Genesis, including but not limited to those provided under the DIP Financing Orders (on the terms and subject to the conditions thereof, including paragraph 14 thereof).

"**Holder**" means an Entity, Person or Governmental Unit holding a Claim or Interest.

"**Impaired**" means a Claim or Interest that is "impaired" within the meaning of section 1124 of the Bankruptcy Code.

"**Interest**" means any: (i) equity or other ownership interest in the Debtor, including, but not limited to, all issued and outstanding or reserved for issuance, common stock, preferred stock, membership interests, warrants, options, or other ownership rights or rights to purchase or receive additional shares of stock or membership interests in the Debtor, and/or any other instrument or document to the extent that it directly or indirectly evidences, creates or reserves any equity or ownership interest in the Debtor giving rise to any Claim or Interest, (ii) equity security, including all membership interests together with any warrants, options, or contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto, and (iii) partnership, limited liability company or similar interest.

"**Lien**" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

"**Net**" means, with respect to Cash proceeds received from the disposition or collection of any particular asset, the Cash proceeds remaining after payment of (i) all taxes related to the disposition or collection of such assets, (ii) any incurred or anticipated costs of administering the Creditor Trust, and (iii) all costs and expenses related to the disposition, collection, enforcement, settlement, pursuit, improvement, maintenance, and operation of such assets, including, without limitation, brokers' fees and expenses.

"**Net Sale Proceeds**" means, *if a Sale occurs*, any proceeds from the Sale that are available for distribution to Holders of General Unsecured Claims and the AVT Claim on the Effective Date following payment of all costs and expenses associated with the Sales Process and the Chapter 11 Case, including distribution of the Confirmation Funds (a) to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the DIP Claims, the Engima Secured Claim, the Genesis Secured Claim, Other Secured Claims and all Cure Claims; (b) to the US Trustee for US Trustee Fees due as of the Effective Date; and (c) for any other Distributions and payment of costs and expenses in connection with consummating the Plan, including the Creditor Trust Funding Amount and the Administrative and Priority Claims Escrow Account.

"**New Governance Documents**" means, *if a Sale does not occur*, the organizational and corporate governance documents of Reorganized Debtor.

"**New Interests**" means Interests to be issued in the Reorganized Debtor, as applicable, on the Effective Date.

"**Old Interests**" means all Interests in the Debtor as of the Effective Date.

"**Other Priority Claim**" means a Class 1 Claim, other than an Administrative Expense Claim or Priority Tax Claim, that is entitled to priority in payment pursuant to sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

"**Other Secured Claim**" means a Secured Claim other than the DIP Claims, the Enigma Claim and the Genesis Claim.

"**Petition Date**" means February 7, 2023, the date on which the Debtor filed a petition for relief commencing the Chapter 11 Case.

14

144813245.10

"**Plan**" means the Plan and all supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

"**Plan Supplement**" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan to be filed by the Debtor no later than five (5) days prior to the Voting Deadline, as the same may be amended, modified, or supplemented.

"**Prime**" means the prime rate of interest reported by the Board of Governors of the Federal Reserve on the Effective Date.

"**Priority Tax Claim**" means a Claim of a Governmental Unit of the kind specified in Bankruptcy Code sections 502(i) and 507(a)(8), or a Claim of a Governmental Unit which would otherwise meet the description in Bankruptcy Code section 507(a)(8) but for its secured status.

"**Professional**" means (a) any professional employed in the Chapter 11 Case pursuant to an order issued under sections 327 or 1103 of the Bankruptcy Code or otherwise, and (b) any and all professionals or other entities seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Professional Fee Claim**" means any and all Claims of a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under sections 326, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

"**Professional Fee Escrow Account**" means the account holding an amount sufficient to satisfy the aggregate estimated unpaid Professional Fee Claims, which estimates shall be submitted by the Retained Professionals or otherwise established by the Debtor no later than ten (10) days prior to the Effective Date, *provided* that such estimate shall not be considered an admission with respect to the fees and expenses of such Retained Professional.

"**Proof of Claim**" means a proof of Claim filed against the Debtor in the Chapter 11 Case.

"**Pro Rata**" means, with respect to an amount of Cash or other consideration to be paid or distributed on a particular date to a Holder of an Allowed Claim, that such Distribution shall be made in accordance with the ratio, as of such date, of the amount such Allowed Claim is to the aggregate of the amounts of Claims to be paid on that date.

15

"**Record Date**" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date.

"**Rejected Contracts**" means all of the Debtor's contracts and leases that are **not** listed on **Schedule 1** to the Plan Supplement, to the extent that they are executory contracts or unexpired leases that have not previously been assumed or rejected pursuant to Bankruptcy Code section 365.

"**Reorganized Debtor**" means the Debtor, as reorganized pursuant to the Plan, on or after the Effective Date.

"**Reorganized Equity Interests**" means any and all equity securities (as defined in section 101(16) of the Bankruptcy Code) of the Reorganized Debtor, including all shares, common stock, preferred stock, or other instrument evidencing any fixed or contingent ownership interest in the Reorganized Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in the Reorganized Debtor, whether or not transferable and whether fully vested or vesting in the future, issued on or after the Effective Date.

"**Representatives**" means, with respect to a given Person or Entity, its past and current directors, officers, shareholders, members, partners, employees, agents, attorneys, professionals, advisors, trustees, consultants, accountants, contractors and other representatives.

"**Retained Professional**" means a Professional retained in accordance with sections 327, 328 and/or 1103 of the Bankruptcy Code.

"**Sale**" means a sale of substantially of the Assets to the Winning Bidder in accordance with the Sale Process.

"**Sales Proceeds**" means the proceeds of any Sale to the Winning Bidder (or Winning Bidders, as applicable) pursuant to the Bidding Procedures.

"**Sales Process**" means the marketing and sales process for the Debtor's Assets conducted pursuant to the Bidding Procedures.

"**Secured Claim**" means, except as otherwise expressly provided herein with respect to a particular Secured Claim,  a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Debtor's Estate interest in such property or to the extent

of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of a setoff, pursuant to section 553 of the Bankruptcy Code.

"**Stretto Website**" means https://cases.stretto.com/CashCloud.

"**Unimpaired**" means a Claim or Interest that is not Impaired.

"**US Trustee**" means the United States Trustee the District of Nevada.

"**US Trustee Fees**" means any and all fees or charges assessed against the Debtor's Estate pursuant to 28 U.S.C. § 1930.

"**Value**" means, for any Asset, its value as determined by either (a) the Bankruptcy Court, or (b) an agreement between the Debtor, on the one hand, and a Creditor that asserts a Lien against such Asset, on the other.

"**Voting Deadline**" means the deadline to submit votes to accept or reject the Plan, June 12, 2023, which may be extended by the Debtor.

"**Winning Bid**" means a qualified bid submitted in accordance with the Bidding Procedures that is determined to be a highest or otherwise best bid in accordance with the Bidding Procedures.

"**Winning Bidder**" means a bidder determined to have a Winning Bid pursuant to the Bidding Procedures.

**1.2**     <u>**Rules of Interpretation and Computation of Time**</u>.  For purposes of the Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or schedule, Filed or to be Filed, means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to the Plan; (d) any reference to an entity as a Holder of a Claim includes that entity's successors and assigns; (e) unless specified otherwise, all references in the Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to the Plan; (f) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (g) captions and headings to Articles

17

and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules will apply; and (i) in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.  In the event that inconsistencies exist between the Plan and the Disclosure Statement, the Plan shall govern.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS**

**2.1**    **Unclassified Claims**.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, and Priority Tax Claims have not been classified.

**2.2**    **Classification of Claims**.  A Claim shall be included in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be classified in a different Class or Classes to the extent that any remainder of such Claim qualifies for the description of such different Class or Classes.  A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled before the Effective Date.  The Bankruptcy Court shall have exclusive jurisdiction over any dispute concerning the classification of Claims, and resolution of any such dispute shall not be a condition precedent to entry of a Confirmation Order or consummation of the Plan.  The Claims against the Debtor are classified as follows:

(a)    **Class 1 – Other Priority Claims**.  Class 1 Claims consist of all Allowed Other Priority Claims.

