BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      jmcpherson@foxrothschild.com
      nkoffroth@foxrothschild.com
      zwilliams@foxrothschild.com

*Counsel for Debtor*

Electronically Filed May 11, 2023

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>                              Debtor. | Case No. BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**DEBTOR'S REPLY TO ENIGMA SECURITIES LIMITED'S OMNIBUS OBJECTION TO DEBTOR'S MOTIONS TO APPROVE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**<br><br>Hearing Date:  May 18, 2023<br>Hearing Time:  10:30 a.m. |

Cash Cloud, Inc. ("Cash Cloud" or "Debtor"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, Fox Rothschild LLP, hereby files this Debtor's Reply To Enigma Securities Limited's Omnibus Objection To Debtor's Motions To Approve Rejection Of Executory Contracts And Unexpired Leases (the "Reply"). Enigma Securities Limited ("Enigma") has filed the Enigma Securities Limited's Omnibus Objection To Debtor's Motions To Approve Rejection Of Executory Contracts And Unexpired Leases ("Objection") objecting to the (i) *Debtor's Fourth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11*

1

*U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 355] (the "Fourth Rejection Motion"), (ii) *Debtor's Fifth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 358] (the "Fifth Rejection Motion"), (iii) *Debtor's Sixth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 361] (the "Sixth Rejection Motion"), and (iv) *Debtor's Seventh Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) and Disposal of Certain Personal Property Including Surrender and Termination of the Automatic Stay and/or Abandonment* [ECF No. 364] (the "Seventh Rejection Motion" and, collectively with the Fourth Rejection Motion, the Fifth Rejection Motion, and the Sixth Rejection Motion, the "Motions"). This Reply is based upon the pleadings on file, the Points and Authorities set forth herein, the Declaration of Tanner James, and any arguments made by counsel in connection with the hearing(s) on the Motions.[1]

## POINTS AND AUTHORITIES

### Factual Background

1. The Debtor incorporates the factual background set forth in the Motions and as supported by the Declaration of Christopher McAlary filed in support of each of the Motions at ECF 356, 359, 362, and 365. In support of this Reply, the Debtor has also contemporaneously filed the Declaration Of Tanner James In Support Of Debtor's Reply To Enigma Securities Limited's Omnibus Objection To Debtor's Motions To Approve Rejection Of Executory Contracts And Unexpired Leases ("James Decl.").

/ / /

/ / /

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motions.

**Memorandum of Law**

**A.    The Debtor's Decision To Reject The Contracts And/Or Leases Is Not Premature**

2.     In the Ninth Circuit, a bankruptcy court "should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."  *Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.),* 476 F.3d 665, 670 (9th Cir. 2007) (internal punctuation omitted).

> The primary question to guide the court in deciding whether a debtor has properly exercised its business judgment is "whether rejection would benefit the general unsecured creditors." *In re Chi–Feng Huang,* 23 B.R. at 801. Rejection should not be allowed where "the primary beneficiaries of rejection would be the debtors, not creditors." *Id.* at 802.

*In re Hertz*, 536 B.R. 434, 442 (Bankr. C.D. Cal. 2015).

3.     The Debtor has made the decision to reject the Contracts and/or Leases listed in the Motions because it has determined that the Contracts and/or Leases are not necessary for the Debtor's operations and are financially burdensome and not beneficial to the estate. The Leases are not a source of potential value for the Debtor's future operations, creditors, or interest holders, and are believed to not be marketable given their terms and constitute an unnecessary drain on the Debtor's limited resources.  See Declaration of C. McAlary at ECF 356, 359, 362, and 365. Further, the Debtor seeks to avoid depletion of the estate through accrual of administrative expenses associated with these Contracts and/or Leases.  In addition, the Debtor has determined that there is no value to the estate in attempting to assume and assign the Contracts and/or Leases.  See Declaration of C. McAlary at ECF 356, 359, 362, and 365.

4.     Enigma opposes the Debtor's Motions due to the impending sale and argues that potential buyers will be forced to have accepted the Debtor's decisions that the Contracts and/or Leases should be rejected.

