BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
        zwilliams@foxrothschild.com
*Counsel for Debtor*

> Electronically Filed May 12, 2023

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.  BK-23-10423-mkn |
| CASH CLOUD, INC.,<br>dba COIN CLOUD, | Chapter 11 |
| Debtor. | **REPLY IN SUPPORT OF MOTION FOR ENTRY OF AN ORDER APPROVING KEY EMPLOYEE RETENTION PROGRAM AND GRANTING RELATED RELIEF** |
| | Hearing Date:   May 18, 2023<br>Hearing Time:   10:30 a.m. |

Cash Cloud, Inc. d/b/a Coin Cloud (the "Debtor") debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its undersigned counsel, the law firm of Fox Rothschild LLP, respectfully files this reply (the "Reply") to the *United States Trustee's Opposition to Debtor's Motion for Entry of an Order Approving Key Employee Retention Program and Reservation of Rights* (the "Opposition") [ECF No. 526].  This Reply is supported by the *Amended Declaration of Christopher Andrew McAlary in Support of Motion for Entry of an Order*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1
145695597.2

*Approving Key Employee Retention Program and Granting Related* (the "Amended McAlary Declaration") filed concurrently herewith.

**I.**

**STATEMENT OF FACTS**

1.      On April 19, 2023, the Debtor filed the *Motion for Entry of and Order Approving Key Employee Retention Program and Granting Related Relief* (the "KERP Motion") [ECF No. 438][1] and the supporting *Declaration of Christopher Andrew McAlary* (the "McAlary Declaration") [ECF No. 439].

2.      The KERP Motion, including all factual background therein, is incorporated herein in its entirety.

3.      On May 7, 2023, the United States Trustee (the "Trustee") filed the Opposition. The Trustee's Opposition relies on two main arguments: (1) that the Debtor has failed to show that the Participants are not insiders of the debtor under Section 503(c)(1) of the Bankruptcy Code; and (2) that the Debtor has not met its burden under Section 503(c)(3), to justify the Retention Bonuses based on the facts and circumstances of this case.

4.      As described more fully in the KERP Motion, the Debtor significantly reduced its workforce by approximately 52% prior to the Petition Date.  Unfortunately, since the date of the filing of the KERP Motion, 5 additional critical employees have left the Debtor.  The Debtor is at a crucial point in its Chapter 11 Case, and in its efforts to stabilize its business operations.  The Court has authorized the Debtor to implement bidding procedures,[2] with an auction scheduled in June. Many of the potential bidders have expressed interest in proposing plans of reorganization that would involve the continuation of the Debtor's business as a going concern.  The Participants are critical to maintaining the Debtor's going concern value.  See Amended McAlary Declaration ¶ 4.

5.      For example, many of the Participants have developed valuable institutional knowledge regarding the Debtor's operations that would be difficult and expensive to replace, particularly on an expedited basis, and other Participants are crucial in getting the Debtor's machines

---

[1] Capitalized terms not defined herein shall have the meaning associated in the KERP Motion.

[2] See *Order Establishing Bidding Procedures and Related Deadlines* [ECF No. 483, as amended by ECF No. 527].

145695597.2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

back online so the Debtor can generate revenue.  Moreover, many of the Participants have expressed uncertainty about their ability to remain with the Debtor in light of the increased responsibilities and tasks they have had to perform during the pendency of the Chapter 11 Case.  <u>See</u> Amended McAlary Declaration ¶ 5.

## II.

## <u>ARGUMENT</u>

**A.    Section 503(c)(1) is Inapplicable because the Participants are not Insiders.**

6.    Because none of the Participants are "insiders" as that term is defined by the Bankruptcy Code, section 503(c)(1) is inapplicable.  Section 503(c)(1) of the Bankruptcy Code restricts payments made to "insiders of the debtor for the purpose of inducing such person to remain with the debtor's business"—i.e., those insider plans that are essentially "pay to stay" plans. 11 U.S.C. 503(c)(1).  By its terms, section 503(c)(1) of the Bankruptcy Code does not apply where—as is the case here—participants in a retention-based program are not insiders.

