Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re | Case No.: 23-10423-mkn |
| | Chapter 11 |
| CASH CLOUD, INC. dba COIN CLOUD, | |
| Debtor. | **NOTICE OF INTENT TO SERVE SUBPOENA *DUCES TECUM*** |

PLEASE TAKE NOTICE that, pursuant to Fed. R. Civ. P. 45(a)(4), incorporated by

reference in Federal Rule of Bankruptcy Procedure 7004, the Official Committee of Unsecured

Creditors, by and through McDonald Carano LLP, hereby provides notification to all parties in

the above-entitled matter that a Subpoena *Duces Tecum* to the Custodian of Records of Cash

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

1  Cloud, Inc. dba Coin Cloud has been issued and a copy of which is attached hereto.

2      DATED this 17th day of May 2023.

3                                    McDONALD CARANO LLP

4

5                                    By: /s/ Ryan J. Works
                                         Ryan J. Works, Esq. (NSBN 9224)
                                         Amanda M. Perach, Esq. (NSBN 12399)
6                                        2300 West Sahara Avenue, Suite 1200
                                         Las Vegas, Nevada 89102
7                                        rworks@mcdonaldcarano.com
                                         aperach@mcdonaldcarano.com
8
                                         *Counsel for Official Committee*
9                                        *of Unsecured Creditors*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

# United States Bankruptcy Court

## for the District of Nevada

In re:  CASH CLOUD, INC. dba COIN CLOUD

Debtor.

Case No.:   23-10423-mkn

Chapter 11

**SUBPOENA FOR THE PRODUCTION OF DOCUMENTS**

**To:     Custodian of Records of Cash Cloud, Inc. dba Coin Cloud ("Debtor")**

☐ *Testimony*: **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at an examination under Rule 2004, Federal Rules of Bankruptcy Procedure.  The examination will be recorded by this method:  Via stenographic means and/or videotaped.

| PLACE: | DATE AND TIME: |
|---|---|
| McDonald Carano LLP<br>2300 West Sahara Avenue, Suite 1200<br>Las Vegas, Nevada 89102<br>702.873.4100<br>rworks@mcdonaldcarano.com | May 31, 2023, before 5:00 pm, Pacific Time |

☒ *Production:*  You, or your representatives, must produce at the above location, the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

       ***See*** **attached Exhibit A (the order regarding the document production), Exhibit B (Definitions, Instructions and Documents to be Produced), and Exhibit C (the Declaration of Custodian of Records).**

   The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| */s/  Ryan J. Works*<br><br>*Attorneys for the*<br>*Official Committee of Unsecured Creditors* | May 17, 2023 |

The name, address, email address and telephone number of the attorney representing the Official Committee of Unsecured Creditors who issues or requests this subpoena is:  *Ryan J. Works, Esq., McDonald Carano LLP, 2300 West Sahara Avenue, Suite 1200, Las Vegas, Nevada 89102, 702.873.4100, rworks@mcdonaldcarano.com*

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before the trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2540 (Form 2540 – Subpoena for Rule 2004 Examination) (12/15)

## PROOF OF SERVICE
### (This Section should not be filled with the court unless required by Fed. R. Civ. P. 45)

I received this subpoena for _____ on _____, 2023.

☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on (*date*) _____; or

☐  I returned the subpoena unexecuted because:  _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered

to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

        I declare under penalty of perjury that this information is true and correct.

Date:  _____              _____
                                                                                 *Server's signature*

                                                                         _____
                                                                                 *Print name and title*

                                                                         _____
                                                                                 *Server's address*

**Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), (e) and (g), made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:**

(c) PLACE OF COMPLIANCE.

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:

(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises at the premises to be inspected.

(d) PROTECTING A PERSON SUBJECT TO A SUBPOENA; ENFORCEMENT.

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(e) DUTIES IN RESPONDING TO A SUBPOENA.

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(g) CONTEMPT. The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

45(c)(3)(A)(ii)

## EXHIBIT A

***Order Granting the Ex Parte Application for Examination of the Custodian of Records of
Cash Cloud, Inc. dba Coin Cloud Pursuant to Fed. R. Bankr. P. 2004 [ECF No. 465]***

**EXHIBIT B**

**DEFINITIONS AND INSTRUCTIONS**

As used herein the following terms have the following meanings:

1.      The terms "You" or "Your" mean and refer to Cash Cloud Inc., and includes all affiliates, agents, employees, accountants, counsel, successors, or any other persons or entities under its control or the control of any of the foregoing or acting on its behalf or on behalf of any of the foregoing, regardless of their affiliation or employment.

