BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      nkoffroth@foxrothschild.com
      zwilliams@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. BK-23-10423-mkn |
| CASH CLOUD, INC.,<br>dba COIN CLOUD, | Chapter 11 |
| Debtor. | **STIPULATION RE: DIP LENDER FORBEARANCE RE: ALLEGED EVENT OF DEFAULT UNDER DIP LOAN** |

Cash Cloud, Inc. dba Coin Cloud (the "<u>Debtor</u>"), debtor and debtor in possession in the above-captioned case (the "<u>Chapter 11 Case</u>"), by and through its counsel, Fox Rothschild LLP; and CKDL Credit, LLC (the "<u>DIP Lender</u>"), by and through its counsel Berger Singerman LLP and Sylvester & Polednak Ltd., stipulate and agree as follows (the "<u>Stipulation</u>"):

### RECITALS

A.     WHEREAS, on February 7, 2023, the Debtor filed a voluntary petition under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Nevada, commencing the Chapter 11 Case;

B.     WHEREAS, on February 17, 2023, the United States Trustee for the District of Nevada appointed the Committee in the Chapter 11 Case (see ECF No. 131, as amended, ECF

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

No. 177);

C.    WHEREAS, on February 8, 2023, the Debtor filed a *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [ECF No. 35] (the "DIP Financing Motion"), seeking approval of a financing agreement (the "Loan Agreement") and related documents (the "DIP Documents") for a debtor in possession loan in the aggregate amount of $5 million (the "Loan") from the DIP Lender;

D.    WHEREAS, on February 17, 2023, the Bankruptcy Court entered the *Interim Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection and (II) Scheduling Final Hearing* [ECF No. 132], approving the DIP Financing Motion on an interim basis;

E.    WHEREAS, on March 20, 2023, the Bankruptcy Court entered the *Final Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection* [ECF No. 315] (the "Final DIP Order"), approving the DIP Financing Motion on a final basis;

F.    WHEREAS, on May 16, 2023, the DIP Lender sent a "Notice of Event of Default" to the Debtor, asserting the following ("Alleged Default") was an Event of Default (as defined in the Loan Agreement):

> Section 5.2(a) of the Loan Agreement requires Borrower to maintain in full force and effect all licenses and permits, and Section 7.1(b) of the Loan Agreement provides that failure to do so is an event of default if it is not cured within 20 days of Lender's written notice to Borrower.
> . . .
> The Lender has become aware of that certain Emergency Suspension Order issued on April 17, 2023 by the Office of Financial Regulation of the State of Florida in Case Number 114562 (the "Suspension Order") against the Borrower pursuant to Section 120.60(6) of the Florida Statutes, concluding that the Borrower's "operation as a money services business in Florida constitutes an immediate serious danger to the public health, safety, and welfare . . . ." As a result, the Borrower's License Number

146050315.4

2

FT230000313 from the State of Florida [the "<u>Florida License</u>"] has been suspended, and the Borrower is currently prohibited "from engaging in the activity of a money services business . . ."

This letter serves as the Lender's official notice to the Borrower that an Event of Default has occurred as of April 17, 2023 under the Loan Agreement as a result of the Suspension Order. If the Borrower does not cure such Event of Default within 20 days of receipt of this notice, the Borrower will be in default of the Loan, and the Lender may exercise any and all rights available to it under the Loan Documents.

    G.     WHEREAS the Debtor and the DIP Lender (collectively, the "<u>Parties</u>") desire to resolve the foregoing.

    NOW, THEREFORE, the Parties hereby stipulate and agree to the following:

    IT IS STIPULATED AND AGREED that the DIP Lender and Debtor will enter into a forbearance agreement substantially in the form attached hereto as **Exhibit 1** (the "<u>Forbearance Agreement</u>"), providing that the DIP Lender will forbear from exercising any and all rights and remedies on account of the Alleged Default on the terms set forth therein.

    Dated this 2nd day of June 2023.

**FOX ROTHSCHILD LLP**

By: ____/s/Brett A. Axelrod____
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    *Counsel for Debtor*

**BERGER SINGERMAN LLP**

By____/s/ Jordi Guso____
    JORDI GUSO, ESQ.
    *(admitted pro hac vice)*
    1450 Brickell Avenue, Suite 1900
    Miami, FL 33131

    and

**SYLVESTER & POLEDNAK, LTD.**
JEFFREY R. SYLVESTER, ESQ.
Nevada Bar No. 4396
1731 Village Center Circle
Las Vegas, NV 89134
*Attorneys for Interested Party*
*CKDL Credit, LLC*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

146050315.4

# EXHIBIT 1

FORBEARANCE AGREEMENT

by and among

CKDL Credit, LLC, as the Lender, on the one hand,

and, on the other hand,

Cash Cloud Inc., a Nevada corporation, as the Borrower, and

Evive Trading LLC, a Cayman Islands company, Sec Vend LLC, a Nevada limited liability company, and Coin Cloud Brasil Ativos Digitais Ltda., a Brazilian limited company, as the Guarantors

Dated:

May 30, 2023

146213889.2

<u>TABLE OF CONTENTS</u>

1.    Borrower Acknowledgments ......................................................................... 4

    1.1    Recitals........................................................................................................ 4

