BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>    CASH CLOUD, INC.,<br>    d/b/a COIN CLOUD,<br><br>                        Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>***EMERGENCY* MOTION FOR ORDER AUTHORIZING DEBTOR'S ENTRY INTO INTERIM MANAGEMENT SERVICES AGREEMENT PENDING APPROVAL OF SALE OF DEBTOR'S ASSETS**<br><br>Hearing Date:   OST PENDING<br>Hearing Time:   OST PENDING |

Cash Cloud, Inc. (the "Debtor" or "Cash Cloud"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its counsel, Fox Rothschild LLP, hereby move the Court, pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Federal Rules of Bankruptcy Procedure 2002(a)(2) and 60004(a), for entry of an order authorizing the Debtor, *on an emergency basis*, to enter into and perform that certain *Interim Management Services Agreement*, dated June 14, 2023 (the "Management Agreement") with Apollo Management, LLC ("Manager"), an affiliate of Heller Capital Group, LLC ("Heller Capital"), which, together with Genesis Coin, LLC ("Genesis Coin"), are the proposed purchasers of substantially all of the Debtor's assets (the "Heller

1

146515344.3

Assets"), to enable the Manager to have immediate operational control, and to pay specified operational costs associated therewith, for the interim period prior to this Court's approval of the sale of the Heller Assets (the "Sale"), with the acknowledgement of CKDL Credit, LLC (the "DIP Lender").  A true and correct copy of the Management Agreement is annexed as **Exhibit 1**[1] to the *Declaration of Daniel Ayala* (the "Ayala Declaration") filed concurrently herewith.

For the avoidance of doubt, the Debtor intends to file a separate motion for approval of the Sale.  Debtor needs the financial support and backing of Manager, as provided in the Management Agreement, in order to consummate the Sale.  Further, the Management Agreement reduces the liquidity and administrative burden on the Debtor's estate by shifting certain operating costs to the Manager until the Debtor consummates the Sale.

This Emergency Motion is made and based upon the following memorandum of points and authorities, the Ayala Declaration, the papers and pleadings on file with the Court in this Chapter 11 Case, and any oral arguments the Court may entertain at the hearing on the Emergency Motion.

## I.

## JURISDICTION AND VENUE

1. On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case").

2. Debtor is continuing in possession of its property and is operating and managing its business as debtor in possession, pursuant to Bankruptcy Code sections 1107 and 1108.  See generally Chapter 11 Case Docket.

3. On February 17, 2023, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [ECF No. 131], as amended on February 28, 2023 [ECF No. 177].

4. No request has been made for the appointment of a trustee or examiner.

5. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334(a) and (e).

---

[1] The Management Agreement has been substantially agreed to and is in "draft" form. Debtor shall upload execution versions with schedules and exhibits attached before the date of the hearing on this Motion.

2

146515344.3

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1408.

7. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).

## II.

## FACTUAL BACKGROUND

**A.    The Asset Sale**

8. On April 7, 2023, Debtor filed a *Motion for Entry of an Order:(A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially All of the Debtor Assets; (B) Approving Form Notice to Be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [ECF No. 392] (the "Sale Motion").

9. On April 27, 2023, the Court entered the *Order Establishing Bidding Procedures and Related Deadlines* [ECF No. 483] (the "Bid Procedures Order").

10. The Bid Procedures Order approved, among other things, certain bidding procedures (attached thereto as Exhibit A) governing the sale of substantially all of Debtor's assets (the "Assets").

11. Pursuant to the Bid Procedures Order, Debtor conducted an auction for the Assets on June 2, 2023. The bid by Heller Capital for the Heller Assets was selected as one of the winning bids (with bids by Genesis Coin and Mr. Christopher McAlary being selected as winning bids for other assets). See Ayala Declaration ¶ 4.

12. Heller Capital tendered payment of $377,000.00 to Debtor's escrow deposit agent as a good-faith earnest money deposit on June 2, 2023, and an additional earnest money deposit of $50,000.00 on June 5, 2023. See Ayala Declaration ¶ 5.

