*Execution Version*

# CONFIDENTIALITY AGREEMENT

This Confidentiality Agreement (this "Agreement") is dated and effective as of February 22, 2023 by and between CASH CLOUD INC., d/b/a Coin Cloud, a Domestic Limited Liability Company, and each of its wholly owned or controlled subsidiaries (collectively, the "Company"), and RockitCoin, LLC, a Delaware limited liability company ("Receiving Party").

Whereas, Receiving Party has requested that the Company provide certain information in connection with Receiving Party's consideration of either or both: (i) acquiring certain (or all or substantially all) of the assets of the Company pursuant to section 363 of title 11 of the United States Code, 11 U.S.C. § § 101 et seq. (the "Bankruptcy Code"); and/or (ii) participating in a plan of reorganization under the Bankruptcy Code in respect of the Company (the "Transaction"), and the Company desires to protect the confidentiality of the information that it provides and to have Receiving Party take or abstain from taking certain actions in accordance with the provisions of this Agreement.

Now, therefore, in consideration of the mutual covenants and promises contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Definitions.

    (a) "Evaluation Material" means any information (whether prepared by the Company or its Representatives (as defined herein) or any other person, and regardless of the form of communication, including whether written, oral, observed, or otherwise, and regardless of whether or not marked, designated, or otherwise identified as "confidential,") that is furnished or made available to Receiving Party or any of its Representatives by or on behalf of the Company or any of its Representatives, and all notes, analyses, compilations, studies, interpretations, memoranda, reports, projections, forecasts or other documents or materials (regardless of the form thereof) prepared by Receiving Party or any of its Representatives which contain or otherwise reproduce or reflect, in whole or in part, any such information; provided, that "Evaluation Material" does not include information which:

    (i) is or becomes generally available to the public other than as a result of an act or omission directly or indirectly by Receiving Party or any of its Representatives in violation of this Agreement or any other obligation of confidentiality known by Receiving Party or any of its Representatives;

    (ii) is already in Receiving Party's or any of its Representatives' possession and was not furnished by or on behalf of the Company or its Representatives, provided, that such information is not known by Receiving Party or any of its Representatives to be subject to another confidentiality agreement or other obligation of confidentiality;

    (iii) becomes available to Receiving Party or any of its Representatives on a non-confidential basis from a source other than the Company or any of its Representatives, provided, that Receiving Party and its Representatives do not have knowledge that such information is subject to another confidentiality agreement or other obligation of confidentiality; or

    (iv) is independently developed by Receiving Party or its Representatives without the use of, reference to or reliance upon any information furnished to Receiving Party or any of its Representatives by or on behalf of the Company or any of its Representatives and without any violation of this Agreement or any other obligation of confidentiality known by Receiving Party or any of its Representatives.

*Execution Version*

(b) "Representatives" means, with respect to a party, such party and the directors, officers, employees, agents, or advisors (including attorneys, accountants, bankers, and financial advisers) of such party.

(c) The term "person" means any corporation, company, partnership, joint venture, group, limited liability company, or other entity or individual; the term "affiliate" has the meaning set forth in Rule 12b-2 under the Securities Exchange Act of 1934, as amended (such Act, as amended, being referred to herein as the "Exchange Act"); and the term "including" and correlative terms shall be deemed to be followed by "without limitation".

2. Use and Disclosure of Evaluation Material.

(a) Receiving Party agrees that it and its Representatives shall:

(i) use the Evaluation Material solely for the purpose of evaluating and negotiating the Transaction; and

(ii) except as provided in Section 3 hereof, keep the Evaluation Material confidential and not disclose any Evaluation Material, directly or indirectly, to any other person.

Notwithstanding the foregoing provisions of this sub-section (a), Receiving Party may disclose Evaluation Material to Receiving Party's Representatives who need to know such information for the sole purpose of evaluating and negotiating the Transaction, provided, that Receiving Party's Representatives prior to any such disclosure are informed of the confidential nature of such Evaluation Material and agree (i) to use such information solely for the purpose of evaluating and negotiating the Transaction and (ii) to maintain the confidentiality of such Evaluation Material.

