BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      nkoffroth@foxrothschild.com
      zwilliams@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**NOTICE OF FILING OF:**<br><br>**(1) REVISED EXHIBIT 1 TO THE DECLARATION OF DANIEL AYALA FILED IN SUPPORT OF DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR'S ENTRY INTO INTERIM MANAGEMENT SERVICES AGREEMENT PENDING APPROVAL OF SALE OF DEBTOR'S ASSETS [ECF 711]; AND**<br><br>**(2) REVISED EXHIBIT A TO DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR'S ENTRY INTO INTERIM MANAGEMENT SERVICES AGREEMENT PENDING APPROVAL OF SALE OF DEBTOR'S ASSETS [ECF 710]**<br><br>Hearing Date:   June 28, 2023<br>Hearing Time:   10:30 a.m. |

1

146922785.1

Cash Cloud, Inc. (the "Debtor" or "Cash Cloud"), debtor and debtor in possession in the above-captioned chapter 11 case (the "Chapter 11 Case"), by and through its counsel, Fox Rothschild LLP, hereby files the following:

1. Revised **Exhibit 1** to the *Declaration of Daniel Ayala* [ECF No. 711] filed in support of Debtor's *Emergency Motion for Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval of Sale of Debtor's Assets* [ECF No. 710] (the "Motion"); and

2. Revised **Exhibit A** to the Motion, the Proposed *Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval of Sale of Debtor's Assets*.

A copy of revised **Exhibit 1** to the Ayala Declaration and a copy revised **Exhibit A** to the Motion are attached hereto.

Dated this 22nd day of June 2023.

        **FOX ROTHSCHILD LLP**

        By:    */s/Brett A. Axelrod*
             BRETT A. AXELROD, ESQ.
             Nevada Bar No. 5859
             NICHOLAS A. KOFFROTH, ESQ.
             Nevada Bar No. 16264
             ZACHARY T. WILLIAMS, ESQ.
             Nevada Bar No. 16023
             1980 Festival Plaza Drive, Suite 700
             Las Vegas, Nevada 89135
             *Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**REVISED EXHIBIT 1 TO AYALA DECLARATION**

3

146922785.1

**INTERIM MANAGEMENT SERVICES AGREEMENT**

THIS INTERIM MANAGEMENT SERVICES AGREEMENT ("Management Agreement") is dated June ___, 2023, for purposes of reference only, and is made by and between Apollo Management, LLC, a Pennsylvania limited liability company ("Manager") on the one hand; and Cash Cloud, Inc. dba Coin Cloud, a Nevada corporation ("Debtor" or "Coin Cloud") on the other hand.  Debtor and Manager are each referred to herein as "Party" and collectively the "Parties."

**RECITALS**

WHEREAS, Debtor was organized on April 1, 2014, as a Nevada corporation for the purpose of providing a platform for customers to buy and sell digital currencies through Digital Currency Machines ("DCMs") distributed across the United States (the "Business"); and

WHEREAS, on February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"); and

WHEREAS, on April 7, 2023, Debtor filed a *Motion for Entry of an Order:(A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially All of the Debtor Assets; (B) Approving Form Notice to Be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [ECF No. 392] (the "Sale Motion"); and on On April 27, 2023, the Court entered the *Order Establishing Bidding Procedures and Related Deadlines* [ECF No. 483] (the "Bid Procedures Order"); and

WHEREAS, under the Bid Procedures Order, the Court approved Bidding Procedures governing the sale of substantially all of the Debtor's Assets; and

WHEREAS, in accordance with the Bid Procedures Order, Debtor held an auction to sell substantially all of the Debtor's assets on June 2, 2023. Heller Capital Group, LLC, a Delaware limited liability company ("Heller Capital") was a successful bidder at said auction with a bid of $4,200,000.00 ("Purchase Price"), for certain of Debtor's assets (the "Heller Assets"), subject to the terms and conditions of its bid; and

