Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC. dba COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-mkn<br>Chapter 11<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT AND RESERVATION OF RIGHTS IN RESPONSE TO THE DEBTOR'S SALE MOTION AND MSA MOTION** |

The official committee of unsecured creditors (the "Committee") appointed in the above-referenced case (the "Chapter 11 Case"), by and through its undersigned counsel, hereby submits this statement and reservation of rights (the "Statement") in response to (i) the *Amended Motion for Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC, and Genesis Coin, Inc., Free and Clear of Liens Claims,*

*Encumbrances, and Other Interests; (C) Authorizing the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief* [Dkt. No. 730] (the "Sale Motion"); and (ii) *Emergency Motion for Order Authorizing Debtor's Entry into Interim Management Services Agreement Pending Approval of Sale of the Debtor's Assets* [Dkt. No. 710] (the "MSA Motion," and together with the Sale Motion, the "Motions") filed by the above-captioned debtor and debtor-in-possession (the "Debtor"), and respectfully states as follows:

## I.   STATEMENT AND RESERVATION OF RIGHTS

As a general matter, the Committee supports the sale of the Debtor's assets to Heller Capital Group, LLC ("Heller") and Genesis Coin, Inc.  Parties have been negotiating certain aspects of the proposed order approving the sale (the "Proposed Sale Order"), however, the Proposed Sale Order remains in flux and no "final" Proposed Sale Order has been filed.  Thus, the Committee is uncertain what terms the Proposed Sale Order will contain, and accordingly reserves all rights with respect to the terms of the Proposed Sale Order.

Specifically, Enigma Securities Limited ("Enigma") and Genesis Global Holdco, LLC ("Genesis") have requested language in the Proposed Sale Order which would require the Debtor to turn over net sale proceeds to them at closing of the sale.  There is absolutely no requirement or agreement that the Debtor must remit proceeds at that time, and the Debtor should not agree to it now.  To the extent that Enigma and Genesis are entitled to the net proceeds of the sale, those proceeds should be distributed through the Debtor's Plan (as defined below), which governs the treatment of the claims of Enigma and Genesis.  There is no entitlement to an expedited distribution of net proceeds.  This is particularly true in this Chapter 11 Case.  The Committee retains the right to challenge Enigma's liens as well as the right to assert claims under section 506(c) of the Bankruptcy Code.  The exercise of these rights could impact the amount of net proceeds that may ultimately be distributed.  Thus any expedited distribution is premature.  The Committee hereby reserves its rights to object to the Sale Motion and final language of the Proposed Sale Order.

Additionally, while the Committee views approval of the Motions as a positive step

towards an exit from this Chapter 11 Case, the Committee has concerns about the Debtor getting to such an exit. To be clear, a prompt exit of this Chapter 11 Case—with the payment of administrative claims and the Debtor's remaining assets and litigation claims channeled to a litigation trust—is paramount. Although the Committee has not yet received any analysis, recent statements made by the Debtor's professionals suggest that this case cannot afford any further delay.

The Debtor and the Committee have generally worked collaboratively throughout the Chapter 11 Case, but recent events and repetitive issues make the Committee uneasy about case progress and information sharing. These events and issues include, but are not limited to:

- ***Resignation of Chris McAlary.*** The Debtor informed the Committee that Chris McAlary, the Debtor's CEO and director, resigned from the company on or about June 9, 2023. Mr. McAlary's resignation and his postpetition conduct, which the Committee intends to investigate, raise questions about his intent to acquit his fiduciary duties to all of the Debtor's creditors during the course of this case. For example, the Committee is concerned about Mr. McAlary's relationship with non-debtor Coin Cloud Ativos Digitais Brasil LTDA ("Brazil"), which has outstanding payables to the Debtor. The payment of that intercompany claim has been inexplicably delayed over the last month or more. Mr. McAlary has also just filed a *Response to Debtor's Motion to Compel Turnover of Estate Assets* [Dkt. No. 752] (the "Response"), which oddly seeks to protect the rights of Brazil to certain DCMs. Mr. McAlary has not yet purchased Brazil, and his relationship and conduct with respect to Brazil is unclear. The Committee intends to examine whether Mr. McAlary has inappropriately exercised control of Brazil, either directly or indirectly, throughout the course of the Debtor's case. Moreover, since Mr. McAlary's resignation, a host of other company issues are coming to light that shed serious doubt on the propriety of Mr. McAlary's postpetition conduct. The Committee has requested a litigation hold with respect to all business and personal documents and communications within Mr. McAlary's possession, custody, or control, which is pertinent to the Committee's ongoing investigation into the Debtor's financial position and pre- and postpetition conduct, but has not received any response from Mr. McAlary.

- ***Liquidity Analysis.*** The Debtor informed Committee professionals that one of the considerations in the Debtor's decision to shutter operations was the need to dramatically reduce the costs borne by the Debtor's estate. The Committee generally agrees with this proposition—the administrative burn in this case needs to be reduced to a minimum while the Debtor seeks to confirm the *Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023* (the "Plan"). The Committee, however, has not been provided an analysis of the Debtor's liquidity position despite repeated requests over the course of several weeks. Such analysis is crucial to understanding the cash burn in this case and the steps that need to be taken to confirm the Plan. The Debtor's professionals, who have a unique insight into the financial affairs of the Debtor, must share this analysis with the Committee so that the Committee can make informed decisions with respect to the path forward in this case.

- ***Intent to Sell or Encumber Litigation Claims.*** The Debtor has stated an intent to explore the possibility of selling or encumbering estate litigation claims. The Committee's position from the outset has been that these claims form the foundation of any unsecured creditor recovery, which concept is embedded in the Plan, and has informed the Debtor that it is opposed to the disposition of these claims. The Debtor has shuttered operations and seeks approval of a sale of substantially all of its assets, which leaves the Debtor's management with only a limited role and no economic stake remaining in this case. The sale fails to pay over $100 million in unsecured debt, and unsecured creditors are the residual stakeholder in this case. The Debtor should thus defer to the Committee's views on this issue. Any sale of significant estate assets would require a court-ordered process. Where here, confirmation of a Plan channeling litigation claims to a trust for the benefit of unsecured creditors is just over one month away, it is not practical or feasible to implement and run a fair and effective process on such a truncated timeline.

The Committee's view is that the Motions should be approved pending clarification of the Proposed Sale Order. The Committee then stands ready to move this case expeditiously (on the existing timeline) to confirmation on a collaborative basis with the Debtor and implores the Debtor to share the information necessary to facilitate that process. Anything less would subject this case to significant risk.

DATED this 23rd day of June, 2023.

          McDONALD CARANO LLP

          By: */s/ Ryan J. Works*
              Ryan J. Works, Esq. (NSBN 9224)
              Amanda M. Perach, Esq. (NSBN 12399)
              2300 West Sahara Avenue, Suite 1200
              Las Vegas, Nevada 89102
              rworks@mcdonaldcarano.com
              aperach@mcdonaldcarano.com

              John R. Ashmead, Esq.
              Robert J. Gayda, Esq.
              Catherine V. LoTempio, Esq.
              Laura E. Miller, Esq.
              Andrew J. Matott, Esq.
              (*pro hac vice applications granted*)
              SEWARD & KISSEL LLP
              One Battery Park Plaza
              New York, NY 10004
              ashmead@sewkis.com
              gayda@sewkis.com
              lotempio@sewkis.com
              millerl@sewkis.com
              matott@sewkis.com

              *Counsel for Official Committee*
              *of Unsecured Creditors*

McDONALD CARANO
2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966