LOUIS M. BUBALA III
Nevada Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty Street, Suite 700
Reno, Nevada 89501
Telephone: (775) 852-3900
Facsimile: (775) 327-2011
E-Mail: lbubala@kcnvlaw.com

Attorneys for Interested Party
Brookfield Retail Properties, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In re:<br><br>CASH CLOUD, INC.<br> d/b/a COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-MKN<br>Chapter 11<br><br>**LIMITED OBJECTION OF BROOKFIELD LANDLORDS TO DEBTOR'S OMNIBUS MOTIONS FOR ENTRY OF ORDERS APPROVING REJECTION OF UNEXPIRED LEASES**<br><br>Hearing Date: 7/20/2023<br>Hearing Time: 10:30 a.m. |
|---|---|

Landlords affiliated with Brookfield Retail Properties, Inc., the owner or manager of multiple entity landlords (the "Brookfield Landlords") with license agreements with debtor Cash Cloud, Inc. ("Debtor"), respectfully submit this limited objection to the multiple *Omnibus Motions For Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant To 11 U.S.C. § 365(a)* [Docket Nos. 675, 681, 684, 690, 693, 696 and 700].

**PRELIMINARY STATEMENT**

1.   The Brookfield Landlords do not generally object to the proposed rejection of the Leases (as defined below) by the Debtor, as sought by the multiple Omnibus Motions For Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant To 11

19055.1

Page 1 of 11

1  U.S.C. § 365(a) [Docket Nos. 675, 681, 684, 690, 693, 696 and 700], the Brookfield Landlords object to the proposed rejection of Debtor's kiosk license agreements with the Brookfield Landlords, *nunc pro tunc* to the date of filing the Omnibus Rejection Motions, i.e., June 14, 2023.

2.  As discussed below, the Debtor has failed to meet its burden of establishing entitlement to the extraordinary relief requested. Debtor has not returned possession of premises licensed from the Brookfield Landlords and Debtor's Digital Currency Machines ("DCMs") remain at the premises. The Omnibus Rejection Motions do not seek unequivocal rejection of Debtor's license agreements and Debtor's Omnibus Rejection Motions can be withdrawn at any time. The mere avoidance of potential accruals of administrative expense obligations is not enough for the Debtor to overcome these adverse facts, ignored by Debtor's Omnibus Rejection Motions.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

3.  According to Debtor, it was formed for the purpose of providing a platform for customers to buy and sell digital currencies through DCMs located across the United States. DCMs are advanced versions of kiosks commonly referred to as Bitcoin ATMs or BTMs, that enable a consumer to both (a) buy bitcoin as well as 30+ other digital currencies with cash, and (b) sell digital currency for cash. According to Debtor, its DCMs offer two-way functionality, over 30 digital currency options, an advanced user interface and a custom non-custodial companion wallet app (available on the Apple App Store and the Google Play Store). *See, e.g., Declaration of Daniel Ayala In Support of Seventeenth Omnibus Motion, etc.* [Docket No. 701] ("Ayala Declaration," and collectively, with respect to the Omnibus Rejection Motions, the "Ayala Declarations"). Debtor's DCMs are located in gas stations, convenience stores and shopping centers.

4.  The Brookfield Landlords are the licensees of Debtor with respect to numerous license agreements for Debtor's DCMs (each, a "Kiosk License Agreement," and

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

collectively, the "Kiosk Agreements"). The locations that are the subject of the Omnibus Rejection Motions are more specifically identified below (collectively, the "Kiosk Locations").

