Goldsmith & Guymon, P.C.
Marjorie A. Guymon, Esq.
Nevada Bar No. 4983
mguymon@goldguylaw.com
2055 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 873-9500
Facsimile: (702) 873-9600
Attorneys for Trangistics, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In Re:

CASH CLOUD, INC.,
dba COIN CLOUD,

    Debtor.

) Case No. BK-23-10423-MKN
) Chapter 11
)
) REPLY IN SUPPORT OF MOTION FOR
) APPROVAL OF ADMINISTRATIVE
) CLAIM
)
) Hearing date: July 20, 2023
) Hearing time: 10:30 a.m.
)

Trangistics, Inc. ("**Trangistics**"), by and through undersigned counsel, hereby replies in support of its Motion, at ECF 652, for Approval of Administrative Claim no. 105 ("**POC 105**"), an in opposition to the Response filed by debtor Cash Cloud, Inc., dba Coin Cloud or Cash Coin ("**Cash Cloud**" or "**Debtor**"), ECF 831 ("**Response**").

### INTRODUCTION

Debtor opposes POC 105 but concedes that it agreed to store its digital ATM machines, referred to as "**Kiosks**," with Trangistics and does not dispute that the cost of the post-petition storage of the Kiosks in warehouse space controlled by Trangistics is an actual or necessary cost or expense of preserving estate assets. Instead, Debtor now quibbles over the amount of rent it agreed to pay to store its Kiosks.

Debtor objects to the rental rate despite having agreed by its conduct to pay $36,800 per month to store the Kiosks and having tried, but failed, to move its Kiosks to less expensive space

Page 1 of 7    REPLY IN SUPPORT OF MOTION FOR APPROVAL OF ADMINISTRATIVE
    CLAIM

115636

elsewhere in the tight Las Vegas warehouse market. The Court should note that the relief Debtor seeks – to "deny" the administrative claim – is not contemplated under the statute or the case law quoted in Debtor's Response.

Because Debtor has failed to rebut the presumption that the agreed-upon monthly warehouse space rental rate of $36,800 was the fair and reasonable rate under the circumstances of this case, the Court should disregard Debtor's Response and allow the claim.

### FURTHER FACTUAL BACKGROUND

Trangistics initially agreed to provide shipping services to Debtor Cash Cloud, and toward that end Jeffrey Gordon, "CFO/COO" of the Debtor, signed a Trangistics "Credit Information Sheet" on behalf of Cash Cloud, with London Molina, who was head of logistics at Cash Cloud, as the primary contact. POC 105, at 2; Declaration of David McGrew ("**McGrew Dec.**") ¶ 3. In or about February 2022 Molina came to McGrew, who is vice-president of Trangistics, with a need to ship and temporarily store more than 1,300 Kiosks. POC 105, at 7; McGrew Dec. ¶¶ 2, 4, 5. Cash Cloud was enmeshed in a dispute with the maker of the Kiosks, Cole Kepro, which was storing the Kiosks, and it needed to quickly move the machines out of Cole Kepro's storage facility.

After some negotiations, Cash Cloud and Trangistics reached an agreement for Trangistics to ship to and temporarily store approximately 914 Kiosks for Cash Cloud at a Warehouse in Sloan, Nevada controlled by Trangistics ("**Warehouse**"). POC 105, at 7; McGrew Dec. ¶ 6. The parties agreed to shipping and two months of storage, for $95,850, with an additional two months of storage. POC 105, at 5-6; McGrew Dec. ¶ 7. The Warehouse benefits from 24/7 security and air-conditioning and, as such, preserves the Kiosks, which contain sensitive electronics. McGrew Dec. ¶ 8. In short, once Molina agreed to store the Kiosks with Trangistics, a bailment was formed under a storage agreement. *See* UCC § 7-209, at Nev. Rev. Stat. § 104.7209.

The conduct of the parties shows that Trangistics billed Cash Cloud $36,800 per month for storage, as acknowledged by Cash Cloud. Declaration of Jim Hall in support of Response ("**Hall**

Dec.") ¶ 10. Specifically, Trangistics began sending invoices to Cash Cloud (dba "Cash Coin") beginning in March 2022 in the amount of $36,800 for storage of the Kiosks. Declaration of Anne Rudinsky ("**Rudinsky Dec.**") ¶¶ 3-5 and Exhibit A thereto, at 1-10, 14, 22, 27, 40, 65, 66.

Although its counsel for litigation purposes has complained Trangistics allegedly charged excessive rent on the Warehouse space, **no evidence** has been presented showing that Cash Cloud ever objected to paying $36,800 per month to store its Kiosks. Hall Dec. ¶ 12; Response, at 4-5. It simply failed to make certain of the rent payment.

