James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Facsimile: (702) 926-9683
Email:   jshea@shea.law
            blarsen@shea.law
            kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. *(Admitted Pro Hac Vice)*
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:   glee@mofo.com
            akissner@mofo.com

*Attorneys for Enigma Securities Limited*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>    CASH CLOUD INC.,<br>    dba COIN CLOUD,<br><br>                Debtor. | Case No.: BK-23-10423-MKN<br><br>Chapter 11 |

**ENIGMA SECURITIES LIMITED'S APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO <u>11 U.S.C. §§ 361, 362, 363, 364, 503, 507, AND BANKRUPTCY RULES 3012 AND 8002</u>**

Enigma Securities Limited ("Enigma"), by and through undersigned counsel, hereby submits *Enigma Securities Limited's Application for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, 503, and 507, and Bankruptcy Rules 3012 and 8002* (the "Application"). This Application seeks allowance and payment of an administrative expense claim on account of (i) adequate protection payments owed by Cash Cloud Inc., d/b/a Coin Cloud (hereinafter, the "Debtor" or "Coin Cloud") to Enigma for June 2023, which Enigma has not yet received, as well as any other adequate protection payments that become due and owing prior to the effective date of a chapter 11 plan or the dismissal of this chapter 11 case and (ii) any diminution in value of the Enigma Collateral (as defined herein) owed to Enigma and for which the Debtor agreed to provide adequate protection that proved to be insufficient to protect Enigma's interests.

The Application is made and based upon sections 105(a), 361, 362, 363, 364, 503, and 507 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and Rules 3012 and 8002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the pleadings and papers on file in this matter, and any argument of counsel the Court entertains at the time of hearing on the Application.

## JURISDICTION AND VENUE

1. The Court has jurisdiction over his matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2. On February 7, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada (the "Court").

3.     Prior to the Petition Date, Enigma provided the Debtor with a facility pursuant to which it could trade cryptocurrency, an activity that is vital to the Debtor's business. In addition to providing this facility, Enigma also lent the Debtor $8,000,000 pursuant to that certain *Secured Loan Facility Agreement*, dated as of April 22, 2022, by and between the Debtor and Enigma (hereinafter, the "Loan Agreement"). To secure its obligations under the Loan Agreement, the Debtor granted Enigma a fully-secured, first priority lien in no less than 3,677 of its digital currency machines (the "Enigma DCMs"), as well as the cash proceeds contained therein and generated therefrom (along with the Enigma DCMs, the "Enigma Collateral"), pursuant to that certain *Security Agreement*, dated as of April 22, 2022, by and between Enigma and the Debtor (hereinafter, the "Security Agreement" and, together, with the Loan Agreement, the "Loan Documents"). To perfect the security interests granted under the Security Agreement, Enigma filed a UCC Financing Statement with the Office of the Secretary of State for the State of Nevada on April 25, 2022.

A.     **The Final DIP Order**

4.     On February 8, 2023, the Debtor filed its *Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 35] (the "DIP Motion").[1] In support of the DIP Motion, the Debtor also filed the *Declaration of Paul Huygens in Support of Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief* [Docket No. 37] (the "Huygens Declaration"), in which the Debtor asserted that the Enigma DCMs were valued at approximately $11,292,316, resulting in an equity cushion of approximately $3,718,617 (or approximately 49%) for the Enigma Claim. *See* Huygens Declaration, ¶ 5.

5.     On March 20, 2023, the Court entered an order approving the DIP Motion on a final

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion or the Final DIP Order (as defined herein), as applicable.

