```
                         UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF NEVADA (LAS VEGAS)

                                          .
IN RE:                                    .  Case No. 23-10423-mkn
                                          .  Chapter 11
CASH CLOUD, INC.,                         .
                                          .  300 Las Vegas Blvd. South
                                          .  Las Vegas, NV 89101
                Debtor.                   .
                                          .  Thursday, May 25, 2023
. . . . . . . . . . . . . . . . .  .  2:02 p.m.
```

TRANSCRIPT OF OST RE: APPLICATION MOTION FOR ENTRY OF AN ORDER
APPROVING KEY EMPLOYEE RETENTION PROGRAM AND GRANTING RELATED
RELIEF WITH PROPOSED ORDER FILED BY BRETT A. AXELROD ON BEHALF
                       OF CASH CLOUD, INC. [438];
STATUS HEARING RE: MOTION TO REJECT LEASE OR EXECUTORY CONTRACT
FOURTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF
       EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO
   11 U.S.C. 365(a) AND DISPOSAL OF CERTAIN PERSONAL PROPERTY
    INCLUDING SURRENDER AND TERMINATION OF THE AUTOMATIC STAY
         AND/OR ABANDONMENT WITH PROPOSED ORDER FILED BY
    JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [355];
                          (CONTINUED)
             BEFORE THE HONORABLE MIKE K. NAKAGAWA
              UNITED STATES BANKRUPTCY COURT JUDGE


APPEARANCES CONTINUED.

Audio Operator:          Andrea Mendoza, ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TRANSCRIPT OF (CONTINUED):
STATUS HEARING RE: FIFTH MOTION TO REJECT LEASE OR EXECUTORY
CONTRACT FIFTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT
TO 11 U.S.C. 365(a) AND DISPOSAL OF CERTAIN PERSONAL PROPERTY
INCLUDING SURRENDER AND TERMINATION OF THE AUTOMATIC STAY
AND/OR ABANDONMENT WITH PROPOSED ORDER FILED BY
JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [358];
STATUS HEARING RE: SIXTH MOTION TO REJECT LEASE OR EXECUTORY
CONTRACT SIXTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT
TO 11 U.S.C. 365(a) AND DISPOSAL OF CERTAIN PERSONAL PROPERTY
INCLUDING SURRENDER AND TERMINATION OF THE AUTOMATIC STAY
AND/OR ABANDONMENT WITH PROPOSED ORDER FILED BY
JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [361];
STATUS HEARING RE: SEVENTH MOTION TO REJECT LEASE OR EXECUTORY
CONTRACT SEVENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT
TO 11 U.S.C. 365(a) AND DISPOSAL OF CERTAIN PERSONAL PROPERTY
INCLUDING SURRENDER AND TERMINATION OF THE AUTOMATIC STAY
AND/OR ABANDONMENT WITH PROPOSED ORDER FILED BY
JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [358];


TELEPHONIC APPEARANCES (Continued):


For the Debtor:          Fox Rothschild LLP
                         By:  JEANETTE E. MCPHERSON, ESQ.
                              NICHOLAS A. KOFFROTH, ESQ.
                         1980 Festival Plaza Drive, Suite 700
                         Las Vegas, NV 89135
                         (702) 262-6899

For Enigma Securities
Limited:                 Morrison Foerster LLP
                         By:  ANDREW KISSNER, ESQ.
                         250 West 55th Street
                         New York, NY 10019-3601
                         (212) 336-4117

                         Shea Larsen PC
                         By:  JAMES PATRICK SHEA, ESQ.
                         1731 Village Center Cir., Suite 150
                         Las Vegas, NV 89134
                         (702) 471-7423

```
TELEPHONIC APPEARANCES (Continued):


For the United States        Office of the U.S. Trustee
Trustee:                     By:  JUSTIN VALENCIA, ESQ.
                             300 Booth Street, #3009
                             Reno, NV 89509
                             (775) 784-5335


For the Official             Seward & Kissel
Committee of Unsecured       By:  CATHERINE LOTEMPIO, ESQ.
Creditors:                        ANDREW J. MATOTT, ESQ.
                             One Battery Park Plaza
                             New York, NY 10004
                             (212) 574-1632
```

