BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
Law Office of Brian D. Shapiro, LLC
510 S. 8th Street
Las Vegas, NV 89101
Telephone: (702) 386-8600
Facsimile: (702) 383-0994
*Attorney for OptConnect Management, LLC*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC.<br>dba COIN CLOUD<br><br>Debtor. | Case No. 23-10423-mkn<br>Chapter 11<br><br>APPLICATION FOR<br>ADMINISTRATIVE CLAIM |

OptConnect Management, LLC, by and through the Law Office of Brian D. Shapiro, hereby submits its application for administrative claim in accordance with the Court Order entered on July 11, 2023 (ECF No. 823). A copy of the administrative claim is attached hereto as Exhibit 1.

Dated  July 19, 2023                 */s/ Brian D. Shapiro, Esq.*
                                         BRIAN D. SHAPIRO, ESQ.
                                         Nevada Bar No. 5772
                                         Law Office of Brian D. Shapiro, LLC
                                         510 S. 8th Street
                                         Las Vegas, NV 89101
                                         Telephone: (702) 386-8600
                                         Facsimile: (702) 383-0994
                                         Attorney for
                                         OptConnect Management, LLC

## CERTIFICATE OF SERVICE

On July 19, 2023, this pleading was served electronically to all registered users in this case by the Court's CM/ECF System including the following:

RYAN A. ANDERSEN on behalf of Interested Party Luis Flores
ryan@aandblaw.com, tatiana@aandblaw.com;melissa@aandblaw.com;ecf-df8b00a4597e@ecf.pacerpro.com;valerie@aandblaw.com;andersen.ryana.b117998@notify.bestcase.com

BRETT A. AXELROD on behalf of Debtor CASH CLOUD, INC.
baxelrod@foxrothschild.com,
pchlum@foxrothschild.com;mwilson@foxrothschild.com;arcdocketing@foxrothschild.com

BRETT A. AXELROD on behalf of Plaintiff CASH CLOUD, INC., DBA COIN CLOUD
baxelrod@foxrothschild.com,
pchlum@foxrothschild.com;mwilson@foxrothschild.com;arcdocketing@foxrothschild.com

BRETT A. AXELROD on behalf of Plaintiff CASH CLOUD, INC., DBA COIN CLOUD,
baxelrod@foxrothschild.com,
pchlum@foxrothschild.com;mwilson@foxrothschild.com;arcdocketing@foxrothschild.com

BRETT A. AXELROD on behalf of Plaintiff CASH CLOUD, INC., dba COIN CLOUD
baxelrod@foxrothschild.com,
pchlum@foxrothschild.com;mwilson@foxrothschild.com;arcdocketing@foxrothschild.com

LEW BRANDON, JR. on behalf of Attorney UNITED NATURAL FOODS, INC.
l.brandon@bsnv.law

LEW BRANDON, JR. on behalf of Debtor CASH CLOUD, INC.
l.brandon@bsnv.law

OGONNA M. BROWN on behalf of Creditor Cole Kepro International, LLC
obrown@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com,ombcalendar@lewisroca.com;jhess@lewisroca.com,klopez@lewisroca.com,rcreswell@lewisroca.com

OGONNA M. BROWN on behalf of Defendant COLE KEPRO INTERNATIONAL, LLC
obrown@lewisroca.com, ogonna-brown-4984@ecf.pacerpro.com,dberhanu@lewisroca.com,ombcalendar@lewisroca.com;jhess@lewisroca.com,klopez@lewisroca.com,rcreswell@lewisroca.com

LOUIS M BUBALA, III on behalf of Interested Party BROOKFIELD RETAIL PROPERTIES, INC.

lbubala@kcnvlaw.com, cdroessler@kcnvlaw.com;sstice@kcnvlaw.com

CHAPTER 11 - LV
USTPRegion17.lv.ecf@usdoj.gov

SHAWN CHRISTIANSON on behalf of Creditor ORACLE AMERICA, INC.
schristianson@buchalter.com, cmcintire@buchalter.com

DAWN M. CICA on behalf of Interested Party CHRIS MCALARY
dcica@carlyoncica.com,
nrodriguez@carlyoncica.com;crobertson@carlyoncica.com;dmcica@gmail.com;dcica@carlyo
ncica.com;tosteen@carlyoncica.com;3342887420@filings.docketbird.com

CRAIG P. DRUEHL on behalf of Creditor OPTCONNECT MANAGEMENT, LLC
craig.druehl@dechert.com

ANNE FREELAND on behalf of Creditor AVT Nevada, L.P.
atfreeland@michaelbest.com, knpowell@michaelbest.com;courtmail@michaelbest.com

NEDDA GHANDI on behalf of Creditor ROCKITCOIN, LLC
nedda@ghandilaw.com,
lks@ghandilaw.com,nedda@ecf.inforuptcy.com;r41525@notify.bestcase.com,shara@ghandil
aw.com

RONALD E. GOLD on behalf of Creditor WPG Legacy, LLC
rgold@fbtlaw.com,
jkleisinger@fbtlaw.com;eseverini@fbtlaw.com;sbryant@ecf.courtdrive.com

MARJORIE A. GUYMON on behalf of Creditor Trangistics, Inc.
bankruptcy@goldguylaw.com,
mariaa@goldguylaw.com;lauriea@goldguylaw.com;amarisp@goldguylaw.com;kathrinev@go
ldguylaw.com

MARJORIE A. GUYMON on behalf of Creditor Armondo Redmond
bankruptcy@goldguylaw.com,
mariaa@goldguylaw.com;lauriea@goldguylaw.com;amarisp@goldguylaw.com;kathrinev@go
ldguylaw.com

BRIGID M. HIGGINS on behalf of Creditor Black Hole Investments fna EZ Coin, LLC
bhiggins@blackwadhams.law,
dmeeter@blackwadhams.law;mstallsworth@blackwadhams.law;mdavis@blackwadhams.law

JAMES M JIMMERSON on behalf of Plaintiff CASH CLOUD, INC., DBA COIN CLOUD
jmj@jimmersonlawfirm.com

