UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|                     |   |                        |
|---------------------|---|------------------------|
|                     | . |                        |
| IN RE:              | . | Case No. 23-10423-mkn  |
|                     | . | Chapter 11             |
| CASH CLOUD, INC.,   | . |                        |
|                     | . | 300 Las Vegas Blvd. South |
|                     | . | Las Vegas, NV 89101    |
| Debtor.             | . |                        |
|                     | . | Thursday, July 20, 2023 |
| . . . . . . . . . . . . . . . . . | . | 10:32 a.m.             |

TRANSCRIPT OF MOTION TO REJECT LEASE OR EXECUTORY CONTRACT
TENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF
EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C.
365(a) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON
BEHALF OF CASH CLOUD, INC. [678];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT THIRTEENTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [687]

(CONTINUED)
BEFORE THE HONORABLE MIKE K. NAKAGAWA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

| Audio Operator:        | Benji Rawling, ECR       |
|------------------------|--------------------------|
|                        | Maria Garrett, ECR       |
|                        |                          |
| Transcription Company: | Access Transcripts, LLC  |
|                        | 10110 Youngwood Lane     |
|                        | Fishers, IN 46048        |
|                        | (855) 873-2223           |
|                        | www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

TRANSCRIPT OF (CONTINUED):

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT EIGHTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [672];

APPLICATION FOR ADMINISTRATIVE CLAIM APPROVAL FILED BY MARJORIE
A. GUYMON ON BEHALF OF TRANGISTICS, INC. [652];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT FIFTEENTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [693];

AMENDED MOTION TO REJECT LEASE OR EXECUTORY CONTRACT
SEVENTEENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING
REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT
TO 11 U.S.C. 365(a) WITH PROPOSED ORDER FILED BY JEANETTE E.
MCPHERSON ON BEHALF OF CASH CLOUD, INC. [700];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT NINTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [675];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT TWELFTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [684];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT SIXTEENTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [696];

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT FOURTEENTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [690]

TRANSCRIPT OF (CONTINUED):

MOTION TO REJECT LEASE OR EXECUTORY CONTRACT ELEVENTH OMNIBUS
MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY
CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. 365(a)
WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF
CASH CLOUD, INC. [681]


APPEARANCES:


| | |
|---|---|
| For the Debtor: | Fox Rothschild LLP |
| | By:  JEANETTE E. MCPHERSON, ESQ. |
| | 1980 Festival Plaza Drive, Suite 700 |
| | Las Vegas, NV 89135 |
| | (702) 262-6899 |
| For Trangistics Inc.: | Goldsmith & Guymon P.C. |
| | By:  MARJORIE A. GUYMON, ESQ. |
| | 2055 Village Center Circle |
| | Las Vegas, NV 89134 |
| | (702) 475-9463 |
| For Christopher McAlary: | Carlyon Cica Chtd. |
| | By:  CANDACE CARLYON, ESQ. |
| | 265 E. Warm Springs Road, Suite 107 |
| | Las Vegas, NV 89119 |
| | (702) 685-4444 |
| For the Official Committee of Unsecured Creditors: | Seward & Kissel |
| | By:  CATHERINE LOTEMPIO, ESQ. |
| | One Battery Park Plaza |
| | New York, NY 10004 |
| | (212) 574-1632 |

1

```
 1          (Proceedings commence at 10:32 a.m.)

 2          THE COURT:  We're here on various matters in the Cash

 3  Cloud, Inc. proceedings.  May I have appearances for the

 4  record?

 5          MS. MCPHERSON:  Good morning, Your Honor.  Jeanette

 6  McPherson for Fox Rothschild on behalf of the debtor.

 7          THE COURT:  All right.

 8          MS. GUYMON:  Good morning.  Marjorie Guymon appearing

 9  on behalf of Trangistics --

10          THE COURT:  Okay.

11          MS. GUYMON:  -- Item Number 1 on the calendar.

12          THE COURT:  All right.  Thank you.

13          MS. CARLYON:  Good morning, Your Honor.  Candace

14  Carlyon --

15          MS. LOTEMPIO:  Good morning.

16          MS. CARLYON:  -- on behalf of Christopher McAlary.

17          THE COURT:  Okay.  Go ahead.

18          MS. LOTEMPIO:  Good morning.  This is Catherine

19  LoTempio of Seward & Kissel on behalf of the Official Committee

20  of Unsecured Creditors.

21          THE COURT:  All right.  Thank you.  Any other

22  appearances?  Okay.  There are apparently no other appearances.

23  All right.

24          Ms. McPherson, there was an amended -- a second

25  amended agenda that was filed yesterday evening.  Is that
```

1  correct?

2          MS. MCPHERSON:  That's correct, Your Honor.

3          THE COURT:  All right.  And do you have that -- and

4  do all other counsel have a copy of the amended agenda?  All

5  right.  Assuming that you do --

6          MS. MCPHERSON:  I do.

7          THE COURT:  Ms. McPherson, as to -- there are, I

8  believe, 12 things on this agenda.  If you go to the twelfth

9  matter at the very end on the last page, it looks like it's the

10 eighteenth omnibus motion with respect to executory contracts.

11 Now that matter apparently was noticed to be heard next week on

12 July 27th, it doesn't appear on the calendar for today.  Am I

13 mistaken in that?

