BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
        zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO SURCHARGE THE COLLATERAL OF GENESIS GLOBAL HOLDCO, LLC, ENIGMA SECURITIES LIMITED, AND AVT NEVADA, L.P.**<br><br>Hearing Date:  August 29, 2023<br>Hearing Time:  9:30 a.m. (Pacific Time) |

1

147690880.3

Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the abovecaptioned case (the "Bankruptcy Case"), by and through its undersigned counsel, Fox Rothschild LLP ("Fox"), respectfully submits this this motion (the "Motion"), pursuant to sections 105(a) and 506 of title 11 of the United States Code (the "Bankruptcy Code"),[1] for entry of an order (the "Order"), in substantially the form attached hereto as **Exhibit A**, authorizing the expenses, fees and costs incurred by the Debtor in connection with the postpetition maintenance, marketing, auctioning and disposition of certain collateral (collectively, the "Collateral"), as well as all other fees and expenses incurred for the benefit of Genesis Global Holdco, LLC ("Genesis"), Enigma Securities Limited ("Enigma"), and AVT Nevada, L.P. ("AVT" and, collectively, the "Secured Creditors"), to preserve and dispose of the Collateral (collectively, the "Expenses"), currently estimated to be in an amount not less than $2,098,214[2] to be surcharged against the Collateral in accordance with § 506(c). In support of the Motion, the Debtor refers to the the *Declaration of Tanner James* (the "James Declaration") filed concurrently herewith, the papers and pleadings on file with the Court in the Bankruptcy Case, and any oral testimony or argument presented to the Court at the hearing on the Motion, and respectfully states as follows:

## I.

## PRELIMINARY STATEMENT

To date, the Secured Creditors have been unwilling to pay any—let alone a mutually agreeable—share of the costs incurred to benefit and monetize their Collateral, despite the clear benefits they have received. The Debtor asserts that the Secured Creditors must honor their obligation to pay the costs associated with this bankruptcy case, and thus had no choice but to file this motion.

---

[1] Unless otherwise provided herein, all references to "Section" and "§" refer to a section of the Bankruptcy Code.

[2] The Expenses are set forth on the charts attached to the James Declaration as **Exhibit A**. The Debtor is still analyzing the expenses incurred in this Bankruptcy Case and reserve its rights to modify the amount and type of Expenses sought in advance of any hearing or final determination on the surcharge amount owed by the Secured Creditors. As such this remains subject to material change and should not be construed as an admission, waiver of defenses or claims, or forfeiture of the right to assert additional amounts.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

It would be unfair and inequitable for the Secured Creditors to burden the Debtor and its creditors with the significant costs relating to the numerous sales of the Collateral, when all of the Expenses solely benefitted the Secured Creditors.  This is not a case where the Secured Creditors initially funded the process through consensual use of cash collateral and an approved budget. Instead, all of the costs of these cases—including the sale of the Collateral—has been borne by unencumbered assets.  Absent an agreement between the Debtor and the Secured Creditors resolving the Secured Creditors' obligation to satisfy the Expenses, § 506(c) provides an appropriate and fair mechanism to surcharge the Secured Creditors' Collateral to satisfy these costs.

Surcharging the Secured Creditors' Collateral pursuant to § 506(c) is appropriate because the Debtor has incurred reasonable and necessary administrative expenses, which benefited the Secured Creditors, by preserving and maintaining the Collateral and maximizing its value.  The Debtor incurred significant fees and expenses to market substantially all of their assets—through two alternative potential deal structures—consistent with the bargained for case milestones and the oversight of the the Secured Creditors.  The Expenses were incurred for the benefit of the Secured Creditors because the Debtor disposed of the Secured Creditors' Collateral in the manner chosen and dicrected by the Secured Creditors, with the goal of selling portions of the Collateral for the highest and best price.  In addition, the Debtor also incurred fees and costs in connection with the maintenance and storage of the Collateral, accruing postpetition interest, the employees and professionals working on the sales, and other costs directly related to the maintenance and disposition of such collateral for the benefit of the Secured Creditors.

Moreover, the Expenses the Debtor incurred with respect to the sale of Collateral are likely much lower than the Secured Creditors would have incurred outside of an orderly chapter 11 process. The Collateral consists of a variety of specialty equipment encumbered by certain encumbrances and state and federal regulatory considerations. In order to preserve and sell the Collateral under article 9 of the Uniform Commercial Code, as applicable, the Secured Creditors would have had to incur more than what the Debtor has incurred in this bankruptcy case, and would have likely realized less value. Indeed, the sale transactions benefited from the Debtor's specialized knowledge of the industry, the Collateral being sold, as well as the marketing efforts put forth by the Debtor's professionals.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

Throughout this Bankruptcy Case, the Secured Creditors have looked to shift to the Debtor and its professionals the incurrence of expenses associated with maintaining, preserving and selling the Collateral, all while maintaining tight supervision over the process.  It is now time they pay the freight.

## II.

## FACTUAL BACKGROUND

### A.    General Background

On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner and the Debtor remains a debtor-in-possession, pursuant to §§ 1107 and 1108.

On February 17, 2023, the Office of the United States Trustee appointed [Docket No. 131] the Official Committee of Unsecured Creditors (the "Committee"), as amended [Docket No. 177] on February 28, 2023.

The factual background relating to the Debtor's commencement of the Bankruptcy Case is set forth in detail in the *Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions* [Docket No. 19] (the "Omnibus Declaration") and is incorporated for all purposes herein by this reference.

