BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com
       zwilliams@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>　　　　　　Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**DEBTOR'S OBJECTION TO "APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF BRINK'S INCORPORATED" [ECF NO. 977]**<br><br>Hearing Date:　August 17, 2023<br>Hearing Time:　10:30 a.m. |

Cash Cloud, Inc. ("Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case"), by and through its undersigned counsel, Fox Rothschild LLP, hereby submits this Objection to the *Application for Allowance and Payment of Administrative Expense Claim of Brink's Incorporated [ECF No. 977]* (the "Claim Request"), filed by Brink's Incorporated ("Brink's"), seeking administrative expense priority status for POC No. 153 [ECF No. 890] (the "Brink's Admin Claim"). This Objection is supported by the Memorandum of Points and Authorities set forth below, the *Declaration of Daniel Ayala* (the "Ayala Declaration) filed

1

147876105.2

concurrently herewith, any further evidence that may be presented at the hearing on the Claim Request, the arguments and representations of counsel at the hearing on the Claim Request, and the record in this Chapter 11 Case.

## I.
## INTRODUCTION

Brink's asserts a claim for administrative expense priority in the aggregate amount of $804,487.64, broken into two parts: (a) a claim for unpaid post-petition cash transportation services in the amount of $174,792.64; and (b) a claim for unpaid pre-petition cash transportation services in the amount of $629,695.00 that Brink's asserts Debtor is obligated to pay pursuant to an unperformed critical vendor agreement.

Debtor agrees that Brink's is entitled to an allowed administrative expense claim in the amount of $174,792.64 for unpaid post-petition services, but (for the reasons and based on the authorities set forth below) disputes that Brink's is entitled to any further administrative expense claim for unpaid pre-petition services.

## II.
## STATEMENT OF FACTS

**A.      General Background.**

1.      On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and the Debtor remains a debtor-in-possession, pursuant to §§ 1107 and 1108.

2.      On February 17, 2023, the Office of the United States Trustee appointed [Docket No. 131] the Official Committee of Unsecured Creditors (the "Committee"), as amended [Docket No. 177] on February 28, 2023.

3.      No request has been made for the appointment of a trustee or examiner.

4.      The factual background relating to the Debtor's commencement of the Bankruptcy Case is set forth in detail in the *Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions* [Docket No. 19] (the "Omnibus Declaration") and is incorporated for all purposes herein by this reference.

2

147876105.2

**B.     Critical Vendor Orders.**

5.    On February 7, 2023, the Debtor filed its *Emergency Motion for Entry of Interim and Final Orders Granting Debtor's Emergency Motion (I) Authorizing Debtor to Pay Prepetition Vendor Liabilities and (II) Authorizing and Direction Financing Institutions to Receive, Process, Honor and Pay all Checks Issued Relating to Vendor Liabilities* [ECF No. 7] (the "Critical Vendor Motion").

6.    Although Debtor and Brink's engaged in pre-petition discussions concerning Debtor's possible payment of prepetition amounts owing to Brink's as a critical vendor after the bankruptcy filing, the pre-petition written proposals were explicitly marked "Highly Preliminary Draft & Subject to Material Change." The parties never reached any formal agreement, nor was any such agreement incorporated in the Critical Vendor Motion. *See* Ayala Declaration, ¶ 4; Critical Vendor Motion.

7.    On February 16, 2023, the Court entered the *Interim Order Granting Debtor's Emergency Motion (I) Authorizing Debtor to Pay Prepetition Vendor Liabilities and (II) Authorizing and Direction Financing Institutions to Receive, Process, Honor and Pay all Checks Issued Relating to Vendor Liabilities* [ECF No. 108] (the "Interim Order"). Among other things, the Interim Order "authorized [Debtor] to pay Brink's U.S. ("Brinks"), Debtor's primary armored carrier and cash logistics provider, the sum of $630,000.00 for past-due prepetition amounts outstanding, in exchange for continued provision of services." *Id.*

8.    On March 20, 2023, the Court entered the *Final Order (I) Authorizing Debtor to Pay Prepetition Vendor Liabilities and (II) Authorizing and Direction Financing Institutions to Receive, Process, Honor and Pay all Checks Issued Relating to Vendor Liabilities* [ECF No. 319] (the "Final Order").

9.    The Final Order does not mention Brink's, but simply provides that "Debtor, in consultation with the Committee, is hereby authorized, but not directed, to pay its prepetition Vendor Liabilities (as the term is defined in the Motion)." *Id.,* ¶ 2. "Vendor Liabilities," in turn, are defined in the Critical Vendor Motion as "prepetition obligations owed to Debtor's key cash logistics vendors, armored carriers, warehousers, web service providers, retail hosts, and software providers." Critical Vendor Motion at 2.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

147876105.2

**C.     Post-Petition Payments to Brinks.**

10.     Pursuant to the Interim Order, Debtor paid Brink's $629,847.00 on March 7, 2023 for unpaid pre-petition services. *See* Ayala Declaration, ¶ 5.

