**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Fax: (725) 386-4979
Email: ccarlyon@carlyoncica.com
          dcica@carlyoncica.com

*Counsel for Chris McAlary*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>           Debtor. | Case No.: Case No. BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**OPPOSITION TO APPROVAL OF STIPULATION GRANTING DERIVATIVE STANDING TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO CERTAIN ACTIONS**<br><br>Hearing Date:  OST REQUESTED<br>Hearing Time: OST REQUESTED |

Chris McAlary ("McAlary") by and through its counsel, the law firm of Carlyon Cica, hereby objects to approval of the *Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions* [ECF No. 1009] (the "Stipulation").

This Opposition is made and based upon the Points and Authorities filed herewith, the Declaration of Chris McAlary (the "McAlary Decl.") filed herewith, and the pleadings, papers and records on file in this matter.

/ / /

/ / /

/ / /

Respectfully submitted this 7th day of August, 2023.

**CARLYON CICA CHTD.**

*/s/ Dawn Cica*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone: (702) 685-4444
Email:   Ccarlyon@CarlyonCica.com

*Counsel for Chris McAlary*

## POINTS AND AUTHORITIES

## I.

## INTRODUCTION

It has become clear in the last week that the Committee is driving the train whose destination is blocking the bankruptcy estate's recovery from the Committee Co-Chair.  Following a robust sale process which left the estate administratively insolvent, the Debtor has modified its plan of reorganization to provide that the Effective Date of the proposed plan, if confirmed, is delayed until there are sufficient funds to pay professional fees incurred in connection with this case.[1]   Debtor's most recent Monthly Operating Report (for the period ending April 30, 2023) reveals that, even as of more than three months ago, Debtor had incurred losses totaling $11,968,635, and faced post-petition payables of $8,630,999.  *See* ECF No. 901.

---

[11]   *See First Amended Chapter 11 Plan Of Reorganization Dated August 1, 2023* [ECF No. 996](the "Amended Plan") (the Plan), at p. 9 lls 1-9, defining "Confirmation Funds" to include "all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date: (a) to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims"; Plan §6.1, providing that:  "On or before the Effective Date, the Debtor shall transfer and/or segregate Cash Assets in the amount of the Confirmation Funds for further distribution"; Plan §9.1(f), providing that it is a condition of the Effective Date that:  "Debtor and/or the Creditor Trustee on behalf of the Creditor Trust shall have transferred and/or segregated Cash Assets in the aggregate amount of the Confirmation Funds".

2

Section 1129(a)(9) of the Bankruptcy Code states that a plan filed under Chapter 11 must pay holders of allowed claims specified in section 507(a)(2) of Title 11 of the U.S. Code (the "Bankruptcy Code") cash equal to the allowed amount of the claim in full on the effective date unless the holder agrees to different treatment. The Liquidation Analysis (the "Liquidation Analysis") attached as Exhibit B to the Supplement to Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023[Docket No. 821] (the "Plan Supplement"), projects between approximately $5.7 million to $10.2 million in allowed administrative claims against sale proceeds of approximately $5.7 million (which were used to pay the DIP lender its claim of over $5 million). It is therefore clear that the Bankruptcy Case is administratively insolvent, as acknowledged by the Committee in its *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Derivative Standing and Authority to Commence, Prosecute and Settle Claims on Behalf of the Debtor's Estate* [ECF No. 925] ("The unfortunate reality of this case is that the Debtor's assets were worth less than the value of the secured debt, and the proceeds of the sale of the Debtor's assets solely benefit the Debtor's secured lenders"). *Id.* at 2. However, the reality is worse than that. The liquidation analysis described above assumes $3 million in professional fees on the low side and $4 million on the high side. *See* Liquidation Analysis. But currently, based on monthly fee statements filed, professional fees reflected in such filings are $4.617 million. *See* spreadsheet attached hereto as Exhibit 1.

But no fee statements have been filed by Fox, Province, or Committee's Nevada counsel since the fee statement for June, no fee statements have been filed by Committee counsel since the fee statement for May, and no fee statements have EVER been filed by the committee's financial advisor, FTI (which if they are half of the fees of the Debtor's FA, which is likely, will be close to $1 million). Based on estimates of fees in line with previous months as shown on the Excel spreadsheet attached hereto as Exhibit 1, fees are likely to currently be over $7.5 through July, and likely over $8 million as of the date of the confirmation hearing. As such the Debtor will be woefully unable to comply with the requirement that all administrative claims are paid in full pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm the plan since they have

1    sold substantially all of the assets of the debtor and now are relying on litigation claims which for

2    the reasons discusses elsewhere are better pursued by a Chapter 7 trustee.

