**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Fax: (725) 386-4979
Email:  ccarlyon@carlyoncica.com
            dcica@carlyoncica.com

*Counsel for Chris McAlary*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In re:<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>Debtor. | Case No.: Case No. BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**MOTION TO CONVERT CASE TO CHAPTER 7**<br><br>Hearing Date: OST REQUESTED<br>Hearing Time: OST REQUESTED |
|---|---|

Chris McAlary ("McAlary") by and through its counsel, the law firm of Carlyon Cica, Chtd., hereby moves this Honorable Court for an order converting the case to a Chapter 7.

This Motion to Convert Case to Chapter 7 (the "Motion") is made pursuant to 11 U.S.C. §1112 and is supported by the Points and Authorities attached hereto, the pleadings, papers and records on file in this case[1], and any additional evidence or argument which the Court may entertain

---

[1] McAlary requests that the Court take judicial notice of the pleadings and Court dockets referenced herein pursuant to FRE 201. *See, e.g.*, *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)("a court may take judicial notice of its own records in other cases"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020)(court may take judicial notice of orders and filings, including  proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue); *Bank of Am., N.A. v. CD-04, Inc.* (*In re Owner Mgmt. Serv., LLC Trustee Corps.*), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

at the time of the hearing of the Motion.

Respectfully submitted this 7th day of August, 2023.

**CARLYON CICA CHTD.**

*/s/ Candace Carlyon*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone: (702) 685-4444,
Email:   Ccarlyon@CarlyonCica.com

*Counsel for Chris McAlary*

**POINTS AND AUTHORITIES**

**I.**

**FACTS**

**A. The Bankruptcy Filing, the Litigation Claims and Cole Kepro's Service as Co-Chair of the Unsecured Creditors' Committee**

1. This case was filed on February 7, 2023.  *See* Petition, ECF No. 1.

2. As reflected in the Debtor's Schedules, ECF No. 236, the Debtor's assets include causes of action against Armondo Redmond, Bitaccess, Inc., Cole Kepro International, Inc., Luis Flores, and Lux Vending DBA Bitcoin Depot (collectively, the "Litigation Claims").  *Id.* at p. 10, §74.

3. On the Petition Date, Debtor initiated Adversary Proceeding No. 23-01010-mkn by filing a complaint seeking a declaratory judgment that Cole Kepro International, LLC (Cole Kepro) does not have a security interest in certain assets of the Debtor.

4. On February 17, 2023, the Office of the United States Trustee appointed a creditors' committee (the "Committee") in this case, consisting of Genesis Global Holdco, LLC, Cole Kepro, Brink's U.S., a Division of Brink's, Incorporated, National Services, LLC, and OptConnect MGT,

2

LLC, *See* ECF No. 131. On February 28, 2023, Black Hole Investments LLC and Cennox Reactive Field Services LLC were also appointed to the Committee. ECF No.177.

5. On March 10, 2023, Debtor filed its adversary complaint against Lux Vending, LLC d/b/a Bitcoin Depot. See ECF No. 257, Adv. # BK-23-01015.

**B. The Retention of Professionals, Interim Fee Procedures, Interim Fee Statements and Additional Administrative Claims**

6. On February 7, 2023, Debtor filed its Emergency First Day Application For Order Authorizing Retention and Employment of Fox Rothschild, LLP ("Fox") as Debtor's Counsel, Effective as of the Petition Date [ECF No. 13], seeking to retain Fox on a partial "flat fee" basis, with additional work, including with regard to plan efforts, to be billed at hourly rates up to $915 per hour, which application was granted on March 1, 2023 [ECF No. 189].

7. On March 9, 2023, this Court entered its *Final Order Authorizing Retention And Employment Of Province, LLC As Financial Advisor, Effective As Of The Petition Date* [ECF No. 223], approving the employment of Province, LLC ("Province") with payments to include (1) hourly fees of up to $1,350 per hour[2]; (3) 3% of any DIP financing[3]; (3) 3% of any plan exit financing. *Id.* at ¶3. The second and third provisions were amended on May 16, 2023, to include a cap of $500,000 for the additional percentage fees. *See* ECF No. 563.

