**CARLYON CICA CHTD.**
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Fax: (725) 386-4979
Email: dcica@carlyoncica.com

*Counsel for Christopher McAlary*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>           Debtor. | Case No.: Case No. BK-S-23-10423-MKN<br>Chapter 11<br><br>**OBJECTION TO DEBTOR'S *FIRST AMENDED* CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 1, 2023**<br><br>Hearing Date:  August 17, 2023<br>Hearing Time: 10:30 a.m. |

Christopher McAlary ("McAlary") by and through its counsel, the law firm of Carlyon Cica, Chtd., hereby submits this Objection (the "Objection") to the Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023 Plan [ECF No. 996](the "Amended Plan") filed by Cash Cloud, Inc. dba Coin Cloud ("Debtor" or "Cash Cloud"), debtor and debtor in possession in the above captioned case.

This Objection is made and based upon the Points and Authorities filed herewith, the pleadings, papers and records on file in this action, of which judicial notice is requested pursuant to Fed.R.E. 201, and any oral argument the Court may entertain at the time of the hearing on the Amended Plan.

Respectfully submitted this 9th day of August 2023.

**CARLYON CICA CHTD.**

*/s/ Dawn Cica*
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
*Counsel for Chris McAlary*

# POINTS AND AUTHORITIES

## I.

## INTRODUCTION

At the outset it should be made clear that McAlary does not object to the professed liquidation goals of the original Plan being adopted.[1]  McAlary does object to this case remaining on indefinite hold as the case professionals continue to incur fees without having or being willing to sell remaining estate assets to realize enough cash to pay the existing administrative expenses, not to mention the ones accruing during the time between confirmation, should it occur, and the ephemeral "Effective Date" sometime in the future when the Debtor has obtained enough fees from litigation to pay all administrative expenses in full.  Currently, and as discussed more fully below, the Debtor is not able to demonstrate that it will ever be able to pay administrative expenses in full such that an "Effective Date" will ever occur.   In fact, all evidence is to the contrary.  While amending the Amended Plan to, *inter alia*, provide for the delayed (and probably never-occurring) effective date, the Debtor has not complied with the disclosure and solicitation requirements accompanying its amendment.

In addition to not knowing when or if an "Effective Date" will ever occur, no creditor was able to ascertain by yesterday, the ballot deadline, whether such creditor would be better off in a Chapter 7 liquidation.  Since the Debtor is not up to date on Monthly Operating Reports, it is impossible to know how much the estate owes post-petition. With respect to professional fees, counsel for the Committee has not filed a fee statement for June, the financial advisor to the Committee, FTI has not filed ANY fee statements and no professionals have filed fee statements for July.  The requirement (as a condition to approval of interim fee payment procedures) that the professionals file interim fee applications at least every 120 days has been ignored.

As set forth in McAlary's *Motion to Convert Case to Chapter 7* [ECF No. 1034](the "Motion to Convert"), the Amended Plan reflects that the Debtor plans to liquidate. *Motion to Convert* at 15.  The Debtor has already stated that it is no longer doing business, and it is clear that

---

[1]   In fact, McAlary voted in favor of the original Plan, ECF No. 528.

2

the Debtor has no ability to reopen its business. Debtor has sold substantially all of its assets, and rejected substantially all remaining contracts. As such the Amended Plan is a liquidating plan. While the concept of a liquidating plan overseen by a neutral third party is not inappropriate in this case, here the inability to fund the professional fees and other accrued administrative expenses demonstrate that confirmation would only extend indefinitely the period during which the six groups of professionals will continue to incur administrative fees. That result is unacceptable.

## II.

## FACTS

**A. The Bankruptcy Filing, the Litigation Claims and Cole Kepro's Service as Co-Chair of the Unsecured Creditors' Committee**

1.    This case was filed on February 7, 2023.  *See* Petition, ECF No. 1.

2.    As reflected in the Debtor's Schedules, ECF No. 236, the Debtor's assets include causes of action against Amondo Redmond, Bitaccess, Inc., Cole Kepro International, Inc., Luis Flores, and Lux Vending DBA Bitcoin Depot (collectively, the "Litigation Claims" and the Cole Kepro, Bitaccess and Bitcoin Depot litigation collectively the "Target Litigation")).  *Id.* at p. 10, §74.

3.    On the Petition Date, Debtor initiated Adversary Proceeding No. 23-01010-mkn by filing a complaint seeking a declaratory judgment that Cole Kepro International, LLC ("Cole Kepro") does not have a security interest in certain assets of the Debtor.

4.    On February 17, 2023, the Office of the United States Trustee appointed a creditors' committee (the "Committee") in this case, consisting of Genesis Global Holdco, LLC, Cole Kepro, Brink's U.S., a Division of Brink's, Incorporated, National Services, LLC, and OptConnect MGT, LLC, *See* ECF No. 131. On February 28, 2023, Black Hole Investments LLC and Cennox Reactive Field Services LLC were also appointed to the Committee.  ECF No.177.

