| UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA | | ADMINISTRATIVE CLAIM FORM |
|---|---|---|
| **In re: Cash Cloud, Inc.** | **Case No. 23-10423-mkn** | **PLEASE NOTE:** *This form should only be used to assert an administrative expense claim that arose or accrued after February 6, 2023, but before July 21, 2023.* |
| **Name of Creditor and Address:** the person or other entity to whom the debtor owes money or property<br><br>GOOD 2 GO STORES LLC<br>1568 E. 17th Street<br>Idaho Falls, ID 83404 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. | **THIS SPACE IS FOR COURT USE ONLY** |
| Creditor Telephone Number (208) 906-0096 | | |
| Name and address where notices should be sent (if different from above):<br>Timothy A. Lukas, Esq.<br>Holland & Hart LLP<br>5441 Kietzke Lane, Second Floor<br>Reno, NV 89511 | | |
| Creditor Telephone Number ( 775) 327-3000 | | |
| Account or other number by which creditor identifies debtor: | Check here if this claim: ☐ replaces<br>☐ amends a previously filed claim, dated: | |

**1. Basis for Claim:**
   Unpaid lease payments

**2. Date debt was incurred:** May 1, 2023 - June 14, 2023

**3. Brief description of claim, including the basis for the priority nature of the claim (if any) (attach additional information):**
   Unpaid monthly lease payment pursuant to Master Host Agreement

**4. Total Amount of Administrative Claim:** $ 27,207.00

   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. CREDITS**: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**6. SUPPORTING DOCUMENTS:** *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court documents, mortgages security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**7. DATE-STAMPED COPY:** To receive an acknowledgement of the filing of your claim, enclose a stamped self-addressed envelope and copy of this proof of claim.

| The original of this completed proof of claim form must be filed electronically on or before 5:00 p.m. Prevailing Pacific Time on July 20, 2023 through the Court's CM/ECF System or mailed to the address below <u>so that it is received</u> by the Clerk of the Bankruptcy Court for the District of Nevada at the address below on or before 5:00 pm Prevailing Pacific Time on July 20, 2023.<br><br>Clerk of the United States Bankruptcy Court, District of Nevada<br>300 Las Vegas Blvd. South, Las Vegas, NV 89101 | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|
| **DATE**<br>August 10, 2023 | **SIGNATURE:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br>/s/ Timothy A. Lukas<br>Timothy A. Lukas, attorney for Good 2 Go Stores, LLC |

*Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571.*

146882928.1

All Machines installed in May 2022

| Month | Rent | Payment | Payment Date | Outstanding Balance | ADMINSTRATIVE CLAIM |
|---|---|---|---|---|---|
| May | $ 18,550 | $ - | | $ 115,938 | $ 18,550 |
| June 1-14 | $ 8,657 | $ - | | $ 124,594 | $ 8,657 |
| **Total Admin Claim** | | | | | **$ 27,207** |

**Contract rejected by order entered July 26, 2023 (ECF 945)**

# MASTER HOST AGREEMENT

This MASTER HOST AGREEMENT ("*Agreement*") is made by and between Cash Cloud Inc., dba Coin Cloud ("*Coin Cloud*"), a Nevada corporation, and the undersigned entity ("*Host*"), together "*Parties*", as of the undersigned date, "*Effective Date*".

NOW, THEREFORE, in consideration of the mutual covenants contained herein, including all exhibits and addenda, the receipt and sufficiency of which is hereby acknowledged the Parties wish to install one or more Kiosks under this Master Host Agreement, with locations and specific terms and details as agreed and executed in one or more LOCATION EXHIBITS and associated schedule, amendment, or addendum, collectively referred to as "*Location Exhibits*", all of which are hereby incorporated into this Agreement, and as follows:

## Article I.     KIOSK COMPENSATION AND LOCATION

Section I.01 Compensation**:** Host agrees to place one Kiosk at one or more locations, as agreed by both parties and as set forth in the Location Exhibit(s), and in exchange upon installation, Host will be paid certain COMPENSATION, as set forth in the Location Exhibit(s)**.**

Section I.02     Survival: COMPENSATION and payment thereof shall survive the termination or expiration of this Agreement until the Kiosk is removed from Host's property; provided, however, COMPENSATION for any partial month shall be the greater of (i) $350.00/Kiosk prorated based upon a 30-day month and (ii) $3.00 per transaction.

## Article II.     SERVICES TO BE PERFORMED BY COIN CLOUD AND HOST

Section II.01     Performance of Services
Host appoints Coin Cloud as its exclusive provider of Services in accordance with the terms and conditions of this Agreement. "Services" include but are not limited to operating, promoting, monitoring, and marketing all associated Kiosks. Through its Kiosks, Coin Cloud will facilitate the buying and selling of Digital Currency.

Section II.02     Coin Cloud Employees and Third-Party Vendors: Coin Cloud may contract with designated third parties to perform cash logistics, maintenance and other services on the Kiosks. Host shall allow Coin Cloud employees and designated third parties to enter Host's premises during normal business hours for such purposes and must ensure Kiosks are fully accessible for customer use and service access. The Kiosks shall not be moved, nor their installed clearance reduced without Coin Cloud approval.

Section II.03 <u>Host Duties</u>: Host agrees to fulfill the duties "Host Duties" as specified in the Location Exhibits. Host shall not receive compensation for Kiosks and associated Kiosk Locations under Article I before fulfilling these associated duties.

