TAFT, STETTINIUS & HOLLISTER, LLP
Paul R. Hage (pro hac vice)
27777 Franklin, Suite 2500
Southfield, MI 48034
(248) 727-1543
phage@taftlaw.com

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEVADA

In re:

CASH CLOUD, INC.,
dba COIN CLOUD

   Debtor.
_____/

Case No. BK-23-10423-mkn

Chapter 11

## LIMITED OBJECTION OF COLE KEPRO INTERNATIONAL, LLC TO DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED AUGUST 1, 2023

  Cole Kepro International, LLC ("Cole Kepro"), by and through its undersigned counsel, states as follows for its limited objection to the *First Amended Plan of Reorganization Dated August 1, 2023* [Doc. No. 996] (the "Plan") filed by debtor Coin Cloud Inc. (the "Debtor"):

  1. Prior to the petition date in this bankruptcy case, Cole Kepro manufactured and sold digital currency kiosks (the "Kiosks") to the Debtor that the Debtor used in the operation of its business.[1]

  2. The Debtor's pre-petition breach of its contractual obligations to Cole Kepro has had a devastating impact on Cole Kepro's business. Indeed, Cole Kepro is among the largest unsecured creditors in this bankruptcy case.

  3. Cole Kepro timely filed two unsecured claims against the Debtor: (i) an unsecured claim related to the Debtor's failure to pay amounts owed for Kiosks manufactured for, and delivered to, the Debtor prior to the petition date, in the amount of $9,437,321.88 [Claim No.

---

[1] The purchaser of the Debtor's assets continues to use Cole Kepro Kiosks in the operation of its business.

42], and (ii) an unsecured claim related to the Debtor's breach of a separate purchase order for the manufacture and sale of additional kiosks, in the amount of $50,104,228.75 [Claim No. 41] (collectively, the "Cole Kepro Claims").

4. No objection has been filed with respect to either of the Cole Kepro Claims and, other than this bankruptcy case, there is no pending litigation between Cole Kepro and the Debtor.

5. Cole Kepro was selected by the Office of the United States Trustee to serve as a member of the Official Committee of Unsecured Creditors (the "Committee") in this case and was subsequently selected by the Committee members to serve as one of its co-chairs.

6. In its capacity as a member of the Committee, Cole Kepro has quietly and constructively worked behind the scenes in an effort to increase the likelihood of a recovery to unsecured creditors in this challenging case. Like all members of the Committee, Cole Kepro takes its fiduciary duties as a committee member seriously, and has devoted significant time and resources in furtherance of the Committee's mandate.

7. Notwithstanding the foregoing, Cole Kepro has been subjected to repeated attacks from the Debtor's former Chief Executive Officer, who abruptly resigned in the middle of the Debtor's court-approved sale process and who, quite appropriately, is subject to investigation by the true fiduciaries in this case for a host of alleged misconduct, both prior to and after the petition date. Cole Kepro will not respond to those attacks other than to say that they are meritless and completely unsubstantiated.

8. The Debtor's former Chief Executive Officer continues to assert, without any support, that alleged claims against Cole Kepro are among the largest assets in this bankruptcy case. Cole Kepro has worked proactively with professionals for the Debtor and the Committee

to address these allegations and, despite their lack of merit, has reached a settlement with such parties, after arms-length negotiations, which is in the process of being documented and submitted for court approval.

9. On August 1, 2023, the Debtor filed the Plan. Cole Kepro generally supports the Plan as the best avenue available to efficiently liquidate estate assets for the benefit of creditors and to address the administrative insolvency that may exist in this case.

### Limited Objection

10. Cole Kepro files this limited objection out of an abundance of caution to object to one specific provision of the Plan. While reserving the Debtor's rights to setoff and recoupment against one or more creditors, *see* Plan, § 3.3, the Plan contains an overly broad injunction against creditors who may hold claims against the Debtor.

11. Specifically, Section 10.1(b) provides that

UPON THE EFFECTIVE DATE, ALL PERSONS AND ENTITIES SHALL BE PERMANTENTLY ENJOINED BY THE AMENDED PLAN FROM (I) COMMENCING OR CONTINUING ANY ACTION, EMPLOYING ANY PROCESS, ASSERTING OR UNDERTAKING AN ACT TO COLLECT, RECOVER, **OR OFFSET**, **DIRECTLY OR INDIRECTLY, ANY CLAIM, RIGHTS, CAUSES OF ACTION, LIABILITIES, OR INTERESTS** IN OR AGAINST ANY PROPERTY DISTRIBUTED OR TO BE DISTRIBUTED UNDER THE AMENDED PLAN, OR TRANSFERRED TO THE CREDITOR TRUST OR THE SECURED CLAIMS TRUST, BASED UPON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY THAT OCCURRED BEFORE THE EFFECTIVE DATE.

