Electronically Filed
6/17/2022 8:23 AM
Steven D. Grierson
CLERK OF THE COURT

**COMPL**
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135
Telephone:  (702) 388-7171
Facsimile:  (702) 367-1167

*Attorneys for Plaintiff*
*Cash Cloud Inc.*

CASE NO: A-22-854226-C
Department 8

**EIGHTH JUDICIAL DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| CASH CLOUD INC., a Nevada corporation,<br><br>Plaintiffs,<br>vs.<br><br>COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company,<br><br>Defendant. | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT**<br><br>**Exempt from Arbitration: Equitable/Declaratory Relief Requested** |

COMES NOW, Plaintiff Cash Cloud Inc. ("Plaintiff" or "Cash Cloud"), by and through its attorneys, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C. and hereby submits its Complaint against Defendant Cole Kepro International, LLC ("Defendant" or "Cole Kepro") alleging as follows:

**NATURE OF THE ACTION**

1.    This action arises out of Defendant's sale of faulty equipment to Plaintiff Cash Cloud Inc.

2.    In 2021, Cash Cloud purchased over 4,000 digital currency kiosks from Defendant. Unbeknownst to Cash Cloud, the kiosks sold by Defendant to Cash Cloud were defective and they did not function or operate as intended and promised. As a

1

result of the defects in the kiosks, Cash Cloud has suffered substantial harm. Cash Cloud brings this action to seek redress for the harm caused by Defendant.

## PARTIES

3. Plaintiff Cash Cloud Inc. is a Nevada corporation, duly formed under the laws of the State of Nevada. At all times since its formation in 2014, Cash Cloud's principal place of business has been in Clark County, Nevada. Cash Cloud operates under the trade name Coin Cloud. This trade name is registered with Clark County. The trademark Coin Cloud is owned by Cash Cloud.

4. Upon information and belief, Defendant Cole Kepro International, LLC is a limited liability company organized under the laws of the State of Delaware. At all times relevant herein, Cole Kepro's principal place of business is and has been in Clark County, Nevada.

## JURISDICTION AND VENUE

5. The Court has personal jurisdiction over Defendant since Plaintiff's causes of action arise directly from Defendant's conduct within/toward the State of Nevada. *See* NRS 14.065.

6. Venue is proper in the Eighth Judicial District Court. *See* NRS 13.040.

## GENERAL ALLEGATIONS

7. Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency trading industry.

8. Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin and other cryptocurrencies) using ATM-style kiosks. Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's kiosk with digital currency then being sent to the customer's digital currency wallet. Likewise, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud with the kiosk then releasing the corresponding amount of cash to the customer.

9. Defendant has had a multi-year business relationship with Cash Cloud.

2

10. Defendant has sold products to Cash Cloud for years.

11. Each purchase made by Cash Cloud with Defendant is independent of every other purchase Cash Cloud has made with Defendant and the terms of each purchase are independent of the terms of any other purchase between Cash Cloud and Defendant.

12. Defendant has knowledge and understanding of Cash Cloud's business in providing its customers the means to purchase and sell digital currency using kiosks.

13. Defendant produces and sells, among other items, the ATM-style kiosks that allow for the purchase and sale of digital currency to Cash Cloud's customers. Cash Cloud has purchased thousands of such kiosks from Defendant.

14. The digital currency kiosks purchased by Cash Cloud from Defendant are meant to function similar to an automated teller machine (ATM). The kiosk is kept on at all times and must respond to a customer's commands as directed on the touch screen of the kiosk.

15. In February 2021, Cash Cloud agreed to purchase from Defendant 4,080 kiosks (C-2960-01-000-GEN04 Coin Cloud Bitcoin Kiosk With BNR) for over $34,000,000.00.

16. As part of the agreement for the sale of 4,080 digital currency kiosks to Cash Cloud, Defendant promised to deliver fully functional and defect-free digital currency kiosks to Cash Cloud.

