Electronically Filed
6/24/2022 4:14 PM
Steven D. Grierson
CLERK OF THE COURT

**MOT**
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135
Telephone:    (702) 388-7171
Facsimile:    (702) 367-1167

*Attorneys for Plaintiff*
*Cash Cloud Inc.*

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## EIGHTH JUDICIAL DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC., a Nevada corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company,<br><br>       Defendant. | Case No.: A-22-854226-C<br>Dept. No.: XXI<br><br>**PLAINTIFF'S MOTION FOR <u>DECLARATORY JUDGMENT AND FOR STAY OF ARBITRATION PROCEEDINGS</u>**<br><br>**Hearing Requested** |

COMES NOW Plaintiff, Cash Cloud Inc. ("Plaintiff" or "Cash Cloud"), by and through its attorneys of record, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C., and respectfully submits this Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion").

/ / /

/ / /

/ / /

i

The Motion is based on the papers and pleadings on file in this action, the following memorandum of points and authorities, the declarations of James M. Jimmerson, Esq., Jeffrey L. Garon, and David Ellingson, the exhibits attached hereto, and any argument made by counsel during the hearing on the Motion.

DATED this 24th day of June, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Cash Cloud Inc.*

ii

## DECLARATION OF DAVID ELLINGSON

I, David Ellingson, pursuant to NRS 53.045, declare under penalty of perjury, the following:

1.    I am currently the Director of Legacy Fleet of Cash Cloud Inc. ("Cash Cloud"), and have been since approximately November 2021.

2.    I have personal knowledge of the matters contained herein and am competent to testify thereto, except for those matters stated upon information and belief, and to those matters, I believe them to be true.

3.    This Declaration is made in support of Cash Cloud Inc.'s Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion").

4.    Cash Cloud is a Nevada corporation based in Las Vegas specializing in the retail purchase and sale of digital currency (commonly known as cryptocurrency). Retail purchase and sale of digital currency is effectuated using kiosks (commonly known as "bitcoin ATMs").

5.    Cash Cloud does business under the fictitious name "Coin Cloud."

6.    As the Director of Legacy Fleet, I am in charge of Cash Cloud's fleet of bitcoin ATMs. My responsibilities include the maintenance and upkeep of Cash Cloud's bitcoin ATMs, design of bitcoin ATMs and individual parts, and ordering of the same.

7.    Prior to becoming Cash Cloud's Director of Legacy Fleet, I was Cash Cloud's Director of Manufacturing from the end of 2019 until becoming the Director of Legacy Fleet in approximately November 2021.

8.    As Cash Cloud's Director of Manufacturing, my responsibilities included overseeing quality assurance of Cash Cloud's bitcoin ATMs, preparing Cash Cloud's purchase orders for bitcoin ATMs and parts, communicating with Cash Cloud's suppliers, including from Defendant Cole Kepro International, LLC ("Cole Kepro"), receiving and reviewing sales quotes and invoices from Cash Cloud's suppliers, including from Cole Kepro, and assisting with the design of bitcoin ATMs as well as for individual parts.

1

9. As Cash Cloud's Director of Manufacturing, I was the person who interacted, spoke, and negotiated with Cole Kepro for Cash Cloud's bitcoin ATM orders, as well as other orders. My primary contacts at Cole Kepro were Rick Durica, Cole Kepro's Vice President of Sales, and Andrew Cashin, Cole Kepro's President and Chief Financial Officer.

10. While I was Cash Cloud's Director of Manufacturing, Cole Kepro sent all of their Sales Quotes for bitcoin ATMs to me.

11. Cash Cloud's purchases are generally reflected in purchase orders submitted to Cole Kepro using Cash Cloud's fictitious firm name, Coin Cloud. All purchases of equipment from Cole Kepro that I have been involved in have been made by and on behalf of Cash Cloud.

12. Each purchase made by Cash Cloud with Cole Kepro has been independent from any other purchase Cash Cloud has made with Cole Kepro. The terms of each purchase are independent of the terms of any other purchase between Cash Cloud and Cole Kepro.

13. On December 30, 2019, Mr. Durica of Cole Kepro emailed me two Sales Quotes for Cash Cloud's earlier-generation bitcoin ATMs.

14. On December 30, 2019, at 2:39 p.m., Mr. Durica of Cole Kepro emailed me a Sales Quote for "Coin Cloud Bitcoin Kiosk[s]". *See* Exhibit 1, which contains a true and correct copy of this email. This Sales Quote was numbered "3950-0." *See* Exhibit 2, which contains a true and correct copy of this Sales Quote.

15. Sales Quote No. 3950-0 was contained on a single page. *See id.* The only terms and conditions for this Sales Quote were the production/delivery/payment terms on that page. *See id.*

16. On December 30, 2019, at 3:14 p.m., Mr. Durica of Cole Kepro emailed me a modified Sales Quote for "Coin Cloud Bitcoin Kiosk[s]" (which added the price for orders of 10 units per order). *See* Exhibit 3, which contains a true and correct copy of

this email. This Sales Quote was numbered "3950-1." *See* Exhibit 4, which contains a true and correct copy of this Sales Quote.

17. Sales Quote No. 3950-1 was contained on a single page. *See id.* Again, the only terms and conditions for this Sales Quote were the production/delivery/payment terms on that page. *See id.*

18. At no point during my discussions with Cole Kepro, including with Messrs. Durica and Cashin, leading up to the eventual purchase of the "Coin Cloud Bitcoin Kiosk[s]" contained in Cole Kepro's Sales Quote Nos. 3950-0 and 3950-1 did anyone from Cole Kepro state that any other terms or conditions were part of those Sales Quotes.

19. In January 2020, Cash Cloud agreed to the offer contained in Cole Kepro's Sales Quote 3950-1 for "Coin Cloud Bitcoin Kiosk[s]."

20. On February 16, 2021, Mr. Durica of Cole Kepro emailed me two Sales Quotes for Cash Cloud's 4th Generation bitcoin ATMs.

21. On February 16, 2021, at 3:14 p.m., Mr. Durica of Cole Kepro emailed me a Sales Quote for "C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR". *See* Exhibit 5, which contains a true and correct copy of this email. This Sales Quote was numbered "4275-0." *See* Exhibit 6, which contains a true and correct copy of this Sales Quote.

22. In accordance with Cole Kepro's pattern and practice for sales quotes for bitcoin kiosks, Sales Quote No. 4275-0 was contained on a single page. *See id.* Again, in accordance with Cole Kepro's pattern and practice for sales quotes for bitcoin kiosks, the only terms and conditions for this Sales Quote were the production/delivery/payment terms on that page. *See id.*

23. On February 16, 2021, at 3:37 p.m., Mr. Durica of Cole Kepro emailed me a modified Sales Quote for "C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR" (which modified the price per unit to $8,575.00). *See* Exhibit 7, which contains a true and correct copy of this email. This Sales Quote was numbered "4275-1." *See* Exhibit 8, which contains a true and correct copy of this Sales Quote.

24.     In accordance with Cole Kepro's pattern and practice for sales quotes for bitcoin kiosks, Sales Quote No. 4275-1 was contained on a single page. *See id.* Again, in accordance with Cole Kepro's pattern and practice for sales quotes for bitcoin kiosks, the only terms and conditions for this Sales Quote were the production/delivery/payment terms on that page.

25.     At no point during my discussions with Cole Kepro, including with Messrs. Durica and Cashin, leading up to the eventual purchase of the "C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR" contained in Cole Kepro's Sales Quote Nos. 4275-0 and 4275-1 did anyone from Cole Kepro state that any other terms or conditions were part of those Sales Quotes.

26.     Neither of Sales Quote Nos. 4275-0 and 4275-1 included any terms and conditions beyond the production/delivery/payment terms reflected on each one-page sales quote. Neither of Sales Quote Nos. 4275-0 and 4275-1 included any provision for the arbitration of disputes between Cash Cloud and Cole Kepro.

27.     Cash Cloud agreed to purchase 4,080 of the 4th Generation kiosks for the $8,575.00 per unit price (totaling $34,986,000.00), consistent with quote number 4275-1. *See* Exhibit 9.

28.     The purchase order for 4,080 4th Generation kiosks was emailed to Andrew Cashin at Cole Kepro on February 26, 2021. *See* Exhibit 10. In response, Mr. Cashin emailed back on February 26, 2021, stating, "Thank you very much. We've all worked very hard to get to this point. Now we have to execute at this next level. We're on it." *See* Exhibit 11.

29.     Approximately eight weeks later, after further discussions with Cole Kepro, Cole Kepro offered to sell the 4th Generation kiosks at a slightly lower price to Cash Cloud ($8,464.00 per unit). Again, in accordance with Cole Kepro's pattern and practice for sales quotes for bitcoin kiosks, Cole Kepro's offer to sell the 4th Generation kiosks at the slightly lower price did not include any provision for arbitration of disputes between Cash Cloud and Cole Kepro. *See* Exhibit 12.

30.     While Cole Kepro did send Cash Cloud other – non-kiosk – offers that did contain terms and conditions, those non-kiosk offers were provided in a different format. Rather than the "Sales Quote" offer that Cole Kepro used for kiosks, Cole Kepro's offers containing terms and conditions were provided via a "Quote Letter."

31.     A true and correct copy of a Cole Kepro "Quote Letter" offer containing terms and conditions is contained in Exhibit 13.

32.     Exhibit 13 contains Cole Kepro's "RFQ No. 2021-160," dated May 10, 2021. *See id.*  This offer was for the production of a part, the "ACUPWR 200-Watt Step-Down Transformer (AD-200IEC)."  *See id.*

33.     The Quote Letter for RFQ No. 2021-160 is 3 pages long.   Each page contains an identification of the individual page number on the bottom right-hand corner, such as:

Page 1 of 3

*Id.* at 1

34.     The terms and conditions for RFQ No. 2021-160 are contained on pages 2 and 3.  *See id.* at 2-3.


I declare that the foregoing is true and correct under penalty of perjury under the laws of the State of Nevada.


Executed this 24th day of June, 2022.


_/s/_ David Ellingson
DAVID ELLINGSON

### DECLARATION OF JEFFREY L. GARON

I, Jeffrey L. Garon, pursuant to NRS 53.045, declare under penalty of perjury, the following:

1.    I am the Chief Financial Officer and Co-President of Cash Cloud Inc. ("Cash Cloud").  I also serve as Treasurer, Corporate Secretary, and as a Director of Cash Cloud.

2.    I have personal knowledge of the matters contained herein and am competent to testify thereto, except for those matters stated upon information and belief, and to those matters, I believe them to be true.

3.    This Declaration is made in support of Cash Cloud Inc.'s Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion").

4.    Cash Cloud is a Nevada corporation based in Las Vegas specializing in the retail purchase and sale of digital currency (commonly known as cryptocurrency).  Retail purchase and sale of digital currency is effectuated using kiosks (commonly known as "bitcoin ATMs").  As a result of its knowledge, effort, and tenure in the market, Cash Cloud is widely known as a leader in the retail digital currency trading industry.

5.    Cash Cloud operates under the fictitious firm name "Coin Cloud," registered with Clark County.

6.    Cash Cloud also owns two federally registered trademarks using the name Coin Cloud: (1) the word mark Coin Cloud; and (2) the combination mark (i.e., logo) for Coin Cloud.

7.    Coin Cloud LLC is a Nevada limited liability company who has one owner in common with Cash Cloud, Christopher McAlary, who also serves as a manager of Coin Cloud LLC.  At Mr. McAlary's request, I have assisted him in maintaining Coin Cloud LLC's registration with the Nevada Secretary of State.  Notwithstanding its status in good standing with the Nevada Secretary of State, Coin Cloud LLC does not conduct active business operations and has not done so for several years.  Coin Cloud LLC had no active business operations in 2021.

1

8.    Cash Cloud has made several purchases of equipment for its business from Defendant Cole Kepro International, LLC ("Cole Kepro"). The purchases are generally reflected in purchase orders submitted to Cole Kepro using Cash Cloud's fictitious firm name, Coin Cloud. All purchases of equipment from Cole Kepro that I have been involved in have been made by Cash Cloud and payments for the same have come from Cash Cloud's bank account.

9.    Each purchase made by Cash Cloud with Cole Kepro is independent of every other purchase Cash Cloud has made with Cole Kepro and the terms of each purchase are independent of the terms of any other purchase between Cash Cloud and Cole Kepro.

10.    In February 2021, Cash Cloud agreed to purchase 4,080 4th Generation Cole Kepro kiosks ("C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR") from Cole Kepro for a total price of $34,986,000.00.

11.    On February 16, 2021, Rick Durica of Cole Kepro sent Cash Cloud two sales quotes for the 4th Generation kiosks: one for $8,550.00 per kiosk and one for $8,575.00 per kiosk (the latter of which reflected an updated price for speakers and harness). Neither of these sales quotes included any terms and conditions beyond the production/delivery and payment terms reflected on each one-page sales quote. Neither of these sales quotes included any provision for the arbitration of disputes between Cash Cloud and Cole Kepro.

12.    Cash Cloud agreed to purchase 4,080 of the 4th Generation kiosks for the $8,575.00 per unit price (totaling $34,986,000.00), consistent with quote number 4275-1 (a true and accurate copy of which is attached to the Motion as Exhibit 8). On February 26, 2021, I signed a signed purchase order for Cash Cloud's purchase of 4,080 4th Generation kiosks for $34,986,000.00 (a true and accurate copy of which is attached to the Motion as Exhibit 9). Lead time for the production/delivery of the kiosks was 12 weeks.

13. The purchase order for 4,080 4th Generation kiosks was emailed to Andrew Cashin at Cole Kepro on February 26, 2021 (a true and accurate copy of the email is attached to the Motion as Exhibit 10). In response, Mr. Cashin emailed back on February 26, 2021, stating, "Thank you very much. We've all worked very hard to get to this point. Now we have to execute at this next level. We're on it." A true and correct copy of Mr. Cashin's February 26, 2021 email is attached to the Motion as Exhibit 11.

14. Approximately eight weeks later, after further discussions with Cole Kepro, Cole Kepro offered to sell the 4th Generation kiosks at a slightly lower price to Cash Cloud ($8,464.00 per unit). Cole Kepro's offer to sell the 4th Generation kiosks at the slightly lower price did not include any provision for arbitration of disputes between Cash Cloud and Cole Kepro. On April 30, 2021, I executed a purchase order for the 4,080 4th Generation kiosks for a total price of $34,533,120.00 (a true and accurate copy of the email is attached to the Motion as Exhibit 12).

15. While this purchase order was on Cash Cloud's letterhead including the registered trademarked Coin Cloud logo, the purchase order mistakenly said that the purchaser was Coin Cloud LLC, not Cash Cloud. Notwithstanding this error, Coin Cloud LLC did not purchase the 4,080 4th Generation kiosks from Cole Kepro. Coin Cloud LLC did not take delivery of the 4,080 4th Generation kiosks from Cole Kepro. Coin Cloud LLC did not make payments for the 4,080 4th Generation kiosks from Cole Kepro. Cash Cloud purchased the 4,080 4th Generation kiosks from Cole Kepro. Cash Cloud took delivery of the 4,080 4th Generation kiosks from Cole Kepro. Cash Cloud made payments from its bank account for the 4,080 4th Generation kiosks from Cole Kepro.

16. Cash Cloud, not Coin Cloud LLC, possesses the rights and remedies available to the purchaser of the 4,080 4th Generation kiosks from Cole Kepro.

17. Cash Cloud's purchase of the 4,080 4th Generation kiosks from Cole Kepro did not include any agreement to arbitrate disputes between Cash Cloud and Cole

Kepro.  Cash Cloud has not agreed and does not agree to arbitrate its dispute with Cole Kepro concerning the purchase of 4,080 4th Generation kiosks from Cole Kepro.

18.    Later in 2021, Cash Cloud discussed a potential purchase of a new line of kiosks called "Spanners" from Cole Kepro.

19.    On August 17, 2021, Rick Durica emailed me (and others) a proposal for the purchase of 10,000 Spanner kiosks.  This proposal did not include any provision for arbitration and did not include the two-page set of terms and conditions attached to Andrew Cashin's November 1, 2021 email to me.

20.    On August 26, 2021, I signed a purchase order for Cash Cloud's purchase of 10,000 Spanner kiosks for $10,000 per unit (a true and accurate copy of which is attached to the Motion as Exhibit 14).  Like the February 26, 2021 purchase order, the August 26, 2021 purchase order was made on Cash Cloud's letterhead including the Coin Cloud logo.

21.    On November 1, 2021, Andrew Cashin of Cole Kepro emailed me requesting that I "confirm the following purchase order for $100,000,000.00."  Included in this email was an attachment of the two-page .pdf of terms and conditions, which Mr. Cashin acknowledged was not included in the sales quote for the Spanners, but that Cole Kepro wished to be part of the purchase of the Spanners.  In response to this email, I confirmed the purchase order.

22.    At no point in time did Cash Cloud agree that all of Cash Cloud's purchases of Cole Kepro's products would be subject to the terms and conditions attached to Mr. Cashin's November 1, 2021 email.

23.    At no point in time did Cash Cloud agree that its purchase of 4,080 4th Generation kiosks would be subject to the terms and conditions attached to Mr. Cashin's November 1, 2021 email.

24.    Indeed, I certainly could not and did not agree that the two-page .pdf of terms and conditions had, in the past, been included in all sales quotes because Cole

1   Kepro had not included the two-page .pdf of terms and conditions in all prior sales quotes

2   to Cash Cloud.

3          25.    A dispute has arisen between Cash Cloud and Cole Kepro concerning the

4   purchase of 4,080 4th Generation kiosks.  Cole Kepro issued a demand for arbitration

5   dated May 27, 2022 concerning multiple purchase orders, including Cash Cloud's

6   purchase of 4,080 4th Generation kiosks from Cole Kepro (a true and accurate copy of

7   which is attached to the Motion as Exhibit 15).

8          26.    Because Cash Cloud has never agreed to arbitrate any dispute concerning

9   its purchase of 4,080 4th Generation kiosks with Cole Kepro, Cash Cloud is pursuing its

10  remedies before this Court.  However, because the arbitration organization selected by

11  Cole Kepro (AAA) has stated that it will move forward with arbitration absent a court

12  order, an order declaring that there is no arbitration agreement between Cash Cloud

13  and Cole Kepro concerning the purchase of 4,080 4th Generation kiosks and staying the

14  arbitration concerning the purchase of 4,080 4th Generation kiosks is needed.

15         I declare that the foregoing is true and correct under penalty of perjury under the

16  laws of the State of Nevada.

17         Executed this 23rd day of June, 2022.

18

19                                                   _____

20                                                   JEFFREY L. GARON

21

22

23

24

25

26

27

28

## DECLARATION OF JAMES M. JIMMERSON, ESQ.

I, James M. Jimmerson, pursuant to NRS 53.045, declare under penalty of perjury, the following:

1.      I am an attorney at The Jimmerson Law Firm, P.C., counsel for Plaintiff Cash Cloud Inc. ("Cash Cloud") in this matter.  I have personal knowledge of the matters contained herein and am competent to testify thereto, except for those matters stated upon information and belief, and to those matters, I believe them to be true.

2.      This Declaration is made in support of Cash Cloud Inc.'s Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion").

3.      After I was alerted to the issuance of the Demand for Arbitration and the dispute between Cash Cloud and Defendant Cole Kepro International, LLC ("Defendant" or "Cole Kepro"), I emailed David Adler, counsel for Cole Kepro, requesting a time for a call to discuss the demand for arbitration.  Despite repeated requests for a phone call with Mr. Adler, Mr. Adler refused the requests.  A true and correct copy of the email chain between Mr. Adler and myself between June 1, 2022 and June 9, 2022 is attached to the Motion as Exhibit 16.

4.      Cole Kepro's demand for arbitration includes a 2-page document titled Terms and Conditions, but the terms and conditions are paginated Page 2 of 3 and Page 3 of 3.  Page 1 of the document was not included in the demand for arbitration.  In the emails with Mr. Adler, I requested a copy of the Page 1 from the terms and conditions document included in Cole Kepro's demand for arbitration.

5.      Rather than provide the Page 1 as requested, Mr. Adler stated on June 6, 2022, "the respective Cole Kepro quotes constitute page 1 in each instance." *Id*.

6.      In addition to emailing Mr. Adler directly, I was also in email correspondence with Mr. Adler and a representative of Cole Kepro's chosen arbitration organization, the American Arbitration Association (AAA).  Mr. Adler first copied me on the emails with AAA on June 8, 2022.  In my emails with Mr. Adler and a AAA representative, I reiterated my request for the respective Page 1s.  A true and correct

1

copy of the email chain between Mr. Adler, myself, a AAA representative and others, between June 1, 2022 and June 14, 2022, is attached to the Motion as Exhibit 17.

7.    On June 14, 2022, Mr. Adler reversed his position concerning the Page 1s and admitted that the "quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order attached to my email below was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions." *Id*.

8.    Notwithstanding this admission, Mr. Adler claimed that Jeffrey Garon had agreed to the terms and conditions for the purchase of the 4,080 4th Generation kiosks through a November 1, 2021 email.  A true and correct copy of Mr. Adler's June 14, 2022 email, attaching two other emails (from Andrew Cashin and Jeffrey Garon) is attached to the Motion as Exhibit 18.

