Electronically Filed
10/24/2022 3:25 PM
Steven D. Grierson
CLERK OF THE COURT

**MRCN**
Dan R. Waite, (Nevada SBN: 4078)
DWaite@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel:    702.949.8200
Fax:    702.949.8398

David Z. Adler (Michigan SBN: P71227)
*(Admitted Pro Hac Vice)*
DAdler@jaffelaw.com
JAFFE RAITT HEUER & WIESS, P.C.
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel:    248.727.1563

*Attorneys for Defendant, Cole Kepro International, LLC*

## IN THE EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC., a Nevada corporation, | Case No.:  A-22-854226-B |
| Plaintiff, | Dep't No.:  22 |
| vs. | **Hearing Requested** |
| COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company, | **Motion for Reconsideration of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party in Interest** |
| Defendant. | |

COMES NOW, Defendant Cole Kepro International, LLC ("Cole Kepro"), through their attorneys of record Dan R. Waite of Lewis Roca Rothgerber Christie LLP and David Z. Adler of Jaffe Raitt Heuer & Weiss, P.C., file their Motion for Reconsideration of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party in Interest, pursuant to EDCR 2.24(b).

Dated this 24th day of October, 2022.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Dan R. Waite*
     Dan R. Waite (Nevada SBN. 4078)
     DWaite@lewisroca.com
     3993 Howard Hughes Parkway, Suite 600
     Las Vegas, NV  89169
     Tel:702.949.8200

119232705.1

1
2
3
4
5
6
7

JAFFE RAITT HEUER & WIESS, P.C.

David Z. Adler (Michigan SBN: P71227)
*(Admitted Pro Hac Vice)*
DAdler@jaffelaw.com
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Defendant, Cole Kepro
International, LLC*

8    Defendant Cole Kepro International, LLC ("Cole Kepro") hereby moves for reconsideration

9  of the Court's October 10, 2022 Order solely as it concerns the contested real plaintiff party in

10 interest.  Respectfully, to the extent that the Court had intended for the Order to state that "in 2021

11 [Plaintiff Cash Cloud Inc.] had purchased 4,080 4th Generation kiosks from Cole Kepro", the finding

12 constitutes clear error where no fact issue exists that the subject transaction was instead between

13 Cole Kepro and a purchasing party called "Coin Cloud, LLC."

14    The purchase order on which the Complaint is based explicitly designates the contracting

15 purchaser as "<u>Customer</u> – Coin Cloud, LLC."  Moreover, the purchase order was signed by each of

16 Coin Cloud, LLC's VP of Operations James Bauer, its CFO/COO Jeffrey Garon, and its

17 President/CEO Chris McAlary, who is a common owner and manager of both Coin Cloud, LLC

18 and the improperly designated plaintiff, Cash Cloud Inc.

19    Cole Kepro states as follows for its brief in support of this motion:

20    1.    The Court has been comprehensively apprised of the dispute arising from the subject

21 Purchase Order Number 04302021-2 (the "Purchase Order") on which Plaintiff Cash Cloud Inc.'s

22 ("Cash Cloud") Complaint is based.  The Complaint alleges that Cash Cloud ordered 4,080 digital

23 currency kiosks from Cole Kepro pursuant to the Purchase Order, and that "[u]nfortunately, the

24 4,080 digital currency kiosks purchased by Cash Cloud were defective." Complaint, ¶¶ 25 & 28.

25    2.    In conjunction with its Complaint, Cash Cloud filed a motion for declaratory

26 judgment and for a stay of proceedings relating to an arbitration previously initiated by Cole Kepro

27 against Cash Cloud's separate affiliate entity, Coin Cloud, LLC ("Coin Cloud").  Cole Kepro had

28 initiated the arbitration based, among other things, on Coin Cloud's failure to pay substantial

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169

LEWIS ROCA

119232705.1

1    amounts it owed Cole Kepro under the Purchase Order.

2        3.    Cash Cloud itself attached a copy of the Purchase Order at Exhibit 12 to its motion

3    for declaratory judgment, leaving no question as to the specific document upon which Cash Cloud

4    predicates its claim for breach of contract among the other counts in this action. **Exhibit 1**, Purchase

5    Order.

6        4.    In response to Cash Cloud's motion for declaratory judgment, Cole Kepro brought

7    a countermotion to dismiss the action based on the independent grounds that: (i) an agreement

8    existed to arbitrate disputes relating to the Purchase Order; and (ii) Coin Cloud, not Cash Cloud,

9    was the contracting purchaser under the Purchase Order, and therefore the real party plaintiff in

10    interest in any event.

11        5.    In its countermotion, Cole Kepro established several uncontested facts by way of

12    declaration, including that "[Cole Kepro] has maintained a multi-year business relationship with an

13    entity whose purchase orders consistently designate it as 'Coin Cloud,' having its address at 9580

14    W. Sahara Blvd., Las Vegas, NV 89117." **Exhibit 2**, Cashin Dec., ¶ 4; **Exhibit 3**, Durica Dec., ¶ 4.

15    Consistent with the foregoing, and as a dispositive matter, Cole Kepro's countermotion likewise

16    established that the subject Purchase Order comprises a form bearing a logo with the name "Coin

17    Cloud," and explicitly designating the "**Customer**" as an entity called "**Coin Cloud, LLC**" having

18    its address at 9580 W. Sahara Blvd., Las Vegas, NV 89117. Ex. 1 (emphasis added).

19        6.    In its countermotion, Cole Kepro further underscored that the Purchase Order was

20    signed by each of Coin Cloud, LLC's VP of Operations James Bauer, its CFO/COO Jeffrey Garon,

21    and its President/CEO Chris McAlary, who, according to a declaration submitted by Mr. Garon, is

22    a common owner and manager of both Coin Cloud and the improperly designated plaintiff, Cash

23    Cloud.

24        7.    Given that Coin Cloud is the contractual privy having purchased the 4,080 digital

25    currency kiosks from Cole Kepro under the Purchase Order, there exists no basis for allowing the

26    action to continue with Cash Cloud as the plaintiff.  Cole Kepro's countermotion indeed addresses

27    the governing law in Nevada pursuant to which "[a]n action must be prosecuted in the name of the

28    real party in interest." NRCP 17(a)(1); *see High Noon at Arlington Ranch Homeowners Ass'n v.*

- 3 -

119232705.1

*Eighth Judicial Dist. Court*, 133 Nev. 500, 507, 402 P.3d 639 (2017) ("Under Nevada law, an action must be commenced by the real party in interest – 'one who possesses the right to enforce the claim and has a significant interest in the litigation.' [citations omitted]. Generally, a party has standing to assert only its own rights and cannot raise the claims of a third party not before the court."); *Arguello v. Sunset Station, Inc.*, 127 Nev. 365, 368, 252 P.3d 206, 208 (2011) ("NRCP 17(a) provides that '[e]very action shall be prosecuted in the name of the real party in interest.' A real party in interest 'is one who possesses the right to enforce the claim and has a significant interest in the litigation.' [citation omitted]. The inquiry into whether a party is a real party in interest overlaps with the question of standing."); *NAD, Inc. v. Eighth Judicial Dist. Court of State*, 115 Nev. 71, 76, 976 P.2d 994, 997 (1999) ("NRCP 17(a) provides, in relevant part, that '[e]very action shall be prosecuted in the name of the real party in interest.' This language mandates that only a real party in interest may pursue an action in order to enable a defendant to avail himself of discoverable evidence and relevant defenses and assure him finality of judgment.").

8.     Under bedrock legal principles Cash Cloud's lack of contractual privity, and therefore its lack of standing, presents a threshold jurisdictional issue. That is, without standing, the Court lacks jurisdiction to hear and resolve the dispute. *See Stockmeier v. Nevada Dep't of Corr. Psych. Review Panel*, 122 Nev. 385, 393, 135 P.3d 220, 225-26 (2006).

