Electronically Filed
11/15/2022 12:01 PM
Steven D. Grierson
CLERK OF THE COURT

**OPPS**
JAMES J. JIMMERSON, ESQ.
Nevada State Bar No. 00264
jimmerson@jimmersonlawfirm.com
JAMES M. JIMMERSON, ESQ.
Nevada State Bar No. 12599
jmj@jimmersonlawfirm.com
THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100
Las Vegas, Nevada 89135
Telephone:    (702) 388-7171
Facsimile:    (702) 367-1167

*Attorneys for Plaintiff*
*Cash Cloud Inc.*

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## EIGHTH JUDICIAL DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| CASH CLOUD INC., a Nevada corporation, | Case No.: A-22-854226-B<br>Dept. No.: XXII |
| Plaintiff, | |
| vs. | **PLAINTIFF CASH CLOUD INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S OCTOBER 10, 2022 ORDER SOLELY AS IT CONCERNS THE CONTESTED REAL PLAINTIFF PARTY INTEREST** |
| COLE KEPRO INTERNATIONAL, LLC, a Delaware limited liability company, | |
| Defendant. | |
| | Hearing Date: November 29, 2022<br>Hearing Time: 8:30 a.m. |

COMES NOW Plaintiff, Cash Cloud Inc. ("Plaintiff" or "Cash Cloud"), by and through its attorneys of record, James J. Jimmerson, Esq. and James M. Jimmerson, Esq. of The Jimmerson Law Firm, P.C., and respectfully submits this Opposition to Defendant's Motion for Reconsideration of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party in Interest (the "Opposition").

The Opposition is based on the papers and pleadings on file in this action, the following memorandum of points and authorities, the exhibits attached hereto and any argument made by counsel during the hearing on Defendant's Motion for Reconsideration

i

of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party

in Interest (the "Motion").[1]

DATED this 15th day of November, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Cash Cloud Inc.*

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

---

[1] Defendant's Motion for Reconsideration of Court's October 10, 2022 Order Solely as it Concerns the Contested Real Plaintiff Party in Interest is cited herein as "Mot. at __."

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

As the Court recalls from the earlier motion practice in this action, in early 2021, Defendant Cole Kepro International, LLC ("Defendant" or "Cole Kepro") sold Plaintiff Cash Cloud Inc. over $34 million of ATM-style digital currency kiosks. Defendant advertised the kiosks as being a "4th Generation" kiosk and Cash Cloud purchased 4,080 of them. Unfortunately, however, the kiosks were defective, and their operational failures have caused Cash Cloud substantial harm. Defendant's failure to appropriately remedy the harm combined with its improper commencement of arbitration associated with the dispute, necessitated this action and the prior filing of the motion for a declaration that Cash Cloud has not agreed to arbitrate the dispute over the purchase of the 4th Generation kiosks and for a stay of arbitral proceedings.

On October 10, 2022, this Court entered its Order which granted Plaintiff Cash Cloud's Motion for Declaratory Judgment and for Stay of Arbitration Proceedings and denied Defendant Cole Kepro International, LLC's Countermotion to Dismiss Pursuant to EDCR 2.20(f). As the Court recalls, Defendant put forward two (2) arguments in support of its countermotion: (1) that there existed an arbitration agreement between the parties, and (2) that the real party in interest was Coin Cloud LLC, not Plaintiff Cash Cloud, claiming that Coin Cloud LLC, not Cash Cloud, bought the kiosks. The second of these two arguments concerning the real party in interest was set forth in just two (2) substantive paragraphs in the countermotion. Further confirming that it was not seriously contending that Plaintiff was not the real party in interest in this action, Defendant admits that it "forgot to request that the Court clarify its ruling as to the contractual privity issue before the hearing concluded." Mot. at 6 (¶ 14). In an effort to resuscitate this argument despite the Court's wholesale denial of the countermotion, Defendant submitted a competing order to the Court. Once again rejecting Defendant's contentions, the Court entered the proposed order submitted by Plaintiff, in which the Court found, "Cash Cloud had purchased 4,080 4th Generation Kiosks from Cole Kepro."

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

1

October 10, 2022 Order at 2. Rather than move forward with this action, Defendant filed a Motion for Reconsideration as part of its latest effort to forum shop.[2] Defendant's Motion for Reconsideration is an improper effort to relitigate this issue, to select what it believes to be a more attractive department to litigate the parties' dispute, and further needlessly expend the Court's and the parties' resources. Defendant's Motion should be denied for several reasons.

First, Defendant's Motion takes what was argued in two (2) paragraphs in its countermotion (and utterly ignored in its reply in support of its countermotion) and expands it to twenty-three (23) paragraphs in the Motion for Reconsideration. Nevada law does not permit Defendant to use a motion for reconsideration to belatedly expand upon a contention that was not appropriately argued in the initial briefing.

Second, Defendant's Motion fails to provide the Court with any new facts that would warrant reconsideration. The Motion attaches six (6) exhibits that have already been submitted to the Court, either in the earlier motion practice, or with the competing orders. There is nothing new in the Motion that should cause the Court to change its prior order.

Third, Defendant's Motion ignores critical facts and evidence submitted by Cash Cloud in the prior motion practice. For example, Cash Cloud submitted to the Court the February 26, 2021 purchase order, reflecting the purchase of the 4th Generation kiosks by the company doing business as "Coin Cloud," a.k.a. Cash Cloud Inc., which is registered in Clark County to do business under the trade name Coin Cloud and who possesses the federally-registered trademarks (word and combination logo marks)[3] for Coin Cloud, including the logo used in the February 26, 2021 purchase order, a true and

---

[2] Less than an hour after filing the Motion for Reconsideration, Cole Kepro filed a new lawsuit against Coin Cloud LLC, Case No. A-22-860298-B, currently pending in Dept. XVI. A true and correct copy of the Cole Kepro's complaint is attached hereto as Exhibit 1.

[3] True and accurate copies of the Cash Cloud's federally registered trademarks are attached as Exhibit 3.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

correct copy of which is attached hereto as Exhibit 2.  The Motion is completely silent as to this purchase order, acting almost as if it does not exist.

