BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      nkoffroth@foxrothschild.com
      zwilliams@foxrothschild.com
*Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re<br><br>    CASH CLOUD, INC.,<br>    dba COIN CLOUD,<br><br>               Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**MEMORANDUM OF LAW IN SUPPORT OF: (A) FINAL APPROVAL OF DISCLOSURE STATEMENT [ECF NO. 529]; AND (B) CONFIRMATION OF DEBTOR'S FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION DATED AUGUST 1, 2023 [ECF NO. 996]**<br><br>Hearing Date:   August 17, 2023<br>Hearing Time:  9:30 a.m. |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................. 1

II.  BACKGROUND ................................................................. 3

    A.  DIP Financing. ........................................................ 3

    B.  The Bidding Procedures and Toggle Sale or Plan Support Agreement. ................ 3

    C.  Surcharge Motion. ..................................................... 4

    D.  Conditional Approval of Disclosure Statement and Solicitation of Votes on Original and Amended Plans. .................................... 5

III.  AMENDED PLAN OVERVIEW ............................................. 5

    A.  Transfer of Litigation Assets and Avoidance Actions to Creditor Trust. .............. 5

        1.  The Litigation Assets. ....................................... 6

        2.  The Avoidance Actions. ..................................... 8

    B.  Description of Claims and Classes. ..................................... 9

IV.  SOLICITATION .............................................................. 16

V.  VOTING RESULTS ........................................................... 16

VI.  LEGAL STANDARDS FOR CONFIRMATION ............................ 17

    A.  The Applicable Plan Confirmation Standards:  11 U.S.C. § 1129. ...................... 18

        1.  11 U.S.C. § 1129(a)(1): Plan Compliance With the Bankruptcy Code. ................................................ 18

            a.  11 U.S.C. § 1122: Classification of Claims. ............................... 19

            b.  11 U.S.C. § 1123(a):  Mandatory Plan Requirements. ................. 20

            c.  11 U.S.C. § 1123(b): Permissive Plan Provisions. ....................... 22

               i.  Generally. ................................................ 22

               ii.  The Amended Plan's Exculpation Provision Is Appropriate. ........................................ 24

        2.  11 U.S.C. § 1129(a)(2):  Proponent Compliance With the Bankruptcy Code. ........................................... 26

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

i

353743\00002\148239602.11

3.      11 U.S.C. § 1129(a)(3):  Good Faith. ....................................................... 28

4.      11 U.S.C. § 1129(a)(4):  Payments for Services Reasonable. .................. 30

5.      11 U.S.C. § 1129(a)(5):  Disclosure of Management and Insiders. .................................................................................................... 30

6.      11 U.S.C. § 1129(a)(6):  Regulatory Approvals. ..................................... 31

7.      11 U.S.C. § 1129(a)(7):  Best Interests Test. ........................................... 31

8.      11 U.S.C. § 1129(a)(8):  Class Acceptance. ............................................ 33

9.      11 U.S.C. § 1129(a)(9):  Administrative and Priority Claims. ................ 33

10.     11 U.S.C. § 1129(a)(10):  One Consenting Impaired Class..................... 34

11.     11 U.S.C. § 1129(a)(11):  Feasibility......................................................... 34

12.     11 U.S.C. § 1129(a)(12):  U.S. Trustee's Fees Paid. .............................. 35

13.     11 U.S.C. § 1129(a)(13):  No Retiree Benefits.......................................... 35

14.     11 U.S.C. § 1129(a)(14):  Domestic Support Obligations. ....................... 36

15.     11 U.S.C. § 1129(a)(15):  Plan Contributions of an Individual Debtor. ....................................................................................................... 36

16.     11 U.S.C. § 1129(a)(16):  Non-Profit Transfers. ...................................... 36

B.      The Amended Plan Complies with Various Other Miscellaneous Requirements. ................................................................................................... 36

C.      11 U.S.C. § 1129(b):  The Amended Plan May Be Confirmed Over the Dissent of Impaired Classes........................................................................... 37

    1.      The Amended Plan Does Not "Discriminate Unfairly."........................... 37

    2.      The Amended Plan Is "Fair and Equitable."........................................... 38

VII.    Objections to confirmation ................................................................................... 39

B.      Response to the Brink's Objection and Enigma Reservation. .............................. 40

B.      Response to the Cole Kepro Limited Objection. ................................................. 40

C.      Response to the McAlary Objection. .................................................................... 41

    1.      Resolicitation. ....................................................................................... 41

    2.      Exculpation. ......................................................................................... 42

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3.      Setoff Rights. ................................................................. 43

4.      Effective Date/Feasibility. .............................................. 43

VIII.   CONCLUSION ................................................................................. 47

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp.*,
  368 B.R. 140 (Bankr. S.D.N.Y. 2007) ........................................................................31

*Agarwal v. Pomona Valley Med. Grp. (In re Pomona Valley Med. Grp.)*,
  476 F.3d 665 (9th Cir. 2007) ....................................................................................23

*In re Almatis, B.V.*,
  Case No. 10-12308, Dkt. No. 444 (Bankr. S.D.N.Y. Sept. 20, 2010) ......................43

*In re Ambac Fin. Grp., Inc.*,
  Case No. 10- 15973 (SCC) (Bankr. S.D.N.Y. May 1, 2013) (ECF No. 1308).........46

*In re Art & Architecture Books of the 21st Century*,
  No. 2:13-bk-14135-RK, 2016 WL 1118743 (Bankr. C.D. Cal. Mar. 18, 2016).........30, 31, 37

*Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle P'ship*,
  526 U.S. 434 (1999).....................................................................................................31

*Barakat v. Life Ins. Co. of Va. (In re Barakat)*,
  99 F.3d 1520 (9th Cir. 1996) .....................................................................................19

*Blixseth v. Credit Suisse*,
  961 F.3d 1074 (9th Cir. 2020) .................................................................................25, 26

*In re Buttonwood Partners, Ltd.*,
  111 B.R. 57 (Bankr. S.D.N.Y. 1990)...........................................................................37

*In re Caesars Entm't Operating Co.*,
  Case No. 15- 01145 (ABG) (Bankr. N.D. Ill. Oct. 6, 2017) (ECF No. 7482).........46

*In re Charter Commc'ns, Inc.*,
  Case No. 09-11435, Dkt. No. 921 (Bankr. S.D.N.Y. Nov. 17, 2009) ......................43

*CIT Commc'ns Fin. Corp. v. Midway Airlines Corp.* (*In re Midway Airlines Corp.*),
  406 F.3d 229 (4th Cir. 2005) .....................................................................................45

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*,
  280 F.3d 648 (6th Cir. 2002) .....................................................................................19

*Computer Task Group, Inc. v. Brotby (In re Brotby)*,
  303 B.R. 177 (B.A.P. 9th Cir. 2003)..........................................................................27

*In re Dakota Rail, Inc.*,
  104 B.R. 138 (Bankr. D. Minn. 1989) ......................................................................27

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

*In re Delphi Corp.*,
  Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 25, 2008) (ECF No. 12359)....................45

*Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*,
  204 F.3d 1276 (9th Cir. 2000) .........................................................................................23

*In re Eastman Kodak Co.*,
  Case No. 12-10202, Dkt. No. 4966 (Bankr. S.D.N.Y. Aug. 23, 2013) .................................42

*In re Food City, Inc.*,
  110 B.R. 808 (Bankr. W.D. Tex. 1990)..............................................................................30

*In re G-I Holdings, Inc.*,
  420 B.R. 216 (D.N.J. 2009) .............................................................................................18

*In re Idearc Inc.*,
  423 B.R. 138 (Bankr. N.D. Tex. 2009)..............................................................................30

*Inc. v. Delgado (In re Zante, Inc.)*,
  467 B.R. 216 (D. Nev. 2012) ...........................................................................................19

*In re Johns-Mansville Corp.*,
  68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*,
  843 F.2d 636 (2d Cir. 1988)............................................................................................37

*In re Journal Register Co.*,
  407 B.R. 520 (Bankr. S.D.N.Y. 2009) ..............................................................................18

*Kane v. Johns-Manville (In re Johns-Mansville Corp.)*,
  843 F.2d 636 (2d Cir. 1988)......................................................................................18, 34

*In re Korea Chosun Daily Times, Inc.*,
  337 B.R. 773 (Bankr. E.D.N.Y. 2005)..............................................................................45

*Lazo v. Roberts*,
  No. CV15-7037-CAS(PJWx), 2016 WL 738273 (C.D. Cal. Feb. 22, 2016) ........................25

*Liberty Nat'l Enters. v. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd.
  P'ship)*,
  115 F.3d 650 (9th Cir. 1997) ..........................................................................................18

*In re Lighthouse Lodge, LLC*,
  No. 09-52610-RLE, 2010 WL 4053984 (Bankr. N.D. Cal. Oct. 14, 2010)...........................25

*In re LightSquared Inc.*,
  513 B.R. 56 (Bankr. S.D.N.Y. 2014).................................................................................37

*In re Lightsquared Inc.*,
  Case No. 12-12080 (SCC) (Bankr. S.D.N.Y Dec. 7, 2015) (ECF No. 2433).........................45

v

*M & I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.)*,
  217 B.R. 588 (B.A.P. 9th Cir. 1998)................................................................................31

*Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*,
  478 B.R. 403 (D. Nev. 2012)...........................................................................................25

*NLRB v. Bildisco & Bildisco*,
  465 U.S. 513 (1984).........................................................................................................23

*Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw.)*,
  761 F.2d 1374 (9th Cir. 1985) .........................................................................................34

*Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*,
  314 F.3d 1070 (9th Cir. 2002) .........................................................................................29

*In re PPI Enters., Inc.*,
  228 B.R. 339 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003)......................29

*In re Rexford Props., LLC*,
  558 B.R. 352 (Bankr. C.D. Cal. 2016) .......................................................................19, 20

*In re Sagewood Manor Assocs. LP*,
  223 B.R. 756 (Bankr. D. Nev. 1998) ....................................................................29, 35, 46

*In re Sears Holdings Corp.*,
  Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 15, 2019) (ECF No. 5370) .....................45

*In re Stearns Holdings, LLC*,
  607 B.R. 781 (Bankr. S.D.N.Y. 2019) .............................................................................25

*Steelcase, Inc. v. Johnston (In re Johnston)*,
  21 F.3d 323 (9th Cir. 1994) .......................................................................................19, 20

*In re Texas Extrusion Corp.*,
  844 F.2d 1142 (5th Cir. 1988) .........................................................................................27

*Toibb v. Radloff*,
  501 U.S. 157 (1991).........................................................................................................29

*In re Trans Max Techs.*,
  349 B.R. 80 (Bankr. D. Nev. 2006) .................................................................................29

*In re Trans World Airlines, Inc.*,
  185 B.R. 302 (Bankr. E.D. Mo. 1995) .............................................................................26

*United States v. Whiting Pools, Inc.*,
  462 U.S. 198 (1983).........................................................................................................29

*In re W. Asbestos Co.*,
  313 B.R. 832 (Bankr. N.D. Cal. 2003) ........................................................................25, 26

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

vi

*In re W.R. Grace & Co.*,
  Case No. 01-01139 (JKF) (Bankr. D. Del. Jan. 31, 2011) (ECF No. 26155) .........................45

*Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*,
  465 B.R. 525 (B.A.P. 9th Cir. 2012), *aff'd*, 578 F. App'x. 644 (9th Cir. 2014) .....................19

*In re Yellowstone Mountain Club*,
  460 B.R. 254 (Bankr. D. Mont. 2011) ..............................................................................25, 26

*Zante, Inc.*, 467 B.R. at 219 § 1129(a)(7) ..........................................................................31

**Statutes**

11 U.S.C. § 101(14)(A) ...................................................................................................36

11 U.S.C. § 330 ...............................................................................................................30

11 U.S.C. § 363 .................................................................................................................3

11 U.S.C. § 365 ...............................................................................................................23

11 U.S.C. § 365(a) ...........................................................................................................23

11 U.S.C. § 506(c) ......................................................................................................5, 15

11 U.S.C. § 547 .................................................................................................................8

11 U.S.C. § 553 ...............................................................................................................41

11 U.S.C. § 1114 .............................................................................................................35

11 U.S.C. § 1122 .......................................................................................................19, 20

11 U.S.C. § 1122(a) .........................................................................................................19

11 U.S.C. § 1123(a) .........................................................................................................20

11 U.S.C. § 1123(a)(1) .....................................................................................................20

11 U.S.C. § 1123(a)(2) .....................................................................................................20

11 U.S.C. § 1123(a)(3) ...............................................................................................20, 21

11 U.S.C. § 1123(a)(4) .....................................................................................................21

11 U.S.C. § 1123(a)(5) ...............................................................................................21, 22

11 U.S.C. § 1123(a)(7) .....................................................................................................22

11 U.S.C. § 1123(a)(8) .....................................................................................................22

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

11 U.S.C. § 1123(b) ........................................................................................................22, 24

11 U.S.C. § 1123(b)(1) ..........................................................................................................22

11 U.S.C. § 1123(b)(2) ..........................................................................................................23

11 U.S.C. § 1123(b)(3)(B) .....................................................................................................23

11 U.S.C. § 1123(b)(4) ..........................................................................................................23

11 U.S.C. § 1123(b)(5) ..........................................................................................................24

11 U.S.C. § 1123(b)(6) ..........................................................................................................24

11 U.S.C. § 1125 ..............................................................................................................26, 28

11 U.S.C. § 1125(b) ...............................................................................................................26

11 U.S.C. § 1126(f) ...........................................................................................................15, 17

11 U.S.C. § 1126(g) ..........................................................................................................15, 17

11 U.S.C. § 1129 ...............................................................................................18, 36, 38, 39

11 U.S.C. § 1129(a) ..........................................................................................................17, 18

11 U.S.C. § 1129(a)(1) ......................................................................................................18, 34

11 U.S.C. § 1129(a)(2) ..........................................................................................................26

