_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
August 24, 2023

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>          Debtor. | Case No. 23-10423-mkn<br>Chapter 11<br><br>Date:   August 17, 2023<br>Time:   10:30 a.m. |

**ORDER ON OPPOSITION TO APPROVAL OF STIPULATION GRANTING DERIVATIVE STANDING TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH RESPECT TO CERTAIN ACTIONS[1]**

On August 17, 2023, a hearing was conducted on several objections raised by Christopher McAlary ("McAlary") in the above-captioned Chapter 11 proceeding. One matter was an Opposition to Approval of Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors With Respect to Certain Actions ("McAlary Objection") and the other matter was his objection to final approval of the Debtor's Disclosure Statement for Chapter 11 Plan of Reorganization Dated May 8, 2023 ("Disclosure Statement") (ECF No. 529) as well as on confirmation of its proposed First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023 ("Amended Plan") (ECF No. 996). The latter is the subject of a separate order. The hearing in both matters were continued provisionally to August 29, 2023.

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the Clerk of Court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq.

1

# BACKGROUND[2]

The McAlary Objection seeks to deny court approval of a stipulation reached between the Chapter 11 Debtor and the Official Committee of Unsecured Creditors ("Creditors Committee") appointed in this proceeding.[3] After an asset sale previously approved in this case (ECF No. 795),[4] the Amended Plan seeks to liquidate the remaining assets of the Chapter 11 estate

---

[2] Pursuant to Federal Rule of Evidence 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned Bankruptcy Case See Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

[3] After the Chapter 11 proceeding was voluntarily commenced on February 7, 2023, a five-member Creditors Committee initially was appointed by the Office of the United States Trustee on February 17, 2023. (ECF No. 131). The Committee appointment was amended to add two additional members on February 28, 2023. (ECF No. 177). The appointment was further amended to reduce the membership to six on August 10, 2023. (ECF No. 1066). From the inception of the Creditors Committee, a representative of Cole Kepro International, LLC, has been a member.

[4] On June 23, 2023, in connection with the asset sale, the Creditors Committee filed a "Statement and Reservation of Rights." (ECF No. 758). In that Statement, the Creditors Committee represented as follows:

> The Debtor informed the Committee that Chris McAlary, the Debtor's CEO and director, resigned from the company on or about June 9, 2023. Mr. McAlary's resignation and his postpetition conduct, with the Committee intends to investigate, raise questions about his intent to acquit his fiduciary duties to all of the Debtor's creditors during the course of this case. For example, the Committee is concerned about Mr. McAlary's relationship with non-debtor Coin Cloud Ativos Digitais Brasil LTDA ("Brazil"), which has outstanding payables to the Debtor. The payment of that intercompany claim has been inexplicably delayed over the last month or more. Mr. McAlary has also just filed a *Response to Debtor's Motion to Compel Turnover of Estate Assets* [Dkt. No. 752] (the Response"), which oddly seeks to protect the rights of Brazil to certain DCMs. Mr. McAlary has not yet purchases Brazil, and his relationship and conduct with respect to Brazil is unclear. The Committee intends to examine whether Mr. McAlary has inappropriately exercised control of Brazil, either directly or indirectly, through the course of the Debtor's case. Moreover, since Mr. McAlary's resignation, a host of other company issues are coming to light that shed serious doubt on the propriety of Mr. McAlary's postpetition conduct. The Committee has requested a litigation hold with respect to all business and personal documents and communications within Mr. McAlary's possession, custody, or control,

consisting primarily of the Debtor's claims against third parties (including McAlary). Because the Debtor will no longer operate under the Amended Plan, the stipulation provides for the Debtor to grant "derivative standing" to the Creditors Committee to pursue the claims for the benefit of the Chapter 11 bankruptcy estate.

On August 3, 2023, a copy of the Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions ("Derivative Standing Stipulation") was filed. (ECF No. 1009).

