BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
ZACHARY WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
          zwilliams@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC., dba COIN CLOUD,<br><br>Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**DECLARATION OF DANIEL AYALA IN SUPPORT OF DEBTOR'S OPPOSITION TO MOTION TO CONVERT CASE TO CHAPTER 7**<br><br>Hearing Date: September 13, 2023<br>Hearing Time: 9:30 a.m. |

I, Daniel Ayala, declare as follows:

1.  I am the Independent Director of Cash Cloud, Inc. dba Coin Cloud (the "Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case").

2.  Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

148898789.1

3. I make this Declaration in support of Debtor's *Opposition* (the "Opposition")[1] to the *Motion to Convert Case to Chapter 7* [ECF No. 1034] (the "Motion") filed by Chris McAlary ("McAlary").

4. Despite repeated requests, McAlary has also refused to repay the outstanding loans he owes the Debtor in excess of $700,000.

5. On June 12, 2023, the Debtor ceased operations. That same day, McAlary resigned as the Debtor's CEO.

6. The Debtor's remaining assets consist largely of cash (including some remaining to be collected from the purchased DCMs), surcharge claims against the secured creditors' sale proceeds, accounts receivable (including over $700,000 from McAlary), and causes of action, including claims against third parties, claims against McAlary (with asserted damages of $25+ million), and avoidance actions.

7. Substantial professional fees were incurred in preserving the option of a reorganization, based on management's (*i.e.*, McAlary's) insistence that the Debtor's business was more valuable as a going concern. For example, regulatory counsel spent considerable time seeking to preserve the Debtor's licenses, and bankruptcy counsel spent considerable time selectively rejecting host agreements for unprofitable locations, seeking authority to provide employees with a KERP, etc. These efforts were justified by the initial term sheet bids (*see, e.g.,* RockItCoin, LLC's stalking horse term sheet bid for a reorganization in the $16 million range).

8. Unfortunately, after the bidders had the opportunity to examine the Debtor's operations more closely, many dropped out and those remaining reduced their bids to a fraction (*see, e.g.*, RockItCoin's final bid in the $3 million range). In the end, the market decided that an asset sale would provide maximum value to the estate.

9. The existing Chapter 11 professionals have amassed extensive knowledge of many of the potentially colorable claims against McAlary that might allow recovery from McAlary and the Debtor's existing D&O policy, based on actions taken by McAlary before and during the Chapter

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Opposition.

2

148898789.1

11 Case. Not only will damages for these claims be more effectively pursued by the existing Chapter 11 professionals, but the delay involved in the trustee's getting up to speed could adversely affect the collectability of the claims against McAlary, given the extended opportunity to spend assets or transfer them to foreign entities. Indeed, the Court has granted standing to pursue those claims to the Committee, and the Debtor understands that a complaint will be filed in the near term. It is clear that allowing the Committee to pursue these claims to their conclusion will provide the most efficient and value maximizing result for the estate.

10. The existing Chapter 11 professionals are not only uniquely situated to explain why their services constituted reasonable and necessary costs of preserving and disposing of the collateral, but have already taken the steps to pursue those claims and are well underway in the litigation process. Restarting the process would be cost prohibitive.

11. Not only will the continued supervision by the existing Chapter 11 professionals serve to protect asset values, but it will also avoid the additional layer of professional fees and delays incurred in getting a Chapter 7 trustee and his/her professionals up to speed. For example, Committee counsel has expended considerable time and resources researching and amassing evidence supporting breach of fiduciary duty and fraudulent transfers claims against McAlary with asserted damages of $25+ million. Transferring this legal and factual database to a Chapter 7 trustee will be a lengthy process, with professionals incurring fees on both sides.

12. In the wake of the sale closing for considerably less consideration than the secured creditors' claims, the existing Chapter 11 professionals are keenly aware of the potential for administrative insolvency and the risk of their fees not being paid in full. They have every reason to work judiciously and efficiently in overseeing the liquidation of the Debtor's remaining assets.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed this 30th day of August 2023.

                                         */s/Daniel Ayala*
                                         Daniel Ayala

148898789.1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)