Anne T. Freeland, Esq.
Nevada Bar No. 10777
**MICHAEL BEST & FRIEDRICH LLP**
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500
Fax:    801.931.2500
Email: atfreeland@michaelbest.com

-and-

Justin M. Mertz, Esq.
Wisconsin Bar No. 1056938
(Admitted *pro hac vice* July 20, 2023)
**MICHAEL BEST & FRIEDRICH LLP**
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Phone: 414.225.4972
Fax:    414.956.6565
Email: jmmertz@michaelbest.com

-with local counsel-

John T. Wendland, Esq.
Nevada Bar No. 7207
**W&D LAW**
861 Coronado Center Drive, Suite 231
Henderson, NV 89052
Phone: 702.314.1905
Fax:    702.314.1909
Email: jwendland@wdlaw.com

*Counsel for AVT Nevada, L.P.*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEVADA**

| In re: | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., d/b/a COIN CLOUD, | Chapter 11 |
| Debtor. | **AVT NEVADA, L.P.'S OBJECTION TO DEBTOR'S MOTION TO SURCHARGE** |

AVT Nevada, L.P. ("**AVT**"), by and through its undersigned counsel, Michael Best & Friedrich LLP ("**Michael Best**"), hereby objects to the above-referenced Debtor's *Motion for Entry of an Order Authorizing Debtor to Surcharge the Collateral of Genesis Global Holdco, LLC, Enigma Securities Limited, and AVT Nevada, L.P.* [Dkt. 926] (the "**Surcharge Motion**"), and respectfully states as follows:

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 1

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

## I. INTRODUCTION

The Debtor is seeking to recover an extraordinary amount of administrative expenses from the proceeds of an underwhelming sale. While the Surcharge Motion paints AVT, Enigma Securities Limited ("**Enigma**"), and Genesis Global Holdco, LLC ("**Genesis**") as petulant actors, the reality, at least with respect to AVT, is that the costs and expenses the Debtor is seeking to recover were unnecessary, are unreasonable, and far exceed any benefit they can be said to have created. The circumstances of this case do not support, and the law does not allow for, the imposition of a surcharge against the proceeds from the sale of AVT's property—which was not property of the Debtor's bankruptcy estate. Moreover, surcharging against the proceeds of AVT's property which was auctioned at the Debtor's bankruptcy sale (the "**Sale**" or the "**Auction**") without AVT's consent and over its objection, is contrary to the fundamental underpinnings of 11 U.S.C. § 506(c). The Surcharge Motion should be Denied.

## II. BACKGROUND

AVT and the Debtor's relationship dates back to June 2020 and is described in particularity on that certain Master Lease Agreement No. 2056266 (together with its attendant and related schedules, documents, and agreements, as amended and restated, the "**Master Lease**"). A true and correct copy of the Master Lease is attached hereto as **Exhibit A**. Pursuant to the Master Lease, AVT leased a total of 594 Bitcoin digital kiosks (the "**Leased Equipment**," and from time to time here, the AVT "**BTMs**," short for Bitcoin teller machines, or "**DCMs**," short for digital currency machines) to the Debtor. The first page of the Master Lease identifies AVT as the "Lessor" and the Debtor as the "Lessee." (Exh. A, 1.) Moreover, the sixth page of the Master Lease provides that it is a "true lease." (*Id*. at 6.) The Debtor, by its chief executive officer, confirmed its agreement with and understanding of the Master Lease's terms on page 7. (*Id*. at 7.)

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 2

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

On March 27, 2023, after AVT learned that the Debtor had filed this bankruptcy case, AVT's counsel timely submitted AVT's *Proof of Claim* [Claim 38] ("**AVT's Claim**"). AVT's Claim affirmatively states, at line 10, that it is based on a lease (*i.e.*, the Master Lease), (Claim 38, 2), and the Master Lease was filed with AVT's Claim as evidence. To date, the Debtor has neither objected to AVT's Claim, nor commenced an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(2) to otherwise contest AVT's interest in the Leased Equipment. While the Surcharge Motion asserts that AVT's status as a lessor in these proceedings is only "allege[d]," (Surcharge Mot., 6), AVT's status is not the subject of any legitimate dispute.[1]

Despite the fact that AVT's Claim was (1) timely filed and (2) asserts an ownership interest (as lessor) in the Leased Equipment, the Debtor made no attempts to contact AVT before the Auction. (Mertz Decl. ¶¶ 3-6.)[2] In fact, the only communication of any kind that AVT received from the Debtor or any of its representatives before the Sale was a nonconclusive response ("We're looking into this and will get back to you.") on May 31, 2023 to an inquiry from AVT's counsel regarding the Debtor's intentions for the Leased Equipment. (*Id.* ¶ 5.) Debtor's counsel did not meaningfully respond to AVT's counsel's inquiry until June 4, 2023—two days after the auction.

