Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC. d/b/a COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-mkn<br>Chapter 11<br><br>**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO QUASH SUBPOENA FOR DOCUMENT PRODUCTION AND RULE 2004 EXAMINATION**<br><br>**Hearing Date: TBD**<br>**Hearing Time: TBD** |

The Official Committee of Unsecured Creditors in the above-captioned cases (the "Committee"), by and through its undersigned counsel, hereby moves to quash the *Subpoena for Documentation Production and Rule 2004 Examination* served on the Committee by Christopher McAlary ("McAlary") on August 25, 2023. The Committee so moves pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and rules 2004 and 7026 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this motion, the Committee relies on the *Declaration of Robert J. Gayda in Support of Motion of the Official Committee of Unsecured Creditors to Quash Subpoena for Document Production and Rule 2004 Examination*, dated September 1, 2023 ("Gayda Decl."), filed herewith, and respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Subpoena represents an improper use of Rule 2004 seeking some leverage over the Committee in the ongoing disputes with McAlary.  It is no secret that McAlary wants to purchase the litigation between the Debtor and Cole Kepro International, LLC ("Cole Kepro").  The Subpoena focuses solely on the estate's negotiations with respect to that litigation and is a transparent attempt to get an inappropriate "jump" on objecting to any prospective settlement, with the added bonus of forcing the Debtor and the Committee to expend further estate resources in unnecessary motion practice.

2.  The Court should reject the latest salvo in McAlary's legal war of attrition.  *First*, McAlary served the Subpoena pursuant to Bankruptcy Rule 2004 ("Rule 2004") but cannot satisfy his burden of demonstrating "good cause" for the Subpoena as is required under the rule.  This is because the Subpoena is not necessary to protect any claim or legal interest of McAlary.  Indeed, the Debtor has not yet settled or sold its litigation with Cole Kepro.  If and when that happens, McAlary—to the extent he has standing—will have an opportunity to object and serve discovery under Bankruptcy Rule 7026.  Through his Rule 2004 discovery, however, McAlary seeks to circumvent appropriate discovery procedures (which notably include certain safeguards not afforded under Rule 2004) and obtain premature (and, as set forth below, largely privileged) discovery at a juncture when it strategically benefits him.

3.  *Second*, the Subpoena is improper because it seeks information and documents protected by the attorney-client privilege, work product doctrine, and common interest privilege, including the Committee's privileged analyses of offers to buy and/or settle the litigation with Cole Kepro, and common interest communications with the Debtor regarding same.

4.  *Third*, although unclear, to the extent the Subpoena seeks information concerning any assertion that Cole Kepro intends to file for bankruptcy (which was included in McAlary's motion

2

for Rule 2004 discovery but omitted from the Subpoena), such discovery is improper because it concerns topics that are outside the scope of a Rule 2004 examination, which is limited to the administration of the Debtor's estate.

5. For these reasons, the Court should quash the Subpoena and grant such other and further relief as may be just and proper.

## JURISDICTION

6. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. § 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**I.  Procedural History**

7. On February 7, 2023 (the "Petition Date"), Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code. Nobody other than McAlary has requested the appointment of a trustee and no request for the appointment of an examiner has been made. The Debtor remains a debtor-in-possession, pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8. On February 17, 2023, the Office of the United States Trustee appointed [ECF No. 131] the Official Committee of Unsecured Creditors (the "Committee"), as amended [ECF No. 177] on February 28, 2023, and [ECF No. 1066] on August 10, 2023.

9. The factual background relating to the Debtor's commencement of the Bankruptcy Case is set forth in detail in the *Omnibus Declaration of Christopher Andrew McAlary in Support of Emergency First Day Motions* [ECF No. 19] (the "Omnibus Declaration") and is incorporated for all purposes herein by this reference.

10. On August 3, 2023, the Debtor and the Committee filed the *Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions* [ECF No. 1009], which consented to the Committee exercising derivative standing to bring certain preference actions and colorable claims against McAlary.

11. On August 9, 2023, the Debtor and the Committee filed the *Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain*

3

*Actions* [ECF No. 1050], which consented to the Committee exercising derivative standing to prosecute, settle, and resolve certain prepetition actions, including the CKI Litigation (defined below).

12. On August 24, 2023, over the objection of McAlary, the Court granted the Committee derivative standing to initiate and prosecute claims against McAlary [ECF No. 1119] (the "Derivative Standing Order").

