**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Fax: (725) 386-4979
Email:  ccarlyon@carlyoncica.com
            dcica@carlyoncica.com

*Counsel for Chris McAlary*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| In re:<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>                Debtor. | Case No.: Case No. BK-S-23-10423-MKN<br><br>Chapter 11<br><br>**DECLARATION OF CHRISTOPHER MCALARY IN SUPPORT OF REPLY IN SUPPORT OF MOTION TO CONVERT CASE TO CHAPTER 7**<br><br>Hearing Date:  September 13, 2023<br>Hearing Time: 9:30 a.m. |
|---|---|

I, CHRISTOPHER MCALARY, hereby declare as follows:

1. I am the former Chief Executive Officer of Cash Cloud, Inc. dba Coin Cloud (the "Debtor" or "Cash Cloud"), debtor and debtor in possession in the above captioned chapter 11 case (the "Chapter 11 Case").

2. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. I make this Declaration in support of the *Reply in Support of Motion to Convert Case to Chapter 7* (the "Reply")

4. On several occasions I requested that Debtor's counsel object to Cole Kepro's conflicts as a member of the Committee but to date no such objection ever has been filed.

5. On August 21, I made a further offer to the estate to purchase the Cole Kepro litigation for $1,000,000 as well as the Bitcoin and BitAccess litigation for an additional $200,000, which offer has been refused by the Debtor and the Committee. A true and correct copy of the Asset Purchase Agreement which my counsel transmitted to Brett Axelrod is attached hereto as Exhibit 1.

6. Cole Kepro has threatened that any judgement rendered against it by the Debtor will result in a filing of bankruptcy.

7. Optconnect, another member of the Committee, and upon information and belief, the other co-chair, is the entity that provided the data connection to the Kiosks, and which shut down the service following the auction due to a dispute with Province over payment of its administrative claim.

8. Post-petition control of the Debtor effectively rested with the Debtor's engaged professionals since I relied entirely on such professionals' (including counsel, financial advisors, and independent director) advice and strategy in connection with the company's restructuring and by necessity every material action that was taken was requested by or approved by professionals.

9. My resignation was expressly at the behest of the Debtor's professional advisors immediately following the OpConnect termination of the internet to the Kiosks – turning the Kiosks off and making the business worthless. I believed from discussions with those advisors that my resignation was required by the Committee.

10. The delay of payment, which dated to December of 2022 and was entirely unrelated to the sale process, was due to Brazil's foreign exchange laws and the difficulty of sending out large amounts of US dollars combined with the fact that the $500,000 receivable was remitted to the Debtor by its subsidiary in Brazil on June 12th.

11. I only recall one discussion with the Debtor where the receivable was raised and that discussion was also a discussion of my setoff rights for the $1,200,000 loan which is owed to me by the Debtor.

12. I was not allowed to speak to any bidder prior to the stalking horse term sheets being

delivered to the Debtor. My belief following discussions was that this was at the direction of the Committee. I can now presume that this was because the Committee, headed by Cole Kepro, did not want a plan sponsor they wanted a liquidation.

13. I believe that the lawsuit against Cole Kepro is one of the most valuable assets of the estate.

14. Despite my repeated requests to Debtor's counsel, no Motion to Lift Stay was ever filed to let the litigation against Cole Kepro proceed in Clark County State District Court

15. Daniel Moses and Tanner James were selected and recommended by Province and counsel, and their lack of experience was not conveyed to me.

16. I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED this 6th day of September 2023.

/s/ Chris McAlary
_____
CHRIS MCALARY

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd. On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE: Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL: By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER: By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE: By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.

>  /s/ Cristina Robertson
>  An employee of Carlyon Cica Chtd.

**EXHIBIT 1**

**EXHIBIT 1**

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT dated as of August ___, 2023, (the 'Agreement") is entered into by and between **CASH CLOUD INC,** Nevada Bankruptcy Case No. 23-10423-mkn ("**Bankruptcy Estate**" or "**Seller**"), and **CC BR HOLDCO LLC**, a Nevada limited liability company, or its designee ("**Buyer**"). Each may hereinafter be referred to as a "**Party**." or collectively as the "**Parties**."

