BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
ZACHARY T. WILLIAMS, ESQ.
Nevada Bar No. 16023
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
　　　　nkoffroth@foxrothschild.com
　　　　zwilliams@foxrothschild.com
*Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>　　CASH CLOUD, INC.,<br>　　dba COIN CLOUD,<br><br>　　　　　　　　　Debtor. | Case No. BK-23-10423-mkn<br><br>Chapter 11<br><br>**DECLARATION OF DANIEL AYALA IN SUPPORT OF *EMERGENCY* MOTION FOR ORDER AUTHORIZING DEBTOR'S ENTRY INTO SERVICES AGREEMENT**<br><br>Hearing Date:　OST PENDING<br>Hearing Time:　OST PENDING |

I, Daniel Ayala, declare as follows:

1.  I am the Independent Director of Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case").

2.  Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

148500991.1

3.  I make this Declaration in support of Debtor's *Emergency Motion for Order Authorizing Debtor's Entry Into Services Agreement* (the "Emergency Motion").[1] A true and correct copy of the Services Agreement, and all Schedules thereto, entered into with Powercoin, LLC ("Powercoin"), an affiliate of Heller Capital Group, LLC ("Heller Capital"), is annexed hereto as **Exhibit 1**.

4.  On June 30, 2023, the Court entered an *Order* [ECF No. 795] approving the Sale Motion and authorizing the Debtor to close the sale of substantially all of its digital currency machines (the "Purchased DCMs") to Heller Capital.

5.  On July 21, 2023 (the "Sale Closing Date"), the Debtor closed the sale with Heller Capital, granting Heller Capital all right and title to the Purchased DCMs pursuant to the Heller APA (as described in the Sale Motion).

6.  On June 12, 2023, the Debtor ceased all operations and began its efforts to collect all cash that was being held in its DCMs prior to the sale to Heller Capital.

7.  As evidenced by the *Application for Allowance and Payment of Administrative Expense Claim of Brink's Incorporated* [ECF No. 977] filed by Debtor's former cash collection provider, Brink's Incorporated, Debtor was paying hundreds of thousands of dollars each month to cash collection service providers.

8.  Prior to the Sale Closing Date, Debtor was unable to retrieve all of the cash contained in the Purchased DCMs. Indeed, the total amount of estimated cash in the Purchased DCMs on the Sale Closing Date was between approximately $1,199,140.00 and $1,546,931.00 (the "Remaining Cash"), which cash remains the property of the Debtor's estate.

9.  The maximum fee that Debtor would pay Powercoin is approximately $123,754.00, a fee that is substantially lower than the current rates offered by Debtor's former cash collection service providers.

10. Due to the urgent need for the Debtor to collect all of the Remaining Cash, and because Powercoin has already begun its efforts to service the Purchased Machines in the ordinary course of

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Emergency Motion.

148500991.1

its business, Powercoin has begun its cash collection efforts pursuant to the Services Agreement, with the understanding that the Services Agreement cannot be enforced without approval from this Court. Thus, the Debtor requests that the Court grant the Order, allowing the Debtor to enter into the Services Agreement with an effective date of July 21, 2023 (the "Effective Date").

11. The following is a summary of the central terms of the Services Agreement:[2]

   a. **Effective Date and Term.** The Effective Date, subject to Court approval, shall be July 21, 2023. The term of the Services Agreement shall commence on the Effective Date and continue until the four (4) month anniversary of the Effective Date, unless sooner terminated or extended by the parties.

   b. **Services Provided.** Powercoin shall use commercially reasonable efforts to recover and collect from the Purchased DCMs seventy (70.00%) of the amount of cash estimated be held in such Purchased DCMs as of the Effective Date (as identified on Debtor's records provided to Powercoin) on or before ninety (90) days from the Effective Date; and shall use commercially reasonable efforts to recover and collect from the Purchased DCMs the remaining balance of such cash estimated to be held in such Purchased DCMs on or before One Hundred and Twenty (120) days from the Effective Date. All cash recovered by Powercoin to Schedule A of the Services Agreement shall be delivered via wire transfer to an account(s) designated in writing by the Debtor, *less* the Fee (defined below).

   c. **The Fee.** As set forth in Schedule B to the Services Agreement, Powercoin shall be entitled to retain eight percent (8.00%) of all cash recovered/collected from all DCMs. In addition, if the cash recovered/collected from a single DCM totals $100.00 or less, then Powercoin shall be entitled to retain all of such amount and such amount shall be excluded from any payment to Debtor contemplated in Schedule A of the Services Agreement. All amounts entitled to be retained by Powercoin are referred to, collectively, as the "**Fee**."

