Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
McDONALD CARANO LLP
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>CASH CLOUD, INC. d/b/a COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-mkn<br>Chapter 11<br><br>**REPLY IN SUPPORT OF MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR AN ORDER GRANTING LEAVE, DERIVATIVE STANDING AND AUTHORITY TO COMMENCE, PROSECUTE AND SETTLE CLAIMS ON BEHALF OF THE DEBTOR'S ESTATE** |

The Official Committee of Unsecured Creditors in the above-captioned case (the "Committee"), by and through its undersigned counsel, hereby files this reply in further support of the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Derivative Standing and Authority to Commence, Prosecute and Settle Claims on Behalf of the*

*Debtor's Estate* [ECF No. 925] (the "Standing Motion")[1] and in response to the objection of Enigma Securities Limited ("Enigma") to the Standing Motion [ECF No. 1112] (the "Objection"). In support of this Reply, the Committee respectfully represents as follows:

## REPLY

1. As the Court is aware, the Debtor's assets were sold for far less than the dollar amount of the Debtor's outstanding debt, including the costs of this chapter 11 case. Still, the Court confirmed the Debtor's liquidating chapter 11 plan on the premise that estate claims will be pursued in order to provide creditors with the best chance of receiving a return on their claims. The Standing Motion is a pivotal part of the estate representatives' plan of action to achieve this goal. Indeed, approval of the Standing Motion is one necessary step toward ensuring that the Debtor's *undersecured* creditors do not receive a windfall at the expense of the estate's other creditors.

2. Throughout this chapter 11 case, the Prepetition Secured Lenders have sought to sit back and enjoy the benefits of chapter 11, without bearing any of the costs or downsides of the process. While chapter 11 provides certain protections to fully secured creditors, those rights are not unlimited. Where, as here, Enigma and Genesis are undersecured, they are not entitled to retain outsized benefits in comparison to similarly situated unsecured creditors. Accordingly, the Court should grant the Standing Motion because (1) the Committee can show that the benefits of pursuing the Preserved Claims outweigh the costs; and (2) the Preserved Claims are colorable.

### I. The Benefits of Pursuing the Preserved Claims Outweigh the Costs.

3. In its Objection, Enigma argues that if the Lien Challenge Claims were successful, "the estate would receive no benefit whatsoever" because "the estate's interest in the Enigma Collateral would remain subordinate to the Genesis Liens." This, however, is not accurate. Subsequent to filing the Standing Motion, the Committee reached a settlement in principle with Genesis whereby the Committee and Genesis agreed to the sharing of the proceeds of any successful Lien Challenge Claims. This settlement agreement will be the subject of a soon to be filed settlement

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Standing Motion.

2

motion. Accordingly, if the Committee is successful in pursuit of its Lien Challenge Claims, the estate will be the beneficiary of a significant portion of the proceeds. Enigma's threshold argument for denial of the Standing Motion therefore fails.

4.    Enigma also argues that the Committee has failed to provide "any evidence regarding the likely costs of pursuing the Preserved Claims." Based on the record of this case, however, the Court can easily determine that "there is a fair chance that the benefits to be obtained from the litigation will outweigh its cots." *Official Comm. of Unsecured Creditors of America's Hobby Ctr. v. Hudson United Bank (In re America's Hobby Ctr.)*, 223 B.R. 275, 284 (Bankr. S.D.N.Y. 1998) (performing a cost benefit analysis "fairly easily" by comparing billing rates set forth in retention application against a minimal amount of time necessary to get through trial on avoidance claims "where the Committee has already investigated the *bona fides* of the [secured creditor's] claims and liens"). Once the Court is assured that the costs of litigation will not obviously outweigh the benefit to the estate, no further inquiry is required. *See In re STN Enters.*, 779 F.2d 901, 905-06 (2d Cir. 1985) (noting that the court need not "undertake a mini-trial . . . to determine the likelihood of success in such a suit or the attendant fees and expenses involved" but should "assure itself that there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce"); *Adelphia Commc'ns Corp. v. Bank of Am. (In re Adelphia Commc'ns Corp.)*, 330 B.R. 364, 386 (Bankr. S.D.N.Y. 2005) ("That means, as a practical matter, providing the Court with a predicate for concluding that the claims will, if proven, provide a basis for recovery, and that the proposed litigation will not be a hopeless fling. It also means, as a practical matter, that the prospective rewards can reasonably be expected to be commensurate with the litigation's foreseeable cost. But no more than that is required, and the Court must be mindful of the purposes for its inquiry.").

5.    The cost benefit analysis with respect to the Lien Challenge Claims alone supports granting the Committee derivative standing. The Committee estimates that $390,000 in Lien Challenge Claims are colorable based on the average sale price for the Kiosks and the 535 Kiosks subject to its dispute. Even assuming a high of 250 hours of attorney and paralegal time needed to bring the Lien Challenge Claims to a conclusion (notwithstanding that far fewer hours would be

3

devoted if this matter settles before trial), at an average of $475 an hour for attorneys and paralegals of the Committee's Nevada counsel,[2] the total cost of the litigation does not outweigh the benefits.[3] *See, e.g.*, *In re America's Hobby Ctr.*, 223 B.R. at 284 (reasonably estimating 248 hours for a lien avoidance dispute where "costs . . . are necessarily less than in the civil arena because the Committee has already investigated the *bona fides* of the [secured creditor's] claims and liens"). Accordingly, Enigma's cost/benefit arguments for denial of the Standing Motion fail.

