# EXHIBIT A

# EXHIBIT A

**In re: Cash Cloud Inc.**

**ROUGH DRAFT TRANSCRIPT OF**

**Tanner James**

**October 9, 2023**

THIS REAL-TIME DRAFT IS UNEDITED AND UNCERTIFIED AND MAY

CONTAIN UNTRANSLATED STENO, AN OCCASIONAL REPORTER'S NOTE,

A MISSPELLED PROPER NAME AND/OR NONSENSICAL ENGLISH WORD COMBINATIONS.

THIS DRAFT IS INTENDED ONLY FOR THE PURPOSE OF AUGMENTING COUNSEL'S

NOTES AND IS NOT INTENDED TO BE USED OR CITED IN ANY COURT PROCEEDING.



**Our Services**

- Court Reporting
- Record Retrieval
- Legal Talent Outsourcing
- Registered Agent
- Process Services
- Investigations
- eLaw® Case Tracking
- Alternative Dispute Resolutions

lexitaslegal.com | 702-476-4500

Page 1

1                    UNITED STATES DISTRICT COURT

2                        DISTRICT OF NEVADA

3     IN RE:
                                        )
4     CASH CLOUD INC., dba COIN         )
      CLOUD,                            ) Case No.
5                                       ) BK-23-10423-MKN
                 Debtor.               )
6                                       )
      _____)

7

8

9

10

11

12

13    DEPOSITION OF DEBTOR CASH CLOUD INC., DBA COIN CLOUD

14                  PURSUANT TO FRCP 30(b)(6)

15                    TANNER JAMES, VOLUME II

16             Taken on Monday, October 9, 2023

17             By a Certified Court Reporter

18                    At 10:06 a.m.

19             At 3883 Howard Hughes Parkway

20                    Las Vegas, Nevada

21

22    Reported by:  Wendy Sara Honable, CCR No. 875
      Nevada CSR No. 875
23    California CSR No. 13186
      Washington CCR No. 2267
24    Utah CCR No. 7357039-7801
      Job No. 54782, Firm No. 116F

25



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                               In re: Cash Cloud Inc.

Page 2

```
 1

 2

 3

 4                    APPEARANCES

 5

 6        For Genesis Global Holdco, LLC:

 7                Robert R. Kinas
                  Alexis R. Wendl
 8                Snell & Wilmer LLP
                  3883 Howard Hughes Parkway
 9                Suite 1100
                  Las Vegas, Nevada   89169
10                702.784.5200
                  702.784.5252 Fax
11                rkinas@swlaw.com
                  awendl@swlaw.com
12

13        For the Debtor:

14                Daniel A. Mann
                  Fox Rothschild LLP
15                1980 Festival Plaza Drive
                  Suite 700
16                Las Vegas, Nevada   89135
                  702.262.6899
17                702.597.5503 Fax
                  dmann@foxrothschild.com
18

19        For Enigma Securities Limited:
                  (via videoteleconference)
20
                  Andrew Kissner
21                Alexander G. Severance
                  Morrison & Foerster LLP
22                250 West 55th Street
                  New York, New York   10019
23                212.468.8000
                  212.468.7900 Fax
24                akissner@mofo.com
                  aseverance@mofo.com
25
```



Page 3

```
 1    APPEARANCES:  (continuing)

 2

 3

 4          For the Official Committee of Unsecured
               Creditors:  (via videoteleconference)
 5
                     Andrew J. Matott
 6                   Laura E. Miller
                     Seward & Kissel LLP
 7                   One Battery Park Plaza
                     New York, New York  10004
 8                   212.574.1224
                     212.480.8421 Fax
 9                   matott@sewkis.com
                     millerl@sewkis.com
10

11

12

13

14

15                         <<<<<<   >>>>>>

16

17

18

19

20

21

22

23

24

25
```



Page 4

```
 1

 2

 3

 4                    EXAMINATION INDEX

 5

     EXAMINATION BY:                          PAGE NO.
 6

 7    MR. KINAS                                    ^

 8    MR. MATOTT                                   ^

 9

10                    <<<<<<  >>>>>>

11

12

13                    EXHIBIT INDEX

14

     EXHIBIT NO.  DESCRIPTION                 PAGE NO.
15

16

     Exhibit 1   Genesis Global Holdco, LLC's    ^
17               Second Notice of Deposition of
                 Tanner James
18               dated 10/2/23; 2 pages

19   Exhibit 2   Supplemental Declaration of      ^
                 Tanner James in Support of
20               Omnibus Reply in Support of
                 Motion For Entry of an Order
21               Authorizing Debtor to
                 Surcharge the Collateral of
22               Genesis Global Holdco, LLC,
                 Enigma Securities Limited, and
23               AVT Nevada, LP, and Attached
                 Documentation
24               dated 9/15/23; 13 pages

25
```



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                        In re: Cash Cloud Inc.

Page 5

1    INDEX:   (continuing)

2

3

4    Exhibit 3    Third Supplemental Declaration    ^
                  of Tanner James in Support of
5                 Omnibus Reply in Support of
                  Motion for Entry of an Order
6                 Authorizing Debtor to Surcharge
                  the Collateral of Genesis
7                 Global Holdco, LLC, Enigma
                  Securities Limited, and AVT
8                 Nevada, LP, and Attached
                  Documentation
9                 dated 9/26/23; 86 pages

10

11

12

13                        <<<<<<   >>>>>>

14

15

16

17

18

19

20

21

22

23

24

25



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 6

```
 1                    P R O C E E D I N G S
 2                 (Prior to the commencement of the
 3    deposition, all parties present agreed to waive
 4    statements by the court reporter pursuant to Rules
 5    30(b)(5)(A) and 30(b)(5)(C) of the NRCP/FRCP.)
 6                    (Exhibit Nos. 1, 2, and 3 marked
 7                     for identification.)
 8                    (Witness sworn.)
 9
10                        TANNER JAMES,
11              having been first duly sworn, was
12              examined and testified as follows:
13
14
15                        EXAMINATION
16    BY MR. KINAS:
17         Q.    Good morning.  Could you state your name
18    for the record, please?
19         A.    Of course.  My name is Tanner James.
20         Q.    Tanner, my name is Robert Kinas,
21    K-i-n-a-s.  I'm with Snell & Wilmer, and my client
22    is Genesis.
23                 Since we last met on August 22nd for your
24    first depo, you have filed a second supplement at
25    ECF 1244 and a third supplement at 1307.  So I think
```



Tanner James                                           In re: Cash Cloud Inc.

Page 7

1    I've handed you Exhibits 2 and 3 there.

2              Could you just confirm that Exhibit 2 is

3    your second supplement at ECF 1244?

4         **A.    (Examining documents.)**

5              **Yes.**

6         Q.    And then if you could look at the

7    Exhibit 3, is that your third supplement, ECF 1307?

8         **A.    (Examining documents.)**

9              MR. MATOTT:  Yeah.  Andrew Matott with

10   the Official Committee.  I think it's 1281 -- right?

11   -- the second objection that we're here on -- or the

12   second declaration?

13             MR. KINAS:  I have a supplemental

14   declaration of 1244 and 1307.

15             MR. MANN:  That's a good point.  This

16   one, the 1244, that's the supplemental.  Then

17   there's one that's called the second supplemental,

18   which is, I believe, the number that he just

19   mentioned.

20             **THE WITNESS:  Right.  So this -- this one**

21   **without the fees, I think, is the third one, right?**

22             MR. MANN:  Yes.

23             **THE WITNESS:  Okay.  So are we missing**

24   **the second or the --**

25             MR. MANN:  Yeah.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Page 8

1           MR. KINAS:  Which one are we missing?

2    12?

3           MR. MANN:  It's the second supplemental.

4    So you have the first supplemental here and the

5    third one, and we're missing the second one.

6           MR. KINAS:  And the ECF -- provide me

7    with the ECF on that one again?  1280- -- was it

8    1281?

9           MR. MATOTT:  Yeah, 1281.

10           MR. KINAS:  Great.

11           MS. KISSNER:  This is Andrew Kissner of

12    MoFo.  If it's helpful, I think the second

13    supplemental declaration was more or less to the

14    effect of, Here's an e-mail from Enigma.  I will be

15    filing a third supplemental declaration next week,

16    and I think that was the gist of that declaration.

17           MR. KINAS:  Okay.  Perfect.

18           MR. MANN:  And I agree to that

19    abbreviated statement what he said about it.

20           MR. KINAS:  All right.  Excellent.  All

21    right.  So --

22           MR. MATOTT:  Yeah.  I think that document

23    speaks for itself.  The standard being submitted.

24           MR. KINAS:  Thanks.

25    ////



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 9

1   BY MR. KINAS:

2        Q.    All right.  So in front of you, you've

3   got ECF 1244 and ECF 1307; is that correct?

4        **A.    Looks like it's cut off a little bit on**

5   **the top, but, no, it looks like 1507 to me.**

6        Q.    Excellent.

7              And then I've handed you what's marked as

8   Exhibit 1, which -- if you'd take a look at that and

9   see if that's the notice of your second deposition

10  for today.

11       **A.    Yes, it is.**

12       Q.    Excellent.  Thank you for appearing

13  today.  The court reporter is here.  Just like in

14  your first deposition, you understand that you're

15  under oath, correct?

