```
                    UNITED STATES BANKRUPTCY COURT
                     DISTRICT OF NEVADA (LAS VEGAS)

                                    .
IN RE:                              .  Case No. 23-10423-mkn
                                    .  Chapter 11
CASH CLOUD, INC.,                   .
                                    .  300 Las Vegas Blvd. South
                                    .  Las Vegas, NV 89101
              Debtor.               .
                                    .  Wednesday September 13,
                                    .  2023
. . . . . . . . . . . . . . . . . . .  9:34 a.m.
```

TRANSCRIPT OF MOTION TO CONVERT CASE FROM 11 TO CHAPTER 7, FEE AMOUNT 15, WITH CERTIFICATE OF SERVICE FILED BY CANDACE C. CARLYON ON BEHALF OF CHRIS MCALARY [1034];
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT FOURTEENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [690];
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT NINTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [675];
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT TWELFTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [684];
(CONTINUED)
BEFORE THE HONORABLE MIKE K. NAKAGAWA
UNITED STATES BANKRUPTCY COURT JUDGE

```
Audio Operator:         Cathy Shim, Remote ECR

Transcription Company:  Access Transcripts, LLC
                        10110 Youngwood Lane
                        Fishers, IN 46048
                        (855) 873-2223
                        www.accesstranscripts.com
```

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

TRANSCRIPT OF (CONTINUED):
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT FIFTEENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [693];
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT SIXTEENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [696];
AMENDED MOTION TO REJECT LEASE OR EXECUTORY CONTRACT SEVENTEENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [700];
MOTION TO REJECT LEASE OR EXECUTORY CONTRACT ELEVENTH OMNIBUS MOTION FOR ENTRY OF ORDER APPROVING REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365(A) WITH PROPOSED ORDER FILED BY JEANETTE E. MCPHERSON ON BEHALF OF CASH CLOUD, INC. [681]

TELEPHONIC APPEARANCES:

| | |
|---|---|
| For the Debtor: | Fox Rothschild LLP<br>By: BRETT A. AXELROD, ESQ.<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, NV 89135<br>(702) 262-6899 |
| For the Official Committee of Unsecured Creditors: | Seward & Kissel<br>By: ROBERT J. GAYDA, ESQ.<br>One Battery Park Plaza<br>New York, NY 10004<br>(212) 574-1632 |
| For Chris McAlary: | Carlyon Cica Chtd.<br>By: DAWN CICA, ESQ.<br>265 E. Warm Springs Road, Suite 107<br>Las Vegas, NV 89119<br>(702) 685-4444 |
| For the Arizona Department of Revenue: | Arizona Office of the Attorney General<br>By: BRADLEY STEVENS, ESQ.<br>2005 North Central Avenue<br>Phoenix, AZ 85004-1592 |

1    (Proceedings commence at 9:34 a.m.)

2            THE COURT:  The remaining matters on the 9:30

3    calendar, Items 2 through 9, are in connection with the Cash

4    Cloud Inc. matter.

5            May I have appearances for the record?

6            MS. AXELROD:  Good morning, Your Honor.  Brett

7    Axelrod, Fox Rothschild, for the debtor.

8            THE COURT:  Okay.

9            MR. GAYDA:  Good morning, Your Honor.  In addition to

10   Mr. Works, this is Bob Gayda of Seward & Kissel for the

11   Official Committee of Unsecured Creditors.

12           THE COURT:  Okay.  Thank you.

13           MS. CICA:  Good morning, Your Honor.  This is Dawn

14   Cica on behalf of Christopher McAlary.

15           THE COURT:  Okay.  Any other appearances in the Cash

16   Cloud matters?

17           MR. STEVENS:  Yes, Your Honor.  This is Bradley

18   Stevens, the Arizona Attorney General's Office, for the Arizona

19   Department of Revenue.

20           THE COURT:  Okay.  Thank you.

21           All right.  Any others?  Okay.  There appear to be no

22   others.

