Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
October 13, 2023

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | Case No. 23-10423-mkn |
| | Chapter 11 |
| CASH CLOUD, INC., | |
| dba COIN CLOUD, | |
| | Date:   April 20, 2023 |
| Debtor. | Time:   10:30 a.m. |

**ORDER ON LUIS FLORES'S MOTION FOR RELIEF
FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362(d)**[1]

On April 20, 2023, the court heard Luis Flores's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d) ("RAS Motion") brought in the above-captioned proceeding. The appearances of counsel were noted on the record. After the hearing, the matter was taken under submission.

**BACKGROUND**[2]

On February 7, 2023, Cash Cloud, Inc. dba Coin Cloud ("Debtor") filed a voluntary

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the Clerk of Court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. All references to "FRE" are to the Federal Rules of Evidence.

[2] Pursuant to FRE 201(b), the court takes judicial notice of all materials appearing on the docket in the above-captioned adversary proceeding and the above-captioned Bankruptcy Case See Bank of Am., N.A. v. CD-04, Inc. (In re Owner Mgmt. Serv., LLC Trustee Corps.), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

1

"skeleton" Chapter 11 petition ("Petition"). (ECF No. 1). The meeting of creditors under Section 341 ("341 Meeting") was scheduled for March 16, 2023, as well as a deadline of June 14, 2023, for proofs of claim to be filed. (ECF No. 2). Under Section 1121, the exclusive periods for the Debtor to file a proposed Chapter 11 plan as well as to obtain plan acceptance were June 7, 2023, and August 5, 2023, respectively. See 11 U.S.C. §§ 1121(b) and 1121(c)(3).

On February 27, 2023, an official committee of unsecured creditors ("UCC") was appointed. (ECF No. 131).

On March 9, 2023, Debtor filed its schedules of assets and liabilities ("Schedules") along with its statement of financial affairs ("SOFA"). (ECF Nos. 239 and 240). Part 3, Section 7.1 of the SOFA lists the Debtor's legal actions pending within the past year, including a civil action entitled Cash Cloud Inc. v. Flores, Case No. A-19-807370-B ("Flores Action"), that was concluded in Department 31 of the Eighth Judicial District Court for the State of Nevada, Clark County ("State Court"). Under Sections 541(a)(1) and 1115(a), Debtor's interest in the Flores Action constitutes property of the Chapter 11 estate. See generally Sierra Switchboard Co. v. Westinghouse Electric Corp., 789 F.2d 705, 707 (9th Cir. 1986).

On March 15, 2023, the instant RAS Motion was filed by Luis Flores ("Flores") seeking relief from the automatic stay with respect to the Flores Action. (ECF No. 287). The RAS Motion is accompanied by the declaration of Flores' bankruptcy counsel as well as Kimberly Stein, Esq. ("Stein Declaration"), who is Flores' attorney in the underlying civil action. (ECF Nos. 288 and 289). The RAS Motion was noticed to be heard on April 20, 2023. (ECF No. 290). As the named defendant in the subject civil action, Flores seeks limited relief from the automatic stay for "cause" under Section 362(d)(1) to allow the State Court to enter its written decision after a bench trial that was completed before the Chapter 11 proceeding was commenced.

On April 11, 2023, an objection to the RAS Motion was filed by the UCC ("UCC Objection"). (ECF No. 410).

On April 14, 2023, Flores filed a reply in support of the RAS Motion. (ECF No. 431).

**DISCUSSION**

1    Because the Flores Action was brought by the Debtor, the automatic stay does not apply
2    to the Debtor's continued pursuit of the Flores Action.  See Censo, LLC v. NewRez, LLC (In re
3    Censo, LLC), 638 B.R. 416, 424 (B.A.P. 9th Cir. 2022).  The automatic stay also does not apply
4    to any claims by non-debtors against any other non-debtor parties in the Flores Action.  See
5    Chugach Forest Products v. Northern Stevedoring & Handling Corp. (In re Chugach Forest
6    Products, Inc.), 23 F.3d 241, 246 (9th Cir. 1994); Aerodynamics Incorporated v. Caesars
7    Entertainment Operating Company, 2020 WL 5995488, at *2 (D. Nev. Oct. 9, 2020).  The
8    automatic stay also does not bar the Debtor or its principal from being subjected to discovery or
9    to being called as a percipient witness to the extent required in the Flores Action.  See Baker v.
10   Miller (In re Miller), 262 B.R. 499, 507 (B.A.P. 9th Cir. 2001).  The automatic stay does apply,
11   however, to any counterclaims asserted in the Flores Action against the Debtor.  See In re Censo,
12   638 B.R. at 424, citing Eisinger v. Way (In re Way), 229 B.R. 11, 14 (9th Cir. BAP 1998)
13   (because a counterclaim is an independent cause of action, relief from stay must be sought to
14   continue its prosecution).

15   There is no apparent dispute that a multi-day bench trial in the Flores Action was
16   conducted prior to commencement of the Chapter 11 proceeding.  There is no dispute that the
17   Flores Action encompasses multiple parties other than the Debtor, including Flores and other
18   third-party entities and affiliates.  See RAS Motion at 2:16-21.  There is no dispute that the State
19   Court was prepared to enter a written decision after trial.  There is no dispute that the automatic
20   stay arose on February 7, 2023, preventing at least further action on any counterclaims against
21   the Debtor.

