BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
       nkoffroth@foxrothschild.com

*Counsel for Debtor*

Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
**McDONALD CARANO LLP**
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
**SEWARD & KISSEL LLP**
*admitted pro hac vice*
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC. dba COIN CLOUD,<br><br>Debtor. | Bankruptcy Case No.: 23-10423-mkn<br><br>Chapter 11<br><br>**JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH GENESIS GLOBAL HOLDCO, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>Date of Hearing:  November 30, 2023<br>Time of Hearing: 10:30 a.m. |

      Cash Cloud, Inc. dba Coin Cloud (the "Debtor") and the Official Committee of Unsecured Creditors ("UCC"), by and through their respective undersigned counsel, hereby respectfully submit this *Motion to Approve Settlement Agreement with Genesis Global Holdco, LLC Pursuant to Federal*

150454475.1

*Rule of Bankruptcy Procedure 9019* (the "Motion") requesting entry of an order in the form attached hereto as **Exhibit 1** (the "Proposed Order") approving the *Settlement Agreement* (the "Settlement Agreement") attached to the Proposed Order as Exhibit 1 entered into by and among the parties thereto (the "Parties") pursuant to Bankruptcy Rule 9019,[1] and authorizing the Parties to take any and all actions necessary to effectuate the terms of the Settlement Agreement. This Motion is made and based on the following memorandum of points and authorities, the pleadings, papers, and other records on file with the Court, judicial notice of which is hereby requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  JURISDICTION, VENUE, AND BASIS FOR RELIEF

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (O). Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The basis for the relief sought herein is Bankruptcy Rule 9019.

3. Pursuant to Local Rule 9014.2, the Parties consent to entry of final order(s) or judgment(s) by the bankruptcy judge to the extent that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the United States Constitution.

### II.  FACTS

4. On or about April 22, 2022, the Debtor entered into that certain Secured Loan Facility Agreement (as amended, superseded, or otherwise modified from time to time, the "Enigma Loan") pursuant to which Enigma Securities Limited ("Enigma") loaned the Debtor $8 million. The Enigma Loan is purportedly secured by a lien on certain cryptocurrency automated

---

[1] All references to "Chapter" and "Section" hereinafter are to title 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" are to the Local Rules of Bankruptcy Practice for the U.S. District Court for the District of Nevada.

teller machines and the cash proceeds contained therein and generated therefrom listed on the schedule attached to the Enigma Loan documents (the "Enigma Kiosk Collateral"). On April 25, 2022, Enigma filed its UCC-1 Financing Statement (the "Enigma Financing Statement"), referencing 3677 cryptocurrency ATMs listed on Schedule 1 thereto.

5. On November 1, 2022, the Debtor entered into that certain Secured Demand Promissory Note (as amended by that certain Amended and Restated Secured Demand Promissory Note, dated as of November 23, 2022, the "Genesis Promissory Note") between the Debtor, as borrower, and Genesis Global Holdco, LLC ("Genesis"), pursuant to which, among other things, Genesis advanced to the Debtor $6 million on November 2, 2022 and $1.5 million on November 23, 2022. The Genesis Promissory Note is secured by all assets of the Debtor (the "Genesis Collateral"), including the Enigma Kiosk Collateral.

6. On February 7, 2023 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 in the United States Bankruptcy Court for the District of Nevada, commencing the above-captioned chapter 11 case [ECF No. 1] (the "Bankruptcy Case").

7. On February 17, 2023, the United States Trustee for the District of Nevada appointed members of the UCC in the Bankruptcy Case [ECF No. 131], which was thereafter amended on February 28, 2023 [ECF No. 177] and August 10, 2023 [ECF No. 1066]. The UCC has a statutory duty to maximize the value of the assets of the Debtor's estate for the benefit of all of the Debtor's unsecured creditors.

8. On March 20, 2023, the Bankruptcy Court entered the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection* [ECF No. 315], which provided that, among other things, the Stipulations (as defined therein) with respect to Enigma would become binding on parties in interest upon the applicable Challenge Period Termination Date (as defined therein).

9. On July 24, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Derivative Standing and Authority to*

*Commence, Prosecute and Settle Claims on Behalf of the Debtor's Estate* [ECF No. 925] (the "Standing Motion") seeking derivative standing to prosecute and/or settle, among other things, certain causes of action against Enigma, including the Lien Challenge Claims (as defined therein), on behalf of the Debtor's estate.

