**CARLYON CICA CHTD.**
CANDACE C. CARLYON, ESQ.
Nevada Bar No.2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119
Phone: (702) 685-4444
Fax: (725) 386-4979
Email: ccarlyon@carlyoncica.com
         dcica@carlyoncica.com

*Counsel for Chris McAlary*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.: Case No. BK-S-23-10423-MKN |
| CASH CLOUD, INC.,<br>dba COIN CLOUD, | Chapter 11 |
| Debtor. | **MOTION TO RECONSTITUTE THE OFFFICIAL UNSECURED CREDITORS' COMMITTEE**<br><br>Hearing Date:  December 13, 2023<br>Hearing Time: 9:30 a.m. |

Chris McAlary ("McAlary") by and through its counsel, the law firm of Carlyon Cica, Chtd., hereby moves this Honorable Court for an order Reconstituting the Official Unsecured Creditors' Committee (the "Committee") in this case to remove the co-chair of the Committee, Cole Kepro International, LLC ("Cole Kepro")

This Motion to Reconstitute the Official Unsecured Creditors' Committee (the "Motion") is made pursuant to 11 U.S.C. §1102(a) and is supported by the Points and Authorities attached hereto,

*Counsel for Chris McAlary* — (left margin, vertical)
CARLYON CICA CHTD.
265 E. Warm Springs Road, Suite 107
Las Vegas, NV 89119

the pleadings, papers and records on file in this case[1], and any additional evidence or argument which the Court may entertain at the time of the hearing of the Motion.

Respectfully submitted this 18th day of October, 2023.

**CARLYON CICA CHTD.**

*/s/ Candace Carlyon*

CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone: (702) 685-4444,
Email:   Ccarlyon@CarlyonCica.com

*Counsel for Chris McAlary*

**POINTS AND AUTHORITIES**

**I.**

**FACTS**

1.      Cole Kepro is the defendant in, *inter alia,* a breach of contract action brought by Cash Cloud (the "Debtor"). *See* Omnibus Declaration of Christopher Andrew Mcalary in Support of Emergency First Day Motions, ECF No. 19 p. 10 ¶39.

---

[1]  McAlary requests that the Court take judicial notice of the pleadings and Court dockets referenced herein pursuant to FRE 201.  *See, e.g.*, *U.S. v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980)("a court may take judicial notice of its own records in other cases"); *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (taking judicial notice of court filings in a state court case where the same plaintiff asserted similar claims); *Lawson v. Klondex Mines Ltd.*, 450 F. Supp. 3d 1057, 1071 (D. Nev. 2020)(court may take judicial notice of orders and filings, including  proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue); *Bank of Am., N.A. v. CD-04, Inc.* (*In re Owner Mgmt. Serv., LLC Trustee Corps.*), 530 B.R. 711, 717 (Bankr. C.D. Cal. 2015) ("The Court may consider the records in this case, the underlying bankruptcy case and public records.").

2.       Cole Kepro's prepetition breach of contract was the precipitating force in Debtor's financial downturn.[2] *See id* at p. 7 ¶¶29-30.

3.       Prepetition, Cash Cloud initiated Case No. A-22-854226-B against Cole Kepro. The Disclosure Statement estimated recovery from Cole Kepro in an amount of up to $10 million. *Id*. at p. 10 ¶39.

4.       Debtor initiated the process of selling all of its assets, including its litigation claims against, *inter alia*, Cole Kepro (the "Cole Kepro Litigation"). Mr. McAlary provided the highest (and, at least initially, only) bid for such assets. *See* Declaration of Christopher Mcalary in Support of Opposition to Approval of Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions, ECF No. 1030 at ¶¶5-10.

5.       Mr. McAlary was advised by the Debtor that a revised negotiated offer was accepted by the Debtor for $750,000 plus a percentage of net recoveries from such claims. A larger amount was offered for a global resolution and would be submitted for Court approval. *See id* at ¶¶6-9.

