Robert S. Westermann, Esq. (pro hac vice)
Brittany B. Falabella (pro hac vice)
2100 East Cary Street
Richmond, Virginia 23223

and

Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
(301) 444-4600
mac@mbvesq.com
*Counsel for Brink's, Inc.*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| In re: | : | Case No. BK-23-10423-mkn |
| CASH CLOUD, INC., dba COIN CLOUD, | : | Chapter 11 |
| Debtor. | : | **REPLY IN FURTHER SUPPORT OF APPLICATION FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM OF BRINK'S INCORPORATED** |

Brink's Incorporated ("**Brink's**"), by counsel, respectfully files its Reply (the "**Reply**") in further support of its Application[1] [Docket No. 977] for the entry of an Order: (A) granting it an allowed administrative expense claim pursuant to § 503(b)(1) of the Bankruptcy Code in the

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed in the Application.

total amount of $966,151.96² for services provided to the Debtor; and (B) compelling the Debtor to pay to Brink's the full Administrative Claim Amount in immediately available funds. In further support of its Application, Brink's concurrently files herewith the *Declaration of Tara Team* (the "**Team Declaration**"), and respectfully states as follows:

## BACKGROUND

1. On July 28, 2023, Brink's filed the Application seeking allowance and payment of the full amount of the Administrative Expense Claim, consisting of: (i) post-Petition Date damages related to cash transportation services in reliance on an unperformed critical vendor agreement in the amount of $629,695.00, and (ii) post-Petition Date cash transportation services that remain unpaid, which through the filing of this Reply amounts to at least $336,456.96, as set forth in **Exhibit A**, attached hereto.

2. On August 1, 2023, the Debtor filed its Objection [Docket No. 989] to the Application. In the Objection, the Debtor agrees that Brink's is entitled to allowance and payment of the portion of the Administrative Claim Amount attributable to the unpaid post-Petition Date cash transportation services (currently $336,456.96). However, the Debtor argues that Brink's is not entitled to the $629,695.00 portion of the Administrative Claim Amount because the "parties never reached any formal agreement" with respect to the amounts that would be paid to Brink's if it agreed to be treated as a critical vendor to the Debtor's ongoing operations. Oppo. at ¶ 6. To deny the existence of the Brink's Agreement, the Debtor relies solely on the declaration of Daniel Ayala – an individual without personal knowledge of or involvement in the negotiations of the Brink's Agreement. *See Team Declaration* at p.1.

---

² As noted in the Application, Brink's reserved the right to amend the Administrative Claim Amount to include additional post-petition services that were not included at the time of filing the Application. Thus, the Administrative Claim Amount is properly identified herein as $996,151.96.

3. Mr. Ayala is incorrect that discussions with Brink's were on preliminary basis. Rather, during a telephone call on February 3, 2023, prior to the Petition Date, the Debtor offered to pay to Brink's a total of $1,259,695 (the "**Agreed Critical Vendor Payment**"), consisting of (a) $629,847 upon interim approval of a critical vendor motion, and (b) quarterly distributions of $157,462.00 each for four (4) consecutive quarters upon final approval of a critical vendor motion and plan confirmation (total of $629,848) if Brink's agreed to continue servicing the Debtor's locations post-Petition Date. In exchange, Brink's agreed to continue providing the Debtor with cash transportation and other services, despite the Debtor's significant pre-Petition Date defaults under the Contract. Notably, the Agreed Critical Vendor Payment was only 50% of the total pre-Petition Date outstanding amount owed to Brink's.

4. The Brink's Agreement was neither informal nor preliminary, as the parties clearly agreed to the material terms of the post-Petition Date critical vendor relationship, and Brink's continued providing services to the Debtor in reliance on the Debtor's promises. The services provided by Brink's permitted the Debtor to continue operating post-Petition Date.

5. Upon interim approval of the Critical Vendor Motion, the Debtor paid to Brink's the amount of $630,000 as required under the Brink's Agreement. However, the Debtor has subsequently failed to pay any amount of the remaining $629,695 owed under the Brink's Agreement despite plan confirmation being achieved which was the condition for the further payments. *See* Order Confirming Plan of Reorganization [Docket No. 1130].

