Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
**McDONALD CARANO LLP**
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
**SEWARD & KISSEL LLP**
*admitted pro hac vice*
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
miller@sewkis.com
matott@sewkis.com

*Counsel for Official Committee*
*of Unsecured Creditors*

BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
JEANETTE E. MCPHERSON, ESQ.
Nevada Bar No. 5423
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
baxelrod@foxrothschild.com
jmcpherson@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel for Debtor*

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC. dba COIN CLOUD,<br><br>Debtor. | **Lead Case No.:** 23-10423-mkn<br><br>**Chapter 11**<br><br>**DECLARATION OF RYAN J. WORKS, ESQ. IN SUPPORT OF JOINT REPLY IN FURTHER SUPPORT OF JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH COLE KEPRO INTERNATIONAL, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>**Date of Hearing:  November 28, 2023**<br>**Time of Hearing:  1:30 p.m. (PT)** |

I, RYAN J. WORKS, ESQ., hereby state and declare under penalty of perjury as follows:

1.      I am an attorney licensed to practice law in the State of Nevada and am a partner with

the law firm of McDonald Carano LLP, counsel for the Official Committee of Unsecured Creditors

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

(the "Committee").

2.    This Declaration is made in support of the *Motion to Approve Settlement Agreement With Cole Kepro International, LLC Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. 1295] (the "Motion") filed by Cash Cloud, Inc. dba Coin Cloud (the "Debtor") and the Committee, as well as the Joint Reply filed herewith.

3.    This Declaration is made of my own personal knowledge except where stated on information and belief, and as to those matters, I believe them to be true, and, if called as a witness, I would competently testify thereto.

4.    The documents attached hereto are documents that have been obtained during discovery.  Upon information and belief each of the documents is a true and accurate copy of what it purports to be and at the trial of this matter, the parties will deal with authenticity and admissibility. To some extent many of these documents were authenticated and foundation was established by witnesses who were deposed.

5.    A true and accurate copy of a letter from Dawn M. Cica to Brett Axelrod dated May 30, 2023, is attached hereto as **Exhibit 1**.

6.    A true and accurate copy of a letter from Dawn M. Cica to Brett Axelrod dated June 2, 2023, is attached hereto as **Exhibit 2**.

7.    A true and accurate copy of a letter from Dawn M. Cica to Brett Axelrod dated July 16, 2023, is attached hereto as **Exhibit 3**.

8.    A true and accurate copy of an e-mail and attachment from Dawn M. Cica to Brett Axelrod, Candace Carlyon, and Allan Diamond dated August 21, 2023, is attached hereto as **Exhibit 4**.

9.    A true and accurate copy of a letter from Allan Diamond to Brett Axelrod dated August 24, 2023, is attached hereto as **Exhibit 5**.

10.    A true and accurate copy of a letter from Robert Gayda to Allan Diamond dated August 26, 2023, is attached hereto as **Exhibit 6.**

11.    A true and accurate copy of a November 8, 2023 e-mail from Cristina Robertson to Brett Axelrod, Robert Gayda, Laura Miller, and Dawn M. Cica, attaching a letter from Dawn M.

Cica to Brett Axelrod and Robert Gayda dated November 8, 2023, is attached hereto as **Exhibit 7**.

12.     A true and accurate copy of excerpts from the deposition transcript of Christopher McAlary, which deposition took place on November 21, 2023, are attached hereto as **Exhibit 8**.

13.     A true and accurate copy of an e-mail from Robert Gayda to Cristina Robertson, Brett Axelrod, Dawn Cica, and Laura Miller, dated November 8, 2023, is attached hereto as **Exhibit 9**.

14.     A true and accurate copy of excerpts from the deposition transcript of Christopher Baird, which deposition took place on November 10, 2023, are attached hereto as **Exhibit 10**.

15.     A true and accurate copy of excerpts from the deposition transcript of Fred Cook, which deposition took place on November 7, 2023, are attached hereto as **Exhibit 11**.

16.     A true and accurate copy of excerpts from the deposition transcript of Daniel Ayala, which deposition took place on November 9, 2023, are attached hereto as **Exhibit 12**.

17.     A true and accurate copy of a document titled CKI Monthly Financial Package for the Month Ended March 2023, which is being filed under seal herewith, is attached hereto as **Exhibit 13**.

18.     A true and accurate copy of a document comparing Cole Kepro International, LLC's federal tax returns for 2021 and 2022, which is being filed under seal herewith, is attached hereto as **Exhibit 14.**

19.     A true and accurate copy of an excel document showing Cole Kepro International, LLC's weekly cash flow forecast for certain weeks in 2023 and 2024, which is being filed under seal herewith, is attached hereto as **Exhibit 15**.

20.     A true and accurate copy of an agreement between Cole Kepro International, LLC and Fifth Third Bank, National Association, dated September 22, 2023, which is being filed under seal herewith, is attached hereto as **Exhibit 16**.

21.     A true and accurate copy of excerpts from the deposition transcript of Tanner James, which deposition took place on October 24, 2023, are attached hereto as **Exhibit 17**.

22.     A true and accurate copy of the Complaint filed on October 24, 2022, in *Cole Kepro Int'l, LLC v. Coin Cloud, LLC*, Case No. A-22-860298-B (Nev.) is attached hereto as **Exhibit 18**.

23.     A true and accurate copy of the Proof of Claim filed by Cole Kepro International,

1    LLC in this proceeding on April 4, 2023 (Claim No. 41) is attached hereto as **Exhibit 19**.

2        24.    A true and accurate copy of the Proof of Claim filed by Cole Kepro International,

3    LLC in this proceeding on April 4, 2023 (Claim No. 42) is attached hereto as **Exhibit 20.**

4        25.    A true and accurate copy of excerpts from the deposition transcript of Christopher

5    McAlary, which deposition took place on November 21, 2023 and are being filed under seal

6    herewith, are attached hereto as **Exhibit 21**.

7        I declare under penalty of perjury under the laws of the State of Nevada that the foregoing is

8    true and correct.

9        Dated this 22nd day of November 2023.

10                                        By: */s/ Ryan J. Works*
                                             Ryan J. Works, Esq.

McDONALD CARANO

2300 WEST SAHARA AVENUE, SUITE 1200 • LAS VEGAS, NEVADA 89102
PHONE 702.873.4100 • FAX 702.873.9966

# Exhibit 1

# CARLYON CICA CHTD.

**Candace C. Carlyon, Esq.**
Email: ccarlyon@carlyoncica.com
*Also licensed in California*

265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone (702) 685-4444
www.CCClaw.Vegas

**Tracy M. O'Steen, Esq.**
Email: tosteen@carlyoncica.com
*Also licensed in Arizona and Mississippi*

**Dawn M. Cica, Esq.**
Email: dcica@carlyoncica.com
*Also licensed in California and New York*

May 30, 2023

Cash Cloud Inc.
c/o Brett Axelrod, Esq.
Fox Rothschild LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada
Via email: baxelrod@foxrothschild.com

Re: Submission of Bid to Purchase Excluded Assets

This office represents Christopher McAlary ("Mr. McAlary"). Pursuant to the Bid Procedures attached as Exhibit 1 to the *Order Establishing Bidding Procedures And Related Deadlines* entered by the United States Bankruptcy Court, District of Nevada, in case nos. 23-10423-MKN on April 27, 2023, as Docket No. 483 (the "Bidding Procedures Order"), Mr. McAlary hereby submits his bid to purchase certain of the Excluded Assets as described in the Asset Purchase Agreement filed by the debtor in its *Notice of Revised Stalking Horse Agreement*, filed May 26, 2023 as Docket No. 602, as follows (capitalized terms used without definition shall have the definitions set forth in the filed Asset Purchase Agreement) (collectively, the "Purchased Remaining Assets"):

(a)     all shares of capital stock or other equity interests of the Seller in Coin Cloud Brasil Ativos Digitais Ltda. ("CC Brasil") or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests of the Seller in CC Brasil;

(b)     all Excluded Leases and Excluded Contracts provided that debtor is not required to assume any executory contracts or reject or assume any Excluded Leases;

(c)     all receivables, rights, claims, refunds, causes of action, choses in action, rights of recovery and rights of setoff related exclusively to any Excluded Asset;

(d)     all insurance policies, including rights under director and officer liability policies, ERISA and trustee liability policies and employment practices liability policies, and all rights under insurance policies (including all rights to proceeds under insurance policies) relating to claims for losses regarding any Purchased Remaining Asset arising prior to the Closing Date;

(e)     all Documents relating to any Purchased Remaining Asset and copies of other books and records that the Seller is required by applicable law to retain or that the Seller determines filings as such relate to the Purchased Remaining Assets;

1

(f)     all deposits or prepaid charges and prepaid expenses paid relating exclusively to any of the Purchased Remaining Assets;

(g)     all reports of accountants, investment bankers, crisis managers, turnaround consultants and financial advisors or consultants;

(h)     any rights, claims, refunds, causes of action, choses in action, rights of recovery and rights of setoff of the Seller or the estate against Mr. McAlary, other key employees, Cole Kepro, Bitcoin Depot and Bitaccess arising out of events occurring prior to the Closing Date;

(i)     the Seller's Permits;

(j)     the Purchaser Rejected DCMs and all rights to use all Intellectual Property used in the operation thereof;

(k)     DCMs located in warehouses and not deployed in leased locations;

(l)     the Accounts Receivable owed by Christopher McAlary; and

(m)     CC Brasil shall retain all rights to use all Intellectual Property used in connection with the business.

The cash purchase price for the Purchased Remaining Assets is One Million Dollars ($1,000,000). As additional consideration, Mr. McAlary proposes to waive any claims against the estate held by Mr. McAlary, including, without limitation, all indemnification claims, any loans payable to Mr. McAlary denominated in bitcoin or otherwise and any deferred salary. Transfer of the Purchased Remaining Assets will be on an "as is where is" basis with no representations and warranties, with transfer documentation to be reasonably agreed by debtor and Mr. McAlary. In addition to the existing filed motions in connection with the auction, the debtor and Mr. McAlary will agree to also submit to the Bankruptcy Court a motion to approve a settlement pursuant to Bankruptcy Rule 9019. Proof of funds has been submitted under separate cover.

Please do not hesitate to contact me with any questions you may have regarding this matter or clarifications which may be needed.

Sincerely,

CARLYON CICA, CHTD.

*Dawn M. Cica*

Dawn M. Cica, Esq.

DMC:na

Exhibit 2

# Carlyon Cica Chtd.

| | | |
|---|---|---|
| **Candace C. Carlyon, Esq.** | | **Tracy M. O'Steen, Esq.** |
| Email: ccarlyon@carlyoncica.com | | Email: tosteen@carlyoncica.com |
| *Also licensed in California* | | *Also licensed in Arizona and Mississippi* |

**265 E. Warm Springs Road, Suite 107**
**Las Vegas, Nevada 89119**
**Telephone (702) 685-4444**
**www.CCClaw.Vegas**

**Dawn M. Cica, Esq.**
Email: dcica@carlyoncica.com
*Also licensed in California and New York*

June 2, 2023

Cash Cloud Inc.
c/o Brett Axelrod, Esq.
Fox Rothschild LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada
Via email: baxelrod@foxrothschild.com

Re: Submission of REVISED Bid to Purchase Excluded Assets

       This office represents Christopher McAlary ("Mr. McAlary"). Pursuant to the Bid Procedures attached as Exhibit 1 to the *Order Establishing Bidding Procedures And Related Deadlines* entered by the United States Bankruptcy Court, District of Nevada, in case nos. 23-10423-MKN on April 27, 2023, as Docket No. 483 (the "Bidding Procedures Order"), Mr. McAlary hereby submits his bid to purchase certain of the Excluded Assets as described in the Asset Purchase Agreement filed by the debtor in its *Notice of Revised Stalking Horse Agreement*, filed May 26, 2023 as Docket No. 602, as follows (capitalized terms used without definition shall have the definitions set forth in the filed Asset Purchase Agreement) (collectively, the "Purchased Remaining Assets"):

       (a)     all shares of capital stock or other equity interests of the Seller in Coin Cloud Brasil Ativos Digitais Ltda. ("CC Brasil") or any securities convertible into, exchangeable or exercisable for shares of capital stock or other equity interests of the Seller in CC Brasil including the right to use all Intellectual Property related to CC Brasil;

       (b)     all Excluded Leases and Excluded Contracts provided that debtor is not required to assume any executory contracts or reject or assume any Excluded Leases;

       (c)     all receivables, rights, claims, refunds, causes of action, choses in action, rights of recovery and rights of setoff related exclusively to any Excluded Asset other than with respect to accounts receivable due from CC Brasil;

       (d)     all insurance policies, including rights under director and officer liability policies, ERISA and trustee liability policies and employment practices liability policies, and all rights under insurance policies (including all rights to proceeds under insurance policies) relating to claims for losses regarding any Purchased Remaining Asset arising prior to the Closing Date;

1

(e)    all Documents relating to any Purchased Remaining Asset and copies of other books and records that the Seller is required by applicable law to retain or that the Seller determines filings as such relate to the Purchased Remaining Assets;

(f)    all deposits or prepaid charges and prepaid expenses paid relating exclusively to any of the Purchased Remaining Assets;

(g)    the Seller's Permits;

(h)    the Purchaser Rejected DCMs and all rights to use all Intellectual Property used in the operation thereof; and

(i)    DCMs located in warehouses and not deployed in leased locations.

The cash purchase price for the Purchased Remaining Assets set forth in subsection (a) is $50,000 and the cash purchase price for the Purchased Remaining Assets set forth in subsections (b) – (i) is  $300,000 for a total of $350,000. Transfer of the Purchased Remaining Assets will be on an "as is where is" basis with no representations and warranties, with transfer documentation to be reasonably agreed by debtor and Mr. McAlary.

Please do not hesitate to contact me with any questions you may have regarding this matter or clarifications which may be needed.

Sincerely,

CARLYON CICA, CHTD.

*Dawn M. Cica*

Dawn M. Cica, Esq.


DMC:na

# Exhibit 3

# Carlyon Cica Chtd.

**Candace C. Carlyon, Esq.**
Email: ccarlyon@carlyoncica.com
*Also licensed in California*

265 E. Warm Springs Road, Suite 107
Las Vegas, Nevada 89119
Telephone (702) 685-4444
www.CCClaw.Vegas

**Dawn M. Cica, Esq.**
Email: dcica@carlyoncica.com
*Also licensed in California and New York*

*CONFIDENTIAL INFORMATION*
*PROFESSIONAL EYES ONLY*

July 16, 2023

Cash Cloud Inc.
c/o Brett Axelrod, Esq.
Fox Rothschild LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada
Via email:  baxelrod@foxrothschild.com

Re:  Submission of Revised Bid for Litigation Claims

　　　This office represents **CC BR HOLDCO LLC**, a Nevada limited liability company ("Purchaser").  This amends the original bid submitted by Christopher McAlary on June 2, 2023 in advance of the auction held by the Debtor Pursuant to the Bid Procedures attached as Exhibit 1 to the *Order Establishing Bidding Procedures And Related Deadlines* entered by the United States Bankruptcy Court, District of Nevada, in case nos. 23-10423-MKN on April 27, 2023, as Docket No. 483 (the "Bidding Procedures Order").  Purchaser hereby submits this revised bid to purchase certain assets of the estate related to litigation claims (collectively ("Litigation")) against third parties as disclosed by the Debtor in, among other things, the Disclosure Statement filed as Docket 529, as follows:

　　　(1) ***Cash Cloud v. Cole Kepro International, LLC.*,** Case No. A-22-854226-B, pending in the Eighth Judicial District Court in Clark County, Nevada ("Cole Kepro Litigation");
　　　(2) ***Cash Cloud v. Bitaccess Inc.***, which was formerly filed as Case No. CV-22-00089887-0000 in the Superior Court of Justice in Ottawa, Ontario, Canada ("Bitaccess"); but which now is proceeding in arbitration in Ontario, Canada; and
　　　(3) ***Cash Cloud v. Lux Vending, LLC dba Bitcoin Depot*** adversary proceeding number 23-0101-mkn, in the bankruptcy court ("Bitcoin" and together with Bitaccess the "Software Litigation").

　　　The purchase price for the purchase of the assets related to the Cole Kepro Litigation is $625,000  plus 10% of the Net Proceeds (as defined below) of any recovery from any Cole Kepro Litigation received by Purchaser. The purchase price for the purchase of assets related to the Software Litigation is $125,000 plus 10%  of the Net Proceeds of any recovery from any Software Litigation received by Purchaser. Proof of funds has been submitted under separate cover. For avoidance of doubt assets related to "Litigation" includes, without limitation, any and all claims

1

of the Debtor's estate (the "Estate") related to the events described in the Litigation, and any others subsequently discovered, which have been asserted or could be asserted in the future against the current defendants or any other parties which might be liable to the Estate for such claims, all contracts, reports and rights of the Estate related to the Litigation and copies of all Debtor's records, in native form, related to the events, claims or damages in connection with the Litigation. Notwithstanding anything herein to the contrary, the purchase price is contingent upon the purchase of all of the Litigation. "Net Proceeds" shall be the amount of the recovery in a litigation matter received by the Purchaser after deduction of all costs and expenses of such litigation, including without limitation all costs and expenses of contingency counsel, expert witnesses, arbitrators and other necessary counsel or experts.

Purchaser represents it has received an executed engagement letter from contingency counsel as disclosed to Debtor with respect to the Litigation. In addition to the foregoing, Debtor shall agree to enter into a reasonably acceptable common interest agreement with respect to the Litigation and, if requested by Purchaser, shall provide any conflict waivers deemed necessary by counsel regarding the Litigation as it is currently contemplated that upon the purchase hereof Debtor's current counsel, James M. Jimmerson, shall continue to represent the plaintiff as Nevada counsel. To the extent deemed prudent, Debtor agrees to enter into a reasonably acceptable Litigation Purchase Agreement.

The Purchaser understands that because of the extensive marketing and the prior bid described above there will be no public auction. This bid is not intended to be a stalking horse bid, without the further written consent of the Purchaser. Please do not hesitate to contact me with any questions you may have regarding this matter or clarifications which may be needed.

Sincerely,

CARLYON CICA, CHTD.

*Dawn M. Cica*

Dawn M. Cica, Esq

# Exhibit 4



**From:** Dawn Cica
**Sent:** Monday, August 21, 2023 11:37 AM
**To:** Brett A. Axelrod Fox (baxelrod@foxrothschild.com) <baxelrod@foxrothschild.com>
**Cc:** Candace Carlyon <ccarlyon@carlyoncica.com>; Allan Diamond <adiamond@diamondmccarthy.com>
**Subject:** Offer to purchase Cole Kepro, Bitaccess and BitCoin Depot Litigation

Brett, attached please find an updated offer by CC BR Holdco LLC to purchase the estate's claims against Cole Kepro for $1m and the estate's claims against Bitaccess and BitCoin Depot for $200k as well as the payment of the arbitration deposit in Canada of CAD$261,389.14.

If this offer is acceptable to the estate I will revise the Motion, Declaration and OST documents which we finalized on August 4 prior to the estate accepting the Cole Kepro bid for $850k.

Best, Dawn

Dawn M. Cica, J.D., M.B.A
Carlyon Cica Chtd.
265 E. Warm Springs Rd. Ste. 107
Las Vegas, Nevada 89119
D 702.491.4377  |  C  702.858.5886
DCica@CarlyonCica.com | www.ccclaw.vegas
*Licensed in California, New York and Nevada*

 Director, Board of Directors
Regent/Board of Regents and Fellow, American College of Commercial Finance Lawyers

> **Litigation Asset Purchase Agreement CCBR-C 082023...**
> 50 KB

**Exhibit**
**0010**

## <u>ASSET PURCHASE AGREEMENT</u>

THIS ASSET PURCHASE AGREEMENT dated as of August ___, 2023, (the 'Agreement") is entered into by and between **CASH CLOUD INC,** Nevada Bankruptcy Case No. 23-10423-mkn ("***Bankruptcy Estate***" or "***Seller***"), and **CC BR HOLDCO LLC**, a Nevada limited liability company, or its designee ("***Buyer***"). Each may hereinafter be referred to as a "***Party***." or collectively as the "***Parties***."

