
_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge



Entered on Docket
December 01, 2023

Brett A. Axelrod, Esq. (NSBN 5859)
Nicholas A. Koffroth, Esq. (NSBN 16264)
Zachary T. Williams, Esq. (NSBN 16023)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com
zwilliams@foxrothschild.com

*Counsel for Debtor*

Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
**McDONALD CARANO LLP**
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
Telephone: (702) 873-4100
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
**SEWARD & KISSEL LLP**
*admitted pro hac vice*
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| In re | Case No.: 23-10423-mkn |
|---|---|
| CASH CLOUD, INC. dba COIN CLOUD, | Chapter 11 |
| Debtor. | **ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH COLE KEPRO INTERNATIONAL, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**<br><br>**Date of Hearing: November 28, 2023**<br>**Time of Hearing: 1:30 p.m. (PT)** |

THIS MATTER came before the Court on a hearing on the *Joint Motion to Approve Settlement Agreement With Cole Kepro International, LLC Pursuant to Fed. R. Bankr. P. 9019* (the "Motion") [ECF No. 1295] filed jointly by Cash Cloud, Inc. dba Coin Cloud (the "Debtor") and the Official Committee of Unsecured Creditors ("UCC"). Appearances were noted for the record. The Court reviewed the above-referenced Motion, the declarations and evidence in support, and the responses thereto, with the sole-objection having been withdrawn at the time of the hearing. The Court further heard and considered the arguments of counsel at the hearing on this matter. Proper notice having been given, the Court placed its findings of fact and conclusions of law on the record at the hearing, which findings of fact and conclusions of law are incorporated by this reference under Federal Rule of Civil Procedure 52 made applicable by Federal Rule of Bankruptcy Procedure 9014, and for good and sufficient cause appearing,

**IT IS SO ORDERED THAT,** the Motion, the Settlement Agreement (attached hereto as Exhibit A) and the implementation of the Settlement, are hereby approved in their entirety.

**IT IS FURTHER ORDERED THAT**, the Court will retain jurisdiction to consider any issues relating to implementation, enforcement or other matters associated with the Motion, the Settlement Agreement and the Settlement.

# # #

4868-1838-6811, v. 2

In accordance with LR 9021, counsel submitting this **ORDER GRANTING JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH COLE KEPRO INTERNATIONAL, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019** certifies that the order accurately reflects the court's ruling and that (check one):

☐     The Court has waived the requirement set forth in LR 9021(b)(1).

☐     No party appeared at the hearing or filed an objection to the motion.

■     I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated below [list each party and whether the party has approved, disapproved, or failed to respond to the document].

Dawn Cica, Esq.                                                    **APPROVED**/~~DISAPPROVED~~
*Counsel for Christopher McAlary*

Daniel Mann, Esq.                                                  **APPROVED**/~~DISAPPROVED~~
*Counsel for Debtor*

Submitted by:

McDONALD CARANO LLP

By: */s/ Ryan J. Works*
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
*Admitted pro hac vice*
SEWARD & KISSEL LLP
One Battery Park Plaza
New York, NY 10004
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

4868-1838-6811, v. 2

# EXHIBIT A

# EXHIBIT A

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is made and entered into this 22nd day of September, 2023 (the "Effective Date") by and between Cash Cloud dba Coin Cloud, Inc. (the "Debtor"), the Official Committee of Unsecured Creditors (the "Committee"), and Cole Kepro International, LLC ("CKI," and together with the Debtor and Committee, each a "Party" and collectively the "Parties").

## RECITALS

A. On February 7, 2023, the Debtor filed for relief under Chapter 11 of Title 11 of the Bankruptcy Code (the "Code") in the United States Bankruptcy Court, District of Nevada (the "Bankruptcy Court"), initiating Case No. 22-10423-mkn (the "Chapter 11 Bankruptcy Case").

B. On February 17, 2023, the United States Trustee for the District of Nevada filed the *Appointment of Official Committee of Unsecured Creditors* appointing members of the Committee in this Chapter 11 Case [ECF No. 131] which was thereafter amended on August 10, 2023 [ECF No. 1066].

