UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEVADA (LAS VEGAS)

|  |  |  |
|---|---|---|
| | . | |
| IN RE: | . | Case No. 23-10423-mkn |
| | . | Chapter 11 |
| CASH CLOUD, INC., | . | |
| | . | |
| | . | 300 Las Vegas Blvd. South |
| Debtor. | . | Las Vegas, NV 89101 |
| | . | |
| | . | Thursday November 30, 2023 |
| . . . . . . . . . . . . . . . . | . | 10:32 a.m. |

TRANSCRIPT OF JOINT MOTION TO APPROVE COMPROMISE UNDER RULE
9019 JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT WITH GENESIS
GLOBAL HOLDCO, LLC PURSUANT TO FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 WITH PROPOSED ORDER FILED BY BRETT A. AXELROD ON
BEHALF OF CASH CLOUD, INC. 1375];
MOTION TO FILE CLAIM AFTER CLAIMS BAR DATE FILED BY
ROB L. PHILLIPS ON BEHALF OF POWERHOUSE TSSP, LLC [1415];
APPLICATION FOR ADMINISTRATIVE CLAIM WITH CERTIFICATE
OF SERVICE FILED BY KURT R. BONDS ON BEHALF OF
POPULUS FINANCIAL GROUP, INC. [900]
BEFORE THE HONORABLE MIKE K. NAKAGAWA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES CONTINUED.

Audio Operator:          Cathy Shim, Remote ECR

Transcription Company:   Access Transcripts, LLC
                         10110 Youngwood Lane
                         Fishers, IN 46048
                         (855) 873-2223
                         www.accesstranscripts.com

     Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

```
ZOOM APPEARANCES:

For Cash Cloud, Inc.:      Fox Rothschild LLP
                           By:  JEANETTE E. MCPHERSON, ESQ.
                           1980 Festival Plaza Drive, Suite 700
                           Las Vegas, NV 89135
                           (702) 262-6899

For the Official           Seward & Kissel
Committee of Unsecured     By:  CATHERINE V. LOTEMPIO, ESQ.
Creditors:                 One Battery Park Plaza
                           New York, NY 10004
                           (212) 574-1632


For Populus Financial      Hall and Evans, LLC
Group, Inc.:               By:  TODD TUGGLE, ESQ.
                           1160 North Town Center Drive
                           Suite 330
                           Las Vegas, NV 89144
                           (702) 998-1022


For Powerhouse TSSP,       FisherBroyles, LLC
LLC:                       By:  ROB PHILLIPS, ESQ.
                           3775 Howard Hughes Parkway
                           Suite 200
                           Las Vegas, NV 89169
                           (702) 518-1239


Also Present:              DEMARCUS SHEPHARD (phonetic)
```

1

```
 1         (Proceedings commence at 10:32 a.m.)

 2              THE COURT:  We're here on various matters in the Cash

 3    Cloud, Inc. proceeding.  May I have appearances for the record?

 4              MS. MCPHERSON:  Good morning, Your Honor.  Jeanette

 5    McPherson of Fox Rothschild on behalf of the debtor.

 6              THE COURT:  Okay.

 7              MR. TUGGLE:  Good morning, Your Honor.  Todd Tuggle

 8    on behalf of Hall & Evans for Populus Financial Group.

 9              THE COURT:  Okay.

10              MR. SHEPHERD:  Demarcus Shepherd (phonetic), a

11    claimant.

12              THE COURT:  Okay.

13              MS. LOTEMPIO:  Good morning, Your Honor.  Catherine

14    LoTempio of Seward & Kissell on behalf of the Official

15    Committee of Unsecured Creditors.

16              THE COURT:  Okay.  Thank you.

17              MR. PHILLIPS:  Good morning, Your Honor.  Rob

18    Phillips, on behalf of Powerhouse TSSP, LLC.

19              THE COURT:  Okay.  Other appearances?

20              Okay.  All right.  There are three matters on the

21    calendar this morning.

22              Let's see, Ms. McPherson, have any of those been

23    resolved, or are we moving forward with all of them?

24              MS. MCPHERSON:  Two of the three have been resolved,

25    Your Honor.  With regard to the Populus motion --
```

```
 1                THE COURT:  Okay.

 2                MS. MCPHERSON:  -- that has been resolved, where the

 3  parties have agreed that Populus will have an allowed

 4  administrative claim --

 5                THE COURT:  Okay.

 6                MS. MCPHERSON:  -- in the amount of $49,813.40.

 7                THE COURT:  Okay.  And then, what's the other one

 8  that's been resolved?

 9                MS. MCPHERSON:  That -- the second is the joint

10  motion regarding Genesis, the 9019 motion.

11                THE COURT:  Okay.

12                MS. MCPHERSON:  There has been no --

13                THE COURT:  And that -- isn't that the one that was

14  unopposed?

15                MS. MCPHERSON:  It -- yes, Your Honor.  I wanted just

16  to say, it's not resolved.  It's unopposed.

17                THE COURT:  I see.  Okay.

18                MS. MCPHERSON:  We -- yeah.

19                THE COURT:  All right.  Well, I think I have a flavor

20  then.  All right.  So let's just deal with the matters in

21  order.

22                Item 1 is the joint motion to approve the compromise

23  with Genesis Global Holdco.  I've had a chance to read through

24  the proposed compromise.  It appears that it is interrelated

25  with the dispute concerning Enigma to the degree that there
```

