_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
January 17, 2024

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

In re:                                              ) Case No. 23-10423-mkn
                                                    ) Chapter 11
CASH CLOUD, INC.,                                   )
dba COIN CLOUD,                                     )
                                                    ) Date: July 20, 2023
                    Debtor.                         ) Time: 10:30 a.m.
                                                    )

**ORDER ON MOTION FOR APPROVAL OF ADMINISTRATIVE CLAIM**[1]

On July 20, 2023, the court heard the Motion for Approval of Administrative Claim ("Motion") brought by Trangistics, Inc. in the above-captioned proceeding. The appearances of counsel were noted on the record. After the hearing, the matter was taken under submission.

**BACKGROUND**

On February 7, 2023, Cash Cloud, Inc. dba Coin Cloud ("Debtor") filed a voluntary "skeleton" Chapter 11 petition ("Petition"). (ECF No. 1). The meeting of creditors under Section 341 ("341 Meeting") was scheduled for March 16, 2023, as well as a deadline of June 14, 2023, for proofs of claim to be filed. (ECF No. 2). Under Section 1121, the exclusive periods for the Debtor to file a proposed Chapter 11 plan as well as to obtain plan acceptance were June 7, 2023, and August 5, 2023, respectively. See 11 U.S.C. §§ 1121(b) and 1121(c)(3).

On February 17, 2023, an official committee of unsecured creditors ("UCC") was

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the Clerk of Court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

1

appointed. (ECF No. 131).

On March 9, 2023, Debtor filed its schedules of assets and liabilities ("Schedules") along with its statement of financial affairs. (ECF Nos. 239 and 240). On its Executory Contract and Unexpired Lease Schedule "G," Debtor listed numerous parties with whom it had entered into executory contracts of unexpired leases prior to commencement of the Chapter 11 proceeding.

On June 13, 2023, a Proof of Non-Professional Administrative Expense in the amount of $154,400 ("Claim 105") was filed by Trangistics, Inc. ("Trangistics") as an administrative expense claim under Section 503(b)(1)(A).[2] Claim 105 is similar to Official Form 410 for a Proof of Claim but lacks an essential element: <u>it is not signed under penalty of perjury</u>.[3]

On June 14, 2023, Trangistics filed the instant Motion seeking allowance of Claim 105 as an administrative expense of the Chapter 11 estate, in addition to per diem charges based on a monthly fee of $38,600. (ECF No. 652). The per diem fee would be incurred until the Debtor's assets are removed from the warehouse premises maintained by Trangistics. The Motion was noticed for hearing on July 12, 2023. (ECF No. 660).

On July 6, 2023, a Stipulated Order was entered granting the Motion to be continued from July 12, 2023, to July 20, 2023. (ECF No. 813). The order does not specify the schedule

---

[2] Claim 105 is signed by Joey Hougham, the president of Trangistics. According to paragraph 1 of the proof of claim, the $154,400 total amount is based on services from February 7, 2023 to May 6, 2023, at $38,600 per month. Included in the attachments to the claim is a copy of a "Powerhouse + Trangistics Term Sheet" dated February 22, 2022, for 14,000 square feet of storage space at $28,000 per month. Also attached to Claim 105 are copies of an email string between February 18, 2022, and January 18, 2023, between representatives of Trangistics and the Debtor.

[3] Section 501(a) allows a creditor to file a proof of claim. Section 502(a) provides that a claim or interest, proof of which is filed under Section 501, is deemed allowed unless a party in interest objects. FRBP 3001(a) specifies that a proof of claim is a writing setting forth the claim and that the proof of claim shall conform substantially to the appropriate Official Form. Official Form 410 is the Proof of Claim form. Part 3 requires the claim to be signed under penalty of perjury. FRBP 3001(f) states that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." FRBP 9009(a) permits "minor changes" to an Official Form, but dispensing with the oath required by Office Form 410 is not a minor change. The Proof of Non-Professional Administrative Expense is not an Official Form nor an authorized minor change to Official Form 410. It simply does not constitute prima facie evidence of the validity and amount of the subject claim.

by which "notice and a hearing" required by Section 503(b) would be provided.

