


_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
January 17, 2024

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

In re:                                                   ) Case No. 23-10423-mkn
                                                         ) Chapter 11
CASH CLOUD, INC.,                                        )
dba COIN CLOUD,                                          )
                                                         ) Date:  October 19, 2023
                           Debtor.                       ) Time:  10:30 a.m.
_____                )

**ORDER ON DEBTOR'S OBJECTION TO ADMINISTRATIVE EXPENSE CLAIM OF AVT NEVADA, L.P.**[1]

On October 19, 2023, the court heard the Debtor's Objection to Administrative Expense Claim of AVT Nevada, L.P., brought in the above-captioned proceeding. The appearances of counsel were noted on the record. After the hearing, the matter was taken under submission.

**BACKGROUND**

On February 7, 2023, Cash Cloud, Inc. dba Coin Cloud ("Debtor") filed a voluntary "skeleton" Chapter 11 petition ("Petition"). (ECF No. 1). The meeting of creditors under Section 341 ("341 Meeting") was scheduled for March 16, 2023, as well as a deadline of June 14, 2023, for proofs of claim to be filed. (ECF No. 2). Under Section 1121, the exclusive periods for the Debtor to file a proposed Chapter 11 plan as well as to obtain plan acceptance were June 7, 2023, and August 5, 2023, respectively. See 11 U.S.C. §§ 1121(b) and 1121(c)(3).

On February 17, 2023, an official committee of unsecured creditors ("UCC") was

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the above-captioned bankruptcy case as they appear on the docket maintained by the Clerk of Court. All references to "Section" are to provisions of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure.

1

1  appointed. (ECF No. 131).

2        On March 9, 2023, Debtor filed its schedules of assets and liabilities ("Schedules") along
3  with its statement of financial affairs. (ECF Nos. 239 and 240). On its secured creditor Schedule
4  "D," Debtor listed six creditors: Cole Kepro International, LLC, Corporation Service Company
5  as Representative,[2] Enigma Securities LTD, Genesis Global Holdco, LLC, Prime Alliance Bank,
6  Inc., and Surety Bank. On its executory contract and unexpired lease Schedule "G," Debtor
7  listed numerous parties with whom it had entered into executory contracts or unexpired leases
8  prior to commencement of the Chapter 11 proceeding.[3]

9        On March 27, 2023, AVT filed an official Proof of Claim form signed under penalty of
10 perjury by its portfolio manager ("POC 38").[4] Part 2 of the form attests that the basis for the
11 claim is "Equipment Lease CSHC 001." Part 2 also attests that the claim is secured by
12 "Equipment" and is perfected by "UCC filing statements." Part 2 further states that the secured
13 amount of the claim is $1,314,335. Attached to POC 38 is a variety of documents, including a
14 Master Lease Agreement dated June 5, 2020 ("Master Lease"). Attached to the Master Lease are

---

[2] For this creditor, Debtor is asked to "Describe debtor's property that is subject to the lien." Debtor's response is: "All deposits, payments and other money pledged, paid, provided to or held by Security Party in connection with Lease Schedule No. CSHC_001 to Master Lease Agreement No. 2056266, between AVT Nevada, L.P. and Debtor." The creditor is described by the Debtor as "UCC Lienholder."

[3] Schedule "G" includes an Attachment that lists the subject executory contracts and unexpired leases. At page 58 of 94, with ID No. 2.248, there is a Master Lease Agreement No. 2056266 having an effective date on 6/5/2020 with the counterparty identified as "AVT Nevada, L.P." In other words, AVT Nevada, L.P. ("AVT") is mentioned by the Debtor in its Schedules applicable to secured creditors as well as executory contracts and unexpired leases.

