BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
      nkoffroth@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re<br><br>CASH CLOUD, INC.,<br>dba COIN CLOUD,<br><br>          Debtor. | Case No.  BK-23-10423-mkn<br><br>Chapter 11<br><br>**VERIFIED STATEMENT OF KEVIN CARON IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF CONWAY BAXTER WILSON LLP/S.R.L. AS SPECIAL LITIGATION COUNSEL TO DEBTOR, EFFECTIVE AS OF THE PETITION DATE**<br><br>Hearing Date:   OST Pending<br>Hearing Time:  OST Pending |

    I, Kevin Caron, being duly sworn, deposes and declares under the penalty of perjury:

    1.     I am a partner at Conway Baxter Wilson LLP/s.r.l. ("CBW").  I am licensed to practice law in Ontario, Canada.

    2.     Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

144744323.6

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

3.      I make this Declaration in support of the *Application for Entry of Order Authorizing Retention and Employment of Conway Baxter Wilson LLP/S.R.L. as Special Litigation Counsel to Debtor, Effective as of the Petition Date* (the "Application") filed by Cash Cloud, Inc. ("Debtor"), debtor and debtor in possession in the above-referenced chapter 11 bankruptcy case (the "Chapter 11 Case").[1]

4.      On August 11, 2022, Debtor initiated litigation by filing a complaint against BitAccess (the "BitAccess Complaint"), entitled *Cash Cloud Inc. v. BitAccess, Inc.*, Case No. CV-22-00089887-0000 (the "BitAccess Action"), in the Superior Court of Justice in Ottawa, Ontario, Canada (the "Ottawa Court"). Debtor has also initiated a companion arbitration proceeding against BitAccess before the Canadian Arbitration Association ("BitAccess Arbitration"). The seat of the BitAccess Arbitration is Ottawa, Ontario, and the governing law of the BitAccess Arbitration is Ontario law.

5.      Debtor desires to retain CBW to assist representing Debtor in the BitAccess Arbitration in Canada. A true and correct copy of the engagement agreement between Debtor and CBW is attached hereto as **Exhibit 1** (the "Engagement Agreement").

6.      The BitAccess Action and the BitAccess Arbitration (collectively, "the BitAccess Litigation") concern BitAccess' improper termination of its software services to Debtor—software services that Debtor used to operate its digital currency kiosks. A true and correct copy of the BitAccess Complaint is attached hereto as **Exhibit 2** and incorporated herein by this reference.

7.      The BitAccess Action was aimed at obtaining injunctive relief pending the appointment of an arbitral tribunal within the context of the BitAccess Arbitration. An arbitral tribunal (the "Arbitral Tribunal") was appointed in November 2022.

8.      Following February 7, 2023 (the "Petition Date"), CBW performed the following work on behalf and with approval of Debtor, in the BitAccess Arbitration:

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Application.

144744323.6

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

    a.   corresponded with opposing counsel, the Arbitral Tribunal, and Nevada counsel for the Debtor about various substantive and procedural matters connected to the BitAccess Arbitration;

    b.   prepared for and attended three case conferences before the Arbitral Tribunal;

    c.   drafted pleadings;

    d.   reviewed and analyzed BitAccess' pleadings;

    e.   obtained, reviewed, analyzed, compiled and produced documents on behalf of Debtor, pursuant to a documentary discovery order made by the Arbitral Tribunal;

    f.   reviewed and analyzed BitAccess' productions made in response to the Arbitral Tribunal's discovery order;

    g.   conducted legal research, as necessary, to address issues raised in the parties' pleadings and other ancillary issues raised at the case conferences;

    h.   retained, instructed, and corresponded with litigation experts that will testify on behalf of Debtor on the issue of damages quantification; and

    i.   corresponded with Debtor and Debtor's counsel on various substantive and procedural matters connected to the BitAccess Arbitration and to obtain instructions.

    9.    In a communication to counsel on May 2, 2023, the Arbitral Tribunal requested a deposit from Debtor (and a corresponding deposit from BitAccess) in the following two installments: $55,694.575 Canadian Dollars by May 30, 2023; and $55,694.575 Canadian Dollars by August 15, 2023 (collectively, the "Arbitral Deposits").

    10.    On August 15, 2023, upon the Committee's approval, Debtor provided CBW with a wire transfer in USD for the payment of the Arbitral Deposits requested by the Arbitral Tribunal, as discussed in paragraph 9 above. The funds were wired to CBW's trust account. Once the funds were converted from USD to CAD, and the Arbitral Deposits were paid, there was a surplus amount of CAD $3,607.27 due to fluctuations in the USD/CAD conversion rates (the "Surplus"). The Surplus was due to fluctuations in the USD/CAD conversion rates.

144744323.6

11.     In a communication to counsel on November 27, 2023, the Arbitral Tribunal requested the parties to advise by February 1, 2024, as to their availability for a case conference to schedule the timetable for the BitAccess Arbitration.

12.     Following the Committee's approval of the Arbitral Deposits, CBW was not aware that judicial approval of its employment was necessary under applicable law.  I am licensed to practice law in Ontario.  I am not familiar with the bankruptcy law of the United States and, in particular, with the laws, practices and procedures applicable to the employment of professionals in that context.  Debtor's counsel has communicated to CBW that an employment application for Special Counsel is required to proceed with the BitAccess Arbitration.

