BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
NICHOLAS A. KOFFROTH, ESQ.
Nevada Bar No. 16264
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
        nkoffroth@foxrothschild.com
*Counsel for Debtor*

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF NEVADA

| In re | Case No. BK-23-10423-mkn |
|---|---|
| CASH CLOUD, INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | **DECLARATION OF DANIEL AYALA IN SUPPORT OF APPLICATION FOR ORDER AUTHORIZING RETENTION AND EMPLOYMENT OF CONWAY BAXTER WILSON LLP/S.R.L. AS SPECIAL LITIGATION COUNSEL TO DEBTOR, EFFECTIVE AS OF THE PETITION DATE** |
| | Hearing Date: OST Pending |
| | Hearing Time: OST Pending |

I, Daniel Ayala, declare as follows:

1. I am the Independent Director of Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case").

2. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

1

3.  I make this Declaration in support of Debtor's *Application for Entry of Order Authorizing Retention and Employment of Conway Baxter Wilson LLP/S.R.L. as Special Litigation Counsel to Debtor, Effective of the Petition Date* (the "Application").[1]

4.  On August 11, 2022, Debtor initiated litigation by filing a complaint against BitAccess (the "BitAccess Complaint"), entitled *Cash Cloud Inc. v. BitAccess, Inc.*, Case No. CV-22-00089887-0000 (the "BitAccess Action"), in the Superior Court of Justice in Ottawa, Ontario, Canada (the "Ottawa Court"). Debtor has also initiated a companion arbitration proceeding against BitAccess before the Canadian Arbitration Association ("BitAccess Arbitration").

5.  Debtor desires to retain CBW to assist representing Debtor in the BitAccess Arbitration in Canada. A true and correct copy of the engagement agreement between Debtor and CBW is attached as **Exhibit 1** to the Caron Verified Statement (the "Engagement Agreement").

6.  The BitAccess Action and the BitAccess Arbitration (collectively, the "BitAccess Litigation") concern BitAccess' improper termination of its software services to Debtor—software services that Debtor used to operate its digital currency kiosks. A true and correct copy of the BitAccess Complaint is attached as **Exhibit 2** to the Caron Verified Statement.

7.  The BitAccess Action was aimed at obtaining injunctive relief pending the appointment of an arbitral tribunal within the context of the BitAccess Arbitration. An arbitral tribunal (the "Arbitral Tribunal") was appointed in November 2022.

8.  Following the Petition Date, there were ongoing negotiations between the Debtor and the Official Committee of the Unsecured Creditors (the "Committee") with respect to whether the Debtor should make the Arbitral Deposits to enable the BitAccess Arbitration to proceed. During these negotiations, the Debtor did not move forward to apply for CBW's employment, because it was uncertain whether the BitAccess Arbitration would proceed.

9.  Because the BitAccess Arbitration involves complex issues and impending deadlines, and their outcome will have a significant impact on Debtor's estate, Debtor believes that its

---

[1] Capitalized terms not defined herein shall have the meanings assigned to them in the Application.

2

representation by CBW as its special litigation counsel in the BitAccess Arbitration is in the best interest of Debtor and the estate.

10. CBW's services have provided a significant benefit to the estate since the Petition Date. In this regard, CBW acted to preserve the rights of the estate in the BitAccess Arbitration, which is governed by Ontario law. CBW has further advanced the arbitration forward post-petition in its pre-trial stages. Furthermore, the prosecution and/or settlement of the BitAccess Arbitration may result in significant value to the estate. The compensation sought by CBW of its post-petition services is reflective of a reasonable value of the services that CBW provided to the estate.

11. A satisfactory explanation for the failure to obtain prior judicial approval exists. CBW is foreign counsel in an arbitration under Ontario law and its attorneys are not familiar with the bankruptcy law of the United States. In this regard, the Debtor has not sought judicial recognition of the Chapter 11 proceeding in Canada. Furthermore, the Debtor did not move forward with CBW's employment application while there were ongoing negotiations with the Committee with respect to whether the Debtor should make the Arbitral Deposits to permit the BitAccess Arbitration to proceed. Following the Committee's approval of the Arbitral Deposits, counsel for the Debtor communicated the employment requirements to CBW. There is no prejudice arising from the lack of prior approval of CBW's employment.

