James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Facsimile: (702) 926-9683
Email:  jshea@shea.law
          blarsen@shea.law
          kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email:  glee@mofo.com
          akissner@mofo.com

*Attorneys for Enigma Securities Limited*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| IN RE: | Case No.: BK-23-10423-MKN |
|---|---|
| CASH CLOUD INC., dba COIN CLOUD, | Chapter 11 |
| Debtor. | Hearing Date: OST REQUESTED<br>Objection Deadline: OST REQUESTED |

### ENIGMA SECURITIES LIMITED'S MOTION TO ENFORCE SALE ORDER ON ORDER SHORTENING TIME

Enigma Securities Limited ("Enigma"), by and through its undersigned counsel, hereby

1

ny-2818913

submits this motion (the "Motion") to enforce the *Order: (A) Confirming Auction Results; (B) Approving the Sale of Certain of Debtor's Assets to Heller Capital Group, LLC, and Genesis Coin, Inc., Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (C) Authorizing the Assumption and Assignment of Certain of the Debtor's Executory Contracts and Unexpired Leases Related Thereto; and (D) Granting Related Relief* [ECF No. 795] (the "Sale Order"),[1] and respectfully states as follows:

## PRELIMINARY STATEMENT

1. Pursuant to the Sale Order, the Debtor was directed to hold the Sale Proceeds in escrow pending a determination of the Debtor's request to surcharge more than half of those proceeds to pay the fees of estate professionals. In addition, Enigma understands that the Debtor has also retained Sale Proceeds relating to approximately 500 DCMs over which Enigma held a lien, but which lien was subject to a purported challenge identified by the official committee of unsecured creditors appointed in this case (the "Committee") in its motion for derivative standing [ECF No. 925] (the "Standing Motion").

2. The Court recently denied the Debtor's surcharge request in its entirety. Although the Committee has appealed that decision to the United States Bankruptcy Appellate Panel of the Ninth Circuit (the "BAP"), neither the Debtor nor the Committee have sought a stay of the Surcharge Denial Order (defined herein) pending appeal from either this Court or the BAP. Further, though the Court granted the Standing Motion, the Committee failed to file a complaint asserting its challenge to Enigma's liens within the three-day period set by the Final DIP Order (as defined herein)—meaning that the Committee's challenge has been forever waived, released, and barred.

3. As a result, there is no longer any uncertainty as to the rightful owner of the Sale Proceeds relating to Enigma's collateral: it is Enigma. Yet, when Enigma reached out to the Debtor to inquire as to when the Debtor intended to remit the Sale Proceeds to Enigma, the Debtor responded in conclusory fashion that it would continue to hold all Sale Proceeds pending the

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Order.

2

ny-2818913

1   disposition of the Committee's appeal.  When Enigma requested an explanation of the Debtor's
2   legal basis for doing so, the Debtor declined to elaborate.
3       4.   Enigma has also requested on numerous occasions that the Debtor provide an
4   accounting of the Sale Proceeds held on Enigma's behalf in accordance with the Sale Order—
5   requests that have fallen on similarly deaf ears.  Instead, all the Debtor has provided is a so-called
6   "escrow activity report," which, alarmingly, suggests that in March 2024, ***all funds were released***
7   ***from escrow to the Debtor, contrary to the express terms of the Sale Order***.  The report also
8   suggests that, contrary to the Bankruptcy Code's directive that debtors "make such deposit or
9   investment" of funds "as will yield the maximum reasonable net return" (11 U.S.C. § 345(a)), for
10  nearly a year and a half the Sale Proceeds have been sitting in a non-interest-bearing account.
11      5.   Subsequent requests by Enigma for further information from the Debtor have gone
12  ignored.  Accordingly, Enigma now seeks the Court's assistance in enforcing the Sale Order.

### JURISDICTION AND VENUE

14      6.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.
15  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).
16      7.   Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.
17      8.   Pursuant to LR 9014.2, Enigma consents to the entry of a final order to the extent
18  the Court, absent the consent of the parties, cannot enter final orders consistent with Article III of
19  the United States Constitution.

### BACKGROUND

21      9.   On June 30, 2023, the Bankruptcy Court entered the Sale Order, which approved
22  the sale of substantially all the Debtor's DCM kiosks to Heller Capital Group, LLC.  Certain of
23  the sold kiosks constituted Enigma's collateral.  As such, the Sale Order required that the Debtor
24  immediately pay Enigma all Sale Proceeds allocable to Enigma's collateral (the "Enigma
25  Collateral Proceeds") that exceeded the amounts sought to be surcharged by the debtor, and to
26  hold the remaining proceeds "in escrow . . . for the sole use and purpose of distribution to Enigma

**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

3

ny-2818913

or payment to the Debtor's estate . . . in accordance with" the Court's ruling on any surcharge request by the Debtor. Sale Order, ¶ 19(a).

