BRETT A. AXELROD, ESQ.
Nevada Bar No. 5859
DANIEL A. MANN, ESQ.
Nevada Bar No. 15594
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
Telephone: (702) 262-6899
Facsimile: (702) 597-5503
Email: baxelrod@foxrothschild.com
dmann@foxrothschild.com
*Counsel for Debtors*

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

In re

CASH CLOUD, INC.,
dba COIN CLOUD,

Debtor.

Case No. 23-10423-mkn
Chapter 11

CASH CLOUD, INC., dba COIN CLOUD,

Plaintiff,

v.

KIOSK SERVICES GROUP, INC.

Defendant.

Adv. Case No. 23-01128-MKN

**DECLARATION OF DANIEL AYALA IN SUPPORT OF MOTION TO APPROVE SETTLEMENT AGREEMENT WITH KIOSK SERVICES GROUP, INC. PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

Hearing Date:
Hearing Time:



FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

I, Daniel Ayala, declare as follows:

1. I am the Independent Director of Cash Cloud, Inc. dba Coin Cloud ("Debtor"), debtor and debtor in possession in the above-captioned case (the "Chapter 11 Case").

2. Except as otherwise indicated herein, this Declaration is based upon my personal knowledge. I am over the age of 18 and am mentally competent. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3. I make this Declaration in support of the *Motion to Approve Settlement Agreement With Kiosk Services Group, Inc. Pursuant to Federal Rule of Bankruptcy Procedure 9019* [ECF No. 1375] (the "Motion").[1]

4. After the Petition Date: (i) the Debtor initiated a lawsuit against Kiosk Services Group, Inc. ("KSG") captioned Cash Cloud Inc. v. Kiosk Services Group, Inc., Adv. Case No. 23-01128-MKN (the "KSG Litigation").

5. The KSG Litigation concerns claims related to KSG to refund Debtor the retainer fees it gave for the maintenance of Debtor's Kiosks. Debtor paid KSG retainer fees in the total amount of seventy five thousand dollars ($75,000). KSG's services were terminated prior to the retainer fees could all be used. KSG refused to refund the remaining amount.

6. The Parties, after months of good faith, arms-length negotiations through sophisticated counsel, have reached a resolution of their disputes, which resolution is memorialized in the Settlement Agreement.

7. The outcome of continued litigation of the KSG Litigation was uncertain. KSG has, and has represented that it will continue to, vigorously defend its position with respect to the KSG Litigation. Therefore, resolving all issues associated with the KSG Litigation will provide the Debtor with certainty and a prompt resolution, while greatly reducing the costs and risk associated with litigation.

8. Absent a settlement, the Debtor and KSG would likely be embroiled in substantial, time consuming and expensive litigation, the result of which is uncertain. Such litigation would

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

require the Debtor (or its successor) to expend significant funds, which are currently scarce in the Debtor's estate. While the Debtor could possibly source financing or seek to have the KSG Litigation prosecuted on a contingency basis, such arrangements cap the benefit that success in the litigation might provide. Because the KSG Litigation was only commenced in September of 2023, the case will not be ready for trial anytime soon, such that the delay attendant to the KSG Litigation is substantial.

9. A true and accurate copy of the Settlement Agreement between Cash Cloud and KSg is attached as Exhibit 1.

10. The terms to the Settlement Agreement include, in the event that KSG fails to cure a Default, Cash Cloud may take appropriate action as necessary and as established in this Settlement Agreement.

11. The Debtor believes that the Settlement Agreement is in the best interests of its estate and creditors.

12. With the probability of success in litigation going either way, the proposed settlement agreement is reasonable, fair and equitable.

13. With respect to any difficulties to be encountered in the matter of collections, the Debtor is not collecting any settlement funds in the settlement agreement, instead it is opting for an agreed upon service from KSG.

14. The Settlement Agreement provides the mechanism to avoid costly litigation, and keep the Debtor operating successfully during the pendency of the Chapter 11 Case.

15. When analyzing the paramount interest of the creditors and a proper deference to their reasonable views in the premises, it is of utmost importance to note that the terms of the Settlement Agreement were reached in good faith, and with the goal of reaching a compromised resolution that averts the incurrence of additional administrative expense involved in litigation.

I declare, under penalty of perjury of the laws of the United States of America, that the foregoing statements are true and correct to the best of my knowledge, information and belief.

Executed this 18th day of December 2024.

