BANKRUPTCY RECOVERY GROUP, LLC
TALITHA GRAY KOZLOWSKI, ESQ.
Nevada Bar No. 9040
Email: tgray@brg.legal
GARRETT NYE, ESQ.
Illinois Bar No. 6329215
(*Pro Hac Vice Pending*)
Email: gnye@brg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Tel: 702-483-6126
*Special Counsel for Debtor*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>CASH CLOUD, INC., d/b/a COIN CLOUD,<br><br>Debtor. | Case No. 23-10423<br><br>Chapter 11<br><br>Hearing Date: February 12, 2025<br>Hearing Time: 9:30 a.m. |

**MOTION: (I) PURSUANT TO FED. R. BANKR. P. 9019 TO AUTHORIZE AND APPROVE SETTLEMENTS BETWEEN DEBTOR AND (1) SECTRAN SECURITY INC., (2) TEAM AIR EXPRESS INC., (3) PISANELLI BICE, LLC ,AND (4) BANDWIDTH INC.; AND (II) PURSUANT TO FED. R. BANKR. P. 328, 330, AND 331 FOR AWARD AND PAYMENT OF CONTINGENCY FEE**

Coin Cloud, Inc. d/b/a Coin Cloud ("Debtor"), by and through its special counsel, Bankruptcy Recovery Group, LLC, hereby submits this motion (the "Motion") for: (i) entry of an order pursuant to Bankruptcy Rule[1] 9019, substantially in the form attached hereto as **Exhibit 2** (the "9019 Order"), approving the proposed Settlement Agreements by and between the Debtor and (1) Sectran Security Inc., (2) Team Air Express Inc., (3) Pisanelli Bice, LLC, and (4)

---

[1] Unless otherwise stated, all references to "Section" herein shall be to title 11 of the U.S. Code (the "Bankruptcy Code"); all references to a "Bankruptcy Rule" shall refer to the Federal Rules of Bankruptcy Procedure; and all references to a "Local Rule" or "LR" shall refer to the Local Rules of Bankruptcy Practice of this Court.

Bandwidth Inc. (together, the "Settling Transferees"), attached hereto as **Exhibits 3-6** (the "Settlement Agreements"); and (ii) pursuant to Sections 328, 330, and 331, allowing Bankruptcy Recovery Group's ("BRG") contingency fee and reimbursement of expenses for each of the foregoing settlements. A summary of each the claims asserted against each of the Settling Transferees, the defenses raised by the Settling Transferees, and the amount of each settlement is attached hereto as **Exhibit 1.**

This Motion is made and based upon the following memorandum of points and authorities, the declarations of Daniel P. Ayala (the "Ayala Decl.") and Talitha Gray Kozlowski (the "Gray Kozlowski Decl.") filed concurrently herewith, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and any argument of counsel entertained by the Court at the time of the hearing of the Motion.

**I.
BACKGROUND**

1. Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 7, 2023, thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases"). *See* ECF No. 1.[2]

2. On October 31, 2024, the Court authorized Debtor to retain BRG as special counsel to prosecute Debtor's estate's actions arising under Chapter 5 of the Bankruptcy Code (the "Chapter 5 Claims") on a contingency fee arrangement. *See* ECF No. 1814.

3. After being employed as Debtor's special counsel to prosecute the Chapter 5 Claims, BRG analyzed Debtor's estate's Chapter 5 Claims against each of the Settling Transferees and sent demand letters accompanied with draft complaints (the "Demand Packages") to each of the Settling Transferees. *See* Gray Kozlowski Decl. ¶ 3.

4. After receiving the Demand Packages, each of the Settling Transferees either accepted Debtor's initial settlement offer or provided responses, either asserting defenses,

---

[2] Unless otherwise stated herein, all ECF references are to the docket in the lead case.

including new value and ordinary course defenses, or making a counteroffer to the settlement offer made by Debtor. *Id.* ¶ 4. A brief description of defenses raised by the Settling Transferees is contained in Exhibit 1.

5. Each defense asserted by the Settling Transferees was reviewed and analyzed, informal discovery was undertaken where necessary, and negotiations ensued resulting in the proposed settlements summarized on Exhibit 1 and memorialized in the Settlement Agreements. *Id.* ¶ 5; Ayala Decl. ¶ 4.

## II.
## JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and LR 1001(b)(1), the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and venue in this Court is proper pursuant to 28 U.S.C. §§ 1408(1) and 1409(a).

7. Pursuant to LR 9014.2, the Debtor consents to entry of a final order or judgment by the bankruptcy judge if it is determined that the bankruptcy judge, absent consent of the parties, cannot enter final orders for judgment consistent with Article III of the U.S. Constitution.

8. The statutory bases for the relief requested herein are Sections 105, 328, and 330 of the Bankruptcy Code and Bankruptcy Rule 9019(a).

