# EXHIBIT 6

# EXHIBIT 6

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered, as of the Effective Date (as defined herein), by and between Bandwidth Inc. ("Transferee") and Cash Cloud, Inc. d/b/a Coin Cloud ("Debtor"). Transferee and Debtor are each hereinafter referred to as a "Party" and collectively as the "Parties."

### Background

1. On February 17, 20 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court"), thereby commencing Chapter 11 Case No. 23-10423 (MKN) ("Case");

2. Debtor asserts that it made transfer(s) totaling $15,305.62 ("Transfers") to Transferee that are avoidable under the provisions of 11 U.S.C. §§ 547 through 550, which Transferee disputes ("Dispute"); and

3. Following good faith negotiations and to avoid the cost and uncertainty of further litigation, Debtor and Transferee desire to settle and compromise the Dispute on the terms set forth in this Agreement.

Accordingly, the Parties agree as follows:

### Article 1. Effective Date, Payment and Court Approval

1.1  Effective Date of Agreement. This Agreement becomes effective (the "Effective Date") on the date that Debtor delivers to Transferee a copy of the Agreement executed by Debtor. Delivery under this section may be made by email.

1.2  Payment. Within fifteen days after the Effective Date, Transferee shall pay to Debtor $9,100.00 (the "Settlement Amount"). Unless otherwise agreed to by the Parties in writing, the Settlement Amount shall be paid in readily available U.S. Funds and delivered as follows:

Domestic Wire/ACH Instructions

| | |
|---|---|
| Bank Name: | Nevada State Bank |
| | 750 Warm Springs Road |
| | Las Vegas, Nevada 89119 |
| Routing/Transit No: | 122400779 |
| Beneficiary Name: | Bankruptcy Recovery Group |
| Beneficiary Acct No.: | 983523143 |
| Reference: | Coin Cloud Preference Action Settlement |

1.3 Court Approval.

    1.3.1 9019 Motion. After the Effective Date, Debtor shall, pursuant to Fed. R. Bankr. P. 9019, file a motion with the Bankruptcy Court seeking approval of this Agreement ("Approval Motion"). The Parties agree to use their best efforts to obtain entry of an order granting the Approval Motion ("Approval Order").

    1.3.3 Entry of Final Order. This Agreement is contingent upon the Approval Order becoming a final order. For purposes of this Agreement, "final order" means an order that has not been reversed, stayed, modified or amended in a manner that undermines the relief sought in the Approval Motion and for which the time to appeal has expired. If the Approval Order is appealed, the Approval Order does not become a final order until the Approval Order is affirmed.

    1.3.4 Return of Settlement Amount. If the Approval Order does not become a final order, Debtor shall return the Settlement Amount in a manner agreed to by the Parties. Upon return of the Settlement Amount, this Agreement is no longer binding upon the Parties.

### Article 2: Representations and Warranties

2.1 Representations and Warranties. Transferee represents and warrants that: (i) Transferee is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization; (ii) Transferee is authorized to enter into this Agreement and has full power and authority to execute, deliver and perform its obligations hereunder; (iii) Transferee is the sole owner of all claims released in Section 3.1.2 and has not sold, pledged or otherwise assigned or transferred, in whole or in part, its interest in any such claims; (iv) there are no pending proceedings before any court, arbitrator, administrative body or governmental body that would adversely affect Transferee's ability to enter this Agreement or to perform its obligations hereunder; (v) the individual executing this Agreement on Transferee's behalf is authorized to do so; and (vi) Transferee had an opportunity to consult with legal counsel regarding the terms of this Agreement. If Transferee is a natural person, Sections 2.1(i), (ii) and (v) are inapplicable.

### Article 3: Releases and Waivers

3.1 Releases.

    3.1.1. Releases by Debtor. Upon Debtor's receipt of the Settlement Amount in accordance with Section 1.2, Debtor releases and forever discharges Transferee and its agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Transferee Released Parties") from any and all liabilities, damages, liens, obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether in law or in

        equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, and that arise out of or relate to the Dispute regarding the Transfers.

