| | |
|---|---|
| BANKRUPTCY RECOVERY GROUP, LLC<br>TALITHA GRAY KOZLOWSKI, ESQ.<br>Nevada Bar No. 9040<br>Email: tgray@brg.legal<br>GARRETT H. NYE, ESQ.<br>Illinois Bar No. 6329215<br>(*Pro Hac Vice Granted*)<br>Email: gnye@brg.legal<br>7251 Amigo Street, Suite 210<br>Las Vegas, Nevada 89119<br>Tel: 702-483-6126<br>*Attorneys for Debtor* | SEWARD & KISSEL LLP<br>John R. Ashmead, Esq.<br>Robert J. Gayda, Esq.<br>Catherine V. LoTempio, Esq.<br>Laura E. Miller, Esq.<br>Andrew J. Matott, Esq.<br>(*pro hac vice applications granted*)<br>One Battery Park Plaza<br>New York, NY 10004<br>ashmead@sewkis.com<br>gayda@sewkis.com<br>lotempio@sewkis.com<br>millerl@sewkis.com<br>matott@sewkis.com<br><br>*Counsel for Official Committee<br>of Unsecured Creditors* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE:<br><br>CASH CLOUD, INC., d/b/a COIN CLOUD,<br><br>    Debtor. | Case No. 23-10423<br><br>Chapter 11 |
| CASH CLOUD, INC. d/b/a COIN CLOUD and OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CASH CLOUD, INC d/b/a COIN CLOUD,<br><br>    Plaintiffs,<br>v.<br><br>SURETY BANK and CHRISTOPHER MCALARY,<br><br>    Defendants. | Adv. Pro. No. |

**COMPLAINT TO AVOID AND RECOVER AVOIDABLE**
**TRANSFERS PURSUANT TO 11 U.S.C. §§ 544, 547 AND 550**

Cash Cloud, Inc. d/b/a Coin Cloud ("Debtor") and the Official Committee of Unsecured Creditors of Cash Cloud, Inc. d/b/a Coin Cloud ("Committee," and together with Debtor, the "Plaintiffs") file this Complaint to Avoid and Recover Avoidable Transfers Pursuant to 11 U.S.C. §§ 544, 547 and 550 ("Complaint"), alleging as follows:

### Jurisdiction and Venue

1. On February 7, 2023 ("Petition Date"), Debtor filed a voluntary petition for relief under title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"), thereby commencing Chapter 11 Case No. 23-10423 ("Case").

2. This adversary proceeding arises out of and relates to the Case and is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

### Parties

5. Debtor is the debtor in the Case and, as debtor in possession, has the right and power to prosecute its Chapter 5 claims.

6. The Committee is the official committee of unsecured creditors appointed in Debtor's Case. The Committee was granted derivative standing to initiate, commence, negotiate, litigate, arbitrate, mediate, compromise, resolve, and to carry out any and all other or further initiatives attended thereto, certain avoidance actions and claims against McAlary pursuant to the *Stipulation Granting Derivative Standing to the Official Committee of Unsecured Creditors with Respect to Certain Actions* [ECF 1009], which was approved by order of the Bankruptcy Court [ECF 1119].

7. Surety Bank ("Surety") is a pre-petition creditor of Debtor.

8. Christopher McAlary ("McAlary," and together with Surety, the "Defendants") is the former Chief Executive Officer, President and Chairman of the Board of Directors of Debtor,

and a pre-petition creditor of Debtor. At all relevant times, McAlary was the sole shareholder of Debtor. Upon information and belief, McAlary is domiciled in Las Vegas, Nevada.

9. Defendants may be served with a copy of the summons and Complaint pursuant to Fed. R. Bankr. P. 7004.

**The 2020 Note**

10. On or about October 27, 2020, Debtor executed a Revolving Line of Credit Promissory Note in favor of Surety in the principal amount of $750,000.00 ("2020 Note").

11. On or about October 27, 2020, Debtor and Surety executed a Cash Collateral Pledge and Security Agreement ("Security Agreement") whereby Debtor, among other things, granted Surety a security interest in certain of Debtor's assets, including three depository accounts held at Surety, account numbers ending in 4665, 4681 and 4699 ("Checking Accounts"), and cash held in or in transit from certain of Debtor's BTMs identified in Schedule B to the Security Agreement ("BTM Cash").