(b)    **Class 2(a) – DIP Claims**.  Class 2(a) Claims consist of the DIP Claims.

(c)    **Class 2(b) – Genesis Secured Claim**.  Class 2(b) Claims consist of the Genesis Secured Claim.

(d)    **Class 2(c) – Enigma Secured Claim**.  Class 2(c) Claims consist of the Enigma Secured Claim.

(e)    **Class 2(d) – Other Secured Claims**.  Class 2(d) Claims consist of the Other Secured Claims.

(f)    **Class 3(a) -AVT Claim**.  Class 3(a) Claims consist of the AVT Claim.

18

(g)    **Class 3(b) – General Unsecured Claims**.  Class 3(b) Claims consist of all General Unsecured Claims.

(h)    **Class 4 – Old Interests**.  Class 4 Interests consist of all Allowed Old Interests.

## ARTICLE III

## TREATMENT OF CLAIMS

**3.1    Unclassified Claims**.

(a)    *Administrative Expense Claims*.  Subject to the provisions of Bankruptcy Code sections 330(a), 331 and 503(b), each Holder of an Allowed Administrative Expense Claim (other than the DIP Claims), shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Administrative Expense Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (i) the Effective Date, (ii) the date that is ten (10) Business Days after the date on which such Administrative Expense Claim becomes Allowed, (iii) the date on which such Administrative Expense Claim becomes due and payable pursuant to any agreement between the Debtor and the Holder, and (iv) such other date as mutually may be agreed to by such Holder and the Debtor.  Notwithstanding the foregoing, *if a Sale does not occur*, Allowed Administrative Expense Claims that arise in the ordinary course of the Debtor's business during the Chapter 11 Case may be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents thereto.

(b)    *Administrative Expense Claim Bar Date.* Except with respect to requests for allowance of compensation and reimbursement of Professional Fee Claims and as otherwise provided in this Article III, requests for payment of Administrative Expense Claims, if required, must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Expense Claims Bar Date.  Holders of Administrative Expense Claims that are required to, but do not, File and serve a request for payment of such Administrative Expense Claim by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim against Debtor or Reorganized Debtor or its property, and such Administrative Expense Claim shall be deemed

19

discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtor and the requesting party no later than thirty (30) Days after the Administrative Expense Claims Bar Date or such later date as the Bankruptcy Court may approve.  Notwithstanding the foregoing, no request for payment of an Administrative Expense Claim shall be required with respect to: (i) any DIP Claims, or (ii) any other Administrative Expense Claims determined to be an Allowed Administrative Expense Claim by Final Order, including all Administrative Expense Claims expressly made Allowed Administrative Expense Claims under the Plan.

(c)      ***Professional Fee Claims***.

(i)      Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case prior to the Effective Date shall File an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case no later than the Administrative Expense Claims Bar Date and any Holder of a Professional Fee Claim that does not File and serve such application by such Administrative Expense Claims Bar Date shall be forever barred from asserting such Claim against the Debtor, Reorganized Debtor, or their respective properties, and such Claims shall be deemed discharged as of the Effective Date.  Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtor and counsel to the Reorganized Debtor no later than thirty (30) Days after the Administrative Expense Claims Bar Date (unless otherwise agreed by the party requesting compensation of a Professional Fee Claim).

(ii)      Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and the Debtor or Reorganized Debtor may pay the charges incurred by the Debtor or Reorganized Debtor, as the case may be, on and after the Effective Date for any Professional Fee Claim, without application to or approval by the Bankruptcy Court.

(d)      ***Priority Tax Claims***.  Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (i) the Effective Date, (ii) the date that is ten (10)

144813245.10

Business Days after the date on which such Priority Tax Claim becomes Allowed, (iii) the date on which such Priority Tax Claim becomes due and payable and (iv) such other date as mutually may be agreed to by and among such Holder and the Debtor; *provided, however*, that <u>in the event that a Sale</u> <u>does not occur</u>, the Debtor shall be authorized, at its option, and in lieu of payment in full of an Allowed Priority Tax Claim, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

(e)    ***US Trustee Fees.***    Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtor shall pay, in full, in Cash, any and all US Trustee Fees, together with interest, if any, at the time of Confirmation Date.  On and after the Effective Date, the Reorganized Debtor shall be responsible for filing required post-confirmation reports and paying quarterly US Trustee Fees due to the US Trustee for the Reorganized Debtor until the entry of a final decree in the Chapter 11 Case or until the Chapter 11 Case is converted or dismissed.

**3.2**    <u>**Classes of Claims**</u>.

(a)    ***Class 1 Other Priority Claims.***

(i)    ***Treatment:***  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of such an Allowed Other Priority Claim shall receive Cash in an amount sufficient to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder (except to the extent that such Holder agrees to less favorable treatment thereof) on, or as soon as practicable after, the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes Allowed, (C) the date on which such Other Priority Claim otherwise is due and payable, and (D) such other date as mutually may be agreed to by and among such Holder and the Debtor.

(ii)    ***Impairment and Voting****:* Allowed Other Priority Claims are Unimpaired.  Holders of such Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Allowed Other Priority Claims.

144813245.10

(b)     ***Class 2(a) DIP Claims.***

(i)     ***Treatment:*** Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed DIP Claims, the Allowed DIP Claims shall:

(A)     *if a Sale occurs*, be paid in Cash in full on, or as soon as reasonably practicable after, the closing of such Sale;

(B)     *if a Sale does not occur*, be paid in Cash in full on, or as soon as reasonably practicable after, the Effective Date; or

(C)     receive such other treatment as agreed by the Debtor and the DIP Lender.

(ii)     ***Impairment and Voting:*** The Allowed DIP Claims are Unimpaired. The Holder of the DIP Claims is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the vote of the Holder will not be solicited with respect to such Allowed DIP Claims.

(c)     ***Class 2(b) Genesis Secured Claim.***

(i)     ***Treatment:*** Notwithstanding anything to the contrary herein, except to the extent that the Holder of the Allowed Genesis Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed Genesis Secured Claim, the Holder of the Allowed Genesis Secured Claim shall, at the election of the Debtor or Reorganized Debtor, be entitled to one or a combination of the following: (A) all or a portion of the Collateral securing its Allowed Genesis Secured Claim on or as soon as reasonably practicable after the Effective Date (and, if less than all of the Collateral, the Value of the portion to be determined not later than the Confirmation Hearing); (B) a Cash payment in the remaining balance of its Allowed Genesis Secured Claim (after application of (A) above) on or as soon as reasonably practicable after the later of (1) the Effective Date, or (2) the date on which such Claim becomes an Allowed Claim; and/or (C) such other treatment rendering the Allowed Genesis Secured Claim Unimpaired including, if and only to the extent required under the Bankruptcy Code, post-petition interest on such Allowed Genesis Secured Claim.  In the event that the aggregate amount

144813245.10

of Genesis' Allowed Claim exceeds the amount of the Allowed Genesis Secured Claim, the deficiency Claim shall be classified in Class 3(b) and receive the treatment provided in the Plan for Class 3(b).

(ii)    **Impairment and Voting:**  The Genesis Secured Claim is Unimpaired. The Holder of the Allowed Genesis Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the vote of the Holder will not be solicited with respect to the Allowed Genesis Secured Claim.

(d)    ***Class 2(c) Enigma Secured Claim.***

(i)    **Treatment:** Notwithstanding anything to the contrary herein, except to the extent that the Holder of the Allowed Enigma Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed Enigma Secured Claim, the Holder of the Allowed Enigma Secured Claim shall, at the election of the Debtor or Reorganized Debtor, be entitled to one or a combination of the following: (A) all or a portion of the Collateral securing its Allowed Enigma Secured Claim on or as soon as reasonably practicable after the Effective Date (and, if less than all of the Collateral, the Value of the portion to be determined not later than the Confirmation Hearing); (B) a Cash payment in the remaining balance of its Allowed Enigma Secured Claim (after application of (A) above) on or as soon as reasonably practicable after the later of (1) the Effective Date, or (2) the date on which such Claim becomes an Allowed Claim; and/or (C) such other treatment rendering the Allowed Enigma Secured Claim Unimpaired, including, if and only to the extent required under the Bankruptcy Code, post-petition interest on such Allowed Enigma Secured Claim.  In the event that the aggregate amount of Enigma's Allowed Claim exceeds the amount of the Allowed Enigma Secured Claim, the deficiency Claim shall be classified in Class 3(b) and receive the treatment provided in the Plan for Class 3(b).