5.     Enigma has not produced evidence that supports its argument that the Debtor's determination to reject the Contracts and/or Leases is manifestly unreasonable. The Debtor made the decision to reject the Contracts and/or Leases after undertaking a financial analysis of the

1  expenses to the Debtor's estate associated with each Contract or Lease, and the benefits to the estate
2  and its creditors (as a whole, <u>not just Enigma</u>) associated with each Contract or Lease. See James
3  Decl.  Among other things, the Debtor considered underperformance, high cure costs, ongoing
4  administrative expenses, and irreparable relationships with the hosts.  Based on this analysis, the
5  Debtor determined, in its business judgment, that the Contracts and/or Leases are not beneficial to
6  the estate and should be rejected.  See James Decl. To avoid further, ongoing expense to the estate,
7  the Debtor has requested that the rejection of the Contracts and Leases be effective as of the date of
8  the Motions.

9         6.     Further, potential buyers of the Debtor's assets have not requested that the Debtor
10 remove any Contract or Lease from any of the Motions.  See James Decl. The Debtor should not be
11 forced to retain Contracts and/or Leases that may give rise to administrative expenses simply
12 because Enigma, a secured creditor who can exercise its rights with regard to its collateral, has a
13 hope that a potential buyer might want to acquire the Contracts and/or Leases or Enigma's Kiosks.

14        7.     Enigma further argues that the Debtor's decision to reject the Contracts and Leases is
15 speculative.  "The court may deny rejection where the Debtors' decision "is clearly erroneous, too
16 speculative, or contrary to the provisions of the Bankruptcy Code...." *Allied Tech., Inc. v. R.B.*
17 *Brunemann & Sons,* 25 B.R. 484, 495 (Bankr. S.D.Ohio 1982), *quoted in Official Creditors'*
18 *Committee v. X10 Wireless Tech., Inc. (In re X10 Wireless Tech., Inc.),* No. WW–04–1328–PST,
19 2005 WL 6960205, at *3 (9th Cir. BAP April 5, 2005)." *Hertz*, 536 B.R. at 443-44.  However, the
20 Debtor's decisions to reject the Contracts and Leases are not speculative.  To the contrary, as stated
21 above, the Debtor has considered the financial benefit of the Contracts and Leases compared to the
22 financial burdens and costs and has determined that rejection of the listed Contracts and Leases is
23 beneficial to the estate.  In addition, the Debtor has determined that there is no value to the estate in
24 attempting to assume and assign the Contracts and/or Leases.  See Declaration of C. McAlary at
25 ECF 356, 359, 362, and 365 and James Decl.

26        8.     The cases cited by Enigma regarding a debtor's decision to reject as being too
27 speculative are inapposite.  For instance, in *In re Hertz*, the debtors' decision to reject a purchase
28 contract for real property in the hope of obtaining a higher sale price for the real property was found

4

145553167.1

to be based on "hope and speculation" and was not a decision made "prudently, on an informed basis, in good faith, and in the honest belief that that the action taken was in the best interests of the bankruptcy estate." *Id*. at 442. The court further held in *Hertz* that the Debtors in that case were not entitled to reject the real estate purchase contract to benefit themselves, and not creditors. This is not the case here. The Debtor is not engaging in speculation in connection with its decision to reject, and its decision to reject benefits creditors, not itself. Enigma is a secured creditor of the Debtor, and the Debtor is considering the benefit of rejection for all creditors. Further, the Debtor's decision is not based on speculation as it was in *Hertz*. In fact, it is Enigma that is engaging in speculation that a potential purchaser would desire to retain the Contracts and Leases sought to be rejected and want to retain those locations where Enigma's Kiosks are located.

9. Enigma further argues that "to the extent a potential purchaser does in fact ascribe value to some of the Leases, then the Debtor's premature rejection thereof may depress the sale price for the Debtor's assets—or enterprise valuation in a recapitalization transaction—to the detriment of the estate." [ECF 518 at p. 5]. As previously stated, the Debtor has determined that the Contracts and Leases in the Motions are not financially beneficial, and thus, it is believed that rejection will not depress the sale price given their lack of value. See James Decl. Furthermore, the Debtor is not aware of any party who has requested that Contracts and Leases that are part of the Motions be removed from being rejected. Indeed, potential buyers have expressed that the Debtor's locations should be reduced and have provided minimum performance thresholds as a benchmark for what they are interested in acquiring. See James Decl.

10. Lastly, Enigma argues that rejection is generally made in connection with the plan of reorganization process. While this may be the case, every case has different facts and circumstances. Here, the Debtor has determined that the financial burden of the Contracts and Leases, including the incurrence of administrative expenses, outweighs any benefit to this estate and thus the Contracts and Leases are not beneficial to the estate and its creditors. See James Decl.