7.    Section 101(31) of the Bankruptcy Code provides that where a debtor is a corporation, insiders include any "(i) director of the debtor; (ii) officer of the debtor; (iii) person in control of the debtor . . . or (iv) relative of a . . . director, officer or person in control of the debtor." 11 U.S.C. § 101(31)(B).  Courts have also concluded that an employee may be an "insider" if such employee "is taking part in the management of the debtor." <u>In re Foothills Texas, Inc.</u>, 408 B.R. 573, 579 (Bankr. D. Del. 2009).  An employee's job title alone does not make such employee an "insider" as defined by the Bankruptcy Code.  <u>See</u> <u>Glob. Aviation Holdings, Inc.</u>, 478 B.R. 142, 148 (Bankr. E.D.N.Y. 2012) ("The fact that some of the KERP Employees have the word "director" in their titles does not make them insiders.  The label an employer chooses to attach to a position is not dispositive for purposes of insider analysis because '[c]ompanies often give employees the title 'director' or 'director-level' but do not give them decision-making authority akin to an executive.'").

8.    The Debtor only has two active insiders pursuant to Section 101(31)(B): (1) Christopher McAlary ("<u>Mr. McAlary</u>"), the Debtor's CEO, Director, and equity holder, and (2) Daniel Ayala ("<u>Mr. Ayala</u>"), the independent director hired during the pendency of this Chapter 11 Case.  <u>See</u> *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy, Parts 4 and 28* [ECF No. 240].  Indeed, Mr. McAlary and Mr. Ayala are the only two individuals

145695597.2

who currently have fiduciary duties to the Debtor, and operational authority to make broad decisions on behalf of the Debtor.  See Amended McAlary Declaration ¶ 6.

9.      In an effort to provide the Court with more transparency, the Debtor has attached a description of the job titles, departments, and divisions of the Participants (the "Participant Descriptions") to the Amended McAlary Declaration as **Exhibit 1**[3].  Although some of the job titles contain common title phrases such as "VP," "chief," and "director," none of the Participants have broad responsibilities outside of their respective departments and divisions.  Each of the Participants is a valuable professional with distinct expertise within his or her specific department, but has no control or responsibilities within any other department, or any semblance of decision-making authority for the Debtor and its operations as a whole.  See Amended McAlary Declaration ¶ 7 & Exhibit 1.  .Accordingly, none of the Participants are insiders pursuant to Section 101(31)(B), making Section 503(c)(1) inapplicable.

**B.      Payment of the Retention Bonus is Justified by the Facts and Circumstances of the Chapter 11 Case Pursuant to Section 503(c)(3).**

10.     Section 503(c)(3) of the Bankruptcy Code permits payments to a debtor's employees outside the ordinary course of business if such payments are justified by "the facts and circumstances of the case."  11 U.S.C. § 503(c)(3).  Importantly, courts have found that section 503(c)(3)'s "facts and circumstances" justification test is predicated on a test similar to the business judgment rule.  In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of the debtors' KERP on basis that debtors showed a "sound business purpose" justified such approval);  In re Borders Grp. Inc., 453 B.R. 459, 473–74 (Bankr. S.D.N.Y. 2011) (evaluating debtors' KERP under business judgment rule); In re Glob. Home Prod., LLC, 369 B.R. 778, 786 (Bankr. D. Del. 2007) (describing six factors that courts may consider when determining whether the structure of a compensation proposal meets the "sound business judgment test" in accordance with section 503(c)(3) of the Bankruptcy Code (citing In re Dana Corp., 358 B.R. 567, 576–77 (Bankr. S.D.N.Y. 2006))).  Accordingly, whether a retention plan is justified by the facts and circumstances

---

[3] Because the Debtor is unable to provide a Retention Bonus to every employee, the Participant Descriptions were not included as an original exhibit to the KERP Motion in order to limit questions and concerns as to why an employee would not be receiving a Retention Bonus. The Participant Descriptions have names redacted to address this concern, but the Debtor is willing to file an unredacted exhibit under seal if requested by the Court.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145695597.2

of the case and the analysis of whether the approval of such plan is a sound exercise of the debtor's business judgment are the same.

11.    Courts assessing a debtor's business judgment relating to an incentive program under section 503(c)(3) look at six factors (the "<u>Dana Factors</u>"): (a) whether a reasonable relationship existed between the proposed plan and the desired results; (b) whether the cost of the plan was reasonable in light of the overall facts of the case; (c) whether the scope of the plan was fair and reasonable; (d) whether the plan was consistent with industry standards; (e) whether the debtor had put forth sufficient due diligence efforts in formulating the plan; and (f) whether the debtor received sufficient independent counsel in performing any due diligence and formulating the plan.  <u>Dana Corp.</u>, 358 B.R. at 576-77.