2.      The term "BitAccess MPA" means the Master Purchase Agreement between BitAccess Inc. and Coin Cloud dated August 30, 2014, including any amendments thereto.

3.      The term "CCOS" means the software titled Coin Cloud Operating System.

4.      The terms "Coin Cloud," "Debtor," the "Company," and "Cash Cloud" means Cash Cloud, Inc.

5.      The term "Consolidated Financial Statements" means Coin Cloud's Consolidated Financial Statements for the Years Ended December 31, 2021, 2020, and 2019, as prepared by Wolf & Company, P.C. on or about April 7, 2022.

6.      The term "Communication" means and refers to the transfer of information from a person or entity, place, location, format, or medium to another person or entity, place, location, format, or medium, without regard to the means employed to accomplish such transfer of information, but including without limitation oral, written and electronic information transfers; each such information transfer, if interrupted or otherwise separated in time, is a separate communication.

7.      The term "DCM" means Digital Currency Machine.

8.      The term "Document" or "Documents" means every original (any copy of any original and any copy which differs in any way from any original, e.g., because handwritten or "blind" notes appear thereon or are attached thereto) of every writing and recording, computerized records, digital or electronically stored data, photographs, or other memorialization, of every kind

or description, whether handwritten, typed, drawn, sketched, printed or recorded by any physical, mechanical, magnetic, optical, electronic, or electrical means whatsoever, and shall include, by way of illustration only and not by way of limitation, notes, correspondence, communications of any nature, telegrams, memoranda, advertisements, books, records, analyses, notebooks, blueprints, maps, surveys, graphs, charts, plans, summaries or records or transcriptions of personal conversations or statements however made, business forms, labels, appointment books, diaries, routing slips, reports, publications, photographs, films, minutes and other formal or informal memoranda of meetings, transcripts or oral testimony or statements, reports and/or summaries of interviews, negotiations or investigations, agreements and contracts, including all modifications and/or revisions thereof, papers and forms filed with courts or other governmental bodies, notices, messages, calendar entries, brochures, pamphlets, press releases, drafts, revisions of drafts and translations of any documents, tape recordings, audio recordings, video recordings, records and dictation belts to which you or your company now has or has had access to in the past. Any document with any marks on any sheet or side thereof, including by way of illustration only and not by way of limitation, initials, stamped indicia, any comment or any notation of any character and not part of the original text, or any reproduction thereof, is to be considered a separate document.

9.    The term "First Day Declaration" means the Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions dated February 7, 2023, *In re Cash Cloud, Inc. dba Coin Cloud*, No. 23-10423-mkn [Dkt. No. 19].

10.    "Unaudited 2022 Financials" refers to the Excel spreadsheet reflecting Coin Cloud's unaudited Income Statement and Balance Sheet for January 1, 2022 through December 31, 2022, as produced by the Debtor on IntraLinks.

11.    The terms "relate to," "related to," "relating to," "relative to," and "in relation to," include without limitation "refer to," "summarize," "reflect,' "constitute," "concern," "contain," "embody," "mention," "show," "comprise," "evidence," "discuss," "describe," or "pertaining to."

12.     The term "concerning" means and includes without limitation "regarding," "pertaining to," "reflecting," "referring to," "relating to," "containing," "embodying," "mentioning," "evidencing," "constituting," or "describing."

**13.**     The terms "person or entity" and "persons or entities" mean any individual, firm, corporation, joint venture, partnership, association, fund, other organization, or any collection or combination thereof.

## ITEMS TO BE PRODUCED

1.     Any and all agreements and/or engagement letters between Coin Cloud, on the one hand, and Daniel Ayala, on the other.

2.     All Documents and Communications concerning Coin Cloud's sale of DCMs in December 2022.

3.     All Documents and Communications concerning any write-down of the value of DCMs in December 2022.

4.     Any third-party valuation of the Company conducted between January 1, 2018 and present, including but not limited to the valuation report prepared by Preferred Return in or around 2018.