    1.2    Defaults ...................................................................................................... 5

    1.3    Loan Documents and Loan ........................................................................ 5

    1.4    Obligations ................................................................................................. 5

    1.5    Collateral .................................................................................................... 5

    1.7    Right to Accelerate Obligations................................................................. 5

    1.8    Default Notice ............................................................................................ 5

    1.9    Default Interest Rate .................................................................................. 5

    1.10    No Waiver of Defaults ............................................................................. 5

    1.11    Preservation of Rights and Remedies ..................................................... 5

    1.12    Lender Conduct ....................................................................................... 6

    1.13    Purpose of Forbearance........................................................................... 6

    1.14    Request to Forbear .................................................................................. 6

2.    Lender Forbearance ...................................................................................... 6

    2.1    Forbearance Period .................................................................................... 6

    2.2    Extension of Forbearance Period ............................................................... 6

    2.3    Scope of Forbearance ................................................................................. 6

3.    Conditions Precedent .................................................................................... 6

    3.1    Delivery of Certain Documents ................................................................. 6

    3.2    Forbearance Fee ......................................................................................... 7

    3.3    Professional Fees and Other Expenses ...................................................... 7

4.    Payments During Forbearance Period ........................................................... 7

5.    Representations and Warranties..................................................................... 7

    5.1    Authorization ............................................................................................. 7

1

5.2    Enforceability.................................................................................7

5.3    No Violation...................................................................................7

5.4    No Litigation..................................................................................7

5.5    Financial Condition.......................................................................8

5.6    No Change......................................................................................8

5.7    Accuracy of Information................................................................8

5.8    Advice of Counsel.........................................................................8

6.    Covenants.........................................................................................8

6.1    Compliance with Budget...............................................................8

6.2    Compliance with Loan Documents................................................8

6.3    Sale of Assets.................................................................................8

6.4    Perfection of the Lender's Liens...................................................9

6.5    Other Financial Information..........................................................9

6.6    Obligations to Third Parties..........................................................9

6.7    Notice of Adverse Claims.............................................................9

6.8    Further Assurances........................................................................9

7.    Reaffirmation of Guaranty................................................................9

8.    Release of Claims and Waiver of Defenses......................................9

9.    Indemnification.................................................................................9

10.    Events of Default.............................................................................10

11.    Remedies..........................................................................................10

12.    Bankruptcy.......................................................................................11

12.1    Chapter 11 Case...........................................................................11

12.2    Waiver of Automatic Stay...........................................................11

13.    Miscellaneous..................................................................................11

13.1    Notices..........................................................................................11

13.2    Integration; Modification of Agreement .................................................. 11

13.3    Severability .................................................................................................. 11

13.4    Full Force and Effect ................................................................................... 11

13.5    Successors and Assigns................................................................................ 11

13.6    No Waiver ..................................................................................................... 12

13.7    Cumulative Rights ....................................................................................... 12

13.8    Application of Payments.............................................................................. 12

13.9    Recommendation of Counsel ...................................................................... 12

13.10    Governing Law; Jurisdiction; Venue ........................................................ 12

13.12    Waiver of Jury Trial; Certain Damages .................................................... 13

13.13    Reimbursement of Costs and Expenses ..................................................... 13

13.14    Headings ...................................................................................................... 13

13.15    Counterparts; Electronic Execution .......................................................... 13

## FORBEARANCE AGREEMENT

This Forbearance Agreement (this "<u>Agreement</u>"), dated as of May 30, 2023 (the "<u>Agreement Date</u>"), is made and entered into by and among, on the one hand:

    A.        CKDL Credit, LLC, a Delaware limited liability company (the "<u>Lender</u>"); and, on the other hand,

    B.        Cash Cloud Inc., a Nevada corporation (the "<u>Borrower</u>"), Evive Trading LLC, a Cayman Islands company ("<u>Evive</u>"), Sec Vend LLC, a Nevada limited liability company ("<u>Sec Vend</u>"), and Coin Cloud Brasil Ativos Digitais Ltda., a Brazilian limited company ("<u>Brasil</u>", together with Evive and Sec Vend, together with each subsidiary of them existing on the Closing Date that from time to time after the Closing Date becomes a party thereto, each a "<u>Guarantor</u>" and, collectively, the "<u>Guarantors</u>", and together with the Borrower, the "<u>Borrower Parties</u>").

Each of the Lender and the Borrower Parties are sometimes hereinafter referred to individually as a "<u>Party</u>" and, collectively, as the "<u>Parties</u>". Capitalized terms used herein without definition shall have the meanings ascribed thereto in that certain Senior Secured Super-in-Priority Debtor-in-Possession Loan Agreement dated as of February 23, 2023 by and among the Parties (as amended, amended and restated, supplemented, or otherwise modified from time to time in accordance with its provisions, the "<u>Loan Agreement</u>").

## RECITALS

WHEREAS, the outstanding principal balance under the Loan Agreement owed by Borrower to the Lender in respect of the Loan as of the Agreement Date is more particularly described herein;

WHEREAS, as security for all Obligations, Borrower executed and delivered the Security Documents, granting to the Lender a security interest in the Collateral;

WHEREAS, as a condition precedent to the making of the Loan by the Lender, Guarantors executed and delivered the Guaranty, unconditionally guarantying payment to the Lender of the Obligations owing by Borrower to the Lender under the Loan Agreement;

WHEREAS, Borrower is in default under the Loan Agreement;

WHEREAS, the Borrower Parties have requested the Lender to forbear from exercising its rights and remedies under the Loan Documents; and

WHEREAS, the Lender is willing to forbear from exercising such rights and remedies for a limited period of time, provided that the Borrower Parties comply with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms, and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    <u>Borrower Acknowledgments</u>. The Borrower Parties acknowledge and agree that:

    1.1    <u>Recitals</u>. The above preamble and recitals are true and correct, and incorporated into this Agreement.