13. Debtor and Heller Capital intend to consummate the Sale of the Heller Assets under section 363 of the Bankruptcy Code pursuant to terms and conditions of an executed asset purchase agreement (the "APA"), all of which will be subject to Court approval. See Ayala Declaration ¶ 6.

14. Debtor needs the financial support and backing of Manager, as provided in the Management Agreement, in order to consummate the Sale of the Heller Assets. Moreover, the Management Agreement reduces the liquidity and administrative burden on Debtor's estate by shifting certain of the operating costs to the Manager. See Ayala Declaration ¶ 7.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

146515344.3

15. Accordingly, in order to preserve the operational viability and the going concern value of Debtor's business pending the Court's confirmation of the Sale, the Debtor and Manager (each individually a "Party," and collectively the "Parties") have determined that it is in the best interest of the Debtor and its creditors to enter into the Management Agreement, and shift certain operational costs to Manager as of the Effective Date[2]. See Ayala Declaration ¶ 8.

**B.     The Management Agreement**

16. The following is a summary of the central terms of the Management Agreement:[3]

   a. **Effective Date and Term.** This Management Agreement shall be effective upon the Debtor's filing of its motion seeking approval hereof, and shall continue until the Closing Date, but, in any event, not longer than 90 days from the date of execution hereof unless extended in writing by the Parties. Upon execution hereof, Manager shall immediately assume responsibility for and begin paying the expenses identified herein and on Schedules "A" and "B." Following execution and delivery of this Management Agreement, the Parties agree to earnestly negotiate the terms and conditions of the APA in good faith; and they contemplate finalizing and executing the APA on or before June ____, 2023. The period between the Effective Date and the Closing Date is hereafter referred to as the "Interim Management Period."

   b. **Payment.** On the Effective Date, Manager shall tender to Debtor an amount to be mutually agreed by the parties hereto, that is estimated to represent one (1) month's payment of the estimated Schedule "A" and "B" payroll and operational expenses for which Manager is responsible for paying hereunder during the Initial Term. Debtor shall use said funds to pay Schedule "A" and "B" expenses and will simultaneously invoice Manager one (1) month in advance for the anticipated upcoming Schedule "A" and "B" payroll and operational expenses. Said invoices will be emailed to Manager at: AHaller@powercoinco.com with a copy to: AP@powercoinco.com and shall be paid by Manager within seven (7) days thereof. The Parties hereto agree that in the event any of Debtor's employees listed on Schedule "A" resign, or are terminated during the Interim Management Period, Schedules "A" and "B" shall be amended to remove such employee and related payroll expenses prior to the next invoice as required.

   c. **Appointment.** Subject to the terms and conditions set forth herein, Debtor appoints Manager as its designee during the Interim Management Period to take all actions necessary to operate and preserve the Business as a going

---

[2] Capitalized terms not defined herein shall have the meaning associated to them in the Management Agreement.

[3] The following summary is qualified in its entirety by the actual terms of the Interim Management Agreement. To the extent that there is any inconsistency between the terms of this summary and the Interim Management Agreement, the terms of the Interim Management Agreement shall control.

4

146515344.3

concern and preserve and protect the value of the Heller Assets. Any incurrence of additional debt shall require the approval of the Debtor, which consent shall not be unreasonably conditioned, delayed or withheld. Upon execution hereof, Debtor shall ensure that Manager has full access to all operating systems, including without limitation, all software and reporting systems, used by Debtor during the past six (6) months to manage and operate the Business.

    d. **Authority.** Except as otherwise provided, commencing on the Effective Date and continuing during the Interim Management Period, Debtor grants to Manager the right and the sole and exclusive power and authority to take all actions contemplated by this Management Agreement. Without limiting the generality of the foregoing, during the term of this Management Agreement, Manager shall have the authority and power, and, where specified, the duty, to undertake, in the name of the Debtor, the following actions and shall exercise such powers and authority at the cost, expense and risk of Manager, except as otherwise specified herein:

        i. *Performance of Work Assignments.* The Manager shall timely and fully perform its duties hereunder from and after the Effective Date.