(b) Except as provided in Section 3 hereof, Receiving Party agrees that neither Receiving Party nor any of its Representatives shall disclose to any person (other than Receiving Party's Representatives to the extent permitted hereby) (i) the existence of this Agreement, (ii) the fact that Evaluation Material has been or may be requested, received or made available to it, (iii) that investigations, discussions or negotiations are taking (or have taken) place concerning, or that Receiving Party is considering, a possible engagement, (iv) any of the terms, conditions or other facts with respect thereto, (v) the status of such discussions, or (vi) or any information that could enable such other person to identify the Company or any of its affiliates as a party to any discussions or negotiations with Receiving Party or others (collectively, the "Engagement Information"); provided that Receiving Party may disclose Engagement Information to the extent that such disclosure does not provide sufficient information such that a reasonable person would be able to identify the Company.

(c) Receiving Party shall be directly responsible and liable to the Company for any use or disclosure by any of Receiving Party's Representatives of any Evaluation Material or Engagement Information which, if done by Receiving Party itself, would be a breach of this Agreement, it being understood that such responsibility and liability shall be in addition to and not by way of limitation of any right or remedy the Company may have against Receiving Party's Representatives with respect to such breach. Receiving Party agrees, at its sole expense, to use reasonable efforts to restrain its Representatives from making or allowing to be made prohibited or unauthorized uses or disclosures of Evaluation Material and Engagement Information under this Agreement. Receiving Party shall immediately notify the Company in the event of any breach of this Agreement by Receiving Party or its Representatives and shall fully cooperate with the Company and its Representatives in any effort undertaken by the Disclosing Party or its Representatives to enforce its rights related to any such unauthorized disclosure.

*Execution Version*

(d)  To the extent that any Evaluation Material may include materials subject to the attorney-client privilege, work product doctrine, or any other applicable privilege concerning pending or threatened legal proceedings or governmental investigations, the parties understand and agree that they have a commonality of interest with respect to such matters and it is their mutual desire, intention and understanding that the sharing of such material is not intended to, and shall not, waive or diminish in any way the confidentiality of such material or its continued protection under the attorney-client privilege, work product doctrine, or other applicable privilege. All Evaluation Material that is entitled to protection under the attorney-client privilege, work product doctrine, or other applicable privilege or doctrine shall remain entitled to such protection under these privileges or doctrines, under this Agreement, and under the joint defense doctrine.

(e)  All Evaluation Material shall remain the property of the Company and/or its subsidiaries. No license or, except as provided in Section 2(a) hereof, right to use or other similar rights with respect to the Evaluation Material is granted to Receiving Party or any of its Representatives, by implication or otherwise.

3.  Legally Required Disclosure.

If Receiving Party or any of its Representatives is requested or required (by oral questions, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any Evaluation Material or Engagement Information, Receiving Party shall, to the extent permitted by law, promptly provide the Company with written notice of any such request or requirement (and the terms and conditions thereof). If the Company seeks a protective order or other remedy, Receiving Party shall, at the Company's expense, provide such cooperation as the Company shall reasonably request. If, in the absence of a protective order or other remedy or the receipt by Receiving Party of a waiver from the Company, Receiving Party or any of its Representatives is nonetheless required to disclose Evaluation Material or Engagement Information to any tribunal or other entity, then Receiving Party or such Representative may, without liability hereunder, disclose to such tribunal or other entity that portion (but only that portion) of the Evaluation Material or Engagement Information that is reasonably believed to be legally required to be disclosed, provided, that Receiving Party and such Representative shall, at the Company's sole cost and expense, exercise reasonable efforts to minimize the disclosure of Evaluation Material or Engagement Information and to preserve the confidentiality thereof, including by seeking to obtain a protective order or other assurance that confidential treatment will be accorded to such Evaluation Material or Engagement Information.

4.  Return or Destruction of Evaluation Material.

In the event Receiving Party decides not to proceed with the Transaction, Receiving Party shall promptly inform the Company. At any time upon the written request of the Company (in the Company's sole discretion and for any or no reason), Receiving Party shall promptly (and in any event within ten (10) business days after such request) return to the Company (or, at Receiving Party's option, destroy) all Evaluation Material (and all copies thereof) furnished to Receiving Party or its Representatives by or on behalf of the Company or its Representatives, or prepared by Receiving Party or any of its Representatives, and shall not retain any copies, extracts or other reproductions (including Evaluation Material stored in any computer or other electronic storage device) in whole or in part of such material. Any such destruction shall be certified in writing to the Company by an authorized officer of Receiving Party upon the request of the Company.

Notwithstanding the return or destruction of Evaluation Material, Receiving Party and its affiliates and Representatives shall continue to be bound by their obligations hereunder.