WHEREAS, Heller Capital, as the successful bidder subsequently tendered payment of an initial earnest money deposit in the amount of $377,000.00 to Debtor's escrow deposit agent, Flagstar Bank, N.A. (the "Escrow Agent"), on June 2, 2023, and an additional earnest money deposits of $50,000 on or about June 5, 2023 (collectively, the "Heller Earnest Money Deposits"). The Escrow Agent shall hold the Heller Earnest Money Deposits in trust pending the closing (the "Purchase") or earlier termination of an asset purchase agreement for the Heller Assets.  The Heller Earnest Money Deposits are non-refundable, but remain applicable to the Heller Purchase Price upon Court approval and execution of an asset purchase agreement consummating the agreement between the Parties; and

1

WHEREAS, Debtor and Heller Capital intend to consummate Heller Capital's purchase of the Heller Assets pursuant to terms and conditions of an asset purchase agreement to be executed by the Parties (the "APA") contemplating a sale under Section 363 of the Bankruptcy Code (a "Section 363 Sale"), all of which is subject to Court approval; and

WHEREAS, Manager is an affiliate of Heller Capital, and is the business of providing management and administrative services in and to Heller Capital's existing portfolio companies which own and operate similar digital currency machines; and,

WHEREAS, in order to preserve the operational viability and value of the Heller Assets, including without limitation, the going concern value of the Business pending the Court's approval and granting of Debtor's Motion for Order ("Motion"): a) confirming auction results; b) approving the sale of certain of Debtor's assets, and c) granting related relief ("Order"), and Heller Capital's consummation of the Purchase, the Parties have determined that it is in the best interest of Debtor and its creditors for Manager to assume management and operation of the Business and pay the specified operational costs and specified costs of payroll associated therewith as set forth on Schedules "A" and "B," which payroll costs shall include, without limitation specified costs of payroll which include, *inter alia,* all wages, salaries, benefits, employment taxes and other traditional payroll withholdings associate with and in any way related to the retention of the employees listed on the attached Schedule "A," for an initial term of ninety (90) days, unless otherwise earlier terminated by the closing of the transaction contemplated in the APA (the "Initial Term"); and

WHEREAS, irrespective of the fact that Manager will assume responsibility for the payment of certain salary, wages, benefits and related expenses and expenditures of Debtor's employees as specified on Schedules "A" and "B" hereof, said employees will at all times remain Debtor's sole and exclusive employees unless and until Manager makes a written offer of employment and consummates an employment relationship with any one or more of Debtor's employees which it is fully authorized, but not required, to do.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and in consideration of the foregoing recitals and the mutual covenants, agreements, representations and warranties contained in this Management Agreement, the Parties, intending to be legally bound, agree as follows:

1. Recitals.  The Recitals set forth above are deemed incorporated herein by reference and made a part of this Management Agreement, and the Parties hereto represent that they are true, accurate and correct.

2. Effective Date and Term.  This Management Agreement shall be subject to approval by the Bankruptcy Court, which approval the Debtor is seeking to make effective as of the date of the Debtor's filing of its motion for approval hereof, and shall continue until the Closing Date, but, in any event, not longer than 90 days from the date of execution hereof unless extended in writing by the Parties.  Upon execution hereof, Manager shall immediately assume responsibility for and begin paying the expenses identified herein and on Schedules "A" and "B." Following execution and delivery of this Management Agreement, the Parties agree to earnestly negotiate the terms and conditions of the APA in good faith; and they contemplate finalizing and

executing the APA on or before June 28, 2023. The period between the Effective Date and the Closing Date is hereafter referred to as the "Interim Management Period."

3. <u>Closing of Purchase</u>. The closing of Debtor's sale and Manager's purchase of the Heller Assets shall occur upon the Court's granting of the Motion and the Parties' consummation of the transaction contemplated in an APA which will include among other things, Manager's tender of the Purchase Price and Debtor's delivery of a bill of sale and other associated documents, if any. The date upon which the Closing occurs is hereafter referred to as the "Closing Date."