| Debtor's Store # | Landlord/Shopping Center Name | Omnibus Rejection Motion |
|---|---|---|
| 103772 | Apache Mall, LLC<br>Apache Mall, Rochester, MN | 9th |
| 103817 | Columbia Mall L.L.C.<br>Columbia Mall, Columbia, MO | 11th |
| 103770 | St. Cloud Mall L.L.C.<br>Crossroads Center, St. Cloud, MN | 16th |
| 103823 | GGP-Four Seasons, LP<br>Four Seasons Town Centre, Greensboro, NC | 12th |
| 103830 | Grand Traverse Mall, LLC<br>Grand Traverse Mall, Traverse City, MI | 12th |
| 103822 | RPI Greenville Mall, LP<br>Greenville Mall, Greenville, NC | 15th |
| 103821 | RSE Independence, LLC<br>Independence Mall, Wilmington, NC | 15th |
| 103391 | Oglethorpe Mall L.L.C.<br>Oglethorpe Mall, Savannah, GA | 14th |
| 103767 | Park Mall L.L.C.<br>Park Place, Tucson, AZ | 14th |
| 103538 | Peachtree Mall L.L.C.<br>Peachtree Mall, Columbus, GA | 14th |
| 103819 | Quail Springs Mall, LLC<br>Quail Springs Mall, Oklahoma City, OK | 15th |
| 103820 | Sooner Fashion Mall L.L.C.<br>Sooner Mall, Norman, OK | 16th |
| 103831 | Southland Center, LLC<br>Southland Center, Taylor, MI | 16th |
| 103766 | GGP-Tucson Mall L.L.C.<br>Tucson Mall, Tucson, AZ | 12th |
| 103825 | Visalia Mall, L.P.<br>Visalia Mall, Visalia, CA | 17th |
| 103826 | Woodbridge Center Property LLC<br>Woodbridge Center, Woodbridge, NJ | 17th |

5.  There can be no serious question that each of Debtors' Kiosk Agreements with the Brookfield Landlords is a "lease of real property in a shopping center" as that term is used

19055.1

in section 365(b)(3) of the Bankruptcy Code. *See, e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).[1]

6. On April 7, 2023, the Debtor filed its *Motion for Entry of an Order: (A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially All of the Debtors Assets; (B) Approving Form Notice to Be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [Docket No. 392].

7. On April 27, 2023, the Court entered its *Order Establishing Bidding Procedures and Related Deadlines* [Docket No. 483] (the "Bid Procedures Order").

8. The Bid Procedures Order approved bidding procedures governing the sale of substantially all of Debtor's assets. In accordance with the Bid Procedures Order, the Debtor held an auction for the sale of substantially all of the Debtor's assets on June 2, 2023. The bid presented by Heller Capital Group, LLC ("Heller Capital") for the purchase of certain of the Debtor's assets was selected as one of the winning bids.

9. On June 14, 2023, Debtor filed its Omnibus Rejection Motions.

10. Following the auction, Debtor and Heller Capital entered into that certain "Asset Purchase Agreement," previously filed with Court on June 27, 2023 [Docket No. 779]. The sale transaction with Heller Capital provided by the Asset Purchase Agreement, and related assumption and assignment of Debtor's executory contracts and leases, was approved by this Court's order entered June 30, 2023 [Docket No. 798].

---

[1] While Debtor's Kiosk Agreements with the Brookfield Landlords are styled "License Agreements," Bankruptcy Code section 365(m) provides that "[f]or purposes of this Section 365 and sections 541(b)(2) and 362(b)(10), leases of real property shall include any rental agreement to use real property." *See, e.g.*, *In re Brewer*, 233 B.R. 825, 827-828 (Bankr. E.D. Ark. 1999). Thus, Debtor's Kiosk Agreements are governed by Bankruptcy Code section 365.

11. Heller Capital is assuming certain leases and license agreements, referred to by Debtor as "Host Agreements," and will be purchasing certain of the Debtor's Kiosks, including without limitation, DCM kiosks used in connection with the Contracts and Leases that are subject to the Omnibus Rejection Motions.

12. The Brookfield Landlords are informed that the "Closing Date" for the Heller Capital purchase of a portion of Debtor's assets is not scheduled to close until Friday, July 21, the day *after* the date scheduled for the hearings on the Omnibus Rejection Motions.