On or about December 8, 2022, Molina contacted McGrew, stating that he "need[ed]" to move "approximately 900" Kiosks to "to an undermined new location in [Las V]egas," and the parties negotiated some proposed details, but nothing came to pass. POC 105, at 8-10; McGrew Dec. ¶¶ 9-10. Cash Cloud admits that it **still** is storing its Kiosks with Trangistics at the Warehouse. Hall Dec. ¶ 9; Response, at 2:23.

Meanwhile, Cash Cloud made one monthly space rent payment in the amount of $38,600 in or about April 2023, or post-petition. Hall Dec. ¶¶ 9, 12 & Exhibit 1 thereto, at 1; Rudinsky Dec. ¶ 7. Again, Cash Cloud did not object to the rental rate or in any way dispute the invoice for said sum.

The within claim is in the amount of $154,400 for the period of February 7, 2023 (the petition date) through May 6, 2023, i.e. three months of rent at $36,800 per month, and is a continuing expense. POS 105, at 1 ¶¶ 1, 3. As of July 6, 2023, five months had passed since the petition date, but Cash Cloud has made one post-petition payment in the amount of $38,600, which can be applied to the claim, leaving the rent for **four months** still to be paid. The total remaining to be paid on this claim, $38,600 x 4, is **$154,400**.[1] Rudinsky Dec. ¶ 6 and Exhibit B thereto. Trangistics respectfully requests that the Court allow this administrative claim and order Cash Cloud pay said sum to Trangistics forthwith.

---

[1] POC 105 contains a mathematical error that until now neither party seems to have noted. *See* POC 105, at 1 ¶ 1 (miscalculating $38,600 per months for the three-month period beginning February 7, 2023 and ending May 6, 2023).

Page 3 of 7    REPLY IN SUPPORT OF MOTION FOR APPROVAL OF ADMINISTRATIVE CLAIM

115636

## ARGUMENT

### I. Cash Cloud does not dispute that the amount claimed was actual and necessary to preserve the estate.

"Section 503 of the Bankruptcy Code provides that, '[a]fter notice and a hearing, there shall be allowed administrative expenses, . . . including—(1)(A) the actual, necessary costs and expenses of preserving the estate . . . .'" *In re Phila. Newspapers*, 690 F.3d 161, 172 (3d Cir. 2012) (citing 11 U.S.C. § 503(b)). "In general, an administrative expense may be allowed under § 503(b)(1)(A) when the claimant shows the debt was actual and necessary to preserve the estate." *In re Gilman*, 646 B.R. 277, 288 (Bankr. C.D. Cal. 2022). "The terms 'actual' and 'necessary' must be narrowly construed to preserve the estate." *Id.*

Ninth Circuit courts "require a claimant to show that the debt: (1) arose from a transaction with the debtor-in-possession and (2) directly and substantially benefitted the estate." *In re BCE W., LP*, 319 F.3d 1166, 1172 (9th Cir. 2002); *see In re DAK Indus.*, 66 F.3d 1091, 1094 (9th Cir. 1995) (citation omitted) ("The burden of proving an administrative expense claim is on the claimant"). "[T]he principal test of substantial contribution is 'the extent of benefit to the estate.'" *In re Cellular 101, Inc.* 377 F.3d 1092, 1996 (9th Cir. 2004). "Substantial contribution 'requires contribution which provides *tangible benefits* to the bankruptcy estate and the other unsecured creditors.'" *In re Gilman*, 646 B.R. at 288.

Here, the Debtor does not object or dispute that storing the Kiosks in the guarded, air-conditioned Warehouse was necessary to protect the Kiosks, which are estate assets that contain sensitive electronics. Thus, their storage in the Warehouse provided tangible benefits to the estate. Nor can the Debtor show that the expenses were not actual expenses pursuant to agreement between the parties. As further explained below, via the conduct of the parties, an agreement existed – which Debtor does not dispute – for the Kiosks to be stored in the Warehouse.

## II. The parties had an enforceable agreement to store the Kiosks.

### A. Debtor does not dispute that it agreed to pay $36,800 per month for guarded, climate-controlled storage that preserved estate assets.

A contract is "an agreement which creates an obligation." *In re Estate of Kern*, 107 Nev. 988, 993-94, 823 P.2d 275, 278 (1991). "Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).

A meeting of the minds exists when the parties have agreed on the contract's essential terms, and which terms are essential "depends on the agreement and its context and also on the **subsequent conduct of the parties**, including the dispute which arises and the remedy sought." Restatement (Second) of Contracts § 131 cmt. g (1981) (*quoted in Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 378, 283 P.3d 250, 255 (2012)) (emphasis added); *see also Jsjbd Corp. v. Tropicana Invs.*, 507 P.3d 183, *2 (2022) (citing a party's "subsequent conduct" in determining whether a contract was formed).