3

1  basis [Docket No. 315] (the "<u>Final DIP Order</u>").  Pursuant to the Final DIP Order, the Debtor was
2  authorized to grant the DIP Lender the DIP Priming Lien on various of the Debtor's assets,
3  including the Enigma DCMs.  Final DIP Order, ¶ 8(c).  As adequate protection for any diminution
4  in value of Enigma's interest in the Enigma Collateral, the Final DIP Order required the Debtor to
5  provide various forms of adequate protection to Enigma, including (i) monthly adequate protection
6  payments to Enigma in an amount equal to interest on the Enigma Loan calculated at 6.25%; (ii) an
7  allowed administrative expense claim accruing at a rate of 6.25% of the outstanding balance of the
8  Enigma Loan; and (iii) granting Enigma the Enigma Adequate Protection Superpriority Claim to
9  the extent of any Enigma Diminution Claim.  Final DIP Order, ¶ 10.

10        6.      Pursuant to the Final DIP Order, the Debtor also stipulated to the following
11  regarding Enigma's claim:

- The Debtor was indebted to Enigma in the aggregate principal amount of not less than $7,593,699.  Final DIP Order, ¶ 4(b)(i).
- The Enigma Secured Claims are secured by the Enigma Liens, which are first priority liens on and security interests in the Enigma Collateral, including the Enigma DCMs.  Final DIP Order, ¶ 4(b)(ii).
- The Enigma Liens are valid, binding, enforceable, and perfected liens in the Enigma Collateral.  Final DIP Order, ¶ 4(b)(iii).
- The Enigma Secured Claims are unconditionally owing by the Debtor and constitute legal, valid, binding and non-avoidable obligations of the Debtor.  Final DIP Order, ¶ 4(b)(iii).

**B.    Postpetition Interest**

22        7.      As of the date hereof, pursuant to the Final DIP Order the Debtor has made monthly
23  cash payments to Enigma for postpetition interest in the amount of $146,159, equivalent to interest
24  on the Enigma Secured Claims calculated at 6.25% through May 31, 2023.  The Debtor has not
25  made an adequate protection payment for postpetition interest for June 2023, in the required
26  amount of $38,803.
27        8.      As a result of these missed payments, as of June 30, 2023 the Debtor owes Enigma

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

not less than $38,803 in postpetition interest (which postpetition interest shall continue to accrue at a rate of 6.25% through the effective date of a chapter 11 plan or dismissal of the chapter 11 case, pursuant to the Final DIP Order) (the "Cash Interest Claim"). In addition, pursuant to the Final DIP Order, Enigma has an allowed administrative expense claim equal to interest calculated at 6.25% on the Enigma Secured Claims, in an amount not less than $184,962 as of June 30, 2023 (which shall also continue to accrue at a rate of 6.25% through the effective date of a chapter 11 plan or dismissal of the chapter 11 case) (the "Accrued Interest Claim" and, together with the Cash Interest Claim, the "Administrative Expense Claim").

C. **Diminution in Value**

9. On June 2, 2023, the Debtor conducted an auction (the "Auction") for the sale of substantially all its assets. At the conclusion of the Auction, the Debtor agreed to sell, among other things, approximately 5,706 of the Debtor's DCMs (the "Purchased DCMs") to Heller Capital Group, LLC ("Heller"), in exchange for $4,200,000 in cash consideration (the "DCM Sale Proceeds"). *See Notice of Auction Results Regarding Sale of Substantially All of the Debtor's Assets* [Docket No. 621].

10. On June 16, 2023, the Debtor filed its *Motion for Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC, and Genesis Coin, Inc., Free and Clear of Liens Claims, Encumbrances, and Other Interests; (C) Authorizing the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief* [Docket No. 714] (as modified, the "Sale Motion"), by which it sought to confirm the sale of the Purchased DCMs as set forth in the Heller APA (as defined in the Sale Motion). On June 28, 2023, the Court conducted a hearing to consider the Sale Motion, after which it entered an order approving the Sale Motion [Docket No. 795] (the "Sale Order"). Pursuant to the Heller APA, the sale of the Purchased DCMs is expected to close on or around July 21, 2023.