1

```
 1          (Proceedings commence at 2:02 p.m.)

 2              THE COURT:  First five matters on the two o'clock

 3    calendar are in the Cash Cloud, Inc. proceeding.  May I have

 4    appearances for the record?

 5              MR. KOFFROTH:  Yes.

 6              MS. MCPHERSON:  Good afternoon, Your Honor.  Jeanette

 7    McPherson of Fox Rothschild on behalf of the debtor and debtor

 8    in possession, appearing on behalf of -- or with respect to the

 9    motions to reject that are pending.  Thank you.

10              THE COURT:  Okay.  Thank you.

11              MR. KOFFROTH:  And good afternoon, Your Honor.

12    Nicholas Koffroth, Fox Rothschild LLP, also on behalf of the

13    debtor, appearing on the KERP motion.

14              THE COURT:  Okay.

15              MR. SHEA:  Good afternoon, Your Honor.  James Patrick

16    Shea of Shea Larsen appearing as Nevada counsel for Enigma

17    Securities.  And with me on the line today is lead counsel,

18    Andrew Kissner from Morrison & Foerster.

19              THE COURT:  Okay, thank you.

20              MR. VALENCIA:  Justin Valencia, Department of Justice

21    appearing for the United States Trustee.  Good afternoon, Your

22    Honor.

23              THE COURT:  Good afternoon.

24              MS. LOTEMPIO:  Good afternoon, Your Honor.  This is

25    Catherine LoTempio of Seward & Kissel on behalf of the Official
```

1  Committee of Unsecured Creditors, and I'm here with my

2  colleague Andrew Matott.

3           THE COURT:  Okay.  Thank you.  Any other appearances

4  in the Cash Cloud matters?

5           Okay.  There are none.

6           All right.  The first item on the calendar is the

7  KERP motion or the KERP application that was brought on behalf

8  of the debtor.  Mr. Koffroth, there was an interim order that

9  was entered as Docket Number 594.  I believe that was filed on

10 or entered on May 23rd.  Prior to that, there was the

11 supplemental McAlary declaration that was filed as Docket

12 Number 587.  That was filed on May 19th.  Have you had a chance

13 to further discuss this matter with the Office of the United

14 States Trustee?

15          MR. KOFFROTH:  Yes, Your Honor, we have.  And I would

16 have expected that a representative from the Trustee's office

17 would have been here.  I mean, we -- as you noted, the

18 supplemental declaration did include, I think, some more

19 information that the Trustee was looking for.  And I -- I'll

20 also note that, early on in the case, we had provided the

21 Trustee with an unredacted version of the employee list,

22 including direct reports --

23          THE COURT:  Okay.

24          MR. KOFFROTH:  -- which confirmed much of the

25 material that we had provided in our exhibit as well.

1          THE COURT:  All right.  Mr. Valencia, are you

2    appearing for the U.S. Trustee's office?

3          MR. VALENCIA:  Yes, it's Justin Valencia appearing

4    for the United States Trustee, Your Honor.

5          THE COURT:  Okay.  All right.  So, Mr. Koffroth, have

6    you spoken to either Mr. Day or Mr. Valencia about this?

7          MR. KOFFROTH:  No, not just before this hearing, Your

8    Honor.

9          THE COURT:  Okay.  All right.  Well, I've had a

10   chance, obviously, to review the supplement to the declaration

11   of Mr. McAlary.  I reviewed the job title descriptions, the

12   explanation for the services that are actually provided.  So

13   other than having reviewed those, was there any comment from

14   Mr. Valencia on behalf of the U.S. Trustee?

15         MR. VALENCIA:  With respect, Your Honor, Justin

16   Valencia appearing for the United States Trustee.  Our office

17   has reviewed that supplement filed at ECF 587, and this office

18   will go ahead and stand on its opposition and looks forward to

19   the Court's ruling.

20         THE COURT:  Okay.  All right.  And you -- obviously,

21   you looked at the interim order as well.  Is that correct?

22         MR. VALENCIA:  Correct, Your Honor.  Thank you.

23         THE COURT:  Okay.  All right.  Thank you.  Well,

24   anything else to add, Mr. Koffroth?

25         MR. KOFFROTH:  No.  Nothing more than other than what

1  is in the papers and the supplemental filings.  I think we feel

2  pretty confident that the -- including the schedules and the

3  SOFA, confirming that there are only two insiders, demonstrates

4  that there really are no insiders here.  And in any event, the

5  reply pretty thoroughly walks through the Dana factors and the

6  need for this kind of limited program that the debtor's

7  proposing.