ROBERT R. KINAS on behalf of Creditor GENESIS GLOBAL HOLDCO, LLC

rkinas@swlaw.com,
jmath@swlaw.com;mfull@swlaw.com;docket_las@swlaw.com;sdugan@swlaw.com;jfung@swlaw.com

BART K. LARSEN on behalf of Creditor Enigma Securities Limited
BLARSEN@SHEA.LAW, 3542839420@filings.docketbird.com

TIMOTHY A LUKAS on behalf of Creditor Good 2 Go Stores LLC
ecflukast@hollandhart.com

JEANETTE E. MCPHERSON on behalf of Debtor CASH CLOUD, INC.
JMcPherson@FoxRothschild.com,
ahosey@foxrothschild.com,ARCDocketing@foxrothschild.com

JEANETTE E. MCPHERSON on behalf of Plaintiff CASH CLOUD, INC., dba COIN CLOUD
JMcPherson@FoxRothschild.com,
ahosey@foxrothschild.com,ARCDocketing@foxrothschild.com

STACY H RUBIN on behalf of Defendant LUX VENDING, LLC d/b/a BITCOIN DEPOT
srubin@nevadafirm.com, oswibies@nevadafirm.com;mholley@nevadafirm.com

STACY H RUBIN on behalf of Interested Party LUX VENDING, LLC d/b/a BITCOIN DEPOT
srubin@nevadafirm.com, oswibies@nevadafirm.com;mholley@nevadafirm.com

ADAM P. SCHWARTZ on behalf of Defendant LUX VENDING, LLC d/b/a BITCOIN DEPOT
aschwartz@carltonfields.com, amaranto@carltonfields.com

ADAM P. SCHWARTZ on behalf of Interested Party LUX VENDING, LLC d/b/a BITCOIN DEPOT
aschwartz@carltonfields.com, amaranto@carltonfields.com

BRIAN D. SHAPIRO on behalf of Creditor OPTCONNECT MANAGEMENT, LLC
brian@brianshapirolaw.com,
kshapiro@brianshapirolaw.com;6855036420@filings.docketbird.com

JAMES PATRICK SHEA on behalf of Creditor Enigma Securities Limited
jshea@shea.law, blarsen@shea.law;support@shea.law

STRETTO
ecf@cases-cr.stretto-services.com, aw01@ecfcbis.com,pacerpleadings@stretto.com

Jeffrey R. Sylvester on behalf of Interested Party CKDL Credit, LLC
jeff@sylvesterpolednak.com, kellye@sylvesterpolednak.com

RONALD M TUCKER on behalf of Creditor SIMON PROPERTY GROUP, INC.
rtucker@simon.com, rwoodruff@simon.com,cmartin@simon.com,ptropepe@simon.com

U.S. TRUSTEE - LV - 11
USTPRegion17.lv.ecf@usdoj.gov

MAURICE VERSTANDIG on behalf of Creditor Brink's, Inc.
mac@mbvesq.com, lisa@mbvesq.com;verstandig.mauricer104982@notify.bestcase.com

MICHAEL L WACHTELL on behalf of Creditor ORACLE AMERICA, INC.
mwachtell@buchalter.com

ZACHARY WILLIAMS on behalf of Plaintiff CASH CLOUD, INC., dba COIN CLOUD
zwilliams@foxrothschild.com,
ARCDocketing@foxrothschild.com;ahosey@foxrothschild.com

STUART FREEMAN WILSON-PATTON
stuart.wilson-patton@ag.tn.gov

RYAN J. WORKS on behalf of Creditor Committee OFFICIAL COMMITTEE OF
UNSECURED CREDITORS
rworks@mcdonaldcarano.com, kkirn@mcdonaldcarano.com;bgrubb@mcdonaldcarano.com

On July 19, 2023, I also served this pleading by overnight mail to the following parties:

| | |
|---|---|
| Brett Axelrod<br>Fox Rothschild LLP<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, Nevada 89135 | Jeffrey Sylvester<br>Sylvester & Polednak, Ltd.<br>1731 Village Center Circle<br>Las Vegas, NV 89134 |
| Jordi Guso<br>Berger Singerman LLP<br>1450 Brickell Avenue, Suite 1900<br>Miami, FL 33131 | Sean A. O'Neal<br>Jane VanLare<br>Cleary Gottlieb Steen & Hamilton LLP<br>One Liberty Plaza<br>New York, NY 10006 |
| Gary S. Lee<br>Andrew Kissner<br>Morrison & Foerster LLP<br>250 West 55th Street<br>New York, NY 10019 | James Patrick Shea<br>Shea Larsen<br>1731 Village Center Circle, Suite 150<br>Las Vegas, NV 89134 |
| John R. Ashmead<br>Robert J. Gayda<br>Seward & Kissel LLP<br>One Battery Park Plaza<br>New York, New York 10004 | Ryan J. Works<br>McDonald Carano Wilson LLP<br>2300 W. Sahara Ave., Suite 1200<br>Las Vegas, NV 89102 |
| Jared A. Day<br>Office of the United States Trustee<br>300 Las Vegas Boulevard S., Suite 4300<br>Las Vegas, NV 89101 | |

Dated <u>July 19, 2023</u>

<u>*/s/ Brian D. Shapiro, Esq.*</u>
BRIAN D. SHAPIRO, ESQ.
Nevada Bar No. 5772
Law Office of Brian D. Shapiro, LLC
510 S. 8th Street
Las Vegas, NV 89101
Telephone:  (702) 386-8600
Facsimile:  (702) 383-0994
Attorney for    OptConnect Management, LLC

-6-

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA

**ADMINISTRATIVE
CLAIM FORM**

| In re: Cash Cloud, Inc. | Case No. 23-10423-mkn | **PLEASE NOTE:** |
|---|---|---|
| | □ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. | *This form should only be used to assert an administrative expense claim that arose or accrued after February 6, 2023, but before July 21, 2023.* |
| **Name of Creditor and Address:** the person or other entity to whom the debtor owes money or property<br><br>**OptConnect Management, LLC**<br>865 W 450 N, Suite 1<br>Kaysville, UT, 84037<br>chris.baird@optconnect.com | □ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>□ Check box if the address differs from the address on the envelope sent to you by the court. | |
| | | **THIS SPACE IS FOR COURT USE ONLY** |
| Creditor Telephone Number ( 801) 444-5978 | | |
| Name and address where notices should be sent (if different from above): | | |
| Creditor Telephone Number (     ) | | |
| Account or other number by which creditor identifies debtor: | Check here if this claim: □ replaces<br>       □ amends a previously filed claim, dated: | |