14          MS. MCPHERSON:  That's correct, Your Honor.

15          THE COURT:  Okay.  And I believe you're asking that

16 other matters be continued to the same date.  Is that right?

17          MS. MCPHERSON:  With regard to Motions 8 through 17?

18          THE COURT:  Correct.

19          MS. MCPHERSON:  We would -- with regard to those

20 motions, Your Honor, we would ask that those be heard --

21          THE COURT:  No, what I'm saying is that you're asking

22 that certain aspects of those motions be continued,

23 particularly with respect to Brookfield.  Is that right?

24          MS. MCPHERSON:  That's correct, Your Honor.

25          THE COURT:  Okay.

1          MS. MCPHERSON:  I apologize, yes.

2          THE COURT:  Okay.

3          MS. MCPHERSON:  With regard to Brookfield and the WPG

4  Legacy with regard to Motion Number 14 --

5          THE COURT:  Okay.

6          MS. MCPHERSON:  -- we would request that, with

7  respect to those agreements with those parties, that they be

8  continued to the 27th, too.

9          THE COURT:  Okay.  So where we have other matters

10  next week anyway, so simply putting Item 12 on the agenda to

11  that date and time doesn't cause any inconvenience.  Is that

12  fair to say?

13          MS. MCPHERSON:  Correct, Your Honor.  But if we could

14  have the motions heard with regard to the remaining parties?

15          THE COURT:  No, no, no, don't get me wrong, Ms. --

16          MS. MCPHERSON:  Oh, okay.

17          THE COURT:  I'm just trying to cut down the calendar,

18  that's all I'm doing.  We are going to hear everything else,

19  but I'm just trying to figure out if we have a target date

20  already.  So if we just --

21          MS. MCPHERSON:  Yes.

22          THE COURT:  -- take Item 12 on the agenda, we just

23  move it out to July 27th, that doesn't cause any problem.  Is

24  that right?

25          MS. MCPHERSON:  That's correct, Your Honor.

```
 1              THE COURT:  Okay.  All right.  And then with respect
 2    to the other matters on the agenda, the matter for which
 3    there's some argument that will be presented, which is the
 4    first matter, which is the Trangistics matter for which
 5    Ms. Guymon is appearing, we're going to have some nature of
 6    argument on that.  But with respect to everything else on this
 7    agenda, Items 2 through -- I guess Item 11, you still want to
 8    move forward with those.  Is that right?
 9              MS. MCPHERSON:  That's correct, Your Honor.
10              THE COURT:  Okay.  So should we just get those out of
11    the way right now?  Does that make sense to you?
12              MS. MCPHERSON:  Yes, it does.  I think it will
13    clean --
14              THE COURT:  Okay.
15              MS. MCPHERSON:  -- up all of those matters.
16              THE COURT:  All right.  Fair enough.
17              MS. MCPHERSON:  So with regard --
18              THE COURT:  So that again, what you have on the
19    agenda is not in the same order as they appear on the public
20    calendar.  So what we're going to do is --
21              MS. MCPHERSON:  Yes.
22              THE COURT:  -- we'll go down your agenda, unless
23    someone objects.  And so Item 2 on the agenda is the same as
24    Item 3 on the public calendar.  So if you want to go ahead and
25    proceed, we can go through these.  So what do you have with
```

1  respect to Item 2 on your agenda, which is Item 3 on the public

2  calendar?

3          MS. MCPHERSON:  Your Honor, I believe that's the

4  eighth -- what we refer to as the eighth motion under this

5  motion to reject.

6          THE COURT:  All right.

7          MS. MCPHERSON:  Your Honor, that motion has not been

8  opposed, we haven't received any other responses -- informal

9  responses with regard to that motion.  We would request that it

10  be granted, effective as of the motion date.  And with regard

11  to these, Your Honor, I would ask that we be allowed to enter

12  into a -- enter into the order, if granted, a bar date for

13  claimants to file any proof of claim with regard to their

14  rejection damages.

15          THE COURT:  Okay.  All right.  On behalf of the

16  creditors' committee, Ms. LoTempio, do you have any position on

17  these remaining omnibus objections -- or omnibus requests?

18          MS. LOTEMPIO:  Thank you, Your Honor.  For the

19  record -- oh sorry.

20          THE COURT:  No, go ahead.

21          MS. LOTEMPIO:  For the record, Catherine LoTempio,

22  Seward & Kissel on behalf of the official committee.  No, we do

23  not have any opposition to entry of these orders.  And as

24  Ms. McPherson indicated on the record, we had discussed that a

25  bar date for claimants who have rejection damages claims be

1  included in the order.  And so with that addition, we would

2  support entry of the order.

3           THE COURT:  Okay.  All right.  Thank you.  Does

4  anyone else have any comment with respect to Item 2 on the

5  agenda?

6           All right.  Hearing none, I'll grant the request and

7  direct you to prepare the appropriate order.  Ms. LoTempio, do

8  you want to sign off on the order on behalf of the Committee?

9           MS. LOTEMPIO:  Yes, please.

10           THE COURT:  Okay.  All right.  Ms. McPherson, go

11  ahead and submit it as appropriate.