### B.    The DIP Order and the Debtor's Right to Surcharge Genesis and Enigma

On or about April 22, 2022, the Debtor entered into that certain Secured Loan Facility Agreement (as amended, superseded, or otherwise modified from time to time, the "Enigma Loan") pursuant to which Enigma loaned the Debtor $8 million.  *See* DIP Order, ¶ 4(b)(i).  As of the Petition Date, the Debtor was indebted to Enigma in the aggregate principal amount of not less than $7,593,699 (together with accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors' and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing, that would constitute obligations owing under or in connection with the Enigma Loan, the "Enigma Secured

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

Claims"). *See id.* As set forth and defined more fully in the DIP Order, the Enigma Secured Claims are secured by the Enigma Liens the Enigma Collateral. *See id.*, ¶ 4(b)(ii).

On November 1, 2022, the Debtor entered into that certain Secured Demand Promissory Note (as amended by that certain Amended and Restated Secured Demand Promissory Note, dated as of November 23, 2022, the "Secured Promissory Note") between the Debtor, as borrower, and Genesis, pursuant to which, among other things, Genesis advanced to the Debtor $6 million on November 2, 2022 and $1.5 million on November 23, 2022. *See* DIP Order, ¶ 4(a)(i). As of the Petition Date, the Debtor was indebted to Genesis in the aggregate principal amount of $7,601,524 under the Secured Promissory Note (together with accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors' and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due or owing, that would constitute obligations owing under or in connection with the Secured Promissory Note, the "Genesis Secured Claims"). *See id.* As set forth and defined more fully in the DIP Order, the Genesis Secured Claims are secured by the Genesis Liens the Genesis Collateral. *See id.*, ¶ 4(a)(ii).

On March 20, 2023, the Court entered the *Final Order Under Bankruptcy Code Sections 105, 361,362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Grant Adequate Protection* [Docket No. 315] (the "DIP Order"). The DIP Order granted certain protections to Genesis and Enigma based on their prepetition relationship with the Debtor, which included providing Genesis and Enigma adequate protection based on the Genesis Liens and the Enigma Liens. *See* DIP Order, ¶¶ 9(a), 9(b), 10(a), 10(b). The adequate protection package granted both Genesis and Enigma, among other things, postpetition replacement liens on their respective Collateral and postpetition superiority claims payable from their respective Collateral, but, in each case, solely to the extent of any diminution in the value of the Collateral resulting from, among other things, the postpetition financing authorized by the DIP Order (a "Diminution Claim"). *See id.*

Indeed, virtually all postpetition financing arrangements in recent memory include a negotiated waiver of the Debtor's rights under § 506(c). There is no such waiver in this Bankruptcy

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4

Case with respect to the Genesis and Enigma Secured Claims because Genesis and Enigma expressly agreed during negotiations with the Committee that the surcharge waiver in Paragraph 13 of the DIP Order—which applies only to the DIP Lender—would not apply to their Secured Claims. *See* DIP Order, ¶ 13. This was a bargained for event and provided that the Debtor and its estate retained all rights under § 506(c) except with respect to the Genesis and Enigma Diminution Claims.

**C.    The AVT Secured Claim**

AVT alleges that the Debtor entered a certain prepetition Master Lease Agreement (the "<u>Lease</u>") whereby AVT leased a total of 594 Bitcoin kiosks (the "<u>AVT Collateral</u>") to the Debtor. *See* Docket No. 785 (the "<u>AVT Sale Objection</u>") at 2. AVT alleges that it acquired title to the AVT Collateral pursuant to a sale-leaseback agreement with the Debtor, pursuant to which AVT leased the AVT Collateral back to the Debtor under the Lease. *See id.* at 3. Despite its characterization, AVT filed a UCC-1 financing statement purporting to secure the obligations owed to AVT against the AVT Collateral. *See id.*, Ex. A. The DIP Order does not address the AVT Secured Claim and the Debtor did not enter into a separate stipulation with AVT concerning any Secured Claim.

**D.    The Participation of the Secured Creditors in the Sale of the Collateral**

The DIP Order approved that certain *Senior Secured Super-Priority Debtor-in-Possession (DIP) Loan Agreement* (the "<u>DIP Loan</u>"). *See* DIP Order, ¶ 1. The DIP Loan provided for two sets of milestones as follows (collectively, the "<u>Milestones</u>"):

> "<u>Chapter 11 Case Milestones</u>" mean, with respect to a Plan of Reorganization, (i) the filing thereof by the Borrower by no later than April 28, 2023, providing for the repayment of all Obligations in full, and (ii) the entry of an Order by the Bankruptcy Court by no later than June 28, 2023, confirming the Plan of Reorganization;
>
> "<u>Chapter 11 Sale Milestones</u>" means, if a Plan of Reorganization has not been filed by April 28, 2023, (i) the filing of a Bidding Procedures Motion by the Borrower by no later than April 28, 2023 in lieu of the filing of a Plan of Reorganization, (ii) the entry of the Bidding Procedures Order by no later than May 12, 2023, (iii) the occurrence of the "Bid Deadline" as defined in the Bidding Procedures Order by no later than July 14, 2023, (iv) the commencement of an "Auction" as defined in the Bidding Procedures Order by no later than July 21, 2023, (v) the occurrence of the hearing before the Bankruptcy Court to consider the approval of the sale of the Borrower's assets as contemplated in the Bidding Procedures Order by no later than July 27, 2023, (vi) the entry of a "Sale Order" by the Bankruptcy Court as defined in the Bidding Procedures Order by no later than August 1,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

2023, and (vii) the closing of the sale transaction contemplated in the Sale Order by no later than August 15, 2023.

The Debtor was obligated to satisfy the Milestones under the terms of the DIP Loan. *See* DIP Loan, at §§ 5.14, 7.1(k)(xiv). As part of their adequate protection packages, Genesis and Enigma specifically negotiated provisions obligating the Debtor to obtain their written consent to any deviation from the Milestones. *See* DIP Order, at ¶¶ 9(f), 10(f).