11.     Since the Petition Date, Debtor has paid Brinks an aggregate of $894,322.65 for post-petition services rendered. As noted above, Debtor agrees that it owes Brink's $174,792.64 for unpaid post-petition services. *See* Ayala Declaration, ¶ 6.

### III.

### ARGUMENT

12.     Section 503(b) allows for the payment of administrative expenses that are "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b). The Ninth Circuit applies a two-part test to determine whether a claim is an "actual and necessary expense" and thus qualifies as an administrative expense. "In order to limit abuses of the administrative-expense priority," the Ninth Circuit "requires a claimant to show that the debt: (1) arose from a transaction with the debtor-in-possession and (2) directly and substantially benefitted the estate." *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.)*, 319 F.3d 1166, 1172 (9th Cir. 2003). The burden of proving an administrative expense claim falls squarely on the claimant. *Id.*

**A.     Claim for Unpaid Post-Petition Services Qualifies for Administrative Expense Priority.**

13.     Debtor concedes that Brink's provided Debtor (as debtor in possession) with post-petition services in the amount of $174,792.64 that directly and substantially benefited the estate, and that Brink's is entitled to an allowed administrative priority claim in that amount.

**B.     Brink's Fails to Meet its Burden of Proving Claim for Unpaid Pre-Petition Services Qualifies for Administrative Expense Priority.**

14.     Brink's argues that it is also entitled to an administrative expense priority claim for $629,695.00 in unpaid *pre-petition services* (in addition to the $629,847.00 payment for pre-petition services that it already received under the Interim Order) because Brink's relied on discussions with the Debtor about the possibility of payment of such amount in providing post-petition services.

4

147876105.2

15. Brink's fails to meet either prong of the two-part test: the pre-petition debt at issue neither (a) arose from a transaction with the debtor-in-possession, nor (b) directly and substantially benefitted the estate.

16. *First*, as noted above any pre-petition discussions regarding payment of unpaid pre-petition amounts owing were "Highly Preliminary" and "Subject to Material Change." Debtor (as debtor in possession) never entered into any formal agreement with Brink's. *See* Ayala Declaration, ¶ 7.

17. *Second*, Debtor never represented in the Critical Vendor Motion that it was seeking payment of any specified amounts to its armored cash carriers. To the contrary, Debtor requested entry of orders "authorizing to honor and/or pay, *in its discretion*, all Vendor Liabilities in existence as of the Petition Date . . . ." Critical Vendor Motion at 5 (emphasis added).

18. *Third*, the Interim Order provided, in relevant part, that:

> Debtor is hereby authorized to pay Brink's U.S. ("Brinks"), Debtor's primary armored carrier and cash logistics provider, the sum of $630,000.00 for past-due prepetition amounts outstanding, in exchange for continued provision of services. Brinks reserves all rights under its contract and agreement with the Debtor, including but not limited to, the right to receive additional prepetition payments in exchange for continued provision of services to Debtor, upon entry of a Final Order on the Motion, and the right to claim all prepetition amounts outstanding.

*See* Interim Order, ¶ 4.

19. Neither the Interim Order nor the Final Order provided for payment of any pre-petition amounts owing to Brink's in addition to the $630,000.00. Instead, the Final Order simply provided, in relevant part, that:

> Debtor, in consultation with the Committee, is hereby ***authorized, but not directed***, to pay its prepetition Vendor Liabilities (as the term is defined in the Motion).

*See* Final Order, ¶ 2 (emphasis added).

20. Moreover, neither the Interim Order nor the Final Order granted Brink's an allowed administrative expense priority claim for any pre-petition amounts owing. Rather, Brink's merely reserved all rights "to receive additional prepetition payments in exchange for continued provision of services to Debtor" and "to claim all prepetition amounts outstanding." Interim Order, ¶ 4.

5

147876105.2

21. When allowance of an administrative expense priority claim is intended, it is explicitly granted. *See, e.g., In re Payless Cashways, Inc.*, 268 B.R. 543, 548 (Bankr. W.D. Mo. 2001) (granting critical vendors "administrative expense priority claims in the amount of 90% of the credit extended by each such vendor"); *Pirinate Consulting Group, LLC v. Avoca Bement Corp. (In re Newpage Corp.)*, 517 B.R. 508, 512 (Bankr. D. Del. 2014) (pursuant to critical vendor order, debtor in possession entered into written agreement with vendor agreeing to grant administrative priority claim in specified amount).

22. *Finally*, Brink's has failed to demonstrate how its pre-petition provision of services directly and substantially benefitted Debtor's estate.

23. For all these reasons, Brink's claim for unpaid pre-petition services must be denied administrative expense priority.

## IV.
## CONCLUSION

For the reasons set forth herein, the Debtor respectfully requests that the Court enter an order: (i) sustaining the Objection; (ii) allowing Brink's an administrative expense priority claim in the amount of $174,792.64 only; (iii) denying the balance of the Claim Request; and (iv) granting Debtor such other and further relief as the Court deems just and proper.

Dated this 1st day of August 2023.

**FOX ROTHSCHILD LLP**

By: */s/Brett A. Axelrod*
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
*Counsel for Debtor*

147876105.2