3      The major litigation target, Cole Kepro, serves as the co-chair of the Unsecured Creditors'

4    Committee!   Mr. McAlary believes that but for Cole Kepro delivering DCM's  containing

5    defects in 2020 and 2021 which they knew about prior to delivery  and did not inform Cash Cloud

6    about, and but for BitAccess not terminating the DCM software shortly after the  purchase

7    of BitAccess by Bitcoin Depot in 2021 (the debtors claims against Cole Kepro, BitAccess and

8    BitCoin Depot are hereafter referred to as "Target Litigation"), with little notice and in express

9    violation of their written contracts with Cash Cloud, the Debtor would not have had to file this

10   Bankruptcy Case.  McAlary Decl. at ¶4.

11     Mr. McAlary submitted the only bid for the Target Litigation at the auction. McAlary Decl.

12   at ¶5.  Between June and August of 2023, McAlary negotiated with the Debtor, via its independent

13   director, financial consultant, and attorneys, to purchase the Target Litigation for the sum of

14   $750,000, plus a percentage of net recoveries from such claims.  McAlary Decl. at ¶6.  A larger

15   amount was offered for a global resolution.  McAlary Decl. at ¶7.   The Debtor represented that

16   the Committee rejected any settlement and was preparing a demand letter. McAlary Decl. at ¶8.

17   Following extensive negotiation, agreement was reached, and the Debtor circulated a motion to

18   approve the sale.  *Id.*  The Debtor determined to file a motion to approve that agreement (the

19   "Approval Motion") on shortened time, because the Debtor's payment to the Canadian arbitrators

20   in the BitAccess arbitration (approximately CAD260,000) is past due. McAlary Decl. at ¶9,

21   Exhibit 2 hereto.  On the evening of the day that the approval motion was to be filed, the Debtor

22   advised McAlary that the Debtor now would not file the Approval Motion due to the objection of

23   the Committee.  McAlary Decl. at ¶10.  The day before the Committee filed the Stipulation.  While

24   the Plan calls for litigation claims to vest in and be controlled by the Litigation Trustee, an

25   independent financial consultant to replace both the Debtor and the Committee, the Stipulation

26   seeks to vest the right to prosecute certain claims in the Committee, illustrating the fact that the

27   Committee now seeks to control the claims while the Plan cannot go effective.

28

It is submitted that, under these circumstances, vesting the prosecution of any claims of the estate in the Committee is not justified by the facts or law, and that the continued incurrence of runaway administrative expenses must come to an end.

**II.**

**ARGUMENT**

**A.  No Showing Has Been Made to Justify Approval of the Transfer of Claims to the Committee**

The attempt to assign litigation claims to the Committee via "stipulation" is contrary to the legal standards governing derivative standing.

> [A] creditor dissatisfied with the lack of action on the part of the debtor-in-possession may petition the court to compel the debtor-in-possession to act or gain court permission to institute the action itself. *Id.* at 828. However, the panel held that the creditor must receive court approval **before** instituting the proceeding and the action must be brought in the name of the bankruptcy estate as the real party in interest.

*In re Spaulding Composites Co., Inc.*, 207 B.R. 899, 903 (9th Cir. BAP 1997), citing *In re Curry and Sorensen, Inc.,* 57 B.R. 824, 828–29 (9th Cir. BAP 1986).   While the court may grant derivative standing to an official creditors' committee, judicial intervention is necessary in order to secure such approval.   *Id.* at 904 ("impartial judicial balancing of the benefits of a committee's representation better serves the bankruptcy estate. So long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial, allowing a creditors' committee to represent the estate presents no undue concerns").

> [I]f an aggrieved creditor believes that the debtor-in-possession has failed to fulfill its duty to prosecute actions, then the creditor must bring this to the attention of the court by an appropriate motion. This promotes the fair and orderly administration of the bankruptcy estate by providing judicial supervision over the litigation to be undertaken.

*In re Curry & Sorensen, Inc.,* 57 B.R. 824, 828 (B.A.P. 9th Cir. 1986).   The motion must be brought before the court for consideration, and the standards for granting the motion must be satisfied.

 Four requirements must be met before a committee may bring an action on behalf of the estate: (1) the claim be colorable; (2) the committee must make a demand on the debtor to bring the action; (3) the debtor must have refused unjustifiably to pursue the claim; (4) the committee must first obtain leave to sue from the bankruptcy court.

*In re First Capital Holdings Corp.*, 146 B.R. 7, 11 (Banrk. C.D. Cal. 1992).  *Accord*, *In re Valley Park, Inc.*, 217 B.R. 864, 866 (Bankr. D. Mont. 1988).  *See also In re Racing Servs., Inc.*, 540 F.3d 892, 900 (8th Cir. 2008)(" We therefore hold, to establish derivative standing, a creditor must show: (1) it petitioned the trustee to bring the claims and the trustee refused; (2) its claims are colorable; (3) it sought permission from the bankruptcy court to initiate an adversary proceeding; and (4) the trustee unjustifiably refused to pursue the claims").

Here, no showing has been made with regard to any of these factors.  No evidence whatsoever is provided in connection with the Stipulation, which merely recites that the Debtor and the Committee agree that the actions should be transferred pursuant to the proposed Plan, and that the Stipulation will provide "continuity" to such prosecution.  This does not approach the showing required to meet the burden of proving that cause exists to grant derivative standing.  To the contrary, the recitations illustrate that such an assignment is appropriate via the plan process.