8. On March 20, 2023, the Court entered its *Order Granting Debtor's Motion Pursuant To 11 U.S.C. §§ 105(a) And 331, And Fed. R. Bankr. P. 2016, Authorizing And Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals* [ECF No. 321](the "Fee Procedures Order"), which authorized the Debtor to pay 80% of fees and 100% of expenses on a monthly basis to the extent that monthly requests were made and unobjected to. The Fee Procedures Order required professionals to file interim fee applications every 120 days (*id.* at p.4 ¶d), and Debtor agreed to set a hearing on interim fee applications every four months unless otherwise ordered by the Court (*id.* at ¶(e)).

---

[2] ECF No. 5 at p. 5, ¶.
[3] To be reduced to 1.5% if the lender is a "Province Lender".

3

9. On April 27, 2023, the Court entered its *Order Granting Application For Order Pursuant To 11 U.S.C. §§ 1103 Authorizing And Approving The Employment Of FTI Consulting Inc. As Financial Advisor To The Official Committee Of Unsecured Creditors Retroactive To February 24, 2023* [ECF No. 481] at rates of up to $1,495 per hour (*see* ECF No. 348].

10. On March 20, 2023, the Court entered its *Order Authorizing Retention And Employment Of The Jimmerson Law Firm, P.C. As Special Litigation Counsel To Debtor* [ECF No. 322], authorizing the Jimmerson Law Firm, P.C. ("Jimmerson") to pursue the Litigation Claims at hourly rates up to $595 per hour, with lead counsel billing at the rate of $350 per hour. *See* ECF No. 122 at p. 10 ¶25.

11. On April 27, 2023, the court entered its order [ECF No. 479] approving employment of the New York law firm of Seward & Kissel, LLO ("SK") as counsel for the committee, at hourly rates of up to $1,625 per hour. *See* ECF No. 271 at p. 3 ¶11. The attorneys principally responsible for this matter bill at the rates of $1,675 and $1,300 per hour. *Id.* The application was signed by, *inter alia*, the CEO of Cole Kepro as the co-chair of the Committee. *Id.* at p. 8.

12. Also on April 27, 2023, the Court entered its Order Granting Application For Order Pursuant To 11 U.S.C. §§ 1102, 1103, 328, 330 and 331 Authorizing The Employment Of McDonald Carano LLP As Counsel To The Official Committee Of Unsecured Creditors Effective As Of February 24, 2023 [ECF No. 480] authorizing the employment of McDonald Carano LLP ("McDonald Carano") as counsel for the Committee at hourly rates of up to $650 per hour. ECF No. 279 at. p. 3, ¶12.

13. On May 5, 2023, this Court granted the Debtor's *Application For Order Authorizing Retention And Employment Of Baker & Hostetler LLP As Regulatory Counsel To Debtor* [ECF No. 449] seeking to employ regulatory counsel at hourly rates up to $1,150 per hour. *Id.* at p. 6, ¶23.

14. On April 19, 2023, Fox filed its first interim fee statement, reflecting that it had incurred $558,695.501 in fees and $5,682.65 in expenses during the period February 7, 2023- March 31, 2023.

4

15. On April 28, 2023, Province filed its interim fee statement for the same period [ECF No. 500, reflecting that it had incurred fees of $682,138.00 and expenses of $1,786.38 during the same period.

16. On May 15, 2023, SK filed its first interim fee statement for the period February 23-March 31, 2023, indicating that it had incurred $281,190.50 in fees during that period. McDonald Carano incurred $22,222.50 in fees and $1,117.68 in expenses during that period.

17. On May 18, 2023, Fox filed its second interim fee statement reflecting that during the Month of April, 2023, Fox incurred $235,904.00 in fees and $876.69 in expenses.