5.    On March 10, 2023, Debtor filed its adversary complaint against Lux Vending, LLC d/b/a Bitcoin Depot. See ECF No. 257, Adv. # BK-23-01015.

**B. The Retention of Professionals, Interim Fee Procedures, Interim Fee Statements and Additional Administrative Claims**

3

6. The professional fee applications, the filed monthly fee statements of the professionals and the filed administrative claims are detailed in the Motion to Convert and incorporated herein by reference. The filed fee statements and the amounts thereon are set forth on Exhibit 1 to the *Opposition to Approval of Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions* [ECF No.1029](the "Opposition to Stipulation") and are incorporated herein by reference as if set forth herein.

**C.  The DIP Loan**

7. On March 20, 2023, the Court entered its *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) And Bankruptcy Rules 2002, 4001, 6004 And 9014 Authorizing Debtor To (A) Obtain Postpetition Financing And (B) Grant Adequate Protection* [ECF No. 315], authorizing Debtor in Possession financing (the "DIP Loan") of up to $5 million.

8. On May 16, 2023, the DIP Lender served a notice of default under the DIP Loan, which was resolved via a forbearance agreement filed on June 6, 2023 [ECF No. 624].

9. On May 19, 2023, the Court approved a stipulation extending the Challenge Period set forth in Paragraph 17(b) of the Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection [ECF No. 318] applicable to the Committee shall be extended through and including June 23, 2023 with respect to challenges to the Enigma Liens (*see* ECF No. 581), and approving the same extended deadline with respect to the challenge period for the Genesis Liens (*see* ECF No. 582). That date was extended to July 14, 2023 (conditioned upon the delivery of a settlement offer) via ECF No. 788.

**D.  The Sale/Liquidation Process**

10. On March 30, 2023, Debtor filed its Notice Of Bid Deadline Of April 12, 2023 For Submission Of Term Sheets In Connection With Either: (A) Plan Of Reorganization For Debtor; Or (B) Sale Of Substantially All Of Debtor's Assets [ECF No. 375].

11.     On April 27, 2023, the Court entered its *Order Establishing Bidding Procedures And Related Deadlines* [ECF No. 483].

12.     On April 7, 2023, Debtor filed its *Motion For Entry Of An Order: (A) Approving Auction And Bidding Procedures For Potential Plan Sponsors Or The Purchase Of Substantially All Of The Debtor's Assets; (B) Approving Form Notice To Be Provided To Interested Parties; And (C) Scheduling A Hearing To Consider Approval Of The Highest And Best Transaction, Cure Objections, And Confirmation Of The Proposed Toggle Plan* [ECF No. 392].

13.     As set forth in the supporting declaration of Daniel Moses, a principal of Province, at that time "Province ha[d] already contacted forty-eight (48) potential interested parties to date, with fifteen (15) signing nondisclosure/ confidentiality agreements".  ECF No. 394.

14.     On April 25, 2023, Debtor filed its *Notice Of Designated Stalking Horse Bidder* [ECF No. 473] designating RockitCoin, LLC as the "stalking horse bidder" pursuant to a term sheet providing for a sale price of $16.75 million.

15.     On May 11, 2023, Debtor filed its *Amended Notice Of Bidding Procedures And Deadlines* [ECF No. 546].

16.     On June 23, 2023, Debtor filed a notice attaching a revised Heller Asset Purchase Agreement and a revised Genesis Coin Asset Purchase Agreement [ECF No. 749]. The revised purchase agreements reflected a Heller purchase price of $$4.2 million (subject to reduction) plus assumption of certain liabilities (*id.* at p. 5 §1.3), and provided for a Genesis Coin purchase price of $1.5 million plus 1% "of all net proceeds received by all Machine Operators from any of those certain DCM machines included in the assets sold by Seller to Heller Capital, Inc. in the Heller Purchase Agreement that operate on Seller's Software".  *Id.* at p. 113, §2.03

17.     On May 26, 2023, Debtor filed its *Notice Of Revised Stalking Horse Asset Purchase Agreement* [ECF No. 602].

18.     On April 26, 2023, Debtor filed its *Second Notice Of Revised Stalking Horse Asset Purchase Agreement* [ECF No. 604] and its *Amended Notice Of Designated Stalking Horse Bidder* [ECF No. 605].

19.     On June 5, 2023, Debtor filed its *Notice Of Auction Results Regarding Sale Of Substantially All Of The Debtor's Assets* [ECF No. 618, as correct at ECF No. 621], reflecting that:

> Debtor held an auction for the purchase of substantially all of the Debtor's assets (the "Sale") on June 2, 2023. Heller Capital, LLC and Genesis Coin, Inc. (collectively "Heller Capital") was the Successful Bidder, with a Successful Bid of $5,700,000.00, subject to the terms and conditions of its bid. 5. Additionally, Christopher McAlary ("McAlary") was the Successful Bidder for the purchase of the equity interests and assets of Coin Cloud Brasil Ativos Digitais Ltda ("Coin Cloud Brazil"), with a Successful Bid of $50,000.00 and repayment of the receivable (the "Brazil Receivable") owed to Debtor from Coin Cloud Brazil in the approximate amount of $600,000.00….