Section II.04 <u>Coin Cloud Responsibilities</u>: Coin Cloud agrees to fulfill its responsibilities "Coin Cloud Responsibilities" as specified in the Location Exhibits.

Article III.    Term and Termination of Master Host Agreement

Section III.01    <u>Term</u>:  This Agreement shall commence as of the later of (i) the Effective Date and (ii) the date when the first Kiosk is placed, and shall continue until and unless terminated as provided for below. On expiration of the initial term, the Agreement will automatically renew on the same terms for successive one-year periods, unless Coin Cloud or Host notifies the other party of its intent not to renew at least sixty (60) days prior to the expiration of the then current term or unless terminated earlier as provided for below.

Section III.02    <u>Termination</u>: This Agreement may be terminated in accordance with one or more of the following: (a) this Agreement may be terminated by mutual written agreement signed by authorized representatives of both Parties; (b) either Party may terminate this Agreement upon a material breach by the other Party of any provision of the Agreement if such breach is not cured within thirty (30) days of written notification by the non-breaching Party to the breaching Party; (c) either Party may immediately terminate this Agreement in the event the other Party becomes insolvent, is dissolved or liquidated, has a petition in bankruptcy, reorganization, dissolution, liquidation, or similar action filed by or against it, is adjudicated as bankrupt, or has a receiver appointed for its business; (d) the operation of Coin Cloud's business is made illegal or impractical by the government; and (e) automatically upon the termination or expiration of all Location Exhibits hereunder; and (f) Host may terminate with sixty (60) days written notice to Coin Cloud if Host is selling or closing the location.

Section III.03    [Intentionally Omitted]

Section III.04    <u>Duties Upon Termination</u>: Upon termination of this Agreement, both parties shall return directly to the other party, its agent, affiliate, or representative any of its respective tangible assets/materials. Coin Cloud shall promptly make all payments payable in accordance with the terms herein. Notwithstanding anything to the contrary herein, Coin Cloud shall be responsible to remove, at its sole cost and expense, all Kiosks from the Kiosk Locations.

Article IV.    Exclusivity

Section IV.01    <u>Exclusivity</u>: Host agrees and warrants that it appoints Coin Cloud as its exclusive provider of the Services under this Agreement for the duration of this Agreement.

Article V.    SUSPENSION OF SERVICES

Section V.01    Suspension: Coin Cloud may suspend the Services without liability if: a) Coin Cloud reasonably believes that the Kiosk is being accessed without authorization or is otherwise being used for improper or illegal purposes; b) Coin Cloud is in the process of changing or replacing third party vendors; c) the Kiosk is moved without approval from Coin Cloud; d) Coin Cloud is required by law, or a regulatory or government body to suspend the services; or e) an event, for which Coin Cloud reasonably believes that suspension of Services is necessary to protect Coin Cloud, its customers, or Host.

Section V.02    Notice: Coin Cloud shall use commercially reasonable efforts to give Host notice of a suspension at least twenty-four (24) hours in advance, unless Coin Cloud is legally prohibited from giving such notice, or it determines that a suspension on shorter or contemporaneous notice is necessary to protect Coin Cloud or its other customers from imminent and significant operational, legal, or security risk. Commercial reasonable efforts include, but are not limited to, notification through electronic mail.

Section V.03    Payment During Suspension: Notwithstanding any suspension of Services pursuant to this Article V, Coin Cloud shall continue to pay to Host COMPENSATION for each Kiosk, including any Kiosk otherwise made inoperable by the suspension of Services, during said suspension period.

Article VI.    INOPERATIVE KIOSK

Section VI.01    Interruption: On occasion, functional operation of the Kiosk may also be temporarily interrupted because of, but not limited to, Internet connectivity, hardware, or software issues. Coin Cloud shall use commercially reasonable efforts to give Host notice of the inoperative Kiosk twenty-four (24) hours after discovery of the Kiosk being inoperative for at least twenty-four (24) hours. Commercially reasonable efforts include, but are not limited to, notification through electronic mail.

Section VI.02    Defective: In the event that the Kiosk proves to be defective, this will not terminate this Agreement. If such an event occurs, Coin Cloud will use reasonable commercial means to procure and install an additional Kiosk at Host's location and Services under this Agreement will continue.

Section VI.03    Payment During Interruption/Defect: Notwithstanding any interruption or defect in and/or to the Kiosks as contemplated by this Article VI, Coin Cloud shall continue to pay to Host COMPENSATION for each Kiosk, including any Kiosk otherwise made inoperable by the interruption or defect, during said period of interruption and/or defect.

Article VII.    OWNERSHIP OF INTELLECTUAL PROPERTY

Section VII.01    Ownership: Coin Cloud shall retain exclusive ownership of all right, title and interest in and to the Coin Cloud properties, including any Background Technology or Coin Cloud Intellectual Property and ownership of the Kiosk itself.

Section VII.02    Restrictions: Host agrees that it will not use or sublicense to any other party to use any Background Technology or any Coin Cloud Intellectual Property for any other purpose without the prior written consent of Coin Cloud, and that, in particular, Host will not a) modify the Background Technology or Coin Cloud Intellectual Property, b) distribute any Background Technology or Coin Cloud Intellectual Property to any third party; or c) disassemble, decompile, reverse engineer or modify any Background Technology or Coin Cloud Intellectual Property. Any information supplied by Coin Cloud to the Host may only be used by Host for the purposes described herein and may not be disclosed to any third party or used to create any product which is substantially similar to the functionality of the Kiosk.