*See* Plan, §10.1(b) (emphasis added).

12. The right of setoff is preserved in section 553 of the Bankruptcy Code. 11 U.S.C. § 553. In *Carolco Television, Inc. v. National Broadcasting Co. (In re De Laurentiis Ent. Group, Inc.*, 963 F.2d 1269, 1274 (9th Cir. 1992), the Ninth Circuit Court of Appeals described the right of setoff as a "venerable part of the bankruptcy laws…" that takes precedence of the

discharge set forth in section 1141. Specifically, the court stated:

> We conclude that section 553 must take precedence over section 1141. In reaching this conclusion, we rely not only on the foregoing persuasive authority, but also on the language and structure of section 553 and the policies which underlie it. Section 553 provides that, with listed exceptions not relevant here, "this title does not affect the right of any creditor to offset a mutual debt...." This language not only establishes a right to setoffs in bankruptcy, subject to enumerated exceptions, but seems intended to control notwithstanding any other provision of the Bankruptcy Code. To give section 1141 precedence would be to ignore this language.
>
> Our reading is also consistent with the history of the bankruptcy laws. Setoffs have a long and venerable history, dating back to Roman and English law. Setoffs in bankruptcy are almost as venerable, having been established in England in 1705 and in the United States in 1800. Since that time, setoffs in bankruptcy have been "generally favored," and a presumption in favor of their enforcement exists. Giving precedence to section 1141 would reverse this long-standing presumption. Setoffs would only be allowed if sanctioned in a plan of reorganization. If Congress had intended to make such a major change from the common law, one might expect some indication of that intent in the statute itself. None can be found.
>
> Moreover, the primacy of setoffs is essential to the equitable treatment of creditors. A setoff is allowed as a defense to a claim brought by the debtor against a creditor. The creditor can claim only an amount large enough to offset its debt; it cannot collect anything from the debtor. Absent a setoff, a creditor in NBC's position is in the worst of both worlds: it must pay its debt to the debtor in full, but is only entitled to receive a tiny fraction of the money the debtor owes it. It was to avoid this unfairness to creditors that setoffs were allowed in bankruptcy in the first place.

*Id.* at 1276-77 (internal citations omitted).

13. Although Cole Kepro generally supports confirmation of the Plan, it is compelled to object out of an abundance of caution to the extent that Section 10.1(b), or any other provision of the Plan, seeks to eliminate Cole Kepro's right, under the common law and section 553, to assert an offset or recoupment defense (based on the Cole Kepro Claims or otherwise) with respect to any claims that may ultimately be asserted against it. Such rights must be preserved under the Plan.

**WHEREFORE**, Cole Kepro respectfully requests that: (i) the Plan be denied solely to the extent set forth herein, and (ii) the Court grant such additional relief as it deems equitable.

Respectfully submitted by,

**TAFT, STETTINIUS & HOLLISTER, LLP**

By: /s/ Paul R. Hage
Paul R. Hage (pro hac vice)
27777 Franklin, Suite 2500
Southfield, MI 48034
Phone: (248) 727-1543
phage@taftlaw.com

*Counsel for Cole Kepro International, LLC*

Dated: August 10, 2023

5

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

In re:

CASH CLOUD, INC.,
dba COIN CLOUD

    Debtor.
_____ /

Case No. BK-23-10423-mkn

Chapter 11

**CERTIFICATE OF SERVICE**

    I, Paul R. Hage, do hereby certify that on the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

- ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing uses through the Notice of Electronic Filing automatically generated by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

    Respectfully submitted by,

**TAFT, STETTINIUS & HOLLISTER, LLP**

By: /s/ Paul R. Hage
Paul R. Hage (pro hac vice)
27777 Franklin, Suite 2500
Southfield, MI 48034
Phone: (248) 727-1543
phage@taftlaw.com

*Counsel for Cole Kepro International, LLC*

Dated: August 10, 2023