17. Production, delivery, and payment terms of the purchase of 4,080 digital currency kiosks were enunciated in the one-page sales quote from February 2021.

18. Specifically, as part of Cash Cloud's purchase of the 4,080 digital currency kiosks, Defendant would produce and deliver approximately 255 kiosks per week. Upon delivery each week, Cash Cloud would then have 45 days to make payment to Defendant for the delivered kiosks. If no delivery of kiosks was made, there would be no obligation to make payment.

19. Lead time for the purchase of the digital currency kiosks was set at 12 weeks.

20. Cash Cloud sent a purchase order for the 4,080 digital currency kiosks to Defendant in February 2021.

21. In April 2021, Defendant agreed to lower the price of the 4,080 kiosks purchased by Cash Cloud.

22. The rights and remedies available to the purchaser of the 4,080 digital currency kiosks belong to Cash Cloud.

23. Aside from the production, delivery, and payment terms agreed to by Cash Cloud and Defendant, no other written terms or conditions were agreed to by Cash Cloud as part of the purchase of the 4,080 digital currency kiosks.

24. Defendant has admitted that the "quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order… was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions."

25. After Cash Cloud agreed to purchase 4,080 digital currency kiosks from Defendant, Defendant commenced its periodic delivery of kiosks to Cash Cloud.

26. Cash Cloud has paid millions dollars to Defendant for the purchased kiosks.

27. No other party has made payment to Defendant for the 4,080 digital currency kiosks purchased by Cash Cloud.

28. Unfortunately, the 4,080 digital currency kiosks purchased by Cash Cloud were defective.

29. The 4,080 digital currency kiosks purchased suffer from a screen defect which interferes with the normal operation of the kiosk, including the use of the kiosk to purchase and/or sell digital currency.

30. As a result of the defects, Cash Cloud has suffered substantial harm and damages, including, but not limited to, repair costs, lost profits, and loss of goodwill.

31. Upon information and belief, in June 2021, Defendant learned of the defect to the 4,080 digital currency kiosks purchased by Cash Cloud.

4

32. Despite learning of the defect in the 4,080 digital currency kiosks purchased by Cash Cloud in June 2021, Defendant did not disclose to Cash Cloud the problem with the kiosks for months.

33. Instead of disclosing the defect in the 4,080 digital currency kiosks when Defendant learned of the same or halting production and/or delivery of the digital currency kiosks to Cash Cloud, Defendant continued to produce and deliver digital currency kiosks to Cash Cloud.

34. Cash Cloud made payments to Defendant for the delivered kiosks.

35. Had Defendant disclosed the defect in the purchased kiosks to Cash Cloud when Defendant learned of the defect (as Defendant had a duty to do), Cash Cloud would not have continued to make substantial payments to Defendant without correction of the defect.

36. Eventually, Cash Cloud learned that the kiosks purchased from Defendant were defective and alerted Defendant that the kiosks were defective.

37. Cash Cloud attempted to resolve the problem with Defendant without resorting to litigation. As of yet, no resolution has been reached.

38. Rather than work with Cash Cloud to remedy the problems caused by its defective kiosks, recently, Defendant unilaterally attempted to initiate arbitration with AAA regarding the sale of 4,080 kiosks to Cash Cloud.

39. No arbitration had or has been agreed to by Cash Cloud in connection with the sale of 4,080 digital currency kiosks. Cash Cloud objects to any arbitration of its dispute with Defendant in connection with the sale of 4,080 digital currency kiosks to Cash Cloud.

40. In an improper effort to support its demand for arbitration, Defendant has submitted to AAA a false set of terms and conditions of the sale of digital currency kiosks.

41. Notwithstanding that Cash Cloud has informed Defendant that the purported terms and conditions upon which Defendant relies upon to justify arbitration

5

were not part of the sale of 4,080 digital currency kiosks, Defendant has improperly attempted to move forward with arbitration.