9.    A true and correct copy of the November 1, 2021 email from Andrew Cashin attached to Mr. Adler's June 14, 2022 email is attached to the Motion as Exhibit 19.  In Mr. Cashin's November 1, 2021 email, there were multiple attachments.  One of the attachments was a .pdf titled "Terms," a true and correct copy of which is attached to the Motion as Exhibit 20.  Another of the attachments is a .pdf of the purchase order of the Spanner kiosks, a true and correct copy of which is attached to the Motion as Exhibit 14.

10.    A true and correct copy of the November 1, 2021 email from Jeffrey Garon attached to Mr. Adler's June 14, 2022 email is attached to the Motion as Exhibit 21.

11.    What is clear from the November 1, 2021 emails is that Mr. Garon was only addressing the August 2021 purchase order for Spanner kiosks, not the earlier purchase of 4,080 4th Generation kiosks—a transaction that was never mentioned or referenced by Mr. Cashin or Mr. Garon in the November 1, 2021 emails.

12.    On June 17, 2022, an introductory call was conducted between AAA representatives, counsel for Cash Cloud, counsel for Cole Kepro, and counsel for Coin Cloud LLC.  During this call, Mr. Adler confirmed that Cole Kepro was seeking to

arbitrate disputes arising from two purchases: (1) the purchase of the 4,080 4th Generation kiosks; and (2) the purchase of the Spanner kiosks.

13.    Also during this call, as stated in earlier emails, I confirmed that Cash Cloud Inc. (not Coin Cloud LLC) was the purchaser of the kiosks from Cole Kepro and that the purchase of the 4,080 4th Generation kiosks was not subject to the terms and conditions contained in the demand for arbitration.

14.    The AAA representative on the call stated, among other things, that arbitration will proceed unless there is a court order staying arbitration.

15.    When the AAA representative on the call presented the parties with options concerning the next steps, all counsel requested the opportunity to consult with their respective clients concerning the options before doing anything else.  After the request was made, a return call was set for June 24, 2022 so that the attorneys could share the results of the discussions with their respective clients.

16.    Because Cash Cloud did not agree to arbitrate disputes with Cole Kepro concerning the purchase of the 4,080 4th Generation kiosks, an order staying arbitration is necessary.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the State of Nevada.

Executed this 24th day of June, 2022.


                                              */s/ James M. Jimmerson, Esq.*
                                              JAMES M. JIMMERSON, ESQ.

3

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.    INTRODUCTION AND STATEMENT OF FACTS**

This action arises out of Defendant Cole Kepro International, LLC's ("Defendant" or "Cole Kepro") sale of faulty equipment to Plaintiff Cash Cloud Inc.  Since its inception in 2014, Cash Cloud has grown to become a recognized leader in the retail digital currency trading industry.  Cash Cloud's business is centered on providing the general public the means to buy and sell digital currency (e.g., Bitcoin) using ATM-style kiosks.  Cash Cloud's customers purchase digital currency by depositing cash (U.S. dollars) in Cash Cloud's kiosk, with digital currency then being sent to the customer's digital currency wallet.  Likewise, Cash Cloud's customers sell digital currency by sending digital currency to Cash Cloud, with the kiosk then releasing the corresponding amount of cash to the customer.

Defendant manufactures, among other items, ATM-style kiosks that allow for the retail purchase and sale of digital currency to Cash Cloud's customers.  Cash Cloud has purchased thousands of such kiosks from Defendant and has maintained a multi-year business relationship with Defendant.

In 2021, Cash Cloud purchased 4,080 4th Generation digital currency kiosks from Defendant.  Unbeknownst to Cash Cloud, these kiosks sold by Defendant to Cash Cloud were defective and they did not function or operate as intended and promised.  These 4,080 digital currency kiosks suffer from a screen defect that interferes with the normal operation of the kiosk, including the use of the kiosk to purchase and/or sell digital currency.  The result of such defects has been substantial financial harm to Cash Cloud.

When Cash Cloud learned of the defect in the 4th Generation kiosks, Cash Cloud attempted to resolve the issue without resorting to litigation.  When such discussions with Defendant were ongoing, Defendant initiated an arbitration proceeding with the American Arbitration Association (AAA) in Texas purportedly to resolve multiple disputes, including those related to Cash Cloud's purchase of 4,080 4th Generation kiosks.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

However, **no agreement to arbitrate exists concerning the purchase of these kiosks**.

On February 16, 2021, Defendant sent Cash Cloud two (2) sales quotes for the potential sale of 4,080 4th Generation kiosks to Cash Cloud (the second quote was updated to include the new price for added speakers and harness). *See* Exhibits 6, 8. Neither of these one-page sales quotes contained any terms or conditions of sale other than the production/delivery and payment terms contained on each sales quote. Neither of these one-page sales quotes contained any proposed agreement to arbitrate any dispute related to the potential purchase of the 4,080 kiosks. On February 26, 2021, Cash Cloud agreed to purchase the 4,080 kiosks from Defendant and sent a purchase order reflecting the same to Defendant's president, Andrew Cashin. *See* Exhibit 9. Under the terms of the sales quote, the lead time for the production/delivery of the kiosks was 12 weeks. *See* Exhibit 8.

Approximately eight weeks after the purchase order was sent, Defendant offered to sell the 4,080 kiosks at a slightly lower (< $100 per unit) price and a subsequent purchase order was issued, finalizing the purchase price of the 4,080 4th Generation kiosks at $34,533,120.00. *See* Exhibit 12. **No agreement to arbitrate disputes arising from this purchase was ever discussed, let alone entered into**. *See* Ellingson Decl. at ¶ 25; Garon Decl. at ¶ 17.

Notwithstanding the absence of any agreement to arbitrate disputes related to the purchase of the 4,080 4th Generation kiosks, on May 27, 2022, Defendant initiated an arbitration proceeding with AAA, claiming that the arbitration was being commenced pursuant to an arbitration provision contained in a two-page set of purported terms and conditions. *See* Exhibit 15.[1] The demand for arbitration, however, does not present any document that connects Cash Cloud's agreement to purchase the 4,080 4th Generation

---

[1] The demand for arbitration identifies the respondent as Coin Cloud LLC rather than Cash Cloud Inc. As detailed in the Declaration of Jeffrey Garon, Cole Kepro's sale of the 4,080 4th Generation kiosks was to Cash Cloud Inc., not Coin Cloud LLC (as was the proposed purchase of the Spanner kiosks discussed below). This issue has been communicated to Defendant's counsel.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1    kiosks to the two-page set of purported terms and conditions upon which Defendant based

2    its demand for arbitration.    Indeed, the two-page terms and conditions document

3    presented to AAA contained page numbers on the bottom right, "Page 2 of 3" and "Page

4    3 of 3," demonstrating that those pages would be part of a three-page document.  *Id*.

5    After reviewing the demand for arbitration, the undersigned emailed Defendant's

6    counsel, David Adler, on Friday, June 3, 2022, alerting him that Page 1 appeared to be

7    missing from the demand for arbitration, in the hope for clarification of what Page 1 was.

8    *See* Exhibit 16 ("I believe a call would be helpful concerning this matter. Among other

9    items to discuss, there appears to be a page missing from the demand (there are pages 2

10   and 3 but no page 1)").  Mr. Adler responded the following Monday, June 6, 2022 stating,

11   "the respective Cole Kepro quotes constitute page 1 in each instance." *Id*.  This statement

12   by Defendant's counsel is verifiably false.  Within days of Cash Cloud's attorney learning

13   of the demand for arbitration and reaching out to discuss the demand, Defendant's

14   counsel made a demonstrably false statement to the undersigned.[2]

15        In the following days, Cash Cloud reviewed its records, including the

16   correspondence between Cash Cloud and Defendant concerning the purchase of the 4,080

17   4th Generation kiosks.  The results of the review were clear.  The purported terms and

18   conditions attached to the demand for arbitration were never part any sales quote,

19   proposal, purchase order, or agreement for the purchase of the 4,080 4th Generation

20   kiosks.  On June 14, 2022, just ten days ago, Mr. Adler was confronted about his failure

21   to address critical concerns about the transmission (or lack thereof) of the terms and

22   conditions upon which Defendant is basing its initiation of arbitration.  Defendant's

23   counsel's response: an admission that the terms and conditions were not attached,

24   communicated, or otherwise transmitted to Cash Cloud as part of the sales quote for the

25   4,080 4th Generation kiosks.  Mr. Adler stated, "Cole Kepro concedes that the quote letter

26   corresponding with Coin Cloud's $34,533,120.00 purchase order attached to my email

27

28   _____
     [2] As detailed in the Declaration of James M. Jimmerson, Esq. above, Mr. Adler refused the
     undersigned's requests to have a phone call about this matter.

                                        3

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

below was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions…" Exhibit 17.  In other words, **the so-called Page 1 was not the sales quote for the 4,080 kiosks that Mr. Adler stated it was just eight days earlier**.[3] In fact, none of the sales quote for the two purchases at issue in the arbitration (the 4,080 4th Generation kiosk purchase and the 10,000 Spanner kiosk purchase) was presented to Cash Cloud alongside the terms and conditions as Mr. Adler represented.

What Cash Cloud's records reflect is that the "Page 1" is a document ordinarily entitled "Quote Letter," which is different from a "Sales Quote" in several obvious respects: (1) it has at the bottom right of the page, the words "Page 1 of 3" (pagination which is missing in sales quotes); (2) it is followed by the terms and conditions that Defendant relies upon (terms and conditions which are not part of the sales quotes at issue in this action); and (3) it is presented in the portrait orientation, not landscape (the sales quotes for the 4,080 kiosks were both in landscape).  *See, e.g.,* Exhibit 13.

While Defendant has now admitted that the two-page terms and conditions document did not accompany the sales quotes for the 4,080 4th Generation kiosks, Defendant has now attempted to justify, after-the-fact, its initiation of arbitration claiming, "Mr. Garon expressly ratified in November 2021 the parties' understanding that of course the terms and conditions applied to all quotes." Exhibit 17.  Once again, Defendant misstates the facts.

As detailed in the Declaration of Jeffrey Garon above, the two-page terms and conditions document was never part of the purchase of the 4,080 4th Generation kiosks. To the contrary, Mr. Garon's November 1, 2021 correspondence with Mr. Cashin was completely unrelated to the purchase of the 4,080 faulty kiosks that occurred months

---

[3] Mr. Adler's June 6, 2022 misrepresentation concerning Page 1 is significant regardless of whether such misrepresentation was made intentionally or not.  If Mr. Adler made the statement knowing that it was false, such misconduct would have far-reaching implications both within this action and beyond.  If Mr. Adler did not know that his statement was false when he made it, it would mean that Defendant mistakenly initiated arbitration based on a false premise and that Defendant's effort to maintain arbitration would be nothing more than a manufactured justification after the false premise had been revealed.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

earlier.  Indeed, Mr. Cashin's November 1, 2021 email requests that Mr. Garon "confirm the following purchase order for $100,000,000.00."  The purchase order to which Mr. Cashin referred (and which was attached to his November 1, 2021 email), was the purchase order for 10,000 Spanner kiosks, signed on August 26, 2021, months after the purchase of the 4,080 4th Generation kiosks.  *See* Exhibits 14, 19.  The purchase of the 4,080 4th Generation kiosks was never referenced or addressed in the November 1, 2021 emails which Mr. Adler attached to his June 14, 2022 email.

Defendant appears to base its ratification argument on Mr. Cashin's statement in his November 1, 2021 email, "Rick and I quoted $10,430 x 10,000 kiosks but Rick didn't include our standard Terms and conditions page which is included on all quotes."  Exhibit 19.  This statement does not assist Defendant, and, in fact, confirms that the November 1, 2021 correspondence addressed only the Spanner kiosk negotiations.[4]  Mr. Cashin's statement that the "standard Terms and conditions page which is included on all quotes," does not alter this analysis.  First, Mr. Cashin's November 1, 2021 statement concerning the terms and conditions is in the present tense ("is"), not the past tense, which reflects Cole Kepro's apparent policy to include the terms and conditions on all quotes as of November 1, 2021, not before.  Second, even if Defendant intended to refer to all Cash Cloud quotes prior to November 1, 2021, that would be a false statement because Defendant repeatedly sent sales quotes to Cash Cloud without including the so-called "standard terms and conditions."[5]  Obviously, there could be no ratification of a demonstrably false statement.  Third, if Mr. Cashin intended for Mr. Garon to confirm a purported agreement that the terms and conditions attached to his November 1, 2021 email would retroactively apply to all prior purchases made by Cash Cloud, not just for the purchase order of the 10,000 Spanner kiosks, Mr. Cashin would have said so.  He did not.  And he did not do so because there was no such agreement.

---

[4] The purchase order for the Spanner kiosks reflected an order for 10,000 Spanner kiosks, not the 4,080 4th Generation kiosks which are at issue in this action.

[5] In fact, it appears that Defendant's largest sales of equipment to Cash Cloud did not include the terms and conditions attached to Mr. Cashin's November 1, 2021 email.  *See* Exhibits 2, 4, 6, 8.

Defendant's admission that the terms and conditions were not included with the sales quote for the 4,080 4th Generation kiosks is dispositive to this matter and confirms that the terms and conditions included in the AAA demand for arbitration do not apply to the purchase of the 4,080 4th Generation kiosks. The terms and conditions document expressly states that the terms and conditions are to be supplied alongside the quotation or proposal from Defendant. *See* Exhibit 15 ("'Quotation' shall mean that certain quotation or proposal from Cole Kepro **issued herewith**, which is hereby incorporated by reference for all purposes.") (emphasis supplied). That is why the terms and conditions document is paginated the way it is, because, by its very terms, it requires a first page containing the quote for the potential sale. The Court should reject Defendant's improper effort to retroactively apply the terms and conditions to the sale of the 4,080 defective kiosks when Defendant did not even comply with process enunciated in its own terms and conditions document.

The evidence is clear that there was no agreement to arbitrate disputes arising from Cash Cloud's purchase of 4,080 4th Generation kiosks from Defendant. Defendant's effort to maintain arbitration of such a dispute is inappropriate (as is the effort to engraft upon this purchase the additional terms and conditions beyond the arbitration provision in Defendant's two-page terms and conditions document). Because Defendant has insisted on including in its arbitration a dispute over the 4,080 faulty kiosks, the Court should find that no agreement to arbitrate that dispute exists and issue an order staying this portion of the arbitration proceeding.

## II.    LEGAL ARGUMENT

### A.  **Legal Standard**

The Court is familiar with the legal standard governing motions for declaratory judgment. NRCP 57 states in pertinent part:

> The procedure for obtaining a declaratory judgment pursuant to statute, shall be in accordance with these rules, ... The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. **The court may order a speedy hearing of an**

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

**action for a declaratory judgment and may advance it on the calendar**.

*Id*. (emphasis supplied).

Concerning a motion to resolve a dispute over the existence of an agreement to arbitrate, the Court is tasked with deciding whether any such agreement exists and, if no such agreement exists, the Court may not order the parties to proceed to arbitration. NRS 38.221 states in relevant part:

> 2. On motion of a person alleging that an arbitral proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue.
>
> ***
>
> 4. **If the court finds that there is no enforceable agreement, it may not, pursuant to subsection 1 or 2, order the parties to arbitrate**.

*Id*. (emphasis supplied).

An order staying arbitration is appropriate when no agreement to arbitrate exists. The Ninth Circuit, in affirming an order staying arbitration, explained, "While recognizing that federal policy favors the enforcement of arbitration agreements, this court has maintained that the issue of arbitrability is ultimately to be determined by the contract entered into by the parties." *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984).

Importantly, the party seeking to enforce an arbitration agreement—in this case Defendant Cole Kepro—has the burden of persuading the Court that an agreement to arbitrate exists in the first instance. *See Obstetrics & Gynecologists William G. Wixted, M.D., Patrick M. Flanagan, M.D., William F. Robinson, M.D. Ltd. v. Pepper*, 101 Nev. 105, 107, 693 P.2d 1259, 1260 (1985) ("Since appellant set up the existence of the agreement to preclude the lawsuit from proceeding, it had the burden of showing that a binding agreement existed. After reviewing the facts, we cannot say that the district court erred in finding that appellant did not sustain that burden."). As demonstrated herein, Defendant cannot meet this burden.

7

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

### B. <u>Cash Cloud Never Entered Into an Arbitration Agreement Concerning its Purchase of the 4,080 4th Generation Kiosks</u>

Defendant admits that the two-page terms and conditions document was never supplied to Cash Cloud as part of the sales quotes for the proposed sale of 4,080 4th Generation kiosks from Defendant.  *See* Exhibit 17.  One-page sales quotes were supplied by Defendant and one-page purchase orders were issued reflecting the purchase of the 4,080 4th Generation kiosks.  *See* Exhibits 6, 8, 9, 12.  None of those documents contained any arbitration provision or other agreement to arbitrate disputes over the sale.  *Id*.  As such, the Court must find that no agreement to arbitrate disputes concerning that purchase exists.

As this Court knows, "arbitration is fundamentally a matter of contract." *Principal Investments v. Harrison*, 132 Nev. 9, 14-15, 366 P.3d 688, 692-93 (2016).  "Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." *Id*. (citations omitted).  Consistent with the foregoing, Nevada's Uniform Arbitration Act provides for arbitration of matters when there is a written arbitration agreement, *i.e.*, "an agreement contained in a record to submit to arbitration any existing or subsequent controversy between the parties to the agreement…"  NRS 38.219(1).  "In determining whether a valid arbitration agreement exists, federal courts apply ordinary state-law principles that govern the formation of contracts." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted).

In Nevada, to form a valid contract, there must be, *inter alia*, an offer and acceptance thereof.  *See May v. Anderson,* 121 Nev. 668, 672, 119 P.3d 1254, 1257 (2005).  The acceptance must mirror the offer.  *See, e.g.*, *JSD Properties, LLC v. Grant, Morris, Dodds, PLLC*, No. 74730, 2019 WL 3489469, at *1 (Nev. July 24, 2019) ("For an acceptance to be valid, it must not vary from the initial offer… a contract is formed only when an acceptance corresponds with an offer entirely and adequately.").  In this case, the one-page sales quote for the 4,080 4th Generation kiosks offered to sell to Cash Cloud 4,080 4th Generation kiosks according to express production/delivery and payment terms.

8

THE JIMMERSON LAW FIRM, P.C.

415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101

(702) 388-7171 – fax (702) 387-1167

1   *See* Exhibit 8.  This offer was accepted by virtue of the February 26, 2021 purchase order.

2   *See* Exhibit 9.  The offer to sell the 4,080 4th Generation kiosks and acceptance thereof

3   were both devoid of any arbitration provision or agreement.  *See* Exhibits 8, 9, 12.

4          Knowing that this is the case, Defendant is attempting to retroactively engraft the

5   provisions of the November 1, 2021 terms and conditions document onto the earlier

6   agreement for the purchase of the 4,080 4th Generation kiosks.  This is improper and the

7   Court should reject the same.   As the Court knows, "When the document is clear and

8   unambiguous on its face, the court must construe it from the language therein. *Renshaw*

9   *v. Renshaw*, 96 Nev. 541, 543, 611 P.2d 1070, 1071 (1980); *see also Reno Club v. Young*

10  *Inv. Co.*, 64 Nev. 312, 324-25, 182 P.2d 1011, 1017 (1947) (the court "cannot interpolate

11  a stipulation or words into a contract where such are not implied by anything that

12  appears on the face of the contract and where the surrounding circumstances do not

13  authorize or require a construction of the contract that would import such stipulation or

14  words into it.").

15         Not only is Defendant's after-the-fact effort to add the provisions contained in the

16  terms and conditions document to the sale agreement of the 4,080 4th Generation Kiosks

17  contrary to Nevada law, it is contrary to the express provisions of the purported terms

18  and conditions themselves!  As the Court can discern from its review of the terms and

19  conditions document, the terms and conditions do not specifically identify the details of

20  the sale to which the terms and conditions attach.   Indeed, there is no specific

21  identification of the purchaser, the products, or the price of the sale.  Instead, all of that

22  information is found in the quote which must accompany the terms and conditions.  As

23  stated in the purported terms and conditions, "'Quotation' shall mean that certain

24  quotation or proposal from Cole Kepro **issued herewith**, which is hereby incorporated

25  by reference for all purposes."  Exhibit 15 (emphasis supplied).  This is why the terms

26  and conditions document starts on Page 2—Page 1 is reserved for the quote letter to

27  which the terms and conditions apply.  And without the Page 1 quote letter, the terms

28  and conditions have no discernible meaning because they all hinge on the Quotation.

The terms and conditions document expressly relies upon the details in the Quotation (which must be issued with the terms and conditions), to fill in essential parts of the agreement.  For example, the defined terms, "Purchaser," "Price," and "Products" are all defined by the information contained in the Quotation.  As stated in the terms and conditions document:

> "Purchaser" shall mean the other party signing the Quotation, or submitting a purchase order based on Cole Kepro's Quotation;
>
> "Price" shall mean the price for the Products as currently set out in the Quotation;
>
> "Products" shall mean the Cole Kepro products described in the Quotation;

*Id*.  An image of these definitions is found below:

> "Purchaser" shall mean the other party signing the Quotation, or submitting a purchase order based on Cole Kepro's Quotation;
> "Price" shall mean the price for the Products as currently set out in the Quotation;
> "Products" shall mean the Cole Kepro products described in the Quotation;

*Id*.  And because the defined term "Quotation" means the "certain quotation or proposal from Cole Kepro **issued herewith**, which is hereby incorporated by reference for all purposes," Defendant must, according to the express provisions of the terms and conditions document, supply the terms and conditions along with the quote in order for the provisions of the purported terms and conditions to be included in the agreement to sell the products identified in the quote.  *Id*. (emphasis supplied).  The failure to attach the terms and conditions document to the quote therefore means that the terms and conditions do not and cannot apply to any subsequent sale of the products identified in the sales quote.