9.     In determining the factual allegations of the complaint on which a plaintiff relies to bring its causes of action, the Court is not bound to accept factual allegations for which the plaintiff does not have standing to assert to establish a cause of action. *See Doe v. Bryan*, 102 Nev. 523, 525, 728 P.2d 443, 44 (1986); *Blanding v. City of Las Vegas*, 52 Nev. 52, 280 P. 644, 650 (1929). Likewise, in cases where, as here, a plaintiff seeks declaratory relief, the Nevada Supreme Court requires it "to meet increased jurisdictional standing requirements." *Stockmeier*, 122 Nev. at 393. In *Stockmeier*, the Nevada Supreme Court stated that it has a "long history of requiring an actual justiciable controversy as a predicate to judicial relief." *Ibid*.

10.     To define a justiciable controversy, the Nevada Supreme Court in *Doe v. Bryan* relied on *Kress v. Corey*, quoting among other things, "the party seeking declaratory relief must have a legal interest in the controversy, that is to say, a legally protectable interest". *Doe*, 102 Nev.

at 525 (quoting *Kress v. Corey*, 65 Nev. 1, 26, 189 P.2d 352, 364 (1948)).  To the contrary, and again fundamental to contract law, the privity doctrine dictates that a contract cannot confer rights on any person except the parties to the contract.  Because Cash Cloud is not the contracting party under the Purchase Order, it cannot pursue a claim for breach of the agreement or declaratory relief.  As a jurisdictional matter, the Court likewise cannot hear or resolve a claim to relief resting on the contractual interests of a third party. *See Doe, Stockmeier, and Kress, supra*.

11.    During the September 13, 2022 hearing on the parties' cross motions, Cole Kepro's counsel addressed the contractual privity issue as follows:

> Their own purchase order for the $35,000,000.00 transaction at issue, that's Exhibit 12 to their motion, that is on their form that says customer, Coin Cloud, LLC and lists the address for Coin Cloud, LLC.  On top of that they've confirmed by way of their briefing that Mr. - - I believe his name is McAlary sitting to my right is a principal and authorized signatory of Coin Cloud, LLC.  Your Honor, these 81 transactions that we've discussed over the course of two and a half years, every single quote was issued to a purchaser by the name of Coin Cloud and every corresponding purchase order was issued in the name of Coin Cloud and in this particular instance - - the $35,000,000.00 purchase order at issue says on their own form ["]customer,["] Coin Cloud, LLC.  I don't know how they could possibly argue that the correct party in interest is not Coin Cloud, LLC to these transactions. The only thing I've seen them argue is, well, Cash Cloud, Inc. even though it was never named on any quote or purchase order was the one that was making the payments.  Well, Your Honor, the man [i]n the moon could have paid my client and my client would have accepted payment but that doesn't beget a contractual relationship between my client and the man [i]n the moon and it certainly doesn't change the fact that the actual contractual privy is as named on the form Coin Cloud, LLC.

**Exhibit 4**, Hearing Tran., pp. 10-11.

12.    Cash Cloud's counsel responded to the foregoing argument by contending that Coin Cloud, LLC's designation as the purchasing customer on its own Purchase Order signed by its authorized principals was "obviously an error", and suggesting that Cole Kepro should have intuited that Cash Cloud was the real purchaser, despite what the Purchase Order says and notwithstanding no quote or purchase order having ever been issued by either party with "Cash Cloud Inc." listed as the purchaser. Ex. 4, pp. 11-12.

/ / / /

/ / / /

119232705.1

13.    At the hearing's conclusion, the Court stated exclusively as follows:

> I want to thank you both very much. I always enjoy the advocacy of good lawyers. But, I am going to grant the Motion for Declaratory Judgment and deny the countermotion. In my view there was no agreement to arbitrate the disputes over the purchase of the 4,000 fourth generation kiosks. So, counsel, will you prepare the order and pass it by Defense counsel so that he can review and approve as to form and content, not that you agree with my decision by that you certainly agree that that was the decision I made.

Ex. 4, p. 17.

14.    Where the Court had only ruled as to the arbitration issue, i.e., that "[i]n [its] view there was no agreement to arbitrate the disputes over the purchase of the 4,000 fourth generation kiosks", counsel for Cole Kepro candidly forgot to request that the Court clarify its ruling as to the contractual privity issue before the hearing concluded. Counsel for Cash Cloud took advantage of this by proposing an order containing the statement, among others, "THE COURT FURTHER FINDS that in 2021 Cash Cloud had purchased 4,080 4th Generation Kiosks from Cole Kepro." **Exhibit 5**, Email w/ Proposed Order, p. 2. In other words, counsel proposed an order deeming Cash Cloud the purchaser in contractual privity to the Purchase Order despite no such ruling having been made by the Court. *Ibid*. In similar fashion, counsel's proposed order likewise goes on to repeatedly refer to the transaction as "the purchase of 4,080 4th Generation kiosks by Cash Cloud from Cole Kepro" and "Cash Cloud's purchase of the 4,080 4th Generation kiosks from Cole Kepro." *Id*., pp. 2-3.

15.    The foregoing circumstances led to the parties' submission of competing orders. Notably, as it concerns the contractual privity issue, counsel's letter to the Court in support of Cash Cloud's proposed order offers nothing beyond the technical argument that the Court's statement "I am going to grant the Motion for Declaratory Judgment and deny the countermotion" reflects "a blanket denial of the Countermotion." **Exhibit 6**, Letter, p. 1. The letter does not suggest that the Court made any indication it believes Cash Cloud to be the party in contractual privity under the Purchase Order, and neither does it suggest that any cogent basis exists for such a ruling. *See* Ex. 6, *generally*.

/ / / /

/ / / /

- 6 -

119232705.1

16.      Although the Court went on to enter Cash Cloud's proposed order on October 10, 2022, Cole Kepro respectfully submits that it remains unclear whether the Court truly intended to rule that Cash Cloud is the proper plaintiff in privity to a transaction whose governing contract explicitly designates "Coin Cloud, LLC" as the purchaser.  Cole Kepro further submits that if this was indeed the Court's intention, then it constitutes a clear error that can and should be expediently rectified.

17.      Cash Cloud is dead wrong to contend that "the time to remedy any such confusion [over the instant issue] was during the hearing" (Ex. 6, p. 1) such that it cannot be subsequently addressed.  To the contrary, nothing prevents the Court from granting reconsideration to correct a mistake in preserving judicial economy and minimizing costs to the parties.  It is axiomatic, moreover, that because standing is a jurisdictional question, a defendant may raise it at any point in the litigation. *See, e.g., Frank v. Gaos*, 586 U.S. ___ (2019).

18.      It has been noted time and again across jurisdictions that trial courts should not be reluctant to correct their errors.  It would be a strange result to perpetuate an error on the grounds that the Court was not reminded of an issue before the closing of a hearing, or more generally upon a reluctance to reconsider issues, especially when the same error would be subject to correction on appeal but at much greater expense.

19.      Under the circumstances the Court should exercise its power to correct the clear error in the subject Order, to the extent it reflects that Cash Cloud and not Coin Cloud was the purchaser of the 4,080 4th Generation kiosks from Cole Kepro. *See Ins. Co. of the West v. Gibson Tile Co., Inc*., 134 P.3d 698, 705 (2006) (Maupin, J., concurring); *see also Harlow v. Children's Hosp*., 432 F.3d 50, 55 (1st Cir. 2005) ("interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case").

20.      A motion to reconsider is preferred over an appeal as a quicker, easier, and less expensive method of correcting error. *See, e.g., Osman v. Cobb*, 77 Nev. 133, 136, 360 P.2d 258, 259 (1961).  As one court explained:

> In doing what he did here [moving for relief from judgment under Rule 60(b) rather than proceeding directly to appeal], it would appear that he followed what we deem ordinarily to be the better practice of bringing to the attention of the trial court at

- 7 -

119232705.1

some appropriate time before appeal the errors which it is claimed have been committed.  The district court already familiar with the case is thereby given an opportunity to correct any mistakes it might have made and the parties will avoid the expenses and delays involved in appeals.