Likewise, the Motion ignores the fact that the inclusion of Coin Cloud LLC on the April 30, 2021 purchase order was an error.  As detailed in the Declaration of Jeffrey Garon previously submitted to the Court, the purchase order was on Cash Cloud's letterhead with its federally trademarked logo, Coin Cloud LLC did not take delivery of the 4,080 4th Generation kiosks from Cole Kepro, and Coin Cloud LLC did not make payments for the 4,080 4th Generation kiosks from Cole Kepro.  *See* Exhibit 4, the Declaration of Jeffrey Garon, at ¶ 15, previously attached to the Motion for Declaratory Judgment.  Rather, Cash Cloud purchased the 4,080 4th Generation kiosks from Cole Kepro; Cash Cloud took delivery of the 4,080 4th Generation kiosks from Cole Kepro; and Cash Cloud made payments from its bank account for the 4,080 4th Generation kiosks from Cole Kepro.  *Id.*  Coin Cloud LLC is not actively doing business and has not actively done business for years, including during the year 2021.  *Id.* at ¶ 7.  Rather, just as it did in the earlier motion practice, Cole Kepro pretends that it did not know who it did business with and inexplicably claims, "the man on the moon could have paid [Cole Kepro] and [Cole Kepro] would have accepted payment, but that doesn't beget a contractual relationship between [Cole Kepro] and the man on the moon…"  Mot. at 5 (citing the September 13, 2022 hearing transcript at 10-11).  It defies all reason that Cole Kepro would have sold Cash Cloud over $10 million in kiosks prior to February 26, 2021, received payment for the same from Cash Cloud's bank accounts, and still not known with whom it was doing business.

Additionally, Defendant fails to address NRCP 17(a)(3), which prohibits an early dismissal of an action in the event that the claims are not prosecuted by the real party in interest.  NRCP 17(a)(3) states in no uncertain terms, "[t]he court may **not** dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."  NRCP 17(a)(3) (emphasis supplied).  As such,

1  reconsideration should be denied as NRCP 17(a)(3) precludes the dismissal which

2  Defendant seeks.

3     Finally, the Motion should be denied as an improper effort to forum shop.  Less

4  than an hour after the filing of the Motion, Defendant initiated a new lawsuit against

5  Coin Cloud LLC, claiming, *inter alia*, breach of the 4th Generation kiosk purchase order.

6  The action is pending in Department XVI.  Despite the fact that Cole Kepro certainly

7  knew about its plans to immediately file the new action, the Motion is completely silent

8  as to these plans and the imminent procedural complications created thereby.  Such

9  silence is evidence of the frailty of Cole Kepro's contentions and reflects, once again, Cole

10  Kepro's improper effort to pick its preferred forum.  The Court should deny the Motion.

11  **II.  LEGAL ARGUMENT**

12     **A. <u>Legal Standard</u>**

13     The Court is familiar with the legal standard governing motions for

14  reconsideration.  EDCR Rule 2.24 provides, in pertinent part, that a party may seek

15  "reconsideration of a ruling of the court."  *Id*.  "Only in very rare instances in which new

16  issues of fact or law are raised supporting a ruling contrary to the ruling already reached

17  should a motion for rehearing be granted."  *Moore v. City of Las Vegas*, 92 Nev. 402, 405,

18  551 P.2d 244, 246 (1976).  Additionally, a district court may consider a motion for

19  reconsideration concerning a previously decided issue if the decision was clearly

20  erroneous. *See Masonry and Tile v. Jolley, Urga & Wirth*, 113 Nev. 737, 741, 941 P.2d

21  486, 489 (1997).  A finding is clearly erroneous "where there is no evidence in support of

22  the district court's findings."  *Int'l Smelting Co. v. Dep't of Transp.*, 135 Nev. 665, 449

23  P.3d 476 (2019) (citation omitted).  "Points or contentions not raised in the original

24  hearing cannot be maintained or considered on rehearing."  *Achrem v. Expressway Plaza

25  Ltd.*, 112 Nev. 737, 742, 917 P.2d 447, 450 (1996).  Finally, "[m]otions for reconsideration

26  are not the proper vehicles for rehashing old arguments, and are not intended to give an

27  unhappy litigant one additional chance to sway the judge. *Hernandez v. IndyMac Bank*,

28

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

4

No. 2:12-cv-00369-MMD-CW, 2012 WL 3860646, at *3 (D. Nev. Sept. 5, 2012). Applying this standard, the Court should find that Defendant's Motion should be denied.

**B. <u>Cole Kepro's Motion Presents No New Facts Upon Which Reconsideration Should Be Granted</u>**

As detailed above, Cole Kepro's Motion does not present the Court with any new material upon which reconsideration should be granted. All six (6) exhibits attached to the Motion have been submitted to the Court before, whether in the prior motion practice or in the submissions with the competing orders. For this reason alone, the Court should deny the Motion. *See, e.g.*, *Jaden Inv. Tr. v. Bank of Am., N.A.*, No. 2:13-cv-02063-MMD, 2014 WL 293308, at *1 (D. Nev. Jan. 23, 2014) ("Plaintiff fails to establish a reason justifying relief. Plaintiff offers no new facts or evidence. Instead, Plaintiff attempts to relitigate the issue of jurisdiction. Plaintiff had an opportunity to meet its burden of establishing jurisdiction and, as the Court found in its Order, failed to do so. A motion for reconsideration is not a proper vehicle for relitigating past issues and therefore the Motion for Reconsideration should be denied.").