11 U.S.C. § 1129(a)(3) ..................................................................................................28, 29, 30

11 U.S.C. § 1129(a)(4) ..........................................................................................................30

11 U.S.C. § 1129(a)(5) ..........................................................................................................30

11 U.S.C. § 1129(a)(6) ..........................................................................................................31

11 U.S.C. § 1129(a)(7) ......................................................................................................31, 32

11 U.S.C. § 1129(a)(7)(A) .....................................................................................................31

11 U.S.C. § 1129(a)(8) ..........................................................................................................33

11 U.S.C. § 1129(a)(9) ..................................................................................................33, 34, 40, 45

11 U.S.C. § 1129(a)(9)(A) .................................................................................................33, 45

11 U.S.C. § 1129(a)(9)(B) .....................................................................................................33

11 U.S.C. § 1129(a)(9)(C) .....................................................................................................33

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

11 U.S.C. § 1129(a)(9)(D) ..............................................................................................33

11 U.S.C. § 1129(a)(10) .................................................................................................34

11 U.S.C. § 1129(a)(11) .............................................................................................34, 35

11 U.S.C. § 1129(a)(12) .................................................................................................35

11 U.S.C. § 1129(a)(12) .................................................................................................35

11 U.S.C. § 1129(a)(12) .................................................................................................35

11 U.S.C. § 1129(a)(13) .................................................................................................35

11 U.S.C. § 1129(a)(14) .................................................................................................36

11 U.S.C. § 1129(a)(15) .................................................................................................36

11 U.S.C. § 1129(a)(16) .................................................................................................36

11 U.S.C. § 1129(b) ..........................................................................18, 33, 36, 37, 38, 39

11 U.S.C. § 1129(b)(1) ..............................................................................................37, 39

11 U.S.C. § 1129(b)(2) .................................................................................................39

11 U.S.C. § 1129(c) .......................................................................................................36

28 U.S.C. § 1981 ..............................................................................................................7

**Other Authorities**

Bankr. R. 1129(d) ...........................................................................................................36

Bankr. R. 3016 ...............................................................................................................36

Bankr. R. 3020(b)(2) .......................................................................................................30

H.R. Rep. No. 95-595 .....................................................................................................18

H.R. Rep. No. 95-595 (1977) .........................................................................................26

S. Rep. No. 95-989 (1978) .........................................................................................18, 26

Stretto's *Certificate of Service* ...................................................................................16

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

ix

## I.    INTRODUCTION

1.    Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case"), by and through its attorneys, the law firm of Fox Rothschild LLP, respectfully submits its Memorandum of Law (the "Confirmation Memo") in support of: (A) final approval of the *Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization Dated May 8, 2023* [ECF No. 529] (the "Disclosure Statement");[1] and (B) confirmation of the *Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 996] (the "Amended Plan").[2]

2.    Contemporaneously with the filing of this Confirmation Brief, the Debtor is also filing its Voting Report, which certifies that impaired Class 2(b) (Genesis Secured Claim) & Class 3(b) (General Unsecured Creditors) have voted to accept the Amended Plan.  The Debtor seeks confirmation nonconsensually pursuant to section 1129(b) given that impaired Class 2(c) (Enigma Secured Claim) voted to reject the Amended Plan, impaired Class 3(a) (AVT Secured Claim) did not vote, and impaired Class 4 (Old Interests) is deemed to have rejected the Amended Plan.

3.    This memorandum is supported by: these moving papers; the Amended Plan; the Disclosure Statement; *Debtor's Chapter 11 Plan of Reorganization Dated May 8, 2023* [ECF No. 528] (the "Original Plan"); the Omnibus Reply (defined below); the *Declaration of Tanner James in Support of Confirmation of [the Amended Plan]* (the "James Declaration"), and the *Declaration of Angela Tsai on Behalf of Stretto Regarding Solicitation of Votes and Tabulation of Ballots Accepting and Rejecting [the Original Plan and the Amended Plan]* (the "Voting Report") filed concurrently herewith; the *Order Pursuant to 11 U.S.C. 105(d)(2)(B)(VI), Fed. R. Bankr. P. 3017.1 and Local Rule 3017 Implementing Expedited Solicitation and Confirmation Procedures Including: (I) Conditionally Approving Disclosure Statement; (II) Setting Combined Hearing on Final Approval of Disclosure Statement and Plan Confirmation; (III) Approving (A) Form and Scope of Combined*

---

[1]  The Debtor will address its request for final approval of the Disclosure Statement in Section VI.A.2 below.

[2]  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Disclosure Statement or the Amended Plan.

353743\00002\148239602.11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

*Hearing Notice, and (B) Form of Ballots; (IV) Scheduling Voting and Objection Deadlines; and (V) Granting Related Relief* [ECF No. 554] (the "Solicitation Order"); the *Notice of Combined Hearing Re: (I) Final Approval of Disclosure Statement; and (II) Confirmation of Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 555] (the "Confirmation Hearing Notice"); the *Certificates of Service of the Confirmation Hearing Notice* [Docket Nos. 626, 659]; the *Certificate of Service of Plan Solicitation Packages* [ECF No. 626]; any other oral or documentary evidence that may be presented in support of the Plan; the arguments and representations of counsel at the hearing to consider confirmation of the Plan (the "Confirmation Hearing"); and the record in this Chapter 11 Case.

4.    This Court has scheduled the Confirmation Hearing on August 17, 2023, starting at 10:30 a.m.    Brink's Incorporated ("Brink's") filed its *Objection of Brink's Incorporated to Confirmation of Debtor's Chapter 11 Plan and Reservation of Rights* [ECF No. 838] (the "Brink's Objection"), Enigma Securities Limited ("Enigma") filed its *Reservation of Rights with Respect to Confirmation of Plan* [ECF No. 834] (the "Enigma Reservation"), Christopher McAlary ("McAlary") filed his *Objection to Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 1061] (the "McAlary Objection"), and Cole Kepro International, LLC ("Cole Kepro") filed its *Limited Objection to Debtor's First Amended Plan of Reorganization Dated August 1, 2023* [ECF No. 1070] (the "Cole Kepro Limited Objection").

5.    The Brink's Objection and the Enigma Reservation were filed with respect to confirmation of the Original Plan.  On July 20, 2023, the Debtor filed *Debtor's Omnibus Reply to [the Brink's Objection and the Enigma Reservation]* [ECF No. 910] (the "Omnibus Reply").

6.    The McAlary Objection and Cole Kepro Objection were filed with respect to the Amended Plan.  The Debtor, through this Confirmation Memo, provides its reply to the McAlary Objection and the Cole Kepro Objection.

7.    For the reasons and based on the authorities set forth below, the Debtor submits that the Court should confirm the Amended Plan at the Confirmation Hearing.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## II.    BACKGROUND

### A.    DIP Financing.

8.    On the Petition Date, the Debtor filed the Motion for Interim and Final Orders: (I) Authorizing Debtor to Obtain Post-Petition Senior Secured, Superpriority Financing; (II) Granting Liens and Superpriority Claims; (III) Modifying the Automatic Stay; (IV) Scheduling Final Hearing; and (V) Granting Related Relief [ECF No. 35] (the "DIP Motion").  Under the DIP Motion, the Debtor sought debtor-in-possession financing of up to $5,000,000 (the "DIP Financing") from CKDL Credit, LLC, a Delaware limited liability company (the "DIP Lender").

9.    On March 20, 2023, the Court entered an order [ECF No. 315] (the "Final DIP Order") granting the DIP Motion on a final basis.

10.    As of the date of the filing of this Confirmation Memo, the DIP Financing has been paid in full and all liens held by the DIP Lender against the Debtor's assets have been extinguished.

### B.    The Bidding Procedures and Toggle Sale or Plan Support Agreement.

11.    On April 7, 2023, Debtor filed its *Motion for Entry of an Order: (A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially all of the Debtor's Assets; (B) Approving Form Notice to be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [ECF No. 392] (the "Bidding Procedures Motion").

12.    As set forth more fully in the Bidding Procedures Motion, the Debtor requested entry of an order (the "Bidding Procedures Order"): (i) approving and authorizing those certain bidding procedures (the "Bidding Procedures"), to select a value-maximizing transaction (a "Transaction") which may include (a) sponsoring a proposed plan of reorganization for Debtor, or (b) purchasing substantially all of the Debtor's assets pursuant to a sale under section 363 of the Bankruptcy Code (a potential reorganization plan sponsor or Sale purchaser, each a "Bidder"); and (ii) approving and authorizing an auction process (the "Auction") to select the Bidder proposing the highest and best Transaction in accordance with the Bidding Procedures.  On April 27, 2023, the Court entered the Bidding Procedures Order [ECF No. 483].

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

13.     On June 2, 2023, the Debtor held the Auction, which resulted in two winning bids to purchase the Debtor's assets—a joint bid from Heller Capital Group, LLC ("Heller") and Genesis Coin, Inc. ("Genesis Coin")—and a separate bid by McAlary.  *See Notice of Auction Results Regarding Sale of Substantially All of the Debtor's Assets* [ECF No. 618, corrected by ECF No. 621].

14.     On June 19, 2023, Debtor filed its *Amended Motion for Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC, and Genesis Coin, Inc., Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Authorizing the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief* [ECF No. 730] (the "Sale Motion").

15.     As set forth in the Sale Motion, Debtor sought authority to sell the Heller Assets (as defined in the Sale Motion) (which consisted of virtually all of Debtor's DCMs) to Heller pursuant to the terms of the Heller APA (as defined in the Sale Motion) for a purchase price of $4,200,000 (the "Heller Purchase Price").  Concurrently, Debtor sought authority to sell the Genesis Coin Assets (as defined in the Sale Motion) (consisting of rights to certain intellectual property) to Genesis Coin for payment of 1% of all monthly net proceeds generated by Genesis Coin from a certain subset of the Commissioned Machines (as defined in the Sale Motion) throughout the period specified in its asset purchase agreement, with a minimum guarantee of $1,500,000 to be paid to Debtor over a maximum period of 20 months.

16.     On June 30, 2023, the Court entered its *Order* approving the Sale Motion [ECF No. 795]. On July 19, 2023, Heller notified Debtor that it was exercising the 10% Purchase Price Adjustment as defined in the Heller APA, reducing the Heller Purchase Price to $3,780,000. On July 21, 2023, the sale to Heller and Genesis Coin closed. *See Declaration of Daniel Ayala* [ECF No. 988], at ¶¶7-8.

**C.    Surcharge Motion.**

17.     On July 24, 2023, the Debtor filed its Motion for Entry of Order Authorizing Debtor to Surcharge the Collateral of Genesis Global Holdco, LLC, Enigma Securities Limited, and AVT Nevada, L.P. [ECF No. 926] (the "Surcharge Motion"), seeking to surcharge the collateral of

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Enigma, Genesis Global Holdco, LLC ("Genesis") and AVT Nevada, L.P. ("AVT") under section 506(c) of the Bankruptcy Code for certain reasonable, necessary costs and expenses of preserving and/or disposing of such collateral. The evidentiary hearing on the Surcharge Motion is scheduled for the week of September 25, 2023 (subject to Court's availability).

D.     **Conditional Approval of Disclosure Statement and Solicitation of Votes on Original and Amended Plans.**

18.    On May 12, 2023, the Court entered the Solicitation Order. In compliance with the Solicitation Order, on May 31, 2023, the Debtor mailed Solicitation Packages to the Holders of Claims in impaired Classes 3(a) (AVT) and 3(b) (General Unsecured Claims); sent the Notice of Non-Voting Status to the Holders of Claims and Interests in Classes 1, 2(a), 2(b), 2(c), 2(d) and (4) together with the Combined Hearing Notice to all other creditors, interest holders and parties in interest. *See* Certificate of Service [ECF No. 626].

19.    Because the sale proceeds from Auction were insufficient to satisfy the secured claims of Enigma, Genesis, and AVT (collectively, the "Secured Creditors") in full, the Debtor filed its Amended Plan, altering the treatment of the Secured Creditors' claims only. The treatment of the General Unsecured Claims and Old Interests remained the same as the Original Plan's treatment under a sale transaction. *See Notice of Redline of Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 997] ("Redline of Amended Plan").

20.    On August 1, 2023, the Debtor filed the Amended Plan, and served it, together with the appropriate ballots, via email to the Secured Creditors noting an August 8, 2023, voting deadline. *See* ECF No. 1025 (stipulated August 8, 2023, voting deadline).

III.    **AMENDED PLAN OVERVIEW**

A.     **Transfer of Litigation Assets and Avoidance Actions to Creditor Trust.**

21.    The Debtor and the Committee have entered into two *Stipulations* [ECF Nos. 1009 & 1050] (the "Derivative Standing Stipulations"), whereby the Debtor agreed to grant the Committee derivative standing to pursue, litigate, and collect on certain litigation assets (the "Litigation Assets") and avoidance actions (the "Avoidance Actions") described below, for the benefit of the Debtor and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

1   its creditors.  McAlary filed an *Opposition* to the Derivative Standing Stipulations [ECF No. 1029],

2   and the matter has been set for hearing on August 17, 2023.  *See* ECF No. 1064.

3       22.    The Amended Plan contemplates that the Creditor Trustee, selected by the

4   Committee, will be appointed to administer the Amended Plan and to seek recovery on all Causes of

5   Action (as defined in the Amended Plan, Art. I, § 1.1), including the Litigation Assets and Avoidance

6   Actions (pending an order by the Court approving the Derivative Standing Stipulations).  These

7   assets include, but are not limited to:

8           **1.    The Litigation Assets.**

9       23.    ***Cash Cloud v. Cole Kepro International, LLC.***  The action captioned Case No. A-

10  22-854226-B (the "Kepro Action") is pending in the Eighth Judicial District Court in Clark County,

11  Nevada, and arises out of Cole Kepro's sale of faulty equipment to Cash Cloud.  In 2021, Cash Cloud

12  purchased over 4,000 DCMs from Cole Kepro.  Unbeknownst to Cash Cloud, the DCMs sold by

13  Cole Kepro to Cash Cloud were defective and they did not function or operate as intended and

14  promised.  Cole Kepro initiated an arbitration concerning this dispute, claiming a breach of contract.