On August 7, 2023, the McAlary Objection was filed along with his supporting declaration ("McAlary Declaration").[5] (ECF Nos. 1029 and 1030). On the same date, McAlary filed a separate Motion to Convert Case to Chapter 7 ("McAlary Conversion Motion"). (ECF No. 1034).

On August 9, 2023, an order was entered denying the Creditors Committee request to approve the Derivative Standing Stipulation without a hearing. (ECF No. 1054).

On August 9, 2023, orders also were entered denying McAlary's separate requests to have the McAlary Objection and the McAlary Conversion Motion heard on shortened time. (ECF Nos. 1052 and 1053).

On August 10, 2023, an order was entered approving a stipulation between McAlary, the Creditors Committee, and the Debtor, to shorten time so that the McAlary Objection to the Derivative Standing Stipulation could be heard on August 17, 2023, concurrently with confirmation of the Amended Plan. (ECF No. 1064).

---

    which is pertinent to the Committee's ongoing investigation into the Debtor's financial position and pre- and postpetition conduct, but has not received any response from Mr. McAlary.

Statement at 3:10-28.

[5] Attached to the McAlary Objection is a table of projected professional fees in the Chapter 11 proceeding as well as copies of various email messages and correspondence.

On August 15, 2023, the Creditors Committee filed its response to the McAlary Objection ("Committee Response").[6] (ECF No. 1073).

On August 15, 2023, McAlary filed a request for judicial notice in support of the McAlary Objection. (ECF No. 1074).[7]

On August 15, 2023, Debtor filed its joinder to the Creditors Committee response. (ECF No. 1076).

## DISCUSSION

The Derivative Standing Stipulation at issue[8] includes the following Recitals:

> 3. WHEREAS, the Debtor and the Committee have identified certain colorable preferential transfers pursuant to section 547 of the Bankruptcy Code between the Debtor and certain creditors, excluding only those creditors listed on **Schedule 1** hereto (as such list may be modified from time to time, the "Excluded Preference Actions"), occurring in the ninety days prior to the Petition Date (the "Preference Actions");
> 4. WHEREAS, the Debtor and the Committee have identified <u>certain colorable claims against the Debtor's CEO, Christopher McAlary</u>, as more fully summarized in the Demand Letter issues to Mr. McAlary by the Committee on July 28, 2023 (the "Potential McAlary Litigation," and together with Preference Actions, the "Actions");… (emphasis added)

After the Recitals, the pertinent part of Stipulation provides as follows:

> 2. The <u>Committee is authorized and has derivative standing to initiate, commence, negotiate, litigate</u>, arbitrate, mediate, settlement, compromise, resolve, and to carry out any and all other or further initiatives attendant thereto, <u>the Actions on behalf of the Debtor's estate</u>. (emphasis added).

---

[6] Attached to the Committee Response is a draft of an adversary Complaint framed as thirteen separate counts, styled as <u>Official Committee of Unsecured Creditors of Cash Cloud v. Christopher McAlary</u> ("Committee Complaint"). Counts I, II, VI, VIII, XI, and XII appeared to be based largely or entirely on Nevada law, while the remaining Counts seek various forms of relief under bankruptcy law. No other draft complaints are provided with respect to any Preference Action encompased by the Derivative Standing Stipulation.

[7] Attached to the request are copies of documents filed in a pre-bankruptcy action entitled <u>Cash Cloud v. Cole Kepro International, LLC</u>, Case No. A-22-854226-B, commenced in the Eighth Judicial District Court, Clark County, Nevada.

[8] A separate motion for the Creditors Committee to obtain derivative standing with respect to certain avoidance claims and certain recharacterization claims was filed on July 24, 2023. (ECF No. 925). A status hearing on that motion is scheduled to be held on August 29, 2023. (ECF No. 1056).