---

[1] In fact, the Debtor acknowledges that the Master Lease "purports to be a 'true lease'" at footnote 3 of its *Motion for Entry of an Order: (A) Approving Auction and Bidding Procedures for Potential Plan Sponsors or the Purchase of Substantially All of the Debtor's Assets; (B) Approving Form of Notice to Be Provided to Interested Parties; and (C) Scheduling a Hearing to Consider Approval of the Highest and Best Transaction, Cure Objections, and Confirmation of the Proposed Toggle Plan* [Dkt. 392] (the "**Procedural Motion**"), and explicitly agreed that it "leases approximately 483 DCMs" from AVT at section 1.9 of its *Amended Motion for Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC, and Genesis Coin, Inc., Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Authorizing the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief* [Dkt. 730] (the "**Sale Motion**"). Any contention that AVT is not a lessor is disingenuous.

[2] The *Declaration of Justin M. Mertz in Support of AVT's Objection to the Debtor's Motion to Surcharge* (the "**Mertz Declaration**") was filed concurrently with these papers.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 3

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

(*Id.* ¶ 6.) By that time, it was clear that the Debtor had already taken steps to sell AVT's property without AVT's consent. (*Id.* ¶ 7.)

Once communication was established between AVT's counsel and Debtor's counsel, the parties began to negotiate terms under which AVT might consent to the sale of its property. Each time AVT and the Debtor circled around terms that might have been acceptable to AVT, the Debtor would reveal some new fact that would significantly reduce its estimation of AVT's recovery in the event of a sale. (*Id.* ¶¶ 7-14.) This problem repeatedly prevented any final agreement between the parties.

Over the course of the parties' discussions, the Debtor's estimation of AVT's potential recovery shrank from approximately $386,100 to $300,000, while AVT's minimum expected recovery to secure its consent (based on the credible facts the Debtor could offer) hovered around, at minimum, approximately $447,000. (*Id.*) Contrary to the Debtor's assertions, (Surcharge Mot., 7), AVT never gave consent to include the Leased Equipment in the Sale. (*Id.* ¶ 18.)

While AVT was negotiating with the Debtor, it was also entertaining separate, parallel negotiations with a third-party claims purchaser (the "**Claims Purchaser**") who was interested in purchasing AVT's DCMs and/or AVT's Claim. (*Id.* ¶ 20.) AVT's negotiations with the Claims Purchaser peaked on June 27, 2023, when the latter offered to purchase AVT's DCMs for $450,000 (more than the Debtor had ever offered), or $757.58 per machine. (*Id.*) The following day, the Court entered an oral ruling granting the Sale Motion, stalling AVT's negotiations with the Claims Purchaser and ultimately providing for the transfer of AVT's DCMs to Heller Capital Group, LLC ("**Heller**"). (*Id.* ¶ 21.)

AVT never consented to its DCMs being included in the Sale. Similarly, AVT never "consented to the Debtor incurring the Expenses related to the sale process." (Surcharge Mot., 19.)

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 4

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

AVT was not involved with the proceedings leading up to the Sale. (Mertz Decl. ¶ 18.) Indeed, AVT was not involved in these matters until after the auction. Moreover, in avoidance of any doubt, the night before the hearing on the Sale Motion, AVT's counsel expressly told Debtor's counsel that they did not have AVT's consent to move forward, stating:

> AVT does not consent to the sale of its BTMs as part of the Purchased Assets, does not consent to any surcharge or sale of its collateral (nor did we ever understand our BTMs were being "sold" through the sale process until after you reached out this month), and objects to entry of a sale order that negatively affects AVTs interests in any way.