13. On August 25, 2023, again over the objection of McAlary, the Court entered the *Order (A) Approving Debtor's Disclosure Statement on a Final Basis; and (B) Confirming Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 1126] (the "Confirmation Order").

## II. The CKI Litigation

14. Prior to the Petition Date: (i) the Debtor initiated a lawsuit against Cole Kepro captioned *Cash Cloud Inc. v. Cole Kepro International, LLC*, Case No. A-22-854226-B, and (ii) Cole Kepro initiated a lawsuit against the Debtor captioned *Cole Kepro International, LLC v. Coin Cloud, LLC*, Case No. A-22-860298-B (collectively, the "CKI Litigation"). The CKI Litigation was consolidated under Case No. 22-854226-B by the Eighth Judicial District Court in Clark County, Nevada and was stayed on the Petition Date. On April 25, 2023, the Clark County, Nevada District Court entered a Civil Order to Statistically Close Case, which statistically closed the CKI Litigation.

15. The CKI Litigation concerns claims related to the purchase of digital currency machines ("DCMs") by the Debtor from Cole Kepro. Cole Kepro asserted that the Debtor owes it approximately $9.5 million for DCMs that were ordered by, manufactured for, inspected and approved by, and delivered to the Debtor prior to the Petition Date. In an initial bankruptcy filing, the Debtor disputed these allegations. The Debtor asserted that certain DCMs that it purchased prior to the Petition Date were defective and claims that it has incurred substantial, but unquantified damages due to the alleged defect. Cole Kepro disputed these allegations.

16. The Debtor and the Committee are currently considering the appropriate path forward with respect to resolving the CKI Litigation through either a settlement or a sale. As of the date of this Motion, no decision has been made, although the Debtor and the Committee expect to file

4

documentation memorializing a decision in the near term.

**III.     The 2004 Order and Subpoena**

17.     On August 22, 2023, McAlary filed an *ex parte* motion for an order directing the examination of the Committee under Bankruptcy Rule 2004 and L.R. 2004.  [ECF No. 1111]. McAlary's motion sought the examination of the Committee on the following topics: "(i) the Committee's valuation of estate claims against [Cole Kepro]; (2) the Committee's investigation and analysis into Cole Kepro's assertions that if the Cole Kepro Claims are pursued Cole Kepro will file for bankruptcy; (3) the Committee's analysis and consideration of the offers of Movant to purchase the Cole Kepro Claims; (4) the Committee's communications with Cash Cloud, Inc. (the "Debtor") regarding Movant's offers to purchase the Cole Kepro Claims; (5) any communications between the Committee and Cole Kepro regarding any offer purchase or settle the Cole Kepro Claims by Cole Kepro; (6) the Committee's analysis and consideration of any offers by Cole Kepro to purchase or settle the Cole Kepro Claims; and (7) any communications between the Committee and the Debtor regarding any offer made by Cole Kepro to purchase or settle the Cole Kepro Claims."  *See* ECF No. 1111 at 1-2.

18.     On August 25, 2023, the Court entered an order granting McAlary's motion.  [ECF No. 1124].  That same day, McAlary served the Subpoena on the Committee.  *See* Gayda Decl., Ex. 1.

**RELIEF REQUESTED**

19.     The Committee seeks entry of an order, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rules 2004 and 7026, quashing the Subpoena.

**STANDARD OF REVIEW**

20.     Rule 2004 is a discovery device which permits any party in interest in a bankruptcy proceeding to move for a court order to examine any entity so long as the examination relates to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." Fed. R. Bankr. P. 2004(b).  The scope of inquiry permitted under a Rule 2004 examination is generally broad; however, it is not limitless.  *See In re W & S Invs.*, No. 91-35830, 1993 U.S. App.

LEXIS 2231, at *6 (9th Cir. Jan. 28, 1993).  Indeed, a Rule 2004 examination "cannot be used for purposes of abuse or harassment and it cannot stray into matters which are not relevant to the basic inquiry." *See id*. (internal quotation marks and citations omitted).  Moreover, Rule 2004 may not be used to sidestep formal discovery procedures, or obtain information for unrelated proceedings or cases.  *See In re Snyder*, No. 94-60572, 1995 U.S. App. LEXIS 43005, at *3-4 (5th Cir. Apr. 12, 1995).