## RECITALS

WHEREAS, on February 7, 2023, Cash Cloud Inc. **("Debtor" or "Seller")** filed a voluntary chapter 11 bankruptcy petition in the District of Nevada, initiating bankruptcy case 23-10423-mkn **("Bankruptcy Case")**, and thereby creating the Bankruptcy Estate; and

WHEREAS the Debtor conducted an auction of substantially all of its assets on June 2, 2023, pursuant to the Bid Procedures attached as Exhibit 1 to the *Order Establishing Bidding Procedures And Related Deadlines* entered by the United States Bankruptcy Court, District of Nevada, in case no. 23-10423-MKN on April 27, 2023, as Docket No. 483 (the **"Bidding Procedures Order"**):

WHEREAS, the Debtor believes that the Bankruptcy Estate has potential claims and causes of action against various persons and entities, either under the Bankruptcy Code or under applicable non-bankruptcy law;

WHEREAS at the auction an affiliate of Buyer submitted a bid for the Debtor's claims against Cole Kepro International, LLC, ("Cole Kepro") BitAccess, Inc. and Lux Vending LLC, dba Bitcoin Depot (**"Ongoing Litigation"**);

WHEREAS such affiliate was advised at the auction that even though all claims were marketed as part of the auction, the Official Unsecured Creditors Committee, of which Cole Kepro is the Chair, declined to approve a sale of such Ongoing Litigation;

WHEREAS subsequent thereto the Buyer submitted a bid for the Ongoing Litigation which was accepted by the Debtor;

WHEREAS, Buyer desires to purchase the such claims, upon the terms and subject to the conditions set forth herein;

**NOW,** THEREFORE, the Parties agree as follows:

1. **Contingent on Bankruptcy Court Approval.**

    1.1.  *Court Approval.* This Agreement is contingent upon approval of the Bankruptcy Court. The Debtor shall file a motion under Section 363(b) of the Bankruptcy Code to obtain such approval ("**Sale Approval Motion**").  If the Court does not approve this Agreement, then the sale and all obligations hereunder shall be null and void.

2. **Purchase and Sale.**

    2.1. *Purchase and Sale.* Upon the terms and subject to the conditions of this Agreement, Buyer agrees to purchase from the Seller, and Seller agrees to sell, convey, transfer, assign and deliver to Buyer, all of Seller's right, title and interest in the following (collectively, the **"Purchased Assets"):**

    - *Any and all claims of the Debtor or the Bankruptcy Estate against Cole Kepro International, LLC or any of its affiliates or principals ("Cole Kepro") , including, without limitation,  that certain litigation set forth as Cash Cloud v. Cole Kepro International, LLC.,* Case No. A-22-854226-B, pending in the Eighth Judicial District Court in Clark County, Nevada ("collectively **Cole Kepro Claims**");
    - *Any and all claims of the Debtor or the Bankruptcy Estate  against Bitaccess Inc. or any of its affiliates or principals ("Bitaccess"), including, without limitation, that certain litigation set forth as Cash Cloud v. Bitaccess Inc.*, which was formerly filed as Case No. CV-22-00089887-0000 in the Superior Court of Justice in Ottawa, Ontario, Canada (collectively  "**Bitaccess Claims**"); but which now is proceeding in arbitration in Ontario, Canada;
    - *Any and all claims of the Debtor or the Bankruptcy Estate  against Lux Vending, LLC  or any of its affiliates or principals ("Bitcoin Depot"), including, without limitation,  that certain litigation set forth as Cash Cloud v. Lux Vending, LLC dba Bitcoin Depot* adversary proceeding number 23-0101-mkn, in the bankruptcy court ("**Bitcoin Claims**" and together with Bitaccess Claims the "**Software Claims**", and together with the Cole Kepro Claims, the "**Purchased Claims")**
    - All insurance policies, contracts, reports, documents and copies of all Seller's records, in native form, related to the events, claims or damages in connection with any of the Purchased Claims, or relevant to discovery propounded in connection

therewith (collectively the "**Documents and Records**").