   d. **Additional Obligations of Powercoin.** In respect of the recovery and collection of cash form the Purchased DCMs, Powercoin shall:

      i. Maintain an accurate log of the physical location of all Purchased DCMs, including their present location and all prior locations (dating back to the date hereof), and deliver such log to Debtor within forty-eight (48) business hours of notice of Debtor's request; *provided that,* requests may not be made more than once every 2 weeks;

---

[2] The following summary is qualified in its entirety by the actual terms of the Services Agreement. To the extent that there is any inconsistency between the terms of this summary and the Services Agreement, the terms of Services Agreement shall control.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

ii. Ensure that each person recovering and collecting cash from any Purchased DCMs are equipped with a fully-operational body camera at all times such person is recovering and/or collecting cash from any Purchased DCM and that such body camera is on, functioning properly, and is recording the recovery and collection of cash at such times. If for any reason the body camera equipment becomes less than fully functional, Powercoin will halt the cash collection process and use commercially reasonable efforts to remedy or seek approval written to use an alternative, but equally effective process for collecting the cash;

iii. Ensure that all cash recovered and/or collected from any Purchased DCMs is deposited in a single FDIC-insured bank account maintained and held exclusively by Powercoin, Buyer, Heller, or an affiliate of one of such parties (the "**Recovery Bank Account**") within twenty-four (24) hours of such recovery/collection;

iv. Make all wires of cash owed to Debtor pursuant to Section 1 of Schedule A to the Services Agreement no later than forty-eight (48) hours after such cash is deposited into the Powercoin Bank Account;

v. Maintain a complete and accurate written accounting of all cash recovered and/or collected from all DCMs and submit to Debtor such accounting on a weekly basis; and

vi. Make the Debtor aware of any unforeseen problems that arise inhibiting its ability to follow the required cash collection process described in this Agreement and seek written approval to proceed with alternative, but equally effective and satisfactory process.

e. **Additional Obligations of the Debtor.** In respect of the recovery and collection of cash from Purchased DCMs, Debtor shall use the maximum extent of its legal authority to aid Powercoin in the effort to recover all purchased DCMs located at rejected host agreement locations. Debtor acknowledges that Powercoin is not capable of collecting cash from DCM's that are not made accessible to Powercoin by the Debtor's Hosts. Further, Debtor hereby acknowledges and agrees that it is Debtor's sole responsibility to provide Powercoin with free and clear access to the Purchased DCMs.

f. **Confidentiality.** Neither party shall, in any fashion, form, or manner, either directly or indirectly, disclose to any other person or entity the name, address or any other information concerning any client or customer of the other party, or divulge any confidential or proprietary information concerning the business or methods of the other party; *provided*, however, that the foregoing obligation of confidentiality shall not apply to any information that (i) was in the public domain at the time of the applicable party's receipt of such information, (ii) entered the public domain through no fault of the applicable party subsequent to the time of its receipt of such information, (iii) was disclosed to the applicable party by a third party under no obligation of confidentiality, (iv) the

148500991.1

parties agree in writing may be disclosed, or (v) is required to be disclosed by law or pursuant to service of process.

g. **Termination.** The Services Agreement may be terminated by mutual written agreement of the parties, or by the Debtor in the event that Powercoin is in material breach of its obligations under the Services Agreement and such breach remains uncured thirty (30) days after delivery of written notice of such breach. Upon any termination of the Services Agreement, the Debtor and Powercoin shall each promptly pay to the other party all outstanding, unpaid amounts through the date of such termination, and any other outstanding payments or reimbursements due to Powercoin or the Debtor hereunder, respectively. The termination of the Services Agreement shall not extinguish any payment obligations that either party has to the other.

See Exhibit 1, and Schedules A & B attached thereto.

12. The Debtor has a significant rational business purpose for requiring the Services Agreement. Debtor ceased all operations on June 12, 2023, and is unable to continue to make payments to its cash collection service providers. However, the Debtor needs to rapidly collect the Remaining Cash for the benefit of the Debtor, its creditors, and its estate. The Services Agreement enables the Debtor to receive the Remaining Cash, minus the Fee (as described in the Services Agreement), at a significant discount when compared to the fees charged by cash collection service providers. Additionally, Debtor has confirmed that certain of its cash collection service providers were sending cash through normal postal services, which has led to the theft of hundreds of thousands of the Debtor's cash. These thefts have been reported to the proper authorities. Without the Services Agreement, Debtor would be unable effectively to collect the Remaining Cash.