II. **The Preserved Claims are Colorable.**

6.  In its recent opinion, this Court found that it need not determine whether the Committee pled sufficient facts to state a claim or that either party would ultimately prevail on the merits in order to find colorable claims exist to grant the Committee Standing.[4] Here, however, Enigma asks the Court to do just that—deny the Committee standing by placing the ultimate burden on the Committee to prove it will prevail on the Preserved Claims at this stage. This high burden is not appropriate; rather, the existence of legitimate claims is evident from the Standing Motion.

7.  First, Enigma argues that the Recharacterization Claims are not colorable because the Committee has not alleged facts that would support a finding that the amount of the Adequate Protection Payments exceeds the diminution in value. The Committee is not, however, required to prove (or even allege) that no diminution claims exist, but rather simply that *if* no diminution claims exist, the adequate protection payments received are subject to recharacterization. The Final DIP Order gives the Committee such a claim. *See* DIP Order ¶¶ 9(c), 9(f), 10(c), 10(g). Even if relevant, the burden to establish diminution in value is on Enigma,[5] and for the reasons stated in the *Debtor's Objection to "Application for Allowance and Payment of Administrative Expense Claim Pursuant to 11 U.S.C. §§ 361, 362, 363, 364, 503, 507, and Bankruptcy Rules 3012 and 8002" [ECF No. 873]*

---

[2] *See Application to Employ McDonald Carano LLP as Counsel for the Committee* [ECF No. 279].
[3] The estimated costs of litigation are for illustrative purposes only, and the Committee estimates that here, given minimal discovery, if any, is necessary, the total hours to fully litigate the Lien Challenge Claims could be significantly less than the illustrative 250 hours.
[4] *Order on Opposition to Approval of Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions* [ECF No. 1119] (the "Derivative Standing Order") at 7.
[5] *See Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091, 1094 (9th Cir. 1995) (holding that the party seeking administrative priority bears the burden of proof).

4

[ECF No. 987], the Committee asserts that no such diminution claim exists. Accordingly, the Recharacterization Claims against Enigma are colorable.[6]

8. Second, Enigma argues that the Lien Challenge Claims are not colorable because its liens are properly perfected. In the context of the Standing Motion, however, the Committee need not establish that Enigma's liens are not properly perfected, but rather that it has a legitimate claim that such claims are not perfected. *See* Derivative Standing Order at 7; *see also In re America's Hobby Center*, 223 B.R. at 288 (noting that standing should be denied only if the claims are "facially defective"). The Standing Motion asserts a legitimate claim by alleging that neither the Coin Cloud ID number nor the location description identifiers are sufficient to "reasonably identify" Enigma's collateral where the financing statement descriptions do not include a serial number.[7] *See* UCC § 9-108; Nev. Rev. Stat. § 104.9108(1). As the cases cited in the Standing Motion and others make clear, whether collateral is "reasonably identifiable" is a question of fact. *See, e.g.*, *Bank of California v. LMJ, Inc. (In re LMJ, Inc.)*, 159 B.R. 926, 929 (D. Nev. 1993) (performing a factual analysis to determine that under the circumstances, a location specific descriptor was insufficient to properly perfect collateral). Moreover, in the Objection, Enigma simply ignores that some 260 Kiosks are identified on its financing statement as located in a "warehouse," which also houses thousands of other identical Kiosks, with no way to enable a third party to distinguish the collateral from other property. *See In re BENNETT FUNDING GROUP*, 255 B.R. 616, 636 (N.D.N.Y 2000) (noting that description of collateral "must enable a third party to distinguish between collateral and other, similar goods that the debtor own[s]." (*quoting In re Keene Corp.,* 188 B.R. 881, 893 (Bankr. S.D.N.Y. 1995))). Accordingly, the Committee has established, at a minimum, that it has legitimate claims that certain of Enigma's liens are unperfected. Thus, the Lien Challenge Claims are colorable.

---

[6] Genesis has neither objected to the Standing Motion nor asserted a diminution in value claim, thus the Recharacterization Claims against Genesis are equally colorable.

[7] The fact that a serial number is not always required under the case law does not stand for the proposition that its absence has no effect. Where, as is here, there is no other identifier that makes the collateral objectively determinable, the financing statement does not perfect the collateral.

## CONCLUSION

WHEREFORE, for the reasons stated in the Standing Motion and herein, the Committee respectfully requests the Court overrule the Objection, grant the relief requested in the Standing Motion, and grant such other and further relief as the Court deems appropriate.

Dated this 18th day of September, 2023.

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee of Unsecured Creditors*