16       **A.    Yes, I do.**

17       Q.    And are you able to answer my questions

18  truthfully today, to the best of your knowledge?

19       **A.    Yes, I can.**

20       Q.    So I'm not here to trick you.  If you

21  don't understand any of my questions, just let me

22  know and I'm happy to rephrase.

23              Are you ready to get started?

24       **A.    Yes.**

25       Q.    So let's start with what is Exhibit 2.




UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 10

1  So this is ECF 1244, and this is your supplemental

2  declaration.

3            Take a look at that and let me know if

4  you've seen that document before.

5       **A.    (Examining documents.)**

6            **Yes, I have.**

7       Q.    And on Page -- it's the second page of

8  Exhibit 1244.  It's actually marked "Page 1."

9            But do you see where the -- your name --

10 your signature is affixed down below?

11           Do you see that?

12      **A.    I'm sorry.  You said which page?**

13      Q.    Well, it's actually the second page of

14 Exhibit 2 at the bottom.

15      **A.    Yes, I see that.**

16      Q.    And did you authorize the debtor to affix

17 your electronic signature there?

18      **A.    Yes, I did.**

19      Q.    So if you could turn to the second page

20 of Exhibit 2, do you see where, on Line 16, there's

21 a Paragraph 4, numbered 4?

22      **A.    Yes, I do.**

23      Q.    Could you read that to yourself for a

24 second and let me know when you're done?

25      **A.    (Examining documents.)**



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 11

1                    (Discussion off the record.)

2                    (Questions and Answers on Page ^,

3                    Lines ^ through ^, read by the

4                    Reporter.)

5

6   BY MR. KINAS:

7        Q.    Mr. James, have you had a chance to read

8   Paragraph 4 to yourself?

9        **A.    Sorry.  Give me a moment to reread it.**

10  (Examining documents.)

11                Okay.  Yes, I read it.

12       Q.    So we're going to work through this

13  paragraph phrase by phrase.  So the first phrase is,

14  "on request by the debtor."

15                Do you see that?

16       **A.    Yes, I do.**

17       Q.    And so who at the debtor requested you to

18  undertake additional tasks?

19       **A.    The conversation that I had was with**

20  **counsel.**

21       Q.    And who was the -- who was that?

22       **A.    I believe the conversation was with Nick**

23  **Koffroth and maybe one additional with Brett**

24  **Axelrod.**

25       Q.    And what were you requested to do?



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                        In re: Cash Cloud Inc.

Page 12

1      A.    I was requested to review the

2  professional fees associated with the surcharge, to

3  the extent there were invoices available, and

4  determine whether or not they were related to the

5  sale process and the -- or sorry -- the surcharge

6  and the sale process.

7      Q.    And do you recall approximately when the

8  debtor reached out to you about this additional

9  task?

10     A.    I don't remember the exact date, but

11 several days before it was due; maybe a week before

12 it was due on the 20th of September.  Maybe a little

13 bit longer, but I wouldn't say longer than two weeks

14 before.

15     Q.    And once you received this new request

16 from the debtor, what steps did you take?

17            MR. MATOTT:  Objection.

18            THE WITNESS:  The first step that I had

19 took -- and maybe these were out of order, but just

20 listing the steps, I consolidated or had somebody on

21 my team consolidate all of the filed invoices for

22 the relevant period.

23            I've had all those invoices compiled into

24 a folder that was easy to review.  To the extent

25 there were invoices missing or not filed on the



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 13

1   docket, like FTIs, I requested those from SEI.

2            I also reached out to Stretto for

3   additional clarification on the details of their

4   billings related to noticing on the sale process

5   that were included in the surcharge.

6            And then I started my actual review of

7   the invoices and the fee statements going through

8   each of the individual invoices checking the dollar

9   amounts as it related to the sale process and asset

10  disposition task codes for each of the

11  professionals' billings, checked that they were

12  consistent with the estimates or noted if they

13  weren't; the estimates as in from the original

14  surcharge analysis.

15           After I did that for the professionals

16  that had those task codes, I reviewed the time

17  entries for those task codes specifically looking at

18  each time entry making note of the date -- the date

19  of the time entry, the content of the memo for that

20  time entry as it related to -- or if it was relevant

21  to the sale process.

22           The timekeeper for each time entry,

23  making note, you know, of -- or checking, is maybe a

24  better way to put it, of who the timekeeper was and

25  my general understanding of their role as a



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 14

1    representative of whichever party they were retained

2    by, and my understanding of their involvement in the

3    time entry and the contents of that memo.

4               Also checking the task code associated

5    with each time entry.  I reviewed the time entries

6    for each period for the relevant included surcharge

7    fees to the extent that they were in that form.

8               The exception to that being, at least

9    from memory, Stretto whose fees were included in the

10   surcharge, not on an hourly basis, but on a postage

11   and noticing cost basis.

12               That conversation with Angela Tsai at

13   Stretto, both had a conversation on the phone with

14   her and an e-mail exchange where she outlined to me

15   the different documents that were noticed that were

16   included in the surcharge amount for Stretto's fees,

17   the number of pages of each of those documents that

18   were noticed, and the number of parties that were

19   noticed for each document with the cost of -- I

20   believe it was printing and mailing the documents to

21   each of the noticing parties noting that, of

22   $27,000, roughly, of noticing costs that were

23   included in the surcharge, there were, I believe, in

24   excess of 20,000 not unique parties, but instances

25   where parties were noticed.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                        In re: Cash Cloud Inc.

Page 15

1            From memory, I believe it was almost

2    exactly 27,000 parties noticed.  After that I had a

3    -- conversations with counsel explaining my

4    findings, the amounts that I found included in the

5    fees and costs that I reviewed, and then began

6    developing the declaration or the filing with

7    counsel, making my comments in the ordinary process

8    of developing the filing one of these.

9            I would say that's a high level of the

10   steps that I took.

11   BY MR. KINAS:

12       Q.    And so as a result of your investigation

13   and analysis, did you conclude that the professional

14   fees were related to the sale of the assets?

15       **A.    The professional fees that I reviewed and**

16   **that were included in the surcharge, yes.**

17       Q.    And as a result of your review, did you

18   determine that any professional fees were

19   unnecessary?

20       **A.    No.**

21       Q.    And as a result of your review, did you

22   find that any of the professional fees were

23   unreasonable?

24       **A.    No.**

25       Q.    And have you -- in your time at Province,



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 16

1   have you been on any projects where you've been

2   asked to review professional fees before for

3   reasonableness and necessity?

4           MR. MANN:  Objection to form.

5           **THE WITNESS:  Yes.**

6   BY MR. KINAS:

7       Q.    And how many -- how many --

8           MR. MATOTT:  And just -- excuse me.

9   Sorry.  Andrew Matott with the committee.  If we

10  could have the record reflect that a debtor

11  objection is also shared by the committee for

12  purposes of today.

13          MR. MANN:  And you can still answer.

14          **THE WITNESS:  Sure.**

15  BY MR. KINAS:

16      Q.    So what were the -- what other -- how

17  many other projects have you been involved in where

18  you've reviewed professional fee statements for

19  necessity and reasonableness?

20      **A.    I would say, most prominently, I'm often**

21  **tasked with reviewing Province's own professional**

22  **fees prior to them being billed and filed, making**

23  **sure to note reasonable and necessity of the fees**

24  **that we're billing our clients, checking them,**

25  **triangulating for errors, duplicate billings,**



Tanner James                                                  In re: Cash Cloud Inc.

Page 17

1   excessive time, you know, correct matters, things of

2   that nature more generally.

3           On an individual time-entry basis, making

4   sure that task codes are correct for the type of

5   work that's done, making sure timekeepers are not

6   transitory and, I guess, set differently; not

7   billing small amounts without a significant role or

8   a material role on the project.

9           I'm also often, in the capacity of a

10  debtor financial adviser, in charge of maintaining,

11  developing, reviewing the DIP budgets, and that

12  often comes with tracking professional fees filed or

13  invoiced by other professionals, keeping track of

14  those invoices and monitoring them, you know,

15  relative to the budget's projections.

16      Q.   Have you -- have you ever testified as an

17  expert in any contested matter relating to the

18  reasonableness and necessity of fees?

19      A.   I've not testified as an expert, no.

20      Q.   And during your years at Province, is

21  this your first involvement in a surcharge motion?

22      A.   I believe so.  At least from the seat of

23  the debtor's financial adviser.  I've done several

24  committee cases, and maybe there was one in -- one

25  of those engagements, but not that I remember.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 18

1     Q.    And as part of your additional analysis,

2  did you examine any of the professional fees to see

3  if there was a -- they had a specific benefit to any

4  secured creditor?

5     **A.    I examined --**

6          MR. MATOTT:  Objection.  Form.

7          **THE WITNESS:  I examined the professional**

8  **fees.  On my review of the professional fees, I**

9  **certainly made note of the timekeepers, the dates of**

10 **the time entries and work streams relative to**

11 **certain milestones, and kept in mind that it may be**

12 **impossible to determine that without a single**

13 **time-entry effort from one of the professionals,**

14 **that the sale would not have closed.**

15          **But I did keep in mind that, with the**

16 **efforts and work done billed by each of the**

17 **professionals, that the sale did close with net**

18 **proceeds available to the secured lenders who**

19 **encumbered that collateral.**

20 BY MR. KINAS:

21    Q.    So I understand that response.

22          My question is, when you were looking

23 through the professional fee entries, you know, date

24 by date, did you make a note as to whether this time

25 entry benefitted one of the secured creditors or



Page 19

1    not?