23           Ms. Axelrod, there was an agenda that you provided to

24   the Court sometime late yesterday afternoon.  It's Docket

25   Number 1204, and it outlines the matters that arguably are

1  going forward today.  It appears that the agenda items which I
2  think on the agenda are Items 1 through 8 -- it appears that
3  most of the items, the opposition has been withdrawn, and those
4  are dealing with the various motions to assume or reject
5  various leases.  If I'm understanding correct, it means that
6  there's one remaining matter that is still contested, and that
7  would be the motion to convert the case that is brought by
8  Ms. Cica's clients.  Is that your understanding, as well,
9  Ms. Axelrod?
10              MS. AXELROD:  Yes, it is, Your Honor.
11              THE COURT:  Okay.  Have all -- have any of the
12  parties not received the proposed agenda for this morning?  All
13  right.  Assuming that you have not, let's just deal quickly
14  with the remaining seven matters at the end of the agenda.
15  Those are Items 2 through 8.  They appear to be the various
16  omnibus motions to approve a rejection of various executory
17  contacts and unexpired leases.  And there was, as I indicated,
18  the withdrawal of the limited objections by the Brookfield
19  landlords.
20              Mr. -- is Mr. Bubala on the phone by any chance?  All
21  right.  Apparently not.
22              And you have seen no other response in connection
23  with these matters.  Is that correct, Ms. Axelrod?
24              MS. AXELROD:  Brett Axelrod.  Yes, that is correct,
25  Your Honor.  And we would be asking the Court to approve the

1  rejections as of the filing date of the various motions.

2          THE COURT: Okay. Mr. Gayda, on behalf of the

3  creditors' committee, do you have a position?

4          MR. GAYDA: Your Honor, for the record, Bob Gayda for

5  the Official Committee of Unsecured Creditors. No position on

6  that, Your Honor.

7          THE COURT: Okay. Ms. Cica, was there any opposition

8  or response filed by Mr. McAlary?

9          MS. CICA: No, Your Honor, there is not.

10         THE COURT: Okay. Thank you.

11         Mr. Stevens, on behalf of the Arizona Department of

12 Revenue, do you have a position on this matter?

13         MR. STEVENS: We don't take any position on the

14 matter, Judge.

15         THE COURT: Okay.

16         MR. STEVENS: We're just here for the motion to

17 convert.

18         THE COURT: Okay. Any others --

19         MR. STEVENS: Thank you.

20         THE COURT: All right. Thank you.

21         Any others wishing to appear on this matter? Okay.

22 Assuming there are not, the Court has reviewed each and every

23 one of these motions, including the details as to the specific

24 contracts or unexpired leases at issue. There being no

25 objection, good cause appearing from the declarations of Daniel

1  Ayala that have been filed in support of each of the motions,
2  the Court treats the matters as unopposed.  Good cause
3  appearing, I'll grant each one of the particular motions.  I'll
4  direct Ms. Axelrod to prepare the appropriate orders.
5           Mr. Gayda, on behalf of the creditors' committee, do
6  you want to sign off on the orders?
7           MR. GAYDA:  I don't think there's any need, Your
8  Honor.  Thank you.
9           THE COURT:  Okay.  Thank you.
10          Ms. Cica, do you want to sign off?
11          MS. CICA:  No, Your Honor, we do not want to sign
12 off.
13          THE COURT:  Okay.  Mr. Stevens, I take it you don't
14 want to sign off either?
15          MR. STEVENS:  That's correct, Judge.  No need for us
16 to sign off.
17          THE COURT:  Okay.  Ms. Axelrod, go ahead and prepare
18 each and every one of those orders and submit them to the Court
19 forthwith.
20          That gets us to the remaining matter on the agenda,
21 which is -- Ms. Cica, I believe it's your motion to convert
22 this proceeding to Chapter 7.  There was the motion that was
23 filed as Docket Number, I believe, 1034.  There is an
24 opposition filed by the debtors, Docket Number 1150, supported
25 by a declaration of Mr. Ayala as Docket Number 1151.  There was

1  a joinder filed on behalf of the creditors' committee as Docket
2  Number 1152, and there was a reply filed by Mr. McAlary as
3  Docket Number 1173.
4          Ms. Cica, did I miss any of the relevant documents?
5          MS. CICA:  Your Honor, I don't recall whether we
6  filed a declaration in connection with the reply, but I do
7  think we did.  I apologize.  I don't have the docket number at
8  hand.
9          THE COURT:  Okay.  And that would have been -- let's
10 see here -- okay.  I think you filed a declaration for
11 Mr. McAlary in support of the reply as Docket Number 1174.  Is
12 that what you are referring to?
13         MS. CICA:  Yes, Your Honor.  Thank you very much.
14         THE COURT:  Okay.  Was there anything else?
15         MS. CICA:  In terms of documents filed?
16         THE COURT:  Correct.
17         MS. CICA:  No, Your Honor.
18         THE COURT:  Okay.  All right.  I've had a chance to
19 review the documents.  I think I understand the arguments that
20 are being made.
21         Ms. Cica, was there anything that you wanted to
22 emphasize?
23         MS. CICA:  Your Honor, if you don't have any
24 questions, I will not burden the Court's time and save my
25 comments for the reply.