22   There is no apparent dispute that the Debtor represented to the State Court that it would
23   seek relief from stay to allow the State Court to enter its written decision after trial.  See Exhibit
24   "2" to Stein Declaration.[3]  Perhaps because the Debtor already intends to seek relief from stay to

---

[3] That exhibit is a copy of a letter dated February 22, 2023, from Debtor's counsel in the Flores Action addressed to the judge who conducted the bench trial.  Among other things, page 2 of that correspondence observes:  "While Cash Cloud is eager for the [State Court] to issue its decision on these claims, Cash Cloud recognizes the additional burden that segregating the Court's decision on these claims would have on the Court.  Additionally, Cash Cloud intends to seek relief from the bankruptcy stay concerning this action as soon as it is administratively

1   permit the written decision to be entered, it has not filed any opposition to the RAS Motion.[4]  In

2   other words, the Debtor does not oppose relief from stay to permit the State Court to enter its

3   post-trial written decision.

4          The UCC has filed a response to the RAS Motion, but also does not oppose relief from

5   stay to permit the State Court to enter its post-trial written decision.  The UCC, and perhaps the

6   Debtor, does oppose relief from stay, however, to the extent of any appeals that Flores might

7   take from the State Court's written decision.  See UCC Objection at 2:16 to 3:4.  Because the

8   State Court's decision is unknown, the identity of the party who might appeal all or part of the

9   decision also is unknown: it could be Flores, the Debtor, any other non-debtor party, or even all

10  of the parties.  Bankruptcy law, of course, does not govern the deadline under applicable state

11  law for an appeal or other relief to be sought from a state court decision.  Only Flores and the

12  Debtor are parties to the Flores Action who are now before this bankruptcy court.  Neither Flores

---

capable to do so (Cash Cloud anticipates seeking relief from the bankruptcy stay in about four (4) weeks.").

[4] Ordinarily contested motions seeking relief to allow continuation of pending state court litigation involves competing arguments over the so-called "Sonnax/Curtis" factors. See In re EB Holdings II, Inc., 591 B.R. 10, 15016 (Bankr. D. Nev. 2018).  Twelve factors typically are considered.  See Fattorini v. Merriman (In re Merriman), 616 B.R. 385, 389 n.5 (B.A.P. 9th Cir. 2020) (**whether the relief will result in a partial or complete resolution of the issues**; the lack of any connection with or interference with the bankruptcy case; whether the foreign proceeding involves the debtor as a fiduciary; whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; **whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties**; whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); **the interest of judicial economy and the expeditious and economical determination of litigation for the parties**; **whether the foreign proceedings have progressed to the point where the parties are prepared for trial**; and **the impact of the stay on the parties and the "balance of hurt."**).  A discussion of all of the factors is not required.  See In re Merriman, 616 B.R. at 390-91.

nor the Debtor have stipulated or offered to stipulate to an extension of time to appeal any written decision entered by the State Court.

Having considered all of the relevant Sonnax/Curtis factors, the court concludes that the RAS Motion should be granted in all respects, including any appeals from the orders of the State Court. The court reaches this conclusion for a number of reasons.

First, the Flores Action involves not just the Debtor and Flores, but other parties who may be affiliated with them. The lengthy trial completed by the State Court will address part or all of the issues between the parties, and the resulting judgment may have both issue-preclusive and claim preclusive consequences.

Second, no suggestion has been made by the UCC that entry of the written decision by the State Court will cause legal prejudice to any other creditors of the Chapter 11 estate, or to creditors of the non-debtor parties to the Flores Action.

Third, entry of the written decision by the State Court after completion of a lengthy bench trial represents the most efficient and economical expenditure of the judicial resources of the State Court as well as the bankruptcy court.

Fourth, no suggestion is made that the trial completed by the State Court and any resulting order would be susceptible to collateral attack in the bankruptcy court or in any other federal court. The "Rooker-Feldman" doctrine would bar such an attempt by any of the parties to the Flores Action. See, e.g., Cogan v. Trabucco, 2022 WL 17081241, at *3-4 (D. Nev. Nov. 18, 2022) (The Rooker-Feldman doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state-court judgments.'").

Fifth, the admitted possibility of an appeal of the State Court decision illustrates the prejudicial impact that might follow from the strictures of Rooker-Feldman: denying relief from stay with respect to any appeals in the Flores Action would bar litigants from seeking review through the Nevada appellate process, while the litigants also would be barred from seeking review through the federal courts.

Finally, the costs of pursuing or defending an appeal in the Flores Action, or doing both, is part of the calculus for all parties to any litigation. On behalf of its constituency, the UCC is naturally concerned about such costs as part of its decision-making process. Despite having gone through a multi-day trial, however, Debtor has offered no evidence as to the possible cost of any appeals in the Flores Action.

Based on the totality of circumstances, including consideration of the Sonnax/Curtis factors, the court concludes that Flores has met his burden of establishing cause within the meaning of Section 362(d)(1) to grant relief from stay.

**IT IS THEREFORE ORDERED** that Luis Flores's Motion for Relief from Automatic Stay Pursuant to 11 U.S.C. § 362(d), Docket No. 287, be, and the same hereby is, **GRANTED**.

**IT IS FURTHER ORDERED** that the automatic stay in the above-captioned bankruptcy proceeding is **TERMINATED** with respect to the civil case entitled <u>Cash Cloud Inc. v. Flores</u>, denominated Case No. A-19-807370-B, pending in the Eighth Judicial District Court for the State of Nevada, Clark County.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
CASH CLOUD, INC.
ATTN: OFFICER OR MANAGING AGENT
11700 W CHARLESTON BLVD., #441
LAS VEGAS, NV 89135

JAMES M. JIMMERSON
THE JIMMERSON LAW FIRM, P.C.
415 SOUTH 6TH STREET, SUITE 100
LAS VEGAS, NV 89101

ROBERT J. GAYDA
ANDREW J. MATOTT
SEWARD & KISSEL
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

# # #