10. On August 25, 2023, the Bankruptcy Court entered an *Order (A) Approving Debtor's Disclosure Statement [ECF No. 529] on a Final Basis; and (B) Confirming Debtor's First Amended Chapter 11 Plan of Reorganization dated August 1, 2023 [ECF No. 996]* [ECF No. 1126] (the "Confirmation Order"), which confirmed the *Debtor's First Amended Chapter 11 Plan of Reorganization dated August 1, 2023* [ECF No. 996] (the "Plan").

11. As of the Execution Date, the Challenge Period Termination Date with respect to Enigma has occurred for all parties in interest other than the Committee, such that only the Committee can pursue the Lien Challenge Claims.

12. Absent the Parties' entry into this Agreement, if the Committee prevails in resolving the Lien Challenge Claims, Genesis asserts that the proceeds from such resolution would inure to the benefit of Genesis by virtue of its security interest in the Enigma Kiosk Collateral.

13. After good faith, arm's-length negotiations, the Parties have agreed to share the proceeds of any resolution of the Lien Challenge Claims in accordance with the terms of the Settlement Agreement.

14. For these reasons, as fully developed herein, the Parties ask that the Court grant the instant Motion.

### III. TERMS OF SETTLEMENT

15. Pursuant to Local Rule 9019(c), the Parties provide the following summary of the essential terms of the Settlement Agreement:[2]

    a. Genesis agrees to release its liens on the Enigma Collateral that is subject to the Lien Challenge Claims in exchange for the greater of (a) $33,000 and (b) 33% of the proceeds (i) obtained from any consensual resolution or

---

[2] The foregoing is merely intended to be a summary of the material terms of the settlement between the Parties. To the extent of any inconsistency between this Motion and the Settlement Agreement, the terms of the Settlement Agreement govern.

Page 4 of 8

150454475.1

settlement of the Lien Challenge Claims with Enigma or (ii) if the Lien Challenge Claims are successful, arising from any sale, monetization, or liquidation of the Enigma Kiosk Collateral subject to the successful Lien Challenge Claims.

## IV. LEGAL ARGUMENT

### A. Legal Standard.

16. Compromise and settlement agreements have long been an inherent component of the bankruptcy process. *See Protective Comm. for Index Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1958) (citing *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)). The approval of compromises or settlements in bankruptcy proceedings is generally governed by Bankruptcy Rule 9019(a), which provides the following:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

17. Compromises are favored in bankruptcy; thus, the decision of the bankruptcy judge to approve or disapprove the compromise of the parties rests in his or her sound discretion. *See In re Stein*, 236 B.R. 34, 37 (Bankr. D. Or. 1999). The law prefers compromise "as long as the bankruptcy court amply considered the various factors that determined the reasonableness of the compromise." *Martin v. Kane (In re A & C Properties),* 784 F.2d 1377, 1381 (9th Cir. 1986). Public policy supports pretrial compromises because litigation "can occupy a court's docket for years on end, depleting resources of the parties and the taxpayers while rendering meaningful relief elusive." *In re Grau*, 267 B.R. 896, 899 (Bankr. S.D. Fla. 2001) (quoting *Matter of Munford, Inc.,* 97 F.3d 449, 455 (11th Cir. 1996)).

18. The United States Supreme Court has expressed that a bankruptcy settlement must be fair and equitable. *See Protective Comm. For Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968). The Ninth Circuit Court of Appeals has stated that "in order to determine whether a proposed settlement is fair and equitable, the bankruptcy court must consider four factors: (a) the probability of success in the litigation; (b) the difficulties, if any, to

150454475.1

be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises." *See In re Stein*, 236 B.R. at 37; *see also In re A & C Properties*, 784 F.2d at 1381; *Schmitt v. Ulrich*, 215 B.R. 417, 421 (B.A.P. 9th Cir. 1997). A trustee is not necessarily required to satisfy each of these factors as long as the factors as a whole favor approving the settlement. *See In re Pacific Gas and Electric Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004); *In re WCI Cable, Inc.*, 282 B.R. 457, 473-74 (Bankr. D. Or. 2002). Further, the settlement does *not* have to be the best the trustee could have possibly obtained; rather, the settlement must only fall "within the reasonable range of litigation possibilities." *See In re Adelphia Comm. Corp.,* 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005) (citing *In re Penn Cent. Transp. Co.,* 596 F.2d 1102, 1114 (3d Cir. 1979) ("Indeed, a court may approve a settlement even if it believes that the Trustee ultimately would be successful.")).