6.       Subsequently the Debtor advised Mr. McAlary that the acceptance was being withdrawn due to its rejection by the Committee. *See id*. at ¶ 10.

7.       At the Debtor's request, Mr. McAlary renegotiated and ultimately submitted an offer to pay the estate $1 million in exchange for the Cole Kepro Litigation. *See* Declaration of Christopher Mcalary in Support of Reply in Support of Motion to Convert Case to Chapter 7, ECF No. 1174 at ¶5.

8.       On September 22, 2023, instead of accepting Mr. McAlary's offer, the Committee, joined by the Debtor, filed a motion seeking approval to transfer the litigation claim to Cole Kepro in exchange for an $850,000 promissory note, and additionally requesting that the Court allow Cole Kepro a claim in the Debtor's bankruptcy in the amount of $9,437,321.88 as part of that same

---

[2] "In February 2021, Cash Cloud purchased over 4,000 [Digital Cash Machines] from Cole Kepro International, LLC[] ("Cole Kepro"), at the cost of approximately $35 million. Unbeknownst to Cash Cloud at the time of purchase, the Cole Kepro DCMs were defective and did not function or operate as intended and promised." Debtor's Disclosure Statement, ECF No. 529 p. 18 §3.3(A).

3

transaction. *See* Joint Motion To Approve Settlement Agreement With Cole Kepro International, LLC Pursuant To Federal Rule Of Bankruptcy Procedure 9019, ECF 1295 at ¶9.

9. On September 29, 2023, Mr. McAlary sent a letter to the UST requesting removal of Cole Kepro from the Committee. *See* Letter to UST, attached hereto as **Exhibit 1**.

10. Despite passage of almost three weeks, the UST has taken no action to remove Cole Kepro from the Committee.

## II.

## ARGUMENT

### A. Cole Kepro Cannot Carry Out its Fiduciary Duty as a Member of the Committee to Maximize Recovery for the Estate.

11 U.S.C. §1102(b)(1) requires that committee members be "representative of the different kinds of claims to be represented." Committee members "have a fiduciary obligation to act in the interests of the members whom they represent." *In re Haskell-Dawes, Inc.*, 188 B.R. 515, 522 (Bankr. E.D. Pa. 1995). But "[i]f a member of a committee is unwilling or unable, due to conflicts of interest or any other reason, to exercise his or her fiduciary obligations, the UST should take the steps to remove that member from the committee." *In re Pierce*, 237 B.R. at 758. *See also In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989) (finding that the unsecured creditors' committee lacked adequate representation where conflicting viewpoints or business interests prevent official committee from upholding fiduciary obligations to all general unsecured creditors).

Here, Cole Kepro's interests in paying as little as possible for the damages done to the Debtor are fundamentally at odds with its fiduciary duty as a member of the Committee to maximize recovery for the estate. It is well-settled that a creditors' committee owes a fiduciary duty to its constituency and to all unsecured creditors. *Mirant Ams. Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118, at *4 (S.D.N.Y. Oct. 10, 2003); *see also, e.g., Shaw & Levine v. Gulf W. Indus., Inc.* (*In re Bohack Corp.*), 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("[T]he committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority

4

creditors."). These fiduciary duties include "dut[ies] of undivided loyalty and impartial service to all creditors." *In re Pierce*, 237 B.R. 748, 758 (Bankr. E.D. Cal. 1999) (quoting *In re Cnty. of Orange*, 179 B.R. 195, 202-03 (Bankr. C.D. Cal. 1995)). "Lack of loyalty is not so much an openly expressed attitude of mind but a subconscious attitude which may generate later." *In re Johns-Manville Corp.*, 26 B.R. at 925-26 (quoting *In re Int'l Ry. Co.*, 86 F. Supp. 546, 547-48 (W.D.N.Y. 1949)); *see also In re Penn-Dixie Indus., Inc.*, 9 B.R. 941, 945 (Bankr. S.D.N.Y. 1981). In other words, a "creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic bankruptcy tenet, thereby corrupting the process." *In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003). Accordingly, "Conflicts of interest on the part of the representative persons or committees are . . . not to be tolerated." *Johns-Manville Sales Corp. v. Doan* (*In re Johns-Manville Corp.*), 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

These facts establish clearly that Cole Kepro's interests are adverse to those of the general unsecured creditor body as a whole. Unsecured creditors would benefit by receiving $1 million vs receiving a promise to pay $850,000 coupled with an agreement to allow a $9.4 million claim against the estate. *See* ECF 1295 at ¶5. Therefore, Cole Kepro must be removed as a member of the Committee.