6. The Debtor's post-Petition Date breach of the Brink's Agreement entitles Brink's to allowance and payment of the full amount of the Administrative Expense Claim, and accordingly, the Objection should be overruled and the Application should be granted.

# ARGUMENT AND AUTHORITY

7. Section 503(b)(1) of the Bankruptcy Code provides for allowed administrative expenses for "the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1).

8. The Brink's Agreement created valid and enforceable obligations owed by the Debtor to Brink's. The Debtor's argument that it never entered into a formal agreement with Brink's is not correct, nor is it substantiated by competent testimony of an individual with personal knowledge.

9. The Debtor's argument that the Brink's Agreement was not formalized is belied by the Debtor's partial performance, i.e., the payment it made to Brink's upon entry of the Interim Critical Vendor Order [Docket No. 108] (the "**Interim Order**"). *See Hitachi Global Storage Tech. Netherlands B.V. v. Read-Rite Corp. (In re Read-Rite Corp.)*, 2007 U.S. Dist. LEXIS 61363, *8 (N. D. Cal. 2007) ("'Aside from unilateral contracts, partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals by that act, that is also understands a contract to be in effect.'" (quoting *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 76-77 (2d Cir. 1984))). Furthermore, the interim payment made in compliance with the Brink's Agreement ratified the Brink's Agreement by the Debtor and therefore "arose from a transaction with the debtor in possession." *See Gonzalez v. Gottlieb (In re Metro Fulfillment, Inc.)*, 294 B.R. 306, 309 (B.A.P. 9th Cir. 2003).

10. The Debtor points out that the entire Brink's Agreement was not expressly incorporated into the Critical Vendor Motion, but that has no bearing on the existence or enforceability of the Brink's Agreement. Nevertheless, the language of the Interim Order that "Brink's reserves all rights under its contract *and agreement with the Debtor*, including but not

limited to, the right to receive additional prepetition payments . . . ," and the Final Order [Docket No. 319], which authorizes additional payments on the prepetition Vendor Liabilities, *does* support the existence of a valid and binding agreement between the Debtor and Brink's for further critical vendor payments pursuant to the Brink's Agreement. Interim Order at ¶ 4 (emphasis added); *see* Final Order at ¶ 2.

11. In reliance on the Brink's Agreement, Brink's provided valuable services to the Debtor post-Petition Date. The Debtor acknowledges that these services directly and substantially benefitted the estate. *See* Opposition at ¶ 13; *see generally* Critical Vendor Motion [Docket No. 7] ¶¶ 7-11. Those services would not have been provided without the Brink's Agreement; thus, the Brink's Agreement likewise directly and substantially benefitted the estate and the unpaid portion is entitled to administrative priority.

12. The Debtor has breached the Brink's Agreement by its post-Petition Date failure to pay the remaining $629,625 owed under the Brink's Agreement, despite representing to this Court that the payment of amounts owed to critical vendors, such as Brink's, was imperative for the Debtor's continued operation and conceding that such post-petition services are themselves entitled to administrative status. *See id*.

13. Additionally, the Brink's Agreement is an executory contract that was entered into pre-Petition Date and there were remaining contractual obligations of both parties as of the Petition Date. Brink's right to receive the payment of the remaining $629,695 was triggered prior to the Debtor's rejection and thus are valid post-Petition Date administrative expenses. Pursuant to the Brink's Agreement, the right of Brink's to receive remaining payments was triggered upon entry of the Final Order and confirmation of the Debtor's Plan of Reorganization [Docket No. 996] (the "**Plan**"). Both contingencies have occurred, with the Plan being confirmed on August

25, 2023 [Docket No. 1130]. Thus, the right to those payments vested on August 25, 2023. Pursuant to the Plan, any executory contract that was not assumed and assigned is deemed rejected as of the effective date, and the Brink's Agreement was not included in any schedule of contracts and leases to be assumed by the Debtor. Plan at § 5.1. The effective date of the Plan has not yet occurred, so the Brink's Agreement has not been rejected,[3] but the right to payment of $629,695 has already arisen and vested post-Petition Date/pre-rejection date and thus should be allowed as an administrative claim.