## <u>RECITALS</u>

WHEREAS, on February 7, 2023, Cash Cloud Inc. **("Debtor" or "Seller")** filed a voluntary chapter 11 bankruptcy petition in the District of Nevada, initiating bankruptcy case 23-10423-mkn **("Bankruptcy Case")**, and thereby creating the Bankruptcy Estate; and

WHEREAS the Debtor conducted an auction of substantially all of its assets on June 2, 2023, pursuant to the Bid Procedures attached as Exhibit 1 to the *Order Establishing Bidding Procedures And Related Deadlines* entered by the United States Bankruptcy Court, District of Nevada, in case no. 23-10423-MKN on April 27, 2023, as Docket No. 483 (the ***"Bidding Procedures Order"***):

WHEREAS, the Debtor believes that the Bankruptcy Estate has potential claims and causes of action against various persons and entities, either under the Bankruptcy Code or under applicable non-bankruptcy law;

WHEREAS at the auction an affiliate of Buyer submitted a bid for the Debtor's claims against Cole Kepro International, LLC, ("Cole Kepro") BitAccess, Inc. and Lux Vending LLC, dba Bitcoin Depot ("***Ongoing Litigation***");

WHEREAS such affiliate was advised at the auction that even though all claims were marketed as part of the auction, the Official Unsecured Creditors Committee, of which Cole Kepro is the Chair, declined to approve a sale of such Ongoing Litigation;

WHEREAS subsequent thereto the Buyer submitted a bid for the Ongoing Litigation which was accepted by the Debtor;

WHEREAS, Buyer desires to purchase the such claims, upon the terms and subject to the conditions set forth herein;

**NOW,** THEREFORE, the Parties agree as follows:

**1. Contingent on Bankruptcy Court Approval.**

    1.1.  *Court Approval.* This Agreement is contingent upon approval of the Bankruptcy

148111716.2

Court. The Debtor shall file a motion under Section 363(b) of the Bankruptcy Code to obtain such approval ("***Sale Approval Motion***").  If the Court does not approve this Agreement, then the sale and all obligations hereunder shall be null and void.

**2. Purchase and Sale.**

2.1. *Purchase and Sale.* Upon the terms and subject to the conditions of this Agreement, Buyer agrees to purchase from the Seller, and Seller agrees to sell, convey, transfer, assign and deliver to Buyer, all of Seller's right, title and interest in the following (collectively, the ***"Purchased Assets"):***

- ***Any and all claims of the Debtor or the Bankruptcy Estate against Cole Kepro International, LLC or any of its affiliates or principals ("Cole Kepro") , including, without limitation,  that certain litigation set forth as Cash Cloud v. Cole Kepro International, LLC.,*** Case No. A-22-854226-B, pending in the Eighth Judicial District Court in Clark County, Nevada ("collectively ***Cole Kepro Claims***");
- ***Any and all claims of the Debtor or the Bankruptcy Estate  against Bitaccess Inc. or any of its affiliates or principals ("Bitaccess"), including, without limitation, that certain litigation set forth as Cash Cloud v. Bitaccess Inc.,*** which was formerly filed as Case No. CV-22-00089887-0000 in the Superior Court of Justice in Ottawa, Ontario, Canada (collectively  "***Bitaccess Claims***"); but which now is proceeding in arbitration in Ontario, Canada;
- ***Any and all claims of the Debtor or the Bankruptcy Estate  against Lux Vending, LLC  or any of its affiliates or principals ("Bitcoin Depot"), including, without limitation,  that certain litigation set forth as Cash Cloud v. Lux Vending, LLC dba Bitcoin Depot*** adversary proceeding number 23-0101-mkn, in the bankruptcy court ("***Bitcoin Claims***" and together with Bitaccess Claims the "***Software Claims***", and together with the Cole Kepro Claims, the "***Purchased Claims")***
- All insurance policies, contracts, reports, documents and copies of all Seller's records, in native form, related to the events, claims or damages in connection with any of the Purchased Claims, or relevant to discovery propounded in connection therewith (collectively the "***Documents and Records***").

"Purchased Claims" includes, without limitation, any and all claims of the Bankruptcy Estate related to the events described in the Software Claims or the Cole Kepro Claims, and any others subsequently discovered, which have been asserted or could be asserted in the future against the current defendants or any other parties which might be liable to the Estate for such claims.

2.2. *Purchase Price; Payment Terms*. The purchase price for the purchase of the Cole Kepro Claims is One Million Dollars ($1,000,000) and the purchase price for the purchase of the Software Claims is Two Hundred Thousand Dollars ($200,000) for a total of One Million Two Hundred Thousand Dollars ($1,200,000) (the "***Purchase Price***"). The Cash Purchase Price will be paid by wire to the Debtor within two business days following the date when an order not subject to any appeal, reversal, vacation or stay has been entered by the Bankruptcy Court approving the sale under Section 363 of the Bankruptcy Code in form and

2

substance satisfactory to Buyer (the "**Sale Approval Order**"). Such date shall be referred to herein as the "Closing Date". Provided Buyer has been provided proof of payment made by Debtor prior to Closing, upon the Closing Date, Buyer shall reimburse Debtor for such payment in an amount not to exceed CAD$ 261,389.14 consisting of two deposits of CAD$55,694.57 to ADR Chambers and the deposit of CAD$150,000 as security for costs, all of which are in connection with the Bitaccess Claims and specifically the Canadian arbitration.

2.3. *Delivery of Documents and Records*. Seller shall preserve and make available to Buyer, on the Closing Date, and for so long after as is reasonably necessary, in a delivery method as mutually agreed upon, the Documentation and Records related to the Purchased Assets.

2.4 *Terms of Sale.* The right, title, and interest of the Bankruptcy Estate in the Purchased Assets shall be deemed to pass to Buyer upon entry of the Sale Approval Order ("**Closing**").

Upon the Closing:

(a)     Buyer may proceed as claimant in any action that could be brought on account of a claim that is part of the Purchased Assets. Buyer shall proceed on such claims in its own name, as successor-in-interest to the Bankruptcy Estate and/or Debtor, whether such proceeding occurs in the Bankruptcy Court or in any other forum.

(b)     Buyer has sole and absolute discretion with respect to the claims comprising the Purchased Claims. Buyer will have the exclusive right to prosecute the claims, but is under no obligation to do so. Buyer may assign, compromise, settle, release, or take any other action relating to the Purchased Claims without approval from the Bankruptcy Estate, the Debtor, or the Bankruptcy Court (except for the original approval of this Agreement).

(c)     Buyer's actions in pursuit of the claims comprising the Purchased Claims are entirely independent of the Bankruptcy Estate; as such, the Bankruptcy Estate, the Debtor, and the Debtor's counsel shall bear no responsibility or liability whatsoever to any person or entity for any action taken by Buyer in pursuit of the Purchased Claims.

(d)     The administration and closing of the Bankruptcy Case shall not affect the continued prosecution of any complaint commenced by Buyer on account of the Purchased Claims, whether pending in Bankruptcy Court or another court.

**3. As Is, Where Is Sale.** THERE ARE NO REPRESENTATIONS OR WARRANTIES OF ANY KIND WHATSOEVER, EXPRESSED OR IMPLIED, MADE BY SELLER WITH RESPECT TO THE PURCHASED CLAIMS, EXCEPT AS TO TITLE. BUYER ACKNOWLEDGES THAT THE PURCHASED ASSETS ARE BEING SOLD, TRANSFERRED, CONVEYED, ASSIGNED AND DELIVERED TO, AND PURCHASED AND ACCEPTED BY, BUYER ON AN "AS IS/WHERE IS" BASIS. SOME OR ALL PURCHASED CLAIMS MAY BE NON- VIABLE OR NOT COST

3

EFFECTIVE TO PURSUE. ALL RISK IS BORNE BY BUYER.

4. **Best Efforts; Further Assurances.** Subject to the terms and conditions of this Agreement, Buyer and Seller will use their respective commercially reasonable best efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary or desirable under applicable laws and regulations to consummate and support the transactions contemplated by this Agreement. Seller and Buyer agree to execute and deliver such other documents (such as execution of a Bill of Sale) and to take such other actions as may be commercially reasonably necessary in order to consummate the transactions contemplated by this Agreement, including to vest in Buyer all the rights, title, and interest of the Seller in and to the Purchased Claims and to reasonably assist in the prosecution and collection thereof. Seller shall agree to enter into a reasonably acceptable common interest agreement with respect to the Purchased Claims and, if requested by Buyer, shall provide any conflict waivers deemed necessary by counsel regarding the Purchased Claims as it is currently contemplated that upon the purchase hereof Debtor's current counsel, James M. Jimmerson, shall continue to represent the plaintiff as Nevada counsel.

**5. Miscellaneous.**

5.1. *Authority.* Each Party represents, warrants and covenants that the undersigned signatories for such Party have the full legal right, power and authority to bind that Party to this Agreement. Each of the Parties represent that they have received independent legal advice, or have had the opportunity to receive independent legal advice, with respect to the terms of and advisability of executing this Agreement.

5.2. *Amendments and Waivers.* No modification, waiver, or amendment of any of the terms of this Agreement shall be valid unless in writing and executed by all Parties and approved by the Bankruptcy Court. No waiver of any breach hereof or default hereunder shall be deemed a waiver of any subsequent breach or default of the same or similar or dissimilar nature. No course of dealing or course of conduct shall be effective to amend, modify or change any provision of this Agreement.

5.3. *Successors and Assigns.* The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns including, without limitation, any subsequently appointed Trustee. After Closing, Buyer may freely transfer its rights in and to the Purchased Claims without Bankruptcy Court approval.

5.4. *Governing Law.* This Agreement shall be governed by and construed in accordance with the law of the State of Nevada.

5.5. *Jurisdiction and Attorney's Fees.* The Parties agree that any suit, action or proceeding between the Parties seeking to enforce or interpret any provision of this Agreement shall be brought exclusively in the Bankruptcy Court or, if the Bankruptcy Court no longer has jurisdiction over such action, in a court of competent jurisdiction located in Clark County, Nevada. The Parties also agree that the prevailing Party shall be entitled to an award of

4

reasonable attorney's fees and costs in such a suit, action or proceeding, in addition to any other relief to which the prevailing Party may be entitled.

5.6. *Counterparts.* This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument. This Agreement shall become effective when each Party hereto shall have received a counterpart hereof signed by the other Party hereto. Receipt of a counterpart by facsimile or by e- mail transmission of a .pdf file shall suffice for purposes of the previous sentence.

5.7. *Entire Agreement.* This Agreement embodies the entire agreement and understandings by and between the Parties. This Agreement supersedes any and all prior or concurrent agreements, understandings, statements, assurances, assumptions, premises, promises, agreements, discussions or representations, oral or written, relating to the foregoing matters, including oral agreements or representations, if any. No Party has made any representations upon which the other Party has relied that are not contained in this Agreement relating to the foregoing matters. No Party is relying on an unstated assumption, premise or condition not contained in this Agreement relating to the foregoing matters.

5.8. *Severability.* This Agreement shall be enforced to the maximum extent permitted by law. In the event that any one or more of the phrases, sentences, sections, or paragraphs contained in this Agreement shall be declared invalid or unenforceable by order, decree or judgment of any court having competent jurisdiction, or shall be or become invalid or unenforceable by virtue of any applicable law, the remainder of this Agreement shall be construed as if such phrases, sentences, sections, paragraphs had not been inserted except when such construction shall constitute a substantial deviation from the general intent and purposes of the Parties as reflected in this Agreement.


IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective authorized officers as of the day and year first above written.

**Seller:**
CASH CLOUD INC.,
a Nevada Corporation


By: _____
Name: _____
Title: _____


**Buyer:**
CC BR HOLDCO LLC,
a Nevada limited liability company


By: _____
Name: _____

148111716.2

Title: _____

Exhibit 5



DIAMOND McCARTHY

Attorneys & Counselors

909 Fannin Street | 37th Floor | Houston, TX 77010 | Phone: 713.333.5100 | Fax: 713.333.5199

Allan B. Diamond                                                                                          E-Mail Address
Direct Dial Number – (713) 333-5104                                              adiamond@diamondmccarthy.com

August 24, 2023

Ms. Brett Axelrod, Esq.
Fox Rothschild LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, NV  89135

**Confidential and Protected from Disclosure under FRE 408 and Analogous State
Statues and Rules**

Re: *In re: Cash Cloud, 23-10423-mkn ("Cash Cloud")*

Dear Ms. Axelrod:

I have been engaged to represent Christopher McAlary in connection with various
Cash Cloud matters.  I was initially engaged by Mr. McAlary as potential
contingency counsel with respect to the litigation of the Cash Cloud estate's (the
"Estate") claims against Cole Kepro International, LLC ("Cole Kepro"), Bitaccess
Inc. ("Bitaccess") and Lux Vending, LLC dba Bitcoin Depot ("Bitcoin Depot")
(collectively the "Three Litigation Claims") in the event such Three Litigation
Claims were acquired by Mr. McAlary.  In that connection, I understand that Mr.
McAlary submitted a revised APA to the Debtor earlier this week through his
affiliate CC BR Holdco, LLC.   His revised offer for the purchase of the Estate's
claims against Cole Kepro is $1 million and the price to purchase the claims
against Bitaccess and Bitcoin Depot is collectively an additional $393,263.81
(including reimbursement of Canadian arbitration costs).  I now have been further

engaged by Mr. McAlary as co-counsel in general for matters involving the Cash Cloud Estate.

You indicated to my co- counsel, Dawn Cica, in a return email yesterday that before the Estate would consider selling the Three Litigation Claims to Mr. McAlary for a combined total of $1.2m, the Estate wanted to entertain a global settlement offer of the claims against and by Mr. McAlary.  It is my understanding that the Estate stipulated with the Official Unsecured Creditors Committee (the "Committee") at the beginning of August for the Committee to have standing to pursue the claims against my client and that such stipulation was denied by Judge Nakagawa. I further understand that additional argument with respect to that stipulation was had at the recent confirmation hearing and that standing of the Committee with respect to those claims as well as confirmation of the Debtors' Plan is under advisement by the judge. As you are aware, it is my client's position that Cole Kepro as Committee co-chair has been unduly influencing the course of this case for its own interests in direct conflict with the best interests of the Estate and its creditors generally (and perhaps to ensure its viability as a going concern given the gravity of the claims against it).

The purpose of this letter is neither to engage in self-serving argument nor dispute the many factual allegations that have been previously made against my client by either the Committee, the Debtor, or others.   Rather, this letter follows the prior discussion with Dawn to provide a global settlement offer on behalf of Mr. McAlary with respect to his claims against the Estate and the Estate's claims against him (the "Estate Claims").   Mr. McAlary hereby offers to settle all such Estate Claims together with the purchase of the Three Litigation Claims for the aggregate total amount of $1,693,263.81.  In addition to that payment amount, Mr. McAlary will cooperate with respect to the Estate accessing the D&O insurance policy (with protection from execution against his personal assets) and with any other matters the Estate may reasonably need.  Further, should we resolve matters prior to September 13, Mr. McAlary will withdraw his Motion to Convert and the 2004 Examination Motions which were filed yesterday.

I note that Mr. McAlary has made several requests for a settlement conference in connection with a global resolution of the Estate Claims.  Apparently, those requests have been summarily denied by the Committee.  Instead, they

threatened that if Mr. McAlary did not make a substantial settlement offer prior to the hearing last week they would file their Complaint with the Court, which in fact they did, on August 15th, despite a Rule 9011 warning by my co-counsel Ms. Carylon.  Nevertheless, I offer again that if the parties wish to try and reach a resolution of all the Estate Claims, perhaps a short session with a third-party neutral, be it a sitting or former federal bankruptcy judge or someone else, we are open to such a procedure.  I would think we all agree, if pursued, it is in everyone's best interest to do it promptly.

To be clear, however, Mr. McAlary vehemently denies all liability for the claims asserted by the Committee (and will litigate them vigorously if necessary), as evidenced, at least in part, by his response to the Committee transmitted on August 8, as to which you were copied.

Lastly, irrespective of the issues of any settlement of the Estate claims by and against Mr. McAlary, I strongly encourage the Estate to consider selling the Three Litigation Claims to Mr. McAlary separately and apart from those potential settlement discussions.  The Three Litigation Claims have little value without the knowledge and full backing, evidentiary and otherwise, of Mr. McAlary given his involvement from inception with the underlying facts and his personal decisions to commence of all such litigations.

I am happy to discuss any of this with you should you wish to do so or have any questions.

Kind regards,

Allan

cc: Dawn M. Cica, Esq.
    Mr. Chris McAlary

# Exhibit 6

SEWARD & KISSEL LLP

ONE BATTERY PARK PLAZA
NEW YORK, NEW YORK 10004

WRITER'S DIRECT DIAL:
ROBERT J. GAYDA
Partner
(212) 574-1490
gayda@sewkis.com

TELEPHONE: (212) 574-1200
FACSIMILE: (212) 480-8421
WWW.SEWKIS.COM

901 K STREET, NW
WASHINGTON, DC 20001
TELEPHONE: (202) 737-8833
FACSIMILE: (202) 737-5184

August 26, 2023

**VIA E-MAIL**
Allan B. Diamond
Diamond McCarthy LLP
909 Fannin St., 37th Floor
Houston, TX  77010
adiamond@diamondmccarthy.com

       Re:     **In re Cash Cloud, Inc. (DBA Coin Cloud), Case No. 23-10423**
              **Claims against Christopher McAlary**

Dear Mr. Diamond:

      We write on behalf of the Official Committee of Unsecured Creditors (the "Committee") in the above-referenced bankruptcy case (the "Chapter 11 Case") of Cash Cloud Inc. (DBA Coin Cloud) (the "Debtor"), in response to your letter to Ms. Brett Axelrod, dated August 24, 2023 (the "Letter").

      As you are no doubt aware, on August 24, 2023, the Court in the Chapter 11 Case wholly rejected Mr. McAlary's arguments in opposition to the Committee's request for derivative standing to pursue the thirteen claims against Mr. McAlary set forth in the proposed complaint, which was filed by the Committee on August 15, 2023.  *See* Dkt. No. 1119 (order); Dkt. No. 1073 (the "Proposed Complaint").  In so doing, the Court described the allegations against Mr. McAlary as "serious" (rising to the level of fraud, dishonestly, incompetence, or gross mismanagement, which would constitute grounds for the appointment of a chapter 11 trustee) and concluded that "colorable claims exist" and are adequately articulated in the Proposed Complaint.  *See* Dkt. No. 1119 at 7-8.  The Committee intends to file the Proposed Complaint against Mr. McAlary this upcoming week.

      In view of the foregoing, as well as the Committee's confidence in the strength of its claims, the settlement proposal set forth in your Letter is woefully inadequate and fails to acknowledge the severity of the allegations against your client.  Notwithstanding, and recognizing the time and expense of any litigation, the Committee, after discussions with the Debtor, makes the following counterproposal:

August 26, 2023
Page 2

- $2,193,263.81 in cash for the Cole Kepro, Bit Access, and Bitcoin Depot litigation (consisting of $1 million for the Cole Kepro litigation, $500,000 each for the Bit Access and Bitcoin Depot litigations, plus the bond that was posted of $193,263.81);

- 10% of the excess proceeds on any recovery in or sale of the Bitcoin Depot litigation that exceeds $1.5 million;

- $574,327 in full satisfaction of all amounts owed to the estate on account of loans for which Mr. McAlary is the borrower ($716,000 purported outstanding minus the $141,673 in original USD value of the Bitcoin loan made to the Debtor by Mr. McAlary);

- $3,639,200 reimbursement for the distribution received by Mr. McAlary in December 2021 (representing 80% of the total $4,549,000 received by Mr. McAlary);

- $1 million in cash from proceeds of the D&O policy (the Committee would require that the insurer agree to the payment of the insurance proceeds as part of any settlement), plus an additional $500,000 from Mr. McAlary, in relation to the D&O claims asserted against Mr. McAlary;

- Waiver by Mr. McAlary of any and all claims against the estate, and withdrawal of all outstanding discovery and litigation against the estate (including the Committee); and

- Cooperation from Mr. McAlary in any ongoing litigation.

At this time, given the disparate views of the parties with respect to the claims, the Committee continues to believe that mediation among the parties would not be fruitful. However—notwithstanding your inaccurate and unproductive insinuation that the Committee has threatened Mr. McAlary and has rejected good faith settlement discussions—the Committee is encouraged by the continued dialogue with you and Ms. Cica, and would consider mediation in the future if settlement appears achievable. As such, while the Committee intends to proceed with the Proposed Complaint, we look forward to your response to the above offer.

The letter does not waive any of the Committee's rights and claims, all of which are expressly reserved.