C. Prior to the Petition Date: (i) the Debtor initiated a lawsuit against CKI captioned *Cash Cloud Inc. v. Cole Kepro International, LLC*, Case No. A-22-854226-B, and (ii) CKI initiated a lawsuit against the Debtor captioned *Cole Kepro International, LLC v. Coin Cloud, LLC*, Case No. A-22-860298-B (collectively, the "CKI Litigation"). The CKI Litigation was consolidated under Case No. 22-854226-B by the Eighth Judicial District Court in Clark County, Nevada and was stayed on the Petition Date. On April 25, 2023, the Clark County, Nevada District Court entered a *Civil Order to Statistically Close Case,* which statistically closed the CKI Litigation.

D. The CKI Litigation concerns claims related to the purchase of digital currency machines ("DCMs") by the Debtor from CKI. CKI asserted that the Debtor owes it approximately $9.5 million for DCMs that were ordered by, manufactured for, inspected and approved by, and delivered to the Debtor prior to the Petition Date. In an initial bankruptcy filing, the Debtor disputed these allegations. The Debtor asserted that certain DCMs that it purchased prior to the Petition Date were defective and claims that it has incurred substantial, but unquantified, damages due to the alleged defect. CKI disputed these allegations.

E. After extensive arm's-length negotiations, the Parties have reached this comprehensive settlement Agreement.

F. The Parties desire to settle and resolve all disputes and claims between the Parties rather than incur additional costs and attorneys' fees. By entering into this Agreement, no Party shall be deemed a prevailing party as a consequence of this Agreement, governing statutes, or otherwise. The Parties shall bear their own costs and expenses in the respective litigation filed against the other Party.

149759437.1

G. In order to resolve their disputes, the Parties wish to make a full, complete, and final settlement with respect to the above recitals and all known and unknown claims arising therefrom.

NOW, THEREFORE, in consideration of the mutual promises, conditions, and agreements contained herein, and other good and valuable consideration, the receipt and sufficiency of which the Parties acknowledge, the Parties incorporate the above recitals by this reference and, intending to be legally bound, agree as follows:

## AGREEMENT

1. <u>Recitals</u>. The Parties hereby stipulate and agree that the foregoing recitals are true and correct in all respects and are incorporated herein by this reference.

2. <u>Effective Date</u>. Except as otherwise provided herein, this Agreement shall become effective upon the date (the "<u>Effective Date</u>") written above, but the parties understand and acknowledge that this Agreement is subject to Bankruptcy Court approval under Federal Rule of Bankruptcy Procedure ("<u>Fed. R. Civ. P.</u>") 9019.

3. <u>9019 Motion</u>. The Debtor shall file with the Bankruptcy Court, and set for a hearing a Motion for Approval of this Agreement pursuant to Fed. R. Bankr. P. 9019, no later than two (2) business days from the Effective Date of this Agreement. This Agreement and the settlement terms contained herein are conditioned upon entry of a final, non-appealable order entered by the Bankruptcy Court approving the Agreement under Bankruptcy Rule 9019 (the "<u>Final Order</u>").

4. <u>Settlement Terms.</u>

Upon entry of a Final Order:

(a) **Payment**. CKI shall tender the sum of $850,000.00 (the "<u>Settlement Amount</u>") to the Debtor by delivery of the promissory note attached hereto as <u>Exhibit A</u> in favor of the Debtor (the "<u>Note</u>"); provided, however, that in the event a court of competent jurisdiction enters a decree or order for relief in respect of CKI in an involuntary case or CKI files a voluntary case under the Bankruptcy Code or under any other applicable bankruptcy, insolvency or similar state or federal law now or hereafter in effect, the Debtor shall have an allowed unsecured claim, in addition to the Settlement Amount, in the amount of $850,000, which is not subject to challenge by CKI.