1    would be a challenge to the various lien claims.  And as I

2    understand the settlement agreement, there would be a release

3    of claims by -- liens by Genesis on any of the Enigma

4    collateral in exchange for the greater of, I guess, $33,000 and

5    33 percent of the proceeds from the resolution of the claim.

6    Is that correct?

7            MS. MCPHERSON:  That's correct, Your Honor.

8            THE COURT:  Okay.  And this particular motion is

9    supported by the declaration of Mr. James as Docket

10    Number 14 -- well, excuse me -- Mr. Ayala, as Docket

11    Number 1376.  I think the motion was linked to a couple of

12    other declarations, but it appears to have been done by

13    mistake.  I assume those were with respect to the Cole Kepro

14    settlement.  Is that right?

15            MS. MCPHERSON:  That's correct, Your Honor.  I just

16    saw the declaration of Mr. Ayala.

17            THE COURT:  Okay.  All right.  Did you receive any

18    response whatsoever to the motion?

19            MS. MCPHERSON:  I'm not aware of any response,

20    Your Honor.

21            THE COURT:  Okay.  All right.

22            And then, Ms. LoTempio, with respect to the

23    creditors' committee, I assume that this, also, is your

24    understanding, since you're one of the joint movants.  Is that

25    correct?

1          MS. LOTEMPIO:  Yes.  Catherine LoTempio on behalf of

2     the Committee.  Yes, Your Honor, that's correct.  We have not

3     heard of any opposition.

4          THE COURT:  Okay.  All right.  The Court has

5     considered the proposed settlement, within the prism of the

6     factors set forth in the A & C Properties tests, including the

7     probability of success in litigation, difficulties of

8     collection, complexity of litigation, expense, delay, and

9     inconvenience, as well as the paramount interest of creditors.

10          It appears that, under the circumstances, that all of

11     those factors have been met.  There have been no opposition

12     that has been filed.  The motion is adequately supported by the

13     declaration of Mr. Ayala.  That being the case, the Court will

14     grant the motion as unopposed.  I'll direct Ms. McPherson to

15     prepare the appropriate order.

16          Ms. LoTempio, do you want to sign off?

17          MS. LOTEMPIO:  I think we're all set, had -- having

18     seen the order.

19          THE COURT:  Okay.  All right.  Go ahead --

20          MS. LOTEMPIO:  Thank you.

21          THE COURT:  All right.  Go ahead and submit the order

22     forthwith.  Then that gets all --

23          MS. MCPHERSON:  Thank you, Your Honor.

24          THE COURT:  All right.  You're welcome.

25          I'll skip over Item 2 for the moment.

1              Item 3 was the -- or is the application for the

2    administrative claim of Populus Financial Group.

3              Ms. McPherson, I take it that the settlement reached

4    is for the amount of $49,813 and 14 -- 40 cents.  Is that

5    correct?

6              That's correct, Your Honor.

7              THE COURT:  All right.  And that will be the amount

8    of the administrative claim that will be allowed in this

9    matter.  Is that right?

10             MS. MCPHERSON:  That's correct, Your Honor.

11             THE COURT:  Okay.  Did you receive any other response

12   to this application?  I know this was filed by the Populus

13   Financial Group.  I take it that this resolution is supported

14   by the creditors' committee as well.

15             Is that correct, Ms. LoTempio?

16             MS. LOTEMPIO:  Your Honor, I don't think we were

17   privy to this resolution, but we don't have any objection.