On July 11, 2023, an order was entered establishing a deadline of July 20, 2023, for proofs of administrative expense claims to be filed, including approval of the form of claims ("Administrative Claims Order"). (ECF No. 823). The order does not specify the schedule by which "notice and a hearing" required by Section 503(b) would be provided.

On July 12, 2023, Debtor filed its response ("Response") to the Motion, along with a supporting declaration of Jim Hall ("Hall Declaration"). (ECF Nos. 831 and 832).

On July 18, 2023, Trangistics filed a reply ("Reply") in support of its Motion, along with supporting declarations of its vice president, David McGrew ("McGrew Declaration"), as well as its head of accounting, Anne Rudinsky ("Rudinsky Declaration"). (ECF Nos. 869-871).[4]

**DISCUSSION**

A postpetition creditor may be allowed an administrative claim under Section 503(b)(3)(D) for "actual, necessary expenses"…"in making a substantial contribution in a case under chapter…11." In the present matter, Debtor does not dispute that Trangistics warehoused a number of the Debtor's digital currency kiosks during the period encompassed by Claim 105, i.e., from February 7, 2023 to May 6, 2023. See Response at 2:23; Hall Declaration at ¶ 9. Both parties dispute, however, whether the court should grant administrative expense status to the amount requested in Claim 105. See Response at 4:1 to 5:10; Reply at 6:6 to 7:4.[5] The term "actual, necessary costs and expenses" under Section 503(b) is narrowly construed to keep administrative costs at a minimum. See N.L.R.B. v. Walsh (In re Palau), 139 B.R. 942, 944 (B.A.P. 9th Cir. 1992), aff'd, 18 F.3d 746 (9th Cir. 1994). The focus is on whether the claimed expenses arose from a postpetition transaction with the bankruptcy estate, and whether the transaction directly and substantially benefitted the bankruptcy estate. See In re DAK Industries, 66 F.3d at 1094; see also Data Leverage, LLC v. Avery (In re Machevsky), 640 B.R. 210, 214

---

[4] No objections have been raised to the court's consideration of the Hall Declaration, McGrew Declaration, or the Rudinsky Declaration. No request has been made to cross-examine any of the declarants as to the contents of their respective declarations.

[5] Both Trangistics and the Debtor cite similar case authorities, e.g., Microsoft Corp. v. DAK Industries, Inc. (In re DAK Industries, Inc.), 66 F.3d 1091 (9th Cir. 1995).

3

1  (C.D. Cal. 2022); Saxton v. Lisowski (In re Saxton, Inc.), 2007 WL 7540972, at *5 (B.A.P. 9th
2  Cir. July 30, 2007).  The burden of proving the requirements for allowance of an administrative
3  expense claim rests with the claimant.  See In re DAK Industries, 66 F.3d at 1094.

4      As previously mentioned, Trangistics preceded the filing of the instant Motion by filing
5  Claim 105.  And as discussed at note 3, supra, the Proof of Non-Professional Administrative
6  Expense form attached to the Motion is not prima facie evidence of Transgistic's administrative
7  claim.  Rather, it is signed by Trangistics' president but has no evidentiary value because it is not
8  signed under penalty of perjury attesting to the information supporting the claim.

9      In this instance, however, the Response filed by the Debtor is supported only by the Hall
10 Declaration setting forth the testimony of its Vice President of Finance & Accounting, who is
11 familiar with the financial records of the Debtor.  See Hall Declaration at ¶¶ 1 and 2.
12 Unfortunately, the declarant attests that the Debtor's "employee responsible for dealings with
13 Trangistics is no longer employed by the Debtors and attempts to contact him were not
14 successful." Id. at ¶ 9 (emphasis added).  The declarant does attest that after the Chapter 11 was
15 commenced, Debtor paid Trangistics $38,600 for its March 2023 invoice.  Id. at ¶12.  An
16 apparent copy of that invoice from Trangistics, paid by the Debtor, is attached to the Hall
17 Declaration.  Id. at page 16 of 16.  Based solely on "information and belief," Debtor's officer
18 attests that the actual owner of the warehouse used by Trangistics to store the Debtor's kiosks
19 charges only $30,500 per month to Trangistics rather than the $38,600 per month that Trangistics
20 charges to the Debtor.  Id. at ¶11.