[4] The instructions to Official Form 410 - Proof of Claim specifically states: "This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503." Part 3 of Official Form 410 requires the claimant to specify its status, to acknowledge that any payments have been credited, to have examined the information provided, and to declare under penalty of perjury that the information is true and correct. The capacity of the individual signing the claim must be stated. Official Form 410 includes in bold print the admonition: "A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571."

various documents, including a personal guaranty, a bill of sale, a sale leaseback agreement, a security agreement, and three separate UCC financing statements.[5]

On June 16, 2023, Debtor filed a motion to approve a lien free sale of certain assets to a third-party purchaser, including the some or all of the equipment encompassed by POC 38 ("Sale Motion"). (ECF No. 714).[6] On June 19, 2023, the Sale Motion was amended. (ECF No. 730).[7]

On June 28, 2023, the Sale Motion was granted over the objection of AVT.[8]

On June 30, 2023, an order granting the Sale Motion ("Sale Order") was entered. (ECF No. 795).[9] The Sale Order was not appealed nor stayed.

On July 11, 2023, an order was entered establishing a deadline of July 20, 2023, for proofs of administrative expense claims to be filed, including approval of the form for submitting an administrative claim ("Administrative Claims Bar Order"). (ECF No. 823). The order does not specify the schedule by which "notice and a hearing" required by Section 503(b) would be provided for the bankruptcy court to allow an administrative claim.[10]

---

[5] The UCC Financing Statement with Initial Filing Number 2020095113-1 was filed on May 12, 2020. The statement with Initial Filing Number 2020103557-0 was filed on June 9, 2020. The statement with Initial Filing Number 202301974-8 with filed on January 31, 2023.

[6] An expedited hearing on the Sale Motion was scheduled for June 28, 2023, pursuant to an order shortening time. (ECF No. 724). The deadline for written opposition was set at June 23, 2023. Notice of the expedited hearing was sent by first class mail to all interested parties, including AVT. (ECF No. 733).

[7] Notice of filing the amended motion was sent to all interested parties. (ECF No. 739).

[8] On June 29, 2023, AVT filed its written objection to the Sale Motion. (ECF No. 785).

[9] Notice of entry of the Sale Order was sent to all interested parties. (ECF No. 802).

[10] Section 502 and Section 503 distinguish between the allowance of claims and interests, and the allowance of administrative expenses. Section 502(a) expressly provides that a proof of claim filed under Section 501(a) with respect to a claim or interest, "is deemed allowed" unless a party in interest objects. By contrast, Section 503(a) administrative expenses may be allowed only after notice and a hearing. In other words, simply filing an administrative claim form is not sufficient for the claimed expense to be allowed by the bankruptcy court. The Administrative Claims Bar Order simply established a deadline for requests for administrative expenses to be filed and no more.

On July 18, 2023, AVT filed a copy of the approved Administrative Claim Form (ECF No. 887) signed by its counsel of record ("Claim 887").[11] The stated basis for the administrative claim is the Debtor's "Post-petition use of leased equipment in operation of Debtor's business." Priority of payment is asserted under Section 503(b)(1)(A) and Section 507(a)(2). The amount of the claim is $262,719.30. Attached to Claim 887 is an addendum explaining the basis for the claim to which is attached as Exhibit "A" a copy of portions of the Master Lease and as Exhibit "B" an Amended and Restated Lease Schedule No. CSHC 001 executed on September 1, 2020 ("Schedule").[12]

On August 25, 2023, an order was entered confirming the Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023 ("Plan Confirmation Order"). (ECF No. 1126).[13] The Plan Confirmation Order was not appealed nor stayed.

On September 19, 2023, Debtor filed the instant objection to Claim 887 ("Objection"), accompanied by the declaration of its counsel, Brett Axelrod ("Axelrod Declaration"). (ECF Nos. 1258 and 1259).

On October 5, 2023, AVT filed its response to the Objection ("Response"), accompanied by a declaration from its portfolio manager, Dan Burris. (ECF Nos. 1351 and 1352).