13.     CBW is well qualified to serve as Special Counsel to Debtor.  CBW is a Canadian law firm specializing in litigation.  Attorneys at CBW are experienced in representing companies in all manner of complex commercial litigation, including before arbitral tribunals and all levels of court in Canada.  Mr. Thomas Conway and I will have carriage of this matter.  We are both partners at CBW.  Mr. Thomas Conway has in excess of 35 years of complex commercial litigation experience and I have in excess of 7 years of complex commercial litigation experience.  Curricula vitae for Mr. Conway and myself are attached hereto as **Exhibit 3** & **Exhibit 4**.  The combined experience of Mr. Conway and myself makes CBW well suited to represent Debtor in the BitAccess Arbitration in Canada.

14.     CBW will provide counsel on the various Canadian statutory and common law issues raised in the BitAccess Arbitration.  This includes all aspects of discovery, pre-trial motion practice, trial/hearings, and post-trial services, if necessary (the "Services").

15.     CBW is willing to act as Debtor's special litigation counsel with respect to the BitAccess Arbitration during the pendency of the Chapter 11 Case.

16.     Based on the foregoing, CBW is well-qualified to perform the Services and legally represent Debtor in the BitAccess Arbitration, specifically with respect to CBW's extensive experience of complex commercial litigation matters.

17.     The scope of CBW's Services has been set forth in the Engagement Agreement executed by both CBW and Debtor.  See Exhibit 1.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

4

18.     CBW has reviewed its databases and records.  It does not represent or hold any interest adverse to the Debtor and the Chapter 11 Case.  To the extent that CBW discovers any adverse, material relationships during the period of CBW's retention, CBW will use reasonable efforts to supplement the information.

19.     Moreover, although such disclosure is not required by section 327(e), CBW verifies that:

    a.  its partners, of counsel, and associates:

        i.  are not equity security holders or insiders of Debtor;

        ii.  are not and were not, within two years before the date of this application, a director, officer, or employee of Debtor, as specified in subparagraph (c) of 11 U.S.C. § 101(14); and

        iii.  do not hold an interest materially adverse to the interest of the estate or of any class of creditors or equity holders except as stated herein or in the Caron Verified Statement.

    b.  CBW does not represent or otherwise have other material connections with the Debtor, its creditors, any other party in interest in the Chapter 11 Case, or their respective attorneys and accountants, the judge of this Court, the United States Trustee for Region 17 or any person employed in the Office of the United States Trustee for the District of Nevada, in accordance with Bankruptcy Rule 2014. CBW will supplement these disclosures in the event further material connections are discovered regarding persons or entities that later become identified as parties in interest in this Chapter 11 Case.

20.     Pursuant to the Engagement Agreement, CBW will be paid an hourly rate. The amount of compensation to be paid to CBW by Debtor for the Services rendered will fluctuate depending on the attorney working on the matter.  Generally, CBW's rates range from $300 to $750 Canadian Dollars per hour.  My rate for this matter is $450 Canadian Dollars per hour and I will be the primary attorney working on this matter from CBW.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144744323.6

21.    CBW shall also seek reimbursement for the expenses and costs incurred on Debtor's behalf in connection with the BitAccess Arbitration, to the maximum amount permitted by Canadian law.

22.    Prepetition, Debtor provided CBW with a retainer, of which $59,104.59 Canadian Dollars was remaining on the Petition Date (the "Retainer").  CBW deposited the Retainer in its trust account.  CBW will apply the Retainer and the Surplus to any outstanding and overdue balances owing pursuant to the interim compensation procedures set forth in this Court's *Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 331, And Fed. R. Bankr. P. 2016, Authorizing and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 321].  At the end of CBW's representation, it will apply the remaining Retainer and Surplus (if any) to any outstanding fees and/or expenses owing that are approved by the Court pursuant to CBW's Final Fee Application and return any unearned funds to Debtor at that time.

23.    On the Petition Date, Debtor did not owe CBW any amounts for prepetition services rendered.

24.    There is no agreement of any nature, other than with respect to the attorneys at CBW and payment of any contract attorneys or subject matter experts utilized by CBW, as to the sharing of compensation to be paid to CBW.

25.    Answers to the UST Guidelines for Larger Cases, Section D.2:

    a.  *Did you agree to any variations from, or alternatives to, your standard or customary billing arrangements for this engagement?*
    No.

    b.  *Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?*
    No.

    c.  *If you represented the client in the 12 months prepetition, disclose your billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If your billing rates and*

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

1

2

*material financial terms have changed postpetition, explain the difference and*

*the reasons for the difference.*

3

4

5

The rates have increased effective January 2024 to account for annual rate increases and market rate adjustments. Otherwise, the financial terms have not changed.

6

7

d. *Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?*

8

9

10

Debtor has approved CBW's provision of Services on the terms set forth in the Engagement Agreement, which includes staffing and hourly rates, for the duration of the Chapter 11 case.