12. Debtor selected CBW because of its excellent qualifications, its reasonable fee structure, and its prior relationship with Debtor in dealing with the BitAccess Litigation.

13. CBW's services will not be duplicative of any other professionals providing services to Debtor.

14. CBW is well qualified to serve as Special Counsel to Debtor. CBW is a Canadian law firm specializing in litigation. Attorneys at CBW are experienced in representing companies in all manner of complex commercial litigation, including before arbitral tribunals and all levels of court in Canada. Mr. Thomas Conway and Mr. Kevin Caron of CBW will have carriage of this matter. They are both partners at CBW. Mr. Thomas Conway has in excess of 35 years of complex commercial litigation experience and Mr. Kevin Caron has in excess of 7 years of complex

commercial litigation experience.  The combined experience of Mr. Conway and Mr. Caron makes CBW well suited to represent Debtor in the BitAccess Arbitration in Canada.

15. Accordingly, Debtor respectfully submits that the employment and retention of CBW is in the best interests of Debtor and its estate.

16. Debtor proposes to employ CBW as special litigation counsel to Debtor for the BitAccess Arbitration.  Specifically, Debtor anticipates CBW will provide counsel on the various Canadian statutory and common law issues raised in the BitAccess Arbitration.  This includes all aspects of discovery, pre-trial motion practice, trial/hearings, and post-trial services, if necessary (the "Services").

17. Based on the foregoing, CBW is well-qualified to perform the Services and legally represent Debtor in the BitAccess Arbitration, specifically with respect to CBW's extensive experience of complex commercial litigation matters.

18. The scope of CBW's Services has been set forth in the Engagement Agreement executed by both CBW and Debtor.

19. Debtor shall compensate CBW for the Services rendered to Debtor.  Pursuant to the Engagement Agreement, CBW will be paid an hourly rate. The amount of compensation to be paid to CBW by Debtor for the Services rendered will fluctuate depending on the attorney working on the matter.  Generally, CBW's rates range from $300 to $750 Canadian Dollars per hour.  Mr. Caron's rate for this matter is $450 Canadian Dollars per hour and he will be the primary attorney working on this matter from CBW.

20. CBW shall also seek reimbursement for the expenses and costs incurred on Debtor's behalf in connection with the BitAccess Arbitration, to the maximum amount permitted by Canadian law.

21. Prepetition, Debtor provided CBW with a retainer, of which $59,104.59 Canadian Dollars was remaining on the Petition Date (the "Retainer").  CBW deposited the Retainer in its trust account.  CBW will apply the Retainer and the Surplus to any outstanding and overdue balances owing pursuant to the interim compensation procedures set forth in this Court's *Order Granting Debtor's Motion Pursuant to 11 U.S.C. §§ 105(a) and 331, And Fed. R. Bankr. P. 2016, Authorizing*

*and Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 321]. At the end of CBW's representation, it will apply the remaining Retainer and Surplus (if any) to any outstanding fees and/or expenses owing that are approved by the Court pursuant to CBW's Final Fee Application and return any unearned funds to Debtor at that time.

22. Debtor respectfully submits that the proposed fee arrangement with CBW in accordance with rendering of its Services, and as set forth above and in the Engagement Agreement, is both fair and reasonable in light of: (i) industry practice; (ii) the similarity to market rates both in and out of Chapter 11 proceedings; (iii) CBW's general experience, and in particular with commercial litigation matters, and Canadian law in general; and (iv) the type of work to be performed pursuant to its retention.

23. No prior application for the relief requested herein has been made to this Court or any other court.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed this 6th day of February 2024 in Las Vegas, Nevada.

                                                */s/Daniel Ayala*
                                                 Daniel Ayala