10. On July 24, 2023, the Debtor filed the *Motion for Entry of an Order Authorizing Debtor to Surcharge the Collateral of Genesis Global Holdco, LLC, Enigma Securities Limited, and AVT Nevada L.P.* [ECF No. 926] (the "Surcharge Motion"), which sought to surcharge approximately 56% of the Sale Proceeds to repay the fees and expenses incurred by estate professionals in connection with the Sale. That same day, the Committee filed the Standing Motion seeking, among other things, leave to file an adversary complaint to avoid Enigma's liens on approximately 500 DCMs.

11. On October 4, 2024, the Bankruptcy Court entered an order denying the Surcharge Motion [ECF No. 1794] (the "Surcharge Denial Order"), and an order granting the Standing Motion [ECF No. 1793] (the "Standing Order").

12. Although the Committee has filed a notice of appeal of the Surcharge Denial Order, to Enigma's knowledge, the Committee has not sought a stay of the Surcharge Denial Order pending appeal. Accordingly, the Surcharge Denial Order remains in full force and effect.

13. With respect to the Standing Order, pursuant to the *Final Order Under Bankruptcy Code Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Bankruptcy Rules 2002, 4001, 6004 and 9014 Authorizing Debtor to (A) Obtain Postpetition Financing and (B) Grant Adequate Protection* [ECF No. 315] (the "Final DIP Order"), any challenges to the Debtor's stipulations to the validity, extent, and perfection of Enigma's liens (a "Lien Challenge") "shall be deemed to be forever released, waived and barred" unless a party in interest with requisite standing "commences . . . a contested matter, adversary proceeding or other action . . . challenging" such stipulations in advance of the "Challenge Period Termination Date," which deadline "shall toll . . . until [] three (3) days following entry of an order either granting or denying the Standing Motion . . . ." Final DIP Order, ¶¶ 17(b), (c).

14. As previously noted, the Bankruptcy Court entered the Standing Order on October 4, 2024—well over a month ago. However, to Enigma's knowledge, the Committee has not

4

ny-2818913

commenced "a contested matter, adversary proceeding or other action" asserting the claims identified in the Standing Motion. Accordingly, any Lien Challenge to the validity, extent, or perfection of Enigma's liens on its collateral has been "forever released, waived and barred." Final DIP Order, ¶ 17(b).

15. On October 8 and October 15, 2024, counsel to Enigma reached out to the Debtor's counsel via email to inquire as to the expected timing for further distributions of the escrowed Sale Proceeds. After receiving no substantive response, on October 23, 2024, counsel to Enigma followed up by formal correspondence to Debtor's counsel to request (a) "an accounting of all sums held by the debtor in escrow for the benefit of Enigma as required by the Sale Order, including all interest accrued thereon" and (b) that the Debtor "[r]emit all such sums to Enigma" promptly. Letter from Andrew Kissner to Brett Axelrod (Oct. 23, 2024), a copy of which is attached as **Exhibit 1** to the *Declaration of Andrew Kissner* [ECF No. 1820] (the "Kissner Declaration").

16. On October 28, 2024, counsel to the Debtor informed Enigma's counsel that "there will not be any further distribution of the sale proceeds pursuant to the confirmed plan" until all appeals of the Surcharge Denial Order are fully and finally resolved. Letter from Brett Axelrod to Andrew Kissner (Oct. 28, 2024), a copy of which is attached as **Exhibit 2** to the Kissner Declaration. The Debtor's letter cited two defined terms from the *Debtor's First Amended Chapter 11 Plan of Reorganization Dated August 1, 2023* [ECF No. 996] (the "Plan") but did not otherwise explain the Debtor's justification for retaining the Sale Proceeds pending disposition of the Committee's appeal of the Surcharge Denial Order. The Debtor's letter did not respond to Enigma's request for an accounting of escrowed funds, nor did it address Enigma's contention that the deadline for the Committee to assert a Lien Challenge had passed and that any such challenge was now forever released, waived, and barred.