*/s/Daniel Ayala*
Daniel Ayala

FOX ROTHSCHILD LLP
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
(702) 262-6899
(702) 597-5503 (fax)

# Exhibit 1



**Settlement Agreement and Mutual Release**

This Settlement Agreement and Mutual Release (the "**Settlement Agreement**") is dated as of November 19, 2024, and is made by and among Cash Cloud, Inc. d/b/a Coin Cloud, a Nevada corporation ("**Cash Cloud**"), and Kiosk Services Group, Inc., a Colorado corporation ("**KSG**" and together with Cash Cloud, the "**Settling Parties**"). All references to KSG shall include any successor or assignee of KSG. All references to Cash Cloud shall refer to Cash Cloud in its capacity as a debtor in the Chapter 11 Case (as hereinafter defined) or a reorganized debtor, as applicable, or any successor of the foregoing.

**RECITALS**

This Agreement is made with reference to the following facts:

A. On February 7, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), commencing Case No. BK-S-23-10423-MKN (the "**Bankruptcy Case**"), now pending in the United States Bankruptcy Court for the District of Nevada (the "**Bankruptcy Court**").

B. Cash Cloud is authorized to operate its business and manage its property as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

C. No request has been made for the appointment of a trustee or examiner.

D. An Official Committee of Unsecured Creditors was appointed on or about February 17, 2023.

E. KSG was a contractor to provide field services for maintaining, fixing and cleaning kiosks.

F. Cash Cloud entered into a service agreement with KSG to provide services to the Debtor from November 1, 2022, through December 31, 2023 (the "KSG Agreement").

G. Pursuant to the KSG Agreement, KSG was to provide services for Cash Cloud's Kiosks such as inspection, testing, and cleaning of the Kiosks to ensure that they were operational.

H. Cash Cloud paid KSG two retainer payments, one on January 18, 2023, and another on May 18, 2023, totaling $125,000.00 (collectively, the "Retainer Payments").

I. Cash Cloud no longer operates the Kiosks and thus is no longer in need of KSG's services.

J. Cash Cloud informed KSG that it no longer needed KSG's services.

K. KSG no longer provides services to Cash Cloud.



L. Given that KSG no longer provides services to Cash Cloud, Cash Cloud requested the return of $72,336.66, the amount of the Retainer Payments remaining after KSG debited its charges against the Retainer Payment ("Remaining Retainer"), but KSG rejected the request indicating the Retainer Payments were non-refundable and that Cash Cloud forfeited these funds.

M. On September 18, 2023, Cash Cloud filed a complaint (the "**Complaint**") with the Bankruptcy Court, and thereby commenced a lawsuit (the "**Lawsuit**"), against the KSG ("**Defendant**"), which Lawsuit is known as Cash Cloud, Inc., dba Coin Cloud v. Kiosk Services Group, Inc. (case number: [23-01128-mkn]).

N. On the terms set forth below, the Parties desire to resolve any and all disputes among them, whether concerning the obligations, if any, due by KSG to Cash Cloud pursuant to the service agreement, the Lawsuit or otherwise.

**AGREEMENT**

NOW, THEREFORE, in consideration of the above recitals and mutual agreements which follow and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**1. Recitals; Defined Terms.**

The above Recitals are true and correct and are hereby incorporated herein. Any capitalized terms used by not defined in this Settlement Agreement shall have the meanings ascribed in the Plan.

1.1 **Certain Definitions.** For purposes of this Agreement, the following terms shall have the following meanings:

(a) "**Claims**" means any and all charges, complaints, claims, liabilities, obligations, promises, agreements, covenants, controversies, damages, lawsuits, actions, causes of action, suits, demands, debts, losses, judgments, liens, matters, and issues of any nature whatsoever.

(b) "**Released Matters**" means (i) any goods or services provided by KSG to Cash Cloud prior to this Settlement Agreement and Mutual Release that relate to: (i) any disputes arising out of any agreement(s) or contract(s) entered into by the Parties; and (ii) any amounts claimed to be due to Cash Cloud (whether the principal amount, interest, collection costs, or otherwise) in relation to the provision of such goods, services, or contracts.

(c) "**Representative**" means, with respect to any person, such person's director, officer, employee, agent, legal counsel, or other representative, each in its capacity as such.

**2. Agreement Effective Date.**

2.1. Within five (5) business days after the execution and delivery of the Settlement



Agreement by the Settling Parties (the "**Execution Date**"), Cash Cloud shall file a motion in the Chapter 11 Case pursuant to Section 105 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4001 and 9019 (the "**9019 Motion**"), for approval of the Settlement Agreement. Cash Cloud shall seek to obtain, and KSG hereby consents to, an order shortening time to hear the 9019 Motion on an accelerated basis. Cash Cloud shall further seek a waiver of the 14-day stay in the order approving the 9019 Motion (the "**9019 Order**").