## III.
## LEGAL ARGUMENT

**A.    Applicable Standard Under Bankruptcy Rule 9019.**

Compromise and settlement agreements have long been an integral part of the bankruptcy process. *See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157 (1958) (*citing Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130, 60 S.Ct. 1, 14, (1939)). A bankruptcy court may approve a compromise if it makes an informed, independent judgment that the compromise is fair and equitable. *See id.*

In order to determine whether a proposed settlement is fair and equitable, a bankruptcy court is directed to consider the following factors (the "A&C Properties Factors"): "(1) the probability of success in litigation of the dispute, (2) the difficulties to be encountered, if any, in the collection of

Bankruptcy Recovery Group, LLC
7251 Amigo Street, Ste. 210
Las Vegas, Nevada 89119
(725) 777-3000

an award, (3) the complexity, expense, inconvenience and delay of litigation, and (4) the interest of creditors in the case, giving deference to any reasonable views expressed." *In re Endoscopy Ctr. of S. Nevada, LLC*, 451 B.R. 527, 535 (Bankr. D. Nev. 2011) (*citing In re A&C Properties*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

In seeking approval of a compromise, the debtor has the burden of persuasion. *See id.* at 536 (*citing TMT Trailer*, 390 U.S. at 425). However, the debtor is not necessarily required to satisfy each of the A&C Properties Factors, as long as they favor approval of the settlement as a whole. *In re Pacific Gas and Elec. Co.*, 304 B.R. 395, 416 (Bankr. N.D. Cal. 2004). A bankruptcy court may approve a settlement pursuant to Bankruptcy Rule 9019 where, based on its own judgment, it determines that the settlement is "fair and equitable when comparing the claims being compromised against the likely rewards of litigation." *In re Endoscopy Center*, 451 B.R. at 535 (*citing TMT Trailer*, 390 U.S. at 425).

Thus, a settlement does not have to be the best the Debtor could have possibly obtained, but must only fall "within the reasonable range of litigation possibilities." *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005). The court is not required to conduct a mini-trial of the underlying claims or rule upon disputed facts and questions of law, which would defeat the purpose of settlement and frustrate negotiations, but need only canvass the issues. *See Suter v. Goedert*, 396 B.R. 535, 548 (D. Nev. 2008) (*citing Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir. 1997)); *In re W. Funding Inc.*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016), *aff'd*, 705 F. App'x 600 (9th Cir. 2017).

A. **The Settlements Are Fair and Reasonable and Should be Approved.**

Each of the A&C Properties Factors support approval of the Settlement Agreements, which are fair and equitable when comparing the estate claims being compromised against the likely rewards of litigating each of the claims through trial.

*First*, the Settlement Agreements with each of the Settling Transferees provide for a recovery that falls well within the range of litigation possibilities.

With respect to the Settling Transferees that did not accept Debtor's initial settlement offer, BRG discussed the claims with the Settling Transferees and, where appropriate, took informal

discovery. BRG assessed the information gathered along with Debtor's records and information otherwise available on the docket. Credit for any subsequent new value was provided (11 U.S.C. § 547(c)(4)) and other asserted defenses were weighted. BRG provided Debtor with its best estimate of each Settling Transferee's preference exposure if the matters proceed to litigation. *See* Gray Kozlowski Decl. ¶ 6. Based on those estimates, these settlements, in aggregate, represent a recovery of approximately 74% of anticipated liability after application of subsequent new value but before giving discounts for other asserted defenses, including ordinary course of business, which, in some cases, could arguably provide for a complete defense. Were the Settling Transferees successful on their ordinary course defenses, the recovery for the estate would be significantly less. *See id.* As a result, the first A&C Properties Factor weighs strongly in favor of approval of the Settlement Agreements.

*Second*, there is no certainty of collection on any judgment which might be entered in favor of Debtor were it to file an adversary proceeding and try these claims. Filing an adversary proceeding and pursuing any resulting judgments entered against the Settling Transferees will inevitably result in Debtor incurring additional costs. As a result, the second A&C Properties Factor weighs in favor of approval of the Settlement Agreements.

*Third*, while Debtor provided each of the Settling Transferees with subsequent new value credits when appropriate, should any of these matters proceed to litigation, it will be necessary to litigate other potential defenses, including the ordinary course of business defense (11 U.S.C. § 547(c)(2)). Such issues will require extensive discovery and will likely require trial. In light of all the foregoing, the third A&C Properties Factor—the amount at issue in relationship to the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending them—supports approval of each of the settlements summarized on Exhibit 1 and memorialized in the Settlement Agreements.

*Fourth*, as noted above, the settlement amounts, in aggregate, represent a favorable recovery for the estate and without the significant delay of litigation and, therefore, are beneficial to the estate's creditors. As a result, the fourth A&C Properties Factor also supports approval of the Settlement Agreements.