    3.1.2. Releases by Transferee. Upon the Effective Date of this Agreement, Transferee releases and forever discharges Debtor, Debtor's estate and their respective agents, employees, professionals, representatives, officers, attorneys, shareholders, directors, assigns, affiliates, subsidiaries, and successors-in-interest (the "Debtor Released Parties" and, together with the Transferee Released Parties, the "Releasees") from any and all liabilities, damages, liens, obligations, indemnities, promises, losses, fees, costs, expenses, causes of action, suits, contributions, debts, sums of money, accounts, claims (as defined in Section 101(5) of the Bankruptcy Code), and demands, whatsoever, whether in law or equity, liquidated or unliquidated, known or unknown, suspected or unsuspected, fixed or contingent, direct or indirect, hidden or concealed, and that arise out of or relate to the Dispute regarding the Transfers, including, without limitation any claims that have been asserted in the Bankruptcy Case, that could be asserted regarding the Settlement Amount or for goods provided to the Debtor within 20 days before the Petition Date.

    3.1.3 Scope of Releases. Nothing in this Agreement is a (i) release or waiver of either Party's obligations under this Agreement or (ii) release of any party other than the Releasees.

3.2   Reserved.

3.3   Reserved.

### Article 4. Miscellaneous

4.1   Entire Agreement. This Agreement constitutes the entire agreement between the Parties regarding its subject matter and supersedes any previous oral or written agreements.

4.2   Binding Effect. This Agreement is binding upon and inures to the benefit of each of the Parties and their respective agents, subsidiaries, employees, officers, directors, predecessors, successors, and assigns.

4.3   Modification. No alteration, amendment or modification to this Agreement is effective or binding unless in writing and signed by all the Parties.

4.4   Waiver. A breach of this Agreement cannot be waived unless in writing. A failure by either Party to enforce its rights under this Agreement is not a waiver of any other rights contained in this Agreement.

4.5     Construction. The Parties jointly negotiated and prepared this Agreement and are satisfied with and fully understand its terms. Accordingly, the Parties agree that the provisions of this Agreement may not be construed or interpreted for or against any of the Parties based upon authorship.

4.6     Pronouns. Use of the pronoun "it" or "its" includes, where applicable, the appropriate male or female pronoun.

4.7     Headings. The headings used in this Agreement are for convenience only and may not be used to construe or interpret this Agreement.

4.8     Severability. Should a court of competent jurisdiction hold that any provision of this Agreement is illegal, invalid, or unenforceable, the remaining provisions of this Agreement will remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the obvious intent of the Parties.

4.9     Governing Law. This Agreement is governed by and construed in accordance with the laws of the State of Nevada without regard to any law concerning the conflicts of laws.

4.10    Retention of Jurisdiction; Consent to Jurisdiction and Venue. The Bankruptcy Court will retain jurisdiction to resolve any disputes regarding this Agreement. The Parties consent to the exclusive jurisdiction and venue of the Bankruptcy Court to resolve any disputes regarding this Agreement.

4.11    No Admission of Liability. Neither the execution of this Agreement nor the payment of the Settlement Amount is as an admission of Transferee's liability.

4.12    Original and Counterparts. This Agreement may be executed in separate counterparts, each of which constitutes an original, and all of which constitute a single agreement. It is not necessary, in making proof of this Agreement, to produce or account for more than one complete set of counterparts.

4.13    Attorneys' Fees and Costs. Each Party shall bear its own attorneys' fees and costs.

4.14    Reserved.

4.15    Jury Waiver. THE PARTIES HEREBY VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY WAIVE THE RIGHT TO HAVE A JURY RESOLVE ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR RELATES TO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the dates below.

**CASH CLOUD, INC. D/B/A COIN CLOUD**

By: *Dan P. Ayala*

Print Name: Daniel P. Ayala
Print Title: Independent Director
Date: December 30, 2024

**BANDWIDTH**

By: *[signature]*
Print Name: Leah Webb
Print Title: Deputy GC & Assistant Secretary
Date: 12/17/2024