12. On information and belief, Schedule B was not attached to the Security Agreement.

13. On or about October 27, 2020, Debtor executed a Hypothecation Agreement in favor of Surety, pursuant to which Debtor pledged the Checking Accounts to Surety.

14. On or about October 27, 2020, Debtor and Surety executed a Security Agreement (Chattel Mortgage), pursuant to which Debtor pledged certain property, identified in "Schedule A" to the same, as security for repayment of the 2020 Note.

15. On information and belief, Schedule A was not attached to the Security Agreement (Chattel Mortgage).

16. On or about September 28, 2021, McAlary, on information and belief, executed a Guaranty Agreement in favor of Surety, whereby McAlary guaranteed repayment of the 2020 Note ("2020 Guaranty").

**The 2021 Amended Note**

17. On or about September 28, 2021, Debtor executed an Amended and Restated Promissory Note (Revolving Line of Credit) ("Amended Note," and together with the 2020 Note,

the "Note") in favor of Surety. The Amended Note increased the principal amount of the 2020 Note to $2,000,000.00.

18. On or about September 28, 2021, Debtor and Surety executed an Amended Cash Collateral Pledge and Security Agreement ("Amended Security Agreement") whereby Debtor, among other things, granted Surety a security interest in certain of Debtor's assets, including the Checking Accounts and the BTM Cash held in or in transit from certain DCMs identified in Schedule B to the Amended Security Agreement.

19. On information and belief, Schedule B was not attached to the Amended Security Agreement.

20. On or about September 28, 2021, Debtor executed an Amended and Restated Hypothecation Agreement in favor of Surety, pursuant to which Debtor pledged the Checking Accounts to Surety.

21. On or about September 28, 2021, Debtor and Surety executed an Amended and Restated Security Agreement (Chattel Mortgage), pursuant to which Debtor pledged certain property, identified in "Schedule A" to the same, as security for repayment of the Amended Note.

22. On information and belief, Schedule A was not attached to the Amended and Restated Security Agreement (Chattel Mortgage).

23. On or about September 28, 2021, McAlary executed an Amended and Restated Guaranty Agreement in favor of Surety, whereby McAlary guaranteed repayment of the Note ("Amended Guaranty" and together with the 2020 Guaranty, the "Guaranty").

**The Change in Terms Agreement**

24. On November 7, 2022, Debtor and Surety entered into a Change in Terms Agreement, pursuant to which Debtor agreed to make an immediate payment of $1,000,000.00 to Surety and subsequent weekly payments of $250,000.00 beginning on November 14, 2022 ("Change in Terms Agreement").

25. The Change in Terms Agreement identified Surety's collateral as the Checking Accounts plus one additional account ending in 4804.

26.     On information and belief, the Change in Terms Agreement was entered into due to Debtor's failure to satisfy its obligations under the Note.

### The UCC Financing Statements

27.     In an effort to perfect its security interest in certain of Debtor's property, Surety, on November 3, 2020, filed a UCC Financing Statement in Florida, financing statement file number 2020141100-3 ("UCC"). The UCC describes Surety's collateral by reference to two attachments to the same, one identifying the Checking Accounts and the other identifying certain DCMs.

28.     On or about April 4, 2022, Surety filed a State of Florida Uniform Commercial Code Financing Statement Amendment Form amending the UCC.

29.     On or about December 15, 2022, Surety filed a termination of the UCC upon Debtor's complete performance under the Change in Terms Agreement.

### The BTM Cash

30.     Debtor operated a national network of digital currency machines ("DCMs") that allowed its customers to buy and sell digital currencies.

31.     Debtor hired various national and local entities to service and maintain its DCMs, including by removing cash from the machines and transporting that cash for deposit into its bank accounts.

32.     Debtor contracted with Loomis, among others, to service certain DCMs. Loomis would remove cash from the DCMs, transport that cash to its locations and then transport and deposit the same in Debtor's bank accounts.