(ii)    **Impairment and Voting:**  The Enigma Secured Claim is Unimpaired. The Holder of the Allowed Enigma Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Plan, and the vote of the Holder will not be solicited with respect to the Allowed Enigma Secured Claim.

144813245.10

(e)      ***Class 2(d) Other Secured Claims.***

(i)      ***Treatment:*** Notwithstanding anything to the contrary herein, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of each Allowed Other Secured Claim, the Holder of such Allowed Other Secured Claim shall, at the election of the Debtor or Reorganized Debtor, be entitled to one or a combination of the following: (A) all or a portion of the Collateral securing its Allowed Other Secured Claim on or as soon as reasonably practicable after the Effective Date (and, if less than all of the Collateral, the Value of the portion to be determined not later than the Confirmation Hearing); (B) a Cash payment in the remaining balance of its Allowed Other Secured Claim (after application of (A) above) on or as soon as reasonably practicable after the later of (1) the Effective Date, or (2) the date on which such Claim becomes an Allowed Claim; and/or (C) such other treatment rendering such Allowed Other Secured Claim Unimpaired including, if and only to the extent required under the Bankruptcy Code, post-petition interest on such Allowed Other Secured Claim.  In the event that the aggregate amount of a Holder's Allowed Claim exceeds the amount of such Holder's Allowed Other Secured Claim, the deficiency Claim shall be classified in Class 3(b) and receive the treatment provided in the Plan for Class 3(b).

(ii)      ***Impairment and Voting:*** The Allowed Other Secured Claims are Unimpaired.  The Holders of the Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Plan, and the votes of the Holders will not be solicited with respect to such Allowed Other Secured Claims.

(f)      ***Class 3(a) AVT Claim.***

(i)      ***Treatment:***  On or as soon as reasonably practicable after the Effective Date, Reorganized Debtor shall transfer to the Creditor Trust: (A) the Creditor Trust Funding Amount; and (B) the Creditor Trust Assets.  Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed AVT Claim, the Holder of such AVT Claim shall:

144813245.10

(A)    *if a Sale occurs*:  receive its share of (1) the Net Sale Proceeds on or as soon as reasonably practicable after the Effective Date, and (2) the Creditor Trust Proceeds if and when they are liquidated in accordance with the Creditor Trust Agreement, in both cases of (1) and (2), as determined Pro Rata based on the Aggregate Amount of the Allowed AVT Claim and all Allowed General Unsecured Claims; or

(B)    *if a Sale does not occur*:  receive its share of the Creditor Trust Proceeds if and when liquidated in accordance with the Creditor Trust Agreement, as determined Pro Rata based on the Aggregate Amount of the Allowed AVT Claim and all Allowed General Unsecured Claims.

(ii)    **Impairment:**  The AVT Claim is Impaired.  The Holder of the Allowed AVT Claim will be entitled to vote to accept or reject the Plan.

(g)    ***Class 3(b) General Unsecured Claims.***

(i)    **Treatment:**  On or as soon as reasonably practicable after the Effective Date, Reorganized Debtor shall transfer to the Creditor Trust: (A) the Creditor Trust Funding Amount; and (B) the Creditor Trust Assets.  Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of all Allowed General Claims, each Holder of an Allowed General Unsecured Claim shall:

(A)    *if a Sale occurs*:  receive its share of (1) the Net Sale Proceeds on or as soon as reasonably practicable after the Effective Date, and (2) the Creditor Trust Proceeds if and when they are liquidated in accordance with the Creditor Trust Agreement, in both cases of (1) and (2), as determined Pro Rata based on the Aggregate Amount of the Allowed AVT Claim and all Allowed General Unsecured Claims; or

(B)    *if a Sale does not occur*:  receive its share of the Creditor Trust Proceeds if and when liquidated in accordance with the Creditor Trust Agreement, as determined Pro Rata based on the Aggregate Amount of the Allowed AVT Claim and all Allowed General Unsecured Claims.

(ii)    **Impairment:**  Allowed General Unsecured Claims are Impaired.  The Holders of Allowed General Unsecured Claims will be entitled to vote to accept or reject the Plan.

144813245.10

(h)    ***Class 4 Old Interests.***

(i)    ***Treatment:*** All Old Interests shall be cancelled.

(ii)    ***Impairment and Voting:*** Allowed Old Interests are Impaired and because their Holders will neither receive nor retain any property under the Plan, they are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**3.3**    <u>**Retention of Defenses and Rights of Setoff Regarding Claims**</u>.  Except as otherwise provided in the Plan, nothing shall prejudice the Debtor's, the Creditor Trustee's and the Disbursing Agent's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoffs or recoupment with respect to such Claims.

**ARTICLE IV**

<u>**ACCEPTANCE OR REJECTION OF THE PLAN**</u>

**4.1**    <u>**Acceptance by Impaired Classes**</u>.  In accordance with section 1126(c) of the Bankruptcy Code and except as provided under sections 1126(e) & (g) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.  Classes 3(a) and 3(b) are Impaired Classes entitled to vote to accept or reject the Plan.

**4.2**    <u>**Acceptance by Unimpaired Classes**</u>.  Pursuant to section 1126(f) of the Bankruptcy Code, each Unimpaired Class of Claims is presumed to have accepted the Plan and, therefore, votes to accept or reject the Plan will not be solicited from such Classes.  To the extent that a Holder of an Unimpaired Claim does not file a timely and proper objection to the Plan in accordance with the requirements set forth herein, such Holder may be deemed to have accepted the treatment as set forth in Article III of the Plan.  Classes 1, 2(a), 2(b), 2(c), and 2(d) are Unimpaired Classes presumed to have accepted the Plan.

**4.3**    <u>**Deemed Rejection**</u>.  In accordance with section 1126(g) of the Bankruptcy Code, Classes that will not receive or retain any property under the Plan are conclusively deemed to have rejected the Plan and votes to accept or reject the Plan will not be solicited from such Classes.  Class 4 is an Impaired Class deemed to have rejected the Plan.

26

**4.4**    **Summary of Classes Voting on the Plan**.  Only the votes of Holders of Claims and Interests in Classes 3(a) and 3(b) will be solicited with respect to the Plan.

**4.5**    **Cramdown**.  If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite majorities provided in section 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Debtor reserves the right to (i) amend the Plan, or (ii) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or (iii) both amend the Plan and seek Confirmation of any amended plan pursuant to section 1129(b) of the Bankruptcy Code.

**ARTICLE V**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**5.1**    **Assumption of Assumed Contracts** of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the assumption of all Assumed Contracts.  **Rejection of Rejected Contracts Leases**Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute the approval, pursuant to Bankruptcy Code sections 365(a) and 1123(b)(2), of the rejection of all Rejected Contracts.  For the avoidance of doubt, any contract that is not an Assumed Contract shall be deemed a Rejected Contract.**Filing of Rejection Claims**.  Any Person or Entity who believes they are entitled to assert a Claim against Debtor by virtue of the rejection of a Rejected Contract pursuant to this Article V may File a Proof of Claim with the clerk of the Bankruptcy Court not later than thirty (30) Days after the Effective Date.  Claims arising from the rejection of Rejected Contracts not Filed with the Bankruptcy Court within thirty (30) Days after the Effective Date shall be forever barred from assertion against Debtor, the Reorganized Debtor or the Creditor Trust, and the Holders of such Claims shall not be entitled to receive any distribution under the Plan. All allowed Claims arising from the rejection of a Rejected Contract shall be General Unsecured Claims and shall receive the treatment provided to Class 3(b) General Unsecured Claims as set forth in the Plan.  Nothing in this Section 5.3 of the Plan shall affect the right of any party-in-interest to object to any Claim which has been improperly Filed or not Filed on a timely basis.