**B.    The Debtor's Decision To Abandon Kiosks Is Based on Section 554**

11. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of

145553167.1

inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare. See In re Midlantic Nat'l Bank, 474 U.S. 494, 501 (1986).

12. Here, the Debtor has determined, in its business judgment, that the Remaining Property, the Kiosks, are not necessary for an effective reorganization and there is little to no equity in the Remaining Property, including the Kiosks. As such, the Kiosks are burdensome to the estate and are of inconsequential value to the estate.

13. Despite the Debtor's broad discretion to abandon property of the estate, Enigma, a secured creditor, argues that the Motions should be denied because its interests will be adversely affected by the Debtor's abandonment of the Kiosks prior to the sale auction. Enigma states that although it "has obtained some indications of interest, to date no buyer has been willing to commit to a purchase without assurances that it will be able to license the Debtor's DCM software to operate the machines going forward." [ECF 518 at p.3]. Enigma's opposition is based on its own interests, not that of the Debtor's estate or its creditors.

14. The Debtor has made the determination to abandon the Remaining Property under the requirements set forth in Section 554 and they are met. Enigma does not dispute that there is a lack of equity in the Kiosks, and that the Kiosks (or recovery of the Kiosks) are financially burdensome to the estate. That Enigma chose only to take the Kiosks as its collateral, but not the software contained in the Kiosks, is an issue for Enigma to determine and one that should not adversely affect the Debtor's estate and unsecured creditors.

15. Enigma further argues that no buyer has chosen to move forward with the purchase from Enigma of the abandoned Kiosks due to "lack of assurances" regarding the use of the Debtor's software. [ECF 518 at p. 6]. Enigma argues that the absence of a purchaser at the time of the abandonment will likely be fatal to Enigma's efforts to dispose of the abandoned Kiosks, leaving Enigma with two equally unappealing choices. That is, Enigma "must either (a) incur additional time, expense, and effort to repossess, transport, and store the Abandoned DCMs pending the auction, in the hopes that the winning bidder will be amenable to licensing the Debtor's software

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145553167.1

going forward, or (b) acquiesce to the abandonment and potential disposal of more than four hundred machines to which it might otherwise have had recourse, in each case for no reason but to accommodate the Debtor's (unjustified) desire to charge ahead with rejection and abandonment prior to the auction." [ECF at p. 7].

16. Essentially, Enigma argues that the Debtor should not be allowed to abandon the Kiosks because Enigma does not want to undertake the expense of taking possession of its collateral, the Kiosks. First, as stated, the factors under § 554 for abandonment have been satisfied. Second, there is no exception to abandonment that provides that abandonment should not occur to allow a secured creditor to obtain possession of its property at a time that is optimal for it. In sum, Enigma does not have a valid basis to oppose the Debtor's decision to abandon the Kiosks pursuant to 11 U.S.C. § 554.

### C. The Motions Are Not Unfair to Enigma

17. Enigma further argues that the Court should not grant the Motions because Enigma would face "an extraordinarily unfair result." [ECF 518 at p. 7]. The reality is that the Debtor, in its business judgment, has filed the Motions because it believes that rejection and abandonment is in the best interests of the estate and creditors. The Debtor simply does not have the ability to pay for administrative expenses arising from the ongoing Contracts and Leases or for the removal of Enigma's Kiosks. The Debtor should not incur administrative expenses that cannot be paid, or incur needless administrative expenses that will need to be paid ultimately at the expense of unsecured creditors. Enigma is a secured creditor who bargained for the collateral it obtained, certain Kiosks, and did not obtain a security interest in the software that accompanies its collateral. This bankruptcy cannot change these circumstances, and the rejection of burdensome contracts and abandonment of burdensome property cannot be held in abeyance until Enigma secures a potential outcome that it deems financially desirable. Further, it should be noted that despite its request for a determination on the Motions, Enigma has not offered to compensate the estate for administrative expenses that may be incurred due to the Contracts and Leases not being rejected while it seeks to

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145553167.1

dispose of its collateral in the way Enigma deems best for it. In summary, the Motions should be approved under the standards set forth under 11 U.S.C. § 365 and § 554.

### CONCLUSION

Based upon the forgoing, the Debtor respectfully requests that this Court enter orders granting the Motions.

Dated this 11th day of May, 2023.

**FOX ROTHSCHILD LLP**

By: /s/ Jeanette E. McPherson
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135

*Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145553167.1