12.    An analysis of the Dana Factors undoubtedly shows that payment of the Retention Bonus is necessary pursuant to the facts and circumstances in this Chapter 11 Case:

   **a.**    **<u>Whether a Reasonable Relationship Exists between the Proposed Plan and Desired Results</u>**.  The purpose of the Retention Bonus is to incentive key employees, who are essential in both the day-to-day operations of the Debtor, and in assisting in the Debtor's reorganization efforts, to remain with Debtor throughout the pendency of the Chapter 11 Case and beyond.  Many of the Participants have been subjected to an overburdensome workload as they have been required to fulfill both their normal daily tasks, and significant additional tasks to assist in the Chapter 11 Case.  Some of the Participants have indicated that the heightened workload, and uncertainty as to the future of the Debtor, may force them to search for other employment opportunities.  Accordingly, the Retention Bonus is designed to compensate the Participants and incentivize them to remain with the Debtor.  <u>See</u> Amended McAlary Declaration ¶ 8.

   **b.**    **<u>Whether the Cost of the Plan was Reasonable in Light of the Overall Facts of the Case</u>**.  The Debtor has selected each of the Participants because their essential skillset and knowledge is a valuable asset to the Debtor operationally, and in its reorganization efforts.  The cost of replacing each of the Participants, which would include paying recruiting and hiring firms, expending efforts on interviews and recruitment activities, and expending valuable time and effort to get new hires acquainted with the Debtor's operations and Chapter 11 Case, would far exceed the overall cost the Retention Bonus.  Additionally, 9 of the Participants, who comprise approximately 80% of the Retention Bonus, are only receiving half of their proposed Retention Bonus upon approval of the KERP Motion.  Therefore, the cost of the Retention Bonus is reasonable compared to the cost of replacing the Participants.  <u>See</u> Amended McAlary Declaration ¶ 9.

   **c.**    **<u>Whether the Scope of the Plan was Fair and Reasonable</u>**.  As previously described, each of the Participants was chosen based on their important contributions both operationally, and to the Debtor's Chapter 11 Case.  More specifically, 9 of the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

145695597.2

Participants work in the departments of finance, human resources, operations, and compliance, and the other 19 work in the machine operations team, which has undertaken a significant and burdensome effort to redeploy and replace many of the Debtor's machines. While the Debtor would ideally be able to provide each of its employees with a retention bonus, at this critical stage in the reorganization process, certain employees have knowledge and expertise that is irreplaceable. Therefore, the scope of the Retention Bonus is fair and reasonable. See Amended McAlary Declaration ¶ 10.

**d.** **Is the Plan or Proposal Consistent with Industry Standards**. The crypto-atm industry is an emerging industry with few large competitors. The industry is fairly unregulated and has very little standard employment practices. While the Debtor believes that payment of bonuses as a mechanism for employee retention is commonplace in many industries, it is not possible for the Debtor to retrieve specific information as to competitors in the crypto-atm industry, especially given that the overwhelming majority of industry players are privately owned companies. See Amended McAlary Declaration ¶ 11.

**e.** **Whether the Debtor has put forth Sufficient Due Diligence Efforts in Formulating the Plan**. As previously described, the Debtor put significant thought into both the employees who should receive the Retention Bonus, and the financially feasible amount that the Debtor could pay towards the Retention Bonus. The Debtor identified employees who were likely to seek job opportunities elsewhere, given their increased workload in both the Debtor's day-to-day operations, and in their responsibilities in assisting in the Chapter 11 Case. See Amended McAlary Declaration ¶ 12.

**f.** **Whether the Debtor Received Sufficient Independent Counsel in Performing any Due Diligence and Formulating the Plan**. The Debtor's attorneys and financial advisors have reviewed the Retention Bonus, and have determined that the Debtor has sufficient funds to make such payments without any detrimental effects to its operations and financial position. See Amended McAlary Declaration ¶ 13.

13.    Accordingly, under the Dana Factors, the Debtor has met its burden under Section 503(c)(3), and demonstrated that the ongoing facts and circumstances necessitate the Debtor taking action to incentivize the Participants to continue their employment through payment of the Retention Bonus.

### III.

### CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter an Order: (i) overruling the Trustee's Opposition in its entirety; (ii) approving the KERP Motion; and (ii) granting Debtor such other relief as the Court deems just and proper.

145695597.2

1

2

3

4

5

6

7

8

9

10

11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED this 12th day of May 2023.

**FOX ROTHSCHILD LLP**

By: _____*/s/Brett Axelrod*_____
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     NICHOLAS A. KOFFROTH, ESQ.
     Nevada Bar No. 16264
     ZACHARY T. WILLIAMS, ESQ.
     Nevada Bar No. 16023
     1980 Festival Plaza Drive, Suite 700
     Las Vegas, Nevada 89135
*Counsel for Debtor*

145695597.2

7