5.     Documents sufficient to describe the difference between "intra-contract" and "extra-contract" leverage with respect to the Company's DeFi investment activity, as described on page 11 of the Consolidated Financial Statements.

6.     All Communications concerning McAlary's review and/or approval of Coin Cloud's Consolidated Financial Statements.

7.     All agreements between Coin Cloud and Jeff Garon, including but not limited to agreements concerning Mr. Garon's employment at Coin Cloud.

8.     All agreements between Coin Cloud and Joshua Schlachter, including but not limited to promissory notes or other loan documents between the Company and Mr. Schlachter, and any agreement reflecting the purchase of Mr. Schlachter's shares in the Company.

9.      All agreements between Coin Cloud and Luis Flores, including but not limited to promissory notes or other loan documents between the Company and Mr. Flores.

10.     All Documents reflecting any loans between Mr. Schlachter and Coin Cloud.

11.     Annual financial statements for CC Vending from its inception to present.

12.     All Documents concerning any transactions between Christopher McAlary or Coin Cloud, on the one hand, and CC Vending, BB Vending LLC, and/or Lo Flow LLC, on the other.

13.     Documents sufficient to describe the transaction history for the Company's Decentralized Financing "wallet."

14.     All Documents concerning repayment of loans made by Coin Cloud to Christopher McAlary, including but not limited to any memoranda or notes made in the Company's accounting system, NetSuite, reflecting such repayment.

15.     Individual accounting ledgers for each loan made to Christopher McAlary by Coin Cloud.

16.     All Documents concerning Mr. McAlary's use, if any, of tax refunds to repay loans made by Coin Cloud to Mr. McAlary.

17.     Documents sufficient to show the Company's calculation of estimated and/or actual tax liability with respect to distributions made to Mr. McAlary between January 1, 2018 and present.

18.     All Documents concerning repayment of loans made by William McAlary to Coin Cloud, including but not limited to any memoranda or notes made in the Company's accounting system reflecting such repayment.

19.     Agendas, resolutions and minutes of the meetings of the Company's Board of Directors, or any committee thereof, and related board materials (including board presentations) for January 1, 2018 through present, including but not limited to Board minutes and/or resolutions reflecting loans made by and/or to Christopher McAlary, Luis Flores, Joshua Schlachter, and/or William McAlary.

20.     All exhibits to the minutes of the meeting of the Company's Board of Directors dated August 9, 2021.

21.     Any amendment(s) made to the Master Loan Agreement between Genesis Global Capital, LLC and the Company dated July 24, 2020.

22.     All Documents and Communications concerning the Company's marketing budget for fiscal year 2021.

23.     All invoices and/or accounting records concerning expenses incurred in connection with the Company's marketing, advertising, and/or promotional activities for fiscal year 2021.

24.     The American Express statements for the Company credit card used by Amondo Redmond.

25.     All Documents and Communications concerning Amondo Redmond's use of the Company's American Express credit card, including but not limited to monthly credit card statements.

26.     All Communications between the Company and Rec Lee concerning Mr. Redmond's employment history.

27.     Copies of all employee handbooks in use at the Company for the time period January 1, 2018 through present.

28.     All agreements between the Company and/or its employees, on the one hand, and any of Josh Hart, Trae Young, A'Ja Wilson, Haley Jones, Joe Pompliano, Dwayne Wade, Spike Lee, Common, and Spencer Dinwiddie, on the other.

29.     All Communications concerning the agreements referenced in Request No. 28.

30.     For the time period January 1, 2016 through present, all agreements between Coin Cloud and any third-party software provider concerning the provision of software to Coin Cloud's DCMs.

31.     All Documents and Communications concerning BitAccess's termination of services under the BitAccess MPA.

32.     All Documents supporting the Company's calculation of damages, if any, caused by BitAccess's termination of services under the BitAccess MPA.

33.     All Documents and Communications concerning the Company's deployment of CCOS on its DCMs following BitAccess's termination of services under the BitAccess MPA.

34.     All insurance policies held by the Company concerning theft and/or hacking of Coin Cloud's DCMs.

35.     Any claims submitted by Coin Cloud in connection with the hack of Coin Cloud's CCOS, as set forth in paragraph 32 of the First Day Declaration.

36.     All Documents supporting the Company's calculation of damages, if any, caused by the hack of Coin Cloud's CCOS, as set forth in paragraph 32 of the First Day Declaration.