4

1.2    Defaults. The following Events of Default have occurred and are continuing under the Loan Agreement: (a) a default has occurred as of May 15, 2023 following the Borrower's failure to cure an Event of Default under Sections 5.2(a) and 7.2(a) of the Loan Agreement.

1.3    Loan Documents and Loan.

(a)    The Loan Documents are legal, valid, binding, and enforceable against the Borrower Parties in accordance with their terms. The terms of the Loan Documents remain unchanged, except as modified pursuant to this Agreement.

(b)    On March 6, 2023, the Lender advanced the Borrower US$2,500,000 under the Loan Agreement, with interest accrued through March 31, 2023 at the Interest Rate in the amount of US$26,042.  On April 5, 2023, the Lender advanced the Borrower US$2,500,000 under the Loan Agreement with interest yet to be capitalized per the terms of the Loan Agreement (i.e., compounded quarterly).  The total outstanding principal balance of the Loan as of the Agreement Date is, therefore, $5,026,041.67, not including interest at the Interest Rate accruing and to be capitalized since April 1, 2023 (or as accruing at the Default Rate, as applicable, for any relevant period of time since such date) (and not including any fees or reimbursement otherwise due to the Lender under the Loan Agreement).

1.4    Obligations. The Obligations are not subject to any setoff, deduction, claim, counterclaim, or defenses of any kind or character whatsoever.

1.5    Collateral. The Lender has valid, enforceable, and perfected security interests in and liens on the Collateral, as to which there are no setoffs, deductions, claims, counterclaims, or defenses of any kind or character whatsoever.

1.6    No Lending Obligation. As a result of the Existing Defaults, the Lender has no obligation to make loans or otherwise extend credit to Borrower under the Loan Documents, except as expressly contemplated under this Agreement.

1.7    Right to Accelerate Obligations. As a result of the Existing Defaults, the Lender has to right to accelerate the maturity and demand immediate payment of the Obligations.

1.8    Default Notice. To the extent required by the Loan Documents, the Borrower Parties have received timely and proper notice of the Existing Defaults and the opportunity to cure (if any), in accordance with Section 7 of the Loan Agreement and the Security Documents, or applicable law, and hereby waive any rights to receive further notice thereof. All applicable cure periods relating to the Existing Defaults have lapsed.

1.9    Default Interest Rate. By reason of the Existing Defaults, the Lender has the right, as of April 17, 2023, to impose interest on the Loan at the Default Rate under Sections 2.4(b) and 7.2 of the Loan Agreement; as such, effective as of April 17, 2023, the Interest Rate under the Loan is the Default Rate until the earlier of (a) repayment in full of all Obligations or (b) the reinstatement by the State of Florida in full all permits, licenses or other approvals of the Borrower to conduct its business and operations in the State of Florida as it did prior to the date of the events underlying the Existing Defaults.

1.10    No Waiver of Defaults. Neither this Agreement, nor any actions taken in accordance with this Agreement or the Loan Documents, including the Lender's continued making of loans to Borrower, if any, shall be construed as a waiver of or consent to the Existing Defaults or any other existing or future defaults under the Loan Documents, as to which the Lender' rights shall remain reserved.

1.11    Preservation of Rights and Remedies. Upon expiration of the Forbearance Period (as defined in Section 2.1), all of the Lender' rights and remedies under the Loan Documents and at law and in equity will be available without restriction or modification, as if any forbearance had not occurred.

5

1.12    <u>Lender Conduct</u>. The Lender has fully and timely performed all of its obligations and duties in compliance with the Loan Documents and applicable law, and has acted reasonably, in good faith, and appropriately under the circumstances.

1.13    <u>Purpose of Forbearance</u>. The purpose of this Agreement is to provide Borrower with a period of time through the Chapter 11 Case to comply with the Chapter 11 Sale Milestones and effectuate the sale of substantially all of the assets of the Borrower in lieu of a Plan of Reorganization, or otherwise expressly pursuant to a Plan of Reorganization, as contemplated under the Loan Agreement and the Final DIP Order including the sale of the Collateral.

1.14    <u>Request to Forbear</u>. The Borrower Parties have requested the Lender' forbearance as provided herein, which will inure to their direct and substantial benefit.

2.    <u>Lender Forbearance</u>.

2.1    <u>Forbearance Period</u>. Subject to compliance by the Borrower Parties with the terms and conditions of this Agreement, the Lender hereby agree to forbear from exercising its rights and remedies against the Borrower Parties under the Loan Documents with respect to the Existing Defaults during the period (the "<u>Forbearance Period</u>") commencing on the Effective Date and ending on the earlier to occur of (i) 14 days following approval by the Bankruptcy Court of the Sale Order and (ii) the date that any Forbearance Default (as defined in Section 10) occurs (the "<u>Termination Date</u>"). The Lender's forbearance, as provided herein, shall immediately and automatically cease without notice or further action on the Termination Date. On and from the Termination Date, the Lender may, in their sole discretion, exercise any and all remedies available to them under the Loan Documents by reason of the occurrence of any Events of Default thereunder or the continuation of any Existing Default. For clarity, the forbearance hereunder applies only to the Lender's rights and remedies in respect of the Existing Defaults, and does not apply to any other Events of Default or resulting defaults of any of the Borrower Parties, whether known or unknown, or whether existing or in the future, under the Loan Documents, with respect to which the Lender may exercise any and all rights and remedies available to it under the Loan Documents, the Final DIP Order and applicable law, notwithstanding this Agreement.