        ii. *Debtor's Employees*. During the Interim Management Period, Manager shall manage, and supervise Debtor's employees and shall compensate Debtor for such payroll expenses associated with such employees listed on the attached Schedule "A," in accordance with the payment amounts set forth on Schedule "A." Nothing contained herein shall be deemed to create an employer/employee relationship between Manager and Debtor's employees, nor shall it require Manager to offer future employment to any of Debtor's employees listed on the Schedules hereto. The Parties expressly acknowledge and agree that Manager shall not have any liability or obligation whatsoever under any employee benefit plan.

        iii. *Use of Tangible Personal Property and Inventory.* During the Interim Management Period, Manager shall have full use of the Debtor's real and personal property, subject to payment of the operational expenses set forth on the Schedules hereto, and Manager shall keep all tangible personal and any real property fully insured and maintained at its sole and exclusive expense. Manager shall be able to use from inventory such equipment and supplies as may be necessary or convenient to perform its duties hereunder.

        iv. *Removal of DCMs (Rejected Leases).* During the Interim Management Period, Manager shall be permitted to remove DCMs in the event the location lease associated with such location has been rejected by Debtor (or for the avoidance of doubt, a rejection notice has been sent by Debtor for that location). The destination as to where such DCM will be stored, and the division of the expense associated with removing, moving, and storing such DCM will be determined by

5

agreement of the parties hereto. To the extent the parties are unable to agree, they may seek guidance from the Bankruptcy Court. For the avoidance of doubt, all cash in any such DCM as of the Effective Date hereof, whether or not such DCM is removed, remain the property of Debtor, and nothing contained herein shall require Manager to remove DCMs at such locations. To the extent a cash reconciliation needs to occur (i.e. there is cash in a DCM from periods of time prior to or on the Effective Date and generated after the Effective Date) the reconciliation process in Section 12 shall be utilized to address such cash.

e. **Restrictions Upon Authority of Manager.** Except upon the prior written approval of Debtor and the Court, Manager will not, and has no authority hereunder to: (a) incur debt on behalf of Debtor or permit any lien arising from Manager's management hereunder to encumber any of the Debtor's assets; or (b) institute, pursue, or defend any legal actions or proceedings on behalf of Debtor.

f. **Debtor's Cooperation.** Debtor agrees to (i) maintain in good operational condition all computer-based records, software, databases, and communication systems currently in place; and (ii) otherwise cooperate with Manager in all respects in connection with activities undertaken by Manager in accordance with this Management Agreement.

g. **Control.** Except as otherwise provided in this Management Agreement, Debtor neither reserves, nor will it exercise any control over, the methods or actual manner by which Manager operates the Business or performs hereunder. Manager, as an independent contractor, has sole control over the methods or manner by which the Business is operated hereunder, including but not limited to, recommending Debtor terminate one or more employees listed on Schedule "A" or requiring Debtor remove one or more employees from Schedule "A" for failure to adequately perform. Moreover, Manager is responsible for complying with any Federal, State, or local laws and regulations regarding the operation of the Business and the employment and retention of any employees, including, but not limited to complying with all building codes, statutes, and regulations, including but not limited to Title VII of the Civil Rights Act of 1964 as amended, the Americans with Disabilities Act, Family and Medical Leave Act, Equal Pay Act, Age Discrimination in Employment Act, and all other related and/or applicable federal, state, or municipal codes, licenses, and permits. Notwithstanding Manager's control, any action taken by Manager not expressly set forth in this Management Agreement that would otherwise require Court approval as if such action were taken by the Debtor will still require Court approval from the Court separate and apart from any order approving this Management Agreement. Nothing contained herein shall cause Manager to be deemed to be a successor in interest or be deemed to create a de facto merger with the Debtor.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