3

*Execution Version*

Notwithstanding the foregoing, it is understood that information in an intangible or electronic format containing Evaluation Material that cannot through reasonable efforts be removed, erased or otherwise deleted from archival systems may be so retained, and that Receiving Party and its Representatives may retain Evaluation Material (accessible only to legal and compliance personnel) solely to the extent required under any applicable law, statute, rule, regulation or established internal compliance or document retention policy; provided that Receiving Party and such Representatives shall continue to be bound by their confidentiality and other obligations hereunder with respect to all such Evaluation Material retained by Receiving Party or its Representatives.

5. Term.

Notwithstanding anything to the contrary stated herein, the obligations set forth in this Agreement shall continue until eighteen (18) months following of the date hereof; provided that for any and all trade secrets included in the Evaluation Material, Receiving Party's confidentiality and non-use obligations hereunder shall last for as long as such Evaluation Material qualifies as a trade secret under applicable federal, state and/or local law (whichever is longer); and provided further that the obligations set forth in Sections 8 and 9 of this Agreement shall survive for the terms specified therein.

6. Trading in Securities.

Receiving Party acknowledges that it is aware (and that its Representatives who receive any Evaluation Material or Engagement Information will be so advised) that applicable securities laws generally prohibit any person who is aware of material, non-public information about a company obtained directly or indirectly from that company from purchasing or selling securities of such company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable that such person is likely to purchase or sell such securities.

7. No Representations and Warranties; Relationship to Definitive Agreement.

(a) Receiving Party understands and agrees that neither the Company nor any of its respective affiliates or Representatives, nor any other person on any of their behalves, has made or is making, and that each of the foregoing hereby disclaims, any representation or warranty, express or implied, as to the accuracy or completeness of any of the Evaluation Material, and Receiving Party represents that neither it nor any of its affiliates or Representatives has relied, is relying, is entitled to rely on or will rely upon any such representation or warranty, in each case except as may be set forth in any definitive agreement with respect to a Transaction. Receiving Party agrees that neither the Company nor any of its respective affiliates or Representatives, nor any other person on any of their behalves, shall have any liability to Receiving Party or any of its affiliates or Representatives or any other person relating to or resulting from any use of the Evaluation Material or any errors therein or omissions therefrom, in each case except as may be set forth in any definitive agreement with respect to a Transaction. Without limiting the generality of the preceding two sentences, the Evaluation Material may include statements, estimates and projections provided by the Company or its affiliates or Representatives with respect to the anticipated future performance of the Company. Such statements, estimates and projections reflect various assumptions made by the Company concerning anticipated results, which assumptions may or may not prove to be correct. No representations are made as to the accuracy of such assumptions, statements, estimates or projections. Only those representations or warranties which are made in a definitive agreement, when, as and if executed, and subject to such limitations and restrictions as may be specified therein, will have any legal effect. For purposes of this Agreement, the term "definitive agreement" does not include any executed letter of intent or any other preliminary written agreement, nor does it include any written or verbal acceptance of any offer or bid made by one party.

*Execution Version*

(b)  No contract or agreement providing for any engagement involving the parties shall be deemed to exist unless and until a definitive agreement has been executed and delivered. Unless and until a definitive agreement regarding an engagement has been executed and delivered, neither party hereto will be under any legal obligation of any kind whatsoever with respect to such an engagement by virtue of this Agreement or any other written or oral communication with respect to such engagement, except for the matters specifically agreed to herein.

(c)  The parties reserve the right, in each's sole discretion, to reject any and all proposals made by either party with regard to an engagement between the parties and to terminate discussions and negotiations at any time and for any reason or no reason. Receiving Party agrees that the Company and its affiliates and Representatives shall be free to conduct any process for any engagement in such manner as they or any of them, in their or their sole discretion, shall determine (including negotiating with other parties and entering into a preliminary or definitive agreement without prior notice to Receiving Party or any other person), and that any procedures relating to such process or engagement may be changed at any time without notice to Receiving Party or any other person.

8. Non-circumvention; Non-Solicitation.

(a)  During the term of this Agreement and at all times thereafter, Receiving Party shall not directly or indirectly circumvent its respective obligations under, or deprive the Company of any benefit intended by, any provision of this Agreement. Without limiting the generality of the foregoing, Receiving Party and its Representatives shall not in any way assist or enable any Person to take any action that the Receiving Party and/or its Representatives is prohibited from taking pursuant to this Agreement.