4. <u>Manager's Performance of Debtor's Obligations During the Term</u>.

a. <u>Payment.</u> On or before June 22, 2023, Manager shall tender to Debtor an amount to be mutually agreed by the parties hereto, that is estimated to represent one (1) month's payment of the estimated Schedule "A" and "B" payroll and operational expenses for which Manager is responsible for paying hereunder during the Initial Term. Debtor shall use said funds to pay Schedule "A" and "B" expenses and will simultaneously invoice Manager one (1) month in advance for the anticipated upcoming Schedule "A" and "B" payroll and operational expenses. Said invoices will be emailed to Manager at: AHaller@powercoinco.com with a copy to: AP@powercoinco.com and shall be paid by Manager within seven (7) days thereof. The Parties hereto agree that in the event any of Debtor's employees listed on Schedule "A" resign, or are terminated during the Interim Management Period, Schedules "A" and "B" shall be amended to remove such employee and related payroll expenses prior to the next invoice as required.

b. <u>Appointment</u>. Subject to the terms and conditions set forth herein, Debtor appoints Manager as its designee during the Interim Management Period to take all actions necessary to operate and preserve the Business as a going concern and preserve and protect the value of the Heller Assets. Any incurrence of additional debt shall require the approval of the Debtor, which consent shall not be unreasonably conditioned, delayed or withheld. Upon execution hereof, Debtor shall ensure that Manager has full access to all operating systems, including without limitation, all software and reporting systems, used by Debtor during the past six (6) months to manage and operate the Business.

c. <u>Authority</u>. Except as otherwise provided, commencing on the Effective Date and continuing during the Interim Management Period, Debtor grants to Manager the right and the sole and exclusive power and authority to take all actions contemplated by this Management Agreement. Without limiting the generality of the foregoing, during the term of this Management Agreement, Manager shall have the authority and power, and, where specified, the duty, to undertake, in the name of the Debtor, the following actions and shall exercise such powers and authority at the cost, expense and risk of Manager, except as otherwise specified herein:

i. <u>Performance of Work Assignments</u>. The Manager shall timely and fully perform its duties hereunder from and after the Effective Date.

ii. <u>Debtor's Employees</u>. During the Interim Management Period, Manager shall manage, and supervise Debtor's employees and shall compensate Debtor for such payroll expenses associated with such employees listed on the attached Schedule "A," in accordance with the payment amounts set forth on Schedule "A." Nothing contained herein shall be deemed to

create an employer/employee relationship between Manager and Debtor's employees, nor shall it require Manager to offer future employment to any of Debtor's employees listed on the Schedules hereto. The Parties expressly acknowledge and agree that Manager shall not have any liability or obligation whatsoever under any employee benefit plan.

iii. <u>Use of Tangible Personal Property and Inventory</u>. During the Interim Management Period, Manager shall have full use of the Debtor's real and personal property, subject to payment of the operational expenses set forth on the Schedules hereto, and Manager shall keep all tangible personal and any real property fully insured and maintained at its sole and exclusive expense. Manager shall be able to use from inventory such equipment and supplies as may be necessary or convenient to perform its duties hereunder.

iv. <u>Removal of DCMs (Rejected Leases)</u>. During the Interim Management Period, Manager shall be permitted to remove DCMs in the event the location lease associated with such location has been rejected by Debtor (or for the avoidance of doubt, a rejection notice has been sent by Debtor for that location). The destination as to where such DCM will be stored, and the division of the expense associated with removing, moving, and storing such DCM will be determined by agreement of the parties hereto. To the extent the parties are unable to agree, they may seek guidance from the Bankruptcy Court. For the avoidance of doubt, all cash in any such DCM as of the Effective Date hereof, whether or not such DCM is removed, remain the property of Debtor, and nothing contained herein shall require Manager to remove DCMs at such locations. To the extent a cash reconciliation needs to occur (i.e. there is cash in a DCM from periods of time prior to or on the Effective Date and generated after the Effective Date) the reconciliation process in Section 12 shall be utilized to address such cash.