**OBJECTION**

**II.    ARGUMENT**

13. Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may … reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

14. Prior to the automatic rejection of a nonresidential real property lease, which occurs after one hundred twenty days (absent an extension) pursuant to Section 365(d)(4), it is well-established that a court order is generally required under Section 365(a) before a rejection can be effective. *See, e.g., In re Arizona Appetito's Stores, Inc.*, 893 F.2d 216, 219 (9th Cir. 1990) ("[U]nder section 365(a), rejection of an unexpired lease can be accomplished only by an order of a bankruptcy court."); *Treat Fitness Center, Inc. v. Rainbow Investment Co. (In re Treat Fitness Center, Inc.)*, 60 B.R. 878, 879 (9th Cir. BAP 1986); *In re Fleming Cos.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003) ("Normally, the effective date of a rejection is a date the Order is entered."); *In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) ("The majority of courts faced with this issue have held that the effective date of rejection is the date of the bankruptcy court's order approving rejection, and that court approval is a condition precedent to effective rejection."); *In re Federated Dep't Stores*, 131 B.R. 808, 814 (S.D. Ohio 1991); *In re Tobago Bay Trading Co.*, 142 B.R. 528,

532 (Bankr. N.D. Ga. 1991) ("Section 365 is designed in part to ensure greater factual certainty as to the date of rejection of a lease."); *In re Worths Stores Corp.*, 130 B.R. 531, 534 (Bankr. E.D. Mo. 1991) ("The necessary clarity and finality to which all parties are entitled are best embodied within an order from the Court."); *see also* Fed. R. Bank. P. 6006.

### B. Retroactive Rejection of the Kiosk Agreements Is Inappropriate

15. Debtor seeks to avoid application of the general rule by seeking to have rejection of the Kiosk Agreements effective as of the filing of the various Omnibus Rejection Motions, i.e., June 14, 2023. The Debtor's Omnibus Rejection Motions rely on *Pacific Shores Development v. At Home Corporation (In re At Home Corp.)*, 392 F.3d 1064 (9th Cir. 2004), asserting that "[b]alancing the equities in this case," approving the rejection of the Kiosk Agreements as of the date of the filing of the Omnibus Rejection Motions is "appropriate."

16. *At Home* identified four non-exclusive factors in considering the appropriateness of retroactive rejection of leases: (1) the immediate filing of the debtor's motion to reject leases; (2) debtor's prompt action in setting that motion for hearing; (3) lack of occupancy of the premises; and (4) the landlord's motivation in opposing rejection of the leases *nunc pro tunc*. *Id*. at 1073-1075.

17. Retroactive rejection of real property has been consistently characterized by bankruptcy courts as extraordinary relief, warranted in exceptional circumstances. *See*, *e.g.*, *In re At Home Corp.*, *supra*, 392 F.3d at 1065, 1071-1072. As the party seeking such extraordinary relief, Debtor has the burden to show that retroactive rejection is appropriate. *See, e.g., TW, Inc. v. Angelastro (In re TW, Inc.)*, 2004 WL 115521 at *2 (D. Del. 2004) ("An order granting relief *nunc pro tunc* is not a remedy that should be given as a matter of course, but only after a balancing of the equities in a particular case."); *In re Fleming Cos., supra,* 304 B.R. at 96 ("Rejection has been allowed *nunc pro tunc* to the date the Motion is filed or the premises is surrendered, whichever is

1  later, <u>only in certain circumstances</u>." [emphasis added]); *In re O'Neil Theatres, Inc.*, 257 B.R. 806,
2  808 (Bankr. E.D. La. 2000) ("The court emphasizes that in most cases a lease will be considered
3  rejected as of the date of entry of the order approving the rejection, and *only in exceptional*
4  *circumstances* … will the court adopt a retroactive date." [Emphasis added.]).