Here, as noted, on June 21, 2021 Jeffrey Gordon, "CFO/COO" of the Debtor, signed a Trangistics "Credit Information Sheet" on behalf of Cash Cloud, with London Molina, who was head of logistics at Cash Cloud, as the primary contact. POC 105, at 2. In February 2022 Molina communicated with McGrew regarding shipping and storage of "914 machines." POC 105, at 5-6. Mr. Molina needed those 914 machines to go into temporary storage "immediately," due to the need to get the Kiosks away from Cole Kepro. POC 105, at 7; McGrew Dec. ¶ 6. Also as noted, Trangistics sent numerous invoices to Cash Cloud in 2022 and has continued to do so, yet not once did Molina act to pull the Kiosks out of the Warehouse to place them in allegedly less expensive space or even complain to Trangistics that the storage rent was too high (other than for purposes of litigation). Exhibit A to Rudinsky Dec., at 1-10, 14, 22, 27, 40, 65, 66.

In short, the parties' conduct shows that Cash Cloud contracted with Trangistics to store the Kiosks in the warehouse space controlled by the latter, and it did not object to the rental rate or take any affirmative act to remove the Kiosks so as to place them in other, allgedly less-costly warehouse space. The parties' conduct shows that agreed-upon and reasonable rental rate on the Warehouse space used to store the Kiosks is $38,600 per month.

### B. Debtor fails to rebut the presumption that the agreed-upon rental rate constitutes the fair and reasonable value.

The Court should note that Debtor's declarant proffers "upon information and belief" his statement that the cost to store the Kiosks at the Warehouse allegedly was lower than the monthly amount Cash Cloud was billed and at times paid per the parties' agreement. Hall Dec. ¶ 11; Response, at 4:21-22. Statements in declarations made on information and belief **are "entitled to no weight** because the declarant d[oes] not have personal knowledge." *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412 (9th Cir. 1995) (emphasis added). Accordingly, the Court should disregard Debtors' declarant's statement.

Accordingly, Debtor fails to rebut the presumption that the agreed-upon rental rate constitutes the fair and reasonable value. *In re Jeans.com*, 491 B.R. 16, 24 (Bankr. D.P.R. 2013) (citing *In re Dant & Russell, Inc.*, 853 F.2d 700, 707 (9th Cir. 1988)) ("contract rate is typically presumed to set the reasonable value"); *see also In re Control Elecs., Inc.*, No. BK-S-07-12425-MKN, 2008 Bankr. LEXIS 5173, at *10 n.9 (Bankr. D. Nev. July 23, 2008) (citing Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy, p. 503.06[6] (15th ed. rev. 2008)) ("It is well-established that the administrative expenses allowed under Section 503(b) include a debtor-in-possession's rental and related obligations for premises occupied during the Chapter 11 case"); *see* Response, at 3:13-28.

In summary, whatever lower amount Debtor thinks it should have paid or wishes it had paid is irrelevant, because nowhere does Debtor dispute that there was an enforceable agreement that it pay rent to store the Kiosks with Trangistics or that Debtor was invoiced for storage of the

Kiosks in the amount of $38,600 per month, periodically paid on those invoices, and never raised an objection to the invoiced amount (aside from its recent objections made via bankruptcy court proceedings in what should be viewed as a not-well-taken attempt to attain an advantage in the litigation).

## CONCLUSION

Because 11 U.S.C. § 503(b)(1)(A) provides that after notice and a hearing, administrative expenses "shall be allowed," Debtor's request that the Court "deny Transgistics'[s] request for an administrative expense claim" simply is not supported by law. Response, at 5:12-13. And, because Debtor does not deny that it had an agreement with Trangistics to store the Kiosks and its paying Trangistics to store the Kiosks in the Warehouse were actual and necessary expenses to preserve estate assets, no reason exists to disallow the claim.

Moreover, Debtor offers no admissible fact to rebut the presumption that the agreed-upon monthly Warehouse storage rate of $36,800 was the fair and reasonable value for storage of the Kiosks under the circumstances of the present matter. Accordingly, the Court should allow the claim.

Dated: 7/18/2023

GOLDSMITH & GUYMON, P.C.

By: _____
Marjorie A. Guymon, Esq.
Nevada Bar No. 4983
mguymon@goldguylaw.com
2055 Village Center Circle
Las Vegas, Nevada 89134
Telephone: (702) 873-9500
Attorneys for Trangistics, Inc.