11. Because the DCM Sale Proceeds generated from the sale of the Purchased DCMs and that will be received by Enigma are considerably less than the value of the Enigma Collateral

5

as of the Petition Date set forth in the Huygens Declaration, there has been a diminution in value of Enigma's interest in the Enigma Collateral. Moreover, to the extent that the DIP Financing is not repaid from other assets of the Debtor and must be satisfied from DCM Sale Proceeds, Enigma has an allowed Enigma Adequate Protection Superpriority Claim in the amount of any such proceeds from the sale of the Enigma Collateral that are used to satisfy the DIP Financing. Further, from communications with the Debtor, Enigma understands that notwithstanding the stipulations in the Final DIP Order (which are binding upon the Debtor) as to the extent, perfection, and priority of Enigma's liens and the scope of the Enigma Collateral, the Debtor may attempt to dispute the number of machines constituting Enigma Collateral that were sold to Heller. To the extent the Debtor is successful in such attempt, then the amount of Enigma Collateral available to satisfy Enigma's claims shall have decreased since the Petition Date, thus giving rise to an allowed Enigma Adequate Protection Superpriority Claim in an amount equal to the value of the difference in machines (the claims described in this paragraph 11, collectively, the "<u>Diminution Claim</u>").

## LEGAL ARGUMENT

**A. ENIGMA IS ENTITLED TO PAYMENT OF THE ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO THE TERMS OF THE FINAL DIP ORDER**

12. Pursuant to the terms of the Final DIP Order, it is undisputed that the Debtor is required, as part of the Enigma Adequate Protection Obligations, to pay Enigma "monthly cash payments on the last day of each month [during the chapter 11 case] equivalent to interest calculated at 6.25%" for the use of the Enigma Collateral and, separately, to accrue an "allowed administrative expense claim . . . . at 6.25%[.]" Final DIP Order, ¶ 10(g). Moreover, the Final DIP Order is now a final, non-appealable order by this Court. Bankruptcy Rule 8002(a). Consequently, the Enigma Adequate Protection Obligations, including these monthly cash payments and the accrual of Enigma's administrative expense claim, are obligations binding on the Debtor.

13. Notwithstanding this, Enigma has not yet been paid the balance owed for its Cash Interest Claim, including the $38,803 for the month ending on June 30, 2023, nor has the Debtor indicated that it has made provision for payment of the Accrued Interest Claim. Consequently, the

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

Debtor must: (a) pay the balance of the Cash Interest Claim, including not less than $38,803 owing through June 30, 2023, as an administrative expense claim, and (b) pay any remaining balance of the Administrative Expense Claim, including the amount of the Accrued Interest Claim (which is not less than the $184,962 as of June 30, 2023), as an administrative expense claim pursuant to the chapter 11 plan (or alternatively, upon dismissal of the chapter 11 case).

**B.  ENIGMA IS ENTITLED TO A SUPERPRIORITY CLAIM RESULTING FROM THE DIMINUTION IN VALUE OF ENIGMA'S COLLATERAL**

14.  The Bankruptcy Code requires that courts adequately protect secured creditors' interests in their collateral.  *See* 11 U.S.C. §§ 361, 362, 363, 364; *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203-04 (1983) ("At the secured creditor's insistence, the bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease property as are necessary to protect the creditor.").  This entitlement "is derived from the Fifth Amendment protection of property interests" and "is based as much on policy grounds as on constitutional grounds.  Secured creditors should not be deprived of the benefit of their bargain."  H.R. Rep. No. 95-595, at 339 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6295 (*citing Wright v. Union Central Life Ins. Co.*, 311 U.S. 273 (1940), and *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555 (1935)); *see also Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (adequate protection is intended to "insure that the [secured] creditor receives the value for which he bargained prebankruptcy").  Apart from being constitutionally mandated, protection of the secured creditors' bargain is dictated by sound policy considerations.  No reorganization in which a debtor needs to consensually use a secured creditor's collateral would be possible unless the secured creditor can be confident that the protection it receives is real and will not dissipate during the case.