8            THE COURT:  Okay, thank you.  All right, Counsel, the

9  Court has reviewed the original application itself which was

10 filed as Docket Number, I believe, 438, supported by the

11 declaration -- initial declaration of Mr. McAlary.  It's Docket

12 Number 439.  The Court also reviewed and considered the United

13 States Trustee's opposition filed at Docket Number 526.  The

14 Court has reviewed the reply filed as Docket Number 556, which

15 reply was filed on behalf of the debtor in this case.

16           The Court entered the interim order after considering

17 arguments at the last hearing.  That order was entered as

18 Docket Number 594.  The Court waited for the supplemental

19 information to be provided by Mr. McAlary as was raised at the

20 last hearing.  That supplemental information was filed in the

21 form of a declaration including a redacted exhibit of which the

22 Court saw the unredacted version.  That declaration was filed

23 as Docket Number 587.

24           Having considered the arguments presented and the

25 responses filed, the Court is obviously aware of the concerns

1    raised by the U.S. Trustee's office.  The Court does take those

2    concerns seriously.  However, given the additional disclosures,

3    the Court does not believe that the concerns are significant to

4    warrant -- enough to warrant sustaining the objection to the

5    motion that was filed by the debtor.  On that basis, the

6    opposition by the -- or the objection by the U.S. Trustee's

7    Office will be overruled.  I'll grant the motion to approve the

8    key employee retention program, and therefore direct

9    Mr. Koffroth to prepare the appropriate order for granting the

10   application.

11            Mr. Valencia, do you want to sign off on the order?

12            MR. VALENCIA:  Justin Valencia for the United States

13   Trustee.  Yes, if you could send it to Jared Day and myself,

14   that would be appreciated.  Thank you.

15            THE COURT:  Oh, okay.  All right then.  Ms. LoTempio

16   or Ms. -- Mr. Matott, do you want to sign off on behalf of the

17   creditors' committee?

18            MS. LOTEMPIO:  Yes, Your Honor.  We'll take a look.

19   Thank you.

20            THE COURT:  Okay.  All right.  Mr. Shea or

21   Mr. Kissner, do you want to sign off on behalf of Enigma?

22            MR. KISSNER:  That's okay, Your Honor.  Thank you.

23            THE COURT:  Okay.  Signature's waived in that

24   respect.  All right, Mr. Koffroth, go ahead and submit the

25   order.

1          MR. KOFFROTH:  Thank you, Your Honor.

2          THE COURT:  All right.  Thank you.  That gets us to

3   Items, I believe, 2, 3, 4, and 5 on the calendar.  These are

4   the fourth, fifth, sixth, and I believe seventh omnibus motions

5   for orders approving rejection of executory contracts and

6   essentially the termination of the stay and/or abandonment of

7   property.

8          After the hearing initially last week, there was a

9   protocol adopted for some inquiry to be made through written

10  interrogatories by Enigma.  The Court received oh, a few hours

11  ago, the -- a supplement to the Enigma omnibus objection to the

12  various motions.  Shortly thereafter, the Court received the

13  debtor's reply that essentially has the responses by Mr. James

14  to the various interrogatories.  Counsel approached this in a

15  manner to reduce the expenses rather than having it -- an

16  actual deposition and trying to get that before the Court.  The

17  Court appreciates that cooperation.

18         It appears that the 12 questions were asked and there

19  were responses made by Mr. James.  Was there anything else

20  that's part of the record in connection with these matters,

21  Ms. McPherson?

22         MS. MCPHERSON:  No, Your Honor.  That is the record.

23         THE COURT:  Okay.  And then Mr. Kissner, again, I --

24  it looks like you hit the 12 questions that you promised it

25  wouldn't exceed that, and that's what -- the questions that

 1  you're asked and then you have seen the responses, obviously.

 2  Is that correct?

 3        MR. KISSNER:  Thank you, Your Honor.  Andrew Kisser,

 4  Morrison & Foerster.  We have seen the responses, and

 5  understanding this isn't an evidentiary hearing, I think we

 6  might quibble with some of them in terms of admissibility, but

 7  I think we're willing to just proceed on this record.

 8        THE COURT:  Okay.  And then if the -- you know,

 9  again, these are responses to interrogatories.  There were

10  objections as to some of the interrogatories, but nonetheless,

11  the responses were provided.  If these were offered in the way

12  of an offer of proof, that if sworn in to testify, Mr. James

13  would testify and respond in kind to the same 12 questions,

14  would you be objecting to an offer of proof so that this

15  becomes part of the record as his testimony?