**1. Basis for Claim:**
  See Statement Attached.

**2. Date debt was incurred:** See Statement Attached

**3. Brief description of claim, including the basis for the priority nature of the claim (if any) (attach additional information):**
  See Statement Attached

**4. Total Amount of Administrative Claim: $** Not less than $1,106,151.00. See Statement Attached

□ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. CREDITS**: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**6. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court documents, mortgages security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**7. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped self-addressed envelope and copy of this proof of claim.

| The original of this completed proof of claim form must be filed electronically on or before 5:00 p.m. Prevailing Pacific Time on July 20, 2023 through the Court's CM/ECF System or mailed to the address below <u>so that it is received</u> by the Clerk of the Bankruptcy Court for the District of Nevada at the address below on or before 5:00 pm Prevailing Pacific Time on July 20, 2023.<br><br>Clerk of the United States Bankruptcy Court, District of Nevada<br>300 Las Vegas Blvd. South, Las Vegas, NV 89101 | THIS SPACE IS FOR COURT USE ONLY |
|---|---|

| DATE<br><br>7 · 12 · 23 | SIGNATURE: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571.*

**STATEMENT IN SUPPORT OF PROOF OF**
**ADMINISTRATIVE EXPENSE CLAIM OF**
**OPTCONNECT MANAGEMENT, LLC**

OptConnect Management, LLC ("**OptConnect**"), hereby submits the following statement (the "**Statement**") in support of its proof of administrative expense claim (the "**Proof of Administrative Expense Claim**") filed against Cash Cloud, Inc. dba Coin Cloud (the "**Debtor**") in the Debtor's chapter 11 case (the "**Chapter 11 Case**") pending before the United States Bankruptcy Court for the District of Nevada, Case No. BK-23-10423-mkn.

1.      OptConnect, a Utah limited liability company based in Keysville, Utah, offers a wide range of wireless, cellular data, support and connectivity services, as well as products and solutions that enable its customers to connect to the internet.

2.      OptConnect and the Debtor had a long-standing business relationship in which OptConnect was the exclusive provider of internet and connectivity services to the Debtor's digital currency machines ("**DCMs**") distributed nationwide.

3.      On or around December 15, 2022, OptConnect entered into a Master Products and Services Agreement (the "**MSA**") and an Addendum to the MSA (the "**Addendum**") with the Debtor.  Both the MSA and the Addendum govern the transactions among the parties (collectively the MSA and the Addendum, the "**Agreements**").

4.      On June 29, 2023, the Debtors filed an *Emergency Motion for Entry of an Order Establishing Administrative Claim Bar Date for Filing Proofs of Administrative Expense Claim and Approving Form, Manner and Sufficiency of Notice Thereof; Memorandum of Points and Authorities in Support Thereof* [Docket No. 789] (the "**Administrative Bar Date Motion**"). By the Administrative Bar Date Motion, the Debtor sought to establish 5:00 p.m. (prevailing Pacific Time) on July 20, 2023 as the deadline to assert administrative expense claims.

5.      On July 11, 2023, the Court entered the *Order Establishing Administrative Claim Bar Date for Filing Proofs of Administrative Expense Bar Claim and Approving Form, Manner and Sufficiency of Notice Thereof* [Docket No. 823] (the "**Administrative Bar Date Order**"). The Administrative Bar Date Order sets July 20, 2023, at 5:00 p.m. (prevailing Pacific Time) as the deadline for filing administrative expense claims against the Debtor.

6.      During the course of the Chapter 11 Case, OptConnect continued in good faith to provide post-petition services and leased products to the Debtor under the terms of the Agreements,

which provided tangible value to the Debtor's estate. Pursuant to sections 503(b)(1)(A) and 507(a)(2) of the Bankruptcy Code, OptConnect seeks allowance and payment of an administrative expense claim in the aggregate amount of not less than **$1,106,151.00** (the "**Administrative Expense Claim**") for amounts outstanding.

7.    The Administrative Expense Claim is summarized on the chart below:

| Invoice / Credit Memo | Amount | Description |
|---|---|---|
| **INV514900** | $107,860 | April 2023 Overage Fees |
| **INV508655** | $244,618 | April 2023 Regular Monthly Services |
| **INV520503** | $58,025 | May 2023 Overage Fees |
| **CM746877, CM746876** | $175,830 | Credit Memos Reversed[1] |
| **N/A** | $519,818 | Post-Petition Services Amount based on existing Agreements[2] |
| **Total Administrative Expense Claim Amount:** | \multicolumn{2}{c} **$1,106,151.00** |

8.    The Administrative Expense Claim is based on the Agreements and related documents. Copies of the Agreements, relevant unpaid invoices and credit memos are attached hereto as Exhibit A. OptConnect has not attached copies of additional documents because of their voluminous nature. OptConnect will provide copies of such documents to any party in interest in these cases, upon a reasonable written request (and entry into an appropriate confidentiality agreement, if applicable) to OptConnect, or its counsel, at the addresses set forth herein.

9.    The filing of this Proof of Administrative Expense Claim shall not be deemed a waiver of any claim, at law or in equity, filed or to be filed, that OptConnect may have against the Debtor, any guarantor or obligor (including but not limited to Christopher Andrew McAlary),

---

[1]    During the Chapter 11 Case, OptConnect provided services and lease products to the Debtor. The Debtor represented to OptConnect that the Agreements would be assumed, and the parties negotiated reduced rates to be included in an amendment to the Agreements to be executed concurrently with the assumption of the Agreements.