12           That gets us to the third item on the agenda, which

13  is the same as Item 7 on the public calendar.  This is the, I

14  believe the ninth omnibus motion.  And I believe this is one of

15  the matters for which there was a limited objection from

16  Brookfield.  And with respect to Brookfield, you want to

17  continue the motion to July 27th, but otherwise proceed.  Is

18  that correct, Ms. McPherson?

19           MS. MCPHERSON:  That's -- yes, Your Honor, that's

20  correct.

21           THE COURT:  Okay.  Is there anything else you needed

22  to add for this matter?

23           MS. MCPHERSON:  No, Your Honor.  With regard to this

24  one, we would also ask, to the extent the Court grants this

25  motion, that we be able to include a bar date --

```
1                    THE COURT:  Okay.

2                    MS. MCPHERSON:  -- of 30 days from entry of the

3       order, and -- which is a request I'll make for all of these

4       motions --

5                    THE COURT:  Okay.

6                    MS. MCPHERSON:  -- so the Court's aware.  So other

7       than that, Your Honor, I have nothing else to add.

8                    THE COURT:  All right.  Ms. LoTempio, same on behalf

9       of the Committee?

10                   MS. LOTEMPIO:  That's correct, Your Honor.

11                   THE COURT:  All right.  And do you wish to sign off

12      on the order?

13                   MS. LOTEMPIO:  Yes.

14                   THE COURT:  Okay.  I'll grant the motion on those

15      terms.  The balance of the motion will be continued to

16      July 27th, 2023 with respect to, I believe, the party is

17      Brookfield Retail Properties.

18                   That gets us to Item 4 on the agenda, which is the

19      same as the Item 1 on the public calendar, it's the tenth

20      omnibus motion.  Ms. McPherson, did you receive any response to

21      this particular motion?

22                   MS. MCPHERSON:  No we haven't, Your Honor.

23                   THE COURT:  Okay.  And then Ms. LoTempio, do you wish

24      to sign off on the order?

25                   MS. LOTEMPIO:  Yes.  Yes, Your Honor, thank you.
```

```
 1              THE COURT:  Okay.  All right.  Ms. McPherson, go
 2   ahead and draft the same form of order.  There is no objection
 3   from Brookfield, so that completes that particular matter.
 4              Then we get to Item 5 on the agenda, which is the
 5   same as Item 11 on the public calendar, it's the eleventh
 6   omnibus motion for which there was a limited response from
 7   Brookfield Retail Properties.  With respect to the balance of
 8   the parties effected by the motion, you received no objection.
 9   Is that correct, Ms. McPherson?
10              MS. MCPHERSON:  That's correct, Your Honor.
11              THE COURT:  All right.  And you want to conclude
12   [sic] the same bar date language.  Is that right?
13              MS. MCPHERSON:  Yes, that's correct, thank you.
14              THE COURT:  Okay.  Then continue the balance for
15   Brookfield to July 27th?  Is that right?
16              MS. MCPHERSON:  That's correct, Your Honor.
17              THE COURT:  Okay.  Ms. LoTempio, with respect to the
18   creditors' committee, any additional comment?  And then do you
19   want to sign off on the order?
20              MS. LOTEMPIO:  No additional comments, and yes, we'll
21   sign off on the order, thank you.
22              THE COURT:  Okay.  Ms. McPherson, go ahead and
23   prepare and circulate the order as appropriate.
24              And that gets us to Item 6 on the agenda, which
25   appears to be the same as Item 8 on the public calendar, it's
```

1  the twelfth omnibus motion.  There's, again, a limited response

2  from Brookfield, for which the matter will be continued to

3  July 27th as to Brookfield.  Did you receive any other

4  responses in connection with this matter, Ms. McPherson?

5          MS. MCPHERSON:  No we haven't, Your Honor.

6          THE COURT:  Okay.  Then the same request for the bar

7  date.  Is that right?

8          MS. MCPHERSON:  That's correct, Your Honor.

9          THE COURT:  Okay.  Ms. LoTempio, do you wish to sign

10 off on the order?

11         MS. LOTEMPIO:  Yes, please.

12         THE COURT:  Okay.  Go ahead and prepare and circulate

13 the order as necessary.  The objection will be -- or the motion

14 will be continued as to Brookfield to July 27th, 2023.

15         Item 7 on the agenda, which is the same as Item 2 on

16 the public calendar, Ms. McPherson, did you receive any

17 response whatsoever on this motion?

18         MS. MCPHERSON:  We haven't, Your Honor.

19         THE COURT:  All right.  Are you requesting the same

20 bar date?

21         MS. MCPHERSON:  Yes, we are, Your Honor.  Thank you.

22         THE COURT:  Okay.  Ms. LoTempio, on behalf of the

23 creditors' committee, any response or objection to the addition

24 of the bar date?

25         MS. LOTEMPIO:  Same comments as before, and we will

1    gladly sign off on the order, thank you.

2            THE COURT:  Okay.  Ms. McPherson, go ahead and

3    prepare and circulate the order.

4            That gets us to Item 8 on the agenda, which is the

5    same as Item 10 on the public calendar.  There was a limited

6    objection filed by Brookfield Retail Properties with a

7    continuance requested as to Brookfield only to July 27th.

8    Ms. McPherson, did you receive any other response?

9            MS. MCPHERSON:  Yes, Your Honor.  With regard to this

10   one, I've had conversations with WPG Legacy, LLC.