On April 7, 2023, the Debtor filed a *Motion for Entry of an Order: (A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially All of the Debtors Assets; (B) Approving Form Notice to Be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [Docket No. 392] (the "Bid Procedures Motion"). On April 27, 2023, the Court entered the *Order Establishing Bidding Procedures and Related Deadlines* [Docket No. 483] (the "Bid Procedures Order"). The Bid Procedures Order approved, among other things, bid procedures for the solicitation of offers to provide a plan term sheet or sale offer (the "Bid Procedures"). Pursuant to the Bid Procedures, the Debtor appointed its financial advisors, Province LLC ("Province"), to manage the sale process, and selected the Committee, Enigma, Genesis, and the DIP Lender as consultation parties (collectively, the "Consultation Parties"). *See* Docket No. 715 (Ayala Decl., at ¶ 5). The Bid Procedures granted the Consultation Parties broad rights concerning the oversight and conduct of the sale process. *See* Bid Procs. Order, Ex. A.

As part of the marketing efforts, Province, in concert with the Debtor and in consultation with the Consultation Parties, sent out a marketing teaser describing the Debtor's business and the auction process to entities known to Province, as well as entities that may be recommended by the Consultation Parties or other creditors. *See* Docket No. 716 (Moses Decl., at ¶ 5).

Pursuant to the rights granted to them under the DIP Order and as Consultation Parties, Genesis and Enigma authorized the extension of deadlines associated with the sale on three occasions and were intimately involved in the sale process. *See, e.g.*, Docket Nos. 527, 645, 650. On June 2, 2023, the Debtor held an auction for the sale of its assets, including the Collateral. *See* Docket No. 715 (Ayala Decl., at ¶ 7). The auction lasted over twelve hours and resulted in two winning bids—a joint bid from Heller Capital Group, LLC ("Heller") and Genesis Coin, Inc. and a separate bid by

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6

Chris McAlary.  *See id.*  The bids were selected as the winning bids by the Debtor in consultation with the Consultation Parties.  *See id.*

On June 19, 2023, the Debtor filed a motion [Docket No. 730] (the "<u>Sale Motion</u>") to approve the sale results obtained at the auction.  On June 29, 2023, AVT filed an opposition [Docket No. 785] to the Sale Motion restating an oral objection made at the sale hearing, which contended, *inter alia*, that the Debtor could not sell the AVT Collateral because it was not property of the estate.  However, AVT ultimately consented to permit the Debtor to include the AVT Collateral in the sale to Heller.  *See, e.g.*, Sale Mot., Ex. A (Heller APA, at § 1.9).  On June 30, 2023, the Court entered the order [Docket No. 795] (the "<u>Sale Order</u>") approving the sale, which, among other things, preserved the Debtor's right to assert surcharge claims against the Secured Creditors.

The winning bids displaced the stalking horse bid by RockItCoin.  On June 26, 2023, the Debtor and RockItCoin entered into a stipulation [Docket No. 768] with RockItCoin to resolve its claims for stalking horse bidder protections.  Pursuant to that stipulation, RockItCoin was granted a break-up fee of $186,060 and an expense reimbursement of $150,000 payable from the proceeds of the Heller-Genesis sale.

The sale resulted in substantially less value to the estate than the parties anticipated.  The Debtor valued the Heller-Genesis Coin sale at approximately $5.95 million, which includes a minimum "earn-out" guarantee over a 20-month period.  *See* Sale Mot., Exs. A-B.  The Debtor valued the sale of Brazil operations to Mr. McAlary at approximately $650,000, which includes a repayment of receivables owed from the Debtor's Brazilian affiliate.  *See* Docket No. 618 at 2.  However, the Brazil sale did not close.  While the Debtor anticipated other potential sources of recovery, the sales collectively generated much less than the estimated secured debt.  *See, e.g.*, Docket No. 821, Ex. B (Liquidation Analysis).

**E.**    **<u>The Expenses Benefitted the Secured Creditors and Can Be Surcharged Against the Collateral</u>**

The Expenses incurred by the Debtor's estate were reasonable and necessary to preserve and dispose of the Collateral at the time they were undertaken and provided a direct benefit to the Secured Creditors.  The Debtor has expended great efforts to ensure that the Expenses are well-documented

and clearly tied to the benefits conferred to the Secured Creditors with respect to the sale of the Collateral.

There are two principal categories of Expenses for which the Debtor seeks a surcharge. ***First***, the Debtor has calculated the costs associated with warehousing equipment that constitutes the Collateral. The Debtor has estimated that the amount of these types of Expenses equals approximately $518,000, which is allocable to the Secured Creditors as set forth more fully in the James Declaration. *See* James Decl., Ex. A. ***Second***, the Debtor calculated the Debtor's and Committee's professionals' fees and expenses related to the sale of the Collateral which benefitted the Secured Creditors. *See id.* These include the fees and expenses of (i) the Debtor's counsel, Fox Rothschild LLP, (ii) the Debtor's financial advisor, Province, (iii), the Committee's counsel, Seward & Kissel LLP and McDonald Carano LLP, (iv) the Committee's financial advisor, FTI Consulting, Inc., and (v) the Debtor's claims and noticing agent, Stretto. Collectively, the Expenses that may be surcharged against the Collateral relating to the Debtor's and Committee's professionals' fees and expenses are not less than $1,580,214. *See id.*

**The total estimated amount of the Expenses to be surcharged as of the date hereof is not less than $2,098,214.** The Debtor will continue to refine its analysis, as appropriate, and reserves all their rights in connection therewith.