**B.  There is no Colorable Claim against McAlary**

While neither the Debtor nor the Committee has filed any analysis, let alone evidence, to establish that colorable claims against McAlary exist, based upon correspondence from Committee counsel it appears that such purported claims arise from (1) approximately $4.5m in  distributions throughout 2021 under the safe harbor guidelines of the IRS so that McAlary could pay the expected tax payments for which he was personally liable; (2) a personal loan taken out by McAlary in 2021 in the amount of $1.25 million (of which over $500,000 was repaid pre-petition, and the balance of which is subject to set-off against McAlary's pre-petition loans to the Debtor); and (3) various "breach of fiduciary" duty claims including that  Mr. McAlary did not keep good books and records, that he lent bitcoin to the company instead of cash,  that he did not comply with corporate formalities and that he did not follow best practices in hiring a marketing manager who defrauded the company by overspending his budget by $20 million.

However, there are no colorable claims against McAlary. With respect to distributions made in 2021, more than a year prior to the bankruptcy filing, it should be noted that the Debtor earned 2020 net income of over $14 million which was exponentially greater than its profit in 2019 of just over $2 million. Mr. McAlary and the management team expected continued growth in 2022. Debtor's 2021 audit by Wolf and Co., issued in April of 2022, did not have a "going concern" exception as the Debtor was solvent at that time. During 2020 and 2021 Genesis had committed to loan the company $100 million. Further, starting in April of 2022 Enigma, an independent, sophisticated financial entity, lent eight million dollars to the company after extensive due diligence (with knowledge of Genesis). Subsequent thereto Genesis, who was advised by Ducera as its financial advisor, lent an additional six million dollars to the company, advised by B. Riley, in October 2022 and another $1.5 million in November 2022. This illustrates that distribution to Mr. McAlary, made in order to fund safe harbor tax payments based upon the Debtor's 2020 net income were not made while the Debtor was insolvent.

Further, with respect to allegations of breach of fiduciary duty, it is clear under Nevada law that only intentional misconduct, fraud or a knowing violation of law constitutes such breach. *See* NRS 78.138(7)(b). With respect to "intentional misconduct", per the Nevada Supreme Court "the claimant must establish that the director or officer had knowledge that the alleged conduct was wrongful in order to show a 'knowing violation of law' or 'intentional misconduct'". *Chur v. Eighth Judicial Dist. Court of Nev.* 136 Nev. 68, 75 458 P.3d 336, 342. By "wrongful" the Court means "unlawful". See id. Mr. McAlary was the sole shareholder of the company, which is nonpublic. Mr. McAlary believed he was operating in the interest of the company and himself as the sole shareholder. The Committee has made no allegations of intentional unlawful conduct and Mr. McAlary is unaware of engaging in any unlawful conduct, which is required under Nevada law to find a breach of fiduciary duties. Under applicable law (which is not acknowledged or addressed by the Committee), no colorable claims have been stated.

**C. Given the Posture of the Case, Litigation Claims Should be Brought by a Trustee**

As set forth in McAlary's Motion to Convert which is being filed substantially contemporaneously herewith, the time has come to convert the case to a Chapter 7. A Chapter 7

1    Trustee will be able to neutrally evaluate all claims and potential claims, and cost-effectively

2    pursue any colorable claims.

### III.

### CONCLUSION

5        For the reasons stated above, it is respectfully requested that the Court deny the Stipulation,

6    and issue such other and further relief as the Court may deem just and proper.

7        Respectfully submitted this 7th day of August, 2023.

**CARLYON CICA CHTD.**

*/s/ Dawn Cica*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone: (702) 685-4444
Email:  ccarlyon@carlyoncica.com
        dcica@carlyoncica.com

*Counsel for Chris McAlary*

1

2

### CERTIFICATE OF SERVICE

3

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the

4

Clerk of Court I caused a true and correct copy to be served in the following manner:

5

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court

6

for the District of Nevada, the above-referenced document was electronically filed and served

7

on all parties and attorneys who are filing users through the Notice of Electronic Filing

8

automatically generated by the Court.

9

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced

10

document into the United States Mail with prepaid first-class postage, addressed to the parties

11

at their last-known mailing address(es):

12

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced

13

document for overnight delivery via a nationally recognized courier, addressed to the parties

14

listed below which was incorporated by reference and made final in the w at their last-known

15

mailing address.

16

☐ FACSIMILE:  By sending the above-referenced document via facsimile to those persons

17

listed on the attached service list at the facsimile numbers set forth thereon.

18

I declare under penalty of perjury that the foregoing is true and correct.

19

20

*/s/ Nancy Arceneaux*

21

An employee of Carlyon Cica Chtd.