18. On May 25, 2023, Province filed its second interim fee statement reflecting that during the month of April, 2023, Province incurred fees of $403,937.00 and expenses of $1,437.24. [ECF No. 600.]

19. On May 30, 2023, Baker filed its interim fee statement reflecting that it had incurred $11,626.00 in fees from April 4-30, 2023 [ECF No. 607].

20. On June 8, 2023, SK filed an interim fee statement [ECF No. 640] reflecting that in April, 2023, it incurred fees of $218,839.50 and expenses of $453.00.

21. On June 8, 2023, McDonald Carano filed an interim fee statement [ECF No. 641] reflecting that, in April of 2023, it incurred fees $10,745.00 in fees incurred and $16.45 in expenses.

22. On June 29, 2023, Province filed an interim fee request indicating that in May, 2023, it incurred fees of $490,889.70 (after a stated discount of $54,543.30), and incurred expenses in the amount of $1,376.17.

23. On June 30, 2023, BH filed an interim free request indicating that in May, 2023, it incurred fees of $162,911.50, and expenses in the amount of $511.68.

24. On July 17, 2023, Fox filed an interim fee statement reflecting that in the month of June, 2023, it incurred fees of $427,457.00 and expenses of $2,759.95.

25. On July 31, 2023, SK filed an interim fee statement [ECF No. 984] reflecting that in May, 2023, SK incurred fees of $328,741.50 and expenses of $4,770.63.

26. On July 31, 2023, McDonald Carano filed an interim fee statement [ECF No. 985] reflecting that, in the month of May, 2023, McDonald Carano incurred fees of $6,800.00 and expenses of $331.95.

27. On July 31, 2023, McDonald Carano filed an interim fee statement [ECF No. 985] reflecting that, in the month of June, 2023, McDonald Carano incurred fees of $5,585.00 and expenses of $435.54.

28. On June 16, 2023, Fox filed its interim fee statement [ECF No. 721] reflecting that in the month of May, 2023, it incurred fees of e $346,327.50 and expenses of $6,064.39.

29. On July 24, 2023, Province filed an interim fee statement [ECF No. 923], reflecting that in the month of June, 2023, it incurred fees of e $423,027.001(stated to include a voluntary discount of $ $47,003.00) and expenses of $1,833.65.

30. The total of the professional fee claims of Fox, Province, SK, McDonald Carano and BH is $4,617,000. FTI, the financial advisors to the Committee, have not yet submitted any monthly fee statements.

C. **Other Administrative Claims**

31. On July 11, 2023, the Court entered its *Order Establishing Administrative Claim Bar Date For Filing Proofs Of Administrative Expense Claim And Approving Form, Manner And Sufficiency Of Notice Thereof* [ECF No. 823] requiring that certain administrative creditors (and excluding, *inter alia*, professionals) file administrative claims incurred through July 20, 2023, by July 20, 2023.

32. On July 18, 2023, Enigma filed *Enigma Securities Limited's Application For Allowance And Payment Of Administrative Expense Claim Pursuant To 11 U.S.C. §§ 361, 362, 363, 364, 503, 507, And Bankruptcy Rules 3012 And 8002* [ECF No. 873] seeking payment of an administrative claim in an amount in excess of $200,000, which is set for hearing on August 17, 2023 [*see* ECF No. 881].

33. On July 19, 2023, Oracle America, Inc., filed an application for payment of administrative claim in the amount of $3,026.61.

6

34. On July 19, 2023, Optconnect Management, LLC filed an application for payment of administrative claim in the amount of "not less than $1,106,151". ECF No. 883.

On July 19, 2023, AVT Nevada, LP filed an administrative claim in the amount of $262,719.30 [ECF No. 887].

35. On July 20, 2023, Brink's US filed an administrative claim in the amount of $804,487.61 [ECF No. 890].

36. On July 20, 2023, McAlary filed an administrative claim in the amount of $136,961.48.

37. On July 20, 2023, Populus Financial Group, Inc. filed a *Motion for Approval of Administrative Claim* in the amount of $ $90,838.97 [ECF No. 900].