*Id.* at p. 2, ¶¶4-5.  The Stalking-Horse Bidder, RockItCoin, LLC, was designated as the Back-Up Bidder with a Qualified Bid in the amount of $3,237,000.00.  *Id.* at ¶7.

20.     On June 16, 2023, Debtor filed its *Emergency Motion For Order Authorizing Debtor's Entry Into Interim Management Services Agreement Pending Approval Of Sale Of Debtor's Assets* [ECF No. 710], for "for entry of an order authorizing the Debtor, on an emergency basis, to enter into and perform that certain Interim Management Services Agreement, dated June 14, 2023 (the "Management Agreement") with Apollo Management, LLC ("Manager"), an affiliate of Heller Capital Group, LLC ("Heller Capital"), which, together with Genesis Coin, LLC ("Genesis Coin"), are the proposed purchasers of substantially all of the Debtor's assets".  *Id.* at p. 1, lls. 24-28.  That motion was approved via order entered on June 30, 2023 [ECF No. 797].

21.     That motion was supported by the Declaration of Daniel Ayala [ECF No. 711] which reflected that, *inter alia*, Mr. Ayala is the Independent Director of the Debtor (*id.* at ¶1); that the Debtor "needs the financial support and backing" of Apollo Management, LLC, in order to consummate the sale (*id.* at ¶7).

22.     On June 16, 2023, Debtor filed its *Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 714, amended at ECF No. 729], seeking:

authority to: (a) sell the Heller Assets, and assume and assign certain host leases and executory contracts (the "Assumed Contracts"), to Heller Capital for a total cash component of $4,450,000.00, which includes a separate $250,000.00 Extension Fee (the "Heller Purchase Price"), and additional payment of cures, certain operational, and payroll expenses through an Interim Management Services Agreement (the "IMSA") ; and (b) sell the Genesis Coin Assets to Genesis Coin for a 1% monthly commission on all revenue generated from digital currency machines ("DCMs") listed on Exhibit B-1 attached hereto (the "Commissioned Machines"), with a minimum guarantee of $1,500,000.00 paid to Debtor over a maximum period of 20 months from the date of transition of the Genesis Coin Assets….

*Id.* at p. 3 lls. 3-11.  This request was supported by the facts that:

It is critical that the sales of the Heller Assets and the Genesis Coin Assets (collectively, the "Sale Assets") close as soon as possible, not only to retain the value of the Sale Assets, but also to prevent Debtor's continued incurrence of administrative expenses that reduce any potential recovery to unsecured creditors. In addition, Debtor is concerned about the deterioration of the Sale Assets, in light of Debtor's severely diminished cash flow, which has led the Debtor to cease operations in an effort to conserve cash and limit its cash burn. Debtor has borrowed the maximum amount under its DIP loan5 from Debtor's DIP lender, CKDL Credit, LLC (the "DIP Lender"). Each passing day brings increasing uncertainty regarding Debtor's future, leading to potentially greater losses for Debtor and its estate. See Ayala Declaration, ¶ 4.

*Id.* at lls. 12-20.

23.    On June 16, 2023, Debtor filed its *Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 714, amended at ECF No. 730].

24.    On June 20, 2023, the Court entered its *Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, LLC, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 795].

25.     Debtor has also moved for (and generally obtained) approval to reject remaining executory contracts.  *See, e.g.,* orders approving rejection of contracts at ECF Nos. 172, 295, 491, 516, 517, 627-630, 943-951, 1007, 1018 and 1020.

**E.  The Amended Plan Process**

26.     On May 8, 2023, Debtor filed its *Chapter 11 Plan Of Reorganization Dated May 8, 2023* [ECF 528] and *Debtor's Disclosure Statement For Chapter 11 Plan Of Reorganization Dated May 8, 2023* [ECF No. 529].

27.     On the same day, Debtor filed its *Ex Parte Motion For Order Pursuant To 11 U.S.C. § 105(D)(2)(B)(VI), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form Of Ballots; (IV) Scheduling Voting And Objection Deadlines; And (V) Granting Related Relief* [ECF No. 530].

28.     On May 12, 2023, this Court entered its *Order Pursuant To 11 U.S.C. § 105(d)(2)(B)(vi), Fed. R. Bankr. P. 3017.1 And Local Rule 3017 Implementing Expedited Solicitation And Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing On Final Approval Of Disclosure Statement And Plan Confirmation; (III) Approving (A) Form And Scope Of Combined Hearing Notice, And (B) Form Of Ballots; (IV) Scheduling Voting And Objection Deadlines; And (V) Granting Related Relief* [ECF No. 554].