Section VII.03    Reservation of Right: Coin Cloud does not grant any license or rights to the Host in or to the Background Technology or any of the Coin Cloud Intellectual Property, and hereby expressly reserves unto itself, all rights not granted in this Agreement. Nothing in this Agreement shall be construed to prevent Coin Cloud from using or from granting any licenses and rights to other firms, companies, entities, groups or individuals to use the Coin Cloud Properties in any manner whatsoever.

Section VII.04    Improvements: Coin Cloud shall, at all times, exclusively own all right, title, and interest in any invention, modification, addition, derivative work, enhancement, revision, translation, abridgment, condensation, or expansion to or arising from the Coin Cloud Intellectual Property. If any intellectual property rights that are subject to legal protection are created or developed by Coin Cloud with or without the involvement or participation of the Host as a result of the collaboration under this Agreement, such rights shall be owned exclusively by Coin Cloud, and may not be exploited by the Host outside of this Agreement without the express written consent of Coin Cloud.

### Article VIII.    CONFIDENTIAL INFORMATION

Section VIII.01 Each party acknowledges and agrees that by reason of its relationship to the other party under this Agreement it may have access to and acquire knowledge from, material, data, systems and other information concerning the operation, business, financial affairs, products, customers and intellectual property of the other party that may not be accessible or known to the general public, including, but not limited to the terms of this Agreement ("Confidential Information"). The parties agree that Confidential Information shall remain the sole and exclusive property of the disclosing party ("Disclosing Party"), and the receiving party ("Receiving Party") agrees to maintain the Confidential Information in strict confidence and to use Confidential Information solely for the purposes set forth in this Agreement.  The Parties further acknowledge and agree
for the purposes of this Article, Confidential Information shall be deemed to include all Intellectual Property owned by Coin Cloud.

Section VIII.02 The Receiving Party agrees: (i) that it will maintain and preserve the confidentiality of all Confidential Information, including, but without limitation, taking such steps to protect and preserve the confidentiality of the Confidential Information as it takes to preserve and protect the confidentiality of its own confidential information; (ii) that it will disclose such Confidential Information only to its own affiliates and employees on a "need-to-know" basis only, and only to those affiliates and employees who have entered into a confidentiality agreement, the obligations of which are at least as stringent as those

contained in this Article; (iii) that if software is involved, it will not disassemble, "reverse engineer," "reverse compile" or analyze the inputs and outputs of any software or hardware provided under this Agreement for any purpose, including but not limited to, attempting to ascertain or deduce the functionality or workings of the software or hardware; and (iv) that it will not disclose such Confidential Information to any third party (including subcontractors and consultants) without the express written consent of the Disclosing Party, provided, however, that the Receiving Party may disclose the financial terms of this Agreement to its legal and business advisors and to potential investors, so long as such third parties have entered into a confidentiality agreement with the Receiving Party, the obligations of which are at least as stringent as those contained in this Article.

Section VIII.03 The Receiving Party agrees (i) not to alter or remove any identification of any copyright, trademark or other proprietary rights notice which indicates the ownership of any part of the Confidential Information, and (ii) to notify the Disclosing Party of the circumstances surrounding any possession, use or knowledge of the Confidential Information by any person or entity other than those authorized by this Agreement.

Section VIII.04   Confidential Information shall exclude any information that (i) has been or is obtained by the Receiving Party from a source independent of the Disclosing Party and not receiving such information from the Disclosing Party, (ii) is or becomes generally available to the public other than as a result of an unauthorized disclosure by the Disclosing Party or its personnel, (iii) is independently developed by the Receiving Party without reliance in any way on the Confidential Information provided by the Disclosing Party, or (iv) the Receiving Party is required to disclose under judicial order, regulatory requirement, or statutory requirement, provided that the Receiving Party provides written notice and an opportunity for the Disclosing Party to take any available protective action prior to such disclosure.

Section VIII.05 The provisions and obligations of this Article VIII shall survive expiration and termination of this Agreement for a period of two (2) years.

Article IX.   DISCLAIMER AND LIMITATION OF LIABILITY

Section IX.01    Disclaimer of Warranties: THE WARRANTIES SET FORTH HEREIN ARE LIMITED WARRANTIES AND ARE THE ONLY WARRANTIES MADE BY COIN CLOUD. COIN CLOUD HAS NOT GUARANTEED ANY RESULT OR OUTCOME TO BE OBTAINED FROM THE USE OF THE SERVICES.

Section IX.02    TO THE MAXIMUM EXTENT PERMISSIBLE UNDER APPLICABLE LAW, NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY OR ANY THIRD PARTY FOR ANY LOSS OF BUSINESS OR PROFITS, OR FOR ANY CONSEQUENTIAL, INDIRECT, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES, REGARDLESS OF THE FORM OF ACTION, WHETHER IN CONTRACT OR IN TORT, INCLUDING NEGLIGENCE, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. EACH PARTY ACKNOWLEDGES THAT THIS LIMITATION OF LIABILITY REFLECTS AN INFORMED,

VOLUNTARY ALLOCATION BETWEEN THE PARTIES OF THE RISKS (KNOWN AND UNKNOWN; FORESEEABLE AND UNFORESEEABLE)
THAT MAY EXIST IN CONNECTION WITH THIS AGREEMENT. IN ADDITION, COIN CLOUD WILL NOT BE LIABLE FOR THE CONSEQUENCES OF ANY INTERRUPTIONS OR ERRORS IN ITS RESPECTIVE PRODUCTS OR SERVICES, EXCEPT AS SPECIFICALLY PROVIDED HEREIN.