42. There is no substitute for Cash Cloud's right to litigate in court its dispute with Defendant. As such, equitable/injunctive relief may be necessary to prevent Defendant from circumventing that right, including attempting to move forward with arbitration.

43. In addition to using a false set of terms and conditions to justify arbitration, Defendant is also using such false terms and conditions to limit the type and manner of relief available in connection with the sale of the 4,080 digital currency kiosks. Such purported limitations were never agreed upon and are in violation of Nevada public policy.

44. As a direct and proximate result of Defendant's misconduct, Cash Cloud has suffered substantial damages, for which it now seeks relief from this Court.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

45. Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

46. The agreement between Cash Cloud and Defendant for the purchase of 4,080 digital currency kiosks was a valid and enforceable contract.

47. Defendant has a duty to honor its contractual obligations. Defendant has failed and refused to perform its obligations, including, but not limited to, delivering to Cash Cloud fully functional, defect-free digital currency kiosks.

48. Defendant's breach of contract was material.

49. Cash Cloud's further performance of its contractual obligations was excused by Defendant's breach.

50. As a direct and proximate result of Defendant's breach of contract, Cash Cloud has suffered damages in the amount according to proof, in excess of $15,000.00.

6

Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loos of goodwill.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

51.   Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

52.   Defendant's agreement to sell 4,080 digital currency kiosks to Cash Cloud constitutes a valid and enforceable contract.

53.   Every contract imposes upon the contracting parties a duty of good faith and fair dealing.

54.   Cash Cloud performed its payment obligations to Cole Kepro, including paying millions of dollars for the kiosks purchased from Cole Kepro. To the extent that Cash Cloud failed to perform any of its obligations, such non-performance is excused.

55.   Defendant owed Cash Cloud a duty to perform as promised in a manner which was faithful to the purpose of the contract. Defendant breached that duty.

56.   In dealing with the acts alleged herein, Defendant failed to act in good faith and to the best of its ability, thereby breaching its duty to so conduct itself and denying Cash Cloud its justified expectations.

57.   As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Cash Cloud has been damaged in a sum in excess of $15,000.00. Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

## THIRD CAUSE OF ACTION
### (Breach of Implied Warranties)

58.   Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

59.   Defendant is a merchant of the digital currency kiosks sold to Cash Cloud.

60.   Cash Cloud purchased digital currency kiosks from Defendant.

61. Cash Cloud's purchase of the digital currency kiosks from Defendant are subject to the implied warranties of merchantability and fitness for use/particular purpose.

62. Cash Cloud used the digital currency kiosks in a foreseeable way, namely, to allow Cash Cloud's customers to buy and sell digital currency using the kiosk.

63. The digital currency kiosks sold by Defendant were defective and were unable to function and operate normally and as intended.

64. Cash Cloud relied on Defendant to select parts and components for the kiosks to ensure that the kiosks would perform and function as a digital currency kiosk.

65. Defendant's selected parts and components for the kiosks did not allow for the digital currency kiosks to function and operate normally.

66. As a direct and proximate result of Defendant's breach of implied warranties, Cash Cloud has been damaged in a sum in excess of $15,000.00. Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

**FOURTH CAUSE OF ACTION**
**(Violation of Nevada's Deceptive Trade Practices Act)**

67. Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

68. Cash Cloud and Defendant agreed that the digital currency kiosks would be produced and delivered on a weekly basis. Cash Cloud and Defendant also agreed that Cash Cloud's obligation to pay for the digital currency kiosks would be based on the date of delivery of the digital currency kiosks—namely that Cash Cloud was obligated to pay after the delivery of the digital currency kiosks.

69. In or about June, 2021, before the time that Defendant had fully completed its delivery the 4,080 digital currency kiosks, Defendant learned that the digital currency kiosks being delivered to Cash Cloud were defective. Despite learning of the defective nature of the product, Defendant continued to produce and deliver digital currency kiosks

8

to Cash Cloud and concealed the defect from Cash Cloud until months after Defendant discovered the defect.