Defendant's attempt to use the November 1, 2021 correspondence to retroactively manufacture the appearance of an agreement to subject the sale of the 4,080 4th Generation kiosks to the provisions of the terms and conditions document is without merit.  As detailed above, that correspondence only addressed confirmation of the purchase order of Spanner kiosks—not the 4th Generation kiosks.  Furthermore, Mr.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada  89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1    Cashin's statement that the terms and conditions document **is** included in all quotes only

2    speaks to the then-present inclusion of the terms and conditions on sales quotes, not

3    those in the past.  And even if the statement that the "standard Terms and conditions

4    page which is included on all quotes" could be interpreted as being backward looking, it

5    would be verifiably false.  Any effort to try and establish an agreement to something that

6    is demonstrably false must be rejected as contrary to Nevada law.  As the Court knows,

7    "the law does not countenance absurdities."  *In re Hegarty's Estate*, 45 Nev. 145, 199 P.

8    81, 83 (1921).

9         Finally, the attempt to use the November 1, 2021 statements to subject any sales

10   quote other than the specific sales quote for the 10,000 Spanner kiosks to the provisions

11   of the terms and conditions document must fail as it would run counter to the provisions

12   thereof.  Under the purported terms and conditions document, the all-important defined

13   term "Quotation" means "that **certain** quotation of proposal from Cole Kepro issued

14   herewith…"  Exhibit 15 (emphasis supplied).  By defining quotation to mean a **certain**

15   quotation or proposal, the terms and conditions require Defendant to identify the specific

16   individual quote to which the terms and conditions would attach, and therefore prohibit

17   the application of the terms and conditions document to a broad, unspecified,

18   unidentified, series of prior sales quotes.

19        What is clear is that there is no agreement to arbitrate disputes over the purchase

20   of the 4,080 4th Generation kiosks.  The provisions of the terms and conditions document

21   supplied to AAA, including the arbitration clause contained therein, do not apply to Cash

22   Cloud's purchase of the 4,080 4th Generation kiosks.  While Defendant initially took the

23   position that Page 1 of the terms and conditions of sale document would be the sales

24   quote for the sale of the 4,080 4th Generation kiosks, Defendant then reversed course,

25   admitting that the terms and conditions were **not** supplied with the sales quote for the

26   4,080 4th Generation kiosks. Notwithstanding this admission, Defendant then claimed

27   that there was an agreement in November 2021 where the terms and conditions would

28   be retroactively applied to the purchase of the 4,080 4th Generation kiosks.  However, the

11

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1    November 1, 2021 correspondence referenced by Defendant only addresses the purchase

2    order of 10,000 Spanner kiosks, not the purchase of the 4,080 4th Generation kiosks.

3    Because there is no agreement to arbitrate disputes over the purchase of the 4,080 4th

4    Generation kiosks, this Court should issue declaratory judgment to that effect and order

5    than any portion of an arbitration proceeding concerning the purchase of the 4,080 4th

6    Generation kiosks be stayed.  Without such an order, AAA has indicated that it will move

7    forward with arbitration.  Cash Cloud has a right to seek relief before this Court.  The

8    Court should prevent Defendant from attempting to circumvent that right.

9    **III.    CONCLUSION**

10    Based on the foregoing, Plaintiff Cash Cloud Inc. respectfully requests that the

11    Court find that there is no agreement to arbitrate disputes concerning the purchase of

12    the 4,080 4th Generation kiosks from Defendant, issue declaratory judgment on the same,

13    and issue an order staying any portion of arbitration concerning the purchase of the 4,080

14    4th Generation kiosks from Defendant.

15    DATED this 24th day of June, 2022.

16                                                THE JIMMERSON LAW FIRM, P.C.

17                                                */s/ James M. Jimmerson, Esq.*
                                                JAMES J. JIMMERSON, ESQ.

18                                                Nevada Bar No. 000264
                                                JAMES M. JIMMERSON, ESQ.

19                                                Nevada Bar. No. 12599
                                                415 S. Sixth Street, Suite 100

20                                                Las Vegas, Nevada 89101
                                                (702) 388-7171

21                                                *Attorneys for Plaintiff Cash Cloud Inc.*

22

23

24

25

26

27

28

# EXHIBIT 1

# EXHIBIT 1

From: **Rick Durica** <rick@colekepro.com>
Date: Mon, Dec 30, 2019 at 2:39 PM
Subject: RE: CoinCloud bitcoin kiosk pricing
To: David Ellingson <davide@coincloudnv.com>
Cc: Miles Kidd <miles@coincloudatm.com>, Andrew Cashin <andrew@colekepro.com>

Hello David,

I have attached the updated pricing for the bitcoin kiosk.

This is the design that will be able to accommodate either two bill acceptors or one bill acceptor and one Fujitsu F53 Semi bunch  Bill Dispenser

Please give me a call if there are any questions

Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

1

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at [www.colekepro.com](www.colekepro.com)

 

THE RECOGNIZED LEADER IN GAMING CABINETS™

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at [www.colekepro.com](www.colekepro.com)

**From:** David Ellingson [mailto:[davide@coincloudnv.com](davide@coincloudnv.com)]
**Sent:** Friday, December 27, 2019 11:40 AM
**To:** Rick Durica <[rick@colekepro.com](rick@colekepro.com)>
**Cc:** Miles Kidd <[miles@coincloudatm.com](miles@coincloudatm.com)>; Andrew Cashin <[andrew@colekepro.com](andrew@colekepro.com)>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Thanks Rick looking  forward to seeing the quote.

On Friday, December 27, 2019, Rick Durica <[rick@colekepro.com](rick@colekepro.com)> wrote:

> Hello Dave,
>
> I am getting all of the new components cost and will have the pricing ready on Monday  for your review.
>
> Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

[4170-103 Distribution Circle](#)

[North Las Vegas, Nevada](#)  [89030](#)


702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax


Visit our website at [www.colekepro.com](http://www.colekepro.com)

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**


Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.


Visit our website at [www.colekepro.com](http://www.colekepro.com)


**From:** David Ellingson [mailto:[davide@coincloudnv.com](mailto:davide@coincloudnv.com)]
**Sent:** Monday, December 23, 2019 11:14 AM
**To:** Rick Durica <[rick@colekepro.com](mailto:rick@colekepro.com)>
**Cc:** Miles Kidd <[miles@coincloudatm.com](mailto:miles@coincloudatm.com)>; Andrew Cashin <[andrew@colekepro.com](mailto:andrew@colekepro.com)>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Rick

Any update on the new cost after our meeting the other day?

Dave

On Wed, Dec 18, 2019 at 11:42 AM Rick Durica <rick@colekepro.com> wrote:

Yes, 1:30 will work for us

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Wednesday, December 18, 2019 11:41 AM
**To:** Rick Durica <rick@colekepro.com>; Miles Kidd <miles@coincloudatm.com>
**Cc:** Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Does 130 work for you?

On Wed, Dec 18, 2019 at 11:39 AM Rick Durica <rick@colekepro.com> wrote:

Hello Dave,

Yes,  I am available after 1 PM

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at [www.colekepro.com](www.colekepro.com)

 

THE RECOGNIZED LEADER IN GAMING CABINETS™

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at [www.colekepro.com](www.colekepro.com)

**From:** David Ellingson [mailto:[davide@coincloudnv.com](davide@coincloudnv.com)]
**Sent:** Wednesday, December 18, 2019 11:30 AM
**To:** Rick Durica <[rick@colekepro.com](rick@colekepro.com)>
**Cc:** Andrew Cashin <[andrew@colekepro.com](andrew@colekepro.com)>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Rick

Can we set up a call today?

Dave

On Wed, Dec 18, 2019 at 8:31 AM Rick Durica <[rick@colekepro.com](rick@colekepro.com)> wrote:

Hello Dave,

I have attached the updated quote with different price breaks based on  orders of 50, 100 and 200 pcs

We will amortize the engineering cost at $45.00 per machine for the first 400 units  Coincloud will own the design after payment of the engineering.

Please let me know if there are any other questions I can help you with

Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Monday, December 16, 2019 3:43 PM
**To:** Rick Durica <rick@colekepro.com>
**Cc:** Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Rick

Thank you for getting back to me so quickly on this. A few questions though. Is there a price difference if we order 50 or maybe 100 or 200 for the kiosk. Plus what would it take for us to own the design to. WE order say 400 machines and then we get the design. Just asking the questions my boss will ask of me.

Thanks

Dave

On Sat, Dec 14, 2019 at 12:52 PM Rick Durica <rick@colekepro.com> wrote:

Hello Dave,

I have attached the pricing for the bitcoin kiosk.

The price is based on a the kiosk that we looked at during our visit to the D casino

We have also put in our estimate of 120 hrs. of engineering to develop the kiosk if you don't have the drawings.

Please let me know if there are any questions

Thank you

8

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030


702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax


Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**


Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.


Visit our website at www.colekepro.com

# EXHIBIT 2

# EXHIBIT 2



# COLE KEPRO
## INTERNATIONAL, LLC.

4170-103 Distribution Circle  North Las Vegas, NV 89030

(702) 633-4270, Fax (702) 399-5744

| SALES QUOTE | |
|---|---|
| QUOTE  NUMBER | 3950-0 |
| QUOTE DATE | 30-Dec-19 |
| ACCOUNT EXECUTIVE | |
| Rick Durica  702-493-5055 | |

| PAYMENT TERMS | FREIGHT TERM |
|---|---|
| See Below | N/A |
| FOB | CARRIER |
| Las Vegas | N/A |

Prepared for

Coin Cloud
3247 South Industrial Road
Las Vegas, NV 89109
Attn: David Ellingson

## *Coin Cloud Bitcoin Kiosk*

**Includes:**

14 ga Steel Powder Coated Cabinet

3/16" Steel powder coated bill acceptor vault
(one)MEI SCN 6607 Bill Acceptor

(one)Fujitsu F53 Semibunch  Bill Dispensor
Lenovo M720 CPU, 4 GB ram 500GB SSD
Elo 2294L PCAP touchscreen LCD
(two) Logitech C615 Webcams
tripp Lite AVR550U AVR Series 550 VA 300 Watts UPS
S&G A-Series ATM Lock Kit with locks for upper door and Cash can
Push lock for lower door
Provisions in design for speaker
Provisions in design for cabinet cooling fan
Provisions in design for thermal printer in upper cabinet
Wiring harness
Testing

Cabinet will be engineeried to change from one Bill Acceptor/One Bill Dispensor configurator to a
dual Bill Acceptor configuration  in the field
**Engineering cost: 120 hrs. @ $150.00 per hour over 4 weeks if drawing are not provided**

Cole Kepro will amortize the engineering cost over 1st 400 units @ $45.00 per unit

**21.5" ELO PCAP
touchscreen LCD Bitcoin
kiosk Cabinet,
Wired and Tested,**

**200 units   $5,770   each**
200 pc pricing based on delivering 50 pcs per week

**100 units   $6,070   each**
100 pc price based on deliving 50 pcs per week

**50 units   $6,570   each**
50 pc price based on one order, 50 pcs



Photo for Reference only

**Terms: 50% with PO, 25% at completion , 25% net 30**

Quote Valid for 30 Days

12/30/2019

# EXHIBIT 3

# EXHIBIT 3

**From: Rick Durica <rick@colekepro.com>**
**Date: Mon, Dec 30, 2019 at 3:14 PM**
**Subject: RE: CoinCloud bitcoin kiosk pricing**
**To: David Ellingson <davide@coincloudnv.com>**
**Cc: Miles Kidd <miles@coincloudatm.com>, Andrew Cashin <andrew@colekepro.com>**

Hello David,

I have added the price for a 10 pc order to the quote, please give me a call if you have any questions

Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

THE RECOGNIZED LEADER IN GAMING CABINETS™

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Friday, December 27, 2019 11:40 AM
**To:** Rick Durica <rick@colekepro.com>
**Cc:** Miles Kidd <miles@coincloudatm.com>; Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Thanks Rick looking  forward to seeing the quote.

On Friday, December 27, 2019, Rick Durica <rick@colekepro.com> wrote:

Hello Dave,

I am getting all of the new components cost and will have the pricing ready on Monday  for your review.

Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Monday, December 23, 2019 11:14 AM
**To:** Rick Durica <rick@colekepro.com>
**Cc:** Miles Kidd <miles@coincloudatm.com>; Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Rick

Any update on the new cost after our meeting the other day?

Dave

On Wed, Dec 18, 2019 at 11:42 AM Rick Durica <rick@colekepro.com> wrote:

Yes, 1:30 will work for us

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Wednesday, December 18, 2019 11:41 AM
**To:** Rick Durica <rick@colekepro.com>; Miles Kidd <miles@coincloudatm.com>
**Cc:** Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Does 130 work for you?

On Wed, Dec 18, 2019 at 11:39 AM Rick Durica <rick@colekepro.com> wrote:

Hello Dave,

Yes,  I am available after 1 PM

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030

702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax

Visit our website at www.colekepro.com

 

THE RECOGNIZED LEADER IN GAMING CABINETS™

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Wednesday, December 18, 2019 11:30 AM
**To:** Rick Durica <rick@colekepro.com>
**Cc:** Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing

Rick

Can we set up a call today?

Dave

On Wed, Dec 18, 2019 at 8:31 AM Rick Durica <rick@colekepro.com> wrote:

Hello Dave,

I have attached the updated quote with different price breaks based on  orders of 50, 100 and 200 pcs

We will amortize the engineering cost at $45.00 per machine for the first 400 units  Coincloud will own the design after payment of the engineering.


Please let me know if there are any other questions I can help you with


Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030


702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax


Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**


Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.


Visit our website at www.colekepro.com

**From:** David Ellingson [mailto:davide@coincloudnv.com]
**Sent:** Monday, December 16, 2019 3:43 PM
**To:** Rick Durica <rick@colekepro.com>
**Cc:** Andrew Cashin <andrew@colekepro.com>
**Subject:** Re: CoinCloud bitcoin kiosk pricing


Rick


Thank you for getting back to me so quickly on this. A few questions though. Is there a price difference if we order 50 or maybe 100 or 200 for the kiosk. Plus what would it take for us to own the design to. WE order say 400 machines and then we get the design. Just asking the questions my boss will ask of me.


Thanks


Dave


On Sat, Dec 14, 2019 at 12:52 PM Rick Durica <rick@colekepro.com> wrote:

Hello Dave,


I have attached the pricing for the bitcoin kiosk.

The price is based on a the kiosk that we looked at during our visit to the D casino


We have also put in our estimate of 120 hrs. of engineering to develop the kiosk if you don't have the drawings.


Please let me know if there are any questions


Thank you

Rick Durica

Vice President, Sales

Cole Kepro International, LLC

4170-103 Distribution Circle

North Las Vegas, Nevada  89030


702-795-1439 Direct Dial

702-493-5055 Cell

702-633-4270 Office

702-633-5088 Fax


Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**


Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.


Visit our website at www.colekepro.com

# EXHIBIT 4

# EXHIBIT 4



# COLE KEPRO
## INTERNATIONAL, LLC.

4170-103 Distribution Circle  North Las Vegas, NV 89030
(702) 633-4270, Fax (702) 399-5744

Prepared for

Coin Cloud
3247 South Industrial Road
Las Vegas, NV 89109
Attn: David Ellingson

| SALES QUOTE | |
|---|---|
| **QUOTE  NUMBER** | 3950-1 |
| **QUOTE DATE** | 30-Dec-19 |

| **ACCOUNT EXECUTIVE** | |
|---|---|
| Rick Durica  702-493-5055 | |

| **PAYMENT TERMS** | **FREIGHT TERMS** |
|---|---|
| See Below | N/A |
| **FOB** | **CARRIER** |
| Las Vegas | N/A |

## *Coin Cloud Bitcoin Kiosk*

**Includes:**

14 ga Steel Powder Coated Cabinet

3/16" Steel powder coated bill acceptor vault
(one)MEI SCN 6607 Bill Acceptor
(one)Fujitsu F53 Semibunch  Bill Dispenser
Lenovo M720 CPU, 4 GB ram 500GB SSD
Elo 2294L PCAP touchscreen LCD

(two) Logitech C615 Webcams
tripp Lite AVR550U AVR Series 550 VA 300 Watts UPS
S&G A-Series ATM Lock Kit with locks for upper door and Cash can
Push lock for lower door
Provisions in design for speaker
Provisions in design for cabinet cooling fan
Provisions in design for thermal printer in upper cabinet
Wiring harness
Testing

**21.5" ELO PCAP
touchscreen LCD Bitcoin
kiosk Cabinet,
Wired and Tested,**

**200 units    $5,770    each**
200 pc pricing based on delivering 50 pcs per week

**100 units    $6,070    each**
100 pc price based on delivering 50 pcs per week

**50 units    $6,570    each**
50 pc price based on one order, 50 pcs

**10 units    $7,320    each**
10 pc price based on one order, 10 pcs

Cabinet will be engineered to change from one Bill Acceptor/One Bill Dispenser configurator to a
dual Bill Acceptor configuration  in the field
**Engineering cost: 120 hrs. @ $150.00 per hour over 4 weeks if drawing are not provided**

Cole Kepro will amortize the engineering cost over 1st 400 units @ $45.00 per unit



**Terms: 50% with PO, 25% at completion , 25% net 30**

Photo for Reference only

Quote Valid for 30 Days

12/30/2019

# EXHIBIT 5

# EXHIBIT 5

| | |
|---|---|
| **From:** | Rick Durica <rick@colekepro.com> |
| **Sent:** | Tuesday, February 16, 2021 3:14 PM |
| **To:** | David Ellingson |
| **Cc:** | Andrew Cashin |
| **Subject:** | Coin Cloud C-2960-01-000-GEN04 Kiosk pricing |
| **Attachments:** | SO#4275-0( CoinCloud) GEN04 Kiosk  2-16-2021.pdf |

Hello David,
I have attached the quote for the C-2960-01-000-GEN04 Kiosk units.

I will give you a call to go over this

Thank you

Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

# EXHIBIT 6

# EXHIBIT 6



## COLE KEPRO
### INTERNATIONAL, LLC.

4170-103 Distribution Circle  North Las Vegas, NV 89030
(702) 633-4270, Fax (702) 399-5744

| SALES QUOTE | |
|---|---|
| **QUOTE  NUMBER** | 4275-0 |
| **QUOTE DATE** | 16-Feb-21 |

**Prepared for**

Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
Attn: David Ellingson

| **ACCOUNT EXECUTIVE** | |
|---|---|
| Rick Durica  702-493-5055 | |

| **PAYMENT TERMS** | **FREIGHT TERMS** |
|---|---|
| See Below | N/A |
| **FOB** | **CARRIER** |
| Las Vegas | N/A |

## C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR

**Includes:**

14 ga Steel Powder Coated Cabinet

3/16" Steel powder coated bill acceptor vault
MEI BNR Recycler
CPU NUC7i3DNH1E, NUC 7 i3-7100U Pro, 4GB
DDR4 Mem, 512GB SATA M.2 SSD, Triple USB I/O
Plate, No OS
21.5" LCD with perimeter LED lighhting

One 4K USB UpperCamera w/ IMX317 sensor and 1.95mm Lens

One ELP USB Lower Camera 2.1 Lens 1080 P
LED Controller
Cyberpower 550VA UPS
S&G A-Series ATM Lock Kit for Vault door
Dallas locking assembly for upper LCD door
Provisions in design for speakers
cabnet wired  for cabinet cooling fan
Wiring harness
Testing
Packaging

**21.5"  PCAP LED Edge
Lit Touchscreen LCD
Bitcoin kiosk Cabinet,
with LED Lighting
package
Wired and Tested,**

**Pricing reflects unit with addition of CPI BNR  recycler,
20' power extension cord,  external serial tag,
dallas lock assembly for upper door, new upper  4K camera**

| **Quantity** | **4080** | **Units** |
|---|---|---|
| at the rate of  255 units per week | | |
| **Pricing** | **$8,550** | **each** |

| **Leadtime** | **12 weeks ARO** |
|---|---|



Photo for Reference only
Quote Valid for 30 Days

**Terms: net 45**

2/16/2021

# EXHIBIT 7

# EXHIBIT 7

| | |
|---|---|
| **From:** | Rick Durica <rick@colekepro.com> |
| **Sent:** | Tuesday, February 16, 2021 3:37 PM |
| **To:** | David Ellingson |
| **Cc:** | Andrew Cashin |
| **Subject:** | Coin Cloud Kiosk C-2960-01-000-GEN04 |
| **Attachments:** | SO#4275-1( CoinCloud) GEN04 Kiosk  2-16-2021.pdf |

Hello David,
Attached is the updated pricing including the speakers and harness


Thank you

Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at www.colekepro.com

 

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

# EXHIBIT 8

# EXHIBIT 8



## COLE KEPRO
### INTERNATIONAL, LLC.

4170-103 Distribution Circle   North Las Vegas, NV 89030
(702) 633-4270, Fax (702) 399-5744

| SALES QUOTE | |
|---|---|
| **QUOTE NUMBER** | 4275-1 |
| **QUOTE DATE** | 16-Feb-21 |

| Prepared for |
|---|

Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
Attn: David Ellingson

| **ACCOUNT EXECUTIVE** | |
|---|---|
| Rick Durica  702-493-5055 | |

| **PAYMENT TERMS** | **FREIGHT TERMS** |
|---|---|
| See Below | N/A |
| **FOB** | **CARRIER** |
| Las Vegas | N/A |

## C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR

**Includes:**
14 ga Steel Powder Coated Cabinet

3/16" Steel powder coated bill acceptor vault
MEI BNR Recycler
CPU NUC7i3DNH1E, NUC 7 i3-7100U Pro, 4GB
DDR4 Mem, 512GB SATA M.2 SSD, Triple USB I/O
Plate, No OS
21.5" LCD with perimeter LED lighhting

One 4K USB UpperCamera w/ IMX317 sensor and 1.95mm Lens

One ELP USB Lower Camera 2.1 Lens 1080 P
LED Controller
Cyberpower 550VA UPS
S&G A-Series ATM Lock Kit for Vault door
Dallas locking assembly for upper LCD door
Two Speakers with harnessing
cabnet wired  for cabinet cooling fan
Wiring harness
Testing
Packaging

**21.5"  PCAP LED Edge Lit Touchscreen LCD Bitcoin kiosk Cabinet, with LED Lighting package Wired and Tested,**

| **Quantity** | 4080 | **Units** |
|---|---|---|
| at the rate of  255 units per week | | |
| **Pricing** | $8,575 | **each** |

**Leadtime          12 weeks ARO**



Pricing reflects unit with addition of CPI BNR  recycler,
20' power extension cord,  external serial tag,
dallas lock assembly for upper door, new upper  4K camera

**Terms: net 45**

Photo for Reference only
Quote Valid for 30 Days

2/16/2021

# EXHIBIT 9

# EXHIBIT 9



**P.O. NUMBER: 2011**

Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

9580 West Sahara Avenue, unit 200
Las Vegas, NV 89117
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | SHIPPED VIA | | Notes |
|---|---|---|---|---|
| 02/25/2021 | David Ellingson | n/a | | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 4080 | Domestic | 1500 Domestic build-type kiosk | $8,575.00 | $34,986,000.00 |
| | | | SUBTOTAL | $34,986,000.00 |
| | | | TOTAL | $34,986,000.00 |

James Bauer    VP of Operations                     Date    2-26-2021

Jeffery Garon    CFO /COO                     Date    2/26/2021

# EXHIBIT 10

# EXHIBIT 10

**From:** James Bauer <james.bauer@coin.cloud>
**Sent:** Friday, February 26, 2021 10:40 AM
**To:** Andrew Cashin
**Cc:** Jeffrey Garon; Chris McAlary; David Ellingson; Accounting; Brad DeGarmo
**Subject:** Fwd: Cole Kepro Scanned POs
**Attachments:** Cole Kepro PO #2012.pdf; Cole Kepro PO #2011.pdf; Cole Kepro PO #2013.pdf

Andrew,

I have attached the signed PO's for the units we discussed. Please let me know if you have any questions.