*Beshear v. Weinzapfel*, 474 F.2d 127, 130 (7th Cir. 1973).  Where the district court can correct an error on a motion for reconsideration, it should.

21.    Not only is reconsideration favored as an efficient alternative to appeal, but it is appropriate to avoid error even where the circumstances have not changed.  Indeed, "a district court may reconsider a previously decided issue if … the decision is clearly erroneous." *Masonry & Tile Contractors Ass'n of Southern Nevada v. Jolley, Urga & Wirth, Ltd.*, 113 Nev. 737, 741, 941 P.2d 486, 489 (1997); *see also Harvey's Wagon Wheel, Inc. v. MacSween*, 96 Nev. 215, 218, 606 P.2d 1095, 1097 (1980) (reconsideration is appropriate "[a]lthough the facts and the law [are] unchanged [if] the judge [is] more familiar with the case by the time the second motion [is] heard … .")  In other words, it is appropriate whenever the Court may have overlooked or misapprehended pertinent facts or law, or for some other reason mistakenly arrived at its earlier decision. *See* NRAP 40; *Nelson v. Dettmer*, 46 A.3d 916, 919 (Conn. 2012); *Viola v. City of New York*, 13 A.D.3d 439, 441 (N.Y. App.  Div. 2004).

22.    In this case, it is simply inconceivable that Cash Cloud could be properly deemed the correct plaintiff for all the reasons addressed previously and above, including where the Purchase Order on which the action is based explicitly designates "Coin Cloud, LLC" as the contracting purchaser.  To the extent that this was the intended ruling, Cole Kepro implores the Court to correct its clear error now so as to avoid the expense and delay inherent in an inevitable appeal.

23.    If it was truly the Court's intention to deem Cash Cloud the proper party plaintiff to this action, and the Court remains inclined to stand by said ruling, then Cole Kepro would respectfully request the issuance of a written opinion outlining the Court's factual findings in support.  Cole Kepro submits that such clarification will focus the issues moving forward, including for purposes of both discovery and appeal.

/ / / /

- 8 -

119232705.1

1    Wherefore, Cole Kepro respectfully requests that the Court reconsider and correct its

2    October 10, 2022 Order to the extent it reflects that Cash Cloud and not Coin Cloud was the

3    purchaser of the 4,080 4th Generation kiosks from Cole Kepro.

4    Dated this 24th day of October, 2022.

5                                        LEWIS ROCA ROTHGERBER CHRISTIE LLP

6
                                         By: */s/ Dan R. Waite*
7                                            Dan R. Waite (Nevada SBN. 4078)
                                             DWaite@lewisroca.com
8                                            3993 Howard Hughes Parkway, Suite 600
                                             Las Vegas, NV  89169
9                                            Tel: 702.949.8200

10                                       JAFFE RAITT HEUER & WIESS, P.C.

11                                          David Z. Adler (Michigan SBN: P71227)
                                            *(Admitted Pro Hac Vice)*
12                                          DAdler@jaffelaw.com
                                            27777 Franklin Road Suite 2500
13                                          Southfield, MI 48034
                                            Tel: 248.727.1563
14
                                            *Attorneys for Defendant, Cole Kepro*
15                                          *International, LLC*

16

17

18

19

20

21

22

23

24

25

26

27

28

- 9 -

119232705.1

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that on this day, I caused a true and correct copy of the following *"Motion for Reconsideration of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party in Interest"* to be E-Filed and served on the parties listed on the Court's E-Filing and serving System.

James J. Jimmerson, Esq.
jimmerson@jimmersonlawfirm.com
James M. Jimmerson, Esq.
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135

John Naylor, Esq.
jnaylor@naylorandbrasterlaw.com
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, Nevada 89145

*Attorneys for Plaintiff, Cash Cloud Inc.*

Dated this 24th day of October, 2022.

/s/ Luz Horvath
An Employee of Lewis Roca Rothgerber Christie LLP

119232705.1

# EXHIBIT 1



**P.O. NUMBER: 04302021 - 2**

**Vendor**
Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

**Customer**
Coin Cloud, LLC
9580 W. Sahara Blvd
Las Vegas, NV 89117
855-264-2046

| P.O. DATE | REQUISITIONER | SHIPPED VIA | Notes |
|-----------|---------------|-------------|-------|
| 04/30/2021 | Jim Bauer | N/A | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 4080 | Domestic | BNR Version of Blue Box Kiosk / including updated NUC PC and $200 discount on BNR from CPI | $8,464.00 | $34,533,120.00 |

| | SUBTOTAL | $34,533,120.00 |
|--|----------|----------------|
| | Total | $34,533,120.00 |

James M Bauer                    4/30/2021
AA5BDAAB031D43D...
James Bauer    VP of Operations           Date

Jeffrey L. Garon                 4/30/2021
9D8E2D939860422...
Jeffrey L. Garon    CFO/COO               Date

                                 4/30/2021
D8CB449ED70C498...
Chris McAlary    President/CEO            Date

# EXHIBIT 2

**DECLARATION OF ANDREW CASHIN**

I, Andrew Cashin, pursuant to NRS 53.045, declare the following:

1.      I am the President and CFO of Cole Kepro International, LLC ("CKI").

2.      I make this declaration based on personal knowledge, and if called to testify as a witness in this matter I would testify competently and consistently with the representations contained herein.

3.      This declaration is made in support of CKI's Response in Opposition to Plaintiff's Motion for Declaratory Judgment and for Stay of Arbitration Proceedings, in addition to CKI's Countermotion to Dismiss Case No. A-22-854226-C.

4.      CKI has maintained a multi-year business relationship with an entity whose purchase orders consistently designate it as "Coin Cloud," having its address at 9580 W. Sahara Blvd., Las Vegas, NV 89117.

5.      The allegation predicating the plaintiff's Complaint in Case No. A-22-854226-C is false, specifically that "[t]he 4,080 digital currency kiosks purchased suffer from a screen defect which interferes with the normal operation of the kiosk, including the use of the kiosk to purchase and/or sell digital currency." (Compl., ¶ 29).

6.      Both CKI and Coin Cloud test every product before it leaves CKI's facility.

7.      In early 2022, Coin Cloud's CFO/COO Jeffrey Garon began asking me for concessions because Coin Cloud was falling behind on its payments owed to CKI for the 4th Generation kiosks.

I declare that the foregoing is true and correct under penalty of perjury per the laws of the State of Nevada.

Executed this $\underline{13}$ day of July, 2022.



_____
Andrew Cashin

# EXHIBIT 3

## DECLARATION OF RICK DURICA

I, Rick Durica, pursuant to NRS 53.045, declare the following:

1.    I am the Vice President of Sales of Cole Kepro International, LLC ("CKI").

2.    I make this declaration based on personal knowledge, and if called to testify as a witness in this matter I would testify competently and consistently with the representations contained herein.

3.    This declaration is made in support of CKI's Response in Opposition to Plaintiff's Motion for Declaratory Judgment and for Stay of Arbitration Proceedings, in addition to CKI's Countermotion to Dismiss Case No. A-22-854226-C.

4.    CKI has maintained a multi-year business relationship with an entity whose purchase orders consistently designate it as "Coin Cloud," having its address at 9580 W. Sahara Blvd., Las Vegas, NV 89117.

5.    CKI and Coin Cloud engaged in over 80 transactions between December 2019 and April 2022, whereby CKI would issue a sales quote and Coin Cloud would accept by issuing a corresponding purchase order.

6.    67 of CKI's aforementioned sales quotes issued to Coin Cloud throughout the parties' multi-year course of dealing were accompanied by CKI's applicable standard two-page terms and conditions form, identical in each instance.

7.    Never once during the parties' multi-year business relationship did Coin Cloud raise any objection to the standard terms on the form.

8.    Coin Cloud received and accepted 12 CKI quotes accompanied by the same standard terms and conditions form before the quote at issue in the subject motion and countermotion was sent on February 16, 2021. Coin Cloud issued the corresponding purchase order on April 30, 2021, to buy 4,080 4th Generation kiosks from CKI for $34,533,120.00.