**C. <u>There is No Clear Error—Cash Cloud Inc. is the Real Party in Interest</u>**

Cash Cloud is the real party in interest and it purchased the 4th Generation kiosks from Cole Kepro. On February 26, 2021, Cash Cloud executed a purchase order for the 4th Generation kiosks on Cash Cloud's letterhead using its federally-registered trademark. *See* Exhibit 3. While the April 30, 2021 purchase order mistakenly identifies Coin Cloud LLC as the purchaser, this was obviously an error—one that Defendant must have known—because: (1) this purchase order was also on Cash Cloud's letterhead using its federally-registered trademark; (2) Coin Cloud LLC had no interaction with Defendant ever before; (3) the nearly $20 million in sales leading up to the purchase of the 4th Generation kiosks were made with Cash Cloud Inc., using its tradename Coin Cloud, and paid for with Cash Cloud's bank accounts identifying the account holder as "Cash Cloud Inc. dba Coin Cloud;" (4) Cash Cloud executed and delivered the February 26, 2021 purchase order for the 4th Generation kiosks; and (5) payments for the 4th

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

5

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street, Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

Generation kiosks were made from Cash Cloud with those same bank accounts.  *See* Reply Exhibits 10, and 11, true and correct copies of Cash Cloud's redacted wire transfers and the first pages of certain Cash Cloud bank statements, attached to Cash Cloud's Reply in Support of Its Motion for Declaratory Judgment and for Stay of Arbitration Proceedings and Opposition to Defendant's Countermotion to Dismiss Action Pursuant to EDCR 2.20(f) ("Cash Cloud's Reply").  It is not only implausible, but downright nonsensical, that Defendant would not know who has purchased tens of millions of dollars' worth of kiosks from it.

Moreover, the documents from the first kiosk purchase definitively disprove Defendant's argument.  When the relationship between Cash Cloud and Defendant was in its infancy, Defendant sent a January 2, 2020 sales quote for kiosks.  Days later, Cash Cloud signed a purchase order for 200 kiosks and thereafter wired $270,300.00 to Defendant on January 9, 2020.  Both the January 2, 2020 sales quote and the January 9, 2020 "Wire/Funds Transfer Payment Order" reflect the same address for the purchaser: 8861 West Sahara Ave., Suite 110, Las Vegas, Nevada 89117.  *See* Reply Exhibit 1 at 009; Reply Exhibit 10 at 063 from Cash Cloud's Reply.  Fatally for Defendant's argument, this address was **never** registered with the Nevada Secretary of State in connection with Coin Cloud LLC.  *See* Reply Exhibits 12 and 13 from Cash Cloud's Reply.  It was, however, the registered address for Plaintiff Cash Cloud Inc. on its 2019 Annual List.  *See* Reply Exhibit 5 from Cash Cloud's Reply.  From the outset, Defendant knew that it was Cash Cloud Inc., not Coin Cloud LLC, that was buying its kiosks.

Finally, even if the Court is uncertain as to whether Cash Cloud purchased the 4th Generation kiosks, reconsideration would be inappropriate because the dispute would be one of fact to be resolved after discovery, and, if necessary, at trial.  Courts have repeatedly held that a dispute over the real party in interest is an issue of fact that may be resolved at trial.  *See, e.g., Georgiou Studio, Inc. v. Boulevard Invest, LLC*, 2:07-cv-00997-RCJ-LRL, 2009 WL 10693507, at *4 (D. Nev. Sept. 18, 2009); *Taddeo v. Am. Invsco*

1    *Corp.*, No. 2:08-cv-01463-KJD, 2011 WL 4344097, at *2 (D. Nev. Sept. 14, 2011).  As such,

2    reconsideration of the Court's earlier order would be inappropriate.

3    **D.  NRCP 17(a)(3) Prevents Summary Dismissal**

4    Notwithstanding the foregoing, even if Cash Cloud were not the real party in

5    interest, Defendant's Motion should still be denied as Defendant's argument is directly

6    contrary to the explicit text of NRCP 17(a)(3) (a provision that is conspicuously absent

7    from the Opposition).  NRCP 17(a)(3) emphatically states, "The court may **not** dismiss

8    an action for failure to prosecute in the name of the real party in interest until, after an

9    objection, a reasonable time has been allowed for the real party in interest to ratify, join,

10   or be substituted into the action."  NRCP 17(a)(3) (emphasis supplied).  As explained by

11   the Nevada Supreme Court in *Easton Bus. Opp. v. Town Executive Suites*, 126 Nev. 119,

12   125-26, 230 P.3d 827, 831 (2010):

13              The purpose of [this provision] was to make unmistakably
             clear that the modern function of the real party in interest
14           rule in its negative aspect is simply to protect the defendant
             against a subsequent action by the party actually entitled to
15           recover, and to insure generally that the judgment will have
             its proper effect as res judicata."
16

17   *Id.*  (citation omitted); *see also Dorroh v. Deerbrook Ins. Co.*, 612 Fed. Appx. 424, 427 (9th

18   Cir. 2015) ("If a claimant without standing can obtain ratification from the real party in

19   interest, such ratification shall have the same effect as if the action had been commenced

20   in the name of the real party in interest.").

21   **E.  Cole Kepro's Effort to Forum Shop Should Be Rejected and Its
        Motion Denied**

22   Cole Kepro's filing of the new action is a textbook case of forum-shopping and

23   contravenes Nevada's public policy of adjudicating disputes in the courts where they are

24   first filed.  As this Court knows, "forum shopping, [ ] is inimical to sound judicial

25   administration," *Pub. Serv. Comm'n of Nevada v. Sw. Gas Corp.*, 103 Nev. 307, 308, 738

26   P.2d 890, 891 (1987) (citation omitted), and constitutes an "abuse in [litigation]

27   proceedings," *Principal Investments v. Harrison*, 132 Nev. 9, 18, 366 P.3d 688, 695 (2016).

28

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

For this reason alone, the Court should refrain from granting Defendant's Motion as it would reward its improper effort to select its forum.

As the Court knows, NRCP 42 permits consolidation of actions, such as here, when they "involve a common question of law or fact." NRCP 42(a). As the Court knows, the central issue in this action is Cole Kepro's failure to deliver functional 4th Generation kiosks. Likewise, Cole Kepro's first cause of action in the new lawsuit is its claim for breach of contract on the 4th Generation Kiosk Purchase Order. *See* Exhibit 1 at 6. There can be no reasonable dispute that this action and Cole Kepro's new lawsuit involve a common question of law or fact and would be appropriately subject to consolidation (Cash Cloud understands that a motion seeking consolidation will be forthcoming after Coin Cloud LLC's files its answer in the second-filed lawsuit). Therefore, the only purpose of Cole Kepro's Motion for Reconsideration is to seek dismissal before consolidation could be effectuated, and therefore, successfully forum shop (or "judge shop") for its latest lawsuit. *See Moore*, 92 Nev. at 404 (finding that Nevada law discourages "judge shopping"). The Court should not countenance such tactics and should deny Defendant's Motion.