15  On June 17, 2022, Cash Cloud filed a complaint against Cole Kepro, and shortly thereafter, a motion

16  for declaratory judgment and for a stay of the arbitration proceedings concerning the Cole Kepro

17  DCMs.  In response to this motion, Cole Kepro filed a countermotion to dismiss the complaint.  The

18  hearing on the motion and countermotion was conducted on September 13, 2022, where the court

19  granted the motion, issued declaratory judgment, stayed the arbitration of the DCM dispute, and

20  denied the countermotion.  Discovery is set to open shortly and the Debtor estimates recovery to be

21  from $0 (or a judgment in favor of Cole Kepro) to $10,000,000.00 or more (the Debtor is uncertain

22  of Cole Kepro's assets, insurance coverage, or ability to pay a judgment were the court to enter a

23  judgment in favor of Cash Cloud).  *See Omnibus Declaration of Christopher Andrew McAlary in*

24  *Support of Emergency First Day Motions* [ECF No. 19] (the "Omnibus Declaration"), Article 1.E.

25      24.    ***Cash Cloud v. Bitaccess Inc.***  This action captioned *Cash Cloud Inc. v. Bitaccess Inc.*

26  Case No. CV-22-00089887-0000 (the "Bitaccess Action"), is pending in the Superior Court of

27  Justice in Ottawa, Ontario, Canada and arises out of (1) Bitaccess's improper and unlawful attempt

28  to terminate the contract between Cash Cloud and Bitaccess by which Cash Cloud has secured the

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

6

software which runs a substantial portion of its DCMs; and (2) Bitaccess's 2021 software update which caused all of Cash Cloud's DCMs running the Bitaccess software to shut down.  On August 11, 2022, Cash Cloud filed an application for interim injunctive relief against Bitaccess and initiated arbitration on August 16, 2022.  The proceedings before the Court in Ottawa have concluded and the matter is proceeding through arbitration, with the arbitration panel rejecting Bitaccess's challenge to its jurisdiction.  The Debtor estimates recovery to be between $250,000 and $2,000,000.00 or more (the Debtor does not know Bitcoin Depot's insurance coverage, nor its ability to pay a substantial judgment).  *See* Omnibus Declaration, Article 1.E.

25.    ***Cash Cloud v. Bitcoin Depot***.  This action, captioned *Cash Cloud, Inc. dba Coin Cloud v. Lux Vending, LLC d/b/a Bitcoin Depot*, Adversary Case No. 23-01015-mkn (the "Bitcoin Depot Action"), is pending in the Chapter 11 Case and arises out of Bitcoin Depot's control of Bitaccess' interference with certain agreements between Bitaccess and the Debtor, the improper deactivation of certain licensed software, false and misleading statements to the Debtor's customers, and trademark infringement. The Debtor estimates recovery to be between $250,000 and $2,000,000 or more (the Debtor does not know Bitaccess's insurance coverage, not its ability to pay a substantial judgment).  *See* Omnibus Declaration, Article 1.E.

26.    ***Cash Cloud v. Redmond.***  The action captioned *Cash Cloud Inc. v. Redmond*, Case No. A-21-839023-B, is pending in the Eighth Judicial District Court in Clark County, Nevada, and arises out of the improper actions defendant Redmond took in (1) defrauding Cash Cloud as to his credentials and professional background prior to his hiring, (2) his improper expenditures of Cash Cloud funds during his employment, and (3) his post termination interference with Cash Cloud's prospective contracts involving professional athlete endorsements.  On August 5, 2021, Cash Cloud filed a complaint against Redmond.  In response to the complaint, Redmond has asserted one counterclaim for alleged racial discrimination under Title VII.  This counterclaim was recently dismissed.  Redmond has now filed a motion to amend his pleadings and add a different claim for racial discrimination under 28 U.S.C. 1981.  Discovery has just opened and the Debtor estimates recovery to be from $0 (or a judgment in favor of Redmond) to $100,000.00 or more (the Debtor is

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

uncertain of Redmond's assets or ability to pay a judgment were the court to enter a judgment in favor of Cash Cloud).  *See* Omnibus Declaration, Article 1.E.

27.    ***Cash Cloud v. Flores.*** The action captioned *Cash Cloud Inc. v. Flores*, Case No. A-19-807370-B, is pending in the Eighth Judicial District Court in Clark County, Nevada, and arises out of the business relationship between the Debtor, McAlary, Luis Flores ("Flores"), and their respective affiliated entities involved in retail cryptocurrency trading.  The principal issue in this action is whether Flores is or has ever been a shareholder of the Debtor.  On December 20, 2019, the Debtor filed a complaint that sought declaratory judgment that Flores is not and has never been a shareholder of the Debtor.  In response to the filing of the Complaint, Flores filed a counterclaim and third-party complaint against McAlary, Min Raise Resources LLC, and Coin Cloud LLC.  Trial has concluded and the Debtor is awaiting a decision from the judge.  The estimated recovery range could be from $0 (or a judgment in favor of Flores) to $100,000.00 or more (the Debtor is uncertain of Flores's assets or ability to pay a judgment were the court to enter a judgment in favor of Cash Cloud).  *See* Omnibus Declaration, Article 1.E.

2.    **The Avoidance Actions.**

28.    The Avoidance Actions include actions to recover certain preferential transfers pursuant to Section 547 of the Bankruptcy Code, and potential claims against McAlary, the Debtor's former CEO.

29.    On July 28, 2023, the Committee issued a demand letter to McAlary, which identified various claims against him, including breach of fiduciary duty and fraudulent transfer claims.  The Debtor understands that the Committee will be filing a Complaint against McAlary, asserting these colorable claims and others (the "McAlary Claims"), and seeking damages in excess of $25 million, prior to the Confirmation Hearing.

30.    In the event that the Court approves the Derivative Standing Stipulations, the Committee will pursue the McAlary Claims and also analyze, and where necessary, bring Avoidance Actions against other parties, except for Enigma, Genesis, AVT, Brink's and OptConnect Management, LLC (collectively, the "Excluded Parties").  *See* ECF No. 1009, Schedule 1.  The

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

Debtor has preserved its right to bring any avoidance actions against the Excluded Parties as necessary. *Id.*

**B.    Description of Claims and Classes.**

31.    The Amended Plan separates Claims against Debtor into eight (8) classes and sub-classes based on their level of priority under the Bankruptcy Code and the legal nature of the Claims. There is also one (1) class of Old Interests.  Administrative Claims and Priority Tax Claims are not classified because the Bankruptcy Code requires that they receive specific treatment.

32.    The Amended Plan's classification and treatment of Claims and Equity Interests is summarized below:

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|---|---|---|---|
| Class 1 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of such an Allowed Other Priority Claim shall receive Cash in an amount sufficient to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder (except to the extent that such Holder agrees to less favorable treatment thereof) on, or as soon as practicable after, the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes Allowed, (C) the date on which such Other Priority Claim otherwise is due and payable, and (D) such other date as mutually may be agreed to by and among such Holder and the Debtor. <br><br> Holders of such Claims are conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy | $94,920.00 |

[3] These amounts were compiled by combining the undisputed Claims listed on Debtors' bankruptcy Schedules and any additional amounts included in the Proofs of Claim filed in this case. As such, these amounts are estimates only, are projected as of August 15, 2023, and may change as the adjudication or other resolution of pending contingent, unliquidated and/or Disputed Claims occurs and/or as interest continues to accrue with respect to oversecured claims.  Debtor reserves the right to object to any Proof of Claim filed.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|---|---|---|---|
| | | Code, and, therefore, are not entitled to vote to accept or reject the Amended Plan, and the votes of such Holders will not be solicited with respect to such Allowed Other Priority Claims<br><br>**Class 1 is not Impaired.** | |
| **Class 2(a)** | **DIP Claims** | Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed DIP Claims, the Allowed DIP Claims shall:<br>(A)    be paid in Cash in full before, on, or as soon as reasonably practicable after, the closing of the Sale; or<br>(B)    receive such other treatment as agreed by the Debtor and the DIP Lender.<br><br>The Holder of the DIP Claims is conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, is not entitled to vote to accept or reject the Amended Plan, and the vote of the Holder will not be solicited with respect to such Allowed DIP Claims<br><br>**Class 2(a) is Not Impaired.** | $0.00 |
| **Class 2(b)** | **Genesis Secured Claim** | Notwithstanding anything to the contrary herein, except to the extent that a Holder of an Allowed Genesis Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of its Allowed Genesis Secured Claim, each Holder of an Allowed Genesis Secured Claim shall receive, on the Effective Date, the Genesis Secured Claims Trust Units; provided, that in accordance with the Sale Order, on, or as soon as reasonably practicable after, the closing of the Sale (and in no event after the Effective Date), the Debtor shall remit to Genesis the Genesis Collateral Proceeds to the extent such Genesis Collateral Proceeds are in excess of (1) the Disputed Surcharge Claims against Genesis and (2) any other Surcharge Claims | $8,768,268.80 |

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|-------|-------------|-----------|-------------------------------|
| | | that Genesis has agreed are payable to the Debtor's estate in accordance with section 506(c) of the Bankruptcy Code.  In the event that the aggregate amount of the Allowed Genesis Secured Claim exceeds the aggregate amount of the Genesis Secured Claims Trust Recoveries, the deficiency Claim of Genesis shall be classified in Class 3(b) and receive the treatment provided in the Amended Plan for Class 3(b). <br><br>The Holders of the Allowed Genesis Secured Claim are entitled to vote to accept or reject the Amended Plan. <br><br>***Class 2(b) is Impaired.*** | |
| Class 2(c) | **Enigma Secured Claim** | Notwithstanding anything to the contrary herein, except to the extent that the Holders of the Allowed Enigma Secured Claim agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed Enigma Secured Claim, each Holder of an Allowed Enigma Secured Claim shall receive, on the Effective Date, the Enigma Secured Claims Trust Units; <u>provided</u>, that in accordance with the Sale Order, on, or as soon as reasonably practicable after, the closing of the Sale (and in no event after the Effective Date), the Debtor shall remit to Enigma the Enigma Collateral Proceeds to the extent such Enigma Collateral Proceeds are in excess of (1) the Disputed Surcharge Claims against Enigma, (2) any other Surcharge Claims that Enigma has agreed are payable to the Debtor's estate in accordance with section 506(c) of the Bankruptcy Code, and (3) the Value of the Enigma Collateral subject to an alleged Challenge.  In the event that the aggregate amount of the Allowed Enigma Secured Claim exceeds the amount of the Enigma Secured Claims Trust Recoveries, the deficiency Claim of Enigma shall be classified in Class 3(b) and receive the treatment provided in the Amended Plan for Class 3(b). | $7,553,699.00 |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|---|---|---|---|
| | | To the extent that any Enigma Collateral shall not have been sold in connection with the Sale, or otherwise previously surrendered to Enigma, the Debtor or Creditor Trustee, as applicable, shall, on or as soon as reasonably practicable after the Effective Date, identify such Enigma Collateral and Enigma shall be permitted to take possession or otherwise dispose of such Enigma Collateral in its sole discretion. Notwithstanding anything to the contrary herein, neither the Committee nor the Creditor Trust, as applicable, is prohibited from seeking disgorgement of an amount received by Enigma equal to the Value of the Enigma Collateral subject to a Successful Challenge.<br><br>To the extent that the Holders of the Enigma Secured Claim have received the full amount of the Enigma Collateral Proceeds prior to the Effective Date, **the Enigma Secured Claim is Unimpaired**, and the Holders are conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, not entitled to vote to accept or reject the Amended Plan.<br><br>To the extent that the Holders of the Enigma Secured Claim have not received the full amount of the Enigma Collateral Proceeds prior to the Effective Date, **the Enigma Secured Claim is Impaired**, and the Holders are entitled to vote to accept or reject the Amended Plan. | |
| **Class 2(d)** | **Other Secured Claims** | Notwithstanding anything to the contrary herein, except to the extent that a Holder of an Allowed Other Secured Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of each Allowed Other Secured Claim, the Holder of such Allowed Other Secured Claim shall, at the election of the Debtor, be entitled to one | $310,697.75 |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|-------|-------------|-----------|-------------------------------|
| | | or a combination of the following: (A) all or a portion of the Collateral securing its Allowed Other Secured Claim on or as soon as reasonably practicable after the Effective Date (and, if less than all of the Collateral, the Value of the portion to be determined not later than the Confirmation Hearing); (B) a Cash payment in the remaining balance of its Allowed Other Secured Claim (after application of (A) above) on or as soon as reasonably practicable after the later of (1) the Effective Date, or (2) the date on which such Claim becomes an Allowed Claim; and/or (C) such other treatment rendering such Allowed Other Secured Claim Unimpaired including, if and only to the extent required under the Bankruptcy Code, post-petition interest on such Allowed Other Secured Claim.  In the event that the aggregate amount of a Holder's Allowed Claim exceeds the amount of such Holder's Allowed Other Secured Claim, the deficiency Claim shall be classified in Class 3(b) and receive the treatment provided in the Amended Plan for Class 3(b).<br><br>The Allowed Other Secured Claims are Unimpaired.  The Holders of the Allowed Other Secured Claims are conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, are not entitled to vote to accept or reject the Amended Plan, and the votes of the Holders will not be solicited with respect to such Allowed Other Secured Claims.<br><br>***Class 2(d) is not Impaired.*** | |
| Class 3(a) | AVT Secured Claim | Notwithstanding anything to the contrary herein, except to the extent that the Holders of the Allowed AVT Secured Claim agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of the Allowed AVT Secured Claim, the Holders of the Allowed AVT Secured Claim shall receive | $1,314,335.00 |