4

      3.   This Stipulation shall not modify, amend, waive, or have any other effect whatsoever upon any provision in any final order (the "Confirmation Order") confirming the *Debtor's Chapter 11 Plan of Reorganization* [Dkt. No. 528] (as the same may be amended or supplemented from time to time, the "Plan"), which shall remain in full force and effect.  <u>For the avoidance of doubt, any proceeds of the Actions obtained by the Committee pursuant to this Stipulation shall be administered and distributed in accordance with the Plan and Confirmation Order</u>. (emphasis added)

      4.   For the avoidance of doubt, nothing in this Stipulation shall affect the ability of the Committee to obtain derivative standing with respect to any claims or causes of action for which derivative standing is not expressly granted by the Debtor herein, including but not limited to the Excluded Preference Actions, and the Committee reserves any and all rights to seek derivative standing on any other claims or causes of action that may now or hereinafter exist, including but not limited to the Excluded Preference Actions.

Derivative Standing Stipulation at 3 of 5.

      McAlary seeks to deny approval of the Derivative Standing Stipulation on three grounds: (1) prosecution of any claims by the Creditors Committee is not warranted; (2) there is no colorable claim against McAlary; and (3) any claims should be litigated by a Chapter 7 trustee.[9] See McAlary Objection at 5:6 to 8:2. At the hearing, McAlary also asserted that Cole Kepro should be disqualified from serving on the Committee inasmuch as Cole Kepro is the named defendant in pre-petition litigation commenced by the Debtor. Judicial notice of pleadings from that action has been requested. See note 7, supra. Additionally, McAlary attests the Debtor previously intended to sell to him its claims against Cole Kepro and others, but that the Creditors Committee (co-chaired by Cole Kepro) objected. See McAlary Declaration at ¶¶ 4 through 10.[10]

      In the Ninth Circuit, a Chapter 11 creditors committee may be granted derivative standing

---

[9] The separate Conversion Motion brought by McAlary apparently would be the vehicle by which the same actions would be brought directly by a Chapter 7 trustee rather than derivatively through the Creditors Committee. Although Exhibit 1 attached to the McAlary Objection consists of a projection of professional fees in the Chapter 11 proceeding, it does not include a projection of the professional fees that would be incurred by a Chapter 7 trustee.

[10] Cole Kepro has been a member of the Committee from its original formation. See note 3, supra. No party in interest has ever objected to Cole Kepro's presence on the Committee. Even after the Committee raised significant questions concerning McAlary's conduct, see note 4, supra, not even McAlary has questioned the objectivity of the Committee's investigations.

to pursue claims on behalf of the bankruptcy estate.  See, e.g., Issa v. Royal Metal Industries, Inc. (In re X-Treme Bullets, Inc.), 642 B.R. 312, 321-323 (D. Nev. 2022), citing Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites), 207 B.R. 899 (B.A.P. 9th Cir. 1997) (rescission of prior order approving derivative standing stipulation was an abuse of discretion).[11]  Where a Chapter 11 debtor in possession ceases operations, there is no practical alternative to authorizing such claims to be pursued by another entity.  Where a Chapter 11 debtor in possession, or, a Chapter 7 trustee fails or refuses to pursue claims of a bankruptcy estate, other interested parties can seek derivative standing.  Like any property of the bankruptcy estate that is not liquidated, possibly meritorious claims will be abandoned under Section 554(c) if the claims are not administered.  Providing a means for such claims to be pursued and the net proceeds received or shared by the bankruptcy estate may offer the only possible means of returning value to unsecured creditors.

In this instance, both the Debtor and the Creditors Committee seek prior authorization to enter into the Derivative Standing Stipulation.  The document was filed with the court, and entry of an order approving the Derivative Standing Stipulation is sought by both parties to the stipulation.  The Derivative Standing Stipulation encompasses "Actions" which include but are not limited to claims against McAlary.  Various "Preference Actions" also are encompassed and no suggestion is made that the Creditors Committee is unable or unworthy of pursuing such claims.  By his objection to the Derivative Standing Stipulation, McAlary is not disputing whether there may be colorable Preference Actions against other parties, but he only argues that