(*Id*. ¶ 15.) Nevertheless, the Debtor is now seeking to recover the ***majority*** of the sale proceeds from a nonconsensual sale of the Leased Equipment upon arguments that, *inter alia*, AVT "not only consented to, but directed" the Sale process. (Surcharge Mot., 19.) This is a complete mischaracterization of the parties' history in these proceedings.

### III.    ARGUMENT

The Surcharge Motion offers too little, asks too much, and must be denied. As the Debtor acknowledges, § 506(c)[3] sets forth a limited exception to the general rule that the estate must bear its own administrative expenses. (Surcharge Mot., 9; citing *Golden v. Chicago Title Ins. Co. (In re Choo),* 273 B.R. 608, 611 (B.A.P. 9th Cir. 2002).) Indeed, "a party seeking a surcharge faces an onerous burden," and "must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor" it wants to recover against. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1068 (9th Cir. 2001). The Debtor has failed to carry its burden and, with respect to the amounts the

---

[3] Unless otherwise specified, all statutory references herein are to Title 11 of the United States Code.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 5

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

Debtor is seeking against AVT in particular, its argument falls short at each step of the analysis. Moreover, any surcharge is wholly unavailable against AVT and its Leased Equipment[4].

AVT urges the Court to interpret § 506(c) within its context. *See Brown v. Barclay (In re Brown),* 953 F.3d 617, 619 (9th Cir. 2020) ("we must interpret a problematic section of the Bankruptcy Code in light of the structure of the Code as a whole, including its object and policy"). No reasonable interpretation of § 506(c) allows the Debtor to recover against AVT or the Leased Equipment.

### A. Surcharge Is Unavailable Against AVT and the Leased Equipment.

Before the Court can assess whether the Debtor has carried its burden under § 506(c) with respect to Leased Equipment, this Court must determine, as a threshold issue, whether AVT through its Leased Equipment is subject to a surcharge at all. Only an extremely narrow reading of § 506(c) would allow the Debtor to seek a surcharge against AVT and property that it owns.

#### i. AVT's Ownership Interest as a Lessor Is Not Subject to Surcharge.

Unlike Enigma and Genesis, AVT owns its Leased Equipment outright. As a matter of law, § 506(c) is available only against those holding "allowed secured claims." 11 U.S.C. § 506(c). As the Ninth Circuit has noted that "[n]either the legislative history nor case law indicates that section 506(c) also applies to those asserting *ownership*." *Bear v. Coben (In re Golden Plan of Cal., Inc.)*, 829 F.2d 705, 712 (9th Cir. 1986) (emphasis in original).

While AVT did file a secured claim to preserve its rights in these proceedings, this fact cannot diminish AVT's ownership interest. It would be absurd to suggest that, by filing its *Proof*

---

[4] It should be noted the Court expressly preserved AVT's right to challenge that "the AVT Collateral is in fact property owned by AVT that was leased to the Debtor" in its *Order: (A) Approving Debtor's Disclosure Statement on a Final Bases; and (B) Confirming Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [Dkt. 1126]. This issue is preserved and AVT cannot be estopped from asserting that it is the true owner of the Leased Equipment.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 6

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

*of Claim*, AVT somehow waived its rights as the true owner of the Leased Equipment. AVT's ownership interest is superior to its security interest, and far superior to the Debtor's former leasehold interest (the only interest that was ever property of the estate). It would be fundamentally unfair, and an unreasonably narrow application of § 506(c), to isolate AVT's security interest while ignoring its ownership interest altogether. The surcharge power is only available against the holders of allowed secured claims, but AVT holds more than that and should not be treated as if it were a secured creditor in the traditional sense. The Debtor agreed as much in its Procedural Motion: "Debtor assumes that AVT is not a secured creditor for the purpose of this Motion." (Procedural Mot. at n.3.) Surcharge is unavailable against the Leased Equipment.

### ii. The Debtor Cannot Recover Against the Leased Equipment.

Based on the text of § 506(c), the ability to surcharge is a component of a greater scheme. For a debtor to recover any costs from preserving or disposing of property, that debtor must be empowered to preserve or dispose of property in the first instance. Nothing in § 506(c) suggests that it is a separate grant of authority to act upon property. Rather, § 506(c) impliedly relies on § 363 ("Use, sale, or lease of property") and § 554 ("Abandonment of property of the estate").