21.    Crucially, "[r]elevance alone is not sufficient to justify a Rule 2004 request." *In re SunEdison, Inc.*, 572 B.R. 482, 489 (Bankr. S.D.N.Y. 2017).  Rather, once a party to be examined moves to quash a Rule 2004 subpoena, "the examiner must show that there is good cause for taking the requested discovery," *In re W & S Invs.*, 1993 U.S. App. LEXIS 2231, at *6, "such as the proposed examination is necessary to establish the claim of the party seeking the examination, or . . . denial of such request would cause the examiner undue hardship or injustice," *In re SunEdison*, 572 B.R. at 489 (internal quotation marks and citations omitted).

**ARGUMENT**

**I.    McAlary Cannot Demonstrate "Good Cause" for the Subpoena, which is Premature and Patently Improper**

22.    The Subpoena should be quashed because McAlary cannot meet his burden to demonstrate "good cause" as to why he requires access to the requested information.  *See In re W & S Invs.*, 1993 U.S. App. LEXIS 2231, at *6.  Indeed, it is apparent from the face of the Subpoena—which relates entirely to offers made to purchase and/or settle the CKI Litigation—that McAlary's sole aim is to sidestep formal discovery rules and grant him an unfair strategic advantage in his bid to purchase the CKI Litigation before any claim has actually arisen.  In other words, the Subpoena is premature and must be quashed.

23.    As noted above, to establish "good cause," a purported Rule 2004 examiner must demonstrate that the examination is "necessary to establish [his] claim . . . or . . . denial of such request would cause the examiner undue hardship or injustice." *See In re SunEdison*, 572 B.R. at 489.  At present, there is no agreement to sell or settle the CKI Litigation.  Should the Debtor reach a final agreement with Cole Kepro to settle the CKI Litigation (which again, has not occurred), the

6

Debtor will be required to file a motion under Bankruptcy Rule 9019 for approval of that settlement. At that time, anyone with standing will have an opportunity to object to such settlement and can serve discovery under Bankruptcy Rule 7026, which governs in contested matters. McAlary should not be allowed to circumvent this customary process, which also affords parties certain procedural safeguards not present under Rule 2004, including "the right to have counsel present, the right to cross-examine witnesses, the greater rights to object to immaterial or improper questions, and the right to have issues defined beforehand." *See In re Metal Recovery Sols., Inc.*, No. 22-1081, 2023 Bankr. LEXIS 119, at *25 (B.A.P. 9th Cir. Jan. 17, 2023) (expressing "concern . . . that parties could use Rule 2004 examinations as a tactic to circumvent [these] safeguards"); *see also In re SunEdison*, 572 B.R. at 490 (noting that once a "contested matter has been commenced, discovery is made pursuant to the Fed. R. Bankr. P. 7026 et seq.," rather than under Rule 2004); *In re Snyder*, 1995 U.S. App. LEXIS 43005, at *4 (affirming bankruptcy and district court's denial of a Rule 2004 request based on the movant's "motive" to avoid stricter discovery rules).

24.    Further, quashing the Subpoena would not cause McAlary any "undue hardship or injustice." *See In re SunEdison*, 572 B.R. at 489. There is nothing preventing McAlary from valuing the CKI Litigation himself, submitting an appropriate bid, and, if that bid is denied, conducting his own analysis to determine whether he has a good faith basis to allege a claim against the Debtor or to protect some other interest that he has not articulated. And again, *if* the Debtor reaches a settlement with Cole Kepro (which has not yet happened) and *if* McAlary believes that such settlement was not in the best interest of the Debtor's estate, to the extent he has standing to do so, he can object to that settlement at the appropriate time.

25.    Simply put, it appears that McAlary's sole purpose in serving the Subpoena at this time, before the Debtor has settled or sold the CKI Litigation and a contested matter has arisen, is to gain a tactical advantage in negotiations where he is an interested party. This is not "good cause." To the contrary, this is a strategic ploy to pressure the Debtor and the Committee to either reveal information that would help McAlary in crafting his bid for the CKI Litigation, or otherwise accept his bid to avoid litigating the issues discussed herein. It is also being used as a bargaining chip in settlement negotiations regarding the colorable claims the Committee obtained derivative stranding

7

to bring against McAlary. This is a completely inappropriate use of Rule 2004, and further underscores why the Subpoena should be quashed. *See, e.g.*, *In re Snyder*, 1995 U.S. App. LEXISW 43005, at *3 (noting that Rule 2004 "[e]xaminations cannot be used to harass or oppress the party"); *In re Cambridge Analytica LLC*, 600 B.R. 750, 752 (Bankr. S.D.N.Y. 2019) ("Courts have imposed limits on the use of Rule 2004 examinations where the purpose of the examination is to abuse or harass.").