"Purchased Claims" includes, without limitation, any and all claims of the Bankruptcy Estate related to the events described in the Software Claims or the Cole Kepro Claims, and any others subsequently discovered, which have been asserted or could be asserted in the future against the current defendants or any other parties which might be liable to the Estate for such claims.

2.2. *Purchase Price; Payment Terms*. The purchase price for the purchase of the Cole Kepro Claims is One Million Dollars ($1,000,000) and the purchase price for the purchase of the Software Claims is Two Hundred Thousand Dollars ($200,000) for a total of One Million Two Hundred Thousand Dollars ($1,200,000) (the "**Purchase Price**"). The Cash Purchase Price will be paid by wire to the Debtor within two business days following the date when an order not subject to any appeal, reversal, vacation or stay has been entered by the Bankruptcy Court approving the sale under Section 363 of the Bankruptcy Code in form and substance satisfactory to Buyer (the "**Sale Approval Order**"). Such date shall be referred to herein as the "Closing Date". Provided Buyer has been provided proof of payment made by Debtor prior to Closing, upon the Closing Date, Buyer shall reimburse Debtor for such payment in an amount not to exceed CAD$ 261,389.14 consisting of two deposits of CAD$55,694.57 to ADR Chambers and the deposit of CAD$150,000 as security for costs, all of which are in connection with the Bitaccess Claims and specifically the Canadian arbitration.

2.3. *Delivery of Documents and Records*. Seller shall preserve and make available to Buyer, on the Closing Date, and for so long after as is reasonably necessary, in a delivery method as mutually agreed upon, the Documentation and Records related to the Purchased Assets.

2.4 *Terms of Sale.* The right, title, and interest of the Bankruptcy Estate in the Purchased Assets shall be deemed to pass to Buyer upon entry of the Sale Approval Order ("**Closing**").

Upon the Closing:

(a) Buyer may proceed as claimant in any action that could be brought on account of a claim that is part of the Purchased Assets. Buyer shall proceed on such claims in its own name, as successor-in-interest to the Bankruptcy Estate and/or Debtor, whether such proceeding occurs in the Bankruptcy Court or in any other forum.

(b) Buyer has sole and absolute discretion with respect to the claims comprising the Purchased Claims. Buyer will have the exclusive right to prosecute the claims, but is under no obligation to do so. Buyer may assign, compromise, settle, release, or take any other action relating to the Purchased Claims without approval from the Bankruptcy Estate, the Debtor, or the Bankruptcy Court (except for the original approval of this Agreement).

(c) Buyer's actions in pursuit of the claims comprising the Purchased Claims are entirely independent of the Bankruptcy Estate; as such, the Bankruptcy Estate, the

Debtor, and the Debtor's counsel shall bear no responsibility or liability whatsoever to any person or entity for any action taken by Buyer in pursuit of the Purchased Claims.

(d) The administration and closing of the Bankruptcy Case shall not affect the continued prosecution of any complaint commenced by Buyer on account of the Purchased Claims, whether pending in Bankruptcy Court or another court.

**3. As Is, Where Is Sale.** THERE ARE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESSED OR IMPLIED, MADE BY SELLER WITH RESPECT TO THE PURCHASED CLAIMS, EXCEPT AS TO TITLE. BUYER ACKNOWLEDGES THAT THE PURCHASED ASSETS ARE BEING SOLD, TRANSFERRED, CONVEYED, ASSIGNED AND DELIVERED TO, AND PURCHASED AND ACCEPTED BY, BUYER ON AN "AS IS/WHERE IS" BASIS. SOME OR ALL PURCHASED CLAIMS MAY BE NON- VIABLE OR NOT COST EFFECTIVE TO PURSUE. ALL RISK IS BORNE BY BUYER.