13. Accordingly, the Debtor has determined that it is in its best interest to enter into the Services Agreement, and allow Powercoin to collect the Remaining Cash on behalf of the Debtor, pursuant to the terms and conditions of the Services Agreement. Debtor respectfully suggests that implementing the Services Agreement as of the Effective Date makes good business sense, and thus the Court should grant the Emergency Motion.

148500991.1

1  I declare, under penalty of perjury of the laws of the United States of America, that the
2  foregoing statements are true and correct to the best of my knowledge, information and belief.
3  Executed this 13th day of September 2023.

                                                                          */s/Daniel Ayala*
                                                                              Daniel Ayala

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

148500991.1

**EXHIBIT 1**

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

148500991.1

SERVICES AGREEMENT

THIS SERVICES AGREEMENT (this "**Agreement**") is made and entered into as of July 21, 2023 (the "**Effective Date**"), by and between Powercoin, LLC, a Pennsylvania limited liability company having an address at 415 N. Prince Street, Suite 200, Lancaster, PA 17603 ("Powercoin"), and Cash Cloud, Inc. dba Coin Cloud, a Nevada corporation, having an address at 10845 Griffith Peak Drive, No. 2, Las Vegas, NV 89135 ("**Recipient**").

BACKGROUND OF AGREEMENT

A.  Recipient and Heller Capital Group, LLC ("**Heller**") are parties to that certain Asset Purchase Agreement dated June 28, 2023 (the "**APA**"), pursuant to which, *inter alia*, Recipient agreed to sell to Heller the Purchased DCMs. Effective as of July 17, 2023, Heller assigned to Project Catapult, LLC, a Pennsylvania limited liability company ("**Buyer**"), and Buyer assumed from Heller, all of Heller's rights, title, interest, duties, obligations, and responsibilities in, under, and to the APA.

B.  Pursuant to the APA, Recipient did not agree to sell, *inter alia*, any of Recipient's cash or cash equivalents, including, without limitation, all cash or cash equivalents included in any of the Purchased DCMs.

C.  Recipient has advised that it was unsuccessful in recovering all of the cash that it believes to be in certain Purchased DCMs prior to the Closing on the transactions contemplated by the APA, which is of even date herewith. To that end, Recipient has requested that Buyer assist with the recovery of all such cash. Buyer has agreed to have its affiliate, Powercoin, assist with such recovery services as it will be providing certain operational and management services on behalf of Buyer post-closing.

D.  In connection with the APA, Recipient desires that Powercoin provide to Recipient certain cash collection services in respect of the Purchased DCMs, and Powercoin is willing to provide such services to Recipient pursuant to the terms and conditions set forth herein; provided, that the parties to this Agreement agree and acknowledge that neither Powercoin, Heller, nor Buyer, have the ability to verify the estimated amount of cash contained in the Purchased DCMs prior to Closing, and by way of agreeing to provide the cash collection services herein, shall not be deemed to have assumed any liability in connection therewith.

E.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the APA.

NOW, THEREFORE, in consideration of the mutual promises set forth herein, and for other good and valuable consideration, the parties hereto, intending to be legally bound hereby, do hereby agree as follows:

1.  <u>Background</u>.  The recitals above are incorporated into this Agreement by reference as if set forth in full.

147623203.8

2.  **Term**. The term of this Agreement (the "**Term**") shall commence on the date hereof and continue until the four (4) month anniversary, unless sooner terminated or extended in accordance with this Agreement.

3.  **Services**. During the Term, Powercoin shall provide those services set forth on Schedule A attached hereto (the "**Services**").

4.  **Insurance**. During the Term and for a period of two (2) years thereafter, Powercoin shall, at its own expense, maintain and carry insurance with financially sound and reputable insurers, in full force and effect that includes, but is not limited to, commercial general liability in a sum no less than $1,000,000 per occurrence and $2,000,000 in the aggregate with financially sound and reputable insurers.

5.  **Fee**. In exchange for the Services, Powercoin shall be entitled to the Fee set forth on Schedule B.

6.  **Termination**.

    (a) Notwithstanding Section 2 above, this Agreement may be terminated by mutual written agreement of the parties hereto, or by Recipient in the event that Powercoin is in material breach of its obligations under this Agreement and such breach remains uncured thirty (30) days after delivery of written notice of such breach.