2         A.    I certainly confirmed that my review of

3    the time entries that I found the fees billed did,

4    in fact, contribute to the successful closing

5    approval ordering of the sale and collection of the

6    proceeds from the buyer.

7         Q.    Okay.  So returning back to Exhibit 2,

8    Paragraph Number 4, the second phrase is, "and in

9    response to the issues raised in the objections."

10             Do you see that phrase?

11        A.    (Examining documents.)

12             I'm sorry.  You said in Paragraph 4?

13        Q.    So it's Line 16 --

14        A.    Oh, yes, I see.

15        Q.    -- in response to the issues raised by --

16   in the objections.

17             Do you see that?

18        A.    Yes.

19        Q.    And when you refer to "the objections,"

20   are you referring to the objections filed by AVT,

21   Enigma, and Genesis to the debtor's surcharge

22   motion?

23        A.    Generally speaking, yes.

24        Q.    Are you aware that there were three

25   objections to the surcharge motion?



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 20

1      A.      That sounds right to me.

2      Q.      And so did you read the objection of AVT?

3      A.      I certainly reviewed them, but I'm also

4   not an attorney.

5      Q.      I just want to know if you read the AVT

6   objection.

7      A.      Yes.  I believe that I --

8              MR. MATOTT:  Asked and answered.

9              THE WITNESS:  -- reviewed it at one

10   point.

11   BY MR. KINAS:

12      Q.      And did you read the Enigma objection?

13      A.      I believe I did review it at one point,

14   yes.

15      Q.      And did you review the Genesis objection?

16      A.      I believe I did review it, yes.

17      Q.      What were the issues raised in these

18   objections that caused you to do additional

19   analysis?

20              MR. MATOTT:  Objection.  Form.

21              THE WITNESS:  I would rather leave that

22   legal analysis to the attorneys, but I do know that

23   counsel instructed me to perform the analysis based

24   on their findings.

25   ////



Tanner James                                                In re: Cash Cloud Inc.

                                                                    Page 21

1    BY MR. KINAS:

2         Q.    So when you say "counsel," is this the

3    debtor's counsel?

4         **A.    Yes.**

5         Q.    And they instructed you to do additional

6    analysis as to the reasonableness of the fees?

7              MR. MANN:  Objection to form.

8              MR. MATOTT:  Objection to the extent it

9    calls for attorney-client privilege.

10             MR. MANN:  Yeah.  So he's asserting

11   attorney-client privilege.  I would say that you

12   shouldn't respond to that.

13   BY MR. KINAS:

14        Q.    So were you -- what did you then do?

15             You reviewed the invoices to see if the

16   fees were reasonable; is that true?

17        **A.    Yes.**

18        Q.    And you were -- you reviewed the invoices

19   of the professionals to see if the fees were

20   necessary, correct?

21             MR. MANN:  Objection.  Form.

22             **THE WITNESS:  Yes.**

23   BY MR. KINAS:

24        Q.    And did you review the fees to see

25   whether any of them provided a quantifiable benefit



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 22

1    to the secured creditors?

2              MR. MANN:  Objection to form.

3              MR. MATOTT:  Objection.  Calls for a

4    legal conclusion.

5              **THE WITNESS:  I reviewed the fees with**

6    **the context that the fees included within the**

7    **invoices that I was reviewing -- specifically, the**

8    **related task codes -- were each a piece of the**

9    **puzzle that ultimately resulted in a sale with a**

10   **buyer successfully closing after being approved by**

11   **the consultation parties and ultimately ordered by**

12   **the court.**

13   BY MR. KINAS:

14        Q.    Are you -- when you read the objections,

15   did you read any of the cases cited by any of the

16   parties in their briefs?

17             MR. MANN:  Objection to form.

18             **THE WITNESS:  I may have loosely reviewed**

19   **highlights or high-level details of the supporting**

20   **cited law and the reply and initially the motion**

21   **filed by the debtor, but I'm not an attorney and**

22   **leave that legal work and legal analysis to them.**

23   BY MR. KINAS:

24        Q.    No problem at all leaving the legal work

25   to the attorneys.



                                                          Page 23

1            I just want to know, did you read any

2     cases as part of your preparation to do your

3     analysis related to 506- --

4            MR. MATOTT:  Objection.  Asked and

5     answered.

6            MR. MANN:  Yeah.  Objection to form as

7     well.

8     BY MR. KINAS:

9       Q.    So did you read the Debbie Reynolds case

10    from the Ninth Circuit at 255 F.3rd 1061 as part of

11    your preparation to do your job?

12      **A.    I did not read that specific case law,**

13    **but I did communicate my findings clearly to counsel**

14    **of the debtor, and if they had -- you know, I guess,**

15    **"presumably" is maybe the word for it, as they had**

16    **cited in these motions and replies familiarized**

17    **themselves with and reviewed that case law.**

18      Q.    So if you would go back to now, same

19    Paragraph 4, I would like you -- Lines 18 and 19.

20           Do you see where it says, you're

21    preparing an analysis of the professional fees

22    included in the surcharge expenses set forth in the

23    motion to analyze the reasonableness and necessity

24    in the debtor's efforts to preserve and enhance the

25    value of the secured creditors' collateral for the



Tanner James                                                    In re: Cash Cloud Inc.

Page 24

1    benefit of the secured creditors.

2              Do you see that phrase?

3    **A.    Yes.**

4         Q.    So as to the last phrase where it says,

5    "for the benefit of the secured creditors," is that

6    a Taylor-James-originated phrase that you came up

7    with, or is that some -- is that a phrase that was

8    supplied to you?

9              MR. MANN:  Objection to form.

10             MR. MATOTT:  Objection to the extent it

11   calls for anything that would divulge

12   attorney-client privilege.

13             **THE WITNESS:  Yeah.  I would say that --**

14   **I guess I would assume that the conversation that I**

15   **had with the attorneys about this matter were**

16   **between them and I.**

17   BY MR. KINAS:

18        Q.    So did you -- did you write Paragraph 4,

19   or did someone else write Paragraph 4?

20             MR. MANN:  Objection to form.

21             MR. MATOTT:  Objection to form.

22             **THE WITNESS:  Sure.  I didn't, you know,**

23   **sit down and type this, but I certainly sat with**

24   **counsel as we developed this declaration, gave my**

25   **comments and feedback as necessary.**



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 25

1    BY MR. KINAS:

2         Q.    So the last phrase of that sentence on

3    Line 19 says, "for the benefit of the secured

4    creditors."

5              Do you see that?

6    **A.    Yes.**

7         Q.    Now, you're aware that the debtor has

8    unsecured creditors, correct?

9    **A.    Of course.**

10        Q.    And you're aware that the debtor has

11   equity holders, correct?

12   **A.    Of course.**

13        Q.    So why -- why didn't your phrase say "for

14   the benefit of secured creditors, unsecured

15   creditors, and equity holders"?

16             MR. MANN:  Objection to form.

17             **THE WITNESS:  I don't believe that those**

18   **parties would have been relevant to the legality of**

19   **the surcharge and the fees that were being reviewed**

20   **because of that spew.**

21   BY MR. KINAS:

22        Q.    So as you sit here today, do you believe

23   that the unsecured creditors are not going to

24   receive a distribution from this bankruptcy estate?

25             MR. MANN:  Objection to form.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 26

1              MR. MATOTT:  Objection.  Calls for
2    speculation.
3              **THE WITNESS:  I believe that the debtor's**
4    **analysis of its Chapter 11 liquidating plan may have**
5    **a scenario where unsecured creditors receive a**
6    **distribution.**
7              **But that is still far to be determined by**
8    **the results of several assets that need to be**
9    **collected, some of which have already been**
10   **successfully initiated with promising results.**
11   BY MR. KINAS:
12       Q.    And as to the equity holders, as you sit
13   here today, do you believe that the equity holders
14   will be receiving a distribution under the plan?
15             MR. MANN:  Objection to form.
16             **THE WITNESS:  In my -- in my personal**
17   **analysis or review of what's transpired in this**
18   **bankruptcy, I would be very surprised if equity**
19   **received a distribution.**
20   BY MR. KINAS:
21       Q.    So going back to Paragraph -- or to Line
22   18 of Exhibit 2, do you see the phrase where it says
23   you were -- "again to analyze the reasonableness and
24   necessity in the debtor's efforts to preserve and
25   enhance the value of the secured creditors'



Tanner James                                                    In re: Cash Cloud Inc.

Page 27

1    collateral for the benefit of the secured

2    creditors."

3            So when -- when did you determine that

4    the debtor's efforts were solely related to benefit

5    the secured creditors only?

6            MR. MANN:  Objection to form.

7            MR. MATOTT:  Objection to form.

8            **THE WITNESS:  I guess you could say, you**

9    **know, it's over when it's over, so maybe when the**

10   **sale closed, but certainly there were points -- you**

11   **know, maybe I would make note of the revision the**

12   **original stocking course made to its bid where it --**

13   **probably a vow comes of secured creditors being the**

14   **only beneficial party of the sale increase.**

15   BY MR. KINAS:

16       Q.   So let's go to your third supplemental

17   declaration.  This is the Exhibit 3, 1307.  Let me

18   know when you have that in front of you.