1      THE COURT: Okay. All right. There was opposition
2 that was filed. Ms. Axelrod, the -- your opposition as
3 supported by the declaration of Mr. Ayala. Was there anything
4 that you wanted to emphasize?
5      MS. AXELROD: Your Honor, I will rest on the
6 pleadings. I believe (audio interference) why the burden has
7 not been met here for conversion and that the creditors have
8 voted in favor of liquidation under the current approved plan,
9 and we would ask the Court to deny the motion.
10      THE COURT: Okay. All right. Then, Mr. Gayda,
11 anything that you wanted to emphasize on behalf of the
12 creditors' committee?
13      MR. GAYDA: Yes, Your Honor. Bob Gayda, Seward &
14 Kissel, for the Official Committee of Unsecured Creditors.
15 I'll try to keep this brief, Your Honor. I think we covered a
16 lot of this ground in connection with confirmation and, as
17 Ms. Cica and Ms. Axelrod have noted, I don't want to waste any
18 of the Court's time.
19      THE COURT: Okay.
20      MR. GAYDA: I just did want to point out that I think
21 Mr. McAlary's motivations here are very transparent.
22 Mr. McAlary is doing what is best for Mr. McAlary, and that's
23 what he's done throughout his tenure with the company. Really,
24 the Committee views this motion as an attempt to create a
25 nuisance that the estate has to deal with, and this is part of

1  a larger strategy to drag things out and force the estate to
2  expend time and resources that otherwise it would not have to.
3  That's evident in this motion, his appeal of confirmation, his
4  Rule 2004 motion, and what I'm sure will, ultimately, be an
5  objection to a Cole Kepro settlement that, hopefully, we're
6  going to get on the record in the very near term.
7          Mr. McAlary, obviously, is an individual would be
8  better off if a trustee is appointed.  It's not because he
9  believes it's going to increase his recovery on his alleged
10 claims but because it's going to buy him time in connection
11 with the committee litigation, and, hopefully, replace the
12 Committee with a trustee that is forced to spend time and
13 resources getting up to speed on a six-month-long investigation
14 that's identified numerous claims against Mr. McAlary.  Neither
15 of those purposes are legitimate bases for the appointment of a
16 trustee.  You know, the debtor has covered the legal arguments
17 in their paper.  I think we addressed them, as well.  And I
18 think it's readily evident per everything that's in the record
19 that Mr. McAlary has not shown and cannot show that the estate
20 is better off if a trustee is appointed.
21          Since confirmation, the estate's done exactly what we
22 discussed at that hearing, Your Honor.  We're doing what's
23 necessary to maximize the value of the estate assets.  That
24 includes, pursuant to the standing granted by Your Honor,
25 filing a complaint against Mr. McAlary and moving that

1  litigation forward as quickly as we can.  On that front, we've
2  engaged with Mr. McAlary and provided a settlement offer,
3  although Mr. McAlary has not responded to that proposal for
4  weeks.
5           We're close to finalizing a settlement with
6  Cole Kepro that we described at confirmation and hope to file
7  that very soon.  We've been working with Canadian counsel in
8  the BitAccess arbitration and are on the precipice of sending
9  demand letters for preferences to various counterparties.
10          So estate professionals are moving these cases
11 forward.  We're working on a number of work streams to try to
12 -- and we're doing this on an efficient and cooperative basis
13 despite the fact that we have to address these periodic
14 skirmishes with Mr. McAlary, who's trying to frustrate the
15 process.  I think it's clear that a trustee is not going to be
16 in a better position to do what is currently being done.  The
17 estate professionals have lived and breathed these issues, and
18 they're in the best situation to prosecute all of the estate
19 issues.
20          Replacing everyone here is only going to cause delay
21 and layer on expense.  Mr. McAlary is well aware of this, and
22 it's precisely why he filed the motion.  You know, I'll note
23 that in his motion, and, particularly in the reply, Mr. McAlary
24 relies on unsupported allegations, makes material misstatements
25 about a number of things.  He points fingers at the debtor's

1  advisors, again at the Committee, committee members, you know,

2  basically, pointing and blaming anybody but himself.

3          We take offense to his allegations that the Committee

4  is conflicted here and doing Cole Kepro's bidding.  There are

5  -- there's nothing in the record to support that.  None of that

6  is true, and it's simply a smoke screen to try to distract the

7  Court from the obvious, and that's that there's no legitimate

8  legal basis for the employment of a trustee.