19. There is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion—and the bankruptcy court will not be reversed if the appellate court concludes that the settlement lies within that range. *See id.* (citing *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). The bankruptcy court "need not conduct an independent investigation into the reasonableness of the settlement but must only 'canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.'" *See id.* (citing *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983)); *see also Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.)*, 382 F.3d 68, 71-72 (1st Cir. 2004); *In re Energy Cooperative, Inc.*, 886 F.2d 921, 929 (7th Cir. 1989); *New Concept Housing, Inc. v. Poindexter et al.* (*In re New Concept Housing, Inc.*), 951 F.2d 932, 938 (8th Cir. 1991).

    **B.**  **The Settlement Agreement Should Be Approved Pursuant to Fed. R. Bank. P. 9019.**

20. For the reasons set forth below, the Settlement Agreement is fair and reasonable and in the best interest of the Debtor and its estate. Accordingly, this Court should grant this Motion and approve the Settlement Agreement.

150454475.1

21. Here, the Settlement Agreement does not fall below the lowest range of reasonableness. Specifically, the Settlement Agreement is essential to facilitating a recovery to the estate in connection with the Lien Challenge Claims and will provide the estate with the ability to receive a significant portion of the proceeds if the UCC is successful in pursuit of the Lien Challenge Claims. Absent a settlement with Genesis, because the Genesis Collateral includes the Enigma Kiosk Collateral, the estate would be at risk of receiving no recovery on account of such claims.

22. As to the paramount interest of the creditors and a proper deference to their reasonable views in the premises, certainly the UCC's negotiation and support of the settlement contemplated in the Settlement Agreement carries significant weight.[3] This support alone should satisfy the "paramount interests of the creditors" test. The Court should give deference to the reasonable view of the UCC, which, under these circumstances, is without reproach. Accordingly, under the circumstances, and given that the settlement provides for the ability of the estate to recover in connection with any successful Lien Challenge Claims, the Settlement Agreement is reasonable and in the best interests of the estate and its creditors.

## V. CONCLUSION

Based on the foregoing, the Debtor and the UCC respectfully request entry of the Proposed Order and such other and further relief as may be deemed proper.

Dated this 13th day of October, 2023.

**FOX ROTHSCHILD LLP**

By: /s/ Brett A. Axelrod
 BRETT A. AXELROD, ESQ.
 Nevada Bar No. 5859
 NICHOLAS A. KOFFROTH, ESQ.
 Nevada Bar No. 16264
 1980 Festival Plaza Drive, Suite 700
 Las Vegas, Nevada 89135

*Counsel for Debtor*

---

[3] Although Genesis is a member of the Committee, it recused itself from all discussion of, and votes on, the Settlement Agreement, consistent with the Committee's duly approved Bylaws.

**McDONALD CARANO LLP**

By: */s/ Ryan J. Works*
    Ryan J. Works, Esq. (NSBN 9224)
    Amanda M. Perach, Esq. (NSBN 12399)
    2300 West Sahara Avenue, Suite 1200
    Las Vegas, Nevada 89102

    John R. Ashmead, Esq.
    Robert J. Gayda, Esq.
    Catherine V. LoTempio, Esq.
    Andrew J. Matott, Esq.
    *Admitted pro hac vice*
    SEWARD & KISSEL LLP
    One Battery Park Plaza
    New York, NY 10004