**B.  The Court Should Remove Cole Kepro from the Committee.**

Section 1102(a)(1) of the Bankruptcy Code provides that "as soon as practicable after the order for relief under chapter 11 of this title, the US Trustee shall appoint a committee of creditors holding unsecured claims..." While such committee ordinarily consists of persons that hold the seven largest claims against the debtor, if fairly chosen and representative of the different claims to be represented, 1102(b), "[o]n request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity holders." This section, added in 2005, authorizes a party in interest to seek judicial review of the US Trustee's appointment of an unsecured creditors' committee. *See In re Cont'l Cast Stone, LLC*, 625 B.R. 203, 207 (Bankr. D. Kan. 2020).

5

This court may provide judicial review pursuant to Bankruptcy Rule 2020, which expressly provides that "any act" by the US Trustee is subject to review by the bankruptcy court. *See* Bankruptcy Rule 2020 ("A proceeding to contest any act or failure to act by the United States trustee is governed by [Bankruptcy] Rule 9014."); Bankruptcy Rule 2020, Advisory Committee Notes ("[T]he United States trustee is not a judicial officer and does not resolve disputes regarding the propriety of its own actions. This rule, which is new, provides a procedure for judicial review of the United States trustee's acts or failure to act in connection with the administration of the case.").

Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Although section 105(a) may not be used to create substantive rights that are not provided for in the Bankruptcy Code, "section 105(a) can be and should be used to assure that the trustee does not act in an arbitrary or capricious manner." *In re Voluntary Purchasing Grps., Inc.*, 1997 WL 155407, at *3 (E.D. Tex. Mar. 21, 1997) (stating that "[this] Court agrees with other jurisdictions that have held that 11 U.S.C. sec. 105(a) allows the bankruptcy court to review the trustee's decisions on committee appointments"); *see In re First RepublicBank Corp.*, 95 B.R. 58, 60 (Bankr. N.D. Tex. 1988) (reading section 105 of the Bankruptcy Code to "authorize review of the United States trustee's administrative task" and stating that "the court should use the arbitrary and capricious standard applicable for [its] administrative review").

Here, the U.S. Trustee's failure to reconstitute the committee, despite their awareness of the gross conflict that exists, should be reviewed by the Court. The premise that conflicts will not be tolerated is especially true in circumstances like those in the instant case, where the member is defending against a claim asserted by the bankruptcy estate against that member. For example, in *In re Venturelink Holdings, Inc.*, the debtors sought to remove a member of the official creditors' committee who had previously been a director and officer of the debtors. *Venturelink*, 299 B.R. at 421-22. The debtors were suing the former director and officer for breach of fiduciary duty and misappropriation of funds. *Id*. at 422. The court ordered the removal of the committee member

based on a conflict of interest. *Id*. at 424. In doing so, the court found it unnecessary to consider the merits of the allegations against the committee member, but instead, stated that "the very nature of the claims compels the [removal]." *Id*. In another case, a district court affirmed a bankruptcy court's decision to remove certain creditors from the committee because they had "vastly dissimilar interests from the other creditors and none of them were among the largest seven creditors." *In re Voluntary Purchasing Grps., Inc.*, 1997 WL 155407, at *3.