14. The remaining amounts owed to Brink's under the Brink's Agreement are actual and necessary expenses of preserving the Debtor's estate, and because the Debtor cannot rely on Mr. Ayala's testimony regarding a matter on which he lacks any personal knowledge to simply deny the existence of the Brink's Agreement, Brink's is entitled to allowance and payment of the full amount of the Administrative Claim Amount as an administrative expense pursuant to section 503(b) of the Bankruptcy Code.

WHEREFORE, for the reasons stated herein and in the Application, and for good cause shown, and pursuant to Section 503(b)(1) of the Bankruptcy Code, Brink's respectfully requests that the Court enter an Order: (A) granting it an allowed administrative expense claim pursuant to § 503(b)(1) of the Bankruptcy Code in the total amount of $966,151.96; (B) compelling the Debtor to pay to Brink's the full Administrative Claim Amount in immediately available funds; and (C) granting Brink's such other and further relief as may be appropriate, just, and warranted by the circumstances.

*[Signature on Following Page]*

---

[3] Although the Brink's Agreement has not been rejected, the Services Agreement between the Debtor and Brink's was rejected by stipulation of the parties filed on August 7, 2023 [Docket No. 1028] and the Order entered August 9, 2023 [Docket No. 1055].

| | | |
|---|---|---|
| 1 | Dated: October 25, 2023 | Respectfully submitted |

                                            /s/ *Maurice B. VerStandig*
                                      Robert S. Westermann, Esq. (admitted pro hac vice)
                                      Brittany B. Falabella (admitted pro hac vice)
                                      2100 East Cary Street
                                      Richmond, Virginia 23223

and

Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012

*Counsel for Brink's Incorporated*

/
/
/
/
/
/
/
/
/
/
/
/
/

*[Certificate of Service on Following Page]*

7 of 7

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2023, the foregoing Notice was filed using the CM/ECF system, which served a NEF on all parties receiving service in this Case. I further certify that a true and accurate copy of the foregoing Notice was served by electronic mail on the parties set forth below:

| | | |
|---|---|---|
| Fox Rothschild LLP<br>Attn: Brett Axelrod<br>1980 Festival Plaza Drive<br>Suite 700<br>Las Vegas, NV 89135<br>BAxelrod@foxrothschild.com | Berger Singerman LLP<br>Attn: Jordi Guso<br>1450 Brickell Avenue<br>Suite 1900<br>Miami, FL 33131<br>JGuso@bergersingerman.com | Sylvester & Polednak Ltd.<br>Attn: Jeffrey R. Sylvester<br>1731 Village Center Circle<br>Las Vegas, NV 89134<br>jeff@sylvesterpolednak.com |
| Genesis Global Holdco, LLC<br>Gottlieb Steen & Hamilton LLP<br>Attn: Sean A. O'Neal and Jane VanLare<br>One Liberty Plaza<br>New York, NY 10006<br>soneal@cgsh.com<br>jvanlare@cgsh.com | Morrison Foerster LLP<br>Attn: Gary S. Lee and Andrew Kissner<br>250 West 55th Street<br>New York, NY 10019<br>glee@mofo.com<br>akissner@mofo.com | Shea Larsen<br>Attn: James Patrick Shea<br>1731 Village Center Circle<br>Suite 150<br>Las Vegas, NV 89134<br>jshea@shea.law |
| Seward & Kissell LLP<br>Attn: John R. Ashmead and Robert J. Gayda<br>One Battery Park Plaza<br>New York, NY 10004<br>ashmead@sewkis.com<br>gayda@sewkis.com | McDonald Carano Wilson LLP<br>Attn: Ryan J. Works<br>2300 W. Sahara Ave.<br>Suite 1200<br>Las Vegas, NV 89102<br>rworks@mcdonaldcarano.com | Office of the U.S. Trustee<br>Attn: Jared A. Day<br>300 Las Vegas Blvd. S.<br>Suite 4300<br>Las Vegas, NV 89101<br>Jared.a.day@usdoj.gov |

/s/ *Maurice B. VerStandig*