Sincerely,

*Robert J. Gayda*

Robert J. Gayda

# Exhibit 7

**From:** Cristina Robertson
**To:** Brett Axelrod
**Cc:** Dawn Cica; Gayda, Robert J.; Miller, Laura
**Subject:** [EXTERNAL] In re Cash Cloud, 23-10423-mkn
**Date:** Wednesday, November 8, 2023 5:26:08 PM
**Attachments:** external.png
finance_warning.png
Letter to Debtor re declarations ISO Joint Motion to Approve Settlement Agreement 11.8.23.pdf



Good afternoon,

Please see the attached correspondence regarding the above-referenced matter. Please contact our office if you have any questions or wish to discuss.

Thank you.

Cristina Robertson
CERTIFIED BANKRUPTCY ASSISTANT
**CARLYON CICA CHTD.**
265 E. Warm Springs Rd. Ste. 107
Las Vegas, Nevada 89119
**D 702.685.4444**
Crobertson@CarlyonCica.com | www.ccclaw.vegas

# Carlyon Cica Chtd.

**Candace C. Carlyon, Esq.**
Email: ccarlyon@carlyoncica.com
*Also licensed in California*

**Dawn M. Cica, Esq.**
Email: dcica@carlyoncica.com
*Also licensed in California and New York*

265 E. Warm Springs Road, Suite 107
**Las Vegas, Nevada 89119**
Telephone (702) 685-4444
www.CCClaw.Vegas

Natasha Sharma, Esq.
Email: nsharma@carlyoncica.com

Of Counsel:
Laury Macauley, Esq.
Robert Gower, Esq.

November 8, 2023

**VIA EMAIL:** baxelrod@foxrothschild.com
Cash Cloud Inc.
c/o Brett Axelrod, Esq.
Fox Rothschild LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada

   Re:  In re *Cash Cloud*, 23-10423-mkn

Dear Ms. Axelrod,

   As you know, this office represents CC BR HOLDCO LLC, a Nevada limited liability company ("Purchaser"). From the declarations filed by Debtor in support of the Joint Motion to Approve Settlement Agreement with Cole Kepro International, LLC ("Cole Kepro"), and the deposition testimony of Tanner James, it appears there is some confusion as to Purchaser's offers to purchase litigation from the estate. In order that all parties are clear, the Purchaser made an offer to purchase all of the litigation defined as "Target Litigation" and the Purchaser has made a separate offer to purchase the Debtor's claims against Cole Kepro for the amount of $1,000,000.  At the request of the Debtor, such an offer was made with the warrant that the Purchaser would purchase the claims against Cole Kepro even if Cole Kepro filed a bankruptcy petition.

   I hope that this clarifies matters. Please let me know if you have any questions.

      Sincerely,

      CARLYON CICA, CHTD.

      */s/ Dawn M. Cica*

      Dawn M. Cica, Esq.

cc: Seward & Kissel LLP
gayda@sewkis.com;
millerl@sewkis.com

1

# Exhibit 8

**In the Matter Of:**

IN RE: CASE CLOUD, INC.

BK-23-10423-MKN

---

**CHRISTOPHER MCALARY**

*November 21, 2023*

---



800.211.DEPO (3376)
EsquireSolutions.com

1          We have stated that we understand you

2   have raised an issue that any funds that my client

3   might expend to purchase litigation claims in this

4   bankruptcy would diminish the amount of money he

5   would have available if a judgment was ultimately

6   rendered against him in order to satisfy such

7   judgment.  We concede that that is the case.  He is

8   not going to discuss his current financial situation.

9   BY MS. MILLER:

10         Q    So, Mr. McAlary, are you -- do you agree

11  with your counsel that you concede that any funds you

12  might expend to purchase litigation claims in this

13  bankruptcy would diminish the amount of money that

14  you would have available if a judgment was rendered

15  against you in the adversary proceeding?

16         A    Yes.

17         Q    And are you following the advice of

18  counsel in that you're not going to testify about

19  your current income?

20         A    Yes.

21         MS. MILLER:  And again the committee is

22  reserving its rights.  We will raise this with Judge

23  Nakagawa promptly, so let's move on.

24         Let's put in the chat Exhibit 2.

25         MS. CARLYON:  If you want to just send me



CHRISTOPHER MCALARY                                November 21, 2023
IN RE: CASE CLOUD, INC.                                           53

 1   BY MS. MILLER:

 2          Q    Okay.

 3               So do you understand, then, that if a

 4   party is successful in litigation against a bankrupt

 5   counterparty they may nonetheless recover very little

 6   on their claim?

 7               MS. CARLYON:  Objection.

 8               THE WITNESS:  Yes, I understand that's a

 9   possibility.

10   BY MS. MILLER:

11          Q    Are you familiar with other insolvency

12   proceedings?

13          A    I'm sorry, can repeat the question?  I

14   didn't hear that last part.

15          Q    Aside from bankruptcy are you familiar

16   with other types of insolvency proceedings?

17          A    Other types of insolvency proceedings

18   outside of bankruptcy?  I am not.

19          Q    Okay.

20               Do you have any basis for believing that

21   Cole Kepro will continue to operate as a going

22   concern if the 9019 motion is denied?

23          A    Any basis --

24               MS. CARLYON:  Objection to form.

25               THE WITNESS:  -- if Cole Kepro will



1    continue operating as a going concern.

2              I believe Fred Cook had testified during

3    his 2004 deposition on that.  That's -- you know,

4    that's a basis for it.

5    BY MS. MILLER:

6         Q    Anything else?

7         A    No.

8         Q    You issued a subpoena to Cole Kepro in

9    connection with your objection; correct?

10             MS. CARLYON:  Objection, form.

11             THE WITNESS:  Yes.

12   BY MS. MILLER:

13        Q    And in response to that subpoena Cole

14   Kepro produced certain financial documents to you; is

15   that right?

16        A    I believe so.

17             MS. MILLER:  So I want to walk through

18   some of these documents, but I understand that they

19   are subject to an NDA and I just want to understand

20   who is on the deposition, so if we have to put folks

21   in breakout rooms we can do that.  So maybe we will

22   go off the record briefly.

23             (A discussion was held off the record.)

24   BY MS. MILLER:

25        Q    Mr. McAlary, we just had a discussion off



CHRISTOPHER MCALARY                                    November 21, 2023
IN RE: CASE CLOUD, INC.                                                 55

 1  the record.  We understand that based on the

 2  discussion that documents were produced by Cole Kepro

 3  to your attorneys at Diamond McCarthy, but that

 4  neither you nor Ms. Carlyon have reviewed those

 5  documents; is that correct?

 6         A     That's correct.

 7               MS. CARLYON:  And it's car like a vehicle

 8  and lion like an animal.

 9               MS. MILLER:  Carlyon.

10               MS. CARLYON:  Say lion like an animal.

11               MS. MILLER:  Carlyon.

12               MS. CARLYON:  Thank you.

13               MS. MILLER:  I'm doing my best.

14               MS. CARLYON:  Just so you won't get in

15  trouble in front of the judge.

16  BY MS. MILLER:

17         Q     Mr. McAlary, without getting into the

18  content of any privileged conversations, did you ever

19  discuss those documents with Diamond McCarthy?

20               MS. CARLYON:  Yes or no.

21               THE WITNESS:  No.

22  BY MS. MILLER:

23         Q     Let's go back to your declaration, which

24  is Exhibit 3.  I want to look specifically at

25  paragraph 18.  Just let me know when you're there.



 1          A     I'm sorry, which paragraph?

 2          Q     My apologies, paragraph 26.

 3                MS. CARLYON:  Are we done with the

 4    settlement offer?

 5                MS. MILLER:  For now, yes.

 6                MS. CARLYON:  Okay.

 7                THE WITNESS:  Yes, I'm there.

 8    BY MS. MILLER:

 9          Q     Perfect.

10                In this paragraph you state on behalf of

11    the debtor, Brett Axelrod called my attorney that

12    afternoon of August 4, 2023 to request that I

13    covenant to buy the Cole Kepro litigation even if

14    Cole Kepro filed bankruptcy.  At that time, the

15    debtor represented if I said yes, then debtor had

16    authorization to immediately file the approval

17    motion.  I agreed and my counsel so advised

18    Ms. Axelrod by telephone.  Do you see that?

19          A     Yes.

20          Q     So this paragraph discusses two phone

21    calls between your attorney and Ms. Axelrod on August

22    24th, 2023; is that right?

23          A     Correct.

24          Q     Which of your attorneys attended these

25    calls with Ms. Axelrod?



1          A    Dawn Cica.

2          Q    Did you personally attend either of these

3    calls?

4          A    I did not.

5          Q    You didn't put the covenant that you

6    reference in here in any subsequent written offer;

7    correct?

8          A    I don't recall.  I want to review those

9    e-mails that were going back and forth between the

10   negotiating parties.

11         Q    But sitting here today you don't recall

12   that covenant being put in writing?

13         A    Yes, I don't recall.

14              MS. MILLER:  Let's take a look at

15   Exhibit 15.  It's being put into the chat,

16   Exhibit 15.

17              MS. CARLYON:  Thank you.

18              THE WITNESS:  Okay.

19              (Exhibit 15 was marked.)

20   BY MS. MILLER:

21         Q    This is a letter that your counsel, Ms.

22   Cica, wrote to the debtor and the committee on

23   November 8th, 2023; correct?

24         A    Correct.

25         Q    Did you review this letter before it was



```
 1   exhibit -- we'll mark this as Exhibit 17.
 2              (Exhibit 17 was marked.)
 3   BY MS. MILLER:
 4        Q    Do you have it up?
 5        A    Yes.
 6        Q    So this is an e-mail from Bob Gayda to
 7   Cristina Robertson, Brett Axelrod, Dawn Cica and
 8   myself responding to the e-mail that we just looked
 9   at in Exhibit 16; correct?
10        A    Correct.
11        Q    And it's also dated November 8th, 2023;
12   is that right?
13        A    Yes.
14        Q    And the e-mail states from Mr. Gayda, do
15   you have evidence to support this assertion?  Please
16   provide it.  I am aware of no such offer.  Do you see
17   that?
18        A    Yes.
19        Q    Did you ever receive this e-mail?
20        A    I did not receive this e-mail.  I don't
21   believe I'm --
22        Q    Were you ever made aware -- I apologize,
23   continue.
24        A    Yeah, I was not on this e-mail.
25        Q    Were you ever made aware of this e-mail?
```



CHRISTOPHER MCALARY                              November 21, 2023
IN RE: CASE CLOUD, INC.                                        79

```
 1          A    I believe I was.
 2          Q    When were you made aware of this e-mail?
 3          A    I don't recall the exact time.  I do
 4   believe it may have been forwarded to me.
 5          Q    Did you or your attorneys ever respond to
 6   this e-mail?
 7          A    I'm not sure.  I know I did not.  I'm not
 8   sure if my attorneys have.
 9          Q    So I think those are all the questions I
10   have.  I will just -- sorry, one more.
11              MS. CARLYON:  I'm sorry, you cut out
12   there.  Are we still looking at this exhibit?
13              MS. MILLER:  Yes, we are.
14   BY MS. MILLER:
15          Q    So, Mr. McAlary, did you ever provide
16   evidence to support your assertion of an offer from
17   this November 8th letter?
18          A    Support for an offer?
19          Q    I can restate the question.
20          A    Okay.
21          Q    It might be easier.
22              Did you ever provide evidence to support
23   your assertion of the offer that is set forth in your
24   November 8th, 2023 letter to the committee and the
25   debtor?
```



CHRISTOPHER MCALARY                              November 21, 2023
IN RE: CASE CLOUD, INC.                                        80

1              MS. CARLYON:  Objection to form.

2              THE WITNESS:  I believe we produced

3   numerous documents related to the various series of

4   offers that have been provided to the debtor.

5   BY MS. MILLER:

6        Q    When?

7        A    Were they provided?

8              MS. CARLYON:  I'm sorry, that was my

9   question.

10             THE WITNESS:  Can you be more specific?

11  BY MS. MILLER:

12       Q    You testified I believe we produced

13  numerous documents related to the various series of

14  offers that have been provided to the debtor.  Do you

15  recall that testimony?

16       A    Yes.

17       Q    My question is did you ever in response

18  to this e-mail provide evidence to support your

19  assertion of the offer set forth in the November 8th,

20  2023 letter?

21             MS. CARLYON:  Objection to form.

22             THE WITNESS:  I did not respond to that

23  e-mail.

24             MS. MILLER:  So I have no further

25  questions.



```
 1   STATE OF NEVADA        )
                            ) ss.
 2   COUNTY OF WASHOE       )

 3             I, JANET MENGES, a Certified Court

 4   Reporter for the State of Nevada, do hereby certify;

 5             That on Tuesday, the 21st day of November,

 6   2023, at the hour of 9:00 a.m. of said day, at Las

 7   Vegas, Nevada, appeared via videoconference

 8   CHRISTOPHER McALARY, who was duly sworn by me, was

 9   thereupon deposed in the matter entitled herein, and

10   that before the proceedings completion the reading

11   and signing of the deposition has been requested by

12   the deponent or party;

13             That the foregoing transcript, consisting of

14   pages 1 through 86, is a full, true, and correct

15   transcript of my stenotype notes of said deposition

16   to the best of my knowledge, skill, and ability.

17             I further certify that I am not an attorney

18   or counsel for any of the parties, nor a relative or

19   employee of any attorney or counsel connected with

20   the action, nor financially interested in the action.

21             DATED:  At Reno, Nevada, this 21st day of

22   November, 2023.

23                         _____
                           JANET MENGES, CCR #206 (NV)
24                         CSR #5785 (CA)

25
```



Exhibit 9

| From: | Gayda, Robert J. |
|---|---|
| To: | Cristina Robertson; Brett Axelrod |
| Cc: | Dawn Cica; Miller, Laura |
| Subject: | Re: In re Cash Cloud, 23-10423-mkn |
| Date: | Wednesday, November 8, 2023 5:48:26 PM |
| Attachments: | external.png |
| | finance_warning.png |

Do you have evidence to support this assertion?  Please provide it.  I am aware of no such offer.

**From:** Cristina Robertson <crobertson@carlyoncica.com>
**Sent:** Wednesday, November 8, 2023 2:25:50 PM
**To:** Brett Axelrod <baxelrod@foxrothschild.com>
**Cc:** Dawn Cica <Dcica@carlyoncica.com>; Gayda, Robert J. <gayda@sewkis.com>; Miller, Laura <millerl@sewkis.com>
**Subject:** [EXTERNAL] In re Cash Cloud, 23-10423-mkn



Good afternoon,

Please see the attached correspondence regarding the above-referenced matter. Please contact our office if you have any questions or wish to discuss.

Thank you.
Cristina Robertson
CERTIFIED BANKRUPTCY ASSISTANT
**CARLYON CICA CHTD.**
265 E. Warm Springs Rd. Ste. 107
Las Vegas, Nevada 89119
**D 702.685.4444**
Crobertson@CarlyonCica.com | www.ccclaw.vegas

# Exhibit 10

1                  UNITED STATES BANKRUPTCY COURT

2                      DISTRICT OF NEVADA

3

4    In re:                      )
                                 )
5         CASH CLOUD, INC.,      )
          dba COIN CLOUD,        )
6                                )
            Debtor.              ) CASE NO. BK-23-10423-MKN
7                                ) CHAPTER 11
                                 )
8                                )
                                 )
9    _____)

10

11

12

13        VIDEOCONFERENCE DEPOSITION OF CHRIS BAIRD

14           AS FRBP RULE 7030(b)(6) DESIGNEE OF

15      THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

16           Taken on Friday, November 10, 2023

17                    At 9:05 a.m.

18            By a Certified Court Reporter

19                  Las Vegas, Nevada

20

21

22

23

24

     Reported By:  Shanyelle King, CCR No. 943

25   Job No. 6289748

                                              Page 1

```
 1    in a moment -- with anybody at Cole Kepro?
 2              MR. MATOTT:  Same privilege objection.  And
 3    just highlighting, Cole Kepro is a committee member.  So
 4    deliberations, regardless of counsel, is confidential
 5    between this member and Cole Kepro as a member.
 6              So go ahead, Chris, and answer with that.
 7              THE WITNESS:  Understood.  I understand the
 8    objection, I think I understand the question as well,
 9    and I can confidently say that there was never at any
10    time any discussions that would have required me, in my
11    capacity as a committee member, as a co-chair, to have
12    to have deliberations with any committee members on a
13    one-off basis.  That simply didn't occur, including with
14    Cole Kepro.
15    BY MR. DIAMOND:
16        Q.    Did Cole Kepro participate in any discussions
17    whatsoever on the committee that have to do with the
18    current motion to approve a settlement with Cole Kepro?
19        A.    No, sir, they did not.  I found Cole Kepro
20    and their counsel to be extremely professional and
21    respectful of the committee bylaws that we had set up
22    and established.  Whenever there was a committee
23    discussion where that would have been an agenda item, it
24    was always pushed to the end of the committee call, at
25    which point Cole Kepro and their counsel would recuse
```

Page 18

1    themselves, they would drop off the call, and our team

2    would confirm that they had indeed disconnected and

3    dropped, and further deliberations, privileged

4    deliberations amongst the rest of the committee, would

5    then take place at that time.

6         Q.   So with that as the scope, I'm going to go

7    back to my questions.  What communications, meetings,

8    discussions, did the committee have with Cole Kepro at

9    any point in time that relates to the subject matter of

10   the joint motion to approve a settlement with Cole Kepro

11   that you were involved in?

12        A.   I understand the -- specifically understand

13   that the committee professionals specifically handled

14   the majority of the discussions specific to the case.

15   The committee professionals would bring that back to the

16   committee, again, Cole Kepro being recused and not privy

17   to any of the conversations we would have regarding

18   that, and the committee professionals would, again, lead

19   the majority of the conversation, consult with and seek

20   input from the committee in regards to the litigation

21   with CKI.

22             MR. DIAMOND:  Move to strike as

23   nonresponsive.

24   BY MR. DIAMOND:

25        Q.   All I want to know is what meetings, if any,

Page 19

1    June 17, 2022, would have been more or less seven or

2    eight months prior to the Cash Cloud bankruptcy and your

3    appointment to the committee; correct?

4        A.    Correct.

5        Q.    So when you say that you reviewed things

6    early in the litigation proceedings, what are you

7    referring to?

8            MR. MATOTT:  Objection to form.

9            THE WITNESS:  Yeah, there were a number of

10   additional components that are not being taken into

11   consideration in the line of questioning, including the

12   intention of the debtor at the time of seeking

13   bankruptcy protection.

14   BY MR. DIAMOND:

15       Q.    I don't understand what you're saying.

16       A.    Maybe we are both --

17       Q.    What are you answering?

18       A.    What I'm saying is there are a number of

19   additional factors, including the minimal nature of this

20   particular portion of the claim as it pertained to the

21   committee, at that particular time.  There were -- in

22   fact, early -- in fact, there had been no discovery,

23   from what I understand, at that point in time by the

24   committee.

25       Q.    You would agree with me, would you not, sir,

                                                    Page 25

1    amount of or the range of dollars that was being sought

2    by Cash Cloud in its lawsuit against Cole Kepro?

3        A.    I understand the range to be very material.

4    North of $100 million, sir.

5        Q.    Did the committee engage any experts to do

6    any evaluation of those economic damages?

7        A.    Again, I believe I've answered some of this,

8    but I'll again answer.  Yes, I believe that the

9    committee did do an initial investigation of --

10       Q.    That wasn't my question.  I don't want to

11   interrupt you.  Let me ask the question again.

12             MR. MATOTT:  Let him finish that question --

13   the answer before you ask a follow-up.  He was

14   mid-answer.

15             THE WITNESS:  And I believe in that process

16   of -- that was conducted by the committee, that our

17   conclusion was that there essentially was not a smoking

18   gun as it pertained to the claims by either party.  We

19   concluded that to further investigate that particular

20   litigation would be extremely fact intensive, it would

21   take a very long time to -- if we could even get the

22   correct parties to produce and participate, and it would

23   lead to a very, very expensive process, at which time it

24   was apparent that the estate was in trouble and would

25   not sufficiently have the funds to be able to pursue a

Page 30

1    come into CKI.  The promissory note essentially was

2    contingent on a claim, an insurance claim, that was

3    needed, and I believe the rationale was that that was a

4    viable document that -- or agreement that the committee

5    could get behind.

6        Q.    So let's see if we can break that down so I

7    can understand it and hopefully the judge can understand

8    it.

9             The $850,000 represented by a promise to pay

10   it at some point in the future from Cole Kepro to the

11   debtor's estate; correct?