(b) **Secured Promissory Note**. The indebtedness evidenced by the Note will become due and payable sixty (60) days ("<u>Payment Deadline</u>") after entry of a Final Order. The Note will be secured by a perfected security interest in the proceeds from a credit insurance policy (the "<u>Insurance Proceeds</u>"), as more fully described in the Note.

(c) **Intercreditor Agreement**. CKI, the Debtor and CKI's secured lender, Fifth Third Bank, shall enter into an intercreditor agreement, a copy of which is

attached hereto as Exhibit B (the "Intercreditor Agreement") whereby Fifth Third Bank agrees to subordinate any security interest that it may have in the Insurance Proceeds to the security interest granted to the Debtor pursuant to this Agreement, but solely with respect to the Settlement Amount.

(d) **Allowed Claim**. Upon entry of the Final Order, CKI's general unsecured claim in the amount of $9,437,321.88 [Claim No. 42] (the "Proof of Claim") will be allowed in full. In furtherance of the foregoing, Debtor acknowledges and agrees that there is no dispute, setoff, counterclaim or other objection with respect to the DCMs, the Proof of Claim, or the purchase orders and invoices referenced in the Proof of Claim, including any dispute, setoff, counterclaim or other objection, which would prevent payment in full of such purchase orders and invoices (the "Allowed Claim").

(e) **Dismissal**. Upon entry of the Final Order, all claims in the CKI Litigation shall be dismissed, with prejudice, and the Parties shall promptly take any necessary steps to dismiss such claims.

5. Releases.

(a) Except as otherwise set forth in this Agreement, upon entry of the Final Order, each Party including each of their affiliates, shareholders, officers, directors, members, managers, attorneys and related parties (each as a "Releasing Party") hereby releases relinquishes, and discharges the other Party, (each as a "Released Party") from any and all claims, demands, actions, causes of action, losses, costs, expenses, damages, liabilities, liens or obligations of any character, in law or equity, contract or tort, whether known or unknown, fixed or contingent, accrued or not yet accrued, matured or not yet matured, vested or not yet vested, which the Releasing Party has against the Released Party, only to the extent such Released Claims directly relate to, arise out of, or are connected with the CKI Litigation (collectively, "Released Claims"); provided, however, that, for the avoidance of doubt, the Released Claims will not include the Allowed Claim, CKI's claim in the amount of $50,104,228.75 [Claim No. 41] and any claims that CKI may have against Christopher McClary. Nothing herein is intended to relieve the Parties from their obligations under this Agreement which may be enforced as set forth below.

(b) Each Releasing Party acknowledges that he/she/it may later discover claims or facts in addition to or different from those which that Party now knows or believes to exist with respect to the Released Claims and the subject matter of this Agreement, and which, if known or suspected at the time of executing this Agreement, may have materially affected its terms. Having been so apprised, each Releasing Party elects to and does assume all risks for any and all claims, whether known or unknown, suspected or not suspected, arising from or related to the subject matter of this Agreement, including but not limited to the Released Claims, and knowingly and voluntarily releases the Released Party from any and all liability and claims arising out of or related to such matters.

6. Independent Counsel. The Parties represent and warrant that they have been advised that they should be represented by counsel of their own choosing in the preparation and analysis of this Agreement, that they have been represented by their own independent counsel, and

that they have read this Agreement and believe that they are fully aware of and understand the contents hereof and the legal effect. The Parties further represent and warrant that they have entered into this Agreement voluntarily and with the approval and advice of their counsel.

7. <u>Attorneys' Fees</u>. In the event of any litigation among the Parties, including any appeals, in connection with or arising out of this Agreement, the prevailing Party shall recover all of its costs and expenses, including expert fees, and reasonable attorneys' fees actually incurred which shall be determined and fixed by the court as part of the judgment. The Parties covenant and agree that they intend by this section for the prevailing Party to recover for such reasonable attorneys' fees as the court may determine were actually and necessarily incurred by the prevailing Party.