18             THE COURT:  I see.  Okay.

19             All right.  Well, is there anyone else who wishes to

20   be heard in connection with this application?

21             All right.

22             MR. TUGGLE:  This is Todd Tuggle on behalf of

23   Populus, and we've agreed with respect to the amount of the

24   allowed claim.

25             THE COURT:  Okay.  All right.

1            I will -- I guess, Ms. McPherson, this would be

2    granting the application in that amount, but denying the

3    application with respect to any other amounts.  Is that fair to

4    say?

5            MS. MCPHERSON:  That is fair to say, Your Honor.

6            THE COURT:  Okay.  Then -- all right.  So counsel --

7            MS. MCPHERSON:  I --

8            THE COURT:  Well, I'm just trying to figure out who

9    has to prepare the order so --

10           MS. MCPHERSON:  Your Honor, Jeanette McPherson --

11           MR. TUGGLE:  I believe we had a prepared one.

12           MS. MCPHERSON:  Yes, Your Honor.  We have a prepared

13   order.  And I would have to go back for 100 percent

14   confirmation, but I do believe the Committee's financial

15   advisor was apprised of that draft, so -- to the extent that's

16   an issue.  So we -- I think at this point, we are prepared to

17   submit the order.

18           THE COURT:  Okay.  All right.  Well, I'll approve the

19   application on the terms indicated.  I'll direct one of you to

20   submit the appropriate order, which will be entered forthwith.

21   All right?

22           Then that gets us to the remaining matter --

23           MS. MCPHERSON:  Thank you.

24           THE COURT:   -- on the 10:30 calendar, which is

25   Item 2.  It's a -- Mr. Phillips, I believe it's the claim of

1    TSSP.  Is that correct?

2              MR. PHILLIPS:  Yes, Your Honor.

3              THE COURT:  Okay.  All right.  As I understand it,

4    there is a period of time which -- for which there was, I

5    guess, stub rent from February 7th through February 28th.  Then

6    there is a separate portion of the claim that represents, I

7    guess, holdover for the period of March 1 through March 29.

8    And the motion is to allow administrative expense priority with

9    respect to both parts.  Is that correct?

10             MR. PHILLIPS:  Yes, Your Honor.

11             THE COURT:  Okay.  And then, Ms. McPherson, the

12   objection is with respect to the timing, by which the -- I

13   guess, the request for the administrative expense allowance was

14   made in light of the administrative claim bar date that was set

15   by the Court pursuant to a motion that was brought by the

16   debtor.  Is that right?

17             MS. MCPHERSON:  That's correct, Your Honor.

18             THE COURT:  Okay.  I've had a chance to read the

19   motion itself.  I've had a chance to reach -- to read the

20   opposition that was filed by the debtor.  I've read the

21   supporting declarations in support of the motion, one be a --

22   being a declaration by Mr. Walker as Docket Number 1417, a

23   separate declaration of Mr. Hagay as Docket Number 1418.  I

24   read the opposition that was filed, as well as the supporting

25   declaration of Ms. Axelrod, Ms. Baldi, Ms. Tsai.  And I think,

1   Ms. McPherson, you filed a declaration as well.  So do I have

2   the complete set of materials that is being considered?

3           MR. PHILLIPS:  I believe so, Your Honor.

4           THE COURT:  Okay.  All right.  Mr. Phillips, was

5   there anything you wanted to emphasize?

6           MR. PHILLIPS:  I suppose there's a couple things --

7           THE COURT:  Okay.

8           MR. PHILLIPS:  -- without, you know, reiterating the

9   entire motion.  First, I think the opposition that was filed by

10  debtors' counsel spends a lot of time discussing the merits of

11  the underlying claim -- the administrative claim, and I don't

12  think that's really an issue for today.  The issue for today is

13  whether or not the Court is going to allow us to actually file

14  the claim.  And if that -- if the Court is so inclined to do

15  so, the debtors will certainly be able to object to the claim

16  at that point in time, so I don't think that's the focus of

17  today.

18          The second thing I'd like to just highlight is that

19  there were discussions between Mr. Walker and debtors' counsel

20  as early as June of 2023.  And despite these discussions, there

21  was never any, I guess you would call it, a courtesy email from

22  debtors' counsel to Mr. Walker indicating that they had filed a

23  motion or indicating that the Court had, you know, set a bar

24  date.  It would have been a pretty routine thing to do for

25  attorneys as a professional courtesy to send an email just to

1  notify Mr. Walker, and we could have avoided a lot of this.