21     Having reviewed the entire record presented by the parties, the court concludes that the
22 Motion should be granted.  No one disputes that Debtor's former employee with personal
23 knowledge of the agreement reached with Trangistics is unavailable.  The Hall Declaration
24 acknowledges that some agreement existed for the Debtor to pay $38,600 to Trangistics for its
25 storage services during the applicable period encompassed by Claim 105.  A copy of the invoice
26 confirming the amount is included with the Hall Declaration.  The same declaration provides no
27 evidence, based on personal knowledge, that Trangistics charges more to the Debtor than what
28 Trangistics actually pays for storage facilities.

1 | In addition to the information provided by the Debtor's witness, Trangistics has provided
2 | additional evidence demonstrating that the requested administrative expense allowance is
3 | warranted under Section 503(b).  The vice president for Trangistics attests to the negotiations
4 | between the declarant and the Debtor's former employee for Trangistics to provide the
5 | warehouse services encompassed by Claim 105.  See McGrew Declaration at ¶¶ 3, 4, 5, 6, 7, 9,
6 | and 10.  The head of accounting for Trangistics attests to the warehousing services provided to
7 | the Debtor, as reflected in the billing invoices sent to the Debtor.  See Rudinsky Declaration at
8 | ¶¶ 3, 4, 5, and 6.  She also attests that one payment in the amount of $36,800 was received from
9 | the Debtor on or about April 7, 2023.  Id. at ¶ 7.  Copies of the invoices sent to the Debtor as
10 | well as an accounts-receivable aging chart also are offered by the declarant.  Id. at Exhibits "A"
11 | and "B."  Absent an offer of evidence disputing that the warehousing services were provided
12 | during the period encompassed by Claim 105, Trangistics has met its burden of proving the
13 | existence of postpetition expenses incurred at the request of the Debtor.  Moreover, absent an
14 | offer of admissible evidence disputing the reasonableness of the amount charged for the
15 | warehousing services, Trangistics also has met its burden of demonstrating the propriety of the
16 | amount requested.  On this record, Trangistics has met its burden under Section 503(b)(3)(D) of
17 | establishing that the warehouse services provided from February 7, 2023 through May 6, 2023,
18 | directly and substantially benefited the Chapter 11 estate.

Whatever may be the timing and ultimate disposition of the digital currency kiosks warehoused at Trangistics' facilities, the court makes no determination as to the necessity, value, or benefit of those services that may have been provided after May 6, 2023.[6]  Moreover, whatever credit that must be applied for payments received by Trangistics for services provided between February 7, 2023 and May 6, 2023, will be left to the parties.  The present allowance of an administrative expense claim for the period from February 7, 2023 through May 6, 2023, is without prejudice to any further request for other amounts that cannot be resolved between the parties.

---

[6] It is not entirely clear why Trangistics has not sought to compel immediate payment of postpetition rent or sought relief to exercise the remedies otherwise available to a warehousing provider under Nevada law.

5

**IT IS THEREFORE ORDERED** that Motion for Approval of Administrative Claim, Docket No. 652, be, and the same hereby is, **GRANTED.**

**IT IS FURTHER ORDERED** that for the period February 7, 2023 through May 6, 2023, Trangistics, Inc., is allowed an administrative expense claim under 11 U.S.C. §503(b)(3)(D) in the aggregate sum of $154,400.00, less the amount received from the Debtor during such period.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
CASH CLOUD, INC.
ATTN: OFFICER OR MANAGING AGENT
11700 W CHARLESTON BLVD., #441
LAS VEGAS, NV 89135

CATHERINE V. LOTEMPIO on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
SEWARD & KISSEL
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

# # #