On October 12, 2023, Debtor filed its reply in support of its Objection ("Reply"). (ECF No. 1372).[14]

---

[11] The Administrative Claim Form is not required to be signed under penalty of perjury and contains none of the admonitions included in Official Form 410, see note 4, supra, except for the following language at the bottom of the page (but not part of the signature line): "Penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571." FRBP 9009(a) permits "minor changes" to an Official Form, but eliminating the oath requirement from Official Form 410 is not minor.

[12] On July 20, 2023, the court heard a separate motion filed by creditor Transgistics, Inc., (ECF No. 652) seeking approval of an administrative expense claim for postpetition warehouse services. That motion was taken under submission.

[13] Notice of entry of the Plan Confirmation Order was sent to interested parties. (ECF No. 1153).

[14] On October 16, 2023, an evidentiary hearing was held on a separate motion filed by creditor Enigma Securities Limited (ECF No. 873) seeking approval of a superpriority

**DISCUSSION**

A postpetition creditor may be allowed an administrative claim under Section 503(b)(1)(A) for "the actual, necessary costs and expenses of preserving" the Chapter 11 estate. The term "actual, necessary costs and expenses" under Section 503(b) is narrowly construed to keep administrative costs at a minimum. See N.L.R.B. v. Walsh (In re Palau), 139 B.R. 942, 944 (B.A.P. 9th Cir. 1992), aff'd, 18 F.3d 746 (9th Cir. 1994). The focus is on whether the claimed expenses arose from a postpetition transaction with the bankruptcy estate, and whether the transaction directly and substantially benefitted the bankruptcy estate. See Microsoft Corp. v. DAK Industries, Inc. (In re DAK Industries, Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995); see also Data Leverage, LLC v. Avery (In re Machevsky), 640 B.R. 210, 214 (C.D. Cal. 2022); Saxton v. Lisowski (In re Saxton, Inc.), 2007 WL 7540972, at *5 (B.A.P. 9th Cir. July 30, 2007). The burden of proving the requirements for allowance of an administrative expense claim rests with the claimant. See In re DAK Industries, 66 F.3d at 1094; In re MyLife.com Inc., 2023 WL 5976726, at *4 (Bankr. C.D. Cal. Sep. 14, 2023).

As previously mentioned, AVT preceded the filing of Claim 887 by filing POC 38. Under Section 502(a)(1), a proof of claim is deemed allowed unless a party in interest objects. Under FRBP 3001(f), a properly filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." Also, as previously mentioned, POC 38 is signed under penalty of perjury by AVT's portfolio manager. AVT simply attaches to its POC 38 copies of the Master Lease and other related materials, including a bill of sale, a security agreement, and separate UCC financing statements. While the burden of persuasion lies with the claimant, see Partap Investments, LLC v. Kittusamy, LLP (In re Kittusamy, LLP), 2017 WL 957152, at *2 (B.A.P. 9th Cir. Mar 10, 2017), the burden of production lies with the objecting party to overcome the prima facie validity afforded to a proof of claim under the Bankruptcy Code and the Bankruptcy Rules. An objecting party must overcome the presumption of validity by presenting sufficient evidence of probative force equal to the allegations of the proof of claim.

---

administrative expense claim based on the postpetition impairment of value of its collateral. That matter also was taken under submission.

See Burke v. Reno-Sparks Indian Colony (In re Affordable Patios & Sunrooms), 2022 WL 1115413, at *3 (B.A.P. 9th Cir. Apr. 22, 2022); Reger v. Essex Bank (In re Landes), 626 B.R. 531, 545 (Bankr. E.D. Cal. 2021).  Thus, a debtor (or other interested pary) can overcome the evidentiary effect of a proof of claim only by offering admissible evidence rather than unsupported argument.