11

12

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

13

Executed this 6th day of February, 2024 in Ottawa, Ontario, Canada.

14

15

16

*/s/ Kevin Caron*

Kevin Caron

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144744323.6

# EXHIBIT 1

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144744323.6



**Thomas G. Conway**
Direct Line: 613.780.2011
Email: tconway@conwaylitigation.ca

**Assistant:** Doreen Navarro
Direct Line: 613.691.0375
Email: dnavarro@conwaylitigation.ca

December 20, 2023

**VIA EMAIL**

Cash Cloud, Inc.
10845 Griffith Peak Drive, Floor 2
Las Vegas, NV 89135
United States of America

Attn: Daniel Ayala– Independent Director

Dear Sir:

RE:   IN THE MATTER OF AN ARBITRATION UNDER THE INTERNATIONAL COMMERCIAL ARBITRATION ACT, 2017, S.O. 2017, C. 2 AND PURSUANT TO THE CANADIAN ARBITRATION ASSOCIATION ARBITRATION RULES (2016) BETWEEN CASH CLOUD, INC. V. BITACCESS INC. (THE "ARBITRAL PROCEEDING")
MATTER ID: 5618-001

Thank you for retaining Conway Baxter Wilson LLP/s.r.l. ("Conway") for the engagement described in this letter.

*Scope of the Engagement*

As you know, we have represented Cash Cloud Inc. in the Arbitral Proceeding since the outset of the contractual dispute between Cash Cloud and BitAccess Inc. and the subsequent civil and arbitral proceedings that have arisen out of this dispute.

Cash Cloud filed a petition for bankruptcy in the United States Bankruptcy Court on February 7, 2023. Cash Cloud acknowledges that Conway's ability to continue our representation of Cash Cloud is subject to the ongoing bankruptcy proceedings.

Because of the insolvency proceedings, we understand that our engagement as counsel to Cash Cloud in the Arbitral Proceeding must be confirmed and continued by an independent director appointed for this purpose. This engagement letter sets out the scope of the engagement and the basis on which we will continue to represent and advise Cash Cloud in the Arbitral Proceeding.

Cash Cloud has retained and seeks to continue to retain Conway to represent and advise it with respect to various matters concerning Cash Cloud, including, but not limited to, the Arbitral Proceeding.

Although the engagement relates to the matters described above, if you request us to undertake additional matters or if the scope of the engagement is expanded, the additional representation will be governed by the terms and conditions of this letter and our attached Standard Terms of Engagement unless you and we agree otherwise.

We are retained by the person or entity to whom/which the engagement letter is addressed. Our representation of a corporation, partnership, joint venture, trade association, or other entity does not include the representation of the interests of related persons or entities, such as the individuals or entities that are shareholders, directors, or officers of a corporation, its parent, subsidiaries or affiliates; partners of a partnership or joint venture; or members of a trade.

### *Fees*

Our fees generally are based on time spent by our lawyers and other professional staff who work on a matter. The time charges are not absolutes to which we adhere without analysis of the time that has been spent. Rather, they serve as "benchmarks" which ordinarily are followed. Each month, before accounts are issued, a review is performed to assess the nature and quality of the services performed. Our fees may be adjusted if there is a significant disparity between the time charges and the services rendered or results achieved.

At this time, we anticipate that the following lawyers and other professional staff may work on this matter. Their 2024 hourly rates for this engagement appear next to their names.

| Name | Hourly rate (CAD) |
|------|------|
| Thomas G. Conway | $750 |
| Kevin Caron | $450 |
| Joseph Rucci | $300 |
| Law Student | $200 |
| Law Clerk | $200 |

Generally, our hourly rates are reviewed annually and may be adjusted thereafter. We may assign other lawyers and professional staff to assist if we consider this desirable and our accounts to you will include such other persons' services.

### *Termination of Engagement*

Unless terminated sooner, this engagement will end on the date that our services related to this matter are completed. You may terminate this engagement at any time. We reserve the right to cease acting for you if you refuse to follow our advice on a material matter, if you do not co-operate with us, or if any other circumstance arises that makes it appropriate for us to resign.

Following the termination of this engagement, you will remain responsible for our fees and disbursements to the end of the engagement.

*Standard Terms of Engagement*

Our Standard Terms of Engagement are attached to this letter. They apply to this engagement and form part of the terms on which we will act.

If you have any questions concerning the terms of this engagement, our billing policy or any other matter that may arise, please feel free to raise them with us.

If you are satisfied that you wish us to act for you on the basis outlined above, please sign a copy of this letter, and return it to us.

We look forward to working with you.

Yours very truly,

Thomas G. Conway

Encl.

ACCEPTED THIS            DAY OF                  , 2023.

Per:_____
     Cash Cloud, Inc.


1

P a g e | **3**

Following the termination of this engagement, you will remain responsible for our fees and disbursements to the end of the engagement.

*Standard Terms of Engagement*

Our Standard Terms of Engagement are attached to this letter. They apply to this engagement and form part of the terms on which we will act.

If you have any questions concerning the terms of this engagement, our billing policy or any other matter that may arise, please feel free to raise them with us.