17. On October 31, 2024, counsel to Enigma sent another letter to the Debtor's counsel requesting a further explanation of the Debtor's proffered rationale for retaining the Sale Proceeds pending appeal; reminding the Debtor that the deadline to assert a Lien Challenge had passed; and

5

ny-2818913

reiterating Enigma's request for an accounting of all escrowed funds. *See* Letter from Andrew Kissner to Brett Axelrod (Oct. 31, 2024), a copy of which is attached as **Exhibit 3** to the Kissner Declaration.

18. On November 4, 2024, the Debtor responded to Enigma's letter by email attaching an "escrow activity report" (the "Activity Report")[2] purporting to show the disposition of the Sale Proceeds held by the Debtor. The Activity Report suggests that none of the Sale Proceeds held by the Debtor earned any interest while in escrow. More troublingly, the Activity Report suggests that all the Sale Proceeds were released from escrow ***to the Debtor*** in March 2024, in violation of the Sale Order. Instead, it appears from the latest monthly operating reports filed by the Debtor that the Sale Proceeds are being held in a checking account labeled "Accounts Payable" that is non-interest-bearing. *See Chapter 11 Monthly Operating Report for the Month Ending: 7/31/2024*, Ex. 1 [ECF No. 1816-1]; *Chapter 11 Monthly Operating Report for the Month Ending: 8/31/2024*, Ex. 1 [ECF No. 1817-1] (collectively, the "Monthly Operating Reports"). Also concerning is that the bank statements attached to the Monthly Operating Reports do not reflect that the Sale Proceeds are being held for the benefit of third parties or are otherwise separate from the Debtor's own operating funds.

19. On November 6, 2024, counsel to Enigma again reiterated its request for a full accounting of all Sale Proceeds, confirmation of where and by whom the funds were being held (and in what capacity), and confirmation that the Debtor did not intend to turn over the Sale Proceeds to Enigma. As of the date hereof, the Debtor has not provided Enigma with any response.

**RELIEF REQUESTED**

20. By this Motion, Enigma respectfully requests that the Court enter an order (a) directing the Debtor to turn over all Enigma Collateral Proceeds to Enigma; (b) in the alternative, directing the Debtor to turn over all Enigma Collateral Proceeds relating to the Committee's waived Lien Challenge; (c) directing the Debtor to place any remaining Sale Proceeds in a segregated, interest-bearing account; (d) directing the Debtor to account for all funds

---

[2] A copy of the Activity Report is attached as **Exhibit 4** to the Kissner Declaration.

6

ny-2818913

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

1  held in escrow (including accrued interest thereon) as required by the Sale Order; and (e) granting
2  such other relief as the Court may deem just and proper.

3  **BASIS FOR RELIEF**

4  21.  Bankruptcy Code section 105(a) authorizes the Court to "issue any order . . .
5  necessary or appropriate to carry out the provisions of this title" and confirms the authority of the
6  Court to take "any action or mak[e] any determination necessary or appropriate to enforce or
7  implement court orders . . . ."  11 U.S.C. § 105(a).

8  22.  Further, the Sale Order states that the Court "shall retain jurisdiction to . . . enforce
9  the terms and provisions" of the Sale Order and "adjudicate, if necessary, any and all disputes
10 concerning or relating in any way" to the sale of assets authorized thereunder.  Sale Order, ¶ 20.

11 **LEGAL ARGUMENT**

12 **A.  The Debtor Must Turn Over All Sale Proceeds Relating to Enigma's Collateral**

13 *1.  The Sale Order Directed the Debtors to Pay Enigma its Portion of the Sale
14     Proceeds Upon Entry of an Order Regarding the Surcharge Motion*

15 23.  The Sale Order provides that, no later than "the date on which the Court enters an
16 order with respect to the Surcharge Motion," the Debtor "is authorized and directed to pay . . . to
17 Enigma the Sale proceeds . . . allocated to" the Enigma Collateral.  Sale Order, ¶ 19.  The Court
18 entered the Surcharge Denial Order on October 4, 2024, and no party has sought a stay of the
19 effectiveness of the Surcharge Denial Order pending appeal.  *See* Fed. R. Bankr. P. 8007(a), (b)
20 (party must seek relief from bankruptcy court or BAP to stay effectiveness of order pending
21 appeal).  Accordingly, under the plain text of the Sale Order, the Debtor must pay to Enigma all
22 Enigma Collateral Proceeds being held by the Debtor.