2.2. The date upon which the 9019 Order is docketed in the Chapter 11 Case, or, if the 14-day stay is not waived, the fifteenth (15th) day following entry of the 9019 Order, shall be hereinafter referred to as the "**Agreement Effective Date**."

2.3. The Settlement Agreement shall become binding on the Agreement Effective Date. Notwithstanding the foregoing, the Settling Parties understand that time is of the essence and agree to use their best efforts to implement the terms of the Settlement Agreement from and after the Execution Date.

**3. KSG's Obligations**.

3.1. Duty of Cooperation. For a six-month period, KSG agrees to cooperate fully and in a timely manner with Cash Cloud and its counsel, and agrees to provide unlimited assistance to Cash Cloud in relation to Cash Cloud's arbitration with BitAccess scheduled for November 25, 2024 to December 6, 2024 (the "**BitAccess Arbitration**"). KSG shall provide a remote witness to testify at the BitAcccess Arbitration. KSG shall provide a witness with direct and personal knowledge of the services provided to Cash Cloud, including the steps taken to convert the software on Coin Cloud's machines from BitAccess software to CCOS and other services KSG provided after Aug 4, 2022.

3.2. KSG further agrees to appear for remote conferences and to provide the officers of Cash Cloud, its consultants and its counsel, with the full benefit of KSG's knowledge with respect to KSG's services to Cash Cloud, including, but not limited to: (a) describing its manual software conversion process from a technical perspective; (b) describing the item descriptions in KSG's invoices; (c) describing the "Breakfix" tasks performed; (c) describing all software conversion issues and bugs in CCOS software; (d) describing the nature of the software conversion costs; and (e) describing the general difficulties experienced in the software conversion process and the resources employed to complete same.

3.3. KSG shall appear for remote conferences and be responsive to phone calls and email correspondence. Six months after the Agreement Effective Date, KSG's obligation and Duty of Cooperation under this Section will cease.

3.4.

Cash Cloud shall take no further action against KSG in the Lawsuit unless and until KSG fails to perform its obligations in sections 3.1 through 3.3 (a "**Default**") and fails to cure the Default within seven (7) days after Cash Cloud

provides written notice to KSG's legal counsel by overnight mail and electronic mail to:

**JONES & ASSOCIATES**
Roland Gary Jones, Esq.
**Jones & Associates**
1325 Avenue of the Americas
28th Floor
New York, NY 10019
Tel. (347) 862-9254
Fax (212) 202-4416
Email: rgj@rolandjones.com

**DEVINE LEGAL GROUP**
William Devine II, Esq.
**Devine Legal Group**
5940 South Rainbow Blvd.
Las Vegas, Nevada 89118
Tel: (702) 515-1500
Fax: (702) 970-7175
Email: william@devine.legal.

In the event that KSG fails to cure a Default, Cash Cloud may take appropriate action as necessary and as established in this Settlement Agreement.

**4. Dismissal.**

4.1 This Agreement resolves the Lawsuit. Accordingly, within five (5) days of the 9019 Order being entered by the Court, counsel for Cash Cloud shall cause to be entered in the Lawsuit an agreed order dismissing the Lawsuit with prejudice.

**5. Release.**

5.1. Subject to the satisfaction of the obligations established by and through Sections 3 of this Agreement, Cash Cloud, for itself and any other person claiming by, through, or on behalf of it, and all of their respective heirs, successors, and assigns (the "**Releasors**"), hereby irrevocably and unconditionally releases and forever discharges, individually and collectively, KSG, and each of its present and former parents, subsidiaries, affiliates, professionals, and predecessors, and each such person's present and former Representatives, and all of their respective heirs, successors, and assigns (the "**Releasees**") from the claims asserted in the Lawsuit and any and all claims in any way arising out of or related to any of the Released Matters, without regard to whether such Claims are fixed or contingent, known or unknown, asserted or not asserted, liquidated or unliquidated, matured or unmatured, perfected or not perfected, ripened or unripened, at law or in equity, or now existing or hereafter accruing or arising (the "**Released Claims**").