Based on the foregoing, the Debtor submits that each of the Settlements is fair and reasonable and requests that they be approved. *See* Ayala Decl. ¶ 6.

## IV.
## PAYMENT OF CONTINGENCY FEE AND REIMBURSEMENT OF EXPENSES

BRG was employed as the Debtor's special counsel on a contingency basis. *See* ECF Nos. 1780 and 1814. BRG's engagement agreement provides that for matters resolved after the filing of an adversary proceeding, BRG shall earn legal fees on a contingency basis based on the cash value of any recoveries and the cash equivalent value of any claim waiver obtained from a potential defendant (only to the extent the waiver of such claim accrues to the estate's benefit and increases the estate's recovery), and shall be reimbursed for any expenses it advanced in connection with such claims. *Id.* ¶ 7. BRG's contingency fee for claims resolved prior to the commencement of litigation is 18.5%.

Accordingly, the Debtor seeks allowance of, and authority to pay, BRG a 18.5% contingency fee equal to $8,978.05 ("Contingency Fee"), which payment shall be made from the settlement proceeds paid by the Settling Transferees. *See* Gray Kozlowski Decl. ¶ 7.

Pursuant to 11 U.S.C. § 330(a), the bankruptcy court reviews the services the professional provided, and decides whether the requested compensation is reasonable. A Section 330 analysis of a contingency fee takes into consideration "settlement proceeds received by the estate in determining a reasonable fee under" Section 330. *See In re Plant Insulation Co.*, 2012 WL 3322636, at * 2 (Bankr. N.D. Cal. Aug. 7, 2012). BRG submits that the requested Contingency Fee satisfies Section 330.

First, this Court preapproved the contingency fee arrangement after notice to all parties in interest. *See* ECF Nos. 1780 and 1814. Second, BRG's contingency fee is materially lower than the fee often charged by commercial contingency counsel. *See In re Private Asset Grp., Inc.* 579 B.R. 534, 544-45 (Bankr. C.D. Cal. 2017) ("Outside of bankruptcy, contingency fees are often 33 percent or, if there is an appeal, 40 percent."); *In re Pearlman,* 2014 WL 1100223, *3 (Bankr. M.D. Fla. Mar. 20, 2014) ("Resting again on its independent judgment, the Court finds the 35% contingency fee to be reasonable and in line with similar non-bankruptcy rates.").

Second, contingency fees, by their nature, operate to provide reasonable, market compensation over a series of engagements where any particular engagement incurs the risk of non-payment, or payment at significantly less than prevailing per-hour rates. While any particular engagement could result in compensation above prevailing per-hour rates, this is counterbalanced by non- or reduced payment in other engagements.

Third, given the limited assets of the estate when BRG was retained, the contingency fee arrangement benefitted Debtor's estate by shifting material risk from the estate onto BRG which immediately invested resources investigating and pursuing claims for the estate's benefit. *Fann Contracting, Inc. v. Garman Turner Gordon LLP*, 620 B.R. 141, 147 (D. Nev. 2020); *see also, generally, In re Smart World Techs. LLC*, 423 F.3d 166, 180 (2d Cir. 2005) ("Here, Smart World's counsel was retained on a contingency basis, meaning that Smart World's pursuit of its adversary claims would have subjected the bankruptcy estate to no risk, while allowing the estate to reap any potential award."). Further, not only did BRG take on the risk of non-payment, BRG has undertook even greater risk by agreeing to front all costs of litigation.

Fourth, BRG was charged with considering and investigating Chapter 5 claims against more than 80 potential targets. BRG invested substantial resources to analyze claims against potential transferees, ultimately recommending to the Debtor which claims are meritorious and which should not be brought. As a result, BRG's efforts included advising that the Debtor does not hold Chapter 5 Claims against certain potential targets. The contingency fee agreement does not provide for BRG to be compensated for these significant efforts that benefited the estate. Rather, these efforts are part of the basket of services BRG provides to the Debtor and the estate. *See* Gray Kozlowski Decl. ¶ 8.

For these reasons, BRG submits that the Contingency Fee is reasonable and should be approved.

. . .

. . .

. . .

## V.
## CONCLUSION

Each of the settlements memorialized in the Settlement Agreements are in the best interests of the estate and the Debtor's creditors and are fair and equitable under the standard set forth in *A&C Properties*. Accordingly, the Debtor respectfully requests that the Court enter an order approving the Settlement Agreements and approving and awarding BRG's contingency fee substantially in the form of **Exhibit 2**.

Dated this 14th of January 2025.

BANKRUPTCY RECOVERY GROUP LLC

By: */s/ Talitha Gray Kozlowski*
TALITHA GRAY KOZLOWSKI, ESQ.
GARRETT NYE, ESQ.
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
*Special Counsel for Debtor*