33.     Loomis operated as Debtor's agent and all of Debtor's cash in Loomis's possession, including the BTM Cash, was subject to the control and direction of Debtor.

34.     Surety separately contracted with Loomis. Pursuant to the terms of a Service Agreement ("Loomis Agreement"), Loomis agreed to transport cash from Loomis's locations in Florida to certain of Surety's branches.

35.     Debtor was not a party to the Loomis Agreement.

36.     At no time did Debtor waive its right to direct Loomis with respect to the cash

removed from the DCMs, including the BTM Cash.

## The Bank Accounts

37. According to Debtor's bankruptcy schedules, Debtor held three bank accounts with Surety on the Petition Date. Those accounts are listed below and had the following balances:

| Last 4 Digits of Acct. No. | Account Purpose | Account Balance |
|---|---|---|
| 4699 | Accounts Payable Acct. | $62,304.32 |
| 4665 | Operating Acct. | $544,097.87 |
| 4681 | Payroll Acct. | $312,843.73 |

38. On information and belief, some or all of the money held in the Payroll Account (Acct No. ending in 4681) was property of Debtor's employees or other third parties.

39. As of the Petition date, there was a total of $919,245.92 in the Bank Accounts.

## Transfers

40. During the year before the Petition Date, Debtor made certain transfers of its money to Defendants (the transfers made within ninety days of the Petition Date are referred to herein as the "Ninety Day Transfers" and the Transfers made within one year of the Petition Date are referred to as the "One Year Transfers") in satisfaction of its obligations under the Note, Guaranty and/or Change in Terms Agreement.

41. The Ninety Day Transfers and One Year Transfers were made from one or more of Debtor's bank accounts and include, but are not limited to, the payments identified in Exhibit "A" to this Complaint.

42. The Ninety Day Transfers total no less than $1,176,944.77.

43. The One Year Transfers total no less than $2,189,819.78.

44. In addition to the Ninety Day and One Year Transfers, Debtor made a transfer of its interest in property to or for the benefit of Surety and/or McAlary to the extent Surety's security interest attached to Debtor's property during the applicable preference period ("SI Transfers").

45. Upon information and belief, Debtor was insolvent at the time all transfers were made or became insolvent as a result of the transfers. In support of the conclusion that Debtor was insolvent, or was rendered insolvent, the Plaintiffs allege that for the eleven months prior to November 30, 2021, Debtor had lost approximately $20.1 million, had reported approximately $121 million in liabilities, and reported assets of $117 million, implying a negative equity value of at least $4 million. Notably, of the $117 million in assets, almost $74 million was attributed to the book value of "Property and Equipment." This primarily encompasses Debtor's DCMs, whose market value was likely significantly below $74 million, thereby increasing Debtor's equity deficit. As an indication of the DCM market value, during the Chapter 11 Case, the Debtor received less than $5 million for 7,800 DCMs.

### McAlary Claim

46. On June 14, 2023, McAlary filed proof of claim number 123 (the "McAlary Claim") asserting claims against Debtor in the amount of $1,721,763.27 on account of, among other things, unsecured loans allegedly provided to Debtor, deferred salary and compensation, and indemnity.

### Demand and Due Diligence

47. Prior to filing the Complaint, Plaintiff sent a letter to Surety demanding that it return the Ninety Day Transfers or that it provide information substantiating any defenses it might have, including under 11 U.S.C. § 547(c).

48. Surety has provided Debtor with certain information regarding the transactions at issue. However, Surety has failed to return the Ninety Day Transfers or provide evidence conclusively establishing a complete defense under 11 U.S.C. § 547(c).

49. Before filing this Complaint, and after considering its records, the Case docket and the information provided by Surety, Plaintiff evaluated potential defenses under 11 U.S.C. § 547(c). Based on this analysis, Plaintiff does not believe that Defendants have complete defenses to the claims asserted in this Complaint.

. . .

## COUNT I

**(Avoidance of the Ninety Day Transfers Pursuant to 11 U.S.C. § 547)**

50. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 49 of the Complaint as if the same were fully repeated herein.