144813245.10

**5.4**　　**Reservation of Rights**.  Nothing contained in the Plan shall constitute an admission that any contract or lease is in fact an executory contract or unexpired lease or that Debtor or the Reorganized Debtor have any liability thereunder.

**ARTICLE VI**

**IMPLEMENTATION OF THE PLAN**

**6.1**　　**Means for Implementation if a Sale Occurs**.  *Only if a Sale Occurs*, the Winning Bid (or Winning Bidders, as applicable) shall, upon the closing of the Sale, transfer in the following order: (a) that portion of the Sale Proceeds necessary to satisfy the Carve-Out (as defined in the DIP Financing Orders) to the Debtor, to be reserved and paid in accordance with the provisions of this Plan; (b) that portion of the Sale Proceeds necessary to satisfy the DIP Claims in full into a separate escrow account for the benefit of the DIP Lender; and (c) the balance of the Sale Proceeds to the Debtor.  On or before the Effective Date, the Debtor shall transfer or segregate the Sale Proceeds in the amount of the Confirmation Funds for further distribution as follows: (a) to the Disbursing Agent to make Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the Enigma Secured Claim, the Genesis Secured Claim, Other Secured Claims and Cure Claims on the Effective Date; (b) to the U.S. Trustee for US Trustee Fees due as of the Effective Date; (c) to the Creditor Trust in the amount of the Creditor Trust Funding Amount; and (d) for any other Distributions and payment of costs and expenses in connection with consummating the Plan, including funding the Professional Fee Escrow Account and the Administrative and Priority Claims Escrow Account.  After all the payments above, the Net Sale Proceeds shall be available for distribution as provided under the Plan.

**6.2**　　**Means for Implementation if a Sale Does Not Occur**.  *Only if a Sale does not occur*,

　　　　(a)　　On the Effective Date, the Reorganized Debtor shall be authorized to and shall issue the Reorganized Equity Interests in accordance with the Plan without the need for any further corporate action.  All of the Reorganized Equity Interests, when so issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  Each distribution and issuance of the Reorganized Equity Interests under the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments

28

evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

(b)    On or before the Effective Date, the Debtor shall transfer or segregate Cash in the amount of the Confirmation Funds for further distribution as follows: (i) to the Disbursing Agent to make Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the DIP Claims, the Enigma Secured Claim, the Genesis Secured Claim, Other Secured Claims and Cure Claims on the Effective Date; (ii) to the U.S. Trustee for US Trustee Fees due as of the Effective Date; (iii) to the Creditor Trust in the amount of the Creditor Trust Funding Amount; and (iv) for any other Distributions and payment of costs and expenses in connection with consummating the Plan, including funding the Professional Fee Escrow Account and the Administrative and Priority Claims Escrow Account.

**6.3**    **Continued Corporate Existence**.

(a)    *If a Sale occurs*, Debtor will be subject to a Dissolution Transaction on the Effective Date, or as promptly thereafter as possible, and Debtor will be deemed to cease to exist as of the Effective Date after the transfer of any remaining Assets to the Creditor Trust.  The Dissolution Transaction will occur and be effective as of the date specified in the documents effectuating the Dissolution Transaction or the Effective Date if no such other date is specified in such other documents, and will be authorized and approved in all respects and for all purposes without any requirement of further action by the Debtor or any other Person.  For the avoidance of doubt, no Winning Bidder in the Sale, if any, will be a successor in interest to any Debtor unless otherwise specified in the Plan.

(b)    *If a Sale does not occur*, the Reorganized Debtor shall (i) make any and all filings that may be required in connection with the Reorganized Debtor's New Governance Documents with the appropriate governmental offices and or agencies and (ii) take any and all other actions that may be required to render the Reorganized Debtor's New Governance Documents effective.

**6.4**    **Vesting of Assets**.

(a)    *If a Sale occurs*, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Creditor Trust Assets, shall vest in the Creditor Trust free and clear

of Claims, Liens, charges, other encumbrances, and interests.  Subject to the terms of the Plan, on and after the Effective Date, the Creditor Trustee may use and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims) without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan, the Confirmation Order or the Creditor Trust Agreement.

(b)    *If a Sale does not occur*, except as otherwise provided in the Plan or in the Confirmation Order, on and after the Effective Date, all Assets (other than the Creditor Trust Assets), including any property acquired by the Debtor under or in connection with the Plan, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, charges, other encumbrances, and interests.  Subject to the terms of the Plan, on and after the Effective Date, the Reorganized Debtor may operate its business and may use, acquire, and dispose of property and prosecute, compromise, or settle any Claims (including any Administrative Expense Claims but not including General Unsecured Claims) without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtor may pay the charges that it incurs on or after the Effective Date for Professionals' fees, disbursements, expenses, or related support services without application to the Bankruptcy Court.

**6.5**    **Directors and Officers of the Reorganized Debtor**.

(a)    *If a Sale occurs*, as of the Effective Date, the term of the current members of the board of directors of the Debtor shall expire automatically and each person serving as a director of the Debtor shall be removed and shall be deemed to have resigned and cease to serve automatically. Consistent with the Plan, the Debtor will cease to exist effective as of the Effective Date and, thus, no individuals will serve as directors, officers or voting trustees after the Effective Date.

(b)    *If a Sale does not occur*, pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of the members of the board of directors of the Reorganized Debtor shall be disclosed in the Plan Supplement.  Each member of the board of directors of the Reorganized Debtor shall assume such position upon the Effective Date.  Any subsequent board of directors for the

Reorganized Debtor shall be elected, classified, and composed in a manner consistent with the Reorganized Debtor's New Governance Documents and applicable non-bankruptcy law.

**6.6** **<u>Creditor Trust</u>**.

(a) On the Effective Date, the Debtor shall establish a Creditor Trust in accordance with the Creditor Trust Agreement, a copy of which will be Filed with the Plan Supplement.  Upon the establishment of the Creditor Trust, all Creditor Trust Assets shall be deemed transferred to the Creditor Trust without any further action of the Debtor or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtor.

(b) Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Creditor Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided in the Plan.  Upon completion of the transfer of the Creditor Trust Assets to the Creditor Trust, the Debtor will have no further interest in, or with respect to, the Creditor Trust Assets, or the Creditor Trust.  For all federal income tax purposes, all parties (including, without limitation, the Debtor, the Creditor Trustee, and the Creditor Trust Beneficiaries) will treat the transfer of assets to the Creditor Trust in accordance with the terms of the Plan as a transfer to the Creditor Trust Beneficiaries, followed by a transfer by such Creditor Trust Beneficiaries to the Creditor Trust, and the Creditor Trust Beneficiaries will be treated as the grantors and owners thereof.

(c) The Creditor Trust shall be established for the purpose of liquidating the Creditor Trust Assets, maximizing recoveries for the benefit of the Creditor Trust Beneficiaries, and making distributions in accordance with the Plan to the Creditor Trust Beneficiaries, with no objective to continue or engage in the conduct of a trade or business in accordance with Treas. Reg. § 301.7701-4(d).  The Creditor Trust is intended to qualify as a "grantor trust" for federal income tax purposes and, to the extent permitted by applicable law, for state and local income tax purposes, with the Creditor Trust Beneficiaries treated as grantors and owners of the Creditor Trust.

(d) Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the Causes of Action transferred to the Creditor Trust shall be retained, prosecuted and enforced by the Creditor Trustee.

31

**6.7**    **Creditor Trustee**.

(a)    The Creditor Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Creditor Trust Agreement.  The Creditor Trustee may retain counsel and other professionals as the Creditor Trustee, in his sole discretion, deems appropriate, without further order of the Bankruptcy Court, to assist the Creditor Trustee in performing his duties, rights and obligations under the Plan.  From and after the Effective Date, all fees shall be paid to the Creditor Trustee and any other Professionals retained by the Creditor Trustee without approval of the Bankruptcy Court.

(b)    On and after the Effective Date, the Creditor Trustee shall have, among others, all of the rights and powers (including all of the rights and powers of a trustee appointed under the Bankruptcy Code) set forth in the Creditor Trust Agreement.