37.     All Documents and Communications between Coin Cloud and D&T concerning touch screen issues on the Company's DCMs.

38.     All Documents supporting the Company's calculation of damages, if any, caused by the purported defect in DCMs purchased by Coin Cloud from Cole Kepro International, LLC pursuant to Purchase Order No. 04302021-2 dated April 30, 2021, as alleged in paragraph 30 of the First Day Declaration.

39.     All Communications between Christopher McAlary and prospective purchasers of Coin Cloud's assets for the time period February 7, 2023 through present.

40.     All Documents and Communications concerning any audit, examination, or investigation conducted by the Financial Crimes Enforcement Network of Coin Cloud's business and/or operations, including but not limited to any audit conducted in 2019.

41.     The third-party audit of Coin Cloud's compliance program conducted in or around 2020.

42.     The NetSuite accounting ledgers for the following line items in the Unaudited 2022 Financials:

        a.     In the worksheet "Income Statement," Row 217, titled "70302 – Unrealized Gain/Loss – Holding"

b.   In the worksheet "Balance Sheet," Row 67, titled "13400 – DeFi Wallet

c.   In the worksheet "Balance Sheet," Row 82, titled "15101 – BTM – Machine"

d.   In the worksheet "Balance Sheet," Row 151, titled "23102 – Note Payable Current – Genesis"

e.   In the worksheet "Balance Sheet," Row 204, titled "6301 – Loss on Disposal – Sale."

43.   A corrected copy of the Unaudited 2022 Financials, addressing any errors identified therein, including but not limited to those raised during the May 8, 2023 deposition of Christopher McAlary.

44.   All Documents concerning Mr. McAlary's indemnification claims for legal fees owed to him by the Company.

45.   Documents sufficient to show any and all payments made by Coin Cloud to Vision IT Consulting, Inc. in connection with the Software Development Agreement dated March 1, 2020.

46.   The "gap list" generated in or around Q1 2021 concerning the CCOS, as referenced in the May 15, 2023 deposition of Adam Goldstein.

47.   Any documentation concerning the Company's remediation of gaps identified on the "gap list" generated in or around Q1 2021 concerning the CCOS, as referenced in the May 15, 2023 deposition of Adam Goldstein.

48.   All written presentations given by Adam Goldstein to Christopher McAlary and/or Jeff Garon.

49.   All Documents and Communications concerning Coin Cloud's termination of Reynaldo Reyna in 2021.

## EXHIBIT C

### DECLARATION OF CUSTODIAN OF RECORDS

_____ (*print name*) declares as follows:

1.      I am a United States citizen, and I am over 18 years of age.  This declaration is made of my own personal knowledge except where stated on information and belief.  As to those matters, I believe them to be true.

2.      On or about _____, 2023, Cash Cloud, Inc. dba Coin Cloud ("**Debtor**") was served with a Subpoena to Produce Documents, Information, or Objects, or to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding) (the "Subpoena") in the bankruptcy matter titled *In re Cash Cloud, Inc. dba Coin Cloud*, No. 23-10423-mkn*, Case No. 23-10423-mkn, calling for the production of records in said matter.

3.      Check one of the following:

    a.      _____ I am the _____ (job title) of the **Debtor** and I am authorized to execute this declaration on the **Debtor's** behalf.  The **Debtor** does not have any documents that are responsive to the Subpoena.

    b.      _____ I am the _____ (job title) of the **Debtor**.  To the best of my knowledge, I have made or caused to be made true and exact copies of all of records in the **Debtor's** possession that are responsive to the Subpoena and the reproductions of those records were produced by _____ on _____, 2023.

4.      The originals of the records produced were made at or near the time of the acts, events, conditions, opinions, or diagnoses recited therein by or from information transmitted by a person with knowledge, in the course of a regularly conducted activity of _____.

///


///

<u>Check one of the following</u>:

      a.     If this declaration is executed within the State of Nevada:

\_\_\_\_ I declare under penalty of perjury that the foregoing is true and correct.

      b.     If this declaration is executed outside the State of Nevada:

\_\_\_\_ I declare under penalty of perjury under the law of the State of Nevada that the foregoing is true and correct.

Executed on _____, 2023.

                **CUSTODIAN OF RECORDS FOR**
                **CASH CLOUD, INC. dba COIN CLOUD**

                By: _____

                Its: _____