2.2    <u>Extension of Forbearance Period</u>. In the sole discretion of the Lender and without obligation, after the Termination Date, it may renew or extend the Forbearance Period, or grant additional forbearance periods.

2.3    <u>Scope of Forbearance</u>. During the Forbearance Period, the Lender shall not (i) accelerate the maturity of the Obligations or initiate proceedings to collect the Obligations, (ii) initiate any actions in the Chapter 11 Case to enforce its rights or remedies un the Loan Agreement, (iii) seek to repossess or dispose of any of the Collateral, through the Chapter 11 Case or any other applicable judicial proceedings or otherwise, or (iv) initiate proceedings to enforce the Guaranty.

3.    <u>Conditions Precedent</u>. This Agreement will not become effective unless and until the date (the "<u>Effective Date</u>") that each of the following conditions shall have been satisfied in the Lender's sole discretion, unless waived in advance in writing by the Lender:

3.1    <u>Delivery of Certain Documents</u>. The Borrower Parties shall deliver or cause to be delivered the following documents, each in substance and form acceptable to the Lender:

(a)    a copy of this Agreement, duly executed by the Borrower Parties;

(b)    approval of this Agreement by the Bankruptcy Court by Order;

(c)    a certificate dated the Agreement Date, signed by the President or CEO each of the Borrower Parties, containing certified copy of (i) the joint omnibus resolutions duly adopted by the board of directors or managers of each of the Borrower Parties, as applicable, authorizing the execution

6

and delivery of this Agreement and all documents required to be delivered in connection herewith, and all transactions contemplated herein, and (ii) a statement certifying that, other than in respect of the Existing Defaults, the representations and warranties of each of the Borrower Parties under the Loan Documents, as applicable, are true and correct in all respects as of the Agreement Date, and that the Borrower Parties otherwise remain in compliance with all of the terms and conditions of the Loan Documents, as applicable, and reaffirm in their entirety all terms and conditions of the Loan Agreement;

(d)    such additional documents duly executed by the appropriate Borrower Parties, that are required to perfect and evidence the Lender's liens and priority in the Collateral and in any additional collateral granted by the Borrower Parties to secure all Obligations to the Lender hereunder and under the Loan Documents;

(e)    such other documents as the Lender may request with respect to any matter relevant to this Agreement or the transactions contemplated hereby.

3.2    <u>Forbearance Fee</u>. As partial consideration for the Lender's agreement to forbear as set forth herein, the Borrower must pay the Lender a forbearance fee in the amount of US$70,000.00, which shall be paid on the Agreement Date.

3.3    <u>Professional Fees and Other Expenses</u>. As partial consideration for the Lender's agreement to forbear as set forth herein, Borrower must pay all of the Lender's reasonable costs and expenses (including attorneys' fees) incurred in connection with the preparation and negotiation of this Agreement.

3.4    <u>Continuation of Loan Documents and Chapter 11 Case</u>. The Loan Documents remain in full force and effect and will not have been terminated or modified in whole or part. The Chapter 11 Case will not have been dismissed or converted in whole or part as to the Borrower, and the Final DIP Order remain in full force and effect and not modified in whole or part.

4.    <u>Payments During Forbearance Period</u>. During the Forbearance Period, the Borrower shall continue to make the payments on the Loan as required by it under the Loan Agreement.

5.    <u>Representations and Warranties</u>. Each of the Borrower Parties represent and warrant as to itself that all representations and warranties relating to it contained in the Loan Documents are true and correct as of the Agreement Date, except to the extent that such representations and warranties expressly relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects as of such earlier date. The Borrower Parties further represent and warrant to the Lender as follows:

5.1    <u>Authorization</u>. The execution, delivery, and performance of this Agreement are within its corporate power and have been duly authorized by all necessary corporate or limited liability company action, as applicable.

5.2    <u>Enforceability</u>. This Agreement constitutes a valid and legally binding Agreement enforceable against the Borrower Parties in accordance with its terms, subject to the effects of bankruptcy, insolvency, fraudulent conveyance, and similar laws affecting creditors' rights generally and to general principles of equity.

5.3    <u>No Violation</u>. The execution, delivery, and performance of this Agreement do not and will not (a) violate any law, regulation, or court order to which the Borrower Parties are subject, (b) conflict with any of the Borrower Parties' organizational documents, or (c) result in the creation or imposition of any lien, security interest, or encumbrance on any property of the Borrower Parties or any of their subsidiaries, whether now owned or hereafter acquired, other than liens in favor of the Lender.

5.4    <u>No Litigation</u>. No action, suit, litigation, investigation, or proceeding of or before any arbitrator or governmental authority is pending or, to the knowledge of the Borrower Parties, threatened by or against or

affecting any of the Borrower Parties or against any of their property or assets with respect to any of the Loan Documents or any of the transactions contemplated hereby or thereby.

5.5    Financial Condition. All financial statements and reports as delivered by the Borrower Parties to the Lender pursuant to the Loan Agreement, are complete and correct and, present fairly in accordance with GAAP the financial condition of the Borrower, Guarantors, and their consolidated subsidiaries at such date and the consolidated and consolidating results of their operations and changes in financial position for the fiscal period then ended.