146515344.3

h. **Consideration.** Subject to the provisions hereof, Manager agrees to fund and pay the payroll and operating costs set forth on the Schedules hereto during the Interim Management Period. Manager shall not be reimbursed for or receive credit against the Purchase Price for any sum or amount paid hereunder. Any and all Consideration paid hereunder is knowingly and willfully paid by Manager without recourse or opportunity for recovery, refund or reimbursement of any kind, solely and exclusively in an effort by Manager to preserve the operational viability and value of the Heller Assets.

i. **Indemnification.** Manager shall have and hereby accepts full and exclusive responsibility for its own acts and those of its employees and Debtor's employees under Manager's control, agents, vendors, contractors, and subordinates and agrees to indemnify and hold the Debtor harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Manager or any of Manager's employees, agents, vendors, contractors, or other subordinates, or arising out of, or related to the performance of this Management Agreement, the operation of the Business, and/or the use of any premises related hereto. Similarly, Manager shall have no responsibility for the grossly negligent acts of Debtor and/or its employees not under Manager's supervision and/or control or for Debtor's liabilities occurring prior to the Effective Date. That is, Debtor agrees to indemnify and hold Manager harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Debtor or any of Debtor's employees, arising out of, or related to the operation of the Business and performance prior to the Effective Date. The Parties' obligations to indemnify each other under this Section 9 shall survive termination of this Management Agreement.

j. **Results of Operations and Administrative Priority Claim.** Manager is entitled to retain any and all revenue earned or derived from the Business during the Interim Management Period. For the avoidance of doubt, such revenue shall include, subject to Section 12 hereof, all cash in Debtor's DCMs which is attributable to the Interim Management Period.

k. **Use of Trade Name; Ownership of Intellectual Property.** During the Interim Management Period, only Manager may do business under the name and style of the Debtor. Manager's use of the trade names of Debtor is by Debtor's permission only, and the Parties agree Manager has no ownership interest in or to such trade name until Closing. Manager further acknowledges and agrees that all intellectual property developed in the operation of the Business during the Interim Management Period, including but not limited to processes, know-how, data, improvements, trade secrets, logos, trademarks, sales and business plans, business methods, budgets, prices, costs, customers, suppliers, and similar data shall be the property of Debtor until Closing.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

146515344.3

l. **Reconciliation.** The Parties shall come to an agreement as to how cash in Debtor's DCMs shall be reconciled in line with the reconciliation steps outlined in the attached Schedule "C." Should questions and/or disagreements arise, the Parties will promptly seek guidance from the Bankruptcy Court.

m. **Termination.** This Management Agreement may be terminated prior to the expiration of the Term hereof upon the mutual signed agreement of the Parties.

See Ayala Declaration ¶ 9 & Exhibit 1.

### III.

### LEGAL STANDARD

17. This Emergency Motion proposes a transaction outside the ordinary course of business that is subject to section 363(b)(1) of the Bankruptcy Code. That statute provides, in pertinent part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate …." 11 U.S.C. § 363(b)(1).

18. Courts have repeatedly held that a debtor should be authorized to use estate property under section 363(b)(1) when the request is supported by some "rational, articulated business purpose." *See, e.g., Sunwest Bank v. Walter (In re Walter)*, 83 B.R. 14, 19 (B.A.P. 9th Cir. 1988); *In re Verity Health Sys. of Cal., Inc.*, No. 2:18-BK-20151-ER, 2020 WL 223909, at *6 (Bankr. C.D. Cal. Jan. 9, 2020).

19. The test for authorizing use of estate property out of the ordinary course of business is a reasonable business judgment one. *See, e.g., In re Zargar*, No. 2:18-BK-11525-RK, 2018 WL 1779324, at *1 (Bankr. C.D. Cal. Apr. 12, 2018) (showing of exercise of reasonable business judgment needed for approval of use outside ordinary course of business); *In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) (debtor in possession's decision to enter into out of ordinary course transaction "must be based on its reasonable business judgment").