(b)  Receiving Party acknowledges and agrees that during the consideration of the Transaction and for a period of two (2) years thereafter, it shall not hire, solicit, induce or procure, directly or indirectly, or on behalf of any third party, any employee, consultant or other independent contractor of the Company or any employee, consultant or other independent contractor of the Company with whom Receiving Party comes into contact in connection with the Transaction without the express prior written consent of the Company. Notwithstanding the foregoing, Receiving Party shall not be precluded from soliciting or hiring any such employee: (i) who responds to a general solicitation not targeted at employees of the Company made by Receiving Party or its Representatives in the ordinary course via employment agencies, advertisements, or other publications; or (ii) if such individual has been terminated by the Company prior to the commencement of employment discussions between such individual and Receiving Party or its Representatives.

(c)  The Company acknowledges and agrees that during the consideration of the Transaction and for a period of two (2) years thereafter, it shall not hire, solicit, induce or procure, directly or indirectly, or on behalf of any third party, any employee, consultant or other independent contractor of the Receiving Party or any employee, consultant or other independent contractor of the Receiving Party with whom the Company comes into contact in connection with the Transaction without the express prior written consent of the Receiving Party. Notwithstanding the foregoing, the Company shall not be precluded from soliciting or hiring any such employee: (i) who responds to a general solicitation not targeted at employees of the Receiving Party made by the Company or its Representatives in the ordinary course via employment agencies, advertisements, or other publications; or (ii) if such individual has been terminated by the Receiving Party prior to the commencement of employment discussions between such individual and the Company or its Representatives.

9. Indemnification.

Receiving Party shall defend, indemnify, and hold harmless the Company and its stockholders, members, managers, officers, directors, employees, agents, attorneys, successors, and permitted assigns

*Execution Version*

from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees, in connection with any third party claim, suit, action, or proceeding arising out of or resulting from a breach of any representation, warranty, or obligation set forth in this Agreement by Receiving Party or any of its Representatives. The indemnity obligations set forth herein shall survive the expiration and termination of this Agreement indefinitely.

10. <u>Miscellaneous</u>.

(a) This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to the conflicts of law principles thereof. Each party irrevocably and unconditionally submits to the exclusive jurisdiction of any State or Federal court sitting in the State of Delaware over any suit, action or proceeding arising out of or relating to this Agreement. Each party hereby irrevocably and unconditionally waives any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, THE PARTIES HERETO EACH HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT, COUNTERCLAIM OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT.

(b) Receiving Party recognizes and acknowledges the competitive value and confidential nature of the Evaluation Material and that irreparable damage may result to the Company if information contained therein or derived therefrom is disclosed to any person except as herein provided or is used for any purpose other than the evaluation and negotiation of the Transaction. Receiving Party further acknowledges and agrees that money damages may not be a sufficient remedy for any breach of this Agreement by Receiving Party or any of Receiving Party's Representatives, and that the Company shall be entitled to obtain equitable relief, including injunctive relief and specific performance, as a remedy for any such breach. Receiving Party agrees to waive any requirement for the proof of actual damages or the posting of any bond or other security in connection therewith. Such remedies shall not be deemed to be the exclusive remedies for a breach of this Agreement by Receiving Party or any of Receiving Party's Representatives, but shall be in addition to all of the Company's other remedies available at law or in equity.

(c) This Agreement and any of Receiving Party's rights, powers, privileges, or obligations hereunder may not be assigned in whole or in part by either party without the prior written consent of the other party hereto, and any purported assignment without such consent shall be null and void *ab initio*; provided, however, that either party may, without the prior written consent of the other party hereto, assign all or any of its rights, powers, and privileges hereunder to any person who has acquired a material portion of such party's assets or securities. Subject to the foregoing, this Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns.

(d) This Agreement contains the entire agreement between the parties concerning the subject matter hereof. No provision of this Agreement may be waived or amended except by the express written consent of the parties. No failure or delay by the parties in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or future exercise thereof or the exercise of any other right, power or privilege hereunder. For the avoidance of doubt, the terms of this Agreement shall control over any additional purported confidentiality requirements imposed by any offering memorandum, web-based database, or similar repository of Evaluation Material to which Receiving Party or any of its Representatives is granted access in connection with the evaluation, negotiation, or consummation of the Transaction, notwithstanding acceptance of such an offering memorandum or submission of an electronic signature, "clicking" on an "I Agree" icon, or other indication of assent to such additional confidentiality conditions, it being understood and agreed that the confidentiality obligations with respect to Evaluation Material are exclusively governed by this Agreement

6

*Execution Version*

and may not be enlarged except by a written agreement that is hereafter executed by each of the parties hereto.