5. <u>Restrictions Upon Authority of Manager</u>. Except upon the prior written approval of Debtor and the Court, Manager will not, and has no authority hereunder to: (a) incur debt on behalf of Debtor or permit any lien arising from Manager's management hereunder to encumber any of the Debtor's assets; or (b) institute, pursue, or defend any legal actions or proceedings on behalf of Debtor.

6. <u>Debtor's Cooperation</u>. Debtor agrees to (i) maintain in good operational condition all computer-based records, software, databases, and communication systems currently in place; and (ii) otherwise cooperate with Manager in all respects in connection with activities undertaken by Manager in accordance with this Management Agreement.

7. <u>Control</u>. Except as otherwise provided in this Management Agreement, Debtor neither reserves, nor will it exercise any control over, the methods or actual manner by which Manager operates the Business or performs hereunder. Manager, as an independent contractor, has sole control over the methods or manner by which the Business is operated hereunder, including but not limited to, recommending Debtor terminate one or more employees listed on Schedule "A" or requiring Debtor remove one or more employees from Schedule "A" for failure to adequately perform. Moreover, Manager is responsible for complying with any Federal, State, or local laws and regulations regarding the operation of the Business and the employment and retention of any employees, including, but not limited to complying with all building codes, statutes, and regulations, including but not limited to Title VII of the Civil Rights Act of 1964 as amended, the Americans with Disabilities Act, Family and Medical Leave Act, Equal Pay Act,

Age Discrimination in Employment Act, and all other related and/or applicable federal, state, or municipal codes, licenses, and permits. Notwithstanding Manager's control, any action taken by Manager not expressly set forth in this Management Agreement that would otherwise require Court approval as if such action were taken by the Debtor will still require Court approval from the Court separate and apart from any order approving this Management Agreement. Nothing contained herein shall cause Manager to be deemed to be a successor in interest or be deemed to create a de facto merger with the Debtor.

8. <u>Consideration</u>. Subject to the provisions hereof, Manager agrees to fund and pay the payroll and operating costs set forth on the Schedules hereto during the Interim Management Period. Manager shall not be reimbursed for or receive credit against the Purchase Price for any sum or amount paid hereunder. Any and all Consideration paid hereunder is knowingly and willfully paid by Manager without recourse or opportunity for recovery, refund or reimbursement of any kind, solely and exclusively in an effort by Manager to preserve the operational viability and value of the Heller Assets.

9. <u>Indemnification</u>. Manager shall have and hereby accepts full and exclusive responsibility for its own acts and those of its employees and Debtor's employees under Manager's control, agents, vendors, contractors, and subordinates and agrees to indemnify and hold the Debtor harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Manager or any of Manager's employees, agents, vendors, contractors, or other subordinates, or arising out of, or related to the performance of this Management Agreement, the operation of the Business, and/or the use of any premises related hereto. Similarly, Manager shall have no responsibility for the grossly negligent acts of Debtor and/or its employees not under Manager's supervision and/or control or for Debtor's liabilities occurring prior to the Effective Date. That is, Debtor agrees to indemnify and hold Manager harmless from and reimburse it for any liabilities, claims, demands, costs, and expenses incident to any claim, loss, damage, or injury of any kind to any person or property because of and due to any act or conduct of Debtor or any of Debtor's employees, arising out of, or related to the operation of the Business and performance prior to the Effective Date. The Parties' obligations to indemnify each other under this Section 9 shall survive termination of this Management Agreement.