5        18.    Debtor simply has failed to meet its burden of establishing that retroactive
6  rejection is appropriate. Debtor asserts, as its primary ground for retroactive rejection, that
7  "[w]ithout the authority to reject as of the Motion filing date, the Debtor may be forced to incur
8  potential administrative expenses for agreement that provide no benefit to the estate to the
9  detriment of creditors and other stakeholders." Omnibus Rejection Motions at ¶ 25. This assertion
10 is true in virtually every Chapter 11 case, where debtors seek to avoid or minimize post-petition,
11 pre-rejection administrative expense liability for lease obligations under Bankruptcy Code section
12 365(d)(3), and simply does not provide the basis for extraordinary equitable relief. As the
13 bankruptcy court, in denying retroactive rejection, stated in *In re Romacorp, Inc.*, 2006 WL
14 6544088 at *6 (Bankr. N.D. Tex. 2006), "[b]efore the Court should grant the extraordinary remedy
15 of retroactive rejection, something more than the Debtor's business judgment must be shown."
16 Similarly, in *In re TW, supra*, neither the bankruptcy court nor the District Court found the cut off
17 of potential administrative claims to be sufficient cause for *nunc pro tunc* rejection. "Otherwise,
18 the exception would completely engulf and nullify the general rule that rejection is effective on the
19 date of the entry of a court order authorizing rejection." *In re Romacorp*, *supra*; *see also In re Pac-*
20 *West TeleComm, Inc.*, 377 B.R. 119, 125-126 (Bankr. D. Del. 2007) (in denying debtor's motion
21 for an extension of time for performance of post-petition lease obligations, the bankruptcy court
22 observed that "simply being in bankruptcy," "cannot constitute 'cause' under section 365(d)(3).
23 Finding otherwise would make the extension automatic rather than discretionary.") So too, here,
24 finding that a debtor's desire to avoid administrative expense liabilities to be sufficient grounds to

justify the retroactive rejection of leases would convert what bankruptcy courts have characterized as "extraordinary relief" into an ordinary occurrence.

### B.     Debtor Has Not Vacated the Kiosk Locations

19. Debtor has failed to establish certain factual matters that are routinely required before retroactive rejection can be authorized. First, Debtor makes no representations as to the DCMs at the Kiosk Locations – have they been removed or are they still occupying the Kiosk Locations? The Ayala Declarations are silent on this fundamental issue, failing to refer to "possession" or "surrender." The inconvenient fact, ignored by Debtor, is the fact that the DCMs remain at the Kiosk Locations. *See* Declaration of Delaney Clutts, filed contemporaneously. Contrary to Debtor's assertion, this is not a case where "the Counterparties may benefit from rejection as they will be relieved of obligations under the Contracts and/or Leases." Omnibus Rejection Motions at ¶ 25. Even though the Kiosk Locations are only 5-10 square feet, the continued presence of the DCMs prevents use of the space for substitute uses such as ATMs, vending machines or other alternative uses, while the DCMs remain property of the Debtor, protected from removal by the automatic stay. *See*, *e.g.*, *In re Romacorp, Inc.*, *supra*, 2006 WL 65444088 at *5 (in denying retroactive rejection, the bankruptcy court described debtor's failure to remove personal property from the premises as "creat[ing] what may be best deemed an illusory rejection."); *In re TW*, *supra*, 2004 WL 115521 at *6 (noting that, in denying retroactive rejection, the bankruptcy court placed emphasis on the fact that the Premises was not properly surrendered …"); *In re Fleming Cos., supra,* 304 B.R. at 96; *In re Cafeteria Operators, L.P.*, 299 B.R. 384, 394 (Bankr. N.D. Tex. 2003) ("[T]he equities of the case allow rejection retroactive to the later of 1) the date Debtors' Motions were filed or 2) the date the leased space was vacated.").  Thus, the continued presence of Debtor's personal property at the Kiosk Locations prejudices the Brookfield Landlords and distinguishes this case from those authorizing retroactive rejection.

KAEMPFER CROWELL
50 West Liberty Street, Suite 700
Reno, Nevada 89501

20. There is still another factor that warrants denial of the retroactive relief sought by Debtor. Numerous bankruptcy cases speak of the need that surrender of the premises be "unequivocal" in order for retroactive rejection to be appropriate. Indeed, in *In re Player's Poker Club, Inc.*, 636 B.R. 811, 830 (Bankr. C.D. 2022), cited by Debtor for the proposition that retroactive lease rejection survives that Supreme Court's decision in *Roman Catholic Archdiocese v. Acevedo Feliciano*, 589 U.S. ___, 140 S.Ct. 696 (2020), refers to the necessity that a Debtor, in order to receive *nunc pro tunc* approval of lease rejection, must communicate its "unequivocal intention" to reject the subject lease. 636 B.R. at 830; *see also In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (rejection can be effective "when the landlord receives unequivocal notice of the debtor's intent to reject"). Here, Debtor's Omnibus Rejection Motions are not unequivocal. Debtor's Omnibus Rejection Motions make no representation that they cannot be withdrawn prior to the hearing.[2] Indeed, Debtor could potentially have changed the schedules of Assumed Leases between the filing of the Omnibus Rejection Motions and the execution of the Heller Capital Asset Purchase Agreement.[3]