15.  To the extent that adequate protection provided to a secured creditor proves to be insufficient, the secured creditor is entitled to a superpriority claim under section 507(b), which entitles such creditor to recovery ahead of every unsecured and regular administrative creditor.  *See, e.g., LNC Investments, Inc. v. First Fidelity Bank*, 247 B.R. 38, 41 (S.D.N.Y. 2000) ("[I]n the privileged world of administrative claims, the [section] 507(b)-anointed claim is *primus inter*

7

*pares*.").

16.     The superpriority of section 507(b) is intended to compensate the secured claimant for the difference between the adequate protection provided by the debtor and any actual decrease in the value of the collateral occurring during the pendency of the bankruptcy action. Section 507(b) is "an attempt to codify a statutory failsafe system in recognition of the ultimate reality that protection in previously determined the 'indubitable equivalent' . . . may later prove inadequate." *In re Carpet Ctr. Leasing Co., Inc.*, 4 F.3d 940, 941 (11th Cir. 1993) (internal quotations marks and citations omitted).

17.     The purpose of superpriority claims under section 507(b) is "to protect secured creditors against a diminution in the value of their collateral." *In re Gallegos Research Grp., Corp.*, 193 B.R. 577, 585 (Bankr. D. Colo. 1995). "In essence, [section] 507(b) means that a secured creditor has superpriority for a claim in the amount that the debtor's use of the collateral during the time of the stay diminished the value of the collateral, but only to the extent such diminution is in excess of the adequate protection received." *In re Blackwood Assocs., L.P.*, 153 F.3d 61, 68 (2d Cir. 1998).

18.     Bankruptcy courts from the Ninth Circuit and elsewhere hold that section 507(b) establishes three requirements for allowance of a superpriority administrative claim: (1) adequate protection must have been provided, and the protection must ultimately prove to have been inadequate; (2) the creditor has an allowable claim under 11 U.S.C. § 507(a), which requires that the claim be allowed as an administrative expense under 11 U.S.C. § 503(b); and (3) the claim has arisen from either the automatic stay or the use of the collateral. *Id.*; *see also In re Bailey Tool & Mfg. Co.*, 2018 Bankr. LEXIS 154, *11-12 (N.D. Tex. Jan. 23, 2018) (citing *Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865-66 (4th Cir. 1994)).

19.     Enigma is entitled to a superpriority claim under section 507(b) because its Diminution Claim satisfies all three requirements outlined above.

      **1.**     **The Adequate Protection Was Insufficient to Protect Enigma Against the Diminution in Value of Its Collateral**

20.     There is no question that the Debtor was ordered, and agreed, to provide adequate

8

protection to Enigma with respect to the Debtor's continued use, and anticipated sale, of the Enigma DCMs.  Final DIP Order, ¶ 10.  Moreover, there was a substantial diminution in value between the Petition Date and June 2, 2023, when the Purchased DCMs were sold at auction and for which the adequate protection proved to be insufficient.

21. The Debtor valued the Enigma Collateral as of the Petition Date at $11.9 million. *See* Huygens Declaration, ¶ 5; *see also* DIP Motion, ¶ 38.  However, at the Auction, *nearly all* of the Debtor's remaining DCMs, including the Enigma Collateral, sold for approximately $4.2 million.  Though the exact amount of Enigma's Diminution Claim remains to be determined, it is clear that the DCM Sale Proceeds fall well short of the value ascribed to this collateral only a few months ago.

### 2. Enigma Has an Allowable Claim Under 11 U.S.C. §§ 507(a) and 503(b)

22. To be entitled to superpriority status under section 507(b), a secured creditor's claim must otherwise be allowable under section 507(a)(1), which "in turn, allows a claim for administrative expenses allowable under [section] 503(b)."  *Ford Motor Credit Co.*, 35 F.3d at 865.