16        MR. KISSNER:  We do not, Your Honor, in the sake of

17  moving this forward.

18        THE COURT:  Okay.  All right.  That being the case,

19  this is the complete evidentiary record.  Is there anything

20  else you want to add at this time?

21        MS. MCPHERSON:  Your Honor --

22        MR. KISSNER:  Oh, I was going to say I defer to the

23  debtor, but for our part, I probably have seven or eight

24  minutes of remarks planned so --

25        THE COURT:  Okay.  All right, Ms. McPherson, these --

1  all four of these are your -- essentially the debtor's motion.

2  Is there anything that you wanted to add in the way of argument

3  at this time?

4          MS. MCPHERSON:  Your Honor, I don't want to

5  necessarily repeat what's in the motions.  But just to hit the

6  high points, with regard to the motions, which essentially

7  are -- all seek the same relief, ss set forth in those motions,

8  we seek rejection of the various contracts and leases that are

9  set forth in each of the motion -- motions.  And we believe,

10 based on the debtor's business judgment, that those contracts

11 and leases should be rejected.  They're financially burdensome.

12 They don't provide benefit to the estate and all of its

13 creditors, not just Enigma.  And we note that other than

14 Enigma, no other party has objected, including the unsecured

15 creditors committee, and also note that we haven't received a

16 request from any interested party or potential buyer to remove

17 any of the contracts or releases from the motions or withdraw

18 any of the motions.

19          We believe, again, that these contracts are

20 financially burdensome.  There could be ongoing administrative

21 expenses that this debtor just cannot afford.  So, Your Honor,

22 we would request that the rejection be granted and be granted

23 effective as of the motion date.

24          I believe the evidence shows that the debtor's

25 decision to reject these contracts and leases isn't manifestly

1  unreasonable.  It's based on sound business judgment.  It's not

2  based on bad faith or any kind of whim.  So again, Your Honor,

3  we would request that the rejection be granted.

4          We also request stay relief because the elements for

5  stay relief are satisfied here, that the property -- the

6  remaining property is not necessary for reorganization and

7  there's little to no equity in this property.

8          And lastly, Your Honor, we would request that the

9  abandonment request be granted as of the motion date.

10 This property -- "the remaining property" as we refer to it in

11 the motions, is burdensome and of inconsequential value.  The

12 debtor's determined that it's -- that it cannot afford to

13 remove this property and therefore would abandon and surrender

14 to the secured creditors.

15         In fact, I -- you know, Enigma has recognized that it

16 can pick up its property, but it really just doesn't want to.

17 But those aren't the standards under 554.  It's the debtor's

18 decision which is virtually unfettered in that the property is

19 burdensome and it's not of benefit to the estate and all

20 creditors.

21         So for those reasons, Your Honor, we would request

22 the motions be granted and be granted effective as of the

23 filing date.

24         THE COURT:  Okay.

25         MS. MCPHERSON:  Thank you, Your Honor.

 1          THE COURT:  And Ms. McPherson, as far as effective as

 2  of the filing date, you're referring to the filing date of the

 3  motions.  Is that correct?

 4          MS. MCPHERSON:  That's correct, Your Honor.

 5          THE COURT:  All right.  And each of the four motions

 6  that are the subject of today's hearings were filed on

 7  March 23rd, 2023.  Is that also correct?

 8          MS. MCPHERSON:  That's correct, Your Honor.  Yes.

 9  Thank you.

10          THE COURT:  Okay.  All right.  And let me ask from

11  the Committee of unsecured creditors, Ms. LoTempio or

12  Mr. Matott, was there anything to add?

13          MS. LOTEMPIO:  Your Honor, Catherine LoTempio on

14  behalf -- of Seward & Kissel on behalf of the unsecured

15  creditors.  Nothing to add, other than echoing what we said

16  last time.  The Committee has no objection to entry of the

17  order and with the language that has been included in the

18  proposed order that was at the request of the Committee that

19  preserves rights vis-a-vis the secured lenders.  Yeah, we have

20  no objection to entry of these orders.

21          THE COURT:  Okay.

22          MS. LOTEMPIO:  Thank you.

23          THE COURT:  All right, thank you.  All right,

24  Mr. Kissner, on behalf of Enigma Securities, you're maintaining

25  the opposition to each of the motions.  Did you have anything

1  to add?