The Debtor requested that OptConnect calculate post-petition invoices based on these reduced fees, provided that the Agreements were actually assumed by the Debtors and properly amended. OptConnect accepted the Debtor's request in good faith. Despite weeks of negotiations, and while the parties were preparing the execution of the amendments, the Debtor repudiated its agreement and informed OptConnect of its intention to reject OptConnect's Agreements. As a result of the Debtor's decision to reject the Agreements, the Credit Memos issued by OptConnect during the Chapter 11 Case reflecting the reduced rates were reversed, and any discount to the amounts due under the Agreements does not apply.

[2]    See previous note.

2

including, but not limited to, additional administrative claims, priority claims, rejection claims, constructive trust claims, or reimbursement of legal fees claims.

10.     OptConnect expressly reserves the right to amend, update, or supplement this Proof of Administrative Expense Claim at any time and in any respect (including, without limitation, as necessary or appropriate to amend, quantify, or correct amounts, to provide additional detail regarding the claims set forth herein, or to include any claim, at law or in equity), or to add or amend documents and other information.

11.     Any and all notices and communications concerning the Proof of Administrative Expense Claim should be sent to the following addresses both in writing and via email: **OptConnect Management, LLC,** 865 W 450 N, Suite 1, Kaysville, UT  84037, Attn: Chris Baird (chris.baird@optconnect.com), with a copy to Douglas Mannal (douglas.mannal@dechert.com) and Isaac Stevens (isaac.stevens@dechert.com), **Dechert LLP**.

Chris Baird,

President and CEO

OptConnect Management, LLC

Dated: July 12, 2023.

3

## EXHIBIT A

**Supporting Documents**



## MASTER PRODUCTS AND SERVICES AGREEMENT

This Master Products and Services Agreement (this "*MSA*") is the governing document for the transactions between OptConnect Management LLC ("*OptConnect*") and its customer designated below or in an accompanying Customer Order (the "*Customer*") who is purchasing, renting or using the products and services offered by OptConnect. This signed MSA, and its accompanying Addendum, both to be effective on December 1st, 2022 (the "Effective Date") supersede and replace the prior master service agreements that have governed Customer's relationship with OptConnect, but not the Customer Orders issued thereunder.

### Recitals

OptConnect has developed certain wireless and cellular connectivity solutions whereby it provides wireless routers, modems, SIM cards and other equipment and hardware (the "*Products*") and machine-to-machine wireless and cellular data and support services (the "*Services*") for the Customer's unattended machinery and equipment. Customer desires to either purchase the Products ("*Purchased Products*") or rent the Products ("*Rented Products*"), as elected in the Customer Order (as defined below), and in conjunction with either Purchased Products or Rented Products, subscribe to the Services from OptConnect, in all cases subject to the terms and conditions set forth in this MSA and the Customer Order.

### Agreement

1.    Nature of Agreement. This MSA is a master contract providing the terms and conditions upon which OptConnect may provide the Products and Services to Customer pursuant to the issuance of one or more Customer Orders (as defined below), each of which shall be governed by this MSA. This MSA and the Customer Orders issued pursuant to the terms of this MSA shall remain in full force and effect until terminated as set forth herein.

2.    Term. The term of this MSA (the "*Term*") shall commence on the Effective Date and shall continue until the later of: (i) one (1) year from the Effective Date, (ii) the termination or expiration of the last outstanding Customer Order, and (iii) the repayment of any amounts due from Customer.  Each Customer Order will extend through the term set forth in such Customer Order, and at the end of such term shall automatically renew for additional one-year terms unless terminated by either party by written notice provided at least thirty (30) days prior to the date of renewal. Notwithstanding the foregoing, the termination of this MSA shall not extinguish, modify or affect in any way the rights and obligations of the parties set forth in this MSA or any Customer Order issued and entered into by the parties prior to the date of such termination, to the extent this MSA or any such Customer Order makes clear that such rights and obligations survive such termination.

3.    Customer Orders. From time to time, Customer may issue a purchase order or OptConnect may prepare a customer order in response to a communication from Customer (in either case, a "*Customer Order*") that indicates Customer's desire to purchase or rent specified Products and subscribe for the Services within the terms of this MSA. The Customer Order shall include, without limitation, the type and number of Products Customer desires to purchase or rent, which Services Customer desires to receive, the term, the prices and other charges of the purchase, rental and service, and such other terms as OptConnect and Customer may determine. Upon OptConnect's acceptance of the Customer Order, OptConnect shall provide the designated Products and Services pursuant to the terms and conditions of the Customer Order and this MSA.  The terms of a Customer Order prepared by Customer shall not supersede or amend any terms of this MSA even if the Customer Order is accepted by OptConnect.

4.    Delivery of Products. Unless otherwise provided in a Customer Order, all Purchased Products are sold to Customer F.O.B. OptConnect's shipping dock located at 865 West 450 North, Suite 1, Kaysville, Utah 84037, and possession of and risk of loss or damage to such Purchased Products shall immediately pass to Customer at such time as the Purchased Products are delivered at the foregoing shipping dock to a common carrier for delivery to Customer. Products delivered in error shall be returned to OptConnect at its sole expense.

5.    Nature of Products. Customer agrees and acknowledges that the Products it purchases or rents from OptConnect may be new or refurbished Products, as determined in the sole discretion of OptConnect. Customer also agrees and acknowledges that the Products are only compatible and authorized to be used in connection with wireless and cellular data and support services provided by OptConnect.

6/2022

1

6.    Product Maintenance Plan. If any Purchased Product or Rented Product fails to perform within the maintenance plan replacement period set forth in the applicable Customer Order for such non-performing Product, OptConnect shall replace the non-performing Product, at no charge to Customer, as long as Customer is current in paying all of Customer's per unit monthly service charges set forth in all of Customer's Customer Orders. The replacement plan for Purchased Products shall be for three (3) years from purchase, and for Rented Products at any time during the rental term. The foregoing replacement obligation does not apply to any Purchased Product that ceases to be supported by a wireless network carrier, and OptConnect does not warrant that the Products will be supported by any specific wireless network carrier for any specific length of time. Upon notification from Customer and upon OptConnect's diagnosis of the problem with such non-performing Product, OptConnect shall ship to Customer, by standard ground shipping for purchased product and standard overnight for rented product, and at no cost to Customer, new or refurbished replacement Product. Customer must return the non-performing Product to OptConnect using the prepaid shipping label provided by OptConnect. For a Purchased product, if Customer fails to ship the non-performing Product to OptConnect within 20 days of Customer's receipt of the replacement Product, Customer shall pay OptConnect the sum of $300 per unit. For a Rented Product, if Customer fails to ship the non-performing Product to OptConnect within 20 days of Customer's receipt of the replacement Product, the replacement Product will be added to the Customer Order under which Customer ordered the non-returned, nonperforming Product and Customer shall be responsible for paying the per unit monthly charges for its rental of the rented replacement Product and its purchase of the Services in the amounts set forth in such Customer Order.