11           THE COURT:  Okay.

12           MS. MCPHERSON:  Nothing formal was filed, but we

13   agreed to continue their matters also to next week with regard

14   to Brookfield also.  And so with -- so with regard to

15   Brookfield and WPG Legacy, LLC, we would request that with

16   respect to them, that that be continued to July 27th, but the

17   rest of the motion go forward.  And with regard to those

18   parties, we've heard nothing.

19           THE COURT:  Okay.

20           MS. MCPHERSON:  And we'd also ask for the bar date --

21           THE COURT:  All right.

22           MS. MCPHERSON:  -- the 30 days, from entry of the

23   order.

24           THE COURT:  Okay.  Okay.  Ms. LoTempio, behalf of the

25   creditors committee, any objection to both the continuance as

1  to Brookfield, and WPG Legacy to July 27, addition of the

2  language regarding the bar date, and entry of the order with

3  respect to all other parties?

4        MS. LOTEMPIO:  No objection to the continuance, same

5  comment with respect to addition of the bar date, and we'll

6  sign off on the order, thank you.

7        THE COURT:  Okay.  Ms. McPherson, go ahead and

8  prepare the appropriate order.

9        That gets us to Item 9 on the agenda, which is the

10 same as Item 5 on the public calendar, it is with respect to

11 the fifth omnibus motion.  There was a limited objection or a

12 response filed by Brookfield, but I believe nothing similar

13 with respect to WP Legacy -- PG Legacy.  As to Brookfield,

14 there's a request to continue the matter to July 27th, 2023.

15 And, Ms. McPherson, did you receive any other response to the

16 motion?

17        MS. MCPHERSON:  We haven't, Your Honor.

18        THE COURT:  All right.  And you're also requesting

19 the bar date in this matter as well.  Is that correct?

20        MS. MCPHERSON:  That's correct, thank you.

21        THE COURT:  Okay.  Ms. LoTempio, any response or

22 objection from the creditors' committee?

23        MS. LOTEMPIO:  No, Your Honor.

24        THE COURT:  Okay.  I'll grant the motion, subject to

25 the limited continuance.  I'll direct you to circulate the

1   order, and also obtain the signature of Ms. LoTempio.

2           All right.  That gets us to Item 10 on the agenda,

3   which is the same as Item 9 on the public calendar.  There was

4   a limited objection filed with respect to Brookfield, but no

5   others, for which a continuance was requested to July 27th as

6   to Brookfield.  Did you receive any other responses,

7   Ms. McPherson?

8           MS. MCPHERSON:  No, Your Honor, We haven't.

9           THE COURT:  All right.  And the same request for a

10  bar date, is that right?

11          MS. MCPHERSON:  That's correct, Your Honor.

12          THE COURT:  Okay.  Ms. LoTempio, does the creditors'

13  committee have any objection to the continuance or the

14  additional language with respect to the bar date?  And do you

15  want to sign off on the order?

16          MS. LOTEMPIO:  No objection, and yes, we'll sign off

17  on the order, thank you.

18          THE COURT:  Okay.  Ms. McPherson, go ahead and

19  prepare and submit the order.

20          Item 6 -- or Item 11 on the agenda, which is the same

21  as the public calendar Item 6, in the agenda, I think,

22  Ms. McPherson, the seventeenth omnibus motion, I think you have

23  it down as ECF Number -- I think it appears to be 698.  I

24  believe you're actually referring to Docket Number 700, which

25  is, honestly -- I assume that's a typographical error.

1         But you received a limited objection from Brookfield.

2    There was a limited response, I believe, from United Natural

3    Foods, a reply that was filed by your office, and then there

4    was a subsequent withdrawal of the response by United Natural

5    Foods.  Is that what you show as well?

6         MS. MCPHERSON:  That's what I show, Your Honor.

7         THE COURT:  Okay.  So it -- as it currently stands,

8    there's simply the limited objection by Brookfield, and the

9    request to continue that aspect to July 27th.  Is that right?

10        MS. MCPHERSON:  That's correct, Your Honor.

11        THE COURT:  Okay.  Did you receive any other

12   responses to the motion?

13        MS. MCPHERSON:  We have not, Your Honor, and we'd

14   also ask for the bar date language also in any order granting

15   this motion.

16        THE COURT:  Okay.  All right.  Ms. LoTempio, does the

17   creditors' committee have any objection to the bar date

18   language, and to granting the order and then otherwise

19   continuing it as to Brookfield to July 27th?

20        MS. LOTEMPIO:  No objection.

21        THE COURT:  All right.  Ms. McPherson, I'll direct

22   you to prepare the appropriate order, have Ms. LoTempio sign

23   off, and then submit it forthwith.  All right.  I believe --

24        MS. MCPHERSON:  Thank you, Your Honor.

25        THE COURT:  All right.  You're welcome.  I believe

1   that takes care of everything on the second amended agenda

2   except for Item 1, which is also the same as Item 4 on the

3   public calendar, and that's the administrative expense motion

4   that was filed by Ms. Guymon's client.  Is that correct?

5           MS. MCPHERSON:  Yes, Your Honor.

6           THE COURT:  Okay.  All right.  Ms. Guymon, I've had a

7   chance to review the motion that was filed.  I've read the

8   response that was filed, in addition to the declaration filed

9   by the debtor, which was, I believe, from Mr. Hall.  There was

10  a reply that I believe you filed as Docket Number 869.  You

11  accompanied the reply with declarations from a Mr. McGrew, as

12  well as a Ms. Rudinsky, that's Docket Numbers 870 and 871, so I

13  understand the positions of the parties.  Is there anything you

14  wanted to emphasize in the motion?