### III.

### JURISDICTION AND VENUE

This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b), and the Debtor consents to entry of a final order by the Court in connection with this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

The bases for the relief requested herein are sections 105 and 506 of the Bankruptcy Code.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## IV.

## RELIEF REQUESTED

By the Motion, the Debtor respectfully seeks entry of the Order authorizing the Expenses, which are currently estimated to be not less than $2,098,214, to be surcharged against the Collateral.

## V.

## ARGUMENT

"Generally, bankruptcy administrative expenses may not be charged to or against secured collateral." *Golden v. Chicago Title Ins. Co. (In re Choo)*, 273 B.R. 608, 611 (B.A.P. 9th Cir. 2002); *see also IRS v. Boatmen's First Nat'l Bank of Kan. City*, 5 F.3d 1157, 1159 (8th Cir. 1993) ("Generally, administrative expenses are paid from the unencumbered assets of a bankruptcy estate rather than from secured collateral."). However, § 506(c) codifies the common law exception to that general rule and provides that:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c); *see also Choo*, 273 B.R. at 611. The underlying premise of this exception is that creditors should not be required to bear the costs of preserving a secured creditor's collateral. *See Precision Steel Shearing, Inc. v. Fremont Financial Corp (In re Visual Indus., Inc.)*, 57 F.3d 321, 325 (3rd Cir. 1995) (holding that § 506(c) allows a claimant who has expended funds to preserve or dispose of secured collateral to recover those funds from the secured creditor who directly benefitted from them, thus "prevent[ing] a windfall to the secured creditor at the expense of the claimant"). Congress expressly noted that a debtor has the right to surcharge a secured creditors' collateral. *See* 124 Cong. Rec. H11, 095 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards) ("Any time the trustee or debtor in possession expends money to provide for the reasonable and necessary cost and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor in possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

Generally, courts have applied one of two tests— the Beneficial Test and the Consent Test— to determine whether a debtor may surcharge a secured party's collateral.  ***First***, under the "<u>Beneficial Test</u>," a debtor "must prove that its expenses were reasonable, necessary[,] and provided a quantifiable benefit to" the secured creditor.  *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp., Inc. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001); *see also In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1262 (9th Cir. 2000) (allowing the debtor to surcharge the secured creditor for legal 11 fees to the extent that the debtor's counsel assisted in the sale of the collateral property).  The benefit cannot be hypothetical, *Compton Impressions, Ltd.*, 217 F.3d at 1261, and the administrative expenses must be incurred primarily for the secured creditor's benefit, *Cascade Hydraulics & Util. Serv., Inc.*, 815 F.2d at 548.  ***Second***, under the "<u>Consent Test</u>," the debtor must demonstrate that the secured creditor "caused or consented to" the surcharged expenses. *Compton Impressions, Ltd.*, 217 F.3d at 1260; *see also Weinstein, Eisen & Weiss v. Gill (In re Cooper Commons LLC)*, 512 F.3d 533, 536 (9th Cir. 2008).  Under this test,

> when it appears that a secured creditor in a reorganization case holding a lien on nearly all of the debtor's assets secures and promotes the services of an examiner, not only to investigate the debtor's financial affairs, but also to sell the debtor's business as a going concern and to settle outstanding claims, while all the time appreciating that the debtor may be administratively insolvent, the bankruptcy court may properly conclude that the secured creditor impliedly consented that the costs of administering that bankruptcy estate be paid from its cash collateral.

*In re Colusa Reg'l Med. Ctr.*, 604 B.R. 839, 860 (B.A.P. 9th Cir. 2019) (quoting *In re GTI Capital Holdings, LLC*, No. 06-1096, 2007 WL 7532277, at *15 (B.A.P. 9th Cir. Mar. 29, 2007)).

Either the Beneficial Test or the Consent Test under § 506(c) may be utilized by a court to ensure that "a secured creditor [cannot] reap the benefit of actions taken to preserve the secured creditor's collateral without shouldering the cost." 4 Collier on Bankruptcy ¶ 506.05 (16th ed. 2015). To be clear, the Debtor only needs to satisfy one test.  Here, the Debtor satisfies both. At bottom, a court's decision to surcharge collateral is appropriate when the failure to do so can result in the unjust enrichment the statute aims to prevent.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

10

**A.      The Debtor Satisfies the Beneficial Test**

The Debtor satisfies the Beneficial Test, such that the Expenses should be surcharged against the Collateral.  When analyzing benefit "the focus is on whether the expenditure in question was directed specifically toward the collateral, as opposed to property of the estate generally."  *In re Choo*, 273 B.R. at 611.  In the latter case any benefit to the secured creditor would be incidental and surcharge would be inappropriate.  *Id.* at 611–12.  For example, in *In re Domistyle, Inc.*, 811 F.3d 691, 694 (5th Cir. 2015), the debtor sought to surcharge the secured lender's collateral for expenses the debtor incurred to preserve the collateral, which included "security, ad valorem taxes against the Real Property, repairs to any improvement or fixture, replacements of any improvement or fixture, and electricity."  The secured lender objected, but the court overruled the objection and held that the expenses could be surcharged against the collateral because they (i) preserved the value of the collateral and (ii) relieved the secured lender from directly incurring such costs.  *Id.* at 695.  The *Domistyle* Court held that "an expense incurred primarily to preserve or dispose of encumbered property meets the [surcharge] requirement[s of the Beneficial Test]."  *Id.* at 698. If such expenses were not incurred by the debtor, the collateral's value would have been virtually destroyed by vandalism and weather-related damage.  *Id.* at 700.