22

23

24

25

26

27

28

# EXHIBIT "1"

# EXHIBIT "1"

**EXHIBIT 1**

| Professionals | Docket/Date | Professional Fees | Expenses | Actual Fees Filed |
|---|---|---|---|---|
| Fox Rothschild | 864 7/17 June | $ 427,457.00 | $ 2,760.00 | $ 427,457.00 |
| | 721 6/16 May | $ 346,327.00 | $ 6,064.00 | $ 346,327.00 |
| | 575 5/18 April | $ 235,904.00 | $ 877.00 | $ 235,904.00 |
| | 436 4/19 FebMar | $ 558,696.00 | $ 5,683.00 | $ 558,696.00 |
| | ESTIMATED JULY | $ 313,600.00 | | |
| | | | | |
| Province | 923 7/24 June | $ 423,027.00 | $ 1,834.00 | $ 423,027.00 |
| | 784 6/29 May | $ 490,890.00 | $ 1,376.00 | $ 490,890.00 |
| | 600 5/25 April | $ 403,937.00 | $ 1,437.00 | $ 403,937.00 |
| | 500 4/28 FebMar | $ 682,138.00 | $ 1,786.00 | $ 682,138.00 |
| | ESTIMATED JULY | $ 399,800.00 | | |
| | | | | |
| Baker Hostetler | 792 6/30 May | $ 162,912.00 | $ 512.00 | $ 162,912.00 |
| | 607 5/30 April | $ 11,626.00 | | $ 11,626.00 |
| | | | | |
| McDonald Carano | 641 6/8 April | $ 10,745.00 | $ 16.45 | $ 10,745.00 |
| | 568 5/17 May | $ 22,223.00 | $ 1,118.00 | $ 22,223.00 |
| | 985 7/31 May | $ 6,800.00 | $ 331.95 | $ 6,800.00 |
| | 986 7/31 June | $ 5,585.00 | $ 435.54 | $ 5,585.00 |
| | ESTIMATED JULY | $ 9,070.00 | | |
| | | $ 54,423.00 | | |
| | | | | |
| Seward Kissel | 559 5/15 FebMar | $ 281,191.00 | | $ 281,191.00 |
| | 640 6/8 April | $ 218,840.00 | $ 453.00 | $ 218,840.00 |
| | 984 7/31 May | $ 328,742.00 | | $ 328,742.00 |
| | ESTIMATED JUNE | $ 207,193.00 | | |
| | ESTIMATED JULY | $ 207,193.00 | | |
| | | $ 828,773.00 | | |
| | | | | |
| FTI Committee FA | | $ 300,000.00 | | |
| | | $ 200,000.00 | | |
| | | $ 200,000.00 | | |
| | | $ 200,000.00 | | |
| | | $ 200,000.00 | | |
| | | | | |
| Total | | $ 7,737,092.00 | $ 24,683.94 | $ 4,617,040.00 |
| Total Fees + Expenses | | $ 7,761,775.94 | | |

# EXHIBIT "2"

# EXHIBIT "2"

| | |
|---|---|
| **From:** | Williams, Zachary |
| **To:** | Dawn Cica; Candace Carlyon |
| **Cc:** | Axelrod, Brett; Chlum, Patricia M. |
| **Subject:** | FW: Cash Cloud v. BitAccess |
| **Date:** | Friday, August 4, 2023 3:51:42 PM |
| **Attachments:** | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | 2023 07 14 LT Tribunal-C.pdf |

Dawn,

See the email below and the attached letter. I will be adjusting the motion because the amount is $260,000 CAD, which is roughly $195,000 USD depending on the day.

**Zach Williams**
**Associate | Business Solutions, Financial Restructuring & Bankruptcy**
**Fox Rothschild LLP**
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
(702) 427-2975 - Cell
(702) 699-5917 - Office
(702) 597-5503 - fax
ZWilliams@foxrothschild.com
www.foxrothschild.com

---

**From:** Williams, Zachary
**Sent:** August 4, 2023 12:08 PM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Subject:** FW: Cash Cloud v. BitAccess

See email below for exact amount owed

**Zach Williams**
**Associate | Business Solutions, Financial Restructuring & Bankruptcy**
**Fox Rothschild LLP**
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
(702) 427-2975 - Cell
(702) 699-5917 - Office
(702) 597-5503 - fax
ZWilliams@foxrothschild.com
www.foxrothschild.com

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** August 1, 2023 1:30 PM
**To:** Williams, Zachary <ZWilliams@foxrothschild.com>
**Subject:** FW: Cash Cloud v. BitAccess

**From:** Kevin Caron <KCaron@conwaylitigation.ca>
**Sent:** Monday, July 17, 2023 10:21 AM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Cc:** Williams, Zachary <ZWilliams@foxrothschild.com>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Brett,

A few updates on the arbitration:

- The tribunal received our letter seeking an extension to August 15th to make the payments.
- The tribunal gave BitAccess until Friday to either consent or make submissions as to why it opposes the request.
- BitAccess opposed the request (sort of). It delivered the attached letter to the tribunal on Friday.
- The tribunal is supposed to decide one way or the other by Wednesday.

The letter is full of obfuscation and red herrings. Once you cut through the noise, it looks like BitAccess doesn't actually oppose the extension of the payment deadline, but it wants terms. Mainly, it wants to push out the dates for the arbitration, it wants Cash Cloud to post the deposits and the security for costs by August 15th and, if it defaults in doing so, it wants the arbitration to be dismissed with prejudice.

I doubt the tribunal will make a substantive order that would dismiss the arbitration without a formal motion being made. However, the letter does raise the issue of the second tribunal deposit. If you recall, the tribunal asked for two deposits of $55,694.57. The first was due May 30th (this is the one we have been extending). The second is due August 15th.