38. On July 20, 2023, Stretto filed an administrative claim in the amount of $364,849.22.

39. On July 21, 2023, Amazon Web Services, Inc., filed an administrative claim in the amount of $26,559.04 [ECF No. 913].

### D. The DIP Loan

40. On March 20, 2023, the Court entered its *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) And Bankruptcy Rules 2002, 4001, 6004 And 9014 Authorizing Debtor To (A) Obtain Postpetition Financing And (B) Grant Adequate Protection* [ECF No. 315], authorizing Debtor in Possession financing (the "DIP Loan") of up to $5 million.

41. On May 16, 2023, the DIP Lender served a notice of default under the DIP Loan, which was revolved via a forbearance agreement filed on June 6, 2023 [ECF No. 624].

42. On May 19, 2023, the Court approved a stipulation extending the Challenge Period set forth in Paragraph 17(b) of the Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection [ECF No. 318] applicable to the Committee shall be extended through and including June 23, 2023 with respect to challenges to the Enigma Liens (*see* ECF No. 581), and approving the same extended

deadline with respect to the challenge period for the Genesis Liens (*see* ECF No. 582). That date was extended to July 14, 2023 (conditioned upon the delivery of a settlement offer) via ECF No. 788.

### E. The Sale/Liquidation Process

43. On March 30, 2023, Debtor filed its Notice Of Bid Deadline Of April 12, 2023 For Submission Of Term Sheets In Connection With Either: (A) Plan Of Reorganization For Debtor; Or (B) Sale Of Substantially All Of Debtor's Assets [ECF No. 375].

44. On April 27, 2023, the Court entered its *Order Establishing Bidding Procedures And Related Deadlines* [ECF No. 483].

45. On April 7, 2023, Debtor filed its *Motion For Entry Of An Order: (A) Approving Auction And Bidding Procedures For Potential Plan Sponsors Or The Purchase Of Substantially All Of The Debtor's Assets; (B) Approving Form Notice To Be Provided To Interested Parties; And (C) Scheduling A Hearing To Consider Approval Of The Highest And Best Transaction, Cure Objections, And Confirmation Of The Proposed Toggle Plan* [ECF No. 392].

46. As set forth in the supporting declaration of Daniel Moses, a principal of Province, at that time "Province ha[d] already contacted forty-eight (48) potential interested parties to date, with fifteen (15) signing nondisclosure/ confidentiality agreements". ECF No. 394.

47. On April 25, 2023, Debtor filed its *Notice Of Designated Stalking Horse Bidder* [ECF No. 473] designating RockitCoin, LLC as the "stalking horse bidder" pursuant to a term sheet providing for a sale price of $16.75 million.

48. On May 11, 2023, Debtor filed its *Amended Notice Of Bidding Procedures And Deadlines* [ECF No. 546].

49. On June 23, 2023, Debtor filed a notice attaching a revised Heller Asset Purchase Agreement and a revised Genesis Coin Asset Purchase Agreement [ECF No. 749]. The revised purchase agreements reflected a Heller purchase price of $$4.2 million (subject to reduction) plus assumption of certain liabilities (*id.* at p. 5 §1.3), and provided for a Genesis purchase price of $1.5 million plus 1% "of all net proceeds received by all Machine Operators from any of those certain

DCM machines included in the assets sold by Seller to Heller Capital, Inc. in the Heller Purchase Agreement that operate on Seller's Software". *Id.* at p. 113, §2.03

50. On May 26, 2023, Debtor filed its *Notice Of Revised Stalking Horse Asset Purchase Agreement* [ECF No. 602] attaching a purchase agreement reflecting a purchase price of:

> The amount of the Deposit [$629,200][4]; (ii) Cash in the amount of $2,607,800.00 (such amount, the "Cash Balance"), of which $250,000.00 shall be allocated to the Seller's estate to fund a creditor trust (however, any failure by Debtor to fund shall not be deemed a breach of this Agreement by Purchaser); plus (iii) the Cure Costs set forth on Schedule 2.1(c) and Schedule 2.1(d) or as agreed to by the counter parties set forth on Schedule 2.1(c) and Schedule 2.1(d) or as otherwise determined by the Bankruptcy Court; plus (iv) payment or satisfaction (i.e. an agreed resolution whereby the Critical Vendor agrees to release the Estate) of the Critical Vendor Liabilities, which shall not exceed $1,400,000.00; plus (v) the assumption by the Purchaser of the Assumed Liabilities.

*Id.* at p. 18 §3.1.

51. On April 26, 2023, Debtor filed its *Second Notice Of Revised Stalking Horse Asset Purchase Agreement* [ECF No. 604] and its *Amended Notice Of Designated Stalking Horse Bidder* [ECF No. 605].

52. On June 5, 2023, Debtor filed its *Notice Of Auction Results Regarding Sale Of Substantially All Of The Debtor's Assets* [ECF No. 618, as correct at ECF No. 621], reflecting that:

> Debtor held an auction for the purchase of substantially all of the Debtor's assets (the "Sale") on June 2, 2023. Heller Capital, LLC and Genesis Coin, Inc. (collectively "Heller Capital") was the Successful Bidder, with a Successful Bid of $5,700,000.00, subject to the terms and conditions of its bid. 5. Additionally, Christopher McAlary ("Mr. McAlary") was the Successful Bidder for the purchase of the equity interests and assets of Coin Cloud Brasil Ativos Digitais Ltda ("Coin Cloud Brazil"), with a Successful Bid of $50,000.00 and repayment of the receivable (the "Brazil Receivable") owed to Debtor from Coin Cloud Brazil in the approximate amount of $600,000.00….

*Id.* at p. 2, ¶¶4-5. The Stalking-Horse Bidder, RockItCoin, LLC, was designated as the Back-Up Bidder with a Qualified Bid in the amount of $3,237,000.00. *Id.* at ¶7.

53. On June 16, 2023, Debtor filed its *Emergency Motion For Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval Of Sale Of Debtor's Assets* [ECF No. 710], for "for entry of an order authorizing the Debtor, on an emergency

---

[4] *Id*. at p. 4 §1.1 (nn).

9

basis, to enter into and perform that certain Interim Management Services Agreement, dated June 14, 2023 (the "Management Agreement") with Apollo Management, LLC ("Manager"), an affiliate of Heller Capital Group, LLC ("Heller Capital"), which, together with Genesis Coin, LLC ("Genesis Coin"), are the proposed purchasers of substantially all of the Debtor's assets". *Id.* at p. 1, lls. 24-28. That motion was approved via order entered on June 30, 2023 [ECF No. 797].

54. That motion was supported by the Declaration of Danyl Ayala [ECF No. 711] which reflected that, *inter alia*, Mr. Ayala is the Independent Director of the Debtor (*id.* at ¶1); that the Debtor "needs the financial support and backing" of Apollo Management, LLC, in order to consummate the sale (*id.* at ¶7).

55. On June 16, 2023, Debtor filed its *Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 714, amended at ECF No. 729], seeking:

> authority to: (a) sell the Heller Assets, and assume and assign certain host leases and executory contracts (the "Assumed Contracts"), to Heller Capital for a total cash component of $4,450,000.00, which includes a separate $250,000.00 Extension Fee3 (the "Heller Purchase Price"), and additional payment of cures, certain operational, and payroll expenses through an Interim Management Services Agreement (the "IMSA")4 ; and (b) sell the Genesis Coin Assets to Genesis Coin for a 1% monthly commission on all revenue generated from digital currency machines ("DCMs") listed on Exhibit B-1 attached hereto (the "Commissioned Machines"), with a minimum guarantee of $1,500,000.00 paid to Debtor over a maximum period of 20 months from the date of transition of the Genesis Coin Assets….