29.     On April 12, 2023, Debtor filed its Notice Of Combined Hearing Re: (I) Final Approval Of Disclosure Statement; And (II) Confirmation Of Chapter 11 Plan Of Reorganization Dated May 8, 2023 [ECF No. 555], noticing a confirmation hearing for June 28, 2023.  By order entered on June 22, 2023 [ECF No. 741], that hearing was continued to July 27, 2023.  By minute entry of July 24, 2023, the confirmation hearing was continued to August 17, 2023.

30.     On July 7, 2023, the Debtor filed its Supplement To Debtor's Chapter 11 Plan Of Reorganization Dated May 8, 2023 [ECF No. 528] attaching a Liquidation Analysis as Exhibit B.

The Liquidation Analysis provided for estimated professional fees for the case to be between $3 and $4 million.

31.     On August 1, 2023, *Debtor filed its First Amended Chapter 11 Plan Of Reorganization Dated August 1, 2023* [ECF No. 996](the "<u>Amended Plan</u>").  The Amended Plan contains substantial changes from the Amended Plan as originally proposed, including eliminating funding for the creditors' trust, adding a second Administrative Claim Bar Date (which runs from the end of the first Administrative Bar Date to the "Effective Date"), establishing a second "secured claims trust" with secured creditors to receive interests in that trust rather than direct payments (impairing a previously unimpaired class), and delaying the Effective Date until sufficient funds exist to pay administrative creditors.  No amended disclosure statement was filed, and the Debtor has not provided the twenty-one days' notice required by Fed.R.Bankr.P. 2002(a)(5). Despite filed professional fees of over $4.5 million and despite the administrative bar date having passed, the Debtor did not disclose the magnitude of professional or administrative claims and did not file a new liquidation analysis.

**F.  The Monthly Operating Reports**

32.     On June 20, 2023, Debtor filed its Monthly Operating Report for the period ending 3/31/23 [ECF No. 734], reflecting that, as of March 31, 2023, Debtor had incurred losses totaling $8,942,144, and faced post-petition payables of $3,925,109.

33.     On July 20, 2023, Debtor filed its Monthly Operating Report for the period ending 4/30/34 [ECF No. 901], reflecting that, as of April 30, 2023, Debtor had incurred losses totaling $11,968,635, and faced post-petition payables of $8,630,999.

**G.  Other Matters**

34.     On June 12, 2023, McAlary resigned as the Debtor's CEO, with Daniel Alaya designated as Debtor's responsible person.  ECF No. 772.

35.     On June 20, 2023, Debtor filed adversary case #23-01105 against Rockitcoin, LLC. ECF No. 736, alleging defendant's breach of its non-disclosure agreement with the Debtor to Debtor's damage.  That case was resolved with Debtor agreeing to "pay to RockItCoin, directly from its sale proceeds at any closing(s) of the sale(s) to Genesis Coin and Heller Capital: (a) the

amount of the Break-Up Fee, reduced by $2,700.00 for costs associated with the filing of the Complaint, for a total Break-Up Fee amount of $186,060.00; and (b) the Expense Reimbursement in the amount of $150,000.00". ECF No. 768 at p. 3, ¶1.

36.     On June 27, 2023, Debtor filed its *Notice Of Filing Revised Exhibit A To Debtor's Amended Motion For Order: (A) Confirming Auction Results; (B) Approving The Sale Of Certain Of Debtor's Assets To Heller Capital Group, Llc, And Genesis Coin, Inc., Free And Clear Of Liens Claims, Encumbrances, And Other Interests; (C) Authorizing The Assumption And Assignment Of Certain Of The Debtor's Executory Contracts And Unexpired Leases Related Thereto; And (D) Granting Related Relief* [ECF No. 779], reflecting that the purchaser would receive certain machines free and clear of liens.   *Id,* at p. 6 §1.9.

37.     On July 24, 2023, the Committee filed the *Motion Of The Official Committee Of Unsecured Creditors For An Order Granting Leave, Derivative Standing And Authority To Commence, Prosecute And Settle Claims On Behalf Of The Debtor's Estate* [ECF No. 925] seeking "derivative standing to prosecute certain claims against the Debtor's prepetition lenders that it was charged with investigating and preserving for the benefit of the estate".  *Id.* at p. 2 ¶1.  As reflected in that motion:

> The unfortunate reality of this case is that the Debtor's assets were worth less than the value of the secured debt, and the proceeds of the sale of the Debtor's assets solely benefit the Debtor's secured lenders. It is, therefore, imperative that the Committee pursue the Preserved Claims in order to ensure that all value that should be appropriately allocated to unsecured creditors is so allocated, and that the secured lenders—who are undoubtedly vastly undersecured—do not receive outsized benefits to which they are not entitled.

*Id.* at ¶2.  That motion is set for hearing on August 29, 2023 (*see* ECF No. 932].

38.     On July 24, 2023, Debtor filed its *Motion For Entry Of An Order Authorizing Debtor To Surcharge The Collateral Of Genesis Global Holdco, Llc, Enigma Securities Limited, And Avt Nevada, L.P.* [ECF No. 926], which is set for hearing on August 29, 2023.