Section IX.03     EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN, HOST DISLCAIMS ANY AND ALL WARRANTIES OF EVERY KIND WHATSOEVER, WHETHER EXPRESS OR IMPLIED, AS TO THE HOST'S PROPERTY AND THE KIOSK LOCATION.

Article X.     INDEMNIFICATION

Section X.01     Each party (the "Indemnifying Party") agrees to indemnify, defend, and hold harmless the other party, including its respective subsidiaries, affiliates, officers, directors, attorneys, accountants, agents, and employees (the "Indemnified Parties") from and against any claim, cause of action, liability, loss, cost, or damage of any kind (including reasonable attorneys' fees) incurred by the Indemnified Parties, directly or indirectly, to the extent resulting from or arising out of the Indemnifying Party's (i) breach of any covenant or obligation under this Agreement, including any covenant or obligation set forth in the Location Exhibit(s) and (ii) violation of any law, rule, or regulation, or the rights of any third parties.

Section X.02     Coin Cloud agrees to indemnify, defend, and hold harmless Host and each of Host's subsidiaries, affiliates, officers, directors, members, managers, employees, agents, attorneys, and accountants (the "Host Indemnified Parties") from and against any claim, demand, suit, cause of action, liability, loss, damage, cost or expense (including reasonable attorneys' fees) (collectively "Damages"), whether or not brought by a third party, and whether based in tort, contract, common law, or otherwise, arising out of, resulting from, or otherwise connected with the presence, placement, or use of Coin Cloud's (i) Kiosks, (ii) products, (iii) Services, (iv) Intellectual Property, (v) Background Technology, or (vi) Coin Cloud Properties; except to the extent Damages are caused by Host Indemnified Parties' gross negligence or willful misconduct.

Section X.03     The provisions of this Article X shall survive the expiration or termination of this Agreement.

Article XI.     GENERAL

Section XI.01 Compliance with Laws: Each Party, on behalf of itself and all affiliates, agrees to comply with all applicable laws, rules, regulations, licenses, and approvals of any duly constituted governmental authority having jurisdiction.

Section XI.02     Completion and Obligations: Upon completion of Services or other termination of this Agreement, Coin Cloud shall make any outstanding payments to Host and Coin Cloud shall have no

further obligations to Host, except for any obligation which expressly survive termination or expiration of this Agreement.

Section XI.03    Safety: Host agrees to keep the premises reasonably safe. Host shall also allow Coin Cloud to bolt the Kiosk to the floor if needed provided Coin Cloud performs its COIN CLOUD RESPONSIBILITIES as set forth in the Location Exhibit(s) related to the same.

Section XI.04    Cooperation: Host agrees to comply with all reasonable requests of Coin Cloud necessary to complete performance of Services under this Agreement and allow Coin Cloud access to Kiosk Location during normal business hours from Effective Date to the date of completion of Services. Host shall provide contact information for the manager or other employee with similar duties upon Coin Cloud's request.

Section XI.05    Host Has Legal Authority to Premises: Host represents and warrants that it has legal authority and access to Kiosk Location

Section XI.06    Host Has Legal Authority to Enter Agreement: Host represents and warrants that Host has legal authority to enter into this Agreement.

Section XI.07    Attorney's Fees: Should either party hereto initiate arbitration or any legal or administrative action or proceeding (an "Action") to enforce any of the terms or conditions of this Agreement, the prevailing party (as determined by the arbitrator, Court or other fact-finder) will be entitled to recover from the losing party all reasonable costs of the Action, including without limitation attorneys' fees and costs.

Section XI.08    Severability: In the event that any provision or any portion of any provision contained in this Agreement is unenforceable, held to be invalid, illegal or unenforceable for any reason or in any respect whatsoever, the remaining provisions and, in the event that a portion of any provision is unenforceable, the remaining portions of such provision, shall nevertheless be carried into effect.

Section XI.09    Governing Law: This Agreement shall be governed by and construed under the laws of the State of Nevada, without reference to conflicts of law principles. Both parties expressly agree that any action relating to this Agreement shall exclusively be brought in Las Vegas, Nevada, and both parties irrevocably consent to the jurisdiction of the State and Federal courts located in Clark County, Nevada

Section XI.10    Force Majeure:  If any party to this Agreement is delayed in the performance of any of its obligations under this Agreement, other than payment obligations, or is prevented from performing any such obligations due to causes or events beyond its control, including, without limitation, acts of God, fire, flood, strike or other labor problem, injunction or other legal restraint, present or future law, governmental order, rule or regulation, then such delay or nonperformance shall be excused and the time for performance thereof shall be extended to include the period of such delay or non-performance; provided however, the non-performing party is without fault in causing such non-performance or delay, and such non-performance or delay could not have been prevented by reasonable precautions and cannot reasonably be circumvented by the non-performing party through the use of alternate sources, workaround plans or other means.  In any such event, the non-performing party shall be excused from

any further performance or observance of the obligation so affected only for so long as such circumstances prevail, and such party continues to use commercially reasonable efforts to recommence performance or observance as soon as reasonably practicable.