70. In concealing this information from Cash Cloud, Defendant failed to disclose material facts from Cash Cloud in connection with the sale of the digital currency kiosks—a violation of Nevada's Deceptive Trade Practices Act.

71. Because Defendant was silent as to the defects in the delivered machines, Cash Cloud continued to make payments to Defendant for the defective digital currency kiosks.

72. Defendant sold the 4,080 digital currency kiosks to Cash Cloud subject only to production, delivery, and payment terms. Cash Cloud purchased the 4,080 digital currency kiosks from Defendant subject only to the same production, delivery, and payment terms.

73. Cash Cloud did not purchase and Defendant did not sell the 4,080 digital currency kiosks subject to any other terms other than the terms for production, delivery, and payment.

74. Notwithstanding that this purchase was made without being subject to any other terms, Defendant has insisted that the purchase is subject to various other terms, including, but not limited to, terms governing the rights and remedies Cash Cloud has for Defendant's failure to provide functional and defect-free digital currency kiosks. This insistence constitutes a misrepresentation of Cash Cloud's legal rights, obligations, and/or remedies—a violation of Nevada's Deceptive Trade Practices Act.

75. As a direct and proximate result of Defendant's violation of Nevada's Deceptive Trade Practices Act, Plaintiff has been damaged in a sum in excess of $15,000.00. Cash Cloud's damages include, but are not limited to, costs of repair, lost profits, and loss of goodwill.

76. Defendant's actions were oppressive, fraudulent, and/or malicious and thus Cash Cloud is entitled to punitive damages.

77. Cash Cloud has been required to obtain the services of an attorney; therefore, Cash Cloud is also entitled to recover its reasonable attorneys' fees and costs against Defendant as allowed by NRS 41.600 and other Nevada law.

78. Due to Defendant's violation of Nevada's Deceptive Trade Practices Act, Cash Cloud seeks all remedies and relief available to it under Nevada's Deceptive Trade Practices Act.

### FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

79. Cash Cloud incorporates each of the allegations contained within the foregoing paragraphs above as though said allegations are fully stated herein.

80. A justiciable controversy has arisen between the parties hereto regarding the rights and obligations of the parties.

81. Genuine disputes exist concerning multiple matters including, but not limited to, the following: (1) whether Cash Cloud agreed to arbitrate a dispute over the sale of 4,080 digital currency kiosks with Defendant; (2) whether Defendant breached its contract for the sale of 4,080 digital currency kiosks with Cash Cloud; and (3) whether Defendant breached implied warranties for the 4,080 digital currency kiosks sold to Cash Cloud.

82. Based upon the foregoing dispute and controversy, Plaintiff respectfully requests a declaration from this Court that Cash Cloud did not agree to arbitrate disputes concerning the purchase of 4,080 digital currency kiosks with Defendant, that Defendant breached its contract for the sale of 4,080 digital currency kiosks with Cash Cloud, and that Defendant breached implied warranties for the 4,080 digital currency kiosks sold to Cash Cloud.

WHEREFORE, Cash Cloud prays for judgment against Defendant as follows:

1. For general, special, and punitive damages in excess of $15,000.00.
2. For declaratory relief as requested;
3. For injunctive relief as appropriate;

10

4. For interest at the maximum amount available under Nevada law;

5. For reasonable attorney's fees and costs; and

6. For any other relief this Court finds just and proper.

DATED this 17th day of June, 2022.

               THE JIMMERSON LAW FIRM, P.C.

               */s/ James M. Jimmerson, Esq.*
               JAMES J. JIMMERSON, ESQ.
               Nevada State Bar No. 00264
               JAMES M. JIMMERSON, ESQ.
               Nevada State Bar No. 12599
               415 South Sixth Street, Suite 100
               Las Vegas, Nevada 89101
               Telephone: (702) 388-7171
               Facsimile: (702) 367-1167

               *Attorneys for Plaintiff Cash Cloud Inc.*