Thank you



Jim Bauer
Vice President of Operations
Coin.Cloud | James.Bauer@Coin.Cloud
1 855 264 2046 | Cell: 602 315 7681

---------- Forwarded message ---------
From: **Maleassa Andrews** <maleassa.andrews@coin.cloud>
Date: Fri, Feb 26, 2021 at 10:35 AM
Subject: Cole Kepro Scanned POs
To: James Bauer <james.bauer@coin.cloud>

Hi Jim,

Please find attached the scanned Cole Kepro POs for your reference.

Thank you,



Maleassa Andrews
Coin Cloud | Executive Assistant to CEO & CFO
Coin.Cloud | maleassa.andrews@coin.cloud
1 855 264 2046 Ext 76 | 702 619 0116 Cell

# EXHIBIT 11

# EXHIBIT 11

| | |
|---|---|
| **From:** | accounting@coin.cloud on behalf of Andrew Cashin <andrew@colekepro.com> |
| **Sent:** | Friday, February 26, 2021 10:53 AM |
| **To:** | James Bauer |
| **Cc:** | Jeffrey Garon; Chris McAlary; David Ellingson; Accounting; Brad DeGarmo |
| **Subject:** | RE: Cole Kepro Scanned POs |

Thank you very much.  We've all worked very hard to get to this point.

Now we have to execute at this next level.

We're on it.

Andrew Cashin

---

**From:** James Bauer <james.bauer@coin.cloud>
**Sent:** Friday, February 26, 2021 10:40 AM
**To:** Andrew Cashin <andrew@colekepro.com>
**Cc:** Jeffrey Garon <jeff.garon@coin.cloud>; Chris McAlary <chris@coin.cloud>; David Ellingson <david.ellingson@coin.cloud>; Accounting <accounting@coin.cloud>; Brad DeGarmo <brad.degarmo@coin.cloud>
**Subject:** Fwd: Cole Kepro Scanned POs

Andrew,

I have attached the signed PO's for the units we discussed. Please let me know if you have any questions.

Thank you



Jim Bauer
Vice President of Operations
Coin.Cloud | James.Bauer@Coin.Cloud
1 855 264 2046 | Cell: 602 315 7681

---------- Forwarded message ---------
From: **Maleassa Andrews** <maleassa.andrews@coin.cloud>
Date: Fri, Feb 26, 2021 at 10:35 AM
Subject: Cole Kepro Scanned POs
To: James Bauer <james.bauer@coin.cloud>

Hi Jim,

Please find attached the scanned Cole Kepro POs for your reference.

Thank you,



Maleassa Andrews
Coin Cloud | Executive Assistant to CEO & CFO
Coin.Cloud | maleassa.andrews@coin.cloud
1 855 264 2046 Ext 76 | 702 619 0116 Cell

This e-mail message, including attachments, may contain confidential information for the sole use of the intended recipient(s). If you are not the intended recipient, then this is notice that any use, disclosure, dissemination, distribution or copying is strictly prohibited.  If you have received this message in error please contact the sender by reply mail and destroy all copies of the original message.

Please consider the environment before printing this e-mail. Reduce, Reuse & Recycle.

# EXHIBIT 12

# EXHIBIT 12



P.O. NUMBER:  04302021 - 2

**Vendor**
Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

**Customer**
Coin Cloud, LLC
9580 W. Sahara Blvd
Las Vegas, NV 89117
855-264-2046

| P.O. DATE | REQUISITIONER | SHIPPED VIA | Notes |
|---|---|---|---|
| 04/30/2021 | Jim Bauer | N/A | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 4080 | Domestic | BNR Version of Blue Box Kiosk / including updated NUC PC and $200 discount on BNR from CPI | $8,464.00 | $34,533,120.00 |

| | | |
|---|---|---|
| | SUBTOTAL | $34,533,120.00 |
| | Total | $34,533,120.00 |

*James M Bauer*
AA9BDAAB031D45D...
James Bauer    VP of Operations

4/30/2021
Date

*Jeffrey L Garon*
9D8E2D239860422...
Jeffrey L. Garon    CFO/COO

4/30/2021
Date

4/30/2021
D8CB448ED76C498...

Chris McAlary    President/CEO

4/30/2021
Date

# EXHIBIT 13

# EXHIBIT 13



# QUOTE LETTER

RFQ No.:2021- **160**

Customer RFQ No.:

**Cole Kepro International, LLC**

4170-103 Distribution Circle

N. Las Vegas, NV 89030

Phone (702) 633-4270

Fax    (702) 633-5088

**Coin Cloud**

9580 West Sahara Ave Unit 200

Las Vegas, NV 89117

Phone:  855-264-2046

Email:

| Ship Via | Salesperson | FOB | Terms | Inquiry Date | Buyer |
|----------|-------------|-----|-------|--------------|-------|
|          |             |     | NET 45 | 05/10/2021 | David Ellingson |

| No. | Quote No. | Part No. | Description | Rev. |
|-----|-----------|----------|-------------|------|
| 1   |           | 708-0100 | ACUPWR 200-Watt Step-Down Transformer (AD-200IEC) | |

| Quantity | Price Each | Extended Price |
|----------|------------|----------------|
| 10.000 | $140.00 | $1400.00 |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ACH-   ABA# 071923909 Acct# 88800224
WIRE- ABA# 042000314-Acct# 88800224 Swift FTBCUS3C

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone    (702) 633-4270



COLE KEPRO
TERMS AND CONDITIONS OF SALE

## 1. DEFINITIONS

For the purposes of these Terms and Conditions of Sale ("Agreement" or "Terms of Sale"), the following terms shall have the meanings set forth below:

"Cole Kepro" or "Seller" shall mean Cole Kepro International, LLC, and all of its divisions, affiliates, and subsidiaries;

"Parties" shall mean Cole Kepro and Purchaser, collectively;

"Purchaser" shall mean the other party signing the Quotation, or submitting a purchase order based on Cole Kepro's Quotation;

"Price" shall mean the price for the Products as currently set out in the Quotation;

"Products" shall mean the Cole Kepro products described in the Quotation;

"Quotation" shall mean that certain quotation or proposal from Cole Kepro issued herewith, which is hereby incorporated by reference for all purposes.

## 2. PURCHASE AND SALE OF PRODUCTS

2.1 Terms and Conditions. All purchases of Product by Purchaser from Cole Kepro hereunder shall be subject to the Terms of Sale contained herein. Unless otherwise expressly agreed in writing by a duly authorized representative of Cole Kepro, these Terms of Sale supersede all other communications and agreements and constitutes the entire Agreement between Cole Kepro and Purchaser. Purchaser acknowledges that Cole Kepro sells the Products solely pursuant to the Terms of Sale set forth herein. Accordingly, any terms or conditions that may be contained in any purchase order or other form of Purchaser shall be absolutely without force or effect, regardless of when received by Cole Kepro. Any additional or different terms on Purchaser's purchase order are deemed material alterations to this Agreement between Cole Kepro and Purchaser, and Cole Kepro hereby gives notice of its objection to them.

2.2 Prices. The Price to Purchaser for the purchase of each of the Products shall be set forth in the Quotation, shall be in U.S. Dollars, shall include packaging for domestic shipment, and shall be exclusive of any other amounts, including, without limitation, taxes, freight, insurance, special packaging, and other shipping expenses. Except as otherwise explicitly stated in the Quotation, Cole Kepro has the right at any time to raise the prices in the Quotation without notice to Purchaser, and such revisions shall apply to all orders received after the effective date of revision. The Price to Purchaser does not include any federal, provincial, state or local property, license, privilege, sales, service, use, excise, value added, gross receipts, or other like taxes, which may now or hereafter be applicable to, measured by, or imposed upon, the Products, their replacement, value, or use, or any services performed in connection therewith.

2.3 Order and Acceptance. All orders for Product submitted by Purchaser shall be initiated by written purchase order sent to Cole Kepro and must contain language that expressly incorporates Cole Kepro's Quotation. No order shall be binding on Cole Kepro until such order is accepted in writing by Cole Kepro or until the Product has shipped by Cole Kepro in accordance with the Purchase Order. Cole Kepro will use reasonable efforts to notify Purchaser of the acceptance of an order within five (5) business days of its receipt of an order, or at Cole Kepro's sole discretion, deliver the ordered Products. Cole Kepro reserves the right to accept or reject any purchase order. Possession of a price list by Purchaser does not constitute an offer to sell. On orders for non-stock goods, or special orders, or where manufacturing processes make it difficult to provide the exact quantity specified, Cole Kepro reserves the right to under-ship or over-ship Product and invoice Purchaser accordingly.

2.4 Payment. Cole Kepro will invoice Purchaser for each shipment. The amount invoiced will include the price plus all applicable taxes, fees, transportation, insurance, and other charges. If all Products in Purchaser's purchase order are not shipped at the same time, Cole Kepro will invoice Purchaser at the time of shipment for the Products that have shipped. Provided Purchaser has an approved credit application and unless otherwise agreed in writing, one hundred percent (100%) of the amount invoiced shall be due in full and payable thirty (30) days from the invoiced date, or within the established and authorized pay period, and payment shall be made in U.S. Dollars by wire transfer, check, or other instrument approved by Cole Kepro. Any invoiced amount not paid when due shall be subject to a service charge of one and one-half percent (1.5%) per month or the maximum amount allowable by law, whichever is greater. Cole Kepro may also, at its option, 1) revoke any previously granted terms of credit, and/ or 2) revoke any previously granted discount, reverting to Cole Kepro's standard pricing. Purchaser agrees to no rights of set-off for any amounts it owes for particular Products against amounts owed it by Cole Kepro. If Purchaser fails to make timely payments of outstanding invoices, Cole Kepro may withhold or suspend its performance under this Agreement. Purchaser shall pay all of Cole Kepro's costs and expenses (including its reasonable attorney's fees) to enforce and preserve Cole Kepro's rights under this subsection.

2.5 Default. Failure on the part of Purchaser to pay invoices when due shall, at the option of Cole Kepro, constitute a default and subject Purchaser to all other remedies Cole Kepro may have under these Terms of Sale or applicable law. If, in the judgment of Cole Kepro, the financial condition of Purchaser at any time before delivery of Products does not justify the terms of payment specified, Cole Kepro may require payment in advance or cancel any outstanding order, whereupon Cole Kepro shall be entitled to receive reasonable charges. If delivery is delayed by Purchaser, payment shall become due on the date Cole Kepro is prepared to make delivery. Should manufacture be delayed by or at the request of Purchaser, pro rata payments shall become due if and to the extent required of Cole Kepro, in its sole discretion. Delays in delivery or nonconformities in any installment shall not relieve Purchaser of its obligations to accept and pay for remaining installments. Cole Kepro reserves all other rights granted to a seller pursuant to the Uniform Commercial Code ("UCC") for Purchaser's failure to pay for the goods or other breach by Purchaser of the Terms of Sale listed herein. If, despite any default by the Purchaser, Cole Kepro elects to continue to make deliveries, its actions shall not constitute a waiver of any default by the Purchaser or in any way effect Cole Kepro's remedies provided herein or by law for any such default.

2.6 Delivery Terms. All Prices are FOB Cole Kepro's manufacturing facility or warehouse, unless agreed in writing by Cole Kepro. Cole Kepro shall not be liable for any goods lost, damaged, or destroyed in transit, it being agreed by the Parties that all risk of such loss, damage, or destruction is assumed by Purchaser. When the scheduled delivery of Products is delayed by Purchaser, Cole Kepro may deliver such Products by storing them for the account of and at the sole risk of Purchaser. Shipping dates are approximate and are based upon prompt receipt of all necessary information and approvals from Purchaser. Cole Kepro reserves the right to pack or ship orders in the most economical manner, however, when Purchaser requests special packaging or shipping, any additional cost will be billed to Purchaser and be the responsibility of Purchaser.

2.7 Failure to Deliver and Force Majeure. Cole Kepro shall not be responsible for delays in delivery, or failure to deliver due to causes beyond its reasonable control, including without limitation, acts of God, acts of purchaser, government action (civil or military), taking or preempting of Cole Kepro's production facilities, legal interferences or prohibitions, fires, strikes, or other labor difficulties, hostilities, insurrections or riots, terrorist actions or threats, embargoes, equipment breakdown, wrecks or delays in transportation, unusually severe weather, inability to obtain necessary labor, failure of suppliers, material or manufacturing facilities due to causes beyond its reasonable control or any like or dissimilar cause beyond its reasonable control. In the event of such delay, the date of delivery shall be extended for a period equal to the time lost by reason of the delay. Cole Kepro shall have the right, in its sole discretion, to furnish suitable substitutes for materials that cannot be obtained because of the above causes and to apportion its shipment among its Purchasers in such a manner as it shall be equitable. If the material, apparatus, or equipment is or thereafter becomes subject to government control, allocation, regulation or restriction, the necessary and proper rating certificate shall be supplied by the Purchaser. Delivery dates are from receipt of purchase order, prints, models, and materials, whichever is later, which are to be furnished by the Purchaser. Due to the nature of Cole Kepro's custom work, delivery dates are estimates and not guarantees, and Purchaser understands and agrees to reasonable delays in delivery. Overtime and other direct costs incurred to hasten delivery of Purchaser's request shall be added to the stated prices and paid by Purchaser. Shipment of goods ready for delivery can be deferred beyond date for delivery only with Cole Kepro's consent and upon full payment of Cole Kepro's invoice for, same plus storage costs. There shall be no penalties for late shipments.

2.8 Taxes. Purchaser agrees to report and pay all taxes and assessments imposed on Purchaser or Cole Kepro in connection with the distribution and/or sale of Products hereunder including any sales, use, excise, and/or other taxes and duties, with the exception of taxes imposed on Cole Kepro's income. To the extent that Cole Kepro is required by statute or regulation to collect and report taxes, duties, purchases, or other costs to various authorities (both foreign and domestic), such taxes, duties, purchases, and /or any other costs will be billed directly to the Purchaser. If Purchaser is exempt from any such taxes, Purchaser must provide Cole Kepro with a valid exemption before shipment of the Products by Cole Kepro.

2.9 Cancellation or Changes. An accepted purchase order is not subject to cancellation for change except on terms acceptable and satisfactory to Cole Kepro, including reasonable cancellation charges in the event of cancellation or an equitable price adjustment in the event of changes in order. Direction from Purchaser to cancel may be treated as a repudiation, making the Purchaser immediately liable for loss, expense, and other damages sustained. If the purchase order is canceled or delayed before the completion of the contract, Purchaser shall reimburse and/or indemnify Cole Kepro for costs incurred by Cole Kepro up to the date of cancellation or delay and for all damages sustained by Cole Kepro due to cancellation or delay of the contract.

2.10 Modifications to Designs. Cole Kepro shall have the right, in its absolute discretion, without liability to Purchaser, to (a) change the design, specifications, or construction of any Product, (b) discontinue the manufacture or sale of any Product, and/or (c) allocate, terminate, or limit deliveries in times of shortage. Purchaser will allow extra charges for required or requested changes to Purchaser's design or specifications. Cole Kepro is not responsible for dimensional or other errors on Purchaser's drawings, and Purchaser shall reimburse Cole Kepro for additional costs resulting from such errors.

2.11 Security Interest. For the purpose of securing payment of the price of Cole Kepro's Products and all other charges payable to Cole Kepro hereunder, Purchaser hereby grants to Cole Kepro a security interest in each and every Product delivered to Purchaser under this Agreement, including, without limitation, any proceeds from its resale or distribution, or from insurance held by Purchaser covering the Products. Upon request by Cole Kepro, Purchaser shall cooperate with Cole Kepro and execute any necessary documents, including but not limited to the execution and filing of UCC-1 financing statements, to perfect Cole Kepro's security interest granted herein, where required by state law. These interests will be deemed satisfied and released by payment in full of the purchase price and all other charges payable hereunder for each such period.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

Cole Kepro International
4170 Distribution Circle North Las Vegas NV 89031 United States of America

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone      (702) 633-4270



THE RECOGNIZED LEADER IN GAMING CABINETS™

2.12 Shipping. All shipment dates provided by Cole Kepro are estimates only, and Purchaser acknowledges that such dates may change due to events and circumstances beyond the control of Cole Kepro. Products delivered pursuant to the terms of this Agreement shall be suitably packed for shipment in Cole Kepro's standard shipping cartons, marked for shipment to Purchaser's address, and delivered to Purchaser or its carrier agent FOB Cole Kepro's manufacturing plant or warehouse, at which time risk of loss shall pass to the Purchaser. Unless otherwise instructed by the Purchaser, Cole Kepro shall select the carrier. All freight, insurance, and other shipping expenses, as well as any special packing expense shall be paid by the Purchaser. Purchase also agrees that no delivery pursuant to this Agreement shall be construed as a single lot contract under the UCC. In addition, remedies provided under a single lot contract shall not apply to any shipment hereunder.

2.13 Product Acceptance. Purchaser shall be deemed to have accepted delivery of Products ("Product Acceptance") and all shipments and charges shall be deemed correct, unless Cole Kepro receives written notice of objection within ten (10) business days from the date of delivery (the "Rejection Period"). After Product Acceptance, Purchaser agrees that its remedies are limited to the remedies contained in Section 3 (Warranty and Limitation of Liability) of this Agreement. In the event of rejection of the Product within the Rejection Period, Purchaser shall give notice to Cole Kepro of such rejection pursuant to subsection 3.2, below.

## 3. WARRANTY AND LIMITATION OF LIABILITY

3.1 Limited Warranty. The Products sold hereunder shall be subject to the following limited warranty (the "Limited Warranty"). Mechanical Components are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of one year from the date of Cole Kepro International, LLC (seller) shipment. Electrical Components, excluding LCD panels, are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of ninety days from the date of Seller's shipment. LCD Panels are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of two years from the date of Seller's shipment. Seller's sole and exclusive obligation hereunder is to repair or replace any defective component(s) provided that Seller receives written notice of the defect during the period of warranty and purchaser receives written authorization for return of component(s) to Seller. Any defective item(s) to be returned at purchaser's expense to Cole Kepro International, LLC 4170-103 Distribution Circle, North Las Vegas, NV 89030 within 30 days of purchaser's written notice of the defect. The expense of removal and installation of any item(s) of equipment shall not be included in this warranty. In no event shall Seller be liable for any special, general, incidental or consequential damages to purchaser or any third party caused by any defective item of equipment whether defect is warranted against or not. Cole Kepro International, LLC shall have no obligation under this agreement to make repairs or replacement necessitated by act of God, act of terrorism, fault, misuse, modification, negligence or accident of purchaser or other users. ALL OTHER WARRANTIES AS TO THE QUALITY, CONDITION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT OTHER THAN THOSE STATED ABOVE IS EXPRESSLY DISCLAIMED.