9.    The quote at issue is among a handful of those I mistakenly emailed to Coin Cloud during the parties' multi-year business relationship without the accompanying standard terms and conditions form that Coin Cloud received and accepted in connection with 67 other transactions.

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

1    I declare that the foregoing is true and correct under penalty of perjury per the laws of the

2  State of Nevada.

3

4    Executed this ⎽18⎽ day of July, 2022.

5

6                                                                      Rick Durica

7

# EXHIBIT 4

Electronically Filed
9/19/2022 11:14 AM
Steven D. Grierson
CLERK OF THE COURT

TRAN

DISTRICT COURT

CLARK COUNTY, NEVADA

CASH CLOUD, INC.

            Plaintiff,

vs.

COLE KEPRO INTERNATIONAL, LLC

            Defendant.

CASE NO.  A-22-854226-B

DEPT. XXII

BEFORE THE HONORABLE SUSAN JOHNSON, DISTRICT COURT JUDGE

**SEPTEMBER 13, 2022**

**RECORDER'S TRANSCRIPT OF HEARING RE**

***PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND FOR STAY OF ARBITRATION PROCEEDINGS***

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | JAMES J. JIMMERSON, ESQ.<br>JOHN NAYLOR, ESQ. |
| For the Defendant: | DAN R. WAITE, ESQ.<br>DAVID Z. ADLER, ESQ. |

RECORDED BY:  NORMA RAMIREZ, COURT RECORDER

TUESDAY, SEPTEMBER 13, 2022 AT 9:41 A.M.

THE COURT:  Okay.  Do we have counsel here on Cash Cloud, Inc. versus Cole Kepro International, case number A22-854226-B?  Would counsel please identify yourselves for the record?

MR. JIMMERSON:   Yes, Your Honor.  James Jimmerson, bar number 12599 on behalf of Plaintiff Cash Cloud, Inc., along beside me is John Naylor also on behalf of Cash Cloud, Inc. and Mr. McAlary, the CEO of Cash Cloud, Inc. as well. Mr. Pastor, a law clerk from my office, is behind me, Your Honor.

THE COURT:  Okay.

MR. WAITE:  Good morning, Your Honor.  Dan Waite for the Defendants and with me is David Adler, he's been admitted pro hac vice and he'll be handling the Defense argument this morning.

THE COURT:  Okay.  All right.  We are here on Plaintiffs' Motion for a Declaratory Judgment and for Stay of Arbitration Proceedings and we've got Defense response and -- let's see, and a countermotion to dismiss the action pursuant to EDCR 2.20.  Counsel.

MR. JIMMERSON:  Yes, Your Honor.

This case is a products defect case.  My client, Cash Cloud, Inc. purchased approximately $35 million of ATM-style kiosks from the Defendant, Cole Kepro International on February 26, 2021.  This was the fourth such purchase of kiosks between Cash Cloud, Inc. and Cole Kepro.  Unfortunately there was a screen defect and it's caused some serious harm reputationally and financially for my client. While there were efforts being made between the parties to try to remediate this harm Cole Kepro filed and initiated AAA arbitration in Texas claiming that that

1    arbitration was mandated by the terms and conditions document that were supplied

2    with the notice of arbitration.  That terms and conditions document is no way related

3    to the purchase of the fourth generation kiosks and the $35 million of kiosks being

4    purchased.  The arbitration was initiated based on this false premise.  Eight days

5    after the arbitration was initiated Defense counsel admitted that the terms and

6    conditions document that contained the arbitration clause did not accompany the

7    quotation for the fourth generation kiosks.  Thereafter there has been a series of

8    efforts to justify the continued maintenance of an arbitration action concerning the

9    fourth generation kiosks.

10             First, Defense argued that there was a November 1, 2021 email by Jeff

11    Garon, the CFO of Cash Cloud, Inc., somehow agreeing to retroactively apply the

12    terms and conditions document to all prior transactions, as the Court can tell from

13    Exhibit 21 that argument holds no water.  I'll refer the Court to Exhibit 21 which is

14    this November 1, 2021 email chain at 8:31 a.m.  Andrew Cashin of Cole Kepro

15    emails Mr. Garon:  "Jeff, as discussed, please confirm the following purchase order

16    for $100,000,000.00.  Rick has quoted $10,430.00 x 10,000 kiosks but Rick didn't

17    include our standard terms and conditions page which was included on the quotes.

18    You and I negotiated via text and calls to decrease the price to $10,000.00 and

19    extend terms from 45 to 70 days.  The result was the issuance of the purchase order

20    from your company, Andrew Cash."   Response by Mr. Garon:   "Yes, confirmed as

21    correct."  Mr. Garon confirmed the purchase order for several purchases dated in

22    August of 2021 for 10,000 standard kiosks not the 4,080 fourth generation kiosks,

23    the purchase order for which it's dated February 26, 2021.  Once that matter had

24    been addressed we now get to their third argument as to why arbitration should be

25    maintained and that is that there exists some sort of course of dealing between the

1   parties prior to the February 26, 2021 purchase order for these kiosks.  That would

2   establish an understanding that all of these terms and conditions including but not

3   limited to the arbitration clause were part of the common understanding of the

4   parties.  This couldn't be further from the truth.

5          First, Cash Cloud spent $10,000,000.00 in kiosks buying thousands of

6   these kiosks before the terms and conditions document was ever delivered to Cash

7   Cloud.  The basis of their relationship, the purchase and sale of these kiosks, were

8   based upon a single sales quote.  A one paged sales quote in landscape that

9   governed the purchase and sale of these kiosks from inception.  On September 9,

10  2021 was the first time that there was a "quote letter" from Cole Kepro International

11  which is a three paged document in portrait, second and third pages are the terms

12  and conditions.  There were only nine transactions involving these quote letters

13  none of which were for kiosks, all of which were for parts totaling less than a millions

14  dollars.  By contrast, Cash Cloud in January, June and September had purchased

15  nearly $18,000,000.00 of kiosks all without the terms and conditions document.

16  Fast forward now to February 16, 2021 where there was -- and I'd refer the Court to

17  Exhibit 8 -- no, 6 and 8 because there was an updated sales quote.  Again, the one

18  page landscape sales quote for 4,080 fourth generation kiosks.

19         There were six such sales quotes submitted by Cole Kepro to Cash

20  Cloud in the month of February, 2021.  None of these sales quotes contain the

21  terms and conditions document and on February 26, 2021 Cash Cloud executed

22  three purchase orders one of which was for the 4,080 fourth generation kiosks.

23  Based upon any measure whether it'd be time, whether it'd be an amount of money

24  spent, whether it'd be just a simple number of bids or transactions, the majority of

25  the transactions between Cole Kepro and Cash Cloud, Inc. as of February 26, 2021

did not contain the terms and conditions document.  There was no common

understanding that this terms and conditions paper would govern all future

transactions certainly not in February of 2021 because the six most recent sales

quotes did not have them and the nature of the sales quotes are far different than

the nature of the quote letters which did contain the terms and conditions document.

The quote letters dealt with parts, the sales quotes dealt with both kiosks and parts,

the kiosks being the most important element here because that was the raison d'étre

of their relationship.  They started out with the purchase and sale of the kiosks, they

continued to purchase the kiosks and they did so again in February of 2021 all

without the terms and conditions document.  As such, there are no facts that would

establish the common understanding between the parties that their -- that these

terms and condition apply to the February, 2021 purchase of the fourth generation

kiosks.  Knowing this we now see in reply in support of the countermotion a new

argument that the usage and trade that is some claimed understanding that in this

industry that there is a common understanding that all -- all matters must be

resolved through arbitration citing the *In Re Cotton* decision which was discussed at

length in the -- in the papers.  There is no evidence to support this argument.  (1)

The *In Re Cotton* decision talks about the textile industry which for decades since

the 1930's have used what are called the Yarn rules which among other things

establish a very, very, very specific manner of resolving disputes, that is arbitration

in the state of New York by a particular arbitrator.  Not just any arbitrator but one

specific to the textile industry by contrast were in an industry that didn't exist eight

years ago.