/ / /

/ / /

/ / /

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

8

**III.    CONCLUSION**

Based on the foregoing, Plaintiff Cash Cloud Inc. respectfully requests that the Court find that there is no appropriate basis to reconsider its earlier order denying Defendant's Countermotion to Dismiss and should, therefore, deny Defendant's Motion for Reconsideration.

DATED this 15th day of November, 2022.

THE JIMMERSON LAW FIRM, P.C.

*/s/ James M. Jimmerson, Esq.*
JAMES J. JIMMERSON, ESQ.
Nevada Bar No. 000264
JAMES M. JIMMERSON, ESQ.
Nevada Bar. No. 12599
415 S. Sixth Street, Suite 100
Las Vegas, Nevada 89101
(702) 388-7171
*Attorneys for Plaintiff Cash Cloud Inc.*

**THE JIMMERSON LAW FIRM, P.C.**
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

## CERTIFICATE OF SERVICE

Pursuant to NRCP 5(b), I certify that I am an employee of THE JIMMERSON LAW FIRM, P.C., and that on this 15th day of November, 2022, I caused a document entitled **PLAINTIFF CASH CLOUD INC.'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT'S OCTOBER 10, 2022 ORDER SOLELY AS IT CONCERNS THE CONTESTED REAL PLAINTIFF PARTY INTEREST** to be served as follows:

[ **X** ]   pursuant to EDCR 8.05(a), EDCR 8.05(f), NRCP 5(b)(2)(D) and Administrative Order 14-2 captioned In the Administrative Matter of Mandatory Electronic Service in the Eighth Judicial District Court, by mandatory electronic service through the Eighth Judicial District Court's electronic filing system;

[ ]   by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada;

[ ]   pursuant to EDCR 7.26, to be sent via **facsimile,** by duly executed consent for service by electronic means.

[ ]   Hand Delivery

To the person(s) listed below at the address, email address, and/or facsimile number indicated below:

Dan R. Waite, Esq.
LEWIS ROCA ROTHGERBER
CHRISTIE LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, NV 89169
*Counsel for Defendant*
*Cole Kepro International, LLC*


_____
*/s/ James Jimmerson*
An employee of THE JIMMERSON LAW FIRM, P.C.

THE JIMMERSON LAW FIRM, P.C.
415 South Sixth Street., Suite 100, Las Vegas, Nevada 89101
(702) 388-7171 – fax (702) 387-1167

# EXHIBIT 1

# EXHIBIT 1

Electronically Filed
10/24/2022 4:13 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
Dan R. Waite, (Nevada SBN: 4078)
DWaite@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: 702.949.8200
Fax: 702.949.8398

David Z. Adler (Michigan SBN: P71227)
(*Pro Hac Vice Forthcoming*)
DAdler@jaffelaw.com
JAFFE RAITT HEUER & WIESS, P.C.
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Plaintiff, Cole Kepro International, LLC*

CASE NO: A-22-860298-B
Department 16

### IN THE EIGHTH JUDICIAL DISTRICT COURT

### CLARK COUNTY, NEVADA

COLE KEPRO INTERNATIONAL, LLC, a
Nevada limited liability company,

        Plaintiff,

vs.

COIN CLOUD, LLC, a Nevada limited liability
company,

        Defendant.

Case No.:
Dep't No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Request for Business Court Assignment Pursuant to EDCR 1.61(a)(1)**

**Exemption from Arbitration Request: Damages Exceed $50,000**

Plaintiff Cole Kepro International, LLC ("Cole Kepro") states as follows for its Complaint against Defendant Coin Cloud, LLC ("Coin Cloud"):

### NATURE OF THE ACTION

1. This action arises out of Defendant Coin Cloud's failure to pay amounts owed to Plaintiff Cole Kepro in breach of contract, including without limitation for digital currency kiosks produced by Cole Kepro pursuant to a purchase order issued by Coin Cloud in the amount of $34,533,120.00, in addition to Coin Cloud's anticipatory repudiation of a separate purchase order for the production of digital currency kiosks in the amount of $100,000,000.00.

119233011.1

**PARTIES**

2.      Plaintiff Cole Kepro is a Nevada limited liability company, duly formed under the laws of the State of Nevada.  At all times since its formation, Cole Kepro's principal place of business has been in Clark County, Nevada.

3.      Upon information and belief, Defendant Coin Cloud is a limited liability company organized under the laws of the State of Nevada.  Coin Cloud's principal place of business is and at all times relevant has been in Clark County, Nevada.

**JURISDICTION AND VENUE**

4.      The Court has personal jurisdiction over Defendant per NRS 14.065 since Plaintiff's causes of action arise directly from Defendant's conduct within the State of Nevada.

5.      Venue is proper in the Eighth Judicial District Court per NRS 13.040.

**DEMAND FOR JURY TRIAL**

6.      Cole Kepro hereby demands a trial by jury of all claims and issues in this action.

**GENERAL ALLEGATIONS**

7.      Cole Kepro's business includes the design and fabrication of sheet metal cabinets with integration of electronic components for sale as digital currency kiosks.

8.      Defendant has had a multi-year business relationship with Cole Kepro.

9.      Cole Kepro has sold digital currency kiosks and related implements to Defendant for years.

10.      In April 2021, pursuant to Defendant's form Purchase Order Number 04302021-2 issued in the name of "Customer [-] Coin Cloud, LLC", Defendant agreed to purchase from Cole Kepro 4,080 4th Generation digital currency kiosks for $34,533,120.00 (the "4th Generation PO").

11.      The 4th Generation PO was signed by each of Defendant's principals Chris McAlary, James Bauer, and Jeffrey Garon.