13

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|---|---|---|---|
| | | Cash (the "<u>AVT Cash Payment</u>") in the amount of [the difference between (A) the AVT Collateral Proceeds up to the amount of the Allowed AVT Secured Claim and (B) the aggregate amount of the Surcharge Claims against the AVT Collateral Proceeds that are either undisputed or determined by a Surcharge Claims Order], in accordance with the Sale Order.  In the event that the aggregate amount of the Allowed AVT Secured Claim exceeds the amount of the AVT Cash Payment, the deficiency Claim shall be classified in Class 3(b) and receive the treatment provided in the Amended Plan for Class 3(b). <br><br> To the extent that the Holders of the AVT Secured Claim have received the full amount of the AVT Cash Payment prior to the Effective Date, **the AVT Secured Claim is Unimpaired**, and the Holders are conclusively presumed to have accepted the Amended Plan pursuant to section 1126(f) of the Bankruptcy Code and, therefore, not entitled to vote to accept or reject the Amended Plan.  To the extent that the Holders of the AVT Secured Claim have not received the full amount of the AVT Cash Payment prior to the Effective Date, **the AVT Secured Claim is Impaired**, and the Holders are entitled to vote to accept or reject the Amended Plan. | |
| Class 3(b) | General Unsecured Claims | On or as soon as reasonably practicable after the Effective Date, Debtor shall transfer the Creditor Trust Assets to the Creditor Trust.  Notwithstanding anything to the contrary herein, in full and final satisfaction, settlement, release, and discharge of, and in exchange for release of all Allowed General Claims, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (1) the Net Sale Proceeds on or as soon as reasonably practicable after the Effective Date, and (2) the Creditor Trust Proceeds if and when they are liquidated in | $209,874,246.49 |

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

14

| Class | Description | Treatment | Estimated Amount of Claims[3] |
|-------|-------------|-----------|------------------------------|
| | | accordance with the Creditor Trust Agreement. Allowed General Unsecured Claims are Impaired.  The Holders of Allowed General Unsecured Claims will be entitled to vote to accept or reject the Amended Plan. ***Class 3 is Impaired.*** | |
| **Class 4** | **Old Interests** | All Old Interests shall be cancelled. Allowed Old Interests are Impaired and because their Holders will neither receive nor retain any property under the Amended Plan, they are conclusively deemed to have rejected the Amended Plan pursuant to section 1126(g) of the Bankruptcy Code ***Class 4 is Impaired.*** | $0.00 |

33.     As set forth in the Certificates of Service and summarized in Section IV below, the Debtor served the Solicitation Materials on interested parties and a Ballot to all holders of Claims and Interests in Impaired Classes, except for Class 4 (Old Interests), which is conclusively deemed to have rejected the Amended Plan.

34.     As set forth in the Voting Report and summarized in Section V below, all Classes of Impaired Claims and Impaired Interests voted to accept the Amended Plan except for Class 2(c) (Enigma Secured Claim) which voted to reject the Amended Plan, Class 3(a) (AVT Secured Claim) which did not submit a Ballot, and Class 4 (Old Interests) which is conclusively deemed to have rejected the Amended Plan.

35.     As described in detail in Section VI below, the Amended Plan complies with each of the applicable Bankruptcy Code requirements for confirmation of a chapter 11 plan.  Among other things, the Amended Plan is in the best interests of creditors, who will not receive less under the Amended Plan than they would receive in a chapter 7 liquidation.  Moreover, the Amended Plan can

353743\00002\148239602.11

be confirmed without the acceptance of Classes 2(c), 3(a) and 4 because it does not discriminate unfairly and is fair and equitable.

36.     Finally, for the reasons and based on the authorities cited in Section VII below, all objections to confirmation of the Amended Plan should be overruled.

37.     Accordingly, for the reasons and based on the authorities set forth herein, the Debtor submits that the Court should grant final approval of the Disclosure Statement and confirm the Amended Plan at the Confirmation Hearing.

## IV.    SOLICITATION

38.     On or before May 15, 2023, the Debtor solicited the votes of the holders of Claims in Classes 3(a), and 3(b) by serving the Plan, the Disclosure Statement and a Ballot on each. *See* Certificate of Service [ECF No. 589].  Debtor also served the Confirmation Hearing Notice on the entire mailing matrix. *Id*. A detailed description of Stretto's distribution of solicitation materials is set forth in Stretto's *Certificate of Service re: Solicitation Materials* [Docket No. 589].  Subsequent solicitation materials were periodically served on account of forwarding instructions included on returned packages as undeliverable.  A detailed description of these supplemental services is set forth in the *Supplemental Certificates of Service of Solicitation Materials* [Docket Nos 610, 626 and 659].

39.     On August 1, 2023, the Debtor filed the Amended Plan, and served it, together with the appropriate ballots, via email to the Secured Creditors noting an August 8, 2023, voting deadline. *See* ECF No. 1025 (stipulated August 8, 2023, voting deadline).

## V.    VOTING RESULTS

40.     The following is a summary of the voting results with respect to all Impaired Classes:

a.     **Class 2(b)** (Genesis Secured Claim) Class 2(b) **accepted** the Amended Plan. One (1) ballot was received on August 8, 2023, from the Creditor in Class 2(a).  The Class 2(a) Creditor voting to accept the Amended Plan holds 100% of all Class 2(a) Claims in number and amount.

b.     **Class 2(c)** (Enigma Secured Claim):  Class 2(c) **rejected** the Amended Plan. One (1) ballot was received on August 8, 2023, from the Creditor in Class 2(c).  The Class

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

2(b) Creditor voting to accept the Amended Plan holds 100% of all Class 2(c) Claims in number and amount.

      c.    **Class 3(a)** (AVT Secured Claim):  Class 3(a) **did not vote** on the Amended Plan.  The Class 3(a) Creditor holds 100% of all Class 3(a) Claims in number and amount.

      d.    **Class 3(b)** (General Unsecured Claims):  Class 3(b) **accepted** the Amended Plan.  189 valid ballots totaling $115,245,815.58 in Class 3(b) Claims voting to accept the Original and Amended Plans were received on or before August 8, 2023, from Creditors in Class 3(b).  The Class 3(b) Creditors voting to accept the Plans hold 95.45% of all Class 3(b) Claims voting in number, and 96.42% of all Class 3(b) Claims voting in amount.

      Section 12.1(c) of both the Original Plan and the Amended Plan provides: "A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder." *See* Original Plan, Article XII, § 12.1(c); Amended Plan, Article XII, § 12.1(c).

      Because the treatment of Class 3(b) is identical in the Original Plan and the Amended Plan, Debtor submits that the Class 3(b) Ballots submitted in favor of the Original Plan be deemed to be an acceptance of the Amended Plan.

      e.    **Class 4** (Old Interests):  Class 4 **did not vote** on the Amended Plan and is conclusively **deemed to have rejected** the Amended Plan under Bankruptcy Code section 1126(g).

*See* Voting Report.  **Class 1, Class 2(a),** and **Class 2(d)** were not Impaired and therefore **deemed to have accepted** the Amended Plan under Bankruptcy Code section 1126(f).

## VI.    LEGAL STANDARDS FOR CONFIRMATION

      41.    Bankruptcy Code section 1129(a) provides that the Court shall confirm a chapter 11 plan where each of the statute's applicable sixteen subsections has been satisfied.  11 U.S.C. § 1129(a).  As described below, the Amended Plan satisfies each of the applicable subsections of the Bankruptcy Code section 1129(a) and should therefore be confirmed.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

**A.      The Applicable Plan Confirmation Standards:  11 U.S.C. § 1129.**

42.      Under normal, Chapter 11 practice, a debtor has the burden of demonstrating that a proposed chapter 11 plan of reorganization satisfies section 1129 of the Bankruptcy Code by a preponderance of the evidence.  *See Liberty Nat'l Enters. v. Ambanc LaMesa Ltd. P'ship (In re Ambanc LaMesa Ltd. P'ship)*, 115 F.3d 650, 653 (9th Cir. 1997).

43.      The Debtor requests confirmation on a nonconsensual or "cramdown" basis pursuant to section 1129(b) of the Bankruptcy Code because Class 2(c) (Enigma Secured Claim) is impaired and voted to reject the Amended Plan, Class 3(a) (AVT Secured Claim) is impaired and did not submit a Ballot, and Class 4 (Old Interests) is impaired and conclusively deemed to have rejected the Amended Plan.  The Court should confirm the Amended Plan if all requirements of section 1129(a) are met, *other than* paragraph (8) of that subsection, and the Amended Plan does not otherwise "discriminate unfairly" and is "fair and equitable" within the meaning of section 1129(b).

44.      As will be shown herein, the Debtor's Amended Plan satisfies all of the foregoing requirements, and thus the Court can also confirm the Amended Plan on a nonconsensual basis.

**1.      11 U.S.C. § 1129(a)(1): Plan Compliance With the Bankruptcy Code.**

45.      Section 1129(a)(1) of the Bankruptcy Code requires that a plan must "[c]omply with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(1).  "(T)he legislative history of subsection 1129(a)(1) suggests that Congress intended the phrase 'applicable provisions' in this subsection to mean provisions of Chapter 11 that concern the form and content of reorganization plans . . ."  *Kane v. Johns-Manville (In re Johns-Mansville Corp.)*, 843 F.2d 636, 648-649 (2d Cir. 1988).  To determine plan compliance with section 1129(a)(1) of the Bankruptcy Code, reference must be made to the requirements of sections 1122 and 1123, which govern classification of claims and contents of plans, respectively.  *See In re G-I Holdings, Inc.*, 420 B.R. 216 (D.N.J. 2009); *In re Journal Register Co.*, 407 B.R. 520, 531-32 (Bankr. S.D.N.Y. 2009); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).  An analysis of both of these subsections follows.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

18

1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

### a.    11 U.S.C. § 1122: Classification of Claims.

46.    "[A] plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Section 1122(a) requires only that claims must be "substantially similar" to be placed into the same class. It prevents dissimilar claims from being placed into the same class, but it does not prevent substantially similar claims from being placed into different classes. *See Z.ante, Inc. v. Delgado (In re Zante, Inc.)*, 467 B.R. 216, 218 (D. Nev. 2012) (citing *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661 (6th Cir. 2002)). "To the contrary, the bankruptcy court has substantial discretion to place similar claims in different classes." *Zante, Inc.*, 467 B.R. at 218; *see also Wells Fargo Bank, N.A. v. Loop 76, LLC (In re Loop 76, LLC)*, 465 B.R. 525, 536-37 (B.A.P. 9th Cir. 2012), *aff'd*, 578 F. App'x. 644 (9th Cir. 2014).

47.    A claim that is substantially similar to other claims may be classified separately under a chapter 11 plan, and even though section 1122(a) does not say so expressly. *See In re Rexford Props., LLC*, 558 B.R. 352, 361 (Bankr. C.D. Cal. 2016) (citing *Barakat v. Life Ins. Co. of Va. (In re Barakat)*, 99 F.3d 1520, 1524-25 (9th Cir. 1996)). Whether claims are "substantially similar" under section 1122(a) is a question of fact. Bankruptcy courts have broad latitude in making the "substantially similar" determination, which is reviewed for clear error. *In re Zante, Inc.*, 467 B.R. at 218 (citing *Steelcase, Inc. v. Johnston (In re Johnston)*, 21 F.3d 323, 327 (9th Cir. 1994)). To determine whether claims are substantially similar, "bankruptcy court judges must evaluate the nature of each claim, *i.e.*, the kind, species, or character of each category of claims." *Rexford Props.*, 558 B.R. at 361 (quoting *Johnston*, 21 F.3d at 327).

48.    In determining whether separate classification of substantially similar claims is appropriate in the context of section 1122 of the Bankruptcy Code, a plan proponent must demonstrate a "legitimate business or economic justification" for the separate classification. *Rexford Props.*, 558 B. R. at 363 (quoting *Barakat*, 99 F.3d at 1526). Placing a creditor's claim in a class separate from a class comprised of other substantially similar claims constitutes impermissible "gerrymandering" when it is done for the sole purpose of obtaining acceptance of a class of creditors

19

under a plan. *Id.* Subject to the foregoing limitations, bankruptcy courts have the discretion to approve a debtor's proposed classification scheme. *Id.* at 361 (citing *Johnston*, 21 F.3d at 327)).

49.     As applied to the case at hand, the Debtor's Amended Plan classifies its creditors and interest holders into the following 8 classes:  Class 1 (Other Priority Claims), Class 2(a) (DIP Claims), Class 2(b) (Genesis Secured Claim); Class 2(c) (Enigma Secured Claim); Class 2(d) (Other Secured Claims), Class 3(a) (AVT Secured Claim), Class 3(b) (General Unsecured Claims); and Class 4 (Old Interests).  *See* Amended Plan, Art. II and III.  The Amended Plan does not aggregate dissimilar claims together into the same class.  Accordingly, the Amended Plan complies with section 1122 of the Bankruptcy Code.

### b.     11 U.S.C. § 1123(a):  Mandatory Plan Requirements.

50.     Section 1123(a) of the Bankruptcy Code sets forth eight (8) requirements with which the proponent of every chapter 11 plan must comply.  As demonstrated herein, the Amended Plan fully complies with each of these enumerated requirements.