---

[11] Neither X-Treme Bullets nor Spaulding Composites involved a committee or a creditor seeking to overcome a refusal or failure to pursue a claim.  In those situations, various factors have been applied to confer derivative standing at the request of a committee or creditor.  See, e.g., PW Enterprises, Inc. v. North Dakota Racing Comm. (In re Racing Servs., Inc.), 540 F.3d 892, 900 (8th Cir. 2008); Infinity Investors Ltd. v. Kingsborough (In re Yes! Entertainment Corp.), 316 B.R. 141, 145 (D. Del. 2004); In re First Capital Holdings Corp., 146 B.R. 7, 11 (Bankr. C.D. Cal. 1992).  These cases are cited by McAlary and the Creditors Committee.  The common teaching of all of these cases, however, is that with court approval derivative standing may be conferred to a non-debtor to pursue estate claims that are at least colorable.

there are no colorable claims against him.[12]  Not surprisingly, the Creditors Committee responds by submitting a copy of the proposed Committee Complaint against McAlary that is pled as thirteen separate counts under Nevada and bankruptcy law, see note 6, supra, but no proposed complaints are included asserting Preference Actions against any other parties.

Equally unsurprising is that the positions taken by the parties risk conflating whether there are colorable claims of the bankruptcy estate or whether the Committee Complaint states claims for which relief may be granted against McAlary.  A conclusion that the estate has no colorable claims against McAlary may be the equivalent of a dismissal with prejudice or summary judgment in favor of McAlary, with uncertain implications for the Preference Actions.  Notwithstanding those concerns, the court has reviewed the Committee Complaint as well as the unusual record in this Chapter 11 proceeding.

In other circumstances, the allegations in the Committee Complaint are sufficiently serious to have resulted in the possible replacement of existing management, including McAlary, with a Chapter 11 trustee under Section 1104(a), or, the appointment of an examiner.  Transition to the liquidation alternative under the Amended Plan effectively eliminated those management concerns because it also eliminated management.  Elimination of those concerns, however, did not shield McAlary from the exposure to claims, if any, arising from his prior status and activities as the designated responsible person, chief executive officer, and director of the Debtor.  Whether each of the counts alleged by the Committee has pled sufficient facts to state some or all of the claims is more appropriately addressed by thorough motion practice.  Efforts by either party to venture outside the pleadings, of course, would require application of summary judgment rules.  Whether either party ultimately will prevail on the merits is not before the court at this time.  For purposes of determining whether derivative standing should be afforded to the Creditors Committee in this Chapter 11 proceeding, the court concludes that colorable claims

---

[12] McAlary was the "designated responsible person" for the Debtor. (ECF No. 137). As the Chief Executive Officer of the Debtor, McAlary also signed under penalty of perjury the Debtor's schedules of assets and liabilities, as well as its statement of financial affairs. (ECF Nos. 239 and 240). If the case was converted to Chapter 7, McAlary presumably would attempt to convince the assigned Chapter 7 trustee that there are no colorable claims that the bankruptcy estate could pursue against him.

7

exist.[13]

Under these circumstances, the court finds that cause exists to approve the Derivative Standing Stipulation.

**IT IS THEREFORE ORDERED** that the objections raised in the Opposition to Approval of Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors With Respect to Certain Actions, brought by Christopher McAlary, Docket No. 1029, be, and the same hereby are, **OVERRULED**.

**IT IS FURTHER ORDERED** that the Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors With Respect to Certain Actions, Docket No. 1009, be, and the same hereby is, **APPROVED.**

**IT IS FURTHER ORDERED** that the continued hearing in this matter scheduled provisionally for August 29, 2023, is **VACATED.**

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
CASH CLOUD, INC.
11700 W CHARLESTON BLVD., #441
LAS VEGAS, NV 89135

JARED A. DAY
OFFICE OF THE US TRUSTEE
300 BOOTH ST #3009
RENO, NV 89509

UNSECURED CREDITORS
SEWARD & KISSEL
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