A debtor's power to preserve its property is found at § 363. Authority to dispose of property is available under §§ 363 and 554. Specifically, § 363(b) provides that a debtor "may use, sell, or lease" property of the estate "other than in the ordinary course of business" after notice and a hearing. That subsection's counterpart, § 363(c) sets forth that certain debtors (like the Debtor in the instant case) "may enter into transactions, including the sale or lease of property of the estate" and "may use property of the estate" in the ordinary course of business without a hearing. Meanwhile, §554(a) provides that "property of the estate that is burdensome to the estate or that is of inconsequential value" may be abandoned after notice and a hearing. Each of the foregoing

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 7

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

subsections applies only to property of the estate. No provision of the Bankruptcy Code authorizes a debtor to use, sell, lease, or abandon (*i.e.*, preserve or dispose of) property that is not property of the estate.

Because a debtor can only preserve or dispose of property of the estate, a debtor can only surcharge against property of the estate. The text of § 506(c) provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, **such property** to the extent of any benefit the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

(Emphasis added).

Plainly, "such property" relates to the property that the party seeking the surcharge may recover from. Accordingly, for a debtor to be able to recover against property, that debtor must be able preserve or dispose of such property. A debtor can only preserve or dispose of property of the estate. So, in turn, a debtor can only surcharge against property of the estate that debtor has acted to preserve or otherwise dispose of.

Congress's use of the term "property" to signal "property of the estate" at §506(c) is not unique. At § 363(d), the Bankruptcy Code provides limited authority to use, sell, or lease "property" in certain cases where the debtor is a corporation or a trust. As is the case at § 506(c), it would be absurd to interpret that subsection as a grant of extraordinary authority to use, sell, or lease property *that does not belong to the debtor*. Instead, § 363(d) makes reference to § 363(b) and § 363(c), both of which—as have been discussed—only authorize a debtor to use, sell, or lease *property of the estate*. By clear implication, the power under § 363(d), like the surcharge power, is only available against property of the estate.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 8

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

The Bankruptcy Code distinguishes between the different types of interests a debtor may have in property. *See* 11 U.S.C. § 541(a). This Court must do the same. The Master Lease makes clear that, before the Sale, the Debtor had only a leasehold interest in the Leased Equipment. Furthermore, under the explicit terms of the Master Lease, the Debtor was obligated, at its sole expense, to "promptly pay and/or perform all costs, expenses and obligations incurred or necessary in connection with the use, maintenance, servicing, repair, operation or possession" of the Leased Equipment, and keep the Leased Equipment "in accordance with the highest industry standards and in good repair." (Exh. A, 2 § 10.)

Allowing the Debtor to apply § 506(c) to recover its costs from selling property it never owned against the divested owner of such property goes too far. Instead, by allowing the Debtor to dispose of property that was not property of the estate, this Court removed the Debtor—at its request—from the scheme within which § 506(c) exists, rendering surcharge unavailable.

In that same vein, allowing the Debtor to flip the Master Lease on its head and hold AVT responsible for storage and maintenance costs the Debtor agreed to bear at its sole expense would be an unreasonable extension of the surcharge power. Section 506(c) is not a mechanism to rewrite contracts. This Court should rule that § 506(c) is unavailable against the proceeds of the Leased Equipment owned by AVT.

### B. Even if Surcharge Is Somehow Available, the Surcharge Motion Fails.

Assuming *arguendo* that the Court determines that the Debtor may seek to recover against the Leased Equipment, the Debtor fails to carry its burden under § 506(c). The costs the Debtor is seeking to surcharge against AVT were unnecessary, are unreasonable, and far exceed any benefit that they can be said to have created for AVT. Accordingly, the Debtor fails at each step of the analysis and the Surcharge Motion must be denied.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 9

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

### i. The Costs the Debtor Is Seeking Were Unnecessary.

The Debtor's financial advisor sorted the costs the Debtor is seeking to surcharge into two categories: "Sale Costs" and "Storage Costs." (*See* Dkt. 927, 3-4.) Neither was necessary with respect to the Leased Equipment.

"The threshold inquiry [in assessing the necessity of a debtor's expenses] is whether the services for which a surcharge is sought were necessary *to the secured creditor*." *Compton Impressions, Ltd. v. Queen City Bank N.A. (In re Compton Impressions)*, 217 F.3d 1256, 1261 (9th Cir. 2000) (emphasis added). None of the Sales Costs and few, if any, of the Storage Costs were necessary to AVT.