II.  **The Subpoena is an Improper Attempt to Seek Privileged Information**

26. The Subpoena should be quashed for the separate reason that it is a blatant attempt to seek privileged attorney analysis and work product, as well as communications between the Debtor and the Committee that are protected by the common interest privilege.

27. Under Federal Rule of Civil Procedure 45(d)(3)(iii) (incorporated by Bankruptcy Rule 9016, on timely motion, a court "*must*" quash or modify a subpoena when that subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies." Here, McAlary seeks to examine the Committee on various privileged matters, including most egregiously "[a]ll Documents evidencing the Committee's valuation of the Cole Kepro Claims," "the Committee's valuation of estate claims against Cole Kepro," "the Committee's analysis and consideration of the offers of [McAlary] to purchase the Cole Kepro Claims," and "the Committee's analysis and consideration of the offers of Cole Kepro to purchase, settle or otherwise compromise the Cole Kepro Claims." *See* Gayda Decl., Ex. 1, Requests for Production No. 1, Topics for Examination Nos. 2, 3, and 6. Such analyses are plainly privileged as either attorney-client communications or attorney work product. *See In re Fin. Corp. of Am.*, 119 B. R. 728, 738 (Bankr. C.D. Cal. 1990) (noting Fed. R. Civ. P. 26(b)(3) applies to motions under Rule 2004 through Bankruptcy Rule 9014, and is not limited to discovery where litigation has been commenced).

28. Likewise, McAlary improperly seeks to examine the Committee regarding communications that are subject to a common-interest privilege between the Committee and the Debtor, including "the Committee's communications with [the Debtor] regarding [McAlary's] offers to purchase the Cole Kepro Claims" and "any communications between the Committee and the Debtor regarding any offer made by Cole Kepro to purchase or settle the Cole Kepro Claims."

8

*See, e.g.*, *In re Superior Nat'l Ins. GR*, 518 B.R. 562, 577 (Bankr. C.D. Cal. 2014) (collecting cases and observing that "a plethora of federal courts have found a common interest between debtors and creditors' committees (and other participants in bankruptcy)" because "the Committee's role requires that debtor be able to share information without waiving privilege and that the Debtor and the Committee share the common obligation of maximizing the estate"); *see also In re Kaiser Steel Corp.*, 84 B.R. 202, 205 (Bankr. D. Colo. 1988) (recognizing common interest between debtor and creditors committee and noting that "the Committee and the Debtor have common interests. Each has an obligation to seek to maximize the assets in the Debtor's estate"). Here, the Committee and the Debtor plainly share a common interest in evaluating bids to purchase or settle the CKI Litigation in the best interest of the estate and its residual stakeholders, and McAlary should not be permitted to obtain discovery on such privileged communications.

### III.     McAlary Seeks Improper Details about Third-Party Finances

29.     Finally, to the extent that McAlary intends to pursue discovery into "the Committee's investigation and analysis into Cole Kepro's assertions that if the Cole Kepro Claims are pursued Cole Kepro will file for bankruptcy" (which was included in his *ex parte* motion but omitted from the Subpoena, *compare* ECF No. 1111 at 1 *with* Gayda Decl., Ex. 1), such discovery is improper because it concerns topics that are outside the scope of a Rule 2004 examination, which is facially limited to "acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." *See In re Board of Directors of Hopewell Intern. Ins. Ltd.*, 258 B.R. 580, 586 (Bankr. S.D.N.Y. 2001) (Rule 2004 "is generally used for examination of the debtor regarding the debtor's assets and liabilities, not creditors"); 9 Collier on Bankruptcy, ¶2004.01[7] (16th ed., LexisNexis) (noting that "[g]rounds to quash include . . . matters unrelated to the basic inquiry of the examination" and that "[e]xamination should be limited to matters involving the debtor.").

### NOTICE

30.     Notice of this Motion has been provided to (i) counsel to the Debtor; (ii) counsel to McAlary; (iii) the United States Trustee; and (iv) those parties who have requested service pursuant to Bankruptcy Rule 2002. In light of the nature of the relief requested, the Committee submits no

other or further notice need be provided.

## NO PRIOR REQUEST

31. No prior request for the relief requested in this Motion has been made to this Court or any other court.

WHEREFORE, the Committee respectfully requests the Court enter an order (a) granting the Motion; and (b) granting such other and further relief as the Court deems appropriate.

Dated this 1st day of September 2023.

McDONALD CARANO LLP

By: /s/ Ryan J. Works
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee of Unsecured Creditors*