4. **Best Efforts; Further Assurances.** Subject to the terms and conditions of this Agreement, Buyer and Seller will use their respective commercially reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate and support the transactions contemplated by this Agreement. Seller and Buyer agree to execute and deliver such other documents (such as execution of a Bill of Sale) and to take such other actions as may be commercially reasonably necessary in order to consummate the transactions contemplated by this Agreement, including to vest in Buyer all the rights, title, and interest of the Seller in and to the Purchased Claims and to reasonably assist in the prosecution and collection thereof. Seller shall agree to enter into a reasonably acceptable common interest agreement with respect to the Purchased Claims and, if requested by Buyer, shall provide any conflict waivers deemed necessary by counsel regarding the Purchased Claims as it is currently contemplated that upon the purchase hereof Debtor's current counsel, James M. Jimmerson, shall continue to represent the plaintiff as Nevada counsel.

**5. Miscellaneous.**

5.1. *Authority.* Each Party represents, warrants and covenants that the undersigned signatories for such Party have the full legal right, power and authority to bind that Party to this Agreement. Each of the Parties represent that they have received independent legal advice, or have had the opportunity to receive independent legal advice, with respect to the terms of and advisability of executing this Agreement.

5.2. *Amendments and Waivers.* No modification, waiver, or amendment of any of the terms of this Agreement shall be valid unless in writing and executed by all Parties and approved by the Bankruptcy Court. No waiver of any breach hereof or default hereunder shall be deemed a

waiver of any subsequent breach or default of the same or similar or dissimilar nature. No course of dealing or course of conduct shall be effective to amend, modify or change any provision of this Agreement.

5.3. *Successors and Assigns.* The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns including, without limitation, any subsequently appointed Trustee. After Closing, Buyer may freely transfer its rights in and to the Purchased Claims without Bankruptcy Court approval.

5.4. *Governing Law.* This Agreement shall be governed by and construed in accordance with the law of the State of Nevada.

5.5. *Jurisdiction and Attorney's Fees.* The Parties agree that any suit, action or proceeding between the Parties seeking to enforce or interpret any provision of this Agreement shall be brought exclusively in the Bankruptcy Court or, if the Bankruptcy Court no longer has jurisdiction over such action, in a court of competent jurisdiction located in Clark County, Nevada. The Parties also agree that the prevailing Party shall be entitled to an award of reasonable attorney's fees and costs in such a suit, action or proceeding, in addition to any other relief to which the prevailing Party may be entitled.

5.6. *Counterparts.* This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement shall become effective when each Party hereto shall have received a counterpart hereof signed by the other Party hereto. Receipt of a counterpart by facsimile or by e- mail transmission of a .pdf file shall suffice for purposes of the previous sentence.

5.7. *Entire Agreement.* This Agreement embodies the entire agreement and understandings by and between the Parties. This Agreement supersedes any and all prior or concurrent agreements, understandings, statements, assurances, assumptions, premises, promises, agreements, discussions or representations, oral or written, relating to the foregoing matters, including oral agreements or representations, if any. No Party has made any representations upon which the other Party has relied that are not contained in this Agreement relating to the foregoing matters. No Party is relying on an unstated assumption, premise or condition not contained in this Agreement relating to the foregoing matters.

5.8. *Severability.* This Agreement shall be enforced to the maximum extent permitted by law. In the event that any one or more of the phrases, sentences, sections, or paragraphs contained in this Agreement shall be declared invalid or unenforceable by order, decree or judgment of any court having competent jurisdiction, or shall be or become invalid or unenforceable by virtue of any applicable law, the remainder of this Agreement shall be construed as if such phrases, sentences, sections, paragraphs or sections had not been

inserted except when such construction shall constitute a substantial deviation from the general intent and purposes of the Parties as reflected in this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**Seller:**
CASH CLOUD INC.,
a Nevada Corporation

By: _____
Name: _____
Title: _____

**Buyer:**
CC BR HOLDCO LLC,
a Nevada limited liability company

By: _____
Name: _____
Title: _____