    (b) Upon any termination of this Agreement, Recipient and Powercoin shall each promptly pay to the other party all outstanding, unpaid amounts through the date of such termination, and any other outstanding payments or reimbursements due to Powercoin or Recipient hereunder, respectively. The termination of this Agreement shall not extinguish any payment obligations that either party has to the other hereunder.

7.  **Confidentiality**. Neither party shall, in any fashion, form, or manner, either directly or indirectly, disclose to any other person or entity the name, address or any other information concerning any client or customer of the other party, or divulge any confidential or proprietary information concerning the business or methods of the other party; *provided*, however, that the foregoing obligation of confidentiality shall not apply to any information that (i) was in the public domain at the time of the applicable party's receipt of such information, (ii) entered the public domain through no fault of the applicable party subsequent to the time of its receipt of such information, (iii) was disclosed to the applicable party by a third party under no obligation of confidentiality, (iv) the parties agree in writing may be disclosed, or (v) is required to be disclosed by law or pursuant to service of process.

8.  **Status of the Parties**. The parties acknowledge and agree that the relationship between Powercoin and Recipient is that of independent contractors and not that of partners, joint ventures or employee/employer and that neither party shall have the right or authority to make any

147623203.8

contract, agreement or commitment in the name of or for the account of the other party hereto. Recipient shall not withhold or in any way be responsible for the payment of any federal, state, or local income or occupational taxes, social security taxes, unemployment compensation or worker's compensation contributions, vacation pay, sick leave, retirement benefits, or any other payments for or on behalf of Powercoin or its employees.

9. <u>Miscellaneous</u>.

(a) <u>Notice</u>. All demands, notices, requests and other communications required or permitted to be made hereunder shall be in writing and shall be deemed duly given if hand delivered against a signed receipt therefor, sent by certified mail, return receipt requested, first class postage prepaid, or sent by nationally recognized overnight delivery service, in each case addressed to the party entitled to receive the same at the address specified herein. Either party may alter the address to which communications are to be sent by giving notice of such change of address in conformity with the provisions of this Section 9(a). Notice shall be deemed to be effective, if personally delivered, when delivered; if mailed, at midnight on the third business day after being sent by certified mail; and if sent by nationally recognized overnight delivery service, on the next business day following delivery to such delivery service.

(b) <u>Successors and Assigns</u>. Neither party may assign this Agreement and/or delegate its obligations hereunder except upon written agreement of the other party. Subject to the foregoing restriction, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors and permitted assigns.

(c) <u>Amendments and Waivers</u>. Any provision of this Agreement may be amended and the observance of any provision of this Agreement may be waived only with the written consent of the party against whom such amendment or waiver is sought to be enforced.

(d) <u>Forum Selection/Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Nevada (without application of conflict of law provisions applicable herein). The parties agree that the state courts located in Clark County, State of Nevada, and the United States District Court for the District of Nevada shall have sole and exclusive jurisdiction and venue over any dispute arising out of or in connection with this Agreement, and the parties hereby submit themselves to the jurisdiction of such courts.

(e) <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties pertaining to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, inducements or conditions, express or implied, oral or written, except as herein contained. The express terms hereof control and supersede any course of performance and/or usage of trade inconsistent with any of the terms hereof.

(f) <u>Counterparts</u>. This Agreement may be executed in any number of counterparts all of which shall be construed together and shall constitute a single original.

[*Signatures on the following page*]

147623203.8

147623203.8


**IN WITNESS WHEREOF,** the parties below caused their duly authorized representatives to execute this Agreement as of the date first written above.

POWERCOIN, LLC

By: _[DocuSigned signature: DD3F2CEFBDC84F1...]_
Name: _____er
Title: CEO

CASH CLOUD, INC.

By: _[DocuSigned signature: Daniel Ayala]_
Name: Daniel Ayala
Title: Director

147623203.8

SCHEDULE A

Services

1. In respect of all Purchased DCMs, Recipient acknowledges the following:

    a. 85% of the estimated cash has been historically uncollectable due to a variety of problems that Powercoin may not be able to overcome within the time period forecasted in section 2 hereof;

    b. 55% of the estimated cash has been historically uncollectable due to merchant interference that is attributable to missed lease payments by the Recipient;

    c. 19% of the estimated cash has been historically uncollectable due to technical problems with the DCM installed in the field;

    d. 11% of the estimated cash has been historically uncollectable due to the physical location of the ATM; and

    e. 80% of the DCMs with estimated cash have less than $1,000 of estimated cash inside the machine.