19       **A.    Sure. (Examining documents.)**

20            **I have Exhibit 3 in front of me.**

21       Q.   And have you seen this exhibit before?

22       **A.    Yes.**

23       Q.   And on -- it's actually the fourth page

24   of the exhibit, you -- your e-signature is affixed.

25            Do you see that?



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 28

1        A.      You said the fourth page?

2        Q.      It's actually the fourth page.  It's

3    numbered 3, but the fourth page in has your

4    e-signature attached -- affixed.

5        A.      I see it, yes.

6        Q.      And did you authorize the debtor to affix

7    your e-signature to this third supplemental

8    declaration?

9        A.      Yes, I did.

10       Q.      So on the second page of ECF 1307, which

11   is Exhibit 3, there's a Paragraph numbered 3 that

12   starts on Line 16.

13              Could you read Paragraph numbered 3 to

14   yourself and let me know when you're done?

15              THE WITNESS:  I apologize.  Can you

16   redirect me to the page number?

17   BY MR. KINAS:

18       Q.      Page 2, Paragraph 3.

19       A.      Okay.  The one that begins with, On

20   September 22nd?

21       Q.      Yes.  If you could read that to yourself

22   and let me know when you're done, that would be

23   great.

24       A.      (Examining documents.)

25              Okay.  I'm done reading.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                In re: Cash Cloud Inc.

Page 29

1          Q.     So as to Paragraph 3, it mentions that

2    you have received combined monthly fee statements

3    from FTI; is that correct?

4          **A.     Yes, that's right.**

5          Q.     And in your earlier declarations, you did

6    not have the benefit of reviewing those statements.

7    They were not in your possession; is that correct?

8          **A.     The full invoices, I did not have in my**

9    **possession, so I could not review them; at least**

10   **initially.**

11         Q.     Again, on that same page -- and it goes

12   over to the following page -- if you can see on Line

13   23 of Exhibit 3, there's a Paragraph 4 that also

14   goes over to the next page.

15                Could you read that to yourself for a

16   second and then let me know when you're done?

17         **A.     Yes. (Examining documents.)**

18                **Okay.  I'm done.**

19         Q.     So as to the FTI monthly statements that

20   you received, earlier in your last declaration, you

21   described the process about how you reviewed each

22   time entry and reviewed it for reasonableness and

23   necessity.

24                Is that the -- now that you've had the

25   FTI invoices, is that the same process you employed



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 30

1    when you reviewed the FTI statements?

2        **A.    Yes.**

3        Q.    And did you find that any of their time

4    was unnecessary to the sale process?

5        **A.    No, not -- not on my review.**

6        Q.    And did you find that any of the FTI time

7    was unreasonable as part of the sale process?

8        **A.    No, especially considering that they were**

9    **generous enough to provide a flat bill rate across**

10   **their team, which is maybe unusual from what I've**

11   **seen.**

12       Q.    So the first line of Paragraph 4 says --

13   that on Line 23 is, "on request of the debtor and in

14   response to the issues raised in the objections."

15           Do you see that statement?

16       **A.    You said Line 23, Paragraph 4?**

17       Q.    Of Paragraph 4.

18           Do you see that phrase?

19       **A.    Yes, I do.**

20       Q.    And so that's -- is that the same phrase

21   that you also used in Exhibit 2?

22       **A.    It appears to be, yes.**

23       Q.    So if I asked you the identical

24   questions, your answers would be the same as to the

25   items in that phrase?



Tanner James                                                    In re: Cash Cloud Inc.

Page 31

1            MR. MANN:  Objection.  Form.

2            **THE WITNESS:  Generally, yes, I would say**

3     **so, with the difference of maybe -- I don't know the**

4     **dates, but a week of context in between, maybe, but**

5     **the exercise and I believe the meaning of that**

6     **statement are the same.**

7     BY MR. KINAS:

8            Q.    So describe generally what you did to

9     determine, again, the reasonableness and necessity

10    of the FTI fees as it relates to the sale motion.

11           **A.    Sure.  Specifically, FTI's?**

12           Q.    Yes.

13           **A.    Yeah.  So I -- after receiving individual**

14    **invoices from Michael Tucker, first I tallied the**

15    **fees included as it related to the sale process to**

16    **get a total and compare it to the original estimate**

17    **filed with the surcharge.**

18           **Then I looked through each period's**

19    **invoice starting with reviewing the task code**

20    **related to the sale process and then the amount of**

21    **fees in each period's invoice and then moved to the**

22    **individual time entries of that task code.**

23           **I reviewed the individual time entries.**

24    **I checked the date of the time entry.  I checked the**

25    **timekeeper of the time entry.  I checked the dollar**



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                          In re: Cash Cloud Inc.

Page 32

1    amount and the amount of hours of the time entry.

2              I checked the content of the memo.

3    Generally, the same process as the other

4    professional invoices that I reviewed.

5         Q.    And to your knowledge, FTI was hired by

6    the unsecured creditors committee; is that true?

7         A.    That -- that's my understanding of their

8    role on this bankruptcy.

9         Q.    And when you looked through FTI's time

10   entries, did you identify any services rendered by

11   FTI that were specifically benefiting the unsecured

12   creditors committee?

13        A.    With the context of the bankruptcy and

14   the sale process in mind, that being that the

15   proceeds generated by the sale only included

16   proceeds that would, at least from my understanding,

17   only benefit the secured creditors.

18              And since that billing category or task

19   code and the time entries within that task code for

20   each period were only related to the sale, in

21   disposition of assets on my review, the entries

22   within would inherently not be for the benefit of

23   the unsecured creditors.

24              Though, I'm sure every professional, you

25   know, tries to be mindful of the purpose of the



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 33

1    bankruptcy and the wellbeing of the estate, but

2    that, from my understanding, was not the point or

3    outcome of the time entries and the efforts in those

4    time entries that resulted in the sale since it only

5    benefitted secured creditors.

6         Q.    And do you have any understanding as to

7    whether FTI believed that only the secured creditors

8    were going to benefit from FTI's services at the

9    time they performed them?

10            MR. MANN:  Objection to form.

11            MR. MATOTT:  Objection.  Calls for

12    speculation.

13            THE WITNESS:  I don't know that I can

14    speculate as to what FTI believed at that time,

15    other than my review of the time entries, the work

16    that was described in those time entries, the amount

17    of time in those entries, the date, and the ultimate

18    outcome of the sale process, which they materially

19    assisted with that resulted in the sale of the

20    secured lenders' collateral.

21    BY MR. KINAS:

22         Q.    So same document, Exhibit 3, Paragraph 5.

23    Again, this is on the third page of Exhibit 3,

24    Paragraph 5.

25            Can you read that?



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 34

1          Do you see it starts at Line 10?

2          Could you read that to yourself and let

3    me know when you're done?

4       A.    **Sure. (Examining documents.)**

5             **Okay.**

6       Q.    And so as to -- so the law firm of Seward

7    & Kissel represents the unsecured creditors

8    committee; is that your understanding?

9       A.    **That's right.**

10      Q.    And did you analyze S&K's -- let's call

11   it -- just go - -for ease of reference, did you

12   analyze S&K's fee statements item by item, time

13   entry by time entry?

14      A.    **Yes, just as I did with the others.**

15      Q.    And if you could read Paragraph 6 to

16   yourself and let me know when you're done.

17      A.    **(Examining documents.)**

18            **I've read Paragraph 6.**

19      Q.    So Paragraph 6 mentions things that the

20   committee professionals were closely involved in

21   reviewing and negotiating and revising, the bidding

22   procedures and related sale documents and other

23   items.

24            So as to Paragraph 6, did you create this

25   paragraph of your own knowledge, or did someone



Page 35

1   supply this information to you?

2           MR. MANN:  Objection to form.

3           MR. MATOTT:  Objection to the extent it

4   calls for privileged information as well.

5           **THE WITNESS:  Sure.  I sat down with**

6   **counsel and developed this paragraph.**

7   BY MR. KINAS:

8       Q.    And did you sit down with committee

9   counsel or debtor's counsel?

10      **A.    Not -- not with respect to this**

11  **declaration.  This was with debtor counsel.  And**

12  **developed this declaration on my own personal**

13  knowledge and -- sorry.  One second. (Examining

14  documents.)

15          And certainly gave my feedback on what I

16  believed to be true as it related to this

17  declaration and this paragraph.

18      Q.    Did you independently do any due

19  diligence to confirm that the items supplied to you

20  by counsel actually benefitted the sale process?

21          MR. MANN:  Objection to form.

22          MR. MATOTT:  Objection.  Misstates the

23  testimony.

24          **THE WITNESS:  Sorry.  Could you repeat**

25  **your question, please?**



Tanner James                                        In re: Cash Cloud Inc.

Page 36

1  BY MR. KINAS:

2       Q.    Sure.

3             So on Paragraph 6, can you -- can you, as

4  you go through that, identify which items you had

5  specific knowledge that the committee was involved

6  in?