9          So I would ask the Court to see this for what it is.

10 This isn't a legitimate creditor that is seeking to do the

11 right thing here, to right the ship in an estate that's gone

12 the wrong -- down the wrong path.  It's a litigation target

13 that's trying to wriggle off of the hook and serve his own

14 self-interest.  I think it's notable that no other creditor, no

15 other party in interest is in here arguing that this is better

16 for the estate.  It's Mr. McAlary, and I think that speaks

17 volume.

18         So based on that, Your Honor, the Committee strongly

19 believes that the relief requested by Mr. McAlary should be

20 denied.

21         THE COURT:  Okay.  Thank you.

22         All right.  Mr. Stevens, anything you want to add on

23 behalf of the Arizona Department of Revenue?

24         MR. STEVENS:  No, Your Honor.  We appreciate where

25 the status of the case, the confirmation, and we're satisfied

1  to go forward with the confirmed plan.  And I would also agree
2  with Mr. Gayda's comments.
3              THE COURT:  Okay.  All right.  Thank you.
4              Okay.  Ms. Cica, anything you want in the way of your
5  brief reply?
6              MS. CICA:  Yes, Your Honor.  Notwithstanding the
7  representations, again unsupported, made by the Committee and
8  in the papers by the debtor and to the extent appropriate, we
9  advised the Court of the facts that we believe in our papers.
10 Mr. McAlary thinks it's clear that the case should be converted
11 and a neutral trustee should be appointed without digging the
12 hole of the Chapter 11 administrative insolvency even deeper.
13             There are a lot of undisputed facts that are not
14 (audio interference) by counsel.  It's undisputed that the
15 liquidation of tangible assets is done, and that resulted in
16 attainability to even pay the secured creditors or the
17 administrative claims.  It's undisputed that the debtor has no
18 income.  It's undisputed that Chapter 11 claims continue to
19 grow.  It's undisputed that the Committee is cochaired by Cole
20 Kepro which is cited in prepetition litigation and
21 post-petition pleadings including the disclosure statements as
22 both the major cause of the bankruptcy and the target of
23 litigation which was intended to be a major source of recovery.
24             It is undisputed that nobody is pursuing that
25 litigation.  It is undisputed that there is other litigation

1   described in the disclosure statement as having potential
2   substantial value for the estate and creditors which has not
3   been pursued during the bankruptcy under the direction of the
4   professionals.  It's undisputed that the debtor and the
5   Committee have five sets of professionals at a very expensive
6   rate and that the debtor itself is being run by yet another
7   paid professional.  It's undisputed that the debtor does not
8   have enough cash to consummate the plan and pay administrative
9   professionals.
10             All of the other allegations are disputed.  And if
11  Your Honor is going to rely on those allegations, then we would
12  request an evidentiary hearing because it appears that counsel
13  for the Committee is making unsupported allegations on the
14  record which we dispute and which the Court may have adopted.
15  While the Court recently confirmed the plan, there is no
16  effective date in sight upon which a neutral liquidating
17  trustee will take over, so the case remains in this Chapter 11
18  limbo continuing to incur administrative expenses with five
19  sets of expensive professionals and neither income nor
20  operations.
21             While the Court has found that the debtor has broad
22  latitude to determine whether it should pursue the liquidation,
23  the fact is that the debtor is not pursuing the liquidation.
24  The Committee is pursuing liquidation, and the debtor and the
25  Committee, neither of which have provided authority that

1  indicates a committee, especially a committee cochaired by a
2  litigation target, is appropriate to liquidate over a Chapter 7
3  trustee.
4          As I said in our papers, this case harkens back to
5  pre-Code days where the bankruptcy system operated for the
6  benefit of attorneys rather than for the benefit of creditors.
7  Here, the case is being run for and run by the benefit of the
8  professionals, which is not proper.
9          The cases cited by the debtor, I just want to mention
10 that in the Ashburn case, the Court had actually already
11 appointed a Chapter 11 trustee who was overseeing the
12 litigation claims, but even in that case, initially, the Court
13 found that an inquiry into the relative administrative costs is
14 dispositive of the merits of conversion.  Here, the debtor has
15 told you in his liquidation analysis that it expects to incur
16 another $4.6 million to pay professionals to liquidate the case
17 and a trustee is only going to cost a couple of million
18 dollars.
19         The argument that the creditors voted for the
20 liquidation, we point out that it's not clear that the
21 creditors actually understood that the liquidation was going
22 to, A, be by the Committee, and, B, that they understood the
23 economics of that because the liquidation analysis was filed by
24 the debtor after the date the ballots were due.
25         And with respect to the debtor's arguments that it's