    *Counsel for Official Committee*
    *of Unsecured Creditors*

150454475.1

# EXHIBIT 1

# PROPOSED ORDER

| | |
|---|---|
| Brett A. Axelrod, Esq. (NSBN 5859)<br>Nicholas A. Koffroth, Esq. (NSBN 16264)<br>**FOX ROTHSCHILD LLP**<br>1980 Festival Plaza Drive, Suite 700<br>Las Vegas, Nevada 89135<br>Telephone: (702) 262-6899<br>Email: baxelrod@foxrothschild.com<br>          nkoffroth@foxrothschild.com<br><br>*Counsel for Debtor* | Ryan J. Works, Esq. (NSBN 9224)<br>Amanda M. Perach, Esq. (NSBN 12399)<br>**McDONALD CARANO LLP**<br>2300 West Sahara Avenue, Suite 1200<br>Las Vegas, Nevada 89102<br>Telephone: (702) 873-4100<br>rworks@mcdonaldcarano.com<br>aperach@mcdonaldcarano.com<br><br>John R. Ashmead, Esq.<br>Robert J. Gayda, Esq.<br>Catherine V. LoTempio, Esq.<br>Andrew J. Matott, Esq.<br>**SEWARD & KISSEL LLP**<br>*admitted pro hac vice*<br>One Battery Park Plaza<br>New York, NY 10004<br>Telephone: (212) 574-1200<br>ashmead@sewkis.com<br>gayda@sewkis.com<br>lotempio@sewkis.com<br>matott@sewkis.com<br><br>*Counsel for Official Committee*<br>*of Unsecured Creditors* |

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC. dba COIN CLOUD,<br><br>Debtor. | Case No.: 23-10423-mkn<br><br>Chapter 11<br><br>**ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH GENESIS GLOBAL HOLDCO, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>Date of Hearing:<br>Time of Hearing: |

150454519.1

1    THIS MATTER came before the Court on a hearing on the *Joint Motion to Approve Settlement Agreement with Genesis Global Holdco, LLC Pursuant to Fed. R. Bankr. P. 9019* (the "Motion")[1] [ECF No. ____] filed jointly by Cash Cloud, Inc. dba Coin Cloud (the "Debtor") and the Official Committee of Unsecured Creditors ("UCC").  Appearances were noted for the record.  The Court reviewed the above-referenced Motion, the responses thereto, and heard and considered the arguments of counsel at the hearing on this matter.  Proper notice having been given, the Court placed its findings of fact and conclusions of law on the record at the hearing and for good and sufficient cause appearing,

**IT IS SO ORDERED THAT,** the Motion, the Settlement Agreement (attached hereto as Exhibit A) and the implementation of the Settlement Agreement are hereby approved in their entirety.

**IT IS FURTHER ORDERED THAT**, the Court will retain jurisdiction to consider any issues relating to implementation, enforcement or other matters associated with the Motion and the Settlement Agreement.

# # #

---

[1] Capitalized terms used but not defined herein shall have the meaning given to them in the Motion.

In accordance with LR 9021, counsel submitting this **ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH GENESIS GLOBAL HOLDCO, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** certifies that the order accurately reflects the court's ruling and that (check one):

☐ The Court has waived the requirement set forth in LR 9021(b)(1).

☐ No party appeared at the hearing or filed an objection to the motion.

☐ I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

Submitted by:

McDONALD CARANO LLP

By: /s/ Ryan J. Works
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
*Admitted pro hac vice*
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

Page 3 of 3

150454519.1

# EXHIBIT 1

# SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 13th day of October 2023 (the "Execution Date") by and among Cash Cloud, Inc. (dba Coin Cloud) (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and Genesis Global Holdco, LLC ("Genesis," and together with the Debtor and Committee, each a "Party" and collectively the "Parties").

## RECITALS

A.      On or about April 22, 2022, the Debtor entered into that certain Secured Loan Facility Agreement (as amended, superseded, or otherwise modified from time to time, the "Enigma Loan") pursuant to which Enigma Securities Limited ("Enigma") loaned the Debtor $8 million. The Enigma Loan is purportedly secured by a lien on certain cryptocurrency automated teller machines and the cash proceeds contained therein and generated therefrom listed on the schedule attached to the Enigma Loan documents (the "Enigma Kiosk Collateral").

B.      On November 1, 2022, the Debtor entered into that certain Secured Demand Promissory Note (as amended by that certain Amended and Restated Secured Demand Promissory Note, dated as of November 23, 2022, the "Genesis Promissory Note") between the Debtor, as borrower, and Genesis Global Holdco, LLC ("Genesis"), pursuant to which, among other things, Genesis advanced to the Debtor $6 million on November 2, 2022 and $1.5 million on November 23, 2022. The Genesis Promissory Note is secured by all assets of the Debtor (the "Genesis Collateral"), including the Enigma Kiosk Collateral.