Where, as here, it becomes evident that a committee member holds such a conflict, it is necessary to remove that member from the committee. "A committee member holding a conflict of interest cannot continue to serve." *In re First RepublicBank Corp.*, 95 B.R. at 61. "A conflict of interest that amounts to a breach of fiduciary duty constitutes the type of conflict that would mandate removal of the creditor from the committee." *Id*. at 61. This is required even where facts indicate even an appearance of such conflict. *See In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003)("A creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic bankruptcy tenet, thereby corrupting the process. The United States Trustee would act arbitrarily and capriciously if he refused to remove a committee member who held a conflict of interest amounting to a breach of the fiduciary duty owed by the creditor to the creditors represented by the committee or who appeared to hold such a conflict."). Cole Kepro's flagrant conflict of interest amounts to a breach of fiduciary duty thereby necessitating its removal from the Committee.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

7

### III.

### CONCLUSION

For the reasons stated above, it is respectfully requested that the Court grant the Motion to Reconstitute the Official Unsecured Creditors' Committee, and issue such other and further relief as the Court may deem just and proper.

Respectfully submitted this 20th day of October, 2023.

**CARLYON CICA CHTD.**

*/s/ Candace Carlyon*

CANDACE C. CARLYON, ESQ.
Nevada Bar No. 2666
DAWN M. CICA, ESQ.
Nevada Bar No. 4565
*Counsel for Chris McAlary*

**CERTIFICATE OF SERVICE**

I am an employee of Carlyon Cica Chtd.  On the date of filing of the foregoing papers with the Clerk of Court I caused a true and correct copy to be served in the following manner:

☒ ELECTRONIC SERVICE:  Pursuant to LR 2002 of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed and served on all parties and attorneys who are filing users through the Notice of Electronic Filing automatically generated by the Court.

☐ UNITED STATES MAIL:  By depositing a true and correct copy of the above-referenced document into the United States Mail with prepaid first-class postage, addressed to the parties at their last-known mailing address(es):

☐ OVERNIGHT COURIER:  By depositing a true and correct copy of the above-referenced document for overnight delivery via a nationally recognized courier, addressed to the parties listed below which was incorporated by reference and made final in the w at their last-known mailing address.

☐ FACSIMILE:  By sending the above-referenced document via facsimile to those persons listed on the attached service list at the facsimile numbers set forth thereon.

I declare under penalty of perjury that the foregoing is true and correct.


                                        */s/ Cristina Robertson*_____
                                        An employee of Carlyon Cica Chtd.

# EXHIBIT "1"

# EXHIBIT "1"

# Carlyon Cica Chtd.

**Candace C. Carlyon, Esq.**
Email: ccarlyon@carlyoncica.com
*Also licensed in California*

**Dawn M. Cica, Esq.**
Email: dcica@carlyoncica.com
*Also licensed in California and New York*

**265 E. Warm Springs Road, Suite 107**
**Las Vegas, Nevada 89119**
**Telephone (702) 685-4444**
www.CCClaw.Vegas

Natasha Sharma, Esq.
Email: nsharma@carlyoncica.com

**Of Counsel:**
Laury Macauley, Esq.
Robert Gower, Esq.

**September 29, 2023**

<u>**Via email and U.S Mail**</u>:

Tracy Hope Davis
United States Trustee for Region 17
Terri H. Didion, Assistant United States Trustee
terri.didion@usdoj.gov
Office of the United States Trustee
235 Pine Street, Suite 700
San Francisco, CA 94104-2745

Jared A. Day, Trial Attorney
Office of the United States Trustee
300 Las Vegas Blvd. S.
Las Vegas, NV 89101
jared.a.day@usdoj.gov

Re:   In re Cash Cloud, Inc. BK-23-104230mkn Committee Composition

Gentlepersons:

This office represents creditor and equity holder Chris McAlary with respect to the above-referenced matter.  The purpose of this communication is to request that, pursuant to 11 U.S.C. §1102(a), your office reconstitute the Official Committee of Unsecured Creditors (the "Committee") in this case to remove the co-chair of the Committee, Cole Kepro International, LLC ("Cole Kepro").