12       A.    Correct.

13       Q.    And that $850,000 is contingent on Cole Kepro

14   obtaining those funds from its credit insurer?

15            MR. MATOTT:  Objection to form.

16   BY MR. DIAMOND:

17       Q.    Or what is your understanding of that?

18       A.    My understanding is that there was an

19   insurance policy that our professionals reviewed, and

20   deemed that the policy was indeed valid, thus validating

21   the ability or the validity of that $850,000 note.

22            And I believe -- if I can just add to my

23   statement.  I believe that that note was associated with

24   what felt to the committee a tangible timeline that we

25   could get behind as well.  That it was not an indefinite

Page 40

1   note.  That it would essentially -- if the claim,

2   insurance claim, were allowed to be effectuated, that it

3   would have a very timely payment.

4        Q.   So the $850,000 payment by Cole Kepro, is it

5   contingent on the insurance company paying on a claim

6   that Cole Kepro plans to make?

7             MR. MATOTT:  Objection to form.

8   BY MR. DIAMOND:

9        Q.   You tell me what your understanding is.

10       A.   My understanding was that -- let me reread

11  the Exhibit 3 here carefully, but -- essentially, yes,

12  that's my understanding.

13       Q.   Who is the insurer that is the subject matter

14  of this?

15       A.   I am unaware at the moment exactly who the

16  insurer was.

17       Q.   Or is; right?

18       A.   Sure, sure.

19       Q.   So you don't know the name of Cole Kepro's

20  insurer from which this claim is to be made?

21       A.   I do not recall at this moment the name of

22  that insurer.

23       Q.   Does the acronym ULAE sound familiar, or have

24  you ever heard that before?

25       A.   I believe I've heard the acronym recently, to

```
 1    committee any guarantee that it would pay under the

 2    policy?

 3               MR. MATOTT:  Objection to form.

 4               THE WITNESS:  Again, I think I've answered to

 5    the extent I can and be helpful.  The committee

 6    professionals consulted with the committee to the extent

 7    it could, and we understood the policy to be as binding

 8    and as guaranteed as any other policy commercially

 9    reasonably could be guaranteed.

10    BY MR. DIAMOND:

11         Q.   You might not understand what I mean by

12    guarantee, so I'm going to try to break that down for

13    you, and I apologize if you don't.

14         A.   That's fine.  Thank you.

15         Q.   I think you're thinking, you tell me if it's

16    something different, based on your response, had to do

17    with whether there's a valid policy, correct, and that

18    the committee was assured there was a valid policy.

19               MR. MATOTT:  Objection to form.

20    BY MR. DIAMOND:

21         Q.   Is that what you're trying to tell me?

22         A.   What I'm trying to tell you is that what I

23    understand is that, as it pertains to III 9(a) in the

24    Exhibit 3 that you are showing me here, that we

25    determined a number of factors there that gave
```

Page 50

1    assurances to the committee that this was the most

2    reasonable and likely to proceed ability for the

3    committee to see a tangible recovery, something that the

4    committee was excited to be able to have -- put a

5    checkmark by, if you will.

6    BY MR. DIAMOND:

7        Q.    But what I want to know, you still haven't

8    answered, is has the credit insurer stated in some

9    form -- oral, written, however -- that it was going to

10   allow a claim and pay on it?

11            MR. MATOTT:    Objection to form.

12   BY MR. DIAMOND:

13       Q.    It's either a yes -- it's a yes or a no

14   question.

15       A.    I believe I've answered the question to the

16   best of my ability.

17       Q.    You've evaded the question.  Just tell me, is

18   it yes or no?

19       A.    Yeah, I believe that there were a number of

20   reasons why the committee felt like this was a sure bet.

21       Q.    I'm not asking you what the committee

22   thought, I'm asking you whether the credit insurer made

23   a statement of some kind, orally or in writing, that it

24   was going to pay under a claim on this policy?

25            MR. MATOTT:    Same objection.

1    that.

2            MR. DIAMOND:  And, Andrew, I totally

3    understand that.

4            THE WITNESS:  Yes, I think there was

5    discussion there and consideration given.  In fact, if I

6    may add, I think the committee had to weigh out all of

7    their options simultaneously, while this line of

8    questioning focuses specifically on one element of one

9    of the options.

10   BY MR. DIAMOND:

11       Q.    What other options are you talking about?

12       A.    I think you're describing the terms of the

13   settlement here, and our line questioning should stay

14   focused on that.

15       Q.    No, you're not going to tell me what to ask

16   you, sir.  I just asked you -- you just said that you --

17   you want to talk about potential other options.  I want

18   to know what those options are.

19       A.    What I mean specifically is the other

20   components included in this particular settlement,

21   right.  I'm looking at the terms of the settlement right

22   now.  There's other components that are important here,

23   including B, item B, where essentially the committee is

24   allowed to move up the proverbial totem pole to be in a

25   guaranteed position.

Page 54

1        Q.    And do you recall through what year?

2        A.    I am unaware of the range or the specific

3    nature of the results of those financial statements.

4    Again, what I do know, and I'll answer, is that under

5    NDA, what was shared often with FTI would be summarized

6    and regurgitated in a sanitary manner, if you will, for

7    the committee to be able to make a well-informed

8    decision without having to get into the nature of what

9    would have been privileged and confidential information

10   between CKI and FTI at the time.

11       Q.    Was there a concern by the committee that

12   Cole Kepro might go bankrupt?

13       A.    There was a large concern by the committee,

14   yes.

15       Q.    Are you aware that Fred Cook did not have any

16   concern about his company going bankrupt, and so stated

17   in his deposition the other day?

18       A.    I am not aware of that.  That would certainly

19   not be consistent with the nature of the conversations

20   that, as a committee, we were led to believe at the

21   time, no.

22             In fact, Mr. Diamond, maybe I'll just add,

23   even CKI's counsel shared with us that their own

24   viability in a bankruptcy was likely if it were -- or

25   unless an agreement between all parties was put into

Page 61

1    place.

2         Q.    Did anyone share with you, sir, that Mr. Cook

3    under oath just the other day stated that bankruptcy is

4    not likely, and that neither he, nor anyone to his

5    knowledge, has ever threatened bankruptcy, are you aware

6    of that?

7         A.    I am not privy to the conversations that

8    happened in his deposition, no.  All I know is the

9    documents that the committee saw, the committee

10   professionals, did not certainly lead us to believe that

11   statement to be true.

12            We independently assessed, again, with --

13   even with CKI's counsel, that there were financial

14   difficulties at the company stemming from, basically,

15   declining sales in the industry.  Everybody understood

16   that the industry slowed down significantly, which is

17   the reason why we're all here.

18            I believe the committee and those documents

19   also asserted that the company was upside down.  They

20   had way more liabilities than they had in terms of

21   assets.  And on top of that, they had -- and this I can

22   appreciate as a CEO, and in the private world myself,

23   they had secured debt that has to be satisfied, and as a

24   result, again, I'll answer to the best of the ability I

25   have on behalf of the committee, we determined that

Veritext Legal Solutions
346-293-7000

1        Q.    Why would Fifth Third Bank do that?

2        A.    I can't --

3              MR. MATOTT:  Objection to form.

4              THE WITNESS:  I can't speculate why they

5    would do that as a secured lender to CKI.

6    BY MR. DIAMOND:

7        Q.    So let's make sure we're all on the same

8    page.  It's your testimony that if there's only $850,000

9    submitted as a claim to the credit insurer, and it is

10   paid, the debtor would get the $850,000 paid by Cole

11   Kepro, and Fifth Third Bank would get nothing from

12   the --

13             MR. MATOTT:  Objection.  Sorry, Allan.

14   Objection.  Misstates the testimony.

15             THE WITNESS:  Again, I want to make sure that

16   my words aren't being misconstrued or trying to ensnare

17   me here, Mr. Diamond.  I appreciate your assistance in

18   that.

19             My understanding is the $850,000 would be

20   allowed to flow through to the estate under the payment

21   of this insurance policy, and Fifth Third Bank would

22   agree to take a subordinate position on their secured

23   claim to CKI.  That is my understanding.

24   BY MR. DIAMOND:

25       Q.    And that would be true, would it not, if the

                                              Page 68

1          A.     I do.

2          Q.     Okay.  And just for the record, can you

3     describe again what those documents reviewed by FTI

4     showed?

5          A.     The documents that were reviewed by FTI

6     specific would be -- and, Andrew, for clarity, can you

7     specifically specify if you're referring to the

8     settlement or -- because there were two lines of

9     questioning both regarding FTI or the litigation.

10         Q.     Understood.  The question that I'm asking is

11    related to Cole Kepro's financial position.  I believe

12    you had testified to their likelihood of bankruptcy.

13    I'm asking about the documents that FTI reviewed to make

14    that determination.  And my question to you is if you

15    could just restate what those documents showed.

16         A.     Yeah, the documents showed a couple of

17    things.  They specifically showed that the company had

18    declining sales, and that that was a major factor.  They

19    showed that there was a large amount of secured debt on

20    the company, and as a result of some of the financial

21    analysis, it was determined from a P&L perspective that

22    the company had more liabilities than assets.  They

23    were, essentially, strapped.

24         Q.     And is that review something that the

25    committee considered in determining to support the

1   asset purchase agreement.

2       Q.   Yes.  And if you could -- that's about six

3   pages.  If you could just briefly review those six

4   pages, and let me know if you recognize that document.

5       A.   Yes.

6       Q.   And is this the most recent offer that

7   Mr. McAlary has made to purchase the Cole Kepro

8   litigation?

9       A.   To my understanding, yes, this is the last

10  offer the committee received.

11      Q.   Okay.  And I want to have you scroll down and

12  direct your attention to page 2, section 2 that says

13  purchase and sale.  Do you see that?

14      A.   2.1, purchase and sale, yes.

15      Q.   And you see the four bullets underneath

16  section 2.1?

17      A.   Correct.

18      Q.   Now, was McAlary's last offer only for the

19  Cole Kepro claims?

20      A.   No, as is stated here, it appears, and our

21  understanding was, that there was a more holistic

22  nature, a global nature of the offer, if you will, not

23  just the CKI settlement or litigation.

24      Q.   And what other assets were included in this

25  offer based on these bullets?

1          A.     Based on these bullets, there were other

2    claims that were pending, specifically claims against a

3    number of other prior partners to the debtor, Bitcoin

4    Depot, Bitaccess, other claims related to -- in Canada.

5    And the fourth bullet point, I'll just point out, says

6    all insurance policies.  So again, I think global in

7    nature.

8          Q.     And what did the committee think, if

9    anything, about the value that Mr. McAlary assigned to

10   the Bitaccess and Bitcoin Depot claims listed here?

11         A.     The committee felt that this particular offer

12   was significantly undervalued, specifically that it was

13   asking him to sell the claims, of which there hadn't

14   really been the opportunity to even test the validity of

15   those claims, but there seemed like there would be

16   likelihood specifically potential discussions between

17   Bitaccess or Bitcoin Depot at the time.  The committee

18   came to the conclusion that the offer was undervalued.

19         Q.     Would this offer cause the committee --

20   strike that.

21                Would this offer prohibit the committee from

22   otherwise monetizing claims against Bitaccess and

23   Bitcoin Depot if it was accepted?

24                MR. DIAMOND:  Objection to form.

25                THE WITNESS:  It was our understanding that

Page 76

1    this offer would preclude us from being able to look at

2    any other estate litigations and not just the CKI

3    litigation.

4    BY MR. MATOTT:

5         Q.    Okay.  And I want to pull up now the last

6    exhibit, which I think is Exhibit 6, Committee

7    Exhibit 3.  If you could pull that up, and let me know

8    when it loads.

9         A.    Okay.  I do have that here now.

10        Q.    Okay.  And this is a two-page document.  I

11   want you to just briefly scroll through both pages, and

12   let me know if you recognize this document.

13        A.    I do recognize the document.

14        Q.    And does it appear to be a counteroffer made

15   by the committee to Mr. McAlary on August 26, 2023?

16        A.    Yes, it does.

17        Q.    Did Mr. McAlary ever respond to this offer?

18        A.    To my knowledge, the committee never received

19   an official or unofficial response or redline to -- of

20   any nature to this potential counteroffer to the claim.

21        Q.    Are you aware whether a meet and confer was

22   held in early September between committee counsel and

23   counsel to Mr. McAlary?

24        A.    At the moment, I don't recall that.  But that

25   sounds likely, but I don't want to speculate.

Page 77

1        Q.    Fair enough.  Are you aware whether any

2   iteration of a McAlary offer ever contained an express

3   agreement that he would proceed with the offer in the

4   event of a CKI bankruptcy?

5        A.    No.  In fact, I recall the committee having a

6   lot of consternation about that scenario at the time.

7   You know, one of the considerations that we had was this

8   was nonbinding in nature if the CKI -- if there was --

9   if they were to proceed making -- essentially

10  positioning ourselves once again in another bankruptcy

11  process as yet again another unsecured creditor, and

12  that was heavily weighed by the committee.

13       Q.    And are you aware of whether a sale motion to

14  Mr. McAlary would have also been subject to court

15  approval?

16       A.    Yes, it seemed like it would have had to have

17  been obtained under court approval, which that approval

18  is highly subject, right, and difficult to obtain.  It's

19  an insider, essentially, transaction.  It would have

20  been highly scrutinized, I believe.

21       Q.    No further questions from me.  Sorry.  One

22  last question.

23            The committee has pending I'll call them

24  director and officer claims against Mr. McAlary; isn't

25  that right?

Veritext Legal Solutions
346-293-7000

1          A.     Yeah, there are pending claims.

2          Q.     Did the committee ever consider those claims

3    in determining -- in evaluating Mr. McAlary's offer?

4          A.     Yeah, the committee did.  For reasons I think

5    I answered earlier, there was high scrutiny of this

6    particular offer, the ability to fund this particular

7    offer, and what became clear to the committee is that we

8    were potentially negotiating against ourselves when it

9    came to a D&O claim, right.  That anything that we would

10   have settled with for this particular matter would have

11   been cash, which I understand was tight for Mr. McAlary,

12   and would have resulted in a more than likely smaller

13   ability for the Unsecured Creditors Committee to have

14   any form of future recovery on some of those other D&O

15   claims.

16              MR. MATOTT:  Thank you.  That's all I have,

17   Mr. Baird.

18                          *  *  *

19                   FURTHER EXAMINATION

20   BY MR. DIAMOND:

21         Q.     I've got a few follow-up questions.

22         A.     Please.

23         Q.     Mr. Baird, have you ever been, on behalf of

24   the committee, advised that -- by the debtor, that

25   Mr. McAlary had advised since July 20, 2023, that he

```
 1                 REPORTER'S CERTIFICATE

 2

     STATE OF NEVADA       )
 3                         )    ss.
     COUNTY OF CLARK       )

 4

 5            I, Shanyelle L. King, Nevada CCR No. 943, do

 6    hereby certify:  That I reported the taking of the

 7    deposition of the witness, CHRIS BAIRD, who appeared

 8    before me remotely via videoconference;

 9            That prior to being examined, the witness was

10    by me duly sworn to testify to the truth, the whole

11    truth and nothing but the truth;

12            That I thereafter transcribed my said

13    shorthand notes into typewriting and that the

14    typewritten transcript of said deposition is a complete,

15    true and accurate transcription of said shorthand notes

16    taken down at said time to the best of my ability.

17            I further certify that I am not a relative or

18    employee of any party involved in said action, nor a

19    person financially interested in the action; and that

20    transcript review was not requested.

21            Dated at Las Vegas, Nevada, this 17th day of

22    November, 2023.

23

24            Shanyelle L. King, CCR No. 943, RPR

25

                                                  Page 90
```

# Exhibit 11

1              UNITED STATES BANKRUPTCY COURT

2    _____

3    In re:                                    Case No.

4    CASH CLOUD, INC., d/b/a COIN              BK-23-10423-

5    CLOUD,                                    MKN

6              Debtor.                         Chapter 11

7    _____

8    VIDEOCONFERENCE DEPOSITION OF CORPORATE REPRESENTATIVE

9        FOR COLE KEPRO INTERNATIONAL, LLC - FRED COOK

10   DATE:          Tuesday, November 7, 2023

11   TIME:          11:09 a.m. PST/1:09 p.m. CST

12   LOCATION:      Remote Proceeding

13                  4170 Distribution Circle

14                  North Las Vegas, NV 89030

15   REPORTED BY:   Becky Stewart

16   JOB NO.:       6298296

17

18

19

20

21

22

23

24

25

                                              Page 1

1    would say is under Rule 30, while the topics

2    are -- the topics to a subpoena are there so that the

3    entity being deposed can identify the correct person

4    to give testimony and prepare that person for the

5    testimony, there's a long series of cases that makes

6    it clear that that doesn't actually define the scope

7    of the deposition.

8                    If the witness has knowledge, the

9    witness is required to answer the questions.

10                   The question about privilege, I guess

11   that's different, and we'll just have to cross that

12   bridge whenever there's a question that, Andrew, you

13   think is violating a privilege or that an answer would

14   violate some privilege.

15                   MR. MATOTT:  Right, and I would just

16   follow up to note that Fred is not here today as a

17   committee member.  He is not testifying on behalf of

18   the committee.  That's going to be on Friday with the

19   committee's 30(b)(6).

20                   MR. STROTHER:  Understood.  Understood,

21   and I --

22                   THE WITNESS:  Justin, I -- I will say

23   that I have recused myself from any and all

24   correspondence and communications with respect to

25   claims against Cole Kepro.

Veritext Legal Solutions
346-293-7000

1    have been raised; okay?

2              So you're aware from your review of the

3    complaint that Cash Cloud is alleging that the kiosks

4    purchased from Cash -- from Cole Kepro were defective?

5        A    I categorically deny it.  I think it's

6    complete and utter bullshit, fabrication, and

7    I'm -- I -- I -- I'm aware of the -- I'm aware of the

8    complaint.  However, I haven't had it verified by any

9    technical people, engineering people, have not seen

10   the complaint, have not seen it in the field.

11             I'm aware of the allegation.

12       Q    Mr. Cook, I have to object to the

13   nonresponsive portions of your answer, other than the

14   fact that you are aware of the complaint.

15             So you're aware that Cash Cloud is alleging

16   that Cole Kepro has breached the contract between the

17   two parties; right?

18             MR. LOW:  I'm going to just object to

19   this line of questioning right now as just relevance.

20             But go ahead, Fred.

21             THE WITNESS:  Would you ask your

22   question again?

23   BY MR. STROTHER:

24       Q    Sure.  You're aware that Cash Cloud has sued

25   Cole Kepro for breach of contract?

                                        Page  44

1           A      I'm not sure what they've alleged.   They've

2    said that the products didn't work, and there

3    are -- I've never seen one that didn't.   They never

4    left our facility without a signoff by our engineering

5    people and Coin Cloud's engineering people.

6               I've only seen eight machines come back from

7    the field to be reworked.   Seven of them were hit with

8    sledgehammers, and I don't remember what the eighth

9    one was.   But it wasn't a defect.

10              I can speak to the quality of the product

11   when it left, when it got signed off by us, when it

12   got signed off by Coin Cloud.   I can't speak to what

13   happens, what software goes in, what happens after

14   they leave here.

15              And I really don't know, being honest, which

16   I always am in a deposition, as to what they're

17   alleging.

18         Q     And I object to the nonresponsive portions.

19              Mr. Cook, I know it might be tempting to

20   want to comment on what the claims are or what you

21   imagine the claims might be.   But my intent is to take

22   an orderly deposition and not litigate the claims

23   against Cole Kepro right now.   That's not my job

24   today; right?

25              And it's not your job, either.   Your job is

1    bankruptcy proceedings?

2                    MR. LOW:   Objection, calls for

3    speculation.

4        A    For the last 14 months, I've been cash

5    flowing positive.  I've been able to pay the bank back

6    a close to $10 million and over advance, and we're

7    still here.

8        Q    So my question is, is it likely that Cole

9    Kepro would have to file for bankruptcy protection if

10   it doesn't get the insurance proceeds?

11       A    That's -- that -- that's an option, not one

12   that I've considered at this point.

13       Q    Do you think it's likely?

14       A    No.  I think it's likely that we'll move

15   forward cash flowing positive, working with the bank,

16   and look to either get our day in court or a

17   resolution to this lawsuit.

18       Q    Do you know how much money Cash Cloud has

19   paid to Cole Kepro?

20       A    I -- it's somewhere between $30 and $50

21   million.  I have -- those -- those numbers are

22   available.