8. <u>Representations and Warranties</u>. Each Party hereby represents and warrants to the other Parties as follows: Each Party represents and warrants that (i) the execution of this Agreement by such Party has been duly approved and authorized by all necessary company, partnership or corporate action, as applicable; (ii) the person executing the Agreement on behalf of such Party is duly authorized to execute this Agreement; (iii) upon the execution and delivery of this Agreement by such person, this Agreement shall be binding upon such Party; (iv) no Party has assigned their rights under this Agreement; and (v) no other approvals or consents are necessary in connection with the execution and delivery of this Agreement by such Party. This Agreement has been duly executed and delivered by each Party and constitutes a legal, valid and binding obligation of the Parties and this Agreement constitutes a legal, valid and binding obligation of the Parties, is enforceable against each Party in accordance with its terms.

9. <u>Time of the Essence</u>. Time is of the essence of this Agreement, and in all the terms, provisions, covenants and conditions hereof.

10. <u>Miscellaneous</u>.

 (a) <u>No Admissions</u>. The Parties intend that neither anything contained in this Agreement, nor any Party's performance of its obligations to the same, shall be deemed to be an admission or acknowledgment of liability, the existence of damages, or the amount of any damages relating to any part of the subject matter of this Agreement.

 (b) <u>Binding on All Parties</u>. The terms and provisions of the Agreement shall be binding on the Parties and their respective successors and permitted assigns, including any trustee(s) that may be appointed in the Bankruptcy Cases. No assignment of this Agreement or of any rights or obligations hereunder may be made by a Party without the prior written consent of each other Party and any attempted assignment without such required consents shall be void.

 (c) <u>Applicable Law and Venue</u>. This Agreement shall, in all respects, be governed by the laws of the State of Nevada applicable to agreements executed and any action or proceeding filed, instituted or initiated to enforce, construe, or challenge this Agreement or any of the terms contained herein may only be filed or initiated in the United States Bankruptcy Court, District of Nevada. The Parties hereby submit themselves exclusively to the jurisdiction of the United States Bankruptcy Court, District of Nevada and waive any defense to venue that could otherwise be asserted therein.

(c) <u>Severability</u>.  If any provision of this Agreement, or any portion of any provision, shall be deemed invalid or unenforceable by a court of competent jurisdiction for any reason whatsoever, such invalidity or unenforceability shall not affect the enforceability and validity of the remaining provisions hereof.

(d) <u>Further Assurances</u>.  Each of the Parties shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary in connection with the performance of their obligations hereunder to carry out the intent of the Parties.

(e) <u>Modifications or Amendments</u>.  No amendment, change or modification of this Agreement shall be valid, unless in writing and signed by all of the Parties.

(f) <u>Successors and Assigns</u>.  All of the terms and provisions contained herein shall inure to the benefit of and shall be binding upon the Parties and their respective heirs, legal representatives, successors and assigns.

(g) <u>Entire Agreement</u>.  This Agreement constitutes the entire understanding and agreement of the Parties with respect to its subject matter and any and all prior agreements, understanding or representations with respect to its subject matter are hereby terminated and canceled in their entirety and are of no further force or effect.

(h) <u>Non-Waiver</u>.  No waiver by any Party hereto of a breach of any provision of this Agreement shall constitute a waiver of any preceding or succeeding breach of the same or any other provision hereof.

(i) <u>Counterparts</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  The Parties agree that digital signatures denoted by an /s/ that are transmitted by and under electronic mail confirming the election to execute this Agreement digitally shall be treated for all purposes of this Agreement as an original signature and shall have the same force and effect as an original signature.

(j) <u>Number and Gender</u>.  In this Agreement, the masculine, feminine or neutral gender, and the singular or plural number, shall each be deemed to include the others whenever the context so requires.

(k) <u>Captions and Headings</u>.  The captions and headings appearing at the commencement of the sections hereof are descriptive only and for convenience in reference.

(l) <u>Expenses</u>.  Except as otherwise set forth above, the Parties shall pay all of their own costs and expenses in connection with this Agreement, including, but not limited to, legal fees, accounting fees, and any other costs and expenses incurred or to be incurred by it or them in negotiating and preparing this Agreement.