2         Interestingly, three weeks after the bar date had

3  passed, debtors' counsel did email Mr. Walker indicating that

4  they had not received an administrative claim.  So while

5  they're not obligated to do that, I think it's a little bit --

6  it lacks professional courtesy not to do it.  And then it --

7  three weeks after the bar date, to send him an email saying,

8  hey, we didn't get your claim, meh, it seems a little

9  disingenuous.  But that's all set forth in the motion.

10         One thing that -- we submitted two affidavits, as the

11  Court acknowledged.  One thing that we didn't notice when we

12  had filed the motion and that we did discover after the fact,

13  Your Honor, is that -- so just to -- I'm sorry.  Let me back up

14  a little bit.  The affidavit from Mr. Walker indicates that he

15  never received the mailed copy.  And then there was the

16  affidavit of Mr. Hagay, which indicated that he received the

17  notice of the order late.

18         And what we noticed was that in the lease, the

19  address to notify Mr. Hagay is 9275 West Russell Road.  And the

20  certificate of service indicates that the notice was sent to

21  Mr. Hagay at 9275 Russell Road, so there wasn't a "West"

22  designation.  And as the Court likely knows, there is a West

23  and East Russell road.  So it's our belief that, by file -- you

24  know, sending it to the -- to really the -- technically the

25  wrong address, that might have led to the delay in Mr. Hagay

1  getting the order notice not until August 7th, which was, of

2  course, well past the bar date.  That's not in the motion and

3  we -- like I said, it was discovered after the fact.

4          Based on that background, we're asking the Court for

5  leave to file the claim late, based on feasible neglect.  We've

6  went through those various factors, and we believe that our

7  client, you know, succeeds in each one of those factors and

8  carries the day.  You know, depending on the Court's appetite,

9  I'm happy to go through all four of those.  If the Court's

10  satisfied with the motion, I'm also satisfied to allow that

11  to -- to allow them to do that.  So if the Court wants me to,

12  I'm more than happy to go through them.  If the Court's

13  satisfied with what we filed, I'm happy to accept that as well.

14          THE COURT:  Well, Mr. Phillips, I take it that you

15  are relying on 60(b)(1), on excusable neglect.  You're not

16  asking for relief under 60(b)(6), right, which is the "any

17  other grounds" basis for relief?

18          MR. PHILLIPS:  Well, we're under the Bankruptcy

19  Rule 9006(b)(1), Your Honor.

20          THE COURT:  Okay.

21          MR. PHILLIPS:  Yeah.

22          THE COURT:  All right.  Anything else?

23          MR. PHILLIPS:  No, I think that's it, Your Honor.

24          THE COURT:  Okay.  Ms. McPherson?

25          MS. MCPHERSON:  Your Honor, thank you.  I guess, to

1    address the first point raised today, which is, essentially, an

2    accusation that I didn't email counsel and provide them with

3    administrative claim notice, what's left out is the flavor of

4    what happened here.

5            This lease was rejected as of February 28th.

6    Mr. Walker reached out to debtors' counsel, including myself

7    and to a few others, to say, oh, you know, this is our claim,

8    we have a claim for February, and we have a claim for March for

9    holdover rent.  There was discussion back and forth that's set

10   forth in the opposition about that, and that was June 14th.

11   Nothing, essentially, happened until August 14, when additional

12   information was provided or attempted to be provided to address

13   some of the concerns raised in June.

14           So two months passed, and then at -- I did email and

15   I said, I'm not finding your administrative claim, did you file

16   one?  And that's when movant says, well, that's the first time

17   they learned of this, despite the fact that their client says

18   they received notice on August 7th.

19           But despite the time frame in this bankruptcy case

20   and really the need to monitor a bankruptcy case, the blame is

21   being -- trying -- they're trying to shift blame to debtors'

22   counsel.  And I don't believe it's appropriate in these

23   circumstances, when your -- when movant has been so nonchalant

24   about monitoring this case, no request for special notice was

25   filed.  And to sit on this for a lease that was rejected in

1    February seems a little -- it shows a lack of cautiousness, I

2    believe, and we have that issue.

3            With regard to the noticing, we would have to go back

4    and check this issue with West Russell Road.  However, this

5    movant was mailed five separate notices of the bar date at

6    three different addresses.  It was also emailed and the

7    movant's property manager was emailed, and none of that

8    correspondence came back as undeliverable.