By contrast, Claim 887 is not signed by a representative of AVT under penalty of perjury and does not constitute prima facie evidence of the validity and amount of the claim.  While it may constitute a certification within the meaning of FRBP 9011(b),[15] it does not have independent evidentiary value.  In the present matter, however, Debtor does not dispute that AVT had an interest in certain digital currency kiosks, but argues that the Master Lease was a secured financing arrangement rather than a true lease.  See Objection at 5:23 to 6:2.  It maintains that AVT was a creditor with a security interest in such equipment rather than an interest as a lessor of the equipment.  See Objection at 5:3-5; Axelrod Declaration at ¶¶ 4 and 5.  As a result, Debtor argues that AVT is not entitled to the allowance of post-petition rent for the equipment, but would be limited to its security interest in the equipment.  See Axelrod Declaration at ¶ 6.  As a further result, Debtor maintains that AVT's lien against the equipment is attached to the proceeds generated from the Sale Order.

As the sockdolager of its position, Debtor observes that AVT was treated as a secured creditor at the expedited hearing on the Sale Motion and in the language of the Sale Order.  See Objection at 6:3-7.  It maintains that AVT was determined at the sale hearing to be a secured creditor rather than an equipment lessor, and therefore cannot have it "both" ways.  Id. at 6:2.  Debtor argues that AVT's status as a secured creditor, rather than a lessor, is the "law of the case."  See Reply at 2:6-11.  As a result, Debtor concludes that AVT is not entitled to rent and has no administrative claim for postpetition rent at all.

---

[15] Under FRBP 9011(b)(3), an attorney or unrepresented party who presents a paper to the court "is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, — the allegations and other factual contentions have evidentiary support…"

In response, AVT maintains that the language of the Sale Order as well as the Plan Confirmation Order does not preclude it from pursuing an administrative claim for postpetition rent of the subject equipment. <u>See</u> Response at 6:9 to 8:4. As correctly suggested by the Debtor, the Sale Order reflects that AVT's oral objection at the sale hearing was overruled by the court. <u>See</u> Sale Order at 3, Recital M. Additionally, the Sale Order allocated the proceeds of the sale to various creditors and expressly to AVT as follows:

> to AVT the Sale proceeds (the "AVT Collateral Proceeds") allocated to collateral (the "AVT Collateral") securing <u>the AVT secured claim</u> to the extent such collateral is identified in that certain UCC Financing Statement, filed on May 12, 2020 and with initial filing number 2020095113-1 (*see* Claim No.38), and AVT's asserted security interest in such collateral is allowed pursuant to a final order of the Court (<u>the "AVT Secured Claim"</u>), up to the amount of the <u>allowed amount of the AVT Secured Claim</u>; provided that, upon the Closing of the Sales, the Debtor will (a) pay to AVT the AVT Collateral Proceeds to the extent such AVT Collateral Proceeds are in excess of (1) the Disputed Surcharge Claims against AVT and (2) any other Asserted Surcharge Claims that AVT has agreed are payable to the Debtor's estate in accordance with section 506(c) of the Bankruptcy Code and (b) hold in escrow the remaining AVT Collateral Proceeds for the sole use and purpose of distribution to AVT or payment to the Debtor's estate in respect of the Disputed Surcharge Claims, in each case in accordance with the Court's order with respect to the Surcharge Motion or as otherwise mutually agreed in writing by the Debtor and AVT. AVT reserves all rights and defenses with respect to the existence of any Asserted Surcharge Claims and any Surcharge Motion and nothing in this Order shall constitute an admission that any Asserted Surcharge Claims are valid. For the avoidance of doubt, nothing in this Order waives, modifies, alters, or impairs the waiver of surcharge in favor of the DIP Lender contained in paragraph 13 of the Final DIP Order.