If you are satisfied that you wish us to act for you on the basis outlined above, please sign a copy of this letter, and return it to us.

We look forward to working with you.

Yours very truly,

Thomas G. Conway

Encl.

ACCEPTED THIS          DAY OF              , 2023.

Per:
Cash Cloud, Inc.

https://www.camscanner.com/share/show?device_id=AD_AID-24406738DC67C8AE&sid=B2E958EAD6124A5FEC73D8S6US&pid=dsa&style=1&t=1…

## Standard Terms of Engagement

### Introduction

These are the basic terms on which Conway Baxter Wilson LLP/s.r.l. renders legal services.

### Reporting

We will take reasonable steps to keep you informed of progress on your file. We understand that you will keep us informed of any new developments concerning the matters on which we are acting and will provide us with relevant information on a timely basis.

### Confidentiality and Privilege

We treat our relationship with you, and the information you provide, as confidential. Our communications with you are generally privileged, meaning they cannot be disclosed unless you waive the privilege or disclosure is required by law. However, there may be occasions when we will need to disclose your identity as a client of the firm for purposes of dealing with conflict-of-interest issues.

### E-mail

We may transmit information regarding your engagement by unencrypted e-mail over the Internet, and we may receive and act on information and instructions provided to us by e-mail. At any time, you may request us not to send information by e-mail.

### No Guarantee

We will endeavour to represent your interests to the best of our ability. However, we make no guarantees of any specific outcome or results. All legal opinions and advice provided to you reflect our judgement as lawyers based on the law as it stands, and the facts available to us, at the time the opinion or advice is provided.

### Estimates

While we may from time to time, for your convenience, furnish you with estimates of our fees, these estimates are, by their nature, inexact and are not binding unless we negotiate a specific written agreement to that effect.

### Hourly Rates

Generally, the hourly rates for our lawyers and other professional staff are reviewed annually and may be adjusted thereafter.

### Disbursements and Other Charges

The performance of legal services frequently involves costs that we incur in our representation of you. Some of these costs, like facsimile transmission, photocopying and internal printing, are

incurred within the firm. Other costs, like postage and some messenger services, are charged to the firm by outside providers. All charges are designed to recover the firm's actual cost of providing the services. For in-house services (for example, photocopying, computer research), you are charged the cost of the service (that is, the actual cost of making a photocopy plus an allocation of overhead expenses associated with the provision of the service). These charges may be revised from time to time to reflect these costs. Billing for such charges may follow the rendering of the services by some months because of delays in receiving third-party bills and the posting of accounts. In case of disbursements in excess of $250, we may request payment from you in advance or instruct the person providing the services to invoice you directly.

### *Consultants and Experts*

We will not retain consultants or experts without your prior approval. If approval is given, we will do so as your agent and you will be responsible for directly paying such persons' charges.

### *Accounts*

Generally, we issue accounts on a monthly basis or at appropriate intervals, as agreed between us. Accounts will include our fees, disbursements, and other charges.

### *Taxes*

With certain exceptions, our legal fees are subject to Harmonized Sales Tax ("HST"). Our accounts for services rendered will clearly indicate the HST applied to the total amount of taxable fees and disbursements. Our accounts will also distinguish the disbursements on which HST is charged from any tax-exempt disbursements. We will be acting as your agent for the purposes of making all disbursements in order to maintain any applicable HST exemptions.

### *Payment*

Our accounts are subject to review and enforcement (known as the "assessment" of accounts) in accordance with the *Solicitors Act*, R.S.O. 1990, c. S.15.

### *Retention and Destruction of Files*

Except as required by statute or pursuant to a specific agreement with you, we reserve the right to destroy the files relating to your engagement of us if they remain dormant for 6 years or more.

### *Privacy*

If you provide us with personal information, you represent that we may collect, use and disclose such information for purposes of our representation.

### *LLP Status*

Conway Baxter Wilson LLP/s.r.l. is a registered Limited Liability Partnership established under the laws of Ontario.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 2

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

Court File No.  CV-22-89887



***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

CASH CLOUD INC.

Applicant

and

BITACCESS INC.

Respondent

Electronically issued:
Délivré par voie électronique
Ottawa

**APPLICATION UNDER** Rule 14.05(2), (3)(d) and (g) of the *Rules of Civil Procedure*, RRO 1990, Reg 194

# NOTICE OF APPLICATION

**TO THE RESPONDENT**

**A LEGAL PROCEEDING HAS BEEN COMMENCED** by the applicant. The claim made by the applicant appears on the following page.

**THIS APPLICATION** will come on for a hearing

☐ In person
☐ By telephone conference
☒ By video conference

at the following location:

The Court House, 161 Elgin Steet, Ottawa, Ontario, on a day to be set by the Court.

**IF YOU WISH TO OPPOSE THIS APPLICATION**, to receive notice of any step in the application or to be served with any documents in the application, you or an Ontario lawyer acting for you must forthwith prepare a notice of appearance in Form 38A prescribed by the *Rules of Civil Procedure*,

-2-

serve it on the applicant's lawyer or, where the applicant does not have a lawyer, serve it on the applicant, and file it, with proof of service, in this court office, and you or your lawyer must appear at the hearing.