23 24.  Nothing in the Plan excuses the Debtor's failure to do so.  To the contrary, the Plan
24 expressly adopts the provisions of the Sale Order, in that it requires the Debtor to, "***in accordance***
25 ***with the Sale Order*** . . . remit to Enigma the Enigma Collateral Proceeds" in excess of "the
26 Disputed Surcharge Claims against Enigma" and "the Value of the Enigma Collateral subject to
27 an alleged Challenge."  Plan, § 3.2(d)(i) (emphasis added).  The Plan states that the term Disputed

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

7

ny-2818913

Surcharge Claims shall have "the meaning assigned to it in the Sale Order" (Plan, § 1.1), and the Sale Order in turn defines Disputed Surcharge Claims as any surcharge claim asserted by the Debtor that was not otherwise consensually resolved by agreement of the parties prior to the filing of the Surcharge Motion. Sale Order, ¶ 18. The Plan therefore expressly adopts, rather than supersedes, the terms of the Sale Order, which directed the Debtor to "pay . . . to Enigma the Sale proceeds . . . allocated to" the Enigma Collateral no later than "the date on which the Court enters an order with respect to the Surcharge Motion." *Id.*, ¶ 19.

25. Despite the Debtor's assertions, neither the Plan nor the Sale Order authorizes the Debtor to retain the Sale Proceeds pending the disposition of the Committee's appeal of the Surcharge Denial Order. The Debtor must remit to Enigma all Enigma Collateral Proceeds in its possession, along with any accrued interest thereon, immediately.

    *2.    At a Minimum, Challenge-Related Proceeds Must Be Released Because the Deadline to Assert a Lien Challenge Has Expired*

26. Even if the Debtor were correct that it is permitted under the Sale Order to retain the Enigma Collateral Proceeds pending an appeal of the Surcharge Denial Order (and it is not), there is no justification whatsoever for the Debtor's continued retention of the proceeds relating to the approximately 500 DCMs subject to the Lien Challenge asserted in the Standing Motion (the "<u>Challenge Proceeds</u>").

27. Although the Standing Order authorized the Committee to file an adversary complaint asserting the Lien Challenge, the Final DIP Order required that any such complaint be filed not less than "three (3) days following entry of an order . . . granting . . . the Standing Motion . . . ." Final DIP Order, ¶¶ 17(b), (c). It has now been over one month since the entry of the Standing Order and, to Enigma's knowledge, the Committee has not filed a complaint asserting the Lien Challenge. Accordingly, the Lien Challenge has been forever "forever released, waived and barred." Final DIP Order, ¶ 17(c).

28. As a result, there is no longer any uncertainty as to which party is entitled to the Challenge Proceeds: those proceeds conclusively belong to Enigma, and the Sale Order requires

8

ny-2818913

the Debtor to remit the Challenge Proceeds (along with any accrued interest thereon) to Enigma immediately.

**B.     The Court Should Order the Debtor to Place Any Remaining Sale Proceeds in an Interest-Bearing Account**

29.     To the extent to the Court does not direct the immediate payment of ***all*** Enigma Collateral Proceeds to Enigma—and for the reasons set forth herein, Enigma respectfully submits that it should—then the Court should direct the Debtor to place any Sale Proceeds that remain in escrow into a segregated, interest-bearing account.

30.     As other courts have recognized under factually analogous circumstances, where proceeds of a bankruptcy sale are placed into escrow pending resolution of an ownership dispute, the prevailing party is entitled to receive interest accrued thereon in the interim.  *See, e.g., In re Levine*, 45 B.R. 333, 338 (N.D. Ill. 1984) (bank whose collateral was subject to sale entitled to interest on escrowed proceeds because "freezing of the funds in escrow effectively deprived Bank of the use of the money, a loss of use compensable by distribution of the yield derived on the fund during the escrow period"); *cf.* Fed. R. Civ. P. 67(b) (interpleader funds "must be deposited in an interest-bearing account or invested in a court-approved, interest-bearing instrument").

31.     To allow the escrowed Sale Proceeds to diminish in value due to the passage of time also would be inconsistent with the Bankruptcy Code's directive that the debtor deposit funds in a manner "as will yield the maximum reasonable net return" on such funds. 11 U.S.C. § 345(a); *see also* United States Trustee Program Policy and Practices Manual, § 7-1.2.2 (2011) ("Trustees must deposit and invest funds of the estate in accordance with section 345 in order to provide a maximum, reasonable net return.  Generally, this means that trustees should invest funds in interest bearing accounts.").[3]

---

[3] Available at https://www.justice.gov/ust/file/volume_7_banking_and_bonding.pdf/dl?inline (last accessed Nov. 13, 2024).