**6. Scope of Release and Discharge.**



6.1. Cash Cloud acknowledges that it may be unaware of, or may discover circumstances or facts in addition to, or different from, those which it now knows, anticipates, or believes to be true, related to or concerning the Released Claims, and that such presently unknown or unappreciated circumstances or facts could materially affect the nature of the Released Claims. It is nonetheless Cash Cloud's intent to give a full, complete, and final release and discharge of the Released Claims, subject to Section 3 of this Agreement. In furtherance of this intention, the release given in Section 5 of this Agreement shall be and remain in effect as a full and complete release with regard to the Released Claims notwithstanding the discovery or existence of any such additional or different circumstance or fact. To that end, with respect to the Released Claims, Cash Cloud expressly waives and relinquishes any and all provisions, rights, and benefits conferred by any law of the United States, or of any state or territory of the United States, or of any other relevant jurisdiction, or principle of common law, under which a general release does not extend to claims that the parties do not know or suspect to exist in their favor at the time of executing the release, which if known by the parties might have affected the parties' settlement. The Parties further acknowledge and agree that the inclusion of this Section 6.1 is a material term of this Agreement.

**7. Covenant Not to Sue.**

7.1. Except to the extent required by order or legal process issued by a governmental authority of competent jurisdiction, neither Cash Cloud nor any of the Releasors shall ever commence, prosecute, aid, or participate in any legal action or other proceeding against any of the Releasees before any governmental authority, arbitral tribunal, or other tribunal, in any jurisdiction, with respect to the Lawsuit or the Lawsuit's claims. Any breach of this covenant not to sue by any of the Releasors shall be deemed a breach of this Agreement by Cash Cloud and shall entitle the Releasee sued for any released claim or obligation to the recovery of its attorneys' fees and reasonable expenses incurred in defending such suit.

**8. Enforcement of Obligations Under this Agreement.**

8.1. For avoidance of doubt, the release set forth in Section 5 of this Agreement shall not discharge any Party's obligations under this Agreement, and a suit to enforce or to interpret this Agreement shall not be deemed a breach of the covenant not to sue contained in Section 7 of this Agreement.

**9. Ownership of Claims.**

9.1. Cash Cloud represents and warrants to KSG that it has not assigned or otherwise transferred any portion of the Lawsuit or its claims, or of any other claims, rights, actions, or causes of action that originally accrued to it and that would otherwise be released by it herein, and that it has and maintains full ownership and control of the disposition of all such claims, rights, actions, or causes of action.

**10. Authority and Ability to Perform, Enforceability.**

10.1. Each Party represents and warrants to the other Party that it is duly authorized and empowered to enter into this Agreement and to perform its obligations under this Agreement, that there are no pending agreements, transactions, or negotiations to which it is a party that would

render this Agreement or any part of it void, voidable, or unenforceable, and that, assuming due authorization, execution, and delivery by the other Party, this Agreement will be the valid, binding, and enforceable obligation of such Party.

**11. No Admission of Liability.**

11.1. This Agreement is merely the resolution of a dispute between the Parties, and neither this Agreement nor the Parties' conduct during the negotiation of this Agreement is, or shall be deemed, construed, or argued in any way to be, an admission of liability or evidence of either Party's fault, liability, or wrongdoing. On the contrary, nothing in this Agreement is, nor shall be deemed or construed in any way to be, an admission of liability or wrongdoing by any Party.

**12. Governing Law; Choice of Forum; Waiver of Trial by Jury.**

12.1. This Agreement shall be governed by, and interpreted and construed in accordance with, the laws of the State of Nevada, without regard to the conflicts-of-law principles thereof. Any action, suit, or proceeding arising out of or related to this Agreement shall be brought in the federal or state courts in or for Clark County, Nevada; each Party irrevocably submits to the exclusive jurisdiction of such courts and waives, and agrees not to assert, as a defense in any such action, suit, or proceeding that it is not subject to such jurisdiction, that such action, suit, or proceeding may not be brought or is not maintainable in such courts, or that the venue thereof is not appropriate.

**13. Binding Effect.**

13.1. This Agreement shall bind and inure to the benefit of, and be enforceable by, the Parties and their respective successors and permitted assigns. This Agreement shall not be assigned, pledged, or hypothecated by either Party without the written consent of the other Party, which consent shall not be unreasonably withheld.

**14. No Third-Party Beneficiaries.**

14.1. This Agreement shall not confer any rights or remedies upon any person other than the Parties hereto, their respective successors and permitted assigns, and the Releasees.

**15. Further Assurances.**

15.1. The Parties shall each perform, execute, acknowledge, and deliver such further acts, deeds, agreements, or instruments as may be reasonably necessary or appropriate to effectuate the intention, performance, and provisions of this Agreement.