51. The Ninety Day Transfers were of an interest in Debtor's property.

52. The Ninety Day Transfers were made to or for the benefit of Surety, who was a creditor of Debtor's by virtue of the Note and related agreements.

53. The Ninety Day Transfers were made on account of antecedent debts owed by Debtor to Surety before the Ninety Day Transfers were made.

54. The Ninety Day Transfers were made while Debtor was insolvent, such insolvency being presumed pursuant to 11 U.S.C. § 547(f).

55. The Ninety Day Transfers were made within ninety days before the Petition Date.

56. Had the Ninety Day Transfers not been made, Surety would have been under secured on the Petition Date by at least $85,623.87. Accordingly, because Debtor's liabilities exceeded its assets by $72,073,303.08 on the Petition Date (Debtor's Summary of Assets and Liabilities for Non-Individuals (Docket No. 239)), the Ninety Day Transfers enabled Surety to receive more than it would have received if (i) Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code, (ii) the Ninety Day Transfers had not been made, and (iii) Surety received payment of the debt to the extent allowed by the Bankruptcy Code.

57. Based upon the foregoing, the Ninety Day Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT II

**(Avoidance of the SI Transfers as Against Surety Pursuant to 11 U.S.C. § 547)**

58. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 54 of the Complaint as if the same were fully repeated herein.

59. The SI Transfers were of an interest in Debtor's property.

60. The SI Transfers were made to or for the benefit of Surety, who was a creditor of Debtor's by virtue of the Note and related agreements.

61. The SI Transfers were made on account of antecedent debts owed by Debtor to Surety before the SI Transfers were made.

62. The SI Transfers were made while Debtor was insolvent, such insolvency being presumed pursuant to 11 U.S.C. § 547(f).

63. The SI Transfers were made within ninety days before the Petition Date.

64. Had the SI Transfers not been made, Surety would have been under secured. Accordingly, because Debtor's liabilities exceeded its assets by $72,073,303.08 on the Petition Date (Debtor's Summary of Assets and Liabilities for Non-Individuals (Docket No. 239)), the SI Transfers made within ninety days of the Petition Date enabled Surety to receive more than it would have received if (i) Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code, (ii) the SI Transfers had not been made, and (iii) Surety received payment of the debt to the extent allowed by the Bankruptcy Code.

65. Based upon the foregoing, the SI Transfers made within ninety days of the Petition Date are avoidable pursuant to 11 U.S.C. § 547(b)

## COUNT III

**(Avoidance of the One Year Transfers as Against McAlary Pursuant to 11 U.S.C. § 547)**

66. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 65 of the Complaint as if the same were fully repeated herein.

67. The One Year Transfers were of an interest in Plaintiff's property.

68. The One Year Transfers were made for the benefit of McAlary, who was an insider of Debtor as such term is defined in 11 U.S.C. § 101(31) and a creditor of Debtor by virtue of his right of indemnification or any other right of reimbursement arising out of his performance under the Guaranty and as asserted in the McAlary Claim.

69. The One Year Transfers were made on account of antecedent debts owed by Debtor to McAlary before the One Year Transfers were made.

70. The One Year Transfers were made while Debtor was insolvent or became insolvent as a result of the One Year Transfers; Debtor was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with Debtor was unreasonably small capital; and/or Debtor intended to incur, or believes that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

71. Because Debtor's liabilities exceeded its assets by $72,073,303.08 on the Petition Date (Debtor's Summary of Assets and Liabilities for Non-Individuals (Docket No. 239)), the One Year Transfers enabled McAlary to receive more than he would have received if (i) Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code, (ii) the One Year Transfers had not been made, and (iii) McAlary received payment of the debt to the extent allowed by the Bankruptcy Code.

72. Based upon the foregoing, the One Year Transfers are avoidable pursuant to 11 U.S.C. § 547(b).

## COUNT IV

**(Avoidance of the SI Transfers as Against McAlary Pursuant to 11 U.S.C. § 547)**

73. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 72 of the Complaint as if the same were fully repeated herein.