**6.8**    **Post-Confirmation Management**.

(a)    *If a Sale occurs*, from and after the Effective Date, the Creditor Trustee and Disbursing Agent shall perform all post-Confirmation responsibilities, including implementation of the Plan, filing required post confirmation reports, and paying required fees.

(b)    *If a Sale does not occur*, from and after the Effective Date, the post-confirmation management of the Debtor shall be as provided in the Winning Bid.

**6.9**    **Preservation of Causes of Action**.  Except as otherwise provided in the Plan or in any contract, instrument, release, or agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, all claims and Causes of Action that the Debtor or the Estate may have against any Person or Entity are preserved and transferred to the Creditor Trust on the Effective Date, including, without limitation, any and all Causes of Action of the Debtor, Estate, or other appropriate party in interest may assert under the Bankruptcy Code and nonbankruptcy law; *provided, for the avoidance of doubt*, such Causes of Actions shall subject to the provisions in paragraph 17 of each of the DIP Financing Orders, to the extent applicable.

**6.10**    **Exemption from Certain Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under the Plan, including the transfer of the Creditor Trust Funding Amount and

Creditor Trust Assets to the Creditor Trust, may not be taxed under any law imposing a stamp tax or similar tax. Any sale of any property of the Creditor Trust occurring on or after the Effective Date shall be deemed to be in furtherance of the Plan.

**ARTICLE VII**

**PROVISIONS GOVERNING DISTRIBUTIONS**

**7.1**      **Date of Distributions** Except as otherwise provided in the Plan, any distribution to be made hereunder shall be made on the Effective Date, or as soon as reasonably practicable thereafter. Any payment or act required to be made or done hereunder on a day that is not a Business Day shall be made on the next succeeding Business Day.

**7.2**      **Record Date for Distributions**. At 5:00 p.m. prevailing Pacific time on the Record Date, the transfer records for Allowed Claims shall be closed, and there shall be no further changes in the Holders of record of any Allowed Claims. Neither the Debtor, the Creditor Trustee nor the Disbursing Agent shall be obligated to recognize the transfer of any Allowed Claims after the Record Date but shall be entitled to recognize, for all purposes hereunder, only those Holders of record as of 5:00 p.m. prevailing Pacific time on the Record Date.

**7.3**      **Disbursing Agent**.

(a)      *If a Sale occurs*, except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Entity elected by the Debtor or the Creditor Trustee to make or facilitate distributions under the Plan, as Disbursing Agent. The Disbursing Agent shall be permitted, without further order of the Bankruptcy Court, to appoint, employ or contract with any Entities to assist in or make the distributions required hereunder.

(b)      *If a Sale does not occur*, except as otherwise provided in the Plan (other than distributions to be made from the Creditor Trust), all distributions under the Plan shall be made by the Reorganized Debtor, as Disbursing Agent. The Reorganized Debtor shall be permitted, without further order of the Bankruptcy Court, to appoint, employ or contract with any Entities to assist in or make the distributions required hereunder.

144813245.10

**7.4**     <u>**Delivery of Distributions and Undeliverable or Unclaimed Distributions**</u>.

(a)     ***General.***   Subject to Section 7.2 of the Plan, any distribution to be made hereunder to a Holder of an Allowed Claim shall be made to the address of such Holder as of the Record Date as set forth in the books and records of the Debtor or its agents, or in a letter of transmittal, unless the Debtor has been notified in writing of a change of address, including by the Filing of a Proof of Claim by such Holder that contains an address for such Holder that is different from the address reflected on such books and records or letter of transmittal. None of the Debtor, the Reorganized Debtor, the Creditor Trustee, or the applicable Disbursing Agent shall incur any liability whatsoever on account of any distributions under the Plan, except for willful misconduct, or fraud.

(b)     ***Undeliverable Distributions.***   In the event that any distribution or notice provided in connection with the Chapter 11 Case to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or otherwise is unclaimed, the Disbursing Agent shall make no further distribution to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then current address. On, or as soon as practicable after, the date on which a previously undeliverable or unclaimed distribution becomes deliverable and claimed, the Disbursing Agent shall make such distribution without interest thereon. All distributions made pursuant to the Plan that are not negotiated within ninety (90) days after the relevant Distribution Date and that consequently become unclaimed shall revert to and become property of the Reorganized Debtor or Creditor Trust, as applicable, free and clear of any and all Claims, Interests, demands and causes of action, but subject to further redistribution in accordance with the Plan. Any Holder of an Allowed Claim that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within ninety (90) days after the Distribution Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall forever be barred and enjoined from asserting such Claim against the Debtor, the Estate, the Reorganized Debtor, the Creditor Trust or their property. Nothing contained herein shall require, or be construed to require, the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

**7.5**     <u>**Manner of Payment**</u>.   Except as specifically provided herein, at the option of the Debtor, the Reorganized Debtor, or the Creditor Trustee, as applicable, any Cash payment to be made

144813245.10

under the Plan may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

**7.6** **Fractional Dollars; De Minimis Distributions**.  Notwithstanding any other provision of the Plan, (a) the Disbursing Agent and Creditor Trustee shall not be required to make distribution or payments of fractions of dollars, and whenever any payment of a fraction of dollars under the Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar, with one-half (1/2) dollar being rounded down, and (b) the Creditor Trustee and Disbursing Agent shall not have any obligation to make any distribution to a specific Holder of an Allowed Claim if the amount to be distributed to that Holder on the relevant Distribution Date is less than $10.

**7.7** **Surrender of Cancelled Instruments or Securities**.  On the Effective Date or as soon as reasonably practicable thereafter, each Holder of a certificate or instrument evidencing a Claim or Interest that is discharged by the Plan shall be deemed to have surrendered such certificate or instrument to the Reorganized Debtor or Creditor Trustee, as applicable.  Such surrendered certificate or instrument shall be cancelled solely with respect to the Debtor, and such cancellation shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such certificate or instrument, which shall continue in effect.  Notwithstanding anything to the contrary herein, this paragraph shall not apply to certificates or instruments evidencing Claims that are Unimpaired under the Plan.

**7.8** **Post-petition Interest**.  Unless expressly provided in the Plan, the Confirmation Order, the DIP Financing Orders, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan or required by the Bankruptcy Code (including without limitation Bankruptcy Code sections 506(b) and 1129(b)), post-petition interest shall not accrue on or after the Petition Date on account of any Claim.  Without limiting the generality of the foregoing, interest shall not be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if, and after, such Disputed Claim becomes an Allowed Claim.

**7.9** **Setoffs and Recoupments**. The Reorganized Debtor, or its designee as instructed by such Reorganized Debtor, or the Creditor Trustee, as applicable, may, pursuant to section 553 of the

Bankruptcy Code or applicable nonbankruptcy law, offset or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any and all claims, rights, and Causes of Action that the Reorganized Debtor, Creditor Trustee, or any successors may hold against the Holder of such Allowed Claim after the Effective Date to the extent such setoff or recoupment is either (a) agreed in amount among the Reorganized Debtor or the Creditor Trustee, as applicable, and Holder of the Allowed Claim, or (b) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by the Reorganized Debtor, Creditor Trustee, or any successor of any claims, rights, Causes of Action or rights of setoff that the Reorganized Debtor, Creditor Trustee, or any successor or assign may possess against such Holder.

## ARTICLE VIII
## PROVISIONS GOVERNING DISTRIBUTIONS

**8.1**    **Allowed/Disputed Claims**.  Prior to the Effective Date, the Debtor shall be entitled to object to Claims.  After the Effective Date, the Reorganized Debtor or the Creditor Trustee on behalf of the Creditor Trust, as applicable, shall have the right to object to Claims and shall retain any and all rights and defenses that the Debtor had with respect to any Claim immediately before the Effective Date, including the Causes of Action retained pursuant to Section 6.9 of the Plan.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

**8.2**    **Claims Administration Responsibilities**.

(a)    Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor or the Creditor Trustee on behalf of the Creditor Trust, as applicable, shall have the authority: (a) to File, withdraw, or litigate to judgment objections to Claims; (b) to settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims,

36

regardless of whether such Claims are in a Class or otherwise; (c) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

(b)    Any objections to Claims shall be Filed not later than the Claims Objection Deadline.