5.6    No Change. Except as previously disclosed in writing to the Lender in the financial statement and reports delivered to the Lender pursuant to the Loan Agreement, since the last day of any such statements or reports there has been no material adverse change in the business, operations, assets, or financial or other condition of the Borrower Parties and their subsidiaries taken as a whole.

5.7    Accuracy of Information. All information provided by the Borrower Parties, or any of their respective agents, is true, correct, and complete in all material respects, as of the date provided and does not contain any untrue statements of material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading.

5.8    Advice of Counsel. The Borrower Parties have freely and voluntarily entered into this Agreement with the advice of legal counsel of their choosing or have knowingly waived the right to do so.

5.9    Chapter 11 Sale Milestones. The Borrower has complied with (a) the Chapter 11 Sale Milestones in all respects and on a timely basis, and (b) all of its obligations in the Chapter 11 Case, including pursuant to any Orders, and to the best of its knowledge does not expect that it could not, for any reason, continue to comply therewith during the Forbearance Period.

6.    Covenants. In addition, in order to induce the Lender to forbear from the exercise of their rights and remedies as set forth above, the Borrower Parties hereby covenant and agree that at all times during the Forbearance Period, unless the Lender otherwise consents in writing, as follows:

6.1    Compliance with Budget. The Borrower shall only make expenditures that are in accordance with the Budget, the Borrower may not modify the Budget without the Lender's written consent, and the Borrower shall comply fully with all obligations under the Loan Agreement and the Final DIP Order in respect of the Budget.

6.2    Compliance with Loan Documents. The Borrower Parties shall continue to perform and observe all covenants, terms, and conditions, and other obligations contained in all of the Loan Documents and this Agreement, except: (a) with respect to the Existing Defaults; (b) that Section 5.2(a) of the Loan Agreement shall not require the Borrower Parties to duly observe and comply in all material respects with all laws, regulations, and valid requirements of any governmental authorities applicable to the Borrower Parties' corporate existence, rights and franchises, to the conduct of its business and to its property and assets that relate to any minimum net worth requirement; and (c) that Section 5.2(a) of the Loan Agreement shall not require the Borrower Parties to maintain and keep in full force and effect and comply in all material respects with all licenses and permits necessary to the proper conduct of its business that relate to a minimum net worth requirement.

6.3    Sale of Assets. Other than as contemplated in Section 5.14 of the Loan Agreement, and in such case through the Chapter 11 Case and in compliance with the Loan Agreement and the Final DIP Order, the Borrower (and the other Borrower Parties) shall not sell, convey, transfer, assign, lease, abandon, or otherwise dispose of any of its assets, tangible or intangible (including but not limited to sale, assignment, discount, or other disposition of accounts, contract rights, chattel paper, or general intangibles with or without recourse), without the Lender's prior written consent. If the Lender grants its written consent to any of the foregoing, the Borrower Parties shall cause the buyer or other transferee to pay all proceeds of such disposition directly to

8

the Lender for application to the Obligations, in all cases subject to the Chapter 11 Case, the Final DIP Order and the Loan Agreement.

6.4    <u>Perfection of the Lender's Liens</u>. The Borrower Parties shall execute and deliver to the Lender such documents and take such actions as the Lender deems necessary or advisable to perfect or protect the Liens granted by the Borrower Parties to the Lender including the Priming Liens, if any, which the Lender deems are necessary after the Agreement Date.

6.5    <u>Other Financial Information</u>. The Borrower Parties each shall promptly provide to the Lender such financial information as the Lender may reasonably request.

6.6    <u>Obligations to Third Parties</u>. Borrower shall (a) continue to pay, discharge, or otherwise satisfy at or before maturity or before they become delinquent, as the case may be, all of its liabilities and obligations arising in the ordinary course of business during the Forbearance Period as contemplated by the Budget, and (b) without duplication of the obligations set forth in subclause (a), not default on any of its obligations to any Person

6.7    <u>Notice of Adverse Claims</u>. If any of the Borrower Parties become aware that any Person is asserting any lien, encumbrance, security interest, or adverse claim (including any writ, garnishment, judgment, warrant of attachment, execution, or similar process or any claim of control) against any of them or any of their property (each, an "<u>Adverse Claim</u>"), they shall promptly notify the Lender in writing thereof, and provide to the Lender all documentation and other information it may request regarding such Adverse Claim.

6.8    <u>Further Assurances</u>. Promptly upon the request of the Lender, the Borrower Parties shall take any and all actions of any kind or nature whatsoever, and execute and deliver additional documents, that relate to this Agreement and the transactions contemplated herein.

7.    <u>Reaffirmation of Guaranty</u>. Each Guarantor hereby ratifies and reaffirms (a) the validity, legality, and enforceability of the Guaranty, (b) that its reaffirmation of the Guaranty is a material inducement to the Lender to enter into this Agreement, and (c) that its obligations under the Guaranty shall remain in full force and effect until all the Obligations have been paid in full.