20. In reviewing a request to use property out of the ordinary course of business, "[a] debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice." *In re Cadkey Corp.,* 317 B.R. 19, 22–3 (D. Mass. 2004) (internal quotation marks and citation omitted); *cf. Agarwal v. Pomona Valley Med. Group, Inc. (In re Pomona Valley Med. Group, Inc.),* 476 F.3d 665, 670 (9th Cir. 2007) (court should defer to debtor in possession's decision to reject

8

146515344.3

lease "unless so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice").

### IV.
### RELIEF REQUESTED

**A.    The Court should grant the Emergency Motion and authorize Debtor to implement the Management Agreement on an immediate basis.**

21.    Debtor has a significant rational business purpose for requiring the Management Agreement.  Due to diminishing revenues and increased cash burn, Debtor was forced to cease substantially all operations on June 12, 2023. However, Debtor needs the assistance of various employees to consummate the Sale for the benefit of Debtor, its creditors, and its estate. The Management Agreement enables the Debtor to consummate the Sale, while retaining asset value by allowing Manager to bear the burden of payroll and operation expenses for vital employees. Without the Management Agreement, Debtor would be forced to dismiss all of its employees and wind down operations completely, which could jeopardize the Sale. Moreover, the Management Agreement reduces the liquidity and administrative burden on Debtor's estate by shifting certain of the operating costs to the Manager.  See Ayala Declaration ¶ 10.

22.    Accordingly, in order to preserve the value of Debtor's estate pending the Court's approval of the Sale, and Manager's consummation of its purchase, Debtor has determined that it is in its best interest to enter into the Management Agreement, and allow the Manager to take over payroll and operational expenses and duties as outlined in the Management Agreement. Debtor respectfully suggests that implementing the Management Agreement on an immediate basis makes good business sense, and thus the Court should grant the Emergency Motion.

### V.
### AGREED NATURE OF RELIEF

23.    Debtor's DIP Lender does not oppose the relief requested by this Emergency Motion. See Ayala Declaration ¶ 11.

146515344.3

# VI.

# CONCLUSION

24. WHEREFORE, Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**: (i) granting the Emergency Motion; (ii) authorizing Debtor to enter into and perform under the Management Agreement; and (iii) granting such other and further relief as may be just and proper.

Dated this 16th day of June 2023.

**FOX ROTHSCHILD LLP**

By:    */s/Brett A. Axelrod*
      BRETT A. AXELROD, ESQ.
      Nevada Bar No. 5859
      NICHOLAS A. KOFFROTH, ESQ.
      Nevada Bar No. 16264
      ZACHARY T. WILLIAMS, ESQ.
      Nevada Bar No. 16023
      1980 Festival Plaza Drive, Suite 700
      Las Vegas, Nevada 89135
      *Counsel for Debtor*

146515344.3

# EXHIBIT A

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING DEBTOR'S ENTRY INTO INTERIM MANAGEMENT SERVICES AGREEMENT PENDING APPROVAL OF SALE OF DEBTOR'S ASSETS** |
| | Hearing Date:<br>Hearing Time: |

1

146515344.3

Upon consideration of the *Emergency Motion for Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval of Sale of Debtor's Assets* (the "Motion");[1]

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER HEREBY ORDERED** that Debtor is authorized to enter into and perform under the Management Agreement.

**IT IS FURTHER HEREBY ORDERED** that this Court shall retain jurisdiction to hear and determine any matters that may arise from the implementation, enforcement or interpretation of this Order.

**IT IS SO ORDERED.**

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By:  /s/Brett A. Axelrod
   BRETT A. AXELROD, ESQ.
   Nevada Bar No. 5859
   NICHOLAS A. KOFFROTH, ESQ.
   Nevada Bar No. 16264
   ZACHARY T. WILLIAMS, ESQ.
   Nevada Bar No. 16023
   1980 Festival Plaza Drive, Suite 700
   Las Vegas, Nevada 89135
*Counsel for Debtors*

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Motion.

2

146515344.3

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

By __/s/_____

Trial Attorney for Tracy Hope Davis,
United States Trustee
Foley Federal Building
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, Nevada 89101

### CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

   Trial Attorney
   Office of the United States Trustee

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### #

3

146515344.3