(e) All notices and other communications hereunder shall be in writing. Any notice or other communication hereunder shall be deemed duly delivered one (1) business day after it is sent for next-business-day delivery via a reputable nationwide overnight courier service, in each case to the intended recipient as set forth below, or the same day of delivery if sent by both facsimile and email with confirmation of receipt:

If to the Company:

> Chris McAlary
> Cash Cloud, Inc.
> 10190 Covington Cross
> Las Vegas, NV 89144
> Cam02003@gmail.com

With a copy to:

> Brett A. Axelrod, Esq.
> Fox Rothschild LLP
> 1980 Festival Plaza, Suite 700
> Las Vegas, NV 89135
> Email: baxelrod@foxrothschild.com

If to Receiving Party:

> RockItCoin, LLC
> 325 W. Huron Street, Suite 310
> Chicago, IL 60654
> Attention: Michael Dalesandro, CEO
> E-mail: michaeldalesandro@gmail.com

With a copy to:

> Fox Swibel Levin & Carroll, LLP
> 200 W. Madison, Suite 3000
> Chicago, IL 60606
> Attention: David J. Morris, Esq.
> dmorris@foxswibel.com

Either party may give any notice or other communication hereunder using any other means (including personal delivery, expedited courier, messenger service, telecopy, telex, ordinary mail or electronic mail), but no such notice or other communication shall be deemed duly given unless and until the party for whom it is intended actually receives it. Any party may change the address to which notices and other communications hereunder are to be delivered by giving the other party notice in the manner herein set forth.

(f) For the convenience of the parties, this Agreement may be executed by facsimile, email, PDF or via other electronic means and in counterparts, each of which shall be deemed to be an original, and both of which taken together, shall constitute one agreement binding on both parties.

*Execution Version*

(g) The section headings contained in this Agreement are inserted for convenience only and shall not affect in any way the meaning or interpretation of this Agreement.

(h) If any provision or portion of this Agreement is determined to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by applicable law and such invalid or unenforceable provision or portion shall be replaced by a provision or term that is valid and enforceable and that comes closest to expressing the parties' intention with respect to such invalid or unenforceable provision or portion.

[Signature Page Follows]

8

*Execution Version*

This Confidentiality Agreement is executed as of the date first above written.

**THE COMPANY:**

**COIN CLOUD INC.**

By: _____

Name: _____

Title: _____

**THE RECEIVING PARTY:**

**ROCKITCOIN, LLC**

By: _____

Name: Ben Phillips

Title: President/COO

9

[Signature page to Confidentiality Agreement]

**DocuSign**

## Certificate Of Completion

Envelope Id: 1AC67C05C0CE40D69A76716E11F36C2D　　　　　　　　　　　Status: Completed
Subject: Confidentiality Agreement (1)-C.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 9 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 1 | Initials: 0 | Christopher McAlary |
| AutoNav: Enabled | | 10190 Covington Cross Dr. |
| EnvelopeId Stamping: Disabled | | Las Vegas, NV  89144 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | chris@coin.cloud |
| | | IP Address: 20.236.201.103 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Christopher McAlary | Location: DocuSign |
| 2/22/2023 2:35:34 PM | chris@coin.cloud | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Christopher McAlary<br>chris@coin.cloud<br>CEO<br>Coin Cloud<br>Security Level: Email, Account Authentication (None) | *(signature image)*<br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 98.185.124.226 | Sent: 2/22/2023 2:35:35 PM<br>Viewed: 2/22/2023 2:35:48 PM<br>Signed: 2/22/2023 2:37:11 PM<br>Freeform Signing |
| **Electronic Record and Signature Disclosure:**<br>　　Not Offered via DocuSign | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/22/2023 2:35:35 PM |
| Certified Delivered | Security Checked | 2/22/2023 2:35:48 PM |
| Signing Complete | Security Checked | 2/22/2023 2:37:11 PM |
| Completed | Security Checked | 2/22/2023 2:37:11 PM |

| Payment Events | Status | Timestamps |
|---|---|---|