10. <u>Results of Operations and Administrative Priority Claim</u>. Manager is entitled to retain any and all revenue earned or derived from the Business during the Interim Management Period. For the avoidance of doubt, such revenue shall include, subject to Section 12 hereof, all cash in Debtor's DCMs which is attributable to the Interim Management Period.

11. <u>Use of Trade Name; Ownership of Intellectual Property</u>. During the Interim Management Period, only Manager may do business under the name and style of the Debtor. Manager's use of the trade names of Debtor is by Debtor's permission only, and the Parties agree Manager has no ownership interest in or to such trade name until Closing. Manager further acknowledges and agrees that all intellectual property developed in the operation of the Business during the Interim Management Period, including but not limited to processes, know-how, data, improvements, trade secrets, logos, trademarks, sales and business plans, business methods, budgets, prices, costs, customers, suppliers, and similar data shall be the property of Debtor until Closing.

12. <u>Reconciliation</u>. The Parties shall come to an agreement as to how cash in Debtor's DCMs shall be reconciled in line with the reconciliation steps outlined in the attached Schedule "C." Should questions and/or disagreements arise, the Parties will promptly seek guidance from the Bankruptcy Court.

13. <u>Termination</u>. This Management Agreement may be terminated prior to the expiration of the Term hereof upon the mutual signed agreement of the Parties.

14. <u>Governing Law</u>. The laws of the State of Nevada shall govern the validity and interpretation of this Management Agreement and the performance by the Parties of their respective duties and obligations hereunder, regardless of the place(s) of execution of this Management Agreement or the places of performance.

15. <u>Time of Delivery; Addresses</u>. Any notice, approval, consent, demand, request or communication required or permitted to be given under this Management Agreement shall be in writing, shall be addressed to the address(es) set forth below (as amended from time to time), shall be sent in one of the following manners, and shall be deemed to have been duly given or made as of: (i) if delivered personally by courier or otherwise, then as of the date delivered or if delivery is refused, then as of the date presented; (ii) if sent or mailed by FedEx, UPS, Express Mail or other overnight mail service that provides written confirmation of receipt, then as of the date received; (iii) if mailed by certified U.S. Mail, return receipt requested, then as of the date of actual delivery; or (iv) if sent by facsimile or e-mail address(es), then either (a) as of the date on which the appropriate electronic confirmation of receipt is received by the sending party at or before 5:00 PM. (recipient's time) on any business day, or (b) as of the next business day if the time of the appropriate electronic confirmation of receipt received by the sending party is after 5:00 PM. (recipient's time) or is not a business day; provided, however, that no notice, approval, consent, demand, request or other communication delivered by e-mail shall be of any force or effect unless on its face it clearly states that it is intended to constitute a formal notice, approval, consent, demand, request or other communication under this Management Agreement.   All notices shall be addressed as follows:

| | |
|---|---|
| Manager: | Apollo Management, LLC<br>415 N Prince St, Ste 200,<br>Lancaster, PA 17603<br>Attn: Mr. Daryl Heller, CEO<br>Telephone:  717.431.3162<br>Email:  Dheller@hellercg.com |
| With a copy to: | Heller Capital, LLC<br>415 N Prince St, Ste 200,<br>Lancaster, PA 17603<br>Attn: Erin C. Farabaugh, CLO<br>Telephone:  724.272.7907<br>Email:  efarabaugh@hellercg.com |

|  |  |
|---|---|
| Debtors: | Cash Cloud, Inc.<br>Attn: Stephanie Baldi<br>WeWork, Two Summerlin<br>10845 Griffith Peak Drive<br>Las Vegas, NV 89135<br>Telephone:  (855) 264-2046<br>Email:  Stephanie.Baldi@Coin.Cloud |
| With a copy to: | Fox Rothschild LLP<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, Nevada 89135<br>Attn: Brett A. Axelrod, Esq.<br>Telephone:  (702) 262-6899<br>Email:  baxelrod@foxrothschild.com |

16. <u>Waiver</u>.  Neither a course of conduct nor any waiver by either Party with respect to a default or breach of any provision of this Management Agreement by the other Party shall operate or be construed as a waiver of any subsequent default or breach or as a modification of this Management Agreement.