21. Another case decided after *Archdiocese*—*In re Donghia, Inc.*, 2020 WL 2465503 (Bankr. D. Conn. 2020)—is instructive. There, the debtor was a high-end designer and fabricator of custom furniture, with showrooms in seven states. The Chapter 7 trustee sought retroactive rejection of nine commercial leases to the petition date. The trustee in *Donghia,* much like Debtor here, alleged that the leases were not necessary for the administration of the estate and

---

[2] For example, in the District of Delaware, among the nation's busiest bankruptcy courts, it has long been the practice that in order to obtain retroactive rejection of a real property lease to the service date of the motion to reject, the premises must be surrender with an "unequivocal" statement to the landlord and the debtor must acknowledge that it would not have the right to withdraw the motion. *See In re Namco Cybertainment, Inc.*, Case No. 98-173 (PJW) (Bankr. D. Del. April 15, 1998).

[3] Indeed, the "stalking horse" Asset Purchase Agreement [Docket No. 604] provided, at Section 2.6, for such "Schedule Updates."

19055.1

Page 9 of 11

"instead pose a substantial financial burden due to the significant monthly rent obligations owed thereunder." 2020 WL 2465503 at *2. In denying retroactive rejection, and considering and applying the factors in *At Home* the bankruptcy court held:

> It is certainly true that the Trustee now addresses a set of challenging business circumstances, only made worse by the current Covid-19 pandemic. It is also true, however, that while the Debtor has vacated certain locations, and that the Debtor was unable to remove certain personal property at certain locations, perhaps due, in part, to some, but not all Landlords. <u>The uncontested facts are that the Debtor's business and property remain at a number of the leasehold premises</u>. The Landlords bear no demonstrable culpability with regard to Covid-19 impediments nor has the Trustee demonstrated bad motives or acts. The Trustee's need to examine or test the value of the Leases and control the timing of the Motion is inherent in her responsibilities and to bankruptcy process generally. Given the aforementioned, the Trustee can only partially satisfy the factors set out in *In re At Home Corp.*, *supra*, 392 F.3d at 1072, and while those factors represent a mere starting point for the Court's consideration of whether to invoke its equitable powers, the fact that the Trustee cannot meet them in their entirety is dispositive as to the request for retroactive relief in the present Motion.
>
> Under these circumstances, a *nunc pro tunc* order rejecting the Leases as of the petition date is a particularly blunt instrument, one that would seem to disregard, not only the express language of section 365(d)(4), but the factual realities reflected in the record. <u>The invocation of the Court's equitable powers should be reserved for those truly exceptional circumstances</u>, and although the Trustee has made a diligent effort here, these circumstances, predicated on the proffer of the Trustee, do not rise to that level.

*Donghia,* 2020 WL 2465503 at *4 (emphasis added).

22. Debtor has failed to demonstrate the exceptional circumstances necessary for the extraordinary relief sought by the Omnibus Rejection Motions. Debtor has failed to surrender possession of the Kiosk Locations, with the DCMs remaining in place, to the prejudice of the Brookfield Landlords. Under the circumstances, the proposed rejection of the Kiosk Agreements can hardly be characterized as unequivocal. The balance of the equities plainly favors the Brookfield Landlords. The retroactive relief sought by the Debtors' Omnibus Rejection

Motions, as they relate to Debtor's Kiosk Agreements with the Brookfield Landlords, should be denied and the effective date of rejection should be no earlier than the date of entry of any order granting the Omnibus Rejection Motions.

### III. CONCLUSION

For the foregoing reasons, the effective date of the rejection of the Kiosk Agreements should be the date of entry of this Court's order.

KAEMPFER CROWELL

*/s/ Louis M. Bubala III*
Louis M. Bubala III
Counsel to Brookfield Landlords