23. Section 503(b) allows for the payment of administrative expenses that are "the actual, necessary costs and expenses of preserving the estate."  The United States Supreme Court has interpreted "preservation of the estate" to include the continuation of the business of the estate. *Reading Co. v. Brown*, 391 U.S. 471, 475 (1968).

24. Under section 503(b), the Ninth Circuit applies a two-part test to determine whether a claim is an "actual and necessary expense" and thus qualifies as an administrative expense.  A court must determine that: (1) that the expense arose from a transaction with the estate; and (2) that the transaction directly and substantially benefitted the estate.  *See Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755, 757 (9th Cir. 1998).

25. As to the first element, negotiation for the continued use and possession of collateral in return for adequate protection, as undoubtedly occurred between the Debtor and Enigma in this case, is a postpetition transaction for the purposes of satisfying the requirements of

9

section 503(b).  *See, e.g., In re Carpet Center Leasing Co.*, 991 F.2d 682, 687 (11th Cir. 1993); *American Toy & Furniture, Inc.*, Case No. 92-27686 (Bankr. E.D. Wis. 1992); *see also, In re Two Bros. Xi, Inc.*, 2013 Bankr. LEXIS 1801 (Bankr. D. Ariz. May 2, 2013) (acknowledging that the negotiation for continued possession of a lender's secured collateral in return for adequate protection is a postpetition transaction providing new value to the estate).

26.   As to the second element, it is also clear that the Debtor's estate benefited from the postpetition possession and use of Enigma's Collateral.  The Debtor's retention of Enigma's Collateral—namely, the Enigma DCMs—enabled the Debtor to pursue a sale of substantially all of its assets and monetize equipment that may otherwise have been abandoned.  The ability to utilize these assets in this way resulted in continued generation of postpetition revenues for the benefit of the Debtor's estate, as well as a sale that generated $4.2 million for the Debtor's estate and, by extension, its creditors.  Moreover, if the Enigma DCMs were of no use in the Debtor's sale process, there would have been no reason for the Debtor to agree to provide adequate protection in exchange for their continued possession and use of the Enigma DCMs.  *See In re California Devices*, 126 B.R. 82, 84 (Bankr. N.D. Cal. 1991) (holding that postpetition use of a debtor's collateral is sufficient to constitute an administrative claim for insufficient adequate protection).

### 3. The Value of Enigma's Interest in Collateral Was Impaired Due to the Imposition of the Automatic Stay and the Debtor's Use

27.   As set forth above, the value of Enigma's interest in the Enigma Collateral has declined since Petition Date, during which time the automatic stay has prevented Enigma from exercising its rights as a secured creditor to foreclose on the Enigma Collateral in satisfaction of its claims.  Further, to the extent that DCM Sale Proceeds must be used to satisfy the DIP Financing—or the number of Enigma DCMs remaining in the estate and sold to Heller are less than what was stipulated to by the Debtor as of the Petition Date—then the value of Enigma's interest in Enigma Collateral shall be further diminished.  In any case, any such diminution shall have arisen from the Debtor's use of the Enigma Collateral or the imposition of the automatic stay.

**RESERVATION OF RIGHTS**

Enigma fully reserves, and nothing herein should be construed as a waiver or relinquishment of, its rights to seek additional superpriority administrative claims pursuant to section 507(b) of the Bankruptcy Code, the Final DIP Order, or otherwise.

[*Remainder of Page Intentionally Left Blank*]

Dated this 19th day of July 2023.

        /s/ *James Patrick Shea*
James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Facsimile: (702) 926-9683
Email:   jshea@shea.law
            blarsen@shea.law
            kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: glee@mofo.com
          akissner@mofo.com

*Attorneys for Enigma Securities Limited*

# CERTIFICATE OF SERVICE

1. On July 18, 2023, I served **ENIGMA SECURITIES LIMITED'S APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364, 503, 507, AND BANKRUPTCY RULES 3012 AND 8002** in the following manner:

☒ a. ECF System: Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System):
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 18, 2023

By: /s/ *Bart K. Larsen*