2          MR. KISSNER:  Thank you, Your Honor.  Andrew Kissner

3  of Morrison & Foerster on behalf of Enigma, and thanks for

4  having us back here this afternoon to discuss this.  I have a

5  few remarks to make.  I'd start by saying that, like

6  Ms. McPherson, I don't intend to repeat the arguments that are

7  set forth in our papers.  I'm, of course, happy to answer any

8  questions that Your Honor may have about them, but I think and

9  I hope that they speak for themselves.

10          Instead, what I'd like to do right now is zoom out a

11 bit, talk about the big picture.  This is a case where we have

12 a debtor with principal assets of a few thousand machines.

13 Now, some of those machines, they might be pretty valuable.

14 They're in good locations.  They have favorable contract terms.

15 They make good revenue or they have some other type of (audible

16 interference) or je ne sais quoi that might make them desirable

17 to operate.  And knock on wood, I don't want to jinx it, but

18 I'm hoping that, at a forthcoming auction for the debtor's

19 assets, these machines are going to fetch a hefty premium.

20          On the other hand, we have some machines that, for

21 one reason or another, may not be viewed as valuable, whether

22 that's due to economics, the condition of the machines, or

23 other reasons, or idiosyncrasies that are going to be unique to

24 a given buyer.  For example, perhaps that buyer already has a

25 machine in the same geographic area so it doesn't really want

1   it.  Or conversely, the machine's in a region that's not

2   strategically important to the operator.  Whatever the case may

3   be, though, those machines, even if they're not strategically

4   important, they still have some intrinsic value to them.  But

5   we recognize that they're probably not likely going to fetch

6   the same price and the best disposition of them is likely at a

7   bulk sale or in a liquidation.

8           So where are we?  In just one week, there's going to

9   be an auction.  There's going to be a winning bidder or

10  bidders, and there will finally be a definitive answer to the

11  question, the $64,000 question as it were, which machines go in

12  which bucket.  Until then, standing here today, the debtor may

13  think that it has a pretty good guess as to where things will

14  land, but for now it's just that, it's a guess.  We don't know

15  for certain.

16          Thus debtor, nonetheless, contends that the motions

17  reflect a reasonable exercise of its business judgment.  I'd

18  like to take a closer look at what they've proffered to support

19  that conclusion.  So first we have the declarations of Chris

20  McAlary, which were filed at Docket Numbers 356, 359, 362, and

21  365.  And they're all substantially identical.  And the debtor

22  relies on each of them to substantiate its decision to reject

23  the leases and abandon the machines.

24          But if you look at those declarations, beyond giving

25  a general background of the debtor's business and providing

1  some illustrative lease terms, all they really say -- and I'm

2  in Paragraph 10 and 11 of these declarations, if you want to

3  follow along.  All they say is that if the debtor determines to

4  surrender the machine, then it will be because the machines are

5  quote, "not necessary to the organization" or quote, "the

6  debtor lacks equity in them."  And that, in that case, this

7  decision would be an exercise of sound business judgment.  So

8  these statements, they're conclusory and they're really

9  conditional to the point of meaninglessness because they don't

10  provide any insight as to the debtor's determination with

11  respect to any particular machine.

12          Now to its credit, the debtor does provide some

13  additional color through the various declarations and testimony

14  of Mr. James, which were submitted at Docket Numbers 550, 571,

15  591.  As I mentioned at the start of the hearing, I think much

16  of this testimony, particularly as originally propounded by the

17  debtor, it lacks foundation, it constituted hearsay, or was

18  otherwise inadmissible.  But for the sake of expediency and

19  moving on with these cases, we're just going to accept it at

20  face value.

21          And if you accept that testimony at face value, all

22  it tells us is the following things:  First, that Mr. James or

23  maybe his colleagues at Province, they've spoken to some

24  parties that might be interested in some of the debtor's

25  assets.  We're told there's apparently about 40 of those

1   parties, but we don't know how many that he's spoken to because

2   he, quote, "did not specifically track" end quote "them".  And

3   that's from Docket 550, Paragraph 6; Docket 599, Responses 1

4   and 2.