7.    Pricing and Payment. Customer agrees to pay the per unit purchase prices for its purchase of the Purchased Products and the per unit monthly rental charges for its Rented Products and its monthly or prepaid single- or multi-year service fees for the subscription to the Services in the amounts set forth in each applicable Customer Order. The monthly data Service fee is based on data expected to be used across all of the Products covered by the Customer Orders that are on the same data plan pooled together. If Customer's pooled data usage exceeds the plan amount in any monthly billing period, OptConnect will charge Customer an additional data overage fee as set forth in the Customer Order. Upon the occurrence of a data overage, Customer may elect to move to a higher data plan the following month. The per unit purchase prices for Customer's Purchased Products and the first month's monthly service charges for Customer's rental of the Rented Products and its subscription to the Services, plus shipping and handling, will be billed to Customer and a payment will be processed by OptConnect to Customer's bank account via Automated Clearing House (ACH) prior to OptConnect's shipping of the purchased and/or rented Products. Subsequent months' per unit monthly rental and service charges for all Customer Orders entered into by Customer and OptConnect will be consolidated and billed, and a payment will be processed via ACH to Customer's bank account on or near the same day of each month. However, OptConnect reserves the right to pro-rate Customer's first month's per unit monthly service and rental charges to accommodate the consolidation of Customer's billing. If the term under a Customer Order renews automatically as provided herein, OptConnect may adjust the price of the Services provided in that renewal term upon written notice to the Customer delivered at least 45 days prior to the renewal date. At its discretion OptConnect may establish payment terms with the Customer which will not require ACH payments, including payments by wire or check. In the event of any late payment of any amounts due hereunder or in a Customer Order, such amounts shall accrue interest at the lesser of 1.5% per month or the maximum amount allowed under applicable law. Payments under any Customer Order made by credit card shall result in an additional transaction fee equal to the amount of the applicable fee payable to the credit card company.

8.    Fees Payable Upon Termination. Upon termination by Customer of this MSA or a Customer Order for Products and Services, Customer agrees to promptly pay OptConnect, if applicable: (i) in full for all monthly fees due under the remaining term of the Customer Order for the Services if the Customer Order is for Purchased Products; (ii) in full for the remaining monthly fees due under the remaining term of the Customer Order for the Rented Products and Services if the Customer Order is for Rented Products; (iii) a "deactivation fee" equal to $25 for each Purchased Product that is terminated prior to the end of the term of the Customer Order; and (iv) an "unreturned product fee" of $180 for each Rented Product that is not returned to OptConnect within 20 days of the termination date in good working order. The foregoing payment obligations of Customer shall survive the termination of any Customer Order or this MSA, and Customer agrees and acknowledges that OptConnect retains all right, title and interest in and to any Rented Products provided to Customer under a Customer Order. Upon termination of a Customer Order that includes prepaid Services, there will be no right to a refund of those fees.

9.    Changes to Services. OptConnect reserves the right to modify the terms of the Services provided under any Customer Order at any time during the term of this MSA to pass through changes to the cost to OptConnect of providing those Services.

10.    Proprietary Information. Customer acknowledges and agrees that: (a) the Products and Services and all information relating thereto or to OptConnect's business contain certain proprietary information, rights, processes, designs, technology and trade secrets (the "*Proprietary Information*"); (b) the Proprietary Information is and at all times shall remain the exclusive property of OptConnect; (c) Customer shall not (i) directly or indirectly, intentionally or unintentionally, reveal, disclose, furnish, publish, make accessible or disseminate to any person or entity who is not employed by Customer any Proprietary Information, unless already generally known to and available for use by the public, (ii) ever use or exploit any Proprietary Information for the financial gain of

6/2022

Customer or any other <u>person</u> or entity or for any other purpose, or (iii) during the term of this MSA solicit, divert, or induce any of the employees of OptConnect to leave the employ of OptConnect and become the employee or independent contractor of Customer or an affiliate of Customer; (d) upon the termination of this MSA or the earlier request by OptConnect, Customer shall promptly return to OptConnect all Proprietary Information then in Customer's possession or control; and (e) OptConnect will incur incalculable and irreparable damage for any breach by Customer of any covenant set forth in this paragraph, and that OptConnect and/or its affiliates shall be entitled to injunctive relief restraining Customer from such continuing and/or threatened breach.

11.     <u>Acceptance; Limitation of Warranties and Liability</u>. OPTCONNECT WARRANTS THAT THE PRODUCTS AND SERVICES SHALL BE OF STANDARD QUALITY IN THE INDUSTRY. OPTCONNECT'S SOLE RESPONSIBILITY FOR, AND CUSTOMER'S SOLE AND EXCLUSIVE REMEDY WITH RESPECT TO, NON-PERFORMING PRODUCTS SHALL BE REPLACEMENT WITH THE SAME TYPE OF PRODUCT ORDERED, AS SET FORTH IN SECTION 6 ABOVE. THE SERVICES PROVIDED WITH THOSE PRODUCTS ARE MADE AVAILABLE TO CUSTOMER THROUGH THIRD-PARTY INTERNET SERVICE PROVIDERS, AND THE WARRANTIES AND SERVICE COMMITMENTS OF THOSE SERVICE PROVIDERS ARE AVAILABLE TO THE EXTENT AVAILABLE TO OTHER CUSTOMERS OF THOSE SERVICE PROVIDERS. THE FOREGOING OBLIGATION OF OPTCONNECT TO REPLACE NON-PERFORMING PRODUCTS OR OF THE INTERNET SERVICE PROVIDER ARE CUSTOMERS SOLE RECOURSE. NEITHER OPTCONNECT NOR THE SERVICE PROVIDER MAKES ANY WARRANTY THAT THE SERVICE WILL BE UNINTERRUPTED, SECURE OR ERROR FREE, OR THAT DEFECTS IN THAT SERVICE WILL BE CORRECTED. ADDITIONALLY, OPTCONNECT MAKES NO OTHER EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. CUSTOMER EXPRESSLY ACKNOWLEDGES AND AGREES THAT OPTCONNECT'S OBLIGATIONS SHALL BE LIMITED AS SET FORTH ABOVE AND EXPRESSLY DISCLAIMS ANY OTHER WARRANTY BY OPTCONNECT OF ANY NATURE WHATSOEVER. OPTCONNECT SHALL NOT BE LIABLE TO CUSTOMER OR OTHERS FOR ANY LOSSES, EXPENSES OR COSTS (INCLUDING BUT NOT LIMITED TO ANY CONSEQUENTIAL, INDIRECT OR SPECIAL DAMAGES) INCURRED BY CUSTOMER OR OTHERS DUE TO BREAKDOWN OR MALFUNCTION OF THE PRODUCTS OR OTHERWISE.