15          MS. GUYMON:  Of course, Your Honor.  Thank you.

16  Marjorie Guymon appearing on behalf of Trangistics.  And I hear

17  you, and I do appreciate that you review all these items and

18  put on the record that you've reviewed them.  I did want to

19  make one clarification in the reply.

20          THE COURT:  Okay.  All right.

21          MS. GUYMON:  The amount that has been billed every

22  month is $38,600.

23          THE COURT:  Okay.

24          MS. GUYMON:  There was a transposition of those

25  numbers in the reply.  The reply says 36,800.

```
 1                THE COURT:  Right.

 2                MS. GUYMON:  And I do apologize.  I can amend if Your

 3   Honor is concerned about making a clean record --

 4                THE COURT:  Okay.

 5                MS. GUYMON:  -- on that.

 6                THE COURT:  But I think, Counsel, Ms. Guymon, you

 7   actually mentioned that in the footnote, is that right, in the

 8   reply?

 9                MS. GUYMON:  Yes, I just wanted to make it clear that

10   in the reply --

11                THE COURT:  Okay.

12                MS. GUYMON:  -- that there may be some confusion on

13   the transposition of those numbers, and we apologize for that.

14                THE COURT:  Okay.

15                MS. GUYMON:  I also just want to clarify one thing,

16   Your Honor, that you know, Trangistics and Cash Cloud were

17   doing business together since 2021.

18                THE COURT:  All right.

19                MS. GUYMON:  Trangistics is a specialized transporter

20   of heavy equipment and sensitive matter -- sensitive type

21   equipment like these kiosks that contain sensitive electronics.

22   And so this isn't just a, you know, some hot dusty unit that

23   you can just throw these kiosks in.  This is a climate

24   controlled, 24/7 security warehouse that was specifically

25   prepared for these 900 and so kiosks that Cash Cloud
```

1  specifically asked Trangistics to ship to that particular

2  warehouse in order to protect them from the actual

3  manufacturer, Cole Kepro, who they were in litigation with.

4          So I think my -- if I'm going to shorten my argument,

5  what I'd like to make clear is that in 2021, there was a

6  relationship.  It wasn't until February of 2022 that Cash Cloud

7  had this issue with Cole Kepro, and as a result reached out and

8  entered into an agreement with Trangistics.  And then the

9  $38,600 per month rent invoices were sent for June of 2022

10  through the filing date.  Cash Cloud never said hey, this is

11  outrageous sum.  It continued to allow Trangistics to provide

12  the specialized space for its kiosks.

13          I also wanted to point out just for -- it's in the

14  record, the debtor lists these machines as having a value of

15  approximately $5.7 million.  So to argue that Trangistics has

16  not provided a -- you know, a benefit to the estate when the

17  estate assets have been sold for over $5 million, and they list

18  just these machines alone as being worth for -- you know, a

19  significant amount of money in their schedules is sort of

20  disingenuous.  If they had a problem with the amount of rent

21  that was being charged, they should have said something about

22  it.  And on top of that, post-petition, they make a payment.

23  And then they -- in their response, not an objection, but a

24  response, they raise hey, we made a payment of $38,600.

25          So between the actions of the parties, and the fact

1  that the Cash Cloud itself, the actions that it took, clearly

2  show that providing this warehouse through the case, protecting

3  these kiosks, and allowing the debtor to then sell them and

4  make money for the estate clearly provided a benefit.

5       And again, I know Your Honor has reviewed everything.

6  I'll leave it to you unless you have any questions for me.

7       THE COURT:  Okay.  And then, Ms. Guymon, my

8  understanding from the record that were -- the number of kiosks

9  was actually 914 kiosks.  And do I understand correctly they're

10 still in the warehouse?

11      MS. GUYMON:  That's true, Your Honor.  The units are

12 still at the facility.  So from February through June is what

13 we're asking for in our administrative claim.  Now July has

14 passed.

15      THE COURT:  Okay.

16      MS. GUYMON:  We are obviously going to give a credit

17 to the debtor for the $38,600.  But that still makes the claim

18 accurate as of -- through July, which is 154 -- I'm sorry, now

19 it's $193,000, even with that $38,600 credit.

20      So one thing my client would like to know, regardless

21 of the outcome of this hearing, is who's going to come pick up

22 this stuff?  If not, you know, my understanding is that there

23 has been a sale.  It could be that at this point, you know,

24 does the debtor have an obligation to pay, or have the stay

25 lifted, and we'll just get rid of this stuff.

1          We do have a prepetition proof of claim that the

2  debtor briefly mentioned in their response where we claim, you

3  know, a statutory lien on these items.  So I just kind of throw

4  that out there.

5          There are some other issues here aside from just the

6  fact that we're asking for an administrative claim, and that it

7  continue at the 38,600 per month until somebody comes and gets

8  the stuff.

9          THE COURT:  Okay.  All right.  Anything else,

10  Ms. Guymon?

11          MS. GUYMON:  No, Your Honor.

12          THE COURT:  Okay.  Thank you.  All right.  Ms.

13  McPherson.  And, Ms. McPherson, you'll agree that the -- these

14  units are still in the warehouses of the moving party.  Is that

15  correct?