Similarly, in *In re McCombs*, 436 B.R. 421 (Bankr. S.D. Tex. 2010), a trustee sought to sell two pieces of collateral free and clear of all liens, claims, and interests with the caveat that such liens would attach to the sale proceeds.  *Id.* at 448.  The trustee sought to surcharge the collateral to pay the costs incurred to sell the collateral, including the fees and expenses of the trustee's professionals.  The Court found that the costs incurred to sell the collateral "were necessary to the administration of [the] case" because such sale (a) avoided the risk that any of the collateral would be abandoned to avoid maintenance expenses, (b) maximized the collateral's value for the benefit of the debtor's creditors, and (c) saved the secured lender the time and expense of seeking to modify the automatic stay and sell the property itself or buy back the collateral itself.  *Id.* at 449.  The *McCombs* Court noted that evidence regarding the nature or extent of the costs and expenses incurred in selling the collateral had to be presented to ensure that such costs were reasonable and to quantify the professional expenses.  *Id.* 450.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

11

The fees and expenses of the professionals for the Debtor and Committee (as presented in the James Declaration) that were incurred to sell the Collateral—namely Digital Currency Machines—are strikingly similar to those that were approved for surcharge in *McCombs*. Here the Debtors (i) marketed and sold, in part, the Collateral rather than abandon such property to reduce administrative expenses (particularly with respect to stored and warehouses machines), (ii) maximized the value of the Collateral pursuant to the sale process, (iii) substantially reduced the Secured Creditor's professional fees by relying on the Debtor's and Committee's professionals to document the sale transactions and resolve all corporate, regulatory, and bankruptcy issues related to each Collateral sale, and (iv) presented granular details regarding each professionals' fees and expenses associated with the Collateral dispositions. The Secured Creditors avoided paying any of these Expenses, while their Collateral was preserved and enhanced by the work of the professionals, whose fees are therefore part of the Expenses.

### 1.    <u>The Expenses Were Necessary</u>

An expenditure is necessary where the movant demonstrates that the expenditure was needed to preserve or increase the value of collateralized property, or to dispose of the property, *In re Domistyle, Inc.*, 811 F.3d 691, 698 (5th Cir. 2015), and draws the necessary connection between the expense and the collateral at issue. *See, e.g.*, *In re K & L Lakeland, Inc.*, 128 F.3d 203, 210 (4th Cir. 1997) (noting the importance of identifying how the expenses were "incurred primarily to protect or preserve [the secured creditor's] collateral"); *Cascade Hydraulics & Util. Serv., Inc.*, 815 F.2d at 548 ("To satisfy the benefit test of section 506(c), Cascade must establish in quantifiable terms that it expended funds directly to protect and preserve the collateral."); *see also In re Towne, Inc.*, 536 Fed. App'x 265, 269 (3d Cir. 2013) (affirming bankruptcy court's finding and explaining that the expenses must be targeted at the preservation of the secured lender's collateral).

An expenditure is also considered necessary for § 506(c) purposes if it is associated with operating or maintaining the collateral. *See In re River Oaks Ltd. P'ship*, 166 B.R. 94 (E.D. Mich. 1994) (holding that costs associated with maintaining and operating the collateral were within the scope of section 506(c)); *In re TIC Memphis RI 13, LLC*, 498 B.R. 831, 836-37 (Bankr. W.D. Tenn. 2013) ("for an action to be necessary under § 506(c), the action must be required to preserve or dispose of the property securing the debt. Where actions are elective and forgo other viable actions and options, such

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

actions are not, *ipso facto*, by nature necessary.").

Here, the Debtor can establish that the Expenses did in fact benefit the Secured Creditors, and were reasonable and necessary to protect, preserve and dispose of the Collateral.  Specifically, such Expenses include, but are not limited to, the following necessary expenses: (i) $518,000 related to the cost associated with warehousing or securely storing the Collateral; and (ii) approximately $1,580,214 representing the Debtor's and Committee's professionals' fees and expenses incurred to market and sell the Collateral and litigate the approval of such sales and processes to ensure that such sales complied with all state and federal laws and regulations. *See* James Decl., Ex. A.  Without the Debtor's and the Committee's efforts to store, secure, market and sell the Collateral, there would have been no sale, and no proceeds.

### 2.    The Amount of Expenses Is Reasonable

Courts measure reasonableness of expenses by analyzing the "totality of circumstances" of normal commercial considerations.  *In re Senior-G & A Operating Co., Inc.*, 957 F.2d 1290, 1299 (5th Cir. 1992); *see also In re Second Pa. Real Estate Corp.*, 192 B.R. 663, (Bankr. W.D. Pa. 1995) (holding that the fees and expenses that the debtors sought to surcharge was reasonable "in light of the effort expended and result achieved").

Although reasonableness may be measured against the total costs and expenses a secured creditor would otherwise have incurred in foreclosing on the property itself, the relevant costs may be more than simple foreclosure costs if repairs are required, or if, for example, disputes must be resolved or other action must be taken in order to ready the property for sale. 4 Collier on Bankruptcy ¶ 506.05[5] (16th ed. 2015).

Examples of expenditures that courts have consistently found to be reasonable are expenses directly related to preserving the value or disposition of collateral, including, but not limited to, insurance costs, maintenance and repair costs, employee salaries, and costs related to the sale and marketing of the collateral.  *See In re Domistyle, Inc.*, 811 F.3d at 696 (holding that costs for "security, repairs to the roof and electrical system, mowing, landscaping, utilities, and insurance premiums" were reasonable and necessary); *In re Tollenaar Holsteins*, 538 B.R. 830, 834 (Bankr. E.D. Cal. 2015) (finding that expenses to preserve the value of the collateral is a reasonable expense); *In re McCombs*,

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

436 B.R. 421, 449 (Bankr. S.D. Tex. 2010) ("[a]s such, the Ivy Run Property and the Ivy Run Lot—and, now, the Excess Proceeds—constitute 'property securing an allowed secured claim,' and the Trustee may recover out of the Excess Proceeds his costs and expenses incurred in preserving, or disposing of, such property pursuant to Section 506(c)"); *In re Trim-X, Inc.*, 695 F.2d 296, 302 (7th Cir. 1982) (finding that the debtors should note why the expenses were reasonable during the calculation of the expenses they seek to surcharge).  These are the same types of expenses the Debtor incurred in preserving and monetizing the Collateral, as set forth above.