Is Cash Cloud still on track to be in a position to make payments on August 15? If so, can Cash Cloud pay both deposits on August 15th, in addition to security for costs? The total payable would be CAD $261,389.14 ($111,389.14 [both deposits] + $150,000 [security for costs]). If so, I would like to let the tribunal know that this won't be a problem. If it will be a problem, then we should discuss ASAP.

Let me know.

Thanks,

Kevin

---

**From:** Kevin Caron
**Sent:** Wednesday, July 5, 2023 5:41 PM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>; Williams, Zachary <ZWilliams@foxrothschild.com>
**Subject:** RE: Cash Cloud v. BitAccess

FYI – here is the final version I just sent off.

---

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** Wednesday, July 5, 2023 4:11 PM
**To:** Kevin Caron <KCaron@conwaylitigation.ca>; Williams, Zachary <ZWilliams@foxrothschild.com>
**Subject:** RE: Cash Cloud v. BitAccess


No changes needed.  Letter is good.

---

**From:** Kevin Caron <KCaron@conwaylitigation.ca>
**Sent:** Wednesday, July 5, 2023 12:46 PM
**To:** Williams, Zachary <ZWilliams@foxrothschild.com>; Axelrod, Brett <BAxelrod@foxrothschild.com>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Here is the draft letter. Can you please review it and confirm that it is accurate? Feel free to make any changes that you propose in track.


---

**From:** Kevin Caron
**Sent:** Wednesday, July 5, 2023 2:51 PM
**To:** 'Williams, Zachary' <ZWilliams@foxrothschild.com>; Axelrod, Brett <BAxelrod@foxrothschild.com>
**Subject:** RE: Cash Cloud v. BitAccess

Thanks Zach.

I am preparing the draft letter, which I will send over shortly. I note that 14 days after July 27th takes us to August 10th. Can we not make the payment by August 11th?

Kevin

---

**From:** Williams, Zachary <ZWilliams@foxrothschild.com>
**Sent:** Wednesday, July 5, 2023 1:52 PM

**To:** Kevin Caron <KCaron@conwaylitigation.ca>; Axelrod, Brett <BAxelrod@foxrothschild.com>
**Subject:** RE: Cash Cloud v. BitAccess


See the attached.

**Zach Williams**
Associate
**Fox Rothschild LLP**
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
(702) 427-2975 - Cell
(702) 699-5917 - Office
(702) 597-5503 - fax
ZWilliams@foxrothschild.com
www.foxrothschild.com

---

**From:** Kevin Caron <KCaron@conwaylitigation.ca>
**Sent:** July 5, 2023 10:48 AM
**To:** Williams, Zachary <ZWilliams@foxrothschild.com>; Axelrod, Brett <BAxelrod@foxrothschild.com>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Thanks Zach. Can you also send me the order approving the sale of Cash Cloud's assets to Heller/Genesis?

---

**From:** Williams, Zachary <ZWilliams@foxrothschild.com>
**Sent:** Wednesday, July 5, 2023 12:58 PM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>
**Subject:** RE: Cash Cloud v. BitAccess


Hi Kevin,

See the attached.

**Zach Williams**
Associate
**Fox Rothschild LLP**
One Summerlin
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV 89135
(702) 427-2975 - Cell

(702) 699-5917 - Office
(702) 597-5503 - fax
ZWilliams@foxrothschild.com
www.foxrothschild.com

---

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** July 5, 2023 9:38 AM
**To:** Williams, Zachary <ZWilliams@foxrothschild.com>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>
**Subject:** FW: Cash Cloud v. BitAccess

Zach,

Please send to Kevin the stipulation and order setting the plan confirmation hearing for 7/27. Orders go final 14 days after the court enters the order thus the request for 8/15 when the confirmation order is final.

---

**From:** Kevin Caron <KCaron@conwaylitigation.ca>
**Sent:** Wednesday, July 5, 2023 9:35 AM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Cc:** Michael.Tucker@FTIConsulting.com; Gayda, Robert J. <gayda@sewkis.com>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Ok. I will make the request to extend the payment deadline to August 15th.

I am going to need to explain the reason for the extension request, ideally with support from court orders. Are there any orders in the file that set the end of July confirmation date, or anything else I can point the arbitrators that would assist?

Kevin

---

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** Wednesday, July 5, 2023 12:29 PM
**To:** Kevin Caron <KCaron@conwaylitigation.ca>
**Cc:** Michael.Tucker@FTIConsulting.com; Gayda, Robert J. <gayda@sewkis.com>
**Subject:** RE: Cash Cloud v. BitAccess



Confirmed we want to proceed but would like 8/15 as deadline to make deposit in light of plan confirmation at end of July and need for final order to approve the litigation trust.

---

**From:** Kevin Caron <KCaron@conwaylitigation.ca>
**Sent:** Wednesday, July 5, 2023 9:18 AM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>

**Cc:** Michael.Tucker@FTIConsulting.com; Gayda, Robert J. <gayda@sewkis.com>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Brett,

As discussed on our last call, today, we have to advise the tribunal and the other side: 1) whether Cash Cloud intends to proceed with the arbitration; and 2) if so, when it will post the arbitrators' retainer and security for costs. As it stands, Cash Cloud is required to post both amounts by no later than August 1st.