*Id.* at p. 3 lls. 3-11. This request was supported by the facts that:

> It is critical that the sales of the Heller Assets and the Genesis Coin Assets (collectively, the "Sale Assets") close as soon as possible, not only to retain the value of the Sale Assets, but also to prevent Debtor's continued incurrence of administrative expenses that reduce any potential recovery to unsecured creditors. In addition, Debtor is concerned about the deterioration of the Sale Assets, in light of Debtor's severely diminished cash flow, which has led the Debtor to cease operations in an effort to conserve cash and limit its cash burn. Debtor has borrowed

the maximum amount under its DIP loan5 from Debtor's DIP lender, CKDL Credit, LLC (the "DIP Lender"). Each passing day brings increasing uncertainty regarding Debtor's future, leading to potentially greater losses for Debtor and its estate. *See* Ayala Declaration, ¶ 4.

*Id.* at lls. 12-20.

56.     On June 16, 2023, Debtor filed its *Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 714, amended at ECF No. 730].

57.     On June 20, 2023, the Court entered its *Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, LLC, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 795].

58.     Debtor has also moved for (and generally obtained) approval to reject remaining executory contracts.  *See, e.g.,* orders approving rejection of contracts at ECF Nos. 172, 295, 491, 516, 517, 627-630, 943-951, 1007, 1018 and 1020.

### F.  The Plan Process

59.     On May 8, 2023, Debtor filed its *Chapter 11 Plan Of Reorganization Dated May 8, 2023* [ECF 528] and *Debtor's Disclosure Statement For Chapter 11 Plan Of Reorganization Dated May 8, 2023* [ECF No. 529].

60.     On the same day, Debtor filed its *Ex Parte Motion For Order Pursuant To 11 U.S.C. § 105(D)(2)(B)(VI), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form*

*Of Ballots; (IV) Scheduling Voting And Objection Deadlines; And (V) Granting Related Relief* [ECF No. 530].

61. On May 12, 2023, this Court entered its *Order Pursuant To 11 U.S.C. § 105(d)(2)(B)(vi), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form Of Ballots; (IV) Scheduling Voting And Objection Deadlines; And (V) Granting Related Relief* [ECF No. 554].

62. On April 12, 2023, Debtor filed its Notice Of Combined Hearing Re: (I) Final Approval Of Disclosure Statement; And (II) Confirmation Of Chapter 11 Plan Of Reorganization Dated May 8, 2023 [ECF No. 555], noticing a confirmation hearing for June 28, 2023. By order entered on June 22, 2023 [ECF No. 741], that hearing was continued to July 27, 2023. By minute entry of July 24, 2023, the confirmation hearing was continued to August 17, 2023.

63. On July 7, 2023 the Debtor filed its Supplement To Debtor's Chapter 11 Plan Of Reorganization Dated May 8, 2023 [ECF No. 528] attaching a Liquidation Analysis as Exhibit B. The Liquidation Analysis provided for estimates professional fees for the case to be between $3m and $4m.

64. On August 1, 2023, *Debtor filed its First Amended Chapter 11 Plan Of Reorganization Dated August 1, 2023* [ECF No. 996](the "Amended Plan"). The Amended Plan contains substantial changes from the plan as originally proposed, including eliminating funding for the creditors' trust, establishing a second "secured claims trust" with secured creditors to receive interests in that trust rather than direct payments (impairing a previously unimpaired class), and delaying the Effective Date until sufficient funds exist to pay administrative creditors. No amended disclosure statement was filed, and the Debtor has not provided the twenty-one days' notice required by Fed.R.Bankr.P. 2002(a)(5). Despite filed professional fees of over $4.5m and despite the administrative bar date having passed, the Debtor did not file a new liquidation analysis.

**G.      The Monthly Operating Reports**

65.      On June 20, 2023, Debtor filed its Monthly Operating Report for the period ending 3/31/23 [ECF No. 734], reflecting that, as of March 31, 2023, Debtor had incurred losses totaling $8,942,144, and faced post-petition payables of $3,925,109.