39.     On July 31, 2023, Debtor filed a *Stipulation Regarding Relief From The Automatic Stay For Ipfs Corporation* [ECF No. 983] consenting to lift the automatic stay to permit

"cancellation of the policy identified in the Agreement effective as of the Petition Date and collection of the unearned premium related to the policy". *Id.* at p. 4 ¶5.

40.    On August 1, 2023, Debtor filed its motion seeking to sell certain equipment to PowerCoin, LLC for a purchase price of $10,000 [ECF No. 991]. As reflected in that motion: "Debtor has ceased operations and is seeking to move out of its current office space by August 1, 2023, in order to reduce its expenses and conserve cash." *Id.* at p. 4, ¶16.

41.    On August 3, 2023, the Committee filed a *Stipulation Granting Derivative Standing To The Official Committee Of Unsecured Creditors With Respect To Certain Actions* [ECF No. 1009] purporting to grant the Committee the right to pursue certain claims. No motion, points and authorities, evidence, or notice of hearing was filed. The Order granting that Stipulation was denied without prejudice.

### III.

### LEGAL ARGUMENT

**A.    The Amended Plan Does Not Comply With 11 U.S.C. Section 1129(a)(1)**

**1.    The "Delayed Effective Date" Provisions Do Not Comply With the Applicable Provisions of the Bankruptcy Code**

Bankruptcy Code § 1129(a)(1) requires that the Amended Plan comply with the applicable provisions of the Bankruptcy Code.

> [T]his provision requires the Court to find that the Amended Plan complies with the following provisions: (1) 11 U.S.C. § 1122(a), which describes how claims may be classified in a plan, (2) 11 U.S.C. § 1123(a), which specifies those provisions a plan *must* contain, and (3) 11 U.S.C. § 1123(b), which specifies those provisions a plan *may* contain.

*In re W. Asbestos Co.*, 313 B.R. 832, 840–41 (Bankr. N.D. Cal. 2003*).*

Section 1123(a) provides that a chapter 11 plan *shall:*

…

(5) provide adequate means for the Amended Plan's implementation….

The Amended Plan does not provide for sufficient implementation because the Effective Date cannot be determined with any certainty. The Debtor cannot prove by a preponderance of evidence that the Amended Plan can be implemented such that an Effective Date will ever occur.

The Amended Plan provides that the Effective Date shall occur on "the first date on which all of the conditions precedent described in Section 9.1 of the Amended Plan have occurred or have been waived" Amended Plan p. [11]. Paragraph (f) of Section 9.1 provides that one of the conditions of to such Effective Date is that the amount of the Confirmation Funds shall be transferred by the Debtor or the Creditor's Trust (although the Creditor's Trust is not formed until the Effective Date). Id. at 39. "Confirmation Funds" are defined as

> "all funds required to be disbursed, or deposited and held for later disbursement upon allowance or other Bankruptcy Court authorization, on or as of the Effective Date: (a) to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, and Other Priority Claims; (b) to the extent not previously satisfied prior to the Effective Date as provided herein, to Holders of the Allowed DIP Claims, the Enigma Secured Claim, the Genesis Secured Claim, the AVT Secured Claim and Allowed Other Secured Claims; (c) to the U.S. Trustee for US Trustee Fees due as of the Effective Date; and (d)  for any other Distributions and payment of costs and expenses in connection with consummating the Amended Plan, including the Professional Fee Escrow Account and the Administrative and Priority Claims Escrow Account" Id. at 9

In other words, the Effective Date will occur once the Debtor has sufficient funds to pay all Administrative Claims and Professional Fees.  As described in the Opposition to Stipulation, the Debtor has not disclosed either in currently filed MORs, in a current Liquidation Analysis or in an updated Disclosure Statement what the outstanding Administrative Expense Claims including Professional Fees currently are, nor has the Debtor disclosed how much cash the Debtor currently has.

The Liquidation Analysis (the "Liquidation Analysis") attached as Exhibit B to the Supplement to Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023[Docket No. 821] (the "Plan Supplement"), projects between approximately $5.7 million to $10.2 million in allowed administrative claims against sale proceeds of approximately $5.7 million (which one assumes were used to pay the DIP lender its superpriority claim of over $5m).  The Liquidation Analysis described above assumes $3m for professional fees on the low side and $4m on the high side. *See*

Liquidation Analysis. But currently, based on monthly fee statements filed, professional fees are $4.617m.  *See* spreadsheet attached to the *Opposition to Stipulation* as Exhibit 1.

But no fee statements have been filed by Fox, Province, or Committee's Nevada counsel since the fee statement for June, no fee statements have been filed by Committee counsel since May and no fee statements have EVER been filed by the committee's financial advisor, FTI.  Based on estimates of fees in line with previous months as shown on the Excel spreadsheet attached the *Opposition to Stipulation* as Exhibit 1, fees are likely to currently be over $7.5m through July.