Section XI.11    Successors and Assigns: The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective subsidiaries, successors, and assigns of the parties hereto.

Section XI.12    No Waiver:  The waiver by any party hereto of any breach or default shall not constitute a waiver of any different or subsequent breach or default. No waiver of any provision of this Agreement shall be effective unless stated in writing and signed by authorized representatives of all parties.

Section XI.13    Entire Agreement: This Agreement, including any exhibits or attachments attached hereto, constitutes the entire Agreement and understanding between the parties, and integrates all prior discussions between the parties related to its subject matter. Except as expressly provided herein, this Agreement may not be amended except by a written amendment executed by authorized representatives of both parties.

## DEFINITIONS

"Background Technology" means all Intellectual Property, including without limitation all trade secrets, know-how, methodologies, and processes related to Coin Cloud's products or services and any computer software (in object code and source code form), script, programming code, data, information, or HTML script which were conceived, developed by, or licensed to Coin Cloud prior to the Effective Date of this Agreement, or which consist of generally applicable software development tools and technology which were developed by Coin Cloud in the course of discharging its obligations hereunder.

"Intellectual Property" means any intellectual property including without limitation, copyrights, patents, trademarks, service marks, right of publicity, authors' rights, contract and licensing rights, goodwill, and all other intellectual property rights as may exist now and/or hereafter come into existence and all renewals and extensions thereof, regardless of whether such rights arise under the laws of the United States, European Union, or any other state, country, or jurisdiction.

"Kiosk" means a Coin Cloud-provided machine capable of facilitating the purchase and sale of Digital Currency using U.S. dollars or other government-backed currency.

"Digital Currency" means non-government-backed digital currency, including but not limited to bitcoin.

"Coin Cloud Properties" means all Intellectual Property, including without limitation proprietary content, software, and associated documentation owned or licensed by Coin Cloud and Confidential Information of Coin Cloud.

"Kiosk Location" means the location of a Kiosk located on Host's property.

"USD" means United States Dollar.

## Signature Page

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. This Agreement may be executed by pdf file (or similar copy) sent by e-mail, and such transmission shall be valid and binding to the same extent as if it were an original. The undersigned representatives each represent and certify that they are authorized to execute this Agreement.

IN WITNESS WHEREOF, the parties hereto have agreed to this Agreement as of the Effective Date written above.

**Cash Cloud Inc., DBA Coin Cloud**
**10190 Covington Cross Drive**
**Las Vegas, NV 89144**

Signature: *[DocuSigned: D8CB448ED76C498...]*

Name and Position: Christopher McAlary    CEO

Date: 2/2/2022

---

## Host

Good 2 Go Stores LLC
P.O. Box 504300
Idaho Falls, ID 83405
Attn: John Pearson

Signature: *[DocuSigned: E03D3FF196EB472...]*

Name and Position: John Pearson    President

Date: 2/2/2022

## MASTER AGREEMENT CONTACT INFORMATION

### COIN CLOUD CONTACT INFORMATION:

Coin Cloud
Attn: Host Services
10190 Covington Cross Drive
Las Vegas, NV  89144

https://www.coin.cloud

General Phone: (855) 264 2046 (select Host Services from menu)
Email: hostsupport@coin.cloud

### HOST CONTACT INFORMATION:

*Host contact information for general and Master Agreement related communication. Per location contact information and details are in Location Exhibit(s)*

**Host Information**

Good 2 Go Stores LLC
P.O. Box 50430
Idaho Falls, ID 83405


**Administrative contact**

Name:
Position:

Telephone:
Email:

**Other contact notes (backup contacts, regions, etc.)**

# LOCATION EXHIBIT 1

*MASTER AGREEMENT REFERENCE:*

| |
|---|
| **Locations**<br><br>Host will house a Kiosk at its properties provided (i) it is feasible to house a Kiosk at the respective property and (ii) Host approves, in its sole discretion, housing a Kiosk at the respective property.<br><br>Host's property that is to house a Kiosk will receive the Latest Generation Digital Currency Machine (DCM): Features 100% buy/sell, +30 currencies, +40 languages, free non-custodial companion wallet.<br><br>See Attached Location Table 1 for properties where Host will house a Kiosk pursuant to this Location Exhibit 1. |
| **Terms**<br><br>The term of the Agreement shall be for a period of three (3) years from the later of (i) the Effective Date and (ii) the date when the first Kiosk is placed. |
| **Compensation**<br><br>Payment: USD $350 per month per Kiosk ($4,200 per year per Kiosk) or USD $3.00 per transaction per Kiosk, whichever is greater; annual productivity per square foot of $2,164 sq ft)<br><br>Payment Period, Date, and Method: Every month, within 15 days of the end of the prior calendar month, Coin Cloud shall pay Host in USD via ACH in full for the total amounts owing for each Kiosk Location (however an option is available for Host to receive payment in Bitcoin provided this option is authorized in writing by Host) |
| **Coin Cloud Responsibilities**<br><br>*Speed-to-Market: Coin Cloud will commit to 100% distribution in all locations within 8 weeks of signed agreement.*<br><br>*Marketing: In-store POP material available at no cost, including A-frame, window signage, top sign; promotion on the Coin Cloud companion app, and through our social media platform; Google Listing within 48 hours of Kiosk placement.*<br><br>*Delivery & Installation: Coin Cloud will provide and be responsible for all delivery, set-up, installation, and any ongoing service, repair, or maintenance costs.*<br><br>*Internet: Coin Cloud operates on its own mobile network and will be responsible for all setup and ongoing related costs.*<br><br>*Site Surveys: Coin Cloud can survey all Kiosk Locations within 4 weeks of signed agreement.* |