3.2 Return Material Authorization. In the event of rejection under Section 2.13 or defect under 3.1, Purchaser must give written notice to Cole Kepro of such event requesting a Return Material Authorization ("RMA") number. Any such notice must furnish the following information with the Product returned to the Seller: (a) Purchaser's name and complete address; (b) name and telephone number of Purchaser's employee to contact if there are questions about the returned Product; (c) "Ship to" address for return of repaired Product, if different from original delivery address; (d) a complete list of Product returned, including description and serial number; and (e) a description of the nature of the defect. Cole Kepro will provide the RMA to Purchaser within five (5) business days after receipt of Purchaser's proper and timely notice. Within thirty (30) days after its receipt of the RMA, Purchaser will return the rejected Product to Cole Kepro, or its designee, freight or postage prepaid, in its original shipping carton or a functionally equivalent container. Cole Kepro reserves the right to refuse to accept any return Product (a) not bearing an RMA number on the outside of the carton; (b) not containing the required documentation accompanying the shipment; or (c) not shipped in its original shipping carton or a functionally equivalent container.

3.3 Limitation of Liability. Cole Kepro's obligation under its warranty is strictly and exclusively limited to the repair or replacement of such Product found to be defective in material or workmanship on the condition that the Purchaser gives prompt written notice to Cole Kepro of any claim within the Rejection or Warranty Periods, and, if requested, returns the defective articles to Cole Kepro. Cole Kepro will not assume any expense or liability for repairs made to its Products outside of its plant, without its prior written consent. Any unauthorized repair shall void the Limited Warranty contained herein. Cole Kepro reserves the right to satisfy its warranty obligation in full, with respect to defective articles, by the payment to the purchaser of all sums paid by the Purchaser to Cole Kepro for such Products. IN NO EVENT SHALL Cole Kepro BE LIABLE FOR CLAIMS (BASED UPON BREACH OF CONTRACT, EXPRESS OR IMPLIED WARRANTY, NEGLIGENCE, OR OTHERWISE) FOR ANY DAMAGES, WHETHER DIRECT, IMMEDIATE, INCIDENTAL, FORESEEABLE, CONSEQUENTIAL, PUNITIVE, OR SPECIAL, including but not limited to, loss of profits or revenue, loss of use of the Products or facilities or service, downtime cost, or claims of the Purchaser for such damages. Cole Kepro's liability on any claim whether in contract, tort (including, but not limited to, negligence), warranty, strict liability, or otherwise for any loss or damage arising out of connected with, or resulting from these Terms of Sale or the performance or breach thereof, or from the design, manufacture, sale, delivery, resale, repair, replacement, installation, technical direction of installation, inspection, servicing, operation or use of any Product covered by or furnished under this contract shall be limited to, and in no case shall such damages exceed, the purchase price of the Product or the portion thereof which gives rise to the claim. PURCHASER ACKNOWLEDGES THAT IT HAS NOT BEEN INDUCED TO PURCHASE THE PRODUCTS MANUFACTURED BY Cole Kepro BY ANY REPRESENTATION OR WARRANTY NOT SET FORTH IN THESE TERMS OF SALE. THIS LIMITATION OF LIABILTY CANNOT BE WAIVED OR AMENDED BY ANY PERSON. THIS LIMITATION OF LIABILITY WILL BE EFFECTIVE EVEN IF Cole Kepro KNEW OR SHOULD HAVE KNOWN OF THE POSSIBILITY OF SUCH DAMAGES.

## 4. GENERAL PROVISIONS

4.1 Intellectual Property. The sale of Products covered by this Agreement shall not confer upon Purchaser any license to manufacture under any patents owned or controlled by Cole Kepro, its affiliates, and subsidiaries, it being specifically understood and agreed that all such rights are reserved to Cole Kepro, its subsidiaries, and affiliates. Purchaser will not use or authorize anyone else to use Cole Kepro's name or trademarks. Any use which Purchaser makes of Cole Kepro's name or trademarks will inure to Cole Kepro's sole benefit, and Purchaser will accrue no rights in such name or trademarks. All trademarks, trade names, patents, copyrights, designs, drawings, formulas, or other data, photographs, samples, literature, and sales aids of every kind shall remain the property of Cole Kepro. Purchaser agrees not to do anything inconsistent with that ownership or to contest ownership of such items.

4.2 Amendment and Termination. Cole Kepro may amend these Terms of Sale at will, with or without cause, on thirty (30) days' notice to Purchaser. Cole Kepro may terminate these Terms of Sale at will, with or without cause, on three (3) days' notice to Purchaser.

4.3 Governing Law and Jurisdiction. This Agreement shall be governed and construed under the laws of the State of Texas, U.S.A., without reference to choice of law principles. Any dispute or claim arising out of or relating to this Agreement, or the performance or breach thereof, shall be settled in Tarrant County, Texas by arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules, which are expressly incorporated herein by reference. Judgment on any award rendered by the arbitrator(s), including attorney's fees and costs of arbitration, maybe entered in any court in Tarrant County, Texas having jurisdiction to hear such matters. The parties hereby acknowledge and consent to the jurisdiction of the Texas courts and venue in Tarrant County, Texas for all purposes.

4.4 Legal Expenses. In any action between the parties arising out of or connected with these Terms and Conditions, the prevailing party in such action shall be awarded, in addition to any damages, injunctive or other relief, all of its costs and expenses, including but not limited, to its reasonable attorney's fees.

4.5 Indemnification. Purchaser agrees to defend, protect, save, and hold harmless Cole Kepro against all suits from all damages, claims, and demands for actual or alleged infringement of any patent, trademark, or copyright by reason of Cole Kepro's execution of the designs, prints, drawings, requirements, or specifications of Purchaser.

4.6 Purchaser's Property. Cole Kepro shall have the right to scrap, without liability, prints submitted for quotation, as well as models, patterns, tools, fixtures or other property belonging to Purchaser unless written directions for shipment of such property are given to Cole Kepro within ten (10) days of notification by Cole Kepro.

4.7 Entire Agreement. These Terms of Sale and the documents expressly incorporated by reference herein set forth the entire Agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless placed in writing, and signed by authorized representatives of the Parties.

4.8 Notices. Any notice required or permitted by these Terms of Sale shall be in writing and shall be sent by prepaid registered mail or certified mail, return receipt requested, to the address shown on the Quotation, if to the Seller, or to the address shown on the Purchase Order, if to the Purchaser.

4.9 Severability. If any provision in this Agreement is found or held to be invalid or unenforceable in any respect, such unenforceability will not affect any other provisions of this Agreement, provided that the expected economic benefit of this Agreement is not denied to either party.

4.10 Headings. The captions and headings in this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.

4.11 Singular and Plural. When required by the context hereof, the singular includes the plural and vice versa.

4.13 Waiver: No provision hereof and no breach of any provision shall be deemed waived by reason of any previous waiver of such provision of any breach thereof. There are no understandings, conditions, or agreements relative to the Quotation that are not fully expressed hereon.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

Cole Kepro International
4170 Distribution Circle North Las Vegas NV 89031 United States of America

# EXHIBIT 14

# EXHIBIT 14



**P.O. NUMBER: 8252021-1**

9580 West Sahara Avenue, unit 200
Las Vegas, NV 89117
**Phone 855-264-2046**

**Cole Kepro Intl**
**4170 Distribution Way #103**
**N Las Vegas, NV 89030**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|---|---|---|---|
| 8/25/2021 | London Molina | Cole Kepro | Per Jim |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 10,000 | SPANNER | SPANNER Unit | $10,000.00 | $100,000,000.00 |

*Net 70* Terms. $0.00 Down. 2,500-7,500 1Q2022 Deliverable.
More info as it becomes available.

| | |
|---|---|
| SUBTOTAL | $100,000,000.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $100,000,000.00 |

DocuSign by:

*James M Bauer*                    8/25/2021
James Bauer          VP of Operations          Date

*Jeffrey L Aaron*                   8/26/2021
Jeffrey Garon          CFO/COO          Date

8/26/2021
Chris McAlary          President and CEO          Date

# EXHIBIT 15

# EXHIBIT 15



**COMMERCIAL ARBITRATION RULES**
**DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement.

| | |
|---|---|
| Name of Respondent: Coin Cloud LLC c/o Jeffrey L. Garon | Name of Representative (if known): (See commercial registered agent info below) |
| Address: 9580 W. Sahara Ave, Suite 200 | Name of Firm (if applicable): Smith & Shapiro, PLLC |
| | Representative's Address: 3333 E. Serene Ave., Suite 130 |

| City: Las Vegas | State: NV | Zip Code: 89117 | City: Henderson | State: NV | Zip Code: 89074 |
|---|---|---|---|---|---|
| Phone No.: (855) 264-2046 | Fax No.: | | Phone No.: | Fax No.: | |
| Email Address: jeff@coin.cloud | | | Email Address: | | |

The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

Brief Description of the Dispute:
Respondent has failed to pay for products sold, delivered, and accepted under express contractual terms and conditions governing multiple purchase orders. Respondent has repudiated additional purchase orders, entitling claimant to its expectation damages.

| Dollar Amount of Claim: $ Undetermined, but no less than $20,000,000.00. | Other Relief Sought:<br>☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs<br>☐ Punitive/ Exemplary ☐ Other |
|---|---|

| Amount enclosed: $ 11,000.00 | In accordance with Fee Schedule: ☐ Flexible Fee Schedule ☑ Standard Fee Schedule |
|---|---|

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

Claimant seeks an arbitrator familiar with principles relating to the sale of goods, including UCC mandates and procedures.

| Hearing locale: Tarrant County, Texas | *(check one)* ☐ Requested by Claimant ☑ Locale provision included in the contract |
|---|---|

| Estimated time needed for hearings overall:<br>hours or 4 days | Type of Business: Claimant: Electronic cabinet manufacturer and seller.<br>Respondent: Purveyor of digital currency via ATM. |
|---|---|

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? No.

| Signature (may be signed by a representative): /s/ David Z. Adler (counsel) | Date: May 27, 2022 |
|---|---|
| Name of Claimant: Cole Kepro International, LLC | Name of Representative: David Z. Adler |
| Address (to be used in connection with this case): 4170 Distribution Circle | Name of Firm (if applicable): Jaffe Raitt Heuer & Weiss, P.C. |
| | Representative's Address: 27777 Franklin Road, Suite 2500 |

| City: North Las Vegas | State: NV | Zip Code: 89030 | City: Southfield | State: MI | Zip Code: 48034 |
|---|---|---|---|---|---|
| Phone No.: (702) 633-4270 | Fax No.: | | Phone No.: (248) 351-3000 | Fax No.: (248) 351-3082 | |
| Email Address: | | | Email Address: dadler@jaffelaw.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online. AAA Case Filing Services can be reached at 877-495-4185.*

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone      (702) 633-4270



THE RECOGNIZED LEADER IN GAMING CABINETS ™

## COLE KEPRO
## TERMS AND CONDITIONS OF SALE

# 1. DEFINITIONS

For the purposes of these Terms and Conditions of Sale ("Agreement" or "Terms of Sale"), the following terms shall have the meanings set forth below:

"Cole Kepro" or "Seller" shall mean Cole Kepro International, LLC, and all of its divisions, affiliates, and subsidiaries;

"Parties" shall mean Cole Kepro and Purchaser, collectively;

"Purchaser" shall mean the other party signing the Quotation, or submitting a purchase order based on Cole Kepro's Quotation;

"Price" shall mean the price for the Products as currently set out in the Quotation;

"Products" shall mean the Cole Kepro products described in the Quotation;

"Quotation" shall mean that certain quotation or proposal from Cole Kepro issued herewith, which is hereby incorporated by reference for all purposes.

# 2. PURCHASE AND SALE OF PRODUCTS

**2.1 Terms and Conditions.** All purchases of Product by Purchaser from Cole Kepro hereunder shall be subject to the Terms of Sale contained herein. Unless otherwise expressly agreed in writing by a duly authorized representative of Cole Kepro, these Terms of Sale supersede all other communications and agreements and constitutes the entire Agreement between Cole Kepro and Purchaser. Purchaser acknowledges that Cole Kepro sells the Products solely pursuant to the Terms of Sale set forth herein. Accordingly, any terms or conditions that may be contained in any purchase order or other form of Purchaser shall be absolutely without force or effect, regardless of when received by Cole Kepro. Any additional or different terms on Purchaser's purchase order are deemed material alterations to this Agreement between Cole Kepro and Purchaser, and Cole Kepro hereby gives notice of its objection to them.

**2.2 Prices.** The Price to Purchaser for the purchase of each of the Products shall be set forth in the Quotation, shall be in U.S. Dollars, shall include packaging for domestic shipment, and shall be exclusive of any other amounts, including, without limitation, taxes, freight, insurance, special packaging, and other shipping expenses. Except as otherwise explicitly stated in the Quotation, Cole Kepro has the right at any time to revise the prices in the Quotation without notice to Purchaser, and such revisions shall apply to all orders received after the effective date of revision. The Price to Purchaser does not include any federal, provincial, state or local property, license, privilege, sales, service, use, excise, value added, gross receipts, or other like taxes, which may now or hereafter be applicable to, measured by, or imposed upon, the Products, their replacement, value, or use, or any services performed in connection therewith.

**2.3 Order and Acceptance.** All orders for Product submitted by Purchaser shall be initiated by written purchase order sent to Cole Kepro and must contain language that expressly incorporates Cole Kepro's Quotation. No order shall be binding on Cole Kepro until such order is accepted in writing by Cole Kepro or until the Product has shipped by Cole Kepro in accordance with the Purchase Order. Cole Kepro will use reasonable efforts to notify Purchaser of the acceptance of an order within five (5) business days of its receipt of an order, or at Cole Kepro's sole discretion, deliver the ordered Products. Cole Kepro reserves the right to accept or reject any purchase order. Possession of a price list by Purchaser does not constitute an offer to sell. On orders for non-stock goods, or special orders, or where manufacturing processes make it difficult to provide the exact quantity specified, Cole Kepro reserves the right to under-ship or over-ship Product and invoice Purchaser accordingly.

**2.4 Payment.** Cole Kepro will invoice Purchaser for each shipment. The amount invoiced will include the price plus all applicable taxes, fees, transportation, insurance, and other charges. If all Products in Purchaser's purchase order are not shipped at the same time, Cole Kepro will invoice Purchaser at the time of shipment for the Products that have shipped. Provided Purchaser has an approved credit application and unless otherwise agreed in writing, one hundred percent (100%) of the amount invoiced shall be due in full and payable thirty (30) days from the invoiced date or within the established and authorized pay period, and payment shall be made in U.S. Dollars by wire transfer, check, or other instrument approved by Cole Kepro. Any invoiced amount not paid when due shall be subject to a service charge of one and one-half percent (1.5%) per month or the maximum amount allowable by law, whichever is greater. Cole Kepro may also, at its option, 1) revoke any previously granted terms of credit, and/or 2) revoke any previously granted discount, reverting to Cole Kepro's standard pricing. Purchaser agrees to no rights of setoff for any amounts it owes for particular Products against amounts owed it by Cole Kepro. If Purchaser fails to make timely payments of outstanding invoices, Cole Kepro may withhold or suspend its performance under this Agreement. Purchaser shall pay all of Cole Kepro's costs and expenses (including its reasonable attorney's fees) to enforce and preserve Cole Kepro's rights under this subsection.

**2.5 Default.** Failure on the part of Purchaser to pay invoices when due shall, at the option of Cole Kepro, constitute a default and subject Purchaser to all other remedies Cole Kepro may have under these Terms of Sale or applicable law. If, in the judgment of Cole Kepro, the financial condition of Purchaser at any time before delivery of Products does not justify the terms of payment specified, Cole Kepro may require payment in advance or cancel any outstanding order, whereupon Cole Kepro shall be entitled to receive reasonable charges. If delivery is delayed by Purchaser, payment shall become due on the date Cole Kepro is prepared to make delivery. Should manufacture be delayed by or at the request of Purchaser, pro rata payments shall become due if and to the extent required of Cole Kepro, in its sole discretion. Delays in delivery or nonconformities in any installment shall not relieve Purchaser of its obligations to accept and pay for remaining installments. Cole Kepro reserves all other rights granted to a seller pursuant to the Uniform Commercial Code ("UCC") for Purchaser's failure to pay for the goods or other breach by Purchaser of the Terms of Sale listed herein. If, despite any default by the Purchaser, Cole Kepro elects to continue to make deliveries, its actions shall not constitute a waiver of any default by the Purchaser or in any way effect Cole Kepro's remedies provided herein or by law for any such default.

**2.6 Delivery Terms.** All Prices are FOB Cole Kepro's manufacturing facility or warehouse, unless agreed in writing by Cole Kepro. Cole Kepro shall not be liable for any goods lost, damaged, or destroyed in transit, it being agreed by the Parties that all risk of such loss, damage, or destruction is assumed by Purchaser. When the scheduled delivery of Products is delayed by Purchaser, Cole Kepro may deliver such Products by storing them for the account of and at the sole risk of Purchaser. Shipping dates are approximate and are based upon prompt receipt of all necessary information and approvals from Purchaser. Cole Kepro reserves the right to pack or ship orders in the most economical manner, however, where Purchaser requests special packaging or shipping, any additional cost will be billed to Purchaser and be the responsibility of Purchaser.

**2.7 Failure to Deliver and Force Majeure.** Cole Kepro shall not be responsible for delays in delivery, or failure to deliver due to causes beyond its reasonable control, including without limitation, acts of God, acts of purchaser, government action (civil or military), taking or preempting of Cole Kepro's production facilities, legal interferences or prohibitions, fires, strikes, or other labor difficulties, hostilities, insurrections or riots, terrorist actions or threats, embargoes, equipment breakdown, wrecks or delays in transportation, unusually severe weather, inability to obtain necessary labor, failure of suppliers, material or manufacturing facilities due to causes beyond its reasonable control or any like or dissimilar cause beyond its reasonable control. In the event of such delay, the date of delivery shall be extended for a period equal to the time lost by reason of the delay. Cole Kepro shall have the right, in its sole discretion, to furnish suitable substitutes for materials that cannot be obtained because of the above causes and to apportion its shipment among its Purchasers in such a manner as it shall be equitable. If the material, apparatus, or equipment is in an emergency, or is thereafter becomes subject to government control, allocation, regulation or restriction, the necessary and proper rating certificate shall be supplied by the Purchaser. Delivery dates are from receipt of purchase order, prints, models, and materials, whichever is later, which are to be furnished by the Purchaser. Due to the nature of Cole Kepro's custom work, delivery dates are estimates and not guarantees, and Purchaser understands and agrees to reasonable delays in delivery. Overtime and other direct costs incurred to hasten delivery of Purchaser's request shall be added to the stated prices and paid by Purchaser. Shipment of goods ready for delivery can be deferred beyond date for delivery only with Cole Kepro's consent and upon full payment of Cole Kepro's invoice for, same plus storage costs. There shall be no penalties for late shipments.

**2.8 Taxes.** Purchaser agrees to report and pay all taxes and assessments imposed on Purchaser or Cole Kepro in connection with the distribution and/or sale of Products hereunder including any sales, use, excise, and other taxes and duties, with the exception of taxes imposed on Cole Kepro's income. To the extent that Cole Kepro is required by statute or regulation to collect and report taxes, duties, purchases, or other costs to various authorities (both foreign and domestic), such taxes, duties, purchases, and /or any other costs will be billed directly to the Purchaser. If Purchaser is exempt from any such taxes, Purchaser must provide Cole Kepro with a valid exemption before shipment of the Products by Cole Kepro.

**2.9 Cancellation or Changes.** An accepted purchase order is not subject to cancellation for change except on terms acceptable and satisfactory to Cole Kepro, including reasonable cancellation charges in the event of cancellation or an equitable price adjustment in the event of changes in order. Direction from Purchaser to cancel may be treated as a repudiation, making the Purchaser immediately liable for loss, expense, and other damages sustained. If the purchase order is canceled or delayed before the completion of the contract, Purchaser shall reimburse and/or indemnify Cole Kepro for costs incurred by Cole Kepro up to the date of cancellation or delay and for all damages sustained by Cole Kepro due to cancellation or delay of the contract.

**2.10 Modifications to Designs.** Cole Kepro shall have the right, in its absolute discretion, without liability to Purchaser, to (a) change the design, specifications, or construction of any Product, (b) discontinue the manufacture or sale of any Product, and/or (c) allocate, terminate, or limit deliveries in times of shortage. Cole Kepro shall otherwise hold any extra charges for authorized or requested changes to Purchasers design or specifications. Cole Kepro is not responsible for dimensional or other errors on Purchaser's drawings, and Purchaser shall reimburse Cole Kepro for additional costs resulting from such errors.