The bit coin kiosk industry did not exist until the first -- at least in the

United States, was purchased by Cash Cloud in 2014.  There cannot be any

1   understanding that all disputes within this industry must be resolved through

2   arbitration in Tarrant County, Texas according to the AAA rules.  There is no

3   documentation which establishes this.  All we have is the declaration of Mr. Cashin

4   which again has changed.  First it was the terms and conditions were attached to

5   the sales quote.  We know that's false.  Then it was Mr. Garon agreed.  We know

6   that's false because Mr. Garon only agreed concerning a subsequent Spanner kiosk

7   purchased totaling $100,000,000.00 not $35,000,000.00.  Moreover, that -- there

8   was this email exchange between Mr. Garon and Mr. Cashin tells this Court that the

9   terms and conditions document were not standard with the kiosk purchases

10  because despite a purchase in August of 2021 for $100,000,000.00 of kiosks it took

11  a phone call and subsequent email in November of that year just to make sure that

12  the terms and conditions would apply to that purchase.  If it were standard there

13  would be no need for such communications.  Moreover, the terms of the -- terms

14  and conditions document themselves tell this Court and require this Court to grant

15  the motion because they specify exactly they will reply.  And this argument they've

16  never addressed.  That is specifically the terms and conditions are all discussing the

17  quotation which is supposed to be attached with the terms and conditions.  I

18  specifically referenced Exhibit 13 that the definition of parts, purchaser, price and

19  products all refer to the quotation and the quotation is defined as:  "Quotation shall

20  mean that certain quotation or proposal from Cole Kepro issued herewith which is

21  hereby incorporated by a reference for all purposes."  The terms of their own terms

22  and conditions page require the terms to be attached to something else and that it is

23  prospective.   It refers to a proposal or a quotation not an invoice, not some sales

24  memorandum after the transaction but requires it before the transaction; a proposal

25  for a quotation.

1    You cannot have these terms retroactively engrafted on to prior

2  transactions when they were never understood be part of a deal when they

3  specifically require that the proposal or quotation be attached herewith and where

4  the kiosk purchases had never been governed by these terms and conditions.  As

5  such, Your Honor, we would respectfully request the Court grant the motion and

6  stay arbitration concerning the fourth generation kiosks.

7    THE COURT:  You're asking for a stay not a dismissal of the arbitration

8  process?

9    MR. JIMMERSON:  No, there is a dispute concerning the Spanner kiosk issue

10  as well, Your Honor.

11    THE COURT:  Okay.  All right.  Thank you.

12    MR. ADLER:  Thank you, Your Honor.

13    As this case proceeds it's gonna be shown that this allegation of

14  defective screens is a colossal canard.  We obviously dispute that as an initial

15  matter since opposing counsel brought it up.  That is a galactic yarn that's been

16  spun to justify their inexcusable failure to pay for a product that was ordered and

17  prepared.

18    Just to briefly reiterate some context here.  Between December of 2019

19  and April of 2021 there were approx -- there were 81 transactions between the

20  parties.  No, I'm sorry, April of -- of 20 -- over the course of let's say -- over the

21  course of two and a half years, nobody is disputing that, there were 81 transactions,

22  67 of those transactions involved the transference of the -- of these terms and

23  conditions which were never disputed.  Nobody ever raised an issue with them.  And

24  they included -- these were not in substantial transactions, Your Honor.  We've

25  shown despite their implication, and in fact the argument that opposing counsel just

made, that they included transactions not simply for parts but for kiosks.

In May of 2021 there was the issuance of a sales quote for kiosks just like the quote letters for parts that attached to terms and conditions and drop of a hat, just as readily as they had accepted all of the other quotes that accompany these terms and conditions, they agreed to them by issuing a corresponding purchase order.  Your Honor,  ultimately there's $100,000,000.00 Spanner transaction whereby my client again, Andrew Cashin, sends Mr. Garon an email just to confirm this -- these terms and conditions apply to this $100,000,000.00 transaction which in -- and I quote "is included on all quotes."  And Mr. Garon responded:  "Yes, Andrew. Correct."  This -- Andrew, yes.  This is -- this is correct. Your Honor, to think that they would readily without hesitation, drop of a hat agree to the terms and conditions inclusion with respect to $100,000,000.00 transaction and at this point they've received those terms and conditions in connection with dozens of transactions.   Mr. Garon has readily accepted them.  To think that they are now saying well, no, they didn't apply to one that occurred earlier is just inconceivable.

As it relates to this case, the subject UCC provision that's NRS 104.2202 subs 1 through 2 provides three independent bases on which my client should prevail.  That is the statute reads:  "That it allows an agreement concerning the sale of goods to be explained or supplemented either or both by" -- as it relates to this case, "(1) course of dealing (2) usage of trade or by evidence of consistent additional terms."  And the course of dealing does comprise the twelve instance in which Coin Cloud received and readily accepted the terms and conditions prior to the subject $35,000,000.00 transaction.  But it's the evidence of consistent additional terms facet that allows the Court to consider what happened afterwards. That is both the 55 ensuing transactions in which the terms and conditions were

1  transmitted with quotes and readily accepted including and condition with a May 7,

2  2021 quote for kiosks not simply parts, but also Mr. Garon's November 1, 2021

3  email responding to Andrew Cashin's confirmation email.  And again, at this point on

4  November 1, 2021 he'd received -- Mr. Garon had received the term form in

5  connection with dozens of transactions.  Just to reiterate what that exchange was,

6  Mr. Garon said, and I quote:  "Andrew, yes.  Confirmed.  This is correct."  In

7  response to my client -- my client agent Andrew Cashin's email stating:  "Rick and I

8  quoted $10,431.00 times 10,000 kiosks" -- this is for a $100,000,000.00 kiosk

9  transaction, "but Rick didn't include our standard terms and conditions paid which is

10  included on all quotes."  Your Honor, it would be one thing for them to argue that -- it

11  would be one thing if the email from Mr. Cashin had simply said please confirm that

12  the terms and conditions are applicable to this particular $100,000,000.00

13  transaction but he went on to say it's included on all quotes.  And the only argument

14  they've made in response to that in their briefing and today before you

15  notwithstanding they're at this point having received those terms and conditions in

16  connection with dozens of transactions as of November 1, 2021.  The only thing

17  they say is that by -- by confirming what my client had said -- Mr. Garon meant only

18  to convey that those terms and conditions are now applicable moving forward from

19  November 1, 2021.  Your Honor, that is inconceivable not only based on the history

20  of the parties' relationship but what's here on the page in unequivocal terms in the

21  email exchange between the parties.

22        So, between -- you're allowed to consider the course of dealing, the

23  twelve prior transactions in conjunction with the evidence of consistent additional

24  terms.  In other words, both the 55 subsequent transactions where the terms were

25  accepted without hesitation, drop of a hat, never once objected to in addition to Mr.

1   Garon's email confirming it's included on all quotes.  If it's -- if it's readily acceptable

2   for $100,000,000.00 quote how can they arbitrarily argue that it wasn't acceptable in

3   connection with the $35,000,000.00 kiosk quote where we also they accepted

4   another kiosk quote on May 7th that was -- that did include the terms on an email.

5   As far as the trade usage, I'm not gonna reiterate what we proved by way of our

6   briefing.  I attached the declaration of Andrew Cashin, the number one operator in

7   this industry.  It has an 80 percent market share, that's Genmega, requires

8   arbitration.  We've proven -- and Mr. Jimmerson didn't just -- didn't dispute just now

9   that they -- they're familiar with a company Nevatronix; they've at least negotiated

10  transactions with them, uses arbitration and standards to resolve disputes.  We

11  pointed out that my client is not aware of a single operator in this industry that

12  doesn't require arbitration to resolve disputes, and you'll note that what opposing

13  counsel didn't just tell you is that they're aware of any operator in this industry that

14  doesn't use arbitration to resolve disputes.  So, that is a third independent factor that

15  carries the day here.