12.      Per the terms of the transaction consummated by way of the 4th Generation PO, Defendant was bound to pay for all 4,080 kiosks regardless of whether or how many of them Defendant took delivery from Cole Kepro.

119233011.1

13.     After Defendant agreed to purchase 4,080 digital currency kiosks from Cole Kepro pursuant to the 4th Generation PO, Defendant began taking periodic delivery of kiosks from Cole Kepro.

14.     The kiosks produced by Cole Kepro for Defendant pursuant to the 4th Generation PO were fully functional and defect free upon completion.

15.     Indeed, throughout the parties' business relationship, both Cole Kepro and Defendant tested every product before it left Cole Kepro's production facility.  This includes the kiosks of which Defendant took delivery from Cole Kepro pursuant to the 4th Generation PO.

16.     Defendant was provided a portion of a facility leased by Cole Kepro for the purpose of installing Defendant's own software and testing the kiosks.

17.     In any event, the terms of the transaction consummated by way of the 4th Generation PO strictly and exclusively limit any damages purportedly arising from defective product to the cost of repair or replacement, and in no case exceeding the purchase price of the allegedly defective product or the portion thereof giving rise to a claim.

18.     Before, at, or around the time the parties' transaction was consummated by way of the 4th Generation PO, Defendant's and its affiliates' financial condition were deteriorating due to a confluence of several factors, including competition, poor management, a downturn in the digital currency market, a dilution in the field of digital currency kiosks of the type at issue, and Defendant's and its affiliates' placement of kiosks in underperforming locations.

19.     At one point, using several semi-trailer trucks sent to Cole Kepro's production facility, Defendant devised a scheme to take delivery of as many digital currency kiosks as it could in one fell swoop, knowing that it would not be paying Cole Kepro amounts owed pursuant to the transaction consummated by way of the 4th Generation PO.

20.     In August 2021, several months after Defendant began taking delivery of the 4th Generation kiosks from Cole Kepro, Defendant agreed to purchase from Cole Kepro 10,000 Spanner digital currency kiosks for $100,000,000.00 pursuant to Defendant's form Purchase Order Number 8252021-1 (the "Spanner PO").

- 3 -

21.    The Spanner PO was signed by each of Defendant's principals Chris McAlary, James Bauer, and Jeffrey Garon.

22.    On November 1, 2021, several additional months after Defendant began taking delivery of the 4th Generation kiosks from Cole, Defendant's principal Mr. Garon sent Cole Kepro an email confirming among other things Defendant's continued desire to proceed with the transaction consummated by way of the Spanner PO.

23.    Pursuant to the Spanner PO, including as ratified by Defendant no later than November 1, 2021, Defendant ordered all 10,000 of the Spanner kiosks each having the exact same screen as all the kiosks Defendant ordered pursuant to the 4th Generation PO, including those 4th Generation kiosks for which Defendant began taking delivery months earlier.

24.    In early 2022, Defendant began asking Cole Kepro for concessions because Defendant was falling behind on its payments owed to Cole Kepro for the 4th Generation kiosks ordered pursuant to the 4th Generation PO.

25.    Given Defendant's requests for concessions because it was falling behind on its payments owed to Cole Kepro, Cole Kepro requested that Defendant provide copies of Defendant's and its affiliates' financial records.

26.    Because the requested financial records would have demonstrated Defendant's and its affiliates' failing financial condition and/or inability to pay the amounts owed to Cole Kepro, Defendant refused to provide the records to Cole Kepro.

27.    Defendant has failed and refused to pay Cole Kepro amounts owed for 1,071 completed kiosks Defendant ordered pursuant to the 4th Generation PO.

28.    Cole Kepro has stored and continues to store the completed 1,071 kiosks Defendant ordered pursuant to the 4th Generation PO, resulting in continually mounting rental fees owed by Defendant.

29.    Cole Kepro is entitled to payment from Defendant for all its expectation damages under the transaction consummated by way of the 4th Generation PO, i.e., the value of the expectancy that was created by Defendant's promise to purchase the 4,080 4th Generation kiosks.

119233011.1

30.     As a pretext for Defendant's failure to pay amounts owed to Cole Kepro pursuant to the transaction consummated by way of the 4th Generation PO, Defendant began falsely claiming that the 4th Generation kiosks Defendant ordered "suffer from a screen defect."

31.     The kiosks Cole Kepro produces, including those it produced for Defendant, are properly characterized as hardware in that they comprise a computer's tangible components built to store and run written instructions provided by software.

32.     Cole Kepro does not make software.

33.     Defendant and its affiliates know and have known at all times relevant that Cole Kepro does not make software.

34.     Again, all the mechanical, digital, and other components of the 4th Generation kiosks worked precisely as ordered at the time Defendant took delivery of them from Cole Kepro pursuant to the transaction consummated by way of the 4th Generation PO.

35.     Upon information and belief, before, during, or after testing and taking delivery of the 4th Generation kiosks from Cole Kepro's production facility, Defendant attempted to implement software developed by either Defendant, its affiliates, or some other third party.

36.     To the extent that any of the 4th Generation kiosks have allegedly experienced unwanted or unforeseen screen issues, they are directly and exclusively attributable to one or more flaws in the software that Defendant attempted to implement after taking delivery of the kiosks. That is, the alleged issues have nothing whatsoever to do with Cole Kepro.

37.     In 2022, Defendant repudiated the transaction consummated by way of the Spanner PO by telling Cole Kepro, in no uncertain terms, that Defendant would neither take delivery of nor pay for any of the 10,000 kiosks Defendant ordered pursuant to the Spanner PO.

38.     Defendant repudiated the Spanner PO because: (i) Defendant and its affiliates are unable to pay for the Spanner kiosks Defendant ordered as a result of their financial condition; and (ii) Defendant and its affiliates have decided that the Spanner kiosks Defendant ordered are no longer needed, including as a result of the downturn in the digital currency market and the dilution in the field of kiosks of the type at issue.

- 5 -

39.     Cole Kepro is entitled to payment from Defendant for all its expectation damages under the transaction consummated by way of the Spanner PO, i.e., the value of the expectancy that was created by Defendant's promise to purchase the 10,000 Spanner kiosks.