51.     **Section 1123(a)(1)** requires that a plan designate classes of claims and equity interests subject to section 1122 of the Bankruptcy Code.  In addition to the unclassified claims set forth in Article III, Section 3.1 of the Amended Plan (which need not be designated), Articles II and III of the Amended Plan designate eight Classes of Claims and Interests.  Accordingly, the Amended Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

52.     **Section 1123(a)(2)** requires a plan to specify any class of claims that is not impaired under a plan.  In accordance therewith, Articles II & III of the Amended Plan specify that: (A) Class 2(b) (Genesis Secured Claim), Class 3(b) (General Unsecured Claims) and Class 4 (Old Interests) are impaired; (B) Class 1 (Priority Claims), Class 2(a) (DIP Claims), and Class 2(d) (Other Secured Claims) are unimpaired; and (C) Class 2(c) (Enigma Secured Claim) and Class 3(a) (AVT Secured Claim) are either impaired or unimpaired depending on the amount of the respective creditor's collateral proceeds.  Accordingly, the Amended Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

53.     **Section 1123(a)(3)** requires a plan to specify the treatment of impaired classes of claims.  Article III of the Amended Plan sets forth the treatment of Classes 2(b), 2(c), 2(a), 3(b) and

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

20

4, each of which may constitute an impaired class under the Amended Plan. Accordingly, the Amended Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

54.     **Section 1123(a)(4)** requires that a plan provide the same treatment for each claim or interest within a particular class unless any claim or interest holder agrees to less favorable treatment than other class members. Article III of the Amended Plan specifies the treatment of Claims and Interests in each respective Class and, as required by section 1123(a)(4), provides for the same treatment by the Debtor for each Claim in each respective Class, unless the holder of a particular Claim has agreed to a less favorable treatment of such Claim, as required by section 1123(a)(4) of the Bankruptcy Code.

55.     **Section 1123(a)(5)** requires that a plan provide "adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Article VI of the Amended Plan provides adequate means for implementation as required by section 1123(a)(5) of the Bankruptcy Code.

56.     On the Effective Date: (a) the Secured Claims Trust Assets will vest in the Secured Claims Trust, and (b) the Creditor Trust Assets will vest in the Creditor Trust. *See* Amended Plan, Article VI, § 6.3.

57.     The Secured Claims Trust Assets consist of (i) the Enigma Collateral Proceeds and the Genesis Collateral Proceeds, in each case solely to the extent not delivered to Enigma or Genesis, as applicable, on or prior to the Effective Date, (ii) the Debtor's rights under the Purchase Agreements (as defined in the Sale Order) and all other agreements, documents and instruments executed in connection therewith, including the Genesis Coin Note and the Guaranty. *See* Amended Plan, Art. I, § 1.1 (definition of Secured Claims Trust Assets). The Secured Claims Trust Assets shall be administered by the Secured Claims Trustee for the benefit of Genesis and Enigma. *See* Amended Plan, Article VI, §§ 6.6 & 6.7.

58.     Notably, the Sale Proceeds allocable to the assets as to which Enigma and AVT assert competing collateral rights are being held in escrow, pending the resolution of the dispute.

59.     The Creditor Trust Assets consist of all Causes of Action and all Assets not purchased in the Sale, specifically excluding the Secured Claims Trust Assets. *See* Amended Plan, Art. I, § 1.1 (definition of Creditor Trust Assets). The Creditor Trust Assets shall be administered by the Creditor

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

Trustee for the benefit of all Holders of Claims other than the Genesis Secured Claim and the Enigma Secured Claim. *See* Amended Plan, Article VI, §§ 6.4 & -6.5.

60. Accordingly, the Amended Plan, together with the documents and agreements set forth in the Amended Plan, provide the means for implementation of the Amended Plan as required by section 1123(a)(5) of the Bankruptcy Code.

61. **Section 1123(a)(6)** prohibits the issuance of nonvoting equity securities and requires amendment of a debtor's corporate charter to so provide. This section also requires that a corporate charter provide an appropriate distribution of voting power among the classes of securities possessing voting power. Section 1123(a)(6) is inapplicable/satisfied because the Amended Plan does not provide for the issuance of any nonvoting equity securities.

62. **Section 1123(a)(7)** requires that a plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of any officer, director, or trustee under the plan and any successor to such officer, director, or trustee." 11 U.S.C. § 1123(a)(7). The Amended Plan complies with section 1123(a)(7) because the Amended Plan proposes to allow the secured creditors to select the trustee for the Secured Creditor Trust and for the Committee to select the trustee for the Creditor Trust.

63. **Section 1123(a)(8)** of the Bankruptcy Code is inapplicable because the Debtor is a corporation, not an individual.

**c.      11 U.S.C. § 1123(b): Permissive Plan Provisions.**

**i.      Generally.**

64. Section 1123(b) of the Bankruptcy Code sets forth the permissive provisions that may be incorporated into a chapter 11 plan. As demonstrated below, the Debtor's incorporation of such permissive provisions in the Amended Plan is consistent with section 1123(b).

65. **Section 1123(b)(1)** of the Bankruptcy Code provides that a plan "may impair or leave unimpaired any class of claims, secured or unsecured, or of interests." As contemplated by section 1123(b)(1), Articles II & III of the Amended Plan (1) specify that: (A) Class 2(b) (Genesis Secured Claim), Class 3(b) (General Unsecured Claims) and Class 4 (Old Interests) are impaired; (B) Class 1 (Priority Claims), Class 2(a) (DIP Claims), and Class 2(d) (Other Secured Claims) are unimpaired;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

and (C) Class 2(c) (Enigma Secured Claim) and Class 3(a) (AVT Secured Claim) are either impaired or unimpaired depending on the amount of the respective creditor's collateral proceeds; and (2) provides the treatment for each such Class.

66.    **Section 1123(b)(2)** of the Bankruptcy Code allows a plan to "provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected" under section 365 of the Bankruptcy Code.  As set forth in Article V of the Amended Plan, on the Effective Date, the Debtor intends to reject any of its remaining executory contracts and unexpired leases not previously assumed or rejected.  *See* Amended Plan, Article V, § 5.1.  This decision should be approved as a sound exercise of the Debtor's business judgment, given that such contracts and leases no longer provide any benefit to the Debtor's Estate.[4]

67.    **Section 1123(b)(3)(B)** of the Bankruptcy Code provides that a plan "may provide for the retention and enforcement by . . . a representative of the estate appointed for such purpose" of any claim or interest belonging to the Estate.  The Amended Plan specifically provides for the preservation and transfer of all such claims and interests to the Creditor Trust or the Secured Claims Trust, as applicable, on the Effective Date.  *See* Amended Plan, Article VI, § 6.9.

68.    **Section 1123(b)(4)** of the Bankruptcy Code authorizes a plan to provide for the sale, transfer, or assignment of substantially all of the Debtor's remaining property. As discussed in Section VI.A.1.b above, on the Effective Date, (a) the Creditor Trust Assets will vest in the Creditor Trust and (b) the Secured Claims Trust Assets will vest in the Secured Claims Trust.  *See* Amended Plan, Article VI, § 6.3.

---

[4] Section 365(a) provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease." 11 U.S.C. § 365(a).  Courts routinely approve motions to reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.  *See e.g., Durkin v. Benedor Corp. (In re G.I. Indust., Inc.)*, 204 F.3d 1276, 1282 (9th Cir. 2000) ("a bankruptcy court applies the business judgment rule to evaluate a [debtor-in-possession]'s rejection decision") (citing *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984)).  The debtor's exercise of its business judgment is entitled to deference.  *See Agarwal v. Pomona Valley Med. Grp. (In re Pomona Valley Med. Grp.)*, 476 F.3d 665, 670 (9th Cir. 2007) ("[I]n evaluating the rejection decision, the bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate.").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

69.    **Section 1123(b)(5)** of the Bankruptcy Code provides, in pertinent part, that a plan may "modify the rights of holders of secured claims . . . or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. § 1123(b)(5). The Amended Plan modifies the rights of holders of secured claims and unsecured claims and thus complies with section 1123(b)(5) of the Bankruptcy Code.

70.    **Section 1123(b)(6)** of the Bankruptcy Code is a "catchall" provision, which permits inclusion in a plan of any appropriate provision as long as such provision is not inconsistent with applicable sections of the Bankruptcy Code. The remaining provisions of the Debtor's Amended Plan, including the exculpation provision discussed below, are fully compliant with the Bankruptcy Code.

71.    In short, the Amended Plan properly invokes various permissive plan provisions consistent with section 1123(b) of the Bankruptcy Code.

**ii.    The Amended Plan's Exculpation Provision Is Appropriate.**

72.    The Amended Plan also provides for the exculpation of the Debtor, the Committee, the members of the Committee (in their capacity as such), the DIP Lender, the Retained Professionals, the Creditor Trustee, and the Secured Claims Trustee. The exculpation is limited, in the case of the Debtor, members of the Committee, the DIP Lender and the Retained Professionals, to acts, omissions or transactions in connection with, relating to, or arising out of the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan. The exculpation is limited, in the case of the Creditor Trustee and Secured Claims Trustee, to acts, omissions or transactions in connection with the discharge of the powers and duties conferred upon the Creditor Trustee or the Secured Claims Trustee, as applicable, by the Plan, the Creditor Trust Agreement or the Secured Claims Trust Agreement, as applicable, or any court order after the Effective Date pursuant to or in furtherance of the Plan, the Creditor Trust Agreement or the Secured Claims Trust Agreement, as applicable, or applicable law, or otherwise. In both cases, the exculpation excludes fraud, gross negligence or willful misconduct. *See* Amended Plan, Article X, §§ 10.2 & 10.3.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

73.    Exculpation of estate fiduciaries and plan proponents is customary and permissible in chapter 11.  Indeed, the Ninth Circuit has approved exculpation provisions that extend to plan proponents, including non-debtor plan proponents.  *See Blixseth v. Credit Suisse*, 961 F.3d 1074 (9th Cir. 2020) (approving exculpation of debtor's largest creditor that became a plan "proponent through its direct participation in the negotiations that preceded the adoption of the Plan"); *see also In re Yellowstone Mountain Club*, 460 B.R. 254, 277 (Bankr. D. Mont. 2011) (approving exculpation that extended to "the Debtors, Committee [of Unsecured Creditors], Credit Suisse and CrossHarbor, who all became, in essence, plan proponents"); *In re Lighthouse Lodge, LLC*, No. 09-52610-RLE, 2010 WL 4053984, at *7 (Bankr. N.D. Cal. Oct. 14, 2010) ("This release of liability except from gross negligence or willful misconduct has been extended to plan proponents other than a committee."); *In re W. Asbestos Co.*, 313 B.R. 832, 847 (Bankr. N.D. Cal. 2003) (approving provision that released claims against plan proponents other than debtors).

74.    Plan exculpations may also extend to non-estate fiduciaries when the exculpated parties make substantial contributions to the reorganization, the exculpations are important to such parties' participation in the reorganization efforts, and the exculpations are limited "in both scope and time" to actions related to the chapter 11 cases.  *See In re Yellowstone Mountain Club*, 460 B.R. at 272; *Meritage Homes of Nev., Inc. v. JPMorgan Chase Bank, N.A. (In re S. Edge LLC)*, 478 B.R. 403, 415-16 (D. Nev. 2012) (approving exculpation of third party nondebtors because exculpation "sets a standard of care to be applied in the bankruptcy proceeding" and "does not improperly release third party nondebtors"); *Lazo v. Roberts*, No. CV15-7037-CAS(PJWx), 2016 WL 738273, at *7 (C.D. Cal. Feb. 22, 2016) ("Increasingly, however, [t]he trend among bankruptcy courts [more generally] has been to confirm chapter 11 plans with express discharge or indemnification provisions for nondebtors if they meet certain tailored criteria or overall necessity. This overall trend is evident in the Ninth Circuit.") (internal quotation marks and citations omitted); *see also In re Stearns Holdings, LLC*, 607 B.R. 781, 790 (Bankr. S.D.N.Y. 2019) (holding that exculpation could extend to parties "who make a substantial contribution to a debtor's reorganization and play an integral role in building consensus in support of a debtor's restructuring").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

25

75.     The exculpation provisions in the Amended Plan appropriately excludes willful misconduct, gross negligence, and fraud (and there is no requirement that breaches of professional duties be excluded from a plan exculpation provision).  *See In re W. Asbestos Co.*, 313 B.R. at 846 (approving provision that "neither the Plan Proponents nor any of their agents, *including their attorneys*, shall be liable, other than for willful misconduct, with respect to any action or omission prior to the effective date in connection with the Debtors' operations, the Plan, or the conduct of the bankruptcy case") (emphasis added).

76.     The exculpation provision the Court upheld in *Blixseth* is particularly instructive. *See* 961 F.3d 1074.  There, as here, the exculpation provision was limited both temporally and in scope to actions related to the reorganization; specifically, "any act or omission in connection with, relating to or arising out of the Chapter 11 Cases, the formulation, negotiation, implementation, confirmation or consummation of this Plan, the Disclosure Statement, or any contract, instrument, release or other agreement or document entered into during the Chapter 11 Cases or otherwise created in connection with this Plan . . . ." *Id.* at 1078-79.  The exculpation clause also similarly covered the various agents, professionals, and other related parties of the exculpated parties—specifically, "with respect to each of the foregoing Persons, each of their respective directors, officers, employees, agents . . . representatives, shareholders, partners, members, attorneys, investment bankers, restructuring consultants and financial advisors." *Yellowstone Mountain Club*, 460 B.R. at 267. Finally, as with the exculpation in *Blixseth*, the Amended Plan exculpation excludes willful misconduct and gross negligence.  *Compare* 961 F.3d at 1079 *with* Amended Plan, Article X, §§ 10.2 & 10.3.

77.     In sum, the Court should approve the Amended Plan's exculpation provisions.

## 2.     11 U.S.C. § 1129(a)(2):  Proponent Compliance With the Bankruptcy Code.

78.     Section 1129(a)(2) of the Bankruptcy Code requires a plan proponent to "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  Section 1129(a)(2) was intended to encompass the disclosure and solicitation requirements under section 1125.  *See In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995); H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).  Section 1125(b) of the

26

353743\00002\148239602.11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Bankruptcy Code requires the transmission to creditors of a written disclosure statement containing "adequate information."  11 U.S.C. § 1125(b).