ALLAN B. DIAMOND
DIAMOND MCCARTHY LLP
909 FANNIN STREET, SUITE 3700
HOUSTON, TX 77010

CRAIGHEAD COUNTY TAX COLLECTOR
511 UNION ST, SUITE 107
JONESBORO, AR 72401

BRITTANY B. FALABELLA
HIRSCHLER FLEISCHER, P.C.
2100 EAST CARY STREET
RICHMOND, VA 23223

---

[13] The existence of a "colorable claim" also is determined in a variety of other factual and procedural contexts. See, e.g., Li v. Rosen (In re Jin Qing Li), 2018 WL 1354548, at *4 (B.A.P. 9th Cir. Mar. 12, 2018) (stay relief granted where there is a 'reasonable likelihood' that the creditor has a legitimate claim or lien against the debtor's property); In re Blum, 625 B.R. 662 (Bankr. E.D. Mich. 2021) (creditor granted derivative standing to pursue colorable legal malpractice claim against Chapter 13 debtor's former counsel); Budd v. Fidelity Asset Management, LLC (In re Budd), 2011 WL 4485190 (B.A.P. 9th Cir. June 17, 2011) (foreclosure sale purchaser had colorable claim to pursue eviction proceeding).

| | | |
|---|---|---|
| 1 | FOX ROTHSCHILD LLP | SHARA L LARSON |
| 2 | 1980 FESTIVAL PLAZA DR., SUITE 700 | GHANDI DEETER BLACKHAM |
| 3 | LAS VEGAS, NV 89135 | 725 S. SOUTH 8TH STREET SUITE 100<br>LAS VEGAS, NV 89101 |
| 4 | ROBERT J. GAYDA | |
| 5 | UNSECURED CREDITORS<br>SEWARD & KISSEL | LAW OFFICE OF SHEA LARSEN<br>1731 VILLAGE CENTER CIRCLE, SUITE |
| 6 | ONE BATTERY PARK PLAZA<br>NEW YORK, NY 10004 | 150<br>LAS VEGAS, NV 89134 |
| 7 | | |
| 8 | JORDI GUSO<br>BERGER SINGERMAN LLP | GARY LEE<br>MORRISON & FOERSTER LLP |
| 9 | 1450 BRICKELL AVENUE, STE. 1900<br>MIAMI, FL 33131 | 250 WEST 55TH STREET<br>NEW YORK, NY 10019-3601 |
| 10 | | |
| 11 | PAUL R HAGE<br>TAFT STETTINIUS AND HOLLISTER | CATHERINE V. LOTEMPIO<br>UNSECURED CREDITORS |
| 12 | LLP<br>27777 FRANKLIN ROAD, SUITE 2500 | SEWARD & KISSEL<br>ONE BATTERY PARK PLAZA |
| 13 | SOUTHFIELD, MI 48034 | NEW YORK, NY 10004 |
| 14 | JAMES M. JIMMERSON | ANDREW J. MATOTT |
| 15 | THE JIMMERSON LAW FIRM, P.C.<br>415 SOUTH 6TH STREET, SUITE 100 | SEWARD & KISSEL<br>ONE BATTERY PARK PLAZA |
| 16 | LAS VEGAS, NV 89101 | NEW YORK, NY 10004 |
| 17 | CHRISTOPHER D. JOHNSON | MCDONALD CARANO LLP |
| 18 | DIAMOND MCCARTHY LLP<br>909 FANNIN STREET, SUITE 3700 | 2300 WEST SAHARA AVE, STE 1200<br>LAS VEGAS, NV 89102 |
| 19 | HOUSTON, TX 77010 | JUSTIN M. MERTZ |
| 20 | ANDREW KISSNER | MICHAEL BEST & FRIEDRICH LLP |
| 21 | MORRISON & FOERSTER LLP<br>250 WEST 55TH STREET | 790 N. WATER STREET, STE. 2500<br>MILWAUKEE, WI 53202 |
| 22 | NEW YORK, NY 10019-3601 | LAURA MILLER |
| 23 | RICHARD KRUGER | SEWARD & KISSEL |
| 24 | TAFT STETTINIUS & HOLLISTER LLP<br>27777 FRANKLIN ROAD, SUITE 2500 | ONE BATTERY PARK PLAZA<br>NEW YORK, NY 10004 |
| 25 | SOUTHFIELD, MI 48034 | SEAN A. O'NEAL |
| 26 | JOHN J. LAMOUREUX | STEEN & HAMILTON LLP |
| 27 | CARLTON FIELDS, P.A.<br>4221 W. BOY SCOUT BLVD., STE. 1000 | ONE LIBERTY PLAZA<br>NEW YORK, NY 10006 |
| 28 | TAMPA, FL 33607 | |