As an initial matter, AVT did not need to spend a penny to locate the Claims Purchaser. AVT could have disposed of the Leased Equipment on its own (for more money) without incurring any marketing or auction expenses. Similarly, if the Debtor had abandoned AVT's property at the outset (when AVT's counsel declined to stipulate to Debtor's counsel's first proposal for AVT's DCMs to be included in the sale), the Debtor would not have incurred any expenses negotiating with and litigating against AVT in these proceedings.

Any legal expenses that AVT would have incurred effectuating the sale to the Claims Purchaser or preparing a motion for relief from the automatic stay to be able to recover and transfer the Leased Equipment would pale in comparison to relief sought in the Surcharge Motion. As it stands, AVT is being asked to pay a share of the expenses arising from a sale it neither wanted, needed, nor consented to. In no way were the Sale Costs necessary with respect to AVT.

The Storage Costs were similarly unnecessary. At the outset, the Debtor became responsible for paying the costs to store and maintain the Leased Equipment when it entered the

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 10

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

Master Lease. The Court cannot allow the Debtor to rewrite the Master Lease to pass those costs onto AVT now.

Even if the Court finds that AVT is subject to some amount of surcharge, the Debtor must show that the work performed specifically benefitted AVT. However, the Debtor explained in its Procedural Motion that AVT was not initially included in the Sale given its status as a lessor. (Procedural Mot. at n.3.) Accordingly, it is impossible for the Debtor to show that any of the work done prior to the Auction somehow was for the benefit of AVT when it admitted that AVT was not part of the deal. The Debtor's professionals did no work whatsoever with regard to the AVT property specifically until after the Auction had concluded. As such, any surcharge recovery must be limited to the actual, post-Auction work that was performed specifically for AVT's benefit.

        **ii.**     **The Costs the Debtor Is Seeking Are Unreasonable.**

The Debtor is seeking to recover an extraordinary amount of professional fees from an underwhelming sale. The portion of AVT's proceeds that the Debtor is seeking to surcharge is patently unreasonable. In the context of § 506(c), the Ninth Circuit measures reasonableness "against the benefits obtained . . . and the amount the secured creditor would have necessarily incurred through foreclosure and disposal of the property." *Compton Impressions*, 217 F.3d at 1260. Under this backdrop, neither the Sale Costs nor the Storage Costs are reasonable.

Given that AVT could have disposed of its Leased Equipment without incurring any significant marketing, auction, or closing costs, it is unreasonable to think that the considerable surcharge amounts are appropriate. In fact, the existence of the Claims Purchaser's offer suggests that AVT was actually harmed by the Sale. Given the circumstances present here, the costs the Debtor is seeking against AVT are plainly unreasonable.

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 11

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

       **iii.    AVT Received No Benefit.**

The Ninth Circuit has been extremely clear: in order to be recoverable under § 506(c), costs must have been "incurred primarily for the benefit" of the party being surcharged. *Compton Impressions*, 217 F.3d at 1260 (citing *In re Cascade Hydraulics & Utility Serv., Inc.*, 815 F.2d 546, 548 (9th Cir. 1987)). Further, the party seeking the surcharge must show that the alleged benefit was both "concrete" and "quantifiable," *Debbie Reynolds*, 255 F.3d at 1068, and any potential surcharge is unavoidably limited "to the extent of [such] benefit." 11 U.S.C. § 506(c). For each of these reasons, the Debtor cannot recover against AVT.

The Debtor was the primary beneficiary of the sale of AVT's DCMs. This much is clear from the fact that the Debtor (1) solicited bids for AVT's Leased Equipment without first obtaining AVT's consent to sell the Leased Equipment, and then (2) refused to abandon the Leased Equipment after AVT declined to consent to the Sale. The asset purchase agreement between the Debtor and Heller provides that, "[i]f Debtor does not obtain such written consent from AVT . . . to have the AVT DCMs included in the Purchased Assets prior to the hearing to approve the Sale Order, the AVT DCMs shall not be included in the purchased assets." (Dkt. 730, Exh. A § 1.9.) The evening before the hearing on the Sale Motion, AVT's counsel expressly informed the Debtor that "AVT does not consent to the sale of its BTMs as part of the Purchased Assets." (Mertz Decl. ¶ 15.) This was to no avail.