    Notwithstanding the foregoing, Powercoin shall use commercially reasonable efforts to recover and collect from the Purchased DCMs seventy and no/100 percent (70.00%) of the amount of cash estimated be held in such Purchased DCMs as of the date hereof (as identified on Recipient's records provided to Powercoin)* on or before ninety (90) days from the Effective Date; and shall use commercially reasonable efforts to recover and collect from the Purchased DCMs the remaining balance of such cash estimated to be held in such Purchased DCMs on or before One Hundred and Twenty (120) days from the Effective Date. Thereafter, notwithstanding the end of the Term, Powercoin shall continue to use commercially reasonable efforts to collect from the Purchased DCMs until Powercoin and Recipient agree to cease such collection efforts (all such cash recovered and collected after the end of the Term, "**Residual Cash**"). For the avoidance of doubt, and notwithstanding anything to the contrary, all cash within the Purchased DCMs is sand shall remain the property of Recipient, exclusively, regardless of when or if such cash is recovered and collected from any Purchased DCMs. All cash recovered by Powercoin pursuant to this Schedule A shall be delivered via wire transfer to an account(s) designated in writing by Recipient, *less* the Fee.

    * Powercoin and Recipient agree and acknowledge the total amount of estimated cash in all Purchased DCMs is One Million Five Hundred Forty-Six Thousand Nine Hundred Thirty-One and no/100 Dollars ($1,546,931.00).

2. In respect of the recovery and collection of cash from Purchased DCMs, Powercoin shall:

147623203.8

    a. Maintain an accurate log of the physical location of all Purchased DCMs, including their present location and all prior locations (dating back to the date hereof), and deliver such log to Recipient within 48 business hours of notice of Recipient's request; *provided that,* requests may not be made more than once every 2 weeks;

    b. Ensure that each person recovering and collecting cash from any Purchased DCMs are equipped with a fully-operational body camera at all times such person is recovering and/or collecting cash from any Purchased DCM and that such body camera is on, functioning properly, and is recording the recovery and collection of cash at such times. If for any reason the body camera equipment becomes less than fully functional, Powercoin will halt the cash collection process and use commercially reasonable efforts to remedy or seek approval written to use an alternative, but equally effective process for collecting the cash;

    c. Ensure that all cash recovered and/or collected from any Purchased DCMs is deposited in a single FDIC-insured bank account maintained and held exclusively by Powercoin, Buyer, Heller, or an affiliate of one of such parties (the "**Recovery Bank Account**") within twenty-four (24) hours of such recovery/collection;

    d. Make all wires of cash owed to Recipient pursuant to Section 1 of this Schedule A no later than forty-eight (48) hours after such cash is deposited into the Recovery Bank Account; provided that with respect to Residual Cash only, such Residual Cash must be wired to Recipient no later than one (1) week after such cash is deposited into the Recovery Bank Account;

    e. Maintain a complete and accurate written accounting of all cash recovered and/or collected from all DCMs and submit to Recipient such accounting on a weekly basis; and

    f. Make the Recipient aware of any unforeseen problems that arise inhibiting its ability to follow the required cash collection process described in this Agreement and seek written approval to proceed with alternative, but equally effective and satisfactory process.

3. In respect of the recovery and collection of cash from Purchased DCMs, Recipient shall use the maximum extent of its legal authority to aid Powercoin in the effort to recover all purchased DCMs located at rejected host agreement locations. Recipient acknowledges that Powercoin is not capable of collecting cash from DCM's that are not made accessible to Powercoin by the Recipient's Hosts. Further, Recipient and Powercoin each hereby acknowledges and agrees that each shall use commercially reasonable efforts and shall cooperate with one another and with Heller to provide Powercoin with access to the Purchased DCMs in order to perform the Services set forth in this Schedule A, it being understood that all Purchased DCMs are owned by Heller.

147623203.8

## SCHEDULE B

<u>Fee</u>

Powercoin shall be entitled to retain Eight and no/100 percent (8.00%) of all cash recovered/collected from all DCMs. In addition, if the cash recovered/collected from a single DCM totals One Hundred and no/100 Dollars ($100.00) or less, then Powercoin shall be entitled to retain all of such amount and such amount shall be excluded from any payment to Recipient contemplated in Schedule A. All amounts entitled to be retained by Powercoin are referred to, collectively, as the "**Fee**."

147623203.8