7             MR. MANN:  Same objections, by the way.

8             **THE WITNESS:  So you're asking if I**

9  **independently myself --**

10  BY MR. KINAS:

11      Q.    Yes.  I want to know which ones you knew

12  about and which ones you received information from

13  the debtor's counsel on.

14      **A.    And you're asking whether or not I knew**

15  **of or had seen specific instances where the**

16  **testimony in this paragraph which would make that**

17  **true?**

18      Q.    Yes.

19      **A.    Yes.**

20      Q.    So you're saying you had personal

21  knowledge of everything in Paragraph 6 as to what

22  the committee did?

23      **A.    Yes.**

24      Q.    So as to Paragraph 7 on the same page, if

25  you could read that to yourself and let me know when



Tanner James                                                    In re: Cash Cloud Inc.

Page 37

1    you're done.

2        **A.    (Examining documents.)**

3            **Okay.**

4        Q.    So same thing.  Did you develop Paragraph

5    7 with the help of debtor's counsel?

6            MR. MANN:  Objection to form.

7            **THE WITNESS:  Yes.**

8    BY MR. KINAS:

9        Q.    Anyone else?

10           Did you -- did you consult with committee

11   counsel?

12       **A.    I don't believe I had any conversations**

13   **with committee counsel.  Maybe I had had a**

14   **conversation with committee counsel at some point,**

15   **but specifically related to this paragraph and the**

16   **language in it, I don't believe so; not from my**

17   **memory, at least.**

18       Q.    As to Paragraph 8, could you read that to

19   yourself and let me know when you're done?

20       **A.    Sure. (Examining documents.)**

21           **Okay.**

22       Q.    And same question as to Paragraph 8.

23           Did you develop the language of this

24   paragraph in consultation with the debtor's counsel?

25           MR. MANN:  Objection to form.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                        In re: Cash Cloud Inc.

Page 38

1              THE WITNESS:  Yeah.  I certainly sat down

2      with debtor counsel, like the rest of this document,

3      and helped and assisted with the development and

4      crafting this language.

5      BY MR. KINAS:

6          Q.    So at any point in the sale process, did

7      any lawyers at the committee counsel tell you that

8      the unsecured creditors were unlikely to receive a

9      distribution under the plan?

10             MR. MANN:  Objection to form.

11             MR. MATOTT:  Objection to form and

12     objection attorney-client privilege.

13             THE WITNESS:  Yeah.  It would be very

14     difficult for me to say whether or not that was ever

15     said.  I -- I'm -- we have had several discussions

16     throughout the case as the case, as you may know,

17     has had lots of turns of events and in significant

18     ways.

19             And if that was ever said or a position

20     that the committee may have held, I -- I don't feel

21     comfortable saying whether or not that was exactly a

22     conversation that happened, but it's certainly

23     possible.

24     BY MR. KINAS:

25         Q.    Did any members of the committee's law



Page 39

 1   firm ever share to you as part of the sale process

 2   that they were providing services for the benefit of

 3   the secured creditors?

 4        **A.    I'm sorry.  Could you repeat your**

 5   **question?**

 6               MR. MATOTT:  Objection to form.

 7   BY MR. KINAS:

 8        Q.    Yes.

 9               Did -- at any point during the sale

10   process, did lawyers for the unsecured creditors

11   committee share with you that they were providing

12   legal services for the benefit of the secured

13   creditors?

14               MR. MANN:  Objection to form.

15               MR. MATOTT:  Object on privilege grounds

16   as well.

17               **THE WITNESS:  I don't know that the**

18   **intention of the work, you know, that the**

19   **committee's professionals were doing was ever**

20   **explicitly shared with me.**

21               **But knowing all the professionals in this**

22   **case, I'm certain that they all know the intentions**

23   **and point of the bankruptcy and that some of their**

24   **actions may have not been for the direct benefit**

25   **solely of their client.**



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

Page 40

1    BY MR. KINAS:

2        Q.    So the committee might have been

3    providing some services for the benefit of their

4    client and not for the secured creditors?

5              MR. MANN:  Objection to form.

6              MR. MATOTT:  Objection.  Calls for

7    speculation.

8              You can answer, to the extent you know.

9              THE WITNESS:  Sure.  I'm sure the

10   committee professionals, as any good bankruptcy

11   professional would, always has their client in mind.

12             I don't know that they ever said that

13   they were specifically doing any particular, you

14   know, time entry for the purpose of, you know, one

15   party other than maybe knowing that, at some point

16   early -- earlier than the auction, at the very

17   least, that the bidding process -- prospects had

18   diminished or not yielded at least as close to the

19   optimistic results as initially planned.

20             But I don't know that anyone ever clearly

21   said to me, We are working specifically on this task

22   or for any particular party other than the estate.

23             The outcome of the sale process did

24   clearly benefit almost exclusively the secured

25   creditors maybe with the aside of lease assumptions



Case 23-10423-mkn   Doc 1362-1   Entered 10/10/23 23:54:22   Page 43 of 58
UNCERTIFIED ROUGH DRAFT TRANSCRIPT
Tanner James                                          In re: Cash Cloud Inc.

Page 41

1   that happened.

2              MR. KISSNER:  Hi.  This is Andrew Kissner

3   from MoFo.  Could I just ask the committee's counsel

4   to please refrain from speaking objections.  Your

5   objection should be to the form of the question.

6   Thank you.

7              MR. KINAS:  So that's all the questions I

8   have.

9              Andrew or anybody, do you have any

10  additional questions for Tanner James?

11             MR. MATOTT:  I'm not sure if that was to

12  Andrew Kissner, but this is Andrew Matott for the

13  committee here.  We will have some questions.  We

14  would just like 10 minutes to consult with Mr. Mann

15  offline and rejoin.

16             MR. KINAS:  Andrew, do you have any

17  questions?  Kissner, Andrew Kissner.

18             MR. KISSNER:  I do not.  Thanks, Rob.

19             MR. KINAS:  Okay.

20             MR. MANN:  Yeah.  Just -- if we could

21  just take a 10-minute a break --

22             MR. KINAS:  Yeah.

23             MR. MANN:  -- and we'll come back with

24  some questions.

25                  (Recess 10:58 to 11:16 a.m.)



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                              In re: Cash Cloud Inc.

Page 42

1                        EXAMINATION

2    BY MR. MATOTT:

3        Q.    So, again, for the record, this is Andrew

4    Matott, counsel to the official committee of

5    unsecured creditors.  Just a couple more questions

6    for you.

7              I want to direct your attention back to

8    what's Docket 1307.  It was your third supplemental

9    declaration.

10       A.    Okay.

11       Q.    And turning to Paragraph 3, which starts

12   on Line 16, let me know when you're there.

13       A.    (Examining documents.)

14             Great.  I'm there.

15       Q.    And the billing statements that you refer

16   to here from FTI were provided to you on September

17   22nd; is that right?

18       A.    Yeah, that sounds right.

19       Q.    Were you aware -- are you aware any time

20   after this declaration FTI filed those invoices to

21   the docket in this case as part of their monthly fee

22   statement?

23       A.    Yes.  I do believe they filed them

24   shortly after, if not the same day.  I don't

25   remember exactly which day.



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                          In re: Cash Cloud Inc.

Page 43

1      Q.    And did you review those file invoices

2   from FTI?

3      A.    Yes, I did.

4      Q.    Were they substantially the same if not

5   -- strike that.

6            Were they the same as the invoices that

7   you're referring to in Paragraph 3 here of your

8   declaration?

9      A.    Yes.  I didn't completely reconduct the

10  exercise, but I certainly checked each period's

11  invoice to make sure that it was, you know, the

12  same, and that I didn't see any discrepancies --

13  material discrepancies of the contents of them.

14     Q.    Thanks.

15           And shifting gears slightly, you were

16  asked about whether you believe the fees that you

17  reviewed were necessary and reasonable.

18           You're not an attorney, are you,

19  Mr. James?

20     A.    I am not an attorney.

21     Q.    So can you just explain what you mean

22  when you say that the fees you reviewed were

23  necessary?

24     A.    Sure.  Throughout this case, there's been

25  significant effort by, you know, debtor



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Page 44

1    professionals and committee professionals alike that

2    were what I would, I guess, describe as an active

3    role versus maybe a passive role.

4              And those fees, from my experience and,

5    you know, role on this case, the work streams that

6    were done that resulted in those fees were certainly

7    helpful from the debtor's perspective.

8              If not helpful, you know, I guess you

9    could describe them as critical in some instances,

10   especially in proving the outcome of the sale

11   process to which, you know, the secured creditors

12   were the direct beneficiary of, I guess, is -- in my

13   non-attorney view.

14             And without any of the work that was

15   done, I think I would be ill advised to say that the

16   sale still would have closed or been approved in any

17   variety of speculative outcomes, I guess.

18        Q.    And, broadly speaking, can you walk us

19   through what -- at what stages of the case those

20   necessary fees were incurred?

21        A.    Sure.  You know, early on in the case, I

22   believe relatively near to when the committee was

23   hired and retained, the committee certainly

24   jumped -- you know, professionals jumped on in

25   helping us with the bid procedures, the documents,



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                    In re: Cash Cloud Inc.

Page 45

1    the thought processes of the marketing process.