1  going to be such a burden for the trustee to follow up on the
2  litigation and with respect to Mr. Gayda's arguments that, you
3  know, it would be impossible for a trustee, he notes himself,
4  they've already filed a complaint and there has been no
5  discovery.  So it really isn't unusual in a case like this for
6  a trustee to take over the litigation filed by the Committee.
7              And, Your Honor, with that, we would ask that you
8  grant this motion or, to the extent you believe additional
9  evidence is necessary, send it over for an evidentiary hearing.
10             THE COURT:  Okay.
11             MS. CICA:  Thank you, Your Honor.
12             THE COURT:  All right.  Thank you.  Ms. Cica, can you
13 clarify and make sure I understand the record.  I believe it
14 was on September 6th, there were a couple of notice of appeal
15 filed by your office.  One of them was with respect to the
16 Court's ruling on Mr. McAlary's objection to confirmation of
17 the amended plan of reorganization.  That order was entered on
18 I believe August 24th.  I think your other notice of appeal was
19 with respect to the actual order approving the disclosure
20 statement on the final basis and confirming the plan, which was
21 a separate order entered by the Court.  Is that correct?  Are
22 those the two appeals you filed?
23             MS. CICA:  Your Honor, we believe that the
24 confirmation order is the second appeal, but the name of the
25 confirmation order, I believe, said approval of disclosure

1   statement even though there was a separate order approving the
2   disclosure statement.
3           THE COURT:  Okay.  I'm looking at an order, the title
4   of which is order (A) approving debtor's disclosure statement
5   on a final basis and (B) confirming debtor's first amended
6   plan.  Are you saying there's some other order?
7           MS. CICA:  I believe that there was a separate order
8   approving the disclosure statement.
9           THE COURT:  I see.  Okay.  And then there was a -- I
10  believe, a separate appeal with respect to the objection raised
11  by your client and that was an order -- that order that was
12  entered on or about August 24th.  You appealed that separate
13  order, as well.  Is that correct?
14          MS. CICA:  That's right, Your Honor.
15          THE COURT:  Okay.  And then there was yet a third
16  order that was entered, I believe, on August 24th which was the
17  order on the approval of -- or the opposition of approval of
18  the stipulation regarding derivative standing.  Isn't that
19  correct?
20          MS. CICA:  That is correct, Your Honor.
21          THE COURT:  All right.
22          MS. CICA:  And that was not --
23          THE COURT:  And there was no appeal of that order.
24  Is that right?
25          MS. CICA:  That's correct, Your Honor.

```
 1              THE COURT:  Okay.  With respect to the two appeals
 2   that were filed, were there any stays pending appeal that were
 3   ever sought?
 4              MS. CICA:  No, Your Honor.  And the reason for that
 5   is that, to the extent that debtors can confirm the plan to
 6   make the appeal moot, we would be very happy with that outcome,
 7   Your Honor, because then there would be liquidation trustee in
 8   place --
 9              THE COURT:  I see.
10              MS. CICA:  -- pursuant to the terms of --
11              THE COURT:  I see.  But no stay has been either
12   sought or obtained either from this court or from -- I believe
13   you had the appeals I think you chose -- you elected to have
14   the appeals heard by the district court.  Is that correct?
15              MS. CICA:  That's correct, Your Honor.
16              THE COURT:  All right.  So no stay of those orders
17   have been sought from this bankruptcy court nor from the
18   district court, and those stays have been entered.  Is that
19   right?
20              MS. CICA:  That's correct, Your Honor.
21              THE COURT:  Okay.  All right.  Anything else that you
22   wanted to add for the record?
23              MS. CICA:  No.  Thank you.
24              THE COURT:  Okay.  All right.  The -- that having
25   been said, was there anything else that you wanted to mention,
```

1  Ms. Axelrod?
2          MS. AXELROD:  No, Your Honor.
3          THE COURT:  Okay.  Mr. Gayda, anything that you
4  wanted to emphasize?
5          MR. GAYDA:  No.  Thank you, Judge.
6          THE COURT:  Okay.  I'll take the motion to dismiss or
7  convert under submission.  I'll issue an order shortly.
8          All right.  Thank you, Counsel.
9          MS. CICA:  Thank you, Your Honor.
10         THE COURT:  That gets -- you're welcome.
11     (Proceedings concluded at 9:56 a.m.)
12                         * * * * *
13
14                    **C E R T I F I C A T I O N**
15
16     I, Alicia Jarrett, court-approved transcriber, hereby
17 certify that the foregoing is a correct transcript from the
18 official electronic sound recording of the proceedings in the
19 above-entitled matter.
20
21
22  *[signature: Alicia F. Jarrett]*
23  _____
24  ALICIA JARRETT, AAERT NO. 428    DATE: October 10, 2023
25  ACCESS TRANSCRIPTS, LLC