C.      On February 7, 2023, the Debtor filed for relief under Chapter 11 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), initiating Case No. 22-10423-mkn (the "Bankruptcy Case").

D.      On February 17, 2023, the United States Trustee for the District of Nevada filed the *Appointment of Official Committee of Unsecured Creditors* appointing members of the Committee in the Bankruptcy Case [ECF No. 131], which was thereafter amended on February 28, 2023 [ECF No. 177] and August 10, 2023 [ECF No. 1066].

E.      On March 20, 2023, the Bankruptcy Court entered the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection* [ECF No. 315], which provided that, among other things, the Stipulations (as defined therein) with respect to Enigma would become binding on parties in interest upon the applicable Challenge Period Termination Date (as defined therein).

F.      On July 24, 2023, the Committee filed the *Motion of the Official Committee of Unsecured Creditors for an Order Granting Leave, Derivative Standing and Authority to Commence, Prosecute and Settle Claims on Behalf of the Debtor's Estate* [ECF No. 925] (the "Standing Motion") seeking derivative standing to prosecute and/or settle, among other things,

certain causes of action against Enigma, including the Lien Challenge Claims (as defined therein), on behalf of the Debtor's estate.

G. On August 25, 2023, the Bankruptcy Court entered an *Order (A) Approving Debtor's Disclosure Statement [ECF No. 529] on a Final Basis; and (B) Confirming Debtor's First Amended Chapter 11 Plan of Reorganization dated August 1, 2023 [ECF No. 996]* [ECF No. 1126] (the "Confirmation Order"), which confirmed the *Debtor's First Amended Chapter 11 Plan of Reorganization dated August 1, 2023* [ECF No. 996] (the "Plan").[1]

H. As of the Execution Date, the Challenge Period Termination Date with respect to Enigma has occurred for all parties in interest other than the Committee, such that only the Committee can pursue the Lien Challenge Claims.

I. Absent the Parties' entry into this Agreement, if the Committee prevails in resolving the Lien Challenge Claims, Genesis asserts that the proceeds from such resolution would inure to the benefit of Genesis by virtue of its security interest in the Enigma Kiosk Collateral.

J. After good faith, arm's-length negotiations, the Parties have agreed to share the proceeds of any resolution of the Lien Challenge Claims in accordance with the terms of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises, conditions, and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge and, intending to be legally bound, agree as follows:

## AGREEMENT

1. Recitals. The Parties hereby stipulate and agree that the foregoing recitals are true and correct in all respects and are incorporated herein by this reference.

2. Definitions. The following definitions shall apply to and constitute part of this Agreement:

    (a) "Lien Challenge Recovery" means the proceeds (A) obtained from any consensual resolution or settlement of the Lien Challenge Claims with Enigma or (B) if the Lien Challenge Claims are successful, arising from any sale, monetization, or liquidation of the Enigma Kiosk Collateral subject to the successful Lien Challenge Claims.

    (b) "Settlement Amount" means the greater of (i) $33,000 and (ii) 33% of the Lien Challenge Recovery.

3. 9019 Motion. No later than two (2) business days from the Execution Date, the Debtor shall file with the Bankruptcy Court, and set for a hearing, a motion for approval of this Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Rule 9019 Motion"), which Rule 9019 Motion shall be in form and substance reasonably acceptable to each Party.

---

[1] Capitalized terms used but not defined herein shall have the meanings given to them in the Plan.

4. <u>Effectiveness of this Agreement</u>. This Agreement and the settlement terms contained herein are conditioned upon entry of a final, non-appealable order entered by the Bankruptcy Court approving the Debtor's entry into this Agreement, on terms and conditions consistent with this Agreement and otherwise reasonably acceptable to each Party, under Federal Rule of Bankruptcy Procedure 9019.

5. <u>Settlement Terms</u>.