This request is made on the following basis:

Cole Kepro is the defendant in an action brought by the Debtor, and Cole Kepro's prepetition breach of contract was the precipitating force in Debtor's financial downturn.  As set forth in the Debtor's Disclosure Statement:

> In February 2021, Cash Cloud purchased over 4,000 [Digital Cash Machines] from Cole Kepro International, LLC[] ("Cole Kepro"), at the cost of approximately $35 million. Unbeknownst to Cash Cloud at the time of purchase, the Cole Kepro DCMs were defective and did not function or operate as intended and promised.

Re: *In re Cash Cloud*
Office of the U.S. Trustee
September 29, 2023



**ECF No. 529 p. 18 §3.3(A).**   Prepetition, Cash Cloud initiated Case No. A-22-854226-B against Cole Kepro.  The Disclosure Statement estimated recovery from Cole Kepro in an amount of up to $10 million.  *Id.* at p. 22.

Debtor initiated the process of selling all of its assets, including its litigation claims against, *inter alia*, Cole Kepro (the "Cole Kepro Litigation").  While our client provided the highest (and, at least initially, only) bid for such assets, and while our client was advised by the Debtor that a revised negotiated offer was accepted by the Debtor and would be submitted for Court approval, subsequently the Debtor advised that the acceptance was being withdrawn due to its rejection by the Committee.  *See* ECF No. 1030 at ¶¶5-10.  Our client, at the Debtor's request, renegotiated and ultimately submitted an offer to pay the estate $1 million in exchange for the Cole Kepro Litigation.  *See* ECF No. 1174 at ¶5.  Instead of accepting this offer, the Committee, joined by the Debtor, filed on September 22, 2023, a motion seeking approval to transfer the litigation claim to Cole Kepro in exchange for an $850,000 promissory note, and additionally requesting that the Court allow Cole Kepro a claim in the Debtor's bankruptcy in the amount of $9,437,321.88 as part of that same transaction.  *See* ECF 1295.

These facts establish clearly that Cole Kepro's interests are adverse to those of the general unsecured creditor body as a whole.  Unsecured creditors would be benefited by receiving $1 million vs receiving a promise to pay $850,000 coupled with an agreement to allow a $9.4 million claim against the estate. See ECF 1295 at ¶5.   11 U.S.C. §1102(b)(1) requires that committee members be "representative of the different kinds of claims to be represented."  Committee members "have a fiduciary obligation to act in the interests of the members whom they represent." *In re Haskell-Dawes, Inc.*, 188 B.R. 515, 522 (Bankr. E.D. Pa. 1995). But "[i]f a member of a committee is unwilling or unable, due to conflicts of interest or any other reason, to exercise his or her fiduciary obligations, the UST should take the steps to remove that member from the committee." *In re Pierce*, 237 B.R. at 758. *See also In re Sharon Steel Corp.*, 100 B.R. 767, 778 (Bankr. W.D. Pa. 1989) (finding that the unsecured creditors' committee lacked adequate representation where conflicting viewpoints or business interests prevent official committee from upholding fiduciary obligations to all general unsecured creditors).

Here, Cole Kepro's interests in paying as little as possible for the damages done to the Debtor are fundamentally at odds with its fiduciary duty as a member of the Committee to maximize recovery for the estate.  It is well-settled that a creditors' committee owes a fiduciary duty to its constituency and to all unsecured creditors. *Mirant Ams. Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, 2003 WL 22327118, at *4 (S.D.N.Y. Oct. 10, 2003); *see also, e.g., Shaw & Levine v. Gulf W. Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) ("[T]he committee owes a fiduciary duty to the creditors, and must guide its actions so as to safeguard as much as possible the rights of minority as well as majority creditors.").  These fiduciary duties include "dut[ies] of undivided loyalty and impartial service to all creditors." *In re Pierce*, 237 B.R. 748, 758 (Bankr. E.D. Cal. 1999) (quoting *In re Cnty. of Orange*, 179 B.R. 195, 202-03 (Bankr. C.D. Cal. 1995)). "Lack of loyalty is not so much an openly expressed attitude of mind but a subconscious attitude which may generate later." *In re Johns-Manville Corp.*, 26 B.R. at 925-26 (quoting *In re Int'l Ry. Co.*, 86 F. Supp. 546, 547-48 (W.D.N.Y. 1949)); *see also In re Penn-Dixie Indus., Inc.*, 9 B.R. 941, 945 (Bankr. S.D.N.Y. 1981). In other words, a "creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic

Re: *In re Cash Cloud*
Office of the U.S. Trustee
September 29, 2023



bankruptcy tenet, thereby corrupting the process." *In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003). Accordingly, "Conflicts of interest on the part of the representative persons or committees are . . . not to be tolerated." *Johns-Manville Sales Corp. v. Doan (In re Johns-Manville Corp.)*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

In addition, ""[a]rising from the duties of care and loyalty is a duty of disclosure. *Pfeffer v. Redstone, supra*, 965 A.2d at 684. A duty of disclosure can be breached by omitting the disclosure of material facts. *Id.* The Court concludes that the fiduciary duties owed by creditor committee members to their constituencies include a duty of care, a duty of loyalty and a duty of disclosure."*Naylor v. Farrell (In re Farrell)*, 610 B.R. 317, 322-23 (Bankr. C.D. Cal. 2019) )". Here it is clear from the Settlement that the Debtor's ability to be paid depends upon the receipt of insurance by Cole Kepro derived from "bad debt" which requires Cole Kepro to have an allowed claim. *See* ECF 1295 at ¶5. There was no disclosure by Cole Kepro that its business depended on the Estate's litigation against it not being pursued. There was no disclosure by Cole Kepro that paying as little as possible to the Debtor for the release of that litigation was the goal of participating as a committee member in t his bankruptcy.

This premise that conflicts will not be tolerated is further highlighted in circumstances like these, where the member is defending against a claim asserted by the bankruptcy estate against that member. For example, in *In re Venturelink Holdings, Inc.*, the debtors sought to remove a member of the official creditors' committee who had previously been a director and officer of the debtors. *Venturelink*, 299 B.R. at 421-22. The debtors were suing the former director and officer for breach of fiduciary duty and misappropriation of funds. *Id.* at 422. The court ordered the removal of the committee member based on a conflict of interest. *Id.* at 424. In doing so, the court found it unnecessary to consider the merits of the allegations against the committee member, but instead, stated that "the very nature of the claims compels the [removal]." *Id.* In another case, a district court affirmed a bankruptcy court's decision to remove certain creditors from the committee because they had "vastly dissimilar interests from the other creditors and none of them were among the largest seven creditors." *In re Voluntary Purchasing Grps., Inc.*, 1997 WL 155407, at *3.

Where, as here, it becomes evident that a committee member holds such a conflict, it is necessary to remove that member from the committee. "A committee member holding a conflict of interest cannot continue to serve." *In re First RepublicBank Corp.*, 95 B.R. at 61. "A conflict of interest that amounts to a breach of fiduciary duty constitutes the type of conflict that would mandate removal of the creditor from the committee." *Id.* at 61. This is required even where facts indicate even an appearance of such conflict. *See In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003)("A creditor on a committee who exudes the appearance of a breach of fiduciary duty undermines that basic bankruptcy tenet, thereby corrupting the process. The United States Trustee would act arbitrarily and capriciously if he refused to remove a committee member who held a conflict of interest amounting to a breach of the fiduciary duty owed by the creditor to the creditors represented by the committee or who appeared to hold such a conflict."

Although the Bankruptcy Court has the ability to rule on a motion to remove a committee member (see 11 U.S.C. §1102(a)(4)), such a request is appropriately presented in the first instance to the United States Trustee. Accordingly, we request that, within five days of the date of this

Re: *In re Cash Cloud*
Office of the U.S. Trustee
September 29, 2023



correspondence, you amend the committee appointment to remove Cole Kepro as a member of the Committee.

Thank you for your prompt attention to this matter.

Sincerely,

CARLYON CICA, CHTD.

*/s/ Candace Carlyon*

Candace C. Carlyon, Esq.