23       Q    Understood.  We can work within that range.

24   I don't have hyper-specific questions.

25                    Where did that -- those proceeds go?  Where

                                              Page 62

```
 1              CERTIFICATE OF DEPOSITION OFFICER

 2              I, BECKY STEWART, the officer before whom

 3     the foregoing proceedings were taken, do hereby

 4     certify that any witness(es) in the foregoing

 5     proceedings, prior to testifying, were duly sworn;

 6     that the proceedings were recorded by me and

 7     thereafter reduced to typewriting by a qualified

 8     transcriptionist; that said digital audio recording of

 9     said proceedings are a true and accurate record to the

10     best of my knowledge, skills, and ability; that I am

11     neither counsel for, related to, nor employed by any

12     of the parties to the action in which this was taken;

13     and, further, that I am not a relative or employee of

14     any counsel or attorney employed by the parties

15     hereto, nor financially or otherwise interested in the

16     outcome of this action.

17                                   BECKY STEWART

18                            Notary Public in and for the

19                                   State of Texas

20

21

22

23

24

25

                                                Page 96
```

1              CERTIFICATE OF TRANSCRIBER

2          I, AUDREY FRANKLIN, do hereby certify that

3    this transcript was prepared from the digital audio

4    recording of the foregoing proceeding, that said

5    transcript is a true and accurate record of the

6    proceedings to the best of my knowledge, skills, and

7    ability; that I am neither counsel for, related to,

8    nor employed by any of the parties to the action in

9    which this was taken; and, further, that I am not a

10   relative or employee of any counsel or attorney

11   employed by the parties hereto, nor financially or

12   otherwise interested in the outcome of this action.

13

14

15                                    AUDREY FRANKLIN

16

17

18

19

20

21

22

23

24

25

                                            Page 97

Exhibit 12

```
 1                    UNITED STATES BANKRUPTCY COURT
 2                       DISTRICT OF NEVADA
 3

 4
 5     In Re:                       )
                                    )
 6         CASH CLOUD, INC.,        )
           dba COIN CLOUD,          )
 7                                  )
               Debtor.              )
 8                                  )
                                    ) CASE NO.
 9                                  ) BK-23-10423-MKN
                                    ) Chapter 11
10     _____ )
11
12
13
14                    DEPOSITION OF DANIEL AYALA
15                       Las Vegas, Nevada
16                      November 9, 2023
                            2:20 p.m.
17
18
19
20
21
22
23
       REPORTED BY:
24     CYNTHIA HUDAK, RPR
       NVCCR #987
25
```

1       collect on it?  And the answer was no.  Cole Kepro was

2       threatening or communicating that they would go into

3       bankruptcy.  And Cole Kepro had a financial backer,

4       and that financial backer made it clear that -- and it

5       was an individual -- but made it clear that he was not

6       going to further fund Cole Kepro's issues and so --

7              Q.    If I name a couple of names, can you tell me

8       if one of those people was the individual we were

9       thinking of?

10             A.    I couldn't, no.

11             Q.    Okay.  You don't know who it is?

12             A.    That's right.

13             Q.    Okay.

14             A.    That's right.

15             Q.    Can I try anyway?

16             A.    Sure.

17             Q.    What about Paul Cook?

18             A.    Don't recognize the name.

19             Q.    Okay.  And I believe the other man's name --

20      last name is Gaffney?

21             A.    Don't recognize that name, either.

22             Q.    Okay.

23             A.    Again, they were, for me, placeholders,

24      right?  The financial backer, I don't -- you know.

25             Q.    I understand.

Page 20

1       assessments?

2            A.    I do not.

3            Q.    And are you familiar with -- other than

4       perhaps Cole Kepro, are you familiar with anyone

5       suggesting that the potential damages are much, much

6       less than the numbers that you've just been testifying

7       about or much, much higher than the numbers that

8       you've just been testifying about?

9            A.    I'm not sure I understand the question, but

10      I'll give you my best shot at the answer.

11           Chris thought that, you know, tens of

12      millions Cole Kepro was liable for.  And Province,

13      Jimmerson, who was actually litigating the case, and

14      Fox thought it was substantially less.  At the max, it

15      was, you know, in this $3 million range, which, again,

16      was just a number put out there.

17           There was no -- so we, as lawyers, right,

18      quantify, right, what the damages are.  So what I'm

19      trying to communicate to you is the -- that exercise

20      didn't happen, other than -- really Jimmerson was the

21      only one who I thought actually had quantified, right,

22      had gone through the contract, right?  I mean, when

23      you quantify the damages in a litigation case, you go

24      through the contract, say what this is worth, what

25      that's worth.  You put the numbers together.

1    performed any valuation of what that asset is worth?

2        A.    Again, I go back to Province, that's the

3    financial advisor for the Debtor.  Province did that

4    valuation, did that analysis, and came to the

5    conclusion that that $850,000 was a good valuation for

6    the asset.  I mean, that's all I can rely on.

7        Q.    Did that -- what you're calling a valuation,

8    was that done as part of the evaluation of the 9019

9    motion?  Meaning, did Province come to the conclusion

10   about 850- separate and apart from the conversation

11   going on with Cole Kepro, or was Province asked by the

12   Debtor to opine on whether 850- was a good price?

13             MR. MANN:  Object to form.

14       A.    So the way it would have happened -- and

15   this is my recollection of it.  My recollection is the

16   Debtor had a set of assets, right, that it had to

17   liquidate for purposes of paying off, you know, and

18   dealing with the estate, right?  And this was one of

19   those assets.

20             The Debtor went to -- my understanding is --

21   a broad range of potential purchasers for this asset

22   and got the response they got and distilled it all

23   down.  And there were, you know -- it's nice when you

24   can say, you know, apples are apples and oranges are

25   oranges.  But in this case you had different factors

Page 28

```
 1      and different terms and different -- right?  I mean,

 2      you had a lot different things to deal with.

 3               And so what they concluded after all of

 4      their analysis and all of their work was that this was

 5      the best situation for the Debtor to collect money for

 6      this asset at value.

 7      Q.   (By Mr. Strother)  Okay.  I understand your

 8      answer.  Let me try to ask my remaining question on

 9      that topic to get away from the actual deal proposed

10      in the 9019 motion.

11               Before any conversations were had with Cole

12      Kepro about Cole Kepro buying the litigation against

13      itself, did the Debtor, through its professionals,

14      place or try to place a value on the litigation

15      against Cole Kepro?

16      A.   I don't know the answer to that.

17               MS. MILLER:  Object to form.

18      Q.   (By Mr. Strother)  Okay.

19      A.   I didn't see any, let's put it that way.  I

20      didn't see sort of a -- if the question you're asking

21      is, Hey, was there a value put on it, right?

22      Q.   Right.

23      A.   Jimmerson put a value on it, right, and

24      whatnot.  But Jimmerson's value was his value.

25      Remember, that doesn't include the collectability
```

Page 29

1    Cole Kepro filed a bankruptcy petition."  Do you see

2    that?

3         A.   I do.

4         Q.   Setting aside this letter, are you aware of

5    any such warrant being made by Mr. McAlary at any

6    time?

7         A.   All right.  I just reread the sentence, and

8    I'm sorry, Linda.  I apologize if I'm making your job

9    harder, but I just didn't understand the question.

10        Q.   Sure.  So in this letter Ms. Cica is

11   representing that an offer was made by Mr. McAlary

12   with a warrant that Mr. McAlary would purchase the

13   Cole Kepro claims even if Cole Kepro filed for

14   bankruptcy.  Is that a fair summary of that last line?

15        A.   I mean, it says what it says, right?  It

16   says it right there.  All right.  So we're on the same

17   page.  That's what it says.

18        Q.   I agree with that.  Separate from this

19   letter, independent of this letter, do you have an

20   independent recollection of any warrant being made by

21   Mr. McAlary that he would purchase the Cole Kepro

22   claims even if Cole Kepro filed for bankruptcy,

23   separate and apart from this letter?

24        A.   No.  I've had no conversations with Chris

25   McAlary about that warrant, other than what's said in

Veritext Legal Solutions
346-293-7000

1      this letter.

2                  MS. MILLER:  Okay.  I have no further

3      questions.

4                  MR. MANN:  I'm trying think if I would want

5      to -- but to be honest, I think we're good.

6                  MS. STROTHER:  And we reserve our further

7      questions.

8                  THE COURT REPORTER:  Is the witness going to

9      read and sign?

10                 THE DEPONENT:  No.  We're going to send it

11     to counsel and accept it.  As long as you're good with

12     that.  I'm doing lawyer stuff.

13                 THE COURT REPORTER:  Do you want a copy?

14                 MR. STROTHER:  Yeah, I'm the main one, so

15     whatever our order is.

16                 THE COURT REPORTER:  Mr Mann, do you want a

17     copy?

18                 MR. MANN:  Yeah, we'll need one.

19                 THE COURT REPORTER:  Thank you.

20                 (Deposition concluded at 6:01 p.m.)

21

22

23

24

25

Veritext Legal Solutions
346-293-7000

1           BE IT KNOWN that the foregoing proceedings

2    were taken before me; that the witness before

3    testifying was duly sworn to the whole truth; that the

4    foregoing pages are a full, true, and accurate record

5    of the proceedings, all done to the best of my skill

6    and ability; that the proceedings were taken down by

7    me in stenographic shorthand and thereafter reduced to

8    print under my direction.

9           I CERTIFY that I am in no way related to any

10   of the parties hereto, nor am I in any way interested

11   in the outcome thereof.

12

13

14

15           ( )  Review and signature was requested.

16           (X)  Review and signature was waived.

17           ( )  Review and signature was not requested.

18

19

20

21           Cynthia A. Hudak, RPR

             Nevada Certified Reporter, #987

22

23

24

25

                                        Page 133

# Exhibit 13

# Filed Under Seal

# Exhibit 14

# Filed Under Seal

Exhibit 15

Filed Under Seal

Exhibit 16

Filed Under Seal

# Exhibit 17

```
 1                UNITED STATES BANKRUPTCY COURT
 2                      DISTRICT OF NEVADA
 3
 4   In re:                      )
                                 )
 5          CASH CLOUD, INC.,    )
            dba COIN CLOUD,      )
 6                               ) CASE NO. BK-23-10423-MKN
                                 ) Chapter 11
 7                  Debtor.      )
     _____)
 8
 9
10
11
12
13                       DEPOSITION OF
14                       TANNER JAMES
15      AS THE FRCP 30(b)(6) DESIGNATED REPRESENTATIVE OF
16            CASH CLOUD, INC., dba COIN CLOUD
17                    LAS VEGAS, NEVADA
18              TUESDAY, OCTOBER 24, 2023
19
20
21     Reported By Mia C. O'Sullivan, RPR, NV CCR No. 964
                    Job No. 6277646
22
23
24
25
```

                                              Page 1

1            MR. MANN:  Objection to form.

2       A.  Cole Kepro's -- the debtor's claims against Cole

3    Kepro, to my understanding, primarily stem from

4    circumstances that happened prior to the debtor's own

5    petition for bankruptcy.  Not only that, but also what

6    happened before a speculative Cole Kepro bankruptcy.

7            With that in mind, those litigation claims would

8    be prepetition unsecured claims.  And then Cole Kepro's

9    bankruptcy, it would it be -- you know, there's a

10   possibility, as always, of a zero percent recovery for

11   an unsecured claim, if not -- you know, oftentimes,

12   unsecured claims get 2, 3 percent recovery on their

13   prepetition claims.  That, in conjunction with the cost

14   of pursuing those litigations potentially in bankruptcy

15   court, the costs would likely exceed the proceeds from

16   any recovery on those claims if there were to be a

17   judgment.

18   BY MR. STROTHER:

19      Q.  Did you evaluate the likelihood of the debtor

20   actually winning the claims against Cole Kepro?

21      A.  In my personal capacity, I've been, I'd say,

22   involved in discussions about the claims.  I'm familiar

23   with the debtor's business.  I'm familiar with the

24   debtor's assets.  And to the extent management has

25   informed me of prepetition events that I was not engaged

                                            Page 72

```
 1                  CERTIFICATE OF REPORTER
 2    STATE OF NEVADA    )
                         )  ss:
 3    COUNTY OF CLARK    )
 4          I, MIA C. O'SULLIVAN, a Certified Court Reporter
 5    in Clark County, State of Nevada, do hereby certify:
 6          That I reported the taking of the deposition of
 7    TANNER JAMES, commencing on Tuesday, October 24, 2023,
 8    at 9:06 a.m.
 9          That prior to being deposed, the witness was by
10    me duly sworn to testify to the truth, that I thereafter
11    transcribed my said shorthand notes into typewriting,
12    and that the typewritten transcript is a complete, true,
13    and accurate transcription of said shorthand notes and
14    that witness was not asked to review and correct the
15    transcript.
16          I further certify that I am not a relative or
17    employee of counsel of any of the parties, nor a
18    relative or employee of the parties involved in said
19    action, nor a person financially interested in the
20    action.
21          IN WITNESS WHEREOF, I have set my hand in my
22    office in the County of Clark, State of Nevada, this
23    7th day of November, 2023.
24
25          MIA C. O'SULLIVAN, RPR, NV CCR #964
```

Page 128

# Exhibit 18

Electronically Filed
10/24/2022 4:13 PM
Steven D. Grierson
CLERK OF THE COURT

**COMP**
Dan R. Waite, (Nevada SBN: 4078)
DWaite@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
Tel: 702.949.8200
Fax: 702.949.8398

David Z. Adler (Michigan SBN: P71227)
(*Pro Hac Vice Forthcoming*)
DAdler@jaffelaw.com
JAFFE RAITT HEUER & WIESS, P.C.
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Plaintiff, Cole Kepro International, LLC*

CASE NO: A-22-860298-B
Department 16

## IN THE EIGHTH JUDICIAL DISTRICT COURT

## CLARK COUNTY, NEVADA

COLE KEPRO INTERNATIONAL, LLC, a
Nevada limited liability company,

               Plaintiff,

vs.

COIN CLOUD, LLC, a Nevada limited liability
company,

               Defendant.

Case No.:
Dep't No.:

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**Request for Business Court Assignment Pursuant to EDCR 1.61(a)(1)**

**Exemption from Arbitration Request: Damages Exceed $50,000**

      Plaintiff Cole Kepro International, LLC ("Cole Kepro") states as follows for its Complaint against Defendant Coin Cloud, LLC ("Coin Cloud"):

### NATURE OF THE ACTION

      1.    This action arises out of Defendant Coin Cloud's failure to pay amounts owed to Plaintiff Cole Kepro in breach of contract, including without limitation for digital currency kiosks produced by Cole Kepro pursuant to a purchase order issued by Coin Cloud in the amount of $34,533,120.00, in addition to Coin Cloud's anticipatory repudiation of a separate purchase order for the production of digital currency kiosks in the amount of $100,000,000.00.

119233011.1

1

**PARTIES**

2      2.      Plaintiff Cole Kepro is a Nevada limited liability company, duly formed under the

3  laws of the State of Nevada. At all times since its formation, Cole Kepro's principal place of

4  business has been in Clark County, Nevada.

5      3.      Upon information and belief, Defendant Coin Cloud is a limited liability company

6  organized under the laws of the State of Nevada. Coin Cloud's principal place of business is and

7  at all times relevant has been in Clark County, Nevada.

8

**JURISDICTION AND VENUE**

9      4.      The Court has personal jurisdiction over Defendant per NRS 14.065 since Plaintiff's

10  causes of action arise directly from Defendant's conduct within the State of Nevada.

11      5.      Venue is proper in the Eighth Judicial District Court per NRS 13.040.

12

**DEMAND FOR JURY TRIAL**

13      6.      Cole Kepro hereby demands a trial by jury of all claims and issues in this action.

14

**GENERAL ALLEGATIONS**

15      7.      Cole Kepro's business includes the design and fabrication of sheet metal cabinets

16  with integration of electronic components for sale as digital currency kiosks.

17      8.      Defendant has had a multi-year business relationship with Cole Kepro.

18      9.      Cole Kepro has sold digital currency kiosks and related implements to Defendant

19  for years.

20      10.     In April 2021, pursuant to Defendant's form Purchase Order Number 04302021-2

21  issued in the name of "Customer [-] Coin Cloud, LLC", Defendant agreed to purchase from Cole

22  Kepro 4,080 4th Generation digital currency kiosks for $34,533,120.00 (the "4th Generation PO").

23      11.     The 4th Generation PO was signed by each of Defendant's principals Chris McAlary,

24  James Bauer, and Jeffrey Garon.

25      12.     Per the terms of the transaction consummated by way of the 4th Generation PO,

26  Defendant was bound to pay for all 4,080 kiosks regardless of whether or how many of them

27  Defendant took delivery from Cole Kepro.

28

119233011.1

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS □ ROCA

13.    After Defendant agreed to purchase 4,080 digital currency kiosks from Cole Kepro pursuant to the 4th Generation PO, Defendant began taking periodic delivery of kiosks from Cole Kepro.

14.    The kiosks produced by Cole Kepro for Defendant pursuant to the 4th Generation PO were fully functional and defect free upon completion.

15.    Indeed, throughout the parties' business relationship, both Cole Kepro and Defendant tested every product before it left Cole Kepro's production facility.  This includes the kiosks of which Defendant took delivery from Cole Kepro pursuant to the 4th Generation PO.

16.    Defendant was provided a portion of a facility leased by Cole Kepro for the purpose of installing Defendant's own software and testing the kiosks.

17.    In any event, the terms of the transaction consummated by way of the 4th Generation PO strictly and exclusively limit any damages purportedly arising from defective product to the cost of repair or replacement, and in no case exceeding the purchase price of the allegedly defective product or the portion thereof giving rise to a claim.

18.    Before, at, or around the time the parties' transaction was consummated by way of the 4th Generation PO, Defendant's and its affiliates' financial condition were deteriorating due to a confluence of several factors, including competition, poor management, a downturn in the digital currency market, a dilution in the field of digital currency kiosks of the type at issue, and Defendant's and its affiliates' placement of kiosks in underperforming locations.

19.    At one point, using several semi-trailer trucks sent to Cole Kepro's production facility, Defendant devised a scheme to take delivery of as many digital currency kiosks as it could in one fell swoop, knowing that it would not be paying Cole Kepro amounts owed pursuant to the transaction consummated by way of the 4th Generation PO.

20.    In August 2021, several months after Defendant began taking delivery of the 4th Generation kiosks from Cole Kepro, Defendant agreed to purchase from Cole Kepro 10,000 Spanner digital currency kiosks for $100,000,000.00 pursuant to Defendant's form Purchase Order Number 8252021-1 (the "Spanner PO").

3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

LEWIS ROCA

119233011.1

1    21.    The Spanner PO was signed by each of Defendant's principals Chris McAlary,

2    James Bauer, and Jeffrey Garon.

3    22.    On November 1, 2021, several additional months after Defendant began taking

4    delivery of the 4th Generation kiosks from Cole, Defendant's principal Mr. Garon sent Cole Kepro

5    an email confirming among other things Defendant's continued desire to proceed with the

6    transaction consummated by way of the Spanner PO.

7    23.    Pursuant to the Spanner PO, including as ratified by Defendant no later than

8    November 1, 2021, Defendant ordered all 10,000 of the Spanner kiosks each having the exact same

9    screen as all the kiosks Defendant ordered pursuant to the 4th Generation PO, including those 4th

10   Generation kiosks for which Defendant began taking delivery months earlier.

11   24.    In early 2022, Defendant began asking Cole Kepro for concessions because

12   Defendant was falling behind on its payments owed to Cole Kepro for the 4th Generation kiosks

13   ordered pursuant to the 4th Generation PO.

14   25.    Given Defendant's requests for concessions because it was falling behind on its

15   payments owed to Cole Kepro, Cole Kepro requested that Defendant provide copies of Defendant's

16   and its affiliates' financial records.

17   26.    Because the requested financial records would have demonstrated Defendant's and

18   its affiliates' failing financial condition and/or inability to pay the amounts owed to Cole Kepro,

19   Defendant refused to provide the records to Cole Kepro.

20   27.    Defendant has failed and refused to pay Cole Kepro amounts owed for 1,071

21   completed kiosks Defendant ordered pursuant to the 4th Generation PO.

22   28.    Cole Kepro has stored and continues to store the completed 1,071 kiosks Defendant

23   ordered pursuant to the 4th Generation PO, resulting in continually mounting rental fees owed by

24   Defendant.

25   29.    Cole Kepro is entitled to payment from Defendant for all its expectation damages

26   under the transaction consummated by way of the 4th Generation PO, i.e., the value of the

27   expectancy that was created by Defendant's promise to purchase the 4,080 4th Generation kiosks.