(m)     Authority to Enter into Agreement.  In further consideration of the foregoing, the Parties each warrant and represent that they have the sole and complete right and authority to settle, compromise, release and discharge all claims, causes of action, suits or demands covered by this Agreement, and that they have made no assignment of any claim, cause of action, suit or demand covered by this Agreement.

(n)     Attorneys' Fees and Costs.  The Parties agree that each party shall bear its own attorneys' fees and costs in connection with any legal advice or services provided related to the CKI Litigation and this Agreement.

(o)     Reasonable Steps to Effectuate Terms of Agreement.  Each Party agrees to take all reasonable steps necessary to effectuate the terms of this Agreement.

(p)     Interpretation.  This Agreement is the result of negotiations among the Parties who have each negotiated and reviewed its terms.  No Party shall be deemed to be the drafter for purposes of interpreting any ambiguity or uncertainty in this Agreement against that Party.

IN WITNESS WHEREOF, the Parties hereto have executed this Settlement Agreement on the date set forth above.

**FOX ROTHSCHILD LLP**

By:   /s/
BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email:
baxelrod@foxrothschild.com
nkoffroth@foxrothschild.com

*Counsel for Debtor*

**McDONALD CARANO LLP**

By:   /s/ Ryan J. Works
Ryan J. Works, Esq. (NSBN 9224)
Amanda M. Perach, Esq. (NSBN 12399)
2300 West Sahara Avenue, Suite 1200
Las Vegas, Nevada 89102
rworks@mcdonaldcarano.com
aperach@mcdonaldcarano.com

**TAFT STETTINIUS & HOLLISTER LLP**

By:   /s/
PAUL R. HAGE, ESQ.
LEE KELLERT, ESQ.
27777 Franklin Rd, Suite 2500
Southfield, Michigan 48034
Telephone: (248) 351-3000
Email:
phage@taftlaw.com
lkellert@taftlaw.com

*Counsel for Cole Kepro International, LLC*

John R. Ashmead, Esq.
Robert J. Gayda, Esq.
Catherine V. LoTempio, Esq.
Andrew J. Matott, Esq.
*Admitted pro hac vice*
**SEWARD & KISSEL LLP**
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 574-1200
ashmead@sewkis.com
gayda@sewkis.com
lotempio@sewkis.com
matott@sewkis.com

*Counsel for Official Committee of Unsecured Creditors*

# EXHIBIT A

## **PROMISSORY NOTE**

$850,000.00                                                                                                    Date: _____ ___, 2023

      FOR VALUE RECEIVED, the undersigned, Cole Kepro International LLC, a Nevada limited liability company ("Maker"), promises to pay in lawful money of the United States of America to the order of Cash Cloud dba Coin Cloud, Inc., a Nevada Corporation ("Holder"), at such place as Holder may designate in writing, the principal sum of Eight Hundred Fifty Thousand Dollars ($850,000.00), or such lesser amount as may be outstanding, together with interest thereon accruing on a daily basis beginning on the date of this Promissory Note at a rate per annum equal to the short term Applicable Federal Rate, compounded monthly (the "AFR"), in effect as of the date of this Promissory Note (the "Effective Rate"), as determined under Internal Revenue Code Section 1274(d) and published monthly by the Internal Revenue Service. The Effective Rate shall be adjusted, upwards or downwards, on the first day of each month following the date of this Promissory Note (the "Adjustment Dates") so as to be identical to the AFR in effect on each such Adjustment Date.

      This Promissory Note is being issued pursuant to a *Settlement Agreement and Mutual Release* dated as of September 22, 2023 and entered into by and among Cash Cloud dba Coin Cloud, Inc., the Official Committee of Unsecured Creditors appointed in the chapter 11 bankruptcy case of Cash Cloud dba Coin Cloud, Inc., and Cole Kepro International, LLC pursuant to Bankruptcy Rule 9019.