9            And as we know, the movant says, well, we never

10   received the bar date or we received it late, but we have

11   evidence that it was mailed, and we don't have evidence that it

12   was not delivered.  And it's not sufficient to rebut the

13   presumption to just say, well, we didn't receive the mail.

14   That would undermine the whole bar date process, which is

15   integral to the reorganization process.

16           So, Your Honor, I would just note those items we went

17   through in our opposition, our position regarding excusable

18   neglect.  And in an abundance of caution, we did talk about the

19   substance of the claim itself.

20           And we would like to note that -- I think what has

21   happened here was this movant attempted to leverage itself to

22   try to get March rent as an administrative claim, essentially

23   the whole month of March through the 29th, by arguing that the

24   debtor was a holdover tenant, despite knowing the debtor had

25   vacated and turned over the keys.  And because of those

1  attempts, I think it got caught up in losing the time that it

2  needed -- the time in this case and monitoring to catch the

3  administrative claim bar date.

4          So, Your Honor, in the circumstances of this case, we

5  would request that -- you know, that the claim is untimely and

6  that this motion not be granted.

7          THE COURT:  All right.  So --

8          MS. MCPHERSON:  Thanks, Your Honor.

9          THE COURT:  So, Ms. McPherson, let me ask you this:

10  If the motion had been filed before the administrative claim

11  bar date, would the debtor be objecting to the payment of the

12  stub rent for the month of February?

13          MS. MCPHERSON:  Well, Your Honor, that rent -- that

14  time was never determined.  You can see from the correspondence

15  that there was an acknowledgment by the movant that some of the

16  numbers were off.  And I had asked for backup documentation for

17  some of the entries.  You can see this was a lease that

18  essentially had the debtor paying pretty much everything, and

19  there were entries for an HVAC contract.  So I had asked for

20  backup information on that, and there was back and forth on

21  that.  I don't -- I think we were still waiting on that.

22          But we're -- but part of that was the movant's

23  acknowledgement that the numbers seemed to be off, I think is

24  the actual word, they "were off".  So there's that issue for

25  February.

1          THE COURT:  Well, Ms. McPherson, let me -- I think I

2    asked the question inappropriately.  Is there any question that

3    the moving party would be entitled to some stub rent, but the

4    amount simply isn't certain at this point.  Is that right?

5          MS. MCPHERSON:  That's correct, Your Honor.

6          THE COURT:  Okay.  And then it's a separate question

7    as to whether or not it's appropriate to charge for the

8    holdover -- the alleged holdover period from March 1 through

9    March 29, given that the -- there was a -- I guess, a part of

10   the order that the -- that that -- those premises and the

11   materials in the premises are being abandoned.  Is that right?

12         MS. MCPHERSON:  That's correct, Your Honor.  Right,

13   there's -- that's exactly it.  There are two components.  The

14   debtor had vacated, and in addition, the debtor had abandoned

15   all of that property.

16         THE COURT:  Okay.  All right.

17         So then, Mr. Phillips, I take it then -- now, what

18   you're essentially asking is that the Court allow you to, I

19   guess, file a motion for an allowance of an administrative

20   expense, and then the Court simply deals with the motion,

21   addressing the issues with respect to stub rent that

22   Ms. McPherson raised, whatever the amount may be; separately

23   deal with the issue as to whether or not there would be

24   holdover rent; and at the very -- and at that time, the Court

25   can simply decide whether or not to allow either one of the

1  claims as an administrative claim in this Chapter 11

2  proceeding.  Is that right?

3          MR. PHILLIPS:  That is right, Your Honor.

4          THE COURT:  Okay.  So I guess you could have simply

5  filed a motion for an allowance of the claim, and then the

6  deadlines could have been raised as a defense.  Is that right?

7          MR. PHILLIPS:  I suppose.  Yeah, I suppose that would

8  have been the defense.  I mean, it would have been untimely.

9          THE COURT:  Okay.  No, no, I -- that's what I'm

10 saying is that there would have been another way --

11         MR. PHILLIPS:  Yeah.

12         THE COURT:  -- of teeing this up.  And you're not --

13 you want -- you simply want me to allow you to tee up a motion,

14 and at that time, then the debtor can object on the grounds

15 that it violated or it wasn't timely under the administrative

16 deadline; and then you could raise the issues as to the amount

17 of the stub rent, whatever that may be; and then to whether it

18 was appropriate to charge for the holdover rent.  Isn't that

19 right?