Sale Order at 9, ¶ 19(b) (emphasis added). While the language of the Sale Order entered on June 30, 2023, referred to AVT as the holder of a secured claim rather than a lessor of the equipment, the court's subsequent order entered on August 25, 2023 states as follows:

> **AVT's Reservation of Rights.** <u>Notwithstanding any provision to the contrary in this Confirmation Order, the Amended Plan, the Sale Order, any DIP Financing Orders, or any Amended Plan Supplements, no provision of the foregoing shall prejudice AVT's rights, pursuant to its lease and other agreements with the Debtor (the "Lease") as set forth in Proof of Claim No. 38 (the "Claim") or otherwise, to without limitation (a) on or prior to any applicable Administrative Expense Claims Bar Dates, assert, apply for, file, prosecute, and collect any Administrative Claim against the Debtor pursuant to the Lease</u>, and/or (<u>b</u>) prior to the Effective Date, <u>commence an adversary</u>

7

> proceeding or contested matter for (without limitation) a declaration that the AVT Collateral is in fact property owned by AVT that was leased to the Debtor, and/or alternatively that AVT's interests in the AVT Collateral are superior to the rights of other interested parties (including but not limited to the purported secured interests asserted by Enigma); and/or (c) object to, dispute, and seek disallowance of any or all Surcharge Claims that may be asserted against AVT's property (and the AVT Collateral Proceeds); *provided, however*, that the Debtor, the Creditor Trust, or any successors thereto, reserve all rights and defenses in connection with AVT's Claim, including without limitation the actions and/or Claims described in (a) through (c) herein. For the avoidance of doubt, AVT disputes the validity and priority of a portion of Enigma's Lien on what is defined as the Enigma Collateral in the Amended Plan (the "AVT Disputed Property"). Accordingly, pursuant to the Sale Order and the Amended Plan, the Debtor shall hold that portion of the Enigma Collateral Proceeds that are associated with AVT Disputed Property in escrow pending further order from the Court or upon a mutual agreement of Enigma and AVT submitted to the Debtor in writing.

Plan Confirmation Order at 16, ¶ 20 (emphasis added).

Pursuant to the express language of the Plan Confirmation Order, "no provision" of the Sale Order shall prejudice AVT's right to "assert, apply for, file, prosecute, and collect" any administrative claim under the Master Lease. There is no dispute that this language of the Plan Confirmation Order was negotiated amongst able counsel for the parties. Because this negotiated language effectively overcame any limiting language in the Sale Order, AVT is not barred from seeking an administrative expense allowance based on the Master Lease.

On the present record, the Objection is misguided because the language of the Plan Confirmation Order permits AVT to seek allowance of its administrative claim. The law of the case doctrine simply does not apply. Because Claim 887 does not constitute prima facie evidence of its validity and amount, however, AVT is required by Section 503(b) to seek allowance of the administrative expense. AVT is required to demonstrate that the amount sought directly and substantially benefited the Chapter 11 estate. The same provision of the Plan Confirmation Order also reserves to the Debtor "all rights and defenses in connection with AVT's Claim," which includes "any Administrative Claim against the Debtor pursuant to the Lease." Debtor's assertion that it engaged in a secured financing transaction with AVT rather

than a true lease can be raised, if at all, in response to AVT's necessary request for allowance of the expense.

Based on the foregoing, the instant Objection will be overruled without prejudice. No determination is made by this order with respect to the allowance of Claim 887.

**IT IS THEREFORE ORDERED** that Debtor's Objection to Administrative Expense Claim of AVT Nevada, L.P., Docket No. 1258, be, and the same hereby is, **OVERRULED WITHOUT PREJUDICE.**

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
CASH CLOUD, INC.
ATTN: OFFICER OR MANAGING AGENT
11700 W CHARLESTON BLVD., #441
LAS VEGAS, NV 89135

CATHERINE V. LOTEMPIO on behalf of Creditor Committee OFFICIAL COMMITTEE OF UNSECURED CREDITORS
SEWARD & KISSEL
ONE BATTERY PARK PLAZA
NEW YORK, NY 10004

CHRISTOPHER J. SCHREIBER on behalf of Creditor AVT Nevada, L.P.
MICHAEL BEST & FRIEDRICH LLP
790 N. WATER STREET, STE. 2500
MILWAUKEE, WI 53202

# # #