**IF YOU WISH TO PRESENT AFFIDAVIT OR OTHER DOCUMENTARY EVIDENCE TO THE COURT OR TO EXAMINE OR CROSS-EXAMINE WITNESSES ON THE APPLICATION**, you or your lawyer must, in addition to serving your notice of appearance, serve a copy of the evidence on the applicant's lawyer or, where the applicant does not have a lawyer, serve it on the applicant, and file it, with proof of service, in the court office where the application is to be heard as soon as possible, but at least four days before the hearing.

**IF YOU FAIL TO APPEAR AT THE HEARING, JUDGMENT MAY BE GIVEN IN YOUR ABSENCE AND WITHOUT FURTHER NOTICE TO YOU.  IF YOU WISH TO OPPOSE THIS APPLICATION BUT ARE UNABLE TO PAY LEGAL FEES, LEGAL AID MAY BE AVAILABLE TO YOU BY CONTACTING A LOCAL LEGAL AID OFFICE.**

Date _____August 11, 2022_____    Issued by _____*J Ballantyne*_____
                                                                                        Local Registrar

                                               Address of        161 Elgin Street
                                               court office:     Ottawa ON  K2P 2K1


TO:        BitAccess Inc.
           267 Richmond Road
           Ottawa ON  K1Z 6X3

-3-

## APPLICATION

1.    The applicant, Cash Cloud Inc. ("Cash Cloud"), makes application for:

(a)    an injunction restraining the respondent, BitAccess Inc. ("BitAccess"), from interfering with Cash Cloud's ability to use the software that it has licensed from BitAccess until such time as the validity of BitAccess' purported termination of the Master Purchase Agreement dated January 23, 2020 ("the 2020 Purchase Agreement") is finally determined through the mandatory dispute resolution process prescribed therein;

(b)    an order maintaining the *status quo* between Cash Cloud and BitAccess concerning the 2020 Purchase Agreement until such time as the validity of BitAccess' notice of termination of that agreement is finally determined through the mandatory dispute resolution process prescribed by the 2020 Purchase Agreement;

(c)    an injunction restraining BitAccess from deleting any data that it collected from Cash Cloud until the validity BitAccess' notice of termination of the 2020 Purchase Agreement is finally determined through the mandatory dispute resolution process prescribed therein;

(d)    an order requiring BitAccess to preserve any data that it collected from Cash Cloud until the disputes between the parties arising out of the 2020 Purchase Agreement

-4-

are finally determined through the mandatory dispute resolution process prescribed therein; and

(e)    costs on a substantial indemnity basis.

2.    The grounds for the application are:

## The Parties

(a)    Cash Cloud is a corporation incorporated pursuant to the laws of Nevada with its head offices in Las Vegas, Nevada.

(b)    Cash Cloud owns and operates a network of digital currency kiosk machines across the United States, and in Brazil through a Brazilian subsidiary.

(c)    BitAccess is a corporation incorporated pursuant to the laws of Canada with its principal offices in Ottawa, Ontario.

(d)    BitAccess sells software that facilitates the purchase and exchange of digital currency.

## The Purchase Agreements

(e)    For approximately eight years, Cash Cloud has purchased software licenses from BitAccess ("the Licensed Software"), deployed this software in its network of kiosks in the United States, and has purchased technical support services from BitAccess in respect of that software ("the Support Services"). The contractual

-5-

terms for the use of the Licensed Software and the deployment of the Support Services are the subject of two written agreements between the parties.

(f)     The first executed agreement is a Master Purchase Agreement, dated September 4, 2015 ("the 2015 Purchase Agreement").

(g)     Pursuant to the 2015 Purchase Agreement, Cash Cloud purchased several kiosks from BitAccess. Along with those kiosks, Cash Cloud also purchased instances of the Licensed Software, along with the rights to use that software on a perpetual basis.

(h)     The Licensed Software is how the kiosks operate. It functions to process customer transactions. Without the software, the kiosks are inoperable.

(i)     The 2015 Purchase Agreement set out, *inter alia*, the terms and conditions upon which Cash Cloud could acquire and use the Licensed Software. The 2015 Purchase Agreement did not give BitAccess the right to terminate the agreement for convenience. Rather, the 2015 Purchase Agreement stipulated that BitAccess could only terminate the agreement if:

(i)     Cash Cloud was non-compliant with applicable laws;

(ii)     Cash Cloud was in breach of the agreement; or

(iii)     a regulator or government entity rendered the subject matter of the agreement illegal or subject to unreasonable operational charges and fees.

-6-

(j)     In 2017, BitAccess indicated to Cash Cloud that it wished to cease manufacturing and selling digital currency kiosks because it wanted to focus its efforts on the development and sale of its software.

(k)     From that point forward, Cash Cloud began purchasing kiosks from other manufacturers. However, it continued to acquire instances of the Licensed Software from BitAccess under the terms of the 2015 Agreement, which it ran on its kiosks.

(l)     On January 23, 2020, the parties entered into the 2020 Purchase Agreement.