9

ny-2818913

SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
(702) 471-7432

### C. Enigma Is Entitled to an Accounting of All Funds Held for Its Benefit

32. A person holding funds in escrow acts as a fiduciary for the escrow beneficiaries. *See generally* 28 Am. Jur. 2d Escrow § 23; *see also Mark Props., Inc. v. Nat'l Title Co.*, 117 Nev. 941, 945, 34 P.3d 587 (2001) (recognizing that escrow holder has fiduciary duties). Among the fiduciary duties owed to beneficiaries include those of loyalty, to exercise due care to preserve the escrowed funds, and to make full disclosure to beneficiaries. 28 Am. Jur. 2d Escrow § 23. Enigma, as beneficiary of the escrowed funds, is entitled to a full accounting of the funds being held by the debtor (or its agent) on Enigma's behalf. *See* NRS § 645A.200 (common law rights of escrow preserved under Nevada law); *cf. Matter of Keehle Amicon Prop. Tr.*, No. 70026, 134 Nev. 958, 2018 WL 1448493 (Mar. 21, 2018) (beneficiaries entitled to accounting by trustee of property held for their benefit) .

33. Despite repeated demands by Enigma, the Debtor has failed to provide an accounting of the funds held for Enigma's benefit in accordance with the requirements of the Sale Order, or any amounts earned as interest thereon. What limited information the Debtor has provided in the form of the Activity Report and Monthly Operating Reports suggests that the Sale Proceeds relating to the Enigma Collateral are no longer being held in escrow at all, but instead have been transferred to a non-interest bearing, "Accounts Payable" checking account in the name of the Debtor. In accordance with the Nevada statutory law and the common law, Enigma is entitled to a full accounting of all funds being held for its benefit.

## RESERVATION OF RIGHTS

Enigma reserves all rights with respect to the relief set forth in the Motion, including the right to (a) seek reimbursement of its fees and expenses (including reasonable attorney's fees) incurred in connection with enforcing the terms of the Sale Order and (b) assert a claim for damages incurred by Enigma due to the Debtor's failure to maintain the Sale Proceeds in a segregated, interest-bearing account.

//

//

ny-2818913

# CONCLUSION

34. For the foregoing reasons, Enigma respectfully requests that the Court enter an order granting the Motion and ordering such additional relief as it may deem appropriate.

Dated this 14th day of November 2024.

/s/ *James Patrick Shea*
James Patrick Shea, Esq.
Nevada Bar No. 405
Bart K. Larsen, Esq.
Nevada Bar No. 8538
Kyle M. Wyant, Esq.
Nevada Bar No. 14652
**SHEA LARSEN**
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 471-7432
Facsimile: (702) 926-9683
Email:   jshea@shea.law
             blarsen@shea.law
             kwyant@shea.law

-and-

**MORRISON & FOERSTER LLP**
Gary Lee, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 2397669
Andrew Kissner, Esq. (*Admitted Pro Hac Vice*)
New York Bar No. 5507652
250 West 55th Street
New York, New York 10019-3601
Telephone: (212) 468-8000
Facsimile: (212) 468-7900
Email: glee@mofo.com
             akissner@mofo.com

*Attorneys for Enigma Securities Limited*

ny-2818913

# CERTIFICATE OF SERVICE

1. On November 14, 2024, I served **ENIGMA SECURITIES LIMITED'S MOTION TO ENFORCE SALE ORDER ON ORDER SHORTENING TIME** in the following manner:

☒ a. ECF System: Under Administrative Order 02-1 (Rev. 8-31-04) of the United States Bankruptcy Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by the Court's facilities.

☐ b. United States mail, postage fully prepaid:

☐ c. Personal Service:

I personally delivered the document(s) to the persons at these addresses:

☐ For a party represented by an attorney, delivery was made by handing the document(s) at the attorney's office with a clerk or other person in charge, or if no one is in charge by leaving the document(s) in a conspicuous place in the office.

☐ For a party, delivery was made by handling the document(s) to the party or by leaving the document(s) at the person's dwelling house or usual place of abode with someone of suitable age and discretion residing there.

☐ d. By direct email (as opposed to through the ECF System):
Based upon the written agreement of the parties to accept service by email or a court order, I caused the document(s) to be sent to the persons at the email addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐ e. By fax transmission:

Based upon the written agreement of the parties to accept service by fax transmission or a court order, I faxed the document(s) to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

☐ f. By messenger:

I served the document(s) by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a messenger for service.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 14, 2024

By: *Bart K. Larsen, Esq.*

ny-2818913