**16. Voluntarily Entered.**

16.1. Each Party represents and warrants to the other Party that: (a) it has executed this Agreement voluntarily and with full knowledge of the consequences and implications of the obligations contained herein; (b) that it has had the opportunity to be represented by counsel of its choice throughout the negotiations which preceded the execution of

this Agreement, and in connection with the preparation and execution of this Agreement; and (c) that it has carefully and thoroughly reviewed this Agreement in its entirety.

**17. Confidentiality.**

17.1. The terms, conditions, and contents, of this Agreement and the settlement embodied therein, and the Parties' confidential negotiations, discussions, correspondence, and communications of any nature leading up to this Agreement (collectively, the "**Confidential Information**") shall not be disclosed by either Party, except: (a) with the other Party's prior written consent; (b) as requested or required by Governmental Authority, applicable law, regulation, or legal process, or as otherwise determined in good faith by such Party to be necessary to comply with such Party's obligations under applicable law or regulation; (c) to such Party's attorneys, auditors, accountants, financial advisors, and other Representatives who have a need to know and are under a duty to implement appropriate measures to maintain the confidentiality of such Confidential Information (each person identified in this clause (c), a "**Permitted Disclosee**"); or (d) as necessary to enforce the terms of this Agreement. Each Party shall instruct any Permitted Disclosee to whom it discloses Confidential Information of the contents of this Section 18 and shall be responsible for any breach of this Section 16 by any Permitted Disclosee to whom it discloses Confidential Information. If a Party or its Permitted Disclosee is requested or required to disclose any Confidential Information under the authority of any Governmental Authority of competent jurisdiction, such Party (the "**Disclosing Party**") shall promptly notify (to the extent legally permissible and practicable) the other Party (the "**Notified Party**") of such request, demand, or requirement so that the Notified Party may seek a protective order or other appropriate remedy. The Disclosing Party shall reasonably cooperate with the Notified Party if such Notified Party decides to challenge the request, demand, or requirement, except that the Disclosing Party shall not be required to bring an action or proceeding in its own name or incur or assume any costs or expenses related thereto.

**18. Notices.**

18.1. All notices, demands, and communications required or permitted to be provided hereunder shall be in writing, shall make specific reference to this Agreement, and shall be transmitted by personal delivery, sent by first-class mail with postage prepaid and return receipt requested, or delivered by a reputable overnight courier service with charges prepaid, with a copy sent by email, to the addresses set forth below or such other addresses as such Party shall have specified most recently by like notice. Any such demand, notice, or communication shall be deemed given when actually delivered to the premises of the addressee.

**19. WAIVER OF JURY TRIAL.**

19.1. TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW AND WITHOUT MODIFICATION OF ANY PROVISION OF THE SERVICE AGREEMENT, CASH CLOUD, AND KSG EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY CONTROVERSY OR CLAIM, WHETHER ARISING IN TORT OR CONTRACT OR BY STATUTE OR LAW, BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONJUNCTION WITH THE SETTLEMENT AGREEMENT OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL



OR WRITTEN) OR ACTIONS OF ANY PARTY IN CONNECTION HEREWITH OR THEREWITH. EACH PARTY ACKNOWLEDGES AND AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY PERSON TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE PARTIES' ENTERING INTO THE SETTLEMENT AGREEMENT AND THE PARTIES WOULD NOT HAVE ENTERED INTO THE SETTLEMENT AGREEMENT WITHOUT THIS WAIVER, THE PARTIES HERETO ARE EACH HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 20.1 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER OF JURY TRIAL.

**20. Time is of the Essence.**

20.1. Time is of the essence with respect to all agreements and obligations of the Parties contained herein.

**21. Execution in Counterparts.**

21.1. It is understood and agreed that this Settlement Agreement may be executed in identical counterparts and may be transmitted by email or facsimile, each of which shall be deemed an original for all purposes.

**22. Attorney Fees**

22.1. Each Party shall bear its own attorneys' fees and costs relating to the settlement negotiations and the negotiation and execution of this Settlement Agreement.

[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK.

SIGNATURE PAGE TO FOLLOW.]



IN WITNESS WHEREOF, Cash Cloud and KSG have caused this Settlement Agreement to be signed and delivered as of the date first set forth above.

Cash Cloud, Inc. d/b/a Coin Cloud,
a Nevada Corporation

By: Dan P. Ayala
Name: Daniel Ayala
Title: Independent Director

Kiosk Services Group, Inc.,
a Colorado Corporation

By: ______________________
Name: Tyler Jones
Title: CEO