74. The SI Transfers were of an interest in Debtor's property.

75. The SI Transfers were made for the benefit of McAlary who was an insider of Debtor as such term is defined in 11 U.S.C. § 101(31) and a creditor of Debtor by virtue of his right of indemnification or any other right of reimbursement arising out of his performance under the Guaranty and as asserted in the McAlary Claim

76. The SI Transfers were made on account of antecedent debts owed by Debtor to McAlary before the SI Transfers were made.

77. The SI Transfers were made while Debtor was insolvent or became insolvent as a result of the SI Transfers made within a year of the Petition Date; Debtor was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property

remaining with Debtor was unreasonably small capital; and/or Debtor intended to incur, or believes that Debtor would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

78. The SI Transfers were made within one year before the Petition Date.

79. Because Debtor's liabilities exceeded its assets by $72,073,303.08 on the Petition Date (Debtor's Summary of Assets and Liabilities for Non-Individuals (Docket No. 239)), the SI Transfers made within a year of the Petition Date enabled McAlary to receive more than McAlary would have received if (i) Debtor's bankruptcy case was a case under Chapter 7 of the Bankruptcy Code, (ii) the SI Transfers had not been made, and (iii) McAlary received payment of the debt to the extent allowed by the Bankruptcy Code.

80. Based upon the foregoing, the SI Transfers made within a year before the Petition Date are avoidable pursuant to 11 U.S.C. § 547(b)

## COUNT V

### (Avoidance of Unperfected Liens Pursuant to 11 U.S.C. § 544 for Benefit of the Estate Pursuant to 11 U.S.C. § 551)

81. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 80 of the Complaint as if the same were fully repeated herein.

82. Pursuant to 11 U.S.C. § 544(a), Debtor is vested with the rights and status of a hypothetical judicial lien creditor whose lien was perfected as of the Petition Date. As holder of a hypothetical perfected judicial lien, Debtor may avoid any unperfected security interest in its assets and recover the same for the benefit of its estate under 11 U.S.C. § 551.

83. Pursuant to Article 9 of the Uniform Commercial Code, including the version adopted in Florida, a security interest is subordinate to the rights of a lien creditor that existed prior to the perfection of the security interest.

84. To the extent Surety claims that the Note was secured by assets other than Debtor's Bank Accounts or BTM Cash (or contends that it would be for purposes of 11 U.S.C. § 547(b)(5)) and to the extent such interest must be perfected by filing, Surety's security interest in such assets

was unperfected in that its UCC describes Surety's collateral as the Bank Accounts and BTM Cash.

85. To the extent Surety claims that the Note was secured by the BTM Cash (or contends that it would be for purposes of 11 U.S.C. § 547(b)(5)), Surety's security interest in the same was unperfected, as Surety lacked control over the BTM Cash.

86. Pursuant to 11 U.S.C. § 544(a), Debtor seeks to avoid any other security interests in its property asserted by Surety that were not properly perfected.

87. Pursuant to 11 U.S.C. § 544(a)(1), Debtor may avoid any unperfected security interest and preserve the same for the benefit of its estate pursuant to 11 U.S.C. § 551.

## COUNT VI

**(Recovery of Avoided Transfers from Surety Pursuant to 11 U.S.C. § 550)**

88. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 87 of the Complaint as if the same were fully repeated herein.

89. Surety was the initial transferee of the Ninety Day Transfers.

90. Surety was an entity for whose benefit the Ninety Day Transfers were made.

91. Based upon the foregoing, Plaintiff is entitled to recover the Ninety Day Transfers or their value from Surety pursuant to 11 U.S.C. § 550(a).

## COUNT VII

**(Recovery of Avoided Transfers from McAlary Pursuant to 11 U.S.C. § 550)**

92. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 91 of the Complaint as if the same were fully repeated herein.

93. McAlary was an entity for whose benefit the One Year Transfers were made.

94. Based upon the foregoing, Plaintiff is entitled to recover the One Year Transfers or their value from McAlary pursuant to 11 U.S.C. § 550(a)

. . .

. . .

. . .

# COUNT VIII

### (Disallowance of Claim Pursuant to 11 U.S.C. § 502(d))

95. Plaintiffs hereby incorporate and re-allege the allegations contained in Paragraphs 1 through 94 of the Complaint as if the same were fully repeated herein.