(c)    The Reorganized Debtor or the Creditor Trustee, as the case may be, shall reserve sufficient funds to satisfy any Disputed Claim to the extent provided for in the Plan; *provided, however*, that no disbursement shall be made on account of any Claim, including any Administrative Expense Claims, as to which an objection has been interposed, or as to which a counterclaim or setoff has or may be asserted, unless and until the objection, counterclaim or setoff is resolved by a Final Order.

(d)    To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent or Creditor Trustee, as the case may be, shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

**8.3**    **Estimation of Claims**.  The Debtor, the Reorganized Debtor or the Creditor Trustee, as the case may be, shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtor, the Reorganized Debtor or the Creditor Trustee, as the case may be, previously objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection.

144813245.10

**8.4**    **Disallowance of Claims**.    Any Claims held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtor by that Entity have been turned over or paid to the Reorganized Debtor or the Creditor Trust, as applicable.    **Except as provided herein or otherwise agreed, any and all Holders of Claims for which Proofs of Claim were Filed after the Bar Date shall not receive any distributions on account of such Claims, which shall be deemed Disallowed and expunged as of the Effective Date, unless on or before the first day of the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order;** *provided* **that such limitation shall not apply to Proofs of Claim filed by any Governmental Unit.**

**ARTICLE IX**

**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**9.1**    **Conditions Precedent to the Effective Date**.    The Effective Date shall not occur unless and until each of the following conditions have occurred or been waived in accordance with the terms herein:

(a)    No trustee or examiner with expanded powers (powers beyond those set forth under Bankruptcy Code sections 1106(a)(3) and (4)) to operate, oversee or manage the financial affairs, the business, or reorganization of the Debtor shall have been appointed;

(b)    The Confirmation Order shall be entered by the Bankruptcy Court;

(c)    The Confirmation Order shall have become a Final Order;

(d)    Debtor shall turn over or segregate the Confirmation Funds in accordance with Article V.I. of the Plan;

(e)    Debtor shall transfer the Creditor Trust Assets to the Creditor Trust;

(f)    The Confirmation Order shall authorize the assumption of all Assumed Contracts;

144813245.10

(g)       The Confirmation Order shall authorize the rejection of all Rejected Contracts; and

(h)       Any outstanding US Trustee Fees shall have been paid in full.

**9.2**      **Waiver of Conditions**.  The conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan may, in each case, be waived at any time without any other notice to parties in interest or the Bankruptcy Court and without a hearing or order by Debtor, in its sole discretion; *provided, however*, that Debtor may not waive entry of the Confirmation Order (Section 9.1(b) of the Plan).  The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) may be waived by and upon the entry of the Confirmation Order, and the Confirmation Order may take effect immediately upon its entry.

**9.3**      **Reservation of Rights**.  Debtor reserves the right to alter, amend, modify, revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent plans of reorganization.  If Debtor revokes or withdraws the Plan, or if Confirmation of the Plan or the Effective Date does not ultimately occur, then:  (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), rejection of executory contracts or unexpired leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims or Interests by or against Debtor or any Person or Entity; (2) prejudice in any manner the rights of Debtor or any other Person or Entity in any further proceedings involving Debtor; or (3) constitute an admission, acknowledgment, offer, or undertaking of any sort by Debtor or any other Person or Entity.

**9.4**      **No Admission or Waiver**.  Notwithstanding anything in the Plan to the contrary, nothing contained in the Plan, Plan Supplement or in the Disclosure Statement shall be deemed an admission by Debtor or any Person or Entity with respect to any matter set forth herein.   If Confirmation of the Plan or the Effective Date does not ultimately occur, no statement contained in the Plan, Plan Supplement or in the Disclosure Statement may be used or relied on in any manner in any suit, action, proceeding or controversy within or outside of the Chapter 11 Case against Debtor.  Without in any way limiting the provisions set forth in Section 9.3 of the Plan, Debtor reserves any

144813245.10

and all of its rights as against all Persons and Entities in the event Confirmation of the Plan or the Effective Date does not ultimately occur.

**9.5**    **Substantial Consummation of the Plan**.  Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

**9.6**    **Effect of Appeals**.  Provided that the Confirmation Order is not stayed pending appeal, Debtor may consummate the Plan notwithstanding such pending appeal, or the timely service and filing of a motion pursuant to Bankruptcy Rules 7052, 7062, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

### ARTICLE X

### EFFECT OF CONFIRMATION OF PLAN

**10.1**    **Discharge**.

(a)    IN CONJUNCTION WITH BANKRUPTCY CODE SECTION 1141, EXCEPT AS OTHERWISE PROVIDED FOR HEREIN, THE RIGHTS AFFORDED HEREIN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE AND RELEASE OF CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER AGAINST DEBTOR, AND OF THE ASSETS OR PROPERTY OF THE ESTATE, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE PETITION DATE.

(b)    WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS PROVIDED IN THE CONFIRMATION ORDER, CONFIRMATION DISCHARGES DEBTOR FROM ALL CLAIMS, OR OTHER DEBTS THAT AROSE BEFORE THE EFFECTIVE DATE, AND ALL DEBTS OF THE KIND SPECIFIED IN SECTIONS 502(G), 502(H) OR 502(I) OF THE BANKRUPTCY CODE, WHETHER OR NOT:  (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(A); (Y) A CLAIM BASED ON SUCH DEBT IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502 OF THE BANKRUPTCY CODE; OR (Z) THE HOLDER OF A CLAIM BASED ON SUCH DEBT HAS ACCEPTED THE PLAN.

144813245.10

(c)     EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, (I) ON THE EFFECTIVE DATE, ALL CLAIMS AGAINST DEBTOR WHICH AROSE BEFORE THE EFFECTIVE DATE SHALL BE SATISFIED, DISCHARGED AND RELEASED IN FULL, (II) ON THE EFFECTIVE DATE, THE RIGHTS AND INTERESTS OF ALL HOLDERS OF OLD INTERESTS SHALL BE TERMINATED, CANCELED AND OF NO FORCE AND EFFECT, AND (III) ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST DEBTOR, THE REORGANIZED DEBTOR, THE DISBURSING AGENT, THE CREDITOR TRUST, THE CREDITOR TRUSTEE, THEIR SUCCESSORS, OR ANY OF THEIR ASSETS OR PROPERTIES, ANY OTHER OR FURTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE, AS WELL AS ANY DEBT OF A KIND SPECIFIED IN BANKRUPTCY CODE SECTIONS 502(G), 502(H), OR 502(I), IRRESPECTIVE OF WHETHER (X) A PROOF OF CLAIM BASED ON SUCH A DEBT HAS BEEN FILED, OR DEEMED TO HAVE BEEN FILED, UNDER BANKRUPTCY CODE SECTIONS 501 OR 1111(a), (Y) SUCH CLAIM IS ALLOWED UNDER BANKRUPTCY CODE SECTION 502, OR (Z) THE HOLDER OF THE CLAIM HAS ACCEPTED THE PLAN.

**10.2     Binding Effect of Plan/Injunction**.

(a)     UPON THE EFFECTIVE DATE, BANKRUPTCY CODE SECTION 1141 SHALL BECOME APPLICABLE WITH RESPECT TO THE PLAN AND THE PLAN SHALL BE BINDING ON ALL PARTIES TO THE FULLEST EXTENT PERMITTED BY BANKRUPTCY CODE SECTION 1141(A).  IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1141, ALL OF THE DEBTOR'S PROPERTY TRANSFERRED TO THE REORGANIZED DEBTOR OR TO THE CREDITOR TRUST SHALL BE FREE AND CLEAR OF ALL CLAIMS, LIENS AND INTERESTS OF CREDITORS AND EQUITY INTEREST HOLDERS, EXCEPT TO THE EXTENT PROVIDED IN THE PLAN.