8.    <u>Release of Claims and Waiver of Defenses</u>. In further consideration of the Lender's execution of this Agreement, the Borrower Parties, on behalf of themselves and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, agents, and attorneys hereby forever, fully, unconditionally and irrevocably waive and release the Lender and their successors, assigns, parents, subsidiaries, affiliates, officers, directors, employees, attorneys, and agents and insurers (collectively, the "<u>Releasees</u>") from any and all claims, liabilities, obligations, debts, causes of action (whether at law or in equity or otherwise), defenses, counterclaims, setoffs, of any kind, whether known or unknown, whether liquidated or unliquidated, matured or unmatured, fixed or contingent, directly or indirectly arising out of, connected with, resulting from, or related to any act or omission by the Lender or any other Releasee with respect to the Loan Documents and any Collateral, other than any Lender's or any Releasee's willful acts or omissions, on or before the Agreement Date (collectively, the "<u>Claims</u>"). The Borrower Parties further agree that Borrower shall not commence, institute, or prosecute any lawsuit, action, or other proceeding, whether judicial, administrative, or otherwise, to collect or enforce any Claim.

9.    <u>Indemnification</u>. The Borrower Parties hereby expressly acknowledge, agree, and reaffirm their indemnification obligations to the Lender and the other indemnified Persons as set forth in Section 8.3 of the Loan Agreement. The Borrower Parties further acknowledge, agree, and reaffirm that all such indemnification obligations will survive the expiration of the Forbearance Period and the termination of this Agreement, the Loan Agreement, the other Loan Documents, and the payment in full of the Obligations. Notwithstanding the foregoing, such indemnity shall not be available to the extent that such claims, damages, losses, liabilities, or related expenses contemplated thereunder result solely from a Lender's or other indemnified Person's gross negligence or willful misconduct.

10.    <u>Events of Default</u>. The occurrence of one or more of the following shall constitute a "<u>Forbearance Default</u>" under this Agreement: (a) the occurrence of the Termination Date; (b) any of the Borrower Parties fails to abide by or observe any term, condition, covenant or other provision contained in this Agreement or any document related to or execute in connection with this Agreement; (c) a default or Event of Default occurs under any Loan Document or any document related to or executed in connection with this Agreement or any of the Loan Document (other than the Existing Defaults and as otherwise provided herein, including, without limitation Section 6.2 hereof); (d) any Guarantor ceases to exist or revokes or terminates its liability under the Guaranty, or challenges the validity or enforceability of the Guaranty, or denies any further liability or obligation thereunder, or becomes insolvent, or generally not, or is unable to, or admits in writing its inability to, pay its debts as they become due, or commences any proceeding or action relating to bankruptcy, insolvency, reorganization or other relief of debtors, or to appoint any receiver, or ceases to conduct business in the ordinary course; (e) the Chapter 11 Case is dismissed or converted, in whole or part, or the Final DIP Order is terminated or modified, in whole or part, without the express written consent of the Lender; (f) a tax lien, warrant or levy is imposed on any of the Borrower Parties or any Collateral; (g) any of the Borrower Parties or any of their respective creditors commences a case, proceeding, or other action against the Lender relating to any of the Obligations, Collateral, Loan Documents, this Agreement, or any action or omission by the Lender or their agents in connection with any of the foregoing; (h) any other creditor of any of the Borrower Parties commences an action against any of them seeking to collect any debt, obligation, or liability; (i) any representation or warranty of the Borrower Parties made herein shall be false, misleading, or incorrect in any material respect when made; (j) any of the Borrower Parties takes an action, or any event or condition occurs or exists, which the Lender reasonably believes in good faith is inconsistent in any material respect with any provision of this Agreement, or impairs, or is likely to impair, the prospect of payment or performance by any of them of their obligations its obligations under this Agreement or any of the Loan Documents; or (i) other than in respect of the Existing Defaults, the status of the Borrower's license in the State of Florida as of the Agreement Date, and as set forth in Section 6.2 hereof, the Borrower fails to maintain any permit, license or other approval which could be required for the continued operation of its existing business, irrespective of whether such permit, license or approval could be deemed to be material taken as a whole or individually.

11.    <u>Remedies</u>. Immediately upon the occurrence of a Forbearance Default:

(a)    The Forbearance Period will immediately and automatically cease without notice or further action without notice to, or action by, any Party;

(b)    The Lender will be entitled to exercise any or all of its rights and remedies under the Loan Documents, this Agreement, or any stipulations or other documents executed in connection with or related to this Agreement or any of the Loan Documents, or applicable law, including, without limitation, the appointment of a receiver, or as otherwise provided in the Final DIP Order;

(c)    The Lender's obligation, if any, to advance additional funds or otherwise extend credit to the Borrower under the Loan Agreement will immediately and automatically terminate, without notice to or action by any Party.

(d)    The Borrower shall cooperate with the Lender's repossession of all personal property Collateral, which the Borrower shall immediately surrender to the Lender upon the Lender's request, at the time and place designated by the Lender, and in all cases fully cooperate with the Lender's preparation and filing of applicable Orders with the Bankruptcy Court in the Chapter 11 Case;

(e)    The Lender may, in its sole discretion, commence foreclosure actions with respect to the real property Collateral, if any, and replevin actions with respect to any of the other Collateral, and enforce the Foreclosure Stipulation; or

(f)    The Lender may set off or apply to the payment of any or all of the Obligations, any deposit balances, any or all of the Collateral or proceeds thereof, or other money now or hereafter owed the Lender by the Borrower.

12.    Bankruptcy.

    12.1    Chapter 11 Case. Borrower agrees that it will not move or petition, or cause or encourage others to move or petition, for the dismissal or conversion of the Chapter 11 Case in whole or part, or otherwise to modify the Final DIP Order in whole or part, during the Forbearance Period or otherwise while any Obligations remain outstanding, to the fullest possible under applicable law.