17. <u>Entire Agreement; Modification</u>.  This Management Agreement, together with a purchase agreement if executed, shall constitute the entire agreement between the parties with respect to its subject matter.  This Management Agreement may be amended only by a written agreement executed by the parties hereto and may not be terminated except as provided herein or by an agreement in writing signed by all parties by their respective duly authorized officers.

18. <u>Miscellaneous</u>.

a. This Management Agreement shall be binding upon the Parties and their respective successors and assigns.  This Management Agreement may be executed by facsimile, .pdf e-mail or in electronic form and in counterparts, in which such case, such faxed or e-mailed signatures shall be deemed originals and all such counterparts, when taken together, shall be deemed a single instrument.  No waiver of any term, provision, breach or default hereunder shall constitute or be construed as a waiver by any party of any other term or provision hereof or any prior or subsequent breach or default or of any breach or default of any other provisions of this Management Agreement.

b. Each of the persons executing this Management Agreement on behalf of each party represents and warrants that said party has the full right, power and authority to execute and deliver this Management Agreement and that each person signing on said party's behalf is authorized to do so.  Debtor represent and warrant to Manager that it has received the consent of any third party, including any lender, needed in order to execute and perform the Management Agreement.

Should a conflict arise between this Management Agreement and the Bankruptcy Court's Order, the terms of the terms of the Order shall control.

7

IN WITNESS WHEREOF, the Parties hereto have executed this Management Agreement as of the date first above written.

| MANAGER: | DEBTOR: |
|---|---|
| APOLLO MANAGEMENT, LLC | CASH CLOUD, INC., dba COIN CLOUD |
| By: _____ | By: _____ |
| Name: <u>Daryl Heller, Authorized Representative</u> | Name: <u>Daniel Ayala, Director</u> |

## SCHEDULE A

Debtor shall invoice Manager for all 100% of the cost of the Debtor employees in the below table based on the corresponding weekly rate.

| First Name | Last Name | Employee # | Job Title | Division | Per Week | Category |
|---|---|---|---|---|---|---|
| Michael | Tomlinson | 141 | Chief Revenue Officer | Sales and Marketing | $ 5,288 | Manager |
| Grant | Friedman | 178 | Director of Private Client Desk | Sales and Marketing | $ 2,885 | Manager |
| Robert | Phillips | 165 | Director of Client Relations | Sales and Marketing | $ 2,885 | Manager |
| Kirsten | Jones | 352 | Growth Marketing Manager | Sales and Marketing | $ 2,115 | Manager |
| Matthew | Litt | 113 | Tier II Client Relation Manager | Sales and Marketing | $ 1,543 | Manager |
| Eric | DeRama | 194 | Tier III Client Relations Manager | Sales and Marketing | $ 1,154 | Manager |
| Wintana | Woldegebriel | 104 | Temporary Sr. Service Operations Manager | Operations | $ 1,538 | Manager |
| Matthew | Allen | 158 | Service Tech Manager | Operations | $ 1,538 | Manager |
| Desmond | Kuresa | 145 | DCM Tech Support | Operations | $ 1,000 | Manager |
| Adam | Feibusch | 262 | Client Experience Representative | Operations | $ 800 | Manager |

Debtor acknowledges that the below employees shall be shared resources during the term of this Agreement and shall invoice Manager for these Debtor employees in accordance with the following timeline.