5          Second, we know that some unknown subset of these

6   interested parties, apparently they were all, quote, "qualified

7   bidders that have previously submitted a term sheet."  Well

8   those parties have apparently expressed a desire to reduce the

9   debtor's footprint.  But the debtor won't tell us how many

10  parties there are, citing confidentiality concerns, and we

11  don't know by how much any of these parties want to reduce the

12  footprint.  And that's all from Docket Number 599 which is

13  (audio interference) 7.

14         Third, we know the bid deadline is not until next

15  week.  We know the debtor is willing to close more than one

16  transaction for its assets if it needs to.  And we know that

17  today at least two liquidators have submitted indicative offers

18  to liquidate the debtor's rent fleet, which I would presume

19  includes machines correlated with rejected leases.

20         Now, the debtor, in the latest James testimony,

21  characterizes those offers as quote, "not real or not

22  material", but they're offers nonetheless and I'm not really

23  sure how they square with Ms. McPherson's assertion that

24  nobody's interested in these machines, but alas.  What's more,

25  and at the risk of burying the lead, we know that RockItCoin --

1   who it appears from the debtor's testimony, seems to be one of

2   the leading bidders in this sale process.  We know that

3   RockItCoin has expressed interest specifically in some of the

4   machines that are subject to the abandonment motion.  And that

5   was all from Docket Number 599, Responses 5, 9, and 12.

6           Fourth and finally, we know the debtor has analyzed

7   these leases and it believes that rejection is warranted and

8   that any reasonable buyer would agree because those leases are

9   supposedly not profitable.  So from that maybe uncontroversial

10  assertion, they've made the conclusion that abandonment of the

11  associated machines won't depress the sales price.  And they

12  say that even though the economics of a lease say little about

13  the underlying machine's intrinsic value, and they say this

14  despite the fact that the bid deadline has not passed, and

15  despite the fact that there are multiple parties that have

16  expressed to the debtor interest in some or all of these

17  machines, and that there is an ability to close more than one

18  sale transaction.  And that was from Docket Number 550,

19  Paragraph 5 and 599, Responses 5, 8, 9, and 12.

20          So if I were to summarize all this (audio

21  interference) I might say something like this:  Even though

22  bids for the debtor's machines are not due until next week,

23  even though there have already been some indicative offers for

24  those machines, the debtors want to throw those machines away

25  today for no consideration at all.  And so against this record,

1  it strikes me as a bit puzzling that the debtor believes that

2  rejection and abandonment, which comes at a critical juncture

3  in the case -- that they think this is a reasonable exercise of

4  their business judgment.  And I think that it really stands in

5  sharp relief compared to the real prejudice that Enigma faces.

6          And while Ms. McPherson has characterized this

7  prejudice as parochial or unique to Enigma and inconsequential

8  to other creditors, let me be clear.  Other creditors stand to

9  lose as well if these machines are prematurely abandoned for no

10 consideration, and that's because Enigma is a secured creditor

11 with a secured claim to the tune of nearly $8 million.  That

12 claim is secured by collateral that, at least according to the

13 debtor's testimony as part of the DIP motion, was just barely

14 enough to cover Enigma's claim.  And so for every machine that

15 the estate throws away, if Enigma can't find a home for that

16 machine within its short exclusivity period to do so, or if the

17 machine can only be sold for scrap, then the abandonment of

18 that machine does little or nothing to offset Enigma's secured

19 claim.  All it does is grow its deficiency claim, further

20 commuting recoveries to unsecured creditors, which I'm sure is

21 not something that Ms. LoTempo -- LoTempio, pardon me, or her

22 colleagues would want to see.

23          I'd also add that a repeatedly cited justification is

24 administrative expense burn, and yet at the same time, the

25 debtors are seeking nunc pro tunc relief.  In other words, how

1  are there administrative expenses if these are all being

2  rejected retroactively?

3          So for each of the foregoing reasons, I would posit

4  that it's in everyone's best interests, not just Enigma's, to,

5  instead of engage in a series of ad hoc fire sales -- which I'm

6  sure the debtor and Mr. James and his colleagues would all

7  agree do not as a general proposition, tend to fetch the

8  highest and best price -- that we should instead conduct an

9  orderly liquidation of the debtor's fleet.  And it sounds to me

10 from Mr. James's testimony that the debtor has received at

11 least two different proposals to date from liquidators who want

12 to do just that.

13         So with that in mind, Your Honor, Enigma's request,

14 it's pretty simple:  Preserve the status quo just for a few

15 short weeks and we can revisit this issue after the auction.  I

16 think that's really the only way that the parties can make a

17 truly informed decision as to what's really best for the

18 estate.  Thank you.