12.     <u>Excess Data Use</u>. The monthly data Service fee is based on data expected to be used across all of the Products on the same data plan pooled together. If such aggregated use exceeds the elected data plan, excess usage fees may apply until Customer elects to move the Products to a higher data plan. OptConnect will make reasonable efforts to notify and work with customer to resolve extreme data usage occurrences without unnecessarily affecting customer operations.

13.     <u>Data Activity and DDOS Attacks</u>. Notwithstanding anything to the contrary in this Agreement, if Customer does not allow OptConnect to use a private network for the provision of the Services via the Products, but instead asks OptConnect to use a public network for the provision of the Services via the Products, then Customer shall be responsible for all data breaches or other activity from and to the Products, regardless of who initiates the activity, including but not limited to any and all activity generated through a distributed denial of service ("DDOS") attack. If the data activity from or to the Products results in fees, costs, expenses or charges to OptConnect in excess of Customer's monthly "Wireless Service Charge" or monthly data plan limit set forth in the Agreement, Customer shall be solely responsible for and shall pay all such excess fees, costs, expenses or charges, and Customer hereby irrevocably, unconditionally and completely releases and discharges OptConnect from, and agrees to indemnify and hold OptConnect harmless of and from, any and all fees, costs, expenses, charges, claims, liabilities, demands or grievances arising out of or relating to the data activity from or to the Products, as well as causes of action of any kind or nature whatsoever arising out of or relating to the data activity from or to the Products.

14.     <u>Assignment of Rights</u>. Customer grants OptConnect the right to assign all or any part of its rights or obligations under this MSA at any time to any person or entity that OptConnect chooses. Customer shall not assign or in any way dispose of all or any part of its rights or obligations under this MSA without the prior written consent of OptConnect or its successors or assigns.

15.     <u>Authority</u>. Customer represents and warrants to OptConnect that Customer has the right and power to enter into this MSA, that any and all action necessary to approve Customer's entering into this MSA has been taken, that Customer has the ability to perform Customer's obligations under this MSA and that this MSA constitutes the legal, valid and binding agreement of Customer, enforceable against Customer in accordance with its terms.

16.     <u>Costs and Attorneys' Fees</u>. In any dispute between the parties, whether or not resulting in litigation, the prevailing party shall be entitled to recover from the other party all reasonable costs including, without limitation, reasonable attorneys' fees. The prevailing party shall include, without limitation, a party who dismisses an action for recovery in exchange for sums allegedly due, performance for covenants allegedly breached, or consideration substantially equal to the relief sought in the action.

17.     <u>Governing Law</u>. This MSA shall be construed, interpreted and enforced in accordance with the laws of the State of Utah. The jurisdiction and venue for any legal proceeding to interpret or enforce this MSA shall be in Salt Lake County, Utah.

3

18.     Notice. Any notice required by the terms of this MSA shall be given in writing and shall be deemed effective upon personal delivery or upon deposit with the appropriate postal service, by registered or certified mail with postage and fees prepaid and addressed to the party entitled to such notice at that party's business address first set forth above.

19.     Entire Agreement. The parties understand and expressly agree that (a) this MSA contains a complete statement of all understandings, arrangements and agreements between the parties and constitutes the entire agreement between the parties as to the subject matter hereof, and completely supersedes all negotiations and all prior arrangements, understandings, courses of dealing and agreements related to the subject matter hereof; and (b) there are no representations, warranties, understandings, arrangements, agreements, conditions or contingencies, whether express or implied, or oral or written, except as expressly set forth in this MSA.

20.     Modification. This MSA may not be modified except by a written instrument signed by all the parties hereto.

21.     Waiver. Any waiver by any party hereto of any breach of any kind or character whatsoever by any other party, whether such waiver be direct or implied, shall not be construed as a continuing waiver of, or consent to, any subsequent breach of this MSA on the part of the other party. No course of dealing or performance between the parties hereto, nor any delay in exercising any rights or remedies hereunder or otherwise, shall operate as a waiver of any of the rights or remedies of any party hereto.

22.     ACH Authorization. The method of payment for the per unit purchase prices of the Purchased Products, the per unit monthly rental charges for rental of the Rented Products, and the monthly or annual subscription for the Services, and all other amounts or fees that become due and owing by Customer under this MSA, shall be by ACH. Customer authorizes OptConnect to initiate ACH transfer entries and to debit and/or credit the account identified on a separate ACH Authorization form for the above charges (the "ACH Authorization"), and all other amounts or fees that become due and owing by Customer under this MSA. Customer agrees to keep the Account funded to the extent needed to reasonably support transaction amounts posted by OptConnect under this MSA. In the event an ACH payment is returned unpaid to OptConnect, Customer agrees to immediately pay OptConnect a returned ACH fee of $35.00 per returned item. All shortages and adjustments are the full responsibility of Customer. The undersigned represents and warrants to OptConnect that the person executing the ACH Authorization is an authorized signatory on the Account and that all information regarding the Account and Customer set forth on the ACH Authorization is true and correct. Upon termination of this MSA, Customer's obligation to pay OptConnect any accrued and outstanding per unit purchase prices, per unit monthly service charges, and all other amounts or fees that become due and owing by Customer under this MSA, shall survive the termination of this MSA.