16          MS. MCPHERSON:  That's correct, Your Honor.

17          THE COURT:  Okay.

18          MS. MCPHERSON:  I think we indicated that in our

19  filings.

20          THE COURT:  All right.

21          MS. MCPHERSON:  They are still there.

22          THE COURT:  Okay.

23          MS. MCPHERSON:  And I think it is undisputed that

24  there was never a written contract with Trangistics, and there

25  wasn't a written agreement, or an agreement, with regard to the

1  amount that would be charged, namely the $38,600.  Looking at

2  the motion itself, you can see those documents aren't there.

3  There's an agreement between the actual -- what appears to be

4  the actual warehouse owner, Powerhouse, and Trangistics, who's

5  the broker for an amount.  And then there's -- there was email

6  correspondence regarding the storage of these kiosks with the

7  debtor for a different amount other than the 38,600.

8          We understand that, as here, Trangistics is saying

9  well, we sent you invoices for $38,600, and you paid for some

10  of them.  They never say in their reply -- not in their motion,

11  their reply, which the debtor hasn't had a chance to respond

12  to, that's new evidence.  They don't -- but they don't say in

13  their reply and their declarations that there was an agreement

14  to charge $38,600.  And it's our understanding that the

15  warehouse actually charges significantly less, $30,500.

16          THE COURT:  Well, isn't it --

17          MS. MCPHERSON:  And we have Trangistics charging --

18          THE COURT:  Well, Ms. McPherson, isn't that simply a

19  declaration from Mr. Hall on information and belief that the

20  charge would be $30,500?  But there's no personal knowledge

21  of -- and there's no evidence that he went out and shopped and

22  found out what the charge would be.  But other than that, all

23  you have is the payment that was made, in fact made, and

24  acknowledged as being received by Ms. Guymon's client.  Isn't

25  that the evidentiary record before the Court?

1          MS. MCPHERSON:  Yes, Your Honor.  But it's our

2   position that Trangistics bears the burden of establishing an

3   administrative claim.

4          THE COURT:  Okay.

5          MS. MCPHERSON:  And they bear the burden of showing

6   that it's actual and necessary.

7          THE COURT:  Okay.

8          MS. MCPHERSON:  And while there's a presumption for a

9   contractual rate --

10          THE COURT:  All right.

11          MS. MCPHERSON:  -- we're saying there is no contract

12   here.  And there -- you know, so Trangistics, as I understand

13   it, is arguing there's a course of conduct, but we don't

14   believe, number one, that that's a -- that's you know, an

15   agreement in writing --

16          THE COURT:  Okay.

17          MS. MCPHERSON:  -- by just sending invoices.

18          THE COURT:  All right.

19          MS. MCPHERSON:  And then secondly, I would like to

20   note that the invoices that are attached in Ms. Rudinsky's

21   declaration, which is at ECF 871, reveals some information that

22   I think needs to be addressed.

23          Trangistics now acknowledges that in their motion

24   they didn't give credit to the debtor for one post-petition

25   payment, and that's because they applied it to a prepetition

1  invoice.  And that appears, I believe, at Page 12, at ECF 871.

2  You see an invoice for $38,600, and then a payment on April 7th

3  of 2023.

4         I'd like to also note, along the same lines, ECF 871

5  at Page 17, there's an invoice dated September 14th, 2022, for

6  38,600.  And it indicates on that invoice a payment of

7  March 13th.  So it -- I'm not sure if that was a payment, quite

8  frankly, made post-petition for prepetition debt, and if

9  that --

10        THE COURT:  I'm sorry, Ms. McPherson, I'm having a

11 little difficulty hearing you.  Can you repeat that?

12        MS. MCPHERSON:  Sure, Your Honor.  At ECF 871, Page

13 17.

14        THE COURT:  Okay.

15        MS. MCPHERSON:  There is an indication of an invoice

16 dated September 14th, 2022, and a payment made, it appears

17 post-petition.  And so if that is the case, obviously the

18 debtor would have to be credited with that amount.

19        Additionally, with regard to Trangistics's course of

20 conduct argument with regard to just issuing invoices and

21 arguing that if I issue you an invoice, obviously we have an

22 agreement, which we dispute, but if you look at ECF 871, at

23 Page 43 there's an invoice dated June 21st of 2022, and that's

24 for 43,000, indicating it's for warehouse storage.  Same ECF

25 Number, 871, at Page 68, there's an invoice for warehouse

 1  storage dated April 26th, '22, for 41,125.  At ECF 871 at Page

 2  69, there's an invoice for $35,000, invoice date of

 3  April 26th, 2022.  So when we look at these invoices, to argue

 4  that it's consistently 38,600 doesn't appear accurate.

 5          So two things, Your Honor, this idea that they have a

 6  presumption, we believe we've rebutted their presumption that

 7  their rate is reasonable.  And in addition, even if that's not

 8  the case, Your Honor, we don't believe they've established they

 9  have a reasonable rate.