Here, the amount of each of the Expenses is demonstrably reasonable because they were largely determined either by (i) the relevant commercial and market realities applicable to the Debtor's assets and property or (ii) an established, and commercially reasonable process (with which the Secured Creditors expressly agreed) for marketing, selling, or disposing of the Collateral for the best and highest price.  For example, the Debtor had no choice but to pay the market rate to insure and secure the Collateral.  The Debtor has not incurred unnecessary expenses or taken unreasonable financial risks which it is seeking to shift to the Secured Creditors.

### 3.    The Expenses Benefitted the Secured Creditors

"[E]xpenses recoverable under Section 506(c) from a secured creditor's collateral must also have bestowed a 'benefit' on the secured creditor with respect to the creditor's collateral." 4 Collier on Bankruptcy ¶ 506.05[6] (16th ed. 2015). That requirement is met when the expense is "incurred in order to preserve or dispose of the secured creditor's property." *In re Florence Discount Ctr.*, 175 B.R. 939, 941 (Bankr. S.D. Ohio 1994) (internal citation omitted); *In re Mobile Air Drilling Co.*, 53 B.R. 605, 609 (Bankr. N.D. Ohio 1985) (same); see also 4 Collier on Bankruptcy ¶ 506.05 (16th ed. 2015) ("[A] secured creditor receives a 'benefit' within the meaning of section 506(c) if the relevant expense preserved or increased the value of its collateral"). For example, in *In re Lamont Gear Co.*, No. 95-17033, 1997 WL 397582, at *8 (Bankr. E.D. Pa. July 9, 1997), the court held that the storage and preservation expenses of the secured creditor's collateral could be surcharged under section 506(c) because if the debtor had not incurred these costs, the secured creditor "would have had to incur some storage fee expense in order to protect its collateral."

147690880.3

Furthermore, when costs and expenses solely involve the disposition of collateral, such expenditures "would generally be found to relate to preservation or disposition and benefit the holder of the secured claim." *In re SpecialCare, Inc.*, 209 B.R. 13, 19-20 (Bankr. N.D. Ga. 1997) (internal citation omitted). For example, the *SpecialCare* Court held that the "payroll of employees directly and solely involved with the disposition of the subject property," which in this case was an employee determining insurance claims for the collection of accounts receivable, are expenses that may be surcharged against a secured lender's collateral. *Id.* at 19. Here, the Debtor spent millions of dollars to preserve, protect, maintain, and repair the Collateral and incurred additional fees and other costs to efficiently sell the Collateral through a Court-approved and Consultation Party-dictated process. Thus, as in the *Lamont Gear* and *SpecialCare* cases, these Expenses benefitted the Collateral and therefore may be surcharged under section 506(c).

When continued operation of the debtor's business is integral to maximizing value in disposing of the collateral, the debtor may also surcharge costs incurred to run the business. *See Domistyle*, 811 F.3d at 700-01 (holding surcharge benefitted lender because absent maintenance and care of the collateral, it would have "been left trying to sell a vacant building damaged by vandalism, filled with overgrown weeds, and saddled with a leaking roof"); *In re Strategic Labor, Inc.*, 467 B.R. 11, 22 (Bankr. D. Mass. 2012) (holding that when "the debtor's continued operations preserve or enhance the value of the secured creditor's collateral, items that may qualify as 'necessary' expenses chargeable against the collateral include the debtor's payroll costs, insurance costs, workers' compensation expenses, and post-petition administrative taxes . . . . Since it is clear that the continued operation of the debtor's business was a prerequisite to the sale . . . .") (quoting 4 Collier on Bankruptcy ¶ 506.05[4] (16th ed. 2015)); *In re AFCO Enterprises, Inc.*, 35 B.R. 512, 516 (Bankr. D. Utah 1983) (holding that operating costs spent maintaining a resort as a going-concern could be surcharged because maintaining the resort reduced startup cost for the buyers, which would have been reflected in a lower purchase price).[3]

---

[3] The fact that other creditors may also have benefitted from the sale of the Collateral does not mean that the Secured Creditors' Collateral should not be surcharged to pay the Expenses. Whether another creditor may have tangentially benefitted from the Expenses is of no import to the Court's examination of the Expenses' propriety. Such an assertion would be "dubious and unsupported" and "misread[] the test to determine chargeability under 506(c)." *Senior-G&A Operating Co., Inc.*, 957

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1    Here, the Debtor maintained, marketed, and sold the Collateral while managing the day-to-

2   day operations of its business for months in this Bankruptcy Case.  The Expenses were necessary and

3   reasonable to preserve and dispose of the Collateral in the most value-maximizing manner under the

4   circumstances.  The sale process was the best way to maximize the Collateral's value and was

5   determined by the Secured Creditors, or with their consent, such that the ensuing Expenses necessary

6   to generate the Debtor's sale results are within the scope of § 506(c).  The Debtor's management

7   ensured that the sales that have closed to date were accomplished in a highly efficient manner and for

8   the highest and best price because of the Debtor's disciplined and thorough marketing and sale process

9   and efforts to preserve the ongoing business operations and going concern value pre-sale.