Has a decision been made as to whether Cash Cloud will proceed with the arbitration?

I can discuss today if you would like to do so.

Thanks,

Kevin

---

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** Tuesday, June 27, 2023 10:53 AM
**To:** Joseph Rucci <jrucci@conwaylitigation.ca>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>; Michael.Tucker@FTIConsulting.com; Gayda, Robert J. <gayda@sewkis.com>
**Subject:** RE: Cash Cloud v. BitAccess


Can you please include Bob Gayda and Michael Tucker who represent the UCC who are copied above

---

**From:** Joseph Rucci <jrucci@conwaylitigation.ca>
**Sent:** Tuesday, June 27, 2023 7:51 AM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>
**Subject:** [EXT] RE: Cash Cloud v. BitAccess

Thanks Brett, 2PM PT/5 PM ET is great. I'll circulate a teams invite.

Joe

---

**From:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Sent:** Tuesday, June 27, 2023 10:40 AM
**To:** Joseph Rucci <jrucci@conwaylitigation.ca>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>
**Subject:** RE: Cash Cloud v. BitAccess

How is 2 pm pacific?

---

**From:** Joseph Rucci <jrucci@conwaylitigation.ca>
**Sent:** Tuesday, June 27, 2023 6:37 AM
**To:** Axelrod, Brett <BAxelrod@foxrothschild.com>
**Cc:** Kevin Caron <KCaron@conwaylitigation.ca>
**Subject:** [EXT] Cash Cloud v. BitAccess

Good Morning Brett,

Hope you are doing well and enjoying the summer. Would you be available for a call sometime this week to discuss the status of the bankruptcy proceedings?

The Tribunal in the BitAccess arbitration has imposed a July 5th deadline to confirm (1) whether or not Cash Cloud will be proceeding with the arbitration and (2) when deposits and security for costs will be posted. We have good availability tomorrow afternoon if that works for you.

Best,

Joe

**Joseph Rucci**
Associate

613-780-2014

View Bio





Conway Baxter Wilson LLP/s.r.l.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you

may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

This email contains information that may be confidential and/or privileged. If you are not the intended recipient, or the employee or agent authorized to receive for the intended recipient, you may not copy, disclose or use any contents in this email. If you have received this email in error, please immediately notify the sender at Fox Rothschild LLP by replying to this email and delete the original and reply emails. Thank you.

**FASKEN**

Fasken Martineau DuMoulin LLP
Barristers and Solicitors
Patent and Trade-mark Agents

55 Metcalfe Street, Suite 1300
Ottawa, Ontario  K1P 6L5
Canada

**T** +1 613 236 3882
+1 877 609 5685
**F** +1 613 230 6423

fasken.com

**Peter N. Mantas**

Of the Bars of Ontario & New York
Toronto +1 416 865 4469
Ottawa +1 613 696 6886
pmantas@fasken.com

July 14, 2023

*BY EMAIL*

Ivan Whitehall, Elizabeth (Joy) Noonan &
Lyon Gilbert
Canadian Arbitration Association
180 Duncan Mill Road, 4th Floor
Toronto, ON M3B 1Z6

Dear Members of the Tribunal,

**Re:    *Cash Cloud, Inc. v. BitAccess Inc.***

We write further to your direction dated July 7, 2023.

We oppose the request by Cash Cloud, Inc. ("**Cash Cloud**") to extend the deadline set in the Third Procedural Direction of the Arbitrators dated June 9, 2023 for it to post the agreed upon security for costs of $150,000, and to pay the overdue deposit with ADR Chambers of $55,694.75 by no later than August 1, 2023, for reasons explained below.

Cash Cloud has presented facts that are materially inaccurate and misleading. There is no foundation for its position, which must be denied, to ensure equity and fairness in this arbitration.

During the case conference on March 9, 2023, as noted by the Tribunal, Cash Cloud's counsel "*confirmed that Cash Cloud sought Chapter 11 protection*", "*advised the Tribunal that Cash Cloud is still an operating company, and it intends to proceed with the Arbitration currently pending*" and "*further advised that the proceedings in the Nevada Court do not operate as a stay of proceedings*".[1] At the case conference on June 9, 2023, Cash Cloud's counsel stated that "*when bankruptcy happens, then litigation doesn't proceed until assets are determined and restructuring takes place*" and that the pending arbitration "*needs to be put over until August 1 and we will find out if assets are sold, and then the new buyer determines whether to proceed with arbitration*". The Third Procedural Direction of the Arbitrators was issued based on the explanations given by Cash Cloud's counsel, accepted in good faith and on the assumption that they are true.

However, according to the bankruptcy filing, this arbitration and Cash Cloud's numerous other pending litigation files in the United States[2] are *expressly excluded* from the assets subject to the

---

[1] Case Conference Endorsement dated March 9, 2023, para. 2.