66.      On July 20, 2023, Debtor filed its Monthly Operating Report for the period ending 4/30/34 [ECF No. 901], reflecting that, as of April 30, 2023, Debtor had incurred losses totaling $11,968,635, and faced post-petition payables of $8,630,999.

**H.      Other Matters**

67.      On June 12, 2023, Mr. McAlary resigned as the Debtor's CEO, with Daniel Alaya designated as Debtor's responsible person.  ECF No. 772.

68.      On June 20, 2023, Debtor filed adversary case #23-01105 against Rockitcoin, LLC. ECF No. 736, alleging defendant's breach of its non-disclosure agreement with the Debtor to Debtor's damage.  That case was resolved with Debtor agreeing to "pay to RockItCoin, directly from its sale proceeds at any closing(s) of the sale(s) to Genesis Coin and Heller Capital: (a) the amount of the Break-Up Fee, reduced by $2,700.00 for costs associated with the filing of the Complaint, for a total Break-Up Fee amount of $186,060.00; and (b) the Expense Reimbursement in the amount of $150,000.00".  ECF No. 768 at p. 3, ¶1.

69.      On June 27, 2023, Debtor filed its *Notice Of Filing Revised Exhibit A To Debtor's Amended Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 779], reflecting that the purchaser would receive certain machines free and clear of liens.  *Id,* at p. 6 §1.9.

70.      On July 24, 2023, the Committee filed the *Motion Of The Official Committee Of Unsecured Creditors For An Order Granting Leave, Derivative Standing And Authority To Commence, Prosecute And Settle Claims On Behalf Of The Debtor's Estate* [ECF No. 925] seeking "derivative standing to prosecute certain claims against the Debtor's prepetition lenders that it was

13

charged with investigating and preserving for the benefit of the estate". *Id.* at p. 2 ¶1. As reflected in that motion:

> The unfortunate reality of this case is that the Debtor's assets were worth less than the value of the secured debt, and the proceeds of the sale of the Debtor's assets solely benefit the Debtor's secured lenders. It is, therefore, imperative that the Committee pursue the Preserved Claims in order to ensure that all value that should be appropriately allocated to unsecured creditors is so allocated, and that the secured lenders—who are undoubtedly vastly undersecured—do not receive outsized benefits to which they are not entitled.

*Id.* at ¶2. That motion is set for hearing on August 29, 2023 (*see* ECF No. 932].

71.  On July 24, 2023, Debtor filed its *Motion For Entry Of An Order Authorizing Debtor To Surcharge The Collateral Of Genesis Global Holdco, Llc, Enigma Securities Limited, And Avt Nevada, L.P.* [ECF No. 926], which is set for hearing on August 29, 2023.

72.  On July 31, 2023, Debtor filed a *Stipulation Regarding Relief From The Automatic Stay For Ipfs Corporation* [ECF No. 983] consenting to lift the automatic stay to permit "cancellation of the policy identified in the Agreement effective as of the Petition Date and collection of the unearned premium related to the policy". *Id.* at p. 4 ¶5.

73.  On August 1, 2023, Debtor filed its motion seeking to sell certain equipment to PowerCoin, LLC for a purchase price of $10,000 [ECF No. 991]. As reflected in that motion: "Debtor has ceased operations and is seeking to move out of its current office space by August 1, 2023, in order to reduce its expenses and conserve cash." *Id.* at p. 4*, ¶16.

74.  On August 3, 2023, the Committee filed a *Stipulation Granting Derivative Standing To The Official Committee Of Unsecured Creditors With Respect To Certain Actions* [ECF No. 1009] purporting to grant the Committee the right to pursue certain claims. No motion, points and authorities, evidence, or notice of hearing was filed. That Stipulation is the subject of a separate objection being filed substantially contemporaneously herewith.