Against those fees and the administrative and priority claims generally the Debtor has a Motion *for Entry of an Order Authorizing Debtor to Surcharge the Collateral of Genesis Global Holdco, LLC, Enigma Securities Limited, and AVT Nevada, L.P.* [ECF No. 926] ("Surcharge Motion") requesting approximately $2m, the estate's potential claims against McAlary described in the Opposition to Stipulation ("McAlary Claims") and the estate's scheduled Target Litigation against Cole Kepro, BitAccess, Inc. and Lux Vending LLC, dba Bitcoin Depot regarding the facts and circumstances surrounding events which McAlary believes pushed Cash Cloud into bankruptcy and which he has been trying to purchase from the estate since the auction. This Surcharge Motion is not described in the Disclosure Statement nor is it reflected in the Liquidation Analysis.  The estate's litigation claims, including the Target Litigation,  are estimated in the Liquidation Analysis to be valued at approximately $1m. The Amended Plan calls for those to be prosecuted by the Creditor Trust.  Nowhere does the Debtor explain how it intends to get the funds to cause the Effective Date to occur.  Nowhere does the Debtor ever explain how much in funds it would need.

The Debtor has to prove the elements of confirmation by a preponderance of evidence and it has not at this time even stated when an Effective Date will occur.

"While the term "effective date" is not defined in the Bankruptcy Code and there

are no provisions in the code regarding its timing upon confirmation, such date should "be set forth in the Amended Plan with specificity." *In re Potomac Iron Works, Inc*., 217 B.R. 170, 173 (Bankr. D. Md. 1997) (holding that one-year delay between Chapter 11 plan confirmation order and effective date of debtor's plan was unreasonable and precluded court from confirming plan.) There are two views as to when the effective date is to occur: (1) on or close to the entry of the confirmation order; or (2) around the time when a confirmation order becomes final. *See In re Yates Dev., Inc*., 258 B.R. 36, 43 (Bankr. M.D. Fla. 2000). *See also In re Potomac Iron Works, Inc*., 217 B.R. at 173. The confirmation order in this case was entered on February 15, 2022 and has been final since March 2, 2022. (Dkt. # 354.) *See* Fed. R. Bankr. P. 9023. As explained above, all risk of failure has been shifted to tax authorities and unsecured creditors and more than one year later from the order confirming plan becoming final, the effective date is yet to occur."

*In re Edgardo Lebron Vagu and Luz Nelida Zapata Oquendo*, 2023 WL 4687819, at *8 (Bankr. P.R 2023).  Because there is no date certain by which the "Effective Date" can be ascertained insufficient implementation exists for the Amended Plan to be confirmed.

### 2. The Purported Stripping of Setoff Rights is Not Consistent With the Bankruptcy Code.

11 U.S.C. §553(a) provides that:
Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case

The requirement of preserving the right of setoff has long been recognized by the Ninth Circuit to survive plan confirmation.  *See, e.g., In re De Laurentiis Ent. Grp. Inc.*, 963 F.2d 1269, 1276 (9th Cir. 1992)("We conclude that section 553 must take precedence over section 1141").  In doing so, the court noted that:

Setoffs have a long and venerable history, dating back to Roman and English law. Setoffs in bankruptcy are almost as venerable, having been established in England in 1705 and in the United States in 1800. [*In re*] *Buckenmaier,* 127 B.R. [233,] 237 [9ᵗʰ Cir. BAP 1991)]. Since that time, setoffs in bankruptcy have been "generally favored," and a presumption in favor of their enforcement exists. *Id.* Giving precedence to section 1141 would reverse this long-standing presumption. Setoffs would only be allowed if sanctioned in a plan of reorganization. If Congress had intended to make such a major change from the common law, one might expect some indication of that intent in the statute itself. None can be found.

14

Moreover, the primacy of setoffs is essential to the equitable treatment of creditors. A setoff is allowed as a defense to a claim brought *by the debtor* against a creditor. The creditor can claim only an amount large enough to offset its debt; it cannot collect anything from the debtor. Absent a setoff, a creditor in NBC's position is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place.

*In re De Laurentiis Ent. Grp. Inc.,* 963 F.2d 1269, 1277 (9th Cir. 1992).[2]

While Section 3.3 of the Amended Plan preserves the "Debtor's, the Creditor Trustee's and the Disbursing Agent's "setoff rights, section 10.1(b) provides that:

UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANENTLY ENJOINED BY THE AMENDED PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, OR OFFSET, DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE AMENDED PLAN, OR TRANSFERRED TO THE CREDITOR TRUST OR THE SECURED CLAIMS TRUST, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE

(Emphasis in original.) This inappropriate attempt to divest McAlary and others of the setoff rights preserved under Section 553 extends to the provision of Section 10.2(b).