> *Service, Repair, and Maintenance: Coin Cloud will manage and be responsible for all costs related to service, repair, and maintenance of the Kiosks.*
>
> *Cash Logistics: Coin Cloud will manage and be responsible for all cash logistics, including the removal, insertion, transfer, and loss of cash in, to, and from each Kiosk.*
>
> *Compliance: Coin Cloud will manage and be responsible for all federal, state, and local licensing and compliance requirements.*
>
> *Inventory: Coin Cloud will guarantee inventory and be responsible for pricing and potential losses, including any related to price volatility or government regulatory events.*
>
> *Kiosk Removal: Coin Cloud shall be responsible (i) to remove Kiosk from the Kiosk Location and (ii) for any and all costs incurred to remove Kiosk from Host's property upon termination of the Agreement, including all costs to remove a Kiosk bolted to the floor.*
>
> *Floor Repair: If Kiosk is bolted to the floor, then Coin Cloud shall be responsible to (i) repair any and all damage caused by the removal of the Kiosk and (ii) return the floor to substantially the same condition as it existed prior to the Kiosk being bolted to the floor.*
>
> <u>**Host Duties**</u>
>
> *Provide Placement in Host property: (Kiosk Specifications provided for Host information only: 16" x 17" (1.9 sqft) footprint; 61" height.)*
>
> *Electrical: Coin Cloud requires 110VAC; power consumption 108W stable state, 132W operational (able to share power with any device)*
>
> Security/Safety:  Host shall allow Kiosk to be bolted to the floor.
>
> Note: If Host does not allow the Kiosk to be bolted to the floor, Host shall still receive COMPENSATION from Coin Cloud but will be liable for all damages resulting from the kiosk not being bolted to the floor. These damages may include the value of a replacement kiosk and the amount of cash in the Kiosk if the Kiosk is stolen as a result of the Kiosk not being bolted to the floor.

# Exhibit A

## Parties Insurance Requirements

**Insurance Requirements as to Host and all Locations Serviced by Coin Cloud:**

*Commercial General Liability:*

Covering liability arising from premises, operations, personal injury, products/completed operations, and liability assumed under an insured contract (including the tort liability of another assumed in a business contract) with limits of at least:
Limits: $1 Million Each Occurrence /$2 Million Aggregate

Personal & Advertising Injury: $1 Million
General Aggregate: $2 Million
Additional Insureds: Host, their related entities, their directors, officers, and employees Coverage:

*Workers' Compensation and Employer's Liability:*

Workers' Compensation Limits: Pursuant to California law Employer's Liability Each Occurrence: $1 Million Employer's Liability Disease Each Occurrence: $1 Million Employer's Liability Disease Policy Limit: $1 Million

*Umbrella - Excess Liability:*

Can be utilized to satisfy limit requirements Coverage is Following Form of Underlying.

*Employment Practices Liability Insurance (EPLI):*

EPLI covering claims made by employees alleging discrimination (based on sex, race, age, disability, or any other protected characteristic under state or federal law), wrongful termination, harassment, and other employment-related issues, such as failure to promote and claims under Title VII of the Civil Rights Act of 1964, as amended, The Equal Pay Act, The Age Discrimination in Employment Act, as amended, The Rehabilitation Act, The Americans with Disabilities Act, as amended, The Fair Labor Standards Act, The Family and Medical Leave Act, Workers' Compensation Laws, The National Labor Relations Act and any other applicable federal, state or local laws. Said insurance shall have a minimum limit of $1 million per occurrence.