**2.11 Security Interest.** For the purpose of securing payment of the price of Cole Kepro's Products and all other charges payable to Cole Kepro hereunder, Purchaser hereby grants to Cole Kepro a security interest in each and every Product delivered to Purchaser under this Agreement, including, without limitation, any proceeds from its resale or distribution, or from insurance held by Purchaser covering the Products. Upon request by Cole Kepro, Purchaser shall cooperate with Cole Kepro and execute any necessary documents, including but not limited to the execution and filing of UCC-1 financing statements, to perfect Cole Kepro's security interest granted herein, where required by state law. These interests will be deemed satisfied and released by payment in full of the purchase price and all other charges payable hereunder for each such period.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone    (702) 633-4270



THE RECOGNIZED LEADER IN GAMING CABINETS ™

**2.12 Shipping.** All shipment dates provided by Cole Kepro are estimates only, and Purchaser acknowledges that such dates may change due to events and circumstances beyond the control of Cole Kepro. Products delivered pursuant to the terms of this Agreement shall be suitably packed for shipment in Cole Kepro's standard shipping cartons, marked for shipment to Purchaser's address, and delivered to Purchaser or its carrier agent FOB Cole Kepro's manufacturing plant or warehouse, at which time risk of loss shall pass to the Purchaser. Unless otherwise instructed by the Purchaser, Cole Kepro shall select the carrier. All freight, insurance, and other shipping expenses, as well as any special packing expense shall be paid by the Purchaser. Purchase also agrees that no delivery pursuant to this Agreement shall be construed as a single lot contract under the UCC. In addition, remedies provided under a single lot contract shall not apply to any shipment hereunder.

**2.13 Product Acceptance.** Purchaser shall be deemed to have accepted delivery of Products ("Product Acceptance") and all shipments and charges shall be deemed correct, unless Cole Kepro receives written notice of objection within ten (10) business days from the date of delivery (the "Rejection Period"). After Product Acceptance, Purchaser agrees that its remedies are limited to the remedies contained in Section 3 (Warranty and Limitation of Liability) of this Agreement. In the event of rejection of the Product within the Rejection Period, Purchaser shall give notice to Cole Kepro of such rejection pursuant to subsection 3.2, below.

# 3. WARRANTY AND LIMITATION OF LIABILITY

**3.1 Limited Warranty.** The Products sold hereunder shall be subject to the following limited warranty (the "Limited Warranty"). Mechanical Components are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of one year from the date of Cole Kepro International, LLC (seller) shipment. Electrical Components, excluding LCD panels, are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of ninety days from the date of Seller's shipment. LCD panels are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of two years from the date of Seller's shipment. Seller's sole and exclusive obligation hereunder is to repair or replace any defective component(s) provided that Seller receives written notice of the defect during the period of warranty and purchaser receives written authorization for return of component(s) to Seller. Any defective item(s) to be returned at purchaser's expense to Cole Kepro International, LLC 4170-103 Distribution Circle, North Las Vegas, NV 89030 within 30 days of purchaser's written notice of the defect. The expense of removal and installation of any item(s) of equipment shall not be included in this warranty. In no event shall Seller be liable for any special, general, indirect or consequential damages to purchaser or any third party caused by any defective item of equipment whether defect is warranted against or not. Cole Kepro International, LLC shall have no obligation under this agreement to make repairs or replacement necessitated by act of God, act of terrorism, fault, misuse, modification, negligence or accident of purchaser or other users. ALL OTHER WARRANTIES AS TO THE QUALITY, CONDITION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT OTHER THAN THOSE STATED ABOVE IS EXPRESSLY DISCLAIMED.

**3.2 Return Material Authorization.** In the event of rejection under Section 2.13 or defect under 3.1, Purchaser must give written notice to Cole Kepro of such event requesting a Return Material Authorization ("RMA") number. Any such notice must furnish the following information with the Product returned to the Seller: (a) Purchaser's name and complete address; (b) name and telephone number of Purchaser's employee to contact if there are questions about the returned Product; (c) "Ship to" address for return of repaired Product, if different from original delivery address; (d) a complete list of Product returned, including description and serial number; and (e) a description of the nature of the defect. Cole Kepro will provide the RMA to Purchaser within five (5) business days after receipt of Purchaser's proper and timely notice. Within thirty (30) days after its receipt of the RMA, Purchaser will return the rejected Product to Cole Kepro, or its designee, freight or postage prepaid, in its original shipping carton or a functionally equivalent container. Cole Kepro reserves the right to refuse to accept any return Product (a) not bearing an RMA number on the outside of the carton; (b) not containing the required documentation accompanying the shipment; or (c) not shipped in its original shipping carton or a functionally equivalent container.

**3.3 Limitation of Liability.** Cole Kepro's obligation under its warranty is strictly and exclusively limited to the repair or replacement of such Product found to be defective in material or workmanship on the condition that the Purchaser gives prompt written notice to Cole Kepro of any claim within the Rejection or Warranty Periods, and, if requested, returns the defective articles to Cole Kepro. Cole Kepro will not assume any expenses or liability for repairs made to its Products outside of its plant, without its prior written consent. Any unauthorized repair shall void the Limited Warranty contained herein. Cole Kepro reserves the right to satisfy its warranty obligation in full, with respect to defective articles, by the payment to the purchaser of all sums paid by the Purchaser to Cole Kepro for such Products. IN NO EVENT SHALL Cole Kepro BE LIABLE FOR CLAIMS (BASED UPON BREACH OF CONTRACT, EXPRESS OR IMPLIED WARRANTY, NEGLIGENCE, OR OTHERWISE) FOR ANY DAMAGES, WHETHER DIRECT, IMMEDIATE, INCIDENTAL, FORESEEABLE, CONSEQUENTIAL, PUNITIVE, OR SPECIAL, including but not limited to, loss of profits or revenue, loss of use of the Products or facilities or service, downtime cost, or claims of the Purchaser for such damages. Cole Kepro's liability on any claim whether in contract, tort (including, but not limited to, negligence), warranty, strict liability, or otherwise for any loss or damage arising out of connected with, or resulting from these Terms of Sale or the performance or breach thereof, or from the design, manufacture, sale, delivery, resale, repair, replacement, installation, technical direction of installation, inspection, servicing, operation or use of any Product covered by or furnished under this contract shall be limited to, and in no case shall such damages exceed, the purchase price of the Product or the portion thereof which gives rise to the claim. PURCHASER ACKNOWLEDGES THAT IT HAS NOT BEEN INDUCED TO PURCHASE THE PRODUCTS MANUFACTURED BY Cole Kepro BY ANY REPRESENTATION OR WARRANTY NOT SET FORTH IN THESE TERMS OF SALE. THIS LIMITATION OF LIABILITY CANNOT BE WAIVED OR AMENDED BY ANY PERSON. THIS LIMITATION OF LIABITY WILL BE EFFECTIVE EVEN IF Cole Kepro KNEW OR SHOULD HAVE KNOWN OF THE POSSIILITY OF SUCH DAMAGES.

# 4. GENERAL PROVISIONS

**4.1 Intellectual Property.** The sale of Products covered by this Agreement shall not confer upon Purchaser any license to manufacture under any patents owned or controlled by Cole Kepro, its affiliates, and subsidiaries, it being specifically understood and agreed that all such rights are reserved to Cole Kepro, its subsidiaries, and affiliates. Purchaser will not use or authorize anyone else to use Cole Kepro's name or trademarks. Any use which Purchaser makes of Cole Kepro's name or trademarks will inure to Cole Kepro's sole benefit, and Purchaser will accrue no rights in such name or trademarks. All trademarks, trade names, patents, copyrights, designs, drawings, formulas. or other data, photographs, samples, literature, and sales aids of every kind shall remain the property of Cole Kepro. Purchaser agrees not to do anything inconsistent with that ownership or to contest ownership of such items.

**4.2 Amendment and Termination.** Cole Kepro may amend these Terms of Sale at will, with or without cause. on thirty (30) days' notice to Purchaser. Cole Kepro may terminate these Terms of Sale at will, with or without cause, on three (3) days' notice to Purchaser.

**4.3 Governing Law and Jurisdiction.** This Agreement shall be governed and construed under the laws of the State of Texas. U.S.A., without reference to choice of law principles. Any dispute or claim arising out of or relating to this Agreement, or the performance or breach thereof, shall be settled in Tarrant County, Texas by arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules. which are expressly incorporated herein by reference. Judgment on any award rendered by the arbitrator(s), including attorney's fees and costs of arbitration, may be entered in any court in Tarrant County, Texas having jurisdiction to hear such matters. The parties hereby acknowledge and consent to the jurisdiction of the Texas courts and venue in Tarrant County, Texas for all purposes.

**4.4 Legal Expenses.** In any action between the parties arising out of or connected with these Terms and Conditions, the prevailing party in such action shall be awarded, in addition to any damages, injunctive or other relief, all of its costs and expenses, including but not limited. to its reasonable attorney's fees.

**4.5 Indemnification.** Purchaser agrees to defend, protect. save, and hold harmless Cole Kepro against all suits from all damages, claims, and demands for actual or alleged infringement of any patent, trademark, or copyright by reason of Cole Kepro's execution of the designs, prints, drawings, requirements, or specifications of Purchaser.

**4.6 Purchaser's Property.** Cole Kepro shall have the right to scrap, without liability, prints submitted for quotation, as well as models, patterns, tools. fixtures or other property belonging to Purchaser unless written directions for shipment of such property are given to Cole Kepro within ten (10) days of notification by Cole Kepro.

**4.7 Entire Agreement.** These Terms of Sale and the documents expressly incorporated by reference herein set forth the entire Agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them. No modification of or amendment to this Agreement. nor any waiver of any rights under this Agreement, shall be effective unless placed in writing, and signed by authorized representatives of the Parties

**4.8 Notices.** Any notice required or permitted by these Terms of Sale shall be in writing and shall be sent by prepaid registered mail or certified mail, return receipt requested, to the address shown on the Quotation. if to the Seller, or to the address shown on the Purchase Order, if to the Purchaser.

**4.9 Severability.** If any provision in this Agreement is found or held to be invalid or unenforceable in any respect, such unenforceability will not affect any other provisions of this Agreement, provided that the expected economic benefit of this Agreement is not denied to either party.

**4.10 Headings.** The captions and headings in this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.

**4.11 Singular and Plural.** When required by the context hereof, the singular includes the plural and vice versa.

**4.13 Waiver:** No provision hereof and no breach of any provision shall be deemed waived by reason of any previous waiver of such provision of any breach thereof. There are no understandings, conditions, or agreements relative to the Quotation that are not fully expressed hereon.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

Cole Kepro International
4170 Distribution Circle North Las Vegas NV 89031 United States of America

# EXHIBIT 16

# EXHIBIT 16

| | |
|---|---|
| **From:** | James M. Jimmerson, Esq. |
| **Sent:** | Monday, June 6, 2022 9:48 AM |
| **To:** | 'David Adler' |
| **Cc:** | Andrew Pastor |
| **Subject:** | RE: Cole Kepro |

David,

Skepticism of what?  This is one of the reasons a call would be helpful.

I do not know what exactly my client has.  I was hoping that because you had put together the arbitration demand you would have the documents off-hand.  My client was surprised by the demand as I'm sure you can appreciate and being able to explain exactly why arbitration in Texas is being sought would assist in the process.  For example, while a Texas arbitration provision is in the demand, the Page 1 quote as you describe it is not in the demand, nor are there papers reflecting the transmission of the terms and conditions included in the demand.  Because I do not know these things and do not have these records, I was reaching out to you for assistance.  Any such assistance you can provide me along these lines would be much appreciated.  Thank you.

Sincerely,

James M. Jimmerson, Esq.
Senior Associate
The Jimmerson Law Firm, P.C.
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Monday, June 6, 2022 9:35 AM
**To:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: Cole Kepro

There's no hostility at all, just healthy skepticism which I think you do understand.  For example, your clients have all of the quotes.  Are you suggesting they don't?

| | | |
|---|---|---|
| **David Adler** | **JAFFE RAITT HEUER & WEISS, P.C.** |  |
| dadler@jaffelaw.com | 27777 Franklin Rd., Suite 2500 | |
| 248.727.1563 | Southfield, MI 48034 | |
| | www.jaffelaw.com | |

Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Monday, June 6, 2022 11:26 AM
**To:** David Adler <dadler@jaffelaw.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>
**Subject:** RE: Cole Kepro

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

---

David,

I do not understand the hostility.  I also do not understand why we cannot have a call on these issues, but if you do not want to, I will respect your wishes.  At a minimum, can you please send me the Page 1s so I can see them?

Also, concerning the purchase orders, Coin Cloud is a trade name registered to Cash Cloud Inc.  Cash Cloud Inc. also was the entity that made the payments for the machines.  That is why I was alerting you to the same.  If you have any questions or concerns, please let me know.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Monday, June 6, 2022 5:59 AM
**To:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: Cole Kepro

Your clients know very well that the respective Cole Kepro quotes constitute page 1 in each instance.  All purchase orders were issued in the name Coin Cloud using the address for Coin Cloud LLC listed on the Nevada business entity registry.

If there's any other specific issue you claim would be "helpful" to address I'll gladly respond.

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Friday, June 3, 2022 11:44 AM
**To:** David Adler <dadler@jaffelaw.com>
**Subject:** RE: Cole Kepro

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

David,

I emailed you back yesterday morning but have yet to receive a response.  I'm sure you're busy, but I believe a call would be helpful concerning this matter.  Among other items to discuss, there appears to be a page missing from the demand (there are pages 2 and 3 but no page 1) and Coin Cloud LLC was not the purchaser of the machines.  I hope you can find time in your schedule to discuss with me today or early next week.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Thursday, June 2, 2022 8:59 AM
**To:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: Cole Kepro

What specifically do you wish to discuss?

Thanks,

| **David Adler** | **JAFFE RAITT HEUER & WEISS, P.C.** |  |
|---|---|---|
| dadler@jaffelaw.com | 27777 Franklin Rd., Suite 2500 | |
| 248.727.1563 | Southfield, MI 48034 | |
| | www.jaffelaw.com | |

Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Wednesday, June 1, 2022 4:46 PM
**To:** David Adler <dadler@jaffelaw.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Stephanisia Millwee <sm@jimmersonlawfirm.com>
**Subject:** Cole Kepro

**EXTERNAL EMAIL - Be Cautious with Links and Attachments**

Mr. Adler,

I just left you a voicemail.  I represent Cash Cloud Inc. and we have received the Cole Kepro demand for arbitration.  Can we set up a time for a quick call this week?  I have availability this afternoon, tomorrow morning until 10:00 a.m. PDT and general availability Friday.  Please let me know when would be a good time and we will set it up.  Thank you.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

# EXHIBIT 17

# EXHIBIT 17

| | |
|---|---|
| **From:** | James M. Jimmerson, Esq. |
| **Sent:** | Tuesday, June 14, 2022 2:35 PM |
| **To:** | 'David Adler'; AAA Andrew Barton; Michael Rawlins |
| **Cc:** | Andrew Pastor; Skaggs, Jack |
| **Subject:** | RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548 |

Mr. Adler's concession that the "quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order attached to my email below was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions" is critical here.   Notwithstanding Mr. Adler's claim of inadvertence, the pattern and practice of Cole Kepro in February 2021 was not to include terms and conditions with their sales quotes for kiosks.  As a result, there was nothing inadvertent in the fact that the February 16, 2021 sales quote for kiosks – that led to the $34,533,120.00 purchase order – did not have terms and conditions.

Indeed, Cole Kepro's actions here are demonstrative of its – and its counsel's – awareness of this fact.  Cole Kepro initiated its arbitration request by submitting terms and conditions (labeled pages 2 and 3), without the first page.  Had terms and conditions been part of the February 16, 2021 sales quote, Cole Kepro certainly would have submitted the entire contract.  Now, Cole Kepro acknowledges that those terms and conditions were not part of the February 16, 2021 sales quote.

In a crude attempt to somehow shoehorn those terms and conditions into a contract that did not contain them, Mr. Adler misinterprets and mischaracterizes Jeffery Garon's email of November 1, 2021 – about 9.5 months after the February 16, 2021 sales quote.  A cursory review of that email shows that Mr. Garon's alleged "confirmation" was only in response to Andrew Cashin's request of "Please confirm the following Purchase Order for $100,000,000."  Moreover, Mr. Garon cannot somehow "ratify" (9.5 months later) the existence of terms and conditions that were obviously not part of the February 16, 2021 sales quote / contract, especially when that sales quote was never referred to or referenced by Mr. Cashin.

It should also be noted that the "Terms and Conditions" document on which Cole Kepro initiated its arbitration request, identifying pages 2 and 3, is not the same as the "Terms and Conditions" document contained in Mr. Cashin's email, which has no such page numbers.

Finally, Mr. Garon has at all times been an employee of Cash Cloud, Inc, d/b/a Coin Cloud.  Mr. Garon has never been a principal, employee, officer, member, or agent of Coin Cloud LLC.  Cash Cloud, Inc. owns the trademark "Coin Cloud".  All of Cash Cloud's employee's emails – including Mr. Garon's – have hyperlinks to a web site expressly owned and operated by Cash Cloud, Inc.  Furthermore, payments have been made by Cash Cloud Inc., not Coin Cloud LLC.  We look forward to the call on Friday.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Tuesday, June 14, 2022 12:56 PM
**To:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>; AAA Andrew Barton <AndrewBarton@adr.org>; Michael Rawlins <mrawlins@smithshapiro.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

Mr. Jimmerson is correct that one of the purchase orders uses the name Coin Cloud, LLC while the other uses the name Coin Cloud.  Both use the registered address for "Coin Cloud, LLC," which is different from the registered address for "Cash Cloud Inc."

When I inquired with Mr. Jimmerson whether he's really suggesting that his client doesn't have copies of the documents at issue, his response was, "I do not know exactly what my client has."

I've attached correspondence of November 1, 2021 whereby Coin Cloud principal Jeff Garon explicitly acknowledged and confirmed that Cole Kepro's standard terms and conditions at issue were included on all quotes.  Indeed, prior to the foregoing exchange, Coin Cloud had received and issued corresponding purchase orders in response to over 60 separate Cole Kepro quote letters all accompanied by the same standard terms and conditions.

Cole Kepro concedes that the quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order attached to my email below was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions it had received countless times previously.  This was before Mr. Garon expressly ratified in November 2021 the parties' understanding that of course the terms and conditions applied to all quotes.  Any suggestion that the terms and conditions are not applicable is frivolous.

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Tuesday, June 14, 2022 11:54 AM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; Michael Rawlins <mrawlins@smithshapiro.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

Two purchase orders are attached to Mr. Adler's email, only one of which has the name Coin Cloud LLC on it.  Also conspicuously absent are the page 1s requested by Mr. Rawlins and me.  While Mr. Adler claims that he addressed the issues I raised earlier, that is simply false.  He has repeatedly avoided the issue of the Page 1s as well as the matter of transmission of the terms and conditions referred to in the demand.  I look forward to discussing the same on Friday.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6422 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Tuesday, June 14, 2022 5:57 AM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; Michael Rawlins <mrawlins@smithshapiro.com>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548


In advance of our call, I've attached the Coin Cloud LLC purchase orders.

Thank you,

**David Adler**                    **JAFFE RAITT HEUER & WEISS, P.C.**
dadler@jaffelaw.com          27777 Franklin Rd., Suite 2500        
248.727.1563                     Southfield, MI 48034
                                          www.jaffelaw.com

Signature: Nothing in this communication is intended to constitute an electronic signature. This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Monday, June 13, 2022 10:55 AM
**To:** Michael Rawlins <mrawlins@smithshapiro.com>; David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548


**EXTERNAL EMAIL - Be Cautious with Links and Attachments**

All,


Thank you for submitting your availability. Please note that your Initial Administrative Call is set for June 17, 2022 at 11 AM CT. You may use the below dial-in information to participate:

American Arbitration Conference Call  :


**First, click:** https://meet.loopup.com/8sJhu2K


Or, if you are offline, dial in:

(by joining, you agree to the privacy policy at loopup.com)

Guest Dial-in Code: 2021401#

    USA: +1 (855) 633-2040

    USA (Toll): +1 (312) 212-3078


Best,

Iman

---

**From:** Michael Rawlins <mrawlins@smithshapiro.com>
**Sent:** Friday, June 10, 2022 12:07 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548


**\*\*\* External E-Mail – Use Caution \*\*\***


I have no objection to Mr. Adler's participating in the Arbitration.  I am not familiar with the pro hac procedure he references, so I will have to research Texas law before committing to a course of conduct in that regard.


*Michael Rawlins*



SMITH & SHAPIRO
ATTORNEYS AT LAW

Main   3333 E. Serene Ave., Suite 130, Henderson, NV 89074
Office   702.318.5033   Fax  702.318.5034
Website  smithshapiro.com

This message is intended only for the use of the individual or entity to which it is addressed and may contain attorney/client information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify me immediately by reply email or by telephone at (702)318-5033, and immediately delete this message and all of its attachments.

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Friday, June 10, 2022 7:15 AM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>; Michael Rawlins <mrawlins@smithshapiro.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

I actually have addressed the issue below with Mr. Jimmerson.  The subject purchase orders were issued in the name of Coin Cloud using the address for Coin Cloud LLC listed on the Nevada business entity registry.  Respectfully, it strikes me that if Mr. Jimmerson or Mr. Rawlins wants to make a factual or legal argument about the naming of the entity respondent, it is not an issue for our Initial Administrative Call but rather would properly be submitted to the arbitrator following his or her selection.