16          The last argument -- the last issue was this real party in interest which

17  was not touched upon by the Plaintiff just now.  There is no argument that the

18  named Plaintiff here, Cash Cloud, Inc., is not the contractual privy to any of the

19  transactions here  Their own purchase order for the $35,000,000.00 transaction at

20  issue, that's Exhibit 12 to their motion, that is on their form that says customer, Coin

21  Cloud, LLC and lists the address for Coin Cloud, LLC.  On top of that they've

22  confirmed by way of their briefing that Mr. -- I believe his name is McAlary sitting to

23  my right is a principal and authorized signatory of Coin Cloud, LLC.  Your Honor,

24  these 81 transactions that we've discussed over the course of two and a half years,

25  every single quote was issued to a purchaser by the name of Coin Cloud and every

corresponding purchase order was issued in the name of Coin Cloud and in this particular instance the -- the $35,000,000.00 purchase order at issue says on their own form customer, Coin Cloud, LLC.  I don't know how they could possibly argue that the correct party in interest is not Coin Cloud, LLC to these transactions.  The only thing I've seen them argue is, well, Cash Cloud, Inc. even though it was never named on any quote or purchase order was the one that was making the payments.  Well, Your Honor, the man on the moon could have paid my client and my client would have accepted payment but that doesn't beget a contractual relationship between my client and the man on the moon and it certainly doesn't change the fact that the actual contractual privy is as named on the form Coin Cloud, LLC.

The last thing I would say, Your Honor, is that is there is any doubt in Your Honor's mind particularly where the trade usage issue is -- is equally dispositive, if there's any doubt in your mind whether my client should prevail on either or both of the independent course of dealing and evidence of consistent additional terms factors we should proceed by either submitting -- if they want additional briefing on the trade usage issue or holding an evidentiary hearing as to the trade usage issue.

Otherwise I would thank Your Honor for your time and ask that their motion be denied and our countermotion be granted.

MR. JIMMERSON:  Yes, Your Honor.  I'll deal with the contractual privy issue first.

From the very beginning Cole Kepro has issued sales quotes to Coin Cloud.  That is the registered trade name of Cash Cloud, Inc.  They've done so at the address for Cash Cloud, Inc.  Coin Cloud, LLC has never dealt with these individuals at all and it was obviously an error to put it on one of the two purchase

orders.  The first purchase order, the operative purchase order, as it pertains to binding the parties says Coin Cloud using the logo of Coin Cloud.  That is the registered trademark of Cash Cloud, Inc.  The idea that they would not know who they're dealing with especially when they're sending the correspondence and sales quotes to Cash Cloud, Inc. and not to Coin Cloud, LLC tells you they know that they're dealing with Cash Cloud, Inc. and not Coin Cloud, LLC.  If there was any merit to their argument that all of the prior transactions were with Coin Cloud, LLC you'd see a paper saying so, you'd see any document that refers to Coin Cloud, LLC prior to this particular purchase order.  That you don't tells you what this Court certainly has to know and that is when Cash Cloud, Inc. is paying tens of millions of dollars Cole Kepro knows that that is paying for the kiosks that Cash Cloud, Inc. purchased and put into operation.

Addressing the usage of trade -- argument of [indecipherable] Your Honor.  The usage of trade as applied to in cases like the textile Industry, *In Re Cotton* don't just specify that arbitration is how we are -- is how we resolve disputes, it specifies where the arbitration is to take place, which laws are to govern and that there is a specific arbitrator, in this case -- or in the textile industry the general arbitration counsel of the textile and apparel industries is a formal name for the particular arbitration group that manages those arbitrations.  What evidence do we have that arbitration in Tarrant County, Texas according to Texas law -- which neither party by the way are based in Texas -- both parties are based here in Las Vegas, applying the AAA rules and using a particular variant of them to moderate and effectuate that arbitration is the industry standard?  There isn't.  And by the way, that they had $10,000,000.00 in sales, that Cole Kepro sold $10,000,000.00 in kiosks to Cash Cloud, Inc. in 2020 before there were any terms and conditions,

1    before there was any arbitration clause tells this Court that that practice wasn't in the

2    standard for Cole Kepro.  In addition to the usage of trade ar -- being without merit.

3    By the way, it was brought in at the very last minute on reply.  It was never asserted

4    either before the arbitrator or in their original moving papers that they're using the

5    Court -- that they're using it to try to defend themselves and to justify arbitration now

6    tells this Court that it holds no law -- it holds no law.

7                          Concerning the matter of additional consistent terms that particular

8    provision of the UCC are traditionally deployed within invoices or sales

9    memorandum.  That is subsequent to the transaction, subsequent to the agreement.

10   Here's what was gonna -- here's what we're purchasing, here's what we're -- here's

11   what we're paying.  You get a subsequent memo saying these are the terms.  Those

12   would be an example of additional consistent terms.  Here -- and this is why it was --

13   it was important to point out to this Court, the terms of their terms and conditions are

14   prospective.  That is they're talking about a prospective deal, a potential transaction

15   which is why it requires that the proposal or quotation be attached to the terms and

16   conditions and that without that quotation the terms and conditions are indefinite

17   because the quotation is what provides the information.  Who are the parties?  What

18   is being purchased?  What is the price?  All of that information is defined by the

19   quotation and that the terms and conditions requires the quotation to be attached to

20   the terms themselves in order for there to be an effective agreement tells this Court

21   that the -- that the terms and conditions are not additional consistent terms because

22   they're not additional terms at all.  By their very own words they are part of the

23   underlying deal that is to be negotiated not something after the fact.

24                          Moreover, Your Honor, as it pertains to the terms and conditions they

25   themselves cannot be additional term -- additional consistent terms because they

consist of the limitations of liability.  They wouldn't be consistent with the implied

warranties or merchantability and fitness for particular purpose which would be

inherent in the one page sales quote.  So, the terms and conditions are neither

consistent nor the additional terms because by their very own language they formed

a basis of the negotiation of the transaction from inception not some after the fact

language or terms that the parties will later agree on or disagree on.  No, by their

very own language they must come first not last and for that reason the Court must

find that they cannot retroactively engraft it on to the purchase of the fourth

generation kiosks because if they were you wouldn't see the November 1, 2021

email correspondence between Mr. Garon and Mr. Cashin because that's how they

would do it.  You see in real time a Spanner kiosk purchase for $100,000,000.00

doesn't have the terms and conditions paperwork.  Three months later they want to

make it part of the deal so Mr. Cashin calls Mr. Garon and they memorialize it over

the phone and put it in writing.  That's how the attachment and the inclusion of the

terms and conditions would be if they were to go back to the fourth generation

purchase not by arguing, oh, they're always part of the deal.  They couldn't have

always been part of the deal because -- and by the way, the idea that a May, 2021

transaction would inform a February, 2021 purchase order is -- is contravened by

Nevada law.  As the Court knows, NRS 104.202(2) specifically defines course of

dealing as referring to previous transactions, not future transactions.  The previous

transactions tell us there were no -- there was no common understanding for the

terms and conditions to apply.  So, the first $10,000,000.00 of purchases they'd

never be -- transmitted to Cash Cloud, Inc. let alone part of any deal and the next

eight and a half million dollars of kiosks purchased in September of 2020 didn't have

the terms and conditions either and then during the purchase order of the fourth

1   generation kiosks they weren't attached there in those bids, and there are multiple

2   bids -- multiple sales quotes concerning these kiosks.  But even if you could

3   consider the May kiosk sales quote as to inform this Court as to a prior transaction

4   which you couldn't.