40.     Separate and distinct from Defendant's breaches of the transactions consummated by way of the 4th Generation PO and the Spanner PO, and the continually mounting rental fees owed for storage of the 1,071 4th Generation kiosks of which Defendant did not take delivery, Defendant has failed to pay for various parts ordered from Cole Kepro for use in Defendant's business pursuant to several separate purchase orders.

## FIRST CAUSE OF ACTION
### (Breach of Contract – The 4th Generation PO)

41.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

42.     The transaction consummated by way of the 4th Generation PO is a valid and enforceable contract between Cole Kepro and Defendant.

43.     Defendant has breached its contractual obligations as addressed herein, including by failing and refusing to make payment for the 4,080 4th Generation kiosks ordered pursuant to the 4th Generation PO.

44.     Defendant's breaches of contract are material.

45.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

## SECOND CAUSE OF ACTION
### (Breach of Contract – The Spanner PO)

46.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

47.     The transaction consummated by way of the Spanner PO is a valid and enforceable contract between Cole Kepro and Defendant.

48.     Defendant has breached its contractual obligations as addressed herein, including by telling Cole Kepro, in no uncertain terms, that Defendant would neither take delivery of nor pay for any of the 10,000 kiosks Defendant ordered pursuant to the Spanner PO.

- 6 -

49.     Defendant's breaches of contract are material.

50.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

**THIRD CAUSE OF ACTION**
**(Breach of Contract – The Purchase Orders for Parts)**

51.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

52.     Separate and distinct from the transactions consummated by way of the 4th Generation PO and the Spanner PO, Defendant has at various times ordered parts from Cole Kepro for use in Defendant's business, pursuant to several separate purchase orders.

53.     Defendant has breached its contractual obligations as addressed herein, including by failing to pay Cole Kepro for the parts ordered pursuant to the purchase orders.

54.     Defendant's breaches of contract are material.

55.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

**FOURTH CAUSE OF ACTION**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

56.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

57.     The transactions consummated by way of all the purchase orders addressed herein constitute valid and enforceable contracts.

58.     An implied covenant of good faith and fair dealing exists in every contract, such that neither party may do anything which will injure the right of the other to receive the benefits of the agreement.

59.     Cole Kepro performed all its contractual obligations to Defendant to the letter, including by producing, providing, and otherwise making available to Defendant precisely what Defendant ordered.

60.     To the extent that Cole Kepro did not perform any obligations, such non-performance is excused.

- 7 -

61.     Defendant owed Cole Kepro a duty to perform as promised in a manner which was faithful to the purpose of the contracts.  Defendant breach that duty.

62.     With respect to the contracts addressed herein, Defendant failed to act in good faith and to the best of its ability, thereby breaching its duty to so conduct itself and denying Cole Kepro its justified expectations.

63.     As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

Wherefore, Cole Kepro prays for judgment against Defendant as follows:

1.     For general damages in excess of $15,000.00.

2.     For interest at the maximum amount available under Nevada law.

3.     For reasonable attorney's fees and costs; and

4.     For any other relief this Court finds just and proper.

Dated this 24th day of October, 2022.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: /s/  Dan R. Waite
     Dan R. Waite (Nevada SBN. 4078)
     DWaite@lewisroca.com
     3993 Howard Hughes Parkway, Suite 600
     Las Vegas, NV  89169
     Tel: 702.949.8200

JAFFE RAITT HEUER & WIESS, P.C.

David Z. Adler (Michigan SBN: P71227)
*(Pro Hac Vice Application Forthcoming)*
DAdler@jaffelaw.com
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Plaintiff, Cole Kepro International, LLC*

119233011.1

# EXHIBIT 2

# EXHIBIT 2



**P.O. NUMBER: 2011**

Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

9580 West Sahara Avenue, unit 200
Las Vegas, NV 89117
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | SHIPPED VIA | | Notes |
|---|---|---|---|---|
| 02/25/2021 | David Ellingson | n/a | | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 4080 | Domestic | 1500 Domestic build-type kiosk | $8,575.00 | $34,986,000.00 |
| | | | SUBTOTAL | $34,986,000.00 |
| | | | TOTAL | $34,986,000.00 |

James Bauer    VP of Operations                    Date    2-26-2021

Jeffery Garon    CFO /COO                           Date    2/26/2021

# EXHIBIT 3

# EXHIBIT 3

# United States of America

## United States Patent and Trademark Office



**Reg. No. 6,242,808**

**Registered Jan. 12, 2021**

**Int. Cl.: 36**

**Service Mark**

**Principal Register**

Cash Cloud, Inc.  (NEVADA CORPORATION), DBA Coin Cloud
Suite 200
9580 W. Sahara Avenue
Las Vegas, NEVADA 89117

CLASS 36: Financial services, namely, providing electronic transfer of a virtual currency for use by members of an on-line community via a global computer network

FIRST USE 9-7-2018; IN COMMERCE 9-7-2018

The color(s) white and blue is/are claimed as a feature of the mark.

The mark consists of the wording "COINCLOUD" in white with a white stylized cloud appearing above the wording and a blue background.

SEC. 2(F) as to "COINCLOUD"

SER. NO. 88-724,783, FILED 12-12-2019



Director of the United States
Patent and Trademark Office



## REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION

## WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.

**Requirements in the First Ten Years\***
**What and When to File:**

- *First Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date. See 15 U.S.C. §§1058, 1141k. If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- *Second Filing Deadline:* You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:** The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date). The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations. See 15 U.S.C. §§1058, 1141k. However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration. See 15 U.S.C. §1141j. For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE: Fees and requirements for maintaining registrations are subject to change. Please check the USPTO website for further information. With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE: A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic Application System (TEAS) Correspondence Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# United States of America
## United States Patent and Trademark Office

# CoinCloud

**Reg. No. 6,242,807**

**Registered Jan. 12, 2021**

**Int. Cl.: 36**

**Service Mark**

**Principal Register**

Cash Cloud, Inc. (NEVADA CORPORATION), DBA Coin Cloud
Suite 200
9580 W. Sahara Avenue
Las Vegas, NEVADA 89117