79.    A court has broad discretion in determining the adequacy of the information contained in a disclosure statement.  *See Computer Task Group, Inc. v. Brotby (In re Brotby),* 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) ("[T]he determination of what is adequate information . . . is largely within the discretion of the bankruptcy court." (quoting *In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988)); *see also In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (stating that the court has "wide discretion to determine on a case-by-case basis whether a disclosure statement contains information, without burdensome, unnecessary and cumbersome detail.").

80.    In the case at hand, the Disclosure Statement contains adequate information and is consistent with the recommended list of information to be included in a disclosure statement under Section 7.1 of the "United States Trustee Region 17 Guidelines" (applicable to cases filed in the United States Bankruptcy Court for the District of Nevada) because it includes:

(a) the purpose of the disclosure statement, *see* Disclosure Statement, Art. 1, § 1.2;

(b) a description of Debtor's business, *id.* Art. III, § 3.1;

(c) the reasons for financial difficulties and the actions taken by Debtor to alleviate those difficulties, *id.* Art. III, § 3.3;

(d) the historical and current financial information of Debtor, *id.* Art. III, § 3.2;

(e) the material post-petition events that have occurred in Chapter 11 Case, *id.* Art. IV;

(f) the material legal proceedings to which Debtor is, or may become, a party, *id.* Art. III, § 3., Art. IV, § 4.3;

(g) a review of Debtor's scheduled assets, values, current estimates of the assets, and the basis for those values, *id.* Art. III, § 3.2;

(h) a review of Debtor's scheduled claims and their amounts and an estimate of the current amounts of all Debtor's liabilities, including proofs of claim filed in the Chapter 11 Case, *id.* Art. III, § 3.1, Art. V, §§ 5.1-5.2;

(i) a description of the Original Plan, *id.* Art. V;

(j) the means of effectuating the Original Plan, *id.* Art. III, § 3.1;

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

(k) a description of the amount and source of cash to be paid upon confirmation of the Original Plan or its effective date, and a description of the administrative expenses, *id.* Art. V, §§ 5.1, 5.5;

(l) a liquidation analysis, *id.* Art. IX, § 9.11;

(m) plan projections, *id.* Art. V, §§ 5.1-5.2, Art. X;

(n) a description of the management to controlling Debtor following plan confirmation and its compensation, *id.* Art. IX, § 9.11;

(o) a description of the insider claims, *id.* Art. V, § 5.2.H;

(p) issuance of stock for all or part of the debt (if applicable), *id.* Art. V, §§ 5.5.C, 5.8.E; and

(q) a description of the vote(s) required to constitute acceptance of the Original Plan, *id.* Art. IX, §§ 9.7-9.10.

81.     On May 15, 2023, this Court conditionally approved the Disclosure Statement as providing adequate information as required by section 1125 of the Bankruptcy Code. *See* ECF No. 554.

82.     As noted above, the Amended Plan's treatment of all claims and interests is the same as the Original Plan's treatment in the case of a Sale, other than the Genesis Secured Claim, the Enigma Secured Claim, and the AVT Secured Claim.  The Secured Creditors have been provided drafts of the Amended Plan and have responded input on its terms, which the Debtor incorporated in large part.  None of the Secured Creditors has requested a revised Disclosure Statement.

83.     Accordingly, because the treatment of Class 3(b) General Unsecured Claims, the only Class whose vote to accept the Original Plan is deemed to be a vote to accept the Amended Plan, remains the same under the Amended Plan, the Disclosure Statement provided the holders of Class 3(b) Claims with adequate information to make an informed decision.

84.     The Debtor respectfully requests that the Court approve the Disclosure Statement on a final basis.

### 3.     11 U.S.C. § 1129(a)(3):  Good Faith.

85.     Section 1129(a)(3) of the Bankruptcy Code requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Section 1129(a)(3) does not

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

define "good faith." *Platinum Cap., Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.)*, 314 F.3d 1070, 1074 (9th Cir. 2002). The good faith determination pursuant to section 1129(a)(3) of the Bankruptcy Code is based on the "totality of the circumstances." *Id.* "[B]ankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each . . . plan." *Id.* at 1075 (internal quotation marks and citations omitted). "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code." *Id.* at 1074; *In re Sagewood Manor Assocs. LP*, 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998). The objectives and purposes of the Bankruptcy Code, and chapter 11 in particular, have been described as including, among other matters, "to maximize the value of the bankruptcy estate," *Toibb v. Radloff*, 501 U.S. 157, 163 (1991), and "to satisfy creditors' claims," *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203 (1983). *See Sagewood Manor*, 223 B.R. at 762.

86. Moreover, that a creditor's contractual rights are adversely affected does not by itself warrant a bad faith finding. "[I]n enacting the Bankruptcy Code, Congress made a determination that an eligible debtor should have the opportunity to avail itself of a number of Code provisions which adversely alter creditors' contractual and nonbankruptcy rights." *Sylmar Plaza, L.P.*, 314 F.3d at 1074-75 (quoting *In re PPI Enters., Inc.*, 228 B.R. 339, 344-45 (Bankr. D. Del. 1998), *aff'd*, 324 F.3d 197 (3d Cir. 2003)). "[T]he fact that a debtor proposes a plan in which it avails itself of an applicable Code provision does not constitute evidence of bad faith." *Id.* (quoting *PPI Enters.*, 228 B.R. at 347).

87. The foregoing objectives are fully evident with the Amended Plan in the case at hand. The Amended Plan allows for the transfer of the Debtor's Assets to the Creditor Trust and Secured Claims Trust for the benefit and maximum potential recovery for creditors, even including a small potential dividend to general unsecured creditors. Moreover, there are no allegations of circumstances evidencing the typical situations where courts have found a lack of good faith. *See In re Trans Max Techs.*, 349 B.R. 80, 88-89 (Bankr. D. Nev. 2006).

88. The second prong of section 1129(a)(3) of the Bankruptcy Code requires that the Amended Plan "not be proposed by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The term "law" as used in this section, includes state law, and applies not to the substantive provisions

29

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

of a plan itself but rather to the means employed in proposing a plan. *See In re Food City, Inc.*, 110 B.R. 808, 810 (Bankr. W.D. Tex. 1990). The Amended Plan does not run afoul of applicable state law, nor are there any allegations to the contrary. Accordingly, the Amended Plan satisfies section 1129(a)(3) of the Bankruptcy Code.[5]

### 4.    11 U.S.C. § 1129(a)(4):  Payments for Services Reasonable.

89.    Section 1129(a)(4) requires that all payments of professional fees made from estate assets be subject to review and approval by the court. Section 1129(a)(4) of the Bankruptcy Code has been construed to require that all payments of professional fees made from estate assets be subject to review and approval by the Bankruptcy Court as to their reasonableness. *In re Idearc Inc.*, 423 B.R. 138, 163-64 (Bankr. N.D. Tex. 2009); *In re Art & Architecture Books of the 21st Century*, No. 2:13-bk-14135-RK, 2016 WL 1118743, at *15 (Bankr. C.D. Cal. Mar. 18, 2016). Consistent with the foregoing, the Amended Plan provides that all such fees and expenses, as well as all other accrued fees and expenses of estate professionals through the Effective Date, remain subject to final review by the Court for reasonableness pursuant to section 330 of the Bankruptcy Code. *See* Amended Plan, Article III, § 3.1(c). Accordingly, the Amended Plan satisfies section 1129(a)(4) of the Bankruptcy Code.

### 5.    11 U.S.C. § 1129(a)(5):  Disclosure of Management and Insiders.

90.    Section 1129(a)(5) of the Bankruptcy Code requires that the plan proponent disclose the identity and affiliations of the proposed officers and directors of the reorganized debtor; that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and that there be disclosure of the identity and compensation of any insiders to be retained or employed by the reorganized debtor. Section 1129(a)(5) is satisfied in the case at hand because the Debtor will be dissolved after the Effective Date.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

---

[5] Moreover, pursuant to Bankruptcy Rule 3020(b)(2), given that no objection was timely filed on these issues, the Court may determine that the Amended Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues.

353743\00002\148239602.11

1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

### 6.    11 U.S.C. § 1129(a)(6):  Regulatory Approvals.

91.    Section 1129(a)(6) of the Bankruptcy Code is inapplicable to the case at hand because the Debtor does not charge rates that are regulated by a governmental agency.

### 7.    11 U.S.C. § 1129(a)(7):  Best Interests Test.

92.    Section 1129(a)(7) of the Bankruptcy Code, the so-called "best interests test," requires that each holder of an impaired claim or interest has either accepted the plan or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7)(A).

93.    The best interests test focuses on individual dissenting creditors rather than classes of claims.  *See Bank of Am. Nat. Trust & Sav. Ass'n v. 203 N. LaSalle P'ship*, 526 U.S. 434, 441 n.13 (1999).  In order to satisfy the best interests test, the court must find that each dissenting creditor will receive or retain value, as of the effective date of the plan, that is not less than the amount it would receive if the debtor were liquidated.  *See Art & Architecture*, 2016 WL 1118743 at *17 (citing *La Salle*, 526 U.S. at 442, and *United States v. Reorganized CF & I Fabricators, Inc.*, 518 U.S. 213, 228 (1996)).  "In doing so, the court must take into consideration the applicable rules of distribution of the estate under chapter 7, as well as the probable costs incident to such liquidation."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007).  This element only applies to nonaccepting holders of impaired claims.  *See M & I Thunderbird Bank v. Birmingham (In re Consol. Water Utils., Inc.)*, 217 B.R. 588, 592 (B.A.P. 9th Cir. 1998).

94.    As the Debtor's liquidation analysis annexed as **Exhibit 1** to the James Declaration demonstrates, all impaired creditors are not any worse off under the Amended Plan as compared with a chapter 7 liquidation.  *See Zante, Inc.*, 467 B.R. at 219 ("Because nothing is not less than nothing, the Amended Plan satisfied § 1129(a)(7) without amendment.").

95.    The Debtor believes that there are significantly higher recoveries available to creditors under a Chapter 11 plan of liquidation than a Chapter 7 liquidation.  Recoveries on many of the Debtor's most valuable remaining assets would be hamstrung by a conversion to a Chapter 7

31

bankruptcy in addition to an unnecessary and duplicative layer of professional fees. *See* James Declaration, ¶ 5 & Exhibit 1.

96.    Most notably, the following assets are likely to experience material degradation of recoverable value without the continued oversight of the current Chapter 11 professionals; (i) the cash in the remaining field DCMs (refer to liquidation analysis note #3), (ii) the pursuit of the receivable owed by a former insider of the Debtor and claims against the Debtor's D&O policy (refer to liquidation analysis note #6), (iii) the pursuit of fraudulent transfers by former insiders and management (refer to liquidation analysis note #7), and (iv) the pursuit of preference claw backs and offsets against third parties (refer to liquidation analysis note #9). *See* James Declaration, ¶ 6 & Exhibit 1.

97.    Further to the degradation of recoverable value on certain assets under a Chapter 7 liquidation, the Debtor believes that conversion to a Chapter 7 liquidation will result in significant costs and duplication of efforts between a Chapter 7 trustee and the Estate's current professionals. Collectively, the Estate's current professionals have a broad understanding of the facts and circumstances around these assets that are critical to recovering value from them. Conversion to a Chapter 7 liquidation will likely require significant time and fees from the existing Chapter 11 professionals that could otherwise be spent pursuing those claims to bring the Chapter 7 trustee appropriately up to speed (refer to liquidation analysis note #12). *See* James Declaration, ¶ 7 & Exhibit 1.

98.    The Debtor believes the degradation of asset value and the additional layer of professional fees required to bring a Chapter 7 trustee up to speed could ultimately cost the Estate between $3 million and $6 million that would otherwise be available for recoveries under a Chapter 11 liquidating plan. The Debtor believes that if successful, its Chapter 11 plan of liquidation would provide enough value to satisfy the ~$300 thousand to $450 thousand of filed and scheduled priority unsecured claims and up to $8.7 million of recoveries to general unsecured claims beyond the priority unsecured claims. Conversely, in the best-case scenario, a Chapter 7 liquidation may only provide up to ~$2.3 million of recoveries to general unsecured creditors. *See* James Declaration, ¶ 8 & Exhibit 1.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

32

99. Accordingly, the Amended Plan satisfies section 1129(a)(7) of the Bankruptcy Code.

### 8. 11 U.S.C. § 1129(a)(8): Class Acceptance.

100. Section 1129(a)(8) of the Bankruptcy Code is not satisfied in this case. As set forth in the certified ballot summary, impaired Class 2(c) (Enigma Secured Claim) voted to reject the Amended Plan, impaired Class 3(a) (AVT Secured Claim) did not vote to accept or reject the Amended Plan, and impaired Class 4 (Old Interests) is deemed to have rejected the Amended Plan. Accordingly, the Debtor must proceed to nonconsensual confirmation, pursuant to section 1129(b) of the Bankruptcy Code.

### 9. 11 U.S.C. § 1129(a)(9): Administrative and Priority Claims.

101. In accordance with sections 1129(a)(9)(A) of the Bankruptcy Code, the Amended Plan provides for the payment in full of each Holder of an Allowed Administrative Expense Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (i) the Effective Date, (ii) the date that is ten (10) Business Days after the date on which such Administrative Expense Claim becomes Allowed, (iii) the date on which such Administrative Expense Claim becomes due and payable pursuant to any agreement between the Debtor and the Holder, and (iv) such other date as mutually may be agreed to by such Holder and the Debtor or the Creditor Trustee on behalf of the Creditor Trust. *See* Amended Plan, Article III, § 3.1(a).

102. In accordance with section 1129(a)(9)(B) of the Bankruptcy Code, the Amended Plan provides that, except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of such an Allowed Other Priority Claim shall receive Cash in an amount sufficient to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder (except to the extent that such Holder agrees to less favorable treatment thereof) on, or as soon as practicable after, the latest of (A) the Effective Date, (B) the date that is ten (10) Business Days after the date on which such Other Priority Claim becomes Allowed, (C) the date on which such Other Priority Claim otherwise is due and payable, and (D) such other date as mutually may be agreed to by and among such Holder and the Debtor. *See* Amended Plan, Article III, § 3.2(a).