| | | |
|---|---|---|
| 1 | PROVINCE, LLC<br>2360 CORPORATE CIRCLE, SUITE 330 | SIMON PROPERTY GROUP, INC.<br>ATTN: RONALD M. TUCKER, ESQ. |
| 2 | HENDERSON, NV 89074 | 225 WEST WASHINGTON STREET<br>INDIANAPOLIS, INDIANA 46204 |
| 3 | RYAN T. SCHULTZ | |
| 4 | FOX, SWIBEL, LEVIN & CARROLL, LLP<br>200 W. MADISON STREET, SUITE 3000 | Clark County Treasurer<br>c/o Bankruptcy Clerk |
| 5 | CHICAGO, IL 60606 | 500 S. Grand Central Parkway Box 551220<br>Las Vegas, Nevada 89155 |
| 6 | James M. Jimmerson | |
| 7 | The Jimmerson Law Firm, P.C.<br>415 S. 6th Street, Suite 100 | Corporation Service Company, as<br>Representative |
| 8 | Las Vegas, Nevada 89101 | P.O. Box 2576<br>Springfield, IL 62708 |
| 9 | ADAM P. SCHWARTZ | |
| 10 | CARLTON FIELDS, P.A.<br>4221 W. BOY SCOUT BLVD., STE. 1000 | Franchise Tax Board<br>Bankruptcy Section, MS A340 |
| 11 | TAMPA, FL 33607 | P.O. Box 2952<br>Sacramento, CA 95812 |
| 12 | TN Dept of Revenue | |
| 13 | c/o TN Attorney General's Office<br>Bankruptcy Division | Corporation Service Company, as<br>Representative |
| 14 | PO Box 20207<br>Nashville, TN 37202 | 801 Adlai Stevenson Drive<br>Springfield, IL 62708 |
| 15 | | |
| 16 | JANE VANLARE | Enigma Securities Limited |
| 17 | CLEARY GOTTLIEB STEEN &<br>HAMILTON LLP | 30 Panton Street, 6th Floor<br>London, SW1Y 4AJ United Kingdom |
| 18 | ONE LIBERTY PLAZA<br>NEW YORK, NY 10006 | Prime Alliance Bank, Inc. |
| 19 | | 1868 South 500 West |
| 20 | MICHAEL WEINBERG<br>CLEARY GOTTLIEB STEEN & | Woods Cross, UT 84087 |
| 21 | HAMILTON LLP<br>ONE LIBERTY PLAZA | Sectran Security Inc.<br>Attn: Rony Ghaby |
| 22 | NEW YORK, NY 10006 | P.O. Box 227267<br>Los Angeles, CA 90022 |
| 23 | ROBERT S. WESTERMANN | |
| 24 | HIRSCHLER FLEISCHER, P.C.<br>2100 EAST CARY STREET | Two Farms Inc. d/b/a Royal Farms Attn:<br>John Kemp |
| 25 | RICHMOND, VA 23223 | 3611 Roland Avenue<br>Baltimore, MD 21211 |
| 26 | KYLE M. WYANT | |
| 27 | SHEA LARSEN<br>1731 VILLAGE CTR CR, STE 150 | Sectran Security Inc.<br>7633 Industry Ave |
| 28 | LAS VEGAS, NV 89134 | Pico Rivera, CA 90660 |

1  Texas Workforce Commission Regulatory
2  Integrity Division – SAU  101 E. 15th
   Street, Room 556
3  Austin, TX 78778

4                                           # # #