The Debtor cannot recover any Sale Costs or Storage Costs because surcharge is limited "to the extent of any benefit." 11 U.S.C. § 506(c). AVT received no benefit from the Sale. Instead, AVT was divested of its property and denied the opportunity to sell its DCMs to the highest bidder: the Claims Purchaser. The difference between the Claims Purchaser's highest offer and the Debtor's is at least $41,100. (*See* Mertz Decl. ¶¶ 14 and 20.) As a result, the deal forced upon AVT

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 12

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

resulted in lower gross proceeds. Granting surcharge on the basis that AVT received some benefit is wholly contrary to the facts underlying AVT's position in this matter.

        iv.    **AVT Did Not Consent to the Sale, the Sale Costs, or the Storage Costs.**

To bootstrap its argument, the Debtor argues that, even if the expenses it is seeking to surcharge were not reasonable, necessary expenses that directly benefited AVT, Enigma, and Genesis (they were not), surcharge is still appropriate because "[AVT, Enigma, and Genesis] unequivocally consented to the Debtor incurring the Expenses relating to the sale process." (Surcharge Mot., 19.) With respect to at least AVT, this is fundamentally untrue.

AVT played no role in the sale process. Indeed, the Debtor did not contact AVT until after the Auction. Clearly, AVT did not "direct[] the Debtor to engage in . . . the sale process." (*Id.*) Similarly, AVT never "consented in writing," and was never in a position to accept "the DIP Milestones, the Consultation Party position, or [its] agreement to sell Collateraion (sic)." (*Id.*) Indeed, AVT never "agreed that the Debtor could pursue overbid." (*Id.*) Each of these statements is disingenuous as to AVT. And the Debtor's confusion on these issues further underscores that the Court should deny the Surcharge Motion as to AVT.

Not only is AVT not a secured creditor in the traditional sense, the Debtor did not treat AVT as if it were—as it did Enigma and Genesis. Indeed, the Procedural Motion noted that AVT was originally carved out of the Sale and sale process due to its status as a lessor. (Procedural Mot. at n.3.) Nevertheless, AVT is being asked to pay a share of the Debtor's expense that is proportional to the shares sought against Enigma and Genesis. However, AVT's role in this case was nothing like the role Enigma and Genesis played. Both are secured creditors in the traditional sense who were given a seat at the Debtor's table and invited to partake in and oversee the

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 13

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

management of this case. AVT is not and was not. Accordingly, the Court should deny the Surcharge Motion as to AVT.

IV. **CONCLUSION**

WHEREFORE, AVT respectfully requests that this Court enter an order (1) denying the Surcharge Motion insofar as it seeks to recover against the proceeds from the sale against AVT or the Leased Equipment, and (2) granting AVT all other and further relief that the Court deems just, equitable, and appropriate under the circumstances.

*[Signature page follows.]*

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 14

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500

Dated: September 1, 2023.

**MICHAEL BEST & FRIEDRICH LLP**

By: /s/ *Anne T. Freeland*
Anne T. Freeland, Esq.
Nevada Bar No. 10777
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500
Fax:    801.931.2500
Email: atfreeland@michaelbest.com

*-and-*

Justin M. Mertz, Esq.
Wisconsin Bar No. 1056938
(Admitted *pro hac vice* July 20, 2023)
**MICHAEL BEST & FRIEDRICH LLP**
790 North Water Street, Suite 2500
Milwaukee, WI 53202
Phone: 414.225.4972
Fax:    414.956.6565
Email: jmmertz@michaelbest.com

*-with local counsel-*

John T. Wendland, Esq.
Nevada Bar No. 7207
**W&D LAW**
861 Coronado Center Drive, Suite 231
Henderson, NV 89052
Phone: 702.314.1905
Fax:    702.314.1909
Email: jwendland@wdlaw.com

*Counsel for AVT Nevada, L.P.*

AVT'S OBJ. TO MOT. TO SURCHARGE

PAGE 15

MICHAEL BEST & FRIEDRICH LLP
2750 East Cottonwood Parkway, Suite 560
Cottonwood Heights, UT 84121
Phone: 801.833.0500 Fax: 801.931.2500