2              The -- you know, eventually conversations

3    with -- not directly, maybe with the parties

4    themselves at least that early, but conversations

5    with us in deliberating how to market these assets,

6    I would say the development of, you know, definitive

7    documents during the period where the stocking horse

8    was selected.

9              And I'm also certainly aware of the

10   committee's professionals' roles in the critical

11   moments of, you know, the auction and the actual

12   sale process and -- as well as the development of,

13   you know, the final APA with the winning bidder.

14             Those are all things that --

15        Q.    Oh, sorry.  Go ahead.

16        A.    Yeah.  No worries.

17             Those are all things that, you know, I

18   can personally, you know, reflect on and, you know,

19   I guess, determine that I would say that they were

20   necessary to the sale closing the way that it did.

21        Q.    And when you describe time entries as

22   reasonable, can you describe what you mean by that?

23        A.    Sure.  Generally, if I've had a -- I

24   guess what I would call a large role on this case

25   and from the seat of the debtor adviser and I had



Page 46

1    the pleasure of interacting with most professionals

2    throughout the estate and an awareness of

3    milestones, key milestones, throughout the

4    bankruptcy as I'm often tasked with working on

5    aspects of those milestones.

6              And I'm familiar with who I'm interacting

7    with and who knows what -- who may be working on

8    certain things, and when I reviewed the fee

9    statements, it would -- it made sense to me that

10   certain individuals from certain parties, especially

11   the committee professionals, that they were

12   consistent with -- their time entries were

13   consistent with what I would expect them to be.

14             FTI even, you know, billing at, I guess,

15   what I would call a discount, and their work streams

16   and fees were, you know, ultimately consistent with

17   what I would expect for the sale process that we

18   were in.

19             MR. MATOTT:  Thank you.  The committee

20   has no further questions.  Thanks, everybody, for

21   your time.

22             MR. MANN:  I have none.

23             MR. KINAS:  Great.  Thank you so very

24   much.

25



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                In re: Cash Cloud Inc.

---

**$**

**$27,000**
14:22

---

**-**

**-for**
34:11

---

**1**

**1**
6:6 9:8 10:8

**10**
34:1 41:14

**10-minute**
41:21

**1061**
23:10

**10:58**
41:25

**11**
26:4

**11:16**
41:25

**12**
8:2

**1244**
6:25 7:3,14,16 9:3
10:1,8

**1280-**
8:7

**1281**
7:10 8:8,9

**1307**
6:25 7:7,14 9:3 27:17
28:10

**1507**
9:5

**16**
10:20 19:13 28:12

**18**
23:19 26:22

**19**
23:19 25:3

---

**2**

**2**
6:6 7:1,2 9:25 10:14,
20 19:7 26:22 28:18
30:21

**20,000**
14:24

**20th**
12:12

**22nd**
6:23 28:20

**23**
29:13 30:13,16

**255**
23:10

**27,000**
15:2

---

**3**

**3**
6:6 7:1,7 27:17,20
28:3,11,13,18 29:1,13
33:22,23

**30(b)(5)(a)**
6:5

**30(b)(5)(c)**
6:5

---

**4**

**4**
10:21 11:8 19:8,12
23:19 24:18,19 29:13
30:12,16,17

---

**5**

**5**
33:22,24

**506-**
23:3

---

**6**

**6**
34:15,18,19,24 36:3,
21

---

**7**

**7**
36:24 37:5

---

**8**

**8**
37:18,22

---

**A**

**a.m.**
41:25

**abbreviated**
8:19

**actions**
39:24

**actual**
13:6

**additional**
11:18,23 12:8 13:3
18:1 20:18 21:5 41:10

**adviser**
17:10,23

**affix**
10:16 28:6

**affixed**
10:10 27:24 28:4

---

**agree**
8:18

**agreed**
6:3

**amount**
14:16 31:20 32:1
33:16

**amounts**
13:9 15:4 17:7

**analysis**
13:14 15:13 18:1
20:19,22,23 21:6
22:22 23:3,21 26:4,17

**analyze**
23:23 26:23 34:10,12

**Andrew**
7:9 8:11 16:9 41:2,9,
12,16,17

**Angela**
14:12

**answers**
11:2 30:24

**apologize**
28:15

**appearing**
9:12

**appears**
30:22

**approval**
19:5

**approved**
22:10

**approximately**
12:7

**asserting**
21:10

**asset**
13:9

**assets**
15:14 26:8 32:21

**assisted**

---



Tanner James

In re: Cash Cloud Inc.

33:19 38:3

**assume**
24:14

**assumptions**
40:25

**attached**
28:4

**attorney**
20:4 22:21

**attorney-client**
21:9,11 24:12 38:12

**attorneys**
20:22 22:25 24:15

**auction**
40:16

**August**
6:23

**authorize**
10:16 28:6

**AVT**
19:20 20:2,5

**aware**
19:24 25:7,10

**Axelrod**
11:24

**B**

**back**
19:7 23:18 26:21
41:23

**bankruptcy**
25:24 26:18 32:8,13
33:1 39:23 40:10

**based**
20:23

**basis**
14:10,11 17:3

**began**
15:5

**begins**

28:19

**believed**
33:7,14 35:16

**beneficial**
27:14

**benefit**
18:3 21:25 24:1,5
25:3,14 27:1,4 29:6
32:17,22 33:8 39:2,12,
24 40:3,24

**benefiting**
32:11

**benefitted**
18:25 33:5 35:20

**bid**
27:12

**bidding**
34:21 40:17

**bill**
30:9

**billed**
16:22 18:16 19:3

**billing**
16:24 17:7 32:18

**billings**
13:4,11 16:25

**bit**
9:4 12:13

**bottom**
10:14

**break**
41:21

**Brett**
11:23

**briefs**
22:16

**budget's**
17:15

**budgets**
17:11

**buyer**
19:6 22:10

**C**

**call**
34:10

**called**
7:17

**calls**
21:9 22:3 24:11 26:1
33:11 35:4 40:6

**capacity**
17:9

**case**
23:9,12,17 38:16
39:22

**cases**
17:24 22:15 23:2

**category**
32:18

**caused**
20:18

**chance**
11:7

**Chapter**
26:4

**charge**
17:10

**checked**
13:11 31:24,25 32:2

**checking**
13:8,23 14:4 16:24

**Circuit**
23:10

**cited**
22:15,20 23:16

**clarification**
13:3

**client**
6:21 39:25 40:4,11

**clients**
16:24

**close**
18:17 40:18

**closed**
18:14 27:10

**closely**
34:20

**closing**
19:4 22:10

**code**
14:4 31:19,22 32:19

**codes**
13:10,16,17 17:4 22:8

**collateral**
18:19 23:25 27:1
33:20

**collected**
26:9

**collection**
19:5

**combined**
29:2

**comfortable**
38:21

**commencement**
6:2

**comments**
15:7 24:25

**committee**
7:10 16:9,11 17:24
32:6,12 34:8,20 35:8
36:5,22 37:10,13,14
38:7,20 39:11 40:2,10
41:13

**committee's**
38:25 39:19 41:3

**communicate**
23:13

**compare**
31:16



Tanner James                                                In re: Cash Cloud Inc.

compiled
12:23

conclude
15:13

conclusion
22:4

confirm
7:2 35:19

confirmed
19:2

consistent
13:12

consolidate
12:21

consolidated
12:20

consult
37:10 41:14

consultation
22:11 37:24

content
13:19 32:2

contents
14:3

contested
17:17

context
22:6 31:4 32:13

contribute
19:4

conversation
11:19,22 14:12,13
24:14 37:14 38:22

conversations
15:3 37:12

correct
9:3,15 17:1,4 21:20
25:8,11 29:3,7

cost
14:11,19

costs
14:22 15:5

counsel
11:20 15:3,7 20:23
21:2,3 23:13 24:24
35:6,9,11,20 36:13
37:5,11,13,14,24 38:2,
7 41:3

court
6:4 9:13 22:12

crafting
38:4

create
34:24

creditor
18:4

creditors
18:25 22:1 24:1,5
25:4,8,14,15,23 26:5
27:2,5,13 32:6,12,17,
23 33:5,7 34:7 38:8
39:3,10,13 40:4,25

creditors'
23:25 26:25

cut
9:4

_____

D

date
12:10 13:18 18:23,24
31:24 33:17

dates
18:9 31:4

days
12:11

Debbie
23:9

debtor
10:16 11:14,17 12:8,
16 16:10 17:10 22:21
23:14 25:7,10 28:6
30:13 35:11 38:2

debtor's
17:23 19:21 21:3
23:24 26:3,24 27:4
35:9 36:13 37:5,24

declaration
7:12,14 8:13,15,16
10:2 15:6 24:24 27:17
28:8 29:20 35:11,12,
17

declarations
29:5

depo
6:24

deposition
6:3 9:9,14

describe
31:8

details
13:3 22:19

determine
12:4 15:18 18:12 27:3
31:9

determined
26:7

develop
37:4,23

developed
24:24 35:6,12

developing
15:6,8 17:11

development
38:3

difference
31:3

differently
17:6

difficult
38:14

diligence
35:19

diminished
40:18

DIP
17:11

direct
39:24

discussion
11:1

discussions
38:15

disposition
13:10 32:21

distribution
25:24 26:6,14,19 38:9

divulge
24:11

docket
13:1

document
8:22 10:4 14:19 33:22
38:2

documents
7:4,8 10:5,25 11:10
14:15,17,20 19:11
27:19 28:24 29:17
34:4,17,22 35:14 37:2,
20

dollar
13:8 31:25

due
12:11,12 35:18

duly
6:11

duplicate
16:25

_____

E

e-mail
8:14 14:14

e-signature
27:24 28:4,7

earlier
29:5,20 40:16



UNCERTIFIED ROUGH DRAFT TRANSCRIPT

Tanner James                                                    In re: Cash Cloud Inc.