(a) The Debtor or the Creditor Trustee (if after the Effective Date), as applicable, shall pay the Settlement Amount to Genesis within five (5) business days of receipt by the Debtor or the Creditor Trustee, as applicable, of the Lien Challenge Recovery, whether pursuant to (i) a final, non-appealable order by the Bankruptcy Court approving a settlement or consensual resolution of the Lien Challenge Claims between the Debtor or the Committee, or any successor in interest, and Enigma or (ii) a final, non-appealable order by the Bankruptcy Court ruling in favor of the Committee or its successor in interest with respect to any of the Lien Challenge Claims. For the avoidance of doubt, to the extent the amount of the Lien Challenge Recovery exceeds the Settlement Amount, such excess shall (i) prior to the Effective Date, remain with the Debtor for the benefit of the estate or (ii) after the Effective Date, be transferred to the Creditor Trust in accordance with the Plan.

(b) Subject to Genesis's receipt of the Settlement Amount from the Debtor, Genesis agrees to release its liens on the Enigma Kiosk Collateral that is subject to the Committee's Lien Challenge Claims.

(c) Each of the Debtor and the Committee agrees that it shall not assert any claim against Genesis in connection with the Enigma Kiosk Collateral.

6. <u>Plan Controls</u>. Except as expressly set forth herein, the provisions of the Plan and Confirmation Order shall control, and except as otherwise provided herein, nothing is intended to alter or amend the provisions of the Plan and Confirmation Order.

7. <u>Independent Counsel</u>. The Parties represent and warrant that they have been advised that they should be represented by counsel of their own choosing in the preparation and analysis of this Agreement, that they have been represented by their own independent counsel, and that they have read this Agreement and believe that they are fully aware of and understand the contents hereof and the legal effect. The Parties further represent and warrant that they have entered into this Agreement voluntarily and with the approval and advice of their counsel.

8. <u>Attorneys' Fees</u>. In the event of any litigation among the Parties, including any appeals, in connection with or arising out of this Agreement, the prevailing Party shall recover all of its costs and expenses, including expert fees, and reasonable attorneys' fees actually incurred which shall be determined and fixed by the court as part of the judgment. The Parties covenant and agree that they intend by this section for the prevailing Party to recover for such reasonable attorneys' fees as the court may determine were actually and necessarily incurred by the prevailing Party.

9.  <u>Representations and Warranties</u>.  Each Party hereby represents and warrants to the other Parties as follows:  Each Party represents and warrants that (i) the execution of this Agreement by such Party has been duly approved and authorized by all necessary company, partnership or corporate action, as applicable; (ii) the person executing the Agreement on behalf of such Party is duly authorized to execute this Agreement; (iii) upon the execution and delivery of this Agreement by such person, this Agreement shall be binding upon such Party; (iv) no Party has assigned their rights under this Agreement; and (v) no other approvals or consents are necessary in connection with the execution and delivery of this Agreement by such Party.  This Agreement has been duly executed and delivered by each Party, constitutes a legal, valid and binding obligation of the Parties and is enforceable against each Party in accordance with its terms.

10.  <u>Time of the Essence</u>.  Time is of the essence of this Agreement, and in all the terms, provisions, covenants and conditions hereof.

11.  <u>Miscellaneous</u>.

(a)  <u>No Admissions</u>.  The Parties intend that neither anything contained in this Agreement, nor any Party's performance of its obligations to the same, shall be deemed to be an admission or acknowledgment of liability, the existence of damages, or the amount of any damages relating to any part of the subject matter of this Agreement.

(b)  <u>Binding on All Parties</u>.  The terms and provisions of the Agreement shall be binding on the Parties and their respective successors and permitted assigns, including any trustee(s) that may be appointed in the Bankruptcy Case.  No assignment of this Agreement or of any rights or obligations hereunder may be made by a Party without the prior written consent of each other Party and any attempted assignment without such required consents shall be void.

(c)  <u>Applicable Law; Venue; Waiver of Jury Trial</u>.  This Agreement shall, in all respects, be governed by, and construed in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflict of laws that would require the application of the law of any other jurisdiction.  Any action or proceeding filed, instituted or initiated to enforce, construe, or challenge this Agreement or any of the terms contained herein may only be filed or initiated in the Bankruptcy Court.  The Parties hereby submit themselves exclusively to the jurisdiction of the Bankruptcy Court and waive any defense to venue that could otherwise be asserted therein. EACH PARTY HERETO UNCONDITIONALLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT.

(c)  <u>Severability</u>.  If any provision of this Agreement, or any portion of any provision, shall be deemed invalid or unenforceable by a court of competent jurisdiction for any reason whatsoever, such invalidity or unenforceability shall not affect the enforceability and validity of the remaining provisions hereof.