28

- 4 -

119233011.1

30.     As a pretext for Defendant's failure to pay amounts owed to Cole Kepro pursuant to the transaction consummated by way of the 4th Generation PO, Defendant began falsely claiming that the 4th Generation kiosks Defendant ordered "suffer from a screen defect."

31.     The kiosks Cole Kepro produces, including those it produced for Defendant, are properly characterized as hardware in that they comprise a computer's tangible components built to store and run written instructions provided by software.

32.     Cole Kepro does not make software.

33.     Defendant and its affiliates know and have known at all times relevant that Cole Kepro does not make software.

34.     Again, all the mechanical, digital, and other components of the 4th Generation kiosks worked precisely as ordered at the time Defendant took delivery of them from Cole Kepro pursuant to the transaction consummated by way of the 4th Generation PO.

35.     Upon information and belief, before, during, or after testing and taking delivery of the 4th Generation kiosks from Cole Kepro's production facility, Defendant attempted to implement software developed by either Defendant, its affiliates, or some other third party.

36.     To the extent that any of the 4th Generation kiosks have allegedly experienced unwanted or unforeseen screen issues, they are directly and exclusively attributable to one or more flaws in the software that Defendant attempted to implement after taking delivery of the kiosks. That is, the alleged issues have nothing whatsoever to do with Cole Kepro.

37.     In 2022, Defendant repudiated the transaction consummated by way of the Spanner PO by telling Cole Kepro, in no uncertain terms, that Defendant would neither take delivery of nor pay for any of the 10,000 kiosks Defendant ordered pursuant to the Spanner PO.

38.     Defendant repudiated the Spanner PO because: (i) Defendant and its affiliates are unable to pay for the Spanner kiosks Defendant ordered as a result of their financial condition; and (ii) Defendant and its affiliates have decided that the Spanner kiosks Defendant ordered are no longer needed, including as a result of the downturn in the digital currency market and the dilution in the field of kiosks of the type at issue.

- 5 -

119233011.1

39.     Cole Kepro is entitled to payment from Defendant for all its expectation damages under the transaction consummated by way of the Spanner PO, i.e., the value of the expectancy that was created by Defendant's promise to purchase the 10,000 Spanner kiosks.

40.     Separate and distinct from Defendant's breaches of the transactions consummated by way of the 4th Generation PO and the Spanner PO, and the continually mounting rental fees owed for storage of the 1,071 4th Generation kiosks of which Defendant did not take delivery, Defendant has failed to pay for various parts ordered from Cole Kepro for use in Defendant's business pursuant to several separate purchase orders.

### FIRST CAUSE OF ACTION
**(Breach of Contract – The 4th Generation PO)**

41.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

42.     The transaction consummated by way of the 4th Generation PO is a valid and enforceable contract between Cole Kepro and Defendant.

43.     Defendant has breached its contractual obligations as addressed herein, including by failing and refusing to make payment for the 4,080 4th Generation kiosks ordered pursuant to the 4th Generation PO.

44.     Defendant's breaches of contract are material.

45.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

### SECOND CAUSE OF ACTION
**(Breach of Contract – The Spanner PO)**

46.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

47.     The transaction consummated by way of the Spanner PO is a valid and enforceable contract between Cole Kepro and Defendant.

48.     Defendant has breached its contractual obligations as addressed herein, including by telling Cole Kepro, in no uncertain terms, that Defendant would neither take delivery of nor pay for any of the 10,000 kiosks Defendant ordered pursuant to the Spanner PO.

119233011.1

49.     Defendant's breaches of contract are material.

50.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

### THIRD CAUSE OF ACTION
**(Breach of Contract – The Purchase Orders for Parts)**

51.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

52.     Separate and distinct from the transactions consummated by way of the 4th Generation PO and the Spanner PO, Defendant has at various times ordered parts from Cole Kepro for use in Defendant's business, pursuant to several separate purchase orders.

53.     Defendant has breached its contractual obligations as addressed herein, including by failing to pay Cole Kepro for the parts ordered pursuant to the purchase orders.

54.     Defendant's breaches of contract are material.

55.     As a direct and proximate result of Defendant's breaches of contract, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

### FOURTH CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

56.     Cole Kepro incorporates by reference each of the foregoing allegations as though fully set forth herein.

57.     The transactions consummated by way of all the purchase orders addressed herein constitute valid and enforceable contracts.

58.     An implied covenant of good faith and fair dealing exists in every contract, such that neither party may do anything which will injure the right of the other to receive the benefits of the agreement.

59.     Cole Kepro performed all its contractual obligations to Defendant to the letter, including by producing, providing, and otherwise making available to Defendant precisely what Defendant ordered.

60.     To the extent that Cole Kepro did not perform any obligations, such non-performance is excused.

119233011.1

61.    Defendant owed Cole Kepro a duty to perform as promised in a manner which was faithful to the purpose of the contracts.  Defendant breach that duty.

62.    With respect to the contracts addressed herein, Defendant failed to act in good faith and to the best of its ability, thereby breaching its duty to so conduct itself and denying Cole Kepro its justified expectations.

63.    As a direct and proximate result of Defendant's breaches of the implied covenant of good faith and fair dealing, Cole Kepro has suffered damages in the amount according to proof, in excess of $15,000.00.

Wherefore, Cole Kepro prays for judgment against Defendant as follows:

1.    For general damages in excess of $15,000.00.

2.    For interest at the maximum amount available under Nevada law.

3.    For reasonable attorney's fees and costs; and

4.    For any other relief this Court finds just and proper.

Dated this 24th day of October, 2022.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By: */s/ Dan R. Waite*
     Dan R. Waite (Nevada SBN. 4078)
     DWaite@lewisroca.com
     3993 Howard Hughes Parkway, Suite 600
     Las Vegas, NV  89169
     Tel: 702.949.8200

JAFFE RAITT HEUER & WIESS, P.C.

David Z. Adler (Michigan SBN: P71227)
*(Pro Hac Vice Application Forthcoming)*
DAdler@jaffelaw.com
27777 Franklin Road Suite 2500
Southfield, MI 48034
Tel: 248.727.1563

*Attorneys for Plaintiff, Cole Kepro International, LLC*

- 8 -

119233011.1

Exhibit 19

Date Filed: 04/04/2023
Claim No: 42

---

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Cash Cloud, Inc. (dba Coin Cloud) |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Nevada |
| Case number | 23-10423 |

## Official Form 410

# Proof of Claim

**04/22**

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

### Part 1: Identify the Claim

| | | |
|---|---|---|
| 1. Who is the current creditor? | Cole Kepro International, LLC | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor | |
| 2. Has this claim been acquired from someone else? | ☑ No <br> ☐ Yes. From whom? | |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|---|
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Taft Stettinius & Hollister, Attn: Paul R. Hage <br> Name | Frederick Cook <br> Name |
| | 27777 Franklin, Suite 2500 <br> Number    Street | 4170-103 Distribution Circle <br> Number    Street |
| | Southfield    MI    48034 <br> City    State    ZIP Code | North Las Vegas    NV    89030 <br> City    State    ZIP Code |
| | Contact phone (248) 727-1543 | Contact phone (702) 633-4270 |
| | Contact email phage@taftlaw.com | Contact email fred@colekepro.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): <br> _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

STRETTO

APR 0 4 2023

RECEIVED

| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on ____ / ____ / ____ <br> MM / DD / YYYY |
|---|---|---|
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ | |

---

Official Form 410



page 1

1204604052330000000001

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___

**7. How much is the claim?**  $ _____50,104,228.75_  **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Breach of Spanner purchase order.  See attached Rider.

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property: $ _____

Amount of the claim that is secured: $ _____

Amount of the claim that is unsecured: $ _____  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $ _____

Annual Interest Rate (when case was filed) _____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**  $ _____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).                                                                      $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).                               $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).                                                                                                                        $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).                    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).                        $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.                        $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date      04/03/2023
                      MM / DD / YYYY

/s/ Paul R. Hage
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Paul Robert Hage | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Taft, Stettinius & Hollister, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 27777 Franklin, Suite 2500 | | |
| | Number        Street | | |
| | Southfield | MI | 48034 |
| | City | State | ZIP Code |
| Contact phone | (248) 727-1543 | Email | phage@taftlaw.com |

**Taft /**

27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
Tel: 248.351.3000 | Fax: 248.351.3082

Paul R. Hage
phage@taftlaw.com
(248) 351-3000

April 3, 2023

**VIA OVERNIGHT MAIL**

Cash Cloud, Inc., Claims Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

**Re:** *In re Cash Cloud, Inc. (dba Coin Cloud)* **[Case No. 23-10423]**

Dear Sir or Madam:

I am counsel for Cole Kepro Internaional, LLC ("Cole Kepro") with respect to the above-referenced bankruptcy case. Enclosed please find two different proof of claims submitted on behalf of Cole Kepro in the above-referenced bankruptcy case: (i) an unsecured claim in the amount of $9,437,321.88, and (ii) an unsecured claim in the amount of $50,104,228.75.

Please do not hesitate to contact me if you have any questions. Thank you.

Very truly yours,

**TAFT STETTINIUS & HOLLISTER LLP**

Paul R. Hage

Enclosures

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:

CASH CLOUD, INC.,
dba COIN CLOUD

Debtor.

_____/

Case No. BK-23-10423-mkn

Chapter 11

### RIDER TO PROOF OF CLAIM OF COLE KEPRO INTERNATIONAL, LLC

1.      Cole Kepro International, LLC ("Cole Kepro") is a Nevada limited liability company whose business includes the design and fabrication of sheet metal cabinets with integration of electronic components for sale as digital currency kiosks.

2.      Prior to February 7, 2023 (the "Petition Date"), Cole Kepro had a multi-year business relationship with Cash Cloud, Inc. (the "Debtor") pursuant to which Cole Kepro sold digital currency kiosks and related implements to the Debtor.

3.      In August 2021, the Debtor agreed to purchase from Cole Kepro 10,000 Spanner digital currency kiosks for $100,000,000 pursuant to Purchase Order Number 8252021-1 (the "Spanner PO"). A copy of the Spanner PO is attached hereto as **Exhibit 1**.

4.      Consistent with the Spanner PO, Cole Kepro purchased raw materials from various third parties for purposes of manufacturing the 10,000 Spanner kiosks.

5.      Upon information and belief, the Debtor began experiencing financial distress in early 2022.

6.      In 2022, the Debtor repudiated the transaction consummated by way of the Spanner PO by telling Cole Kepro, in no uncertain terms, that the Debtor would neither take delivery of nor pay for any of the 10,000 kiosks Cash Cloud ordered pursuant to the Spanner PO.

7.      Cole Kepro has endeavored to mitigate its damages wrought by the Debtor's

repudiation of the Spanner PO. However, as of the Petition Date, Cole Kepro was owed a total

$50,104,228.75 from the Debtor directly and proximately resulting from the Debtor's repudiation

of the Spanner PO.

8.     Cole Kepro's damages consist of:

(i)     $15,104,228.75 incurred by Cole Kepro in purchasing raw materials that have been received, and that Cole Kepro is neither able to resell or apply in connection with other business transactions;

(ii)     an additional $4,500,000 owed by Cole Kepro to vendors insisting that Cole Kepro's outstanding purchase orders for raw materials be honored;

(iii)     an additional $500,000 for work in progress, *i.e.*, partially completed kiosks at the time of the Debtor's repudiation, for which Cole Kepro has no use; and

(iv)     an additional $30,000,000 constituting Cole Kepro's expectation damages, *i.e.*, the 30% it stood to profit on the $100,000,000 Spanner PO.[1]

9.     The filing of this proof of claim shall not constitute a limitation, waiver or release

of Cole Kepro's legal or equitable rights, claims, remedies or defenses against any person, entity

or property. Cole Kepro expressly reserves its right to supplement and/or amend this proof of

claim as and when necessary.

I certify that the foregoing statements are, to the best of my knowledge, true and correct.

**COLE KEPRO INTERNATIONAL, LLC**

By:     Frederick A. Cook, Jr.

Its:     Chief Executive Officer

Dated: April 3, 2023

---

[1] Documentation regarding Cole Kepro's damages calculation is voluminous and will be provided upon request.

**Exhibit 1**
**(Spanner Purchase Order)**

DocuSign Envelope ID: D3DC5220-FB80-4596-A936-6B7F0588CEEA



CoinCloud

5580 West Sahara Avenue, unit 200
Las Vegas, NV 89117
Phone 855-264-2046

P.O. NUMBER: 8252021-1

Cole Kepro Intl
4170 Distribution Way #103
N Las Vegas, NV 89030

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|---|---|---|---|
| 8/25/2021 | Landon Molina | Cole Kepro | Per Jim |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 10,000 | SPANNER | SPANNER Unit | $10,000.00 | $100,000,000.00 |

*Net 70* Terms: $0.00 Down. 2,500 /1,500 EU2022 Deliverable.
More info as it becomes available.

| | | SUBTOTAL | $100,000,000.00 |
|---|---|---|---|
| | | SHIPPING | $0.00 |
| | | TAX | $0.00 |
| | | TOTAL | $100,000,000.00 |

James M. Barnes                8/25/2021
                               VP of Operations        Date

                               8/26/2021
                               CFO/COO                 Date

Chris McCSurty   President and CEO   8/26/2021
                                     Date

## UPS CampusShip: View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

UPS Access Point™         UPS Access Point™          UPS Access Point™
MICHAELS STORE # 4728     THE UPS STORE              CVS STORE # 8178
28550 TELEGRAPH RD        29155 NORTHWESTERN HWY     22250 MIDDLEBELT RD
SOUTHFIELD ,MI 48034      SOUTHFIELD ,MI 48034       FARMINGTON HILLS ,MI
                                                     48336

FOLD HERE



Exhibit 20

Date Filed: 04/04/2023
Claim No: 42

Fill in this information to identify the case:

Debtor 1    Cash Cloud, Inc. (dba Coin Cloud)

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   District of Nevada

Case number   23-10423

## Official Form 410

# Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

1. **Who is the current creditor?**

Cole Kepro International, LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Taft Stettinius & Hollister, Attn: Paul R. Hage
Name

27777 Franklin, Suite 2500
Number    Street

Southfield          MI          48034
City                State         ZIP Code

Contact phone (248) 727-1543

Contact email phage@taftlaw.com

**STRETTO**

**APR 0 4 2023**

**RECEIVED**

Where should payments to the creditor be sent? (if different)

Frederick Cook
Name

4170-103 Distribution Circle
Number    Street

North Las Vegas    NV    89030
City                State    ZIP Code

Contact phone (702) 633-4270

Contact email fred@colekepro.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

4. **Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
            MM  / DD  / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410



page 1

120460405233000000000002

**Part 2:**    Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. Do you have any number you use to identify the debtor? | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___ ___ ___ ___ |

7. **How much is the claim?**    $ _____ 9,437,321.88   **Does this amount include interest or other charges?**
                       ☑ No
                       ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Good sold and services performed. See attached Rider.

9. **Is all or part of the claim secured?**    ☑ No
     ☐ Yes.   The claim is secured by a lien on property.

         **Nature of property:**

         ☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
         ☐ Motor vehicle
         ☐ Other. Describe: _____

         **Basis for perfection:** _____
         Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

         **Value of property:**            $ _____
         **Amount of the claim that is secured:**    $ _____

         **Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

         **Amount necessary to cure any default as of the date of the petition:**    $ _____

         **Annual Interest Rate** (when case was filed) _____ %
         ☐ Fixed
         ☐ Variable

10. **Is this claim based on a lease?**    ☑ No
     ☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

11. **Is this claim subject to a right of setoff?**    ☑ No
     ☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).   $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).   $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).   $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).   $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).   $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies.   $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/03/2023
                    MM / DD / YYYY

/s/ Paul R. Hage
Signature

Print the name of the person who is completing and signing this claim:

| Name | Paul Robert Hage | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Taft, Stettinius & Hollister, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 27777 Franklin, Suite 2500 | | |
| | Number      Street | | |
| | Southfield | MI | 48034 |
| | City | State | ZIP Code |
| Contact phone | (248) 727-1543 | Email | phage@taftlaw.com |



27777 Franklin Road, Suite 2500
Southfield, Michigan 48034-8214
Tel: 248.351.3000 | Fax: 248.351.3082

Paul R. Hage
phage@taftlaw.com
(248) 351-3000

April 3, 2023

**VIA OVERNIGHT MAIL**

Cash Cloud, Inc., Claims Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

      **Re:**   *In re Cash Cloud, Inc. (dba Coin Cloud)* **[Case No. 23-10423]**

Dear Sir or Madam:

      I am counsel for Cole Kepro Internaional, LLC ("Cole Kepro") with respect to the above-referenced bankruptcy case. Enclosed please find two different proof of claims submitted on behalf of Cole Kepro in the above-referenced bankruptcy case: (i) an unsecured claim in the amount of $9,437,321.88, and (ii) an unsecured claim in the amount of $50,104,228.75.

      Please do not hesitate to contact me if you have any questions. Thank you.

      Very truly yours,

      **TAFT STETTINIUS & HOLLISTER LLP**

      Paul R. Hage

Enclosures

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA

In re:

Case No. BK-23-10423-mkn

CASH CLOUD, INC.,
dba COIN CLOUD

Chapter 11

Debtor.

_____/

## RIDER TO PROOF OF CLAIM OF COLE KEPRO INTERNATIONAL, LLC

1.     Cole Kepro International, LLC ("Cole Kepro") is a Nevada limited liability company whose business includes the design and fabrication of sheet metal cabinets with integration of electronic components for sale as digital currency kiosks.

2.     Prior to February 7, 2023 (the "Petition Date"), Cole Kepro had a multi-year business relationship with Cash Cloud, Inc. (the "Debtor") pursuant to which Cole Kepro sold digital currency kiosks and related implements to the Debtor.

3.     In April 2021, pursuant to Purchase Order Number 04302021-2 (the "4th Generation PO"), the Debtor agreed to purchase from Cole Kepro 4,080 4th Generation digital currency kiosks for $34,533,120.00. A copy of the 4th Generation PO is attached hereto as **Exhibit 1**.

4.     Upon information and belief, the Debtor began experiencing financial distress in early 2022.

5.     The Debtor has failed to pay Cole Kepro amounts owed for 1,071 completed kiosks the Debtor ordered pursuant to the 4th Generation PO.[1]

---

[1] The Debtor has informally asserted, without any support whatsoever, that an unknown quantity of kiosks delivered by Cole Kepro to the Debtor were defective. To the contrary, all kiosks delivered by Cole Kepro were tested and approved by the Debtor before they left Cole Kepro's

6.    Cole Kepro has stored and continues to store the completed 1,071 kiosks the Debtor ordered pursuant to the 4th Generation PO, resulting in continually mounting rental fees.

7.    Separate and distinct from the Debtor's failure and refusal to pay Cole Kepro amounts owed for the 1,071 completed kiosks that the Debtor ordered pursuant to the 4th Generation PO, the Debtor has failed to pay for various parts ordered from Cole Kepro for use in the Debtor's business pursuant to the following additional purchase orders:

(i)     Purchase Order Number 1102022-1

(ii)    Purchase Order Number 152022-1

(iii)   Purchase Order Number 1132021-1

(iv)    Purchase Order Number 11220221-1

(v)     Purchase Order Number 12152021-2

(vi)    Purchase Order Number 1312022-2

(vii)   Purchase Order Number 212022-1

(viii)  Purchase Order Number 2142022-1

(ix)    Purchase Order Number 1152022-1

(x)     Purchase Order Number 1252022-1

(xi)    Purchase Order Number 1272022-1

(collectively, "Parts Purchase Orders"). Copies of the Parts Purchase Orders are attached hereto as **Exhibit 2**.

8.    The invoices duly submitted by Cole Kepro to the Debtor in connection with the 4th Generation PO and the Parts Purchase Orders are attached hereto as **Exhibit 3**.

---

manufacturing facility. Cole Kepro will address the Debtor's meritless claims if and when they are formally asserted, and expressly reserves all rights in that regard.

9. As of the Petition Date, Cole Kepro had an outstanding accounts receivable balance of $9,437,321.88 from the Debtor in connection with the 4th Generation PO and the Parts Purchase Orders. A detailed breakdown of this claim amount is attached hereto as **Exhibit 4.**

10. The filing of this proof of claim shall not constitute a limitation, waiver or release of Cole Kepro's legal or equitable rights, claims, remedies or defenses against any person, entity or property. Cole Kepro expressly reserves its right to supplement and/or amend this proof of claim as and when necessary.