      The outstanding principal amount owing under this Promissory Note and all accrued interest shall be due and payable on the Maturity Date. "Maturity Date" means the date that is sixty (60) days after the date hereof.

      All payments on this Promissory Note will first be applied against accrued interest and the balance against principal. The outstanding principal balance of this Promissory Note may be prepaid, in full or in part, at any time, without charge or penalty. The failure to pay in full any principal or interest when due on the Maturity Date shall constitute an event of default under this Promissory Note (an "Event of Default"). Upon the occurrence of an Event of Default at the election of Holder, or any Insolvency Event, without notice, demand or presentment, the entire principal balance of this Promissory Note, together with all accrued and unpaid interest, shall become immediately due and payable, and the Holder may pursue any other legal or equitable remedies available to the Holder as a result thereof, including the enforcement of the Collateral. All costs and expenses of collection, including, without limitation, attorneys' and professional fees and expenses, shall be added to and become part of the total indebtedness evidenced by this Note. "Insolvency Event" means either of the following: (a) a court shall enter a decree or order for relief in respect of the Maker in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Maker for any part of the property of the Maker or ordering the winding up or liquidation of the affairs of the Make; and (b) the Maker shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or consent to the entry of an order for relief in an involuntary case under any such law, or consent to the appointment or taking possession by a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Maker or for any part of the property of the Maker, or the

149759455.1

Maker shall make any general assignment for the benefit of creditors.

Any extension of time for payment of any amount payable under this Promissory Note, or any alteration, amendment or waiver of any provision of this Promissory Note shall not release, modify or effect the liability of Maker under this Promissory Note, unless expressly set forth in such amendment or modification.  Maker, and any and all guarantors and endorsers hereof hereby agree to waive presentment, protest, and demand and notice of protest, demand, dishonor and non-payment of this Promissory Note.

This obligation shall bind Maker and its successors and assigns, and the benefits hereof shall inure to Maker, Holder and their respective successors and assigns.

To secure its obligations under this Promissory Note, Maker hereby grants Holder a security interest in and lien on all of its right, title and interest in and to the proceeds payable to Maker under the Insurance Policy (the "Collateral"), subject to the terms of that certain Intercreditor Agreement by and among Maker, Holder and Fifth Third Bank, National Association (the "Intercreditor Agreement"). Holder's right in and to such proceeds is limited to the amount of principal, interest and fees and expenses owing under this Note. For purposes of this Note, "Insurance Policy" means that certain Corporate Advantage policy (Policy #5129818) issued by Euler Hermes North American Insurance Company for the benefit of Maker as the Insured thereunder.

This Promissory Note constitutes a security agreement for purposes of the Uniform Commercial Code in all relevant jurisdictions.  Upon an Event of Default or an Insolvency Event, the Holder shall have all the rights and remedies of a secured party provided in the Uniform Commercial Code in force in the State of Nevada and in all other jurisdictions where the Collateral is located.  The Collateral is granted as security only and shall not subject the Holder to, or in any way affect or modify, any obligation or liability of the Maker with respect to any of the Collateral or any transaction in connection therewith.  The Maker agrees that it will, in such manner and form as the Holder may require, (x) execute, deliver, file and record any financing statement, specific assignment or other paper, (y) deliver to the Holder loss payee endorsements on the Insurance Policy, and (z) take any other action that may be necessary or desirable, or that the Holder may request, in order to create, preserve, perfect or validate any security interest or to enable the Holder to exercise and enforce its rights hereunder with respect to any of the Collateral.  To the extent permitted by applicable law, the Maker hereby authorizes the Holder to file, in the name of the Maker or otherwise, Uniform Commercial Code financing statements which the Holder in its sole discretion may deem necessary or appropriate to further perfect its security interest in the Collateral, and in such filing places in which Holder in its sole discretion may deem necessary or appropriate to perfect its security interest in the Collateral. The Maker hereby irrevocably appoints the Holder his true and lawful attorney, with full power of substitution, in the name of the Maker, the Holder or otherwise, for the sole use and benefit of the Holder, but at the expense of the Maker, to the extent permitted by law to exercise, at any time and from time to time after an Event of Default has occurred and while it is continuing, all or any of the following powers with respect to all or any of the Collateral. Subject to the Intercreditor Agreement, Holder may protect and enforce the security interest given under this Promissory Note by suits or proceedings in equity, at law or otherwise, pursuant to the Uniform Commercial Code in effect in the State of Nevada (the "Code") and any other applicable law, whether for: (i) the foreclosure of the Collateral; (ii) the appointment