20         MR. PHILLIPS:  Well, yeah, I guess the -- our hope

21 was that the Court could just grant us leave to file the claim,

22 and then we could argue about the merits of the underlying

23 values and validity of the two components, not to file a

24 motion -- another motion.  You know, our motion in this case

25 was basically for the leave -- for the Court to give us leave

```
 1   to file -- basically, to file our claim after the bar date, in
 2   which case then, you know, it'd be filed, and then there would
 3   be arguments over the merits of the value or the underlying
 4   merits of the holdover rent, for example.
 5              THE COURT:  I see.
 6              MR. PHILLIPS:  But if the Court is saying we can file
 7   another motion, I mean, I -- that seems to be -- I don't know
 8   if we need to do that.  But if that's what the Court wants -- I
 9   mean, our goal here was to be able to allow us to file our
10   claim after the bar date, based on excusable neglect.
11              THE COURT:  I see.
12              MR. PHILLIPS:  And then we can get into the merits
13   of, you know, whether or not it -- you know, they're valid
14   claims and all that stuff.
15              THE COURT:  All right.  And then, the excusable
16   neglect that you're arguing, you're saying you're arguing under
17   9006.  Is that right?  Or are you arguing --
18              MR. PHILLIPS:  Yeah.
19              THE COURT:  -- under, essentially, 9024, bringing
20   into account Rule 60(b)?
21              MR. PHILLIPS:  You know, the motion sets -- you know,
22   forth that we're under Bankruptcy Rule 9006(b)(1), Your Honor.
23   That's what the --
24              THE COURT:  Okay.
25              MR. PHILLIPS:  That's what our motion relies on.
```

```
 1              THE COURT:  Okay.  All right.  Well, at this point,
 2    what I'm going to do is I'm going to simply allow you to file a
 3    separate, standalone motion, all right, for allowance of an
 4    administrative claim without prejudice to the debtor disputing
 5    the allowance on the basis that it's untimely under the claims
 6    bar date, and also disputing the merits of the underlying
 7    claims themselves.  So I will grant an order allowing you to do
 8    that, without determining whether or not the administrative
 9    claims are timely at all.  So that will be the basis of the
10    ruling.  You will have to file a separate motion, and then both
11    the timeliness issue and the merits of the underlying claims
12    themselves will be resolved at that time.
13              It appears that there's some factual dispute as to
14    who knew what and who knew what when, and then the Court will
15    have to determine whether or not there is, in fact, excusable
16    neglect under these circumstances.  The reason why I was
17    referencing 60(b) is that 60(b)(1) is one basis for relief, and
18    if you seek relief under (b)(1), you can't seek relief generally
19    under 60(b)(6), which is any other grounds for which relief
20    might be granted.  So, Mr. Phillips, if you're relying on 9006,
21    that's fine.  That's entirely up to you.
22              But at this point, I'll simply grant an order
23    allowing you to file a motion for allowance in an
24    administrative expense claim, subject to all defenses that may
25    be raised by the debtor.  I'll direct you to prepare that
```

1   order.

2          Ms. McPherson, do you want to sign off?

3          MS. MCPHERSON:  Yes, please.  Thank you.

4          THE COURT:  Okay.  All right.  Mr. Phillips, go ahead

5   and prepare and circulate that order and submit it forthwith.

6          MR. PHILLIPS:  Thank you, Your Honor.

7          THE COURT:  Okay.  Thank you.

8          MS. MCPHERSON:  Thank you.

9          THE COURT:  Ms. McPherson, was there anything else in

10  Cash Cloud?

11         MS. MCPHERSON:  No, not today, Your Honor.  Thank

12  you.

13         THE COURT:  Okay.  Thank you.  That concludes the

14  10:30 calendar.

15      (Proceedings concluded at 10:58 a.m.)

16                          *  *  *  *  *

17

18

19

20

21

22

23

24

25

1                    **C E R T I F I C A T I O N**

2

3            I, Alicia Jarrett, court-approved transcriber, hereby

4   certify that the foregoing is a correct transcript from the

5   official electronic sound recording of the proceedings in the

6   above-entitled matter.

7

8

9

10  _____

11  ALICIA JARRETT, AAERT NO. 428      DATE: December 29, 2023

12  ACCESS TRANSCRIPTS, LLC

13

14

15

16

17

18

19

20

21

22

23

24

25