(m)     The 2020 Purchase Agreement was effectively an amendment to the 2015 Purchase Agreement. For the purposes of this dispute, the terms of the 2020 Purchase Agreement were substantively similar to the terms of the 2015 Purchase Agreement.

(n)     The 2020 Purchase Agreement provides, *inter alia*, that:

(ii)     BitAccess would provide Cash Cloud with a perpetual, royalty-free license, to use the Licensed Software on its kiosks (9.2);

(iii)     BitAccess would earn a service fee based on the percentage of the total volume of monthly transactions that took place on Cash Cloud's kiosks (4.2);

(iv)     BitAccess would provide Support Services (Schedule C);

-7-

(v)    the agreement would remain in full force unless, or until, it is terminated

pursuant to section 7.2 (7.1);

(vi)    BitAccess could only terminate the agreement if:

(1)    Cash Cloud did not comply with applicable laws or failed to adhere

to the terms of the 2020 Purchase Agreement; or

(2)    any requirement of a regulator or government body rendered

Bitcoin, crypto-currencies, or the provision of services

contemplated under the 2020 Purchase Agreement illegal or

subject to unreasonable operational charges/fees; (7.2)

(vii)    the Agreement constitutes the entire agreement between the Parties and

supersedes all previous communications, agreements, and understandings

(13.9);

(viii)    the parties agreed to submit to the non-exclusive jurisdiction of the Courts

of the Province of Ontario (13.4).

(o)    The 2020 Purchase Agreement also contains dispute resolution provisions. Those

provisions provide that any dispute arising out of, or relating to, the 2020 Purchase

Agreement, or the breach thereof, shall be resolved by arbitration administered

by the Canadian Arbitration Association under its Commercial Arbitration Rules.

-8-

The dispute resolution provisions further provide that the arbitration shall be conducted in Ottawa.

(p)     The Commercial Arbitration Rules of the Canadian Arbitration Association provide that a request for interim measures, such as injunctive relief, can be addressed to a court and shall not be deemed to be incompatible with an arbitration agreement or a waiver of the right to arbitrate.

### BitAccess Purports to Terminate the 2020 Purchase Agreement

(q)     By letter dated August 4, 2022, BitAccess' Chief Operating Office, Andrew McDonald, purported to terminate the 2020 Purchase Agreement for convenience within 14 days (i.e. on August 18, 2022). In his letter, Mr. McDonald indicated that, as a result of the termination, all of Cash Cloud's kiosks that use the Licensed Software would cease to function and that BitAccess would start permanently deleting all data related to Cash Cloud shortly thereafter.

(r)     Cash Cloud is not in breach of the 2020 Purchase Agreement and Mr. McDonald did not claim, or otherwise suggest that it was, in his letter of August 4, 2022.

(s)     The terms of the 2020 Purchase Agreement do not permit BitAccess to terminate the agreement for convenience.

-9-

(t)     By e-mail dated August 4, 2022, Cash Cloud's Chief Executive Officer, Chris McAlary, advised BitAccess that this communication was abrupt and he requested an opportunity to discuss the matter with Mr. McDonald.

(u)     By e-mail dated August 5, 2022, Mr. McDonald indicated that he refused to discuss the matter with Mr. McAlary.

(v)     By letter dated August 5, 2022, Cash Cloud's Nevada counsel, James Jimmerson of The Jimmerson Law Firm, notified BitAccess that its purported termination of the 2020 Purchase Agreement without reasonable notice constituted a breach of that agreement. Mr. Jimmerson requested that BitAccess rescind its notice of termination.

(w)     BitAccess did not respond to Mr. Jimmerson's letter.

(x)     By letter dated August 8, 2022, Cash Cloud's Ontario counsel, Thomas Conway of Conway Baxter Wilson LLP, further requested that Bit Access rescind its notice of termination and advised that Cash Cloud would seek an urgent injunction in the event that the notice was not rescinded by August 9, 2022 at 5:00 p.m.

(y)     No response to either Messrs. Jimmerson or Conway's letters was received on or before August 9, 2022, at 5:00pm. To date, BitAccess has not substantively responded to the communications delivered by Cash Cloud's lawyers, nor has it

-10-

indicated that it intends to rescind its purported termination of the 2020 Agreement.

## Injunctive Relief is Necessary

(z)    There is a serious issue to be tried. There are no provisions in the 2020 Purchase Agreement that permit BitAccess to terminate that agreement for convenience, or in the circumstances of this case. BitAccess' purported termination of the 2020 Agreement without reasonable notice, and seemingly without justification, constitutes a breach of contract.

(aa)    Cash Cloud will suffer irreparable harm if injunctive relief is not granted.

(bb)    Cash Cloud manages a network of approximately 5,700 kiosks in the United States and Brazil, which process millions of dollars of transactions every month.

(cc)    Approximately 75% of those kiosks depend on the Licensed Software to operate. Those kiosks process approximately 93% of the transactions on Cash Cloud's network.

(dd)    If Cash Cloud's ability to use the Licensed Software is terminated, those kiosks will immediately cease to function and will become inoperable. This is an existential threat to Cash Cloud and its business.