96. To the extent any of the Ninety Day, One Year or SI Transfers are avoided under any provision of Chapter 5 of the Bankruptcy Code, any claim filed by Defendants, including the McAlary Claim, must be disallowed pursuant to 11 U.S.C. §502(d) until the avoided transfers are returned.

### Reservation of Rights

97. The Complaint is intended to seek recovery of all transfers avoidable under Chapter 5 of the Bankruptcy Code, including any payments received during the applicable preference period not specifically identified in the Complaint. Furthermore, this Complaint is intended to avoid all unperfected security interest in Debtor's property. Plaintiff reserves the right to amend this Complaint if additional claims are revealed during discovery, including, but not limited to, any claims arising under Chapter 5 of the Bankruptcy Code.

**WHEREFORE**, Plaintiffs respectfully requests that this Court:

a. Find that the Ninety Day, One Year and SI Transfers are avoidable pursuant to 11 U.S.C. § 547(b);

b. Find that any unperfected security interests in Debtor's assets are avoidable and that the associated value is preserved for benefit of estate under 11 U.S.C. §§ 544 and 551;

c. Find that Debtor is entitled to recover, from Surety, the Ninety Day Transfers or their value pursuant to 11 U.S.C. § 550 and enter judgment against Surety and in favor of Debtor in an amount equal to the Ninety Day Transfers, plus all interest, costs and attorneys' fees allowed by law;

d. Find that Debtor is entitled to recover, from Surety, the SI Transfers made within ninety days of the Petition Date or their value pursuant to 11 U.S.C. § 550 and enter

          judgment against Surety and in favor of Debtor in an amount equal to the value of the same, plus all interest, costs and attorneys' fees allowed by law;

e. Find that Debtor is entitled to recover, from McAlary, the One Year Transfers or their value pursuant to 11 U.S.C. § 550 and enter judgment against McAlary and in favor of Debtor in an amount equal to the One Year Transfers, plus all interest, costs and attorneys' fees allowed by law;

f. Find that Debtor is entitled to recover, from McAlary, the SI Transfers made within one year of the Petition Date or their value pursuant to 11 U.S.C. § 550 and enter judgment against McAlary and in favor of Debtor in an amount equal to the value of the same, plus all interest, costs and attorneys' fees allowed by law;

g. Disallow any claim filed by Defendants pursuant to 11 U.S.C. § 502(d) until such time that Defendants returns any avoided Transfers; and

h. Grant any further relief that the Court deems necessary and proper.

Dated this 6th day of February, 2025

**BANKRUPTCY RECOVERY GROUP, LLC**

By: /s/ Garrett H. Nye

Talitha Gray Kozlowski
Nevada Bar No. 9040
tgray@brg.legal
Garrett H. Nye (*Pro Hac Vice Granted*)
Illinois Bar No. 6329215
gnye@brg.legal

7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: 702-483-6126

*Counsel for Debtor*

-AND-

**SEWARD & KISSEL LLP**

By: /s/ Laura E. Miller

John R. Ashmead, Esq.
Robert J. Gayda, Esq.

Catherine V. LoTempio, Esq.
Laura E. Miller, Esq.
Andrew J. Matott, Esq.
(*pro hac vice applications granted*)

One Battery Park Plaza
New York, NY 10004
gayda@sewkis.com
lotempio@sewkis.com
millerl@sewkis.com
matott@sewkis.com

*Counsel for Official Committee
of Unsecured Creditors*

# EXHIBIT A
## Payment List

| Payment Date | Check Number | Payment Amount |
|---|---|---|
| 11/08/2022 | Wire/ACH | $1,012,875.01 |
| 11/14/2022 | Wire/ACH | $250,000.00 |
| 11/21/2022 | Wire/ACH | $250,000.00 |
| 11/28/2022 | Wire/ACH | $250,000.00 |
| 12/5/2022 | Wire/ACH | $67,616.86 |
| 1/5/2022 | Wire/ACH | $58,131.63 |
| 2/3/2023 | Wire/ACH | $46,326.49 |
| 12/5/2022 | Wire/ACH | $254,869.79 |