(b)     UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO

144813245.10

COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN, OR TRANSFERRED TO THE REORGANIZED DEBTOR, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE, (II) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE PLAN OTHER THAN AS PERMITTED UNDER THE PLAN, AND (III) WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, ASSERTING ANY CLAIMS AGAINST THE REORGANIZED DEBTOR BASED ON SUCCESSOR LIABILITY OR SIMILAR OR RELATED THEORY, EXCEPT TO THE EXTENT A PERSON OR ENTITY HOLDS AN ALLOWED CLAIM UNDER THE PLAN AND IS ENTITLED TO A DISTRIBUTION AND/OR LIEN UNDER THE PLAN IN ACCORDANCE WITH ITS TERMS, AND TO ENFORCE ITS RIGHTS TO DISTRIBUTION UNDER THE PLAN.

(c)    ON AND AFTER THE EFFECTIVE DATE, EACH HOLDER OF ANY CLAIM AGAINST OR INTEREST IN DEBTOR IS PERMANENTLY ENJOINED FROM TAKING OR PARTICIPATING IN ANY ACTION THAT WOULD INTERFERE OR OTHERWISE HINDER DEBTOR OR THE REORGANIZED DEBTOR FROM IMPLEMENTING THE PLAN, THE CONFIRMATION ORDER OR ANY OPERATIVE DOCUMENTS IN ACCORDANCE WITH THE TERMS THEREOF.

**10.3**    **Exculpation of Exculpees**.

(a)    None of the Exculpees shall have or incur any liability to any Holder of a Claim against or Interest in Debtor, or any other party-in-interest, or any of their Representatives, or any of their successors or assigns, for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan, except and solely to the extent such liability is based on fraud, gross negligence or willful misconduct.  The Exculpees shall be entitled to reasonably rely upon the advice of counsel with respect to any of their duties and responsibilities under the Plan or in the context of the Chapter 11 Case.  No Holder of a Claim against or Interest in Debtor, or any other party-in-interest,

including their respective Representatives, shall have any right of action against the Exculpees for any act, omission, transaction or other occurrence in connection with, relating to, or arising out of, the Chapter 11 Case, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan, except to the extent arising from fraud, gross negligence or willful misconduct.  For avoidance of doubt, nothing contained herein affects the rights of any Holder of a Claim or Interest pursuant to guarantees given by non-Debtor Exculpees.

(b)    All Holders of Claims against or Interests in Debtor and any other parties-in-interest, along with any of their Representatives and any of their successors or assigns, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, (iii) creating, perfecting, or enforcing any encumbrance of any kind against Exculpees in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any Exculpee or against the property or interests in property any Exculpee, in respect of any potential liability for which exculpation is granted pursuant to Section 10.3(a) of the Plan; provided, however, that nothing contained herein shall preclude any Holder or other party-in-interest from exercising its rights pursuant to and consistent with the terms of the Plan and the Operative Documents delivered under or in connection with the Plan; and provided, further, for avoidance of doubt, that nothing contained herein affects the rights of any Holder of a Claim or Interest pursuant to guarantees given by non-Debtor Exculpees.

**10.4**    <u>**Exculpation and Indemnification of the Creditor Trust and Creditor Trustee**</u>. From and after the Effective Date, to the fullest extent permitted by applicable law, the Creditor Trustee and each of the Creditor Trustee's Representatives shall not have and shall not incur any liability to any Person from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the Creditor Trustee by the Plan, the

Creditor Trust or any court order after the Effective Date pursuant to or in furtherance of the Plan, the Creditor Trust or applicable law, or otherwise, except for fraud, willful misconduct or gross negligence as determined by a Final Order.  No Holder of a Claim, or any other party in interest, will have or pursue any claim or cause of action against the Creditor Trustee, the Creditor Trust or their respective representatives, for making payments or distributions in accordance with the Plan or for implementing the provisions of the Plan, except for claims of fraud, willful misconduct or gross negligence.  Any act or omission taken that is consistent with the provisions of the Plan, the Creditor Trust or court order, will be conclusively deemed not to constitute fraud, gross negligence or willful misconduct.  To the fullest extent permitted by applicable law, the Creditor Trust will indemnify, hold harmless, defend and reimburse the Creditor Trustee and each of his or her designated Representatives from and against any and all losses, claims, causes of action, damages, fees, expenses, liabilities and actions for any act or omission taken pursuant to the Plan, the Creditor Trust or court order, except for willful misconduct or gross negligence as determined by a Final Order.  All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan and the closing of the Chapter 11 Case.

**10.5** **Cancellation of Instruments and Securities**.  On the Effective Date, except to the extent otherwise provided in the Plan, all notes, instruments, certificates, credit agreements, indentures, and other documents evidencing Claims or Interests, and any Interests that are not represented by certificates or other instruments, shall be canceled and surrendered and the obligations of Debtor thereunder or in any way related thereto shall be deemed satisfied in full, canceled, and of no force or effect against Debtor or the Creditor Trust, without any further action on the part of Debtor, the Creditor Trust, or any other Person.  Holders of or parties to such canceled instruments, and other documentation will have no rights arising from or relating to such instruments, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

**10.6** **Release of Liens**.  Except as otherwise provided herein or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is an Allowed Secured Claim as of

44

the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Reorganized Debtor and its successors and assigns. For the avoidance of doubt, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged on the Effective Date without any further action of any party, including, but not limited to, further order of the Bankruptcy Court, or filing updated schedules or statements typically filed pursuant to the Uniform Commercial Code.

10.7    **Judgments Void**.  Any judgment obtained before or after the Effective Date in any court other than the Bankruptcy Court shall be null and void as a determination of liability of Debtor or the Reorganized Debtor with respect to any debt treated by the Plan.

10.8    **No Limitation on Effect of Confirmation**.  Nothing contained in the Plan or the Disclosure Statement will limit, waive or restrict in any way the effect of Confirmation as set forth in Bankruptcy Code section 1141.  Confirmation will bind Debtor, all Creditors, Interest Holders and other parties in interest to the provisions of the Plan, whether or not the Claim or Interest of such Creditor or Interest Holder is Impaired under the Plan and whether or not such Creditor or Interest Holder has accepted the Plan and whether or not a proof of Claim or Interest has been filed or deemed to have been filed under Bankruptcy Code sections 501 or 1111(a), or such Claim or Interest is allowed under Bankruptcy Code section 502.

**ARTICLE XI**

**RETENTION OF JURISDICTION**

11.1    **Jurisdiction.**  The entry of a Confirmation Order, the occurrence of the Effective Date or the entry of a Final Decree shall not diminish or impair the Court's subject matter jurisdiction.  The Court shall retain subject matter jurisdiction of the Chapter 11 Case, and all proceedings arising out of or related thereto, including proceedings that aid the consummation of the Plan, to the fullest extent permissible under applicable law.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain jurisdiction to:

144813245.10

          (a)      Allow, disallow, determine, liquidate, classify, estimate or establish the priority, nature, validity, amount or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any and all objections to the allowance or priority of Claims or Interests;

          (b)      Hear, determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which Debtor is party or with respect to which Debtor or the Reorganized Debtor may be liable, and hear, determine and, if necessary, liquidate, any Claims arising therefrom, including, if necessary, determine the nature and amount of required Cure Claims;

          (c)      Hear and determine any and all motions to subordinate Claims or Interests at any time and on any basis permitted by applicable bankruptcy and nonbankruptcy law;

          (d)      Effectuate performance of and ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

          (e)      Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving Debtor that may be pending on the Effective Date;

          (f)      Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or the Confirmation Order;

          (g)      Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such other documents;

          (h)      Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement

or document created in connection with the Plan or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan;

(i)      Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a) of the Bankruptcy Code; *provided, however*, that from and after the Effective Date, the payment of fees and expenses of the Reorganized Debtor, including fees and expenses of counsel, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(j)      Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan or the Confirmation Order;

(k)      Hear and determine any rights, claims or Causes of Action held or reserved by, or accruing to, the Debtor, the Reorganized Debtor or the Creditor Trust pursuant to the Bankruptcy Code, the Confirmation Order or, in the case of the Debtor, any other applicable law;

(l)      Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(m)      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(n)      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan or the Confirmation Order;

(o)      Enter an order of final decree closing the Chapter 11 Case;

(p)      Hear and resolve all matters concerning U.S. state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(q)      Hear and resolve all matters involving the nature, existence or scope of the Debtor's discharge;

(r)      Hear and resolve all matters related to the property of the Estate from and after the Confirmation Date;

144813245.10

         (s)      Recover all Assets of the Debtor and property of the Estate wherever located; and

         (t)      Hear and resolve such other matters as may be provided in the Confirmation Order or as may be authorized by or not inconsistent with the Bankruptcy Code.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1    Modification of Plan.