    12.2    Waiver of Automatic Stay.

        (a)    Waiver. Upon an Event of Default under this Agreement, Borrower agrees that all remedies, including the remedies as set forth Section 7.2 of the Loan Agreement are and remain available to the Lender as set forth therein and Borrower waives any defenses thereto including the provisions related to relief from the automatic stay.  The Borrower hereby consents to any modifications to or the lifting of the automatic stay as set forth in Section 7./2(c) of the Loan Agreement and agrees that it shall not, in any manner, contest or otherwise delay any motion filed by the Lender for relief from the automatic stay.

        (b)    Acknowledgment by Borrower. The Borrower expressly acknowledges and agrees that: (i) it is currently in default under the Loan Agreement with no ability to cure such defaults and no defense to any of its obligations under the Loan Agreement; (ii) because of its uncured defaults under the Loan Agreement, the Lender have the absolute and immediate right to pursue its remedies as set in the Loan Agreement;  and (iii) if it is unable to comply with, or otherwise defaults under, this Agreement, it will not have any realistic prospect of an effective reorganization of its business under Chapter 11 of the Bankruptcy Code, including the sale of its business, the sale of all or substantially all of its assets, the restructuring of its assets and liabilities, or a liquidation.

13.    Miscellaneous.

    13.1    Notices. Any notices to any of the Borrower Parties or the Lender with respect to this Agreement shall be given in the manner provided for in Section 8.1 of the Loan Agreement.

    13.2    Integration; Modification of Agreement. This Agreement and the Loan Documents embody the entire understanding between the Parties and supersedes all prior agreements and understandings (whether written or oral) relating to the subject matter hereof and thereof. The terms of this Agreement may not be waived, modified, altered, or amended except by agreement in writing signed by all the Parties. This Agreement will not be construed against any drafter hereof, and rather must be construed as if drafted by all the Parties.

    13.3    Severability. The provisions of this Agreement are severable and if any one term or provision hereof will be held invalid or unenforceable in whole or in part in any jurisdiction, then such invalidity or unenforceability will affect only such term or provision, or applicable part thereof, in such jurisdiction, and will not in any manner affect such term or provision in any other jurisdiction, or any other term or provision of this Agreement in any jurisdiction.

    13.4    Full Force and Effect. The Loan Documents remain unchanged, in full force and effect and continue to govern and control the relationship between the Parties, except to the extent they are inconsistent with, superseded, or expressly modified herein. To the extent of any inconsistency, amendment, or superseding provision, this Agreement will govern and control.

    13.5    Successors and Assigns. This Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, and assigns, provided that the Borrower Parties' rights under this Agreement are not assignable. The Lender may assign its rights and interests in this Agreement, the Loan Documents, and any and all documents executed in connection with or related to this Agreement or the Loan Documents, at any time without the consent of or notice to any of the Borrower Parties.

13.6     No Waiver. No failure to exercise and no delay in exercising, on the part of the Lender any right, remedy, power, or privilege hereunder or under the Loan Documents will operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege. Further, Lender's acceptance of payment on account of the Obligations or other performance by any of the Borrower Parties after the occurrence of an Event of Default shall not be construed as a waiver of such Event of Default, any other Event of Default, or any of the Lender's or the Lender' rights or remedies.

13.7     Cumulative Rights. The rights, remedies, powers, and privileges herein provided are cumulative and not exclusive of any rights, remedies, powers, and privileges provided by law.

13.8     Application of Payments. The Lender may apply any and all payments it receives from any of the Borrower Parties, or any Person, and any proceeds of any Collateral, to such portion of the Obligations as the Lender may determine in its sole discretion.

13.9     Recommendation of Counsel. The Borrower Parties acknowledge that the Lender has recommended that they each consult with counsel prior to execution of this Agreement and represent that they either have done so or have knowingly waived the right to do so despite the express recommendation of the Lender.

13.10     Governing Law; Jurisdiction; Venue. THIS AGREEMENT AND EACH OF THE OTHER LOAN DOCUMENTS ARE CONTRACTS UNDER THE LAWS OF THE STATE OF NEVADA AND WILL FOR ALL PURPOSES BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEVADA (EXCLUDING THE LAWS APPLICABLE TO CONFLICTS OR CHOICE OF LAW WHICH WOULD RESULT IN THE APPLICATION OF THE SUBSTANTIVE LAWS OF ANY OTHER JURISDICTION). DURING THE PENDENCY OF THE CHAPTER 11 CASE, EACH BORROWER HEREBY CONSENTS AND AGREES THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION TO HEAR AND DETERMINE ANY CLAIMS OR DISPUTES BETWEEN THE PARTIES, THE LENDER PERTAINING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, AND TO HEAR ANY MATTER ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS; PROVIDED THAT THE PARTIES ACKNOWLEDGE THAT ANY APPEALS FROM THE BANKRUPTCY COURT MAY HAVE TO BE HEARD BY A COURT OTHER THAN THE BANKRUPTCY COURT; AND PROVIDED FURTHER THAT NOTHING IN THIS AGREEMENT SHALL BE DEEMED OR OPERATE TO PRECLUDE THE LENDER FROM BRINGING SUIT OR TAKING OTHER LEGAL ACTION IN ANY OTHER JURISDICTION TO REALIZE ON THE COLLATERAL OR ANY OTHER SECURITY FOR THE OBLIGATIONS, OR TO ENFORCE A JUDGMENT OR OTHER COURT ORDER IN FAVOR OF THE LENDER. EACH PARTY EXPRESSLY SUBMITS AND CONSENTS IN ADVANCE TO SUCH JURISDICTION IN ANY ACTION OR SUIT COMMENCED IN ANY SUCH COURT, AND EACH PARTY HEREBY WAIVES ANY OBJECTION THAT SUCH PARTY MAY HAVE BASED UPON LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS AND HEREBY CONSENTS TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY SUCH COURT. UPON THE CLOSURE OF THE CHAPTER 11 CASE, EACH PARTY CONSENTS TO THE JURISDICTION OF ANY OF THE FEDERAL OR STATE COURTS LOCATED IN THE CITY OF LAS VEGAS IN THE STATE OF NEVADA IN CONNECTION WITH ANY SUIT TO ENFORCE THE RIGHTS OF THE LENDER UNDER THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS, AND CONSENTS TO SERVICE OF PROCESS IN ANY SUCH SUIT BEING MADE UPON SUCH PARTY BY MAIL AT SUCH PARTY'S ADDRESS AS SET FORTH IN AND IN ACCORDANCE WITH SECTION 13.1. EACH PARTY IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MAY NOW OR HEREAFTER HAVE TO THE LAYING OF VENUE OF ANY SUCH ACTION BROUGHT IN THE COURTS REFERRED TO IN THIS SECTION 13.10 AND IRREVOCABLY WAIVES AND AGREES NOT TO PLEAD OR CLAIM IN ANY SUCH ACTION THAT SUCH ACTION HAS BEEN BROUGHT IN AN INCONVENIENT FORUM.