- Day 1 – 30:    0 % Weekly Cost to Manager
- Day 31 – 60:   50% Weekly Cost to Manager
- Day 61 – 90:   100% Weekly Cost Manager

| First Name | Last Name | Employee # | Job Title | Division | Per Week | Category |
|---|---|---|---|---|---|---|
| Bettina | Hyberger | 355 | Controller | Finance | $ 2,596 | Shared |
| Ronna | Chase | 358 | Accounts Payable Manager | Finance | $ 1,442 | Shared |
| Tracy | Aton | 137 | Senior Director of Cash Logistics | Operations | $ 2,799 | Shared |
| Kimberle | Fruehan | 126 | Senior Cash Logistics Manager | Operations | $ 1,540 | Shared |
| Gustavo | Suarez | 151 | Cash Analyst | Operations | $ 1,058 | Shared |
| Adonay | Measho | 103 | Armored Carrier Specialist | Operations | $ 900 | Shared |
| Jayden-Troy | Campos | 182 | Cash Logistics Specialist | Operations | $ 800 | Shared |
| Tiffany | Walker | 191 | Cash Logistics Specialist | Operations | $ 800 | Shared |

The first payment of Manager pursuant to this Schedule A, made on or before June 22, 2023 will be $82,989.

*The costs and employees in this Schedule may be amended from time to time upon mutual agreement of both Manager and Debtor.*

## SCHEDULE B

**Enterprise Rent:**
June Rent (Pro rata): $193k
July Rent: $341k

**Non-Enterprise Rent:**
June Rent (Pro rata): $77k
July Rent: $137k

**Total:**
June Rent (Pro rata): $270,877.83 (to be paid on or before June 22, 2023)
July Rent: $478k (to be paid in connection with closing on a date agreed to by the parties hereto)

*Schedule B is subject to amendment upon mutual agreement of both parties. Manager will not be obligated for any additional, operational expenses hereunder unless or until Debtor discloses the same in full, and Manager approves the portion of such operational expenses to be inserted on Schedule B in an amendment.*

## SCHEDULE C

*Schedule C is to be mutually agreed upon by the Parties.*

**REVISED EXHIBIT A**
**PROPOSED ORDER**

4

146922785.1

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
         nkoffroth@foxrothschild.com
         zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| In re | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | **ORDER AUTHORIZING DEBTOR'S ENTRY INTO INTERIM MANAGEMENT SERVICES AGREEMENT PENDING APPROVAL OF SALE OF DEBTOR'S ASSETS**<br><br>Hearing Date:  June 28, 2023<br>Hearing Time:  10:30 a.m. |

1

146803183.2

Upon consideration of the *Emergency Motion for Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval of Sale of Debtor's Assets* (the "Motion");[1]

**IT IS HEREBY ORDERED** that the Motion is **GRANTED**.

**IT IS FURTHER HEREBY ORDERED** that Debtor is authorized to enter into and perform under the Management Agreement, effective as of June 15, 2023.

**IT IS FURTHER HEREBY ORDERED** that nothing contained herein or in the Management Agreement shall affect the obligations of the Debtor or the rights of CKDL, LLC, under the *Final Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014(I) (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection* [Docket No. 315] (the "DIP Order") and the DIP Documents (as defined in the DIP Order), including but not limited to indefeasible repayment of all Obligations (as defined in the DIP Order).

**IT IS FURTHER HEREBY ORDERED** that this Court shall retain jurisdiction to hear and determine any matters that may arise from the implementation, enforcement or interpretation of this Order.

**IT IS SO ORDERED.**

Prepared and respectfully submitted by:

**FOX ROTHSCHILD LLP**

By:  */s/Brett A. Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtors*

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Motion.

2

146803183.2

APPROVED/DISAPPROVED:

**OFFICE OF THE UNITED STATES TRUSTEE**

By  /s/

Trial Attorney for Tracy Hope Davis,
United States Trustee
Foley Federal Building
300 Las Vegas Boulevard South, Suite 4300
Las Vegas, Nevada 89101

### CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐ The Court has waived the requirement of approval in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

Trial Attorney
Office of the United States Trustee

☐ I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

### #

3

146803183.2