19         THE COURT:  Okay.  Thank you.  All right.

20 Ms. McPherson, response?

21         MS. MCPHERSON:  Your Honor, first, I'd like to

22 know -- I don't believe that Enigma has any issue with the

23 request for rejection or the request for stay relief.  It --

24 this all comes down to the issue of abandonment.  And while

25 Enigma says, well, you know, we're just speculating, I believe

1  this is Enigma speculating and really just hoping -- it's kind

2  of a Hail Mary at this point -- that somebody will come along

3  and take their machines from them.

4        Enigma has the right to go and take their machines.

5  They just don't want to because they don't know what to do with

6  them, they don't have value.  And that's really the standard

7  here, which is under 554, these machines don't have value to

8  the estate.  A secured creditor shouldn't be and doesn't have

9  the authority to come forward and say to a debtor, you got to

10  keep hanging on to my collateral until I can decide whether I'm

11  going to come and pick it up, or just let you dispose of it.

12  That's not the standard under 554.

13        In this case, Your Honor, these motions were filed

14  because the debtor and its financial advisor have determined

15  that these contracts and leases don't have value to the estate

16  and there are no real indicators there's real -- meaning

17  parties who have expressed an interest in these leases and the

18  equipment, you know, other than what's been provided in the

19  documents -- that makes any difference.  So for your -- for

20  that, Your Honor, there's the -- what Enigma is arguing is just

21  hope that somebody's going to come along.

22        RockItCoin has expressed that they would be

23  interested in some leases that are part of these motions, but

24  they have not asked us to withdraw the motions or take certain

25  locations off the motions because they're only partial.

1   There's only a partial interest.  And they recognize that

2   they're going to have to speak with these parties outside of --

3   if the -- after the contracts are rejected, because they don't

4   want necessarily the whole contract.

5          So, Your Honor, in addition, these motions -- this

6   motion -- these motions have been pending, obviously, since

7   March.  During this time, Enigma has had the opportunity to

8   address this issue.  And that -- I believe that was the reason

9   why we stipulated to continue.  And still nothing has come of

10  the disposal of the remaining property or kiosks.  So, Your

11  Honor, during that time, nothing's happened, yet we're supposed

12  to believe that something's going to happen going forward.

13         The debtor intends on selling its assets shortly.

14  That will happen and what's left will be liquidated.  So

15  there's really no reason why everything should continue to be

16  held up for Enigma who has rights to its collateral.  It just

17  doesn't want to exercise them because it believes something

18  better is going to come along.  And this is prejudicial to

19  other creditors.  There is the risk that these are ongoing

20  expenses and they are administrative expenses, and the debtor

21  should not be held up simply because Enigma doesn't want to go

22  pick up its collateral.

23         So for those reasons, Your Honor, we believe that the

24  standards for rejection and the standards for abandonment have

25  been satisfied and that, again, a secured creditor who just has

1    hope that something might happen -- and it's not really based

2    on more than hope -- should not hold up motions that are

3    properly supported and properly based on the applicable

4    standards under the Bankruptcy Code and case law.

5            So for those reasons, Your Honor, we would request

6    that the motions be granted as set forth and in their entirety.

7    Thank you.

8            THE COURT:  Okay.

9            MS. MCPHERSON:  Oh, and one other thing, Your Honor,

10   I would like to note that Enigma is a consultation party so

11   they have been apprised of what has been going on in this case,

12   in addition.  Thank you, Your Honor.

13           THE COURT:  Okay.  Thank you.  All right.

14   Ms. LoTempio, on behalf of the creditors' committee, is there

15   anything else to add?

16           MS. LOTEMPIO:  Thanks, Your Honor.  Catherine

17   LoTempio on behalf of the official committee.  Nothing else to

18   add.  As we stated, we have no objection and we defer to the

19   debtor's business judgment here.

20           THE COURT:  Okay.  Thank you.

21           MS. LOTEMPIO:  Thank you.

22           THE COURT:  All right.  Thank you.  Mr. Valencia, any

23   input from the U.S. Trustee's office?

24           MR. VALENCIA:  Justin Valencia appearing for the

25   United States Trustee.  We're just here to monitor these last

1 | few issues in this case, Your Honor.

2 |        THE COURT:  Okay.  Thank you.  All right, Counsel,

3 | the Court has considered each of the four separate motions.