23.     Knowing and Voluntary Execution. Customer acknowledges by checking the applicable box on the Customer Order form that it has read this MSA carefully and that it fully understands the meaning of the terms of this MSA. Customer acknowledges that it has agreed to the terms of this MSA voluntarily and of its own free will. This MSA and all Customer Orders shall be construed as though all parties had drafted them.

The parties have executed this MSA by their duly authorized representatives.

OptConnect Management, LLC

By: Chris Baird
Name: Chris Baird

Title: President and CEO

12/15/2022 | 11:53 AM PST

Customer: Cash Cloud Inc. dba Coin Cloud

By: Chris McLlary
Name: Chris McLlary

Title: CEO

12/15/2022 | 15:00 PM EST

6/2022

4

**ADDENDUM TO OPTCONNECT MSA**

This Addendum to Services Agreement (this "*Addendum*") is entered into on August __, 2022 to be effective on September 1, 2022 (the " *Effective Date*") by and between OptConnect Management LLC ("*OptConnect*"), a Utah limited liability company whose principal address is 865 W 450 N, Suite 1, Kaysville, UT 84037, and Cash Cloud Inc. dba Coin Cloud, a Nevada corporation, whose principal address is 9580 W. Sahara Ave. Ste 200, Las Vegas, Nevada, 89117 ("*Customer*"). This Addendum augments the terms of the Master Product and Services Agreement, dated _____ (the "*MSA*"), and in any instance where a provision of this Addendum conflicts with a provision of the MSA, the provision of this Addendum shall control.

NOW, THEREFORE, in consideration of the mutual covenants and promises hereinafter set forth, the parties agree as follows:

1. **Payment Schedule**. Customer agrees to a fixed payment schedule of a minimum of $75,000 per week until its past due balances, both principal and interest (as well as any additional amounts that accrue from the payment of additional products and services) are paid in full. Customer hereby agrees that all past due balances will be paid in full on or before September 1, 2023. After which all payments due from Customer for new product and services shall be kept current, which the parties agree is 37 days from the invoice date. If invoices are unpaid after the 37th day, OptConnect reserves the right to process payment via ACH. Customer agrees to provide ACH information and notify OptConnect of any changes to such information within 30 days of any account number or institution changes. If Customer fails to adhere to the above minimum weekly payment schedule, OptConnect reserves the right to suspend devices from data usage in its sole discretion. Additionally, if a weekly payment is missed or is below the above amount, all units billing at any reduced rate will revert back to normal billing at $45.00 per device per month.

2. **Deinstalled and Non-Deployed Units**. Per Customer's request, up to 4,790 total units may be suspended for a maximum of twelve (12) months time. The reduced billing rate for this period will be $10.00 per month for which there is no data usage on the device. Once units have been reinstalled and/or the device experiences data usage during a specific month, the pricing will return to $45.00 per month, or current rate, per device and normal billing will resume. The suspension start time and reduced billing rate will be begin within 30 days, after Coin Cloud notifies OptConnect of the deinstallation or non deployment. Once installed, or the twelve month period has expired, all devices will resume normal billing at $45.00, or current rate, per device per month. Both parties agree that both device groups, the Deinstalled units, and the Non-Deployed units, totaling 4,790 will be identified by serial number, and only these identified devices are subject to the suspension billing rate of $10.00 per device per month.

3. **Exclusivity Clause**. Customer agrees that OptConnect will be its sole cellular connectivity provider for a period of thirty six (36) months from the effective Date. OptConnect agrees for installation sites that are receiving poor cellular service or are unable to provide a stable connection, or alternative device and provide a stable cellular connection, Coin Cloud may seek another cellular provider or equipment once all due diligence is done. Due diligence for cellular connection is described as follows: Contacting OptConnect tech support team for full troubleshooting with a technician onsite, implementing all recommended replacement or alternate pieces of equipment, (i.e. antennas, or alternate or replacement modems and accompanying equipment). OptConnect has up to 30 days to provide these services for intermittent connectivity sites, or 7 business days for a full, hard down site for non-preforming equipment.

4. **Device Term Renewal.** Customer agrees to a thirty (30) months contract extension for all devices currently on the account. This additional term is added to any existing or remaining contract term that is currently in place on each device.

5. **Data usage and price reduction.** If the average data usage is reduced below 2GBs for three (3) months consecutively, OptConnect agrees to reduce the monthly billing price to $35.00 per month. Any data overages shall be charged at a rate of $0.019 per megabyte used over the pooled plan.

6. **Effectiveness; Continuity of Terms**. This Addendum shall be effective on the Effective Date, and all other terms and provisions of the MSA and any subsequent addenda not amended hereby shall remain in full force and effect.

6/2022

5

7. **Counterparts.** This Addendum may be executed in counterparts, each of which will be deemed an original and which together will constitute one in the same instrument.

[signature page follows]

In Witness Whereof, the parties have executed this Addendum by their duly authorized representatives.

OptConnect Management, LLC

By: Chris Baird

Name: Chris Baird

Title: President and CEO

12/15/2022 | 11:53 AM PST

Customer: Cash Cloud Inc. dba Coin Cloud

By: Chris McAlary

Name: Chris McAlary

Title: CEO

12/15/2022 | 15:00 PM EST



Invoice

OptConnect
865 W 450 N
Suite #1
Kaysville UT 84037
United States
Tel: 1-877-678-3343
Fax: 1-801-991-9009

| Date | Invoice # |
|------|-----------|
| 5/22/2023 | INV514900 |
| Sales Rep | |
| Suzie Hansen - suzie.hansen@optconnect.com | |

| Bill To |
|---------|
| Ron Credito |
| Coin Cloud |
| 10190 Covington Cross Drive |
| Las Vegas NV 89144 |
| United States |

| Qty | Units | Item | Serial/Lot N... | Description | Unit Price | Amount |
|-----|-------|------|-----------------|-------------|------------|--------|
| 10,786 | | WIR-00001 | | Overage Fees. Total active lines 4,929. Overage use 11,935 @$10 | 10.00 | 107,860.00 |

| | Total | $107,860.00 |
|--|-------|-------------|

SERVICE CHARGE: A service charge of one and one-half percent (1 ½%) per month (18% per annum), or the highest legal rate, whichever is less, may be assessed on delinquent invoices. These rates may change at the discretion of OptConnect.