10          And also, Your Honor, the -- Trangistics has never

11  stated, oh yeah, we actually pay the true owner of the

12  warehouse 38,600.  This isn't an actual expense.  This is an

13  expense that appears that they are adding on to, significantly,

14  an amount, and that's not an actual or necessary expense.  The

15  information as to what they pay the warehouse is in their

16  control.  Your Honor, we haven't done discovery on this, but we

17  don't have that information in our control.  They're the ones

18  who have the relationship with the warehouse.  And based on

19  what we know, that -- Trangistics is paying, again,

20  significantly less than what they are charging the debtor.

21          So that -- our position is this is not an actual and

22  necessary expense, and they have to bear the burden of

23  establishing that it is.  These expenses, as the Court is fully

24  aware, are to be construed narrowly.  And in this instance --

25  and we don't believe the evidence in the reply should be

1  committed, as we didn't get a chance to see it.  But even if it

2  is, it doesn't establish a course of conduct that they want to

3  say, because there really is no actual agreement on the amount.

4  They were just issuing invoices, and then the invoices

5  fluctuate, as set forth in their declarations in support of

6  their reply.

7           So with that, Your Honor, I don't believe we have an

8  amount that has been established as an administrative expense

9  claim in the proper amount, given what has just been said, the

10 amount hasn't been established.  But also, obviously any

11 payments made post-petition would have to be credited.

12          THE COURT:  Okay.

13          MS. MCPHERSON:  So payments made post-petition for

14 the post-petition amount.  Thank you, Your Honor.

15          THE COURT:  Okay.  Ms. McPherson, so if I understand

16 you correctly, is there any dispute that the -- these kiosks

17 have been stored with the moving party's facility since the

18 petition date?

19          MS. MCPHERSON:  There's no dispute with regard to

20 that, Your Honor.

21          THE COURT:  Okay.  So there's --

22          MS. MCPHERSON:  It's with regard to the amount.

23          THE COURT:  There has been some storge by the moving

24 party post-petition.  Is that right?

25          MS. MCPHERSON:  That's correct, Your Honor.

1          THE COURT:  And it continues to this date.  Is that

2   right?

3          MS. MCPHERSON:  That's correct, Your Honor.

4          THE COURT:  All right.  And the agreement, whatever

5   the understanding was before the bankruptcy was filed,

6   continued on through today's date, that they would hold these

7   914 kiosks in their possession for the benefit of the estate.

8   Is that correct?

9          MS. MCPHERSON:  Correct, Your Honor.  The agreement

10  being -- originally it was a storage agreement, and a, you

11  know, transportation agreement, and then the machines never

12  were removed.  So that's -- that hasn't -- is what has

13  happened.

14         THE COURT:  Okay.  So what the debtor apparently

15  wants to dispute is have something in the nature of an

16  evidentiary determination, which may require discovery.  It may

17  actually require an evidentiary hearing whereby you try to

18  establish the value of the storage services provided by the

19  particular client that's represented by Ms. Guymon.  Is that

20  what you're telling me?

21         MS. MCPHERSON:  Well, Your Honor, this is a situation

22  where the party that's seeking payment is, we believe, charging

23  more than the actual use of the space.  So it's a little -- I

24  think it's unusual with regard to that.  So I believe the issue

25  is, is what's really being paid by Trangistics for the

1  warehouse owner.  And I believe that's the issue because to

2  prove an administrative expense claim, the movant bears the

3  burden of showing that the expense is the actual expense,

4  it's -- and it's necessary.  It's -- they're storing the space,

5  but -- or excuse me, storing the kiosks, but Your Honor, they

6  appear to be charging significantly more than what is actually

7  being charged by the storage facility itself.

8       THE COURT:  All right.  So let me understand, there

9  is no dispute that storage of these units physically is

10  necessary, you just don't think that the amount that is being

11  charged is necessary.  Is that right?

12       MS. MCPHERSON:  That's correct, Your Honor.

13       THE COURT:  I see.  Okay.  And then if I were to not

14  grant the application based on this record, then it would be a

15  contested proceeding under 914, to -- for which discovery is

16  available.  Is that what the debtor wants to do, wants to

17  conduct discovery on this matter?

18       MS. MCPHERSON:  Yes, Your Honor.

19       THE COURT:  I see.  Okay.  All right.  Anything else?

20       MS. MCPHERSON:  Nothing further.  Thank you, Your

21  Honor.

22       THE COURT:  I see.  Okay.  Ms. LoTempio, has the

23  creditors' committee weighed in on this matter?