10    On the other hand, a process led by any individual Secured Creditor likely would have been

11   prohibitively costly and likely would have generated less proceeds than what was obtained by the

12   Debtor, harming all of the estate's parties-in-interest in the process.  Indeed, the Debtor doubts that

13   simply returning the Collateral to the Secured Creditors would have been value-maximizing,

14   especially given that the hardware is located in a variety of leased locations and storage and

15   transportation costs are significant.

16    Accordingly, the sales that the Debtor has achieved generated value that directly benefitted

17   the Secured Creditors by monetizing a portion of their Collateral at values that exceeded the Secured

18   Creditors reasonable expectations and without the Secured Creditors having to come out of pocket

19   for a dollar.  *See In re Strategic Labor, Inc.*, 467 B.R. at 23 (approving surcharge of expenses related

20   to the sale of certain assets and compensation for management where "the record of this case has been

21   consistent and unambiguous from the outset that the primary beneficiary of the debtor's efforts to sell

22   its assets on a going-concern basis in chapter 11 would be the [Lienholder]"); *In re Phoenix Pipe and*

23   *Tube, L.P.*, 174 B.R. 688, 692 (E.D. Pa. 1994) (finding that payroll expenses, CEO salary, and other

24   employee and administrative expenses directly benefited secured creditor because "[a] company does

25   not run itself").  At bottom, each of the Expenses was necessary to achieve the stated goal of selling

26   the Collateral, it was reasonable in amount, and beneficial to the Secured Creditors because it

27

28   F.2d at 1300.  Instead, this Court must determine if the Expenses were reasonable, necessary, and of
     benefit to the Secured Creditors, all of which are satisfied in this Bankruptcy Case.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

1   achieved the highest and best offer for the Collateral even in the currently depressed cryptocurrency

2   market.   Accordingly, the Debtor has satisfied the Beneficial Tests and the Collateral should be

3   surcharged for the Expenses.

4   **B.**      **The Debtor Satisfies the Consent Test**

5          The Debtor also satisfies the Consent Test, such that the Expenses should be surcharged

6   against the Collateral.  In *In re Ferncrest Court Partners*, 66 F.3d 778, 782 (6th Cir. 1995), while the

7   court stated that "a finding of consent 'is not to be lightly inferred,'" it explained that if the secured

8   creditor "stipulated in writing to Debtor's right to pursue a private sale" and thereafter "failed to

9   object" to the retention of a professional benefitting the collateral, then the secured lender will be

10  found to have consented to the sale-related costs.  In *Ferncrest*, a postpetition commission to a broker

11  associated with the sale of the collateral was surcharged pursuant to section 506(c) because the lender

12  consented to the commission.  *Id.* at 783. Similarly, in this Bankruptcy Case, the Debtor incurred fees

13  and expenses to sell the Collateral for the benefit of the Secured Creditors.  This sale process was

14  explicitly provided for in the Milestones, which Enigma and Genesis consented to in the DIP Order

15  and again as Consultation Parties under the Bid Procedures.  Indeed, both Genesis and Enigma had

16  consent rights to modify the sale schedule, and had robust rights to oversee and guide the sale process

17  as Consultation Parties, including consultation rights over the best bid.  Moreover, AVT was required

18  by the terms of the Heller APA to expressly consent to the Debtor's transfer of the Collateral to Heller.

19  It is also crucial to note that the Secured Creditors never objected to the retention of the Debtor's or

20  the Committee's professionals.

21         Under the Consent Test, a court may surcharge not only the professionals' fees and expenses

22  against the collateral, but also the expenses related to preserving and maintaining the going-concern

23  value of the collateral.  *Tollenaar Holsteins*, 538 B.R. 830 (Bankr. E.D. Cal. 2015).  The *Tollenaar*

24  Court faced a similar situation than the one in this Bankruptcy Case: the debtor/trustee incurred

25  internal expenses and third-party fees and expenses related to the preservation, maintenance, and sale

26  of substantially of the secured lenders' collateral.  *Id.* at 832, 833.  These expenses included labor

27  intensive processes of caring, feeding, maintaining, transporting, and selling dairy cow herds, which

28  comprised the collateral, along with preserving the ranch collateral to ensure that the collateral

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

17

remained a "wet" dairy that could operate as a dairy farm for a potential purchaser and preserve its going-concern value. *Id.* at 840-43. Upon holding that both secured lenders consented to the fees and expenses, by allowing the trustee to incur expenses "to maintain the dairy operations to prevent the potential loss of operating permits which it feared would adversely affect the value of the real property," the court surcharged such operating expenses against the collateral proceeds. *Id.* at 834-35, 841-43. Here, the Debtor incurred internal expenses to preserve, maintain, and sell the Collateral for its highest and best going-concern value. Because the Secured Creditors provided the Debtor with written consent to proceed with each sale and never objected to the retention of the professionals in this Bankruptcy Case, the Debtor's internal expenses can be surcharged, as in the *Tollenaar* case.

The Secured Creditors unequivocally consented to the Debtor incurring the Expenses relating to the sale process. *See In re Ferncrest Court Partners*, 66 F.3d 778, 782 (6th Cir. 1995); *see also In re Swann*, 149 Bankr. 137, 143 (Bankr. D.S.D. 1993) (citing *In re Great Northern Forest Products, Inc.*, 135 Bankr. 46, 62 (Bankr. W.D. Mich. 1991)). The Secured Creditors provided consent for each of the steps in the sale process. ***First***, the Secured Creditors not only consented to, but directed the Debtor to engage in, the sale process. ***Second***, the Secured Creditors consented in writing—either through their acceptance of the DIP Milestones, the Consultation Party position, or their agreement to sell Collateraion—and did not object to the procedures outlined in the Bid Procedures. In addition, the Secured Creditors approved the proposed sale. ***Third***, the Secured Creditors agreed that the Debtor could pursue the overbid (with full knowledge of the overbid protections) and did not object to either sale. At no time did the Secured Creditors request relief from the automiatc stay in order to pursue the sale of the Collateral outside of the bankruptcy process—explicity indicating that they viewed the Debtor's process as the value-maximizing alternative. Accordingly, the Debtor can satisfy the Consent Test with respect to surcharge.