[2] To our knowledge, pending matters involving Cash Cloud include the following nine litigation files:

  (i)    *Cash Cloud Inc. v. Flores*, Case No. A-19-807370-B, pending in the Eighth Judicial District Court in Clark County, Nevada;

# FASKEN

auction sale that was subsequently approved by the U.S. Bankruptcy Court, District of Nevada ("**Nevada Court**").[3]

According to Cash Cloud's Chapter 11 Plan of Reorganization: (i) all "causes of action" including claims, and all "assets" not purchased in the sale or auction, are "creditor trust assets" to be held by a "creditor trust"; (ii) a creditor trust will be established for the benefit of holders of general unsecured claims; and (iii) the causes of action transferred to the creditor trust "*shall be retained, prosecuted and enforced by the Creditor Trustee*", who is the person or entity selected by the Official Committee of Unsecured Creditors as trustee of the creditor trust.[4] Then, importantly, the contracts between Cash Cloud and BitAccess Inc. ("**BitAccess**"), including the Master Purchase Agreement and the Amended Master Purchase Agreement, have been "rejected" by Cash Cloud upon its financial analysis and based on its business judgment, and found to be "*financially burdensome*", "*do not provide benefit to the estate*", "*no longer needed and are not a source of value for the Debtor's future operations, creditors, or interest holders, and are believed not to be marketable given their terms and constitute an unnecessary drain on the Debtor's limited resources*".[5]

Additionally, Cash Cloud's CEO, Christopher McAlary, who recently resigned, stated in his "declaration" or sworn statement that "[o]*ne of the most valuable estate assets is its litigation against Cole-Kepro regarding delivery of defective DCM's which was a material and significant*

---

(ii) *Franco v. Cash Cloud Inc*., Case No. A-21-844753-C, pending in the Eighth Judicial District Court in Clark County, Nevada;

(iii) *Cash Cloud Inc. v. Redmond*, Case No. A-21-839023-B, pending in the Eighth Judicial District Court in Clark County, Nevada;

(iv) *Cash Cloud v. Cole Kepro International*, LLC, Case No. A-22-854226-B, pending in the Eighth Judicial District Court in Clark County, Nevada;

(v) *David Despain v. Cash Cloud Inc*., Case No. A-22-854327-C, pending in the Eighth Judicial District Court in Clark County, Nevada;

(vi) *Borden v. Bank of America, Westcliff Technologies, Inc., and Cash Cloud Inc.*, Case No. 2:22-cv-04076-BHH, pending in the U.S. District Court, District of South Carolina, Charleston Division;

(vii) *Cash Cloud Inc. v. Rockitcoin, LLC*, Adversary Case No. 23-01105;

(viii) *Cash Cloud Inc. v. Lux Vending, LLC dba Bitcoin Depot*, Adversary Case No. 23-01015;

(ix) *Cash Cloud Inc. v. Cole Kepro International, LLC*, Adversary Case No. 23-01010.

[3] *In re Cash Cloud, Inc. dba Coin Cloud*, Case No. BK-23-10423-MKN, Notice of Filing Revised Exhibit A to Debtors' Amended Motion for Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC and Genesis Coin, Inc., Free and Clear of Liens Claims, Encumbrances dated June 27, 2023, p. 7 ("*For the avoidance of doubt, the Purchased Assets expressly exclude: (a) except as specifically set forth herein, claims (including warranty claims), warranty rights, litigation rights, etc. in respect of all pre-Closing periods* […]").

[4] *In re Cash Cloud, Inc. dba Coin Cloud*, Case No. BK-23-10423-MKN, Debtor's Chapter 11 Plan of Reorganization dated May 8, 2023, pp. 9, 10, 12, 31, 32; *In re Cash Cloud, Inc. dba Coin Cloud*, Case No. BK-23-10423-MKN, Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization dated May 8, 2023, pp. 46, 48.

[5] *In re Cash Cloud, Inc. dba Coin Cloud*, Case No. BK-23-10423-MKN, Eighteenth Omnibus Motion for Entry of Order Approving Rejection of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365(a) dated June 23, 2023, pp. 5, 6, 13.

# FASKEN

*factor in the events causing the Debtor to file this Bankruptcy Case*".[6]

The importance of these statements from Cash Cloud's bankruptcy filing are as follows:

(i)     contrary to Cash Cloud's counsel's explanation to the Tribunal during the case conference, it was not up to the "*new buyer*" to decide whether to proceed with the arbitration;

(ii)     as acknowledged by Cash Cloud's former CEO, Cash Cloud's pending litigation matters (including this arbitration) are part of the "*estate assets*";

(iii)     Cash Cloud's letter dated July 5, 2023 states that it advises the Tribunal that Cash Cloud "*intends to proceed with the arbitration*" but the decision on whether to proceed with the arbitration is not for Cash Cloud (or for it alone) to make;

(iv)     the Master Purchase Agreement and the Amended Master Purchase Agreement, the very contracts containing the dispute resolution clause relied upon in this arbitration, have been "rejected" by Cash Cloud and found not to be "*a source of value for the Debtor's future operations, creditors, or interest holders, and are believed not to be marketable given their terms and constitute an unnecessary drain on the Debtor's limited resources*", which indicates that the relevant decision-maker may not wish to proceed with this arbitration; and

(v)     Cash Cloud has yet again contradicted itself and overstated its position, and it is likely that it would be seeking yet another extension of time in the coming weeks. Moreover, August 15, 2023 is the deadline for each party to make the *second* deposit of $55,694.75 to ADR Chambers and even though Cash Cloud has been silent on that deadline in its request letter, it can be presumed that even if the relevant decision-maker wishes to proceed with the arbitration, it would request an extension of time to make that payment too.