## II.
## ARGUMENT

**A.  The Case Should Be Converted Pursuant to 11 U.S.C. §1112**

11 U.S.C. §1112(b)(4)(A) provides that cause for conversion includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation". Here, there is unquestionably continuing loss to or diminution of the estate. The case is administratively insolvent, yet the retained professionals are billing hundreds of thousands of dollars each and every month. Debtor's last Monthly Operating Report (which is for the period ending April 30, 2023-- the May and June reports are past due) demonstrates that, as April 20, 2023, Debtor has incurred losses totaling $11,968,635, and post-petition payables of $8,630,999. While the first prong of Section 1112(b)(4)(A) requires a showing of *either* substantial or continuing losses, "but not both" (*In re Hassen Imports P'ship*, No. BAP CC-13-1019-KIPAD, 2013 WL 4428508, at *13 (B.A.P. 9th Cir. Aug. 19, 2013)), here the losses are clearly both substantial and continuing.

Further, there is no possibility of rehabilitation. "The issue of rehabilitation for purposes of § 1112(b)(4)(A) 'is not the technical one of whether the debtor can confirm a plan, but, rather, whether the debtor's business prospects justify continuance of the reorganization effort.' *In re Wallace,* 2010 WL 378351 at *4 (Bankr.D.Idaho Jan. 26, 2010)." *In re Khan*, No. BAP CC-11-1542-HPAD, 2012 WL 2043074, at *6 (B.A.P. 9th Cir. June 6, 2012). Here, the Amended Plan reflects that the Debtor plans to liquidate. "[T]he Debtors' intention to liquidate (rather than rehabilitate), demonstrates that there is no likelihood of rehabilitation". *In re BH S & B Holdings, LLC*, 439 B.R. 342, 347 (Bankr. S.D.N.Y. 2010). Debtor has already stated that it is no longer doing business, and it is clear that the Debtor has no ability to reopen its business. Debtor has sold substantially all of its assets, and rejected substantially all remaining contracts. "Courts have consistently understood "rehabilitation" to refer to the debtor's ability to restore the viability of its business." *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 516 (8th Cir. 2004). Here, there is no prospect of doing so.

### B. The Case Should Be Converted For "Cause"

Section 1112(b) provides for dismissal or conversion of a chapter 11 case for cause. *SCorp. v. United States Tr. (In re Consol. Pioneer Mortg. Entities),* 248 B.R. 368, 375 (9th Cir. BAP 2000). Instead, it sets forth a non-exhaustive list of

15

circumstances constituting cause and allows the courts to develop a list of additional grounds constituting cause. Id. (citing H.R. No. 95–595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 6362).

*In re Stinchfield*, No. 9:17-BK-10015-PC, 2018 WL 1354339, at *3 (B.A.P. 9th Cir. Mar. 13, 2018). Here, the Debtor has indicated its desire to abdicate its rights to bring claims. If litigation is to be controlled by a third party, there is no reason that the third party should not be a chapter 7 Trustee. It is inconceivable that a Trustee would not be more efficient and less expensive than proceeding via a chapter 11 case where the Debtor is controlled by a paid "independent director", several sets of attorneys and a financial advisor, and litigation is proposed to be controlled by the Committee which itself is co-chaired by the main litigation target, and has employed two sets of counsel and its own financial advisor. In addition to bringing efficiency to the process a Trustee would be better able to comply with the fiduciary duties, including disinterestedness, which are necessary to maximize the value of such claims.

## III.

## CONCLUSION

For the reasons stated above, it is respectfully requested that the Court grant the Motion to Convert this case to a Chapter 7, and issue such other and further relief as the Court may deem just and proper.

Respectfully submitted this 7th day of August, 2023.

**CARLYON CICA CHTD.**

*/s/ Candace Carlyon*
CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone: (702) 685-4444,
Email:  Ccarlyon@CarlyonCica.com

*Counsel for Chris McAlary*

16

# CERTIFICATE OF SERVICE

I am an employee of Carlyon Cica Chtd. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Nancy Arceneaux
An employee of Carlyon Cica Chtd.