### 3.  The Proposed Releases are Not Consistent With the Bankruptcy Code

The Amended Plan at section 10.2 purports to release third parties, including Cole Kepro. The bankruptcy court lacks the power to confirm plans of reorganization which do not comply with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Pursuant to 11 U.S.C. § 524(a), a discharge under Chapter 11 releases the debtor from personal liability for any debts. Section 524 does not, however, provide for the release of *third parties* from liability; to the contrary, § 524(e) specifically states that "discharge of a debt of the debtor does not affect the liability

---

[2]    While the DeLaurentis case suggests that a provision in a confirmed plan in derogation of Section 553 is simply invalid, the United States Supreme Court's subsequent decision in *United Student Aid Funds, Inc. v. Espinosa,* 559 U.S. 260 (2010), suggests that a creditor with notice of a plan approved by final order is bound by provisions of that plan even if they violate the Bankruptcy Code.

of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. § 524(e).

This court has repeatedly held, without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors….

*In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995).

McAlary believes that Cole Kepro sought its Committee role in order to assure the liquidation of Cash Cloud, rather than its reorganization. The estate may have claims against Cole Kepro, the Committee and its counsel that should not be released as part of the Amended Plan confirmation process. These claims should be evaluated either by the Creditors Trust or a Chapter 7 Trustee.

**B.    The Amended Plan Does Not Comply with 11 U.S.C. Section 1129(a)(2)**

Section 1129(a)(2) requires that the proponent of the Amended Plan comply with applicable provisions of the Bankruptcy Code. "The principal purpose of section 1129(a)(2) is to require, as a condition of confirmation, that the court ascertain whether the proponent of the Amended Plan under consideration has complied with the provisions of the code in general and Section 1125 in particular." 5 *Collier on Bankruptcy,* §1129.02[2] (15th ed. 1984).

Although Bankruptcy Code §1127 permits a plan to be modified prior to confirmation, subsection (c) requires that "The proponent of a modification shall comply with section 1125 of this title with respect to the Amended Plan as modified."

Section 1125(b) provides, in relevant part:

An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the Amended Plan or a summary of the Amended Plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information.

"Adequate information" means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records… that would enable such a hypothetical investor of the relevant class

to make an informed judgment about the Amended Plan".  11 U.S.C. §1125(a)(1),  Here, the

original Plan was solicited based on a May 8, 2023 Disclosure Statement [ECF No. 529] which

estimated administrative claims as follows:

| Summary of Unclassified Classified Claims | |
|---|---|
| **Designation** | **Estimated Asserted** |
| Administrative Expense Claims | $1,300,000 |
| Professional Fee Claims | $1,500,000 |
| Priority Tax Claims | $300,000 |
| US Trustee Fees | $500,000 |

*Id.* at p. 34.  In contrast, ***disclosed*** professional fees to date exceed $4.6 million, and are likely to

exceed $7.5 million.  Additional administrative claims through July 21, 2023, exceed $11 million.[3]

The magnitude of the incorrect "estimate" cannot be overstated.  While the Disclosure Statement

represents that the "Sale Proceeds" will be more than sufficient to pay administrative claims,[4] in

fact it is clear that there are insufficient funds to even pay administrative claims.  The Amended

Plan adds a new "condition" to the occurrence of the effective date: "**Debtor and/or the Creditor**

**Trustee on behalf of the Creditor Trust shall have transferred and/or segregated Cash Assets in the**

---

[3]  *See* ECF 652, 873, 880, 883, 887, 890, 894, 900, 905, 913, 931, and 977; POC 141, 151, and 155.

[4] *See id.* at p. 11 lls. 14-25:

> On or before the Effective Date, the Debtor shall transfer or segregate the Sale Proceeds in the amount of the Confirmation Funds for further distribution as follows: (a) to the Disbursing Agent to make Distributions to Holders of Allowed Administrative Expense Claims, Priority Tax Claims, Other Priority Claims, the DIP Claims, the Enigma Secured Claim, the Genesis Secured Claim, Other Secured Claims and Cure Claims on the Effective Date; (b) to the U.S. Trustee for US Trustee Fees due as of the Effective Date; (c) to the Creditor Trust in the amount of the Creditor Trust Funding Amount; and (d) for any other Distributions and payment of costs and expenses in connection with consummating the Amended Plan, including funding the Professional Fee Escrow Account and the Administrative and Priority Claims Escrow Account. ***After all the payments above,*** ***the Net Sale Proceeds shall be available*** for distribution as provided under the Amended Plan.

Emphasis added.

aggregate amount of the Confirmation Funds in accordance with Article VI of the Amended Plan". Amended Plan §9.1(f),

The Disclosure Statement further represents that secured claims are "unimpaired" as they will receive their collateral, payment, or other treatment will be paid on the Effective Date from the Sale Proceeds. *See id.* at Section 5.2, description of treatment of "unimpaired" secured claims of Genesis (B) Enigma (C) and "Other Secured Creditors" (D). The Amended Plan creates a new Secured Creditors' Trust, and recognizes that classes 2(b), 3(a) and 3(b) (and possibly 2(c)) are now impaired. Amended Plan p. 27 l. 28-p. 28 l. 1.