## Location Table 1:

| Store # | Brand | Address | City | ST | ZIP | Store Phone | Store Leader | Store Leader # |
|---|---|---|---|---|---|---|---|---|
| G2G Store #101 | Sips | 538 South 2nd West | Rexburg | ID | 83440 | 208-391-4943 | Claudia Marsh | 916-718-5313 |
| G2G Store #102 | Chevron | 1110 Main Street | Salmon | ID | 83467 | 208-410-8090 | Adele Miller | 208-756-7878 |
| G2G Store #105 | Conoco | 944 University Blvd | Rexburg | ID | 83440 | 208-274-4178 | Casey Harris | 208-889-8253 |
| G2G Store #106 | Shell | 3505 East 105 North | Ucon | ID | 83401 | 208-410-8888 | Marissa Beagley | 208-970-3319 |
| G2G Store #108 | Conoco | 182 S State St | Rigby | ID | 83442 | 208-417-3740 | Holly Haviland | 208-351-5531 |
| G2G Store #110 | Conoco | 445 Farnsworth Way | Rigby | ID | 83442 | 208-417-3539 | Sarah Betzer | 208-520-4355 |
| G2G Store #116 | Conoco | 1490 Fremont Ave | Idaho Falls | ID | 83402 | 208-609-6225 | Justin Davis | 208-390-1325 |
| G2G Store #117 | Conoco | 3727 N Yellowstone Hwy | Idaho Falls | ID | 83402 | 208-529-1635 | Juli Bolley | 208-881-8516 |
| G2G Store #118 | Shell | 125 S. 25th E. | Idaho Falls | ID | 83401 | 208-417-4050 | Allen Haroldsen | .. |
| G2G Store #120 | Exxon | 510 S State Street | Shelley | ID | 83274 | 208-357-3184 | Ramona Denning | 208-497-1583 |
| G2G Store #121 | Conoco | 6662 W Overland | Idaho Falls | ID | gary | 208-417-3497 | Brandie Lish | 208-380-9442 |
| G2G Store #122 | Shell | 1800 E Airport Rd | Blackfoot | ID | 83221 | 208-402-8289 | | |
| G2G Store #123 | Conoco | 1440 North Main Street | Pocatello | ID | 83204 | 208-478-6911 | Anthony Medina | 208-240-7283 |
| G2G Store #418 | Shell | 1063 East Highway 54 | Mona | UT | 84645 | 435-623-3915 | Kara Ingram | |
| G2G Store #419 | Conoco | 1010 N Main St | Nephi | UT | 84648 | 435-627-3923 | Shantelle Rudd | |
| G2G Store #420 | Conoco | 85 N Main St | Levan | UT | 84639 | 435-627-3914 | Lacy Dudley | |
| G2G Store #421 | Conoco | 47 N 400 E St | Moroni | UT | 84646 | 435-627-3934 | | |
| G2G Store #422 | Conoco | 1224 East Main | Green River | UT | 84525 | 435-564-8600 | Brenna Hunt | 435-820-4252 |
| G2G Store #423 | Conoco | 1060 South Highway 99 | Fillmore | UT | 84631 | 435-743-5345 | | |
| G2G Store #702 | Exxon | 200 County Road 215 | Parachute | CO | 81635 | 970-200-2179 | Rachael Fladeland | 970-433-4982 |
| G2G Store #703 | Shell | 201 Columbine Court | Parachute | CO | 81635 | 970-200-8031 | Rachael Fladeland | 970-433-4982 |
| G2G Store #704 | Exxon | 401 30 Road | Grand Junction | CO | 81504 | 970-200-8954 | Robert Sax | 385-465-8499 |
| G2G Store #705 | Shell | 745 Horizon Drive | Grand Junction | CO | 81506 | 970-265-6436 | Janet Wootton | 385-465-9709 |
| G2G Store #706 | Shell | 333 North 1st Street | Grand Junction | CO | 81501 | 970-462-7908 | Ashley Garcia | 970-314-4980 |
| G2G Store #708 | Shell | 403 Jurassic Avenue | Fruita | CO | 81521 | 970-462-7925 | Michael Steele | 970-778-6452 |
| G2G Store #709 | Exxon | 1440 North Townsend | Montrose | CO | 81401 | 970-462-9047 | Steve Munger | 970-417-7425 |
| G2G Store #710 | Chevron | 717 South Broadway | Cortez | CO | 81321 | 970-565-6895 | Brandon Mueller | 702-328-1759 |
| G2G Store #711 | Conoco | 302 West Main Street | Cortez | CO | 81321 | 970-565-8477 | Brandon Mueller | 702-328-1759 |
| G2G Store #202 | Mobil | 221 Yellowstone Ave | Cody | WY | 82414 | 307-587-9331 | Lisa Yates | 307-250-1322 |
| G2G Store #203 | Exxon | 1543 Depot Drive | Cody | WY | 82414 | 307-587-5554 | Jen Nieman | 605-216-9614 |
| G2G Store #204 | Mobil | 1200 17th Street | Cody | WY | 82414 | 307-587-6200 | Lynn Huddler | 307-250-1806 |
| G2G Store #205 | Exxon | 492 Main Street | Ralston | WY | 82440 | 307-754-2452 | Nette Lackman | 602-448-2623 |
| G2G Store #206 | Exxon | 2150 North Federal Blvd | Riverton | WY | 82501 | 307-856-9086 | Misty Breeding | 307-840-4461 |
| G2G Store #212 | Exxon | 1801 US Hwy 310 | Lovell | WY | 82431 | 307-548-7246 | Rosalie Harris | 307-254-8341 |
| G2G Store #213 | Exxon | 199 US Hwy 16 E | Buffalo | WY | 82834 | 307-684-7448 | Carla Harper | 307-620-0214 |
| G2G Store #215 | Exxon | 400 Valley Drive | Casper | WY | 82604 | 307-237-3363 | Veronica Fresorger | 307-315-5765 |