On another note, where Texas has not adopted Model Rule of Professional Conduct 5.5(c)(3) allowing for unlicensed attorneys to provide legal services on a temporary basis in connection with a pending arbitration in the state, I will be filing in short order an application with the AAA for admission pro hac vice along with the supporting motion of my Texas-licensed co-counsel Jack E. Skaggs (cc'd).  I'd kindly ask for Mr. Jimmerson's and Mr. Rawlins' concurrence in the request.  I certainly have no objection to their similar involvement on a pro hac vice basis so long as they are sponsored by one or more attorneys licensed in Texas.

Thank you all.  I look forward to the call.

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Thursday, June 9, 2022 5:40 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; David Adler <dadler@jaffelaw.com>
**Cc:** Michael Rawlins <mrawlins@smithshapiro.com>; Andrew Pastor <aap@jimmersonlawfirm.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

Mr. Barton,

As I informed Mr. Adler, I represent Cash Cloud Inc., the purchaser of the equipment from Mr. Adler's client, Cole Kepro International, LLC.  Michael Rawlins, copied here, represents Coin Cloud LLC.  Given the  issues I have raised with Mr. Adler, including his refusal to have a call with me, we look forward to the call.  I have entered my availability on the sheet.  My client reserves all rights, without waiver.  If you have any questions or concerns, please let me know.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 1:08 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>
**Cc:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

Thank you. Counsel Jimmerson – Please confirm you will be representing the Respondent.


Best,

Iman


---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Wednesday, June 8, 2022 2:38 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>
**Cc:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548


**\*\*\* External E-Mail – Use Caution \*\*\***


I understand that James Jimmerson is counsel to respondent.  I've cc'd him.

Thank you,

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 2:54 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**EXTERNAL EMAIL - Be Cautious with Links and Attachments**

Your submission saved. Thank you for double checking.


Best,

Iman


---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Wednesday, June 8, 2022 1:50 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

### *** External E-Mail – Use Caution ***

I believe I responded using the link you sent but cannot be sure.  I'm generally available on all of the proposed dates through 4:00 EST.

Thank you,

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 12:27 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; David Adler <dadler@jaffelaw.com>; 'jeff@coin.cloud' <jeff@coin.cloud>
**Subject:** 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

All,

We will be moving forward with setting the Initial Administrative Call for this case.

You may use the following link to enter your availability:

**https://www.when2meet.com/?15873057-Qnh9Y**

Simply enter your name (no password), highlight your availability and close the page to save. Please enter your availability no later than **Monday, June 13, 2022**.

An additional copy of this email will be sent to Respondent as follows:

      Smith & Shapiro, PLLC
      3333 East Serene Avenue, Suite 130
      Henderson, NV 89074

Best,

Iman

---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 1, 2022 3:13 PM
**To:** 'dadler@jaffelaw.com' <dadler@jaffelaw.com>; 'jeff@coin.cloud' <jeff@coin.cloud>

**Cc:** AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** Demand for Arbitration - Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

June 1, 2022

David Adler, Esq.
Jaffe Raitt Heuer & Weiss
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Via Email to: dadler@jaffelaw.com

Case Number: 01-22-0002-2548

Cole Kepro International, LLC -vs- Coin Cloud, LLC

Dear Counsel:

This will acknowledge receipt on May 27, 2022, of a Demand for Arbitration providing for administration of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the American Arbitration Association (the AAA). We understand that a copy was sent to Respondent. As the claim exceeds $500,000.00, the Large Complex Case Procedures will apply unless the parties agree otherwise. Please refer to our website, www.adr.org, for a copy of our Commercial Arbitration Rules and Mediation Procedures and to access AAA WebFile which allows parties to perform a variety of case related activities online.

Claimant has provided the following contact information for respondent. If represented, we ask Coin Cloud to provide additional detail so we may include such in future correspondence.

Jeffrey L. Garon
jeff@coin.cloud

Smith & Shapiro, PLLC
3333 East Serene Avenue, Suite 130
Henderson, NV 89074

Pursuant to the parties' arbitration clause, the hearing locale shall be Tarrant County, TX. In accordance with the Rules, Respondent may file an answering statement with the AAA within 14 calendar days from the date of this letter. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not delay the arbitration from proceeding forward.

A Respondent may file a counterclaim at any time after notice of the filing of the Demand. If a counterclaim is asserted, it shall meet all filing requirements as described in the Rules. The filing fee, as prescribed in the applicable AAA Fee Schedule, must be paid at the time of filing. Counterclaims that do not meet the filing requirements will not be presented to the arbitrator until such time the filing is perfected. If the deficiencies are not cured by the date specified by the AAA, the counterclaim may be returned to the filing party.

We invite the parties to consider mediation, at this early stage in the arbitration process, in an effort to resolve your dispute more quickly and economically. If you are interested in Mediation at this time, please contact me at your earliest opportunity.

If you have a Webfile account, you should see this case listed when you log in. If you do not see the case number when you login, please contact the undersigned. If you do not have a Webfile account, please email a request for a

registration code to: customerservice@adr.org and they will send you an email with the code and instructions for registering for immediate case access.

If you have questions regarding any of the information in this letter, please feel free to call me at your convenience. I look forward to assisting you in this matter.

Sincerely,

Andrew B Barton
Vice President
Direct Dial: (210)998-5750

# EXHIBIT 18

# EXHIBIT 18

| | |
|---|---|
| **From:** | David Adler <dadler@jaffelaw.com> |
| **Sent:** | Tuesday, June 14, 2022 12:56 PM |
| **To:** | James M. Jimmerson, Esq.; AAA Andrew Barton; Michael Rawlins |
| **Cc:** | Andrew Pastor; Skaggs, Jack |
| **Subject:** | RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548 |
| **Attachments:** | Re: Coin Cloud Next generation cabinet costed BOM; FW: Coin Cloud Next generation cabinet costed BOM |

Mr. Jimmerson is correct that one of the purchase orders uses the name Coin Cloud, LLC while the other uses the name Coin Cloud.  Both use the registered address for "Coin Cloud, LLC," which is different from the registered address for "Cash Cloud Inc."

When I inquired with Mr. Jimmerson whether he's really suggesting that his client doesn't have copies of the documents at issue, his response was, "I do not know exactly what my client has."

I've attached correspondence of November 1, 2021 whereby Coin Cloud principal Jeff Garon explicitly acknowledged and confirmed that Cole Kepro's standard terms and conditions at issue were included on all quotes.  Indeed, prior to the foregoing exchange, Coin Cloud had received and issued corresponding purchase orders in response to over 60 separate Cole Kepro quote letters all accompanied by the same standard terms and conditions.

Cole Kepro concedes that the quote letter corresponding with Coin Cloud's $34,533,120.00 purchase order attached to my email below was inadvertently sent to Coin Cloud in February 2021 without the terms and conditions it had received countless times previously.  This was before Mr. Garon expressly ratified in November 2021 the parties' understanding that of course the terms and conditions applied to all quotes.  Any suggestion that the terms and conditions are not applicable is frivolous.

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Tuesday, June 14, 2022 11:54 AM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; Michael Rawlins <mrawlins@smithshapiro.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

---

Two purchase orders are attached to Mr. Adler's email, only one of which has the name Coin Cloud LLC on it.  Also conspicuously absent are the page 1s requested by Mr. Rawlins and me.  While Mr. Adler claims that he addressed the issues I raised earlier, that is simply false.  He has repeatedly avoided the issue of the Page 1s as well as the matter of transmission of the terms and conditions referred to in the demand.  I look forward to discussing the same on Friday.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6422 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Tuesday, June 14, 2022 5:57 AM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; Michael Rawlins <mrawlins@smithshapiro.com>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

In advance of our call, I've attached the Coin Cloud LLC purchase orders.

Thank you,

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Monday, June 13, 2022 10:55 AM
**To:** Michael Rawlins <mrawlins@smithshapiro.com>; David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** 20220613 Notice of Admin Call: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

All,

Thank you for submitting your availability. Please note that your Initial Administrative Call is set for June 17, 2022 at 11 AM CT. You may use the below dial-in information to participate:

American Arbitration Conference Call :

**First, click:** https://meet.loopup.com/8sJhu2K

Or, if you are offline, dial in:

(by joining, you agree to the privacy policy at loopup.com)

Guest Dial-in Code: 2021401#

   USA: +1 (855) 633-2040

   USA (Toll): +1 (312) 212-3078

Best,

Iman

---

**From:** Michael Rawlins <mrawlins@smithshapiro.com>
**Sent:** Friday, June 10, 2022 12:07 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

   **\*\*\* External E-Mail – Use Caution \*\*\***

I have no objection to Mr. Adler's participating in the Arbitration.  I am not familiar with the pro hac procedure he references, so I will have to research Texas law before committing to a course of conduct in that regard.

*Michael Rawlins*



## SMITH & SHAPIRO
### ATTORNEYS AT LAW

Main    3333 E. Serene Ave., Suite 130, Henderson, NV 89074
Office    702.318.5033    Fax  702.318.5034
Website  smithshapiro.com

**This message is intended only for the use of the individual or entity to which it is addressed and may contain attorney/client information that is privileged, confidential and exempt from disclosure under applicable law.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify me immediately by reply email or by telephone at (702)318-5033, and immediately delete this message and all of its attachments.**

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Friday, June 10, 2022 7:15 AM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>; Michael Rawlins <mrawlins@smithshapiro.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Skaggs, Jack <jskaggs@jw.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

I actually have addressed the issue below with Mr. Jimmerson.  The subject purchase orders were issued in the name of Coin Cloud using the address for Coin Cloud LLC listed on the Nevada business entity registry.  Respectfully, it strikes me that if Mr. Jimmerson or Mr. Rawlins wants to make a factual or legal argument about the naming of the entity respondent, it is not an issue for our Initial Administrative Call but rather would properly be submitted to the arbitrator following his or her selection.

On another note, where Texas has not adopted Model Rule of Professional Conduct 5.5(c)(3) allowing for unlicensed attorneys to provide legal services on a temporary basis in connection with a pending arbitration in the state, I will be filing in short order an application with the AAA for admission pro hac vice along with the supporting motion of my Texas-licensed co-counsel Jack E. Skaggs (cc'd).  I'd kindly ask for Mr. Jimmerson's and Mr. Rawlins' concurrence in the request.  I certainly have no objection to their similar involvement on a pro hac vice basis so long as they are sponsored by one or more attorneys licensed in Texas.

Thank you all.  I look forward to the call.

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Thursday, June 9, 2022 5:40 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; David Adler <dadler@jaffelaw.com>
**Cc:** Michael Rawlins <mrawlins@smithshapiro.com>; Andrew Pastor <aap@jimmersonlawfirm.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

Mr. Barton,

As I informed Mr. Adler, I represent Cash Cloud Inc., the purchaser of the equipment from Mr. Adler's client, Cole Kepro International, LLC. Michael Rawlins, copied here, represents Coin Cloud LLC. Given the issues I have raised with Mr. Adler, including his refusal to have a call with me, we look forward to the call. I have entered my availability on the sheet. My client reserves all rights, without waiver. If you have any questions or concerns, please let me know.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 1:08 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>
**Cc:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

Thank you. Counsel Jimmerson – Please confirm you will be representing the Respondent.

Best,

Iman

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Wednesday, June 8, 2022 2:38 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>
**Cc:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>

**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*\* External E-Mail – Use Caution \*\*\***

I understand that James Jimmerson is counsel to respondent.  I've cc'd him.

Thank you,

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



<u>Signature</u>: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
<u>Confidentiality</u>: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 2:54 PM
**To:** David Adler <dadler@jaffelaw.com>; AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

Your submission saved. Thank you for double checking.


Best,

Iman


---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Wednesday, June 8, 2022 1:50 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** RE: 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

**\*\*\* External E-Mail – Use Caution \*\*\***

I believe I responded using the link you sent but cannot be sure.  I'm generally available on all of the proposed dates through 4:00 EST.

Thank you,

**David Adler**
dadler@jaffelaw.com
248.727.1563

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com



Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



---

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 8, 2022 12:27 PM
**To:** AAA Andrew Barton <AndrewBarton@adr.org>; David Adler <dadler@jaffelaw.com>; 'jeff@coin.cloud' <jeff@coin.cloud>
**Subject:** 20220608 Request for Admin Conference: Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

---

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

All,


We will be moving forward with setting the Initial Administrative Call for this case.


You may use the following link to enter your availability:


**https://www.when2meet.com/?15873057-Qnh9Y**


Simply enter your name (no password), highlight your availability and close the page to save. Please enter your availability no later than **Monday, June 13, 2022**.


An additional copy of this email will be sent to Respondent as follows:


Smith & Shapiro, PLLC
3333 East Serene Avenue, Suite 130
Henderson, NV 89074


Best,

Iman

**From:** AAA Andrew Barton <AndrewBarton@adr.org>
**Sent:** Wednesday, June 1, 2022 3:13 PM
**To:** 'dadler@jaffelaw.com' <dadler@jaffelaw.com>; 'jeff@coin.cloud' <jeff@coin.cloud>
**Cc:** AAA Andrew Barton <AndrewBarton@adr.org>
**Subject:** Demand for Arbitration - Cole Kepro International, LLC -vs- Coin Cloud, LLC AAA Case#: 01-22-0002-2548

June 1, 2022

David Adler, Esq.
Jaffe Raitt Heuer & Weiss
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Via Email to: dadler@jaffelaw.com

Case Number: 01-22-0002-2548

Cole Kepro International, LLC -vs- Coin Cloud, LLC

Dear Counsel:

This will acknowledge receipt on May 27, 2022, of a Demand for Arbitration providing for administration of a controversy arising out of a contract between the above-captioned parties, containing a clause providing for administration by the American Arbitration Association (the AAA). We understand that a copy was sent to Respondent. As the claim exceeds $500,000.00, the Large Complex Case Procedures will apply unless the parties agree otherwise. Please refer to our website, www.adr.org, for a copy of our Commercial Arbitration Rules and Mediation Procedures and to access AAA WebFile which allows parties to perform a variety of case related activities online.

Claimant has provided the following contact information for respondent.  If represented, we ask Coin Cloud to provide additional detail so we may include such in future correspondence.

    Jeffrey L. Garon
    jeff@coin.cloud

    Smith & Shapiro, PLLC
    3333 East Serene Avenue, Suite 130
    Henderson, NV 89074

Pursuant to the parties' arbitration clause, the hearing locale shall be Tarrant County, TX. In accordance with the Rules, Respondent may file an answering statement with the AAA within 14 calendar days from the date of this letter. If no answering statement is filed within the stated time, the respondent will be deemed to deny the claim. Failure to file an answering statement shall not delay the arbitration from proceeding forward.

A Respondent may file a counterclaim at any time after notice of the filing of the Demand. If a counterclaim is asserted, it shall meet all filing requirements as described in the Rules. The filing fee, as prescribed in the applicable AAA Fee Schedule, must be paid at the time of filing. Counterclaims that do not meet the filing requirements will not be presented to the arbitrator until such time the filing is perfected. If the deficiencies are not cured by the date specified by the AAA, the counterclaim may be returned to the filing party.

We invite the parties to consider mediation, at this early stage in the arbitration process, in an effort to resolve your dispute more quickly and economically. If you are interested in Mediation at this time, please contact me at your earliest opportunity.

If you have a Webfile account, you should see this case listed when you log in. If you do not see the case number when you login, please contact the undersigned. If you do not have a Webfile account, please email a request for a registration code to: customerservice@adr.org and they will send you an email with the code and instructions for registering for immediate case access.

If you have questions regarding any of the information in this letter, please feel free to call me at your convenience. I look forward to assisting you in this matter.

Sincerely,

Andrew B Barton
Vice President
Direct Dial: (210)998-5750

# EXHIBIT 19

# EXHIBIT 19

| | |
|---|---|
| **From:** | Andrew Cashin <andrew@colekepro.com> |
| **Sent:** | Monday, November 1, 2021 8:32 AM |
| **To:** | jeff@coin.cloud |
| **Cc:** | Bernadette Dennehy; cory@andersongroup.com; Andrew Cashin |
| **Subject:** | FW: Coin Cloud Next generation cabinet costed BOM |
| **Attachments:** | C-2961-01-000-Next Generation BOM - 8-17-2021.xlsx; # Terms.pdf; text_0.txt; Please_DocuSign_PO_Cole_Kepro_8252021-1.docx.pdf |

Jeff as discussed:

Please confirm the following Purchase Order for $100,000,000.
Rick and I quoted $10,430 x 10,000 kiosks but Rick didn't include our standard Terms and conditions page which is included on all quotes.
You and I negotiated via a text and calls to decrease price to $10,000 and extend terms from 45 to 70 days.
The result was the issuance of the Purchase Order from your company.

Andrew Cashin

---

**From:** Rick Durica <rick@colekepro.com>
**Sent:** Monday, November 1, 2021 7:54 AM
**To:** Andrew Cashin <andrew@colekepro.com>
**Subject:** FW: Coin Cloud Next generation cabinet costed BOM


Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at www.colekepro.com



**THE RECOGNIZED LEADER IN GAMING CABINETS™**
**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at www.colekepro.com

**From:** Rick Durica <<u>rick@colekepro.com</u>>
**Sent:** Tuesday, August 17, 2021 3:29 PM
**To:** Jeffrey Garon <<u>jeff.garon@coin.cloud</u>>; Rob Arnold <<u>rob.arnold@coin.cloud</u>>; <u>james.bauer@coin.cloud</u>; <u>david.ellingson@coin.cloud</u>; Andrew Cashin <<u>andrew@colekepro.com</u>>
**Subject:** Coin Cloud Next generation cabinet costed BOM

Hello Gentlemen,
I have attached the costed BOM for the next generation cabinet assembly,

We have a price of $10,430 each using the same LCD manufacture as the current blue box

Please let me know if you have any questions

Thank you

Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at <u>www.colekepro.com</u>



**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at <u>www.colekepro.com</u>

# EXHIBIT 20

# EXHIBIT 20

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone        (702) 633-4270



THE RECOGNIZED LEADER IN GAMING CABINETS™

## COLE KEPRO
## TERMS AND CONDITIONS OF SALE

# 1. DEFINITIONS

For the purposes of these Terms and Conditions of Sale ("Agreement" or "Terms of Sale), the following terms shall have the meanings set forth below:

"Cole Kepro" or "Seller" shall mean Cole Kepro International, LLC, and all of its divisions, affiliates, and subsidiaries;

"Parties" shall mean Cole Kepro and Purchaser, collectively;

"Purchaser" shall mean the other party signing the Quotation, or submitting a purchase order based on Cole Kepro's Quotation;

"Price" shall mean the price for the Products as currently set out in the Quotation;

"Products" shall mean the Cole Kepro products described in the Quotation;

"Quotation" shall mean that certain quotation or proposal from Cole Kepro issued herewith, which is hereby incorporated by reference for all purposes.

# 2. PURCHASE AND SALE OF PRODUCTS

**2.1 Terms and Conditions.** All purchases of Product by Purchaser from Cole Kepro hereunder shall be subject to the Terms of Sale contained herein. Unless otherwise expressly agreed in writing by a duly authorized representative of Cole Kepro, these Terms of Sale supersede all other communications and agreements and constitutes the entire Agreement between Cole Kepro and Purchaser. Purchaser acknowledges that Cole Kepro sells the Products solely pursuant to the Terms of Sale set forth herein. Accordingly, any terms or conditions that may be contained in any purchase order or other form of Purchaser shall be absolutely without force or effect, regardless of when received by Cole Kepro. Any additional or different terms on Purchaser's purchase order are deemed material alterations to this Agreement between Cole Kepro and Purchaser, and Cole Kepro hereby gives notice of its objection to them.

**2.2 Prices.** The Price to Purchaser for the purchase of each of the Products shall be set forth in the Quotation, shall be in U.S. Dollars, shall include packaging for domestic shipment, and shall be exclusive of any other amounts, including, without limitation, taxes, freight, insurance, special packaging, and other shipping expenses. Except as otherwise explicitly stated in the Quotation, Cole Kepro has the right at any time to revise the prices in the Quotation without notice to Purchaser, and such revisions shall apply to all orders received after the effective date of revision. The Price to Purchaser does not include any federal, provincial, state or local property, license, privilege, sales, service, use, excise, value added, gross receipts, or other like taxes, which may now or hereafter be applicable to, measured by, or imposed upon, the Products, their replacement, value, or use, or any services performed in connection therewith.

**2.3 Order and Acceptance.** All orders for Product submitted by Purchaser shall be initiated by written purchase order sent to Cole Kepro and must contain language that expressly incorporates Cole Kepro's Quotation. No order shall be binding on Cole Kepro until such order is accepted in writing by Cole Kepro or until the Product has shipped by Cole Kepro in accordance with the Purchase Order. Cole Kepro will use reasonable efforts to notify Purchaser of the acceptance of an order within five (5) business days of its receipt of an order, or at Cole Kepro's sole discretion, deliver the ordered Products. Cole Kepro reserves the right to accept or reject any purchase order. Possession of a price list by Purchaser does not constitute an offer to sell. On orders for non-stock goods, or special orders, or where manufacturing processes make it difficult to provide the exact quantity specified, Cole Kepro reserves the right to under-ship or over-ship Product and invoice Purchaser accordingly.