5          What they call a kiosk, Your Honor -- if the Court takes a look, it's a

6   locker.  It's not a functional ATM-style kiosk which is what's used to operate Cash

7   Cloud's business.  The idea that that would be the same thing as the -- the

8   machines that cost 5 to $10,000.00 each when the security locker costs $1,000.00

9   and they were purchasing 250 of them tells this Court that that is a significantly

10  different transaction.  But again, the Court doesn't need to get there because the

11  Court needs to look at what happened before the February, 2021 purchase order.

12  And again, by any measurement whether it'd be dollars, number of transactions the

13  Court has been told there's 12 transactions.  Who has provided the purchase orders

14  for any of them?  It hasn't been Cole Kepro.  We have provided at least 13

15  transactions none of which had the terms and conditions document attached to it

16  prior to February of 2021 confirming that there was no common understanding that

17  the terms and conditions would apply.  And most importantly in that, Your Honor,

18  and the Court will see it in the exhibits in the reply -- in the appendix on reply.  They

19  include transactions after the terms and conditions document was first sent to Cash

20  Cloud.  You see November and January of 2021 -- November of 2020 and January

21  of 2021 where you see transactions that didn't have the terms and conditions

22  document even after they started using it.  How can the terms and conditions

23  document be considered part of a common understanding when they themselves

24  aren't even using it for every transaction and certainly were not using it for kiosk

25  transactions or any transaction for that matter in February of 2021?  Again, Your

Honor, you look at the February 26, 2021 three purchase orders, not one, three for kiosks and other parts. None of those purchase orders involved any terms and conditions.

Finally, Your Honor, you've read the Jeff Garon email correspondence but the one line that counsel glossed over from Mr. Cashin was the first line: "Please confirm the following purchase for $100,000,000.00." Mr. Cashin is asking for confirmation for one deal and the idea that he would then include the statement that you must agree that the terms and conditions document is standard on all quotes when we know it wasn't standard on all quotes. We know because we see it. We see it that they didn't use those terms and conditions for the first nine months of the relationship and only used it sporadically before the February, 20 -- the February, 2021 purchase of the fourth generation kiosks. What's obvious is is that they probably started using it afterwards as their standard deal not before and the idea that you would be able to then say after the fact, oh, we're gonna justify arbitration, we're gonna go to Texas, we're gonna force the parties which are both in Nevada -- Nevada businesses to go somewhere else to litigate under someone else's law because, oh, we say so later using the terms and conditions document which itself doesn't allow for a retroactive application, it's only prospective. The Court must find that there was no course of dealing, there certainly is no usage of trade because if there was usage of trade Cole Kepro would have been doing it from the outset. Again, we're talking about a nation industry, Your Honor, again, an industry that didn't exist ten years ago, barely existed eight years ago, that they are -- that there is a standard in this business that requires us to go to Tarrant County, Texas to arbitrate under the AAA commercial rules. Hark; there are operators in Canada that require them to go there to litigate the matters.

1    There is no competent evidence here that demonstrates that there is a

2  consistent course of dealing which establishes that a common understanding

3  existed, that the terms and conditions including the arbitration clause would apply.

4  The arbitration clause and the terms and conditions document are not additional

5  consistent terms because they're not additional.  They themselves by their own

6  language require to be part the underlying transaction and not something they have

7  to affect.   And finally, Mr. Garon never agreed that all prior transactions were

8  governed by the terms and conditions document because if that was the purpose of

9  Mr. Cashin's email Mr. Cashin would have said so.  Mr. Cashin would have said,

10  and by the way, we don't just want you to confirm the terms and conditions apply to

11  the $100,000,000.00 purchase; we want you to confirm that it applies to all prior

12  purchases.  Mr. Cashin didn't say that because Mr. Cashin just wanted to confirm

13  the $100,000,000.00 purchase and that's it.  For that reason, Your Honor, we could

14  ask the Court to grant the motion and deny the countermotion.

15    THE COURT:  I want to thank you both very much.  I always enjoy the

16  advocacy of good lawyers.  But, I am going to grant the Motion for Declaratory

17  Judgment and deny the countermotion.  In my view there was no agreement to

18  arbitrate the disputes over the purchase of the 4,000 fourth generation kiosks.  So,

19  counsel, will you prepare the order and pass it by Defense counsel so that he can

20  review and approve as to form and content, not that you agree with my decision but

21  that you certainly agree that that was the decision I made.

22    MR. JIMMERSON:  Yes, Your Honor.

23  *  *  *  *  *

24  *  *  *  *  *

25  *  *  *  *  *

1          THE COURT:  Okay.  All right.  Thank you.

2                        [Proceedings concluded at 10:18 a.m.]

3                                * * * * *

4

5

6

7

8     ATTEST:    I do hereby certify that I have truly and correctly transcribed the
      audio/video recording in the above-entitled case to the best of my ability.

9

10

11     NORMA RAMIREZ
      Court Recorder
12     District Court Dept. XXII
      702 671-0572
13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT 5

.

| | |
|---|---|
| **From:** | James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com> |
| **Sent:** | Friday, October 7, 2022 2:08 PM |
| **To:** | dc22inbox@clarkcountycourts.us |
| **Cc:** | Waite, Dan R.; David Adler; Andrew Pastor |
| **Subject:** | A-22-854226-B- ORDR- Cash Cloud Inc. v. Cole Kepro International, LLC |
| **Attachments:** | Order granting motion to stay arb.pdf |

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

Please find attached a proposed order granting Plaintiff's Motion for Declaratory Judgment and to Stay Arbitration Proceedings. As reflected in the email attached thereto, the order was not approved by Defendant's counsel.

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

**ORDR**
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135
Telephone:    (702) 388-7171
Facsimile:    (702) 367-1167

*Attorneys for Plaintiff*
*Cash Cloud Inc.*

# EIGHTH JUDICIAL DISTRICT COURT
## CLARK COUNTY, NEVADA

CASH CLOUD INC., a Nevada corporation,

        Plaintiff,

    vs.

COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company,

        Defendant.

Case No.: A-22-854226-B

Dept. No.: XXII

Hearing Date: September 13, 2022
Hearing Time: 8:30 a.m.

## ORDER GRANTING MOTION FOR DECLARATORY JUDGMENT AND FOR STAY OF ARBITRATION PROCEEDINGS AND DENYING DEFENDANT'S COUNTERMOTION TO DISMISS ACTION PURSUANT TO EDCR 2.20(f)

This matter came before the Court on Plaintiff Cash Cloud Inc.'s ("Plaintiff" or "Cash Cloud") Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion") and Defendant Cole Kepro International, LLC's ("Defendant" or "Cole Kepro") Countermotion to Dismiss Action Pursuant to EDCR 2.20(f) (the "Countermotion"). James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C. and John Naylor, Esq. of Naylor & Braster appeared on behalf of Cash Cloud, with Christopher McAlary in attendance, and David Adler, Esq. of Jaffe Raitt Heuer & Weiss, P.C. and Dan Waite, Esq. of Lewis Roca Rothgerber Christie LLP appeared on behalf of

1

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Cole Kepro.  The Court reviewed the papers and pleadings on file herein, and good cause appearing, the Court finds and orders as follows:

THE COURT HEREBY FINDS that NRCP 57 states in pertinent part:

> The procedure for obtaining a declaratory judgment pursuant to statute, shall be in accordance with these rules, ... The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. **<u>The court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar</u>**.

*Id*. (emphasis supplied).

THE COURT FURTHER FINDS that NRS 38.221 states in relevant part:

> 2. On motion of a person alleging that an arbitral proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue.
>
> ***
>
> 4. **<u>If the court finds that there is no enforceable agreement, it may not, pursuant to subsection 1 or 2. order the parties to arbitrate</u>**.

*Id*. (emphasis supplied).

THE COURT FURTHER FINDS that in 2021 Cash Cloud had purchased 4,080 4th Generation kiosks from Cole Kepro.

THE COURT FURTHER FINDS that disputes have arisen between Cash Cloud and Cole Kepro over the purchase of the 4th Generation kiosks.

THE COURT FURTHER FINDS that on or about May 27, 2022, Cole Kepro initiated an arbitration proceeding with the American Arbitration Association in Texas concerning, *inter alia*, the purchase of 4,080 4th Generation Kiosks by Cash Cloud from Cole Kepro.