CLASS 36: Financial services, namely, providing electronic transfer of a virtual currency for use by members of an on-line community via a global computer network

FIRST USE 7-26-2014; IN COMMERCE 7-26-2014

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

SEC.2(F)

SER. NO. 88-724,774, FILED 12-12-2019



Director of the United States
Patent and Trademark Office



---

**REQUIREMENTS TO MAINTAIN YOUR FEDERAL TRADEMARK REGISTRATION**

**WARNING: YOUR REGISTRATION WILL BE CANCELLED IF YOU DO NOT FILE THE DOCUMENTS BELOW DURING THE SPECIFIED TIME PERIODS.**

---

**Requirements in the First Ten  Years\***
**What and When to File:**

- ***First Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) between the 5th and 6th years after the registration date.  See 15 U.S.C. §§1058, 1141k.  If the declaration is accepted, the registration will continue in force for the remainder of the ten-year period, calculated from the registration date, unless cancelled by an order of the Commissioner for Trademarks or a federal court.

- ***Second Filing Deadline:***  You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between the 9th and 10th years after the registration date.\* See 15 U.S.C. §1059.

**Requirements in Successive Ten-Year Periods\***
**What and When to File:**

- You must file a Declaration of Use (or Excusable Nonuse) and an Application for Renewal between every 9th and 10th-year period, calculated from the registration date.\*

**Grace Period Filings\***

The above documents will be accepted as timely if filed within six months after the deadlines listed above with the payment of an additional fee.

**\*ATTENTION MADRID PROTOCOL REGISTRANTS:**  The holder of an international registration with an extension of protection to the United States under the Madrid Protocol must timely file the Declarations of Use (or Excusable Nonuse) referenced above directly with the United States Patent and Trademark Office (USPTO). The time periods for filing are based on the U.S. registration date (not the international registration date).  The deadlines and grace periods for the Declarations of Use (or Excusable Nonuse) are identical to those for nationally issued registrations.  See 15 U.S.C. §§1058, 1141k.  However, owners of international registrations do not file renewal applications at the USPTO. Instead, the holder must file a renewal of the underlying international registration at the International Bureau of the  World Intellectual Property Organization, under Article 7 of the Madrid Protocol, before the expiration of each ten-year term of protection, calculated from the date of the international registration.  See 15 U.S.C. §1141j.  For more information and renewal forms for the international registration, see http://www.wipo.int/madrid/en/.

**NOTE:  Fees and requirements for maintaining registrations are subject to change.  Please check the USPTO website for further information.  With the exception of renewal applications for registered extensions of protection, you can file the registration maintenance documents referenced above online at** http://www.uspto.gov.

**NOTE:  A courtesy e-mail reminder of USPTO maintenance filing deadlines will be sent to trademark owners/holders who authorize e-mail communication and maintain a current e-mail address with the USPTO. To ensure that e-mail is authorized and your address is current, please use the Trademark Electronic  Application System (TEAS) Correspondence  Address and Change of Owner Address Forms available at** http://www.uspto.gov.

# EXHIBIT 4

# EXHIBIT 4

## DECLARATION OF JEFFREY L. GARON

I, Jeffrey L. Garon, pursuant to NRS 53.045, declare under penalty of perjury, the following:

1.     I am the Chief Financial Officer and Co-President of Cash Cloud Inc. ("Cash Cloud").  I also serve as Treasurer, Corporate Secretary, and as a Director of Cash Cloud.

2.     I have personal knowledge of the matters contained herein and am competent to testify thereto, except for those matters stated upon information and belief, and to those matters, I believe them to be true.

3.     This Declaration is made in support of Cash Cloud Inc.'s Motion for Declaratory Judgment and for Stay of Arbitration Proceedings (the "Motion").

4.     Cash Cloud is a Nevada corporation based in Las Vegas specializing in the retail purchase and sale of digital currency (commonly known as cryptocurrency).  Retail purchase and sale of digital currency is effectuated using kiosks (commonly known as "bitcoin ATMs").  As a result of its knowledge, effort, and tenure in the market, Cash Cloud is widely known as a leader in the retail digital currency trading industry.

5.     Cash Cloud operates under the fictitious firm name "Coin Cloud," registered with Clark County.

6.     Cash Cloud also owns two federally registered trademarks using the name Coin Cloud: (1) the word mark Coin Cloud; and (2) the combination mark (i.e., logo) for Coin Cloud.

7.     Coin Cloud LLC is a Nevada limited liability company who has one owner in common with Cash Cloud, Christopher McAlary, who also serves as a manager of Coin Cloud LLC.  At Mr. McAlary's request, I have assisted him in maintaining Coin Cloud LLC's registration with the Nevada Secretary of State.  Notwithstanding its status in good standing with the Nevada Secretary of State, Coin Cloud LLC does not conduct active business operations and has not done so for several years.  Coin Cloud LLC had no active business operations in 2021.

1

8.    Cash Cloud has made several purchases of equipment for its business from Defendant Cole Kepro International, LLC ("Cole Kepro").  The purchases are generally reflected in purchase orders submitted to Cole Kepro using Cash Cloud's fictitious firm name, Coin Cloud.  All purchases of equipment from Cole Kepro that I have been involved in have been made by Cash Cloud and payments for the same have come from Cash Cloud's bank account.

9.    Each purchase made by Cash Cloud with Cole Kepro is independent of every other purchase Cash Cloud has made with Cole Kepro and the terms of each purchase are independent of the terms of any other purchase between Cash Cloud and Cole Kepro.

10.   In February 2021, Cash Cloud agreed to purchase 4,080 4th Generation Cole Kepro kiosks ("C-2960-01-000-GEN04 -Coin Cloud Bitcoin Kiosk With BNR") from Cole Kepro for a total price of $34,986,000.00.

11.   On February 16, 2021, Rick Durica of Cole Kepro sent Cash Cloud two sales quotes for the 4th Generation kiosks: one for $8,550.00 per kiosk and one for $8,575.00 per kiosk (the latter of which reflected an updated price for speakers and harness).  Neither of these sales quotes included any terms and conditions beyond the production/delivery and payment terms reflected on each one-page sales quote.  Neither of these sales quotes included any provision for the arbitration of disputes between Cash Cloud and Cole Kepro.