103. In accordance with sections 1129(a)(9)(C) and (D) of the Bankruptcy Code, as

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

applicable, the Amended Plan provides that each holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (i) the Effective Date, (ii) the date that is ten (10) Business Days after the date on which such Priority Tax Claim becomes Allowed, (iii) the date on which such Priority Tax Claim becomes due and payable, and (iv) such other date as mutually may be agreed to by and among such Holder and the Debtor..  *See* Amended Plan, Article III, § 3.1(d).

104.    Accordingly, the Amended Plan complies with section 1129(a)(9) of the Bankruptcy Code.

### 10.    11 U.S.C. § 1129(a)(10): One Consenting Impaired Class.

105.    Section 1129(a)(10) of the Bankruptcy Code is satisfied because impaired Classes 2(b) & 3(b) voted in favor of the Amended Plan.  *See* Voting Report.

### 11.    11 U.S.C. § 1129(a)(11): Feasibility.

106.    Section 1129(a)(11) of the Bankruptcy Code requires that a proposed plan be feasible. Specifically, the Debtor must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

107.    The focus of the court's inquiry in determining whether the feasibility standard of section 1129(a)(1) of the Bankruptcy Code has been met is whether the plan offers a reasonable assurance of success.  Post-confirmation success need not be guaranteed.  *See Kane v. Johns-Masnville Corp. (In re Johns-Mansville Corp.)*, 843 F.2d 636, 649 (2d Cir. 1988); *see also Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw.)*, 761 F.2d 1374, 1382 (9th Cir. 1985) ("The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." (internal quotation marks omitted)).  "While a reviewing court must examine 'the totality of the circumstances' in order to determine whether the plan fulfills the requirements of

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

section 1129(a)(11) . . . only a relatively low threshold of proof is necessary to satisfy the feasibility requirement." *In re Sagewood Manor Assocs. Ltd. P'ship*, 223 B.R. 756, 762-63 (Bankr. D. Nev. 1998) (internal quotation marks and citations omitted).

108.    In the case at hand, as provided in Article VI of the Amended Plan calls for the creation of the Secured Claims Trust and the Creditor Trust.  The Secured Claims Trust Asset are sufficient to pay the Enigma Secured Claim and Genesis Secured Claims (subject to allowed Surcharge Claims) in full.  The Sale Proceeds allocable to the assets as to which Enigma and AVT assert competing collateral rights are being held in escrow, pending the resolution of the dispute. And, as discussed at length in Section VII.C.4 below, there is a reasonable likelihood that the Creditor Trust Assets will be sufficient to pay all allowed Administrative Expense Claims and Priority Claims in full, plus potentially provide for a small distribution to General Unsecured Creditors.  *See* James Declaration, ¶ 9.  The DIP Lender has already been paid in full from operations of the Debtor. Accordingly, the Debtor's Amended Plan is feasible pursuant to section 1129(a)(11) of the Bankruptcy Code.

### 12.    11 U.S.C. § 1129(a)(12):  U.S. Trustee's Fees Paid.

109.    Section 1129(a)(12) of the Bankruptcy Code requires that as a condition to confirmation, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." 11 U.S.C. § 1129(a)(12).  The Amended Plan provides for the payment in full of all US Trustee's fees. *See* Amended Plan, Article III, § 3.1(e).  Accordingly, the Amended Plan complies with Section 1129(a)(12).

### 13.    11 U.S.C. § 1129(a)(13):  No Retiree Benefits.

110.    Section 1129(a)(13) of the Bankruptcy Code requires that "The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title, at the level established pursuant to subsection (e)(1)(B) or (g) of section 1114 of this title, at any time prior to confirmation of the plan, for the duration of the period the debtor has obligated itself to provide such benefits." 11 U.S.C. § 1129(a)(13).  The Debtor has no "retiree

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1   benefits" as that term is defined in section 1114 of the Bankruptcy Code, and thus section 1129(a)(13)

2   is inapplicable/satisfied.

3          **14.    11 U.S.C. § 1129(a)(14):  Domestic Support Obligations.**

4          111.    Section 1129(a)(14) of the Bankruptcy Code requires as a condition of plan

5   confirmation that "[i]f the debtor is required by a judicial or administrative order, or by statute, to

6   pay a domestic support obligation, the debtor has paid all amounts payable under such order or such

7   statute for such obligation that first become payable after the date of the filing of the petition."  11

8   U.S.C. § 1129(a)(14).  In the case at hand, the Debtor is not obligated to pay any "domestic support

9   obligation" as defined in section 101(14)(A) of the Bankruptcy Code, and thus section 1129(a)(14)

10  of the Bankruptcy Code is inapplicable/satisfied.

11         **15.    11 U.S.C. § 1129(a)(15):  Plan Contributions of an Individual Debtor.**

12         112.    Section 1129(a)(15) of the Bankruptcy Code is inapplicable because the Debtor is a

13  corporation, not an individual.

14         **16.    11 U.S.C. § 1129(a)(16):  Non-Profit Transfers.**

15         113.    The Debtor is not a charitable entity; rather, it is a private, for-profit corporation.

16  Accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable.

17         **B.    The Amended Plan Complies with Various Other Miscellaneous Requirements.**

18         114.    As discussed in Section VI.C below, the Amended Plan satisfies section 1129(b) of

19  the Bankruptcy Code.

20         115.    The Amended Plan also satisfies section 1129(c) of the Bankruptcy Code by the fact

21  that the Amended Plan is the only proposed plan of reorganization.

22         116.    No party in interest that is a governmental unit has requested that the Amended Plan

23  not be confirmed on the grounds that the primary purpose of the Amended Plan is the avoidance of

24  taxes or the avoidance of application of Section 5 of the Securities Act of 1933, and the primary

25  purpose of the Amended Plan is not avoidance of taxes or avoidance of Section 5 of the Securities

26  Act of 1933.  Accordingly, the Amended Plan satisfies section 1129(d) of the Bankruptcy Code.

27         117.    Finally, the Amended Plan satisfies Bankruptcy Rule 3016 because: (1) the Amended

28  Plan is dated and identifies the Debtor as the party submitting the Amended Plan, and thus complies

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

with Bankruptcy Rule 3016(a); (2) the Amended Plan does not seek to enjoin any conduct not otherwise enjoined under the Bankruptcy Code, and thus complies with Bankruptcy Rule 3016(c).

**C.      11 U.S.C. § 1129(b):  The Amended Plan May Be Confirmed Over the Dissent of Impaired Classes.**

118.    The Debtor must proceed to nonconsensual confirmation, pursuant to section 1129(b) of the Bankruptcy Code, given the rejection by impaired Class 2(c) (Enigma Secured Claim), the failure of impaired Class 3(a) (AVT Secured Claim) to vote, and the deemed-rejecting status of Class 4 (Old Interest Holders).  Despite this, the Amended Plan is still confirmable because it does not discriminate unfairly and is fair and equitable within the meaning of section 1129(b).

**1.      The Amended Plan Does Not "Discriminate Unfairly."**

119.    Section 1129(b) of the Bankruptcy Code permits confirmation of plan, despite its rejection by impaired classes if, among other matters, it does "not discriminate unfairly" with respect to each impaired dissenting class.  11 U.S.C. § 1129(b)(1).

120.    The unfair discrimination standard of section 1129(b)(1) ensures that a plan does not unfairly discriminate against a dissenting class with respect to the value it will receive under a plan when compared to the value given to all other similarly situated classes.  *See In re LightSquared Inc.*, 513 B.R. 56, 99 (Bankr. S.D.N.Y. 2014).  Generally, a plan unfairly discriminates in violation of section 1129(b)(1) only if similar classes are treated differently without a reasonable basis for the disparate treatment.  *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990).  Accordingly, as between two classes of claims, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, *see, e.g.*, *In re Johns-Mansville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988), or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment, *see, e.g.*, *Buttonwood Partners*, 111 B.R. at 63.  In other words, a plan does not "discriminate unfairly" if a dissenting class is treated equally with respect to other classes of equal "rank," meaning of equal priority.  *Art & Architecture*, 2016 WL 1118743, at *18.

121.    As applied in the case at hand, the Debtor's Amended Plan properly classifies each Allowed Secured Claim in a separate class, and provides for each holder to receive the Sale Proceeds

37

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

allocable to its respective collateral, subject to the Surcharge Claims.  *See* Amended Plan, Articles II & III.  The Amended Plan properly classifies all Old Interests in a separate class.  *See id.*  As a result, the Debtor's Amended Plan does not discriminate unfairly against any impaired claims or interests that have not accepted the Amended Plan pursuant to section 1129(b) of the Bankruptcy Code.

### 2. The Amended Plan Is "Fair and Equitable."

122.    The Amended Plan also satisfies the "fair and equitable" requirement with respect to each class of claims or interests that is impaired under, and has not accepted, the Amended Plan.

123.    *First*, the Amended Plan complies with the definition of "fair and equitable" pursuant to section 1129(b)(2)(A) as to the Class 2(c) Enigma Secured Claim and the Class 3(a) AVT Secured Claim.  Section 1129(b)(2)(A) of the Bankruptcy Code provides that the term "fair and equitable" includes the following requirements with respect to secured claims:

(i)    (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. § 1129(b)(2)(A).

124.    Here, the Amended Plan complies with section 1129(b)(2)(A) of the Bankruptcy Code because the Holders of the Class 2(c) Enigma Secured Claim and the Class 3(a) AVT Secured Claim will receive the Cash proceeds of their respective collateral, subject to the Surcharge Claims. In addition, Enigma will receive the Enigma Secured Claims Trust Units, and will retain its liens on any of its collateral not subject to the Sale, as to which Enigma is permitted to take possession or otherwise dispose of at its discretion.  *See* Amended Plan, Article III, §§ 3.2(d) & 3.2(f) (Classes 2(c) & 3(a)).

38

125.    ***Second***, the Amended Plan complies with the definition of "fair and equitable" pursuant to section 1129(b)(2)(C) as to Class 4 Old Interests.  Section 1129(b)(2)(C) of the Bankruptcy Code provides that the term "fair and equitable" includes the following requirements with respect to interests:

> (i) the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or
>
> (ii) the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

11 U.S.C. § 1129(b)(2)(C).

126.    Because there are no classes junior to Class 4 Old Interests (*see* Amended Plan, Articles II & III), the Amended Plan is fair and equitable within the meaning of section 1129(b)(2)(C)(ii).

127.    In sum, because the Debtor's Amended Plan does not "discriminate unfairly" and is "fair and equitable" pursuant to section 1129(b)(1)-(2) of the Bankruptcy Code, it can be confirmed on a nonconsensual basis.

## VII.    OBJECTIONS TO CONFIRMATION

128.    On July 13, 2023, the Enigma Reservation [ECF No. 834] and the Brink's Objection [ECF No. 838] and were filed with respect to confirmation of the Original Plan.

129.    On July 20, 2023, the Debtor filed its Omnibus Reply [ECF No. 910] to the Enigma Reservation and the Brink's Objection.

130.    On August 3, 2023, the Court entered an *Order* [ECF No. 1006] approving the *Stipulation* [ECF No. 1003] between the Debtor and McAlary, extending the deadline to file an objection to the Amended Plan to August 9, 2023.  On August 9, 2023, McAlary filed the McAlary Objection.

131.    On August 10, 2023, Cole Kepro filed its *Limited Objection* [ECF No. 1070] to the Amended Plan (the "Cole Kepro Limited Objection").

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

**A.    Response to the Brink's Objection and Enigma Reservation.**

132.    On July 20, 2023, the Debtor filed its Omnibus Reply [ECF No. 910] to the Enigma Reservation and the Brink's Objection.  The factual assertions and legal arguments contained in the Omnibus Reply are incorporated herein by this reference.

133.    The Enigma Reservation preserved Enigma's rights to provide comments to, and/or object to, the Plan, any Plan Supplement, and the Surcharge Claims (as defined in the Enigma Reservation).  Enigma subsequently provided its comments to the Original Plan, which were substantially incorporated by the Debtor in the Amended Plan.  *See* Redline of Amended Plan [ECF No. 997].  Nevertheless, Enigma voted to reject the Amended Plan.

134.    Among other things, the Brink's Objection asserted that the Original Plan could not be confirmed in compliance with section 1129(a)(9) because that the liquidation analysis attached as Exhibit B to the *Supplement to [the Original Plan]* [ECF No. 821] showed that the projected administrative expense claims exceeded the amount of sale proceeds.  Debtor has since filed the Amended Plan, which makes clear that the Effective Date is contingent upon the Debtor having enough Cash assets to pay all administrative expense claims in full.  *See* Amended Plan, Article IX, § 9.1.  As discussed at length in Section VII.C.4 below, under a best-case scenario, the Debtor projects that it will have sufficient Cash assets within the next six to nine months not only to pay all administrative expense claims in full, but also to fund a ~$8.7 million distribution to unsecured creditors (which may be enhanced by recovery on the McAlary Claims) (*see* Section III.A.2 above).  *See* James Declaration, ¶ 10.

**B.    Response to the Cole Kepro Limited Objection.**

135.    In its Limited Objection, Cole Kepro expressed general support for the Amended Plan, but took objection to Section 10.1(b) to the extent it would eliminate any rights Cole Kepro may have to assert an offset or recoupment defense.

136.    The Debtor and Cole Kepro have agreed to resolve the objection by adding the following paragraph to the Confirmation Order:

> Notwithstanding any provision to the contrary in this Confirmation Order, the Plan (including section 10.1(b) of the Plan), or any Plan Supplements, the rights of Cole

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Kepro International, LLC ("CKI"), if any, to assert an offset or recoupment defense under applicable law and/or section 553 of the Bankruptcy Code with respect to any claims asserted against it based on claims that it holds against the Debtor, as set forth in CKI's filed proofs of claim [Claim Nos. 41 and 42] or otherwise, are expressly preserved.