early
40:16

ease
34:11

easy
12:24

ECF
6:25 7:3,7 8:6,7 9:3
10:1 28:10

effect
8:14

effort
18:13

efforts
18:16 23:24 26:24
27:4 33:3

electronic
10:17

employed
29:25

encumbered
18:19

engagements
17:25

enhance
23:24 26:25

Enigma
8:14 19:21 20:12

entries
13:17 14:5 18:10,23
19:3 31:22,23 32:10,
19,21 33:3,4,15,16,17

entry
13:18,19,20,22 14:3,5
18:25 29:22 31:24,25
32:1 34:13 40:14

equity
25:11,15 26:12,13,18

errors
16:25

estate
25:24 33:1 40:22

estimate
31:16

estimates
13:12,13

events
38:17

exact
12:10

EXAMINATION
6:15

examine
18:2

examined
6:12 18:5,7

examining
7:4,8 10:5,25 11:10
19:11 27:19 28:24
29:17 34:4,17 35:13
37:2,20

Excellent
8:20 9:6,12

exception
14:8

excess
14:24

excessive
17:1

exchange
14:14

exclusively
40:24

excuse
16:8

exercise
31:5

exhibit
6:6 7:2,7 9:8,25 10:8,
14,20 19:7 26:22
27:17,20,21,24 28:11
29:13 30:21 33:22,23

Exhibits
7:1

expenses
23:22

expert
17:17,19

explaining
15:3

explicitly
39:20

extent
12:3,24 14:7 21:8
24:10 35:3 40:8

---

**F**

F.3rd
23:10

fact
19:4

familiarized
23:16

fee
13:7 16:18 18:23 29:2
34:12

feedback
24:25 35:15

feel
38:20

fees
7:21 12:2 14:7,9,16
15:5,14,15,18,22 16:2,
22,23 17:12,18 18:2,8
19:3 21:6,16,19,24
22:5,6 23:21 25:19
31:10,15,21

filed
6:24 12:21,25 16:22
17:12 19:20 22:21
31:17

filing
8:15 15:6,8

financial
17:10,23

find
15:22 30:3,6

findings
15:4 20:24 23:13

firm
34:6 39:1

flat
30:9

folder
12:24

form
14:7 16:4 18:6 20:20
21:7,21 22:2,17 23:6
24:9,20,21 25:16,25
26:15 27:6,7 31:1
33:10 35:2,21 37:6,25
38:10,11 39:6,14 40:5
41:5

found
15:4 19:3

fourth
27:23 28:1,2,3

front
9:2 27:18,20

FTI
29:3,19,25 30:1,6
31:10 32:5,11 33:7,14

FTI's
31:11 32:9 33:8

FTIS
13:1

full
29:8

---

**G**

gave
24:24 35:15

general
13:25

generally
17:2 19:23 31:2,8 32:3



Tanner James

In re: Cash Cloud Inc.

**generated**
32:15

**generous**
30:9

**Genesis**
6:22 19:21 20:15

**gist**
8:16

**Give**
11:9

**good**
6:17 7:15 40:10

**great**
8:10 28:23

**grounds**
39:15

**guess**
17:6 23:14 24:14 27:8

**H**

**handed**
7:1 9:7

**happened**
38:22 41:1

**happy**
9:22

**held**
38:20

**helped**
38:3

**helpful**
8:12

**high**
15:9

**high-level**
22:19

**highlights**
22:19

**hired**
32:5

**holders**
25:11,15 26:12,13

**hourly**
14:10

**hours**
32:1

**I**

**identical**
30:23

**identification**
6:7

**identify**
32:10 36:4

**impossible**
18:12

**included**
13:5 14:6,9,16,23
15:4,16 22:6 23:22
31:15 32:15

**increase**
27:14

**independently**
35:18 36:9

**individual**
13:8 17:3 31:13,22,23

**information**
35:1,4 36:12

**inherently**
32:22

**initially**
22:20 29:10 40:19

**initiated**
26:10

**instances**
14:24 36:15

**instructed**
20:23 21:5

**intention**
39:18

**intentions**
39:22

**investigation**
15:12

**invoice**
31:19,21

**invoiced**
17:13

**invoices**
12:3,21,23,25 13:7,8
17:14 21:15,18 22:7
29:8,25 31:14 32:4

**involved**
16:17 34:20 36:5

**involvement**
14:2 17:21

**issues**
19:9,15 20:17 30:14

**item**
34:12

**items**
30:25 34:23 35:19
36:4

**J**

**James**
6:10,19 11:7 41:10

**job**
23:11

**K**

**K-I-N-A-S**
6:21

**keeping**
17:13

**Kinas**
6:16,20 7:13 8:1,6,10,
17,20,24 9:1 11:6
15:11 16:6,15 18:20
20:11 21:1,13,23
22:13,23 23:8 24:17

25:1,21 26:11,20
27:15 28:17 31:7
33:21 35:7 36:1,10
37:8 38:5,24 39:7 40:1
41:7,16,19,22

**Kissel**
34:7

**Kissner**
8:11 41:2,12,17,18

**knew**
36:11,14

**knowing**
39:21 40:15

**knowledge**
9:18 32:5 34:25 35:13
36:5,21

**Koffroth**
11:23

**L**

**language**
37:16,23 38:4

**law**
22:20 23:12,17 34:6
38:25

**lawyers**
38:7 39:10

**lease**
40:25

**leave**
20:21 22:22

**leaving**
22:24

**legal**
20:22 22:4,22,24
39:12

**legality**
25:18

**lenders**
18:18

**lenders'**



33:20

**level**
15:9

**Lines**
11:3 23:19

**liquidating**
26:4

**listing**
12:20

**longer**
12:13

**looked**
31:18 32:9

**loosely**
22:18

**lots**
38:17

---

**M**

**made**
18:9 27:12

**mailing**
14:20

**maintaining**
17:10

**make**
18:24 27:11 36:16

**making**
13:18,23 15:7 16:22
17:3,5

**Mann**
7:15,22,25 8:3,18
16:4,13 21:7,10,21
22:2,17 23:6 24:9,20
25:16,25 26:15 27:6
31:1 33:10 35:2,21
36:7 37:6,25 38:10
39:14 40:5 41:14,20,
23

**marked**
6:6 9:7 10:8

**material**
17:8

**materially**
33:18

**Matott**
7:9 8:9,22 12:17 16:8,
9 18:6 20:8,20 21:8
22:3 23:4 24:10,21
26:1 27:7 33:11 35:3,
22 38:11 39:6,15 40:6
41:11,12

**matter**
17:17 24:15

**matters**
17:1

**meaning**
31:5

**members**
38:25

**memo**
13:19 14:3 32:2

**memory**
14:9 15:1 37:17

**mentioned**
7:19

**mentions**
29:1 34:19

**met**
6:23

**Michael**
31:14

**milestones**
18:11

**mind**
18:11,15 32:14 40:11

**mindful**
32:25

**minutes**
41:14

**missing**
7:23 8:1,5 12:25

**Misstates**
35:22

**Mofo**
8:12 41:3

**moment**
11:9

**monitoring**
17:14

**monthly**
29:2,19

**morning**
6:17

**motion**
17:21 19:22,25 22:20
23:23 31:10

**motions**
23:16

**moved**
31:21

---

**N**

**nature**
17:2

**necessity**
16:3,19,23 17:18
23:23 26:24 29:23
31:9

**negotiating**
34:21

**net**
18:17

**Nick**
11:22

**Ninth**
23:10

**Nos**
6:6

**note**
13:18,23 16:23 18:9,
24 27:11

**noted**
13:12

**notice**
9:9

**noticed**
14:15,18,19,25 15:2

**noticing**
13:4 14:11,21,22

**noting**
14:21

**NRCP/FRCP**
6:5

**number**
7:18 14:17,18 19:8
28:16

**numbered**
10:21 28:3,11,13

---

**O**

**oath**
9:15

**Object**
39:15

**objection**
7:11 12:17 16:4,11
18:6 20:2,6,12,15,20
21:7,8,21 22:2,3,17
23:4,6 24:9,10,20,21
25:16,25 26:1,15 27:6,
7 31:1 33:10,11 35:2,
3,21,22 37:6,25 38:10,
11,12 39:6,14 40:5,6
41:5

**objections**
19:9,16,19,20,25
20:18 22:14 30:14
36:7 41:4

**Official**
7:10

**offline**
41:15

**optimistic**



Tanner James

In re: Cash Cloud Inc.