(d)  <u>Further Assurances</u>.  Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things, reasonably necessary in connection with the performance of its obligations hereunder to carry out the intent of the Parties.

(e)     Modifications or Amendments.  No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the Parties.

(f)     Successors and Assigns.  All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the Parties and their respective heirs, legal representatives, successors and assigns.

(g)     Entire Agreement.  This Agreement constitutes the entire understanding and agreement of the Parties with respect to its subject matter and any and all prior agreements, understanding or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect.

(h)     Non-Waiver.  No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

(i)     Counterparts.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The Parties agree that digital signatures denoted by an /s/ that are transmitted by and under electronic mail confirming the election to execute this Agreement digitally shall be treated for all purposes of this Agreement as an original signature and shall have the same force and effect as an original signature.

(j)     Number and Gender.  In this Agreement, the masculine, feminine or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

(k)     Captions and Headings.  The captions and headings appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.

(l)     Expenses.  Except as otherwise set forth above, the Parties shall pay all of their own costs and expenses in connection with this Agreement, including, but not limited to, legal fees, accounting fees, and any other costs and expenses incurred or to be incurred by it or them in negotiating and preparing this Agreement.

(m)     Authority to Enter into Agreement.  In further consideration of the foregoing, the Parties each warrant and represent that they have the sole and complete right and authority to settle, compromise, release and discharge all claims, causes of action, suits or demands covered by this Agreement, and that they have made no assignment of any claim, cause of action, suit or demand covered by this Agreement.

(n)     Interpretation.  This Agreement is the result of negotiations among the Parties who have each negotiated and reviewed its terms.  No Party shall be deemed to be the drafter for purposes of interpreting any ambiguity or uncertainty in this Agreement against that Party.

*[Remainder of this page left intentionally blank]*

— 6 —

150454499.1

— 7 —

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Execution Date.

<table>
<tr><td>

**FOX ROTHSCHILD LLP**

By:    */s/ Brett A. Axelrod*
    BRETT A. AXELROD, ESQ.
    Nevada Bar No. 5859
    NICHOLAS A. KOFFROTH, ESQ.
    Nevada Bar No. 16264
    1980 Festival Plaza Drive, Suite 700
    Las Vegas, Nevada 89135
    Telephone: (702) 262-6899
    Facsimile: (702) 597-5503
    Email: baxelrod@foxrothschild.com
    nkoffroth@foxrothschild.com
    *Counsel for Debtor*

**McDONALD CARANO LLP**

By:    */s/ Ryan J. Works*
    Ryan J. Works, Esq. (NSBN 9224)
    Amanda M. Perach, Esq. (NSBN 12399)
    2300 West Sahara Avenue, Suite 1200
    Las Vegas, Nevada 89102
    rworks@mcdonaldcarano.com
    aperach@mcdonaldcarano.com

    John R. Ashmead, Esq.
    Robert J. Gayda, Esq.
    Catherine V. LoTempio, Esq.
    Andrew J. Matott, Esq.
    *Admitted pro hac vice*
**SEWARD & KISSEL LLP**
    One Battery Park Plaza
    New York, NY 10004
    Telephone: (212) 574-1200
    ashmead@sewkis.com
    gayda@sewkis.com
    lotempio@sewkis.com
    matott@sewkis.com

    *Counsel for Official Committee*
    *of Unsecured Creditors*

</td><td>

**SNELL & WILMER L.L.P.**

By    */s/Robert R. Kinas*
    ROBERT R. KINAS, ESQ.
    (NV Bar No. 6019)
    BLAKELEY E. GRIFFITH, ESQ.
    (NV Bar No. 12386)
    CHARLES E. GIANELLONI, ESQ.
    (NV Bar No. 12747)
    3883 Howard Hughes Parkway, Suite 1100
    Las Vegas, NV 89169

and

    SEAN A. O'NEAL, ESQ.
    (Admitted Pro Hac Vice)
    CLEARY GOTTLIEB STEEN &
    HAMILTON LLP
    One Liberty Plaza
    New York, NY 10006
*Attorneys for Genesis Global Holdco, LLC*

</td></tr>
</table>

150454499.1