I certify that the foregoing statements are, to the best of my knowledge, true and correct.

**COLE KEPRO INTERNATIONAL, LLC**

By: _Frederick A. Cook_

Frederick A. Cook, Jr.

Its: Chief Executive Officer

Dated: April 3, 2023

3

**Exhibit 1**
**(4th Generation Purchase Order)**

DocuSign Envelope ID: F115A992-5B80-4A3A-8FB8-0E2D45C850E1



### P.O. NUMBER: 04302021 - 2

**Vendor**
Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

**Customer**
Coin Cloud, LLC
9580 W. Sahara Blvd
Las Vegas, NV 89117
855-264-2046

| P.O. DATE | REQUISITIONER | SHIPPED VIA | Notes |
|---|---|---|---|
| 04/30/2021 | Jim Bauer | N/A | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 4080 | Domestic | BNR Version of Blue Box Kiosk / including updated NUC PC and $200 discount on BNR from CPI | $8,464.00 | $34,533,120.00 |
| | | | SUBTOTAL | $34,533,120.00 |
| | | | Total | $34,533,120.00 |

James M Bauer                                    4/30/2021
James Bauer   VP of Operations                   Date

                                                 4/30/2021
Jeffrey L. Garon   CFO/COO                        Date

                                                 4/30/2021
Chris McAlary   President/CEO                      Date

DocuSign Envelope ID: F115A992-5B80-4A3A-8FB8-0E2D45C850E1



**P.O. NUMBER: 04302021**

**Vendor**
Cole Kepro
4170 Distribution Circle
North Las Vegas, NV 89030
702-633-4270

**Customer**
Coin Cloud, LLC
9580 W. Sahara Blvd
Las Vegas, NV 89117
855-264-2046

| P.O. DATE | REQUISITIONER | SHIPPED VIA | Notes |
|---|---|---|---|
| 04/30/2021 | Jim Bauer | N/A | |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 4080 | Domestic | Adjustment price for replacement NUC/PC | $89.00 | $363,120.00 |
| | | | SUBTOTAL | $363,120.00 |
| | | | Total | $363,120.00 |

James M Bauer                                    4/30/2021

James Bauer    VP of Operations                  Date

Jeffrey L. Garon    CFO/COO                       4/30/2021
                                                  Date

                                                  4/30/2021

Chris McAlary    President/CEO                    Date

## SHIP IN PLACE AGREEMENT

This Agreement ("Agreement") is made and entered into this 4th day of March, 2020 by and between **Coin Cloud, a Nevada LLC,** (hereinafter referred to as "**CUSTOMER**") **and COLE KEPRO INTERNATIONAL, LLC,** a Nevada company, (hereinafter referred to as **"CKI").**

WHEREAS, CUSTOMER is engaged in the placement and operation of Kiosks and related components; and

WHEREAS, CKI is a fabricator and manufacturer of cabinets and related components which can be used for gaming devices and other uses; and

WHEREAS, CKI has manufactured for CUSTOMER certain Kiosk cabinets ("Units") under the terms of a separate agreement between them.

NOW THEREFORE, for and in consideration of the mutual promises and covenants contained herein, the adequacy of which is acknowledged, the parties agree as follows:

1.  CKI has completed the cabinets on behalf of CUSTOMER and is ready and prepared to ship the said Units to a destination at the request of CUSTOMER.

2.  If CKI has completed all assembly but are missing components supplied by CUSTOMER, the units are deemed complete and will be invoiced under the terms of this Ship in Place Agreement.

3.  CKI and CUSTOMER agree that CKI shall immediately ship the Units to, and CUSTOMER will accept and take delivery of the Units at a facility of CKI's choosing ("Location").

4.  CUSTOMER agrees that, for as long as the said Units are housed and stored at Location, CUSTOMER shall pay rental to the landlord of said Location in the amount of $0 (Zero dollars) per day, per Unit stored. CUSTOMER must pay rental in full before release of cabinets. (this rental fee shall be waived if CUSTOMER pays invoice for shipped Units within agreed upon terms.)

5.  Nothing contained in this Agreement will constitute or be construed to be or create a partnership, joint venture or principal and agent relationship between CUSTOMER and CKI. Neither party is authorized to make any commitment to, warrant or contract in the name of or on behalf of, the other, or to obligate the other in any other way.

6.  This Agreement will be governed by and construed in accordance with the laws of the State of Nevada. The parties' consent to the exclusive jurisdiction of the courts of the County of Clark, State of Nevada for the litigation of any and all rights, duties, or obligations hereunder.

IN WITNESS WHEREOF the parties hereby have caused this Agreement to be executed the day herein first written above.

Cash Cloud, Inc.
DBA Coin Cloud

By: _____          3/5/2020

        CEO
Its: _____

**COLE KEPRO INTERNATIONAL, LLC**

By: _____

Its: _____

DocuSign
= SECURED

## Certificate Of Completion

Envelope Id: 637E333C76654D72A0C2964B4F9710A1                                      Status: Completed
Subject: SHIP IN PLACE AGREEMENT - Coin Cloud LLC.pdf
Source Envelope:
Document Pages: 1                         Signatures: 1                           Envelope Originator:
Certificate Pages: 1                      Initials: 0                             Christopher McAlary
AutoNav: Enabled                                                                  10300 Wood Work Ln
EnvelopeId Stamping: Disabled                                                     10300 Wood Work Ln
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                                 Las Vegas, NV 89135
                                                                                  chris@coincloudnv.com
                                                                                  IP Address: 10.101.101.11

## Record Tracking

Status: Original                          Holder: Christopher McAlary             Location: DocuSign
    3/5/2020 9:20:24 AM                        chris@coincloudnv.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| CHRISTOPHER MCALARY<br>chris@coincloudnv.com<br>CEO<br>Coin Cloud<br>Security Level: Email, Account Authentication<br>(None) | *signature image* <br><br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 70.186.226.194 | Sent: 3/5/2020 9:20:25 AM<br>Viewed: 3/5/2020 9:21:51 AM<br>Signed: 3/5/2020 9:22:41 AM<br>Freeform Signing |

Electronic Record and Signature Disclosure:
    Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 3/5/2020 9:20:25 AM |
| Certified Delivered | Security Checked | 3/5/2020 9:21:51 AM |
| Signing Complete | Security Checked | 3/5/2020 9:22:41 AM |
| Completed | Security Checked | 3/5/2020 9:22:41 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Exhibit 2**
**(Parts Purchase Orders)**

CoinCloud

**P.O. NUMBER: 1102022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

10190 Covington Cross Dr
Las Vegas, NV 89144
Phone 855-264-2046

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/10/2022 | London Molina | Cole Kepro | Dallas Keys RFQ No.:2022-264 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 600 | 304-0081 | Dallas Keys | $24.00 | $14,400 |

| | |
|---|---|
| SUBTOTAL | $14,400.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $14,400.00 |

London R. Molina    Production Manager      Date

P.O. NUMBER: 152022-1

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

10190 Covington Cross Dr
Las Vegas, NV 89144
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/5/2021 | London Molina | Cole Kepro | Logitech Cameras RFQ No 2022-262 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 4600 | AS-2960-01-400 | ASSEMBLY, LOGITECH CAMERA | $26.00 | $119,600.00 |

| | |
|---|---|
| SUBTOTAL | $119,600.00 |
| SHIPPING | $0.00 |
| TAX | $0.00 |
| TOTAL | $119,600.00 |

DocuSigned by:

*James M Bauer*          1/6/2022

James Bauer    AA5DDAA0851D45D...    Date
                         COO

DocuSigned by:

*Jeffry L Garon*          1/6/2022

Jeffery L Garon    06313C38B954B3...    Date
                         CFO

**P.O. NUMBER: 1132021-1**

**Cole Kepro Intl**
**4170 Distribution Way #103**
**N Las Vegas, NV 89030**

CoinCloud

**10190 Covington Cross Dr**
**Las Vegas, NV 89144**
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|---|---|---|---|
| 11/3/2021 | RaeAnna Burd | Cole Kepro | PO for Brazil |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 1 | 604-0066 | NEW BNF | $3,711.34 | $3,711.34 |
| 1 | 724-0035 | CPU OPS1SN, Simply NUC OPS Module, i3-8145U (CM8CCB), 4GB, 512GB SATA M.2 SSD, No OS | $749.00 | $749.00 |
| 1 | 304-0076 | LOCK ELECTRIC SG3006-202 KEYPAD LOCK & ELECTRIC BOLT KIT | $440.00 | $440.00 |
| 1 | 729-0009 | 4K USB Camera Module with Sony IMX317 sensor with 1.95mm lens &1m cable | $84.00 | $84.00 |
| 1 | 304-0077 | LOCK BOLT ELECTRIC SGS104-101 | $70.34 | $70.34 |
| 1 | 708-0056 | CyberPower 625VA/360W Standby UPS Series 8 Outletsm USB Ports 5ft Cord | $60.00 | $60.00 |
| 1 | 707-I-ELC4N | LED CONTROL BOARDS | $60.00 | $60.00 |
| 1 | 729-0005 | ELP USB with Camera 2.1mm Lens 1080p Hd Free Driver USB Camera Module,2.0 Megapixel(1080p); 2MP USB CAMERA WITH 2.1MM LENS WITH 1M USB CABLE | $40.00 | $40.00 |
| 1 | 501-2784 | Harness, RGB, I-ELC4N Controller, 2960 Cabinet | $27.08 | $27.08 |
| 2 | 501-2782 | Harness, AC Input, Power Supply , Meanwell SP-240 | $11.83 | $23.66 |
| 1 | 304-0078 | CABLE, 10 FT, MINI-USB SG3000-015-009 FOR DIGITAL KEYPAD SG3006-202 | $21.18 | $21.18 |
| 1 | 708-0050 | POWER SUPPLY 90W 5V 18A SINGLE OUTPUT HIGHT EFFICIENCY LRS-100-5 | $25.00 | $25.00 |
| 1 | 708-0052 | Power Supply AC to DC Power Supply Single Output 24 Volt 10 Amp 240 Watt | $50.00 | $50.00 |
| 2 | 314-0001 | Drawer Slide Pair, 12" (Triple Slide) | $8.44 | $16.88 |
| 1 | 708-0047 | LEDMO 12V 5A 60W AC DC Power Supply Adapter [UL Listed] Power Adapter AC 100-240V to DC 12V Transformers US Plug Power Converter Power Supply LED Driver for LED Strip Light, Tape Light, Rope Light | $20.00 | $20.00 |
| 1 | 509-0103 | Cable 20FT Black 16AWG Extension Cord, Nema 5-15P To Nema 5-15R, 13A/1625W, 3-Prong | $11.28 | $11.28 |

| 1 | 722-0003 | Sabrent USB External Stereo Sound Adapter for Windows and Mac. Plug and Play No Drivers Needed. (AU-MMSA) | $8.11 | $8.11 |
|---|---|---|---|---|
| 1 | 501-2820 | Harness, Inline Fuse Harness - 10A - BNR Bill Recycler | $7.88 | $7.88 |
| 1 | 707-0152 | LED BOARD ASSEMBLY, SCANNER, 2960 | $16.00 | $16.00 |
| 1 | 501-2776 | Harness, 12V Power, LED Board and Cabinet Fan, 2960 Cabinet | $6.99 | $6.99 |
| 1 | 501-2819 | Harness, Main Door Speakers, 2960 Cabinet | $6.50 | $6.50 |
| 1 | 501-2785 | Harness, 5V Power, I-ELC4N Controller, 2960 Cabinet | $6.40 | $6.40 |
| 1 | 501-2783 | Harness, 24VDC Output, Power Supply , Meanwell SP-240 | $6.19 | $6.19 |
| 4 | 403-0137 | LABEL, COIN CLOUD LOGO | $1.48 | $5.92 |
| 1 | 501-2821 | Harness, 24V Power, BNR Bill Recycler | $5.84 | $5.84 |
| 2 | 503-5088024 | Ground Strap, 3/8" x 5", #10 Lugs | $2.66 | $5.32 |
| 2 | 509-0016 | USB A/A Cable M/F 6 | $2.35 | $4.70 |
| 1 | 509-0098 | CABLE 2FT BLACK BARREL POWER CORD, 2.1MM BARREL JACK TO 2X 2.1MM BARREL PLUG 24-5360 | $3.55 | $3.55 |
| 1 | 718-0039 | PM2038 power amplifier board 2 * 5W small power amplifier module USB powered DC5V speaker audio amplifier | $2.70 | $2.70 |
| 1 | 726-0026 | DC Power Socket to 2-Pin Screw Terminal Adapter | $2.03 | $2.03 |
| 1 | 509-107673 | Cable 5FT Yellow Cat5e 24AWG UTP Ethernet Network Cable, FLEXboot Series | $1.63 | $1.63 |
| 1 | 403-0141 | LABEL, COIN CLOUD TAMPER | $1.25 | $1.25 |
| 1 | 726-0028 | DC POWER CONNECTORS ADAPTER 2.1 x 5.5 x 11 TO 2.5 x 5.5 x 9.5 DC PLUG | $1.18 | $1.18 |
| 1 | 509-0024 | Cable 3FT, 3.5mm Stereo Phone Plug Male to Male Audio Cable | $1.11 | $1.11 |
| 1 | 509-0019 | Cable 3Ft. USB Type A Male A Male (Beige) | $0.93 | $0.93 |
| 2 | 7051AD42 (1/8 x .350L Rivet) | RIVETS 900/2000/6000 AD42BS | $0.05 | $0.10 |
| 1 | 709-DNT-215WPTF-LED-ANTIMICROBIAL | Monitor | $600.00 | $600.00 |
| | | SUBTOTAL | | $6,104.09 |
| | | SHIPPING | | $ 0.00 |
| | | TAX | | $0.00 |
| | | TOTAL | | $6,104.09 |

London R. Molina    Production Manager          Date

**P.O. NUMBER: 1122022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

10190 Covington Cross Dr
Las Vegas, NV 89144
Phone 855-264-2046

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|---|---|---|---|
| 1/12/2021 | London Molina | Cole Kepro | RFQ No.:2022-2265 15 Brazil- New Warehouse |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 15 | Crate for Brazil Units | Crate for Brazil Units | $625.00 | $9,375.00 |

| | |
|---|---|
| SUBTOTAL | $9,375.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $9,375.00 |

London R. Molina    Production Manager          Date

CoinCloud

**P.O. NUMBER: 1312022-2**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

10190 Covington Cross Dr
Las Vegas, NV 89144
Phone 855-264-2046

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/31/2022 | London Molina | Cole Kepro | RFQ No.: 2022-271 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 200 | AS-2960-01-411 | ASSEMBLY, DOOR CAMERA HOUSING, Door Style # 1 | $27.00 | $5,400.00 |
| 500 | 2960-01-419 | CAMERA MOUNT, LOGITECH, Door Style #2 | $9.90 | $4,500.00 |

| | |
|---|---|
| SUBTOTAL | $9,900.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $9,900.00 |

London R. Molina    Production Manager          Date

**P.O. NUMBER: 212022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

**10190 Covington Cross Dr**
**Las Vegas, NV 89144**
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|---|---|---|---|
| 2/1/2022 | David Ellingson | Cole Kepro | RFQ No.: 2022-272 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|---|
| 450 | 2960-01-415 | CAMERA MOUNT, LOGITECH, APSM Cabinet | $9.00 | $4,050.00 |

| | |
|---|---|
| SUBTOTAL | $4,050.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $4,050.00 |

London R. Molina    Production Manager          Date

**P.O. NUMBER: 2142022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

**10190 Covington Cross Dr**
**Las Vegas, NV 89144**
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 2/14/2022 | London Molina | Cole Kepro | 250 Dallas Keys |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 250 | 304-0081 | User Dallas Key, Same Serial Number | $24.00 | $6,000.00 |

| | |
|---|---|
| SUBTOTAL | $6,000.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $6,000.00 |

London R. Molina    Production Manager        Date

**P.O. NUMBER: 1152022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

**10190 Covington Cross Dr**
**Las Vegas, NV 89144**
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/15/2022 | London Molina | Cole Kepro | Brazil Kits RFQ 2022-269 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 15 | AS-2960-Brazil 220 kit | 220V kit for BNR Cabinet | $265.00 | $3,975.00 |

|  | |
|--|--|
| SUBTOTAL | $3,975.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $3,975.00 |

London Molina      Production Manager      Date

**P.O. NUMBER: 1252022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

**10190 Covington Cross Dr**
**Las Vegas, NV 89144**
**Phone 855-264-2046**

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/25/2022 | London Molina | Cole Kepro | RFQ No.:2022-270 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 4000 | 402-0035 | PROUDLY MADE IN THE USA - COIN CLOUD TAG | $1.25 | $5000.00 |

| | |
|---|---|
| SUBTOTAL | $5,000.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $5,000.00 |

London R. Molina    Production Manager        Date

**P.O. NUMBER: 1272022-1**

**Cole Kepro Intl**
4170 Distribution Way #103
N Las Vegas, NV 89030

CoinCloud

10190 Covington Cross Dr
Las Vegas, NV 89144
Phone 855-264-2046

| P.O. DATE | REQUISITIONER | Supplier | Notes |
|-----------|---------------|----------|-------|
| 1/27/2022 | London Molina | Cole Kepro | RFQ 2022-266 |

| QTY | UNIT | DESCRIPTION | UNIT PRICE | TOTAL |
|-----|------|-------------|------------|-------|
| 10 | 304-0086 | LOCK, TOUCH MANAGER KIT - SWING BOLT LOCK, DALLAS KEY READER, BATTERY BOX, EMERGENCY POWER JACK | $191.00 | $1910.00 |

| | |
|---|---|
| SUBTOTAL | $1910.00 |
| SHIPPING | $ 0.00 |
| TAX | $0.00 |
| TOTAL | $1910.00 |

London R. Molina    Production Manager          Date

**Exhibit 3**
**(Invoices)**


COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

No.: **100693**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 12/30/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

No.: **100694**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
    9580 West Sahara Ave Unit 200
    Las Vegas, NV 89117
    US

**Ship To: CoinCloud**
    9580 West Sahara Ave Unit 200
    Las Vegas, NV 89117
    US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 12/30/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**COLE KEPRO**
INTERNATIONAL, LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **100695**

| Bill To: | **Coin Cloud** | | Ship To: | **CoinCloud** |
| --- | --- | --- | --- | --- |
| | 9580 West Sahara Ave Unit 200 | | | 9580 West Sahara Ave Unit 200 |
| | Las Vegas, NV 89117 | | | Las Vegas, NV 89117 |
| | US | | | US |

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
| --- | --- | --- | --- | --- | --- | --- |
| | 04302021-2 | | NET 45 | 12/30/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
| --- | --- | --- | --- | --- | --- |
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

| Remit payment to: | | Sub Total: | $439,671.00 |
| --- | --- | --- | --- |
| Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618 | | Freight: | |
| Overnight Address: | | | |
| Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC | | Sales Tax: | $0.00 |
| 6201 Dempster Street, Morton Grove, IL 60053 | | | |
| Electronically to: | | | |
| Fifth Third Bank, Cole Kepro International, LLC | | Total Amount: | $439,671.00 |
| ABA# 071923909 Acct# 88800224 -ACH | | | |
| ABA# 042000314-WIRE-Swift MBFIUS44 | | | |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

 **COLE KEPRO** INTERNATIONAL, LLC

# INVOICE

No.: **100696**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270 Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|----------|---------|-----|-------|------|--------|------|
| | 04302021-2 | | NET 45 | 12/30/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**INVOICE**

No.: **100697**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
    9580 West Sahara Ave Unit 200
    Las Vegas, NV 89117
    US

**Ship To: CoinCloud**
    9580 West Sahara Ave Unit 200
    Las Vegas, NV 89117
    US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 04302021-2 |  | NET 45 | 12/30/2021 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
|  |  | Coin Cloud Bitcoin Domestic Kiosk with BNR |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

| | |
|---|---|
| Remit payment to:<br>Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618<br>Overnight Address:<br>Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC<br>6201 Dempster Street, Morton Grove, IL 60053<br>Electronically to:<br>Fifth Third Bank, Cole Kepro International, LLC<br>ABA# 071923909 Acct# 88800224 -ACH<br>ABA# 042000314-WIRE-Swift MBFIUS44 | Sub Total:  $439,671.00<br>Freight:<br>Sales Tax:  $0.00<br>Total Amount:  $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



COLE KEPRO
INTERNATIONAL, LLC.