of a receiver of the Collateral and the obligations of the Maker under this Note or any other ancillary agreement; or (iii) the enforcement of any other proper, legal or equitable remedy available under applicable law.

This Promissory Note shall be governed by, and construed in accordance with, the laws of the State of Nevada.  This Note may not be amended except in a writing specifically intended for the purpose and executed by the party against whom enforcement of the amendment is sought.  MAKER AND HOLDER HEREBY WAIVE TRIAL BY JURY AND CONSENT TO THE GRANTING OF SUCH LEGAL OR EQUITABLE RELIEF AS IS DEEMED APPROPRIATE BY THE COURT.

[Signature Page Follows]

149759455.1

IN WITNESS WHEREOF, the undersigned has executed this instrument as of the day and year first above written.

        Cole Kepro International, LLC, a Nevada limited liability company

By: _____
Print Name: _____
Its: _____

[Signature Page to Promissory Note]

149759455.1

**EXHIBIT B**

**INTERCREDITOR AGREEMENT**

THIS INTERCREDITOR AGREEMENT (this "Agreement") is made and entered into as of [    ], 2023 by and between **Fifth Third Bank**, **National Association** as successor by merger to MB FINANCIAL BANK, N.A., having a mailing address of _____ ("Fifth Third") and **Cash Cloud dba Coin Cloud, Inc.**, having a mailing address of 10190 Covington Cross Drive, Las Vegas, NV 89144 ("Coin Cloud").

WHEREAS, Fifth Third has extended credit to Cole Kepro International, LLC (the "Borrower") pursuant to, among other things, that certain Credit and Security Agreement dated January 9, 2018, by and among Borrower, CKI Locker, LLC and Fifth Third and as amended from time-to-time (as amended from time-to-time, the "Fifth Third Loan Agreement", and together with all other loan documents executed in connection with the Fifth Third Loan Agreement, the "Fifth Third Loan Documents"); and

WHEREAS, the Borrower is indebted to Coin Cloud pursuant to the terms of that certain Promissory Note made by Borrower in favor of Coin Cloud dated _____, 2023 in the original principal amount of $850,000 (the "Coin Cloud Note"); and

WHEREAS, the parties hereto desire to identify the priority of their respective liens in Borrower's assets in accordance with the terms of this Agreement.

NOW, THEREFORE, Fifth Third and Coin Cloud hereby agree as follows:

1.      For purposes of this Agreement, (a) "Fifth Third Collateral" shall mean all assets of Borrower, whether now owned or hereafter acquired, and (b) "Coin Cloud Collateral" shall mean a portion of the proceeds of that certain Corporate Advantage policy (Policy #5129818) issued by Euler Hermes North American Insurance Company for the benefit of Borrower as the insured thereunder.

2.      Fifth Third shall have: (a) a first priority lien and security interest in the Fifth Third Collateral other than the Coin Cloud Collateral and (b) a second priority lien and security interest in the Coin Cloud Collateral behind only Coin Cloud's first lien in the amount of Eight Hundred Fifty Thousand and No/100 Dollars ($850,000.00) (hereinafter, the "Coin Cloud Cap"). Fifth Third hereby agrees that any security interest, lien, charge or assignment (each, a "Claim") of Fifth Third with respect to the Coin Cloud Collateral shall be subject, junior and subordinate in all respects to any and all Claims that may now or hereafter be held by Coin Cloud with respect to the Coin Cloud Collateral up to the Coin Cloud Cap.