(ee)    In addition, BitAccess has threatened to permanently delete all of Cash Cloud's data. Pursuant to the *Bank Secrecy Act* and other financial regulations in the

-11-

United States, certain customer data must be safeguarded and stored for five years, and in some cases for up to seven years.

(ff)     As such, and in addition to the above, if Cash Cloud's ability to use the Licensed Software is terminated without reasonable notice it will:

(i)     lose a significant number of customers, likely permanently;

(ii)     lose a sizable portion of its market share, likely permanently;

(iii)     suffer permanent harm to its reputation;

(iv)     lose goodwill;

(v)     run the risk of exposure to liability for regulatory violations; and

(vi)     run the risk of exposure to liability to third parties.

(gg)     The balance of convenience favours the granting of the injunctive relief requested.

(hh)     Cash Cloud seeks to maintain the *status quo* pending a determination by an arbitrator appointed under the dispute resolution provisions of the 2020 Purchase Agreement in respect of BitAccess' purported termination of the agreement.

(ii)     BitAccess will not suffer any prejudice from the requested injunction. BitAccess will simply be required to continue to provide its software and services to Cash Cloud, as it has been doing for the past 8 years. It will continue to earn the service

-12-

fees contemplated by the 2020 Purchase Agreement, which are based on the percentage of the total volume of monthly transactions that take place on Cash Cloud's kiosks.

(jj)     Rules 1.04, 14.02, 14.05(2), (3)(d) and (g), 38.03(3.1), and 45.01 of the *Rules of Civil Procedure,* R.R.O 1990, Reg. 194.

(kk)    Sections 96, 97 and 101 of the *Courts of Justice Act*, RSO 1990, c C.43.

(ll)      Article 5 and Schedule 2 of the *International Commercial Arbitration Act*, 2017, SO 2017, c 2, Sch 5, and section 9 of the Model Law on International Arbitration referenced therein.

(mm)   Such further and other grounds as counsel may advise and this Honourable Court permits.

3.     The following documentary evidence will be used at the hearing of the application:

(a)     the affidavit of Christopher McAlary, to be sworn; and

(b)     such further and other evidence as counsel may advise and this Honourable Court permits.

-13-

August 11, 2022

Conway Baxter Wilson LLP/s.r.l.
400-411 Roosevelt Avenue
Ottawa ON  K2A 3X9

Thomas G. Conway LSO#: 29214C
tconway@conwaylitigation.ca
Kevin Caron LSO#: 71894C
kcaron@conwaylitigation.ca
Joseph Rucci LSO#: 846T28
jrucci@conwaylitigation.ca
Tel:      (613) 288-0149
Fax:     (613) 688-0271

Lawyers for the Applicant

Court File No.

CASH CLOUD, INC.    and    BITACCESS INC.
        Applicant              Respondent

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**

Proceeding commenced at OTTAWA

**NOTICE OF APPLICATION**

Conway Baxter Wilson LLP/s.r.l.
400-411 Roosevelt Avenue
Ottawa ON  K2A 3X9

Thomas G. Conway LSO#: 29214C
tconway@conwaylitigation.ca
Kevin Caron LSO#: 71894C
kcaron@conwaylitigation.ca
Joseph Rucci LSO#: 84628
jrucci@conwaylitigation.ca
Tel:    (613) 288-0149

Lawyers for the Applicant

Box 97

Email for party served:
Andrew McDonald:  andrew@bitaccess.com

1

# **EXHIBIT 3**

2

3

4

5

6

7

8

9

10

11

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

144744323.6



# Thomas G. Conway

## Biography

Tom was called to the bar of Ontario in 1989. Since his call to the bar, Tom has maintained a broad and varied trial and appellate practice. He has represented clients in numerous regulatory, criminal and quasi-criminal cases in every level of court in Ontario. He represents litigants in civil jury and non-jury trials, judicial review and administrative hearings. Tom has represented clients in professional negligence cases, class action proceedings involving franchisors, technology companies and regulatory authorities. He has litigated IP and trade secret cases, acted as commission counsel in a federal judicial inquiry and represented the Government of Canada as litigation counsel in a chapter 11 proceeding under the North American Free Trade Agreement. He often represents clients in oppression remedy and shareholder proceedings, corporate governance disputes, contractual disputes, injunction proceedings of all types, in insolvency and restructuring proceedings, defamation actions and tort actions.

Tom is also an experienced and trusted advisor to clients involved in negotiations of complex commercial disputes, and frequently represents clients in commercial arbitrations and mediations. He has been retained by disputants as an arbitrator and mediator.

Tom is also an experienced adjudicator, having served as an adjudicator for the Law Society Tribunal of Ontario from 2007 to 2012, and from 2016 to present.

Tom was recognized in 2007 by the National Post, one of Canada's national newspapers, as one of Canada's top corporate and commercial litigation lawyers. Since 2009, Tom has been ranked by his peers as one of The Best Lawyers in Canada in the specialty of corporate and commercial litigation. He is included in Lexpert's directory of leading practitioners in the categories of corporate and commercial litigation and products liability litigation.

In 2013, Tom was recognized by Canadian Lawyer Magazine as one of Canada's 25 most influential lawyers, and one of five recognized in the category of "change makers."