         (a)      Debtor may, upon consultation with the Consultation Parties, alter, amend or modify the Plan at any time before the entry of the Confirmation Order, provided that the Plan, as altered, amended or modified, satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and Debtor shall have complied with Bankruptcy Code section 1125.  However, the Bankruptcy Court may require a new Disclosure Statement and/or re-voting on the Plan if Debtor modifies the Plan before Confirmation.

         (b)      Debtor may, upon consultation with the Consultation Parties, also seek to alter, amend or modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated, (2) as altered, amended or modified the Plan satisfies the conditions of Bankruptcy Code sections 1122 and 1123, and (3) the Bankruptcy Court authorizes the proposed modification after notice and a hearing under Bankruptcy Code section 1129.

         (c)      A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder.   Prior to the Effective Date, Debtor may make appropriate technical non-material modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical modifications do not adversely affect the treatment of Holders of Claims or Interests.

         (d)      Debtor further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

48

**12.2** **Notices**.  Except as otherwise set forth in Section 12.3 of the Plan, all notices, requests, elections or demands in connection with the Plan, including any change of address of any Holder of a Claim for the purposes of receiving any Distributions under the Plan, shall be in writing and shall be delivered personally or by facsimile, electronic mail or overnight courier (confirmed by first class mail or express mail) or mailed by first class mail.  Such notice shall be deemed to have been given when received or, if mailed by first class mail, seven (7) days after the date of mailing, or if express mailed, the next Business Day following the date of mailing and addressed to the Debtor and the Reorganized Debtor as follows:

**Debtor / Reorganized Debtor:**

> Cash Cloud, Inc.
> Attn: Christopher Andrew McAlary
> 10190 Covington Cross Drive,
> Las Vegas, Nevada 89144
> Email:  chris@coincloud.com

**with copies to:**

> Fox Rothschild LLP
> 1980 Festival Plaza Drive, Suite 700
> Las Vegas, NV 89135
> Attn:  Brett A. Axelrod
> Email:  baxelrod@foxrothschild.com
> Facsimile:  702-597-5503

All notices and requests to Holders of Claims of any Class shall be sent to them at their known address.  Any Holder of a Claim of any Class may designate in writing any other address for purposes of this Section 12.2 of the Plan, which designation shall be effective upon receipt.

**12.3** **Limitation of Notice**.  Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters, with no requirement for any additional or further notice:

(a) ***Notice of Entry of Confirmation Order***.  Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known Holders of Claims (which have not become Disallowed Claims) and Interests within five (5) Business Days of the entry of Confirmation Order.

144813245.10

(b)     ***Post-Confirmation Date Service List - Additional Persons Entitled to Notice***. Except as set forth in Section 12.2 of the Plan, from and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process Filed with the Bankruptcy Court prior to such date shall no longer be effective, and no further notices, other than Notice of Confirmation Order, shall be required to be sent to such parties, unless such parties File a new notice of appearance and demand for service of process dated subsequent to the Effective Date, which subsequent notice and demand must be Filed with the Bankruptcy Court and served upon the Persons and Entities listed in Section 12.2 of the Plan.

**12.4    <u>Headings</u>**.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

**12.5    <u>Exhibits</u>**.    All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan, as if set forth in full in the Plan.  Except as otherwise provided in the Plan, such exhibits and documents included in the Plan Supplement shall be Filed with the Bankruptcy Court on or before the Plan Supplement Filing Date.  After the exhibits and documents are Filed, copies of such exhibits and documents shall have been available (a) by downloading such exhibits and documents from the Stretto Website at the Plan Documents tab or the Bankruptcy Court's website at http://www.nvb.uscourts.gov or (b) upon written request to Debtor's counsel at the address above.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

**12.6    <u>Nonseverability of Plan Provisions</u>**.  If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power, at the request of Debtor and subject to the consent of any party adversely affected thereby, to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or

invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without the consent of Debtor and any other Person or Entity affected by such provision; and (c) nonseverable and mutually dependent.

**12.7** **Compromise of Controversies**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

**12.8** **Waiver or Estoppel**. Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with Debtor, its counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

**12.9** **Conflicts**. To the extent that any provision of the Disclosure Statement, the Plan Supplement (other than any amendments to the Plan), or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements or amendments to any of the foregoing), conflict with or are in any inconsistent with any provision of the Plan, the Plan shall govern and control, unless expressly set forth herein.

**12.10** **Computation of Time**. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**12.11** **Governing Law**. Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule or regulation is applicable, or to the extent that an exhibit or supplement to the Plan provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of Nevada, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

144813245.10

**12.12**   **Successors and Assigns**.  The rights and obligations of any Person or Entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person or Entity.

**12.13**   **Good Faith**.  Confirmation of the Plan will constitute a finding that the Plan has been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code.

**12.14**   **Post Confirmation Conversion or Dismissal**.  A creditor or party in interest may bring a motion to convert or dismiss the Chapter 11 Case under Bankruptcy Code section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Bankruptcy Code section 1112(b).  If the Bankruptcy Court orders the Chapter 11 Case converted to chapter 7 after the Plan is confirmed, then all property that had been property of the Estate, and that has not been disbursed or distributed pursuant to the Plan, will revest in the chapter 7 estate, and the automatic stay will be re-imposed upon the re-vested property only to the extent that relief from stay was not previously granted by the Bankruptcy Court during the Chapter 11 Case.  In addition, any Allowed Administrative Claims which are not paid on the Effective Date shall continue to be entitled to administrative priority, under Bankruptcy Code section 507(a)(1) in any such subsequent chapter 7 case to which the Chapter 11 Case is converted.

**12.15**   **Entire Agreement**.  The Plan, as described herein, the Disclosure Statement and exhibits thereto, and the Plan Supplement set forth the entire agreement and understanding of the parties hereto relating to the subject matter hereof and supersede all prior discussions and documents. No party hereto shall be bound by any terms, conditions, definitions, warrants, understandings or representations with respect to the subject matter hereof, other than as in expressly provided for herein or as may hereafter be agreed by the parties in writing.

**12.16**   **Final Decree Closing the Chapter 11 Case**.  After all Effective Date payments to Creditors under the Plan have been made, the Reorganized Debtor shall seek a Final Decree of the Bankruptcy Court closing the Chapter 11 Case.  US Trustee Fees continue to be payable to the US Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to Final Decree.

144813245.10

**12.17**  **Dissolution of Committee**.  The Committee shall be dissolved on the Effective Date and its members shall be released from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code without need for a further order of the Bankruptcy Court; *provided, however*, that obligations owing to or from the Committee arising under confidentiality agreements, joint interest agreements and protective orders, if any, entered during the Chapter 11 Case shall remain in full force and effect according to their terms; *provided further*, that the Committee shall continue to prepare and prosecute fee applications filed in compliance with the Plan.  Debtor and the Reorganized Debtor shall have no obligation to pay or reimburse any fees or expenses of any official or unofficial committee of creditors incurred after the Effective Date except with regard to the preparation and prosecution of fee applications.

Dated this 8th day of May, 2023.

**CASH CLOUD, INC.**
**d/b/a COIN CLOUD**

By:  */s/Christopher A. McAlary*
Its:  Chief Executive Officer

Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By:    */s/Brett Axelrod*
　　BRETT A. AXELROD, ESQ.
　　Nevada Bar No. 5859
　　NICHOLAS A. KOFFROTH, ESQ.
　　Nevada Bar No. 16264
　　ZACHARY T. WILLIAMS, ESQ.
　　Nevada Bar No. 16023
　　1980 Festival Plaza Drive, Suite 700
　　Las Vegas, Nevada 89135
　　*Counsel for Debtor*

53