13.11   <u>Service of Process</u>. The Borrower Parties each hereby irrevocably consent to the service of process by certified or registered mail sent to the address provided for notices in Section 13.1 and agree that nothing herein will affect the right of the Lender to serve process in any other manner permitted by applicable law.

13.12   <u>Waiver of Jury Trial; Certain Damages</u>. EACH PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ITS RIGHT TO A JURY TRIAL WITH RESPECT TO ANY ACTION OR CLAIM ARISING OUT OF ANY DISPUTE IN CONNECTION WITH THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS, ANY RIGHTS OR OBLIGATIONS HEREUNDER OR THEREUNDER, THE PERFORMANCE OF SUCH RIGHTS AND OBLIGATIONS OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF THE LENDER RELATING TO THE ADMINISTRATION OR ENFORCEMENT OF THE LOAN AND THE LOAN DOCUMENTS, AND AGREES THAT IT WILL NOT SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CAN NOT BE OR HAS NOT BEEN WAIVED.  EXCEPT AS PROHIBITED BY LAW, THE PARTIES HEREBY WAIVE ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER IN ANY LITIGATION REFERRED TO IN THE PRECEDING SENTENCE ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES.  EACH OF THE BORROWER PARTIES (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVERS, AND (B) ACKNOWLEDGES THAT THE LENDER HAS BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS TO WHICH IT IS A PARTY BECAUSE OF, AMONG OTHER THINGS, EACH SUCH PARTY'S WAIVERS AND CERTIFICATIONS CONTAINED HEREIN.

13.13   <u>Reimbursement of Costs and Expenses</u>. the Borrower Parties agree to pay all costs, fees, and expenses of the Lender and any Lender (including attorneys' fees), expended or incurred by the Lender or such Lender in connection with the negotiation, preparation, administration, and enforcement of this Agreement, the Loan Documents, the Obligations, any of the Collateral and all fees, costs, and expenses incurred in connection with any bankruptcy or insolvency proceeding (including, without limitation, any adversary proceeding, contested matter, or motion brought by the Lender or any other person). Without in any way limiting the foregoing, Borrower hereby reaffirms its agreement under the applicable Loan Documents to pay or reimburse the Lender and the Lender for certain costs and expenses incurred by the Lender and the Lender. the Borrower Parties are jointly and severally liable for their obligations under this Section 13.13.

13.14   <u>Headings</u>. The section headings in this Agreement are for reference only and shall not affect the interpretation of this Agreement.

13.15   <u>Counterparts; Electronic Execution</u>. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will constitute one and the same instrument.  Counterparts may be delivered via facsimile, electronic mail or other transmission method, and may bear signatures affixed through .pdf or other software including without limitation any electronic signature platform complying with the U.S. federal ESIGN Act of 2000 (e.g., www.docusign.com); any counterpart so delivered will be deemed to have been duly and validly executed and delivered and will be valid and effective for all purposes.

*[Signature Pages Follows]*

13

*[Signature Page of Borrower Parties to Forbearance Agreement]*

IN WITNESS WHEREOF, the undersigned Borrower Parties have duly executed this Agreement under seal as of the Agreement Date.

<u>BORROWER PARTIES</u>

BORROWER:

Cash Cloud Inc., a Nevada

 corporation

By:_____

     Name: Christopher McAlary

     Title: CEO

GUARANTORS:

Evive Trading LLC, a Cayman Islands company

By:_____

     Name: Christopher McAlary

     Title: President

Sec Vend LLC, a Nevada limited liability company

By:_____

     Name: Christopher McAlary

     Title: Manager

14

Coin Cloud Brasil Ativos Digitais Ltda., a Brazilian
limited company


By:_____

      Name: Christopher McAlary

      Title: Manager

*[Signature Page of Lender to Forebearance Agreement]*

IN WITNESS WHEREOF, the Lender has duly executed this Agreement under seal as of the Agreement Date.

<u>LENDER</u>

CKDL Credit, LLC

By:_____

      Name: John Crane

      Title: President

16