4 | The motions are supported by somewhat common declarations of

5 | Mr. McAlary as the representative of the debtor in the matter.

6 | They're also supported by the declarations of Mr. James as the

7 | representative of the financial consultant.  The Court has

8 | reviewed all of the declarations.  The Court has also paid

9 | particular attention to the response that was filed this

10 | afternoon that includes Mr. James's answers to the various

11 | interrogatories that were submitted on behalf of Enigma last

12 | week.

13 |        The Court notes that these motions were all commonly

14 | filed on March 23 of 2023.  The objection that was filed by

15 | Enigma was, I believe, filed on May 4th.  During the 42-day

16 | period between that time, this is -- this was, is, and always

17 | has been, a contested matter for which discovery was available

18 | under Bankruptcy Rule 9014.  During that period of time, if

19 | there were some reservations about the business judgment

20 | expressed by Mr. McAlary in the -- his original declarations,

21 | and any reservations about the views undertaken by Mr. James,

22 | they could have been explored more thoroughly, perhaps by

23 | depositions or requests for an actual evidentiary hearing on

24 | the motions, but those requests did not arise.  There was the

25 | desire to move the matter quickly, and that's why the

1  interrogatory approach was taken and counsel would be

2  congratulated for that.

3           Based on all of this information before the Court,

4  the Court understands, obviously, that there may be some

5  dispute or at least disagreement on the intrinsic value of

6  various of the machines versus their actual market value.

7  There is a concern that there may be some prejudice to Enigma

8  and others, but there's also a burden to the bankruptcy estate

9  itself that goes into the mix of how you exercise business

10  judgment in the particular case.  One hopes that this doesn't

11  become an actual $64,000 question, but once business judgment

12  is exercised, there are always risks involved.

13           In this particular proceeding, the Court has no

14  evidence before it that the risk undertaken and the business

15  judgment being exercised is being exercised in bad faith or for

16  a lack of good faith or anything other than the fact that some,

17  in certain circumstances, people may disagree.  And that's the

18  situation before the Court.

19           So the Court has examined the motions, all four of

20  them, within the prism of the rejection of executory contracts

21  and leases under Section 365, the abandonment of property as

22  having inconsequential value or benefit of the estate under

23  Section 554, and also has considered whether cause would exist

24  to permit relief from stay under Section 362.  Having looked at

25  the evidence and considering all of the arguments, the Court

1  concludes that the debtor has met its burden of proof by a

2  preponderance of evidence that rejection is appropriate under

3  Section 365 of the specific contracts and/or leases that are

4  specified in the motions themselves -- and each one of the

5  motions have different lists of those types of items -- that

6  abandonment also is appropriate if necessary, and that stay

7  relief is warranted.

8           For that reason, each of the four motions will be

9  granted.  I will direct Ms. McPherson to prepare the

10  appropriate orders, incorporating by reference only, the

11  Court's oral ruling in this matter.

12           Mr. Kissner, do you want to sign off on the order?

13           MR. KISSNER:  Sure.  I'd love to take a look.  Thank

14  you, Your Honor.

15           THE COURT:  Okay.  All right.  Ms. LoTempio, do you

16  want to sign off on the order?

17           MS. LOTEMPIO:  Yes, Your Honor.  Thank you.

18           THE COURT:  Okay.  Mr. Valencia, do you want to sign

19  off on the order?

20           MR. VALENCIA:  Justin Valencia for the U.S. Trustee.

21  The U.S. Trustee will waive.

22           THE COURT:  Okay.  All right, Ms. McPherson, go ahead

23  and prepare this and submit the orders on Items 2, 3, 4, and 5

24  on today's calendar.  All right?

25           MS. MCPHERSON:  Thank you, Your Honor.

1              THE COURT:  All right.  Thank you.  That concludes

2    the Cash Cloud matters.

3         (Proceedings concluded at 2:37 p.m.)

4                                  *  *  *  *  *

5

6

7

8

9

10

11

12

13

14

15

16                   C E R T I F I C A T I O N

17

18              I, Teresa Saint-Amour, do hereby certify that the

19    foregoing is a correct transcript from the electronic sound

20    recording provided for transcription and prepared to the best

21    of my professional skills and ability.

22

23    _____

24    TERESA SAINT-AMOUR, AAERT NO. 2020   Dated:  July 17, 2023

25    ACCESS TRANSCRIPTS, LLC