RE-STOCKING: Items must be returned within 30 days of purchase. Returns on modems do not apply, refer to contract. A re-stocking fee of 20% will be charged on all returned stock items. Please call prior to returning any item(s).

RETURNED CHECKS AND ACH's: A service charge of $35 will be charged on all returned checks and ACH's and will be processed in the form of an electronic ACH Debit to your bank account. OptConnect may, at its discretion, convert returned checks into an electronic ACH Debit(s).



Invoice

OptConnect
865 W 450 N
Suite #1
Kaysville UT 84037
United States
Tel: 1-877-678-3343
Fax: 1-801-991-9009

| Date | Invoice # |
|------|-----------|
| 4/13/2023 | INV508655 |
| Sales Rep | |

Suzie Hansen - suzie.hansen@optconnect.com

**Bill To**
Ron Credito
Coin Cloud
10190 Covington Cross Drive
Las Vegas NV 89144
United States

| Qty | Units | Item | Serial/Lot N... | Description | Unit Price | Amount |
|-----|-------|------|-----------------|-------------|-----------|--------|
| 4,802 | | WIR-00001 | | Internet Connectivity and Monitoring Fee | 45.00 | 216,090.00 |
| 2,442 | | WIR-00001 | | Internet Connectivity and Monitoring Fee | 10.00 | 24,420.00 |
| 66 | | WIR-00001 | | Internet Connectivity and Monitoring Fee | 49.99 | 3,299.34 |
| 40 | | WIR-00009 | | IoT Internet Connectivity and Monitoring Fee | 10.00 | 400.00 |
| 9 | | WIR-00001 | | Internet Connectivity and Monitoring Fee | 44.10 | 396.90 |
| 2 | | WIR-00007 | | OptReboot Rental Monthly Fee (May Be Pro-Rated) | 6.00 | 12.00 |

| | Total | $244,618.24 |
|--|-------|-------------|

SERVICE CHARGE: A service charge of one and one-half percent (1 ½%) per month (18% per annum), or the highest legal rate, whichever is less, may be assessed on delinquent invoices. These rates may change at the discretion of OptConnect.

RE-STOCKING: Items must be returned within 30 days of purchase. Returns on modems do not apply, refer to contract. A re-stocking fee of 20% will be charged on all returned stock items. Please call prior to returning any item(s).

RETURNED CHECKS AND ACH's: A service charge of $35 will be charged on all returned checks and ACH's and will be processed in the form of an electronic ACH Debit to your bank account. OptConnect may, at its discretion, convert returned checks into an electronic ACH Debit(s).



Invoice

OptConnect
865 W 450 N
Suite #1
Kaysville UT 84037
United States
Tel: 1-877-678-3343
Fax: 1-801-991-9009

| Date | Invoice # |
|------|-----------|
| 6/22/2023 | INV520503 |
| Sales Rep | |

Suzie Hansen - suzie.hansen@optconnect.com

| Bill To |
|---------|
| Ron Credito |
| Coin Cloud |
| 10190 Covington Cross Drive |
| Las Vegas NV 89144 |
| United States |

| Qty | Units | Item | Serial/Lot N... | Description | Unit Price | Amount |
|-----|-------|------|-----------------|-------------|-----------|--------|
| 1 | | WIR-OVG | | Previous Month Internet Overage for May 2023 | 58,025.26 | 58,025.26 |
| | | | | Total | | $58,025.26 |

SERVICE CHARGE: A service charge of one and one-half percent (1 ½%) per month (18% per annum), or the highest legal rate, whichever is less, may be assessed on delinquent invoices. These rates may change at the discretion of OptConnect.

RE-STOCKING: Items must be returned within 30 days of purchase. Returns on modems do not apply, refer to contract. A re-stocking fee of 20% will be charged on all returned stock items. Please call prior to returning any item(s).

RETURNED CHECKS AND ACH's: A service charge of $35 will be charged on all returned checks and ACH's and will be processed in the form of an electronic ACH Debit to your bank account. OptConnect may, at its discretion, convert returned checks into an electronic ACH Debit(s).



OptConnect
854 West 450 North #4
Kaysville UT 84037
Tel: 1-877-678-3343
Fax: 1-801-991-9009

# Credit Memo

| Date | Credit # |
|------|----------|
| 2/17/2023 | CM746877 |

**Bill To**
Ron Credito
Coin Cloud
10190 Covington Cross Drive
Las Vegas NV 89144
United States
702-806-9181

| Customer PO # | Shipping Code (2) |
|---------------|-------------------|
|  |  |

| Quantity | Units | Item | Description | Amount |
|----------|-------|------|-------------|--------|
| 1 |  | WIR-00001 | Internet Connectivity and Monitoring Fee | 87,917.54 |

| | Total | $87,917.54 |
|--|-------|-----------|

CREDIT MEMO: Credit Memo is valid for 6 months from the date of issue.



CM746877



OptConnect
854 West 450 North #4
Kaysville UT 84037
Tel: 1-877-678-3343
Fax: 1-801-991-9009

# Credit Memo

| Date | Credit # |
|------|----------|
| 1/31/2023 | CM746876 |

**Bill To**
Ron Credito
Coin Cloud
10190 Covington Cross Drive
Las Vegas NV 89144
United States
702-806-9181

| Customer PO # | Shipping Code (2) |
|---------------|-------------------|
|               |                   |

| Quantity | Units | Item | Description | Amount |
|----------|-------|------|-------------|--------|
| 1 |  | WIR-00001 | Internet Connectivity and Monitoring Fee | 87,917.54 |

| | Total | $87,917.54 |
|---|-------|-----------|

CREDIT MEMO: Credit Memo is valid for 6 months from the date of issue.


CM746876