24       MS. LOTEMPIO:  We have not, Your Honor, as far as I'm

25  aware.  We do not oppose the motion, and have, you know, an

```
1    agreement with the debtor in the sense that we want to keep

2    costs charged against the estate down to those actual and

3    necessary costs of the estate.  But with respect to an

4    evidentiary hearing, or putting in any position, we have not

5    done so.

6              THE COURT:  I see.  Okay.  All right.  Ms. Guymon,

7    anything to add in response?

8              MS. GUYMON:  Yes, Your Honor.  In our motion for

9    approval of administrative claims --

10             THE COURT:  Okay.

11             MS. GUYMON:  -- we actually attach our administrative

12   claim that we filed.

13             THE COURT:  All right.

14             MS. GUYMON:  And on Page 9 of 13 of Document 652 --

15   actually, Page 8 going into Page 9 --

16             THE COURT:  Okay.

17             MS. GUYMON:  -- we attached an email dated

18   January 18th, 2023.

19             THE COURT:  Okay.

20             MS. GUYMON:  At the bottom of that page it says the

21   following, "London, let me know if this is acceptable.  Based

22   on transporting 914 machines, 18 loads, storage space is 2.35

23   per square foot per month, for 14,000 square feet, or $32,900

24   for additional months.  The rate will be prorated for any

25   partial month, i.e. February."
```

```
 1              THE COURT:  Okay.

 2              MS. GUYMON:  So this is the amount that Trangistics

 3   pays for the storage.  It pays $32,900 for the storage.  It's

 4   charging $38,600 for the storage.  So it's -- is it allowed to

 5   make a little profit for being the middleman in picking up

 6   these machines and negotiating with the warehouse, and

 7   preparing the space for the debtor's machines?  Absolutely.

 8   And that number would be roughly $5,700 a month.

 9              THE COURT:  Okay.

10              MS. GUYMON:  And that number never changed once it

11   received those machines, and that's the amount that it invoiced

12   for.  Like I said before, it had been doing business with the

13   debtor previously.

14              THE COURT:  All right.

15              MS. GUYMON:  And yes, there were invoices going back

16   to 2021.  But the evidence is already here.  I don't know why

17   the debtor wants to spend more money on its attorneys to do

18   discovery and an evidentiary hearing on this issue.  It's not a

19   good way to save money, if that's what they're trying to do.

20   Thank you, Your Honor.

21              THE COURT:  Okay.  Thank you.  And, Ms. McPherson, in

22   the declaration you filed for Mr. Hall, there was a

23   paragraph -- on Paragraph 9 of the declaration.  Mr. Hall

24   refers to the storage of -- with Trangistics reviewing the

25   records.  Not -- he says he's not aware of any actual written
```

1    contract.  He says, "I note that the employee responsible for

2    dealings with Trangistics is no longer employed by the debtor,

3    and attempts to contacts him has not been successful."  Is that

4    the same person that's on this email chain that Ms. Guymon just

5    cited, someone named London Molina?  Is that the employee that

6    you can't reach anymore?

7           MS. MCPHERSON:  That's correct, Your Honor.  And I

8    would like to supplement this declaration in that after this

9    was filed, and just very recently, he did respond to the -- to

10   our emails.  And unfortunately there wasn't any additional new

11   information to provide to the Court.  It -- I don't think

12   there's any disagreement that there was oral agreements as to

13   storing the kiosks.  There was just not an agreement as to the

14   amount.

15          THE COURT:  Okay.

16          MS. MCPHERSON:  And as Ms. Guymon points out, she

17   points to Page 9 of 13 in their administrative proof of claim,

18   which we added in our response, which was a quote from the

19   response at Page 9 of 13 of POC 105, there's a discussion of

20   the rate of $32,900.  And I -- however, such amount is much

21   less than the amount claimed of $38,600.

22          What we're hearing today -- the debtor is hearing for

23   the first time is the -- an acknowledgement that they're

24   charging more than what they are actually paying, and the

25   amount.  That was not known -- even though this was in the

1 response, this wasn't addressed in the reply.

2          You know, if that's what is being submitted as

3 evidence, there is no need for discovery.  And I think the

4 question becomes can -- as a broker, can you charge a

5 significant amount more than what is actually required in the

6 absence of a written agreement for the amount, and keep

7 charging and sending invoices for a higher amount that --

8 again, was not part of an agreement, the sending invoices --

9 and whether that is a actual expense so that it qualifies for

10 an administrative expense claim, Your Honor.

11          So with that -- again, I just want to underscore,

12 we -- that was the information that we didn't have as to what

13 was actually being paid to the owner of the warehouse, and I

14 guess when this rate went into effect, the $32,900.  Because

15 the attachments to the motion where they bear the burden of

16 proving their administrative expense claim, also shows $2 per

17 square foot, which is $28,000.  So we've been told $30,500.

18          So we have several numbers out there with invoices of

19 $38,600.  So we don't know when -- how much the owner of the

20 warehouse, what it charges and from what date.  If it's 32,900

21 from the post -- starting at post-petition, February 7th, 2023,

22 going forward, that's the number.  And again, no discovery

23 would be necessary.  Thank you, Your Honor.

24          THE COURT:  Okay.  All right.  Ms. Guymon, I think

25 I've heard enough from both sides in connection with this

1  motion.  I'll simply take it under submission, I'll issue a

2  written decision.  If the Court concludes that any form of

3  discovery is necessary, the Court will include that directive

4  in connection with its order.  So the matter is under

5  submission, and that concludes the 10:30 calendar.  Thank you,

6  Counsel.

7          MS. GUYMON:  Thank you.

8          MS. MCPHERSON: Thank you, Your Honor.

9          THE COURT:  All right.  Court is adjourned.

10          THE CLERK:  Thank you, we're off record.

11      (Proceedings concluded at 11:17 a.m.)

12                    *  *  *  *  *

13

14              **C E R T I F I C A T I O N**

15

16          I, Alicia Jarrett, court-approved transcriber, hereby

17  certify that the foregoing is a correct transcript from the

18  official electronic sound recording of the proceedings in the

19  above-entitled matter.

20

21

22

23  _____

24  ALICIA JARRETT, AAERT NO. 428     DATE: July 24, 2023

25  ACCESS TRANSCRIPTS, LLC