## VI.

## **RESERVATION OF RIGHTS**

The surcharge amount set forth in this Motion is based on estimated fees and expenses incurred related to the preservation of the Secured Creditors' Collateral and available as of the date of this Motion. Particularly with respect to professional fees, and in light of the recency of the sale

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

closing, the amounts set forth herein are subject to material variance as professionals finalize their billing statements.  As such, the Debtor reserves all rights to modify and supplement the total amount of the surcharge requested herein at or before the hearing on this Motion.  Nothing contained herein shall be construed as an admission of the final amount of the surcharge request, a waiver or forfeiture of the right to further supplement the requested amount, or a limitation of the Debtor's rights set forth herein.

## VII.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court enter the Proposed Order attached hereto as Exhibit 1 (i) surcharging the Secured Creditors' collateral in an amount of no less than $2,098,214, and directing that the money be paid to the Debtor's estate; and (ii) granting Debtor such other relief as the Court deems just and proper

Dated this 24th day of July 2023.

**FOX ROTHSCHILD LLP**

By: ____/s/Brett Axelrod_____
        BRETT A. AXELROD, ESQ.
        Nevada Bar No. 5859
        NICHOLAS A. KOFFROTH, ESQ.
        Nevada Bar No. 16264
        ZACHARY T. WILLIAMS, ESQ.
        Nevada Bar No. 16023
        1980 Festival Plaza Drive, Suite 700
        Las Vegas, Nevada 89135
*Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

19

1

2

**EXHIBIT B**
**\*PROPOSED FORM OF ORDER\***

3

4

5

6   BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859

7   NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264

8   ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023

9   **FOX ROTHSCHILD LLP**
    1980 Festival Plaza Drive, Suite 700

10  Las Vegas, Nevada 89135
    Telephone: (702) 262-6899

11  Facsimile: (702) 597-5503
    Email: baxelrod@foxrothschild.com

12          nkoffroth@foxrothschild.com

13          zwilliams@foxrothschild.com
    *Counsel for Debtor*

14

15

16                  **UNITED STATES BANKRUPTCY COURT**

17                          **DISTRICT OF NEVADA**

18  In re                              | Case No. BK-23-10423-mkn

19      CASH CLOUD, INC.,              | Chapter 11
        dba COIN CLOUD,
20                                     | **ORDER AUTHORIZING DEBTOR TO**
                                       | **SURCHARGE THE COLLATERAL OF**
21                          Debtor.    | **GENESIS GLOBAL HOLDCO, LLC,**
                                       | **ENIGMA SECURITIES LIMITED, AND**
22                                     | **AVT NEVADA, L.P.**

23

24                                     | Hearing Date:   August 29, 2023
                                       | Hearing Time:   9:30 a.m.
25

26

27

28

20

147690880.3

Upon the motion (the "Motion")[4] of the Debtor in the above-captioned chapter 11 case for the entry of an order authorizing the Debtor to surcharge the collateral of Genesis Global Holdco, LLC ("Genesis"), Enigma Securities Limited ("Enigma"), and AVT Nevada, L.P. ("AVT" and, collectively, the "Secured Creditors"); and upon consideration of the *Declaration of Daniel Ayala* in support of the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and the consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and this Court having determined that notice of the Motion as provided therein was good and sufficient; and this Court having determined that the relief sought in the Motion is in the best interest of the Debtor, its creditors, and all parties-in-interest; and after due deliberation,

**IT IS HEREBY ORDERED** as follows:

1.     The Motion is granted as set forth herein.

2.     The Debtor is hereby allowed and awarded a surcharge under § 506 against the Secured Creditors for the amount of the Expenses in an amount not less than $2,098,214 (the "Surcharge") without prejudice to any future potential surcharge for any subsequent period as may be established at a hearing on the Motion.

3.     The Debtor shall pay the Surcharge no later than 14 calendar days after entry of this Order.

4.     In addition to all other rights and remedies, the Surcharge shall constitute a senior lien and encumbrance against the Collateral until paid, which lien and encumbrance shall be senior in priority to all liens against the Collateral, and the Surcharge and related lien and encumbrance shall bear interest at the rate of five percent (5%) per annum until paid in full.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

---

[4] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

147690880.3

5.      This order shall constitute a perfected lien against the Collateral to secure the Surcharge, and the Debtor may record or file such other document or instrument as may be advisable to evidence the perfected lien.

6.      The Surcharge, the related lien, and other provisions of this Order shall survive the dismissal of the Debtor's Bankruptcy Case unless the order dismissing the cases expressly provides otherwise.

7.      The rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens.

8.      Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

9.      The Debtor is authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

10.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Respectfully submitted by:

**FOX ROTHSCHILD LLP**

By:  */s/Brett Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    ZACHARY T. WILLIAMS, ESQ.
    Nevada Bar No. 16023
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
*Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147690880.3

## **CERTIFICATION OF COUNSEL PURSUANT TO LOCAL RULE 9021**

In accordance with Local Rule 9021, counsel submitting this document certifies as follows:

☐   The Court has waived the requirement of approval in LR 9021(b)(1).

☐   No party appeared at the hearing or filed an objection to the motion

☒   I have delivered a copy of this proposed order to all counsel who appeared at the hearing, any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below:

☐   I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objected to the form or content of the order.

# # #

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

23

147690880.3