Cash Cloud is delaying and stalling this process with little consequence while hearing dates in October 2023 (in just three months' time) are preserved, and issues regarding document disclosure, for example, and the rest of the procedural timetable remain effectively suspended. Although it neither formally requested nor was it formally granted a stay of proceeding, that is the benefit of what it is receiving, to the detriment of BitAccess.

Furthermore, it has placed BitAccess in a position where it must expend further monies to defend its position and respect the arbitral process; otherwise, it will simply have insufficient time to prepare prior to the hearing. In doing so, the likelihood that this case will be delayed or simply withdrawn is high, as is BitAccess' inability to recover its costs.

And further, Cash Cloud's position would continue to tie up weeks in the Fall of the schedule of BitAccess' counsel and witnesses (BitAccess' CEO resides in London, England and must soon make travel arrangements). And of course, it would tie up the schedules of members of the Tribunal. All this when it is clear that Cash Cloud does *not* have authority to pursue this arbitration at this time and is unlikely to ever get it.

---

[6] *In re Cash Cloud, Inc. dba Coin Cloud*, Case No. BK-23-10423-MKN, <u>Declaration of Christopher A. McAlary In Support of Amended Motion for Order:</u> (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC and Genesis Coin, Inc., Free and Clear of Liens Claims, Encumbrances dated June 26, 2023, p. 2 (emphasis added).

# FASKEN

Heightening BitAccess' alarm is the fact that Cash Cloud has simply ignored the cost award of the Ontario Superior Court of Justice issued against it for its failed injunction application last year, and ignored repeated requests by BitAccess for payment.

The effect of these delays and the granting of extensions of time to Cash Cloud is unequal and unfair treatment of parties, contrary to Rule 11.1 of the Canadian Arbitration Association's Arbitration Rules (2016) ("**CAA Arbitration Rules**") and Article 18 of Schedule 2 of the *International Commercial Arbitration Act*, 2017, S.O. 2017, c.2, Sched. 5.

It is unreasonable and untenable for the hearing dates in October 2023 to be maintained, and for procedures initially set to occur over the course of six months to be crammed within the span of just two months. It is also contrary to fairness, the parties' right to be heard and the parties' legitimate expectations. Although Cash Cloud may be at liberty to waive its rights for the sake of obtaining yet another time extension, BitAccess does not waive its rights and its expectation that the arbitration would be conducted in a fair, equal and efficient manner.

In addition, we also have serious concerns regarding: (i) Cash Cloud's continued breach of Rule 16 of the CAA Arbitration Rules regarding privacy and confidentiality of arbitration and Cash Cloud's failure to respond to a demand by BitAccess and to disclose to the Tribunal details of any disclosure(s), the extent of disclosure(s), the names of parties who received such disclosure(s), when the disclosure(s) occurred and an explanation of the reason(s) for the disclosure(s); and (ii) the potential abuse of process by Cash Cloud and its failure to disclose to this Tribunal the existence of a parallel claim being pursued against Lux Vending, LLC d.b.a Bitcoin Depot ("**Bitcoin Depot**"), the parent company of BitAccess, before the Nevada Court[7], whereby the same remedy (damages) is being sought by Cash Cloud for the same cause of action (the disconnection of BitAccess' cloud-based software) from the parent company of BitAccess (Bitcoin Depot) in another forum (the Nevada Court).

BitAccess hereby requests that the Tribunal exercise its power under Rule 14 of the CAA Arbitration Rules to "*impose a remedy it deems just, including an award on default*" for Cash Cloud's persistent failure to comply with the CAA Arbitration Rules, and in these circumstances, the remedy should be as follows:

(i)    that the hearing dates from October 23 to November 3, 2023 be vacated;

(ii)   that Cash Cloud will bear cost consequences for paragraph (i) above, the extent of which is to be determined in the costs award;

(iii)  that Cash Cloud be ordered to comply with Rule 16 of the CAA Arbitration Rules and provide forthwith details of any disclosure(s), the extent of disclosure(s), the names of parties who received such disclosure(s), when the disclosure(s) occurred and an explanation of the reason(s) for the disclosure(s);

(iv)   that Cash Cloud be ordered to post the agreed upon security for costs of $150,000 and to pay the two deposits with ADR Chambers of $111,389.50 by no later than August 15, 2023;

(v)    that should Cash Cloud fail to comply with the orders referenced in paragraphs (iii) and (iv)

---

[7] *Cash Cloud Inc. v. Lux Vending, LLC dba Bitcoin Depot*, Adversary Case No. 23-01015.

# FASKEN

above, the claim shall be dismissed with prejudice and the only remaining issue will be costs, on which the parties would make submissions.

Yours truly,

**FASKEN MARTINEAU DuMOULIN LLP**

Peter N. Mantas

cc      Thomas Conway & Kevin Caron
        Conway Baxter Wilson LLP, Lawyers for the Claimant