Further, the Amended Plan was filed on August 1, 2023, with a proposed confirmation hearing on August 17, 2023. Fed.R.Banrk.P. 2002(a)(5) requires that the proponent provide twenty-one days' notice of the time fixed to accept or reject a modified plan.

In short, on multiple grounds, the Amended Plan does not comply with the disclosure, solicitation, and notice requirements of the Bankruptcy Code and Rules, and for that reason cannot satisfy the requirements of 11 U.S.C. §1129(a)(2).

## C.    The Amended Plan Does Not Comply with 1129(a)(5)(A)

11 U.S.C. Section 1129 (a)(5)(A) provides (i) the proponent of the Amended Plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Amended Plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the Amended Plan; and (ii) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy.

Here, while the Debtor's Amended Plan provides for a Creditor's Trust Trustee, a Secured Creditors' Trust Trustee, and a Disbursing Agent, the Amended Plan discloses the identity of none of them. Indeed, the "Plan Supplement" filed on July 7, 2023 [ECF No. 528] states "[*]" with respect to the identity and billing rates of the Trustee and provides only that the trust may elect a disbursing agent (in contract, the Amended Plan at p. 10, lls. 24-25 defines the Disbursing Agent as "the Person or Entity that may be designated in the Confirmation Order, the Creditor Trust Agreement and/or the Secured Claims Trust Agreement"). This is especially concerning given the

conflict exhibited by Cole Kepro the co-chair of the Committee, and the current state of affairs wherein the estate professionals appear to want to keep the case open and confirmed without assurance that an effective date will ever occur so that prosecution of the litigation remains in their hands rather than the hands of a third party who is neutral.

**D.    The Amended Plan Does Not Comply With 1129(a)(9)**

11 U.S.C. Section 1129 (a)(9) provides that, except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Amended Plan provides that with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of this title, on the effective date of the Amended Plan, the holder of such claim will receive cash equal to the amount of the claim.

Section 1129(a)(9)of the Bankruptcy Code states that a plan filed under Chapter 11 must pay holders of allowed claims specified in section 507(a)(2) of Title 11 of the U.S. Code (the "Bankruptcy Code") cash equal to the allowed amount of the claim in full on the effective date unless the holder agrees to different treatment. As described in subparagraph A(1) above, and in the Opposition to Stipulation the Debtor has not disclosed either in currently filed MORs, in a current Liquidation Analysis or in an updated Disclosure Statement what the outstanding Administrative Expense Claims including Professional Fees currently are, nor has the Debtor disclosed how much cash the Debtor currently has.

As such the Debtor appears to be unable to prove by a preponderance of evidence that it can comply with the requirement that all administrative claims will be paid in full on some date pursuant to section 1129(a)(9) of the Bankruptcy Code in order to confirm the Amended Plan.  It appears likely that all administrative claims cannot be paid in full.  See Motion to Convert.

**E.    The Amended Plan Does Not Comply With 1129(a)(11)**

11 U.S.C. Section 1129 (a)(11) provides: Confirmation of the Amended Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the Amended Plan, unless such liquidation or reorganization is proposed in the Amended Plan.  While the Amended Plan does call for "liquidation", it contemplates that there will be a neutral trustee replacing the myriad of professionals (including professionals representing a

committee co-chaired by a primary litigation target) who are currently controlling the Litigation Claims, running up exorbitant additional fees which color the analysis of the value of such claims and the appropriate method of liquidating them.

In addition to confirm a reorganization plan, a bankruptcy court must make a specific finding that the Plan, as proposed, is feasible. 11 U.S.C.A. § 1129(a)(11). *In re Cavu/Rock Properties Project I, LLC*, 530 B.R. 349 (W.D. Tex. 2015), aff'd, 637 Fed. Appx. 123 (5th Cir. 2016). Confirmation in Chapter 11 cannot be approved unless the bankruptcy judge makes a specific finding that the proposed plan is feasible. *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165 (Bankr. N.D. Ill. 2012). A Plan is not feasible if it "hinges on future litigation that is uncertain and speculative, because success in such cases is only possible, not reasonably likely. *In re Biz As Usual, LLC*, 627 B.R. 122,130 (Bankr. Penn. 2021). *See also In re WR Grace & Co.* 729. F. 3d 332, 349 (3rd Cir. 2013) (same, citing *In re American Capital Equipment LLC* 688 F.3d 145, 1156 (3d Cir. 2012). Here the Liquidation Analysis shows that the Debtor has no additional assets beyond the Surcharge Motion and the litigation and therefore the Amended Plan, which relies on those recoveries for the Effective Date to occur is  not feasible.

### IV.

### CONCLUSION

Based on the foregoing, it is respectfully requested that confirmation of the Amended Plan be denied.

Respectfully submitted this 9th day of August 2023.

**CARLYON CICA CHTD.**

*/s/ Dawn Cica*
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
*Counsel for Chris McAlary*

**<u>CERTIFICATE OF SERVICE</u>**

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.


                                        */s/ Nancy Arceneaux*_____
                                        An employee of Carlyon Cica Chtd.