| G2G Store #216 | Exxon | 1968 East Yellowstone Ave | Casper | WY | 82604 | 307-265-6027 | Stephanie Trivitt | 307-267-3683 |
| G2G Store #218 | Exxon | 1229 East Brundage Lane (FEDEX ONLY) | Sheridan | WY | 82801 | 307-203-3740 | Dona Hoffman | 307-578-7922 |
| G2G Store #219 | Exxon | 203 North Federal Blvd | Riverton | WY | 82501 | 307-856-1100 | Misty Breeding | 307-840-4461 |
| G2G Store #221 | Exxon | 200 West Whalen Street | Guernsey | WY | 82214 | 307-203-3475 | Colleen Gregg | 970-518-2515 |
| G2G Store #808 | Cenex | 1600 North Crawford Ave | Hardin | MT | 59034 | 406-665-2920 | Renita Broken Rope | 406-561-7404 |
| G2G Store #305 | Sinclair | 3215 Isleta Boulevard SW | Albuquerque | NM | 87105 | 505-873-3133 | Marni Smith | 505-573-9910 |
| G2G Store #306 | Chevron | 580 Unser Blvd SE | Rio Rancho | NM | 87124 | 505-994-0636 | Maritza Castro | 505-515-8492 |
| G2G Store #307 | Phillips 66 | 3745 Corrales Road | Corrales | NM | 87048 | 505-899-6327 | Zachary Kneebone | 505-553-4122 |
| G2G Store #308 | Chevron | 1475 Rio Rancho Blvd SE | Rio Rancho | NM | 87124 | 505-994-8789 | Deann Gibson | 505-267-9110 |
| G2G Store #309 | Texaco | 1401 Broadway Blvd SE | Albuquerque | NM | 87102 | 505-242-1855 | Monique Nolan | 505-300-9844 |
| G2G Store #310 | Phillips 66 | 1600 E Santa Fe Ave | Grants | NM | 87020 | 505-285-6332 | Sonya Alonzo | 505-879-7540 |
| G2G Store #311 | Chevron | 1655 Main St SW | Los Lunas | NM | 87031 | 505-278-9465 | Eric Fuentes | 505-206-0253 |
| G2G Store #312 | Phillips 66 | 1201 W Santa Fe Ave | Grants | NM | 87020 | 505-285-4382 | Crystal Gallegos | 505-240-2885 |
| G2G Store #313 | Chevron | 1101 N California St | Socorro | NM | 87801 | 505-278-9475 | Stephanie Tenorio Ramos | 505-589-1823 |
| G2G Store #314 | Chevron | 1107 US-85 | Socorro | NM | 87801 | 575-297-0640 | Stephanie Tenorio Ramos | 505-589-1823 |
| G2G Store #330 | Chevron | 1535 Coors Blvd NW | Albuquerque | NM | 87121 | 505-278-9360 | Charlette Leyba | 505-710-5909 |
| G2G Store #331 | Chevron | 1111 Rio Grande Blvd NW | Albuquerque | NM | 87104 | 575-297-0930 | Vanessa Marquez | 505-485-7300 |
| G2G Store #332 | Chevron | 514 Old Coors Blvd | Albuquerque | NM | 87121 | 505-278-9245 | Erica Ochoa | 505-900-7426 |
| G2G Store #366 | Phillips 66 | 3630 Historic Rt 66 | Santa Rosa | NM | 88435 | 505-278-9805 | Philip Sierra | 575-781-7246 |
| G2G Store #501 | 76 | 2632 E. Fry Blvd | Sierra Vista | AZ | 85635 | 520-458-3580 | Steven Ferguson | 520-508-1577 |
| G2G Store #503 | 76 | 1501 E. Ash Street | Globe | AZ | 85501 | 928-425-3911 | Amber Smith | 928-421-6686 |
| G2G Store #504 | 76 | 1000 W. Gila Bend Hwy | Casa Grande | AZ | 85122 | 520-426-9569 | Millie Lopez | 520-280-2349 |
| G2G Store #506 | 76 | 915 W. Beale Street | Kingman | AZ | 86401 | 928-718-0088 | Shelley Flitton | |
| G2G Store #507 | Chevron | 1897 Pueblo Ridge Rd Ste A | Camp Verde | AZ | 86322 | 928-567-1463 | Rudolph (Rudy) Cano | 928-517-0023 |
| G2G Store #508 | 76 | 3179 Willow Creek Road | Prescott | AZ | 86301 | 928-776-4178 | Dani Watkins | 928-961-1997 |
| G2G Store #515 | Conoco | 805 W. Hwy 60 | Superior | AZ | 85173 | 520-689-5554 | Alycia Bearup | 480-673-9053 |
| G2G Store #517 | 76 | 2234 E. Florence | Casa Grande | AZ | 85122 | 520-421-0354 | Michael Draper | 480-280-0511 |
| G2G Store #520 | Chevron | 8333 N. Cortaro Road | Marana | AZ | 85743 | 520-744-4611 | Esmeralda Meza | 520-334-9754 |
| G2G Store #523 | Conoco | 1050 E. 10th Street | Douglas | AZ | 85607 | 520-364-5791 | Alejandra Herrera-Enriquez | 520-368-4159 |
| G2G Store #524 | Conoco | 101 Arizona Street | Bisbee | AZ | 85603 | 520-432-2763 | (Letti) Leticia Vargas | 520-366-6188 |
| G2G Store #526 | 76 | 4525 N. Hwy 89 | Flagstaff | AZ | 86004 | 928-526-2959 | James Kinkade | 928-377-2662 |
| G2G Store #555 | 76 | 1555 E. Hwy 69 | Prescott | AZ | 86301 | 928-445-2366 | Ryan Colvin | 928-277-6733 |
| G2G Store #566 | 76 | 90 N Hipkoe Dr | Winslow | AZ | 86047 | 928-289-2775 | Angela Honyouti | 928-241-1508 |
| G2G Store #567 | UB | I 40 Exit 359 Grant Road | Lupton | AZ | 86508 | a | Beatrice Beasley | 928-856-1104 |