**2.4 Payment.** Cole Kepro will invoice Purchaser for each shipment. The amount invoiced will include the price plus all applicable taxes, fees, transportation, insurance, and other charges. If all Products in Purchaser's purchase order are not shipped at the same time, Cole Kepro will invoice Purchaser at the time of shipment for the Products that have shipped. Provided Purchaser has an approved credit application and unless otherwise agreed in writing, one hundred percent (100%) of the amount invoiced shall be due in full and payable thirty (30) days from the invoiced date or within the established and authorized pay period, and payment shall be made in U.S. Dollars by wire transfer, check, or other instrument approved by Cole Kepro. Any invoiced amount not paid when due shall be subject to a service charge of one and one-half percent (1.5%) per month or the maximum amount allowable by law, whichever is greater. Cole Kepro may also, at its option, 1) revoke any previously granted terms of credit, and/or 2) revoke any previously granted discount, reverting to Cole Kepro's standard pricing. Purchaser agrees to no rights of setoff for any amounts it owes for particular Products against amounts owed it by Cole Kepro. If Purchaser fails to make timely payments of outstanding invoices, Cole Kepro may withhold or suspend its performance under this Agreement. Purchaser shall pay all of Cole Kepro's costs and expenses (including its reasonable attorney's fees) to enforce and preserve Cole Kepro's rights under this subsection.

**2.5 Default.** Failure on the part of Purchaser to pay invoices when due shall, at the option of Cole Kepro, constitute a default and subject Purchaser to all other remedies Cole Kepro may have under these Terms of Sale or applicable law. If, in the judgment of Cole Kepro, the financial condition of Purchaser at any time before delivery of Products does not justify the terms of payment specified, Cole Kepro may require payment in advance or cancel any outstanding order, whereupon Cole Kepro shall be entitled to receive reasonable charges. If delivery is delayed by Purchaser, payment shall become due on the date Cole Kepro is prepared to make delivery. Should manufacture be delayed by or at the request of Purchaser, pro rata payments shall become due if and to the extent required of Cole Kepro, in its sole discretion. Delays in delivery or nonconformities in any installment shall not relieve Purchaser of its obligations to accept and pay for remaining installments. Cole Kepro reserves all other rights granted to a seller pursuant to the Uniform Commercial Code ("UCC") for Purchaser's failure to pay for the goods or other breach by Purchaser of the Terms of Sale listed herein. If, despite any default by the Purchaser, Cole Kepro elects to continue to make deliveries, its actions shall not constitute a waiver of any default by the Purchaser or in any way effect Cole Kepro's remedies provided herein or by law for any such default.

**2.6 Delivery Terms.** All Prices are FOB Cole Kepro's manufacturing facility or warehouse, unless agreed in writing by Cole Kepro. Cole Kepro shall not be liable for any goods lost, damaged, or destroyed in transit, it being agreed by the Parties that all risk of such loss, damage, or destruction is assumed by Purchaser. When the scheduled delivery of Products is delayed by Purchaser, Cole Kepro may deliver such Products by storing them for the account of and at the sole risk of Purchaser. Shipping dates are approximate and are based upon prompt receipt of all necessary information and approvals from Purchaser. Cole Kepro reserves the right to pack or ship orders in the most economical manner, however, where Purchaser requests special packaging or shipping, any additional cost will be billed to Purchaser and be the responsibility of Purchaser.

**2.7 Failure to Deliver and Force Majeure.** Cole Kepro shall not be responsible for delays in delivery, or failure to deliver due to causes beyond its reasonable control, including without limitation, acts of God, acts of purchaser, government action (civil or military), taking or preempting of Cole Kepro's production facilities, legal interferences or prohibitions, fires, strikes, or other labor difficulties, hostilities, insurrections or riots, terrorist actions or threats, embargoes, equipment breakdown, wrecks or delays in transportation, unusually severe weather, inability to obtain necessary labor, failure of suppliers, material or manufacturing facilities due to causes beyond its reasonable control or any like or dissimilar cause beyond its reasonable control. In the event of such delay, the date of delivery shall be extended for a period equal to the time lost by reason of the delay. Cole Kepro shall have the right, in its sole discretion, to furnish suitable substitutes for materials that cannot be obtained because of the above causes and to apportion its shipment among its Purchasers in such a manner as it shall be equitable. If the material, apparatus, or equipment is or thereafter becomes subject to government control, allocation, regulation or restriction, the necessary and proper rating certificate shall be supplied by the Purchaser. Delivery dates are from receipt of purchase order, prints, models, and materials, whichever is later, which are to be furnished by the Purchaser. Due to the nature of Cole Kepro's custom work, delivery dates are estimates and not guarantees, and Purchaser understands and agrees to reasonable delays in delivery. Overtime and other direct costs incurred to hasten delivery of Purchaser's request shall be added to the stated prices and paid by Purchaser. Shipment of goods ready for delivery can be deferred beyond date for delivery only with Cole Kepro's consent and upon full payment of Cole Kepro's invoice for, same plus storage costs. There shall be no penalties for late shipments.

**2.8 Taxes.** Purchaser agrees to report and pay all taxes and assessments imposed on Purchaser or Cole Kepro in connection with the distribution and/or sale of Products hereunder including any sales, use, excise, and/or other taxes and duties, with the exception of taxes imposed on Cole Kepro's income. To the extent that Cole Kepro is required by statute or regulation to collect and report taxes, duties, purchases, or other costs to various authorities (both foreign and domestic), such taxes, duties, purchases, and /or any other costs will be billed directly to the Purchaser. If Purchaser is exempt from any such taxes, Purchaser must provide Cole Kepro with a valid exemption before shipment of the Products by Cole Kepro.

**2.9 Cancellation or Changes.** An accepted purchase order is not subject to cancellation for change except on terms acceptable and satisfactory to Cole Kepro, including reasonable cancellation charges in the event of cancellation or an equitable price adjustment in the event of changes in order. Direction from Purchaser to cancel may be treated as a repudiation, making the Purchaser immediately liable for loss, expense, and other damages sustained. If the purchase order is canceled or delayed before the completion of the contract, Purchaser shall reimburse and/or indemnify Cole Kepro for costs incurred by Cole Kepro up to the date of cancellation or delay and for all damages sustained by Cole Kepro due to cancellation or delay of the contract.

**2.10 Modifications to Designs.** Cole Kepro shall have the right, in its absolute discretion, without liability to Purchaser, to (a) change the design, specifications, or construction of any Product, (b) discontinue the manufacture or sale of any Product; and/or (c) allocate, terminate, or limit deliveries in times of shortage. Purchaser will allow extra charges for authorized or requested changes to Purchasers design or specifications. Cole Kepro is not responsible for dimensional or other errors on Purchaser's drawings, and Purchaser shall reimburse Cole Kepro for additional costs resulting from such errors.

**2.11 Security Interest.** For the purpose of securing payment of the price of Cole Kepro's Products and all other charges payable to Cole Kepro hereunder, Purchaser hereby grants to Cole Kepro a security interest in each and every Product delivered to Purchaser under this Agreement, including, without limitation, any proceeds from its resale or distribution, or from insurance held by Purchaser covering the Products. Upon request by Cole Kepro, Purchaser shall cooperate with Cole Kepro and execute any necessary documents, including but not limited to the execution and filing of UCC-1 financing statements, to perfect Cole Kepro's security interest granted herein, where required by state law. These interests will be deemed satisfied and released by payment in full of the purchase price and all other charges payable hereunder for each such period.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

Cole Kepro International
4170 Distribution Circle
North Las Vegas, NV 89030 USA
Telephone    (702) 633-4270



**2.12 Shipping.** All shipment dates provided by Cole Kepro are estimates only, and Purchaser acknowledges that such dates may change due to events and circumstances beyond the control of Cole Kepro. Products delivered pursuant to the terms of this Agreement shall be suitably packed for shipment in Cole Kepro's standard shipping cartons, marked for shipment to Purchaser's address, and delivered to Purchaser or its carrier agent FOB Cole Kepro's manufacturing plant or warehouse, at which time risk of loss shall pass to the Purchaser. Unless otherwise instructed by the Purchaser, Cole Kepro shall select the carrier. All freight, insurance, and other shipping expenses, as well as any special packing expense shall be paid by the Purchaser. Purchaser also agrees that no delivery pursuant to this Agreement shall be construed as a single lot contract under the UCC. In addition, remedies provided under a single lot contract shall not apply to any shipment hereunder.

**2.13 Product Acceptance.** Purchaser shall be deemed to have accepted delivery of Products ("Product Acceptance") and all shipments and charges shall be deemed correct, unless Cole Kepro receives written notice of objection within ten (10) business days from the date of delivery (the "Rejection Period"). After Product Acceptance, Purchaser agrees that its remedies are limited to the remedies contained in Section 3 (Warranty and Limitation of Liability) of this Agreement. In the event of rejection of the Product within the Rejection Period, Purchaser shall give notice to Cole Kepro of such rejection pursuant to subsection 3.2, below.

# 3. WARRANTY AND LIMITATION OF LIABILITY

**3.1 Limited Warranty.** The Products sold hereunder shall be subject to the following limited warranty (the "Limited Warranty"). Mechanical Components are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of one year from the date of Cole Kepro International, LLC (seller) shipment. Electrical Components, excluding LCD panels, are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of ninety days from the date of Seller's shipment. LCD Panels are warranted to the original purchaser against defects in materials and workmanship under normal use and operation for a period of two years from the date of Seller's shipment. Seller's sole and exclusive obligation hereunder is to repair or replace any defective component(s) provided that Seller receives written notice of the defect during the period of warranty and purchaser receives written authorization for return of component(s) to Seller. Any defective item(s) to be returned at purchaser's expense to Cole Kepro International, LLC 4170-103 Distribution Circle, North Las Vegas, NV 89030 within 30 days of purchaser's written notice of the defect. The expense of removal and installation of any item(s) of equipment shall not be included in this warranty. In no event shall Seller be liable for any special, general, incidental or consequential damages to purchaser or any third party caused by any defective item of equipment whether defect is warranted against or not. Cole Kepro International, LLC shall have no obligation under this agreement to make repairs or replacement necessitated by act of God, act of terrorism, fault, misuse, modification, negligence or accident of purchaser or other users. ALL OTHER WARRANTIES AS TO THE QUALITY, CONDITION, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT OTHER THAN THOSE STATED ABOVE IS EXPRESSLY DISCLAIMED.

**3.2 Return Material Authorization.** In the event of rejection under Section 2.13 or defect under 3.1, Purchaser must give written notice to Cole Kepro of such event requesting a Return Material Authorization ("RMA") number. Any such notice must furnish the following information with the Product returned to the Seller: (a) Purchaser's name and complete address; (b) name and telephone number of Purchaser's employee to contact if there are questions about the returned Product; (c) "Ship to" address for return of repaired Product, if different from original delivery address; (d) a complete list of Product returned, including description and serial number; and (e) a description of the nature of the defect. Cole Kepro will provide the RMA to Purchaser within five (5) business days after receipt of Purchaser's proper and timely notice. Within thirty (30) days after its receipt of the RMA, Purchaser will return the rejected Product to Cole Kepro, or its designee, freight or postage prepaid, in its original shipping carton or a functionally equivalent container. Cole Kepro reserves the right to refuse to accept any return Product (a) not bearing an RMA number on the outside of the carton; (b) not containing the required documentation accompanying the shipment; or (c) not shipped in its original shipping carton or a functionally equivalent container.

**3.3 Limitation of Liability.** Cole Kepro's obligation under its warranty is strictly and exclusively limited to the repair or replacement of such Product found to be defective in material or workmanship on the condition that the Purchaser gives prompt written notice to Cole Kepro of any claim within the Rejection or Warranty Periods, and, if requested, returns the defective articles to Cole Kepro. Cole Kepro will not assume any expenses or liability for repairs made to its Products outside of its plant, without its prior written consent. Any unauthorized repair shall void the Limited Warranty contained herein. Cole Kepro reserves the right to satisfy its warranty obligation in full, with respect to defective articles, by the payment to the purchaser of all sums paid by the Purchaser to Cole Kepro for such Products. IN NO EVENT SHALL Cole Kepro BE LIABLE FOR CLAIMS (BASED UPON BREACH OF CONTRACT, EXPRESS OR IMPLIED WARRANTY, NEGLIGENCE, OR OTHERWISE) FOR ANY DAMAGES, WHETHER DIRECT, IMMEDIATE, INCIDENTAL, FORESEEABLE, CONSEQUENTIAL, PUNITIVE, OR SPECIAL, including but not limited to, loss of profits or revenue, loss of use of the Products or facilities or service, downtime cost, or claims of the Purchaser for such damages. Cole Kepro's liability on any claim whether in contract, tort (including, but not limited to, negligence), warranty, strict liability, or otherwise for any loss or damage arising out of connected with, or resulting from these Terms of Sale or the performance or breach thereof, or from the design, manufacture, sale, delivery, resale, repair, replacement, installation, technical direction of installation, inspection, servicing, operation or use of any Product covered by or furnished under this contract shall be limited to, and in no case shall such damages exceed, the purchase price of the Product or the portion thereof which gives rise to the claim.. PURCHASER ACKNOWLEDGES THAT IT HAS NOT BEEN INDUCED TO PURCHASE THE PRODUCTS MANUFACTURED BY Cole Kepro BY ANY REPRESENTATION OR WARRANTY NOT SET FORTH IN THESE TERMS OF SALE. THIS LIMITATION OF LIABILTY CANNOT BE WAIVED OR AMENDED BY ANY PERSON. THIS LIMITATION OF LIABITY WILL BE EFFECTIVE EVEN IF Cole Kepro KNEW OR SHOULD HAVE KNOWN OF THE POSSIILITY OF SUCH DAMAGES.

# 4. GENERAL PROVISIONS

**4.1 Intellectual Property.** The sale of Products covered by this Agreement shall not confer upon Purchaser any license to manufacture under any patents owned or controlled by Cole Kepro, its affiliates, and subsidiaries, it being specifically understood and agreed that all such rights are reserved to Cole Kepro, its subsidiaries, and affiliates. Purchaser will not use or authorize anyone else to use Cole Kepro's name or trademarks. Any use which Purchaser makes of Cole Kepro's name or trademarks will inure to Cole Kepro's sole benefit, and Purchaser will accrue no rights in such name or trademarks. All trademarks, trade names, patents, copyrights, designs, drawings, formulas, or other data, photographs, samples, literature, and sales aids of every kind shall remain the property of Cole Kepro. Purchaser agrees not to do anything inconsistent with that ownership or to contest ownership of such items.

**4.2 Amendment and Termination.** Cole Kepro may amend these Terms of Sale at will, with or without cause, on thirty (30) days' notice to Purchaser. Cole Kepro may terminate these Terms of Sale at will, with or without cause, on three (3) days' notice to Purchaser.

**4.3 Governing Law and Jurisdiction.** This Agreement shall be governed and construed under the laws of the State of Texas, U.S.A., without reference to choice of law principles. Any dispute or claim arising out of or relating to this Agreement, or the performance or breach thereof, shall be settled in Tarrant County, Texas by arbitration administered by the American Arbitration Association, in accordance with its Commercial Arbitration Rules, which are expressly incorporated herein by reference. Judgment on any award rendered by the arbitrator(s), including attorney's fees and costs of arbitration, may be entered in any court in Tarrant County, Texas having jurisdiction to hear such matters. The parties hereby acknowledge and consent to the jurisdiction of the Texas courts and venue in Tarrant County, Texas for all purposes.

**4.4 Legal Expenses.** In any action between the parties arising out of or connected with these Terms and Conditions, the prevailing party in such action shall be awarded, in addition to any damages, injunctive or other relief, all of its costs and expenses, including but not limited, to its reasonable attorney's fees.

**4.5 Indemnification.** Purchaser agrees to defend, protect, save, and hold harmless Cole Kepro against all suits from all damages, claims, and demands for actual or alleged infringement of any patent, trademark, or copyright by reason of Cole Kepro's execution of the designs, prints, drawings, requirements, or specifications of Purchaser.

**4.6 Purchaser's Property.** Cole Kepro shall have the right to scrap, without liability, prints submitted for quotation, as well as models, patterns, tools, fixtures or other property belonging to Purchaser unless written directions for shipment of such property are given to Cole Kepro within ten (10) days of notification by Cole Kepro.

**4.7 Entire Agreement.** These Terms of Sale and the documents expressly incorporated by reference herein set forth the entire Agreement and understanding of the parties relating to the subject matter herein and merges all prior discussions between them. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, shall be effective unless placed in writing, and signed by authorized representatives of the Parties.

**4.8 Notices.** Any notice required or permitted by these Terms of Sale shall be in writing and shall be sent by prepaid registered mail or certified mail, return receipt requested, to the address shown on the Quotation, if to the Seller, or to the address shown on the Purchase Order, if to the Purchaser.

**4.9 Severability.** If any provision in this Agreement is found or held to be invalid or unenforceable in any respect, such unenforceability will not affect any other provisions of this Agreement, provided that the expected economic benefit of this Agreement is not denied to either party.

**4.10 Headings.** The captions and headings in this Agreement are for convenience of reference only and shall not affect the interpretation of this Agreement.

**4.11 Singular and Plural.** When required by the context hereof, the singular includes the plural and vice versa.

**4.13 Waiver:** No provision hereof and no breach of any provision shall be deemed waived by reason of any previous waiver of such provision of any breach thereof. There are no understandings, conditions, or agreements relative to the Quotation that are not fully expressed hereon.

ALL PRICES QUOTED ARE SUBJECT TO APPLICABLE SALES TAXES UNLESS EXEMPTION CERTIFICATE IS FURNISHED

*Quotation valid for 30 days from date above.*

# EXHIBIT 21

# EXHIBIT 21

**From:** jeff@coin.cloud
**Sent:** Monday, November 1, 2021 8:49 AM
**To:** Andrew Cashin
**Cc:** Bernadette Dennehy; cory@andersongroup.com; james.bauer@coin.cloud
**Subject:** Re: Coin Cloud Next generation cabinet costed BOM

Andrew,

Yes, confirmed. This is correct.

Jeff



Jeffrey L. Garon
Coin Cloud | Co-President & CFO
Coincloudatm.com   |   jeff@coin.cloud
1 650 208 5804 Cell

This e-mail message, including attachments, may contain confidential information for the sole use of the intended recipient(s). If you are not the intended recipient, then this is notice that any use, disclosure, dissemination, distribution or copying is strictly prohibited.  If you have received this message in error please contact the sender by reply mail and destroy all copies of the original message.
Please consider the environment before printing this e-mail.
Reduce, Reuse & Recycle.

On Nov 1, 2021, at 8:31 AM, Andrew Cashin <andrew@colekepro.com> wrote:

Jeff as discussed:

Please confirm the following Purchase Order for $100,000,000.
Rick and I quoted $10,430 x 10,000 kiosks but Rick didn't include our standard Terms and conditions page which is included on all quotes.
You and I negotiated via a text and calls to decrease price to $10,000 and extend terms from 45 to 70 days.
The result was the issuance of the Purchase Order from your company.

Andrew Cashin

**From:** Rick Durica <rick@colekepro.com>
**Sent:** Monday, November 1, 2021 7:54 AM
**To:** Andrew Cashin <andrew@colekepro.com>
**Subject:** FW: Coin Cloud Next generation cabinet costed BOM

Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at [www.colekepro.com](www.colekepro.com)
 <image001.jpg>   <image002.jpg>
**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at [www.colekepro.com](www.colekepro.com)

---

**From:** Rick Durica <[rick@colekepro.com](rick@colekepro.com)>
**Sent:** Tuesday, August 17, 2021 3:29 PM
**To:** Jeffrey Garon <[jeff.garon@coin.cloud](jeff.garon@coin.cloud)>; Rob Arnold <[rob.arnold@coin.cloud](rob.arnold@coin.cloud)>;[james.bauer@coin.cloud](james.bauer@coin.cloud); [david.ellingson@coin.cloud](david.ellingson@coin.cloud); Andrew Cashin <[andrew@colekepro.com](andrew@colekepro.com)>
**Subject:** Coin Cloud Next generation cabinet costed BOM

Hello Gentlemen,
I have attached the costed BOM for the next generation cabinet assembly,

We have a price of $10,430 each using the same LCD manufacture as the current blue box

Please let me know if you have any questions

Thank you

Rick Durica
Vice President, Sales
Cole Kepro International, LLC
4170-103 Distribution Circle
North Las Vegas, Nevada  89030

702-795-1439 Direct Dial
702-493-5055 Cell
702-633-4270 Office
702-633-5088 Fax

Visit our website at [www.colekepro.com](www.colekepro.com)

 

THE RECOGNIZED LEADER IN GAMING CABINETS™

**Winner of the 2013 Frost & Sullivan Manufacturing Leadership Award for Operational Excellence.**

Confidentiality Notice: This email message and any attachments hereto contain confidential information belonging to Cole Kepro International, LLC. This information is intended solely and exclusively for the person or persons named above as the intended recipient here of. If you are not the recipient, any disclosure, copying, distribution or use of the contents of this transmission is completely and fully prohibited. If you receive this email in error, please return by forwarding the message and any attachments here to the sender.

Visit our website at [www.colekepro.com](www.colekepro.com)

<C-2961-01-000-Next Generation BOM - 8-17-2021.xlsx><# Terms.pdf><text_0.txt><Please_DocuSign_PO_Cole_Kepro_8252021-1.docx.pdf>


This e-mail message, including attachments, may contain confidential information for the sole use of the intended recipient(s). If you are not the intended recipient, then this is notice that any use, disclosure, dissemination, distribution or copying is strictly prohibited.  If you have received this message in error please contact the sender by reply mail and destroy all copies of the original message.

Please consider the environment before printing this e-mail. Reduce, Reuse & Recycle.