THE COURT FURTHER FINDS that Cole Kepro maintained that the arbitration of the dispute over the purchase of 4,080 4th Generation Kiosks by Cash Cloud from Cole Kepro was mandated by the provisions of the two-page terms and conditions document, a copy of which was attached to the Motion as Exhibit 20.

THE COURT FURTHER FINDS that there was no agreement to arbitrate the disputes over Cash Cloud's purchase of the 4,080 4th Generation kiosks from Cole Kepro.

THEREFORE, THE COURT ORDERS, ADJUDGES, DECREES, AND DECLARES that Cash Cloud did not agree to arbitrate disputes over the purchase of the 4,080 4th Generation kiosks.

THE COURT FURTHER ORDERS, ADJUDGES, AND DECREES that the arbitration of the disputes over Cash Cloud's purchase of the 4th Generation kiosks from Cole Kepro shall be stayed immediately.

THE COURT FURTHER ORDERS, ADJUDGES, AND DECREES that Cash Cloud's Motion for Declaratory Judgment and for Stay of Arbitration Proceedings is granted and Cole Kepro's Countermotion to Dismiss Action Pursuant to EDCR 2.20(f) is denied.

_____

Respectfully Submitted By:


THE JIMMERSON LAW FIRM, P.C.



By: */s/ James M. Jimmerson, Esq.*
    James J. Jimmerson, Esq. (SBN 064)
    jimmerson@jimmersonlawfirm.com
    James M. Jimmerson, Esq. (SBN 12599)
    jmj@jimmersonlawfirm.com
    415 South Sixth Street, Suite 100
    Las Vegas, Nevada 89135
    Tel: 702.388.7171

*Attorneys for Plaintiff Cash Cloud Inc.*

/ / /
/ / /
/ / /

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

<u>Not</u> approved as to form and content by:

LEWIS ROCA ROTHGERBER CHRISTIE LLP


By: /s/
Dan R. Waite (SBN. 4078)
DWaite@lewisroca.com
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV  89169
Tel: 702.949.8200

JAFFE RAITT HEUER & WIESS, P.C.

David Z. Adler (Michigan SBN: P71227)
*Pro Hac Vice*
DAdler@jaffelaw.com
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Defendant Cole Kepro International, LLC*

4

**James M. Jimmerson, Esq.**

| | |
|---|---|
| **From:** | James M. Jimmerson, Esq. |
| **Sent:** | Friday, October 7, 2022 2:03 PM |
| **To:** | 'David Adler'; Waite, Dan R. |
| **Cc:** | Andrew Pastor; Deborah Gutierrez |
| **Subject:** | RE: Cash Cloud Inc. v. Cole Kepro International, LLC |

Respectfully, I believe that an order on declaratory judgment needs more and there was no restriction on the Court's denial of the countermotion.  We will submit competing orders.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

---

**From:** David Adler <dadler@jaffelaw.com>
**Sent:** Friday, September 30, 2022 6:41 AM
**To:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>; Waite, Dan R. <DWaite@lewisroca.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>; Deborah Gutierrez <dgutierrez@jaffelaw.com>
**Subject:** RE: Cash Cloud Inc. v. Cole Kepro International, LLC

Thanks, but the judge did not make any ruling other than that there was no agreement to arbitrate the 4th Generation Kiosk dispute.  Here's the version of the order we propose.

**David Adler**
dadler@jaffelaw.com
248.727.1563
he/him/his

 

**JAFFE RAITT HEUER & WEISS, P.C.**
27777 Franklin Rd., Suite 2500
Southfield, MI 48034
www.jaffelaw.com

**Jaffe is joining Taft**
The next chapter starts December 31, 2022.

Signature: Nothing in this communication is intended to constitute an electronic signature.  This email does not establish a contract or engagement.
Confidentiality: This communication may contain confidential privileged information intended for the named recipient(s) only.
If you received this by mistake, please destroy it and notify us of the error.



**From:** James M. Jimmerson, Esq. <jmj@jimmersonlawfirm.com>
**Sent:** Thursday, September 29, 2022 5:58 PM
**To:** David Adler <dadler@jaffelaw.com>; Waite, Dan R. <DWaite@lewisroca.com>
**Cc:** Andrew Pastor <aap@jimmersonlawfirm.com>
**Subject:** Cash Cloud Inc. v. Cole Kepro International, LLC

**\*\*EXTERNAL EMAIL - Be Cautious with Links and Attachments\*\***

David and Dan,

Attached is a proposed order on the motion and countermotion decided by Judge Johnson.  Please let me know if you have any requested changes to the same or if I may submit with your electronic signature.  Thank you.

Sincerely,

James M. Jimmerson, Esq.
**Senior Associate**
**The Jimmerson Law Firm, P.C.**
415 South 6th Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171 (Office)
(702) 380-6413 (Facsimile)
jmj@jimmersonlawfirm.com



www.jimmersonlawfirm.com

This email and any files transmitted with it are confidential and intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. This message contains confidential information and is intended only for the individual named. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. If you are not the intended recipient you are notified that disclosing, copying, distributing or taking any action in reliance on the contents of this information is strictly prohibited.

# EXHIBIT 6



James J. Jimmerson*
James M. Jimmerson†

*ALSO ADMITTED IN CALIFORNIA
†ALSO ADMITTED IN NEW YORK

ATTORNEYS AT LAW

October 10, 2022

***Via Email and Hand Delivery***
Honorable Judge Susan Johnson
Regional Justice Center, Dept. XXXI
200 South Lewis Ave.
Las Vegas, Nevada 89155
dept22lc@clarkcountycourts.us

      **Re:**   ***Cash Cloud Inc. v. Cole Kepro International, LLC;***
           **Case No. A-22-854226-B**

Dear Judge Johnson:

     As you know, this firm represents Plaintiff Cash Cloud Inc. ("Plaintiff" or "Cash Cloud") in the above-referenced action. Last week, Cash Cloud submitted its proposed order on Plaintiff's Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion") and Defendant Cole Kepro International, LLC's ("Defendant" or "Cole Kepro") Countermotion to Dismiss Pursuant to EDCR 2.20(f) (the "Countermotion"). Consistent with this Court's instructions, this correspondence is being submitted in response to the competing order submitted by Defendant Cole Kepro this morning.

     Plaintiff's proposed order should be entered and Defendant's proposed order should be rejected for multiple reasons. First, the Motion that the Court granted was for declaratory judgment and, as such, findings supporting the granting of declaratory judgment should be made (and only Plaintiff's proposed order supplies the appropriate findings). Second, Defendant's effort to segregate the issue of arbitration from the issue of the contractual party dispute in its proposed order is improper. In granting the Motion and denying the Countermotion, the Court stated, "I am going to grant the Motion for Declaratory Judgment and deny the countermotion." Hearing Transcript at 17:16-17. This was a blanket denial of the Countermotion. Indeed, the Court did not limit the application of its order to only the issue of arbitration and Defendant did not seek clarification as to whether the Court's blanket denial of the Countermotion applied to the contractual privity issue during the hearing. If Defendant had any confusion as to the scope of the order, the time to remedy any such confusion was during the hearing, not in the submission of competing orders. Defendant's submission of its proposed order is an improper effort to relitigate an issue already decided by this Court.[1] As such, Cash Cloud respectfully requests that the Court enter the order

---

[1] As Defendant acknowledged in its correspondence to the Court this morning, it "plan[s] to refile the motion solely as it concerns this issue." This proposed serial motion practice is improper and violates NRCP 12(a)(3)(A), which requires that, "if the court denies the motion [to dismiss] or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action."

Hon. Susan Johnson
October 10, 2022
Page 2

submitted by Plaintiff and reject the order submitted by Defendant. We appreciate the Court's consideration of the foregoing and its attention to this matter.

Sincerely,

THE JIMMERSON LAW FIRM, P.C.

James M. Jimmerson, Esq.
*Counsel for Plaintiff Cash Cloud Inc.*

cc: all parties' counsel (via email)