12.   Cash Cloud agreed to purchase 4,080 of the 4th Generation kiosks for the $8,575.00 per unit price (totaling $34,986,000.00), consistent with quote number 4275-1 (a true and accurate copy of which is attached to the Motion as Exhibit 8).  On February 26, 2021, I signed a signed purchase order for Cash Cloud's purchase of 4,080 4th Generation kiosks for $34,986,000.00 (a true and accurate copy of which is attached to the Motion as Exhibit 9).  Lead time for the production/delivery of the kiosks was 12 weeks.

13.    The purchase order for 4,080 4th Generation kiosks was emailed to Andrew Cashin at Cole Kepro on February 26, 2021 (a true and accurate copy of the email is attached to the Motion as Exhibit 10).    In response, Mr. Cashin emailed back on February 26, 2021, stating, "Thank you very much. We've all worked very hard to get to this point.  Now we have to execute at this next level.  We're on it."  A true and correct copy of Mr. Cashin's February 26, 2021 email is attached to the Motion as Exhibit 11.

14.    Approximately eight weeks later, after further discussions with Cole Kepro, Cole Kepro offered to sell the 4th Generation kiosks at a slightly lower price to Cash Cloud ($8,464.00 per unit).  Cole Kepro's offer to sell the 4th Generation kiosks at the slightly lower price did not include any provision for arbitration of disputes between Cash Cloud and Cole Kepro.  On April 30, 2021, I executed a purchase order for the 4,080 4th Generation kiosks for a total price of $34,533,120.00 (a true and accurate copy of the email is attached to the Motion as Exhibit 12).

15.    While this purchase order was on Cash Cloud's letterhead including the registered trademarked Coin Cloud logo, the purchase order mistakenly said that the purchaser was Coin Cloud LLC, not Cash Cloud.  Notwithstanding this error, Coin Cloud LLC did not purchase the 4,080 4th Generation kiosks from Cole Kepro.  Coin Cloud LLC did not take delivery of the 4,080 4th Generation kiosks from Cole Kepro. Coin Cloud LLC did not make payments for the 4,080 4th Generation kiosks from Cole Kepro.  Cash Cloud purchased the 4,080 4th Generation kiosks from Cole Kepro.  Cash Cloud took delivery of the 4,080 4th Generation kiosks from Cole Kepro.  Cash Cloud made payments from its bank account for the 4,080 4th Generation kiosks from Cole Kepro.

16.    Cash Cloud, not Coin Cloud LLC, possesses the rights and remedies available to the purchaser of the 4,080 4th Generation kiosks from Cole Kepro.

17.    Cash Cloud's purchase of the 4,080 4th Generation kiosks from Cole Kepro did not include any agreement to arbitrate disputes between Cash Cloud and Cole

Kepro. Cash Cloud has not agreed and does not agree to arbitrate its dispute with Cole Kepro concerning the purchase of 4,080 4th Generation kiosks from Cole Kepro.

18.    Later in 2021, Cash Cloud discussed a potential purchase of a new line of kiosks called "Spanners" from Cole Kepro.

19.    On August 17, 2021, Rick Durica emailed me (and others) a proposal for the purchase of 10,000 Spanner kiosks. This proposal did not include any provision for arbitration and did not include the two-page set of terms and conditions attached to Andrew Cashin's November 1, 2021 email to me.

20.    On August 26, 2021, I signed a purchase order for Cash Cloud's purchase of 10,000 Spanner kiosks for $10,000 per unit (a true and accurate copy of which is attached to the Motion as Exhibit 14). Like the February 26, 2021 purchase order, the August 26, 2021 purchase order was made on Cash Cloud's letterhead including the Coin Cloud logo.

21.    On November 1, 2021, Andrew Cashin of Cole Kepro emailed me requesting that I "confirm the following purchase order for $100,000,000.00." Included in this email was an attachment of the two-page .pdf of terms and conditions, which Mr. Cashin acknowledged was not included in the sales quote for the Spanners, but that Cole Kepro wished to be part of the purchase of the Spanners. In response to this email, I confirmed the purchase order.

22.    At no point in time did Cash Cloud agree that all of Cash Cloud's purchases of Cole Kepro's products would be subject to the terms and conditions attached to Mr. Cashin's November 1, 2021 email.

23.    At no point in time did Cash Cloud agree that its purchase of 4,080 4th Generation kiosks would be subject to the terms and conditions attached to Mr. Cashin's November 1, 2021 email.

24.    Indeed, I certainly could not and did not agree that the two-page .pdf of terms and conditions had, in the past, been included in all sales quotes because Cole

4

1  Kepro had not included the two-page .pdf of terms and conditions in all prior sales quotes
2  to Cash Cloud.

3        25.    A dispute has arisen between Cash Cloud and Cole Kepro concerning the
4  purchase of 4,080 4th Generation kiosks. Cole Kepro issued a demand for arbitration
5  dated May 27, 2022 concerning multiple purchase orders, including Cash Cloud's
6  purchase of 4,080 4th Generation kiosks from Cole Kepro (a true and accurate copy of
7  which is attached to the Motion as Exhibit 15).

8        26.    Because Cash Cloud has never agreed to arbitrate any dispute concerning
9  its purchase of 4,080 4th Generation kiosks with Cole Kepro, Cash Cloud is pursuing its
10  remedies before this Court. However, because the arbitration organization selected by
11  Cole Kepro (AAA) has stated that it will move forward with arbitration absent a court
12  order, an order declaring that there is no arbitration agreement between Cash Cloud
13  and Cole Kepro concerning the purchase of 4,080 4th Generation kiosks and staying the
14  arbitration concerning the purchase of 4,080 4th Generation kiosks is needed.

15        I declare that the foregoing is true and correct under penalty of perjury under the
16  laws of the State of Nevada.

17        Executed this 23rd day of June, 2022.

18
19                                _____
20                                JEFFREY L. GARON
21
22
23
24
25
26
27
28