## C. Response to the McAlary Objection.

137. McAlary, the Debtor's former CEO and target of fraudulent transfer and breach of fiduciary duty claims with asserted damages of $25+ million (*see* Section III.A.2 above), is the only stakeholder with a significant objection to confirmation of the Amended Plan.

138. McAlary has concurrently filed a *Motion to Convert Case to Chapter 7* [ECF No. 1034], seeking to replace the Debtor's current independent director and estate professionals with a chapter 7 trustee and his/her own professionals, that will incur significant expense in getting up to speed regarding the estate's remaining assets, including its claims against McAlary.

### 1. Resolicitation.

139. McAlary talks out of both sides of his mouth:  while objecting to the fees and expenses incurred by the estate professionals, McAlary argues that the Debtor should have incurred significant administrative expense to resolicit the 2,000+ General Unsecured Creditors whose treatment was not altered under the Amended Plan.[6]  McAlary Objection, pp. 16-18.

140. The truth is that even if a significant number of the 188 creditors that voted in favor of the Original Plan changed their votes with respect to the Amended Plan, Genesis' vote of its $113,575,384 General Unsecured Claim in favor of the Amended Plan would carry the Class 3(b) vote.  *See* Voting Report.  Thus, contrary to McAlary's accusations, the Debtor and its professionals have been extremely sensitive to the need not to incur unnecessary administrative expenses.

141. Moreover, the only deficiency McAlary points to regarding the Disclosure Statement is that it underestimates the aggregate administrative expense/professional fee claims based on

---

[6] Section 12.1(c) of both the Original Plan and the Amended Plan provides: "A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim or Interest of such Holder."  *See* Original Plan, Article XII, § 12.1(c); Amended Plan, Article XII, § 12.1(c).

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

information available today.  However, the estimates provided in the Disclosure Statement were explicitly qualified by the following:

> "The foregoing estimation is subject to significant limitations. Importantly, with respect to Administrative Expense Claims and Priority Tax Claims, the Debtor is not yet able to reconcile claims that are duplicative of scheduled amounts, claims that are duplicative of other amended claims, or claims that are not correctly asserted with respect to their amount, priority, or other classification. Moreover, the Bar Date has not yet occurred. Accordingly, this does not represent an estimate of the amount of Unclassified Claims that will ultimately become Allowed Claims, and the ultimate amount of Unclassified Claims which become Allowed Claims could be materially higher or lower than the estimated asserted claims set forth above."

Disclosure Statement, p. 17.

142.    Thus, all General Unsecured Creditors voted based on the knowledge that the claims estimates provided were just that – estimates, and subject to significant limitations.

## 2.    Exculpation.

143.    McAlary also argues that the Amended Plan grants broad releases to release third parties, including Cole Kepro.  McAlary Objection, pp. 15-16.  This is simply untrue.  As discussed at length in Section VI.A.1.c.ii above, the Amended Plan contains a narrowly tailored exculpation provision that would protect Cole Kepro only to the extent that it was acting as a member of the Committee and acting in connection with the Chapter 11 Case, the pursuit of confirmation of the Plan, or the consummation of the Plan.  Acts resulting from gross negligence, willful misconduct and fraud are explicitly excluded.  *See* Section VI.A.1.c.ii above.  McAlary presents no authority that has held such an exculpation provision improper.  Indeed, such provisions are routinely approved when the conduct is so limited.  *See, e.g.*, *Genco Shipping*, Dkt. No. 322 at ¶ 24(d), (Bankr. S.D.N.Y. July 2, 2014) (approving exculpation provision in plan providing exculpation for non-estate fiduciaries); *In re Eastman Kodak Co*., Case No. 12-10202, Dkt. No. 4966 (Bankr. S.D.N.Y. Aug. 23, 2013) (confirmation order overruling U.S. Trustee objection to exculpation of both estate fiduciaries and non-estate fiduciaries from liability for "any prepetition or postpetition act taken or omitted to be taken in connection with, or arising from or relating in any way to, the chapter 11 cases"); *In re Neff Corp*., Case No. 10-12610, Dkt. No. 443 at 42 (Bankr. S.D.N.Y. Sept. 20, 2010) (chapter 11 plan providing that estate and non-estate fiduciaries "shall neither have, nor incur any

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

42

liability to any Entity for any prepetition or postpetition act taken or omitted to be taken in connection with, or related to formulating, negotiating . . . the Plan"); *In re Almatis, B.V*., Case No. 10-12308, Dkt. No. 444 at 7 (Bankr. S.D.N.Y. Sept. 20, 2010) (approving exculpation of debtors' prepetition lenders and holders of senior secured notes for both pre- and post-petition conduct); *In re Charter Commc'ns, Inc.*, Case No. 09-11435, Dkt. No. 921 at 44 (Bankr. S.D.N.Y. Nov. 17, 2009) (approving exculpation of estate fiduciaries and non-fiduciaries for "any pre-petition or post-petition act taken or omitted to be taken in connection with, or related to . . . the restructuring of the Company").

### 3. Setoff Rights.

144.    To resolve McAlary's concerns regarding offset rights (McAlary Objection, pp. 14-15), the Debtor is willing to provide McAlary with similar language in the Confirmation Order as that agreed to with Cole Kepro above.

### 4. Effective Date/Feasibility.

145.    McAlary's central objection to the Amended Plan is that the Effective Date is contingent upon the Estate having sufficient Cash to pay all administrative expense claims in full. McAlary argues that the Amended Plan is not feasible because it's unlikely that the Estate will ever be able to pay all administrative expense claims in full.

146.    To the contrary, the Debtor projects a reasonable likelihood that there will be sufficient Cash not only to satisfy all administrative expense claims in full, but also to provide a distribution on unsecured claims, within the next six to nine months.

147.    On the asset side, the Debtor currently has approximately $702,204 in available Cash in its bank accounts, $40,400 in Cash in transit, and between $952,774 and $1,452,774 in Cash in its kiosks (which Powercoin, LLC has agreed to collect and return within 120 days in exchange for an 8% fee). *See* James Declaration, ¶ 11.

148.    The Debtor projects enhancing its Cash by among the following: (a) the Surcharge Motion, anticipated to be resolved with the next two months (with a projected $1.39 million to $2.36 million recovery for the Estate), (b) recovery of fraudulent transfers to McAlary, anticipated to be resolved within the next six to nine months, subject to the need for ongoing litigation (with a projected $2 million to $4 million recovery for the Estate); (c) recovery/offset of preferential transfers

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

43

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

to non-insiders, anticipated to be resolved within the next six to nine months (with a projected $550,000 to $1.15 million recovery for the Estate); (d) recovery from the Litigation Actions against Cole Kepro, Bitaccess and Bitcoin Depot, anticipated to be resolved withing the next six to nine months (with a projected $1.85 million to $3.85 million recovery for the Estate); (e) recovery via settlement of claims against the Estate's D&O policy, anticipated to be resolved within the next six to nine months (with a projected $500,000 to $750,000 recovery for the Estate); and (f) recovery on miscellaneous sources (sale of Brazil subsidiary, employee retention credits, postpetition retainer funds), anticipated to be received within the next six to nine months (with a projected $430,000 to $1.18 million recovery for the Estate). *See* James Declaration, ¶ 12.

149. In total, the Debtor projects recovery of approximately $8.4 million to $15.5 million of distributable value from its existing cash and remaining assets within the next six to nine months. *See* James Declaration, ¶ 13.

150. On the administrative expense claim side, there are currently $4,067,768 in filed administrative expense claims, plus a projected $4,735,000 in forecasted professional fees owed, plus between $550,000 and $850,000 of additional Chapter 11 wind down costs, for an estimated total of between $9.35 million and $9.65 million, including material amounts of administrative claims subject to objection. *See* James Declaration, ¶ 14.

151. The Debtor projects reducing the administrative expense claims by among the following: (a) the Debtor's filed objections to the administrative expense claims filed by Enigma [ECF No. 987], Brink's [ECF No. 989], and Thorntons LLC [ECF No. 1041], anticipated to be resolved within the next two to three months (resulting in an aggregate reduction of between $150,000 and $1 million); and (b) objections to other administrative expense claims, anticipated to be filed/resolved within the next two to three months (in the aggregate amount of approximately $40,000 to $1.9 million). *See* James Declaration, ¶ 15.

152. In total, the Debtor projects aggregate estimated administrative expense claims ranging from $6.5 million to $9.5 million. *See* James Declaration, ¶ 16.

153. Accordingly, the Debtor projects approximately $9 million in net residual proceeds in a best-case scenario (which will be distributed to unsecured creditors), or a $1 million

44

administrative claims deficit in a worst-case scenario.  Notably, these figures do not account for any recovery on the breach of fiduciary duty claims filed against McAlary, with asserted damages of $20+ million.  *See* James Declaration, ¶ 17.

154.    The Bankruptcy Code makes clear that payment of administrative expenses is an effective date issue, not a confirmation issue.  *See* 11 U.S.C. § 1129(a)(9)(A) ("on the effective date of the plan, the holder of [administrative expense claims] will receive on account of such claim cash equal to the allowed amount of such claim."). Debtors are not required to prove that all administrative expense claims must be paid on the confirmation date, but must only demonstrate by a preponderance of the evidence that administrative expense claims will be paid by the effective date of the plan. Cases in this and other districts have held that administrative expense claims must be paid by the effective date of the plan.  *See, e.g. CIT Commc'ns Fin. Corp. v. Midway Airlines Corp*. (*In re Midway Airlines Corp.*), 406 F.3d 229, 242 (4th Cir. 2005) (noting that "an administrative expense under § 503(b) must be paid in cash on the effective date of the plan in a chapter 11 proceeding") (emphasis added*); In re Korea Chosun Daily Times, Inc*., 337 B.R. 773, 784 (Bankr. E.D.N.Y. 2005) (noting that "the outside date by which administrative expenses must be paid in a [c]hapter 11 case" is "the effective date of the plan" pursuant to section 1129(a)(9) of the Plan and that "[t]he question of whether administrative expenses should be paid sooner than the effective date of the plan is committed to the sound discretion of the bankruptcy court").

155.    Indeed, bankruptcy courts routinely confirm chapter 11 plans containing substantial contingencies, including the requirement that debtors secure necessary funding prior to the proposed effective date.  *See, e.g., In re Sears Holdings Corp*., Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 15, 2019) (ECF No. 5370) (confirming chapter 11 plan contingent on litigation recoveries to fund administrative expense claims); *In re Delphi Corp*., Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Jan. 25, 2008) (ECF No. 12359) (confirming chapter 11 plan with a condition precedent to the effective date that the reorganized debtors would enter into certain exit financing arrangement); *In re W.R. Grace & Co*., Case No. 01-01139 (JKF) (Bankr. D. Del. Jan. 31, 2011) (ECF No. 26155) (confirming chapter 11 plan with effective date conditioned on a number of material contingencies, including the establishment and funding of certain asbestos trusts). Often in these cases, the period between

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

confirmation date and effective date was months long, at times even years-long. *See e.g. In re Lightsquared Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y Dec. 7, 2015) (ECF No. 2433) (approximately eight months between confirmation date and effective date); *In re Ambac Fin. Grp., Inc.*, Case No. 10- 15973 (SCC) (Bankr. S.D.N.Y. May 1, 2013) (ECF No. 1308) (approximately fourteen months between confirmation date and effective date); *In re Caesars Entm't Operating Co.*, Case No. 15- 01145 (ABG) (Bankr. N.D. Ill. Oct. 6, 2017) (ECF No. 7482) (approximately nine months between confirmation date and effective date). The Debtor submits that it has amply satisfied the requirement.

156.    Importantly, if the Court does not approve the Plan, and the Chapter 11 Case is converted, creditors would still have to wait for the proceeds of litigation to realize any recoveries, and, as demonstrated by the Liquidation Analysis, creditors are worse off in a chapter 7 liquidation of the Debtor's assets. Distributions could be even more delayed and result in lower recoveries as a result of (i) the additional costs and expenses that would be incurred by a chapter 7 trustee and retention of new professionals and (ii) the delay and erosion of value of the Debtor's assets that would be caused due to the need of the newly appointed chapter 7 trustee and its professionals to familiarize themselves with the assets and liabilities of the Debtor. It is notable that unsecured creditors, holding over $100 million in claims, as well as administrative creditors, are the remaining economic stakeholders in this case. The Committee fully supports the Plan as well, and has been intimately involved in all aspects of this case. Those creditors, which are entitled to the residual value of the Debtor, have cast their votes in favor of the Plan, fully aware of all facts and circumstances, as well as options such as conversion to chapter 7. The view of these stakeholders should be afforded deference, and their preferred structure implemented. Accordingly, the Debtor submits that confirmation of the Plan is in the best interests of the estate and its creditors.

157.    As discussed in Section VI.A.11 above, only "a relatively low threshold of proof [is] necessary to satisfy the feasibility requirement." *In re Sagewood Manor Assocs. Ltd. P'ship*, 223 B.R. 756, 762 (Bankr. D. Nev. 1998). The Debtor submits that it has amply satisfied the requirement.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

## VIII.    CONCLUSION

158.    WHEREFORE, for all of the foregoing reasons, Debtor request that the Court enter an Order approving the Disclosure Statement on a final basis and confirming the Amended Plan.

Dated this 15th day of August 2023.

**FOX ROTHSCHILD LLP**

By:    */s/Brett A. Axelrod*
     BRETT A. AXELROD, ESQ.
     Nevada Bar No. 5859
     NICHOLAS A. KOFFROTH, ESQ.
     Nevada Bar No. 16264
     ZACHARY T. WILLIAMS, ESQ.
     Nevada Bar No. 16023
     1980 Festival Plaza Drive, Suite 700
     Las Vegas, Nevada 89135
     *Counsel for Debtor*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

353743\00002\148239602.11

47