40:19

**order**
12:19

**ordered**
22:11

**ordering**
19:5

**ordinary**
15:7

**original**
13:13 27:12 31:16

**outcome**
33:3,18 40:23

**outlined**
14:14

---

**P**

**pages**
14:17

**paragraph**
10:21 11:8,13 19:8,12
23:19 24:18,19 26:21
28:11,13,18 29:1,13
30:12,16,17 33:22,24
34:15,18,19,24,25
35:6,17 36:3,16,21,24
37:4,15,18,22,24

**part**
18:1 23:2,10 30:7 39:1

**parties**
6:3 14:18,21,24,25
15:2 22:11,16 25:18

**party**
14:1 27:14 40:15,22

**Perfect**
8:17

**perform**
20:23

**performed**
33:9

**period**

12:22 14:6 32:20

**period's**
31:18,21

**personal**
26:16 35:12 36:20

**phone**
14:13

**phrase**
11:13 19:8,10 24:2,4,
6,7 25:2,13 26:22
30:18,20,25

**piece**
22:8

**plan**
26:4,14 38:9

**planned**
40:19

**point**
7:15 20:10,13 33:2
37:14 38:6 39:9,23
40:15

**points**
27:10

**position**
38:19

**possession**
29:7,9

**postage**
14:10

**preparation**
23:2,11

**preparing**
23:21

**present**
6:3

**preserve**
23:24 26:24

**printing**
14:20

**prior**
6:2 16:22

**privilege**
21:9,11 24:12 38:12
39:15

**privileged**
35:4

**problem**
22:24

**procedures**
34:22

**proceeds**
18:18 19:6 32:15,16

**process**
12:5,6 13:4,9,21 15:7
29:21,25 30:4,7 31:15,
20 32:3,14 33:18
35:20 38:6 39:1,10
40:17,23

**professional**
12:2 15:13,15,18,22
16:2,18,21 17:12 18:2,
7,8,23 23:21 32:4,24
40:11

**professionals**
13:15 17:13 18:13,17
21:19 34:20 39:19,21
40:10

**professionals'**
13:11

**project**
17:8

**projections**
17:15

**projects**
16:1,17

**prominently**
16:20

**promising**
26:10

**prospects**
40:17

**provide**
8:6 30:9

**provided**
21:25

**providing**
39:2,11 40:3

**Province**
15:25 17:20

**Province's**
16:21

**purpose**
32:25 40:14

**purposes**
16:12

**pursuant**
6:4

**put**
13:24

**puzzle**
22:9

---

**Q**

**quantifiable**
21:25

**question**
18:22 35:25 37:22
39:5 41:5

**questions**
9:17,21 11:2 30:24
41:7,10,13,17,24

---

**R**

**raised**
19:9,15 20:17 30:14

**rate**
30:9

**reached**
12:8 13:2

**read**
10:23 11:3,7,11 20:2,
5,12 22:14,15 23:1,9,
12 28:13,21 29:15
33:25 34:2,15,18



Tanner James                                                                In re: Cash Cloud Inc.

36:25 37:18

**reading**
28:25

**ready**
9:23

**reasonable**
16:23 21:16

**reasonableness**
16:3,19 17:18 21:6
23:23 26:23 29:22
31:9

**recall**
12:7

**receive**
25:24 26:5 38:8

**received**
12:15 26:19 29:2,20
36:12

**receiving**
26:14 31:13

**recess**
41:25

**record**
6:18 11:1 16:10

**redirect**
28:16

**refer**
19:19

**reference**
34:11

**referring**
19:20

**reflect**
16:10

**refrain**
41:4

**rejoin**
41:15

**related**
12:4 13:4,9,20 15:14
22:8 23:3 27:4 31:15,

20 32:20 34:22 35:16
37:15

**relates**
31:10

**relating**
17:17

**relative**
17:15 18:10

**relevant**
12:22 13:20 14:6
25:18

**remember**
12:10 17:25

**rendered**
32:10

**repeat**
35:24 39:4

**rephrase**
9:22

**replies**
23:16

**reply**
22:20

**reporter**
6:4 9:13 11:4

**representative**
14:1

**represents**
34:7

**request**
11:14 12:15 30:13

**requested**
11:17,25 12:1 13:1

**reread**
11:9

**respect**
35:10

**respond**
21:12

**response**
18:21 19:9,15 30:14

**rest**
38:2

**result**
15:12,17,21

**resulted**
22:9 33:4,19

**results**
26:8,10 40:19

**retained**
14:1

**returning**
19:7

**review**
12:1,24 13:6 15:17,21
16:2 18:8 19:2 20:13,
15,16 21:24 26:17
29:9 30:5 32:21 33:15

**reviewed**
13:16 14:5 15:5,15
16:18 20:3,9 21:15,18
22:5,18 23:17 25:19
29:21,22 30:1 31:23
32:4

**reviewing**
16:21 17:11 22:7 29:6
31:19 34:21

**revising**
34:21

**revision**
27:11

**Reynolds**
23:9

**Rob**
41:18

**Robert**
6:20

**role**
13:25 17:7,8 32:8

**roughly**
14:22

**Rules**
6:4

---

**S**

**S&k's**
34:10,12

**sale**
12:5,6 13:4,9,21 15:14
18:14,17 19:5 22:9
27:10,14 30:4,7 31:10,
15,20 32:14,15,20
33:4,18,19 34:22
35:20 38:6 39:1,9
40:23

**sat**
24:23 35:5 38:1

**scenario**
26:5

**seat**
17:22

**secured**
18:4,18,25 22:1 23:25
24:1,5 25:3,14 26:25
27:1,5,13 32:17 33:5,
7,20 39:3,12 40:4,24

**SEI**
13:1

**sentence**
25:2

**September**
12:12 28:20

**services**
32:10 33:8 39:2,12
40:3

**set**
17:6 23:22

**Seward**
34:6

**share**
39:1,11

**shared**
16:11 39:20

**signature**
10:10,17



Tanner James

In re: Cash Cloud Inc.

**significant**
17:7 38:17

**single**
18:12

**sit**
24:23 25:22 26:12
35:8

**small**
17:7

**Snell**
6:21

**solely**
27:4 39:25

**sounds**
20:1

**speaking**
19:23 41:4

**speaks**
8:23

**specific**
18:3 23:12 36:5,15

**specifically**
13:17 22:7 31:11
32:11 37:15 40:13,21

**speculate**
33:14

**speculation**
26:2 33:12 40:7

**spew**
25:20

**standard**
8:23

**start**
9:25

**started**
9:23 13:6

**starting**
31:19

**starts**
28:12 34:1

**state**
6:17

**statement**
8:19 30:15 31:6

**statements**
6:4 13:7 16:18 29:2,6,
19 30:1 34:12

**step**
12:18

**steps**
12:16,20 15:10

**stocking**
27:12

**streams**
18:10

**Stretto**
13:2 14:9,13

**Stretto's**
14:16

**submitted**
8:23

**successful**
19:4

**successfully**
22:10 26:10

**supplement**
6:24,25 7:3,7

**supplemental**
7:13,16,17 8:3,4,13,15
10:1 27:16 28:7

**supplied**
24:8 35:19

**supply**
35:1

**supporting**
22:19

**surcharge**
12:2,5 13:5,14 14:6,
10,16,23 15:16 17:21
19:21,25 23:22 25:19
31:17

**surprised**
26:18

**sworn**
6:8,11

---

**T**

**tallied**
31:14

**Tanner**
6:10,19,20 41:10

**task**
12:9 13:10,16,17 14:4
17:4 22:8 31:19,22
32:18,19 40:21

**tasked**
16:21

**tasks**
11:18

**Taylor-james-
originated**
24:6

**team**
12:21 30:10

**testified**
6:12 17:16,19

**testimony**
35:23 36:16

**thing**
37:4

**things**
17:1 34:19

**time**
13:16,18,19,20,22
14:3,5 15:25 17:1
18:10,24 19:3 29:22
30:3,6 31:22,23,24,25
32:1,9,19 33:3,4,9,14,
15,16,17 34:12,13
40:14

**time-entry**
17:3 18:13

**timekeeper**
13:22,24 31:25

**timekeepers**
17:5 18:9

**today**
9:10,13,18 16:12
25:22 26:13

**top**
9:5

**total**
31:16

**track**
17:13

**tracking**
17:12

**transitory**
17:6

**transpired**
26:17

**triangulating**
16:25

**trick**
9:20

**true**
21:16 32:6 35:16
36:17

**truthfully**
9:18

**Tsai**
14:12

**Tucker**
31:14

**turn**
10:19

**turns**
38:17

**type**
17:4 24:23



Tanner James                                                    In re: Cash Cloud Inc.

---

**U**

**ultimate**
33:17

**ultimately**
22:9,11

**understand**
9:14,21 18:21

**understanding**
13:25 14:2 32:7,16
33:2,6 34:8

**undertake**
11:18

**unique**
14:24

**unnecessary**
15:19 30:4

**unreasonable**
15:23 30:7

**unsecured**
25:8,14,23 26:5 32:6,
11,23 34:7 38:8 39:10

**unusual**
30:10

---

**V**

**vow**
27:13

---

**W**

**waive**
6:3

**ways**
38:18

**week**
8:15 12:11 31:4

**weeks**
12:13

**wellbeing**
33:1

**whichever**
14:1

**Wilmer**
6:21

**word**
23:15

**work**
11:12 17:5 18:10,16
22:22,24 33:15 39:18

**working**
40:21

**write**
24:18,19

---

**Y**

**years**
17:20

**yielded**
40:18