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **100705**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 12/31/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 1 | 134082 | Change locks on Building B restrooms | A00 | $200.00 | $200.00 |
| | | Time and Material | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $200.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $200.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

### No.: **100707**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 12/31/2021 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 9 | 134080 | Trailer Storage | A00 | $400.00 | $3,600.00 |
| | | Trailer Storage | | | |
| | | Customer P/N: | | | |

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $3,600.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $3,600.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

No.: **100728**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 01/04/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 5 | 134070 | 2960-01-398-097 | A00 | $25.00 | $125.00 |
| | | DOOR CAMERA HOUSING | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |
| 5 | 134071 | 2960-01-399 | A00 | $25.00 | $125.00 |
| | | CAMERA MOUNT, LOGITECH | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $250.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $250.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

 COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

No.: **100765**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: Nevatronix**
4120 W Windmill Ln # 101
Las Vegas, NV 89139
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 01/01/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 1 | | Base Rent | A00 | $10,593.85 | $10,593.85 |

Base Rent - 4171 Distribution Circle - Suite 105   January 2022 Rent

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $10,593.85 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $10,593.85 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

No.: **100809**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1102022-1 | | NET 45 | 01/10/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 600 | 134259 | 304-0081 | | $24.00 | $14,400.00 |

User Dallas Key, Same Serial Number

Customer P/N: TEC-N1982-KA

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $14,400.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $14,400.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

No.: **100817**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 04302021-2 |  | NET 45 | 01/10/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **100818**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 04302021-2 |  | NET 45 | 01/10/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
|  |  | Coin Cloud Bitcoin Domestic Kiosk with BNR |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



## COLE KEPRO
### INTERNATIONAL, LLC.

# INVOICE

No.: **100825**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 152022-1 |  | NET 45 | 01/10/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 550 | 134177 | AS-2960-01-400 | A00 | $26.00 | $14,300.00 |
|  |  | ASSEMBLY, LOGITECH CAMERA |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $14,300.00 |
| Freight: |  |
| Sales Tax: | $0.00 |
| Total Amount: | $14,300.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# COLE KEPRO
INTERNATIONAL LLC

# **INVOICE**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **100898**

| **Bill To:** | **Coin Cloud** | | | **Ship To:** | **CoinCloud** | | |
|---|---|---|---|---|---|---|---|
| | 9580 West Sahara Ave Unit 200 | | | | 9580 West Sahara Ave Unit 200 | | |
| | Las Vegas, NV 89117 | | | | Las Vegas, NV 89117 | | |
| | US | | | | US | | |

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/13/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 451 | 134177 | AS-2960-01-400 | A00 | $26.00 | $11,726.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $11,726.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $11,726.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **100921**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/14/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 500 | 134177 | AS-2960-01-400 | A00 | $26.00 | $13,000.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $13,000.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $13,000.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **100943**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1132021-1 | | NET 45 | 01/14/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 1 | 132881 | 304-0078 | | $21.18 | $21.18 |

CABLE, 10 FT, MINI-USB SG3000-015-009
FOR DIGITAL KEYPAD SG3006-202
Customer P/N: SG3000-015-009

RMA#

| | |
|---|---|
| Remit payment to:<br>Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618<br>Overnight Address:<br>Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC<br>6201 Dempster Street, Morton Grove, IL 60053<br>Electronically to:<br>Fifth Third Bank, Cole Kepro International, LLC<br>ABA# 071923909 Acct# 88800224 -ACH<br>ABA# 042000314-WIRE-Swift MBFIUS44 | Sub Total: $21.18<br>Freight:<br>Sales Tax: $0.00<br>Total Amount: $21.18 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **100947**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|----------|---------|-----|-------|------|--------|------|
|  | 04302021-2 |  | NET 45 | 01/15/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **100948**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/17/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 500 | 134177 | AS-2960-01-400 | A00 | $26.00 | $13,000.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $13,000.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $13,000.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **100964**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 01/17/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

No.: **100992**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/18/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 750 | 134177 | AS-2960-01-400 | A00 | $26.00 | $19,500.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $19,500.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $19,500.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

 COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

No.: **101001**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/19/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 750 | 134177 | AS-2960-01-400 | A00 | $26.00 | $19,500.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $19,500.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $19,500.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101002**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1122022-1 | | NET 45 | 01/19/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 2 | 134286 | Crate for Brazil Units | A00 | $625.00 | $1,250.00 |
| | | Crate for Brazil Units | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $1,250.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $1,250.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



COLE KEPRO
INTERNATIONAL. LLC

# INVOICE

No.: **101026**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 01/20/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 5 | 134492 | AS-2960-01-411 | A00 | $100.00 | $500.00 |
| | | ASSEMBLY, DOOR CAMERA HOUSING, Door Style # 1 | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |
| 5 | 134493 | AS-2960-01-414 | A00 | $100.00 | $500.00 |
| | | ASSEMBLY, CAMERA MOUNT, APSM | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $1,000.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $1,000.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101028**

| Bill To: | **Coin Cloud** | Ship To: | **CoinCloud** |
|---|---|---|---|
| | 9580 West Sahara Ave Unit 200 | | 9580 West Sahara Ave Unit 200 |
| | Las Vegas, NV 89117 | | Las Vegas, NV 89117 |
| | US | | US |

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/20/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 500 | 134177 | AS-2960-01-400 | A00 | $26.00 | $13,000.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $13,000.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $13,000.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



## COLE KEPRO
### INTERNATIONAL LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **101036**

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/21/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 500 | 134177 | AS-2960-01-400 | A00 | $26.00 | $13,000.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $13,000.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $13,000.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101037**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:**  **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 152022-1 | | NET 45 | 01/21/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 99 | 134177 | AS-2960-01-400 | A00 | $26.00 | $2,574.00 |
| | | ASSEMBLY, LOGITECH CAMERA | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $2,574.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $2,574.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



COLE KEPRO
INTERNATIONAL, LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **101055**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1122022-1 | | NET 45 | 01/21/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 15 | 134476 | Crate for Brazil Units | A00 | $625.00 | $9,375.00 |
| | | Crate for Brazil Units | | | |
| | | Customer P/N: | | | |

RMA#

| | | |
|---|---|---|
| Remit payment to:<br>Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618<br>Overnight Address:<br>Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC<br>6201 Dempster Street, Morton Grove, IL 60053<br>Electronically to:<br>Fifth Third Bank, Cole Kepro International, LLC<br>ABA# 071923909 Acct# 88800224 -ACH<br>ABA# 042000314-WIRE-Swift MBFIUS44 | Sub Total:<br>Freight:<br>Sales Tax:<br>Total Amount: | $9,375.00<br><br>$0.00<br>$9,375.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101057**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|----------|---------|-----|-------|------|--------|------|
|  | 04302021-2 |  | NET 45 | 01/21/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
|  |  | Coin Cloud Bitcoin Domestic Kiosk with BNR |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **101084**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 01/25/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 50 | 134648 | 402-0035 | | $1.25 | $62.50 |
| | | PROUDLY MADE IN THE USA - COIN CLOUD TAG | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $62.50 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $62.50 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL LLC

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101097**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 1252022-1 |  | NET 45 | 01/26/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 100 | 134648 | 402-0035 |  | $1.25 | $125.00 |
|  |  | PROUDLY MADE IN THE USA - COIN CLOUD TAG |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |
| 400 | 134648 | 402-0035 |  | $1.25 | $500.00 |
|  |  | PROUDLY MADE IN THE USA - COIN CLOUD TAG |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $625.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $625.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030

No.: **101100**

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1252022-1 | | NET 45 | 01/26/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 3450 | 134648 | 402-0035 | | $1.25 | $4,312.50 |
| | | PROUDLY MADE IN THE USA - COIN CLOUD TAG | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC · Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $4,312.50 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $4,312.50 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**COLE KEPRO**
INTERNATIONAL, LLC.

# INVOICE

No.: **101115**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 01/26/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314 -WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101138**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 12152021-2 | | NET 45 | 01/27/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 5 | 133970 | 729-0020 | | $100.00 | $500.00 |
| | | Camera Module 4K, Auto Focus, 12MP w/SONY IMX258 sensor and Harness | | | |
| | | Customer P/N: CMT-12MP-IMX258-W562 | | | |
| | | RMA# | | | |
| 1 | 134737 | Shipping | | $60.00 | $60.00 |
| | | Freight Charge | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $560.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $560.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101142**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1152022-1 | | NET 45 | 01/27/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 15 | 134419 | AS-2960-Brazil 220 kit | A | $265.00 | $3,975.00 |
| | | 220V kit for BNR Cabinet | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $3,975.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $3,975.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101157**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 1272022-1 | | NET 45 | 01/28/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 10 | 134742 | 304-0086 | A | $191.00 | $1,910.00 |

LOCK, TOUCH MANAGER KIT - SWING
BOLT LOCK, DALLAS KEY READER,
BATTERY BOX, EMERGENCY POWER JACK

Customer P/N: TEC-T4100/A/KIT, TEC-T4000

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $1,910.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $1,910.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

**COLE KEPRO INTERNATIONAL, LLC**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

No.: **101185**

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 01/29/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



## COLE KEPRO
INTERNATIONAL, LLC

# INVOICE

No.: **101205**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 01/31/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030

Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101235**

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 02/02/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 4 | 134569 | AS-2960-01-408 | A00 | $200.00 | $800.00 |

ASSEMBLY, SWING BOLT REPLACEMENT

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $800.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $800.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


## COLE KEPRO
### INTERNATIONAL, LLC

# INVOICE

No.: **101288**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|----------|----------|-----|-------|------|--------|------|
|          | 04302021-2 |   | NET 45 | 02/04/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
|    |        | Coin Cloud Bitcoin Domestic Kiosk with BNR |  |  |  |
|    |        | Customer P/N: |  |  |  |
|    |        | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**COLE KEPRO**
INTERNATIONAL, LLC.

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101289**

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 02/04/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


## COLE KEPRO
INTERNATIONAL, LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **101292**

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | | | NET 45 | 02/01/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 1 | | Base Rent | A00 | $10,593.85 | $10,593.85 |

Base Rent - 4171 Distribution Circle - Suite 105   February Rent - 2022

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| Sub Total: | $10,593.85 |
|---|---|
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $10,593.85 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101313**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

**Bill To:** Coin Cloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** CoinCloud
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|----------|---------|-----|-------|------|--------|------|
| | | | NET 45 | 02/08/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 9 | 134080 | Trailer Storage | A00 | $400.00 | $3,600.00 |
| | | Trailer Storage | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $3,600.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $3,600.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

 **COLE KEPRO** INTERNATIONAL, LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

# INVOICE

No.: **101386**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|----------|----------|-----|-------|------|--------|------|
| | 04302021-2 | | NET 45 | 02/11/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**INVOICE**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101395**

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|----------|----------|-----|-------|------|--------|------|
|  | 1312022-2 |  | NET 45 | 02/11/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 200 | 134787 | AS-2960-01-411 | A00 | $27.00 | $5,400.00 |
|  |  | ASSEMBLY, DOOR CAMERA HOUSING, Door Style # 1 |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |
| 500 | 134788 | 2960-01-419 | A00 | $9.00 | $4,500.00 |
|  |  | CAMERA MOUNT, LOGITECH, Door Style #2 |  |  |  |
|  |  | Customer P/N: |  |  |  |
|  |  | RMA# |  |  |  |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $9,900.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $9,900.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



**INVOICE**

4170-103 Distribution Circle
N. Las Vegas, NV 89030

No.: **101396**

Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 212022-1 | | NET 45 | 02/11/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 450 | 134806 | 2960-01-415 | A00 | $9.00 | $4,050.00 |
| | | CAMERA MOUNT, LOGITECH, APSM | | | |
| | | Cabinet | | | |
| | | Customer P/N: | | | |
| | | | | | |
| | | RMA# | | | |

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $4,050.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $4,050.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



## COLE KEPRO
### INTERNATIONAL, LLC

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

# INVOICE

No.: **101397**

**Bill To: Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 02/11/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO INTERNATIONAL, LLC

# INVOICE

No.: **101495**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270 Fax: (702) 633-5088

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 02/17/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |
| | | Coin Cloud Bitcoin Domestic Kiosk with BNR | | | |
| | | Customer P/N: | | | |

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

COLE KEPRO
INTERNATIONAL, LLC.

**INVOICE**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101496**

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
| | 04302021-2 | | NET 45 | 02/17/2022 | | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



## INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101523**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 2142022-1 |  | NET 45 | 02/22/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 148 | 135257 | 304-0081 |  | $24.00 | $3,552.00 |

User Dallas Key, Same Serial Number

Customer P/N: TEC-N1982-KA

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $3,552.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $3,552.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.


COLE KEPRO
INTERNATIONAL, LLC.

# INVOICE

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

No.: **101557**

**Bill To:** **Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To:** **CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|---|---|---|---|---|---|---|
|  | 04302021-2 |  | NET 45 | 02/23/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|---|---|---|---|---|---|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.



# INVOICE

No.: **101558**

4170-103 Distribution Circle
N. Las Vegas, NV 89030
Phone: (702) 633-4270  Fax: (702) 633-5088

**Bill To:  Coin Cloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

**Ship To: CoinCloud**
9580 West Sahara Ave Unit 200
Las Vegas, NV 89117
US

| Ship Via | P.O. No. | FOB | Terms | Date | Resale | Page |
|----------|----------|-----|-------|------|--------|------|
|  | 04302021-2 |  | NET 45 | 02/23/2022 |  | 1 |

| Quantity | Job No. | Part Number | Revision | Price / Unit | Extended Price |
|----------|---------|-------------|----------|--------------|----------------|
| 51 | 127443 | C-2960-01-000-GEN04 | E00 | $8,621.00 | $439,671.00 |

Coin Cloud Bitcoin Domestic Kiosk with BNR

Customer P/N:

RMA#

Remit payment to:
Cole Kepro International, LLC - Dept# 10416, PO Box 87618, Chicago, IL 60680-0618
Overnight Address:
Fifth Third Bank - Lockbox Services 2nd Floor, c/o Cole Kepro International LLC
6201 Dempster Street, Morton Grove, IL 60053
Electronically to:
Fifth Third Bank, Cole Kepro International, LLC
ABA# 071923909 Acct# 88800224 -ACH
ABA# 042000314-WIRE-Swift MBFIUS44

| | |
|---|---|
| Sub Total: | $439,671.00 |
| Freight: | |
| Sales Tax: | $0.00 |
| Total Amount: | $439,671.00 |

Accounts not paid within terms are subject to a 1.50% monthly finance charge.

**Exhibit 4**
**(Detailed Claim Breakdown)**

**Cole Kepro International, LLC**
**Account Receivable Claim Breakdown**

| Invoice # | PO # | Invoice Date | Due Date | Amount |
|---|---|---|---|---|
| 100693 | 04302021-2 | 12/30/2021 | 2/20/2022 | $439,671.00 |
| 100694 | 04302021-2 | 12/30/2021 | 2/20/2022 | $439,671.00 |
| 100695 | 04302021-2 | 12/30/2021 | 2/20/2022 | $439,671.00 |
| 100696 | 04302021-2 | 12/30/2021 | 2/20/2022 | $439,671.00 |
| 100697 | 04302021-2 | 12/30/2021 | 2/20/2022 | $439,671.00 |
| 100705 | Changed Locks at Building | 12/31/2021 | 2/21/2022 | $200.00 |
| 100707 | Monthly Trailer Storage | 12/31/2021 | 2/21/2022 | $3,600.00 |
| 100728 | Camera Proto's hand delivered | 1/4/2022 | 2/25/2022 | $250.00 |
| 100765 | Monthly Rent | 1/1/2022 | 2/22/2022 | $10,593.85 |
| 100809 | 1102022-1 | 1/10/2022 | 3/3/2022 | $14,400.00 |
| 100817 | 04302021-2 | 1/10/2022 | 3/3/2022 | $439,671.00 |
| 100818 | 04302021-2 | 1/10/2022 | 3/3/2022 | $439,671.00 |
| 100825 | 152022-1 | 1/10/2022 | 3/3/2022 | $14,300.00 |
| 100898 | 152022-1 | 1/13/2022 | 3/6/2022 | $11,726.00 |
| 100921 | 152022-1 | 1/14/2022 | 3/7/2022 | $13,000.00 |
| 100943 | 1132021-1 | 1/14/2022 | 3/7/2022 | $21.18 |
| 100947 | 04302021-2 | 1/15/2022 | 3/8/2022 | $439,671.00 |
| 100948 | 152022-1 | 1/17/2022 | 3/10/2022 | $13,000.00 |
| 100964 | 04302021-2 | 1/17/2022 | 3/10/2022 | $439,671.00 |
| 100992 | 152022-1 | 1/18/2022 | 3/11/2022 | $19,500.00 |
| 101001 | 152022-1 | 1/19/2022 | 3/12/2022 | $19,500.00 |
| 101002 | 1122022-1 | 1/19/2022 | 3/12/2022 | $1,250.00 |
| 101026 | Camera Proto's hand delivered | 1/20/2022 | 3/13/2022 | $1,000.00 |
| 101028 | 152022-1 | 1/20/2022 | 3/13/2022 | $13,000.00 |
| 101036 | 152022-1 | 1/21/2022 | 3/14/2022 | $13,000.00 |
| 101037 | 152022-1 | 1/21/2022 | 3/14/2022 | $2,574.00 |
| 101055 | 1122022-1 | 1/21/2022 | 3/14/2022 | $9,375.00 |
| 101057 | 04302021-2 | 1/21/2022 | 3/14/2022 | $439,671.00 |
| 101084 | Proudly Made in America Tags | 1/25/2022 | 3/18/2022 | $62.50 |
| 101097 | 1252022-1 | 1/26/2022 | 3/19/2022 | $625.00 |
| 101100 | 1252022-1 | 1/26/2022 | 3/19/2022 | $4,312.50 |
| 101115 | 04302021-2 | 1/26/2022 | 3/19/2022 | $439,671.00 |
| 101138 | 12152021-2 | 1/27/2022 | 3/20/2022 | $560.00 |
| 101142 | 1152022-1 | 1/27/2022 | 3/20/2022 | $3,975.00 |
| 101157 | 1272022-1 | 1/28/2022 | 3/21/2022 | $1,910.00 |
| 101185 | 04302021-2 | 1/29/2022 | 3/22/2022 | $439,671.00 |
| 101205 | 04302021-2 | 1/31/2022 | 3/24/2022 | $439,671.00 |
| 101235 | Swing Bolts Hand Delivered | 2/2/2022 | 3/26/2022 | $800.00 |
| 101288 | 04302021-2 | 2/4/2022 | 3/28/2022 | $439,671.00 |
| 101289 | 04302021-2 | 2/4/2022 | 3/28/2022 | $439,671.00 |
| 101292 | Monthly Rent | 2/1/2022 | 3/25/2022 | $10,593.85 |
| 101313 | Monthly Trailer Storage | 2/8/2022 | 4/1/2022 | $3,600.00 |
| 101386 | 04302021-2 | 2/11/2022 | 4/3/2022 | $439,671.00 |
| 101395 | 1312022-2 | 2/11/2022 | 3/28/2022 | $9,900.00 |
| 101396 | 212022-1 | 2/11/2022 | 3/28/2022 | $4,050.00 |
| 101397 | 04302021-2 | 2/11/2022 | 3/28/2022 | $439,671.00 |
| 101495 | 04302021-2 | 2/17/2022 | 4/10/2022 | $439,671.00 |
| 101496 | 04302021-2 | 2/17/2022 | 4/10/2022 | $439,671.00 |
| 101523 | 2142022-1 | 2/22/2022 | 4/8/2022 | $3,552.00 |
| 101557 | 04302021-2 | 2/23/2022 | 4/9/2022 | $439,671.00 |
| 101558 | 04302021-2 | 2/23/2022 | 4/16/2022 | $439,671.00 |
|  |  |  | **TOTAL** | **$9,437,321.88** |

## UPS CampusShip: View/Print Label

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, Staples® or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| MICHAELS STORE # 4728 | THE UPS STORE | CVS STORE # 8178 |
| 28550 TELEGRAPH RD | 29155 NORTHWESTERN HWY | 22250 MIDDLEBELT RD |
| SOUTHFIELD ,MI 48034 | SOUTHFIELD ,MI 48034 | FARMINGTON HILLS ,MI 48336 |

FOLD HERE



# Exhibit 21

# Filed Under Seal