3.      Coin Cloud shall have a first priority lien and security interest in the Coin Cloud Collateral up to the Coin Cloud Cap. Coin Cloud agrees not to take a lien on any Fifth Third Collateral other than the Coin Cloud Collateral.

4.      In the event of a default by Borrower under the Coin Cloud Note, Coin Cloud agrees that it will not commence any repossession, foreclosure or similar action or proceeding with respect to any Fifth Third Collateral, other than with respect to the Coin Cloud Collateral up to the Coin Cloud Cap, so long as Fifth Third has any Claim with respect to such Fifth Third Collateral. In the event that Coin Cloud receives any payment or other distribution of any kind or character from the liquidation of the Coin Cloud Collateral in excess of the Coin Cloud Cap, such payment or other distribution shall be received in trust for Fifth Third and promptly turned over by Coin Cloud to Fifth Third to be applied by Fifth Third to satisfy the obligations of Borrower to Fifth Third on the Fifth Third Loan Documents.

5.      Each party waives all rights, if any, to require a marshalling of the assets of Borrower or any other obligor by the other party hereto or to require that the other party hereto first resort to some or any portion of the collateral before foreclosing upon, selling or otherwise relying on any other portion thereof.

6. This Agreement and the terms, provisions and conditions hereof shall be binding on and inure to the benefit of, and solely for the benefit of, Fifth Third and Coin Cloud and their respective successors and assigns. Nothing in this Agreement is intended to or shall impair the obligations of Borrower or affect the relative rights of the lenders of Borrower, other than the relative rights between Fifth Third and Coin Cloud, as provided herein. Fifth Third and Coin Cloud each reserve all of their respective rights, entitlements, claims, liens, security interests and other rights and interests as against Borrower and any third party, except to the extent specifically provided herein. Nothing in this Agreement shall impair or adversely affect any right, privilege, power or remedy of either party to (a) waive or release any of its collateral, (b) waive or ignore any defaults by Borrower, and/or (c) restructure, renew, modify or supplement the obligations of Borrower with such party. Neither party shall have any obligation to disclose to the other any information or material about Borrower. Neither Borrower nor any third party shall be deemed to be third party beneficiaries of this Agreement or to have any rights hereunder whatsoever.

7. This Agreement may not be amended, supplemented or otherwise modified except by written agreement executed by the parties hereto.

8. This Agreement shall be construed in accordance with the laws of the State of Nevada, without regard to principles of conflict of laws of any jurisdiction to the contrary.

9. Any notice permitted or required by the provisions of this Agreement shall be delivered to the address for each party set forth above. Any notice required to be given shall be effective when actually delivered, when deposited with a nationally recognized overnight courier, or, if mailed, three (3) days after being deposited in United States mail as first class, certified or registered mail postage prepaid.

10. If any provision (or part thereof) of this Agreement is held illegal, invalid or unenforceable by a final decision of a court of competent jurisdiction, statute, rule, regulation, law or ordinance, the parties hereto shall negotiate in good faith to replace such provision with a legal, suitable and equitable substitute therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such illegal, invalid or unenforceable provision, and the remaining provisions of this Agreement shall remain in full force and effect.

11. This Agreement may be executed in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signed copy of this Agreement delivered by facsimile, e-mail or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[Remainder of page intentionally left blank]

149759500.1

IN WITNESS WHEREOF the parties hereto, intending to be legally bound hereby, have executed and delivered this Agreement as of the date first written above.

**"Fifth Third"**

**FIFTH THIRD BANK**, National Association

By: _____

Name: _____

Title: _____

149759500.1

**"Coin Cloud"**

**CASH CLOUD DBA COIN CLOUD, INC.**

By: _____

Name: _____

Title: _____

**Acknowledged and Agreed:**

**"Borrower"**

**Cole Kepro International, LLC**
a Nevada limited liability company

By: _____
    Frederick A. Cook, Jr., as Chief Executive Officer