In June 2014, Tom completed a two-year term as the 64th Treasurer of the Law Society of Upper Canada (now the Law Society of Ontario), Ontario's regulator of legal services and Canada's largest law society. The Law Society was founded in 1797 and today is the independent professional regulator of over 57,000 lawyers and over 11,000 paralegals in Ontario and regulates in the public interest. First elected by the profession as a bencher (i.e. a governor of Law Society) in 2007, Tom was acclaimed as Treasurer in 2012, by Convocation, the governing board of the

Law Society. The position of Treasurer is the highest elected office of the Law Society of Ontario. The Treasurer is the president and chair of the governing board of the Law Society.

From November 2014 to November 2015, Tom served as the president of the Federation of Law Societies of Canada, the umbrella organization of Canada's fourteen provincial and territorial law societies of Canada

Tom holds Bachelor of Arts degrees in English Literature and History, and a Master of Arts degree in American History, all from the University of Calgary. He graduated from the University of Ottawa Law School in 1987. Tom articled and practised at Soloway Wright LLP from 1987 to 1994. From 1994 to 2009, Tom was a litigation partner at McCarthy Tétrault LLP, where he was the head of the Ottawa Litigation Group for several years. Since 2009, he has lead Conway Baxter Wilson LLP ("Conway Litigation") as one of its three founding partners. Conway Litigation is based in Ottawa, Ontario. Conway Litigation practises exclusively in trial and appellate advocacy, in contested proceedings before administrative tribunals and in domestic and international commercial arbitrations.

Tom is a frequent lecturer and presenter at continuing professional development programmes. From 2004 to 2009, Tom was an adjunct professor of law at the University of Ottawa, where he taught trial advocacy. He is a former president of the County of Carleton Law Association and a former council member of the Ontario Bar Association. He is a member of the Advocates' Society.

In 2017, Tom was granted the degree of Doctor of Laws Honoris Causa by The Law Society of Ontario in recognition of his contributions to the legal professions and to the cause of access to justice.

In 2023, the County of Carleton Law Association awarded Tom the Carleton Medal. The Carleton Medal "is given to a lawyer (including a retired lawyer, judge, former judge, or paralegal) who is most deserving of recognition for great diligence, high ideals and outstanding leadership in the practice of law throughout their career. Those who will receive the medal will have made a significant contribution to the profession of law, whether as a solicitor in effectively performing services in that position, as a barrister in attaining an excellent reputation in the courts, as an academic, or for a single act of notable distinction that advances the ideals of the profession."

In his spare time, Tom has coached Special Olympics Cross-Country Skiing. In 2017, he received his "20-year pin" for his many years of service as volunteer skier with the Canadian Association of Disabled Skiers.

## Education

- LL.B. 1987 – University of Ottawa
- M.A. (History) 1984 – University of Calgary
- B.A. (History) 1984 – University of Calgary
- B.A. (English) 1982 – University of Calgary

## Bar Admission

- 1989 – Ontario

## Affiliations

- County of Carleton Law Association
- The Advocates Society
- The Canadian Bar Association
- Law Society of Alberta (Honourary)
- Law Society of Saskatchewan (Honourary)
- Law Society of Manitoba (Honourary)

1

# EXHIBIT 4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

144744323.6



## Kevin Caron

### Biography

Kevin Caron was called to the bar of Ontario in 2017. Since his call to the bar, Kevin has maintained a broad litigation practice focused on commercial disputes, with an emphasis on corporate and shareholder litigation. Kevin frequently represents clients in shareholder oppression cases, commercial contracting disputes, corporate governance disputes and injunction proceedings. Kevin has also represented clients in construction cases, products liability cases, professional negligence cases, procurement cases, employment cases, defamation actions, tort actions and insolvency matters.

Kevin has successfully represented clients in every level of court in Ontario. He has conducted several trials before the Ontario Superior Court of Justice and successfully made appeals before the Ontario Divisional Court and the Ontario Court of Appeal. Kevin has also successfully represented clients in numerous arbitrations and mediations, which are a prominent feature of the commercial litigation landscape. In addition, Kevin also maintains an administrative law practice. He has successfully represented clients before administrative bodies, including the Land Planning Appeals Tribunal, the Canadian International Trade Tribunal, the Patented Medicine Prices Review Board, and panels created pursuant to the Agreement on Internal Trade.

Kevin holds an Honours Bachelor of Arts and a Juris Doctor, both from the University of Ottawa. Since his call to the Bar of Ontario, Kevin has practiced with Conway Baxter Wilson LLP ("Conway Litigation"). He was named a partner of the firm in January 2023. Conway Litigation is based in Ottawa, Ontario. It is a boutique firm that practises exclusively in trial and appellate advocacy, in contested proceedings before administrative tribunals and in domestic and international commercial arbitrations. Conway Litigation has successfully represented in all levels of court in Ontario and before the Supreme Court of Canada.

### Education

- Juris Doctor (2016) – University of Ottawa.
- B.A. Hons., (2013) – University of Ottawa.

### Bar Admission

- 2017 – Law Society of Ontario

### Affiliations

- The Advocates' Society

- The County of Carleton Law Association
- The Ontario Bar Association